UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS INC, <br> Plaintiff, <br> v. <br> ANNA GATTI, et al., <br> Defendants. | Case No. 15-cv-00798-HSG <br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER** <br><br> Re: Dkt. No. 9 and 28 |

On March 3, 2015, Plaintiff Loop AI Labs Inc. applied *ex parte* for the immediate entry of a temporary restraining order (the "Application") against the named Defendants in this case. *See* Dkt. No. 9. Loop AI alleges that the Defendants participated in a scheme to misappropriate Loop AI's trade secrets and other valuable confidential information and that, absent immediate injunctive relief, Loop AI "will suffer very real harm in the form of unquantifiable los[s] of proprietary information and investment opportunity, which will essentially cause the ultimate demise of the start-up company." *Id*. at 14.

Loop AI's Application sought an order: (1) freezing the assets of all the U.S. Defendants; (2) directing the U.S. Defendants to repatriate all assets and documents located abroad; (3) enjoining the U.S. Defendants from disposing of any assets or money for any purpose whatsoever (with the narrow exception of a monthly "allowance" for Defendant Gatti's living expenses); (4) directing the U.S. Defendants to disclose to Loop AI the location and value of all assets owned, including personal property over $2,500; (5) requiring the U.S. Defendants to provide Loop AI their "consent" to access records and documents pertaining to their assets and property located abroad; (6) prohibiting all Defendants from destroying documents; (7) directing expedited discovery, including three depositions, 32 requests for production and nine interrogatories to occur within ten business days; (8) directing Defendant Gatti to "consent" to Loop AI accessing her

email and social media accounts; (9) prohibiting Defendants from using or sharing Loop AI's trade secrets; (10) directing Defendants to cease representing that Defendant Gatti is an employee of Loop AI; and (11) directing Defendant Gatti to return a laptop computer and any other documents or property over which Loop AI claims possession, among other forms of relief. *See* Dkt. No. 9-5.

On March 4, 2015, the Court found that Loop AI had not met the substantial burden required for issuance of a temporary restraining order without notice to the adverse party. *See* Dkt. No. 12 (citing Fed. R. Civ. P. 5(b)(1)(A), which provides that a court may issue a temporary restraining order without notice to the adverse party only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."). In the same order, the Court directed Loop AI to serve the Defendants with the documents filed under Docket Numbers 9, 10, and 11 in this case (the "TRO Papers"), as well as the Court's March 4, 2015 Order (Dkt. No. 12) by no later than 5:00 p.m. PST on Thursday, March 5, 2015. *See id*. The Court authorized service on the Italian Defendants Almaviva S.p.A. and Almaware S.r.l. through the Italian Certified Electronic Mail system known as the "Posta Elettronica Certificate" or "PEC" for the limited purpose of transmitting the TRO Papers and the Court's March 4th Order. *Id*. at 1. Defendants were directed to submit any opposition to Loop AI's Application by no later than Monday, March 9, 2015. *Id*. at 2. On March 9, 2015, Defendants submitted three oppositions to the Application. *See* Dkt. Nos. 23, 24, and 25. Loop AI submitted a reply on March 10, 2015.[1] *See* Dkt. No. 28.

The Court has carefully considered the parties' briefs, supporting declarations, and exhibits. The Court finds that this matter is appropriate for disposition without oral argument and the matter is deemed submitted. *See* N.D. Civ. L.R. 7–1(b). For the reasons discussed below, Loop AI's Application is **DENIED**.

## I. LEGAL STANDARD

A temporary restraining order is intended to preserve the status quo and prevents

---

[1] Loop AI's request for leave to file a Reply is **GRANTED**.

2

irreparable harm until a hearing can be held on a preliminary injunction application. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 429 (1974). However, a temporary restraining order is an "extraordinary remedy" that the court should award only upon a clear showing that the plaintiff is entitled to such relief. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Such an order may be issued only where the moving party has established: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to plaintiff in the absence of preliminary relief; (3) the balance of equities tips in plaintiff's favor; and (4) that an injunction is in the public interest. *See id*. at 22.

