1  THOMAS J. LOSAVIO, SBN 51023
   JAMES F. REGAN, SBN 252199
2  LOW, BALL & LYNCH
   505 Montgomery Street, 7th Floor
3  San Francisco, California 94111
   Telephone:    (415) 981-6630
4  Facsimile:    (415) 982-1634
   Email: tlosavio@lowball.com
5  Email: jregan@lowball.com

6
   Attorneys for Defendants
7  ANNA GATTI and IQ SYSTEMS, LLC

8

9              UNITED STATES DISTRICT COURT

10         FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12  LOOP AI LABS, INC., a Delaware      Case No. 3:15-CV-00798-HSG
    Corporation,
13                                      **MEMORANDUM OF POINTS AND**
                     Plaintiff,         **AUTHORITIES IN SUPPORT OF**
14                                      **DEFENDANTS' PARTIAL MOTION TO**
            vs.                         **DISMISS (F.R.C.P. RULE 12(b)(6)) AND,**
15                                      **IN THE ALTERNATIVE, MOTION TO**
    ANNA GATTI, et al.,                 **STRIKE (F.R.C.P. RULE 12(f)(2))**
16
                     Defendants.
17
                                        Date:       April 23, 2015
18                                      Time:       2:00 p.m.
                                        Judge:      Hon. Haywood S. Gilliam Jr.
19                                      Location:   San Francisco Courthouse,
                                                    Courtroom 15—18th Floor
20                                                  450 Golden Gate Avenue,
                                                    San Francisco, CA 94102
21

22

23

24

25

26

27

28

                                        i
─────────────────────────────────────────────────────────────────
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS (F.R.C.P.
RULE 12(b)(6)) AND, IN THE ALTERNATIVE, MOTION TO STRIKE (F.R.C.P. RULE 12(f)(2))

# TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION ...............................................................................................................1

II.   FACTUAL ALLEGATIONS .............................................................................................3

III.  ARGUMENT ......................................................................................................................3

      A.    Legal Standard: Rule 12(b)(6) Motion to Dismiss. ...............................................3

      B.    Plaintiff's Alternative Claims Never Existed under California Law...................3

      C.    Even if the Plaintiff's Alternative Claims had Existed Historically, the California
              UTSA Would Now Preempt Them. .......................................................................6

            1.   UTSA Preemption by Operation of Common Law. ................................7

            2.   UTSA Preemption by Operation of Statute.............................................8

            3.   The Legislative History Supports Broad UTSA Preemption. .................9

            4.   California Courts Reject Plaintiff's Theory. .........................................10

            5.   Other State Supreme Courts Favor the Majority Position....................11

            6.   Better-Reasoned District Court Cases Take the Majority Position. ....................12

            7.   Plaintiff's Minority Position Theory Would Nullify the UTSA. ........................14

            8.   UTSA Preemption at the Pleading Stage is Important for this Case....................15

      D.    Plaintiff's Prospective Economic Advantage Claim Fails for Other Reasons. ...............17

IV.   CONCLUSION ................................................................................................................18

TABLE OF AUTHORITIES

**Page(s)**

C̲ᴀsᴇs̲

*Accuimage Diagnostics Corp. v. Terarecon, Inc.*,

    260 F. Supp. 2d 941, 953 (N.D. Cal. 2003)--------------------------------------------------------13

*Adkins v. Model Laundry Co.*,

    92 Cal. App. 575, 583 (1928)--------------------------------------------------------------------- 5

*Alvarado v. Federal Express Corp.*,

    2008 WL 2340211 at *6 (N.D. Cal. June 5, 2008)-------------------------------------------------12

*American Paper & Packaging Prods. v. Kirgan*,

    183 Cal. App. 1318, 1326 (1986) --------------------------------------------------------------15

*American Philatelic So'y v. Claibourne*,

    3 Cal.2d 689, 697-99 (1935)--------------------------------------------------------------------- 6

*Amron Int'l Diving Supply, Inc. v. Hydrolinx Diving Comm., Inc.*,

    2011 WL 5025178, *10 (S.D. Cal. Oct. 21, 2011)------------------------------------------------14

*Art of Living Found. v. Does*,

    2011 WL 2441898, *13 (N.D. Cal. June 15, 2011)-----------------------------------------------15

*Ashcroft v. Iqbal*,

    129 S.Ct. 1937, 1951 (2009) ------------------------------------------------------------------- 3

*Bell Atlantic Corp. v. Twombly*,

    127 S.Ct. 1955, 1964-65 (2007)--------------------------------------------------------------- 3

*Bishop v. Hyundai Mtr. Am.*,

    44 Cal. App. 4th 750, 757 (1996) ------------------------------------------------------------- 8

*BlueEarth Biofuels, LLC.* ---------------------------------------------------------------------12

*Briseno v City of Santa Ana*,

    6 Cal. App. 4th 1378, 1382 (1992)------------------------------------------------------------- 9

*Buxton v. Eagle Test Sys., Inc.*,

    2010 WL 1240749, *1 (N.D. Cal. Mar. 26, 2010) ---------------------------------------------17

TABLE OF AUTHORITIES

**Page(s)**

*Cadence Design Systems, Inc, v. Avant! Corp.,*

29 Cal. 4th 215, 224 (2002)--------------------------------------------------------------10

*Camreta v. Greene,*

131 S.Ct. 2020, 2033 n. 7 (2011)--------------------------------------------------------13

*Cell-Tech Comm., Inc. v. Los Angeles Cell. Tech. Co.,*

20 Cal.4th 163, 193 (1999) -------------------------------------------------------------- 6

*Cenveo Corp. v. Slater,*

2007 WL 527720, *4 (E.D. Pa. Feb. 12, 2007) -----------------------------------------11

*Computer Economics, Inc. v. Gartner Group, Inc.,*

1999 WL 331778020, *6-7 (S.D. Cal. 1999)---------------------------------------------16

*Diamond Power Int'l, Inc. v. Davidson,*

540 F. Supp. 2d 1322, 1345-46 (N.D. Ga. 2007) --------------------------------------14

*Digital Envoy, Inc. v. Google, Inc.,*

370 F. Supp. 2d 1025, 1034-35 (N.D. Cal. 2005)--------------------------------------13

*Don King Prod./Kingvision v. Lovato,*

911 F. Supp. 419, 426 (N.D. Cal. 1995) ------------------------------------------------ 5

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.,*

654 F.3d 989, 997 (9th Cir. 2011) ------------------------------------------------------15

*Fortna v. Martin,*

158 Cal. App. 2d 634, 639 (1958) ------------------------------------------------------ 5

*Fremont Indem. Co. v. Fremont Gen. Corp.,*

148 Cal. App. 4th 97, 119-26 (2007) --------------------------------------------------- 5

*Hauck Mfg. Co. v. Astec Indus., Inc.,*

375 F. Supp. 2d 649, 661 (E.D. Tenn. 2004) ------------------------------------------14

*Heller v. Cepia,*

LLC, 2012 WL 13572, *7 (N.D. Cal. Jan. 4, 2012) -----------------------------------13

