THOMAS J. LOSAVIO, SBN 51023
JAMES F. REGAN, SBN 252199
LOW, BALL & LYNCH
505 Montgomery Street, 7th Floor
San Francisco, California 94111
Telephone:    (415) 981-6630
Facsimile:     (415) 982-1634
Email: tlosavio@lowball.com
Email: jregan@lowball.com

Attorneys for Defendants
ANNA GATTI and IQ SYSTEMS, LLC

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS, INC., a Delaware Corporation,<br><br>                         Plaintiff,<br><br>      vs.<br><br>ANNA GATTI, et al.,<br><br>                         Defendants. | Case No. 3:15-CV-00798-HSG<br><br>**NOTICE OF MOTION OF DEFENDANTS' PARTIAL MOTION TO DISMISS FIRST AMENDED COMPLAINT (F.R.C.P. 12(b)(6)) AND, IN THE ALTERNATIVE, MOTION TO STRIKE (F.R.C.P. 12(f)(2))**<br><br>Date:         July 2, 2015<br>Time:        2:00 p.m.<br>Judge:       Hon. Haywood S. Gilliam Jr.<br>Location:   San Francisco Courthouse,<br>                  Courtroom 15—18th Floor<br>                  450 Golden Gate Avenue,<br>                  San Francisco, CA 94102 |

        PLEASE TAKE NOTICE that, pursuant to Rule 12(b)(6) and 12(f)(2) of the Federal Rules of

Civil Procedure and Civil Local Rules 7-1 and 7-2, on July 2, 2015 at 2:00 p.m. or as soon thereafter as

this matter may be heard, Defendants ANNA GATTI and IQ SYSTEMS, LLC will and hereby do move

this Court to dismiss 8 of the 14 causes of action in Plaintiff LOOP AI LABS, INC.'s First Amended

Complaint ("FAC") for failure to state a claim and, in the alternative, to strike portions thereof. This

motion is based on this Notice, the Memorandum of Points and Authorities, the Declaration of Koray

Bulut,  and the Exhibit A attached thereto, and the Proposed Order filed with this Notice.

Defendants seek an order dismissing 8 of Plaintiff's causes of action because they do not exist under California law and would be preempted by the Uniform Trade Secrets Act if they did exist, and one cause of action because Plaintiff did not allege facts sufficient to state a claim.


Dated: April 24, 2015

LOW, BALL & LYNCH


By____/s/ Thomas J. LoSavio_____
THOMAS J. LOSAVIO
JAMES F. REGAN
Attorneys for Defendants
ANNA GATTI and IQ SYSTEMS, LLC

NOTICE OF MOTION OF DEFENDANTS' PARTIAL MOTION TO DISMISS (F.R.C.P. 12(b)(6)) AND, IN THE ALTERNATIVE, MOTION TO STRIKE (F.R.C.P. 12(f)(2)) FIRST AMENDED COMPLAINT

THOMAS J. LOSAVIO, SBN 51023
JAMES F. REGAN, SBN 252199
LOW, BALL & LYNCH
505 Montgomery Street, 7th Floor
San Francisco, California 94111
Telephone:     (415) 981-6630
Facsimile:     (415) 982-1634
Email: tlosavio@lowball.com
Email: jregan@lowball.com

Attorneys for Defendants
ANNA GATTI and IQ SYSTEMS, LLC

## UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS, INC., a Delaware Corporation,<br><br>                Plaintiff,<br><br>   vs.<br><br>ANNA GATTI, et al.,<br><br>                Defendants. | Case No. 3:15-CV-00798-HSG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS FIRST AMENDED COMPLAINT (F.R.C.P. RULE 12(b)(6)) AND, IN THE ALTERNATIVE, MOTION TO STRIKE (F.R.C.P. RULE 12(f)(2))**<br><br>Date:        July 2, 2015<br>Time:       2:00 p.m.<br>Judge:     Hon. Haywood S. Gilliam Jr.<br>Location:  San Francisco Courthouse,<br>                Courtroom 15—18th Floor<br>                450 Golden Gate Avenue,<br>                San Francisco, CA 94102 |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS FIRST AMENDED COMPLAINT (F.R.C.P. RULE 12(b)(6)) AND, IN THE ALTERNATIVE, MOTION TO STRIKE (F.R.C.P. RULE 12(f)(2))

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL ALLEGATIONS .............................................................................3

III.    ARGUMENT ......................................................................................................4

        A.      Legal Standard: Rule 12(b)(6) Motion to Dismiss. ...........................4

        B.      Plaintiff's Alternative Claims Never Existed under California Law................................4

        C.      Even if the Plaintiff's Alternative Claims had Existed Historically, the California
                UTSA Would Now Preempt Them. ......................................................6

                1.      UTSA Preemption by Operation of Common Law. ................................7

                2.      UTSA Preemption by Operation of Statute. .........................................8

                3.      The Legislative History Supports Broad UTSA Preemption. ...............9

                4.      California Courts Reject Plaintiff's Theory. .......................................10

                5.      Other State Supreme Courts Favor the Majority Position. .................12

                6.      Better-Reasoned District Court Cases Take the Majority Position. ....12

                7.      Plaintiff's Minority Position Theory Would Nullify the UTSA. ........14

                8.      UTSA Preemption at the Pleading Stage is Important for this Case. ...15

        D.      Plaintiff's Prospective Economic Advantage Claim Fails for Other Reasons. ...............17

IV.     CONCLUSION ................................................................................................18

MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANTS' PARTIAL MOTION TO DISMISS (RULE 12(B)(6))

TABLE OF AUTHORITIES

<span style="text-align:center">CASES</span>

*Accuimage Diagnostics Corp. v. Terarecon, Inc.*,

   260 F. Supp. 2d 941, 953 (N.D. Cal. 2003)------------------------------------------------14

*Adkins v. Model Laundry Co.*,

   92 Cal. App. 575, 583 (1928)--------------------------------------------------------------- 5

*Alvarado v. Federal Express Corp.*,

   2008 WL 2340211 at *6 (N.D. Cal. June 5, 2008)----------------------------------------13

*American Paper & Packaging Prods. v. Kirgan*,

   183 Cal. App. 1318, 1326 (1986) --------------------------------------------------------16

*American Philatelic So'y v. Claibourne*,

   3 Cal.2d 689, 697-99 (1935)--------------------------------------------------------------- 6

*Amron Int'l Diving Supply, Inc. v. Hydrolinx Diving Comm., Inc.*,

   2011 WL 5025178, *10 (S.D. Cal. Oct. 21, 2011)---------------------------------------15

*Art of Living Found. v. Does*,

   2011 WL 2441898, *13 (N.D. Cal. June 15, 2011)-------------------------------------16

*Ashcroft v. Iqbal*,

   129 S.Ct. 1937, 1951 (2009)------------------------------------------------------------- 4

*Bell Atlantic Corp. v. Twombly*,

   127 S.Ct. 1955, 1964-65 (2007)--------------------------------------------------------- 4

*Bishop v. Hyundai Mtr. Am.*,

   44 Cal. App. 4th 750, 757 (1996) -------------------------------------------------------- 8

*BlueEarth Biofuels, LLC v Hawaiian Elec. Co., Inc.*

   233 P3d 310 (Haw. 2010) ---------------------------------------------------------------12

*Briseno v City of Santa Ana*,

   6 Cal. App. 4th 1378, 1382 (1992)------------------------------------------------------ 9

*Buxton v. Eagle Test Sys., Inc.*,

2010 WL 1240749, *1 (N.D. Cal. Mar. 26, 2010) --------------------------------------------------18

*Cadence Design Systems, Inc, v. Avant! Corp.*,

29 Cal. 4th 215, 224 (2002) --------------------------------------------------------------------------10

*Camreta v. Greene*,

131 S.Ct. 2020, 2033 n. 7 (2011) ------------------------------------------------------------------13

*Cell-Tech Comm., Inc. v. Los Angeles Cell. Tech. Co.*,

20 Cal.4th 163, 193 (1999) ----------------------------------------------------------------------------6

*Cenveo Corp. v. Slater*,

2007 WL 527720, *4 (E.D. Pa. Feb. 12, 2007) ----------------------------------------------------12

*Computer Economics, Inc. v. Gartner Group, Inc.*,

1999 WL 331778020, *6-7 (S.D. Cal. 1999) ------------------------------------------------------16

*Diamond Power Int'l, Inc. v. Davidson*,

540 F. Supp. 2d 1322, 1345-46 (N.D. Ga. 2007) ------------------------------------------------14

*Digital Envoy, Inc. v. Google, Inc.*,

370 F. Supp. 2d 1025, 1034-35 (N.D. Cal. 2005) ----------------------------------------------14

*Don King Prod./Kingvision v. Lovato*,

911 F. Supp. 419, 426 (N.D. Cal. 1995) ------------------------------------------------------------5

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*,

654 F.3d 989, 997 (9th Cir. 2011) ------------------------------------------------------------------15

*Fortna v. Martin*,

158 Cal. App. 2d 634, 639 (1958) --------------------------------------------------------------------5

*Fremont Indem. Co. v. Fremont Gen. Corp.*,

148 Cal. App. 4th 97, 119-26 (2007) --------------------------------------------------------------5

*Hauck Mfg. Co. v. Astec Indus., Inc.*,

375 F. Supp. 2d 649, 661 (E.D. Tenn. 2004) ----------------------------------------------------14

*Heller v. Cepia*,

LLC, 2012 WL 13572, *7 (N.D. Cal. Jan. 4, 2012) --------------------------------------------13

