1

2  DANIEL J. WEINBERG (SBN 227159)
   dweinberg@fawlaw.com
3  FREITAS ANGELL & WEINBERG LLP
   350 Marine Parkway, Suite 200
4  Redwood Shores, California  94065
   Telephone:      (650) 593-6300
5  Facsimile:      (650) 593-6301

6  VALERIA C. HEALY (*pro hac vice*)
   valeria.healy@healylex.com
7  HEALY LLC
   154 Grand Street
8  New York, New York  10013
   Telephone:      (212) 810-0377
9  Facsimile:      (212) 810-7036

10
   Attorneys for Plaintiff
11 LOOP AI LABS INC.

12                   UNITED STATES DISTRICT COURT

13                 NORTHERN DISTRICT OF CALIFORNIA

14                    SAN FRANCISCO DIVISION

15

16 LOOP AI LABS INC., a Delaware          Case No.  3:15-cv-0798 HSG
   corporation,
17                                        **LOOP AI LABS INC.'S MEMORANDUM OF**
                   Plaintiff,             **POINTS AND AUTHORITIES IN**
18                                        **OPPOSITION TO ALMAWAVE USA'S**
   v.                                     **PARTIAL MOTION TO DISMISS UNDER**
19                                        **FED. R. CIV. P. 12(b)(6)**
   ANNA GATTI, an individual,
20 ALMAVIVA S.p.A., an Italian            Date:
   corporation, ALMAWAVE S.r.l. an Italian   Time:
21 corporation, ALMAWAVE USA, Inc., a     Courtroom: 15, 18th Floor
   California corporation, IQSYSTEM LLC, a   Action Filed: February 20, 2015
22 California limited liability company,  Trial date: None set
   IQSYSTEM Inc., a Delaware Corporation,
23                                        Hon. Haywood S. Gilliam Jr.
                   Defendants.
24

25

26

27

28

1

2

**TABLE OF CONTENTS**

3

4   TABLE OF AUTHORITIES ...................................................................................... iv

5   PRELIMINARY STATEMENT................................................................................1

6   ARGUMENT ...........................................................................................................4

7   I.   RELEVANT LEGAL STANDARDS....................................................................4

8   II.  PLAINTIFF'S COMPLAINT PROPERLY STATES CLAIMS AGAINST AW-USA
        UNDER THE FEDERAL AND STATE COMPUTER FRAUD STATUTES...................4
9

10       A.  AW-USA's Motion to Dismiss Plaintiff's CFAA Claim Improperly Relies on New
             Arguments Not Previously Made........................................................................4
11

12       B.  AW-USA's Arguments in Support of Dismissal of the CFAA Also Fail on the
             Merits ...........................................................................................................6
13       C.  AW-USA's Arguments in Support of Dismissal of the CDAFA is Legally
             Groundless ...................................................................................................10
14

15  III. AW-USA'S FACTUAL CHALLENGES OVER THE EXISTENCE OF AN
        "ECONOMIC RELATIONSHIP" DO NO SUPPORT DISMISSAL OF ANY ASPECT
16      OF PLAINTIFF'S CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE
        ADVANTAGE..................................................................................................11
17
18  IV.  AW-USA'S FACTUAL DISPUTES REGARDING ASPECTS OF PLAINTIFF'S
        CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT ARE NOT AN
19      APPROPRIATE BASIS FOR DISMISSAL.........................................................14

20       A.  AW-USA's New Arguments................................................................................15

21       B.  Other Than Claiming it Is Not Responsible, AW-USA Fails to Identify Any Other
             Basis for Its Motion to Dismiss Count X ...........................................................16
22

23  V.   PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS PERMITTED AT THIS STAGE OF
        THE PROCEEDING ........................................................................................17

24  VI.  PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND .........................................19

25  CONCLUSION.......................................................................................................20

26

27

28

# TABLE OF AUTHORITIES

## <u>CASES</u>

**Page**

*Aguilar v. Ocwen Fin. Corp.*,
    No. 14-07675, 2015 U.S. Dist. LEXIS 43107, 2015 WL 1345279 (C.D. Cal. Mar. 24,
    2015) ......................................................................................................................4, 15

*All Steel Engines, Inc. v. Taylor Engines, Inc.*,
    88 F. Supp. 745 (D. Cal. 1950), *aff'd*, 192 F.2d 171 (9th Cir. 1951) ...............................17

*Ass'n for L.A. Deputy Sheriffs v. County of L.A.*,
    648 F.3d 986 (9th Cir. 2011).............................................................................................4

*Astiana v. Hain Celestial Grp., Inc.*,
    No. 12-17596, 2015 U.S. App. LEXIS 5833, 2015 WL 1600205 (9th Cir. Apr. 10, 2015)
    .......................................................................................................................................18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................................4

*Dahlia v. Rodriguez*,
    735 F.3d 1060 (9th Cir. 2013).............................................................................................4

*Facebook, Inc. v. Power Ventures, Inc.*;
    No. 08-05780, 2010 US Dist. LEXIS 93517, 2010 WL 3291750 (N.D. Cal. July 20, 2010)
    .......................................................................................................................................10

*Farmers Ins. Exch. v. Steele Ins. Ag., Inc.*,
    No. 13-00784, 2013 U.S. Dist. LEXIS 162575, 2013 WL 6070488 (E.D. Cal. Nov. 14,
    2013) .....................................................................................................................5, 6, 8

*Givemepower Corp. v. Pace Compumetrics, Inc.*,
    No. 05-1772, 2007 U.S. Dist. LEXIS 59371, 2007 WL 2345027 (S.D. Cal. Aug. 14, 2007)
    .......................................................................................................................................15

*Guzik Tech. Enters. v. Western Digital Corp.*,
    No. 11-03786, 2014 U.S. Dist. LEXIS 42621 (N.D. Cal. Mar. 21, 2014).........................14

*In re ConAgra Foods, Inc.*,
    908 F. Supp. 2d 1090 (C.D. Cal. 2012)............................................................................17

*In re Google Android Consumer Privacy Litig.*,
    No. 11-MD-02264, 2013 US Dist. LEXIS 42724, 2013 WL 1283236 (N.D. Cal. Mar. 26,
    2013) ...............................................................................................................................11

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ..........................................................................................13, 14

*Lilly v. ConAgra Foods, Inc.*,
    743 F.3d 662 (9th Cir. 2014)..............................................................................................4

**Page**

*Longest v. Green Tree Servicing LLC;*
  No. 14-08150, 2015 US Dist. LEXIS 16173, 2014 WL 546095 (C.D. Cal. Feb. 9, 2015)
  .................................................................................................................................18

*LVRH Holdings LLC v. Brekka,*
  581 F.3d 1127 (9th Cir. 2009)..........................................................................................8

