1   DANIEL J. WEINBERG (SBN 227159)
    dweinberg@fawlaw.com
2   FREITAS ANGELL & WEINBERG LLP
    350 Marine Parkway, Suite 200
3   Redwood Shores, California  94065
    Telephone:      (650) 593-6300
4   Facsimile:      (650) 593-6301

5   VALERIA C. HEALY (*pro hac vice*)
    valeria.healy@healylex.com
6   HEALY LLC
    154 Grand Street
7   New York, New York  10013
    Telephone:      (212) 810-0377
8   Facsimile:      (212) 810-7036

9   Attorneys for Plaintiff
    LOOP AI LABS INC.
10

11                  UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                     SAN FRANCISCO DIVISION

14

15

16   LOOP AI LABS INC., a Delaware          Case No.  3:15-CV-0798 HSG
     corporation,
17                                          **LOOP AI LABS INC.'S MEMORANDUM OF**
                    Plaintiff,              **POINTS AND AUTHORITIES IN**
18                                          **OPPOSITION TO GATTI AND IQSYSTEM**
     v.                                     **LLC'S PARTIAL MOTION TO DISMISS**
19                                          **UNDER FED. R. CIV. P. 12(b)(6) AND**
     ANNA GATTI, an individual,             **ALTERNATIVE MOTION TO STRIKE**
20   ALMAVIVA S.p.A., an Italian            **UNDER FED. R. CIV. P. 12(f)(2)**
     corporation, ALMAWAVE S.r.l. an Italian
21   corporation, ALMAWAVE USA, Inc., a     Date:  July 2, 2015
     California corporation, IQSYSTEM LLC, a Time: 2:00p.m.
22   California limited liability company,  Courtroom: 15, 18th Floor
     IQSYSTEM Inc., a Delaware Corporation, Action Filed: February 20, 2015
23                                          Trial date: None set
                    Defendants.
24                                          Hon. Haywood S. Gilliam Jr.

25

26

27

28

1

**TABLE OF CONTENTS**

2

TABLE OF AUTHORITIES ................................................................................................ ii

3

SUMMARY OF THE ARGUMENT ............................................................................... 1

4

ARGUMENT ................................................................................................................. 7

5

    I.   LEGAL STANDARD ............................................................................................ 7

6

    II.   THE GATTI DEFENDANTS' MOTION SHOULD BE DENIED IN ITS ENTIRETY ...8

7

          1.   The Claims That the Gatti Defendants Challenge "Preemption" Grounds Are Validly Stated and Should Not Be Dismissed ...................................... 9

8

              i.   Loop AI's Contract Claim is Permitted by The Express Terms of the CUTSA's Savings Clause .................................................. 10

9

10

              ii.   Loop AI's Federal Statutory Claims Cannot be Superseded by CUTSA ................................................................................ 10

11

12

              iii.   Loop AI's Other Claims Are Not Based on Misappropriation of Trade Secrets and Are Expressly Permitted by the CUTSA Savings Clause ...11

13

14

          2.   Loop AI's Claims Survive Supersession for Other Reasons ................................ 19

15

          3.   Loop AI's Has Adequately Pled A Claim for Intentional Interference With Prospective Economic Advantage ........................................................ 21

16

17

  II.   THE GATTI DEFENDANTS' ALTERNATIVE MOTION TO STRIKE SHOULD BE DENIED ............................................................................................... 22

18

CONCLUSION ............................................................................................................ 22

19

20

21

22

23

24

25

26

27

28

                                                      

# TABLE OF AUTHORITIES

## CASES

**Page**

*Amron Int'l Diving Supply, Inc. v. Hydrolinx Diving Commun., Inc.*,
No. 11-1890, 2011 U.S. Dist. LEXIS 122420, 2011 WL 5025178 (S.D. Cal. Oct. 21,
2011) .................................................................................................................16

*Ass'n for L.A. Deputy Sheriffs v. County of L.A.*,
648 F.3d 986 (9th Cir. 2011) .......................................................................7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................................................7

*Brown v. Hain Celestial Group, Inc.*,
No. 11-03082, 2012 U.S. Dist. LEXIS 136702, 2012 WL 4364588 (N.D. Cal. Sept. 20,
2012) .................................................................................................................18

*City Solutions v. Clear Channel Communs., Inc.*,
365 F.3d 835 (9th Cir. Cal. 2004) .............................................................16

*Courtesy Temp. Serv. v. Camacho*,
222 Cal. App. 3d 1278 (Cal. App. 2d Dist. 1990) ...............................19

*Cumbie v. Woody Woo, Inc.*,
596 F.3d 577 (9th Cir. 2010) .......................................................................12

*Dahlia v. Rodriguez*,
735 F.3d 1060 (9th Cir. 2013) .....................................................................8

*E-Smart Techs., Inc. v. Drizin*,
No. 06-05528, 2009 U.S. Dist. LEXIS 272, 2009 WL 35228 (N.D. Cal. 2009) ................0
no

*I.E. Associates v. Safeco Title Ins. Co.*,
39 Cal. 3d 281 (1985) .................................................................................0

*In re Cal. Title Ins. Antitrust Litig.*,
No. 08-01341, 2010 U.S. Dist. LEXIS 28923, 2010 WL 785798 (N.D. Cal. Mar. 3, 2010)
.................................................................................................................18

*K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.*,
171 Cal. App. 4th 939 (Cal. App. 6th Dist. 2009) ................................. *passim*

*Kremen v. Cohen*,
337 F.3d 1024 (9th Cir. Cal. 2003) ...........................................................20

*Leatt Corp. v. Innovative Safety Tech., LLC*,
No. 09-1301, 2010 U.S. Dist. LEXIS 71362, 2010 WL 2803947 (S.D. Cal. July 15, 2010)
.................................................................................................................17

*Lilly v. ConAgra Foods, Inc.*,
743 F.3d 662 (9th Cir. 2014) .......................................................................8

PL.'S OPP. TO GATTI, IQS LLC, PARTIAL 12(B)(6) MTD

**Page**

*Meggitt San Juan Capistrano, Inc. v. Nie Yongzhong,*
   575 Fed. Appx. 801 (9th Cir. Cal. 2014) .............................................................0

*Norsat Int'l v. B.I.P. Corp.,*
   No. 12-0674, 2013 U.S. Dist. LEXIS 144149, 2013 WL 5530771 (S.D. Cal. Oct. 3, 2013)
   ...............................................................................................................11

*Phoenix Technologies Ltd. v. DeviceVM,*
   No. 09-04697, 2009 U.S. Dist. LEXIS 114996, 2009 WL 4723400 (N.D. Cal Dec. 8,
   2009) ....................................................................................................17, 20

*Reeves v. Hanlon,*
   33 Cal. 4th 1140 (Cal. 2004).............................................................................4

*Rollins v. Dignity Health,*
   No. 13-01450, 2014 U.S. Dist. LEXIS 165531, 2014 WL 6693891 (N.D. Cal. Nov. 26,
   2014) .......................................................................................................18

*Silvaco Data Systems v. Intel Corp.,*
   184 Cal. App. 4th 210 (Cal. App. 6th Dist. 2010) ...................................... *passim*

*SocialApps, LLC v. Zynga, Inc.,*
   No. 11-04910, 2012 U.S. Dist. LEXIS 14124, 2012 WL 381216 (N.D. Cal. Feb. 6, 2012)
   ...............................................................................................................17

