Pages 1 - 25

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Haywood S. Gilliam, Jr.

| | |
|---|---|
| LOOP AI LABS INC., a Delaware Corporation, | ) No. 3:15-cv-00798-HSG<br>)<br>) |
|     Plaintiffs, | ) |
|   v. | )<br>) |
| ANNA GATTI, an individual,<br>Almawave S.p.A., an Italian<br>corporation, ALMAWAVE S.r.l.,<br>an Italian corporation,<br>ALMAWAVE USA, Inc.,<br>a California corporation,<br>IQSYSTEM LLC, a California<br>limited liability company,<br>IQSYSTEM Inc., a Delaware<br>corporation, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
|     Defendants. | )<br>) |

San Francisco, California
Tuesday, May 26, 2015

TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL
ELECTRONIC SOUND RECORDING - FTR 2:34-3:04

**APPEARANCES**:

For Loop AI Labs Inc.:
                Healy LLC
                154 Grand Street
                New York, NY 10013
      BY:   **VALERIA CALAFIORE HEALY**

                Freitas Angell & Weinberg LLP
                350 Marine Parkway, Suite 200
                Redwood Shores, CA 94065
      BY:   **DANIEL JUSTIN WEINBERG**

(APPEARANCES CONTINUED ON FOLLOWING PAGE.)

<u>**APPEARANCES CONTINUED:**</u>

For Anna Gatti
and IQSystem LLC:          Low Ball & Lynch
                           505 Montgomery Street
                           San Francisco, CA 94111-2584
                  **BY:    THOMAS J. LOSAVIO**

For Almawave USA:
                           Venable LLP
                           505 Montgomery Street, Suite 1400
                           San Francisco, CA 94111
                  **BY:    THOMAS EDWARD WALLERSTEIN
                           KIMBERLY CULP**


For IQSystem, Inc.:
                           Valla and Associates Inc., P.C.
                           333 Bush Street, Suite 2020
                           San Francisco, CA 94104
                  **BY:    MICHAEL PAUL PURCELL**


Transcribed by Kelly Polvi, Contract Transcriber

```
1   Tuesday, May 26, 2015                    2:34 P.M.
2                    P R O C E E D I N G S
3                         ---000---
4        THE CLERK:  We're calling C 15-00798, Loop AI Labs, Inc.
5   v. Gatti, et al.
6        Please step forward and state your name your appearances
7   for the record, please.
8        MS. HEALY:  Good morning, Your Honor.  Valeria Calafiore
9   Healy from Healy LLC for plaintiff Loop AI.  And here with me
10  at counsel table is Dan Weinberg.
11       THE COURT:  Good afternoon, Ms. Healy.
12       MS. HEALY:  Good afternoon.  Sorry.
13       MR. WEINBERG:  Good afternoon.
14       THE COURT:  Good afternoon.
15       MR. WALLERSTEIN:  Good afternoon you, Your Honor, Tom
16  Wallerstein with my colleague, Kimberly Culp of Venable on
17  behalf of Almawave USA.
18       THE COURT:  Good afternoon, Mr. Wallerstein.
19       MR. PURCELL:  Good afternoon, Your Honor.  Michael
20  Purcell for IQSystem, Inc.
21       THE CLERK:  FTR is not picking you up.  You need to stand
22  in front of the mike.  You can't stand to the side of the mike.
23       MR. PURCELL:  Good afternoon, Your Honor.  Michael
24  Purcell for defendant IQSystem, Inc.
25       THE COURT:  Good afternoon, Mr. Purcell.
```

1    **MR. LOSAVIO:** Good afternoon, Your Honor. Tom LoSavio

2    for Anna Gatti and IQSystems, LLC.

3        **THE COURT:** Good afternoon, Mr. LoSavio.

4        All right. So we're here for our initial case management

5    conference.

6        I reviewed the parties' case management conference

7    statements, detected at least a few issues, and I have a

8    question as to whether some of them are right.

9        But just ticking through what was on my agenda, the

10   timing of ADR, the purported stay of discovery, timing of meet

11   and confer regarding electronically-stored information,

12   potential counterclaim by Almawave, and then a proposal

13   regarding phasing of discovery.

14       Do the parties have anything more than what's on that

15   list?

16       **MS. HEALY:** I think, Your Honor, that covers sort of some

17   of the items that came out of the statement filed by the

18   defendants.

19       I think we had an issue relating to preservation of

20   documents in respect to defendant Gatti and IQSystem LLC.

