VALERIA CALAFIORE HEALY (*pro hac vice*)
valeria.healy@healylex.com
HEALY LLC
154 Grand Street
New York, New York 10013
Telephone:     (212) 810-0377
Facsimile:     (212) 810-7036

DANIEL J. WEINBERG (SBN 227159)
dweinberg@fawlaw.com
FREITAS ANGELL & WEINBERG LLP
350 Marine Parkway, Suite 200
Redwood Shores, California 94065
Telephone:     (650) 593-6300
Facsimile:     (650) 593-6301

Attorneys for Plaintiff
LOOP AI LABS INC.

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LOOP AI LABS INC., | CASE NO.: 3:15-cv-00798-HSG-DMR |
| Plaintiff, | **NOTICE AND APPLICATION FOR AN ORDER TO SHOW CAUSE AS TO WHY A FED. R. CIV. P. 45(g) CIVIL CONTEMPT CITATION SHOULD NOT ISSUE AGAINST ORRICK, HERRINGTON & SUTCLIFFE LLP FOR ITS FAILURE TO OBEY A SUBPOENA *DUCES TECUM*** |
| v. | |
| ANNA GATTI, *et al*, | |
| Defendants. | |
| In RE: ORRICK HERRINGTON & SUTCLIFFE LLP, Nonparty Subpoena Recipient | Date/Time: To be determined by the Court<br>Action Filed: February 20, 2015<br>Trial Date: July 11, 2016<br><br>Hon. Haywood S. Gilliam, Jr.<br>Hon. Donna M. Ryu |

**NOTICE**

**TO:**   **ORRICK, HERRINGTON & SUTCLIFFE LLP[1]**
Attention: Larry B. Low, Chief Legal Officer
405 Howard Street
San Francisco, California

**PLEASE TAKE NOTICE THAT** based upon this Notice and the accompanying (1)

Application for An Order to Show Cause as to Why Orrick, Herrington & Sutcliffe LLP

("Orrick") Should Not Be Held in Contempt Under Fed. R. Civ. P. 45(g) for Failure to Obey A

Subpoena *Duces Tecum* ("Application"), (2) Subpoena and Certificate of Service attached to the

Declaration of V.C. Healy, Esq., dated July 7, 2015 ("VCH Decl.") as Exhibits A (Subpoena)

and B (Certificate of Service), (3) other supporting exhibits attached to the VCH Declaration,

and (4) all other relevant pleadings and filings made in this matter, including, but not limited to

Dkt. Nos. 1, 10-31 at 2, 10-36, 25-1 at 18-20, 28-13, 28-19, 29-1, 45 at *passim*, 49-1, 51 at ¶ 46,

84 at 16-17, 89-1 at PJX-vi, x-xi, xxiv, PJX-78, 89-2 at 2-7, 89-4 at PJX-235, 89-5 at PJX-300,

365, 89-8 at *passim*, and such other and further evidence as may be presented to the Court before

or during a hearing on the contempt proceeding,

Plaintiff Loop AI Labs Inc. ("Loop AI") hereby respectfully applies for issuance of an

Order to Show Cause directing Orrick to appear before the United States District Court for the

District of Northern District of California, located at 450 Golden Gate Avenue, Courtroom 15,

San Francisco, California, at a time and date to be determined by the Court, and show cause why

a contempt citation against Orrick pursuant to Federal Rule of Civil Procedure 45(g) should not

issue for its failure to obey (or even respond to) a Subpoena *Duces Tecum* issued pursuant to

Fed. R. Civ. P. 45 and duly served on Orrick on June 1, 2015 (the "Subpoena").  *See* Exs. A-B.

---

[1] A certificate of service of this Application on nonparty Orrick Herrington & Sutcliffe LLP will
be filed promptly upon completion of service.

**PLEASE TAKE FURTHER NOTICE THAT** the Court has issued an Order of Reference directing that discovery matters between the parties be brought before the Honorable Donna M. Ryu, and that to the extent the Court issues a similar order of reference to determine and certify the facts underlying this Application for a contempt citation against nonparty Orrick,[2] Orrick is hereby notified that appearance before the United States District Court for the Northern District of California, shall be at the Court's location at 1301 Clay Street, Courtroom 4, Oakland, California, at a time and date to be determined by the Court.

**PLEASE TAKE FURTHER NOTICE THAT** the Court may in its discretion dispense with a hearing on this contempt Application if the Court finds that "the alleged contemnor does not raise a question of fact through affidavits, and does not seek the opportunity to present its defense through live testimony." *Kismet Acquisition, LLC v. Diaz-Barba (In re Icenhower),* 755 F.3d 1130, 1138-1130 (9th Cir. 2014).

Respectfully submitted,

July 07, 2015

By:   /s/ *Valeria Calafiore Healy*
Valeria Calafiore Healy, Esq. (*phv*)
HEALY LLC

Daniel J. Weinberg, Esq. (SBN 227159)
FREITAS ANGELL & WEINBERG LLP

Attorneys for Plaintiff
LOOP AI LABS, INC.

