WILLIAM F. ALDERMAN (STATE BAR NO. 47381)
walderman@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, California 94105-2669
Telephone:    +1-415-773-5700
Facsimile:     +1-415-773-5759

Attorneys for Non-Party
Orrick, Herrington & Sutcliffe LLP

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ANNA GATTI, et al.,<br><br>Movants. | Case No. 3:15-cv-00798-HSG-DMR<br><br>**MEMORANDUM OF NON-PARTY ORRICK, HERRINGTON & SUTCLIFFE LLP IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR AN ORDER TO SHOW CAUSE RE: CONTEMPT**<br><br>Date/Time        TBD by Court<br>Action Filed:     February 20, 2015<br>Trial Date         July 11, 2016<br><br>Hon. Haywood S. Gilliam, Jr.<br>Hon. Donna M. Ryu |

## INTRODUCTION

Plaintiff's application for an order to show cause re: contempt is an entirely unnecessary and abusive exercise. Plaintiff claims that non-party Orrick, Herrington & Sutcliffe LLP ("Orrick") "defied" a subpoena addressed to the firm. In truth, however, the subpoena was never served on Orrick, despite Orrick's repeated attempts to cooperate with plaintiff (a former Orrick client now involved in a dispute with another former Orrick client) and its counsel.

Instead of taking advantage of Orrick's offers of cooperation, plaintiff's counsel stubbornly insisted on filing this unnecessary application. Coupled with the fact that the still-unserved subpoena largely seeks privileged communications between Orrick and defendants,

1    plaintiff's unwarranted application not only should be denied, but should be sanctioned with an

2    award of the fees Orrick has incurred in response.

3                                    **STATEMENT OF FACTS**[1]

4          On May 28, 2015, plaintiff's attorney Valeria Calafiore Healy sent an email to Orrick's

5    chief legal officer Larry Low inquiring whether he would accept via email service of a subpoena

6    directed to the firm (Low Decl. ¶ 2).  Mr. Low responded that, if Ms. Healy would email the

7    subpoena to him, he would let her know whether Orrick would regard the email as sufficient

8    service (*id*. ¶ 2, Ex. A).  Ms. Healy did not respond to that offer (*id*.).

9          Instead, on the evening of June 1, 2015, a woman appeared at the first-floor mail room in

10   Orrick's San Francisco office and dropped off a sealed envelope addressed to Mr. Low (Suansing

11   Decl. ¶ 2).  She did not say what the envelope contained and said nothing about a subpoena (*id*.).

12   In accordance with standard practice, the mail room put a time-stamp label on the envelope and

13   directed it via inter-office mail to Mr. Low's office (*id*.).

14         The Orrick mail room is operated by Williams Lea, Inc., an independent vendor (Loosen

15   Decl. ¶ 1).  Williams Lea personnel are not authorized to accept service of subpoenas on behalf of

16   Orrick (Loosen Decl. ¶ 2; Suansing Decl. ¶ 3).  If someone seeks to serve a subpoena on Orrick

17   via the mail room, they will be directed to Orrick's tenth floor reception desk (*id*.; Alderman

18   Decl. ¶ 5).  The tenth floor receptionists call one of the two attorneys in Orrick's San Francisco

19   office who are authorized to accept service of subpoenas on behalf of the firm, William Alderman

20   and Katherine Ikeda (Alderman Decl. ¶ 5, Ex. B; Rucker Decl. ¶ 2).  Here, there was no

21   opportunity for the mail room to direct the person dropping off the subpoena to the receptionists,

22   or for the receptionists to contact Mr. Alderman or Ms. Ikeda to accept it, because there was no

23

24   _____

     [1] Orrick objects to the "Relevant Background Relating to Orrick's Role In the Case" section at pages 2-7 of
     plaintiff's application and moves to strike it, inasmuch as it is nothing more than argument, unsupported by any

25   evidentiary showing whatsoever.  A detailed response to the many factual misrepresentations in that section is
     unnecessary given the absence of any factual support by plaintiff.  Suffice it to say that, were plaintiff ever to seek to

26   support its outlandish diatribe with evidence, Orrick would establish that neither the lawyers representing plaintiff
     Loop nor the lawyers representing certain defendants were aware of the other representation and that Orrick promptly

27   withdrew from both representations upon being advised of this litigation and of Ms. Gatti's employment by both
     plaintiff and certain defendants.

28

MEMORANDUM OF NON-PARTY ORRICK,
HERRINGTON & SUTCLIFFE LLP IN OPPOSITION TO
PLAINTIFF'S APPLICATION
3:15-cv-00798-HSG-DMR

1    written or verbal indication that the sealed envelope contained a subpoena.

