1  VALERIA CALAFIORE HEALY (*pro hac vice*)
   HEALY LLC
2  154 Grand Street
   New York, New York 10013
3  Telephone:   (212) 810-0377
   Facsimile:   (212) 810-7036
4
   DANIEL J. WEINBERG (SBN 227159)
5  FREITAS ANGELL & WEINBERG LLP
   350 Marine Parkway, Suite 200
6  Redwood Shores, California 94065
   Telephone:   (650) 593-6300
7  Facsimile:   (650) 593-6301

8  Attorneys for Plaintiff
   LOOP AI LABS INC.

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS INC., | CASE NO.: 3:15-cv-00798-HSG-DMR |
| Plaintiff, | **PLAINTIFF LOOP AI LABS INC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO NON-PARTY ORRICK, HERRINGTON & SUTCLIFFE LLP'S MOTION FOR A PROTECTIVE ORDER OR TO QUASH SUBPOENA.** |
| v. | |
| ANNA GATTI, et al, | |
| Defendants. | |
| | Action Filed: February 20, 2015<br>Trial Date: July 11, 2016 |
| | Hon. Donna M. Ryu |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

SUMMARY OF KEY ISSUES PRESENTED .....................................................................1

ARGUMENT..........................................................................................................................3

    I.    RELEVANT LEGAL STANDARDS .......................................................................3

        A.  Federal Common Law Governs All Privilege Questions In This Case ..................3

        B.  Application of Privilege and Exceptions to Privilege .............................................3

    II.   UNDER THE FIDUCIARY EXCEPTION TO PRIVILEGE, ORRICK IS NOT PERMITTED TO INVOKE ITS OWN INTERNAL PRIVILEGE TO PROTECT FROM DISCOVERY COMMUNICATIONS REGARDING LOOP AI, WHILE LOOP AI WAS ITS CLIENT ...............................................................................................................5

    III.  TO THE EXTENT THE COURT WERE TO FIND THE FIDUCIARY EXCEPTION INAPPLICABLE, ORRICK HAS WAIVED THE PRIVILEGE IT NOW SEEKS TO ASSERT ...................................................................................................................9

    IV.  OTHER REMAINING ISSUES REGARDING ORRICK'S RESPONSES TO THE SUBPOENA ..............................................................................................................11

CONCLUSION....................................................................................................................13

# TABLE OF AUTHORITIES

## CASES

Page

*Agster v. Maricopa County*,
    422 F.3d 836 (9th Cir. 2005) ................................................................................3, 8

*Chevron Corp. v. Pennzoil Co.*,
    974 F.2d 1156 (9th Cir. 1992) ...................................................................................11

*Crimson Trace Corp. v. Davis Wright Tremaine LLP*,
    355 Ore. 476 (2014) .................................................................................................7, 8

*Damron v. Herzog*,
    67 F.3d 211 (9th Cir. 1995) ..........................................................................................2

*Edwards Wildman Palmer LLP v. Superior Court*,
    231 Cal. App. 4th 1214 (Cal. App. 2d Dist. 2014) ......................................................8

*E-Pass Techs., Inc. v. Moses & Singer, LLP*,
    No. C09-5967, 2011 WL 3794889, 2011 U.S. Dist. LEXIS 96231, (N.D. Cal. Aug. 26, 2011) ..........................................................................................................................6, 7

*Hancock v. Hobbs*,
    967 F.2d 462 (11th Cir. 1992) .................................................................................3, 9

*Landmark Screens, LLC v. Morgan, Lewis & Bockius LLP*,
    No. C08-02581, 2010 WL 289858, 2010 U.S. Dist. LEXIS 9435 (N.D. Cal. Jan. 15, 2010) .............................................................................................................................6

*Pac. Pictures Corp. v. U.S. Dist. Court*,
    679 F.3d 1121 (9th Cir. 2012) .....................................................................................4

*Perrignon v. Bergen Brunswig Corp.*,
    77 F.R.D. 455 (N.D. Cal. 1978) ..................................................................................9

