1   VALERIA CALAFIORE HEALY (*pro hac vice*)
    HEALY LLC
2   154 Grand Street
    New York, New York  10013
3   Telephone:      (212) 810-0377
    Facsimile:      (212) 810-7036
4
    DANIEL J. WEINBERG (SBN 227159)
5   FREITAS ANGELL & WEINBERG LLP
    350 Marine Parkway, Suite 200
6   Redwood Shores, California  94065
    Telephone:      (650) 593-6300
7   Facsimile:      (650) 593-6301
8   Attorneys for Plaintiff
    LOOP AI LABS INC.
9

10              UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13  LOOP AI LABS INC.,                    CASE NO.: 3:15-cv-00798-HSG-(DMR)

14                                        **PLAINTIFF LOOP AI LABS INC'S**
                   Plaintiff,             **MEMORANDUM OF POINTS AND**
15                                        **AUTHORITIES IN OPPOSITION TO**
                   v.                     **DEFENDANT ALMAWAVE USA**
16                                        **INC.'S MOTION FOR PROTECTIVE**
    ANNA GATTI, et al,                    **ORDER OR, ALTERNATIVELY, TO**
17                                        **QUASH SUBPOENA TO ORRICK,**
                   Defendants.            **HERRINGTON & SUTCLIFFE LLP.**
18
                                           Action Filed:  February 20, 2015
19                                         Trial Date: July 11, 2016
20                                         Hon. Donna M. Ryu
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

SUMMARY OF KEY ISSUES PRESENTED ........................................................................... 1

MEET & CONFER ........................................................................................................................ 2

ARGUMENT .................................................................................................................................. 2

I.    RELEVANT LEGAL STANDARDS ............................................................................... 2

    A.  The Proponent Of A Privilege Has The Burden Of Establishing Both That The Privilege Applies And That It Has Not Been Waived ............................................. 3

II.   AW-USA WAS NEVER A CLIENT OF ORRICK AND HAS NO BASIS TO CLAIM PRIVILEGE OVER THE 611 DOCUMENTS PRODUCED BY ORRICK ...................... 4

III.  AW-USA HAS FAILED TO ESTABLISH THAT THE DOCUMENTS WITHHELD ARE PRIVILEGED ............................................................................................................ 9

    A.  AW-USA's Refusal to Produce A Privilege Log Is Not Justifiable ..................... 10

    B.  Communications or Documents Exchanged With Third Parties Or With Gatti Are Not Privileged ....................................................................................................... 14

    C.  Documents Pertaining To Introductions To Attorneys Are Not *Ipso Facto* Privileged ............................................................................................................... 16

    D.  Engagement Letters Are Not Generally Privileged ............................................. 17

    E.  Billing Statements Are Not Inherently Privileged ............................................... 17

    F.  Corporate Organization And Governance Documents Cannot All Be Privileged 18

IV.  AW-USA HAS FAILED TO ESTABLISH THAT IT HAS NOT WAIVED PRIVILEGE TO THE EXTENT THE DOCUMENTS WITHHELD CONTAIN PRIVILEGED INFORMATION .............................................................................................................. 18

    A.  Implicit Waivers Arising From The Almaviva Defendants' Repeated Assertions That They Reasonably Believed Their Hiring of Gatti Was Lawful .................. 19

    B.  The Almaviva Defendants' Reliance On The Contractual Provisions Prepared by Orrick for Gatti Implicitly Waived Privilege ....................................................... 22

    C.  The Almaviva Defendants' Counsel's Voluntary Disclosure of The Advice He Did Not Give While At Orrick, Puts Into Issue The Advice Given By Other Orrick Lawyers .................................................................................................... 23

The Almaviva Defendants' Repeated Contentions that Gatti Did Not Assist Them in Technology Development Does Not Permit AW-USA to Now Assert Privilege Over Communications Related to That Subject Matter ..................................................................................24

# TABLE OF AUTHORITIES

## CASES

Page

*Apple Inc. v. Samsung Elecs. Co.*,
     306 F.R.D. 234 (N.D. Cal. 2015) ........................................................................10, 25

*Chevron Corp. v. Pennzoil Co.*,
     974 F.2d 1156 (9th Cir. 1992) ....................................................................................21

*Clarke v. American Commerce Nat'l Bank*,
     974 F.2d 127 (9th Cir. 1992) ............................................................................. *passim*

*Coleman v. Schwarzenegger*,
     No. 90-0520, 2007 U.S. Dist. LEXIS 102305 (E.D. Cal. Dec. 6, 2007) ........................12

*Fresenius Med. Care Holding, Inc. v. Baxter Int'l, Inc.*,
     224 F.R.D. 644 (N.D. Cal. 2004) ................................................................................14

*Hoffmann La Roche. Inc. v. Roxane Labs., Inc.*,
     No. 09-6335, 2011 WL 1792791, 2011 U.S. Dist. LEXIS 50404 (D.N.J. May 11, 2011) .7

*In re Fischel*,
     557 F.2d 209 (9th Cir. 1977) ..................................................................................4, 14

*Koresko v. Bleiweis*,
     No. 04-00769, 2005 WL 182800, 2005 U.S. Dist. LEXIS 1110 (E.D. Pa. Jan. 27, 2005)
     ..................................................................................................................................10

*Mount Hope Church v. Bash Back*,
     705 F.3d 418 (9th Cir. 2012) ......................................................................................13

*Nocal, Inc. v. Sabercat Ventures, Inc.*,
     No. 04-0240, 2004 WL 3174427, 2004 U.S. Dist. LEXIS 26974 (N.D. Cal. Nov. 15,
     2004) ...................................................................................................................11, 12

*Pac. Pictures Corp. v. U.S. Dist. Court*,
     679 F.3d 1121 (9th Cir. 2012) ................................................................................3, 18

*Regents of the Univ. of Cal. v. Micro Therapeutics, Inc.*,
     No. C-03-05669, 2007 WL 2069946, 2007 U.S. Dist. LEXIS 54054 (N.D. Cal. July 13,
     2007) .................................................................................................................21, 22

*Software Rights Archive, LLC v. Google, Inc.*,
     No. 09-Misc-80004, 2010 U.S. Dist. LEXIS 11581 (N.D. Cal. Feb. 9, 2010) ................18

*Thomas v. Hickman*,
     No. 06-00215, 2007 WL 4302974, 2007 U.S. Dist. LEXIS 95796 (E.D. Cal. Dec. 5,
     2007) ........................................................................................................................12

*Tyco Healthcare Group LP v. Mut. Pharm. Co.*,
     No. 07-1299, 2012 WL 1585335, 2012 U.S. Dist. LEXIS 63393 (D.N.J. May 2, 2012) .12

*United States v. Bilzerian*,
     926 F.2d 1285 (2d Cir. 1991) ............................................................................. *passim*

*United States v. Blackman,*
    72 F.3d 1418 (9th Cir. 1995) ......................................................... 17

*United States v. Chevron Corp.,*
    1996 U.S. Dist. LEXIS 8646 (N.D. Cal. May 30, 1996) ...................................4

*United States v. Exxon Corp.,*
    94 F.R.D. 246 (D.D.C. 1981) ...........................................................22

*United States v. Graf,*
    610 F.3d 1148 (9th Cir. 2010) ......................................................3, 4

*United States v. Gurtner,*
    474 F.2d 297 (9th Cir. 1973) .........................................................9

*United States v. Munoz,*
    233 F.3d 1117 (9th Cir. 2000) ....................................................3, 4, 5

*United States v. Richey,*
    632 F.3d 559 (9th Cir. 2011) ..................................................3, 11, 23

*United States v. Ruehle,*
    583 F.3d 600 (9th Cir. 2009) .........................................................9

*Upjohn Co. v. United States,*
    449 U.S. 383 (1981) .................................................................3

*Weil v. Investment/Indicators, Research & Mgmt., Inc.,*
    647 F.2d 18 (9th Cir. 1981) ...................................................4, 18, 21

**STATUTES AND RULES**

Fed. R. Civ. P. 45(e)(2)(B) ............................................................10

Fed. R. Civ. P. 26(b)(5)(A)(ii) .........................................................10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff Loop AI Labs Inc. ("Plaintiff" or "Loop AI") respectfully submits this Memorandum of Points and Authorities in Opposition to Defendants Almawave USA Inc.'s ("AW-USA") Motion For A Protective Order To Prevent Disclosure of Privileged Documents Sought by Plaintiff's Subpoena To Third Party Orrick, Herrington & Sutcliffe LLP, Or, Alternatively, To Quash the Subpoena filed on August 13, 2015 ("Motion").[1] *See* Dkt. 168. This Opposition is based on this Memorandum of Law, the Declaration of V.C. Healy dated August 27, 2015 ("VCH Decl.") and all other evidence of record with the Court.

