UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS INC,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>ANNA GATTI, et al.,<br><br>　　　　　Defendants. | Case No. 15-cv-00798-HSG<br><br>**ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND GRANTING JURISDICITONAL DISCOVERY**<br><br>Re: Dkt. No. 62 |

Pending before the Court is a motion to dismiss the First Amended Complaint ("FAC") for lack of personal jurisdiction filed by Defendants Almaviva S.p.A. and Almawave S.r.l. (the "Italian Almaviva Defendants"). Dkt. No. 62 ("Mot."). For the reasons stated below, the Court **DENIES WITHOUT PREJUDICE** the Italian Almaviva Defendants' motion and directs the parties to meet and confer regarding jurisdictional discovery as directed by this order.

**I.　FACTUAL BACKGROUND**

In this action, Plaintiff Loop AI Labs, Inc. ("Loop AI") alleges that Defendant Anna Gatti, its now-former CEO, conspired with the Italian Almaviva Defendants to misappropriate Loop AI's trade secrets and generally frustrate its business prospects. Loop AI alleges that the Italian Almaviva Defendants initiated the scheme when it solicited Gatti to become the CEO of a planned U.S. subsidiary (to be called Almawave USA), negotiated their agreement with Gatti while she was purportedly working as a full-time employee of Loop AI, and entered into an employment agreement governed by California law. The Italian Almaviva Defendants then engaged in hundreds of written communications with Gatti, participated in weekly video and teleconferences, and had the right to (and did) direct Gatti's activities as their employee in California. Loop AI alleges that the Italian Almaviva Defendants directed Gatti to use her position as CEO at Loop AI to access and misappropriate Loop AI's trade secrets and to undermine its investor negotiations.

The Italian Almaviva Defendants do not challenge the existence of the forum-related contacts from which Loop AI seeks to establish specific personal jurisdiction. For example, the Italian Almaviva Defendants do not contest that they hired Gatti and directed her activities in California through weekly meetings and hundreds of written communications, as is alleged in the FAC. Instead, the Italian Almaviva Defendants dispute that these contacts were related to the alleged scheme upon which this action is based. Numerous employees of the Italian Almaviva Defendants alleged to be involved in the wrongdoing submitted sworn declarations in connection with this motion, stating that they never told Gatti to misappropriate trade secrets or to undermine Loop AI's investor relationships and, to the extent Gatti actually did so, her activities were without their knowledge or consent. *See, e.g.,* Dkt. No. 66 ("Declaration of Angela Nicolella") at ¶ 4 ("The communications I had involving Ms. Gatti, IQSystem LLC, and IQSystem Inc. were part of routine business transactions between the Italian Almawave Defendants and Almawave USA, and were not in furtherance of the alleged wrongdoing described in the FAC."); Dkt. No. 68 ("Declaration of Mariantonietta Perri") ¶ 5 ("[T]he entirety of the communications, negotiations, and other contact described in paragraph 62 of the FAC between the officers of the Italian Almawave Defendants and Ms. Gatti related to the formation and ongoing operations of Almawave USA, and not to any alleged wrongful conduct directed at Loop.").

## II.   LEGAL STANDARD

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1154 (9th Cir. 2006). "The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Id*. In California, the long-arm statute extends jurisdiction to the limits of due process, so the resolution of the Court's jurisdiction turns on the federal due process analysis. *See id*. at 1155. For due process to be satisfied, a defendant, if not present in the forum, must have sufficient "minimum contacts" with the forum such that the assertion of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Id*. (quoting (*Int'l Shoe Co. v. Washington,* 326 U.S. 310, 315 (1945)). A defendant's "minimum contacts"

with the forum are sufficient to support jurisdiction where (1) the defendant has performed some act or transaction within the forum or purposefully availed himself of the privileges of conducting activities within the forum, (2) the plaintiff's claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction over the defendant is reasonable. *Id.* at 1155-56. "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Omeluk v. Langsten Slip & Batbyggeri A/S,* 52 F.3d 267, 270 (9th Cir. 1995).

