UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS INC,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ANNA GATTI, et al.,<br><br>　　　　Defendants. | Case No. 15-cv-00798-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 60 |

Before the Court is Defendant Almawave USA, Inc.'s ("Almawave USA's") partial motion to dismiss the second, fourth, ninth, and fourteenth causes of action of the First Amended Complaint ("FAC"). *See* Dkt. No. 60 ("Mot"). The Court has considered the arguments and evidence presented by the parties and, for the reasons stated below, **GRANTS IN PART AND DENIES IN PART** Almawave USA's motion.

**I.　BACKGROUND**

In this action, Plaintiff Loop AI Labs, Inc. ("Loop AI") alleges that Anna Gatti, its now-former CEO, conspired with the other Defendants to misappropriate Loop AI's trade secrets and generally frustrate the success of the company in order to force a sale to Almawave USA. *See generally* Dkt. No. 1 ("Compl."). On March 17, 2015, Almawave USA filed a motion to dismiss the Complaint in its entirety. *See* Dkt. No. 38. Loop AI filed the FAC on April 6, 2015, *see* Dkt. No. 45, and, on April 23, 2015, Almawave USA filed a partial motion to dismiss, *see* Dkt. No. 60 ("Mot.").[1]  Loop AI opposed that motion on May 7, 2015. Dkt. No. 87 ("Opp."). Almawave USA

---

[1] Loop AI argues that Almawave USA's revised motion is procedurally improper because it raises new arguments not contained in its original motion to dismiss. Opp. at 4-5. The Court disagrees. Almawave USA's second motion to dismiss does not challenge any cause of action that it did not also seek to dismiss through its original motion. *Compare* Dkt. No. 38 *with* Dkt. No. 60. In other words, Almawave USA has not blindsided Loop AI with new challenges that could or should have been raised before. That the legal arguments contained in Almawave USA's motions are not

filed a reply brief on May 14, 2015.  *See* Dkt. No. 92 ("Reply").  The Court held a hearing on the motion on July 2, 2015.

## II. LEGAL STANDARD

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain sufficient facts to state a plausible claim on its face.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*. (quoting *Twombly*, 550 U.S. at 557).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff.  *See id*. at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  If the court dismisses the complaint, it should grant leave to amend "unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citation omitted).  When a party repeatedly fails to cure deficiencies, however, the court may order dismissal without leave to amend.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).

---

completely identical is unsurprising.  The FAC contains almost one hundred new paragraphs of factual allegations.  *See* Dkt. No. 45.  Almawave USA is permitted to tailor its arguments to the new allegations contained in the FAC.  However, even assuming that some portion of Almawave USA's motion constitutes a technical violation of Rule 12(g), the Court will exercise its discretion to consider the motion in full.  *See Amaretto Ranch Breedables, LLC v. Ozimals, Inc.,* No. 10-cv-05696-CRB, 2011 WL 2690437, *2 n. 1 (N.D. Cal. 2011). (Although Rule 12(g) "technically prohibits successive motions to dismiss that raise arguments that could have been made in a prior motion . . . courts faced with a successive motion often exercise their discretion to consider the new arguments in the interests of judicial economy").

### III. DISCUSSION

Almawave USA's motion seeks to dismiss five claims asserted against it in the FAC: (1) violation of the Computer Fraud and Abuse Act ("CFAA"); (2) Comprehensive Data Access and Fraud Act ("CDAFA");[2] (3) interference with prospective economic advantage; (4) intentional interference with contract; and (5) unjust enrichment.[3]  The Court will address Almawave USA's challenge to each claim in turn.

#### A. Computer Fraud and Abuse Act

Almawave USA moves to dismiss Loop AI's second cause of action for violation of the CFAA on the grounds that (1) the CFAA applies to individuals who access computers without authorization, not to violations of corporate computer use restrictions or violations of a duty of loyalty; and (2) Loop AI has not pled sufficient loss or damage as required by the Act.  Mot. at 5-6.  Loop AI argues that the FAC sufficiently pleads both requirements.  Opp. at 9.

