1 | WILLIAM F. ALDERMAN (STATE BAR NO. 47381)
2 | walderman@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
3 | The Orrick Building
405 Howard Street
4 | San Francisco, California 94105-2669
Telephone: +1-415-773-5700
5 | Facsimile: +1-415-773-5759

6 | Attorneys for Non-Party
Orrick, Herrington & Sutcliffe LLP
7

8 UNITED STATES DISTRICT COURT

9 NORTHERN DISTRICT OF CALIFORNIA

10

11 LOOP AI LABS, INC., | Case No. 3:15-cv-00798-HSG-DMR

12 Plaintiff, | **REPLY BRIEF OF NON-PARTY ORRICK, HERRINGTON & SUTCLIFFE LLP IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER OR TO QUASH SUBPOENA**

13 v.

14 ANNA GATTI, et al.,

15 Movants. | Date/Time   TBD by Court
Action Filed: February 20, 2015
16 | Trial Date   July 11, 2016

17 | Hon. Haywood S. Gilliam, Jr.
Hon. Donna M. Ryu

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 1

I.    ORRICK'S PRIVILEGE IS NOT VITIATED BY ANY "FIDUCIARY" OR "CURRENT CLIENT" EXCEPTION ............................................................................... 1

     A.    Loop Has Not Shown A Basis For Avoiding California's Rejection of the Exceptions ................................................................................................................ 2

     B.    The Exceptions Would Not Apply Here Even Under Federal Law ........................ 3

     C.    Orrick Has Not Waived Its Privilege ...................................................................... 6

II.   LOOP'S MISCELLANEOUS CLAIMS ARE MERITLESS ........................................... 7

III.  CONCLUSION .................................................................................................................. 8

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Agster v. Maricopa County*,
    422 F.3d 836 (9th Cir. 2005)...................................................................................................2

*E-Pass Technologies, Inc. v. Moses & Singer, LLP*,
    2011 U.S. Dist. LEXIS 96231 (N.D. Cal. Aug. 26, 2011)....................................................4, 6

*Hancock v. Hobbs*,
    967 F.2d 462 (11th Cir. 1992).................................................................................................2

*Landmark Screens, LLC v. Morgan, Lewis & Bockius LLP*,
    2010 U.S. Dist. LEXIS 9435 (N.D. Cal. Jan. 15, 2010) ......................................................4, 6

*Perrignon v. Bergen Brunswig Corp.*,
    77 F.R.D. 455 (N.D. Cal. 1978)...............................................................................................2

*SonicBlue Claims LLC v. Portside Growth & Opp'ty Fund*,
    2008 Bankr. LEXIS 181 (Bankr. N.D. Cal. Jan. 18, 2008)......................................................5

*Stephan v. UNUM Life Ins. Co.*,
    697 F.3d 917 (9th Cir. 2012)................................................................................................3, 4

*Thelen Reid & Priest LLP v. Marland*,
    2007 U.S. Dist. LEXIS 17482 (N.D. Cal. Feb. 21, 2007)....................................................4, 5

*U.S. v. Mett*,
    178 F.3d 1058 (9th Cir. 1999)..............................................................................................3, 4

*U.S. v. Rowe*,
    96 F.3d 1294 (9th Cir. 1996)...................................................................................................3

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ................................................................................................................1

**State Cases**

*Edwards Wildman Palmer LLP v. Superior Court*,
    231 Cal. App. 4th 1214 (2014)................................................................................................2

**Rules**

Federal Rules of Evidence, Rule 501........................................................................................2

Federal Rules of Civil Procedure, Rule 45(2)(A)(ii) ................................................................6

**Other Authorities**

ABA Formal Ethics Opinion 08-453 (2008).................................................................................5

Chambliss, *The Scope of In-Firm Privilege*, 80 Notre Dame L. Rev. 1721 (2005)..........................5