Under *Winter*, a court may only grant preliminary relief upon a showing that irreparable harm is likely. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). The mere possibility of irreparable harm is insufficient to support issuance of preliminary relief, even where the other *Winter* factors weigh heavily in favor of the movant. *Id*. In *Alliance*, the Ninth Circuit explained that "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id*. at 1134.

## II.    DISCUSSION

### A.    Likelihood of Success on the Merits

While the complaint filed in this action asserts fourteen causes of action, *see* Dkt. No. 1, Loop AI limits its discussion of the likelihood of success on the merits to two claims: (1) Trade Secret Misappropriation; and (2) Breach of Contract.

#### i.    Trade Secret Misappropriation

Loop AI alleges that the Defendants misappropriated its confidential and trade secret information in violation of the Uniform Trade Secret Act ("USTA"). "Under the UTSA, a prima facie claim for misappropriation of trade secrets requires the plaintiff to demonstrate: (1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." *CytoDyn of New Mexico, Inc. v. Amerimmune Pharms., Inc*., 160 Cal. App. 4th 288, 297 (2008) (internal

quotations and citation omitted).

On the record presented, Loop AI has not demonstrated that it is likely to meet this standard. While Loop AI asserts that it undertakes reasonable efforts to maintain the secrecy of its business information, it has not identified what business information was allegedly misappropriated, or submitted evidence that particular business information taken constitutes a trade secret under California law. *See MAI Sys. Corp. v. Peak Computer*, 991 F.2d 511, 522 (9th Cir. 1993) ("[A] plaintiff who seeks relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing that they exist."); *see also* Cal. Civ. Code § 3426.1(d) (defining a trade secret to include information that "[d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and . . . [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.").

Instead, Loop AI's Application is premised on general, very broad assertions unsupported by specific evidence in the record. *See* Dkt. No. 9 at 9 ("The Company's confidential information, know-how, technology, business methods, strategies, business plans, funding plans, investments plans, business partnerships and marketing plans, contacts and related materials which the Company developed and used in connection with its business constitute trade secrets of the Company."); *id.* at 11 ("Defendant Gatti illegally forwarded and used substantial amounts of this information in furtherance of her and the other Defendants' gain, including by improperly launching a competing company . . . ."). The sole specific allegation of misappropriation discussed in Loop AI's brief concerns an email from Defendant Gatti to Gianmauro Calafiore and Bart Peintner at Loop AI, in which Defendant Gatti requested 700 files to which she said she did not have access. *Id.*; Dkt No. 9-3 (Exhibit GMC-1). In other words, Loop AI's evidence that the Defendants improperly took the company's trade secrets is an email where Defendant Gatti complains of *not having access to the information Loop AI alleges she took*. And, perhaps tellingly, nowhere do the Application and supporting materials claim that Loop AI actually *granted* the access Gatti requested. *Id.* The email thus provides no basis for Loop AI's assertion that Defendant Gatti "continues to have possession of the 700 files that she improperly took from

4

the Company for the Defendants' use." Dkt. No. 9 at 11. In fact, it suggests the opposite. At this stage, Loop AI has not demonstrated that (1) Defendant Gatti retains those 700 files; (2) Defendant Gatti shared those files with any of the other Defendants; or that (3) the unspecified contents of those files likely qualify as trade secrets under California law. Conclusory allegations alone are not sufficient to demonstrate a likelihood of success on the merits. *See, e.g., Sunbelt Rentals, Inc. v. Victor*, 2014 WL 492364, at *6 (N.D. Cal. Feb. 5, 2014).

The evidence offered by Loop AI in support of its trade secret allegations contrasts sharply with the type of detailed and specific showing courts have found sufficient to support the issuance of a temporary restraining order under Rule 65. For example, *Shutterfly, Inc. v. Foreverarts, Inc.*, 2012 WL 2911887 (N.D. Cal. Jul. 13, 2012), cited by Loop AI in support of its Application, substantially undercuts its argument. In that case, Shutterfly moved *ex parte* to enjoin a former employee from destroying electronic logs, metadata, code, and other electronic documents related to Shutterfly. *Id*. at *1. In support of its application, Shutterfly provided the Court with "Source Control Logs" demonstrating that the defendant had accessed its systems and downloaded Shutterfly's "back end code" from an offsite location. *Id*. Shutterfly then identified specific examples of duplicate code between the defendant's website and Shutterfly.com and directed the Court to corporate filings and website comments that suggested that the defendant intended to create a substantially similar photo publishing product. *Id*. at *2. The Court weighed this evidence and granted Shutterfly's requested relief, which was far less onerous then the extraordinary list of actions Loop AI asks the Court to take in this case. Loop AI has made no remotely comparable showing here.