TABLE OF AUTHORITIES

**Page(s)**

*I.E. Assoc. v. Safeco Title Ins. Co.,*

39 Cal. 3d 281, 289 (1985)------------------------------------------------------------------ 8

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.,*

171 Cal. App. 4th 939, 957-60 (2009)----------------------------------------------------10

*Korea Supply Co. v. Lockheed Martin Corp.,*

29 Cal. 4th 1134, 1153 (2003)------------------------------------------------------------17

*Kremen v. Cohen,*

337 F.3d 1024, 1031 (9th Cir. 2003) ---------------------------------------------------- 5

*Kwikset v. Superior Court,*

51 Cal.4th 310, 337 (2011) ----------------------------------------------------------------10

*Las Tunas Beach Geologic Hazard Abatement Dist. v. Superior Court,*

38 Cal. App. 4th 1002, 1012 (1995) ----------------------------------------------------- 8

*Leatt Corp. v. Innovative Safety Tech., LLC,*

2010 WL 2803947, *6 & n.5 (S.D. Cal. July 15, 2010)--------------------------------15

*Mattel, Inc. v. MGA Ent't, Inc.,*

782 F. Supp. 2d 911, 986-87 (C.D. Cal. 2011) ---------------------------------------13

*Matthews Paint Co. v. Seaside Paint and Lacquer Co.,*

148 Cal. App. 2d 168, 172 (1957) -------------------------------------------------------15

*Olshewski v. Hudson,*

87 Cal. App. 282, 286 (1927)-------------------------------------------------------------- 5

*Pacific Scene, Inc. v. Penasquitos, Inc.,*

46 Cal. 3d 407, 411 (1988)----------------------------------------------------------------- 7

*Payne v. Elliot,*

54 Cal. 339, 341 (1880) -------------------------------------------------------------------- 5

*People v. Frazier,*

128 Cal. App. 4th 807, 825 (2005)-------------------------------------------------------15

# TABLE OF AUTHORITIES

**Page(s)**

*Sargent Fletcher, Inc. v. Able Corp.*,

110 Cal. App. 4th 1658, 1659 (2003)-------------------------------------------------------------16

*Scandinavian Air Serv. v. United Aircraft*,

601 F.2d 425, 429 (9th Cir. 1979) ---------------------------------------------------------------12

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,

983 F. Supp. 1303, 1313 (N.D. Cal. 1997) -----------------------------------------------------18

*Silicon Labs Integration, Inc. v. Melman*,

2010 WL 890140, *2 (N.D. Cal. Mar. 8, 2010) ------------------------------------------------17

*Silvaco Data Systems v. Intel Corp.*,

184 Cal. App. 4th 210, 232-40 (2010)-----------------------------------------------------------10

*Sunpower Corp. v. SolarCity Corp.*,

No. 12–CV–00694–LHK, 2012 WL 6160472, at *5 (N.D. Cal. Dec. 11, 2012) -----------------------13

*Thacker v. FCC*,

503 F. 3d 984, 993-94 (9th Cir. 2007)-----------------------------------------------------------15

*Thompson v. Impaxx, Inc.*,

113 Cal. App. 4th 1425 (2003) -------------------------------------------------------------------- 4

*TPS Utilicom Serv., Inc. v. AT&T Corp.*,

223 F. Supp. 2d 1089, 1106-07 (C.D. Cal. 2002) ---------------------------------------------17

*Van de Kamp v. Gumbiner*,

221 Cal. App. 3d 1260, 1285 (1990) ------------------------------------------------------------ 9

*Vernon v. City of Los Angeles*,

27 F.3d 1385, 1391 (9th Cir. 1994)--------------------------------------------------------------12

*VSL Corp. v. General Tech., Inc.*,

46 U.S.P.Q.2d 1356, 1359 (N.D. Cal. 1998) ---------------------------------------------------16

*West v. Amer. Tel & Tel. Co.*,

311 U.S. 223, 237 (1940) --------------------------------------------------------------------------12

TABLE OF AUTHORITIES

**Page(s)**

*Westside Center Assoc. v. Safeway Stores 23, Inc.*,

   42 Cal. App. 4th 507, 527-28 (1996) --------------------------------------------------------------17

*Zengen, Inc. v. Comerica Bank*,

   41 Cal.4th 239, 255 (2007) ------------------------------------------------------------------ 8


OTHER AUTHORITIES

Cal. Bus. & Prof. Code § 16600-------------------------------------------------------------------- 4

Cal. Civ. Code § 2019.210------------------------------------------------------------------------7, 15

Cal. Civ. Code § 3426.1 -----------------------------------------------------------------7, 13, 15, 16

Cal. Civ. Code § 3426.3 --------------------------------------------------------------------------16

Cal. Civ. Code § 3426.4 --------------------------------------------------------------------------16

Cal. Civ. Code § 3426.7 --------------------------------------------------------------------------- 9

Cal. Civ. Code § 3426.8 --------------------------------------------------------------------------12

Cal. Civ. Code § 3426.11 -------------------------------------------------------------------------- 7

TRADE SECRETS PRACTICE IN CALIFORNIA § 2.32 (2010)-------------------------------------- 4

## I.    **INTRODUCTION**

By this motion, Defendants ANNA GATTI ('GATTI')and IQ SYSTEMS, LLC ("IQ") respectfully request an order dismissing eight of Plaintiff LOOP AI LABS, INC., ("LOOP")'s fourteen causes of action for failure to state a claim and, in the alternative, to strike portions thereof and one cause of action because Plaintiff did not allege facts sufficient to state a claim. Eight of the claims are alleged under a legal theory that does not exist under California law, and the Uniform Trade Secrets Act would preempt them if the theory did exist. One claim also fails because Plaintiff does not properly plead it.[1]

Plaintiff alleges that GATTI and the other defendants engaged in unlawful computer access, that they took customer- and business-related information, and thus misappropriated trade secrets. Whatever the ultimate merits, this portion of the Complaint is relatively run-of-the-mill.

But there is more: Plaintiff seeks to radically rewrite California's intellectual property laws and create a new category of Intellectual Property protection for something it calls "proprietary information" which it explicitly distinguishes from "trade secrets".[2]  Plaintiff's goal is obvious, given the flurry of motion practice and case law in recent years on the issue of Uniform Trade Secrets Act preemption of alternative tort claims. Specifically, Plaintiff wants to plead around the UTSA and give itself a fallback, insurance position where the Defendants could be liable even if the information at issue turns out not to be secret. Plaintiff, in short, wants to nullify the UTSA's secrecy requirement, and thus rewrite the balance California's legislature struck between the interests of employers, former employees, and those who hire them. In this too-good-to-be-true scenario, the UTSA would be rendered superfluous, and California's employee mobility rules would be radically narrowed.

---

[1] Counsel for plaintiff wishes to publicly acknowledge the contribution of Ulrico S. Rosales, Esq. of the law firm of Wilson Sonsini, Goodrich & Rosati and David R. Burtt, Esq. of the law firm of Ongaro Burtt & Louderback, LLP.  This Memorandum, in substantial part, is based on their memoranda filed in *Sunpower Corp. v. SolarCity Corp.*, No. 12–CV–00694–LHK, 2012 WL 6160472, (N.D. Cal. Dec. 11, 2012). Errors in the interpretation or application of the arguments made and law cited there are the fault of the author not theirs.