# TABLE OF AUTHORITIES

*I.E. Assoc. v. Safeco Title Ins. Co.*,
  39 Cal. 3d 281, 289 (1985)-------------------------------------------------------------------------- 8

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
  171 Cal. App. 4th 939, 957-60 (2009)-------------------------------------------------------------11

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134, 1153 (2003)---------------------------------------------------------------------17

*Kremen v. Cohen*,
  337 F.3d 1024, 1031 (9th Cir. 2003) ------------------------------------------------------------- 5

*Kwikset v. Superior Court*,
  51 Cal.4th 310, 337 (2011) ------------------------------------------------------------------------11

*Las Tunas Beach Geologic Hazard Abatement Dist. v. Superior Court*,
  38 Cal. App. 4th 1002, 1012 (1995) -------------------------------------------------------------- 8

*Leatt Corp. v. Innovative Safety Tech., LLC*,
  2010 WL 2803947, *6 & n.5 (S.D. Cal. July 15, 2010)------------------------------------------15

*Mattel, Inc. v. MGA Ent't, Inc.*,
  782 F. Supp. 2d 911, 986-87 (C.D. Cal. 2011) ------------------------------------------------13

*Matthews Paint Co. v. Seaside Paint and Lacquer Co.*,
  148 Cal. App. 2d 168, 172 (1957) ----------------------------------------------------------------16

*Olshewski v. Hudson*,
  87 Cal. App. 282, 286 (1927)--------------------------------------------------------------------- 5

*Pacific Scene, Inc. v. Penasquitos, Inc.*,
  46 Cal. 3d 407, 411 (1988)------------------------------------------------------------------------- 8

*Payne v. Elliot*,
  54 Cal. 339, 341 (1880) ----------------------------------------------------------------------------- 5

*People v. Frazier*,
  128 Cal. App. 4th 807, 825 (2005)---------------------------------------------------------------15

# TABLE OF AUTHORITIES

*Sargent Fletcher, Inc. v. Able Corp.*,

110 Cal. App. 4th 1658, 1659 (2003)------------------------------------------------16

*Scandinavian Air Serv. v. United Aircraft*,

601 F.2d 425, 429 (9th Cir. 1979) ----------------------------------------------13

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,

983 F. Supp. 1303, 1313 (N.D. Cal. 1997) ------------------------------------18

*Silicon Labs Integration, Inc. v. Melman,*

2010 WL 890140, *2 (N.D. Cal. Mar. 8, 2010)------------------------------18

*Silvaco Data Systems v. Intel Corp.,*

184 Cal. App. 4th 210, 232-40 (2010)------------------------------------------10

*Sunpower Corp. v. SolarCity Corp.*,

No. 12–CV–00694–LHK, 2012 WL 6160472, at *5 (N.D. Cal. Dec. 11, 2012) ------------------- 10, 13

*Thacker v. FCC*,

503 F. 3d 984, 993-94 (9th Cir. 2007)------------------------------------------15

*Thompson v. Impaxx, Inc.*,

113 Cal. App. 4th 1425 (2003) ------------------------------------------------- 5

*TPS Utilicom Serv., Inc. v. AT&T Corp.*,

223 F. Supp. 2d 1089, 1106-07 (C.D. Cal. 2002) ----------------------------18

*Van de Kamp v. Gumbiner*,

221 Cal. App. 3d 1260, 1285 (1990) ------------------------------------------- 9

*Vernon v. City of Los Angeles*,

27 F.3d 1385, 1391 (9th Cir. 1994)------------------------------------------12

*VSL Corp. v. General Tech., Inc.*,

46 U.S.P.Q.2d 1356, 1359 (N.D. Cal. 1998) -------------------------------16

*West v. Amer. Tel & Tel. Co.*,

311 U.S. 223, 237 (1940) --------------------------------------------------13

# TABLE OF AUTHORITIES

**Page(s)**

*Westside Center Assoc. v. Safeway Stores 23, Inc.*,

   42 Cal. App. 4th 507, 527-28 (1996) --------------------------------------------------------------------17

*Zengen, Inc. v. Comerica Bank*,

   41 Cal.4th 239, 255 (2007) ------------------------------------------------------------------------- 8

## Other Authorities

Cal. Bus. & Prof. Code § 16600--------------------------------------------------------------------- 5

Cal. Civ. Code § 2019.210---------------------------------------------------------------------------7, 16

Cal. Civ. Code § 3426.1 ----------------------------------------------------------------- 7, 13, 16

Cal. Civ. Code § 3426.3 -------------------------------------------------------------------------16

Cal. Civ. Code § 3426.4 -------------------------------------------------------------------------16

Cal. Civ. Code § 3426.7 ----------------------------------------------------------------------- 9

Cal. Civ. Code § 3426.8 -------------------------------------------------------------------------12

Cal. Civ. Code § 3426.11 ---------------------------------------------------------------------- 7

TRADE SECRETS PRACTICE IN CALIFORNIA § 2.32 (2010)-------------------------------------- 5

# I. __INTRODUCTION__

By this motion, Defendants ANNA GATTI ('GATTI")and IQ SYSTEMS, LLC ("IQ")

respectfully request an order dismissing eight of Plaintiff LOOP AI LABS, INC., ("LOOP")'s fourteen

causes of action of the First Amended Complaint ("FAC") for failure to state a claim and, in the

alternative, to strike portions thereof and one cause of action because Plaintiff did not allege facts

sufficient to state a claim. Eight of the claims are alleged under a legal theory that does not exist under

California law, and the Uniform Trade Secrets Act would preempt them if the theory did exist. One

claim also fails because Plaintiff does not properly plead it.[1]

Plaintiff amended the original Complaint after the filing of motions to dismiss by defendants.

The FAC is substantially identical to the original Complaint.  Plaintiff again alleges that GATTI and the

other defendants engaged in unlawful computer access, that they took customer- and business-related

information, and thus misappropriated trade secrets. Whatever the ultimate merits, this portion of the

Complaint is relatively run-of-the-mill.

But there is more: Plaintiff seeks to radically rewrite California's intellectual property laws and

create a new category of Intellectual Property protection for something it calls "proprietary

information" which it explicitly distinguishes from "trade secrets".[2]  Plaintiff's goal is obvious, given

the flurry of motion practice and case law in recent years on the issue of Uniform Trade Secrets Act

preemption of alternative tort claims. Specifically, Plaintiff wants to plead around the UTSA and give

itself a fallback, insurance position where the Defendants could be liable even if the information at

issue turns out not to be secret. Plaintiff, in short, wants to nullify the UTSA's secrecy requirement, and

---

[1] Counsel for plaintiff wishes to acknowledge the contribution of Ulrico S. Rosales, Esq. of the law firm of Wilson Sonsini, Goodrich & Rosati and David R. Burtt, Esq. of the law firm of Ongaro Burtt & Louderback, LLP.  This Memorandum, in substantial part, is based on their memoranda filed in *Sunpower Corp. v. SolarCity Corp.*, No. 12–CV–00694–LHK, 2012 WL 6160472, (N.D. Cal. Dec. 11, 2012). Errors in the interpretation or application of the arguments made and law cited there are the fault of the author not theirs.

[2] The phrase "proprietary information" or "proprietary materials" appears in the following paragraphs of Plaintiff's FAC: 1,2,4,17,18,89,107,108,141,144,145,155,158,166,177,180,182,191,201,205,206,207,212,213,221,226,255,257,276,320,326,328,329,330,331,338,340, and 345 The two phrases are treated as one in this Memoradum and referenced as "proprietary information". The two phrases are distinguished from "trade secrets" wherever they appear throughout the Complaint.

---

1  thus rewrite the balance California's legislature struck between the interests of employers, former

2  employees, and those who hire them. In this too-good-to-be-true scenario, the UTSA would be rendered

3  superfluous, and California's employee mobility rules would be radically narrowed.

4       Whether Plaintiff can plead such claims is a question of law. The answer is "no," for two simple

5  reasons: first, California never recognized claims against former employees for "non-trade secret

6  proprietary information," even before the UTSA was enacted in 1985. Second, even if such claims had

7  existed historically, the UTSA would preempt them. Indeed, California's courts have made absolutely

8  clear that California follows the majority position on UTSA preemption — a position which prohibits

9  such claims.