*Motorola, Inc. v. Lemko Corp.,*
  609 F. Supp. 2d 760 (N.D. Ill. 2009) ...............................................................................7

*Natomas Gardens Inv. Group, LLC v. Sinadinos,*
  No. 08–2308, 2010 U.S. Dist. LEXIS 48594, 2010 WL 1363382 (E.D. Cal. Apr. 22, 2010)
  ..............................................................................................................................13, 14

*NCMIC Fin. Corp. v. Artino,*
  638 F. Supp. 2d 1042, 1063 (S.D. Iowa 2009)..................................................................9

*Quelimane Co. v. Stewart Title Guaranty Co.,*
  19 Cal. 4th 26 (1998) ..................................................................................................16, 17

*Reeves v. Hanlon,*
  33 Cal. 4th 1140 (Cal. 2004)............................................................................................12

*Siebert v. Gene Sec. Network,*
  No. 11-01987, 2013 U.S. Dist. LEXIS 149145, 2013 WL 5645309 (N.D. Cal. Oct. 16,
  2013) ............................................................................................................................10, 11

*Starr v. Baca,*
  652 F.3d 1202 (9th Cir. 2011) .........................................................................................16

*United States v. Nosal,*
  676 F.3d 854 (9th Cir. 2012)..............................................................................................8

*United States v. Nosal,*
  930 F. Supp. 2d 1051 (N.D. Cal. 2013) ............................................................................8

*United States Surgical v. Origin Medsystems, Inc.,*
  1993 U.S. Dist. LEXIS 17180, 27 U.S.P.Q. 2d 1526 (N.D. Cal. 1993) ...........................16

*Weingand v. Harland Fin. Solutions, Inc.,*
  No. 11-3109, 2012 U.S. Dist. LEXIS 84844, 2012 WL 2327660 (N.D. Cal. June 19, 2012)
  ..............................................................................................................................10, 11

*Youst v. Longo,*
  43 Cal. 3d 64 (1987) .......................................................................................................12

*Zhongqi Zhu v. County of L.A.,*
  595 Fed. Appx. 728 (9th Cir. 2015)................................................................................19

# STATUTES AND RULES

**Page**

18 U.S.C. § 1030 ............................................................................................ *passim*

Cal. Penal Code § 502 ....................................................................................10

Fed. R. Civ. P. 8 ............................................................................................ *passim*

Fed. R. Civ. P. 12 .......................................................................................... *passim*

Plaintiff Loop AI Labs Inc. (Plaintiff or "Loop AI") respectfully submits this Memorandum of Points and Authorities in Opposition to Almawave USA's ("AW-USA's") second partial Motion to Dismiss pursuant to Rule 12(b)(6) filed on April 23, 2015.[1]  *See* ECF No. 60 (the "Motion").  The Motion seeks dismissal of portions of four claims brought against AW-USA in the first amended Complaint filed by Plaintiff on April 6, 2015.  *See* ECF No. 45 ("Complaint").  This is AW-USA's second Rule 12(b) Motion filed in the last two months.  Two additional Rule 12(b) motions were also filed in the last two months by Defendants Almaviva S.p.A. and Almawave S.r.l. (together with AW-USA, the "Almaviva Defendants").

## PRELIMINARY STATEMENT

In its first Rule 12(b)(6) Motion, AW-USA claimed that Plaintiff's complaint did not contain enough factual detail.  On April 6, 2015, Plaintiff filed its first amended Complaint, consisting of 99 pages, and over 348 paragraphs (excluding subparts) of factual allegations in support of its claims against AW-USA and the other defendants.  The Complaint, relying on evidence uncovered during Plaintiff's informal investigation, states cognizable claims for relief against AW-USA and the other defendants and provides more than sufficient facts to survive a motion to dismiss under the applicable standard.  In light of the extensive factual allegations set forth in the Complaint, AW-USA's insistence in bringing a second Rule 12(b) Motion appears to be part of the Almaviva Defendants' efforts to delay the progress of this proceeding, and unnecessarily increase Plaintiff's costs by forcing them to respond to a barrage of motions.[2]

---

[1] All references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise stated.

[2] In this second Rule 12(b) Motion, AW-USA also interposes new arguments and objections that, although previously available to it, were not made in its first Motion to Dismiss filed on March 17, 2015.  *See* ECF No. 38.  As more fully set forth below, Rule 12(g) ***does not permit*** a defendant to file multiple Rule 12(b) motions with objections or defenses that are moving targets. In addition, Rule 12 motions are not intended to be used as a tool to delay the progress of a proceeding or to impose unnecessary litigation costs on a party.  In fact, while AW-USA claims that "egregious and known misstatements of facts … will be proven false through the course of

*First*, AW-USA challenges claims that generally withstand dismissal at the pleading stage because they are based on allegations that are presumed to be true, even if AW-USA disputes the facts.  For example, AW-USA argues that "Almawave was not responsible for these breaches," and that "Almawave USA reasonably believed that Ms. Gatti was <u>not</u> in breach of any contracts."  Motion at 1, 8.  But these are disputed factual assertions, which do not properly support a Rule 12(b)(6) motion.

*Second*, AW-USA blatantly ignores, misstates and mischaracterizes many allegations in the Complaint.   In its entire Motion, AW-USA cites only to a handful paragraphs from the claims for relief set forth at the end of the Complaint — ignoring the over 192 paragraphs (excluding subsections) of detailed factual allegations that support those claims.[3]

Finally, AW-USA consistently conflates legal and factual arguments, and seeks to weave its victim defense into its analysis, to persuade this Court that dismissal is appropriate because — according to AW-USA — "this Court knows from the TRO briefing" that the Almaviva Defendants allegedly "had no idea" about Gatti's wrongdoing.  ECF No. 60 at 1.  The Almaviva Defendants **say** that, even though Gatti told them she planned to continue working as the CEO of Plaintiff while also working for them, the Almaviva Defendants did not believe there was a

discovery," from the inception of this case, AW-USA and the other Defendants have refused to allow **any** discovery, and have refused to make themselves available for a prompt Rule 26(f) Conference that would have permitted Plaintiff to begin discovery a couple of months ago.  *See* ECF No. 53 at ¶¶ 16-18, ECF No. 53-10.  When the Almaviva Defendants finally made themselves available for the Rule 26(f) Conference on May 4, 2015 (the penultimate day of a 3-months period allowed under the Court's Scheduling Order), their counsel proclaimed that all discovery in this case is purportedly "stayed," and that "participation in discovery by any party" is "**prohibited** absent an order from the Court."  Almaviva Defendants' correspondence dated May 4, 2015 (emphasis added).