*SolarBridge Techs., Inc. v. Ozkaynak,*
   No. 10-03769, 2012 U.S. Dist. LEXIS 81403, 2012 WL 2150308 (N.D. Cal. June 12,
   2012) ....................................................................................................19, 20

*Stoody-Broser v. Bank of America, N.A.,*
   No. 08-02705, 2012 U.S. Dist. LEXIS 112352 (N.D. Cal. Aug. 9, 2012) ......................18

*Sunpower Corp. v. SolarCity Corp.,*
   No. 12-00694, 2012 U.S. Dist. LEXIS 176284, 2012 WL 6160472 (N.D. Cal. Dec. 11,
   2012). .............................................................................................. *passim*

*Think Village-Kiwi, LLC v. Adobe Sys.,*
   No. 08-04166, 2009 U.S. Dist. LEXIS 32450, 2009 WL 902337 (N.D. Cal. Apr. 1, 2009)
   .........................................................................................................4, 17

*TMX Funding, Inc. v. Impero Techs., Inc.,*
   No. 10-00202, 2010 U.S. Dist. LEXIS 60260, 2010 WL 2509979 (N.D. Cal. June 8,
   2010) .............................................................................................. *passim*

*United States Legal Support, Inc. v. Hofioni,*
   No. 13-01770, 2013 U.S. Dist. LEXIS 179282, 2013 WL 6844756 (E.D. Cal. Dec. 19,
   2013) .......................................................................................................11

**STATUTES AND RULES**

**Page**

18 U.S.C. § 1030.................................................................................................10

18 U.S.C. § 1962.................................................................................................10

Cal. Civ. Code § 3426..................................................................................*passim*

Fed. R. Civ. P.  8...................................................................................................7

Fed. R. Civ. P.  6...................................................................................................8

Fed. R. Civ. P. 12...............................................................................................7, 8

Fed. R. Civ. P. 15...................................................................................................8

Plaintiff Loop AI Labs Inc. ("Plaintiff" or "Loop AI") respectfully submits this Memorandum of Points and Authorities in Opposition to Defendants Gatti's and IQSystem LLC's (together referred to herein as "Gatti")[1] second partial Motion to Dismiss pursuant to Rule 12(b)(6) filed on April 24, 2015.[2]  *See* Dkt. No. 73 (the "Motion").  The Motion seeks dismissal of eight, nine or "all causes of action" brought against the Gatti Defendants in the first amended Complaint filed by Plaintiff on April 6, 2015.[3]  *See* ECF No. 45 ("Complaint").

## SUMMARY OF THE ARGUMENT

The Gatti Defendants copied the Motion verbatim from a brief filed by other defendants in a case styled *Sunpower Corp. v. SolarCity Corp.* et al..  *See* No. 12-00694, Dkt. No. 47 (N.D. Cal. San Jose Division) ("*Sunpower*" or the "*Sunpower* Motion").[4]  This plagiarism has confusing consequences.  For example, the Gatti's Motion discusses a count based on trespass to chattels – a claim not asserted in Loop AI's Complaint (nor in its original complaint), but one that was asserted in *Sunpower*.  Thus, the reader of the Motion is left to sort through the plagiarized document and to attempt to determine what arguments made in *Sunpower* and re-submitted in Gatti's Motion apply to this case and which apply only to *Sunpower*.

After doing the necessary detective work, it appears that Gatti contends that the California Uniform Trade Secrets Act ("CUTSA") supersedes ***all*** non-CUTSA claims asserted

---

[1] Because the Defendants' arguments do not depend on the distinction between these two defendants, Plaintiff uses the label "Gatti" for both Defendants for ease of reference in this brief.
[2] All references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise stated.
[3] The Motion appears inconsistent as to how many and which claims it is directed to.  *See, e.g.,* Dkt. No. 73 at 2 (stating it seeks dismissal of "8" causes of actions on grounds that they "do not exist under California law and would be preempted by the Uniform Trade Secrets Act if they did exist, and one cause of action because Plaintiff did not allege sufficient facts to state a claim."); Dkt. No. 73 at 2, n. 3 (stating that the "motion is equally applicable to all causes of action in the Complaint.");
[4] For the Court's reference, a copy of the *Sunpower* Motion is also being provided herewith as Exhibit A.

by Loop AI, as well as the CUTSA claim itself (Count 11).[5]  In making this assertion Gatti appears to rely principally on two decisions by the Sixth District of the California Court of Appeal in *Silvaco* and *K.C. Multimedia*.[6,7]  The Motion does not rely on any decision of the California Supreme Court in support of the Gatti Defendants' position.

In brief, Loop AI's response to Gatti's confusingly-asserted theories is as follows:

- Gatti provides no law for the proposition that CUTSA supersedes causes of action arising under federal statutes, such as Count I and II in the Complaint.[8]

- Gatti's contention that Loop AI's contract claims are superseded by CUTSA is contrary to the express statutory language: "This title does not affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret…."  Cal. Civ. Code § 3426.7(b)(1).

- Gatti's contention that CUTSA supersedes all claims that are not based on "trade secrets" but that may involve "confidential information" is directly contrary to the express statutory language: "This title does not affect … (2) ***other civil remedies*** that are not based upon misappropriation of a trade secret."  Cal. Civ. Code § 3426.7(b)(2) (emphasis added).

---

[5] *See, e.g.*, Dkt. No. 73 at 2, 3, and 11.
[6] *Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210 (Cal. App. 6th Dist. 2010); *K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.*, 171 Cal. App. 4th 939, 960 (Cal. App. 6th Dist. 2009)
[7] Gatti also makes a passing reference to the decision rendered by the district court in *Sunpower*. *See* Dkt. No. 73 at 13.
[8] Throughout her Motion, Gatti uses the term "preemption" to describe the effect of CUTSA on other causes of action arising under any other law.  "Preemption" generally is a term used to describe the effect of federal laws on state laws.  In addition, the cases on which Gatti relies also indicate that "the [California] Supreme Court has criticized the use of 'preempt' to describe the supersession of one state law by another' … [and] adopted the term 'displace.'"  *Silvaco*, 184 Cal. App. 4th at n. 14.  The *Silvaco* court favored the term "supersede."  For purposes of this Opposition, Loop AI refers to "preemption" only when necessary to address Gatti's arguments in the Motion.

- Despite the clear language of the foregoing savings clause, Gatti contends that in California, a State with arguably the largest concentration of technology companies and innovation, *it is permissible* to misappropriate and commit other torts directed towards "confidential information" and/or "proprietary materials," and that liability for such torts has been eliminated, unless the misappropriation or tort involves a "trade secret." This is because, according to Gatti, the California legislature "struck" a balance "between the interests of employers, former employees, and those who hire them" in observance of "California's employee mobility rules." Dkt. No. 73 at 2. Under Gatti's reasoning, therefore, CUTSA grants broad immunity from civil liability to those who misappropriate non-trade secret confidential and/or proprietary information. This reasoning cannot be correct. It directly eviscerates the express language of the savings clause in the statute that "*other civil remedies* that are not based upon misappropriation of *a trade secret*" are still available. It is also highly unlikely that the legislature, by enacting CUTSA, intended to do away with all civil causes of action directed to torts involving non-trade secret confidential or proprietary information in order to protect employee mobility.[9]

- Neither *Silvaco* nor *K.C. Multimedia* holds that common law claims are displaced by CUTSA when those claims cover conduct *other than* the misappropriation of trade secrets. The decision in *K.C. Multimedia* makes abundantly clear that the gravamen of each claim found to have been displaced was the misappropriation of trade secrets, which the plaintiff conceded formed the basis of all its claims.[10] And the *Sunpower* court acknowledged that the footnote from *Silvaco* that it relied on for the core part of its

---

[9] In a case such as this, for instance, where the employee commits the wrongdoing during the course of her employment, it is difficult to see what interest such interpretation of the statute would be protecting.