21       And I think the rest was covered by Your Honor in the

22   other points that were already mentioned.

23       **THE COURT:** All right. Who's representing Ms. Gatti?

24       All right. Thanks.

25       Okay. Well, here are my impressions on those issues.

1    I'm happy to hear from the parties on them.

2        On the ADR timing, given that the parties aren't in

3 agreement, I do think it likely would make sense to set some

4 sort of a deadline not too long after the pleadings are

5 settled.  We've got motions to dismiss that are now pending.

6        I think I probably would make an ADR assignment with a

7 deadline sometime between 60 and 90 days from the resolution of

8 the pleadings.

9        Given the pendency of the motions, I don't see,

10 realistically, the point of doing that sooner.  If the parties

11 are not in agreement on that point, I can't force folks to be

12 interested in talking about settlement.

13    **MS. HEALY:**  Sure.  I don't know if the Court wants to

14 hear any background on those issues.  I'm happy to perhaps

15 provide a little bit of background.

16        My understanding was that ADR -- since this case was

17 designated for an ADR procedure, we were supposed to go forward

18 within 60 to 90 days from the beginning of the case.

19        The parties are in clear disagreement over everything.

20        So Your Honor is correct, that I don't think it's going

21 to make sense to have an ADR sooner rather than later.

22        Although on the motions to dismiss, there's no single

23 dispositive motion that would dispose of the entire case.  So

24 in that vein, the case would go forward no matter what happens

25 at the motion to dismiss stage.

1       So I don't think the motion to dismiss outcome would

2  necessarily impact the parties coming together or not on an ADR

3  procedure.

4      **THE COURT:**  Right.  Although to the extent it changes the

5  scope of the case, it may be --

6      **MS. HEALY:**  Sure.

7      **THE COURT:**  -- a prompt.

8      **MS. HEALY:**  Sure.

9      **THE COURT:**  Mr. Wallerstein, any thoughts?

10      **MR. WALLERSTEIN:**  Your Honor, I thought -- not really.  I

11  think 60 to 90 days after the pleadings are closed sounds

12  reasonable, with the only caveat -- that I told the ADR

13  administrator as well -- our clients are all in Italy; they're

14  Italian and in Italy speaking only Italian, mostly.  And

15  August, I understand, is largely an off month in Italy.

16      So when we think of 60 days past, perhaps, July, we'll

17  have an August blackout, to some extent.  But nonetheless, I

18  don't see why we wouldn't be able to make Your Honor's

19  deadline.

20      **THE COURT:**  Maybe they can come vacation in the US.

21      **MR. WALLERSTEIN:**  Perhaps.

22      **MS. HEALY:**  And, Your Honor, I would like to address --

23  but I don't know if now is the right time -- Mr. Wallerstein's

24  statement that his clients only speak Italian.  Because I think

25  there's been a misunderstanding here.

1    All of the witnesses in the case are fluent in English.

2    They've submitted sworn declarations in English to the Court.

3    So I don't know which people he's talking about, but

4    obviously not the ones that are at issue in this case.

5    THE COURT:  Yeah.

6    MS. HEALY:  It doesn't --

7    THE COURT:  Yeah, I don't know that it's -- I don't know

8    if it's dispositive of anything that I'll --

9    MS. HEALY:  Yeah.

10   THE COURT:  -- be doing today, but point taken.

11   So then with regard to the discussion about preservation

12   of ESI, or ESI protocol, I'm actually not sure why that can't

13   happen relatively quickly.

14   What's the -- what's the downside to having that

15   discussion?

16   MR. WALLERSTEIN:  Several, Your Honor.  Most importantly

17   are the dispositive motions from the -- the personal

18   jurisdiction motions from the two Italian Almawave entities.

19   And those are obviously dispositive motions -- yay or

20   nay -- whether they are in or out of the case.

21   That will necessarily influence the repositories that

22   need to be searched and perhaps the search terms as well.

23   The second part would be on the very claims.  There are

24   currently 14 causes of action -- that's, of course, before we

25   filed our cross-complaint -- there will be that many more,

1    or -- and some number more, I should say.

2        So until the pleadings are settled, what we're trying to

3    avoid doing is doing multiple rounds of collection in Europe

4    with data-privacy concerns; Italian language documents that are

5    almost exclusively in Italian.

6        So we're trying to do it in one fell swoop instead of in

7    tiny little pieces going back to different servers with

8    different search terms, depending on the scope of the parties

9    and the claims.