---

[2] Although there are limitations to the referral of an entire contempt proceeding, a district court has discretion to refer fact finding aspects of a contempt proceeding to a Magistrate Judge, which findings are certified to the Court for a final determination of the contempt application. *See, e.g.,* 28 U.S.C. § 636(e). *Bingman v. Ward*, 100 F.3d 653, 657-58 (9th Cir. 1996) (interpreting Section 636(e)); *Proctor v. State Gov't of North Carolina*, 830 F.2d 514 (4th Cir. 1987) (discussing authorities holding that aspects of contempt proceedings can be held in front of Magistrate Judge and describing procedure to be followed by district courts following receipt of Section 636(e) certification of facts constituting contempt.).

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

APPLICATION FOR AN ORDER TO SHOW CAUSE ................................................................. 1

RELEVANT BACKGROUND RELATING TO ORRICK'S ROLE IN THE CASE ................... 2

FACTS RELEVANT TO CONTEMPT PROCEEDING ................................................................ 7

ARGUMENT .................................................................................................................................. 10

   I.     RELEVANT STANDARDS ....................................................................................... 10

            A.  Contempt Standards for Failure to Obey a Subpoena........................................... 10

   II.    ORRICK IGNORED THE SUBPOENA WITHOUT ADEQUATE EXCUSE ............. 11

       A.  Orrick Was Validly Served ................................................................................... 12

       B.  Orrick Failed to Obey or Even Respond to the Subpoena ..................................... 10

       C.  Orrick Did Not Have an "Adequate Excuse" to Ignore the Subpoena ................. 14

CONCLUSION.............................................................................................................................. 15

# TABLE OF AUTHORITIES

## CASES

Page

*Aguilar v. County of Fresno*,
  No. 08-1202, 2010 U.S. Dist. LEXIS 27136, 2010 WL 1173014 (E.D. Cal. Mar. 23,
  2010) .......................................................................................................................11

*Chevron Corp. v. Pennzoil Co.*,
  974 F.2d 1156 (9th Cir. 1992) .............................................................................6

*Ott v. City of Milwaukee*,
  682 F.3d 552 (7th Cir. 2012) .............................................................................13

*Sec. Life Ins. Co. of Am. v. Duncanson & Holt*,
  11 Fed. Appx. 926(9th Cir. 2001) .....................................................................15

*Stone v. City & County of San Francisco*,
  968 F.2d 850, 856 (9th Cir. 1992) .....................................................................12

*Troas v. Barnett*,
  782 F.3d 417, 422 (9th Cir. 2015) .....................................................................11

*U.S. v. Ayres*,
  186 F.3d 991 (9th Cir. 1999) .........................................................................14, 15

*United States v. Bilzerian*,
  926 F.2d 1285 (2d Cir. 1991) ..............................................................................6

*U.S. v. Bryan*,
  339 U.S. 323 (1950) ...........................................................................................14

*United States v. Rylander*,
  460 U.S. 752 (1983) ...........................................................................................10

## RULES

Fed. R. Civ. P. 45 ...........................................................................................*passim*

# APPLICATION FOR AN ORDER TO SHOW CAUSE[3]

Pursuant to Rule 45(g) of the Federal Rules of Civil Procedure,[4] Plaintiff Loop AI Labs

Inc. ("Loop AI") respectfully submits this Application for an Order to Show Cause as to why

nonparty Orrick, Herrington & Sutcliffe LLP ("Orrick") should not be held in contempt for its

failure to obey a subpoena *duces tecum*.  The subpoena was duly served on Orrick by in hand

delivery to its principal office in San Francisco, on June 1, 2015 at 5:20pm, for the attention of

its Chief Legal Officer, Larry B. Low (the "Subpoena").  *See* VCH Decl., Exhibits A-B.  The

Subpoena commanded Orrick to produce documents relevant to this action, or permit inspection

of the requested documents by June 15, 2015 at 5:00pm (the "Response Date").  *See* Exhibit A.

Despite being duly served in accordance with Rule 45(b), governing service of subpoenas, and

despite having acknowledged receipt of the Subpoena, Orrick ignored the Subpoena in its

entirety — *i.e.*, it did not serve any written objections, or production, nor did it file a motion to

quash.  To date, more than one month after service of the Subpoena, and more than 20 days after

a response to the Subpoena was required to be served, the Subpoena remains entirely

unanswered.