2         After the sealed envelope was taken to Mr. Low's office, his assistant scanned it and sent

3    it by email to Mr. Alderman (Low Decl. ¶ 3; Alderman Decl. ¶ 7).  Mr. Alderman did not

4    immediately see the subpoena, inasmuch as he was recuperating from a broken leg (Alderman

5    Decl. ¶ 7).  After seeing the subpoena, Mr. Alderman sent an email to plaintiff's counsel Ms.

6    Healy, saying that even though the subpoena had not yet been served, he wanted to discuss a few

7    issues that would facilitate Orrick's eventual response, including claims of attorney-client

8    privilege by defendants, whose communications with Orrick were sought by the subpoena

9    (Alderman Decl. ¶ 8, Ex. C).

10        Ms. Healy responded to Mr. Alderman's offer of cooperation by calling him and

11   immediately taking a combative stance, saying she would be moving to compel compliance with

12   the subpoena (*id.* ¶ 9).  She then followed up with an email purporting to describe the call as a

13   "meet and confer" and inaccurately describing the contents of the call (*id.* ¶ 9, Ex. D).  When Ms.

14   Healy subsequently inquired whether Mr. Alderman would accept service of motion papers via

15   email, he not only said that he would, but said he would accept service of the subpoena via email

16   as well (*id.* ¶ 10, Ex. E).  Instead of taking Mr. Alderman up on his offer to accept service of the

17   subpoena via email, Ms. Healy filed and served the pending application for an Order to Show

18   Cause (*id.* ¶ 11).  As a consequence, the subpoena has still not been served on Orrick.

19                                          **ARGUMENT**

20   **A.   THE SUBPOENA WAS NOT PERSONALLY SERVED AS REQUIRED BY RULE 45**

21        Rule 45(b)(1) provides that "serving a subpoena requires delivering a copy to the named

22   person … ."  The Rule means what it says, requiring that the recipient be served ***personally***.  *See,*

23   *e.g.*, 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2454 (use of

24   the word "delivering" in Rule 45(b)(1) is construed literally); *San Francisco BART District v.*

25   *Spencer*, 2006 U.S.Dist.LEXIS 73140 at *3 (N.D.Cal. Sept. 25, 2006)(Illston, J.)(majority of

26   courts understand "delivering" to require personal service); *Whitmer v. Lavida Charter, Inc.*,

27   1991 WL 256885 (E.D. Pa. Nov. 26, 1991) ("Personal service is required.  Unlike service of a

28

OHSUSA:762730755.1

summons and complaint, 'it is not sufficient to leave a copy of the subpoena at the dwelling place of the witness.'"); *N.J. Bldg. Laborers etc. v. Gen. Civil Corp.*, 2009 WL 2778313 at \*2 (D.N.J. Sept. 1, 2009); *U.S. v. Philip Morris Inc.*, 312 F. Supp. 2d 27, 37-38 (D.D.C. 2004) (leaving subpoenas at a mail room does not constitute the requisite personal service and constitutes a "clear" violation of Rule 45(b)(1)).

Moreover, service of a subpoena on an organization, such as a corporation (or, in this case, a law firm organized as an LLP), requires service "through an officer or agent explicitly or implicitly authorized to accept service of process."  *In re: Grand Jury Subpoenas Issued to Thirteen Corporations*, 775 F.2d 43 (2d Cir. 1985).  Here, leaving a subpoena in a sealed envelope with a mail room clerk neither employed by Orrick nor authorized to accept service on its behalf was doubly defective.

Plaintiff does not dispute either of these fundamental principles of subpoena practice.  Instead, it makes two equally bewildering arguments.  First, it argues at page 12 that Orrick is a "named person" as required by Rule 45(b)(1) and that handing a sealed envelope addressed to someone at Orrick to a vendor's mailroom clerk was delivery to Orrick as the named person.  But that argument entirely ignores the uncontested fact that a vendor's mailroom clerk is not authorized to accept a subpoena on behalf of Orrick.  The fact remains that the subpoena was never personally delivered to any person authorized by Orrick to accept it.

Second, plaintiff argues that because Mr. Low delivered the subpoena to Mr. Alderman (a person authorized to accept service on behalf of Orrick), Orrick was served because Mr. Low was qualified as a person over the age of 18 to deliver (rather than receive) the subpoena.  Even if that tortured interpretation of Rule 45 were otherwise plausible, it fails here because Mr. Low did not personally deliver the subpoena to Mr. Alderman.  Rather, it is undisputed that Mr. Alderman received the subpoena as an attachment to an email from Mr. Low's assistant.  Nothing in plaintiff's application comes close to showing that it personally served the subpoena on anyone at Orrick who was authorized to accept it on behalf of the firm.