*SonicBlue Claims LLC v. Portside Growth and Opportunity Fund (In re SonicBlue Inc.)*,
    No. 03-51775, 2008 Bankr. LEXIS 181 (Bankr. N.D. Cal. Jan. 18, 2008) ..............6, 7

*Stephan v. Unum Life Ins. Co. of Am.*,
    697 F.3d 917 (9th Cir. 2012) .......................................................................................4

*Regents of the Univ. of Cal. v. Micro Therapeutics, Inc.*,
    No. C-03-05669, 2007 WL 2069946, 2007 U.S. Dist. LEXIS 54054 (N.D. Cal. July 13, 2007) ...........................................................................................................................11

*TattleTale Alarm Sys. v. Calfee, Halter & Griswold*,
    No. 10-226, 2011 WL 382627, 2011 U.S. Dist. LEXIS 10412 (S.D. Ohio Feb. 3, 2011) .........................................................................................................................7, 8

*Trammel v. U.S.*,
    445 US 40 (1980) .........................................................................................................8

*United States v. Bilzerian*,
 926 F.2d 1285 (2d Cir. 1991) ..................................................................................11

*United States v. Graf*,
 610 F.3d 1148 (9th Cir. 2010) ...................................................................................4

*United States v. Jicarilla Apache Nation*,
 ___ U.S. ____ , 131 S. Ct. 2313 (2011) .....................................................................4

*United States v. Mett*,
 178 F.3d 1058 (9th Cir. 1999) ...................................................................................4

*United States v. Richey*,
 632 F.3d 559 (9th Cir. 2011) ..............................................................................10, 11

*United States v. Stockton*,
 52 U.S. 232 (1850) .....................................................................................................2

*Weil v. Investment/Indicators, Research & Mgmt., Inc.*,
 647 F.2d 18 (9th Cir. 1981) .....................................................................................10

## **STATUTES AND RULES**

18 U.S.C. § 1964 ..................................................................................................................3

18 U.S.C. § 1030 ..................................................................................................................3

Federal Rule of Evidence 501 ..........................................................................................3, 9

Plaintiff Loop AI Labs Inc. ("Plaintiff" or "Loop AI") respectfully submits this Memorandum of Points and Authorities in Opposition to non-party Orrick, Herrington & Sutcliffe LLP's ("Orrick") Motion For A Protective Order or to Quash the Subpoena filed on August 13, 2015 ("Motion").[1] *See* Dkt. 169. This Opposition is based on evidence already of record with the Court, supplemental evidence being submitted with the Declaration of V.C. Healy dated August 27, 2015 ("VCH Decl."), and any other supplemental evidence as the Court may allow the parties to subsequently present.

This Opposition does not address any of the issues on which Almawave USA, Inc. ("AW-USA") has filed objections to the Orrick Subpoena, as they are not pertinent to Orrick's separate Motion. To the extent the Court were to find any aspect of the AW-USA Motion to Quash the Orrick Subpoena relevant here, Loop AI respectfully incorporates here by reference its Opposition to that Motion, which is being filed concurrently herewith.

**SUMMARY OF KEY ISSUES PRESENTED**

The principal issue presented by the Motion is straightforward: Is Orrick required to produce documents and communications created or existing within Orrick while Loop AI was Orrick's client and that relate to Loop; or can Orrick instead avoid compliance with Loop AI's Subpoena by asserting its own internal privilege? Loop AI's Subpoena seeks certain documents and communications that were created or existing within Orrick during the period that Orrick was representing Loop AI and concurrently acting, without disclosure to Loop AI, in a manner adverse to Loop AI. As fully set forth in Loop AI's amended complaint, the adverse representation by Orrick included assisting its other client, Almawave S.r.l., in inducing one of

---

[1] As used herein, the terms: (1) "Complaint," "action," and "case" refer to the matters alleged in the Complaint, Dkt. 1, as amended, Dkt. 45, as well as to matters and evidence described in other files of record with this Court; (2) the term "Subpoena" refers to the June 1, 2015 Subpoena *Duces Tecum* issued to Orrick; (3) the term "Defendants" refers to some or all of the defendants named in the action; (4) the term "Almaviva Defendants" refers to Defendants Almaviva S.p.A., Almawave S.r.l. and Almawave USA Inc.