## SUMMARY OF KEY ISSUES PRESENTED

The Motion filed by AW-USA should be denied in its entirety for three separate reasons. First, the Motion was brought only by AW-USA, which lacks standing to invoke privilege over the Orrick documents at issue, because it was not itself a client of the Orrick law firm.  Second, there is no legal basis for AW-USA to withhold all of the Orrick documents on the basis of generalized assertions of privilege.  The Ninth Circuit has repeatedly held that such blanket assertions of privilege are impermissible.  Moreover, it has become clear that AW-USA is improperly invoking privilege over documents that simply do not qualify as such —for instance, communications involving arms-length negotiations with third parties, communications not involving legal advice, corporate documents, and similarly non-privileged items.  Finally, a party seeking to assert privilege has the burden to prove that the privilege has not been waived.  Here, AW-USA has failed to make the requisite showing.  In order to overcome its inability to establish it has not waived privilege, AW-USA flatly misrepresents in its Motion the basis of the

---

[1] As used herein, the terms: (1) "Complaint," "action," and "case" refer to the matters alleged in the Complaint, Dkt. No. 1, as amended, Dkt. No. 45, as well as to matters and evidence described in other files of record with this Court; (2) the term "Subpoena" refers to the June 1, 2015 Subpoena *Duces Tecum* issued to Orrick; (3) the term "Defendants" refers to some or all of the defendants named in the action; (4) the term "Almaviva Defendants" refers to Defendants Almaviva S.p.A., Almawave S.r.l. and Almawave USA Inc.

1
2
3
4
5
6
7
8
9

waiver, claiming that Loop AI has previously grounded its waiver argument on AW-USA's "advice of counsel" defense.  AW-USA even ascribes to Loop AI a quote manufactured entirely by AW-USA and nowhere found in any of Loop AI's briefs.  The waivers implicated here have nothing to do with any express "advice of counsel" defense.  At issue here are the Almaviva Defendants' implicit waivers of privilege, which arise from their injection into the case of certain subject matters.  Implicit waivers of this kind are rooted in fairness principles.  They are intended to ensure that a party is not allowed to benefit from a self-serving disclosure of selective subject matter that in fairness requires examination of protected communications.

10

**MEET & CONFER**

11
12
13
14
15
16
17
18
19
20
21
22
23
24

On July 23, 2015 this Court ordered the parties and Orrick to "immediately meet and confer regarding objections to the [Orrick] subpoena."  Dkt. 156 at 1.  The Almaviva Defendants have refused to meet and confer with Loop AI on any aspect of the Orrick Subpoena.  Although, at Loop AI's insistence, AW-USA's counsel participated in a teleconference on August 20, 2015 that was supposed to be a meet and confer (the "M&C"), AW-USA's counsel refused to actually have a substantive discussion about any aspect of the Subpoena or the issues that AW-USA raised with the Court in the Motion.[2]  Particularly since AW-USA has failed to provide a privilege log, it was particularly important here to be able to address what specific documents or communications AW-USA is withholding on privilege grounds.  Despite the substantial investment of time and effort that the meet and confers require, AW-USA's refuses to engage in any type of actual conversation about any aspect of the issues that need to be resolved.  This was not Loop AI's understanding of why the Court required the parties to meet and confer.[3]

25
26
27
28

[2] Loop AI respectfully seeks leave to submit to the Court the audio-recording of the foregoing M&C.
[3] Loop AI respectfully notes that during the course of its separate meet and confers with Orrick, it was able to meaningfully discuss and resolve a number of issues, and narrow down the disputes raised by Orrick's own objections to the Subpoena.

# ARGUMENT

## I.   Relevant Legal Standards.[4]

### A.   The Proponent Of A Privilege Has the Burden of Establishing Both That The Privilege Applies and That it Has Not Been Waived.

"Under certain circumstances, the attorney-client privilege will protect communications between clients and their attorneys from compelled disclosure in a court of law." *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  Specifically, this "privilege protects confidential communication between attorneys and clients, which are made for the purpose of giving legal advice." *U.S. v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011).  Federal courts have recognized this privilege to "encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.*  However, because the attorney-client privilege "contravenes the fundamental principle that the public has a right to every man's evidence" federal courts "construe it narrowly to serve its purposes." *Pac. Pictures Corp. v. U.S. Dist. Court,* 679 F.3d 1121, 1126 (9th Cir. 2012) (internal citations and quotation marks omitted).[5]  For instance, federal courts "recognize several ways by which parties may waive the privilege." *Id.*

"A party asserting the attorney-client privilege has the burden of establishing the existence of an attorney-client relationship *and* the privileged nature of the communication." *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (internal brackets omitted).  In the Ninth Circuit the following 8-part test "determines whether information is covered by the attorney-client privilege: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in

---

[4] Loop AI incorporates by reference herein the additional legal standards applicable to the attorney-client privilege included in its Opposition (filed concurrently herewith) to the separate partial Motion to Quash filed by Orrick.
[5] *See also, e.g., United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (same) ("Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed.").

confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by

himself or by the legal adviser, (8) unless the protection is waived." *Id.* "The party asserting the

privilege bears the burden of proving each of the essential element." *Id. See also, e.g., United*

*States v. Munoz*, 233 F.3d 1117, 1128 (9th Cir. 2000) ("The party asserting attorney-client

privilege has the burden of establishing all of the elements of the privilege."). "***One of the***

***elements that the asserting party must prove is that it has not waived the privilege***." *Weil v.*

*Investment/Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981) (emphasis

added). Contrary to AW-USA's arguments in its Motion, because non-waiver is an essential

element of the privilege that AW-USA invokes, it is AW-USA, and not Loop AI, who has the

burden of proof on that issue. *See* Dkt. 168 at 13 (arguing that "Loop cannot meet its burden to

show that privilege has been waived.").[6]

At issue in respect of AW-USA's Motion presently are the following elements of the 8-

part test: (a) the identity of the client (fifth element); (b) whether the documents withheld are

covered by privilege (elements one, three and four); and (c) whether protection was waived

(element eight).

## II. AW-USA Was Never A Client of Orrick and Has No Basis to Claim Privilege Over the 611 Documents Produced by Orrick.

AW-USA's attempt to shield from discovery 611 documents on attorney-client privilege

grounds should be rejected because AW-USA has not established that it was Orrick's "client," as

---

[6] To the extent the unpublished decision cited by AW-USA in its Motion can be read to
reallocate this burden it must be disregarded, as a district court has no power to modify
controlling authority from the Ninth Circuit, which expressly poses the burden of proof on the
"non-waiver" issue on the party invoking privilege, here AW-USA. *See* Dkt. 168 at 13 (citing
*U.S. v. Chevron Corp.,* 1996 U.S. Dist. LEXIS 8646, at *10-12 (N.D. Cal. May 30, 1996)). In
addition, AW-USA's quote of a portion of that case is taken out of context. It is clear that in that
case, the district court was faced with voluminous amounts of privilege that had already been
subject to two decisions, and that to expedite resolution of the issues on remand to the Magistrate
Judge, the court simply wanted to put in place a procedure specific for that case to address
waivers that were in fact at issue, as opposed to requiring Chevron to prove that no waiver of any
type had occurred. Clearly, this is not the situation in this case, where the types of waivers in
question are known and were readily capable of being addressed by AW-USA.

---

1    it was required to do.  *See Graf,* 610 F.3d at 1156; *In re Fischel*, 557 F.2d 209, 211 (9th Cir.

2    1977).  "The purpose of the privilege is to protect and foster the client's freedom of expression.