Where the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand a motion to dismiss for lack of personal jurisdiction. *Mavrix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218, 1223 (9th Cir. 2011) (citing *Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124, 1127 (9th Cir. 2010)). Although a court must accept as true any uncontroverted allegations in the complaint and resolves any disputes of fact in the plaintiff's favor, it "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Alexander v. Circus Circus Enters., Inc.,* 972 F.2d 261, 262 (9th Cir. 1992) (quotation omitted).

However, courts are not required to determine jurisdiction on the papers alone. A district court has "broad discretion" to permit or deny jurisdictional discovery. *See Butcher's Union Local No. 498 v. SDC Investment, Inc.,* 788 F.2d 535, 540 (9th Cir.1986) (trial court has "broad discretion to permit or deny discovery"). "Discovery should ordinarily be granted where 'pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *Butcher's Union,* 788 F.2d at 540 (citation omitted). The Ninth Circuit has reversed for abuse of discretion when further discovery "might well" have established a basis for personal jurisdiction. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1135 (9th Cir. 2003). Denial of jurisdictional discovery "is not an abuse of discretion when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction," *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 430 n.24 (9th Cir. 1977), or when the request is "based on little more than a hunch that it might yield jurisdictionally relevant facts," *Boschetto v. Hansing,* 539 F.3d 1011, 1020 (9th

Cir. 2008).

## III.    DISCUSSION

Unlike most defendants who challenge the Court's exercise of specific personal jurisdiction, the Italian Almaviva Defendants do not dispute the existence of the California contacts alleged in the FAC.  Loop AI has presented the Court with detailed factual allegations representing that the officers of the Italian Almaviva Defendants solicited Gatti in early 2014 (before Almawave USA had been incorporated) and formed a business relationship whereby certain employees of the Italian Almaviva Defendants maintained frequent communication and exercised significant control over Gatti's California business activities.  The Italian Almaviva Defendants do not deny that they entered into a contractual relationship with Gatti while she was working as the CEO of Loop AI before Almawave USA was formed.  Mot. at 13.  Nor do they dispute that their officers participated in weekly conference calls, exchanged hundreds of written communications, and had the right to direct Gatti's activities in the state and exercised that right.  The first part of the minimum contacts analysis is satisfied.

This motion largely turns on the second prong of the minimum contacts test.  The Italian Almaviva Defendants assert that jurisdiction is improper because Loop AI has not demonstrated that its claims "arise out of" the Italian Almaviva Defendants' forum-related activities.  Several employees of the Italian Almaviva Defendants have submitted declarations attesting that their business relationship and associated contacts with Gatti were not wrongful or illegal, and had nothing to do with the misconduct alleged in the FAC.  *See, e.g.,* Dkt. No. 64 (Declaration of Antonio Dibitonto) at ¶ 5 ("[T]he entirety of the communications, negotiations, and other contact described in paragraph 62 of the FAC between the officers of the Italian Almawave Defendants and Ms. Gatti related to the formation and ongoing operations of Almawave USA, and not to any alleged wrongful activities directed at Loop.").  In short, the Italian Almaviva Defendants admit the general scope of their California contacts with Gatti, but argue that the factual particulars of those contacts do not support liability for the claims alleged in this action.

The Italian Almaviva Defendants are correct to a point.  The Court may not rely on Loop AI's allegations of misconduct in the face of competing affidavits.  *Alexander,* 972 F.2d at 262

4

(holding that a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit"). Because no employees of Loop AI (outside of Gatti) attended the Defendants' conference calls, and because Loop AI does not have access to Gatti's personal email or the email accounts of the Italian Almaviva Defendants, Loop AI does not know exactly what the Defendants discussed during the commission of their alleged scheme. That information is solely in the hands of the Defendants. Accordingly, Loop AI did not (and, realistically speaking, could not at this stage of the litigation) produce declarations or other evidence sufficient to dispute the blanket denials offered in the declarations submitted by the employees of the Italian Almaviva Defendants.