##### 1. Unauthorized Access

The Ninth Circuit has held that the plain language of the CFAA "target[s] the unauthorized procurement or alteration of information, not its misuse or misappropriation." *United States v. Nosal*, 676 F.3d 854, 862 (9th Cir. 2012) (rejecting the decisions of other circuits that "interpret the CFAA broadly to cover violations of corporate computer use restrictions or violations of a duty of loyalty").  The Ninth Circuit has reasoned that:

> [t]his narrower interpretation is also a more sensible reading of the text and legislative history of a statute whose general purpose is to punish hacking—the circumvention of technological access barriers—not misappropriation of trade secrets—a subject Congress has dealt with elsewhere.  Therefore, we hold that "exceeds authorized access" in the CFAA is limited to violations of restrictions on *access* to information, and not restrictions on its *use*.

*Id*. (emphasis in original) (citation omitted).

---

[2] Loop AI asserts claims pursuant to both the CFAA and CDAFA under the second cause of action.

[3] Almawave USA dedicates two pages of its reply brief to the argument that Loop AI's allegations are impermissibly conclusory to support the inference that Almawave USA acted unlawfully. Reply at 5-6.  Almawave USA did not raise this argument in its opening brief and, accordingly, the Court will not consider it.  *See Zamani v. Carnes,* 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

3

Loop AI's citation to the district court's decision on remand in the *Nosal* action, Opp. at 8, does not (and could not) contradict the Ninth Circuit's decision. While the district court fairly noted that *Nosal* did not limit the CFAA's application to instances of hacking—*i.e.*, the circumvention of technological access barriers—it also underscored the Ninth Circuit's holding that "it is not a violation of the CFAA to access a computer with permission, but with the intent to use the information gained thereby in violation of a use agreement." *United States v. Nosal*, 930 F. Supp. 2d 1051, 1060 (N.D. Cal. 2013) (citing *Nosal*, 676 F.3d at 863-64). This Court reads the *Nosal* decision in the same light. While a plaintiff need not necessarily allege computer hacking in order to plead a cause of action under the CFAA, a CFAA claim does not lie where the defendant is alleged to have merely misappropriated or otherwise misused information to which he or she had been granted access.

Accordingly, *Nosal* forecloses CFAA liability for many of the factual allegations contained in the FAC. For example, in paragraph 221, Loop AI alleges that the Defendants directed Gatti to access "critical confidential and proprietary information" contained on the computer that Gatti—as the then-current CEO of the company—*was assigned* by Loop AI. FAC ¶ 221. This is a clear example of improper use, not unauthorized access. The Court disagrees with Loop AI that, although Gatti was provided access to Loop AI's confidential business information by virtue of her executive-level position, that authorization was impliedly revoked "when she became an employee, officer and agent of the IQSystem and Almaviva Defendants." *Id*. ¶ 222. Neither legal authority nor common sense supports the argument that Loop AI silently withdrew Gatti's authorization to access its systems before it knew of the grounds to do so. That Gatti is alleged to have used the access granted by Loop for an improper purpose has no bearing on when her authorization was terminated.

Given the facts asserted in the FAC, *Nosal* does not appear to bar all potential liability under the CFAA in this action. The FAC contains at least two allegations suggesting that the Defendants (through Gatti) continued to access Loop AI's computer files and computer system after Gatti's termination. First, Loop AI alleges that Gatti accessed its calendar system after she was fired in an effort to delete evidence of the Defendants' scheme. *See* FAC ¶ 227. Second,

Loop AI alleges that Gatti retained possession and continued to access her company laptop after she was fired. *Id.* ¶ 225. Under the threshold standard applicable at the pleading stage, these allegations could plead a plausible cause of action under the CFAA, assuming that Gatti's authorization to access Loop AI's system and documents was revoked at the same time as she was fired.