# INTRODUCTION

Acknowledging at page 3 n.3 that most of its concerns regarding Orrick's response to the Subpoena have been resolved through constructive meet-and-confer sessions, plaintiff Loop AI Labs, Inc. ("Loop") largely limits its opposition to a claim that Orrick's attorney-client privilege is vitiated by the "fiduciary" or "current client" exception applied by some federal courts in circumstances that differ from those here. As we show below, Loop cannot establish that this case is controlled by the federal authorities it cites. More importantly, even if Loop's cases were apposite, they expressly distinguish the facts presented here, where Orrick's internal consultations occurred after it had stopped providing legal advice to Loop, and in the absence of any claim that would create a conflicted dual representation of Loop and Orrick itself in any event.

# ARGUMENT

## I. ORRICK'S PRIVILEGE IS NOT VITIATED BY ANY "FIDUCIARY" OR "CURRENT CLIENT" EXCEPTION

The Supreme Court long ago recognized that the chief purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

Loop does not dispute that the attorney-client privilege protects confidential communications between a business organization and its in-house lawyers, nor does it contend that the privilege is unavailable to law firms that seek legal advice from their own lawyers. It relies instead on a few federal cases that apply a "fiduciary" or "current client" exception to a law firm's invocation of the privilege in circumstances where the advice it receives from its inside lawyers places it in conflict with a current client.

Loop's claim must be rejected for multiple reasons. First, Loop has not established that either exception, as endorsed by some federal courts, overrides the holding of California courts that neither exception is applicable under California law. Second, even if such an exception were theoretically available, it would not apply here where Orrick gave no advice to Loop that could have been in conflict with the subsequent internal communications that Loop seeks to invade.

Neither of the grounds for applying an exception is present here. Orrick's privileged communications began only after it had stopped advising Loop, and in any event Loop had made no claim against Orrick when those communications took place.

### A. LOOP HAS NOT SHOWN A BASIS FOR AVOIDING CALIFORNIA'S REJECTION OF THE EXCEPTIONS

Federal Rule of Evidence 501 provides that the common law, as interpreted by U.S. courts in the light of reason and experience, governs a claim of privilege absent certain exceptions. "But in a civil case," says the Rule, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."

Loop argues that the Rule requires application of federal privilege law here, even though only two of its many claims against Almawave are premised on federal law and no claims at all are asserted against Orrick. But it relies only on cases that arise in a fundamentally different context from these circumstances.[1] In each case, the action was brought by or against the party seeking to invoke the privilege, and it was the nature of the "primary" claims involving that party that dictated whether federal or state privilege law was controlling. *See, e.g., Perrignon*, 77 F.R.D. at 459 (Rule 501's policy that "federal privilege law will generally apply in nondiversity cases "should not be cast aside simply because pendent state claims are raised in what is *primarily* a federal question case") (emphasis added).

None of Loop's cases presents the situation here, where a party seeks to obtain privileged documents from a non-party that invokes its *own* privilege, not that of one of the parties to the case. In that context, the nature of the claims about which the parties are fighting has no logical bearing on the privilege belonging to the non-party. And where the non-party is a law firm, against whom discovery is routinely discouraged, none of Loop's cases provides a rationale for applying federal privilege law.[2]

Even if Loop could suggest a reason for examining its claims against the defendants, that

---

[1] *Agster v. Maricopa County*, 422 F.3d 836, 839-40 (9th Cir. 2005); *Hancock v. Hobbs*, 967 F.2d 462, 466 (11th Cir. 1992); *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 459 (N.D. Cal. 1978).

[2] While none of Loop's cases involving a law firm's receipt of legal advice from its own lawyers addresses the dichotomy between federal and state privilege law, it is noteworthy that each of them, unlike the case here, involved a claim against the law firm itself rather than the law firm's external client.

inquiry would not help it. As Loop concedes at page 8 n.7, there is no question that Orrick's internal communications would remain privileged if Loop were pursuing only state-law claims, inasmuch as California does not recognize any fiduciary or current-client exception to the privilege. *Edwards Wildman Palmer LLP v. Superior Court*, 231 Cal. App. 4th 1214, 1230 (2014).