Accordingly, while future discovery in this action may support Loop AI's claims, the evidence presented to this Court in conjunction with the request for a temporary restraining order does not demonstrate that Loop AI is likely to prevail against any Defendant under USTA.

### ii. Breach of Contract

Loop AI argues that it is likely to prevail on its breach of contract claim against Defendant Gatti because she (1) allegedly disclosed confidential and trade secret information without authorization; and (2) engaged in other businesses without Loop AI's express written consent.

Dkt. No. 9 at 12-13.

Loop AI's first argument fails for the same reasons as its trade secret misappropriation claim under USTA. At this stage, for the reasons explained above, Loop AI has not shown that it is likely to succeed on its claim that any of the Defendants misappropriated or used any trade secrets owned by Loop AI. It follows that Loop AI also has not shown a likelihood of success on its breach of contract claim premised on Defendant Gatti's alleged misappropriation.

Loop AI's second theory fares better. While Defendant Gatti challenges the manner in which her employment agreement was presented to her and asserts that she informed Loop AI of her other business commitments, she does not appear to contest that her employment contract requires Loop AI's written consent and that she never received such consent prior to engaging in other business activities. *See* Dkt. 23 at 9.

Accordingly, at this early stage of the litigation, the Court believes that there is at least some likelihood of Loop AI prevailing on a breach of contract claim against Defendant Gatti. However, Loop AI has not shown that it is likely to prevail on any cause of action asserted against the other Defendants.

## B. Likelihood of Irreparable Harm

"A plaintiff who seeks preliminary injunctive relief must show 'that irreparable injury is likely in the absence of an injunction.'" *M.R. v. Dreyfus*, 697 F.3d 706, 728 (9th Cir. 2012) (quoting *Winter*, 555 U.S. at 22); *Alliance*, 632 F.3d 1127, 1131 (9th Cir. 2011) ("plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction."). "Speculative injury does not constitute irreparable injury." *Goldie's Bookstore v.Super. Ct.*, 739 F.2d 466, 472 (9th Cir. 1984).

Loop AI argues that it will suffer irreparable harm absent injunctive relief because: (1) Defendant's continued use of Loop AI's trade secrets will "essentially cause the ultimate demise of the start-up company;" (2) Defendant Gatti has demonstrated that she will not observe her obligations to preserve evidence; and (3) absent an asset freeze, the Defendants will transfer their assets outside the Court's jurisdiction in an effort to frustrate Loop AI's potential recovery in this case. *See* Dkt. No. 9 at 14-15. These contentions are not supported by the record.

First, Loop AI's contention that it will suffer irreparable harm from "Defendants' continued use of the Company's confidential information and trade secrets," *id*. at 14, is unsupported. Setting aside the lack of a sufficient showing that Defendants misappropriated any identified confidential or trade secret information, Loop AI has provided no specific evidence that any of the information allegedly taken is so sensitive that the company's continued existence would be threatened if the Court does not grant the requested injunction. Instead, Loop AI's Application suggests the opposite. According to Loop AI, Defendant Gatti "has already been working full time for the Almaviva Defendants and others for more than 1 year . . . ." Dkt. No. 9 at 11 (emphasis removed). Loop AI offers no explanation to square (1) its representation that the company will perish absent immediate injunctive relief with (2) the fact that the company has survived Defendant Gatti's alleged misconduct for more than a year. And while discovery obviously will be needed to develop the facts, all Defendants flatly deny under penalty of perjury that they have taken or used Loop AI's confidential information or trade secrets. *See* Dkt. Nos. 23-1 at ¶ 9; 24-1 at ¶ 25; 25-1 at ¶¶ 31-32. The Almawave Defendants represent that they have already searched their files for such information without finding any, and state that if they do find any they will destroy it or return it to Plaintiff.[2] *See* Dkt. No. 25-1 at ¶¶ 31-32.