[2] The phrase "proprietary information" or "proprietary materials" appears in the following paragraphs of Plaintiff's complaint: 1,4,17,18,76,92,93,125,132,141,169,170,188,225,231,233,234,235,236,243,245 and 248. The two phrases are treated as one in this Memoradum and referenced as "proprietary information". The two phrases are distinguished from "trade secrets" wherever they appear throughout the Complaint.

Whether Plaintiff can plead such claims is a question of law. The answer is "no," for two simple reasons: first, California never recognized claims against former employees for "non-trade secret proprietary information," even before the UTSA was enacted in 1985. Second, even if such claims had existed historically, the UTSA would preempt them. Indeed, California's courts have made absolutely clear that California follows the majority position on UTSA preemption — a position which prohibits such claims.

Specifically, the California UTSA preempts causes of action that repackage trade secret claims under a different label in order to reduce the elements the plaintiff must prove. The California Supreme Court's rules for interpretation of state statutes, the UTSA itself, its legislative history, and controlling California cases all make clear that the UTSA occupies the field and bars alternative tort claims for misuse of commercial information said to be protectable but not "secret." This statutory preemption promotes uniformity among the states that have enacted the UTSA, and prevents parties from avoiding the UTSA's rights, remedies, burdens of proof, and procedural requirements by relabeling a trade secret claim. For these reasons, defendant respectfully requests that the Court dismiss Causes of Action 1,2,5,6,11,12,13 and 14.[3]

Separately, Plaintiff alleges in conclusory fashion that Defendants have interfered with its prospective economic relations with customers, but it fails to name a single such customer and fails to allege any facts that, under *Twombly* and *Iqbal*, could support that cause of action. For this reason, Defendant requests that the Court dismiss Causes of Action 9.

In the alternative, if the court is of the view that dismissal is not appropriate, plaintiff requests the court to strike the phrases "proprietary information" and "proprietary materials" each time it appears in the complaint.[4]

---

[3] While each of the other 6 causes of action does not explicitly allege "proprietary information" in its charging allegations, each does "incorporate by reference" paragraphs where that phrase appears after the heading "General Allegations Common to All Causes of Action (Complaint, p.13, l.15, ¶54 and fol., specifically at ¶76, ¶92 and ¶93). See, Complaint ¶148,¶156,¶189,¶196,¶202 and ¶214 for paragraphs incorporating by reference preceding paragraphs. To that extent this motion is equally applicable to all causes of action in the Complaint.

[4] GATTI and IQ will file their respective Answers to the Complaint after the motion challenging the pleadings is resolved, as the courts permit when there is a partial motion to dismiss. See *Palantir Tech., Inc. v Palantire.net*, 2011 WL 62411, *2 (N.D. Cal. Jan. 7, 2011)(partial motion to dismiss stays

-2-

## II.     FACTUAL ALLEGATIONS

Plaintiff alleges that it owns trade secrets in unspecified customer-related information and other commercial information. Plaintiff's Complaint alleges that Defendants violated the Uniform Trade Secrets Act, committed computer fraud, conspired in a RICO enterprise and committed various other torts to damage LOOP. Plaintiff also alleges that GATTI alone breached her employment contract, breached the duty of good faith and fair dealing, and diverted corporate opportunities,

Additionally, and in an apparent effort to plead around the Uniform Trade Secrets Act and render information protectable under California law even if it turns out to be non-secret — Plaintiff alleges a host of backup, alternative and/or hybrid causes of action. In each, Plaintiff contends that it owns information which it has labeled as "proprietary information" or "proprietary materials" See Complaint ¶¶ 1,4,17,18,76,92,93,125,132,141,169,170,188,225,231,233,234,235,236,243,245 and 248.

The causes of action in which these phrases explicitly appear, excluding the claims where the phrase is incorporated by referenced only are: (1) RICO (First Cause of Action - ¶125 and ¶132); (2) Computer Fraud and Abuse Act (Second Cause of Action - ¶141); (3) Fraud (Fifth Cause of Action - ¶169-170); (4) Breach of Contract (Sixth Cause of Action - ¶188); (5) Trade Secrets (Eleventh Cause of Action - ¶225 and ¶231); (6) Conversion (Twelfth Cause of Action - ¶233-¶236); (7) Unfair Competition under California Business & Professions Code section 17200 (Thirteenth Cause of Action - ¶243 and ¶245) and (8) Unjust Enrichment (Fourteenth Cause of Action - ¶248).

## III.     ARGUMENT

### A.     Legal Standard: Rule 12(b)(6) Motion to Dismiss.

In the face of a Rule 12(b)(6) motion to dismiss, conclusory assertions unsupported by facts and formulaic recitation of the elements of a claim are insufficient. See *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1951 (2009); *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007).

### B.     Plaintiff's Alternative Claims Never Existed under California Law.

In its Complaint, either separately stated or conjoined with allegations of trade secret

time to answer remaining claims); *Batdorf v Trans Union*, 2000 WL 635455, *5 (N.D. Cal. May 8, 2000)(same); WRIGHT & MILLER, FED. PRACTICE & PROC. §1346 (2010).  These Defendants reserve their right to challenge the remaining causes of action on the pleadings.

1   misappropriation, Plaintiff alleges that the defendants took and misused non-trade secret "proprietary

2   information" or "proprietary materials". This is an intellectual property claim because Plaintiff seeks to

3   control the use and dissemination of intangible commercial information. Plaintiff does not, by contrast,

4   allege misuse of tangible property or trespass upon real property.

5        Plaintiff invented these claims: there is no such thing, as a matter of California law, as a tort

6   claim against a departing employee (or the company that hires the employee) for misuse of "non-trade

7   secret proprietary information."

8        Indeed, using the word "proprietary" — which means having an ownership interest in

9   something — only begs the question of what provision of positive law could give Plaintiff a property

10   right in such information. If Plaintiff claims to own information protected by federal law — patents,

11   copyrights, trademarks, or trade dress — it would have raised such claims. Plaintiff has separately

12   raised a specific UTSA trade secret claim (seemingly for the exact same customer-and business-related

13   information). So what could be left?

14        The answer is nothing. When a former employer sues a departing employee (and/or the new

15   employer), California's strong public policy in favor of employee mobility has historically limited the

16   employer's claim to trade secret law: information that is (1) not generally known, (2) that is the subject

17   of reasonable security measures, and (3) that has at least some value to competitors. There was never

18   such thing as an alternative tort claim under which a former employer could sue a former employee for

19   "non-secret" information that did not satisfy those three criteria. That is one reason California law

20   famously prohibits non-competition agreements in employment contracts (except for contract terms

21   barring trade secret misuse).