10      Specifically, the California UTSA preempts causes of action that repackage trade secret claims

11 under a different label in order to reduce the elements the plaintiff must prove. The California Supreme

12 Court's rules for interpretation of state statutes, the UTSA itself, its legislative history, and controlling

13 California cases all make clear that the UTSA occupies the field and bars alternative tort claims for

14 misuse of commercial information said to be protectable but not "secret." This statutory preemption

15 promotes uniformity among the states that have enacted the UTSA, and prevents parties from avoiding

16 the UTSA's rights, remedies, burdens of proof, and procedural requirements by relabeling a trade secret

17 claim. For these reasons, defendant respectfully requests that the Court dismiss Causes of Action

18 1,2,5,6,11,12,13 and 14.[3]

19      Separately, Plaintiff alleges in conclusory fashion that Defendants have interfered with its

20 prospective economic relations with customers, but it fails to name a single such customer and fails to

21 allege any facts that, under *Twombly* and *Iqbal*, could support that cause of action. For this reason,

22 Defendant requests that the Court dismiss Causes of Action 9.

23

24 ─────────────────
       [3] While each of the other 6 causes of action does not explicitly allege "proprietary information"
25 in its charging allegations, each does "incorporate by reference" paragraphs where that phrase appears
   both generally in the section called "Summary and Nature of the Action" (FAC, p.2, l.27, at
26 ¶¶1,2,4,17,18) and also under the heading "General Allegations Common to All Causes of Action"
   (FAC, p.10, l. 21specifically at ¶¶89,107,108,141,144,145,155,158,166,177,180,182 and191).  For
27 paragraphs of the other 6 causes of action incorporating by reference preceding paragraphs, see FAC at
   ¶¶233,242,277,284,290 and 303. To that extent this motion is equally applicable to all causes of action
28 in the Complaint.

In the alternative, if the court is of the view that dismissal is not appropriate, plaintiff requests the court to strike the phrases "proprietary information" and "proprietary materials" each time it appears in the complaint.[4]

## II.  FACTUAL ALLEGATIONS

Plaintiff alleges that it owns trade secrets in unspecified customer-related information and other commercial information. Plaintiff's FAC alleges that Defendants violated the Uniform Trade Secrets Act, committed computer fraud, conspired in a RICO enterprise and committed various other torts to damage LOOP. Plaintiff also alleges that GATTI alone breached her employment contract, breached the duty of good faith and fair dealing, and diverted corporate opportunities,

Additionally, and in an apparent effort to plead around the Uniform Trade Secrets Act and render information protectable under California law even if it turns out to be non-secret — Plaintiff alleges a host of backup, alternative and/or hybrid causes of action. In each, Plaintiff contends that it owns information which it has labeled as "proprietary information" or "proprietary materials" See FAC ¶¶ 1,2,4,17,18,89,107,108,141,144,145,155,158,166,177,180,182,191,201,205,206,207,212,213,221,226,255,257,276,320,326,328,329,330,331,338,340 and 345.

The causes of action in which these phrases explicitly appear, excluding the claims where the phrase is incorporated by referenced only are: (1) RICO (First Cause of Action - ¶201, ¶¶205-207,¶¶21-213); (2) Computer Fraud and Abuse Act (Second Cause of Action - ¶221,¶226); (3) Fraud (Fifth Cause of Action - ¶255, ¶257); (4) Breach of Contract (Sixth Cause of Action - ¶276); (5) Trade Secrets (Eleventh Cause of Action - ¶¶320, 328-330); (6) Conversion (Twelfth Cause of Action - ¶331); (7) Unfair Competition under California Business & Professions Code section 17200 (Thirteenth Cause of Action - ¶338, ¶340) and (8) Unjust Enrichment (Fourteenth Cause of Action - ¶345).

---

[4] GATTI and IQ will file their respective Answers to the First Amended Complaint after the motion challenging the pleadings is resolved, as the courts permit when there is a partial motion to dismiss.  See *Palantir Tech., Inc. v Palantire.net*, 2011 WL 62411, *2 (N.D. Cal. Jan. 7, 2011)(partial motion to dismiss stays time to answer remaining claims); *Batdorf v Trans Union*, 2000 WL 635455, *5 (N.D. Cal. May 8, 2000)(same); WRIGHT & MILLER, FED. PRACTICE & PROC. §1346 (2010). These Defendants reserve their right to challenge the remaining causes of action on the pleadings.

# III.   ARGUMENT

## A.   Legal Standard: Rule 12(b)(6) Motion to Dismiss.

In the face of a Rule 12(b)(6) motion to dismiss, conclusory assertions unsupported by facts and formulaic recitation of the elements of a claim are insufficient. See *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1951 (2009); *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007).

## B.   Plaintiff's Alternative Claims Never Existed under California Law.

In its FAC, either separately stated or conjoined with allegations of trade secret misappropriation, Plaintiff alleges that the defendants took and misused non-trade secret "proprietary information" or "proprietary materials".  This is an intellectual property claim because Plaintiff seeks to control the use and dissemination of intangible commercial information. Plaintiff does not, by contrast, allege misuse of tangible property or trespass upon real property.

Plaintiff invented these claims: there is no such thing, as a matter of California law, as a tort claim against a departing employee (or the company that hires the employee) for misuse of "non-trade secret proprietary information."

Indeed, using the word "proprietary" — which means having an ownership interest in something — only begs the question of what provision of positive law could give Plaintiff a property right in such information. If Plaintiff claims to own information protected by federal law — patents, copyrights, trademarks, or trade dress — it would have raised such claims. Plaintiff has separately raised a specific UTSA trade secret claim (seemingly for the exact same customer-and business-related information). So what could be left?

The answer is nothing. When a former employer sues a departing employee (and/or the new employer), California's strong public policy in favor of employee mobility has historically limited the employer's claim to trade secret law: information that is (1) not generally known, (2) that is the subject of reasonable security measures, and (3) that has at least some value to competitors. There was never such thing as an alternative tort claim under which a former employer could sue a former employee for "non-secret" information that did not satisfy those three criteria. That is one reason California law famously prohibits non-competition agreements in employment contracts (except for contract terms barring trade secret misuse).

Commercial information under California law is either a UTSA trade secret, subject to a contractual secrecy obligation, subject to the patent, copyright, or trademark laws, or freely available for anyone to use. See Cal. Bus. & Prof. Code § 16600; *Thompson v. Impaxx, Inc.*, 113 Cal. App. 4th 1425 (2003) (collecting pre-UTSA and post-UTSA cases; making clear that attempt to bar employee from using non-secret information after resignation is an illegal trade restraint under section 16600); Pooley et al., TRADE SECRETS PRACTICE IN CALIFORNIA § 2.32 (2010) ("The dividing line between what § 16600 prohibits and what it allows is straightforward: If information is nonsecret, the statute permits former employees to use it; if information is secret (nonpublic), the statute allows contracts barring use of that information." (citing *Fortna v. Martin*, 158 Cal. App. 2d 634, 639 (1958)); Graves, Nonpublic Information and California Tort Law, 10 UCLA J. OF LAW. & TECH. 1 (2006) (outlining history of California intellectual property claims from the nineteenth century to the UTSA's enactment in 1985; concluding that no such claims existed against departing employees) (PDF available online).

If it were otherwise, every defendant who historically prevailed in the many published California decisions by showing that information was not secret would have lost instead, because the plaintiff would still have been able to proceed even if the information were not secret. An examination of Plaintiff's specific claims shows that none exist under California law:

- Conversion: The California courts ruled long ago that conversion is not a proper cause of action for customer list-based accusations against departing employees — the same general fact pattern Plaintiff alleges here. See *Olshewski v. Hudson*, 87 Cal. App. 282, 286 (1927) (rejecting conversion claim for trade secret-type customer list fact pattern); *Adkins v. Model Laundry Co.*, 92 Cal. App. 575, 583 (1928) (same). More specifically, no California court has ever allowed a conversion claim for intangible information said to be "non-trade secret proprietary information." And Plaintiff does not allege facts to support the extremely limited types of intangible information on which courts have recognized conversion claims (such as improper control of an Internet domain, withholding of fixed monies, diversion of fixed and specific broadcasts, or misuse of intangibles that must be embodied in a specific tangible document). See, e.g., *Kremen v. Cohen*, 337 F.3d 1024, 1031 (9th Cir. 2003) (cybersquatting on an Internet domain); *Fremont Indem. Co. v. Fremont Gen. Corp.*, 148 Cal. App. 4th 97, 119-26 (2007) (monies relating to reduced tax liability); *Don King Prod./Kingvision v. Lovato*, 911 F. Supp. 419, 426 (N.D. Cal. 1995) (satellite television transmission); *Payne v. Elliot*, 54 Cal. 339, 341 (1880) (shares in stock certificates).

- Trespass to Chattels: Likewise, there is no historical California case where a former employer was permitted to allege an intellectual property claim against a departing employee under a trespass to chattels label — much less for "non-trade secret proprietary information." See

generally Graves, supra (claim not listed among the host of pre-UTSA claims brought against former employees in California); *Olshewski*, 87 Cal. App. 2d at 288 (explaining in detail why a trade secret-type claim for customer lists is not cognizable in trover or trespass to chattels, for the same reasons the plaintiff's conversion claim was not cognizable).

- Breach of Confidence: The same is true for breach of confidence. The tort did exist historically, before the UTSA was enacted, but not as a vehicle to sue departing employees, and certainly not to sue departing employees for information said to be "non-trade secret" and "proprietary." See Graves, supra ¶¶ 49-50 (discussing history of claim in California).