[3] For instance, in its argument as to why Plaintiff's claim under the Computer Fraud and Abuse Act should be dismissed, AW-USA, misrepresents the basis for that claim, citing only *a single* paragraph in the Complaint, and ignoring all other factual allegations.  In its arguments seeking dismissal of Plaintiff's tortious interference claims, AW-USA cites just a handful of paragraphs in the Complaint and even misrepresents the content of those paragraphs.  In its arguments seeking dismissal of Plaintiff's claims under Section 502 of the California Penal Code and for equitable remedies, AW-USA fails to cite even a single allegation in the Complaint.

1

2   problem that required an investigation or other action on their part.  However, in the TRO

3   briefing to which AW-USA points, Gatti submitted an affidavit stating that the Almaviva

4   Defendants knew that her agreement with Loop AI required *her to get Loop AI's permission*

5   before taking on another job.  *See* ECF No. 24-1 at ¶ 22 ("I told Valeria [Sandei, in April 2014]

6   that I was already the CEO of Loop.ai … and that I would have to discuss it with my co-

7   founder…..").  But the Almaviva Defendants *say* they did not understand the legal implications of

8   any of this because neither Gatti nor their headhunter, at US firm Russell Reynolds, told them

9   there were any "legal" implications arising from this unusual arrangement.[4]

10

11       The Almaviva Defendants' purported "victim" defense rings hollow, in light of the facts

12   here.  And even if the Court were to have a different view of the merits of the Almaviva

13   Defendants' putative defense, this would not be the time for that defense to be tested.   The only

14   thing that matters on this Motion is whether the allegations made in the Complaint, viewed in the

15   light most favorable to Plaintiff, and drawing all reasonable inferences in its favor, support the

16   claims for relief that have been asserted.

17

18       Respectfully, the Complaint states valid claims for relief against AW-USA, which are

19   more than adequately supported by detailed and extensive factual allegations.  AW-USA's

20   Motion should be denied in all respects.

21   _____

22   [4] Notably, although the Almaviva Defendants claim they were not advised by either Gatti or
     Russell Reynolds of any "legal" or "practical" conflicts regarding their hire of Gatti, to date the
23   Almaviva Defendants have had nothing to say about the advice they received from the California
     law firm they hired to advise them on these issues, which law firm was well aware that the
24   Almaviva Defendants' hiring of Gatti was impermissible.  Specifically, the Almaviva Defendants
     have had nothing to say about whether that law firm advised them to get written confirmation
25   from Plaintiff that it consented to its CEO continuing to access highly confidential information
     and vesting ownership in valuable stock of Plaintiff, while unilaterally and secretly changing her
26   full-time status at Plaintiff to that of employee of the Almaviva Defendants.  Similarly, the
     Almaviva Defendants have had nothing to say about whether that same law firm advised them to
27   implement measures to avoid any misappropriation of Plaintiff's trade secrets arising from Gatti
     simultaneously performing nearly identical roles for two competitors, or interference with
28   Plaintiff's contractual and non-contractual business relations.

**ARGUMENT**[5]

## I.   RELEVANT LEGAL STANDARDS

"Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. "When ruling on a motion to dismiss, [courts] accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Ass'n for L.A. Deputy Sheriffs v. County of L.A.*, 648 F.3d 986, 991 (9th Cir. 2011). "The court draws all reasonable inferences in favor of the plaintiff." *Id.* Questions of fact are not appropriately decided on a motion to dismiss. *See, e.g., Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 665 (9th Cir. 2014) ("a question of fact not appropriate for decision on a motion to dismiss."); *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013) (same). Plaintiff's Complaint in this case more than meets the applicable pleading requirements.

## II.   PLAINTIFF'S COMPLAINT PROPERLY STATES CLAIMS AGAINST AW-USA UNDER THE FEDERAL AND STATE COMPUTER FRAUD STATUTES

### A.   AW-USA's Motion to Dismiss Plaintiff's CFAA Claim Improperly Relies on New Arguments Not Previously Made.

A defendant is not permitted to file successive Rule 12(b) motions in which it raises new arguments that could have been, but were not, presented in that party's first Rule 12(b) motion. *See, e.g., Aguilar v. Ocwen Fin. Corp.*, 2015 U.S. Dist. LEXIS 43107, 4-5 (C.D. Cal. Mar. 24, 2015) ("These are challenges that could, and indeed, should, have been brought in Defendants' first Motion to Dismiss. Defendants present no justification for failing to raise them in their first

---

[5] In its Argument, Plaintiff references only AW-USA because it is responding to its Motion alone. However, as relevant to the Almaviva Defendants, and as set forth in the Complaint and in the June 3, 2015 confidentiality agreement between Gatti and the Almaviva Defendants, Gatti was working for all three of the Almaviva Defendants in this case.

responsive motion as required by Federal Rule of Civil Procedure 12." citing "5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1388 (3d ed. 1998) ('The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading')."). This rule is consistent with the limitations imposed by Rule 12(g)(2), which require a party to present all its defenses or objections in a single motion, save for limited exceptions not relevant here. *See* Fed. R. Civ. P. 12(g)(2) ("a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.").

In AW-USA's first Rule 12(b)(6) motion to dismiss, it made two attacks on the Computer Fraud and Abuse Act ("CFAA") portion of Count 2 of the original Complaint: first, it claimed that "there [was] no allegation in the complaint that Almawave USA '*accessed*' any of Loop's information," and, second, it claimed that the complaint "fail[ed] to plead damages with sufficient specificity." ECF No. 38 at 17-18 (emphasis added). AW-USA now has dropped the first of these two arguments, and presents two new arguments, both of which were available to AW-USA when it filed its first Rule 12(b)(6) motion. Specifically, AW-USA's now argues:

- First, that Plaintiff's CFAA claim is barred because the CFAA is designed to target hackers. ECF. No. 60 at 5. However, the CFAA's alleged purpose has not changed between the filing of the initial complaint and the filing of the amended Complaint. Nor is AW-USA relying on cases decided since the filing of its first motion to dismiss. Indeed, the most recent case on which AW-USA relies was decided in 2013.

- Second, AW-USA now argues that Plaintiff's claim under the CFAA is based on allegations of *violation of use restrictions*. ECF. No. 60 at 10. This new argument could also have been made by AW-USA's first motion to dismiss, but was not. In addition, this argument is also unfounded, as evidenced by the fact that AW-USA fails to cite any part of the Complaint alleging a "use restriction."

AW-USA chose not to raise the foregoing arguments in its first Motion and should not be permitted to raise them now. Rule 12(b) motions are not intended to provide a defendant with a

1

2   tool to engage in repeat motion practice in this way.  Accordingly, the Court should reject these

3   new arguments raised by AW-USA for this reason alone.