[10] *See K.C. Multimedia, Inc.*, 171 Cal. App. 4th at 956-963.

1   decision was **_dicta_**, because there was no finding in _Silvaco_ that the counts found to be

2   displaced covered **_any conduct beyond the misappropriation of trade secrets_**.[11]  In other

3   words, the holdings in _Silvaco_ and _K.C. Multimedia_ provide no support for the position

4   asserted by Gatti in her Motion.  Instead, those holdings merely support the wholly

5   unsurprising conclusion that a non-CUTSA claim that is based on the misappropriation of

6   trade secrets must be decided solely under the CUTSA.  Those holdings have no

7   application to this case, where Loop AI has specifically pled conduct other than

8   misappropriation of trade secrets in its Complaint.  Indeed, the Complaint **_expressly_**

9   **_states_** that the non-contract common law causes of action at issue here "**_are not based_** on

10  any allegation relating to the Defendants' misappropriation of trade secrets."[12]

11

12  • The Gatti Defendants' own assertions in this case take them squarely outside the scope of

13  _Silvaco_ and _K.C. Multimedia_, as they already insisted that even that information alleged

14  in the Complaint to be a "trade secret" does not fall within the CUTSA's definition of

15  trade secret.[13]

16

17  • The California Supreme Court has affirmed a judgment imposing liability for CUTSA

18  claims and for non-CUTSA "confidential information" claims, thereby providing

19  powerful support for Loop AI's position that the CUTSA does not displace claims that

20  fall outside of the CUTSA's scope.[14]  It appears that this California Supreme Court

21  decision was not brought to the attention of the _Sunpower_ court.  _Sunpower_ of course is

22

23  _____

24  [11] _See Sunpower Corp.,_ 2012 U.S. Dist. LEXIS at *14.
    [12] _See_ Dkt. No. 45 at ns. 3-8 (emphasis added).

25  [13] _See_ Dkt. No. 24 at 3-4.  _See, e.g., Think Village-Kiwi, LLC v. Adobe Sys._, 2009 U.S. Dist.
    LEXIS 32450, at *5-6, 2009 WL 902337 (N.D. Cal. Apr. 1, 2009) ("The Court agrees with

26  plaintiff that defendants' current argument -- that the "trade secret" allegations are preempted by
    CUTSA -- contradicts their primary defense that TVK's information does not constitute 'trade

27  secrets.'").
    [14] _See Reeves v. Hanlon,_ 33 Cal. 4th 1140 (Cal. 2004).

28

not binding on this Court, and the failure of the *Sunpower* court (through no fault of its own) to address this authoritative precedent effectively eliminates any persuasive effect that *Sunpower* otherwise might have.  In fact, when the California Supreme Court was presented with an opportunity to find that the CUTSA supersedes causes of action based on non-trade-secret confidential information, it declined to do so.[15]  The Supreme Court of California would not have affirmed judgment on CUTSA claims as well as common law claims based on "confidential information" if, as Gatti contends here, those claims "did not exist" and were "preempted."

- The position taken by Gatti is also inconsistent with fundamental principles of statutory interpretation and with the plain language of the statute itself.  "The general rule is that statutes do not supplant the common law unless it appears that the Legislature intended to cover the entire subject or, in other words, to 'occupy the field.'" *I. E. Associates v. Safeco Title Ins. Co.*, 39 Cal. 3d 281, 285 (1985).  In this case, the California legislature provided a clear indication of its intent when it included the following language in the statute:  "This title does not affect … other civil remedies that are not based upon misappropriation of a trade secret." Cal. Civ. Code § 3426.7(b)(2).  Thus, in enacting the CUTSA, the California legislature intended to occupy the field *only insofar as the field consists of misappropriation of trade secrets.*

- It follows from the language of Section 3426.7(b)(2) that if, as in *Silvaco* and *K.C. Multimedia,* a plaintiff asserts tort claims that are based on "trade secrets" as defined in the statute, those claims can be dismissed because they are displaced by the CUTSA, even though they rely on different legal theories.  Conversely, a claim may not be treated

---

[15] *Id.*

as displaced and subject to dismissal when the conduct relied on in support of that claim does not involve trade secret misappropriation — because under the express language of the CUTSA itself, it does not affect "other civil remedies that are not based upon misappropriation of a trade secret."

- The language of CUTSA Section 3426.7(b)(2), combined with the common law principles applicable under California law to the issue of claim displacement, should make the issues presented here easy to resolve.  Unfortunately, confusion has arisen in the case law because language used to explain this fundamentally straightforward limitation has been misconstrued.  The authors of the *Sunpower* Motion exploited this confusion.  In particular, the *Sunpower* court and others have misconstrued text from an earlier decision, cited with approval by the California Court of Appeal in *K.C. Multimedia*, to the effect that the CUTSA displaced common law claims for unfair competition and unjust enrichment "since those claims are based on the same nucleus of facts as the misappropriation of trade secrets claim for relief."  *K.C. Multimedia, Inc.*, 171 Cal. App. 4th at 955.  What the *K.C. Multimedia* court intended was made clear later in its decision, when it provided the following analysis: "[i]n this case, the complaint as a whole rests on factual allegations of trade secret misappropriation," "each and every cause of action hinges upon the factual allegation that defendants misappropriated appellant's trade secrets," and that "appellants conceded as much in the litigation."  *Id.* at 959.  In light of that, the court found that in respect of other claims that "***the gravamen of the wrongful conduct asserted here is the misappropriation of trade secrets***.[] Factually, the conduct derives from 'the same nucleus of facts' as the trade secrets claim, and it is therefore preempted."  *Id.* at 955-959 (emphasis added).

- Subsequently, some courts have applied the "same nucleus of facts" language very broadly, and in doing so have departed from the context in which the language was first used. For instance, a safety deposit box can contain cash, a confidential will, a diary with non-trade secret confidential information and a flash drive containing some trade secrets and non-trade secrets confidential information. If a defendant is alleged to have misappropriated the safety deposit box, tort claims relating to the items misappropriated from the box arise out of the "same nucleus of facts" as the theft of the trade secrets contained on the flash drive. But it would be nonsense to claim that the claims regarding the other items were displaced by CUTSA. And in fact, such a claim would be flatly inconsistent with Section 3426.7(b)(2), because the remedies being sought by the plaintiff in respect of the other items would be "other civil remedies that are not based upon misappropriation of a trade secret." To hold otherwise would be to hold that two (or more) wrongs do, in fact, make a right.

Here, Loop AI seeks civil remedies (1) for misappropriation of trade secrets and (2) for other conduct that does not involve the misappropriation of a trade secret. Loop AI's category (1) claims are brought under the CUTSA and contract law, and its category (2) claims are brought under different theories. Gatti's assertion that the category (2) claims all are displaced by CUTSA and therefore must be dismissed is flatly inconsistent with CUTSA Section 3426.7(b) and therefore must be rejected. For these reasons, and as explained further below, the Court should deny the Motion in its entirety.