10        **THE COURT:**  All right.  Well, maybe I misunderstood the

11    issue.  Obviously, collection is one thing, and here that would

12    be complicated.  But the ESI discussion that's contemplated

13    under the local rules and Rule 26 is something different.  It's

14    just where are the repositories, what are they, how are systems

15    kept, those types of things.

16        Is there any reason that discussion can't happen now?

17        **MR. WALLERSTEIN:**  No, Your Honor.  Absolutely not.

18        **THE COURT:**  Were you contemplating something more than

19    that?

20        **MS. HEALY:**  No.

21        Your Honor, so my understanding -- and those are my

22    practice in other federal courts -- is that whenever there is a

23    Rule 26 meet and confer it is mandatory that the parties also

24    address ESI.  That's just part of the Rule 26 and something

25    that has to be addressed.

1    And in this particular court, you also have -- you make

2    available the ESI questionnaire.

3    So during the conference, all of the defendants refused

4    to address that, indicating it's premature.

5    I would say, Your Honor, in response to Mr. Wallerstein's

6    statement that his clients are in Italy, that's very common in

7    federal practice in litigation.  There's many foreign parties.

8    He has not moved for a stay of discovery; discovery is

9    now open.  Under Rule 26, after the Rule 26 meet and confer

10   conference, the parties can propound discovery.

11   So I think it's very important that we are able to, all

12   together, come to a fixed date, have an ESI conference,

13   understand what they have.

14   And, as Your Honor correctly pointed out, these are just

15   a matter of identifying the sources, the repository -- the

16   conference is not, per se, a request for any particular

17   document.

18   **THE COURT**:  Yeah, I mean, that seems right.  I mean,

19   understanding there may be efficiencies that would be served by

20   a stay -- if you want to move for a stay -- and I don't express

21   any point of view on that -- but it strikes me that the Rule 26

22   conference ought to happen within two weeks.  Or --

23   **MR. WALLERSTEIN**:  Your Honor, I agree.  I think it should

24   have happened.

25   I believe we attempted to discuss those issues.

1   Unsuccessfully.  But certainly we're not taking the position

2   that we can't talk about custodians.  That's not our position.

3       **THE COURT:**  All right.  Well, so didn't that conversation

4   happen this week?

5       **MR. WALLERSTEIN:**  Yes.

6       **THE COURT:**  All right.

7       **MS. HEALY:**  Right.  And I think, Your Honor, for clarity,

8   if you could have an order that states all the defendants

9   have -- and all the par- -- or parties including the plaintiffs

10  have to address the questionnaire that's used under the local

11  rules, if possible.  Because that's a nice guide.

12      Since the conversation has not been exactly amicable, I

13  think if we are able to use the ESI guide questionnaire that's

14  provided by the Court --

15      **THE COURT:**  Well, I won't go that far.  I would say that

16  you all should have the discussion that's required by Rule 26

17  and the local rules and if there's some problem doing that,

18  then come back.

19      But it strikes me this ought to be routine, so let's do

20  this this week.

21      **MS. HEALY:**  Okay, great.

22      **MR. WALLERSTEIN:**  If I may, Your Honor.  There's two

23  complications.  First is that, again, given the jurisdictional

24  challenges of two of the defendants, we have asked for

25  assurance from all counsel that they would not be waiving a

jurisdictional challenge by participating.  We've been unable
to reach that stipulation.

And so, for that reason, I did not announce myself as
representing them here today.  I've tried to, you know --
obviously I know what the situation is so I can speak on their
behalf, but I'm trying to preserve their jurisdictional
objections.

**THE COURT:**  Seems fair.

**MS. HEALY:**  And, Your Honor, I actually might speak to
that.  Because I just had a case in Florida federal court.
We're in this position, and the Court required us to
participate.

And there's case law what waives and what doesn't waive.
I don't have to give my -- my -- you're not waiving because he
may do things that --

I don't think it's a problem here, honestly.  Because I
think the motion is based -- his motion, in my view, is
frivolous.  There is -- they admit to the contact.  So there's
many contacts.  We're not going to -- and it's already briefed.
So it's before the Court.  We're not going to go and introduce
new stuff relating to new contacts.  But I don't have to give
an assurance of no waiver.  He --

**THE COURT:**  But well, why not?  I understand the law is
what it is, but why won't you at least say you won't argue that
his participation in the Rule 26 conference on behalf of these

1   defendants --

2        **MS. HEALY:**  I'm happy to say that, Your Honor.