Although Loop AI is mindful that courts are reluctant to issue contempt citations,

particularly against members of the Bar or a law firm, such as Orrick here, in light of Orrick's

---

[3] Loop AI respectfully moves by Order to Show Cause in accordance with the applicable contempt procedures in this Circuit.  *See, e.g., Hawecker v. Sorenson*, No. 10-00085, 2013 WL 3805146, 2013 U.S. Dist. LEXIS 102264, at *8 (E.D. Cal. July 22, 2013) ("[P]roceedings for civil contempt are instituted by the issuance of an Order to Show Cause … why a contempt citation should not issue and a notice of a date for the hearing."); *Rodriguez v. County of Stanislaus*, No. 08-00856, 2010 WL 3733843, 2010 U.S. Dist. LEXIS 104319 (E.D. Cal. Sept. 16, 2010) (requiring application for Order to Show Cause to proceed for Rule 45 contempt against nonparty).

[4] Further references to "Rule" or "Rules," as used herein, are to the Federal Rules of Civil Procedure.

---

continuing defiance of the Subpoena, Loop AI regretfully is left to bring this Application for an Order to Show Cause.  By this Application, Loop AI seeks a finding that Orrick is in contempt of the Subpoena for its failure to comply or even respond to any aspect of it, and is required to promptly produce all documents responsive to the requests contained in the Subpoena.  In addition, Loop AI respectfully seek the imposition on Orrick of any other remedial measure the Court may deem just and proper to remedy Orrick's contempt, including the imposition of a remedial fine payable to Loop AI for having forced it to expend resources to make this Application.

**RELEVANT BACKGROUND RELATING
TO ORRICK'S ROLE IN THE CASE**

Although not relevant to a finding of contempt, some background regarding Orrick's involvement in the facts giving rise to this action is provided here to place the Orrick subpoena in context.[5]

Orrick describes itself as "a leading law firm" "[f]ounded in San Francisco a century and a half ago," "named … as one of the 'Global 20' leading firms," and "known" for its "work in the technology sector," including its representation of "start-ups."[6]  Loop AI retained Orrick to serve as its primary counsel pursuant to a written Engagement Letter and Standard Terms of Engagement agreement executed by Loop AI and Orrick on April 19, 2012 (the "Engagement

---

[5] Because the foregoing facts are provided solely for context and are not necessary to establish Orrick's contempt of the Subpoena, Loop AI does not here submit all of the evidentiary materials supporting the facts set forth in this Background section.  Loop AI, however, stands ready to furnish the evidentiary support relating to any aspect of this Background section should the Court so request.

[6] *See* https://www.orrick.com/About/Pages/default.aspx, https://www.orrick.com/Offices/San-Francisco/Pages/default.aspx,  (last accessed July 5, 2015).

Agreement"), shortly after Loop AI was incorporated.[7]  Loop AI's relationship partner and primary counselor at Orrick was John Bautista, a senior partner based in Orrick's San Francisco and Silicon Valley offices.[8]  Mr. Bautista also serves as Orrick's Head of the Technology Companies Group,[9] which handles emerging companies and start-ups.[10]  From April 2012 until Orrick's sudden withdrawal from Loop AI's representation on March 11, 2015,[11] Orrick represented Loop AI as its primary counsel in connection with virtually all aspects of Loop AI's business, including employment matters (such as Defendant Gatti's employment with Loop AI). In light of its reputation, experience, and its commitment to Loop AI pursuant to the Engagement Agreement, Loop AI had no reason to doubt that Orrick would act as anything other than a trusted advisor at all times during its representation.  Moreover, during the course of its representation, Orrick was required to immediately disclose to Loop AI material information directly relating to its representation of Loop AI, and to refrain from secretly acting for another client adversely to, and against the interests of, Loop AI.

Loop AI was shocked to discover on March 11, 2015, that Orrick had also undertaken to represent Defendant Almawave S.r.l. (and one or more of the other defendants) in connection

---

[7] The day before executing Orrick's Engagement Agreement, Loop AI had an in-person meeting with Orrick's partner John Bautista at its principal office located in San Francisco, at 405 Howard Street, where Orrick continues to be located today.

[8] Throughout the representation, various other Orrick attorneys and staff also assisted in the representation of Loop AI.

[9] At the time of the Engagement Agreement, Mr. Bautista's practice group was also referred to as the "Emerging Companies Group."

[10] Orrick's Technology Companies Group is described as a "startup-focused, full-service practice provides advice on tactical approaches to companies, from incubation to their strategic exit and future growth opportunities.  Our lawyers, who work intimately with founders in technology, are experts in the technology space.  They bring forth their resources, including deep-rooted relationships with venture capitalists and angel investors, as well as critical insight into this rapidly evolving and increasingly competitive marketplace."
https://www.orrick.com/Practices/Emerging-Companies/Pages/default.aspx (last accessed July 5, 2015).