MEMORANDUM OF NON-PARTY ORRICK, HERRINGTON & SUTCLIFFE LLP IN OPPOSITION TO PLAINTIFF'S APPLICATION
3:15-CV-00798-HSG-DMR

## B.   THE SUBPOENA WOULD VIOLATE RULE 45 EVEN IF PROPERLY SERVED

Rule 45(c)(1) provides that "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Even if plaintiff had properly served the subpoena, it would violate Rule 45(c)(1) because, by seeking all of the attorney-client communications between Orrick and any of the defendants,[2] it failed to satisfy plaintiff's obligation to avoid imposing undue burden or expense on a non-party like Orrick.

By seeking every communication of every kind between Orrick and the Almawave entities, plaintiff not only failed to meet its obligation to avoid undue burden and expense but actively flouted that obligation. Presumably, it hoped that it could at least impose on Orrick the burdensome task of listing on a privilege log every communication it ever had with the Almawave entities, thereby disclosing to plaintiff a great deal of information about its litigation adversaries. That kind of abuse has never been tolerated by the courts. Indeed, courts routinely condemn discovery requests to a party's lawyers. *See, e.g., Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*, 276 F.R.D. 376, 380-82 (D.D.C. 2011) (discovery of lawyers may chill attorney-client communication, is "not helpful to effective legal practice," "presents a unique opportunity for harassment" and carries the "substantial potential of spawning litigation over collateral issues"); *AFSCME v. Scott*, 277 F.R.D. 474, 478-79 (S.D.s Fla. 2011) (subpoenas to counsel are "troubling" because they chill a client's candor with its counsel; a party seeking discovery from counsel must meet a higher standard than relevance and demonstrate that it has no other means of obtaining the information and that the information is crucial to preparation of its case).

## C.   SANCTIONS ARE APPROPRIATE TO COMPENSATE ORRICK FOR HAVING TO RESPOND TO AN ENTIRELY FRIVOLOUS APPLICATION

Plaintiff's counsel here has applied for an order that Orrick show cause why it should not

---

[2] Among other things, the communications between Orrick and Almawave entities sought by the subpoena include engagement letters, client matters and numbers, conflicts clearance, invoices, billing records, payments, calendars, appointment records, correspondence, legal advice, patent applications, corporate documents and contract negotiations.

OHSUSA:762730755.1

1   be held in contempt for declining to respond to a subpoena that has never been served on it.

2   Plaintiff's counsel compounded that transgression by thumbing her nose at Orrick's repeated

3   offers of cooperation, instead stubbornly insisting that Orrick respond to an application for an

4   order to show cause that she could easily have avoided by exercising common sense and good

5   faith.

6         As the court made clear in *In re Rule 45 Subpoena Issued to Cablevision Systems Corp.*

7   *etc.*, 2010 U.S. Dist. LEXIS 40653 (E.D.N.Y. Feb. 5, 2010) at \*33, Rule 45(c)(1) requires that

8   courts enforce the duty of a party issuing a subpoena to take reasonable steps to avoid imposing

9   undue burden and expense on the subpoenaed party by imposing an appropriate sanction – which

10   may include reasonable attorney's fees – on a party or attorney who fails to comply.  That

11   provision "was especially crafted to protect non-parties from abusive subpoenas" and "prompts

12   attorneys to heed their ethical obligations to non-parties." *Id.* at \*33-34.

13         The *Cablevision* court held that, by opposing efforts to quash the subpoena, the party

14   serving the subpoena "demonstrated a disregard for Rule 45's duty of due diligence and restraint"

15   that justified sanctions under Rule 45. *Id.* at \*35.  Similarly here, plaintiff and its attorney

16   violated Rule 45 not only by seeking to force compliance with an unserved subpoena that

17   improperly sought to force disclosure of a vast array of privileged communications, but also by

18   rejecting out of hand Orrick's repeated offers to cooperate with any legitimate requests.

19         Orrick respectfully requests that the Court award the attoneys' fees incurred by Orrick in

20   responding to plaintiff's baseless application.

21                           **CONCLUSION**

22         For the reasons given above, the Court should deny plaintiff's application for an order to

23   show cause and award sanctions against plaintiff and/or its counsel in an amount to be determined

24   after receiving evidence of the attorney's fees incurred by Orrick in opposing the application.

25

26

27

28

OHSUSA:762730755.1

MEMORANDUM OF NON-PARTY ORRICK,
HERRINGTON & SUTCLIFFE LLP IN OPPOSITION TO
PLAINTIFF'S APPLICATION
3:15-CV-00798-HSG-DMR

1    Dated: July 21, 2015                    WILLIAM F. ALDERMAN
                                             ORRICK, HERRINGTON & SUTCLIFFE LLP
2

3
                                             By: /s/ William F. Alderman
4                                               WILLIAM F. ALDERMAN
                                                Attorneys for Non-Party
5                                            Orrick, Herrington & Sutcliffe LLP

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF NON-PARTY ORRICK,
HERRINGTON & SUTCLIFFE LLP IN OPPOSITION TO
PLAINTIFF'S APPLICATION
3:15-CV-00798-HSG-DMR