Loop AI's senior executives (Defendant Gatti) to breach agreements that Orrick itself had prepared for Loop AI. Orrick seeks to impede inquiry into its conflicted and improper conduct, which is at issue in the action, by invoking its own attorney-client privilege to shield all of the requested documents and communications from discovery.

Orrick's assertion of privilege should be rejected because the privilege Orrick purports to assert is unavailable as a matter of law. This issue is governed by federal common law, which has recognized a fiduciary or current client exception to the attorney-client privilege. Pursuant to this well-established exception, Orrick is not permitted to invoke its own internal attorney-client privilege against Loop AI for documents and communications created or existing during the time while Loop AI continued to be Orrick's client, *i.e.*, through March 11, 2015.[2] This exception, as applied to law firms, is rooted in the principle that attorneys owe their clients a duty of undivided loyalty and it would be unfair and inconsistent with the requirements imposed by that duty to allow attorneys to conceal their adverse interests, developed while representing a client and without disclosure to the client, and then shield that information from discovery under a claim of internal firm privilege.

As the Ninth Circuit noted, "there are few of the business relations of life involving a higher trust and confidence than that of attorney and client … few more anxiously guarded by the law, or governed by sterner principles of morality and justice; and it is the duty of the court to administer them in a corresponding spirit…" *Damron v. Herzog*, 67 F.3d 211, 214 (9th Cir. 1995) (quoting *U.S. v. Stockton*, 52 U.S. 232 (1850)). Particularly in light of the egregious nature of Orrick's conduct here, and consistent with the Ninth Circuit's guidance and other precedent, the Court should reject Orrick's shameless attempt to continue its shabby treatment of its (now former) client. The Court should reject Orrick's assertion of privilege.

---

[2] *See* Dkt. 29-1 (letter by Orrick terminating representation).

Furthermore, wholly aside from the fiduciary exception, Orrick has also voluntarily injected into this proceeding matters regarding its knowledge of the conflict that in fairness should allow Loop AI to obtain discovery of the matters voluntarily disclosed by Orrick.

In addition to the foregoing issue, the Orrick Motion presents a handful of more minor issues relating to aspects of the Subpoena not involving AW-USA's objections, which are being addressed directly in Loop AI's Opposition to that Motion.[3]

## ARGUMENT

## I. RELEVANT LEGAL STANDARDS.

### A. Federal Common Law Governs All Privilege Questions in This Case.

"A claim of privilege in federal court is resolved ***by federal common law***, unless the action is a civil proceeding and the privilege is invoked 'with respect to an element of a claim or defense as to which State law supplies the rule of decision….'" *Hancock v. Hobbs*, 967 F.2d 462, 466 (11th Cir. 1992) (emphasis added) (quoting Fed. R. Evid. 501).  However, "[w]here there are federal question claims and pendent state law claims present, ***the federal law of privilege applies***." *Agster v. Maricopa County*, 422 F.3d 836, 839-840 (9th Cir. 2005) (emphasis added).  In this case, the federal common law of privilege governs because the original jurisdiction of this Court is premised upon Loop AI's federal causes of action under 18 U.S.C. § 1964 *et seq.*, and 18 U.S.C. § 1030 *et seq*.  See Dkt. 1 at 12 and Dkt. 45 at ¶ 49.

### B. Application of Privilege and Exceptions to Privilege.[4]

As more fully set forth in Loop AI's Opposition to AW-USA's Motion to Quash the Orrick Subpoena, a party invoking privilege has the burden to establish that the privilege applies

---

[3] Loop AI respectfully notes that it has had several constructive meet and confers with Orrick's counsel and that it is limiting this Opposition to just a handful of points that remained following those meet and confers.