3    It is not to permit an attorney to conduct his client's business affairs in secret."  *Id.*  Here, AW-

4    USA has failed to provide any evidence that it was a client of Orrick either directly or jointly

5    with AW-IT.  To the contrary, the evidence of record demonstrates that it was not.

6          First, no direct attorney-client relationship existed between Orrick and AW-USA. Orrick

7    has never identified AW-USA as its client in response to any of the requests contained in the

8    Subpoena. Dkt. 168-2, Ex. 2 ("Orrick Response") at 2:2-5 or VCH Decl. Ex. 3.[7]  The Orrick

9    Response to the Subpoena states that Orrick entered into an engagement with AW-IT on April 4,

10   2014.  *Id.* at 2:10-12.  Nowhere in its Response to the Subpoena does Orrick ever identify AW-

11   USA as its client.  *See id.*  Similarly, on March 11, 2015, Orrick disclosed to Loop AI for the

12   first time that it had been and was representing "Almaviva S.r.l." (referred to herein as AW-IT).

13   *See* Dkt. 29-1.  In that communication, Orrick never mentioned that it also was, or had been,

14   representing Almawave USA, or any of the other parties named in this action, and never

15   identified AW-USA has its client.  Nor does Orrick state that it ever informed AW-USA that it

16   was also its client, or that AW-USA was paying its fees.  The Ninth Circuit has repeatedly found

17   those factors important to determine if a related or affiliated person has a direct or joint client

18   relationship with an attorney: who signed the "attorney retainer agreement," whether the attorney

19   to the party in question informed it that it was a client, who paid the attorney's bills, and to

20   whom the letter terminating the attorney-client relationship was directed.  *See Graf*, 610 F.3d at

---

[7] Orrick also identifies AV-IT — *i.e.*, Almaviva S.p.A. — as a past client in connection with an engagement that ended before 2012.  Orrick has advised Loop AI that no documents relating to those engagements were even searched for or included in the documents being withheld by AW-USA.  Loop AI does not address any aspects of those engagements, as it is not seeking information from those prior engagements.

1161.[8]

      In addition, while Orrick has refused to produce its engagement letter with AW-IT,

Orrick's "Standard Terms of Engagement," expressly define the identity of the "Client" and

provide that Orrick's representation

> ***does not encompass*** any officer, director, employee, owner, principal, member or
> partner of or any other person affiliated with the Client; or ***any subsidiary, parent
> or other affiliate of the Client***.  If any of these persons or entities require the
> services of counsel in connection with the Matters, we would be pleased to
> discuss whether we might be able to represent any of them, but any such
> representation would need its own engagement letter, and would depend on our
> review and disclosure to all concerned of any conflicts of interest that may arise in
> connection with any such concurrent representation, and on appropriate consents
> being obtained from the Client and from those seeking such additional
> representation.

VCH Decl., Ex. 4 (emphasis added).  It is likely that similar, if not identical, standard terms were

also included by Orrick in its engagement letter with AW-IT.  Under those terms, AW-USA

could not be a client of Orrick without a separate engagement being approved.  The fact that

AW-IT may have been seeking legal advice from Orrick for its creation of AW-USA, does not

make AW-USA a client of Orrick capable of invoking its own privilege in accordance with the

requirements articulated by the Ninth Circuit in *Graf* and other cases.  Simply because an entity

may be the subject matter of the advice sought by a client does not make the entity the client.

AW-USA fails to provide any facts or legal authority establishing that the subject of an

attorney's advice to a client can independently claim attorney-client privilege *in lieu* of the actual

client.  In this case, in particular, the Court had granted both of the other Almaviva Defendants,

AW-IT and AV-IT, permission to move to quash the Orrick Subpoena.  Dkt. 117 at 1:18-20.

Having chosen this litigation strategy, AW-IT and AV-IT cannot be allowed to now use AW-

---

[8] *See also U.S. v. Munoz*, 233 F.3d 1117, 1128 (9th Cir. 2000), *superseded by statute on other grounds* ("only MDA way paying Sherron's fees and only MDA signed a retainer agreement with Sherron.  Although an attorney-client relationship may exist even though a third party is paying the legal fees, [], Munoz offered scant evidence to refute the proof that Sherron was only working for MDA in this transaction.")

USA to claim a privilege that AW-USA has no independent standing to invoke.[9]

Second, the positions that the Almaviva Defendants have repeatedly taken before this Court, make clear that there is no basis for AW-USA to now claim it and AW-IT were both clients of Orrick by virtue of their corporate affiliation.  In connection with their efforts to defeat personal jurisdiction, AW-IT and AV-IT repeatedly disclaimed any direct connection to or unity of interest with AW-USA, and argued instead that AW-USA was and is a "separate entity" from AW-IT and AV-IT.[10]  For instance, the Almaviva Defendants have repeatedly represented to the Court that "Almawave USA Is Not the Italian Almawave Defendant's Agent For Purposes of Personal Jurisdiction," Dkt. 26 at 7, that "the fact that Ms. Sandei is alleged to have a management role at both Almawave USA and one of the Italian Almawave Defendants establishes nothing," *id.* at 8, that "[t]here is no such unity of interest here. The Italian Almawave Defendants on the one hand and Almawave USA on the other have '***separate corporate personalities***.' ***They are legally distinct entities***, and have separate offices, boards of directors, bank accounts, and books and records." *Id.* at 6-7 (emphasis added).[11]  In light of the positions the Almaviva Defendants have taken in this proceeding, there is no basis for AW-USA to now seek to invoke privilege on behalf of AW-IT.  The Almaviva Defendants should not be permitted to continue playing fast and loose with the facts depending on which argument they are presenting to the Court.  *See, e.g., Hoffmann La Roche, Inc. v. Roxane Labs., Inc.*, 2011 WL 1792791, 2011 U.S. Dist. LEXIS 50404, at *22 (D.N.J. May 11, 2011) ("There is no reason to

---

[9] AW-IT and AV-IT appear to have chosen this strategy in their continuing effort to conceal these entities' extensive contacts with this forum relating to the matters at issue in this action, while the Court has pending before it their motion for lack of personal jurisdiction.

[10] *See, e.g.,* Dkt. 26 at 8; Dkt. 39 at 2:12-13, 2:22-24, 4:19-21, 6-7; Dkt. 59 at 1 ("the Italian Almawave Defendants on the one hand and Almawave USA on the other are factually and legally separate entities which properly observe corporate formalities."); *id.* at 2 ("The Italian Almawave Defendants are entities which are legally distinct from Almawave USA").

[11] *See also* Dkt. 59 at 8.

1    treat Roche and Chugai as one entity for purposes of the attorney client privilege, especially

2    when Roche has been so insistent they are separate entities.  Thus, Roche is not the 'client' for

3    purposes of raising the attorney-client privilege associated with Chugai's Disputed Documents.")

4          Finally, whatever "client" or standing theory AW-USA will advance in its reply, the

5    record is devoid of any support for the broad privilege assertion that AW-USA makes here.  For

6    instance, AW-USA appears to invoke privilege over documents and communications dated

7    beginning on March 2014, a time when AW-USA did not even exist on paper, let alone as a

8    functioning company.[12]  Although Loop AI tried to address this issue during the August 20

9    M&C, AW-USA's counsel refused to discuss what is the basis for AW-USA's assertion of

10   privilege over documents and communications *predating* its very existence.  There is also reason

11   to believe that AW-USA *currently is a non-functioning entity*.  To date, AW-USA has refused

12   to identify any of its own "employees and agents" who are carrying on any business for AW-

13   USA.  Although Ms. Sandei identifies herself as having some role at AW-USA, she is primarily

14   an officer and director of AW-IT and AV-IT.  Ms. Sandei has said nothing about whether AW-

15   USA has continued to function following her alleged firing of Ms. Gatti.  During the M&C,

16   Loop AI asked AW-USA to identify who are the employees and agents that AW-USA claims

17   work for it, and AW-USA's counsel indicated Loop AI would have to depose Ms. Sandei to

18   discover that.  Although Loop AI will certainly take Ms. Sandei's deposition, AW-USA is not

19   legally permitted to invoke privilege if it is a non-functioning company.[13]  *See, e.g., Software*

---

[12] The incorporation documents for AW-USA were not even filed until May 16, 2015.  *See* Dkt. 28-13; PJX-048.  "PJX" refers to an Appendix of Personal Jurisdiction Exhibits filed by Loop AI in this case in opposition to AW-IT and AV-IT motion to dismiss for lack of personal jurisdiction.  *See* Dkt. 89-1 to 89-3.  Where evidence relevant to this Opposition was previously filed with the Court, Loop AI respectfully refers the Court to those filings, and will provide the Court courtesy copies of those prior filings cited herein, if the Court so requests.