However, the Court disagrees with the Italian Almaviva Defendants that Loop AI's failure to produce this evidence supports dismissal of its claims without the opportunity to conduct jurisdictional discovery. Loop AI has presented significant and uncontested circumstantial evidence that Gatti's relationship with the Italian Almaviva Defendants was undertaken for an improper purpose. For example, Loop AI alleges—and the Italian Almaviva Defendants have not denied—that they incorporated their subsidiary, Almawave USA, at Gatti's home residence. *See* FAC ¶ 16. Although there may be an innocent explanation for the decision of "one Italy's top information and communication technology providers," Mot. at 2, to base its first United States office in someone's home, that choice certainly is not inconsistent with the allegation that Almawave USA was created as a front company to facilitate the Defendants' alleged scheme, as opposed to a legitimate business venture of a multinational corporation.

In addition, Loop AI alleges that the Italian Almaviva Defendants recently applied for a patent covering the same field of technology as that developed by Loop AI. *See* FAC ¶ 62 (alleging the existence of a patent application disclosing an invention that "uses an AI semantic engine and purports to use supervised and unsupervised AI approaches, which the Almaviva Defendants are not known to have, and which instead are key aspects of the technology developed by [Loop AI]"). Loop AI further alleges that the first named inventor on the patent application is Valeria Sandei, an employee of the Italian Almaviva Defendants with no technology background whatsoever. *Id.* These uncontested allegations also support an inference, at least at the pleading stage, that the Italian Almaviva Defendants participated in the scheme alleged in the FAC, and that

5

1    Loop AI's claims against the Italian Almaviva Defendants thus arise out of their forum-related
2    activities.
3          Accordingly, Loop AI has demonstrated significantly more than a "hunch" that discovery
4    will reveal jurisdictionally relevant facts. *See Boschetto,* 539 F.3d at 1020.  This is not a case
5    where a plaintiff seeks discovery as an unwarranted fishing expedition for theoretically possible
6    facts, transactions, or conduct that could give rise to personal jurisdiction. *See Getz v. Boeing Co.*,
7    654 F.3d 852, 860 (9th Cir. 2011).  The transactions at issue in this case are known: the Italian
8    Almaviva Defendants do not challenge that they hired Gatti, communicated with her on hundreds
9    of occasions, and directed her activities in California. *See, e.g.,* Perri Decl. at ¶ 4-5.  The sole
10   question on which jurisdiction may turn is whether the causes of action alleged in the FAC "arise
11   out" of those contacts.  In other words, did the Italian Almaviva Defendants hire Gatti and
12   incorporate Almawave USA as a means to misappropriate Loop AI's trade secrets and undermine
13   its growth (as alleged by Loop AI), or were those contacts made solely to further the Italian
14   Almaviva Defendants' legitimate business activities (as sworn to by the Italian Almaviva
15   Defendants)?  Targeted discovery of the Italian Almaviva Defendants' relationship with Gatti and
16   the creation of Almawave USA will likely resolve this jurisdictional question.  The Court thus
17   finds that jurisdictional discovery is appropriate.

## IV.   CONCLUSION

19         For the foregoing reasons, the Court **DENIES WITHOUT PREJUDICE** the Italian
20   Almaviva Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.
21         The parties are directed to meet and confer on the appropriate scope and length of the
22   jurisdictional discovery period, taking into account any discovery completed during the pendency
23   of this motion.  The parties shall submit a stipulation and proposed order detailing the scope and
24   length of the jurisdictional discovery period no later than **14 days** from the date of this order.  If
25   Loop AI and the Italian Almaviva Defendants cannot reach a stipulated agreement, then the parties
26   shall submit the dispute to Magistrate Judge Ryu through a joint letter brief filed in compliance
27   with the procedures governing discovery disputes in this action. *See* Dkt. No. 117.  The deadline
28   to file a joint letter brief on the scope and length of jurisdictional discovery shall be no later than

1  **21 days** from the date of this order.

2      **IT IS SO ORDERED.**

3  Dated: September 2, 2015

4                                          _____
                                       HAYWOOD S. GILLIAM, JR.

5                                         United States District Judge