However, because the FAC's allegations concerning the CFAA are premised on the legally incorrect proposition that "Gatti lost authority to access [the] computer, as well as all of the other electronic accounts of the Company when she became an employee, office and agent of the IQSystem and Almaviva Defendants," FAC ¶ 222, the FAC does not contain facts sufficient to determine whether the allegations that could state a claim under the CFAA occurred after Gatti's authorization was actually revoked. Accordingly, Almawave USA's motion to dismiss the CFAA cause of action is **GRANTED**, but only on the limited ground that Loop AI has not alleged facts establishing when Gatti's permission to access Loop AI information was terminated (*e.g.*, when Gatti was told she no longer had access, when Gatti's username and password were discontinued, etc.). Loop AI is granted leave to amend the FAC to allege facts detailing when Loop AI actually withdrew that authorization, assuming that Loop AI can do so consistent with its Rule 11 obligations.

### 2. Loss or Damage

Almawave USA contends that the FAC fails to adequately plead either damage or loss as defined by the CFAA. To maintain a civil action under the CFAA, the plaintiff must show that he or she "suffer[ed] damage or loss by reason of [the defendant's] violation" of the Act. 18 U.S.C. § 1030(g). The CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." *Id.* § 1030(e)(8). "Loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* § 1030(e)(11).

Loop AI does not allege facts sufficient to show that its $7,000 in "real economic

damages" arise from the type of damage or loss contemplated by the statute. Loop AI's sole allegation concerning its "loss" or "damage" is contained in the 228th paragraph of the FAC: "[a]s a result of this unauthorized access, the Company has suffered a loss during any one-year period of in excess of $7,000 in value in real economic damages." FAC ¶ 228. Loop AI has not pled facts suggesting that the $7,000 loss alleged was incurred "responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* § 1030(e)(11). Accordingly, its allegation is insufficient to plead a cause of action under the CFAA.

Almawave USA's motion to dismiss the CFAA cause of action for failure to adequately plead damages or loss is **GRANTED**. Loop AI may amend the FAC to allege facts supporting the inference that its alleged loss was of the type defined in the CFAA, if it can do so consistent with its Rule 11 obligations.

**B.      Comprehensive Data Access and Fraud Act**

Almawave USA devotes one sentence of its motion to the argument that Loop AI's CDAFA claim must be dismissed because it does not allege that Gatti accessed Loop AI's computers or network in a manner that circumvents technical or code-based barriers. Mot. at 6. Loop AI responds that California does not impose a "technical or code-based barrier" requirement to CDAFA claims, but asserts that, even if such a requirement exists, Loop AI has alleged facts sufficient to satisfy it here. Opp. at 8-9.

Neither party adequately addresses the split of authority concerning whether this requirement exists under California law. Some judges in this District have applied such a limitation, *see Facebook, Inc. v. Power Ventures, Inc*., No. 08-cv-05780-JW, 2010 WL 3291750, at *11 (N.D. Cal. July 20, 2010); others have not, *see Facebook, Inc. v. ConnectU LLC,* 489 F. Supp. 2d 1087, 1091 (N.D. Cal. 2007); while still others have deferred the question where the parties have not adequately briefed the issue, *see Weingand v. Harland Fin. Solutions, Inc*., No. 11-cv-3109-EMC, 2012 WL 2327660, at *5 (N.D. Cal. June 19, 2012) (denying a Rule 15 motion concerning the existence of "technical or code-based barrier" requirement under the CDAFA until

1   a later stage of the case given the "limited" briefing provided by the parties). Like Judge Chen in
2   *Weingand*, the Court finds that the limited briefing provided by the parties does not permit it to
3   conclude that the limitation endorsed by Judge Ware in *Power Ventures* applies or whether, even
4   assuming it does, the allegations contained in the FAC would satisfy that requirement. This ruling
5   is without prejudice to either party bringing an adequately-briefed Rule 56 motion at the
6   appropriate time regarding the existence and import of the requirement articulated in *Power*
7   *Ventures*.
8        Almawave USA's motion to dismiss the CDAFA cause of action is **DENIED**.