Here it is evident that the nature of Loop's claims against Anna Gatti and the Almawave defendants is primarily based on state law. The FAC contains 14 claims, the last 12 of which allege solely state-law claims under California statutes and common law; the second claim alleges both state and federal claims (the latter of which has now been dismissed with leave to amend, Doc. 186); and only the first claim, for a purported RICO violation, seeks to allege a solely-federal claim (Doc. 45). The Court has confirmed the essentially state-law nature of the dispute by describing it as a claim that defendant Anna Gatti "conspired with the Italian Almaviva Defendants to misappropriate Loop AI's trade secrets and generally frustrate its business prospects" (Doc. 183 at 1).

Under these circumstances, where a putative federal claim against a party is overwhelmed by purely state-law claims, Loop's cases do not mandate the application of federal common law to Loop's attempt to penetrate Orrick's privilege as a non-party against whom no claim at all is made.

**B. THE EXCEPTIONS WOULD NOT APPLY HERE EVEN UNDER FEDERAL LAW**

Even if Loop could offer a persuasive basis for applying the "fiduciary" or "current client" exceptions recognized by some federal cases, it would still fall far short of using them to evade Orrick's privilege here.

First, Ninth Circuit law is not as uniform as Loop would have it. Neither of Loop's cases involves a law firm's claim of privilege for internal communications with its own lawyers. Rather they are both ERISA cases that create a fiduciary exception for a trustee's communications with its outside lawyer regarding interpretation of an ERISA-governed benefit plan.[3]

---

[3] *U.S. v. Mett*, 178 F.3d 1058 (9th Cir. 1999); *Stephan v. UNUM Life Ins. Co.*, 697 F.3d 917 (9th Cir. 2012).

1  In contrast, Loop ignores Ninth Circuit authority that holds the privilege applicable to a
2  law firm's communications with its own inside lawyers. *U.S. v. Rowe*, 96 F.3d 1294 (9th Cir.
3  1996).
4  More importantly, even the ERISA cases Loop cites as authority for recognizing a
5  fiduciary exception under federal law rest on facts and policies not present here. As *Mett* makes
6  clear, where a lawyer's advice "clearly does not implicate the trustee in any personal capacity,"
7  the trustee cannot invoke the attorney-client privilege against plan beneficiaries, but where a plan
8  fiduciary retains counsel in order to defend herself against the plan beneficiaries or the
9  government acting in their stead, the privilege remains intact. 178 F.3d at 1064.
10 The *Mett* court **upheld** the privilege against the government's invocation of the fiduciary
11 exception on grounds that apply even more persuasively here. Although no legal action was
12 pending against the trustee, beneficiaries had begun asking difficult questions and "trouble was in
13 the air" (*id.*). The lawyer's advice "was not prepared for the benefit of the plan or the
14 beneficiaries, nor was it advice regarding administration of the plan" (*id.*).
15 The court rejected an "expansive view of the fiduciary exception" for at least four reasons:
16 (1) it would threaten to swallow the entirety of the privilege for ERISA trustees; (2) it unmoors
17 the exeption from its justifying rationales, in that a fiduciary's seeking legal advice for its own
18 protection seriously implicates the core purposes of the attorney-client privilege and should trump
19 a beneficiary's general right to inspect documents relating to plan administration; (3) most
20 importantly, hard cases should be resolved in favor of the privilege, not in favor of disclosure;
21 and (4) an uncertain privilege would likely result in trustees shying away from legal advice
22 regarding performance of their duties, when beneficiaries (like clients in the present context)
23 should prefer well-counseled fiduciaries who clearly understand their duties (*id*. at 1065).
24 In *Stephen*, the court applied the *Mett* analysis to conclude that the documents sought by
25 beneficiaries offered "advice solely on how the Plan ought to be interpreted," rather than advice
26 to the fiduciary about its own conduct. 697 F.3d at 932.
27 Nor do the cases Loop cites from this Court and the local bankruptcy court help it
28 overcome Orrick's privilege here. Both *Landmark Screens, LLC v. Morgan, Lewis & Bockius*