Second, Loop AI's argument that Defendant Gatti is likely to destroy relevant evidence is equally unsupported. For example, Loop AI accuses Defendant Gatti of "initiating an attack on her former corporate account" and deleting information from her calendar, even though she no longer had the password to access Loop AI's systems. *See* Dkt. No. 9 at 3. Loop AI's sole "evidence" of this serious allegation appears to be Mr. Calafiore's speculation that "Gatti could have been the only person interested in accessing and deleting the information that the Company was analyzing in connection with this investigation." *See* Dkt. No. 9-3 at ¶ 17. Mr. Calafiore's suspicions are not a proper ground for injunctive relief. All of the Defendants are represented by

---

[2] While the Court appreciates that the Defendants have taken proactive steps to locate potentially relevant documents, the Court reminds all parties that they have a duty to *preserve* potentially relevant evidence. In no circumstances should a party "destroy" documents or information in any way related to the subject matter of this litigation, even if that information could constitute a trade secret of Loop AI.

7

counsel admitted to practice before this Court and are expected to advise their clients of their duty to preserve potentially relevant evidence and the serious consequences for failing to do so.[3]

Third, Loop AI has adduced no evidence that any Defendant is hiding or dissipating assets. Loop AI has provided the Court with evidence that Defendant Gatti (who appears to have spent many years living in Europe) has bank accounts in both the United States and Europe, and that she has spoken to or met with a handful of bankers over the last several months. Dkt. No. 9 at 6; Dkt. No. 10 at ¶¶ 4-12. There is no evidence that these activities were designed to secrete assets to frustrate any eventual recovery in this action. *See Maui Land & Pineapple Co. v. Hamada*, 2000 WL 1093085, at *2 (N.D. Cal. Aug. 2, 2000) (denying application for a temporary restraining order prohibiting dissipation of defendant's business where the "plaintiff makes no cognizable allegations of dissipation."). Nor has Loop AI provided evidence concerning the financial activities of any of the other Defendants that could plausibly support such a finding. Freezing the Defendants' assets under these circumstances is unjustified.

In sum, Loop AI has provided insufficient evidence to demonstrate that irreparable harm is likely. For this reason alone, Loop AI's Application must be denied. *See Alliance*, 632 F.3d at 1131.

### C. Balance of Equities

Before injunctive relief may be imposed, the movant must demonstrate that the balance of equities tips in its favor. *Winter,* 55 U.S. at 20. Here, the extraordinary injunctive relief requested by Loop AI would impose a substantial burden on the Defendants, both in terms of the legal costs of compliance and the ability to operate their businesses and pay for their personal expenses. While Loop AI challenges the evidence presented to support the Defendants' claims of hardship, *see* Dkt. No. 28-1 at 3, there can be no reasonable argument that precluding an individual or company from using any of its assets presents a tremendous burden, even if that limitation is imposed for only a brief period. When weighed against the evidentiary showing offered by Loop AI to support the extraordinary preliminary relief sought in its Application, there is no question

---

[3] The Almawave Defendants have represented to the Court that they have already taken measures to preserve and locate potentially relevant documents. *See* Dkt. No. 25 at 20.

8

that the balance of equities favors denial.

### D. Consideration of the Public Interest

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982)). In this case, Loop AI's proposed relief would have significant consequences on individuals other than the Defendants. For example, an asset freeze would necessarily affect the non-party employees of the Defendants as well as their families and dependents. Because Loop AI has fallen well short of the required showing, the final *Winter* factor weighs against granting injunctive relief.

## III. CONCLUSION

Although Loop AI has demonstrated some likelihood of success on the merits of its breach of contract claim against Defendant Gatti, all of the other factors weigh heavily against granting any of the extraordinarily broad preliminary relief requested, whether that relief is couched as a temporary restraining order or a preliminary injunction. Accordingly, Loop AI has failed to satisfy the standard required for the issuance of any form of preliminary injunctive relief. The Application is **DENIED**.

**IT IS SO ORDERED.**

Dated: March 12, 2015

HAYWOOD S. GILLIAM, JR.
United States District Judge