22        Commercial information under California law is either a UTSA trade secret, subject to a

23   contractual secrecy obligation, subject to the patent, copyright, or trademark laws, or freely available

24   for anyone to use. See Cal. Bus. & Prof. Code § 16600; *Thompson v. Impaxx, Inc.*, 113 Cal. App. 4th

25   1425 (2003) (collecting pre-UTSA and post-UTSA cases; making clear that attempt to bar employee

26   from using non-secret information after resignation is an illegal trade restraint under section 16600);

27   Pooley et al., TRADE SECRETS PRACTICE IN CALIFORNIA § 2.32 (2010) ("The dividing line

28   between what § 16600 prohibits and what it allows is straightforward: If information is nonsecret, the

1  statute permits former employees to use it; if information is secret (nonpublic), the statute allows

2  contracts barring use of that information." (citing *Fortna v. Martin*, 158 Cal. App. 2d 634, 639 (1958));

3  Graves, Nonpublic Information and California Tort Law, 10 UCLA J. OF LAW. & TECH. 1 (2006)

4  (outlining history of California intellectual property claims from the nineteenth century to the UTSA's

5  enactment in 1985; concluding that no such claims existed against departing employees) (PDF available

6  online).

7       If it were otherwise, every defendant who historically prevailed in the many published

8  California decisions by showing that information was not secret would have lost instead, because the

9  plaintiff would still have been able to proceed even if the information were not secret. An examination

10  of Plaintiff's specific claims shows that none exist under California law:

11     • Conversion: The California courts ruled long ago that conversion is not a proper cause of action
12  for customer list-based accusations against departing employees — the same general fact pattern
   Plaintiff alleges here. See *Olshewski v. Hudson*, 87 Cal. App. 282, 286 (1927) (rejecting
13  conversion claim for trade secret-type customer list fact pattern); *Adkins v. Model Laundry Co.*,
   92 Cal. App. 575, 583 (1928) (same). More specifically, no California court has ever allowed a
14  conversion claim for intangible information said to be "non-trade secret proprietary
   information." And Plaintiff does not allege facts to support the extremely limited types of
15  intangible information on which courts have recognized conversion claims (such as improper
   control of an Internet domain, withholding of fixed monies, diversion of fixed and specific
16  broadcasts, or misuse of intangibles that must be embodied in a specific tangible document).
   See, e.g., *Kremen v. Cohen*, 337 F.3d 1024, 1031 (9th Cir. 2003) (cybersquatting on an Internet
17  domain); *Fremont Indem. Co. v. Fremont Gen. Corp.*, 148 Cal. App. 4th 97, 119-26 (2007)
   (monies relating to reduced tax liability); *Don King Prod./Kingvision v. Lovato*, 911 F. Supp.
18  419, 426 (N.D. Cal. 1995) (satellite television transmission); *Payne v. Elliot*, 54 Cal. 339, 341
19  (1880) (shares in stock certificates).

20     • Trespass to Chattels: Likewise, there is no historical California case where a former employer
   was permitted to allege an intellectual property claim against a departing employee under a
21  trespass to chattels label — much less for "non-trade secret proprietary information." See
   generally Graves, supra (claim not listed among the host of pre-UTSA claims brought against
22  former employees in California); Olshewski, 87 Cal. App. 2d at 288 (explaining in detail why a
   trade secret-type claim for customer lists is not cognizable in trover or trespass to chattels, for
23  the same reasons the plaintiff's conversion claim was not cognizable).

24

25     • Breach of Confidence: The same is true for breach of confidence. The tort did exist historically,
   before the UTSA was enacted, but not as a vehicle to sue departing employees, and certainly not
26  to sue departing employees for information said to be "non-trade secret" and "proprietary." See
   Graves, supra ¶¶ 49-50 (discussing history of claim in California).
27

28     • Common Law Unfair Competition: There are two types of common law unfair competition.

First, "unfair competition" was a common label for a trade secret claim in the decades before the UTSA was enacted. No such cases permitted liability against departing employees for "non-trade secret proprietary information." See id. ¶¶ 48 (explaining history of claim). All such claims are now preempted by the UTSA, as discussed below. Second, and entirely separately, "common law unfair competition" is a tort claim for palming-off, where the defendant passes off the plaintiff's goods as its own or hijacks its goodwill. See, e.g., *Cell-Tech Comm., Inc. v. Los Angeles Cell. Tech. Co.*, 20 Cal.4th 163, 193 (1999) (explaining nature of claim); *American Philatelic So'y v. Claibourne*, 3 Cal.2d 689, 697-99 (1935) (example of a common law unfair competition claim involving deceitful sales).

In summary, Plaintiff's made-up theories never existed historically under California law. Plaintiff deliberately invented it here as an attempt to create a non-existent category of California intellectual property law. Because no such category exists, and because recognition of such a category would conflict with decades of California law and its oft-expressed public policy in favor of employee mobility, the causes of action that explicitly or implicitly invoke that concept should be dismissed and Plaintiff's claim for tortuous interference with prospective economic advantage and unfair competition under section 17200 should be dismissed because it depends upon such claims.

## C.    Even if the Plaintiff's Alternative Claims had Existed Historically, the California UTSA Would Now Preempt Them.

Even if Plaintiff's alternative tort claims had historically existed under California's trade secret and employee mobility laws, California's UTSA would nonetheless preempt them as a matter of law.

UTSA preemption disputes sometimes arise when a plaintiff attempts to raise an old-fashioned, pre-UTSA trade secret cause of action, such as "common law trade secret misappropriation" — causes of action that were historical vehicles for trade secret claims before the UTSA was enacted on January 1, 1985. Here, as set forth above, Plaintiff's claims do not have even the benefit of that sort of pedigree. Thus, we begin the UTSA preemption analysis in an unusual posture: Plaintiff seeks to proceed on a theory that never existed before the UTSA was enacted, and to do so despite the UTSA's now firmly established preemptive effect.

Around the country, there is a split — a majority position and a minority position — as to whether a plaintiff can deliberately plead around the UTSA by alleging alternative tort or statutory claims aimed at creating state law intellectual property protection for commercial information that proves to be non-secret. Because the UTSA imposes a secrecy requirement and does not allow parties to claim IP protection otherwise, trade secret plaintiffs have fought mightily to convince courts that the

UTSA is not really a "uniform" act, that the UTSA's secrecy requirement is something that ought to be eliminated, and that the intent of the statute's drafters was to allow plaintiffs to avoid the statute in cases where the application of the statute would defeat the plaintiff's claim.

By 2010, the California appellate courts (and most federal district courts applying California law) had conclusively settled the UTSA preemption question by expressly rejecting the minority position, and by taking the broad, majority position. Specifically, California's UTSA preempts as a matter of law any common law tort claims based upon misuse of business information said to be "confidential" or "proprietary" but "not secret" — such as breach of fiduciary duty, conversion, unjust enrichment, and the like. This rule of statutory preemption results from the California Supreme Court's mandate in favor of statutory preemption (including under other Uniform Acts), the text of the statute itself, the statute's legislative history in California, California case law, and the majority practice in other jurisdictions.

Nonetheless, plaintiffs continue to press the issue, and some federal district courts have issued slip rulings entirely inconsistent with California law, generally without reference to controlling California principles. Here, for that reason, Defendants will explain in depth why Plaintiff's obvious effort to plead around the UTSA is deficient as a matter of law.

### 1.     UTSA Preemption by Operation of Common Law.

Voted into law in 1984, California's Uniform Trade Secrets Act provides a detailed and comprehensive scheme to regulate claims concerning the alleged misuse of confidential information. See Cal. Civ. Proc. Code § 3426-3426.11. The statute defines secrecy and non-secrecy, ways to misappropriate information, defenses, remedies, sanctions, protective orders, a statute of limitations, and other matters. See id. A discovery statute enacted alongside the UTSA provides a mechanism for pre-discovery identification of claims. See Cal. Civ. Proc. Code § 2019.210.