- Common Law Unfair Competition: There are two types of common law unfair competition. First, "unfair competition" was a common label for a trade secret claim in the decades before the UTSA was enacted. No such cases permitted liability against departing employees for "non-trade secret proprietary information." See id. ¶¶ 48 (explaining history of claim). All such claims are now preempted by the UTSA, as discussed below. Second, and entirely separately, "common law unfair competition" is a tort claim for palming-off, where the defendant passes off the plaintiff's goods as its own or hijacks its goodwill. See, e.g., *Cell-Tech Comm., Inc. v. Los Angeles Cell. Tech. Co.*, 20 Cal.4th 163, 193 (1999) (explaining nature of claim); *American Philatelic So'y v. Claibourne*, 3 Cal.2d 689, 697-99 (1935) (example of a common law unfair competition claim involving deceitful sales).

In summary, Plaintiff's made-up theories never existed historically under California law. Plaintiff deliberately invented it here as an attempt to create a non-existent category of California intellectual property law. Because no such category exists, and because recognition of such a category would conflict with decades of California law and its oft-expressed public policy in favor of employee mobility, the causes of action that explicitly or implicitly invoke that concept should be dismissed and Plaintiff's claim for tortious interference with prospective economic advantage and unfair competition under section 17200 should be dismissed because it depends upon such claims.

## C. **Even if the Plaintiff's Alternative Claims had Existed Historically, the California UTSA Would Now Preempt Them.**

Even if Plaintiff's alternative tort claims had historically existed under California's trade secret and employee mobility laws, California's UTSA would nonetheless preempt them as a matter of law.

UTSA preemption disputes sometimes arise when a plaintiff attempts to raise an old-fashioned, pre-UTSA trade secret cause of action, such as "common law trade secret misappropriation" — causes of action that were historical vehicles for trade secret claims before the UTSA was enacted on January 1, 1985. Here, as set forth above, Plaintiff's claims do not have even the benefit of that sort of pedigree. Thus, we begin the UTSA preemption analysis in an unusual posture: Plaintiff seeks to proceed on a

-6-

theory that never existed before the UTSA was enacted, and to do so despite the UTSA's now firmly established preemptive effect.

Around the country, there is a split — a majority position and a minority position — as to whether a plaintiff can deliberately plead around the UTSA by alleging alternative tort or statutory claims aimed at creating state law intellectual property protection for commercial information that proves to be non-secret. Because the UTSA imposes a secrecy requirement and does not allow parties to claim IP protection otherwise, trade secret plaintiffs have fought mightily to convince courts that the UTSA is not really a "uniform" act, that the UTSA's secrecy requirement is something that ought to be eliminated, and that the intent of the statute's drafters was to allow plaintiffs to avoid the statute in cases where the application of the statute would defeat the plaintiff's claim.

By 2010, the California appellate courts (and most federal district courts applying California law) had conclusively settled the UTSA preemption question by expressly rejecting the minority position, and by taking the broad, majority position. Specifically, California's UTSA preempts as a matter of law any common law tort claims based upon misuse of business information said to be "confidential" or "proprietary" but "not secret" — such as breach of fiduciary duty, conversion, unjust enrichment, and the like. This rule of statutory preemption results from the California Supreme Court's mandate in favor of statutory preemption (including under other Uniform Acts), the text of the statute itself, the statute's legislative history in California, California case law, and the majority practice in other jurisdictions.

Nonetheless, plaintiffs continue to press the issue, and some federal district courts have issued slip rulings entirely inconsistent with California law, generally without reference to controlling California principles. Here, for that reason, Defendants will explain in depth why Plaintiff's obvious effort to plead around the UTSA is deficient as a matter of law.

**1.  UTSA Preemption by Operation of Common Law.**

Voted into law in 1984, California's Uniform Trade Secrets Act provides a detailed and comprehensive scheme to regulate claims concerning the alleged misuse of confidential information. See Cal. Civ. Proc. Code § 3426-3426.11. The statute defines secrecy and non-secrecy, ways to misappropriate information, defenses, remedies, sanctions, protective orders, a statute of limitations,

and other matters. See id. A discovery statute enacted alongside the UTSA provides a mechanism for pre-discovery identification of claims. See Cal. Civ. Proc. Code § 2019.210.

The California Supreme Court has set forth clear rules governing the preemptive effect of such comprehensive statutes. Legislation which carefully describes the course of conduct affected and spells out certain limitations "indicates a legislative intent that the statute should totally supersede and replace the common law dealing with the subject matter" — even if there is no express preemption clause included in the statute at issue. See *Pacific Scene, Inc. v. Penasquitos, Inc.*, 46 Cal. 3d 407, 411 (1988) (holding that Corporations Code enactments addressing corporate dissolution "precluded resort to dormant common law doctrines for the provision of extra-statutory relief."); *I.E. Assoc. v. Safeco Title Ins. Co.*, 39 Cal. 3d 281, 289 (1985) (foreclosure statutes occupy the field and impliedly barred claim premised on non-statutory allegations against trustee).

There is no question that the UTSA is a comprehensive statute encompassing its field. Thus, even if the UTSA were silent on preemption of common law claims seeking state law intellectual property protection for commercial information said to be confidential or proprietary, the statute would have preemptive effect and displace such claims.[5]

## 2. UTSA Preemption by Operation of Statute.

Separately, California courts enforce express preemption clauses contained in comprehensive statutes (including other Uniform Acts) to preclude non-statutory tort claims when parties seek to plead around the statute at issue. See, e.g., *Zengen, Inc. v. Comerica Bank*, 41 Cal.4th 239, 255 (2007) (applying preemption language in Uniform Commercial Code to bar common law claims that sought to evade statute's damages rules); *Bishop v. Hyundai Mtr. Am.*, 44 Cal. App. 4th 750, 757 (1996) (applying UCC preemption clause to reject extra-statutory damages claims; "We are not free to ignore the Legislature's unambiguous indication of intent and supplement the Act's statutory remedies with additional ones drawn from the law of torts."); *Las Tunas Beach Geologic Hazard Abatement Dist. v.*

---

[5] Plaintiff has alleged various wrongdoings relating to generalized "confidential information" at FAC paragraphs: 4,18,46,80,82,83,85,92,94,96,99,101,102-105,107,109,113,129-130,137,138,140,141,144-170,172-180, 182, 191,196,201,205,206,212,213,217,221,226,229,251,255,262,266-268,280,283,285,289,296,309-311,317,326,328-331,338,340,342, and 344-345.

*Superior Court*, 38 Cal. App. 4th 1002, 1012 (1995) (applying preemption language in Government Code abatement statute to prohibit city from resorting to common law, non-statutory procedures).3 Notably, and as discussed below, one of the California appellate cases which ruled in favor of broad UTSA preemption relied in part on the California Supreme Court's holding in Zengen to do so.

As with these other California statutes, the California legislature incorporated a preemption clause into the text of the UTSA. Under that provision, the only exceptions to the UTSA's preemption scheme are spelled out in the statute itself:

> This title does not affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret.

See Cal. Civ. Code § 3426.7(b). In other words, a party can allege a contract claim, and the district attorney can bring a criminal trade secret proceeding, even if the plaintiff alleges a UTSA claim. But a plaintiff cannot seek "other civil remedies" — tort or statutory claims — if they are "based upon misappropriation of a trade secret."[6]

### 3.     The Legislative History Supports Broad UTSA Preemption.

On top of California's general rules for preemption and the UTSA's express preemption clause, the legislative history of the California UTSA clearly indicates its preemptive sweep.

When determining the preemptive effect of a statute, courts make use of the statute's legislative history. See, e.g., *Briseno v City of Santa Ana*, 6 Cal. App. 4th 1378, 1382 (1992) (Uniform Housing Law preemption; "One need only track the history of the state's housing laws to appreciate the Legislature's desire to preempt local regulation generally."); *Van de Kamp v. Gumbiner*, 221 Cal. App. 3d 1260, 1285 (1990) (health care plan preemption under Health and Safety Code; "The legislative history of the relevant enactments is consistent with the conclusion that the Legislature intended to ... supercede any common law authority regarding regulation and supervision ... by the Attorney

---

[6] Under the canons of statutory interpretation, the inclusion of two express exceptions (criminal and contract actions) means that no additional exceptions are to be implied.  See, e.g. *Thomas v Quintero*, 126 Cal.App. 4th 635, 646 (2005)(applying the maxim of statutory construction, *expressio unius est exclusion alterius*.

General.").

The UTSA's California sponsor followed the national committee which drafted the UTSA when he forwarded the bill to the governor for final signature and explained its preemptive purpose:

"The contribution of the Uniform Act is *substitution* of unitary definitions of trade secret and trade secret misappropriation, and a single statute of limitations for the *various property, quasi-contractual, and violation of fiduciary relationship theories* of noncontractual liability utilized at common law." (emphasis added).

See Declaration of Koray Bulut, Exhibit A (attaching September 1984 letter from Elihu Harris to Gov. Deukmajian and April 1983 excerpt from Digest for AB 501).[7] In other words, the whole point of the statute was to "substitute" one definition for claims about commercial information protectable under state law instead of allowing a situation where more than one such definition might apply.