4          **B.    AW-USA Arguments in Support of Dismissal of the CFAA Also Fail on the**
               **Merits.**

5

6          The CFAA "imposes liability, in relevant part, on: 'Whoever … [i]ntentionally accesses a

7   computer without authorization or exceeds authorized access, and thereby obtains … information

8   from any protected computer….'  18 U.S.C. § 1030(a)(2)."  *Farmers Ins. Exch. v. Steele Ins. Ag.,*

9   *Inc.*, No. 13-00784, 2013 U.S. Dist. LEXIS 162575, at *20, 2013 WL 6070488 (E.D. Cal. Nov.

10  14, 2013).  Although the CFAA is a criminal statute, it "provides a private right of action" to

11  "[a]ny person who suffers damage or loss by reason of a violation of this section."  18 U.S.C. §

12  1030(g).  In addition, as relevant here, a civil plaintiff must prove that the violation caused a "loss

13  … aggregating at least $5,000 in value."  *Id.* (citing § 1030(c)(4)A)(i)(I)).  "Thus, a private

14  plaintiff bringing a claim under the CFAA must prove that the defendant violated ***one of the***

15  ***provisions*** of § 1030(a)(1)-(7), and that the violation involved one of the factors listed in §

16  1030(c)(4)(A)(i)(I)-(V)."  *Farmers Ins.*, 2013 U.S. Dist. LEXIS 162575, at *22.

17

18         "To successfully state a claim pursuant to 18 U.S.C. § 1030(g) based on a violation of §

19  1030(a)(2)," a plaintiff must allege that one or more defendants: "(1) intentionally accessed a

20  computer, (2) without authorization or exceeding authorized access, and (3) thereby obtained

21  information (4) from any protected computer …, and that (5) there was loss to one or more

22  persons during any one-year period aggregating at least $5,000 in value."  *Id.* at *22-23.  A

23  private party may also maintain a civil cause of action where another "knowingly causes the

24  transmission of a … command, and as a result of such conduct, intentionally causes damage

25  without authorization, to a protected computer."  18 U.S.C. § 1030(a)(5).

26

27         AW-USA challenges only one aspect of Plaintiff's claim under Section 1030(a)(2).

28  Specifically, AW-USA contends that the "exceeding authorized access" aspect of element 2

1

2  above is not met because "[h]ere, Loop alleges that Ms. Gatti exceeded the use restrictions on

3  Loop's computers, which is not a cognizable claim under the CFAA" and because the CFAA is

4  intended for "hackers."  ECF No. 60 at 5.  AW-USA also contends that Plaintiff fails to allege a

5  type of "loss" within the meaning of the CFAA.  *Id.*  As more fully set forth below, these

6  arguments are factually and legally incorrect.

7          ***First***, Plaintiff does not base its CFAA claim against AW-USA on any "excess of use

8  restrictions."  Instead, Plaintiff contends that AW-USA violated the CFAA, by accessing

9

10 Plaintiff's files contained in its computer in possession of Gatti (the "Computer") ***without***

11 ***authorization***.[6]  Specifically, as alleged in the Complaint, on February 3, 2015, Gatti was

12 terminated by Plaintiff.  *See* ECF No. 45 at ¶3.  As relevant here, Plaintiff alleges that ***after Gatti***

13 ***was terminated***, AW-USA, through Gatti, its Chief Executive Officer, accessed Plaintiff's

14 Computer in violation of the CFAA, including from AW-USA's offices at One Embarcadero

15 Center, San Francisco.[7]  *See, e.g., id.* at ¶¶ 32, 33, 132, 133, 136, 144, 221, 223, 225-229.

16 Plaintiff also alleges that on or about February 17, 2015, following Gatti's termination from

17 Plaintiff's employment, AW-USA, through Gatti, its Chief Executive Officer, accessed Plaintiffs'

18

19 electronic repositories without authorization and ***deleted*** a substantial amount of information from

20 Plaintiff's electronic repositories.  *Id.* at ¶¶ 32-33, 136, 221, 223, 227-229.  Plaintiff alleges that

21 as a result of this conduct it suffered the loss of its Computer and all data contained in it as well as

22 the loss and modification of data that was deleted by AW-USA's CEO.  *Id.* at ¶¶ 32-33, 144, 225,

23

24 227, p. 96 at ¶ 3.  Finally, Plaintiff also alleges that as a result of the alleged violations it suffered

25 a loss in excess of $7,000 in value.  *Id.* at ¶ 228.[8]

26

27 _____

[6] As set forth above, because only AW-USA moved to dismiss this claim on the basis of pleading
insufficiency, Plaintiff limits its discussion here to the basis for its claim against AW-USA.

28 [7] "A company, by nature, acts through its officers and employees."  *Motorola, Inc. v. Lemko
Corp.*, 609 F. Supp. 2d 760, 770 (N.D. Ill. 2009).
[8] Although not necessary for the resolution of AW-USA's Motion, Plaintiff also alleges that AW-

1

2      Plaintiff's allegations against AW-USA in support of the CFAA claim, therefore, are not

3  premised on any "terms of use restrictions," as AW-USA argues, but on its accessing Plaintiff's

4  Computer and computer systems in the absence of any authority to do so.  AW-USA does not and

5  cannot contend that it ever had authority or permission to access Plaintiff's Computer or

6  computer systems.  The foregoing allegations, taken as true, and viewed in the light most

7  favorable to the Plaintiff are more than sufficient to meet the Rule 8 pleading standard and to state

8  a CFAA claim against AW-USA.  *See, e.g., Farmers Ins.*, 2013 U.S. Dist. LEXIS 162575, at *25.

9

10      ***Second***, the main thrust of AW-USA's argument in support of dismissal is that the

11  CFAA is "designed to target hackers."  ECF No. 60 at 5 (quoting *LVRH Holdings LLC v. Brekka*,

12  581 F.3d 1127, 1130 (9th Cir. 2009) and *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir.

13  2011) [sic - 2012]).  This contention is easily disposed.  As set forth in the district court's remand

14  decision in *United States v. Nosal*, the Ninth Circuit "did not … hold that the CFAA is limited to

15  hacking crimes, or discuss the implications of so limiting the statute."  930 F. Supp. 2d 1051,

16  1060-1061 (N.D. Cal. 2013).  "Hacking was only a shorthand term used as common parlance by

17  the court to describe the general purpose of the CFAA."  *Id.*

18

19      AW-USA reliance on *LVRC Holdings LLC v. Brekka*, is similarly inapposite.  *See LVRC*

20  *Holdings*, 581 F.3d 1127.  In *Brekka*, a company sued a former employee for emailing certain

21  documents to his personal email account and for allegedly accessing the plaintiff's website using

22  administrator privileges after being terminated from his position.  *See id.* at 1129-1130.  Ruling

23  on a motion for summary judgment, under a different standard than that applicable here, the court

24  ***found no evidence*** that Brekka, the defendant there, had exceeded the limits of his computer use

25  authorization, because there appeared to be no such limits placed upon him. *Id.* at 1131-1132.