## ARGUMENT

### I.   LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "When ruling on a motion to dismiss, [courts] accept all factual allegations in the

7

1   complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

2   *Ass'n for L.A. Deputy Sheriffs v. County of L.A.*, 648 F.3d 986, 991 (9th Cir. 2011). "The court

3   draws all reasonable inferences in favor of the plaintiff." *Id.* Questions of fact are not

4   appropriately decided on a motion to dismiss. *See, e.g., Lilly v. ConAgra Foods, Inc.*, 743 F.3d

5   662, 665 (9th Cir. 2014) ("a question of fact not appropriate for decision on a motion to

6   dismiss."); *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013) (same).[16]

7   ## II.   THE GATTI DEFENDANTS' MOTION SHOULD BE DENIED IN ITS ENTIRETY.

8

9       All of the arguments in the Gatti's Motion boil down to the following: (1) CUTSA

10  supersedes everything and all claims should be dismissed for that reason, and in the alternative,

11  (2) Plaintiff's "prospective economic advantage claim" in Count IX fails because "Plaintiff does

12  not allege any prospective relationship between it and any third party." Dkt. No. 73 at 18. As

13  with other parts of the Motion, the entire argument section, including the non-preemption

14  argument directed to the "prospective economic advantage claim" is copied verbatim from the

15  *Sunpower* Motion.[17]

16

17

18  _____

19  [16] In addition, pursuant to Fed. R. Civ. P. 15(a)(3), the Gatti Defendants' response to the
    Complaint, as amended on April 6, 2015, fell due on April 20, 2015. Even allowing for three
20  additional days as some, but not all, courts grant under Fed. R. Civ. P. 6(d), the Gatti
    Defendants' response to the Complaint was due at the latest on April 23, 2015. The Gatti
21  Defendants' did not seek, nor receive, an extension of time to file their Motion out of time, on
    April 24, 2015. Accordingly, although Plaintiff is mindful that courts prefer to resolve issues on
22  the merits, it respectfully notes that the Gatti Defendants' right to seek dismissal under Rule
    12(b)(6) has been waived. *See, e.g., Meggitt San Juan Capistrano, Inc. v. Nie Yongzhong*, 575
23  Fed. Appx. 801, 803 (9th Cir. 2014) ("As such, those arguments have been waived because
    Appellants failed to file a timely opposition to Meggitt SJC's motion for a preliminary
24  injunction.").
    [17] Specifically, Gatti slightly modified the first sentence under Paragraph B at page 4, added the
25  words "explicitly or implicitly" at page 6, added footnoted 5 and 7, removed the words "most
    recent" before "2010" at page 12, added a paragraph about the actual *Sunpower* decision at page
26  13, added a sentence on striking allegations and a reference to Loop AI's Complaint at page 17,
    added the word "ninth" before "cause of action" at page 18 and modified the Conclusion on the
27  same page to reflect the claims in this case and Gatti's additional request to strike allegations,
    which was not made in *Sunpower*.

28

The main issue with Gatti's use of a brief prepared for and directed to a different complaint, filed in another case, is that the brief has no application to the detailed allegations supporting the specific claims in this case, which are different than those in *Sunpower* and seek relief on different factual and legal grounds. Unlike in this case, the 28-page complaint in *Sunpower*, barely laid out any factual allegations.[18]  The *Sunpower* Motion preemption arguments, therefore, cannot simply be blindly transplanted here for two primary reasons: ***first***, they are legally incorrect, fail to address a key California Supreme Court precedent which is binding, and discuss causes of actions not present in this case (such as, for instance, Trespass to Chattels, common law Breach of Confidence, common law Unfair Competition) and ***second***, the non-trade secret causes of action that Gatti seeks to dismiss in this case have factual bases and rest on allegations that are wholly different than those in *Sunpower*.  Indeed, other than listing the Counts in the Complaint in their request for dismissal, nowhere in the Motion do the Gatti Defendants actually address any aspect of any claim or allegation actually made in this case.  As to Gatti's request for dismissal of Count IX, while the *Sunpower* Motion may have argued (rightly or wrongly) in that case that the defendant "merely allege[d]" but ***did not name*** any "prospective economic relationship," *see* Dkt. 73 at 17-18, that statement has no application to Plaintiff's Complaint here.  In the Complaint filed in this case, which Gatti ***does not discuss anywhere***, the Plaintiff painstakingly tried to lay out in as much factual detail as can feasibly be provided in a complaint, regarding the various relationships interfered with and how they were interfered with.  For these and the reasons more fully set forth below, the Gatti Defendants' Motion, respectfully, lacks any merit and should be rejected.

---

[18] *See Sunpower*, No. 12-00694, Dkt. No. 1 (setting forth the entirety of factual allegations in the first 8 pages, which also include a long list of parties, jurisdictional statements, and other non-fact specific matters).

**A.  The Claims That the Gatti Defendants Challenge on "Preemption" Grounds Are Validly Stated and Should Not Be Dismissed.[19]**

   **1.  Loop AI's Contract Claim is Permitted by The Express Terms of the CUTSA's Savings Clause.**

Gatti seeks dismissal of Loop AI's breach of contract claim set forth in Count VI of its Complaint.  *See* Dkt. No. 73 at 2, 3, 18.[20]  Other than a short request for dismissal of Count VI, Gatti does not discuss in the Motion any aspect of Loop AI's breach of contract claim, nor does she provide any legal basis for her request for dismissal.  The only "contract" related mention in the Motion points out that CUTSA "does not affect [] contractual remedies" and that "a party can allege a contract claim... even if the plaintiff alleges a UTSA claim." *Id.* at 9 (quoting Cal. Civ. Code § 3426.7(b)).  The CUTSA savings clause is indeed clear: "This title does not affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret…."  Cal. Civ. Code § 3426.7(b)(1).  Gatti's request for dismissal of Count VI on "preemption" grounds, therefore, fails on its face and should be rejected.

   **2.  Loop AI's Federal Statutory Claims Cannot Be Superseded by CUTSA.**

---

[19] The Gatti Defendants argue in Section III(B) of the Motion that "Plaintiff's Alternative Claims Never Existed under California Law."  Dkt. No. 73 at 4-6.  Although not entirely clear, Gatti seems to contend that the causes of action listed in Section III of the Motion "never existed historically under California law."  *Id.* at 6.  In other parts of that Section, however, Gatti argues that those causes of actions do not exist because they are preempted by CUTSA.  *See id.* at 5-6.  With the exception of a claim for conversion (which is addressed in the rest of this Opposition), Loop AI does not bring in this action any of the claims listed in Section III of the Motion.  Even the "unfair competition claim" is different, because Loop AI has brought a claim under the California statute, not a "common law unfair competition" claim.  Accordingly, there is no need to address here, or to resolve in this case, whether the causes of actions listed in Section III of the Motion existed historically or post-CUTSA.

[20]   In these same sections of the Motion, Gatti also seeks dismissal of Count XI, which is Plaintiff's claim based on CUTSA. *See* Dkt. No. 73 at 3, 18.  As with all other claims that Gatti lists in her requests for dismissal, other than listing the number of the Count in her request for dismissal, Gatti provides no discussion or argument supporting her request for dismissal of any of the specific claims listed.  Because it is self-evident that CUTSA does not displace itself, there is no need to address at any length Gatti's request for dismissal of Count XI.