3        **THE COURT:**  -- makes a waiver?

4        **MS. HEALY:**  If that's what the Court prefers, I'm happy

5   to say that.  That's no problem.

6        **THE COURT:**  Yes, that's what you -- I'm asking you to

7   say.

8        **MS. HEALY:**  Sure.  I -- the plaintiff will not take the

9   position that the participation in the Rule 26 conference will

10  waive anything.

11       **THE COURT:**  All right.  And then obviously

12  Mr. Wallerstein you'll have to do your due diligence and be

13  sure you protect your client, but it seems to me that there's a

14  way to work this out.

15       **MR. WALLERSTEIN:**  And it's much ado about nothing.  To

16  the -- whatever I say on behalf of the American entity, the

17  discovery will proceed in the same way.

18       **MS. HEALY:**  Your Honor, I find that -- I just want to

19  address one point on that.  Because he's using Almawave USA as

20  a way to take positions for his other clients, but not waiving

21  anything.

22       I mean, it seems to me this little trickery is not

23  warranted.  If he wants to preserve his client's position, he

24  should have moved for a stay of discovery.  He never did.

25       I'm not going to make his arguments, but I'm just saying

1    I'm not going to waive -- my waiver, I hope, would be confined

2    to just a Rule 26 ESI conference.

3         **THE COURT:**  Yeah, that's all this is about at this point.

4         **MS. HEALY:**  Okay.

5         **THE COURT:**  All right.  And yeah -- and obviously both

6    parties know -- I know it's a contentious case, we have a lot

7    of litigation in it already, but no one needs to kind of win

8    the case management conference today.

9         **MS. HEALY:**  Oh, no.

10        **THE COURT:**  So let's just try to get to a structure for

11   moving the case forward.

12        **MS. HEALY:**  Sure.

13        **THE COURT:**  All right?

14        **MR. WALLERSTEIN:**  Your Honor, if I may.

15        On the ESI, the checklist that counsel's referring to is

16   a Northern California -- Northern District checklist for

17   Rule 26(f) regarding ESI, and it includes things like

18   proportionality and costs with six subcategories, phasing with

19   six subcategories.

20        And those were the types of issues that I understand you

21   will separately address, but those are precisely the things

22   we've tried to address and are trying to address.

23        **MS. HEALY:**  That's actually not true.  They said they

24   weren't ready to --

25        **THE COURT:**  Okay.  So both sides --

1      **MS. HEALY:** No, no. Yes, sorry.

2      **THE COURT:** Ms. Healy, you're not helping the cause. All

3 right?

4      What is it -- what is it that you need to say?

5      I don't need to have motions practice here today; right?

6 We've just got some really straightforward structural issues to

7 discuss.

8      So what do you have to say?

9      **MS. HEALY:** I apologize, Your Honor. I think -- the

10 problem I have is that -- I will be very forthcoming with the

11 Court -- I would never take a position that's untrue. And I

12 find myself repeatedly attacked in situations where he's

13 representing facts that did not happen.

14      I took three months to try to advance the case and, you

15 know, sent emails, trying to have a conference, and now he's

16 saying to the Court that that's exactly what he tried to

17 address when, during the conference, they told me they weren't

18 going to discuss anything.

19      **THE COURT:** Right. And I reach no opinion as to what's

20 happened before, I'm not taking sides. What I am saying is

21 that I expect the parties on a going-forward basis to work

22 things like this out without having a dispute about it,

23 straightforward.

24      All right?

25      So it brings me to the next topic. Stay of discovery.

1    I understand that there's at least representation that

2    there's an automatic stay.  And from my point of view, if a

3    stay is sought, it needs to be moved for a just -- and, again,

4    I don't know if this is an issue that's ripe, but it's my

5    perspective that if any party is asserting that discovery is

6    stayed, they need to seek -- seek the Court's concurrence with

7    that.

8         MR. WALLERSTEIN:  Understood, Your Honor.  I don't think

9    we invoked a stay or thought otherwise.  We pointed out the

10   language of the rule and that's all we did.

11        THE COURT:  All right.  And so -- and then to that point

12   if there's an actual live discovery dispute, then I assume it

13   will be brought to me in the manner that's required under my

14   standing order.