[11] *See* Dkt. No. 29-1.

with the matters at issue in this action, including the same matters over which Orrick had advised Loop AI (such as for instance Ms. Gatti's employment with Loop AI).  Discovery now shows that Orrick, beginning as early as April 2014, was induced by Almaviva and the other defendants to assist them in their negotiation and hiring of the other Defendants in this action, including Gatti, whom Orrick knew could not concurrently work for Almawave S.r.l. while she was working as the Chief Executive Officer of Loop AI.  *See, e.g.,* Dkt. Nos. 45 at 20:3-5; ¶ 151, 167, 168, 187, 219, 304, 308, 312.  Despite this knowledge, Orrick agreed to draft Gatti's employment agreement for the Almaviva Defendants, implementing a relationship that was directly in violation of numerous obligations owed by Gatti to Loop AI, including those contained in Gatti's employment agreement with Loop AI (also drafted by Orrick).  *See, e.g.,* Dkt. Nos. 25-1, Exs. A-B; Dkt. No. 45 at ¶¶ 79-86, Dkt. No. 10-15.

Even after Gatti was terminated on February 3, 2015 — but before Loop AI had discovered the wrongdoing alleged in the Complaint — Orrick continued to advise Loop AI in respect of Gatti's employment, all the while continuing to conceal from Loop AI its conflicted representation of the Almaviva Defendants and the assistance it had provided them in retaining Gatti to secretly work for Almaviva for more than one year, while she continued to remain employed by Loop AI.  *See, e.g.,* Dkt. Nos. 45 at 20:3-5; ¶ 151, 167, 168, 187, 219, 304, 308, 312; Dkt. No. 29-1.  Discovery also shows that Orrick assisted the Italian Almaviva Defendants in connection with implementing various aspects of the scheme at issue in this action, including by drafting one or more agreements with the IQSystem Defendants that concealed the nature and reasons for the $70,000 a month payment that Almawave S.r.l. was making to the IQSystem Defendants, and by assisting Almaviva s.r.l. in filing a patent application covering various aspects of the same technology of Loop AI.  *See, e.g.,* Dkt. No. 45 at 20:11-19, ¶ 129, 130, 152, 159, 197.  For instance, Orrick claimed in the application it filed on behalf of Almawave S.r.l.,

that Valeria Sandei, while she was working with Ms. Gatti, was the primary inventor of the artificial intelligence technology disclosed in the patent application, even though Ms. Sandei has no technical background, let alone background in artificial intelligence technology, and has never previously filed any patent applications.  *See, e.g.,* Dkt. Nos. 20:11-19, Dkt. No. 50 at ¶¶ 51-68, Dkt. No. 45 at ¶¶ 62, 130.  Through March 10, 2015,[12] Orrick continued to pretend to be Loop AI's trusted advisor, including by seeking to obtain information regarding Loop AI's "litigation strategy," all the while failing to disclose to Loop AI that it was also representing the very same parties that Loop AI was suing.

Instead of voluntarily coming forward with the truth, as it had a duty to do, Orrick tried to cover up its past and continuing involvement with the Almaviva Defendants.  Within a week after this action was filed, and shortly after Loop AI had requested certain information relating to the action, Orrick suddenly tried to drop Loop AI like a hot potato, by informing it that it could not do any more work for Loop AI because it needed a new "retainer" from it.  This sudden request for a retainer was simply an excuse.  Over the course of its uninterrupted 3-year representation of Loop AI, Orrick never asked or even mentioned to Loop AI the need for a supplemental retainer.  Since the time that Orrick finally informed Loop AI, on March 11, 2015 of its conflicted representation, Orrick continued to obstruct and ignore Loop AI's request that Orrick voluntary cooperate with it and provide it, at a minimum, the information that Loop AI had a right to obtain as its client, even without a subpoena.

As more fully set forth below, Orrick is now employing the same tactics to obstruct and delay its obligation to comply with a lawfully issued and served Subpoena, which Orrick was not permitted to simply ignore.  The Subpoena served on Orrick was narrowly tailored to obtain

---

[12] *See, e.g.,* Dkt. No. 29-1.

APPLICATION RE: OSC FOR
                                                                    CONTEMPT OF SUBPOENA

1   discovery of material information relevant to Loop AI's claims and to the defenses advanced by

2   the Almaviva Defendants in this action.  Orrick had a critical role in some of the facts at issue in

3   this case and its role and breaches to Loop AI are directly at issue in parts of the claims brought

4   by Loop AI in this action.  *See, e.g.,* Dtk. 45 at Count X.  The Almaviva Defendants have

5   repeatedly waived any privilege they may have had with Orrick in respect of matters at issue in

6   this action, by injecting in the proceeding purported defenses that they had "no reason to think,"

7   and "no knowledge of" Anna Gatti having "any conflicts to any extent, ***legal or practical***, to

8   becoming involved with Almawave USA."  Dkt. No. 25-1 at ¶ 9 (emphasis added).  *See also,*

9   *e.g.,* Dkt. No. 25 at 2:1-5, 4:27-28, 5:2-6, 7:25-8:1-2, Dkt. No. 60 at 8:17-21 ("Almawave USA

10  ***reasonably believed*** that Ms. Gatti was not in breach of any contracts." (emphasis added)); Dkt.