[4] Loop AI respectfully incorporates by reference herein the other legal standards applicable to the invocation of privilege that have already been set forth in Loop AI's Opposition to AW-USA's Motion to Quash the Orrick Subpoena (the "AW-USA Opp.") being filed concurrently herewith.

to *each* document or communication that the party seeks to protect from disclosure on privilege grounds. *See, e.g., United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010). Specifically, the 8-part test applicable in the Ninth Circuit includes the following elements: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." *Id*. Because the attorney-client privilege "contravenes the fundamental principle that the public has a right to every man's evidence" federal courts "construe it narrowly to serve its purposes." *Pac. Pictures Corp. v. U.S. Dist. Court,* 679 F.3d 1121, 1126 (9th Cir. 2012) (internal citations and quotation marks omitted).

Federal courts have also recognized that certain exceptions to the attorney-client privilege require disclosure of certain documents or information regardless of whether any privilege exists, and even where such privilege has not been waived. Relevant here is an exception generally referred to as the fiduciary exception.

The Ninth Circuit "has joined a number of other courts in recognizing a fiduciary exception to the attorney-client privilege." *U.S. v. Mett*, 178 F.3d 1058, 1062 (9th Cir. 1999). "This exception has its genesis in English trust law, but has since been applied to numerous fiduciary relationships." *Id.* at 1063. "The fiduciary exception applies where th[e] duty of disclosure overrides the attorney-client privilege." *U.S. v. Jicarilla Apache Nation*, ___ U.S. ____ 131 S. Ct. 2313, 2329 (2011). *See also, e.g., Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 931 (9th Cir. 2012) ("On this view, the attorney-client privilege is subordinated to the fiduciary's disclosure obligation."). Other courts have described this exception as being "an instance of the attorney-client privilege giving way in the face of a competing legal principle." *Mett*, 178 F.3d at 1063.

4

3:15-CV-00798-HSG-DMR   PL'S OPP. TO ORRICK MOT. RE: ORRICK SUBPOENA

## II. UNDER THE FIDUCIARY EXCEPTION TO PRIVILEGE, ORRICK IS NOT PERMITTED TO INVOKE ITS OWN INTERNAL PRIVILEGE TO PROTECT FROM DISCOVERY COMMUNICATIONS REGARDING LOOP AI, WHILE LOOP AI WAS ITS CLIENT.

Orrick has objected to Requests 23, 24, 26, and 29 in the Subpoena on the grounds that Orrick's internal privilege protects materials responsive to those requests from disclosure. Under the circumstances present in this case, however, the fiduciary (or current client) exception to the attorney-client privilege applies to compel disclosure of the documents and communications that Orrick has withheld on the basis that those documents are protected by Orrick's own internal attorney-client privilege.

Orrick was Loop AI's principal counsel for a period of almost three years, beginning in April 2012 and continuing through March 11, 2015. *See, e.g.*, Dkt. 124 at 2-7, VCH Decl., Ex. 9, Dkt. 29-1. During this time Orrick continued to represent Loop AI in respect of all critical aspects of its business, including matters relating to Defendant Gatti and her employment with (and termination from) Loop AI. *See, e.g.,* Dkt. 10-15 (Gatti/Loop AI employment agreement prepared by Orrick).[5] Despite Orrick's critical role as counsel to Loop AI, Orrick concealed from Loop AI that it was also working with Defendant Gatti and the Almaviva Defendants, and that Orrick had even prepared an employment agreement for the Almaviva Defendants to disguise their relationship with Defendant Gatti, while she continued to remain employed by Loop AI. *See, e.g.,* Dkt. 25-1 at ECF p. 18 (agreement between Almaviva Defendants and Gatti).

In addition to failing to advise Loop AI that it had taken on the representation of one or more of the Almaviva Defendants, in conflict with its representation of Loop AI, Orrick never advised Loop AI that, while it continued to be its counsel, it was also acting adversely to Loop AI to conceal its conflicted representation of one or more of the Almaviva Defendants.

---

[5] Through November 2014, Loop AI was named Soshoma.