[13] Notably, although AW-USA is the only US entity of the three Almaviva Defendants, AW-USA's counsel in this litigation has indicated that it was retained solely by Almaviva S.p.A.  *See* VCH Decl., Ex. 7 at 5 (Response to Request 2).  If AW-USA was a functioning company, there
                                                                          (continued…)

1   *Rights Archive, LLC v. Google, Inc.*, No. 09-Misc-80004, 2010 U.S. Dist. LEXIS 11581, at *5

2   (N.D. Cal. Feb. 9, 2010) ("the court concludes that a dissolved ***or non-functioning corporation***

3   ***may not assert the attorney-client privilege.***" (emphasis added)).

4          For the foregoing reasons, AW-USA should not be permitted to assert privilege over the

5   Orrick documents at issue here.

6   **III.    AW-USA Has Failed To Establish That The Documents Withheld Are Privileged.**

7          Even if AW-USA were found to have standing to assert the attorney-client privilege, it

8   has failed to establish that the 611 Orrick documents at issue are in fact privileged under the test

9   established by the Ninth Circuit.  "What is vital to the privilege is that the communication be

10  made in confidence for the purpose of obtaining legal advice from the lawyer."  *U.S. v. Gurtner*,

11  474 F.2d 297, 298 (9th Cir. 1973).  "As the party asserting the privilege," AW-USA is "obliged

12  by federal law to establish the privileged nature of the communications and, if necessary, to

13  segregate the privileged information from the non-privileged information."  *U.S. v. Ruehle*, 583

14  F.3d 600, 608-609 (9th Cir. 2009).  Instead of complying with these requirements, AW-USA

15  improperly asks the Court to presume that all documents produced to it by Orrick are privileged,

16  and that it can shield them from discovery simply by making a generalized and vague assertion

17  that all the documents are so protected. *Id.*[14]  Based on Loop AI's meet and confers with both

18  AW-USA and Orrick, however, it is clear, that AW-USA has made these blanket assertions and

19  refused to provide a privilege log solely to conceal claims of privilege that AW-USA had no

20  basis to make.  For instance, in support of its Motion, AW-USA submitted a declaration by its

21  ─────────────────────

22  (continued)

23  would have been no reason for entering into an engagement solely with a foreign company, who
    is likely the only entity responsible for fees incurred.

24  [14] ("The district court applied a liberal view of the privilege that conflicts with the strict view
    applied under federal common law, which governs here.  By approaching the exclusion question
    with a presumption that the privilege attached, the district court inverted the burden of proof,
    improperly placing the onus on the government to show what information was not privileged."
    (internal citations omitted)).

counsel under penalty of perjury stating that "Orrick's production to Almawave consists of 613 documents.  My colleagues and I have reviewed these documents.  ***All but two of the documents*** are protected from disclosure by Almawave's attorney-client privilege."  Dkt. 168-2 at ¶ 6 (emphasis added).  AW-USA's counsel again reiterated this position to Loop AI throughout the August 20 M&C.  In fact, however, Orrick revealed that the 613 documents "include attachments to emails as separate documents, including some documents the computer reads as attachments ***but are only logos, gifs or similar files that have no substantive content***."  VCH Decl., Ex. 6 (emphasis added).[15]  This establishes that AW-USA's assertions of privilege are unsupported.

**A.**    **AW-USA's Refusal to Produce a Privilege Log Is Not Justifiable.**

AW-USA's willingness to claim privilege over files with "no substantive content" demonstrates that its generalized assertions of privilege in the Motion are not entitled to any weight.  In addition to improperly claiming privilege over blank files, the 611 documents withheld are likely to contain communications or documents within the categories further described below, over which there can be no possible basis to assert privilege.  By refusing to provide any information as to what each of the withheld files contains, and refusing to identify all of the specific participants to each communication, AW-USA essentially has deprived Loop AI of its right under to assess the claim of privilege as to each document withheld.  *See* Fed. R. Civ. P. 45(e)(2)(B), 26(b)(5)(A)(ii) (assertion of privilege must be sufficient to "enable the parties to assess the claim.").  Respectfully, AW-USA's refusal to provide a privilege log or to allow Orrick to prepare one cannot be sustained for several reasons.

---

[15] In a subsequent meet and confer with Loop AI held on August 25, 2015, Orrick again confirmed that these computer generated files were ***independently counted documents*** (*i.e.*, they were not simply a page at the end of one of the 613 files).  Orrick indicated that 17 of the 613 files produced by it fit within this category of files with no substantive content.

1    The law is clear that a privilege log is necessary to justify privilege assertions.[16]  The

2    Ninth Circuit has repeatedly held that "blanket assertions of the privilege are extremely

3    disfavored."  *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129-130 (9th Cir. 1992)

4    (upholding decision requiring "line-by-line justification for each requested redaction.").  "The

5    privilege must ordinarily be raised **as to each record sought** to allow the court to rule with

6    specificity."  *Id.*  (emphasis added).  *See also, e.g., U.S. v. Richey*, 632 F.3d 559, 566 (9th Cir.

7    2011) ("A party claiming the privilege must identify **specific communications and the grounds**

8    **supporting the privilege** as to each piece of evidence over which privilege is asserted."

9    (emphasis added).  This Court also has addressed this issue in her Order governing discovery in

10   this case, issued in conjunction with the Order on AW-USA's request for permission to file this

11   Motion.  *See* Dkt. No. 117 at 3.[17]  This Court instructed that a privilege log must be produced if

12   documents are withheld on privilege grounds, and that "[f]ailure to promptly furnish a privilege

13   log may be deemed a waiver of the privilege or protection."  *Id.*  In its Letter Motion leading to

14   the Court's Order at Dkt. No. 117, AW-USA never asked to be excused from this requirement.[18]

15   *See* Dkt. 112.  Having already delayed resolution of the Motion for more than three months,

16

17

18   [16] *See, e.g. Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 237 (N.D. Cal. 2015) ("The party
19   asserting the privilege bears the burden of establishing all necessary elements. In particular, a
20   party asserting privilege must 'describe the nature of the documents . . . in a manner that, without
     revealing information itself privileged or protected, will enable other parties to assess the claim.'
     The most common way to do this is with a privilege log.") (internal citations omitted); *Koresko
21   v. Bleiweis*, No. 04-00769, 2005 U.S. Dist. LEXIS 1110, at * 4 (E.D. Pa. Jan. 27, 2005) (Finding
     that, in order to assert privilege, the producing party must produce a privilege log "describing the
22   withheld items in sufficient detail 'to enable the demanding party to contest the claim.'")
     (internal citations omitted).
23   [17] ("If a party withholds responsive information by claiming that it is privileged or otherwise
     protected from discovery, that party shall promptly provide a privilege log that is sufficiently
24   detailed for the opposing party to assess whether the assertion of privilege is justified.  Unless
     the parties agree to alternative logging methods, the log should include: [listing six critical
25   elements of a privilege log].").
     [18] Although AW-USA's counsel claims it received the Orrick documents on August 4, 2015, if
26   employees of the Almavia Defendants are copied on some or all of those documents, clearly this
     counsel would have already had them in its possession and could have promptly asked the Court
27   to be excused from the privilege log requirement when it filed its Letter Motion on June 15,
     2015.  *See* Dkt. 112.
28

AW-USA has no justifiable reason for further delaying the ability of Loop AI to properly address its alleged claims of privilege by failing to produce a privilege log.