### C. Interference with Prospective Economic Advantage

In order to plead a cause of action for interference with prospective economic advantage, a plaintiff must allege "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003). Almawave USA argues that Loop AI has failed to state a claim for interference with economic advantage because the FAC does not allege facts sufficient to meet the first requirement, *i.e.,* that an economic relationship existed between Loop AI and a third party that had a probability of future economic benefit. Mot. at 6-7.

In support of its argument, Almawave USA primarily relies on *Youst v. Longo*, 43 Cal. 3d 64 (1987), where the plaintiff alleged that the defendant—a competitor in a horserace where plaintiff's horse also competed—blocked and whipped plaintiff's horse during the race in order to halt its stride. *Id*. at 77 n.9. The plaintiff in *Youst* claimed that this misconduct caused his horse to fall out of contention and thus interfered with his opportunity to finish higher in the race. *Id*. at 77. In that case, the California Supreme Court held that the plaintiff had not stated a claim for interference with economic advantage for several reasons, including because the plaintiff had failed to allege facts showing that his horse would have placed higher absent the defendant's interference. *Id*. ("[T]he complaint only alleged in conclusory terms that defendant's wrongful

interference resulted in a lost 'opportunity' to finish higher in the money.").

Needless to say, this case is very different. The FAC alleges that funding negotiations between Loop AI and Investment Fund 4 had "advanced to the final stages" where Investment Fund 4 had "executed a term sheet setting forth their agreement." FAC ¶ 117. Loop AI alleges that Gatti, as part of her scheme with the Defendants, sabotaged the deal by representing to Loop AI's founders that Investment Fund 4 wanted to bring in other investors itself, rather than have Loop AI find additional investors for the funding round. *Id.* In fact, Investment Fund 4 had expressly informed Gatti that their investment was *contingent* on Loop AI securing (on its own) at least one other investor to participate. *Id.* ¶ 119. The FAC alleges that this misrepresentation "scuttled" the investment opportunity with Investment Fund 4. *Id.* ¶ 296.

The Court finds that these alleged facts support the existence of a third-party relationship with the probability of future economic benefit. Loop AI is only required to allege that future economic benefit arising from that relationship is a probability, not a certainty. Given the particular circumstances alleged in the FAC, the existence of a term sheet with Investment Fund 4 meets that standard. By the time Gatti and Almawave USA allegedly sabotaged the deal, Loop AI's relationship with Investment Fund 4 had long passed the hypothetical stage. The parties had put pen to paper and were discussing the inclusion of other potential investors. Almawave USA provides no authority for its suggestion that Loop AI must have alleged that either (1) the contract would have been entered into; (2) that Investment Fund 4 was a repeat investor; or that (3) there were other similar business dealings between Loop AI and Investment Fund 4. The Court declines to impose those unjustified requirements on Loop AI in this case.

Accordingly, the Court **DENIES** Almawave USA's motion to dismiss the interference with prospective economic advantage cause of action.[4]

---

[4] Although the FAC alleges interference with prospective economic advantage arising out of Loop AI's relationships with other Investment Funds, neither Almawave USA's motion or reply brief provides the Court with any argument concerning why the allegations concerning those relationships are insufficient to state a claim. Accordingly, the Court does not address whether those relationships are sufficiently pled.

**D.     Intentional Interference with Contract**

"California provides a cause of action against a defendant who interferes with a contract between the plaintiff and a third party." *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1105 (9th Cir. 2007). To state a claim for intentional interference with contract, a plaintiff must allege facts to support the following elements: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Id.* (quoting *Quelimane Co. v. Stewart Title Guar. Co.,* 19 Cal.4th 26, 55 (1998)). Almawave USA moves to dismiss this cause of action because, at a minimum, the FAC does not sufficiently allege that Almawave knew its actions would induce a breach or disruption with respect to Loop AI's contracts with Gatti, Dario Vignudelli, and the law firm of Orrick Herrington & Sutcliffe LLC ("Orrick"). Mot. at 8-9.