1   *LLP*, 2010 U.S. Dist. LEXIS 9435 (N.D. Cal. Jan. 15, 2010), and *E-Pass Technologies, Inc. v.
2   Moses & Singer, LLP*, 2011 U.S. Dist. LEXIS 96231 (N.D. Cal. Aug. 26, 2011), were malpractice
3   cases in which plaintiffs claimed that the defendant law firms had negligently represented them in
4   patent matters. In both cases, this Court relied on Judge Walker's holding in *Thelen Reid &
5   Priest LLP v. Marland*, 2007 U.S. Dist. LEXIS 17482 (N.D. Cal. Feb. 21, 2007), that a law firm
6   should disclose to a current client internal communications that discuss claims the client might
7   have against the firm or known errors in its representation of the client (*id* at *21).

But Judge Walker also made clear that a "rule requiring disclosure of all communications relating to a client would dissuade attorneys from referring ethical problems to other lawyers, thereby undermining conformity with ethical obligations" (*id.* at *20). Accordingly, he held that the law firm need not produce documents reflecting consultations between the firm's lawyers on the firm's ethical and legal obligations to its client (*id*. at *24). In both *Landmark* and *E-Pass*, this Court relied on the distinction drawn in *Thelen* in ordering that internal documents relating to claims by a current client against the firm should be produced either to the court for *in camera* inspection or to the adversary, but that other internal communications remained privileged.

The same distinctions also drove the bankruptcy court's decision in *SonicBlue Claims LLC v. Portside Growth & Opp'ty Fund*, 2008 Bankr. LEXIS 181 (Bankr. N.D. Cal. Jan. 18, 2008). The court cited both *Thelen* and a comprehensive law review article[4] for the proposition that public policy encourages lawyers to consult with in-house colleagues to understand and comply with professional and ethical responsibilities until such time as the firm has or should have determined that dual representation of itself and its outside client required client consent (*id*. at *27). While the firm in *SonicBlue* had "some inkling of impending ethical issues" when lawyers exchanged emails expressing concern over the ramifications of an insurance coverage dispute, the court held that a conflict with the client did not arise until over a year later when the client requested a tolling agreement from the law firm and the firm signed it (*id*. at *30-31).[5]

---

[4] Chambliss, *The Scope of In-Firm Privilege*, 80 Notre Dame L. Rev. 1721 (2005).

[5] In the same vein, ABA Formal Ethics Opinion 08-453 (2008) provides that internal ethics consultations do not automatically create a conflict between a law firm and a current client. A conflict arises only when "there is a significant risk that the representation of one or more clients will be materially limited by … a personal interest

OHSUSA:763186217.1 — - 5 - — REPLY BRIEF OF NON-PARTY OHS ISO MOTION FOR PROTECTIVE ORDER OR TO QUASH SUBPOENA
3:15-cv-00798-HSG-DMR

Loop's own authorities reject its attempt to obtain Orrick's privileged documents here. First, Loop cannot establish that it sought or received any legal advice from Orrick after Orrick began its internal communications. The earliest internal Orrick communication occurred on February 27, 2015 after Loop's counsel Valeria Healy requested information from Orrick (Alderman Supp. Decl. ¶ 3). Orrick had ceased performing work for Loop two days earlier and formally withdrew from any future representation shortly thereafter (*id*. ¶ 4). The conflict with a current client at the heart of all of Loop's cases is not present here.

Second, there is no evidence that Orrick was or should have been aware of a claim against it by Loop prior to the time it ceased representation of Loop. To the extent Orrick lawyers sought or received internal advice regarding ethical obligations to Loop, those communications are expressly deemed privileged by all of Loop's authorities. Indeed, Loop's request for internal Orrick documents here does not arise in the malpractice context of *Landmark* and *E-Pass* at all.