The California Supreme Court has set forth clear rules governing the preemptive effect of such comprehensive statutes. Legislation which carefully describes the course of conduct affected and spells out certain limitations "indicates a legislative intent that the statute should totally supersede and replace the common law dealing with the subject matter" — even if there is no express preemption clause included in the statute at issue. See *Pacific Scene, Inc. v. Penasquitos, Inc.*, 46 Cal. 3d 407, 411 (1988)

1  (holding that Corporations Code enactments addressing corporate dissolution "precluded resort to

2  dormant common law doctrines for the provision of extra-statutory relief."); *I.E. Assoc. v. Safeco Title*

3  *Ins. Co.*, 39 Cal. 3d 281, 289 (1985) (foreclosure statutes occupy the field and impliedly barred claim

4  premised on non-statutory allegations against trustee).

5        There is no question that the UTSA is a comprehensive statute encompassing its field. Thus,

6  even if the UTSA were silent on preemption of common law claims seeking state law intellectual

7  property protection for commercial information said to be confidential or proprietary, the statute would

8  have preemptive effect and displace such claims.[5]

9                **2.    UTSA Preemption by Operation of Statute.**

10       Separately, California courts enforce express preemption clauses contained in comprehensive

11 statutes (including other Uniform Acts) to preclude non-statutory tort claims when parties seek to plead

12 around the statute at issue. See, e.g., *Zengen, Inc. v. Comerica Bank*, 41 Cal.4th 239, 255 (2007)

13 (applying preemption language in Uniform Commercial Code to bar common law claims that sought to

14 evade statute's damages rules); *Bishop v. Hyundai Mtr. Am.*, 44 Cal. App. 4th 750, 757 (1996)

15 (applying UCC preemption clause to reject extra-statutory damages claims; "We are not free to ignore

16 the Legislature's unambiguous indication of intent and supplement the Act's statutory remedies with

17 additional ones drawn from the law of torts."); *Las Tunas Beach Geologic Hazard Abatement Dist. v.*

18 *Superior Court*, 38 Cal. App. 4th 1002, 1012 (1995) (applying preemption language in Government

19 Code abatement statute to prohibit city from resorting to common law, non-statutory procedures).3

20 Notably, and as discussed below, one of the California appellate cases which ruled in favor of broad

21 UTSA preemption relied in part on the California Supreme Court's holding in Zengen to do so.

22       As with these other California statutes, the California legislature incorporated a preemption

23 clause into the text of the UTSA. Under that provision, the only exceptions to the UTSA's preemption

24 scheme are spelled out in the statute itself:

25

26 _____

27       [5] Plaintiff has alleged various wrongdoings relating to generalized "confidential information" at
   Complaint paragraphs:
   18,45,79,81,83,86,89,90,92,97,122,125,129,131,132,136,141,144,175,179,180,181, 192,195,197,201,

28 207,219,220,221,231,233,234,235,236,243,245,249 and 250.

-8-

> This title does not affect (1) contractual remedies, whether or not based
> upon misappropriation of a trade secret, (2) other civil remedies that are
> not based upon misappropriation of a trade secret, or (3) criminal
> remedies, whether or not based upon misappropriation of a trade secret.

See Cal. Civ. Code § 3426.7(b). In other words, a party can allege a contract claim, and the district attorney can bring a criminal trade secret proceeding, even if the plaintiff alleges a UTSA claim. But a plaintiff cannot seek "other civil remedies" — tort or statutory claims — if they are "based upon misappropriation of a trade secret."[6]

### 3.    The Legislative History Supports Broad UTSA Preemption.

On top of California's general rules for preemption and the UTSA's express preemption clause, the legislative history of the California UTSA clearly indicates its preemptive sweep.

When determining the preemptive effect of a statute, courts make use of the statute's legislative history. See, e.g., *Briseno v City of Santa Ana*, 6 Cal. App. 4th 1378, 1382 (1992) (Uniform Housing Law preemption; "One need only track the history of the state's housing laws to appreciate the Legislature's desire to preempt local regulation generally."); *Van de Kamp v. Gumbiner*, 221 Cal. App. 3d 1260, 1285 (1990) (health care plan preemption under Health and Safety Code; "The legislative history of the relevant enactments is consistent with the conclusion that the Legislature intended to ... supercede any common law authority regarding regulation and supervision ... by the Attorney General.").

The UTSA's California sponsor followed the national committee which drafted the UTSA when he forwarded the bill to the governor for final signature and explained its preemptive purpose:

"The contribution of the Uniform Act is *substitution* of unitary definitions of trade secret and trade secret misappropriation, and a single statute of limitations for the *various property, quasi-contractual, and violation of fiduciary relationship theories* of noncontractual liability utilized at common law." (emphasis added).

See Declaration of Koray Bulut, Exhibit A (attaching September 1984 letter from Elihu Harris

---

[6] Under the canons of statutory interpretation, the inclusion of two express exceptions (criminal and contract actions) means that no additional exceptions are to be implied.  See, e.g. Thomas v Quintero, 126 Cal.App. 4th 635, 646 (2005)(applying the maxim of statutory construction, *expressio unius est exclusion alterius*.

1   to Gov. Deukmajian and April 1983 excerpt from Digest for AB 501).[7] In other words, the whole point

2   of the statute was to "substitute" one definition for claims about commercial information protectable

3   under state law instead of allowing a situation where more than one such definition might apply.

### 4.    California Courts Reject Plaintiff's Theory.

5       Even if no California state court had spoken on the question of UTSA preemption, these rules

6   would be controlling. But the California courts have definitively and conclusively taken the majority

7   position on UTSA preemption. To begin with, the California Supreme Court has strongly implied that

8   the UTSA replaced the common law. In *Cadence Design Systems, Inc, v. Avant! Corp.*, 29 Cal. 4th 215,

9   224 (2002), the state Supreme Court noted that if a trade secret case involved a fact pattern where the

10  alleged misuse of information took place before and after the UTSA's 1985 enactment date, there

11  would be a common law claim for the pre-UTSA misuse, while the UTSA would govern the period

12  afterwards.

13      Second, two California Court of Appeals decisions have expressly ruled in favor of the majority

14  position on UTSA preemption, holding that the California UTSA broadly preempts alternative tort

15  claims as a matter of law, and that the minority position on UTSA preemption is impermissible in

16  California. See *Silvaco Data Systems v. Intel Corp.,* 184 Cal. App. 4th 210, 232-40 (2010) overruled in

17  part on unrelated ground, *Kwikset v. Superior Court*, 51 Cal.4th 310, 337 (2011) (affirming UTSA

18  preemption-based demurrer of alternative claims for conversion, intentional and negligent interference,

19  unfair competition, and common count, and explaining reasons for preemption in detail); *K.C.*

20  *Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 957-60 (2009) (same;

21  affirming "broad" preemption of alternative claims for unfair competition, breach of confidence, and

22  tortious interference with contract in pretrial trial court ruling based on the pleadings).