### 4.     California Courts Reject Plaintiff's Theory.

Even if no California state court had spoken on the question of UTSA preemption, these rules would be controlling. But the California courts have definitively and conclusively taken the majority position on UTSA preemption. To begin with, the California Supreme Court has strongly implied that the UTSA replaced the common law. In *Cadence Design Systems, Inc, v. Avant! Corp*., 29 Cal. 4th 215, 224 (2002), the state Supreme Court noted that if a trade secret case involved a fact pattern where the alleged misuse of information took place before and after the UTSA's 1985 enactment date, there would be a common law claim for the pre-UTSA misuse, while the UTSA would govern the period afterwards.

Second, two California Court of Appeals decisions have expressly ruled in favor of the majority position on UTSA preemption, holding that the California UTSA broadly preempts alternative tort claims as a matter of law, and that the minority position on UTSA preemption is impermissible in California. See *Silvaco Data Systems v. Intel Corp.,* 184 Cal. App. 4th 210, 232-40 (2010) overruled in

---

[7] Although this Declaration was originally filed in *Sunpower Corp. v. SolarCity Corp*., No. 12–CV–00694–LHK, 2012 WL 6160472 (N.D. Cal. Dec. 11, 2012), it is still proper as a supporting declaration in this case and as a matter for which the court may take judicial notice as Document 48-1 in this court's files in that case. F.R.E. 201(b)(2).

part on unrelated ground, *Kwikset v. Superior Court*, 51 Cal.4th 310, 337 (2011) (affirming UTSA preemption-based demurrer of alternative claims for conversion, intentional and negligent interference, unfair competition, and common count, and explaining reasons for preemption in detail); *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 957-60 (2009) (same; affirming "broad" preemption of alternative claims for unfair competition, breach of confidence, and tortious interference with contract in pretrial trial court ruling based on the pleadings).

These twin rulings make clear that UTSA preemption applies at the pleading stage, and applies whether or not the plaintiff's trade secret claim will ultimately succeed or fail. See *Silvaco*, 184 Cal. App. 4th at 232, 236 (plaintiff lost trade secret claim on summary judgment); *KC Multimedia*, 171 Cal. App. 4th at 945-46, 952-53 (plaintiff lost at trial on trade secret claim).

Crucially for this motion, the rulings make clear that a plaintiff cannot engage in artful wordplay and assert that the information at issue is, for example, "confidential but not secret" or "not secret but otherwise protectable" in order to avoid UTSA preemption. See *Silvaco*, 184 Cal. App. 4th at 236, 238-39 & n.22. Indeed, *Silvaco* made clear that California "emphatically rejects" the minority position on UTSA preemption. *Silvaco* did so by (1) repudiating one of the leading minority position cases (a non-California ruling); and (2) making clear that a plaintiff must affirmatively prove a property right in information that exists under "positive law," and cannot make up a tort claim that the law has never recognized:

"We emphatically reject the *Cenveo* court's suggestion that the uniform act was not intended to preempt "common law conversion claims based on the taking of information that, though not a trade secret, was nonetheless of value to the claimant." [citation] On the contrary, a prime purpose of the law was to sweep away the adopting states' bewildering web of rules and rationales and replace it with a uniform set of principles for determining when one is — and is not — liable for acquiring, disclosing, or using "information ... of value." [citation] Central to the effort was the act's definition of a trade secret. [citation] Information that does not fit this definition, and is not otherwise made property by some provision of positive law, belongs to no one, and cannot be converted or stolen. By permitting the conversion claim to proceed on a contrary rationale, the *Cenveo* court impliedly created a new category of intellectual property, far beyond the contemplation of the act, subsuming its definition of "trade

secret" and effectively obliterating the uniform system it seeks to generate." See *Silvaco*, at 184 Cal. App. 4th at 239 n.22 (rejecting the minority position as exemplified in *Cenveo Corp. v. Slater*, 2007 WL 527720, *4 (E.D. Pa. Feb. 12, 2007)). Notably, *Silvaco* relied on the California Supreme Court's UCC preemption ruling in *Zengen*. See id. at 234.

## 5. Other State Supreme Courts Favor the Majority Position.

California is not alone in this common-sense interpretation of the UTSA. The majority of courts, especially those that have analyzed the issues surrounding UTSA preemption in detail, have taken the same position. This includes six of the seven state supreme courts which have ruled on UTSA preemption.[8] The 2010 decision by the Hawaii Supreme Court, includes a comprehensive review of the drafters' intent, conflicting cases around the country, and commentary, and ultimately rejects the concept that litigants can bring alternative claims for information said to be "confidential," but "not secret." *BlueEarth Biofuels, LLC.*, supra.

California's UTSA recognizes the precedential weight of these out-of-state UTSA decisions. Indeed, it expressly directs courts to "make uniform the law with respect to the subject matter of this title among states enacting it." See Cal. Civ. Code. § 3426.8.

## 6. Better-Reasoned District Court Cases Take the Majority Position.

Because California's general rules on statutory preemption, the UTSA's text, the UTSA's legislative history, the California case law, and the majority position's status as precedent under section 3426.8 together are controlling, there is no need to look to federal court rulings on UTSA preemption. Federal courts are bound by a state's Supreme Court on questions of state law, and "[w]here the state supreme court has not spoken on an issue presented to a federal court, the federal court must determine

---

[8] See *BlueEarth Biofuels, LLC v Hawaiian Elec. Co., Inc.* 233 P3d 310 (Haw. 2010); *Mortgage Specialists, Inc. v Davey*, 904 A.2d 652, 665 (N.H. 2006); *RK Ent., LLC v Pro-Comp Mgmt, Inc.*, 158 S.W.3d 685, 689-90 (Ark. 2004); *Robbins v Supermarket Sales, LLC v Supermarket Eqip Sales, LLC* 722 S.E.2d 55, 58(Ga. 2012); *Savor, Inc. v FMR Corp.* 812 A2d 894, 898 (Del.2002); *Frantz v Johnson*, 999 P.2d 351, 357-58 (Nevada 2000); *Weins v Sporleader*, 605 N.W. 2d 488, 492 (South Dakota 2000); *Dicks v Jensen* 768 A.2d 1279, 1285 (Vt. 2001);  cf. *Burbank Grease Serv., LLC, v Sokolowski* 717 N.W.2d 781 (Wisc. 2006) (ruling, over passionate dissent, against preemption of alternative tort claims despite preemption clause in Wisconsin UTSA); see also *Wolfe Elec. Inc. v Duckworth* 293 Kan. 375 (2011) (declining to reach question of UTSA preemption's scope and remanding to lower court for that determination).

what result the state supreme court would reach based on state appellate court opinions, statutes, and treatises." *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1391 (9th Cir. 1994) (emphasis added); see also *Scandinavian Air Serv. v. United Aircraft*, 601 F.2d 425, 429 (9th Cir. 1979) (decisions from the state's courts of appeal are data for determining how the highest state court would rule). "Decisions by intermediate appellate state courts are 'not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Alvarado v. Federal Express Corp.*, 2008 WL 2340211 at *6 (N.D. Cal. June 5, 2008) (citing *West v. Amer. Tel & Tel. Co.*, 311 U.S. 223, 237 (1940)). By contrast, decisions about state law by other federal district courts are not binding. See *Camreta v. Greene*, 131 S.Ct. 2020, 2033 n. 7 (2011).

Here, the California Supreme Court has set forth a framework for the preemptive effect of comprehensive statutes, and it has shown in the *Zengen* case on UCC preemption that, indeed, express preemption clauses are to be broadly applied. In turn, two appellate cases and legislative history speak to the issue in question. Taken together, this authority is controlling.

This Court has specifically ruled on this issue in accordance with the majority view. *Sunpower Corp. v. SolarCity Corp.*, No. 12–CV–00694–LHK, 2012 WL 6160472, at *5 (N.D. Cal. Dec. 11, 2012) ["…in order to state a claim based on the taking of information, a plaintiff must show that he has some property right in such information (i.e. that the information is proprietary). If the basis of the alleged property right is in essence that the information is that it is "not ... generally known to the public," (Cal. Civ.Code § 3426.1(d)(1)), then the claim is sufficiently close to a trade secret claim that it should be superseded notwithstanding the fact that the information fails to meet the definition of a trade secret. To permit otherwise would allow plaintiffs to avoid the preclusive effect of CUTSA (and thereby plead potentially more favorable common-law claims) by simply failing to allege one of the elements necessary for information to qualify as a trade secret."].

Even if the Court were to consider other federal district court cases which have ruled on UTSA preemption under California law, a majority of federal cases — and all that have engaged in significant analysis of the question — have held in favor of broad preemption. See, e.g., *Heller v. Cepia*, LLC, 2012 WL 13572, *7 (N.D. Cal. Jan. 4, 2012) (following *Silvaco*); *Mattel, Inc. v. MGA Ent't, Inc.*, 782 F. Supp. 2d 911, 986-87 (C.D. Cal. 2011) (same; "In an effort to align with the California courts that

-13-

have addressed this issue, the Court concludes that UTSA supersedes claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret."); *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1034-35 (N.D. Cal. 2005) (UTSA preemption of several alternative claims as a matter of law); *Accuimage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 953 (N.D. Cal. 2003) (comprehensive preemption ruling on a common law misappropriation claim).[9]

Looking beyond California's UTSA, the better-reasoned district court decisions elsewhere have also rejected the theory that Plaintiff advocates. See, e.g., *Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1345-46 (N.D. Ga. 2007) (carefully considering conflicting case law, weighing public policies, and finding conversion claim preempted because it was based on "the taking of supposedly proprietary information; "it would make little sense to go through the rigmarole of proving information was truly a trade secret if a plaintiff could alternatively plead claims with less burdensome requirements of proof."); *Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp. 2d 649, 661 (E.D. Tenn. 2004) (lengthy analysis; "If the information is a trade secret, the plaintiff's claim is preempted; if not, the plaintiff has no legal interest upon which to base his claim. Either way, the claim is not cognizable.").