26  The court further found that the plaintiff in that case failed to demonstrate that Brekka had

27

28  _____

USA unlawfully accessed Plaintiff's Computer and electronic repositories through their CEO,
Gatti, during the period ***before February 3, 2015***.  *See, e.g., id.* at ¶¶ 148, 220, 222.

1

2   actually accessed the website following his termination.  *Id.*   The word "hacker" only appears

3   twice in the entire decision, and the references to "hackers" in *Brekka* are mere dicta rather than a

4   crucial analytical component.  *Id.*

5       **Finally**, AW-USA makes the ill-founded  contention that in order to bring a claim under

6   the CFAA a plaintiff must allege "harm" in the form of "any impairment to the integrity or

7   availability of data, a program, a system, or information"[9] and contends that Plaintiff has failed to

8   make such allegations here.  ECF No. 60 at 5.  In point of law, Section 1030(g) allows a private

9   party to file a civil action if the party has suffered "damage **or** loss by reason of a violation of this

10  section."  18 U.S.C. § 1030(g) (emphasis added).  Under the plain terms of the statute a plaintiff

11  is not required to allege both "damage" and "loss."  *See, e.g., Farmers Ins.*, 2013 U.S. Dist.

12  LEXIS 162575, at *28-34; *NCMIC Fin. Corp. v. Artino*, 638 F. Supp. 2d 1042, 1063 (S.D. Iowa

13  2009) ("under the CFAA, [a plaintiff] need only establish loss or damages, ***not both***." (emphasis

14  added)).   Because AW-USA does not contend that Plaintiff has failed sufficiently to allege a

15

16  "loss," its argument can be rejected on this ground alone.[10]

17      In point of fact, AW-USA's contention that Plaintiff did not allege the alternative damage

18  by "impairment" described above is inaccurate.  Plaintiff alleges that as a result of the violations

19  addressed herein, it lost the availability to its Computer and the data contained within it, and that

20  as a result of the computer attack of February 17, 2015, data was destroyed and/or modified on its

21  computer systems.  *See* ECF No. 45 at ¶¶ 32, 136, 148, 206, 225, 227, and p. 96 at ¶ 3.  Thus,

22

23  AW-USA's arguments in support of dismissal of the CFAA claim are not well founded and

24

25

26  [9] AW-USA's "impairment" language is taken from the CFAA's definition of the term "damage,"
   which is statutorily defined to mean "any impairment to the integrity or availability of data, a
   program, a system, or information."  18 U.S.C. § 1030(e)(8).

27  [10] "Loss" under the CFAA "means any reasonable cost to any victim, including the cost of
   responding to an offense, conducting a damage assessment, and restoring the data, program,
28  system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or
   other consequential damages incurred because of interruption of service."  18 U.S.C. 1030(e)(11).

should be rejected.

### C.  AW-USA's Argument in Support of Dismissal of the CDAFA Is Legally Groundless.

AW-USA makes a single challenge to Plaintiff's claim under the California Comprehensive Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502, included in Count II of the Complaint.  Specifically, AW-USA alleges that Plaintiff's claim "fails as a matter of law because … it does not allege that" AW-USA "accessed the network in a manner that circumvents technical or code-based barriers…."  ECF No. 60 at 6.

This argument is another version of AW-USA's "use restrictions" argument made in connection with the CFAA and for the same reasons already discussed above is not applicable here.  Plaintiff is not relying on "use restrictions" in support of this claim.  Indeed, in support of its argument AW-USA relies on *Siebert v. Gene Sec. Network*, No. 11-01987, 2013 WL 5645309 (N.D. Cal. Oct. 16, 2013), where the plaintiff based its CFAA and CDFA claim on this "use restriction" argument that AW-USA advances here, and the court dismissed it in reliance on *United States v. Nosal*, the same case cited by AW-USA in connection with its CFAA arguments.  Furthermore, *Seibert* was not pronouncing a global limitation on the CDFA.  In fact, other courts have expressly rejected the purported limitation that AW-USA seeks to apply here.

For instance, in *Weingand v. Harland Fin. Solutions, Inc.*, the court expressly found that the California "Court of Appeal did not purport to limit § 502's application to unauthorized access that involved bypassing security."  No. 11-3109, 2012 U.S. Dist. LEXIS 84844, at *11-12, 2012 WL 2327660 (N.D. Cal. June 19, 2012).  In *Weingand*, the court "note[d] that at least one Judge in this District has declined to follow" certain precedent and has "instead set a threshold under § 502 that defines unauthorized access as 'that [which] circumvents technical or code-based barriers that a computer network or website administrator erects….'"  *Id.* at *15-16 (citing *Facebook, Inc. v. Power Ventures, Inc.*, C 08-05780, JW, 2010 US Dist. LEXIS 93517, 2010 WL

3291750, at *11 (N.D. Cal. July 20, 2010)).[11]   However, as *Weingand* emphasized, "the *Power Ventures* court did not base its construction of § 502 on any California state court authority or on the statutory language." *Id.*   Thus, there is no basis for construing the CDFA with the limitations that AW-USA invokes.  In addition, even if a "circumvention" requirement could be read into the CDFA — it cannot — Plaintiff has adequately plead it, as set forth in the allegations discussed above.  *See, e.g.,* ECF No. 45 at ¶¶ 32, 136, 206, 221, 222, 223, 224, and 227.

**III.   AW-USA'S FACTUAL CHALLENGES OVER THE EXISTENCE OF AN "ECONOMIC RELATIONSHIP" DO NOT SUPPORT DISMISSAL OF ANY ASPECT OF PLAINTIFF'S CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE ADVANTAGE .[12]**

Plaintiff brought a claim against AW-USA for tortious interference with prospective economic advantage.  *See* ECF No. 45 at Count IX.  Plaintiff's claim is based on AW-USA's interference with ***two sets*** of economic relationships, (1) those with certain investment funds, specifically Investment Funds 2, 3, and 4, and (2) those with certain former employees and consultants, including Gatti and Vignudelli. *See* ECF No. 45 at ¶¶ 290-302.  In the factual background of the Complaint, Plaintiff details the specific facts underlying each of the foregoing economic relationships and how AW-USA interfered with them.  *See, e.g., id.* at ¶¶ 26, 27, 28, 62, 113, 116-119, 163-165, 45, 46, 104-105, 107, 173.

AW-USA challenges only one element of Plaintiff's cause action directed to the interference with the investment funds, namely the "existence of a[n] … economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff," with investors.[13]   ECF No. 60 at 6-7.[14]  AW-USA argues that the facts alleged by

---

[11] *Power Ventures* is the same decision upon which the authorities cited by AW-USA rely — namely *Siebert* and *In re Google Android Consumer Privacy Litig.*, 2013 US Dist. LEXIS 42724, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013).  *See* ECF No. 60 at 6.