---

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Gatti Defendants appear to contend that CUTSA supersedes Loop AI's federal claims arising under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962 *et seq* (Count I) and the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030 *et seq*  (Count II), and therefore that those claims should be dismissed.  *See* Dkt. No. 73 at 2, 3, 18.  The Gatti Defendants provide no discussion or law about either of claim, or supporting their implied contention that a state statute can supersede remedies available under a federal statute.  It cannot.  *See, e.g., Norsat Int'l v. B.I.P. Corp.*, 2013 U.S. Dist. LEXIS 144149, 18-19 (S.D. Cal. Oct. 3, 2013) ("[I]t is fundamental that state law cannot preempt a federal statute.... There is absolutely no authority for [the] erroneous contention that CUTSA in any way preempts federal law.").[21]  The Gatti Defendants fail to provide any argument or authority around this well-known and well-established rule.  Accordingly, the Gatti Defendants' request for dismissal of Counts I and II should be denied.

### 3.   Loop AI's Other Claims Are Not Based on Misappropriation of Trade Secrets and Are Expressly Permitted by the CUTSA Savings Clause.

The Gatti Defendants claim that Plaintiff's non-trade secret based claims for Fraud (Count V), Intentional Interference with Prospective Advantage (IX), Conversion (Count 12, statutory Unfair Competition (Count XIII), and Unjust Enrichment (Count XIV), should be dismissed on UTSA "preemption" grounds.  *See* Dkt. No. 73 Notice at 2 and Motion at 2, 3, 18. As with the other claims, the Gatti Defendants do not discuss any aspect of any of these claims, any of the allegations made in support of any of these claims, or how they fit within their breathtakingly broad "preemption" theory.  A review of the Complaint demonstrates that Plaintiff ***expressly states*** that these claims are **not** based on any "misappropriation of trade

---

[21] *See also, e.g., United States v. Hall*, 543 F.2d 1229, 1232 (9th Cir. 1976) ("To the extent that there is a conflict between the state and federal legislation, though, the federal statute controls under the Supremacy Clause of the Constitution, Article VI, cl. 2. The state law cannot preempt the federal unless the federal act itself sanctions the application of state standards.").

secrets." *See* Dkt. No. 45 at fn. 3-8.  Notwithstanding, the Gatti Defendants contend that even a

reference to ***non-trade secret*** "confidential" or "proprietary" information is sufficient to displace

all causes of action under UTSA, because allegedly "provides a detailed and comprehensive

scheme to regulate claims concerning the alleged misuse of confidential information."  Dkt. No.

73 at 7.  Thus, according to Gatti, "even if the UTSA were silent on preemption of common law

claims seeking state law intellectual property protection for commercial information said to be

confidential or proprietary, the statute would have preemptive effect and displace such claims."

*Id.* at 8.  These propositions are simply groundless and would nullify the express language of the

statute.  Contrary to Gatti's contention, CUTSA has very much spoken on the availability of

"other civil remedies" and provides that "[t]his title does not affect … other civil remedies that

are not based upon misappropriation of a trade secret."  Cal. Civ. Code § 3426.7(b)(2).  Although

the Motion mentions this part of the CUTSA savings clause, it proceeds to ignore it, even though

the plain language of the statute is the most authoritative source of statutory construction.[22]  For

instance, in the Motion, Gatti does not explain under what legal basis, a claim that is ***expressly***

***not based*** on trade secret, as the claims at issue here, would have to be considered to be outside

of Section 3426.7(b)(2), even though the language of the statute expressly saves such claim.

Gatti's theories would directly nullify Section 3426.7(b), and eliminate, instead of save, all civil

remedies for claims that are expressly not based on the misappropriation of trade secrets.  Gatti's

argument that in California employees, current or former, or other persons can walk away with

confidential non-trade secret information without liability simply cannot be taken seriously.

---

[22] *See Cumbie v. Woody Woo, Inc.*, 596 F.3d 577, 581 n.11 (9th Cir. 2010) ("Of course, we do not resort to legislative history to cloud a statutory text that is clear."); *I.E. Associates*, 39 Cal. 3d at 285 ("The general rule is that statutes do not supplant the common law unless it appears that the Legislature intended to cover the entire subject or, in other words, to 'occupy the field.'").

The Gatti Defendants' contention that this result is warranted under *Silvaco* and *K.C. Multimedia* is also erroneous.[23]  They claim that, based on these cases, California courts either have found, or would likely find, that CUTSA supersedes all causes of action based on non-trade secret proprietary information.  *See* Dkt. No. 73 at 4-17.  The Gatti Defendants ignore that in its most recent involving CUTSA and other common law causes of action based on misappropriation of "confidential information," the California Supreme Court found all causes of actions valid.  *See Reeves v. Hanlon,* 33 Cal. 4th 1140 (2004).  In *Reeves,* a case involving disloyal employees who departed with "confidential information" and "trade secrets," the decision reached the court after a verdict and a full judgment on the merits.  *Id.*  Multiple aspects of the case were appealed.  *Id.*  The California Supreme Court upheld the validity of the CUTSA claim, as well as of those other common law claims premised in part on non-trade-secret "confidential information."  *Id.* at 1154-1155 ("[defendants deleted and destroyed] plaintiffs' computer files containing client documents and forms ... misappropriated confidential information, improperly solicited plaintiffs' clients, and cultivated employee discontent.  While the computer files and confidential information all appear to have pertained to plaintiffs' clients...").  Although the court did not explicitly address the CUTSA savings clause, it is implicit from its finding that the common law claims based in part on the misappropriation of "confidential information" were valid, that common law claims based on "confidential information" that does not amount to a trade secret continue to be alive and well in California, and that employees desiring to steel such non-trade secret information from their employers or others will in fact face civil liability.

---

[23] *Silvaco Data Systems v. Intel Corp.,* 184 Cal. App. 4th 210 (Cal. App. 6th Dist. 2010); *K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.,* 171 Cal. App. 4th 939, 960 (Cal. App. 6th Dist. 2009).

Neither *K.C. Multimedia* nor *Silvaco* can, or do, change CUTSA or the California Supreme Court's controlling finding that common law claims based in part on misappropriation of "confidential information" were validly asserted.  Indeed, both these cases involved exclusively and concededly "trade secret" "source code" that was being used as the basis for other parallel claims.  Specifically, *K.C. Multimedia* involved "two applications derived from Wirelessproxy source code" which the plaintiff in that case claimed to be "a trade secret."  *K.C. Silvaco*, 171 Cal. App. 4th at 944.  In addition to a CUTSA claim, the plaintiff brought a conversion claim based on the theft of a laptop, and other claims based on the same allegation that the defendant "took the trade secrets" to another employer.  *See id.* at 945.  The lower court dismissed the claims for breach of confidence, tortious interference and unfair competition because they were based on the same taking of trade secrets.  *Id.* at 959, 960-963.  As the *K.C. Multimedia* court noted, there was no question in that case that the dismissed claims were based on the "trade secret" misappropriation described above, and the plaintiffs there "effectively conceded as much" in the litigation.  *Id.* at 959.  The court found that "each and every cause of action hinges upon the factual allegation that defendants misappropriated appellants' trade secrets."  *Id.*  In that case, there was simply no question that these other causes of actions were based on the misappropriation of "trade secrets," which the court referred to as being part the "same nucleus of facts."  Thus, *K.C. Multimedia* hardly stands for the proposition that the Gatti Defendants advance here, that in California employees or others can freely steal ***non-trade secret*** confidential or proprietary information without immunity from any civil liability.  The *K.C. Multimedia* court simply applied the letter of the CUTSA savings clause, literally, to exclude claims that concededly were based on "trade secrets."