15        MR. WALLERSTEIN:  Very good, Your Honor.

16        THE COURT:  All right.

17        Same question on the counterclaim.  The party seeking to

18   file a counterclaim needs to comply with the federal rules and

19   I'll address the issue if and when presented.

20        MR. WALLERSTEIN:  If I may, Your Honor.  The reason I

21   wanted to mention it today is just so that -- and we don't need

22   an advisory opinion; I don't need a ruling on anything that's

23   not before the Court.  But what is going to happen -- and I

24   just want the Court to be aware of it and I want counsel to be

25   aware of it -- is after July 2nd and the pleadings are closed

we will finally be able to assert our counterclaim. We can only do it by way of an answer in this matter. Then we're going to do that.

And what I don't want is to hear that, you know, we are intentionally sandbagging and causing delay.

I thought we might do it earlier, do it now, but, you know, obviously that's up to counsel. And if no one wants to stipulate to that, so be it.

But I just don't want to be accused of intentionally delaying, when we have a counterclaim that's ready to be filed. In our view, we can't file it, absent consent of the parties, until the pleadings are closed.

So absent consent of the parties or Your Honor's direction otherwise, we'll file it in due course sometime in July and that will have a -- you know, the effect it has on the calendar.

So we're trying to expedite things, to the extent possible, and we'll do it however makes sense for the parties and the Court.

**MS. HEALY:** Your Honor, may I be heard --

**THE COURT:** Yes.

**MS. HEALY:** -- briefly?

I think, first of all, there's a terminology issue. I understood Mr. Wallerstein to be talking about cross claims, not counter claims.

1        That's the first time I hear him about -- talking about

2    counter claims.

3        **THE COURT:**  Is it a cross claim or a counterclaim?

4        **MR. WALLERSTEIN:**  It is a cross-complaint, Your Honor.

5        **THE COURT:**  All right.  Cross-complaint.

6        **MS. HEALY:**  Okay.  So -- because that does make a

7    difference, obviously, if he's filing a counterclaim.

8        But -- we believe that Mr. Wallerstein has many options

9    under the rules, but none of which should be addressed here.

10        He had told me March 5th that on March 9th he would be

11    filing a cross-complaint against Gatti.  For whatever reason,

12    he has taken three months.

13        Mr. Wallerstein's been the spokesperson for the defense

14    team, just like he's doing here today.  So I also have -- and I

15    hesitate to raise this here, but I also have reason to believe

16    that there may be some collusion in respect to this delay as to

17    why -- you know, why he's seeking the Court's approval for a

18    cross-complaint.  Because they haven't filed a full motion to

19    dismiss.

20        So there's many claims that they haven't moved on that

21    they're still claims that would be live in the case, depending

22    on how the Court rules.

23        So Almawave USA only moved on four claims.  So this whole

24    reasoning that he has to wait for the answer is also inaccurate

25    because under the rules he's -- he can very well file an answer

1  any time he wants.  That's obviously his choice.  But he chose

2  to wait three months to file a cross-complaint.

3  We didn't even know what his cross-complaint is about,

4  who are the parties.

5  I know that on March 5th he told me he was going to sue

6  Ms. Gatti and IQSystem, the very parties he's representing here

7  now, and I -- I believe such a cross-complaint in this case

8  would really cause confusion of the issues and a lot of other

9  things.

10  There isn't reason to file a cross-complaint in this

11  action.  We would oppose that.

12  Obviously, if he filed a motion we would -- I mean, I

13  don't want to burden the Court with how we would oppose it now,

14  but --

15  **THE COURT:**  Right.  So again, there's no issue before me

16  right now.

17  **MS. HEALY:**  Right.

18  **THE COURT:**  So all of that -- so to the extent there's a

19  cross-complaint that's contemplated, I'm sure that everyone

20  will follow whatever rule applies and if there's an opposition

21  it will be filed and we'll address it.

22  All right.  So what is teed up is the schedule.  And

23  so -- and here I -- my inclination is somewhere between where

24  the parties are.

25  So Loop has proposed a very truncated schedule; the

1  Almawave defendants propose that we wait and have a case

2  management conference later.

3      I do think we should set a schedule in the case, and I'm

4  prepared to do that now.

5      First, the deadline for exchange of initial disclosures

6  looks like it's just past.  Were those disclosures made?