11  62 at 3 ("Raniero Romagnoli, Luca Ferri and Valeria Sandei knew about Loop only what Ms.

12  Gatti had mentioned to them in passing (namely , that … her involvement with the start-up posed

13  no legal or practical impediment to her working for Almawave USA").[13]  The Almaviva

14  Defendants even seek to rely on the employment contract drafted for them by Orrick to advance

15  their purported defense that they could not have known of any legal or practical conflict because

16  "Ms. Gatti represented exactly the contrary in the agreements she signed with Almawave USA."

---

[13] Although not necessary to a finding of contempt against Orrick, it is well established that these type of statements are sufficient to implicitly waive privilege, because they place into issue what the Almaviva Defendants actually knew or whether their alleged belief that there were no "legal or practical" implications was in fact "reasonable" as they contend.  *See, e.g., Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) ("The privilege which protects attorney-client communications may not be used both as a sword and a shield.  Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived.") (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("this waiver principle is applicable here for Bilzerian's testimony that he thought his actions were legal would have put his knowledge of the law and the basis for his understanding of what the law required in issue.  His conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent.")).

Dkt. No. 25-1-5.  Loop AI has a right to obtain discovery to show that this purported defense is meritless.

For the foregoing reasons, discovery from Orrick is of critical importance in this case and Loop AI has a right to promptly obtain the requested documents from Orrick.

### FACTS RELEVANT TO CONTEMPT PROCEEDING

In March 2015, Orrick's Chief Legal Officer, Larry B. Low, took charge of communicating with Loop AI on behalf of Orrick.  *See* Dkt. No. 29-1.  A few days before serving the Subpoena, Loop AI's counsel contacted Mr. Low to determine if Mr. Low would accept service of a Subpoena directed to Orrick by email delivery.  *See* VCH Decl. at ¶ 7.  In response to this request, Mr. Low never indicated that he was not authorized to accept service of a subpoena directed to Orrick, or that Orrick had designated any specific individuals within its office — other than himself — to accept service of subpoenas.  Instead, Mr. Low simply stated he would consider accepting email service but wanted to first review the Subpoena.  *See id.* at Ex. D.  Having failed to receive Orrick's consent to service by email, Loop AI proceeded to serve Orrick in accordance with Rule 45(b).  Specifically, on June 1, 2015 at 5:20pm, a person over the age of 18 and not a party to the action, served Orrick with the Subpoena by delivering the Subpoena in hand to Orrick at its office located at 405 Howard Street (also known as the Orrick Building), San Francisco, for the attention of its Chief Legal Officer, Larry Low, who resides in that office.[14]  *See* VCH Decl., Exs. A and B.  This service fully complied with the express letter of Rule 45(b), which sets forth in detail the manner for serving a subpoena, and is

---

[14] Orrick holds Mr. Low out as the individual "responsible for … the firm's legal affairs, including advising on and overseeing matters relating to … litigation…."  A true and correct copy of Orrick's website setting forth Mr. Low's responsibilities is attached as Exhibit C to the VCH Declaration, and can also be found at https://www.orrick.com/lawyers/larry-low/Pages/default.aspx (last accessed June 29, 2015).

different than the service provisions contained, for instance, in Rule 4 for service of a summons and complaint.  A response to the Subpoena was required by June 15, 2015 at 5:00pm.  *See id.* at Ex. A.

Despite acknowledging receipt of the Subpoena, Orrick ignored it in its entirety.  As of today's date, Orrick has failed to respond to any aspect of the Subpoena, by way of objections, motion or production.  The excuses that Orrick has advanced for ignoring the Subpoena are neither reasonable nor legally "adequate" within the meaning of Rule 45(g).

*First*, Orrick claims that service of the Subpoena by in hand delivery to Orrick, at its principal office in San Francisco, for the attention of Mr. Low, was not legally sufficient to trigger Orrick's duty to respond, because Mr. Low is not authorized by Orrick to accept subpoenas.  *See* VCH Decl. at ¶¶ 9-15.  Orrick claims that only two people are authorized internally by Orrick to accept subpoenas: its **Deputy Chief** Legal Officer (Ms. Ikeda) — instead of its **Chief** Legal Officer (i.e., Larry Low) — and one of its litigation partners, William Alderman.  A review of Mr. Alderman's biography on Orrick's website nowhere discloses that Mr. Alderman is the sole, or even one of, two individuals at Orrick who can accept a subpoena for Orrick.[15]  Similarly, Ms. Ikeda, the Deputy Chief Legal Officer, who presumably works for Mr. Low, is nowhere listed as being the person authorized to accept a subpoena in lieu of her superior, Mr. Low.[16]

Orrick's purported designation of these two individuals as the sole individuals who could receive a subpoena directed to Orrick was never previously mentioned by Orrick to Loop AI, nor is it disclosed by Orrick in any formal public record.  *See* VCH Decl. at ¶¶ 14-16.  Loop AI