At least as to the period during which Orrick served as Loop AI's counsel, which ended **March 11, 2015**, Orrick had the fiduciary obligation not to act against Loop AI's interests in any respect, and to promptly disclose to Loop AI all matters material to the representation, such as, for instance, that Defendant Gatti had been acting in breach of her fiduciary and contractual obligations to Loop AI for more than one year. Accordingly, Orrick should not now be permitted to withhold, on grounds of its own internal privilege, any communication or information that pre-dates Orrick's termination of its attorney-client relationship with Loop AI.

Under federal common law governing the privilege, which applies here, "a law firm cannot assert the attorney-client privilege against a current outside client when the communications that it seeks to protect arise out of self-representation that creates an impermissible conflicting relationship with that outside client." *SonicBlue Claims LLC v. Portside Growth and Opportunity Fund (In re SonicBlue Inc.)*, No. 03-51775, 2008 Bankr. LEXIS 181, at *26-27 (Bankr. N.D. Cal. Jan. 18, 2008). *See also, Landmark Screens, LLC v. Morgan, Lewis & Bockius LLP*, No. C08-02581, 2010 U.S. Dist. LEXIS 9435 (N.D. Cal. Jan. 15, 2010) (citing *SonicBlue*); *E-Pass Techs., Inc. v. Moses & Singer, LLP*, No. C09-5967 2011 U.S. Dist. LEXIS 96231, at *9-10 (N.D. Cal. Aug. 26, 2011) (Rejecting an "unprecedented argument that notwithstanding its fiduciary duty, at the same time [the law firm at issue] was representing E-Pass on the motion it could engage in intra-firm communications relating to how to protect itself from liability on the motion and then withhold those communications from E-Pass.").

This conclusion arises in part from the unique nature of the attorney-client relationship. *See SonicBlue*, 2008 Bankr. LEXIS 181, at *28 ("the very nature of the attorney-client relationship exceeds other fiduciary relationships where the fiduciary must execute its duties faithfully on behalf of its beneficiaries."). As such, it is incumbent upon all attorneys "not to represent another client if it would create a conflict of interest with the first client." *Id.* at *29. Synthesizing these ideas, the court in *SonicBlue* stated that,

> "the scope of [counsel's] fiduciary duties were broad-ranging and prohibited [counsel] from engaging in any activity that was adverse to SONICblue's interests. Applying *Mett*'s reasoning, [counsel] cannot invoke the privilege as to *any matter* within that broad scope of fiduciary activities. This would include its failure to comply with its duty of loyalty ***by entering into a second representation that created a conflict*** with its representation of SONICblue."

*Id.* at *29 (emphasis added). Should a firm choose to represent itself in respect of such a conflict, "it runs the risk that the representation may create an impermissible conflict of interest with one or more of its current clients." *Id.* at *26. Indeed, a firm's interests are "in conflict with those of [its client] to the extent they [are] not *fully* aligned with [the client's.]" *E-Pass*, 2011 U.S. Dist. LEXIS 96231, at *10 (emphasis added). "In light of these ethical concerns, the courts that have considered the issue have resoundingly found that, where conflicting duties exist, the law firm's right to claim privilege ***must give way to the interest in protecting current clients*** who may be harmed by the conflict." *SonicBlue*, 2008 Bankr. LEXIS 181, at *26 (emphasis added) (citing cases).

As applied to the instant matter, for the period during which Loop AI was Orrick's client, Orrick is barred by the fiduciary exception to privilege from asserting attorney-client privilege or work product protection[6] to avoid production of its own internal documents and communications relating to Loop AI. Therefore, Orrick must produce those documents dated or created through at least March 11, 2015, which are responsive to Loop AI's Requests 23, 24, 26, and 29, and over which Orrick has asserted its own privilege. *See* Dkt. 170-2 at 9-11.