AW-USA's argument that "compiling a privilege log for more than six hundred documents will take significant time and expense"[19] is also factually unsupported.[20]  As Orrick has confirmed, and contrary to AW-USA's representations, there *are not* "more than 600 documents" to log.  Even if there were more than 600 documents, this number of documents is not so large as to render the creation of a log unreasonable either in respect of time or expense.[21]  For instance, Orrick confirmed to Loop AI that it has produced the 613 documents to AW-USA's counsel in "Concordance format," including native files and metadata.[22]  As the Court is likely familiar, Concordance is a document management system used in discovery.  AW-USA or

_____

[19] Dkt. No. 168.
[20] AW-USA reliance on *Nocal, Inc. v. Sabercat Ventures, Inc.*, No. 04-0240, 2004 WL 3174427, 2004 U.S. Dist. LEXIS 26974, at *9 (N.D. Cal. Nov. 15, 2004), is misplaced.  In *Nocal,* the Court found that the creation of a privilege log would take "***hundreds of hours*** and thousands of dollars to review ***decades*** of documents and prepare privilege logs ***to ultimately produce documents which the Plaintiff already has***."  *Id.*  (emphasis added).  This is clearly not the situation here.  Even if all 611-documents had to logged, this task would not require "hundreds of hours."  Moreover, unlike the plaintiff in *Nocal*, Loop AI does not already have the documents in question.  Similarly, in *Thomas v. Hickman*, No. 06-00215, 2007 WL 4302974, 2007 U.S. Dist. LEXIS 95796 (E.D. Cal. Dec. 5, 2007), another case on which AW-USA relies, the court explicitly found that the privilege log provided by the producing party was insufficient to allow the court to rule on privilege assertions, and ordered the production of a more comprehensive log containing much of the same information required by this Court in the Order re: Discovery Procedures.  *See id.* at *52.  The language from *Hickman* that AW-USA quotes in its Motion, in reality, was an ***admonishment by the court*** reminding the producing party that it does, in fact, have to produce a privilege log because the documents at issue are not voluminous enough to warrant even the possibility of relief from providing a log.
[21] *See, e.g., Coleman v. Schwarzenegger,* No. 90-0520, 2007 U.S. Dist. LEXIS 102305, at *34-35 (E.D. Cal. Dec. 6, 2007) (ordering supplementation of privilege log in case with "enormous" amount of documents and explaining that under the Federal Rules and Ninth Circuit law "[n]either the press of time nor the volume of documents" explain failure to establish privilege over each document withheld.); *Tyco Healthcare Group LP v. Mut. Pharm. Co.*, No. 07-1299, 2012 WL 1585335, 2012 U.S. Dist. LEXIS 63393, at *12-13 (D.N.J. May 2, 2012) (Holding that creation of a privilege log for "potentially less than 3,000 documents" would not be unduly burdensome).
[22] During the August 20 M&C, AW-USA's counsel refused to discuss this issue, claiming he did not know in what format the 613 documents were produced, and that he did not know whether the documents had been uploaded on a document management system.  During the M&C, AW-USA's counsel also refused to discuss how many hours he expected it would take his firm to create the log, claiming that he would only address this issue in briefing to the Court.

Orrick could have, and can quickly generate a report from Concordance listing each file and relevant metadata (e.g., the sender, recipient, subject, date of the document, subject line or title, etc.) and they can easily revise the report manually to include any additional information that is required for a privilege log. These tasks are standard in litigation, and courts regularly require the production of privilege logs even where they include thousands of entries.[23]

In addition, the record does not reflect that AW-USA has been running this case on a shoestring, such that the expense of creating a privilege log would be unreasonable. For instance, AW-USA appeared at a simple status conference held before the Court on July 23, 2015 represented by three lawyers and one law clerk.[24]  AW-USA regularly is represented by a minimum of two, and sometimes three attorneys in every teleconference regarding the case, including calls that last several hours. AW-USA has regularly invested a substantial amount of time interjecting itself in issues that did not even pertain to it, such as for instance the filing of briefs in the United States District Court for the Southern District of New York regarding a dispute between Loop AI and a nonparty. Finally, while AW-USA complains that it should not incur this expense, during the attempted M&C, Loop AI asked whether an insurance company was paying AW-USA's defense costs, and AW-USA's counsel refused to discuss the topic claiming it was not relevant. AW-USA cannot argue it has not prepared a privilege log to

---

[23] In an age of electronic communications, when digitally stored correspondence is rapid and frequent, holding that the creation of a privilege log with 611 entries would be an undue burden would effectively free nearly all producing parties from ever having to produce privilege logs. This is clearly not the law. *See Mount Hope Church v. Bash Back*, 705 F.3d 418, 427 (9th Cir. 2012) ("It would not be correct in law to say that there is undue burden every time a subpoena calls for privileged information.")

[24] Specifically, AW-USA brought to the status conference the following Venable attorneys: Mr. Wallerstein and Ms. Culp (at counsel's table), and Ms. Diana Cox and Mr. Juan (law clerk) (in the audience).

allegedly avoid an expense, when it is not itself paying for its own defense costs.[25]

Respectfully, there was and is no basis for AW-USA to fail to produce a privilege log identifying the basis of the privilege being claimed over each document withheld.  The failure to produce a privilege log is sufficient on its own to require the prompt production of the documents being withheld.[26]

**B.    Communications or Documents Exchanged with Third Parties or With Gatti Are Not Privileged.**

Several of Loop AI's requests in the Subpoena, including, for instance, Requests 1, 11, 14-16, and 21 may include documents and communications involving third parties (*i.e.*, parties with whom Orrick was negotiating or communicating on behalf of Almaviva S.r.l.).  An attorney's communication with another person in respect of the negotiation of a matter is not shielded from discovery simply because an attorney is involved.  *See, e.g., Fresenius Med. Care Holding, Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 654 (N.D. Cal. 2004) ("Additionally, Baxter may not claim attorney client privilege for communications with Althin's attorneys, if Baxter and Althin were involved in arms length negotiations at the time of the communication.").  "An attorney's involvement in, or recommendation of, a transaction does not place a cloak of secrecy around all the incidents of such a transaction."  *In re Fischel*, 557 F.2d 209, 211-212 (9th Cir. 1977).  Even if third parties may have been communicating with Orrick about facts relevant to or related to AW-USA, "facts which an attorney receives from a third party about a client are not privileged."  *Id.*  Similarly, an "attorney's subsequent use of this information in advising his client does not automatically make the information privileged."  *Id.*  During the M&C, Loop AI

---

[25] Indeed, as noted *supra*, AW-USA is certainly not incurring any expense as its counsel as indicated to have signed an engagement letter solely with AV-IT.  *See* VCH Decl., Ex. 7 at Response to Request 2.

[26] At a minimum, in light of AW-USA's counsel improper assertion of privilege over blank documents, Loop AI respectfully requests that the Court order the production of a privilege log and that the log be prepared directly by Orrick.

---

repeatedly explained this point to AW-USA in an attempt to determine whether AW-USA is

withholding any documents involving communications with third parties, but AW-USA refused

to discuss it.[27]

Particularly troubling is AW-USA's assertion that any communication by/to Orrick

involving Gatti is *ipso facto* privileged.  This assertions is simply unfounded for the following

reasons:

- ***Gatti's communications with Orrick before she became an officer of AW-USA
  cannot be covered by privilege.***  During at least the first part of the period covered by
  the Subpoena, Orrick was representing the Almaviva Defendants in their negotiations
  against Gatti.  Any communications during this period cannot possibly be covered by
  a privilege belonging to AW-USA.  Thus, for example, Orrick's communications
  with Gatti regarding the terms of her employment agreement with AW-USA, or
  regarding the extent to which her new employment relationship with AW-USA might
  be inconsistent with her pre-existing obligations to Loop AI, could not be privileged
  because they were communications with someone on the opposite side of the table
  from their client.  AW-USA's assertion of privilege in respect of Gatti-Orrick
  communications during this period clearly is improper, and all those communications
  must be produced.