As to Gatti, Almawave USA argues that the Court should dismiss the claim because "[b]ased on the facts alleged by Loop, Almawave USA reasonably believed that Ms. Gatti was not in breach of any contracts." Opp. at 8. Almawave USA either misreads the FAC or misapprehends the standard by which the FAC is judged at this stage of the proceedings. The FAC alleges that Almawave USA was told of Gatti's contractual relationship with Loop AI and that its conduct would interfere with that contract. *See* FAC ¶¶ 186-87. It also alleges facts that, while not conclusively demonstrating knowledge, create an inference that Almawave USA's actions were taken with knowledge of the terms of Gatti's employment agreement with Loop AI. *See id.* ¶ 170 ("Gatti's employment agreement with [Loop AI] is virtually identical to the one she subsequently signed with the Almaviva Defendants. It would have been impossible for the Almaviva Defendants to prepare a contract with Gatti that is virtually identical to that she had with the Company [without being aware of the terms of her agreement with Loop AI.]"). The Court accepts these allegations as true for purposes of this motion to dismiss. *See Twombly*, 550 U.S. at 550 (holding that a court must accept all the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff). When viewed as a whole, the FAC contains sufficient facts to permit a plausible inference that Almawave USA knew that its alleged actions would create a

1   breach of Gatti's contractual relationship with Loop AI.

2   Loop AI's allegations of interference concerning its relationships with Orrick and
3   Vingudelli stand on much shakier ground. With respect to Orrick, Loop AI appears to allege that
4   Orrick breached its fiduciary duties to Loop AI merely by incorporating Almawave USA while
5   representing Loop AI in its investor negotiations. *See* FAC ¶ 308. It is unclear exactly why Loop
6   AI believes Orrick's representation of Almawave USA—which began well before this litigation
7   commenced and appears to have been terminated promptly once this case was filed—constituted a
8   breach of Orrick's fiduciary duties. More importantly, the FAC is devoid of any allegations
9   suggesting that the Defendants' actions were "*designed* to induce a breach or disruption of the
10  contractual relationship" with Orrick. *CRST Van Expedited*, 479 F.3d at 1105 (emphasis added)
11  (quoting *Quelimane,* 19 Cal.4th at 55).

12  Loop AI's factual allegations concerning the Defendants' interference with Loop AI's
13  contractual relationship with Vignudelli are similarly bare. While the FAC makes the conclusory
14  assertion that the Defendants "induc[ed Vingnudelli] to breach numerous restrictive covenants and
15  obligations set forth in his various contracts with the Company, including §§ 2, 8, and 10(c) of his
16  Consulting Agreement, and § 3(a) of his CIIAA," FAC ¶ 307, it provides no specific factual
17  allegations concerning what obligations were breached and how.

18  Accordingly, Almawave USA's motion to dismiss Loop AI's Intentional Interference with
19  Contract cause of action is **DENIED** as to Gatti and **GRANTED** as to Orrick and Vignudelli.
20  Loop AI is granted leave to amend the FAC to allege facts supporting its intentional interference
21  with contract cause of action against the Defendants arising out of the disruption of its contractual
22  relationships with Orrick and Vignudelli, to the extent that it can do so consistent with its
23  obligations under Rule 11.

24  **E.   Unjust Enrichment**

25  Almawave USA moves the Court to dismiss Loop AI's unjust enrichment claim because
26  unjust enrichment is not a standalone cause of action and its UCL claim renders the remedy
27  superfluous. Mot. at 9. Under California law, the elements of unjust enrichment are (1) receipt of
28  a benefit; and (2) unjust retention of the benefit at the expense of another. *Lectrodryer v.*

*SeoulBank*, 77 Cal. App. 4th 723, 726 (2000). However, "[t]he phrase 'Unjust Enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so." *Melchior v. New Line Prods., Inc.,* 106 Cal. App. 4th 779, 793 (2003) (citation omitted); *see also Jogani v. Superior Court,* 165 Cal. App. 4th 901, 911 (2008) ("[U]njust enrichment is not a cause of action. Rather, it is a general principle underlying various doctrines and remedies, including quasi-contract.").