### C. ORRICK HAS NOT WAIVED ITS PRIVILEGE

Loop claims that Orrick waived its attorney-client privilege by advising the Court that it was unaware of Ms. Gatti's employment by both Loop and Almawave and resigned from its representations of both companies upon learning of this litigation and Ms. Gatti's employment by both companies. Loop argues that if Orrick's representation is true, it could not have been seeking the advice of internal counsel regarding a conflict it didn't know existed, and that if the representation is not true, Orrick waived the privilege by injecting its claim into the proceedings.

Loop's argument poses a false dichotomy. Given that all of Orrick's privileged internal communication occurred only after Loop's counsel Valeria Healy advised Orrick of this litigation and made inquiries of the firm, Ms. Healy's current suggestion that Orrick is claiming to have sought advice about a dispute it didn't know about is patently absurd. Nor is there any evidence suggesting that either the Orrick lawyers representing Loop or those representing Almawave had any knowledge of Ms. Gatti's employment by both companies before Ms. Healy advised Orrick

---

of the lawyer." Because in most circumstances both the law firm and the client have similar interests in having the firm's conduct comport with applicable professional rules, the ABA Opinion concludes that the firm generally has no obligation to inform the client of the consultation or obtain a conflict waiver from the client.

1  of this dispute.[6] There has been no waiver of Orrick's privilege.

2  **II.    LOOP'S MISCELLANEOUS CLAIMS ARE MERITLESS**

3  Loop makes three throw-away claims at the end of its brief: that Orrick had to produce a privilege log; that it makes unsupported burden objections; and that it has not in fact produced documents it agreed to produce. Each claim is meritless.

6  A non-party's claim of privilege in response to a subpoena need only describe the nature of the withheld documents in a manner that, without revealing the privileged information, enables the parties to assess the claim. Federal Rule of Civil Procedure 45(2)(A)(ii). Contrary to Loop's claim at page 11, Orrick provided authority for the proposition that it has adequately described the privileged documents under Rule 45 (Op. Br. at 3-4).

11 Here, where there is no dispute that the only withheld communications occurred after Orrick had stopped providing legal services to Loop and after Loop's counsel made inquiries of Orrick that obviously required internal communication to provide a proper response, there is no reason or need to impose on Orrick the burden of logging each of the privileged communications individually.

16 Loop next argues that Orrick's burden objections should be overruled. But it concedes at page 12 that it does not in fact seek the documents Orrick objected to producing on burden grounds, inasmuch as they concern earlier representations of Almawave entities that ended long before the matter alleged in this dispute began and are entirely unrelated.

20 To the extent that Loop disputes the burden of searching for handwritten documents in response to request no. 11, Orrick will agree to make diligent inquiries to determine whether any such documents exist, but will continue to protect any privilege Almawave may claim as to any such documents that relate to it (Alderman Supp. Decl. ¶ 5).

24 Finally, Loop claims that Orrick has not in fact produced documents it agreed to produce. This claim was fully aired in Orrick's meet-and-confer process with Ms. Healy (Alderman Ex. E,

---

[6] Loop appears to rely entirely on a fact-free assumption that Orrick was aware of Ms. Gatti's employment by both Loop and Almawave for its dramatic references at page 2 to "the egregious nature of Orrick's conduct here" and "Orrick's shameless attempt to continue its shabby treatment of its (now former) client." We respectfully urge that the Court should reject those unsupported characterizations out of hand.

F), and Orrick has confirmed to her that the documents have in fact been produced. There is no basis for Ms. Healy's speculation that there must be more.

### III.  CONCLUSION

For the reasons given above and in Orrick's opening brief, the Court should enter a protective order and/or quash the Subpoena to the extent it requests documents to which Orrick has objected.

Dated: September 3, 2015

WILLIAM F. ALDERMAN
ORRICK, HERRINGTON & SUTCLIFFE LLP


By: */s/ William F. Alderman*
WILLIAM F. ALDERMAN
Attorneys for Non-Party
Orrick, Herrington & Sutcliffe LLP