23      These twin rulings make clear that UTSA preemption applies at the pleading stage, and applies

24  whether or not the plaintiff's trade secret claim will ultimately succeed or fail. See *Silvaco*, 184 Cal.

---

26      [7] Although this Declaration was originally filed in *Sunpower Corp. v. SolarCity Corp.*, No. 12–

27  CV–00694–LHK, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012), it is still proper as a supporting
    declaration in this case and as a matter for which the court may take judicial notice as Document 48-1

28  in this court's files in that case. F.R.E. 201(b)(2).

1    App. 4th at 232, 236 (plaintiff lost trade secret claim on summary judgment); *KC Multimedia*, 171 Cal.

2    App. 4th at 945-46, 952-53 (plaintiff lost at trial on trade secret claim).

3    Crucially for this motion, the rulings make clear that a plaintiff cannot engage in artful wordplay

4    and assert that the information at issue is, for example, "confidential but not secret" or "not secret but

5    otherwise protectable" in order to avoid UTSA preemption. See *Silvaco*, 184 Cal. App. 4th at 236, 238-

6    39 & n.22. Indeed, *Silvaco* made clear that California "emphatically rejects" the minority position on

7    UTSA preemption. *Silvaco* did so by (1) repudiating one of the leading minority position cases (a non-

8    California ruling); and (2) making clear that a plaintiff must affirmatively prove a property right in

9    information that exists under "positive law," and cannot make up a tort claim that the law has never

10   recognized:

11   We emphatically reject the *Cenveo* court's suggestion that the uniform act was not intended to

12   preempt "common law conversion claims based on the taking of information that, though not a trade

13   secret, was nonetheless of value to the claimant." [citation] On the contrary, a prime purpose of the law

14   was to sweep away the adopting states' bewildering web of rules and rationales and replace it with a

15   uniform set of principles for determining when one is — and is not — liable for acquiring, disclosing,

16   or using "information ... of value." [citation] Central to the effort was the act's definition of a trade

17   secret. [citation] Information that does not fit this definition, and is not otherwise made property by

18   some provision of positive law, belongs to no one, and cannot be converted or stolen. By permitting the

19   conversion claim to proceed on a contrary rationale, the *Cenveo* court impliedly created a new category

20   of intellectual property, far beyond the contemplation of the act, subsuming its definition of "trade

21   secret" and effectively obliterating the uniform system it seeks to generate."

22   See at 184 Cal. App. 4th at 239 n.22 (rejecting the minority position as exemplified in *Cenveo*

23   *Corp. v. Slater*, 2007 WL 527720, *4 (E.D. Pa. Feb. 12, 2007)). Notably, *Silvaco* relied on the

24   California Supreme Court's UCC preemption ruling in *Zengen*. See id. at 234.

25   ### 5.    <u>Other State Supreme Courts Favor the Majority Position.</u>

26   California is not alone in this common-sense interpretation of the UTSA. The majority of courts,

27   especially those that have analyzed the issues surrounding UTSA preemption in detail, have taken the

28   same position. This includes six of the seven state supreme courts which have ruled on UTSA

1   preemption.[8] The 2010 decision by the Hawaii Supreme Court, includes a comprehensive review of the

2   drafters' intent, conflicting cases around the country, and commentary, and ultimately rejects the

3   concept that litigants can bring alternative claims for information said to be "confidential," but "not

4   secret." *BlueEarth Biofuels, LLC*., supra.

5          California's UTSA recognizes the precedential weight of these out-of-state UTSA decisions.

6   Indeed, it expressly directs courts to "make uniform the law with respect to the subject matter of this

7   title among states enacting it." See Cal. Civ. Code. § 3426.8.

## 6.    Better-Reasoned District Court Cases Take the Majority Position.

9          Because California's general rules on statutory preemption, the UTSA's text, the UTSA's

10  legislative history, the California case law, and the majority position's status as precedent under section

11  3426.8 together are controlling, there is no need to look to federal court rulings on UTSA preemption.

12  Federal courts are bound by a state's Supreme Court on questions of state law, and "[w]here the state

13  supreme court has not spoken on an issue presented to a federal court, the federal court must determine

14  what result the state supreme court would reach based on state appellate court opinions, statutes, and

15  treatises." *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1391 (9th Cir. 1994) (emphasis added); see also

16  *Scandinavian Air Serv. v. United Aircraft*, 601 F.2d 425, 429 (9th Cir. 1979) (decisions from the state's

17  courts of appeal are data for determining how the highest state court would rule). "Decisions by

18  intermediate appellate state courts are 'not to be disregarded by a federal court unless it is convinced by

19  other persuasive data that the highest court of the state would decide otherwise.'" *Alvarado v. Federal*

20  *Express Corp.*, 2008 WL 2340211 at *6 (N.D. Cal. June 5, 2008) (citing *West v. Amer. Tel & Tel. Co.*,

21  311 U.S. 223, 237 (1940)). By contrast, decisions about state law by other federal district courts are not

---

23        [8] See *BlueEarth Biofuels, LLC v Hawaiian Elec. Co., Inc*. 233 P3d 310 (Haw. 2010); *Mortgage*
24  *Specialists, Inc. v Davey*, 904 A.2d 652, 665 (N.H. 2006); *RK Ent., LLC v Pro-Comp Mgmt, Inc*., 158
     S.W.3d 685, 689-90 (Ark. 2004); *Robbins v Supermarket Sales, LLC v Supermarket Eqip Sales, LLC*
25  722 S.E.2d 55, 58(Ga. 2012); *Savor, Inc. v FMR Corp*. 812 A2d 894, 898 (Del.2002); *Frantz v*
     *Johnson*, 999 P.2d 351, 357-58 (Nevada 2000); *Weins v Sporleader*, 605 N.W. 2d 488, 492 (South
26  Dakota 2000); *Dicks v Jensen* 768 A.2d 1279, 1285 (Vt. 2001);  cf. *Burbank Grease Serv., LLC, v*
     *Sokolowski* 717 N.W.2d 781 (Wisc. 2006) (ruling, over passionate dissent, against preemption of
27  alternative tort claims despite preemption clause in Wisconsin UTSA); see also *Wolfe Elec. Inc. v*
     *Duckworth* 293 Kan. 375 (2011) (declining to reach question of UTSA preemption's scope and
28  remanding to lower court for that determination).

---

1    binding. See *Camreta v. Greene*, 131 S.Ct. 2020, 2033 n. 7 (2011).

2         Here, the California Supreme Court has set forth a framework for the preemptive effect of

3    comprehensive statutes, and it has shown in the *Zengen* case on UCC preemption that, indeed, express

4    preemption clauses are to be broadly applied. In turn, two appellate cases and legislative history speak

5    to the issue in question. Taken together, this authority is controlling.

6         This Court has specifically ruled on this issue in accordance with the majority view. *Sunpower*

7    *Corp. v. SolarCity Corp.*, No. 12–CV–00694–LHK, 2012 WL 6160472, at *5 (N.D. Cal. Dec. 11, 2012)

8    ["…in order to state a claim based on the taking of information, a plaintiff must show that he has some

9    property right in such information (i.e. that the information is proprietary). If the basis of the alleged

10   property right is in essence that the information is that it is "not ... generally known to the public," (Cal.