### 7.    Plaintiff's Minority Position Theory Would Nullify the UTSA.

Plaintiff's theory — that it can plead around the UTSA by seeking to protect information it subjectively labels as non-trade secret "proprietary information" — reflects the minority position on UTSA preemption that was rejected by *Silvaco* and by *K.C. Multimedia*. As *Silvaco* explained, Plaintiff offers no provision of California positive law on which it could base a claim that it owns property in such information, and it cannot use a label like "conversion" to invent a property right out of nothing. See *Silvaco*, 184 Cal. App. 4th at 239 n.22.

Courts that have taken the minority position do so, as a rule, without considering the issues raised above. In the *Cenveo* case that *Silvaco* "emphatically" rejected, for example, the court simply

---

[9] See also *Cacique, Inc. v Robert Reiser & Co*. 169 F.3d 619, 624 (affirming ruling that party could not allege common law unfair competition to avoid California UTSA remedies).

expressed disbelief that the Pennsylvania UTSA would preempt causes of action premised on non-secret information — without asking whether such claims really existed in the first place, or whether allowing them would render the UTSA's secrecy requirement and other rules superfluous. Their net result is to destroy the UTSA, and replace it with an alternative, less balanced regime where key defenses such as non-secrecy no longer apply.

Some district courts purporting to apply California law have taken the minority position despite *K.C. Multimedia* and *Silvaco* (often without citing the latter, and never noting *Silvaco*'s Footnote 22 which expressly rejects the minority position). For example, *Amron Int'l Diving Supply, Inc. v. Hydrolinx Diving Comm., Inc.*, 2011 WL 5025178, *10 (S.D. Cal. Oct. 21, 2011), did not cite *K.C Multimedia* or *Silvaco*, and took an approach contrary to their holdings by simply assuming that the plaintiff's alternative claims were valid. And in *Leatt Corp. v. Innovative Safety Tech.*, LLC, 2010 WL 2803947, *6 & n.5 (S.D. Cal. July 15, 2010), the court purported to engage in a "careful reading" of *Silvaco*, yet did not cite or discuss *Silvaco*'s crucial Footnote 22, and instead issued a ruling directly contrary to *Silvaco*'s holding.

Defendants expect that Plaintiff will cite these and other, non-binding minority position cases in its opposition. None are persuasive, none are precedential, none can overcome precedential California authorities, and none analyze the necessary and pertinent questions. See *People v. Frazier*, 128 Cal. App. 4th 807, 825 (2005) (cases do not provide authority for propositions not addressed); *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 997 (9th Cir. 2011) (no precedential effect where issue was not briefed and received summary treatment without consideration) (citing *Thacker v. FCC*, 503 F. 3d 984, 993-94 (9th Cir. 2007) ("[statements made in passing, without analysis, are not binding precedent.")).

### 8. UTSA Preemption at the Pleading Stage is Important for this Case.

UTSA preemption is not an abstract matter — it will prevent Plaintiff from attempting to evade the UTSA's procedural and substantive rules as this case proceeds. Since the UTSA's 1985 enactment, a body of jurisprudence has grown up around the statute to provide for certainty and predictability with regard to issues such as damages and burdens of proof. UTSA preemption prevents parties from circumventing this controlling case law by dressing up the same claim in different language. A few

examples illustrate the point:

- Identification of Alleged Secrets: Trade secret plaintiffs must identify the alleged secrets with particularity before taking discovery. See Cal. Civ. Proc. Code § 2019.210; *Art of Living Found. v. Does*, 2011 WL 2441898, *13 (N.D. Cal. June 15, 2011). A plaintiff who alleges "non-trade secret proprietary information" cannot refuse to identify the information at issue by denying that UTSA preemption applies.

- Secrecy: Trade secrets must be secret or there is no liability. See Cal. Civ. Code. § 3426.1; *American Paper & Packaging Prods. v. Kirgan*, 183 Cal. App. 1318, 1326 (1986) (customer list not secret because competitors knew the same information); *Matthews Paint Co. v. Seaside Paint and Lacquer Co.*, 148 Cal. App. 2d 168, 172 (1957) (companies "generally known in the business world as being engaged in their various businesses" cannot be considered part of a secret customer list). A plaintiff cannot nullify this requirement by making up a tort claim that eliminates its burden to prove secrecy.

- Defenses and Burdens of Proof: The UTSA allows defenses of reverse engineering, independent derivation, and failure to take reasonable measures to protect the information. See Cal. Civ. Code § 3426.1(a), (d)(2). In turn, the plaintiff bears the ultimate burden of proving that the defendant did not independently derive the information at issue. See *Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1659 (2003) (stating rule). A plaintiff cannot plead alternative torts to eliminate these defenses or alter its burden of proof.

- Limited Damages: Trade secret exemplary damages are capped at twice the damages award, decided by a judge and not a jury - there are no UTSA punitive damages. See Cal. Civ. Code § 3426.3. A plaintiff who sues under a tort label cannot seek punitive damages from a jury by denying that UTSA preemption applies. Here, notably, Plaintiff seeks "punitive damages" in its alternative claims. See FAC, ¶¶232,241,259,282,288,313 and333.

- Fees for the Defense: Under the UTSA, a defendant can recover fees and costs in certain cases, including those where the plaintiff sues over information that the plaintiff should have known was not a trade secret. See Cal. Civ. Code § 3426.4; *Computer Economics, Inc. v. Gartner Group, Inc.*, 1999 WL 331778020, *6-7 (S.D. Cal. 1999) (defense awarded fees where plaintiff claimed trade secrets in non-secret information); *VSL Corp. v. General Tech., Inc.*, 46 U.S.P.Q.2d 1356, 1359 (N.D. Cal. 1998) (same). Under Plaintiffs alternative claims, it could deliberately sue over non-secret information, and Defendants would have no opportunity to recover fees and costs.

In sum, Plaintiffs made-up alternative causes of action would fail to state a claim under Rule 12(b)(6) even if they existed under California law, because they directly conflict with the UTSA, eliminate its specific requirements, and extinguish the balance it presents between the interests of plaintiffs and the interests of defendants. If the UTSA does not preempt such an obvious attempt to tear down the California legislature's chosen method for litigating information misuse claims by former employers against former employees, then (1) the California Supreme Court's framework for statutory

-16-

interpretation must be ignored, (2) the UTSA's preemption clause is superfluous, (3) the California legislature intended nothing at all when it stated that the statute would substitute a unitary definition of secrecy for "property" and "quasi-contractual" theories, (4) *KC Multimedia* and *Silvaco* are meaningless, and (5) many decades of California public policy favoring employee mobility should be cast aside.

Plaintiff cannot ask this Court to render such a total nullification on a question of state law. Plaintiff's claims premised on non-trade secret "proprietary" or "confidential" information should be dismissed without leave to amend. On the merits of this case, Plaintiff must stand or fall on its UTSA and contract claims. Alternatively, if for any reason the court believes the claims should be dismissed, at a minimum, the words "proprietary information", "proprietary materials", "confidential information" and "confidential materials" should be stricken from the Complaint.

### D.    Plaintiff's Prospective Economic Advantage Claim Fails for Other Reasons.

Plaintiff's claim for interference with prospective economic advantage also fails to state a claim even apart from UTSA preemption. In support of this claim, Plaintiff merely alleges that it has "economic relationships" with "numerous potential and actual investors" (FAC ¶296) and with "its employees, consultants and advisors" (FAC ¶297) and that Defendants' actions disrupted such relationships. See Complaint ¶¶ 291-302. These allegations fail to state a claim under *Iqbal* and T*wombly* because they are entirely conclusory and contain no factual allegations whatsoever.

The elements of a claim for interference with prospective economic advantage are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the acts of the defendant." See *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003).

As to pleading a third party relationship and economic harm, an allegation that there was interference that generally caused harm in the marketplace, without naming any interfered-with third party, is insufficient as a matter of law. See *Westside Center Assoc. v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 527-28 (1996) (interference claim insufficient where potential market alleged as lost

relationships; rejecting "interference with the market" theory); *Buxton v. Eagle Test Sys., Inc.*, 2010 WL 1240749, *1 (N.D. Cal. Mar. 26, 2010) (granting motion to dismiss where plaintiff failed to allege "specific economic relationships with identifiable third parties"); *Silicon Labs Integration, Inc. v. Melman*, 2010 WL 890140, *2 (N.D. Cal. Mar. 8, 2010) (plaintiff must plead a prospective relationship with a specific third party to avoid motion to dismiss); Accuimage, 260 F. Supp. 2d at 957 (conclusory allegations of economic relations with unnamed others failed to state a claim); *TPS Utilicom Serv., Inc. v. AT&T Corp.*, 223 F. Supp. 2d 1089, 1106-07 (C.D. Cal. 2002) (claim dismissed where based on generalized allegation of economic relationship with consumers in the markets it serves); *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1313 (N.D. Cal. 1997) (dismissing claim where plaintiff failed to identify any third party with whom it had allegedly interfered-with relationship).