[12] Plaintiff's claim for Intentional Interference With Prospective Economic Advantage is stated in Count IX of Plaintiff's Complaint.  *See* ECF No. 45 at 82.

[13] Because the other elements of this cause of action are not at issue in AW-USA's Motion, for

1

2   Plaintiff in its Complaint make it only "possible" but not "probable" that the investor

3   "relationships" identified by Plaintiff in its Complaint would "yield economic benefits." *Id.* at 7.

4   AW-USA also contends that even at the pleading stage, the Court has to be able to "conclude"

5   that an economic "opportunity" "would have lead to an enforceable contract." *Id.*  AW-USA fails

6   to cite any support for this proposition.

7        *Youst v. Longo*, 43 Cal. 3d 64 (1987), the principal case on which AW-USA relies, does

8   not impose the requirements that AW-USA seeks to apply here.  In *Youst*, the California Supreme

9

10  Court was simply asked to decide whether "a racehorse owner [was] entitled to tort damages

11  when the harness driver of another horse negligently or intentionally interferes with the owner's

12  horse during a race, thereby preventing the owner from the chance of winning a particular cash

13  prize." *Id.* at 67.  The court answered the question in the negative, holding that in California "tort

14  liability for interference with prospective economic advantage is not available, as a matter of law

15  and public policy, ***in the context of a sporting event***." *Id.* at 71 (emphasis added).  *Youst* has no

16  application here either substantively — as Plaintiff is not pursuing any tort claims in the "context

17  of a sporting event" — or procedurally — as *Youst* does not base its holding on any pleading

18  deficiencies.  *Youst* differentiates the nature of sporting events, which involve a speculative

19

20  ***nonbusiness*** relationship, with business expectancies, which **are** protectable. *Id.* at 75. ("For the

21

22  present purposes only, Plaintiff does not object to AW-USA's prima facie definition of the

23  elements of the cause action.  *See* ECF No. 60 at 6.  As to the first element, Plaintiff has removed
    one of the terms used by AW-USA in defining that element, so as to reflect exactly the definition

24  found in *Youst v. Longo*, 43 Cal. 3d 64, 71 n. 6 (Cal. 1987), on which AW-USA relies.

25  [14] Unlike in its first Motion to Dismiss, AW-USA no longer seeks dismissal of those portions of
    Count IX that are based on AW-USA's interference with Plaintiff's employees and consultants,

26  including Gatti and Vignudelli.  *See* ECF No. 38 at 12.  *See also Reeves v. Hanlon*, 33 Cal. 4th
    1140 (2004) (holding that tortious interference with employment relationship is actionable in

27  California "under the standard applicable to claims for intentional interference with prospective
    economic advantage.")  Accordingly, because AW-USA seeks dismissal of only aspects of Count

28  IX based exclusively on this first element of the cause of action, Plaintiff limits its response here
    to AW-USA's specific argument directed to the alleged lack of an economic relationship with the
    investment funds, and does not address any other portion or element of this claim.

most part the 'expectancies' thus protected have been those of future contractual relations . . . . In such cases there is a background of business experience on the basis of which it is possible to estimate with some fair amount of success both the value of what has been lost and the likelihood that the plaintiff would have received it if the defendant had not interfered…. [T]he interests generally protected by the tort are business expectancies, and on that basis we declined to expand the tort to cover interference with prospective nonbusiness relations.").  There is simply no comparison between the facts or legal issues in *Youst*, and the economic relationships with investors alleged in the Complaint.[15]

Interference with investor relationships *is sufficient* to sustain an action for intentional interference with prospective advantage.  *See, e.g., Natomas Gardens Inv. Group, LLC v. Sinadinos*, 2010 U.S. Dist. LEXIS 48594, at *13 (E.D. Cal. Apr. 22, 2010) (denying dismissal of intentional interference with prospective advantage claim based on allegation that party interfered with investors' relationships).  Under the applicable pleading standards, there is no basis for AW-USA's argument that Plaintiff's economic relationship with Investment Fund 4, with whom

---

[15] AW-USA also relies, in passing, on *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1164 (Cal. 2003).  *See* ECF No. 60 at 7.  That case, however, does not address any element at issue here.  In addition, the facts in that case show that AW-USA's argument regarding the level of "probability" of economic gain required under this cause of action is not well founded.  The court in *Korea* found that an intentional interference with prospective advantage claim could proceed even where the plaintiff simply had the potential to receive a commission ***from a third party ("Third Party"), if the Third Party won a contract for which it was bidding along with other bidders.***  *Id.* at 1140.  When the defendant — instead of the Third Party — won the contract (by the alleged payment of bribes and provision of other favors), the plaintiff sued the defendant for interference, claiming it lost its ability to obtain the commission from the Third Party who could have won the contract.  These facts demonstrate that even a most speculative probability of future economic gain are sufficient to state a cause of action for tortious interference with prospective economic advantage.  The California Supreme Court could not have let the claim proceed in *Korea* if the stringent "probability" requirement that AW-USA seeks to impose here applied.  Indeed, the indirect nature of the relationships at issue in *Korea*, made the potential for economic gain in that case substantially less "probable" than the potential to directly bid for and receive an investment from a fund, as alleged in the Complaint here.  Thus, the economic relationships and probability of future economic gain from those relationships have been more than sufficiently stated here.

Plaintiff signed a term sheet, is insufficient to state an "economic relationship" because a "term sheet [is] an opportunity" and there is no proof that the investment was "probable, rather than merely possible." ECF No. 60 at 7. Indeed, courts have found term sheets to even qualify as contracts. *See, e.g., Guzik Tech. Enters. v. Western Digital Corp.*, 2014 U.S. Dist. LEXIS 42621 (N.D. Cal. Mar. 21, 2014). In addition, as set forth in *Natomas* and *Korea*, much lesser concrete economic relationships and probably of future gain have been found sufficient to state a claim at the pleading stage. For similar reasons, Plaintiff has also sufficiently pled a probability of future economic benefit from Investment Funds 2 and 3. These were real, non-hypothetical investors with whom the Plaintiff had an economic relationship that was reasonably likely to produce an economic advantage but for AW-USA's and the other defendants' interference.

In sum, the arguments that AW-USA raises are not directed to pleading standards. AW-USA seeks to raise issues of fact as to whether Plaintiff would have actually succeeded in obtaining the economic gain alleged to have been lost as a result of the interference. Those types of challenges are not appropriate at this stage of the proceeding and should be rejected.

## IV. AW-USA'S FACTUAL DISPUTES REGARDING ASPECTS OF PLAINTIFF'S CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT ARE NOT AN APPROPRIATE BASIS FOR DISMISSAL.