Similarly, *Silvaco* also involved claims based on misappropriated source code that had already been ***adjudicated*** by another court ***to be a "trade secret."***  *Silvaco*, 184 Cal. App. 4th at 216.  In the prior case, Silvaco had obtained a judgment against certain employees who had

14

1   stolen the "trade secret" source code.  *Id.*  The prior judgment contained a list of the "trade

2   secret" source code.  *Id.*[24]  In the follow on case addressed in the Court of Appeal decision,

3   Silvaco was going after indirect purchasers (namely, Intel and other companies) of the software

4   that embodied the stolen "trade secret" code.  *See id.*  "The chief question presented [was]

5   whether Intel could be liable for [the] use [of such source code], as [it] was effectively

6   undisputed, [that] it never possessed or had access to the source code but only had executable,

7   machine readable code compiled by its supplier from source code."  *Id.* at 216.  The court

8   "answered that question in the negative."  *Id.*  In rendering its decision, the court was interpreting

9   the meaning of the term "use" in CUTSA, and found that "executing machine readable software"

10  did not constitute a covered "use."  *Id.*  Because the source code at issue had already been found

11  in another proceeding to be a "trade secret," there was simply no non-trade secret information **at**

12  **issue** in *Silvaco*.  *Id.*  In finding that certain common law claims brought in that case were

13  superseded by CUTSA, the court expressly rested its reasoning on the literal application of the

14  savings clause and the fact all displaced claims were based on the same "trade secret" source

15  code misappropriation.  *Id.* at 236, 239.  Thus, contrary to Gatti's arguments, in *Silvaco*, as in

16  *K.C. Multimedia*, there was no broad rule announced liberalizing theft of non-trade secret

17  confidential or proprietary information.  Quite to the contrary, *Silvaco* found that an unfair

18  competition claim that expressly stated in the pleading that it was based on "wrongful conduct …

19  ***other than***" the misappropriation of "trade secrets" could not be superseded by CUTSA.  *See id.*

20  at 241 (emphasis added).  For these reasons, the Gatti Defendants' reliance on these cases to

24  _____

25  [24] ("Silvaco secured a judgment against CSI, [the new employer of two former employees of
    Silvaco] including an injunction against the continued use of 'technology' described in an exhibit
26  attached to the judgment.  It then brought actions against several purchasers of CSI software,
    including Intel.  It alleged, that *by using CSI software*, these end users had misappropriated the
27  Silvaco trade secrets assertedly incorporated in that software.")

28

1   support her ill-founded arguments presented in the Motion is misplaced.  Similarly misplaced is

2   Gatti's reliance on cases, such as *Sunpower*, that have ignored the facts at issue and the actual

3   holdings in *Silvaco* and *K.C. Multimedia*, have interpreted the phrase "nucleus of facts" out-of-

4   context, and have combined with dicta in the *Silvaco* decision to essentially nullify the "other

5   civil remedies" savings clause in Section 3426.1(b)(2).   *See, e.g., Sunpower Corp. v. Solarcity*

6   *Corp.*, No. 12-00694, 2012 U.S. Dist. LEXIS 176284, 2012 WL 6160472 (N.D. Cal. Dec. 11,

7   2012).  This improper adoption of dicta to displace statutory language is also contrary to the

8   binding precedent of the California Supreme Court in *Reeves*, which is not addressed in any of

9   these decisions, and presumably was not brought to the Court's attention, which expressly found

10  valid causes of actions based on non-trade secret confidential information that proceeded to trial

11  along a CUTSA claim.  *See Reeves*, 33 Cal. 4th 1140.

12          Indeed, other cases decided after *Silvaco* have also allowed common law claims to

13  proceed despite the presence of pleadings regarding misappropriation of non-trade-secret

14  proprietary information in those cases.  For instance, in *City Solutions v. Clear Channel*

15  *Communs., Inc*., 365 F.3d 835 (9th Cir. 2004), the Ninth Circuit upheld a damages award for

16  unfair competition where the claim arose out of the misappropriation and use of non-trade secret,

17  confidential information.[25]  *Id.* at 843-844.  The jury found no violation of the CUTSA in that

18  case.  *Id.* at 838.  However, it found liability for the misappropriation of "confidential bidding

19  strategies," the use of which by the defendant "resulted in lost profits to [the plaintiff]."  *Id.* at

20  839.  The court upheld this finding.  *Id.*

_____

[25] In *Sunpower* the court found that *City Solutions* should not be followed as pre-*Silvaco*.  Unlike
*City Solutions*, however, *Silvaco* did not involve any non-trade secret confidential information
and the passing dicta contained in a footnote in *Silvaco* on which *Sunpower* relies is not a proper
basis for disregarding controlling precedent of both the Ninth Circuit in *City Solutions*.
Presumably, had the *Sunpower* court been advised of the California Supreme Court decision in
*Reeves* it would not have reached the same conclusions that both these controlling precedents
should be disregarded.

1    Other federal courts have reached similar results and, particularly at the motion to dismiss

2  stage, have refused to apply supersession as a basis to dismiss non-trade secret based claims.

3  *See, e.g., Amron Int'l Diving Supply, Inc. v. Hydrolinx Diving Commun., Inc.*, 2011 U.S. Dist.

4  LEXIS 122420, at *27-28, 2011 WL 5025178 (S.D. Cal. Oct. 21, 2011) (denying dismissal of

5  claims for breach of confidence, conversion, trespass to chattels, interference with prospective

6  business advantage, unjust enrichment, common law and statutory unfair competition, and

7  common law misappropriation and finding that at that at the motion to dismiss stage "the status

8  of the information is merely a matter of allegation and until the distinction is made between

9
   Amron's allegedly misappropriated trade secret information and its confidential or non-

10  confidential proprietary non-trade secret information, the question of preemption should not be

11  addressed. Other courts have held that the question of preemption cannot be addressed prior to

12  determining whether the allegedly misappropriated information constitutes a trade secret.");

13  *TMX Funding, Inc. v. Impero Techs., Inc.*, N. 10-00202, 2010 U.S. Dist. LEXIS 60260, 2010 WL

14
15  2509979 (N.D. Cal. June 8, 2010) (same).[26]  *Amron* and *TMX* are far from unique in their

16

17

18

19

20

---

[26] ("Defendants … dispute that TMX sufficiently identifies any trade secret information.
21  Regardless of whether the information is a trade secret, Defendants may be liable for a breach of
the duty of loyalty if they utilized Teledex's proprietary information, for conversion if they
22  wrongfully deprived TMX of possession of that information, for unfair competition if they
misappropriated TMX's proprietary information, for interfering with TMX's prospective
23  economic advantage, and for accessing computerized information without authorization.  This
Court agrees with the approach taken by other courts within this district: 'To the extent the claim
24  is based on these trade secrets, it cannot go forward.  However, [the plaintiff] may continue to
pursue the [tort claim] so long as the confidential information at the foundation of the claim **is
25  not a trade secret**, as that term is defined in [the UTSA].  If, **in subsequent pleadings or briefs,
or at trial, it is established** that the disclosures on which [the plaintiff] bases this claim were
26  trade secrets, the claim will be dismissed with prejudice.'" quoting *First Advantage Background
Services Corp. v. Private Eyes, Inc.*, 569 F. Supp. 2d 929, 942 (N.D. Cal. 2008) (emphasis
27  added)).