7      **MR. WALLERSTEIN:**  Again, Your Honor, not on behalf of the

8  Italian defendants who are contesting personal jurisdiction,

9  but other than that I -- oh, well, and we haven't received any

10  from anyone else either, but we made ours.  Meaning Almawave

11  USA made its.

12      **MS. HEALY:**  And, Your Honor, on that point, they haven't

13  sought the Court's permission not to comply with the deadlines

14  that were even agreed by the parties.  Mr. Wallerstein never

15  told us we would not be filing initial disclosures for the

16  Italian Almawave defendants.

17      So he's giving himself a lot of, you know, I guess,

18  exemptions from compliance without asking the Court's

19  permission.  I don't think that's permissible.

20      And frankly, we do need those initial disclosures to

21  ensure that our discovery's targeted.

22      **THE COURT:**  All right.  What day is the motions hearing

23  in this case?

24      **MR. WALLERSTEIN:**  July 2, Your Honor.

25      **THE COURT:**  And so relevant to the discussion we had

1    earlier, is it your position that somehow you would be

2    consenting to personal jurisdiction if you produced initial

3    disclosures on behalf of the Almawave entities?

4         MR. WALLERSTEIN:  Well, you know, lawyers, I would argue

5    that we were not.  But nonetheless, that was the concern,

6    Your Honor, yes.  That was the concern, is that an argument

7    would be raised that doing so would result in us waiving a

8    jurisdictional challenge.  So I've just been asking for

9    assurance that that would not be the case.

10        And it's -- substantively, I'm here on behalf of USA, but

11   I can say that the initial disclosures will not add anything.

12   It's not going to -- it's a technicality that we, you know, can

13   comply with.  But I just wanted assurance that we would not

14   lose our jurisdictional challenge on some silliness.

15        THE COURT:  Then same point.  Are you willing to refrain

16   from any argument that production of initial disclosures on

17   behalf of the Almawave Italian defendants constitutes --

18        MS. HEALY:  A waiver.

19        THE COURT:  -- acceding to jurisdiction?

20        MS. HEALY:  Yes, Your Honor.  That's fine.

21        Again, I would only say that Mr. Wallerstein has started

22   moving for -- on personal jurisdiction grounds in March.  So

23   instead of, himself, granting all this -- you know, exemptions,

24   he should have conferred with us, let us know, and then we

25   would have asked the Court right away.  Because now we've

wasted three months that we could have used for discovery.

And also, on the July 2nd hearing, Your Honor, I wanted to inform the Court that I was planning to file a motion -- a request for an evidentiary hearing.

I just wanted to mention that.

THE COURT:  All right.  I'll consider it when you file it.

MR. WALLERSTEIN:  Your Honor, are these proceedings being transcribed?

THE COURT:  They are.  They're being recorded.

All right.  So here's the --

MS. LOSAVIO:  Before you move off that.

Your Honor, Tom LoSalvio for Gatti and IQSystems LLC.

For the record, we did serve our Rule 26.  We served on counsel on Friday.

THE COURT:  All right.

MR. LOSAVIO:  By me.

THE COURT:  Thank you.

All right, so here's the schedule that I will impose. And I'm mindful of the Almawave defendant's proposal that it be staged in some way, and I took that into account.  But I'm of a mind that we just need to have a firm schedule to keep the case moving forward.

So -- and it's not as short a schedule as Loop is proposing.  I do take the point that -- setting aside whether

1   the Italian defendants speak English or not -- we were going to

2   have a huge number of foreign-language documents, there are

3   European privacy laws that are complicated that I remember from

4   my private practice, and so I think that does counsel for

5   building in somewhat more time.

6        Obviously, Loop has already moved for a temporary

7   restraining order and, to the extent you can meet the standard

8   for any other sort of preliminary relief, that's an option that

9   is available to you under the rules.  You can comply with the

10  rules.

11       But -- so here's the schedule:  So I would set the fact

12  discovery close for January 29th of 2016; designation of

13  opening experts, February 12th, 2016; designation of rebuttal

14  experts on February 26th, 2016; opening expert reports on

15  March 4th; close of expert discovery on March 18th; with the

16  dispositive motions filing deadline of March 31st.

17       **MS. HEALY:**  31st?

18       **THE COURT:**  31st.  With the dispositive motions hearing

19  date of May 5th, with a pretrial conference on June 28th, and a

20  trial date of July 11th.

21       All right.  Anything else we need to discuss today?

22       **MR. WALLERSTEIN:**  I understood you're --

23       (No sound - 3:00:39 through 3:00:42.)

24       **THE COURT:**  Probably hard to know how long the trial

25  would be, given how -- what stage we're at.