[15] *See* *https://www.orrick.com/lawyers/william-alderman/Pages/default.aspx* (last accessed June 29, 2015).
[16] *See* https://www.orrick.com/lawyers/katherine-k-ikeda/Pages/default.aspx (last accessed June 29, 2015).

asked Orrick to provide documentation showing that these individuals had been designated as the sole Orrick representatives for purposes of service of subpoenas, but Orrick failed to provide any such record.[17]  *See* VCH Decl. at ¶ 13, and Ex. G at 3.  How Orrick choses to run its internal operations does not make Loop AI's service of the Subpoena pursuant to Rule 45(b) ineffective. Loop AI was not required to serve Orrick by delivering in hand a copy of the Subpoena for the attention of each partner in Orrick's San Francisco office, in the hopes that at least one of them might be the one internally designated by Orrick as the partner with capacity to accept a subpoena.  If Mr. Low was not authorized to accept service of the Subpoena issued to Orrick, he had three months to advise Loop AI of this fact.  Moreover, there is reason to question the excuse proffered by Orrick to avoid responding to the Subpoena, as its story about who is designated within Orrick to accept a subpoena kept changing over the course of just a few days.  *See* VCH Decl. at ¶ 13 and Ex. G at 2-3.

Other facts also put into question Orrick's conduct here.  For instance, the Almaviva Defendants represented to this Court that they began discussing the Subpoena with Orrick on June 3, 2015 — one day after the Subpoena was served.  *See* Dkt. No. 112 at 2.  Despite that, Orrick did not contact Loop AI's counsel about the Subpoena until **after hours on Friday, June 12, 2015** — 1 business day before the response to the Subpoena was due.  *See* VCH Decl. at ¶¶ 9-15.  When Orrick finally did contact counsel, despite acknowledging that it had received the

---

[17] The only public record of any Orrick's **internal** representative at its principal office in San Francisco, at 405 Howard Street, authorized to receive service of original process is a record published by the New York Department of State which incorrectly identifies a former General Counsel of Orrick, Ms. Lisa Brewer, as the person who currently can accept service for Orrick. Ms. Brewer, however, has not been affiliated with Orrick since 2010 and even though Orrick failed to correct its filing with the NY Department of State, she confirmed that she has no further affiliation with Orrick, is not located at 405 Howard Street, and would not currently be able to accept anything directed to Orrick, even if one where to find where she is currently located.  The California Secretary of State ("CSS") does not maintain a public record on its website for Limited Liability Partnerships such as Orrick, and Loop AI was unable to locate

Subpoena, it did not ask for more time to respond, but simply took the categorical position that it would not respond because it viewed service as not legally effective.  *See* VCH Decl. at ¶¶ 9-15. Orrick's alternative excuse for ignoring the Subpoena — that it was directed by the Almaviva Defendants to not respond — also is not justifiable.  Neither during the meet and confer held with Orrick on June 12 nor thereafter could Orrick even identify which of the Almaviva Defendants was actually its client, or the basis for any of the Almaviva Defendants' authority to direct Orrick to ignore and fail to respond to each request in the Subpoena.  *See id.* at Ex. E and G.  In addition, Rule 45 sets forth a very detailed procedure for how the person to whom the subpoena is directed is required to respond and state objections, such as for instance objections based on privilege.  *See* Fed. R. Civ. P. 45(d)(2)(B).  Orrick is an experienced law firm and is well aware of these requirements.  If Orrick wanted to object to the Subpoena, it was required to do it in accordance with Rule 45.  Nothing in Rule 45 permits Orrick to self-determine that it does not like a particular subpoena and simply ignore it, and force Loop AI to expend time and resources to obtain its compliance.

As the Supreme Court has long ago held a "subpoena has never been treated as an invitation to a game of hare and hounds, in which the witness must [comply] only if cornered at the end of the chase."  *United States v. Rylander*, 460 U.S. 752, 762 (1983).  "If that were the case, then, indeed, the great power of testimonial compulsion, so necessary to the effective functioning of courts and legislatures, would be a nullity."  *Id.*  Respectfully, Orrick has made a mockery of the subpoena process and its conduct should not be tolerated by this Court.

**ARGUMENT**

I.      **RELEVANT STANDARDS**

        A.  **Contempt Standards for Failure to Obey a Subpoena**

10

Rule 45 authorizes the use of a subpoena to command a nonparty to produce documents or to permit inspection and copying of the documents requested in a subpoena.  Fed. R. Civ. P. 45(a)(1)(D).  Rule 45 provides three detailed options for timely responding to a subpoena without risking contempt: serving the documents requested, serving objections to the documents requested in accordance with Rule, or filing a motion to quash.  *See id.* at 45(a)-(d).  As the Ninth Circuit recently held "there is no opt-out box on a subpoena."  *Troas v. Barnett*, 782 F.3d 417, 422 (9th Cir. 2015).  Thus, a person commanded to respond to a subpoena is not at liberty to simply ignore the subpoena.