In support of its assertion of privilege, Orrick relies on *Crimson Trace Corp. v. Davis Wright Tremaine LLP*, 355 Ore. 476 (2014) and on *TattleTale Alarm Sys. v. Calfee, Halter & Griswold, LLP*, No. 10-226, 2011 WL 382627, 2011 U.S. Dist. LEXIS 10412, at *6 (S.D. Ohio Feb. 3, 2011). *See* Dkt. 169 at 3. Those cases, however, are inapplicable here. In both those

---

[6] *SonicBlue*, 2008 Bankr. LEXIS 181, at *30 (Stating that the policies discussed here regarding attorney-client privilege "apply equally to... claims of work product.")

cases the courts were deciding the issue under state statutes that, unlike federal common law, have spoken both on the state privileges and on the exceptions applicable to those state privileges. *See id.* In *Crimson* the Oregon Supreme Court emphasized that "among the courts that have adopted the fiduciary exception, most are not governed by a legislative adopted privilege; most cases adopting the exception are federal." *Crimson*, 355 Ore. at 496. *Crimson* explained that, unlike Oregon statutory privilege law,

> ***Under federal law, the attorney-client privilege is recognized as judge-made and, as a result, is subject to judge-made exceptions***. *See generally* Christopher B. Mueller and Laird C. Kirkpatrick, Federal Evidence § 5:1, 405 (3d ed 2007) ("Congress decided to leave privilege law where it was, and yet without freezing the evolution of the common law relating to privileges."); *see also Trammel v. U.S.*, 445 US 40, 47, 100 S Ct 906, 63 L Ed 2d 186 (1980) (federal rules allow courts to develop privilege law on a case-by-case basis").

*Id.* (emphasis added).[7] *TattleTale* was to the same effect — it involved a case based on diversity jurisdiction, where the court was required to apply state law (in that case the law of Ohio, which also contained limited statutory exceptions to privilege). *See TattleTale*, 2011 U.S. Dist. LEXIS 10412, at *7-8.

In this action, by contrast, the jurisdiction of this Court is based on federal question subject matter jurisdiction. *See* Dkt. 1 at 12; Dkt. 45 at 15. Under controlling Ninth Circuit law, in this case federal common law of privilege applies even though this action also includes pendent state claims. *See Agster v. Maricopa County*, 422 F.3d 836, 839-840 (9th Cir. 2005) ("[w]here there are federal question claims and pendent state law claims present, ***the federal law***

---

[7] California state privilege law is also governed by statute. For that reason, *Crimson* has been followed by a California state court applying California state privilege law. *See Edwards Wildman Palmer LLP v. Superior Court*, 231 Cal. App. 4th 1214, 1230 (Cal. App. 2d Dist. 2014) ("we are not at liberty to adopt the fiduciary or current client exceptions to the attorney-client privilege. As the Crimson Trace court found in regard to Oregon law, in California it is well-settled that 'the attorney-client privilege is a legislative creation, which courts have no power to limit by recognizing implied exceptions.'"). As already discussed above, however, this case is not governed by California state privilege law, but by the federal common law of privilege which fully recognizes the exception invoked by Loop AI here.

---

8

3:15-CV-00798-HSG-DMR     PL'S OPP. TO ORRICK MOT. RE: ORRICK SUBPOENA

*of privilege applies.*) (emphasis added)).[8] This rule has been widely adopted by federal courts in cases based on federal question jurisdiction with pendent state law claims. *See, e.g., Hancock*, 967 F.2d at 466 (adopting rule and holding that "the federal law of privilege provides the rule of decision in a civil proceeding where the court's jurisdiction is premised upon a federal question, even if the witness-testimony is relevant to a pendent state law count which may be controlled by a contrary state law of privilege.") (citing cases). *See, also, e.g.*, *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 459 (N.D. Cal. 1978) ("federal question cases where pendent state claims are raised the federal common law of privileged should govern all claims of privilege raised in the litigation"). This rule is especially important where, as in this case, the state law of privilege conflicts with the federal common law. *See, e.g., Hancock, supra* (discussing resolution of conflict between state and federal privilege law).

Because this case is governed by federal common law on privilege, which recognizes the fiduciary exception invoked by Loop AI here, Orrick is not permitted to assert its own attorney client privilege or work product protection against Loop AI, at least not until after it terminated its relationship with Loop AI on March 11, 2015.

### III. TO THE EXTENT THE COURT WERE TO FIND THE FIDUCIARY EXCEPTION INAPPLICALBE, ORRICK HAS WAIVED THE PRIVILEGE IT NOW SEEKS TO ASSERT.