- ***Gatti's communications with Orrick after she became an officer of AW-USA were
  not necessarily on behalf of AW-USA for the purpose of obtaining legal advice for
  AW-USA, and so would not necessarily be privileged***.  Only communications in
  which Gatti was acting on behalf of AW-USA for the purpose of obtaining legal
  advice for AW-USA would be privileged.  Communications between Gatti and
  Orrick regarding the terms of Gatti's employment, or on the topic of whether Gatti's
  employment by AW-USA breached Gatti's employment contract with Loop AI,

---

[27] *See, e.g.,* 8/20 M&C at min. 29:05: **Loop AI's Counsel**: "Let's say you were negotiating with
Gatti, right now, about a contract and you were negotiation on behalf of AWUSA and Gatti was
on her own negotiating with you. The negotiations between you vis-à-vis Gatti in respect of the
contract you were negotiating for your client against Gatti would not be privileged. ... there's no
basis in our view for any privilege...." **AW-USA's Counsel**: "Let's assume that's true.  Assume
that there's some document that is not in fact privileged – OK, so, what about that. ... What's that
going to do to the pending motion?" **Loop AI's Counsel**: "Because you're claiming the entirety
of the 600 documents as privileged, but we don't know what those documents are, so we're
trying to understand whether you are including in the universe of documents." **AW-USA's
Counsel**: "No no, Valeria, I know what you're trying to understand, but what I'm saying is if I'm
wrong about the privilege that's, uh, that's not going to help us resolve the pending motion. I am
not, uh, I filed the motion after careful consideration and in my opinion extensive meeting and
conferring – I know you disagree with that.  But, the point is -" **Loop AI's Counsel**: When did
we meet and confer about the Orrick Subpoena? **AW-USA's Counsel**: "Valeria, listen, so the
point is, I'm not... This dialogue is not going to be helpful to resolving the motion because I'm
quite confident, and I'm not going to say 'oh, you know what, some subset of those 611
documents actually are not privileged because Valeria has explained this theory to me that never
crossed my mind.  So now I'm gonna limit...' I'm not doing that."

would not be privileged.  Communications in which Gatti was disclosing Loop AI's confidential or proprietary information cannot be protected from disclosure on privilege grounds.  AW-USA has failed to explain how it was able to determine that the documents it seeks to protect from disclosure, particularly those in which Gatti is copied in respect of patent applications, do not include Loop AI's confidential and proprietary information.  Having chosen to hire a person that was concurrently working for a company engaged in the development of the same artificial intelligence technology, AW-USA cannot now invoke privilege to protect from discovery critical documents that may include Loop AI's confidential information and trade secrets.

- *Gatti's role with AW-USA, as described in testimony provided by both Gatti and the Almawave Defendants, is not a role requiring legal advice from Orrick*.  The Almaviva Defendants have submitted testimony regarding Gatti's role for AW-USA as follows:  "Ms. Gatti's duties and main responsibilities were managing the marketing and sales of Almawave's products in the United States through Almawave USA. ... Ms. Gatti's duties did not include product development for Almawave USA or development of intellectual property for Almawave USA."  Dkt. No. 25-1 at ¶¶ 14-15 (emphasis in original).  "Almawave USA was established to market Almawave S.r.l.'s existing products, based on its existing intellectual property."  *Id*.  In light of this record, AW-USA has a particularly difficult burden to show that Gatti's communications with Orrick were covered by the attorney-client privilege.  Yet AW-USA makes no attempt whatsoever to demonstrate why an employee with Gatti's role would have occasion to seek legal advice on behalf of AW-USA from Orrick.

AW-USA has failed to discharge its burden to show that any, let alone all of the communications involving Gatti and Orrick are covered by the attorney-client privilege.

Accordingly, Loop AI respectfully requests that all such documents be promptly produced.

## C.   Documents Pertaining to Introductions to Attorneys Are Not *Ipso Facto* Privileged.

Request 1 in the Subpoena is generally directed to documents relating to how Orrick came to be hired by Almawave S.r.l. in 2014.[28]  VCH Decl., Ex. 2.  Communications responsive to this request cannot be deemed attorney-client privileged simply because they may have involved an attorney or firm.[29]  It is highly unlikely that any communication introducing a prospective client to a firm would immediately reveal information that would qualify as privileged under the stringent test articulated by the Ninth Circuit.  Without knowing what

---

[28] In communications that Ms. Gatti had with third parties, for instance, Ms. Gatti boasted that Almawave S.r.l. had hired the same law firm representing Loop AI.
[29] As noted above, at the time of these communications, presumably in March 2014, AW-USA did not exist and there is no basis for it to invoke privilege.

documents AW-USA is withholding in response to this request, it is impossible to assess the

validity of AW-USA's claim of privilege.  Further, at the time covered by this request, Gatti was

the CEO of Loop AI and was regularly dealing with Orrick, who had already served as Loop

AI's counsel since 2012.  There is no basis for AW-USA to generally claim privilege over all

communications that may have included Gatti without providing a detailed explanation of why

its own privilege would apply to those communications and how and who made such

determination.

### D.    Engagement Letters Are Not Generally Privileged.

Request 2 in the Subpoena generally seeks the engagement letter relating to Almaviva

S.r.l. in respect of the engagement with Orrick that is at issue in this action.[30]  Letters of

engagement are not necessarily privileged.  *See, e.g. United States v. Blackman,* 72 F.3d 1418,

1424 (9th Cir. 1995) ("As a general rule, client identity and the nature of the fee arrangement

between attorney and client are not protected from disclosure by the attorney-client privilege.").

To the extent some portion of the letter or letters may be privileged, this is not a basis for refusal

to produce the entirety of the document. *See Clarke,* 974 F.2d at 129.  At minimum, AW-USA

must produce redacted versions of the engagement letters, with specific justifications for each

redaction. *Id.*

### E.    Billing Statements Are Not Inherently Privileged.

Requests 5-8 in the Subpoena generally seek billing related records.  The Ninth Circuit

has held that such documents are not inherently privileged. *See Clarke*, 974 F.2d at 130 ("We

have examined the attorney billing statements ordered disclosed by the district court. We

conclude that they do not contain privileged communications between attorney and client.").

---

[30] Loop AI has specified to Orrick that this request is limited to the engagement by Almaviva
S.r.l. that began in 2014.  Loop AI understands from Orrick that the 613 documents produced by
it to AW-IT pertain solely to the parties and matters at issue in this litigation, and are not related
to any other engagement prior to 2014.

*Clarke* explained that "the [billing] statements contain information on the identity of the client, the case name for which payment was made, the amount of the fee, and the general nature of the services performed.  Our previous decisions have held that this type of information is not privileged."  *Id.*  Although AW-USA cites *Clarke* in its Motion, it fails to explain why, in light of *Clarke*, it is withholding documents that the Ninth Circuit has expressly held are not inherently privileged.[31, 32.]

### F.   Corporate Organization and Governance Documents Cannot All Be Privileged.

Request 20 in the Subpoena seeks the production of corporate organization and governance documents such as corporate minute books, articles of incorporation, shareholder resolutions, board meeting minutes, and other similar documents.  AW-USA claims that "[t]here are no documents responsive to Request No. 20 that are not privileged."  Dkt. 168 at 10.  This position does not seem reasonable.  AW-USA fails to cite any authority for the proposition that all of the foregoing documents can be withheld on grounds of privilege simply because they are in the custody of a law firm.

### IV.   AW-USA Has Failed To Establish That It Has Not Waived Privilege To The Extent The Documents Withheld Contain Privileged Information.

"[T]he burden of proving that the attorney-client privilege applies" requires "the asserting party … [to] prove that it has not waived the privilege."  *Weil v. Investment/Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981).   The Ninth Circuit, like other federal courts, has "recognize[d] several ways by which parties may waive the privilege."  *Pac. Pictures Corp. v. U.S. Dist. Court*, 679 F.3d 1121, 1126 (9th Cir. 2012).   Here, AW-USA seeks to discharge its

---

[31] Dkt. No. 168 at 11.
[32] The court in *Clarke* goes on to endorse a system for determining the existence of privilege wholly unlike that used by AW-USA here: *in camera* inspection of allegedly privileged documents, with the party asserting privilege providing "a line-by-line justification for assertion of the attorney-client privilege."  *Clarke,* 974 F.2d at 129.  Not only has AW-USA failed to provide a line-by-line justification for its assertions of privilege, it hasn't even produced a document-by-document justification.

burden by knocking down a false straw man.  Specifically, AW-USA claims in its Motion that "Loop has previously argued that Almawave waived the privilege by asserting a defense of 'advice or counsel.' (Dkt. No. 124 at 6:4-7:2)." [sic]  Dkt. 168 at 13:6-8.  This assertion is incorrect.  The text that AW-USA purports to quote verbatim in fact appears nowhere in Loop AI's brief.  And in fact, Loop AI has never previously taken the position that AW-USA has expressly invoked an "advice of counsel" defense.  AW-USA has chosen to completely ignore the position actually asserted in Loop AI's brief at Docket 124, which discusses one of the Almaviva Defendants' ***implicit waivers***.[33,34]  By failing to even address the position actually advanced by Loop AI in respect of waiver, AW-USA has failed to discharge its burden and therefore is not entitled to rely on the attorney-client privilege.  Loop AI's waiver analysis is more fully explained below.