Until very recently, "federal courts [had] consistently followed *Melchior* and held that California law does not recognize a cause of action for unjust enrichment, so long as another cause of action is available that permits restitutionary damages." *In re ConAgra Foods Inc*., 908 F. Supp. 2d 1090, 1114 (C.D. Cal. 2012). However, the Ninth Circuit recently clarified the law regarding unjust enrichment in California, holding that while "there is not a standalone cause of action for unjust enrichment, which is synonymous with restitution . . . [w]hen a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.,* 783 F.3d 753, 762 (9th Cir. 2015) (citation and quotation marks omitted). The Ninth Circuit also instructed that such a claim should not be dismissed as duplicative or superfluous of other claims because a party may set out alternative claims for relief. *Id*. (citing Fed. R. Civ. P. 8(d)(2)). Accordingly, the Ninth Circuit found the allegation that the defendant had enticed plaintiffs "to purchase their products through false and misleading labeling, and that [defendant] was unjustly enriched as a result," was "sufficient to state a quasi-contract cause of action." *Id.*

Several decisions in this District have permitted what were previously considered to be superfluous unjust enrichment claims to survive the pleading stage in light of the Ninth Circuit's decision in *Astiana*. *See Trazo v. Nestle USA, Inc.*, No. 12-cv-02272-PSG, 2015 WL 4196973, at *2 (N.D. Cal. July 10, 2015) (finding "*Astiana* requires this court to side with Trazo and reinstate his claim for restitution based on unjust enrichment/quasi-contract."); *Khasin v. R. C. Bigelow, Inc.*, No. 12-cv-02204-WHO, 2015 WL 4104868, at *3 (N.D. Cal. July 7, 2015) (permitting plaintiff to amend complaint to allege unjust enrichment cause of action given the Ninth Circuit's decision in *Astiana*); *Romero v. Flowers Bakeries, LLC*, No. 14-cv-05189-BLF, 2015 WL

11

2125004, at *9 (N.D. Cal. May 6, 2015) (relying on *Astiana* to deny motion to dismiss unjust enrichment claim because, even though "the claim may be duplicative of Plaintiff's statutory claims under the UCL, FAL, and CLRA[, that] is not a proper ground for dismissal at this stage of the litigation . . . ."); *but see Lanovaz v. Twinings N. Am., Inc.*, No.12-cv-02646-RMW, 2015 WL 3627015, at *5 (N.D. Cal. June 10, 2015) (declining to reinstate unjust enrichment claim because restitutionary damages were available under UCL claim and thus, to the extent the dismissal of the unjust enrichment claim conflicted with *Astiana*, it did not limit plaintiff's available remedies).

The Court agrees that these decisions accurately reflect *Astiana's* holding. At least at the pleading stage, *Astiana* precludes this Court from dismissing Loop AI's unjust enrichment claim on the ground that it is superfluous given the other causes of action alleged in this case. *Astiana*, 783 F.3d at 762. That the relief sought pursuant to Loop AI's unjust enrichment claim is entirely duplicative of the relief sought by other causes of action does not provide a basis for the Court to dismiss the claim. *Id*. *Astiana* provides that a plaintiff is permitted to plead an unjust enrichment claim in the alternative, *see* Fed. R. Civ. P. 8(d)(2), even if, as here, it is questionable whether that alternative claim provides any prospect for relief independent of the causes of action already alleged.

Almawave USA's motion to dismiss Loop AI's unjust enrichment cause of action is **DENIED**.

IV. **CONCLUSION**

For the foregoing reasons, Almawave USA's partial motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. Loop AI is granted leave to amend its pleading to address the deficiencies discussed above, which must be filed with the Court no later than **21 days** from the date of this Order.

**IT IS SO ORDERED.**

Dated: September 2, 2015

HAYWOOD S. GILLIAM, JR.
United States District Judge