11   Civ.Code § 3426.1(d)(1)), then the claim is sufficiently close to a trade secret claim that it should be

12   superseded notwithstanding the fact that the information fails to meet the definition of a trade secret. To

13   permit otherwise would allow plaintiffs to avoid the preclusive effect of CUTSA (and thereby plead

14   potentially more favorable common-law claims) by simply failing to allege one of the elements

15   necessary for information to qualify as a trade secret."].

16        Even if the Court were to consider other federal district court cases which have ruled on UTSA

17   preemption under California law, a majority of federal cases — and all that have engaged in significant

18   analysis of the question — have held in favor of broad preemption. See, e.g., *Heller v. Cepia*, LLC,

19   2012 WL 13572, *7 (N.D. Cal. Jan. 4, 2012) (following Silvaco); *Mattel, Inc. v. MGA Ent't, Inc.*, 782

20   F. Supp. 2d 911, 986-87 (C.D. Cal. 2011) (same; "In an effort to align with the California courts that

21   have addressed this issue, the Court concludes that UTSA supersedes claims based on the

22   misappropriation of confidential information, whether or not that information meets the statutory

23   definition of a trade secret."); *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1034-35 (N.D.

24   Cal. 2005) (UTSA preemption of several alternative claims as a matter of law); *Accuimage Diagnostics*

25   *Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 953 (N.D. Cal. 2003) (comprehensive preemption ruling

26   on a common law misappropriation claim).[9]

27

28        [9] See also *Cacique, Inc. v Robert Reiser & Co.* 169 F.3d 619, 624 (affirming ruling that party
     could not allege common law unfair competition to avoid California UTSA remedies).

-13-

1    Looking beyond California's UTSA, the better-reasoned district court decisions elsewhere have

2    also rejected the theory that Plaintiff advocates. See, e.g., *Diamond Power Int'l, Inc. v. Davidson*, 540

3    F. Supp. 2d 1322, 1345-46 (N.D. Ga. 2007) (carefully considering conflicting case law, weighing

4    public policies, and finding conversion claim preempted because it was based on "the taking of

5    supposedly proprietary information; "it would make little sense to go through the rigmarole of proving

6    information was truly a trade secret if a plaintiff could alternatively plead claims with less burdensome

7    requirements of proof."); *Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp. 2d 649, 661 (E.D. Tenn.

8    2004) (lengthy analysis; "If the information is a trade secret, the plaintiff's claim is preempted; if not,

9    the plaintiff has no legal interest upon which to base his claim. Either way, the claim is not

10    cognizable.").

### 7.    Plaintiff's Minority Position Theory Would Nullify the UTSA.

12    Plaintiff's theory — that it can plead around the UTSA by seeking to protect information it

13    subjectively labels as non-trade secret "proprietary information" — reflects the minority position on

14    UTSA preemption that was rejected by *Silvaco* and by *K.C. Multimedia*. As *Silvaco* explained, Plaintiff

15    offers no provision of California positive law on which it could base a claim that it owns property in

16    such information, and it cannot use a label like "conversion" to invent a property right out of nothing.

17    See *Silvaco*, 184 Cal. App. 4th at 239 n.22.

18    Courts that have taken the minority position do so, as a rule, without considering the issues

19    raised above. In the *Cenveo* case that *Silvaco* "emphatically" rejected, for example, the court simply

20    expressed disbelief that the Pennsylvania UTSA would preempt causes of action premised on non-

21    secret information — without asking whether such claims really existed in the first place, or whether

22    allowing them would render the UTSA's secrecy requirement and other rules superfluous. Their net

23    result is to destroy the UTSA, and replace it with an alternative, less balanced regime where key

24    defenses such as non-secrecy no longer apply.

25    Some district courts purporting to apply California law have taken the minority position despite

26    *K.C. Multimedia* and *Silvaco* (often without citing the latter, and never noting *Silvaco*'s Footnote 22

27    which expressly rejects the minority position). For example, *Amron Int'l Diving Supply, Inc. v.*

28    *Hydrolinx Diving Comm., Inc.*, 2011 WL 5025178, *10 (S.D. Cal. Oct. 21, 2011), did not cite *K.C*

1    *Multimedia* or *Silvaco*, and took an approach contrary to their holdings by simply assuming that the

2    plaintiff's alternative claims were valid. And in *Leatt Corp. v. Innovative Safety Tech.*, LLC, 2010 WL

3    2803947, *6 & n.5 (S.D. Cal. July 15, 2010), the court purported to engage in a "careful reading" of

4    *Silvaco*, yet did not cite or discuss *Silvaco*'s crucial Footnote 22, and instead issued a ruling directly

5    contrary to *Silvaco*'s holding.

6        Defendants expect that Plaintiff will cite these and other, non-binding minority position cases in

7    its opposition. None are persuasive, none are precedential, none can overcome precedential California

8    authorities, and none analyze the necessary and pertinent questions. See *People v. Frazier*, 128 Cal.

9    App. 4th 807, 825 (2005) (cases do not provide authority for propositions not addressed); *Flexible*

10   *Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 997 (9th Cir. 2011) (no precedential effect where

11   issue was not briefed and received summary treatment without consideration) (citing *Thacker v. FCC*,

12   503 F. 3d 984, 993-94 (9th Cir. 2007) ("[statements made in passing, without analysis, are not binding

13   precedent.")).

14                **8.    UTSA Preemption at the Pleading Stage is Important for this Case.**

15       UTSA preemption is not an abstract matter — it will prevent Plaintiff from attempting to evade

16   the UTSA's procedural and substantive rules as this case proceeds. Since the UTSA's 1985 enactment,

17   a body of jurisprudence has grown up around the statute to provide for certainty and predictability with

18   regard to issues such as damages and burdens of proof. UTSA preemption prevents parties from

19   circumventing this controlling case law by dressing up the same claim in different language. A few

20   examples illustrate the point:

21       •  Identification of Alleged Secrets: Trade secret plaintiffs must identify the alleged secrets with
            particularity before taking discovery. See Cal. Civ. Proc. Code § 2019.210; *Art of Living Found.*
22          *v. Does*, 2011 WL 2441898, *13 (N.D. Cal. June 15, 2011). A plaintiff who alleges "non-trade
            secret proprietary information" cannot refuse to identify the information at issue by denying that
23          UTSA preemption applies.

24       •  Secrecy: Trade secrets must be secret or there is no liability. See Cal. Civ. Code. § 3426.1;
25          *American Paper & Packaging Prods. v. Kirgan*, 183 Cal. App. 1318, 1326 (1986) (customer list
            not secret because competitors knew the same information); *Matthews Paint Co. v. Seaside*
26          *Paint and Lacquer Co.*, 148 Cal. App. 2d 168, 172 (1957) (companies "generally known in the
            business world as being engaged in their various businesses" cannot be considered part of a
27          secret customer list). A plaintiff cannot nullify this requirement by making up a tort claim that
            eliminates its burden to prove secrecy.

28

- Defenses and Burdens of Proof: The UTSA allows defenses of reverse engineering, independent derivation, and failure to take reasonable measures to protect the information. See Cal. Civ. Code § 3426.1(a), (d)(2). In turn, the plaintiff bears the ultimate burden of proving that the defendant did not independently derive the information at issue. See *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1659 (2003) (stating rule). A plaintiff cannot plead alternative torts to eliminate these defenses or alter its burden of proof.