Here, Plaintiff does not allege any prospective relationship between it and any third party that any Defendant allegedly disrupted — no customer is named, no circumstances of disruption are alleged, and no description of why Plaintiff had sufficiently cognizable prospective relationships with any third party is alleged. Plaintiff's simplistic repetition of the elements of the claim without identifying any third party relationship that was disrupted is exactly the type of conclusory pleading *Iqbal* and *Twombly* prohibit. Plaintiff's ninth cause of action should be dismissed unless Plaintiff can actually allege facts sufficient to state a claim.

## IV.    CONCLUSION

For all of these reasons, Defendants respectfully request that the Court dismiss Plaintiff's claims for (1) RICO (First Cause of Action); (2) Computer Fraud and Abuse Act (Second Cause of Action); (3) Fraud (Fifth Cause of Action); (4) Breach of Contract (Sixth Cause of Action); (5) Trade Secrets (Eleventh Cause of Action); (6) Conversion (Twelfth Cause of Action); (7) Unfair Competition under California Business & Professions Code section 17200 (Thirteenth Cause of Action) and (8) Unjust Enrichment (Fourteenth Cause of Action), without leave to amend, to the extent that they are based on a legal theory that is not cognizable under California law. Alternatively, if for any reason the court believes the claims should be dismissed, at a minimum, the words "proprietary information", "proprietary materials", "confidential information" and "confidential materials" should be stricken from

1    the FAC. Additionally, Defendants request Defendants also respectfully request that the Court dismiss

2    Plaintiff's Ninth Cause of Action on the separate grounds stated as well.

3          Dated: April 24, 2015

4                                        LOW, BALL & LYNCH

5

6                              By____/s/ Thomas J. LoSavio_____
                                  THOMAS J. LOSAVIO
7                                 JAMES F. REGAN
                                  Attorneys for Defendants
8                                 ANNA GATTI and IQ SYSTEMS, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANTS' PARTIAL MOTION TO DISMISS FIRST AMENDED
COMPLAINT (RULE 12(B)(6))

1    THOMAS J. LOSAVIO, SBN 51023
     JAMES F. REGAN, SBN 252199
2    LOW, BALL & LYNCH
     505 Montgomery Street, 7th Floor
3    San Francisco, California 94111
     Telephone:     (415) 981-6630
4    Facsimile:      (415) 982-1634
     Email: tlosavio@lowball.com
5    Email: jregan@lowball.com

6

7    Attorneys for Defendants
     ANNA GATTI and IQ SYSTEMS, LLC

8

9                UNITED STATES DISTRICT COURT

10          FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12   LOOP AI LABS, INC., a Delaware Corporation, | Case No. 3:15-CV-00798-HSG |
| 13               Plaintiff, | **DECLARATION OF KORAY J. BULUT IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS FIRST AMENDED COMPLAINT (RULE 12(b)(6))** |
| 14     vs. | |
| 15   ANNA GATTI, et al., | |
| 16             Defendants. | |
| 17 | Date:          July 2, 2015 |
| 18 | Time:         2:00 p.m.<br>Judge:        Hon. Haywood S. Gilliam Jr.<br>Location:    San Francisco Courthouse, |
| 19 |                  Courtroom 15—18th Floor<br>                 450 Golden Gate Avenue, |
| 20 |                  San Francisco, CA 94102 |

21

22

23

24

25

26

27

28

DECLARATION OF KORAY J. BULUT IN SUPPORT OF DEFENDANTS' PARTIAL MOTION
TO DISMISS FIRST AMENDED COMPLAINT (RULE 12(b)(6))

ULRICO S. ROSALES, State Bar No. 139809
CHARLES T. GRAVES, State Bar No. 197923
KORAY J. BULUT, State Bar. No. 230298
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:   (650) 565-5100
Email:  urosales@wsgr.com

Attorneys for Defendant
SolarCity Corporation

DAVID R. BURTT, State Bar No. 201220
ONGARO BURTT & LOUDERBACK LLP
650 California Street, Fifth Floor
San Francisco, CA  94108-2739
Telephone:  (415) 433-3900
Facsimile:  (415) 433-3950
Email: dburtt@obllaw.com

Attorneys for Defendants
Tom Leyden, Matt Giannini,
Dan Leary, Felix Aguayo, and Alice Cathcart

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SUNPOWER CORPORATION, a Delaware corporation, <br><br>            Plaintiff, <br><br>       v. <br><br> SOLARCITY CORPORATION, a Delaware corporation; TOM LEYDEN, an individual; MATT GIANNINI, an individual; DAN LEARY, an individual; FELIX AGUAYO, an individual; and ALICE CATCHART, an individual, <br><br>            Defendants. | CASE NO.:  CV 12-00694 LHK <br><br> **DECLARATION OF KORAY J. BULUT IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS (RULE 12(b)(6))** <br><br> Date:  November 8, 2012 <br> Time:  1:30 p.m. <br> Courtroom:  8 <br> Judge:  The Honorable Lucy H. Koh |

1     I, Koray J. Bulut, declare as follows:

2         1.      I am an attorney at law duly licensed to practice in the State of California and

3   before this Court.  I am an associate at the law firm of Wilson, Sonsini, Goodrich & Rosati and

4   counsel for SolarCity Corporation, a defendant in this action.  I have personal knowledge of the

5   facts set forth herein and, if called as a witness, could and would testify competently thereto.

6         2.      Attached as Exhibit A is a true and correct copy of two documents from the

7   legislative history for the California Uniform Trade Secrets Act:  (a) a September 12, 1984 letter

8   from Elihu Harris to Gov. George Deukmajian requesting the Governor's signature for the

9   Uniform Trade Secrets Act; and (b) an April 25, 1983 Assembly Committee on the Judiciary

10  Digest for AB 501.  WSGR obtained these documents along with the complete legislative history

11  of the statute in February 2004 from Wesner & Associates Legislative Research Services.  A

12  copy of a declaration of Ken Wesner from Wesner & Associates is also attached.

13

14        I declare under penalty of perjury under the laws of the State of California that the

15  foregoing is true and correct.  This Declaration was executed on August 2, 2012, in San

16  Francisco, California.

17

18                                              _____/s/Koray J. Bulut_____
                                                        Koray J. Bulut
19

20

21

22

23

24

25

26

27

28

EXHIBIT A



# Assembly
# California Legislature

COMMITTEES
CHAIRMAN
JUDICIARY
CRIMINAL LAW & PUBLIC SAFETY
FINANCE & INSURANCE
TRANSPORTATION

DISTRICT OFFICE
1111 JACKSON STREET
SUITE 9037
OAKLAND, CALIFORNIA 94607
(415) 464-0338

SACRAMENTO ADDRESS
STATE CAPITOL
SACRAMENTO, CALIFORNIA 95814
(916) 445-7442

**ELIHU M. HARRIS**
ASSEMBLYMAN, THIRTEENTH DISTRICT

September 12, 1984

The Honorable George Deukmejian
Governor
State of California
State Capitol
Sacramento, California  95814

ATTN:  Bob Williams

Dear Governor Deukmejian:

Assembly Bill 501, which is before you, was introduced at the
recommendation of the California Commission on Uniform State Laws
for the purpose of enacting the Uniform Trade Secrets Act in
California.

A valid patent provides a legal monopoly for seventeen years in
exchange for public disclosure of an invention.  If, however, the
courts ultimately decide that the Patent Office improperly issued
a patent, an invention will have been disclosed to competitors
with no corresponding benefit.  In view of the substantial number
of patents that are invalidated by the courts, many businesses
now elect to protect commercially valuable information through
reliance upon the state law of trade secret protection.
Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470 (1974), which
establishes that neither the Patent Clause of the United States
Constitution nor the federal patent laws pre-empt state trade
secret protection for patentable or unpatentable information, may
well have increased the extent of this reliance.

Notwithstanding the commercial importance of state trade secret
law to interstate business, this law has not developed
satisfactorily.  In the first place, its development is uneven.
Although there typically are a substantial number of reported

-2-

The Honorable George Deukmejian
September 12, 1984
AB 501

decisions in states that are commercial centers, this is not the
case in less populous and more agricultural jurisdictions.
Secondly, even in states in which there has been significant
litigation, there is undue uncertainty concerning there
parameters of trade secret protection, and the appropriate
remedies for misappropriation of a trade secret.  Nonetheless,
the most widely accepted rules of trade secret law, Section 757
of the Restatement of Torts, were among those omitted from the
Restatement of Torts, 2d (1978).

The Uniform Act codifies the basic principles of common law trade
secret protection, preserving its essential distinctions from
patent law.  Like traditional trade secret law, the Uniform Act
contains general concepts.  The contribution of the Uniform Act
is substitution of unitary definitions of trade secret and trade
secret misappropriation, and a single statute of limitations for
the various property, quasi-contractual, and violation of
fiduciary relationship theories of noncontractual liability
utilized at common law.  The Uniform Act also codifies the
results of the better reasoned cases concerning the remedies for
trade secret misappropriation.