Plaintiff identifies four contracts, and multiple breaches of each contract, induced by AW-USA and the other Defendants: (1) the contractual relationships between Plaintiff and Gatti, (2) the contractual relationships between Plaintiff and Vignudelli ("Vignudelli"), (3) the contractual and fiduciary relationship between the Plaintiff and its counsel Orrick Herrington & Sutcliffe LLP ("Orrick"), and (4) the contractual relationship between Plaintiff and Investment Fund 4, with which Plaintiff signed a term sheet. ECF. No. 45 at ¶¶ 303-313 (Count X).

AW-USA seeks dismissal of Count X only partially, as it relates to the first three sets of contracts. AW-USA's entire argument in support of dismissal is that AW-USA "was not

1

2   responsible for these breaches," that various breaches by Gatti in connection with this claim were

3   "Gatti's choices," and that AW-USA "reasonably believed that Ms. Gatti was **not** in breach of

4   any contracts." ECF No. 60 at 8.   AW-USA also argues that Plaintiff does not allege "who" at

5   AW-USA retained Vignudelli, or "what" they knew about his contract with Plaintiff.  *Id*.  These

6   factual characterizations are of no moment in considering a motion to dismiss.  As AW-USA is

7   aware, on a motion to dismiss, all factual allegations, and all inferences that may be drawn

8   therefrom, are to be viewed in the light most favorable to the plaintiff.  *See, e.g., Givemepower*

9   *Corp. v. Pace Compumetrics, Inc.*, 2007 U.S. Dist. LEXIS 59371, at 17 (S.D. Cal. Aug. 14,

10  2007).   Indeed, in *Givemepower*, one of the cases upon which AW-USA relied in its first Rule

11  12(b)(6) motion,[16] the court held that a similar tortious interference claim as the one alleged here

12  was sufficient to survive a Rule 12(b)(6) motion on substantially less detailed factual allegations

13  than are alleged in Plaintiff's Complaint.  There is no basis for accepting AW-USA's version of

14  the facts on a Rule 12(b)(6) Motion.

15          **A.  AW-USA's New Arguments.**

16          AW-USA impermissibly raises new arguments in support of dismissal of Count X, which

17

18  were not made in its first Rule 12(b)(6) Motion and which cannot be raised now.[17]   In its first

19  Rule 12(b)(6) Motion, AW-USA sought dismissal of Count X on the basis of two arguments:

20  first, that Plaintiff was required to allege that AW-USA had knowledge of the contents of the

21  specific provisions within the contracts that it is alleged to have induced a breach of, and (2) that

22  Plaintiff failed to allege the "requisite intent to interfere" by AW-USA.  *See* ECF No. 38 at 13-14.

23

24          In its new Motion, AW-USA abandoned the foregoing arguments in favor of new ones.

25  Its new arguments, already discussed above, are all based on factual disputes, essentially claiming

26

27  ───────────────
[16] *See* ECF No. 38 at 12.

28  [17] *See supra Aguilar,* 2015 U.S. Dist. LEXIS 43107, at *4-5 ("The filing of an amended
complaint will not revive the right to present by motion defenses that were available but were not
asserted in timely fashion prior to the amendment of the pleading").

that AW-USA is not responsible.   Because these arguments were available, but were not made,

by AW-USA when it filed its first Rule 12(b)(6) motion, they cannot now be raised here.

### B. Other Than Claiming it Is Not Responsible, AW-USA Fails to Identify Any Other Basis for Its Motion to Dismiss Count X.

Other than disputing the facts alleged by Plaintiff in support of its tortious interference

claim with Gatti's and Vignudelli's contracts, AW-USA does not articulate any theory as to why

Plaintiff's claim fails to meet the applicable pleading standard.[18]  Plaintiff's Complaint makes

substantial and detailed factual allegations in support of its claim, and describes numerous

detailed incidents that support its claims and that put AW-USA on notice as to the nature of the

claims brought against it.[19]  AW-USA's time to challenge the facts or to present its version of

events is not at the pleading stage.  *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("If

there are two alternative explanations, one advanced by defendant and the other advanced by

plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under

Rule 12(b)(6).").

AW-USA also contends, in respect of the portion of Count X relating to Orrick, that

Plaintiff "has not alleged that any attorney at Orrick breached a fiduciary duty," and that Plaintiff

has not shown that AW-USA "<u>intended</u> such a consequence."  ECF No. 60 at 9.  As to the first

contention, Plaintiff makes very specific allegations as to how Orrick was induced to breach its

fiduciary duties to Plaintiff.  *See, e.g.,* ECF No. 45 at ¶¶ 308, 151, 167, 187, 219, 304, 312.  As to

the second contention, AW-USA simply misstates the law.  Plaintiff is not required to plead a

---

[18] Almawave USA accordingly does not dispute that Plaintiff sufficiently pled the other factors necessary for a tortious interference with contract claim, *i.e.* existence of valid contracts, that Almawave USA knew of the contracts, that the contracts were breached and that damages ensued. *See Quelimane Co.*, 19 Cal. 4th 55 (Cal. 1998).

[19] *See also, c.f., United States Surgical v. Origin Medsystems, Inc.*, 1993 U.S. Dist. LEXIS 17180 (N.D. Cal. 1993), *aff'd*, 16 F.3d 420 (Fed. Cir. 1993) (preliminary injunction ruling finding likelihood of success on the merits of a tortious interference with contract claim on facts similar to those at alleged here).

1

2   "specific intent" to induce the breach.  Indeed, the only case that AW-USA cites in connection

3   with this portion of its brief makes this clear.  *See Quelimane Co. v. Stewart Title Guaranty Co.*,

4   19 Cal. 4th 26, 56 (1998) ("the tort of intentional interference with performance of a contract does

5   not require that the actor's primary purpose be disruption of the contract. [] The rule applies … to

6   an interference that is incidental to the actor's independent purpose and desire but known to him

7   to be a necessary consequence of his action.").  *See also Korea Supply*, 29 Cal. 4th at 1164

8   (same).  Here, Plaintiff has sufficiently alleged that AW-USA took actions they knew would

9   result in interference with the Vignudelli and Orrick contractual relationships with Plaintiff.  *See,

10  e.g.*, ECF No. 45 at ¶¶ 187, 305, 208, 312, 167, 168 and 266-67, 297, 300, 307.  Moreover, since

11  a "corporation acquires knowledge only through its officers or agents,"[20] there is no basis for

12  AW-USA to even dispute the facts alleged in light of the fact that Gatti, AW-USA's CEO, was a

13  principal participant in the wrongdoing and had full knowledge of the consequences of AW-

14  USA's unlawful interference.

15      For the foregoing reasons, AW-USA's request for dismissal of portions of Count X should

16  be denied.