28

---

holdings.  The federal district courts of California have repeatedly declined to find that CUTSA supersedes claims based upon non-trade-secret proprietary information.[27]

        For the foregoing reasons, the broad supersession that the Gatti Defendants would like this Court to apply here stands on faulty grounds and should be rejected.  Should the Court, however, agree with the Gatti Defendants' proposition, Loop AI respectfully requests that the Court certify its ruling for interlocutory appeal.  Interlocutory appeal is governed by 28 U.S.C. § 1292(b), which permits interlocutory appeal if (1) an order involves a controlling question of law, (2) there is substantial ground for difference of opinion as to the question of law and (3) appealing the order may materially advance the ultimate termination of the litigation.  *Rollins v. Dignity Health*, No. 13-01450, 2014 U.S. Dist. LEXIS 165531, 2014 WL 6693891 (N.D. Cal. Nov. 26, 2014).  To the extent the Court were to rule as a matter of law that the CUTSA supersession applied as invoked by the Gatti Defendants, then the three requisite elements for an interlocutory appeal would be met here.  Indeed, questions of displacement of one law by

---

[27] *See, e.g., Leatt Corp. v. Innovative Safety Tech., LLC*, 2010 U.S. Dist. LEXIS 71362, at *19-20, n. 5, 2010 WL 2803947 (S.D. Cal. July 15, 2010) (Finding that *Silvaco*, "does not undermine the conclusion that the UTSA only preempts additional claims that depend on the misappropriation of a trade secret," and holding "[p]laintiffs base their injury not only on the theft of their trade secrets, but also on other 'confidential' and/or 'proprietary' information. ... To the extent these claims are based upon non-trade secret information, the Court agrees that they should be allowed to go forward at this stage.") (internal citations omitted); *SocialApps, LLC v. Zynga, Inc.*, No. 11-04910, 2012 U.S. Dist. LEXIS 14124, 2012 WL 381216 (N.D. Cal. Feb. 6, 2012) (rejecting the CUTSA supersession argument because while the tort claim at issue relates to certain confidential information, it "does not specifically allege that ...[it] is founded on use of 'Trade Secrets.'"); *Phoenix Techs. Ltd. v. DeviceVM*, No. 09-04697, 2009 U.S. Dist. LEXIS 114996, 2009 WL 4723400 (N.D. Cal. Dec. 8, 2009) (Denying a motion to dismiss claims for breach of contract, interference with contract, statutory unfair competition, and conversion, all of which were premised on misappropriation of the plaintiff's proprietary, non-trade-secret information); *Think Village-Kiwi, LLC v. Adobe Sys.*, No. 08-04166, 2009 U.S. Dist. LEXIS 32450, *6, 2009 WL 902337 (N.D. Cal. Apr. 1, 2009) ("Defendants 'cannot have it both ways.' *Id.* In *First Advantage Background Servs. Corp. v. Private Eyes, Inc.*, the court rejected precisely defendants' argument, holding that '[b]y its own terms . . . CUTSA only provides remedies for misappropriation of trade secrets, not of any confidential information, and defines that term specifically.")

PL.'S OPP. TO GATTI, IQS LLC, PARTIAL RULE 12 MTD

another are frequently certified for immediate appeal.  *Stoody-Broser v. Bank of America, N.A.*, No. 08-02705, 2012 U.S. Dist. LEXIS 112352, at *3 (N.D. Cal. Aug. 9, 2012); *Brown v. Hain Celestial Group, Inc.*, No. 11-03082, 2012 U.S. Dist. LEXIS 136702, at *8, 2012 WL 4364588 (N.D. Cal. Sept. 20, 2012); *In re Cal. Title Ins. Antitrust Litig.*, No. 08-01341, 2010 U.S. Dist. LEXIS 28923, at *7, 2010 WL 785798 (N.D. Cal. Mar. 3, 2010) (concluding that potential preemption of plaintiffs' claim by the California Insurance Code was a "controlling issue of law").[28]

### B.   Loop AI's Claims Survive Supersession for Other Reasons.

The Gatti Defendants' request for a blanket dismissal of virtually all claims on supersession grounds also disregards that the claims in question, in addition to expressly stating that ***they are not*** based on any "trade secret," are also based on a number of factual predicates, many of which are not even related to "confidential" or "proprietary" information.  The Gatti Defendants to not address any of the factual predicates in the Complaint.  A few examples, however, readily illustrate this point.

***Fraud Claim, Count V[29]*** — Loop AI's fraud claim is founded upon numerous allegations clearly distinct from the misappropriation of "trade secrets," including, as relevant to

---

[28] Plaintiff raises the possibility of certification here, but does not propose to fully brief the question of certification for interlocutory appeal before this Court has had a chance consider the issue and render its decision.  Plaintiff stands ready to promptly submit appropriate briefing in support of certification before the Court renders its decision, if so requested.

[29] Also to be noted, California courts have recognized statutory unfair competition is a valid independent cause of action ***even if*** it relates to the misappropriation of trade secrets.  *See SolarBridge Techs., Inc. v. Ozkaynak*, No. 10-03769, 2012 U.S. Dist. LEXIS 81403, at *17, 2012 WL 2150308 (N.D. Cal. June 12, 2012) ("Importantly, misappropriation of trade secrets in violation of UTSA constitutes unfair competition."); *Courtesy Temp. Serv. v. Camacho*, 222 Cal. App. 3d 1278, 1291 (Cal. App. 2d Dist. 1990) ("Finally, the court below erred in relying exclusively on section 3426 et seq. and American Paper's construction of that statute to deny Courtesy's claim under Business and Professions Code section 17200 et seq. The UTSA,

(continued…)

the Gatti Defendants here, that Gatti "made numerous fraudulent representations and omissions" by:[30]

- misstating key aspects of her qualifications, employment history, and salary history, both in written and verbal communications to Loop AI;

- concealing her employment relationships with numerous other businesses;

- misrepresenting the purpose of her alleged business trips;

- misstating the nature of the work performed by employees of IQSystem Inc.;

- claiming that her continued participation in the communications with Investment Fund 4 was critical; and

- misrepresenting that "Investment Fund 4 required that [Loop AI's founders] not bring any other investors to the company."

Dkt. No. 45 at ¶ 251.

**Conversion, Count XII[31] —** The Gatti Defendants do not dispute that they converted Loop AI's property, but instead argue that "no California courts has ever allowed a conversion

---

(continued)

specifically section 3426.7, subdivision (a), expressly provides that the Act 'does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets.' Thus, even if Courtesy's customer list would not qualify as a "trade secret" under section 3426.1, the unfair and deceptive practices of employees in stealing Courtesy's customers should have been enjoined under Business and Professions Code section 17200 et seq.").

[30] This cause of action is specifically **not** based upon the misappropriation of trade secrets and, as already articulated above, it cannot be superseded by CUTSA. *See* Dkt. No. 45 at n.3.