1          What's the party's trial estimate.

2          **MS. HEALY:**  I (indiscernible) 14 days, approximately.

3          **MR. WALLERSTEIN:**  It's tough to know right now, but I

4     would say 20.

5          **THE COURT:**  All right.  We'll set it for two court weeks.

6          **MR. WALLERSTEIN:**  Your Honor -- and I understand you've

7     ruled on the schedule.  As I understood plaintiff to be

8     requesting an expansion of the number of the depositions to 25

9     per side, which was part of what motivated our position on the

10    trial date, I don't know if that is a formal request that's

11    before Your Honor, but that certainly was something that was

12    motivating our view of the trial schedule.

13         **THE COURT:**  Right.  Yeah, I'm not viewing that as a

14    request that's being made right now.

15         Am I right?

16         **MS. HEALY:**  Because I was hoping to come to agreement

17    with the other side.  So I think normally the parties discuss

18    the number and try to make a proposal.

19         In our proposal order, we set a paragraph that the

20    parties can come to agreement and make a proposal to the Court

21    if we would like to extend the number of depositions.

22    Otherwise, we'll be happy to ask the Court after we exhaust the

23    number of the positions allowed by the rules.

24         **THE COURT:**  Well, what I would say is meet and confer.

25    If there's an agreement that can be reached, then reach it.  If

1   there's not, then it needs to be teed up for me and I'll decide

2   it.

3       **MS. HEALY:**  Thank you, Your Honor.

4       One other issue, if I may.  I know the Court has a rule

5   about one summary judgment per party, and I just wanted to --

6   we believe that a way of narrowing some of the issues down

7   would be to move for partial summary judgment against certain

8   claims pending against defendant Gatti.

9       So we would -- with the Court's permission -- we're happy

10  to file a request in writing, not just address it now with the

11  Court.

12      But we just wanted to see if that would be something that

13  the Court would consider, to let us file a partial motion for

14  summary judgment early on in the case.

15      **THE COURT:**  Well, you can -- what I suggest is that if

16  you have a request, that you tee it up in writing.

17      **MS. HEALY:**  Okay.

18      **THE COURT:**  My initial inclination is that it doesn't

19  strike me as likely to be productive, but I'm not pre-judging

20  it.  So if you get to the point where you're making that

21  request, again -- and I would say for anything -- meet and

22  confer with regard to potential scheduling and structure

23  issues, and if there's no agreement then you should present it

24  and I will consider the request and any response from the

25  defendants.

1    **MS. HEALY:**  Sure.

2    And I think the last issue was the preservation relating

3    to Gatti and IQSystem LLC.

4    During the Rule 26 staff conference, counsel who appeared

5    for Ms. Gatti and IQ LLC, Mr. Regan -- I think it's

6    Mr. LoSavio's colleague -- he said he could not represent --

7    make any representations regarding what had been preserved.

8    So since I know we -- we already had a motion that we

9    lost on that issue, I don't know if perhaps this is the right

10   time to address it as part of the Rule 26 conference or if we

11   should defer it.

12   **MR. LOSAVIO:**  Very briefly, Your Honor, that our position

13   with respect to Ms. Gatti and IO LLC's preservation is at

14   page 4, lines 6 to 8 of the CMC statement, which says we've

15   made reasonable efforts to preserve.

16   **THE COURT:**  Essentially they have the legal obligations

17   they have.  If something ends up being destroyed, that will be

18   a big problem for them.  But essentially it's their obligation

19   to comply with their preservation obligations, and they've made

20   a representation that they are.

21   **MS. HEALY:**  Okay.  Thank you, Your Honor.

22   **THE COURT:**  All right.  Anything else?

23   **MR. WALLERSTEIN:**  No, Your Honor.

24   **THE COURT:**  All right.  Thank you.

25   **MS. HEALY:**  Thank you.  (Proceedings adjourned 3:04 P.M.)

## CERTIFICATE OF CONTRACT TRANSCRIBER

I, Kelly Polvi, CSR, RMR, FCRR, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further, that I am not financially nor otherwise interested in the outcome of the action.

Dated June 12, 2015.

_____
Kelly Polvi, CSR #6389, RMR, FCRR
Contract Transcriber

*Kelly Polvi, CSR, RMR, FCRR*
*P.O. Box 1427*
*Alameda, CA 94501*
*(503) 779-7406; kpolvi@comcast.net*