"Although the subpoena is in a sense the command of the attorney who completes the form, defiance of a subpoena is nevertheless an act in defiance of a court order and exposes the defiant witness to contempt sanctions."  Fed. R. Civ. P. 45 Advisory Committee Note, 1991 Amendment.  *See also, e.g., Aguilar v. County of Fresno*, No. 08-1202, 2010 U.S. Dist. LEXIS 27136, at *5, 2010 WL 1173014 (E.D. Cal. Mar. 23, 2010) ("Even though subpoenas are issued by attorneys, they are issued on behalf of the Court and should be treated as orders of the Court.").  Because a subpoena is treated as an order of the Court, Rule 45 grants the court power to hold in contempt a person who fails to obey the subpoena:

> (g) Contempt. The court for the district where compliance is required … may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

Fed. R. Civ. P. 45(g).[18]  This provision was amended in 2013 "to clarify that contempt sanctions may be applied to a person who disobeys a subpoena-related order, ***as well as one who fails entirely to obey a subpoena.***"  Fed. R. Civ. P. 45 Advisory Committee Note (2013) (emphasis

---

[18] "Subdivision (g) carries forward the authority of former subdivision (e) to punish disobedience of subpoenas as contempt."  Fed. R. Civ. P. 45 Advisory Committee Note (2013).  In years prior subdivision (g) was included in section 45(f).

added).  Moreover, "[i]ntent is irrelevant to a finding of civil contempt and, therefore, good faith is not a defense."  *See, e.g., Stone v. City & County of San Francisco*, 968 F.2d 850, 856 (9th Cir. 1992).

## II.      Orrick Ignored the Subpoena Without Adequate Excuse.

### A.  Orrick Was Validly Served.

Orrick does not dispute that it received the Subpoena.  Rather, as discussed above, Orrick contends that service of the Subpoena was ineffective, because the Subpoena was delivered in hand to Orrick at its office at 405 Howard Street, *for the attention of Mr. Low*, its Chief Legal Officer — an individual purportedly not authorized to accept subpoenas for Orrick.

Rule 45 expressly addresses how service of a subpoena is to be made.  It provides: "[a]ny person who is at least 18 years old and not a party may serve a subpoena.  Serving a subpoena requires delivering a copy to the named person…."  Fed. R. Civ. P. 45(b)(1).  In this case, as set forth in the certification of service of the Subpoena, a person over the age of 18 and not a party to this case, delivered a copy of the Subpoena in hand to the named person, Orrick, at its principal office located at 405 Howard Street in San Francisco, for the attention of Orrick's Chief Legal Officer, Larry Low.  *See* VCH Decl., Exs. A-B.  This service complied with the express letter of Rule 45 and was reasonably tailored to ensure that Orrick actually received the subpoena and could respond to it in accordance with Rule 45.  Indeed, as Orrick acknowledges, the Subpoena was successfully received.  As the Chief Legal Officer in charge of Orrick's legal affairs, Mr. Low was likely the highest ranking officer at Orrick capable of promptly addressing the Subpoena.  Despite Orrick's contention that it had internally designated individuals other than Mr. Low to accept subpoenas, there is nothing in Rule 45 or in the case law interpreting the service provisions of Rule 45 that would have required Loop AI to do anything more than what it did here to duly serve the Subpoena on Orrick.  Orrick's purported internal designations of Mr.

Alderman and/or Ms. Ikeda as the only individuals who could accept the Subpoena, therefore, cannot possibly make Loop AI's service of the Subpoena ineffective.

Moreover, even if Mr. Low was not authorized to accept subpoenas directed to Orrick, there is no dispute here that Mr. Low received the Subpoena and delivered it to Mr. Alderman, as Mr. Alderman himself informed Loop AI. *See* VCH Decl. at Exs. E, G. Rule 45(b)(1) does not require that the person delivering the subpoena be "a specially designated agent." *Ott v. City of Milwaukee*, 682 F.3d 552, 557 (7th Cir. 2012) (finding that even "an agent of the postal service surely qualifies as a 'person at least 18 years of age and not a party'"). The rule simply requires that the person delivering the subpoena be over a certain age and not a party. *Id.* Because Mr. Low qualifies under Rule 45(b)(1) as someone who was qualified to deliver the Subpoena, his delivery of the Subpoena to Mr. Alderman, the individual that Orrick claims was the sole person authorized to receive it, is sufficient under Rule 45(b)(1).

### B.  Orrick Failed to Obey or Even Respond to the Subpoena.

The Subpoena commanded Orrick to produce documents by June 15, 2015 at 5:00pm. *See* VCH Decl., Ex. A. Rule 45 permits a person who is commanded to produce documents through a subpoena to respond to the Subpoena by way "serv[ing] on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises--or to producing electronically stored information in the form or forms requested." *Id.* at 45(d)(2)(B). "The objection ***must be served before the earlier of*** the time specified for compliance or 14 days after the subpoena is served." *Id.* (emphasis added).