Even if the Court were to reject the fiduciary exception to the attorney-client privilege, Loop AI would nonetheless be entitled to the discovery in question because Orrick has waived the privilege it seeks to assert. Specifically, Orrick has voluntarily injected into this proceeding matters regarding its knowledge of the conflict that in fairness should allow Loop AI to obtain discovery of the matters voluntarily disclosed by Orrick. For instance, Orrick has represented to

---

[8] *Citing* Fed. R. Evid. 501, Advisory Notes of Committed on the Judiciary, Senate Report No. 93-1277. ("It is also intended that the Federal law of privileges should be applied with respect to pendent State law claims when they arise in a Federal question case.").

9
3:15-CV-00798-HSG-DMR PL'S OPP. to ORRICK MOT. re: ORRICK SUBPOENA

this Court that its conflicted behavior was inadvertent and that it resigned its representation of both clients (Loop AI and Almawave S.r.l.) immediately upon learning of its error. *See* Dkt. 141 at n. 1.[9] Presumably Orrick made that statement in order to refute any suggestion that Orrick intentionally breached its contractual and fiduciary obligations to notify and obtain consent from Loop AI immediately before taking on this conflicted representation.[10] Of course, if Orrick's representation to the Court is true, Orrick's assertion of its own internal privilege must fail, because during the period covered by the Subpoena request, attorneys at Orrick could not have been seeking advice of internal counsel regarding a conflict that they claim they did not know existed. If, instead, Orrick's representation regarding its knowledge of the conflict was untrue – if in fact Orrick knew of the conflict or continued its representation for any period of time while knowing of the conflict — Orrick has waived any privilege that could have applied, by injecting into the proceeding its representations to the Court that it did not know of the conflict. As the Ninth Circuit has held, a party seeking to invoke privilege "must prove … that it has not waived the privilege." *Weil v. Investment/Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981). "Voluntary disclosure of privileged communications constitutes waiver of the privilege for all other communications on the same subject." *U.S. v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). Courts have recognized that privilege may also be waived implicitly by disclosure of facts that in fairness should allow inquiry into the subject matter of the disclosed facts. *See, e.g.,*

---

[9] ("Orrick would establish that neither the lawyers representing plaintiff nor the lawyers representing certain defendants were aware of the representation and that Orrick promptly withdrew from both representations upon being advised of this litigation and of Ms. Gatti's employment by both plaintiff and certain defendants.") Loop AI respectfully disagrees with this representation, as the list of attorneys finally produced by Orrick shows that at least three attorneys worked on both the Loop AI matter and the Almaviva matter at issue in this action.

[10] A former partner of Orrick who is implicated in the conduct at issue in this action, Mr. Sternberg, and who moved to Venable LLP earlier this year, also voluntarily disclosed in response to a Subpoena to Venable that he did not know that Gatti worked for Loop AI. *See* VCH Decl., Ex. 7 at 9 (Response to Request 8).

*U.S. v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (privilege cannot be invoked "to disclose some selected communications for self-serving purposes.").[11] Here, Orrick and its former partner have waived privilege by both voluntarily disclosing selected and self-serving pieces of information. Orrick cannot at the same time claim it did not know of the conflict, and yet avoid discovery on the issue by invoking its own attorney client privilege.

### IV.  OTHER REMAINING ISSUES REGARDING ORRICK'S RESPONSES TO THE SUBPOENA.

The following more minor issues remain unresolved in respect of Orrick's response to the Subpoena.