**A.**  **Implicit Waiver Arising From the Almaviva Defendants' Repeated Assertions That They Reasonably Believed Their Hiring of Gatti Was Lawful.**

Request 18 in the Subpoena seeks documents regarding "any legal implication, conflict, or permissibility of" "Gatti's work, retention, hire, or employment, or other affiliation with" any of the Almaviva Defendants.  The Almaviva Defendants have refused to comply with this request, on the ground that it calls for the production of material protected by the attorney-client privilege.  This assertion of privilege is unfounded here, because as described below, the Almaviva Defendants have implicitly waived the privilege that AW-USA purports to assert.

---

[33] *See* Dkt. No. 124 at 13, n. 13 (describing the basis for the implicit waiver and providing supporting authority).
[34] Loop AI also notes that during the July 2, 2015 hearing before Judge Gilliam the Court questioned AW-USA's use of a reply brief to make new arguments that could have been included in its opening brief.  *See, e.g.*, Dkt. 159 at 10:24-11:04 ("THE COURT: Is there a reason that [the argument] was wasn't raised ***before the reply***? MS. CULP: No, other than that, you know, inartful briefing, your Honor…" (emphasis added)).  Particularly since AW-USA has the burden of showing it has not waived privileged, AW-USA failure to address Loop AI's implicit waiver argument in the opening brief, and to instead manufacture an "advice of counsel" argument that Loop AI never made, appears to have been calculated to ensure that Loop AI would not have an opportunity to respond to whatever arguments AW-USA has clearly reserved for its reply.  Respectfully, this tactic is improper.

1    Since the beginning of this case, the Almaviva Defendants have relied upon what they

2    have referred to as "***The Truth About Almawave USA and the Italian Almawave Defendants***,

3    ***and their Relationship with Ms. Gatti***."  Dkt. No. 25 at 7:15-16.  In various filings with the

4    Court, and in additional communications they have not yet filed with the Court (including, for

5    example, their letter threatening Loop AI with a Rule 11 Motion),[35] the Almaviva Defendants

6    have insisted that they were "never informed" that Gatti "had an exclusive employment

7    relationship with Plaintiff,"[36] that "Ms. Gatti's association with Plaintiff did not give Ms. Sandei

8    any reason to think Ms. Gatti was precluded from working with Almawave USA,"[37] that "Ms.

9    Sandei was led to believe that Ms. Gatti was not precluded from working with Almawave

10   USA,"[38] that "Ms. Sandei never saw Ms. Gatti's employment contract with Plaintiff, nor did the

11   headhunter … ever inform [her] that Ms. Gatti had any conflicts to any extent, legal or practical,

12   to becoming involved with Almawave USA;"[39] that "Almawave USA reasonably believed that

13   Ms. Gatti was not in breach of any contracts."[40]  AW-USA does not (and cannot) deny that by

14   repeatedly making these statements, it voluntarily introduced into this proceeding the issue of the

15   Almaviva Defendants' belief as to the lawfulness of their conduct.  Instead, AW-USA claims

16   that the Almaviva Defendants' statements do not waive privilege over the subject matter of the

17   statements because they do not expressly refer to "advice or information provided by counsel."

18   Dkt. 168 at 13:14-17.  AW-USA similarly contends that "Ms. Sandei never stated that

---

[35] *See, e.g.*, VCH Decl., Ex. 8 (enclosing Mr. Wallerstein's letter and exhibits threatening counsel on the basis of the statements made in the declarations regarding the Almaviva Defendant's alleged lack of knowledge and reasonable reliance on their belief that what they were doing was legal.).  *See also, e.g.*, Dkt. 60 at 1 ("Loop disregarded Rule 11 of the Federal Rules of Civil Procedure and elected to file the FAC, which contains egregious and known misstatements of facts that will be proven false through the course of discovery.  Almawave will pursue sanctions at the appropriate time.")
[36] *See, e.g.*, Dkt. 25 at 2:1-5, 5:2-6, 7:25-8:2; Dkt. 25-1 at ¶ 9; Dkt. 38 at 14, n. 9; Dkt. No. 59 at 3:6-13, 7.
[37] *See, e.g.*, Dkt. No. 25 at 4:27-28.
[38] *See, e.g.*, Dkt. No. 25-1 at ¶ 8.
[39] *See, e.g.*, Dkt. 25-1 at ¶ 9; Dkt. 59 at 3:6-14, 7; Dkt. 62 at 3:6-13; Dkt. 71 at ¶ 7.
[40] *See, e.g.*, Dkt. No. 60 at 8:17-21.

---

20

Almawave's beliefs and/or knowledge relating to Ms. Gatti's employment with Loop were based on any information or advice received from Orrick." *Id.* at 6:26-28.  These arguments simply miss the point, because implicit waiver of the attorney-client privilege does not require an express reference to advice provided by an attorney.  To the contrary, courts find implicit waivers of the attorney-client privilege in situations where the party asserting the privilege has ***not*** affirmatively stated that it relied on the advice of counsel, and when that party did ***not*** "subjectively intend to waive the privilege." *Weil*, 647 F.2d at 25.  Rather implicit waivers occur when a party voluntarily injects into the case its knowledge, belief, or good faith, which as a matter of fairness then opens the door for the other side to inquire into whether the basis for the asserted knowledge, belief or good faith was in fact reasonable.  In *U.S. v. Bilzerian,* the court explained that when a defendant "may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes."[41] *U.S. v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (affirming *in limine* ruling of proposed testimony).  For this reason, the court explained, "the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications." *Id.*  "This waiver principle is applicable here for [the defendant's] testimony that he thought his actions *were legal* would have put his knowledge of the law and the basis for his understanding of what the law required in issue." *Id.*  "'His conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent." *Id.*   In *Bilzerian*, the defendant also claimed (as AW-USA does here) that "mere protestation of innocence and denial of malicious intent do not waive privilege."  Dkt. 168 at 14.

---

[41] *Bilzerian* is one of the leading federal decisions on implicit waivers and has been followed by district and appellate courts around the country, including in the Ninth Circuit. *See, e.g., Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992)(relying on *Bilzerian* to find waiver); *Regents of the Univ. of Cal. v. Micro Therapeutics, Inc.*, No. 03-05669, 2007 WL 2069946, 2007 U.S. Dist. LEXIS 54054 (N.D. Cal. July 13, 2007).

But the series of statements made by the Almaviva Defendants in this case go well beyond simple denials of wrongdoing.  If the Almaviva Defendants wanted to deny the allegations made in the Complaint and Amended Complaint, they could have done just that.  Instead, they repeatedly insisted (and successfully persuaded the Court in opposing the TRO) that the truth was that they reasonably believed what they were doing was legal, that they did not know of any "legal or practical" implications arising out of what they were doing.  As the *Bilzerian* court explained, defendants are free to simply deny intent, but their "own testimony as to [their] good faith would open the door to cross-examination, possibly including inquiry into otherwise privileged communications with [their] attorney." *Bilzerian*, 926 F.2d at 1293.[42]  The statements made by the Almaviva Defendants regarding their belief in the lawfulness of their hiring of Gatti puts into issue the basis for and reasonableness of their claimed knowledge.  This implied waiver pertains to all or part of the Requests in the Subpoena, including 1, 2, 11, 14, 15, 16, 20, and 21.

### B.   The Almaviva Defendants' Reliance on the Contractual Provisions Prepared by Orrick for Gatti Implicitly Waived Privilege.