- Limited Damages: Trade secret exemplary damages are capped at twice the damages award, decided by a judge and not a jury - there are no UTSA punitive damages. See Cal. Civ. Code § 3426.3. A plaintiff who sues under a tort label cannot seek punitive damages from a jury by denying that UTSA preemption applies. Here, notably, Plaintiff seeks "punitive damages" in its alternative claims. See Complaint, p.56, ll.13-14.

- Fees for the Defense: Under the UTSA, a defendant can recover fees and costs in certain cases, including those where the plaintiff sues over information that the plaintiff should have known was not a trade secret. See Cal. Civ. Code § 3426.4; *Computer Economics, Inc. v. Gartner Group, Inc.*, 1999 WL 331778020, *6-7 (S.D. Cal. 1999) (defense awarded fees where plaintiff claimed trade secrets in non-secret information); *VSL Corp. v. General Tech., Inc.*, 46 U.S.P.Q.2d 1356, 1359 (N.D. Cal. 1998) (same). Under Plaintiffs alternative claims, it could deliberately sue over non-secret information, and Defendants would have no opportunity to recover fees and costs.

In sum, Plaintiffs made-up alternative causes of action would fail to state a claim under Rule 12(b)(6) even if they existed under California law, because they directly conflict with the UTSA, eliminate its specific requirements, and extinguish the balance it presents between the interests of plaintiffs and the interests of defendants. If the UTSA does not preempt such an obvious attempt to tear down the California legislature's chosen method for litigating information misuse claims by former employers against former employees, then (1) the California Supreme Court's framework for statutory interpretation must be ignored, (2) the UTSA's preemption clause is superfluous, (3) the California legislature intended nothing at all when it stated that the statute would substitute a unitary definition of secrecy for "property" and "quasi-contractual" theories, (4) *KC Multimedia* and *Silvaco* are meaningless, and (5) many decades of California public policy favoring employee mobility should be cast aside.

Plaintiff cannot ask this Court to render such a total nullification on a question of state law. Plaintiff's claims premised on non-trade secret "proprietary" or "confidential" information should be dismissed without leave to amend. On the merits of this case, Plaintiff must stand or fall on its UTSA

1  and contract claims.  Alternatively, if for any reason the court believes the claims should be dismissed,

2  at a minimum, the words "proprietary information", "proprietary materials", "confidential information"

3  and "confidential materials" should be stricken from the Complaint.

4        **D.**    **Plaintiff's Prospective Economic Advantage Claim Fails for Other Reasons.**

5        Plaintiff's claim for interference with prospective economic advantage also fails to state a claim

6  even apart from UTSA preemption. In support of this claim, Plaintiff merely alleges that it has

7  "economic relationships" with "numerous current and prospective investors" (Complaint ¶203) and

8  with "its employees and contractors" (Complaint ¶204) and that Defendants' actions disrupted such

9  relationships. See Complaint ¶¶ 203-213. These allegations fail to state a claim under *Iqbal* and

10 T*wombly* because they are entirely conclusory and contain no factual allegations whatsoever.

11       The elements of a claim for interference with prospective economic advantage are: "(1) an

12 economic relationship between the plaintiff and some third party, with the probability of future

13 economic benefit to the plaintiff; (2) defendant's knowledge of the relationship; (3) intentional acts on

14 the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship;

15 and (5) economic harm proximately caused by the acts of the defendant." See *Korea Supply Co. v.*

16 *Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003).

17       As to pleading a third party relationship and economic harm, an allegation that there was

18 interference that generally caused harm in the marketplace, without naming any interfered-with third

19 party, is insufficient as a matter of law. See *Westside Center Assoc. v. Safeway Stores 23, Inc.*, 42 Cal.

20 App. 4th 507, 527-28 (1996) (interference claim insufficient where potential market alleged as lost

21 relationships; rejecting "interference with the market" theory); *Buxton v. Eagle Test Sys., Inc.*, 2010 WL

22 1240749, *1 (N.D. Cal. Mar. 26, 2010) (granting motion to dismiss where plaintiff failed to allege

23 "specific economic relationships with identifiable third parties"); *Silicon Labs Integration, Inc. v.*

24 *Melman,* 2010 WL 890140, *2 (N.D. Cal. Mar. 8, 2010) (plaintiff must plead a prospective relationship

25 with a specific third party to avoid motion to dismiss); Accuimage, 260 F. Supp. 2d at 957 (conclusory

26 allegations of economic relations with unnamed others failed to state a claim); *TPS Utilicom Serv., Inc.*

27 *v. AT&T Corp.*, 223 F. Supp. 2d 1089, 1106-07 (C.D. Cal. 2002) (claim dismissed where based on

28 generalized allegation of economic relationship with consumers in the markets it serves); *Silicon*

-17-

MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANTS' PARTIAL MOTION TO DISMISS (RULE 12(B)(6))
K:\2500\sf0173\Pleadings\MTD\MPA1.docx                                                                    Case No. 3:15-CV-00798-HSG

1  *Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1313 (N.D. Cal. 1997) (dismissing claim

2  where plaintiff failed to identify any third party with whom it had allegedly interfered-with

3  relationship).

4       Here, Plaintiff does not allege any prospective relationship between it and any third party that

5  any Defendant allegedly disrupted — no customer is named, no circumstances of disruption are alleged,

6  and no description of why Plaintiff had sufficiently cognizable prospective relationships with any third

7  party is alleged. Plaintiff's simplistic repetition of the elements of the claim without identifying any

8  third party relationship that was disrupted is exactly the type of conclusory pleading *Iqbal* and *Twombly*

9  prohibit. Plaintiff's ninth cause of action should be dismissed unless Plaintiff can actually allege facts

10 sufficient to state a claim.

11 ## IV.  CONCLUSION

12      For all of these reasons, Defendants respectfully request that the Court dismiss Plaintiff's claims

13 for (1) RICO (First Cause of Action); (2) Computer Fraud and Abuse Act (Second Cause of Action);

14 (3) Fraud (Fifth Cause of Action); (4) Breach of Contract (Sixth Cause of Action); (5) Trade Secrets

15 (Eleventh Cause of Action); (6) Conversion (Twelfth Cause of Action); (7) Unfair Competition under

16 California Business & Professions Code section 17200 (Thirteenth Cause of Action) and (8) Unjust

17 Enrichment (Fourteenth Cause of Action), without leave to amend, to the extent that they are based on a

18 legal theory that is not cognizable under California law. Alternatively, if for any reason the court

19 believes the claims should be dismissed, at a minimum, the words "proprietary information",

20 "proprietary materials", "confidential information" and "confidential materials" should be stricken from

21 the Complaint. Additionally, Defendants request Defendants also respectfully request that the Court

22 dismiss Plaintiff's Ninth Cause of Action on the separate grounds stated as well.

23      Dated: March 16, 2015

24                LOW, BALL & LYNCH

25

26                By    /s/ Thomas J. LoSavio

27                  THOMAS J. LOSAVIO
                 JAMES F. REGAN

28                  Attorneys for Defendants
                 ANNA GATTI and IQ SYSTEMS, LLC