During the past two years the Commission has worked on the bill
with the Patent, Trademark, and Copyright Section and
representatives of the Conference of Delegates of the State Bar.
Both of these groups support the bill in its current form.

Nine other states have currently enacted the Uniform Act.  The
enactment of the act in California will assist in bringing
clarity and uniformity in this important area of law.

I respectfully request your signature of AB 501.

Sincerely,

ELIHU M. HARRIS

EMH:atd

**ASSEMBLY COMMITTEE ON JUDICIARY**                    **AB 501**
**ELIHU M. HARRIS, Chairman**

AB 501 (Harris)  As amended 04/21/83

<u>SUBJECT</u>

This bill is intended to enact the Uniform Trade Secrets Act.

<u>DIGEST</u>

<u>This bill</u> would establish a statutory scheme to protect trade
secrets, known as the Uniform Trade Secrets Act.  Among other
things, the bill would:

- enact a series of definitions.  Trade secret is defined
  as information that (1) derives independent economic
  value from not being generally known to, and not being
  readily ascertainable by proper means by, other persons
  who can obtain economic value from its disclosure or
  use; and (2) is the subject of efforts that are
  reasonable under the circumstances to maintain its
  secrecy.

- provide for the enjoining of actual or threatened
  misappropriation, as defined, of a trade secret.

- permit a complainant to recover actual damages for the
  loss caused by the improper acquisition or disclosure of
  a trade secret.  Provision is also made for recovery for
  the unjust enrichment caused by misappropriation.  If
  neither damages nor unjust enrichment caused by
  misappropriation are provable, the court may order
  payment of a reasonable royalty for no longer than the
  period the use could have been prohibited.  Exemplary
  damages would be permitted for willful and malicious
  misappropriation.

- authorize the award of reasonable attorneys' fees to the
  prevailing party where a claim of misappropriation is
  made in bad faith or a motion to terminate an injunction
  is made or resisted in bad faith, or where willful and
  malicious misappropriation is found.

- authorize a court to use reasonable means, such as
  protective orders, sealing of records and in-camera
  hearings, to preserve the secrecy of a trade secret in
  an action under the Act.

(CONTINUED)

Consultant R. LeBov                              AB 501
04/25/83                                         Page 1

- provide that an action for misappropriation must be brought within 3 years after it was discovered or, through reasonable diligence, should have been discovered.

- provide that the Act does not affect any contractual rights or remedies and that, except as otherwise expressly provided, it does not supersede any statute relating to misappropriation of a trade secret or otherwise regulations trade secrets.

- provide that, in any action alleging misappropriation under the Act, before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with particularity, subject to any protective orders which may be appropriate.

- immunize state and local public agencies from damages for disclosure, under the Public Records Act, of a public record constituting a misappropriation of a trade secret unless the disclosure was made in bad faith.

The bill's provisions would not apply to misappropriation occurring prior to January 1, 1984.  The Act would apply to the part of a continuing misappropriation occurring on or after that date unless it was not a misappropriation under the law in effect before the bill's operative date.

STAFF COMMENTS

1. This bill would enact the Uniform Trade Secrets Act in California.  That Act was drafted and recommended for enactment in all states by the National Conference of Commissioners on Uniform State Laws in 1979; and was approved by the American Bar Association in 1980.  It has been enacted in at least 8 other states (Minnesota, Kansas, Idaho, Washington, Arkansas, Delaware, Louisiana, and Indiana).

In its prefatory note to the Act, the National Conference stated that "there is undue uncertainty concerning the parameters of trade secret protection, and the appropriate remedies for misappropriation of a trade secret."  The prefatory note further states that "like traditional trade secret law, the Uniform Act contains general concepts.  The contribution of the Uniform Act is substitution of unitary definitions of trade secret and trade secret misappropriation, and a single statute of limitations for the various property, quasi-contractual, and violation of fiduciary relationship theories of noncontractual liability utilized at common law.  The Uniform Act also codifies the

(CONTINUED)

Consultant R. LeBov                                    AB 501
04/25/83                                               Page 2

results of the better reasoned cases concerning the remedies for trade secret misappropriation."

2. Existing California statutory law contains a number of other provisions which define or otherwise affect trade secrets. For example, Penal Code Section 499c provides for criminal penalties for misappropriation of trade secrets. This bill, which provides for civil remedies, is generally not intended to affect any of the existing provisions. It states that, except as otherwise expressly provided, it does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets.

3. The Patent, Trademark and Copyright Section of the State Bar has expressed concern with this bill's definition of "trade secret." Specifically, the Section feels that it "would invite an argument in almost every trade secret case that, since the trade secret could have been reverse engineered, or could have been learned from a literature search, or could have been compiled from other knowledge, it was 'readily ascertainable'".

The Uniform Commissioners' comment on the definition of trade secret states that "one of the broadly stated policies behind trade secret law is the maintenance of standards of commercial ethics." The commissioners point out that the Restatement of Torts notes that "proper means" includes, among other things, "discovery by 'reverse engineering,' that is, by starting with the known product and working backward to find the method by which it was developed. The acquisition of the known product must, of course, also be by a fair and honest means, such as purchase of the item on the open market for reverse engineering to be lawful." Under the Restatement, "proper means" also includes discovery by independent invention, discovery under a license from the owner of the trade secret, observation of the item in public use or on public display, or obtaining the trade secret from published literature.

4. California Rural Legal Assistance is concerned that this measure might be construed to limit public access to pesticide testing data under the Public Records Act. That Act exempts, from required disclosure, records which may not be disclosed pursuant to provisions of state law. (Government Code Section 6254)

According to CRLA, "there is a body of data submitted to the Department of Food and Agriculture relative to the health and environmental hazards and efficacy of pesticides that it licenses and regulates. It is crucial that the public have access to the data so that the public can participate in the

(CONTINUED)

Department's regulatory decisions."  Would this bill
inappropriately restrict public access to health and safety
testing data submitted to regulatory and licensing agencies?

SOURCE

National Conference of Commissioners on Uniform State Laws

SUPPORT

General Electric
Ford Motor Company

OPPOSITION

Unknown

Consultant R. LeBov                                    AB 501
04/25/83



# Wesner & Associates
# Legislative Research Services

## Legislative History of Civil Code
## Code Section 3426-3426.10

## Added by Statutes of 1984 Chapter 1724
## Assembly Bill 501 Author: Harris



Wesner & Associates Legislative Research Services
3504 J Street #18 Sacramento, CA 95816
(916) 457-1756 (916) 715-4550
kwesner@sbcglobal.net

# Assembly

1. **History and Bill**: Assembly Final History, Assembly Bill versions / excerpts with Legislative Counsel's Digest or Summary Digest[1]

2. **Assembly Policy Committee documents**: Committee Analysis, Committee Worksheets, correspondence, testimony, statements of intent, amendments, hearing transcripts and miscellaneous documents located in the policy committee file[2]

3. **Author's File documents**: Analysis, statements of intent, correspondence, miscellaneous documents[5]

4. **Assembly Republican Caucus documents**: Analysis, correspondence, amendments[4]

# Senate

5. **Senate Policy Committee**: Committee Analysis, Committee Worksheets, correspondence, testimony, statements of intent, amendments, hearing transcripts and miscellaneous documents located in the policy committee file[2]

6. **Senate Floor documents**: Senate Democratic Caucus Analysis, Senate Republican Caucus Analysis, Office of Senate Floor Analysis[4]

# Governor

7. **Governor's Chaptered Bill File**: Legislative Counsel's Analysis, Agency Analysis, Enrolled Bill Reports, Author's letter to the Governor, correspondence, press releases, veto messages[6]

---

[1] See points and authorities item #1
[2] See points and authorities item #2
[5] See points and authorities item #5
[4] See points and authorities item #4
[4] See points and authorities item #4
[6] See points and authorities item #6

# Extrinsic Materials

15. **Law Reviews Articles:**   PLJ[7]

---

7 See Points and Authorities item #7

1

**Declaration of Kenneth R. Wesner**
**Regarding the Legislative History of Civil Code Sections 3426-3426.10**
2 **As Added by Stats. 1984 c.1724 AB 501 Harris**

3

I, Ken Wesner, declare that I am competent to state and would testify to the following if called to
4

be a witness:
5

**Background & Qualifications:**
6

I am the owner and founder of Wesner & Associates Legislative Research Services.  Prior to
7

founding Wesner & Associates, I worked as a legislative researcher for the Office of the
8

Attorney General, Department of Justice and worked with Legislative Research Inc. as a
9

legislative researcher.
10

**Authentication of legislative history documents:**
11

The accompanying documents pertaining to the above titled legislation are true and correct
12

copies of records from State of California sources in Sacramento.
13

**Attestation:**
14

I declare under penalty of perjury that the foregoing is true and correct and that I could and
15

would so testify in a court of law if called to be a witness.
16

17

18
                                            Dated this 26th
19                                          day of February, 2004

20

21

22

23

24

25

Declaration of Kenneth R. Wesner - 1