17

18

19  **V.      PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS PERMITTED AT THIS
            STAGE OF THE PROCEEDING**

20

21      AW-USA argues that Plaintiff's claim for unjust enrichment should be dismissed because

22  "California does not recognize" this type of claim.  ECF No. 60 at 9.  For this proposition, AW-

23  USA cites, albeit incompletely, *In re ConAgra Foods, Inc.*, 908 F. Supp. 2d 1090 (C.D. Cal.

24  2012).  In *ConAgra,* however, the court explained that "California law does not recognize a cause

25  of action for unjust enrichment, ***so long as another cause of action is available that permits***

26  ***restitutionary damages***." *Id.* at 1114 (emphasis added).  Here, AW-USA has not conceded that

27

---

28  [20] *All Steel Engines, Inc. v. Taylor Engines, Inc.*, 88 F. Supp. 745, 746 (D. Cal. 1950), *aff'd*, 192
    F.2d 171 (9th Cir. 1951).

1

2   Plaintiff will be entitled to restitutionary damages on the basis of any other claim alleged against

3   it.  At this stage of the proceeding, therefore, unless AW-USA stipulates that Plaintiff would be so

4   entitled, it is not possible to determine with certainty whether restitutionary damages against AW-

5   USA will be available on the basis of any other pending cause of action.  Indeed, Rule 8(d)

6   expressly permits a plaintiff to plead claims in the alternative.  Fed. R. Civ. P. 8(d)(2).  Courts

7   routinely permit unjust enrichment claims to proceed in the alternative at an early stage of the

8   proceeding.  *See, e.g., Astiana v. Hain Celestial Grp., Inc.*, No. 12-17596, 2015 U.S. App. LEXIS

9   5833, 2015 WL 1600205 (9th Cir. Apr. 10, 2015) ("To the extent the district court concluded that

10  the cause of action was nonsensical because it was duplicative of or superfluous to Astiana's

11  other claims, this is not grounds for dismissal.  Fed. R. Civ. P. 8(d)(2)"); *Longest v. Green Tree*

12  *Servicing LLC*, No. 14-08150, 2015 US Dist. LEXIS 16173, 2014 WL 546095 (C.D. Cal. Feb. 9,

13  2015) (same).

14      In *Astiana*, the Ninth Circuit had the opportunity to recently addressed the availability of

15

16  an unjust enrichment cause of action under California law.  *See Astiana*, No. 12-17596, 2015 U.S.

17  App. LEXIS 5833.  It held that "unjust enrichment and restitution are not irrelevant in California

18  law.  Rather, they describe the theory underlying a claim that a defendant has been unjustly

19  conferred a benefit 'through mistake, fraud, coercion, or request.'"  *Id*.  In reversing the district

20  court's dismissal of the claim, the Ninth Circuit also held that "[w]hen a plaintiff alleges unjust

21  enrichment, a court 'may construe the cause of action as a quasi-contract claim seeking

22

23  restitution.'"  *Id*.

24      Thus, under the teachings of the Ninth Circuit, Plaintiff's unjust enrichment should not be

25

26  dismissed, but should rather be construed as a quasi-contract claim seeking restitution.

27

28

1

2      **VI.    PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND.**

3          In the event the Court grants any part of AW-USA's Motion, Plaintiff respectfully

4    requests leave to file an amended complaint.  There is a "strong public policy permitting

5    amendment," which should be freely allowed, "when justice so requires."  *Zhongqi Zhu v. County*

6    *of L.A.*, 595 Fed. Appx. 728 (9th Cir. 2015).  In deciding upon a request for leave to amend,

7    courts consider "the five *Foman* factors: (1) bad faith; (2) undue delay; (3) prejudice []; (4)

8    whether [Plaintiff] had previously amended her complaint; and (5) futility of amendment."  *Id.*

9

10   The circumstances present here more than meet this standard:

11        • **Bad Faith**: Plaintiff has taken no acts that could possibly be construed as "bad
12          faith."  Plaintiff simply seeks leave to articulate its claims with any further clarity
             and detail as the Court may require, should the Court deem them insufficiently
13           pled.

14        • **Undue Delay**: Plaintiff is preemptively requesting leave to amend should the
15          Court rule in AW-USA's favor on any portion of its motion to dismiss.  As such,
             this request cannot have been made with undue delay.  Plaintiff can submit a
16           proposed amendment if the Court so requires.

17        • **Prejudice**: AW-USA would suffer no prejudice should Plaintiff be granted leave
18          to amend.  AW-USA presented numerous new arguments in support of its latest
             motion to dismiss, many of which could have been brought previously.  Therefore,
19           Plaintiff could not address these arguments in its current Complaint.  Plaintiff
             would be prejudiced by a denial of leave to amend.

20        • **Previous Amendment**: Plaintiff amended its complaint once, as a matter of
21          course, addressing the Defendants' arguments presented in their first motions to
             dismiss.  Plaintiff believes that it has provided more than sufficient detail to
22           support its causes of actions set forth in the Complaint and that AW-USA's
             Motion is not well founded at this stage.  It is clear that AW-USA's Motion is
23           primarily based on its dispute of the facts alleged in the Complaint, not on missing
24           facts.  In any event, in light of AW-USA's newly presented arguments, and the
             fact that Plaintiff's prior amendment was made as a matter of course and not as a
25           result of any decision by the Court, this single prior amendment should not weigh
             against granting leave here.

26

27        • **Futility**: Plaintiff stands ready to provide the Court a proposed amendment to
             ensure that its amendment would not be futile.

28

     Plaintiff more than meets the standard to grant leave to amend.  As such, in the event the

1

2   Court were to grant any portion of AW-USA's Motion, the Court should also allow Plaintiff leave

3   to file an amended complaint.

4                                        **<u>CONCLUSION</u>**

5            For all the foregoing reasons, AW-USA's Motion should be denied in its entirety.

6

7                                                        Respectfully submitted,

8

9   May 7, 2015                              By:   /s/ Valeria Calafiore Healy

10                                                 Valeria Calafiore Healy, Esq. (*pro hac
                                                   vice*)
11                                                 Valeria.healy@healylex.com
                                                   HEALY LLC
12                                                 154 Grand Street
                                                   New York, New York 10013
13                                                 Telephone:     (212) 810-0377
                                                   Facsimile:     (212) 810-7036
14
                                                   Daniel J. Weinberg, Esq. (SBN 227159)
15                                                 dweinberg@fawlaw.com
                                                   FREITAS ANGELL & WEINBERG
16                                                 LLP
                                                   350 Marine Parkway, Suite 200
17                                                 Redwood Shores, California 94065
                                                   Telephone:     (650) 593-6300
18                                                 Facsimile:     (650) 593-6301

19                                                 Attorneys for Plaintiff
                                                   LOOP AI LABS, INC.
20

21

22

23

24

25

26

27

28