[31] Also to be noted, California courts have recognized statutory unfair competition is a valid independent cause of action **even if** it relates to the misappropriation of trade secrets. *See SolarBridge Techs., Inc. v. Ozkaynak*, No. 10-03769, 2012 U.S. Dist. LEXIS 81403, at *17, 2012 WL 2150308 (N.D. Cal. June 12, 2012) ("Importantly, misappropriation of trade secrets in violation of UTSA constitutes unfair competition."); *Courtesy Temp. Serv. v. Camacho*, 222 Cal. App. 3d 1278, 1291 (Cal. App. 2d Dist. 1990) ("Finally, the court below erred in relying exclusively on section 3426 et seq. and American Paper's construction of that statute to deny Courtesy's claim under Business and Professions Code section 17200 et seq. The UTSA, specifically section 3426.7, subdivision (a), expressly provides that the Act 'does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets.' Thus, even if Courtesy's customer list would not qualify as a "trade secret" under section 3426.1, the unfair and deceptive practices of employees in stealing Courtesy's customers should have been enjoined under Business and Professions Code section 17200 et seq.").

claim for intangible information said to be 'non-trade secret proprietary information'" and that it is superseded by the CUTSA.[32]  Dkt. No. 73 at 5.  Aside from the faulty legal statement,[33] Loop AI's allegations supporting its conversion claim include property interests not based upon non-trade secret confidential information.  *See* Dkt. No. 45 at ¶¶ 327-333.  For instance, Loop AI alleges that Gatti has stolen its laptop computer, a hard drive, as well as several accounts opened with various service providers for Loop AI's corporate use, over which Loop AI has an exclusive property interest.

### *Statutory Unfair Competition, Count XIII*[34] —

As relevant to the Gatti Defendants here, Loop AI has averred that the Gatti Defendants engaged in a broad range of unfair and unlawful business acts or practices going far beyond the misappropriation of any non-trade secret confidential information.  *See* Dkt. No. 45 at ¶¶ 335, 336.  For instance, Loop AI alleges that the Gatti Defendants engaged in numerous unlawful and unfair business practices, including, but not limited to, unfairly competing with Loop AI while still working for it, sabotaging Loop AI's fundraising efforts, seeking to force a liquidity crisis to force an unwarranted sale of Loop AI, placing competitors' agents inside Loop AI's offices

---

[32] This cause of action is specifically ***not*** based upon the misappropriation of trade secrets and, as already articulated, it cannot be superseded by CUTSA.  *See* Dkt. No. 45 at n. 6.

[33] Intangible property is protected by California's conversion law. *See, e.g., Kremen v. Cohen,* 337 F.3d 1024, 1034-5 (9th Cir. 2003) (Even though there is "no single [physical] record... with which Kremen's intangible property right is associated, …[it] is protected by California conversion law."); *Amron,* 2011 U.S. Dist. LEXIS 122420*; TMX Funding,* 2010 U.S. Dist. LEXIS at *13 ("Defendants may be liable for… conversion if they wrongfully deprived TMX of possession of [its proprietary] information"); *Phoenix Technologies Ltd. v. DeviceVM,* No. 09-04697, 2009 U.S. Dist. LEXIS 114996, at *5, 2009 WL 4723400 (N.D. Cal. Dec. 8, 2009) (rejecting defendant's supersession argument and finding that because the defendant's Employee Inventions and Proprietary Information Agreement confers upon plaintiff-employer an exclusive property interest over the information at issue, plaintiff's conversion claim survives motion to dismiss because "[d]efendants were on notice that they could be liable for claims in addition to trade secrets violations.").

[34] This cause of action is specifically ***not*** based upon the misappropriation of trade secrets and, as already articulated above, it cannot be superseded by CUTSA.  *See* Dkt. No 45 at n.7.

21

under false pretenses, using Loop AI's assets to run a competing business, charging Loop AI for expenses incurred in furtherance of competing businesses, to name a few. *See, e.g., id.* at ¶¶ 24, 26, 44-45, 106, 201, 222, 226-227.

Although a discussion of the full scope of each claim would be superfluous here, in light of the fact that the Gatti Defendants have not addressed ***any*** aspect of any of the claims they challenge, the foregoing examples readily show that the Gatti Defendants' supersession arguments cannot apply in this case for multiple reasons and should be rejected.

### C.  Loop AI has Adequately Pled a Claim for Intentional Interference With Prospective Economic Advantage

The Gatti Defendants argue in the alternative that Loop AI has allegedly failed to sufficiently plead its claim for Intentional Interference with Prospective Economic Advantage in Count IX of the Complaint.  Dkt. No. 73 at 17-18.  The entirety of this claim relies on the argument that there was a failure in the Complaint to "identify[] any third party relationship that was disrupted." *Id.* at 18.  This argument, however, is directed to the *Sunpower* complaint, not to the detailed Complaint filed in this action.  As discussed briefly above, the Gatti Defendants' have copied the argument verbatim from *Sunpower* and in so doing have imported into this case statements that are plainly inapplicable to Loop AI's Complaint.  Unlike in *Sunpower*, in its Complaint, Loop AI expressly identifies the specific relationships that were interfered. *See, e.g.,* Dkt. No. 45 at ¶¶ 290-302; 26-28, 62, 113, 116-119, 163-165, 45, 46, 104-105, 107, 173.  Thus, like the rest of the Motion, Gatti's argument here is not applicable, and should be rejected.

### III.    THE GATTI DEFENDANTS' ALTERNATIVE MOTION TO STRIKE SHOULD BE DENIED

The Gatti Defendants move this Court, in the alternative, pursuant to Rule 12(f) to strike from the Complaint any instance in the Complaint of the phrases "confidential information" or "proprietary information." *See* Dkt. No. 73 at 1, 2-3, 17-18.  A Court may "strike from a pleading... any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).

1    The Gatti Defendants present neither argument nor legal authority showing how they have met

2    any aspect of this standard.  They have not.  This request should be denied.

3                                              **CONCLUSION**

4            The Gatti Defendants' Motion should be denied in its entirety as it presents incorrect

5    legal arguments, contests allegations and causes of action that were not brought in this case, and

6    ignores, in its entirety, the content of the Complaint actually filed in this case.  The Motion lacks

7    any merit and should never have been filed once, let alone twice.[35]

8

9

10                                                   Respectfully submitted,

11
     May 8, 2015                                 By:  /s/ Valeria Calafiore Healy
12
                                                     Valeria Calafiore Healy, Esq. (*pro hac*
13                                                   *vice*)
                                                     Valeria.healy@healylex.com
14                                                   HEALY LLC
                                                     154 Grand Street
15                                                   New York, New York 10013
                                                     Telephone:     (212) 810-0377
16                                                   Facsimile:     (212) 810-7036

17                                                   Daniel J. Weinberg, Esq. (SBN 227159)
                                                     dweinberg@fawlaw.com
18                                                   FREITAS ANGELL & WEINBERG LLP
                                                     350 Marine Parkway, Suite 200
19                                                   Redwood Shores, California 94065
                                                     Telephone:     (650) 593-6300
20                                                   Facsimile:     (650) 593-6301
                                                     Attorneys for Plaintiff
21                                                   LOOP AI LABS, INC.

22

23

24

25   _____

26   [35] Respectfully, the Motion has caused a great waste of time and resources that could have been
     avoided and hopefully will be avoided in the future.  Requiring a party to respond to a brief filed
27   in different case, naturally imposes the examination of a wholly different record, with unrelated
     parties and wholly different allegations, an added burden that is unnecessary.

28

                                                      23