There is no dispute here that Orrick failed to comply with any aspect of the Subpoena by either serving any of the requested documents or serving objections to any of the requests contained in the Subpoena. *See* VCH Decl. at ¶¶ 17-18. Orrick also failed to move to quash the

Subpoena.  Accordingly, Orrick's conduct is plainly in violation of Rule 45.  Orrick did not have

power to independently excuse itself from compliance with the Subpoena and with the Rule 45

requirements for responding to a subpoena.  *See, e.g., Security Life Ins. Co. of Am. v. Duncanson*

*& Holt, Inc.*, 11 Fed. Appx. 926, 927 (9th Cir. May 23, 2001) (affirming contempt citation for

failure to respond to a subpoena *ad testificandum* issued to corporation).  "To hold otherwise

would make 'the great power of testimonial compulsion, so necessary to the effective

functioning of courts and legislature,' a nullity."  *Id.* at 422-23 (quoting *U.S. v. Bryan*, 339 U.S.

323, 331 (1950)).

### C.  Orrick Did Not Have an "Adequate Excuse" to Ignore the Subpoena.

The two excuses that Orrick has thus far advanced for ignoring the Subpoena are neither

adequate nor reasonable.  As already discussed above, Orrick's secret designation of Mr.

Alderman or Ms. Ikeda as the only individuals who could accept service of a subpoena for

Orrick did not render Loop AI's service ineffective under Rule 45(b)(1) and did not excuse

Orrick from responding to the Subpoena.[19]  Similarly, Orrick's second excuse —that the

Almaviva Defendants directed it not to respond— does not justify its disobeyance of the

Subpoena or of the Rule 45 requirements for responding to a subpoena by way of objections.

Even if there was any basis in fact for the Almaviva Defendants to direct Orrick to assert

privilege over each request in the Subpoena — there was not — Orrick was required to serve its

objections substantiating the basis for any assertion of privilege in accordance with Rule 45.

Rule 45 does not permit a person commanded to produce documents pursuant to a subpoena to

ignore the subpoena, upon a self-determination that the subpoena might require production of

---

[19] *See cf. United States v. Ayres*, 166 F.3d 991, 995 (9th Cir. 1999) (IRS summons and
enforcement order to "give testimony and produce all books, records, and other date demanded
in the subject summons," could not "excuse" "failure to comply" with the summons and order.")

privileged documents.  To the contrary, Rule 45 requires compliance with a detailed procedure for any assertion of privilege.

Moreover, as described in the accompanying declaration and supporting exhibits, as of June 12, 2015, Orrick claimed it did not even know exactly which of the Almaviva Defendants was its client or if any of them had properly directed them to ignore the subpoena on privilege grounds.  *See* VCH Decl., Ex. E.  Based on its representations, there was no justification for its failure to respond simply because the Almaviva Defendants' counsel instructed them to not respond.    Respectfully, Orrick's proffered reasons for ignoring the Subpoena are not "adequate excuses" under Rule 45(g) and Orrick should be held in contempt and directed to promptly comply with the Subpoena.

### CONCLUSION[20]

For the foregoing reasons, Loop AI respectfully requests that Orrick be required to show cause why it should not be held in contempt for its failure comply with the Subpoena and be promptly directed to immediately produce all documents responsive to the Subpoena.  In addition, Loop AI respectfully request the imposition of any other remedial measure the Court may deem just and proper, including a remedial compensatory fine payable to Loop AI for being forced to file this Application.

---

[20] Because a contempt proceeding does not open consideration of unasserted objections that Orrick was required to serve in compliance with the temporal and other requirements of Rule 45, Loop AI does not address any other aspect of the Subpoena. *See, e.g., U.S. v. Ayres*, 186 F.3d 991, 995 (9th Cir. 1999) ("It is a 'long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed…."). *Sec. Life Ins. Co. of Am. v. Duncanson & Holt*, 11 Fed. Appx. 926, 926-927 (9th Cir. 2001) ("we may not, however, review the legal or factual basis underlying the subpoena….").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

July 7, 2015                              By:   /s/ *Valeria Calafiore Healy*
_____

Valeria Calafiore Healy, Esq. (*pro hac vice*)
HEALY LLC
154 Grand Street
New York, New York 10013
Telephone:     (212) 810-0377
Facsimile:     (212) 810-7036


Daniel J. Weinberg, Esq. (SBN 227159)
FREITAS ANGELL & WEINBERG LLP
350 Marine Parkway, Suite 200
Redwood Shores, California 94065
Telephone:     (650) 593-6300
Facsimile:     (650) 593-6301


Attorneys for Plaintiff
LOOP AI LABS, INC.

16

APPLICATION RE: OSC FOR
CONTEMPT OF SUBPOENA