**1.  *Unsupported Refusal to Produce Privilege Log*** — "A party claiming the privilege must identify ***specific communications and the grounds supporting the privilege*** as to each piece of evidence over which privilege is asserted." *Richey*, 632 F.3d at 567 (quoting *U.S. v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002). The Ninth Circuit has expressly held that, absent this detailed identification of specific communications claimed to be covered by the privilege, it would be "error" to "conclude that [an] entire … work file is protected by the attorney-client privilege." *Id.* Orrick fails to provide any legal authority for its blanket refusal to produce a privilege log in this case. *See* Dkt. 169 at 3 ("courts do not require a privilege log because the privilege is so obvious and because the information on a log would necessarily reveal the lawyers' work in connection with the dispute."). Respectfully, none exists. Particularly under the circumstances of this case, where Orrick has had a critical role in some of the matters at issue, there is no basis for Orrick to claim it should not be burdened by the requirement of

---

[11] *Bilzerian* has been recognized as a leading case on implicit waivers and has been relied on in the Ninth Circuit both at the appellate and district court level. *See, e.g., Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (relying on *Bilzerian* to find waiver); *Regents of the Univ. of Cal. v. Micro Therapeutics, Inc.*, No. 03-05669, 2007 WL 2069946, 2007 U.S. Dist. LEXIS 54054, at *9-10 (N.D. Cal. July 13, 2007).

producing a privilege log.

2. *Unsupported Burden Objections* — Orrick argues in conclusory fashion that it is not required to produce documents responsive to Requests 11, 22, and 23 in the Subpoena on the bases of undue burden and/or relevance. Dkt. 169 at 2, 4. These blanket objections, unsupported by any explanation, cannot be sustained. There is no question that the matters sought by the Subpoena are relevant to this action, which expressly includes, among other things, claims based on Orrick's conduct in breach of its obligations to Loop AI.[12] *See, e.g.,* Dkt. 45 at ¶¶ 167, 168, 187, 208, 266-67, 297, 300, 305, 307, 312. To the extent this objection is premised on Orrick's assumption that Loop AI seeks documents dating prior to April 2012, when Orrick began representing Loop AI, this dispute was resolved during the meet and confer process with Orrick, as Loop AI clarified it is not seeking documents prior to that date. In respect of Request 11, Orrick appears to ground its objection on the fact that certain responsive documents are handwritten. *See* Dkt. 170-2 at 5. Orrick seems to argue that it should not be made to produce any documents other than those that are digitally stored. This is obviously not the law. Nothing in the Federal Rules limits discovery to digitally stored information. Upholding such an objection would render all documents stored in physical rather than digital form immune from discovery. Moreover, the Orrick custodians in question include a very limited list of individuals, and a limited time scope. In light of these limitations, there is simply no basis for claiming that searching for and producing responsive documents that are not digitally stored would be burdensome.

3. *Failure to Actually Produce Documents Claimed to Have Been Produced* — In its responses to the Subpoena, Orrick stated that it would produce documents responsive to

---

[12] In respect of Request 11 and 23, Loop AI also notes that Orrick never made a relevance objection in its Responses. *See* Dkt. 170-2 at 5.

Requests 27, 28, and 30. However, despite having brought this issue to Orrick's attention, Orrick has not produced *any* documents in response to these requests. Similarly, in response to Request 4, Orrick only produced 2 documents, and a handful of documents responsive to Request 25. It appears that more documents (specifically communications) would exist responsive to these requests, in which case they also should have been produced. Finally, in response to Requests 12 and 13, Orrick provided a narrative response instead of actually producing the responsive documents in its possession. Respectfully, there is no basis for withholding the actual documents and providing a narrative response instead. Accordingly, the documents in question should be produced.

## CONCLUSION

For the foregoing reasons, Loop AI respectfully submits that Orrick's Motion should be denied in its entirety and that Orrick should be ordered to promptly cure the deficiencies in its responses to the Subpoena.

Respectfully submitted,

August 27, 2015    By:  /s/ *Valeria Calafiore Healy*

Valeria Calafiore Healy, Esq. (*pro hac vice*)
HEALY LLC
154 Grand Street
New York, New York 10013
Telephone:    (212) 810-0377
Facsimile:    (212) 810-7036

Daniel J. Weinberg, Esq. (SBN 227159)
FREITAS ANGELL & WEINBERG LLP
350 Marine Parkway, Suite 200
Redwood Shores, California 94065
Telephone:    (650) 593-6300
Facsimile:    (650) 593-6301

Attorneys for Plaintiff
LOOP AI LABS, INC.