The Almaviva Defendants have said that their belief in the lawfulness of their hiring of Gatti was based in part on a provision contained in an agreement they entered into with Gatti: "Ms. Gatti never informed [any of them] that she had an exclusive employment relationship with Plaintiff that prevented her from working for Almawave USA; in fact, ***Ms. Gatti represented exactly the contrary in the agreements*** she signed with Almawave USA." *See, e.g.,* Dkt. 25 at 2:25-28 (emphasis added); Dkt. 168 at 6.  The agreements referred to by the Almaviva

[42] *See also, e.g., U.S. v. Exxon Corp.*, 94 F.R.D. 246, 249 (D.D.C. 1981) (finding waiver where a corporation claimed that it had relied on representations of a non-attorney third party (there a governmental agency)). ("Exxon has waived its attorney-client privilege by raising the defense of good faith reliance on DOE's representations. These defenses do not solely relate to the 'objective' representations of DOE but directly concern Exxon's subjective interpretation and understanding of those representations; i.e., Exxon's corporate state of mind."); *Regents*, 2007 U.S. Dist. LEXIS 54054, at *9 ("If a party merely denies an allegation it does not waive the privilege, but assertions regarding a defendant's good faith may be so inextricably intertwined with the defendant's state of mind that the privilege must give way to an inquiry into the basis for such belief.")

Defendants were prepared by Orrick.  By claiming to have relied on this contractual provision, the Almaviva Defendants have put into issue the extent and reasonableness of their claimed reliance.[43]  This issue is likely to be of critical importance to the case because Gatti claimed that she told the Almaviva Defendants that she (Gatti) needed to seek Loop AI's permission to take on her new role with Almaviva.[44]  The statements made by the Almaviva Defendants regarding their reliance on the contractual representation by Gatti, puts into issue the circumstances in which the contract relied upon was negotiated and the advice rendered by Orrick regarding the effect of the provision and the extent to which the Almaviva Defendants' reliance was reasonable.

### C.    The Almaviva Defendants' Counsel's Voluntary Disclosure of The Advice He Did Not Give Them While At Orrick, Puts Into Issue The Advice Given By Other Orrick Lawyers.

In response to the Subpoena, Orrick identified Mr. Sternberg as the Orrick supervising attorney responsible for the Almawave S.r.l. matter at issue in this action, and also identified other Orrick lawyers who worked on the same matter.  Mr. Sternberg moved to Venable LLP earlier this year.   Venable recently voluntarily disclosed that "while at Orrick, [Mr. Sternberg] did not advise anyone about implications arising from Anna Gatti's employment with Loop AI because he was not aware of [it] … at that time."  VCH Decl., Ex. 7 at 9.  This type of conduct supports a finding of both express[45] and implied waiver.  Loop AI would have no way to challenge this selective and self-serving disclosure without access to the other communications

---

[43] *See, e.g., Arenson v. Broadcom Corp.*, 2005 U.S. Dist. LEXIS 44424, at *8-9 (C.D. Cal. Feb. 10, 2005) ("A reliance on counsel privilege waiver does not require a party's direct statement that counsel was relied upon.  ***It may also arise from more indirect evidence where a party affirmatively raises an inference of reliance on counsel for the party's own benefit***." (emphasis added) (citing cases)).
[44] *See. e.g..* Dkt. 24-1 at 8:15-16 ("I told Valeria [Sandei] that I was already the CEO of Loop.ai … and that I would have to discuss it with my co-founder…").
[45] *See, e.g., U.S. v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) ("Voluntary disclosure of privileged communications constitutes waiver of the privilege for all other communications on the same subject.")

within Orrick, or between Orrick and others regarding the subject matter disclosed.  That of course would be grossly unfair, because Mr. Sternberg very carefully refrained from saying anything about the advice provided *by other Orrick lawyers* or whether any Orrick lawyer even inquired, before preparing that contract, as to whether Gatti had other employment.  Having chosen to put in issue the question of whether Orrick provided advice to the Almaviva Defendants on this topic, the Almaviva Defendants should not be permitted to assert privilege to preclude Loop AI from obtaining discovery related to that subject matter.  The Almaviva Defendants' statement regarding the scope of the advice provided by Mr. Sternberg  places into issue the nature and content of communications between the Almaviva Defendants and all lawyers at Orrick.[46]

> **D.**    **The Almaviva Defendants' Repeated Contentions that Gatti Did Not Assist Them In Technology Development Does Not Permit AW-USA To Now Assert Privilege Over Communications Related To That Subject Matter.**

The Almaviva Defendants repeatedly represented to the Court the limited nature of Gatti's role, stating, "Ms. Gatti's duties and main responsibilities were managing the marketing and sales of Almawave's products in the United States through Almawave USA. ... Ms. Gatti's duties did not include product development for Almawave USA or development of intellectual property for Almawave USA."  Dkt. 25-1 at ¶¶ 14-15 (emphasis in original).  They further explained the limited nature of AW-USA's purpose, stating, "Almawave USA was established to market Almawave S.r.l.'s existing products, based on its existing intellectual property."  *Id*.  Despite their representations that Gatti had no involvement in technology related matters, AW-USA has invoked the privilege to shield from discovery documents responsive to Request 19 in

---

[46] This implied waiver pertains to all or part of Requests in the Subpoena, including requests 11, 14, 15, 16, 18, 20, and 21.

the Subpoena,[47] putting into issue the truthfulness of their prior statement that Gatti had no

involvement in any technology related matters.[48]  AW-USA's objection to Request 19 makes

clear that Gatti was very much involved in the Almaviva Defendants' pursuit of technology

development.  It would be grossly unfair to allow the Almaviva Defendants to claim that Gatti

had no involvement in any technology related matters, such that they could not misappropriate

Loop AI's technology, while at the same time permitting them to avoid discovery on this issue

by claiming privilege.  On a related point, the Almaviva Defendants have submitted sworn

declarations throughout this proceeding claiming that

- "after a reasonable and good faith search," they determined they had no
  confidential information or trade secrets belonging to Loop AI; that they do not
  possess and "obviously have not used any trade secrets acquired from Loop";
  Dkt. 25-1;
- that this action is belied by "the incontestable evidence that AW-USA has not
  used Plaintiffs trade secrets because it never had them to begin with, and has no
  intention of, or need to, use any such information in the future." *See, e.g.,* Dkt. 25
  at 13; Dkt. No. 38 at n. 8;
- That AW-USA "did not and would not attempt to misappropriate the trade
  secrets of Plaintiff."  Dkt. 25 at 9; Dkt. 63 at ¶ 5; Dkt. 66 at ¶ 5; Dkt. 71 at ¶¶ 5-8.

These statements are sufficient to open the door to discovery regarding the materials sought by

Loop AI in the Subpoena.  Courts have held that "[a] party may neither disclose nor dispute

contents of documents while simultaneously concealing other portions under a claim of

privilege, when the truth of the party's statements 'can only be assessed by examination of the

privileged communication."  *See Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 244 (N.D.

Cal. 2015) (overruling privilege objection over documents after defendant claimed it "never used

the alleged confidential information.").

        For the foregoing reasons, Loop AI respectfully requests that AW-USA' Motion be

denied in its entirety and that production of the Orrick documents be promptly ordered.

---

[47] Request 19 relates to Gatti's involvement in any communication with Orrick regarding the
Almaviva Defendants' attempts to apply for a patent, which, as alleged in the Complaint, covers
the same technology area of Loop AI.
[48] This issue also may pertain to all or part of Requests 11, 14, 15, 16, 19-20 in the Subpoena.

1

2                                                    Respectfully submitted,

3

4    August 27, 2015                      By:   /s/ *Valeria Calafiore Healy*
                                          _____
5                                               Valeria Calafiore Healy, Esq. (*phv*)
                                                HEALY LLC
6                                               154 Grand Street
                                                New York, New York 10013
7                                               Telephone:      (212) 810-0377
                                                Facsimile:      (212) 810-7036
8

9                                               Daniel J. Weinberg, Esq. (SBN 227159)
                                                FREITAS ANGELL & WEINBERG
10                                              LLP
                                                350 Marine Parkway, Suite 200
11                                              Redwood Shores, California 94065
                                                Telephone:      (650) 593-6300
12                                              Facsimile:      (650) 593-6301

13                                              Attorneys for Plaintiff
                                                LOOP AI LABS, INC.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28