**VENABLE LLP**
Thomas E. Wallerstein (SBN 232086)
Kimberly Culp (SBN 238839)
Email: twallerstein@venable.com
       kculp@venable.com
505 Montgomery Street, Suite 1400
San Francisco, CA 94111
Telephone:   415.653.3750
Facsimile:   415.653.3755

Attorneys for Defendant Almawave USA, Inc.

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS, INC., a Delaware corporation,<br><br>   Plaintiffs,<br><br>v.<br><br>ANNA GATTI, an individual, ALMAVIVA S.p.A., an Italian corporation, ALMAWAVE S.r.l., an Italian corporation, ALMAWAVE USA, Inc., a California corporation, IQSYSTEM LLC, a California limited liability company, IQSYSTEM Inc., a Delaware corporation,<br><br>   Defendants. | CASE NO.: 3:15-cv-00798-HSG (DMR)<br><br>Hon. Haywood S. Gilliam, Jr.<br>Hon. Donna M. Ryu<br><br>**DEFENDANT ALMAWAVE USA, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER TO PREVENT DISCLOSURE OF PRIVILEGED DOCUMENTS SOUGHT BY PLAINTIFF'S SUBPOENA TO THIRD PARTY ORRICK, HERRINGTON & SUTCLIFFE LLP, OR, ALTERNATIVELY, TO QUASH THE SUBPOENA**<br><br>Date/Time:   TBD by Court<br><br>Action Filed:   February 20, 2015<br>Trial Date:   July 11, 2016 |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT .................................................................................................................................1

I. ALMAWAVE USA HAS STANDING TO BRING THE MOTION BECAUSE IT HAS PRESENTED UNREFUTED EVIDENCE THAT IT REASONABLY BELIEVED IT HAD AN ATTORNEY-CLIENT RELATIONSHIP WITH ORRICK. ...............................................................................................................1

II. THE ITALIAN ALMAWAVE DEFENDANTS CANNOT BE FORCED TO WAIVE PRIVILEGE OR SURRENDER CONTESTING PERSONAL JURISDICTION. .................................................................................................4

III. ALMAWAVE USA HAS ESTABLISHED THAT THE DOCUMENTS WITHHELD ARE PRIVILEGED. ..........................................................................5

    A. Logos, Gifs, or Other Similar "Blank" Files Are Part of Privileged Documents. ..........5

    B. Communications or Documents Exchanged Between Orrick and Gatti as an Agent of Almawave For the Purpose of Legal Advice Are Privileged. ........................6

    C. The Documents Contained in the Orrick Documents that Relate to Introductions to Attorneys at Orrick and Engagement Letters Encompass Legal Advice and Are Privileged. .......................................................................................7

    D. The Billing Statements Contained in the Orrick Document Contain Information Relating to Legal Advice and Are Privileged. ..........................................8

    E. The Corporate Minutes and Other Corporate Documents Contained in the Orrick Documents Refer to or Incorporate Legal Advice and Are Privileged. .............8

IV. ALMAWAVE HAS NOT WAIVED THE ATTORNEY-CLIENT PRIVILEGE........9

    A. Almawave USA Has Met its Burden Regarding Lack of Waiver. ................................9

    B. Almawave Has Not Waived the Attorney-Client Privilege. ..........................................9

        1. Almawave's Reliance on the Factual Assertions Made by Gatti in Her Employment Contract Does Not Implicitly Waive Privilege. .........................11

        2. Venable's Response to Loop's Subpoena Did Not Waive Privilege. ...............12

V. A PRIVILEGE LOG SHOULD NOT BE REQUIRED BECAUSE ALMAWAVE USA HAS PROVIDED THE INFORMATION NECESSARY TO ASSESS ITS CLAIMS OF PRIVILEGE. ...............................................................13

VI. AT MOST, THE COURT SHOULD ORDER AN *IN CAMERA* REVIEW OF THE DOCUMENTS WITHOUT WAIVING PRIVILEGE. ......................................14

CONCLUSION............................................................................................................................15

# TABLE OF AUTHORITIES

**Page**

## Cases

*Bird v. PSC Holdings I, LLC*
  2014 U.S. Dist. LEXIS 49869 (S.D. Cal. Apr. 8, 2014) ............................................ 1, 2, 3

*Clarke v. Am. Commerce Nat. Bank*
  974 F.2d 127 (9th Cir. 1992) .............................................................................................. 8

*Coleman v. Schwarzenegger*
  2007 U.S. Dist. LEXIS 102305 (E.D. Cal. Dec. 6, 2007) ................................................ 14

*Fisher v. U.S.*
  425 U.S. 391 (1976) ........................................................................................................... 4

*Genentech, Inc. v. Insmed Inc.*
  236 F.R.D. 466 (N.D. Cal. 2006) ............................................................................... 10, 12

*Grecu v. Evans*
  2013 U.S. Dist. LEXIS 47800 (N.D. Cal. Apr. 2, 2013) .................................................... 3

*Home Indem. Co. v. Lane Powell Moss & Miller*
  43 F.3d 1322 (9th Cir. 1995) ....................................................................................... 10, 12

*In re Imperial Corp. of Am.*
  174 F.R.D. 475 (S.D. Cal. 1997*)* ...................................................................................... 13

*Laser Indus., Ltd. v. Reliant Tech., Inc.*
  167 F.R.D. 417 (N.D. Cal. 1996) ...................................................................................... 10

*Real v. Cont'l Grp., Inc.*
  116 F.R.D. 211 (N.D. Cal. 1986) ........................................................................................ 7

*Regents of Univ. of Cal. v. Micro Therapeutics, Inc.*
  No. 03-05669, 2007 WL 2069946 (N.D. Cal. July 13, 2007) .......................................... 11

*Republic Gear Co. v. Borg-Warner Corp.*
  381 F.2d 551 (2d Cir. 1967) ............................................................................................... 4

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

*Sky Valley Ltd. Partnership v. ATX Sky Valley*
    150 F.R.D. 648 (N.D. Cal. 1993)..................................................................................................2

*Tyco Healthcare Group LP v. Mut. Pharm. Co.*
    No. 07-1299, 2012 WL 1585335, 2012 U.S. Dist. LEXIS 63393 (D.N.J. May 2, 2012) ........................................................................................................................................14

*U.S. v. Bilzerian*
    926 F.2d 1285 (2d Cir. 1285)...................................................................................................10

*U.S. v. Blackman*
    72 F.3d 1418 (9th Cir. 1995) .....................................................................................................8

*U.S. v. Chevron Corp.*
    1996 U.S. Dist. LEXIS 8646 (N.D. Cal. May 30, 1996) .........................................................9

*U.S. v. Costanzo*
    625 F.2d 465 (3d Cir. 1980).......................................................................................................3

*U.S. v. Evans*
    113 F.3d 1457 (7th Cir. 1997) ...................................................................................................2

*U.S. v. Exxon*
    94 F.R.D. 246 (D.D.C. Nov. 30, 1981)...................................................................................10

*U.S. v. Graf*
    610 F.3d 1148 (9th Cir. 2010) ...................................................................................................3

*U.S. v. Mett*
    178 F.3d 1058 (9th Cir. 1999) ...................................................................................................5

*U.S. v. Munoz*
    233 F.3d 1117 (9th Cir. 2000) ...................................................................................................4

*Weil v. Investment/Indicators, Research & Management*
    647 F.2d 18 (9th Cir. 1981) ................................................................................................9, 12

*Westinghouse Elec. Corp. v. Kerr-McGee Corp.*
    580 F.2d 1311 (7th Cir. 1978) ...................................................................................................3

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

**PRELIMINARY STATEMENT**

The subpoena issued by plaintiff Loop AI Labs, Inc. ("Loop") is directed to the former counsel of defendants Almaviva S.p.A., Almawave S.r.l. and Almawave USA, Inc. (collectively, "Almawave") and plainly seeks the production of documents that are protected by the attorney-client privilege. Nowhere in Loop's Opposition does Loop present a valid reason for disregarding this protection.

The arguments made in Loop's Opposition are unavailing, misapply applicable law and presume facts that are not true. For example, contrary to the undisputed evidence, Loop hypothesizes that the documents at issue contain communications between Gatti and Orrick regarding Gatti's employment with Almawave USA. Loop argues that those documents would not be privileged. However, no such documents exist in the Orrick Documents.

Almawave USA seeks this protective order not to conceal any relevant information, but simply to protect its attorney-client privilege. The protection of its privilege is especially important because Loop has also served a subpoena on Almawave's current litigation counsel, Venable LLP. Rather than focus on the merits of its allegations, Loop is instead focusing its efforts on obtaining Almawave's privileged and confidential communications, including documents concerning litigation strategy.[1]

**ARGUMENT**

**I.   ALMAWAVE USA HAS STANDING TO BRING THE MOTION BECAUSE IT HAS PRESENTED UNREFUTED EVIDENCE THAT IT REASONABLY BELIEVED IT HAD AN ATTORNEY-CLIENT RELATIONSHIP WITH ORRICK.**

"The primary inquiry in determining the existence of an attorney-client relationship is whether the client would have a reasonable expectation that an express or implied agreement existed." *Bird v. PSC Holdings I, LLC*, 2014 U.S. Dist. LEXIS 49869, *8 (S.D. Cal. Apr. 8, 2014) (citation omitted) (finding attorney-client relationship existed because although the

---

[1] Almawave's litigation strategy is to get to the merits if ever possible and disprove Loop's baseless accusations.

attorney "was not officially retained as counsel," the party reasonably believed an attorney-client relationship existed); *see also U.S. v. Evans*, 113 F.3d 1457, 1465 (7th Cir. 1997) ("The professional relationship for purposes of the privilege for attorney-client communications hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice.") (internal quotation marks omitted).

"When undertaking this evaluation, it is incumbent on this Court to '[take] into account all kinds of indirect evidence and contextual considerations that appear relevant to determining whether it would have been reasonable for the person to have inferred that she was the client of the lawyer.'" *Bird*, 2014 U.S. Dist. LEXIS 49869 at *8 (quoting *Sky Valley Ltd. Partnership v. ATX Sky Valley*, 150 F.R.D. 648, 651 (N.D. Cal. 1993)).

Almawave USA has provided uncontroverted evidence that it reasonably believed that an attorney-client relationship existed between it and Orrick. *See* Declaration of Valeria Sandei ("Sandei Decl."), Almawave USA's Chairman and President, Dkt. 168-1. Ms. Sandei testified that Orrick served as counsel to Almawave USA, and she certainly believed that to be true. *Id*. at ¶ 4. Orrick also served as counsel to Almawave S.r.l. *Id*. at ¶¶ 2-4. Ms. Sandei further testified that Orrick provided legal advice to Almawave USA and that it was Almawave USA's practice to communicate regularly in confidence with Orrick to obtain legal advice. *Id*. at ¶¶ 4-5. Almawave USA did not intend any of these confidential communications to be made public. *Id*. at ¶ 5. These facts establish that "it would have been reasonable for [Almawave USA] to have inferred that [it] was the client of" Orrick and, thus, establish an attorney-client relationship between Almawave USA and Orrick. *Bird*, 2014 U.S. Dist. LEXIS 49869 at *8.

Instead of looking at the question from Almawave USA's perspective, Loop argues that no attorney-client relationship existed because Orrick has not identified Almawave USA as a client in its unsworn responses to the Orrick subpoena or in communications with Loop. Opp. at 5:7-17.[2] Loop also argues that Orrick has not stated "that it ever informed [Almawave USA] that

---

[2] Orrick's Responses to the subpoena cannot and do not prove that Almawave USA did not have an attorney-client relationship with Orrick. Loop points to Orrick's response to Request No. 1, which seeks documents relating to the retention of Orrick by Almawave. Orrick responded that

it was also a client . . ." *Id*. at 5:17-18.[3]  Whatever Orrick neglected or declined to say to Loop is irrelevant because the issue of whether an attorney-client relationship exists "must be considered from the perspective of a reasonable person in the position of the party disclosing confidential information." *Bird*, 2014 U.S. Dist. LEXIS 49869 at *10; *see also Grecu v. Evans,* 2013 U.S. Dist. LEXIS 47800, *41 (N.D. Cal. Apr. 2, 2013).

Loop argues that the terms of Orrick's "Standard Terms of Engagement" would have required the execution of a separate engagement letter between Orrick and Almawave USA, and thus Almawave USA could not have been Orrick's client because there was no separate engagement letter.  Opp. at 6:2-14.  However, as a matter of law, neither a formal engagement letter nor the payment of fees are necessary to prove that an attorney-client relationship existed. *See U.S. v. Costanzo*, 625 F.2d 465, 468 (3d Cir. 1980) ("The attorney-client relationship is not dependent on the payment of a fee nor upon execution of a formal contract."); *Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1317 (7th Cir. 1978) (same).

Loop misconstrues the applicable case law by citing *U.S. v. Graf*, 610 F.3d 1148, 1161 (9th Cir. 2010), for the contention that "who signed the 'attorney retainer agreement,' whether the attorney to the party in question informed it that it was a client, who paid the attorney's bills, and to whom the letter terminating the attorney-client relationship was directed" are factors that are "repeatedly" considered by the Ninth Circuit to determine if an attorney-client relationship exists.  Opp. at 5:18-22.  But *Graf* examined the "complex relationship between corporate employees and corporate counsel" and analyzed "whether a corporate employee holds a joint privilege over communications with corporate counsel."  610 F.3d at 1159.  Neither *Graf*, nor the test it adopts, applies here because Almawave USA is not a "corporate employee" attempting to assert an attorney-client privilege with corporate counsel.  Rather, Almawave USA has made

---

it does not have responsive documents relating to Almawave USA.  Declaration of Thomas E. Wallerstein ("Wallerstein Decl."), Dkt. 168-2 at 1:21-2:5.  Almawave USA began being represented by Orrick as soon as it was created.  Sandei Decl., Dkt. No. 168-1 at ¶ 4.  Thus there was no need for expressions of interest in retaining Orrick, which explains Orrick's response that no such documents exist.
[3] Notably, Orrick has not denied that it represented Almawave USA.

1  clear that the attorney-client relationship between Orrick and Almawave USA was its own
2  distinct relationship.[4]
3    Finally, Loop argues that Almawave USA cannot invoke the attorney-client privilege
4  because it is a "non-functioning company." Opp. at 8:21-22.[5] Loop's allegations are false
5  because Almawave USA is currently a functioning company conductin business with Valeria
6  Sandei as Chairman and President (Sandei Decl., Dkt. No. 168-1 at ¶ 1) and other agents and
7  consultants.

## II. THE ITALIAN ALMAWAVE DEFENDANTS CANNOT BE FORCED TO WAIVE PRIVILEGE OR SURRENDER CONTESTING PERSONAL JURISDICTION.

11    Loop argues that this Court may not protect the privilege of Almaviva S.p.A. and
12  Almawave S.r.l. (the "Italian Almawave Defendants") because technically only Almawave USA
13  was the moving party. Opp. at 6:22-7:18, 8:6-11.[6] In reality, the Italian Almawave Defendants
14  were not moving parties only because Loop refused to stipulate that their bringing a motion
15  would not result in their forfeiting their pending challenge to personal jurisdiction.[7]

---

[4] *U.S. v. Munoz*, 233 F.3d 1117, 1128 (9th Cir. 2000), is distinguishable for the same reason.
[5] Loop falsely asserts that Almawave USA's "counsel in this litigation has indicated that it was retained solely by Almaviva S.p.A." Opp. at 8-9, n.13. In response to the subpoena that Loop served on undersigned litigation counsel, Venable responded to document request no. 2 by stating that the engagement letter was sent to Almaviva S.p.A. "confirming Venable's engagement ***to represent the Almaviva Defendants*** in this litigation." Healy Decl., Ex. 7, Dkt. 178-6 at 3:18-19, 5:8-11 (Venable's Responses to Loop Subpoena) (defining Almaviva Defendants as "Almaviva S.p.A., Almawave USA, Inc. and Almawave S.r.l.") (emphasis added). In support of its objections to the subpoena served upon it, Venable also stated that ***all*** of "the Almaviva Defendants . . . are represented by Venable in this litigation." Healy Decl., Ex. 7, Dkt. 178-6 at 3:17-20 (Venable's Responses to Loop Subpoena).
[6] Though the Italian Almawave Defendants were not the moving parties, counsel for Almawave USA is also counsel for the Italian Almawave Defendants and thus asserts the privilege on their behalf via this Motion. *See Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 556 (2d Cir. 1967) (where client was not present at the attorney's deposition, court found "[n]ot only may an attorney invoke the privilege in his client's behalf when the client is not a party to the proceeding in which disclosure is sought, but he should do so, for he is duty-bound to raise the claim in any proceeding in order to protect communications made in confidence.") (citations omitted); *Fisher v. U.S.*, 425 U.S. 391, 402 n.8 (1976) ("[I]t is universally accepted that the attorney-client privilege may be raised by the attorney.").
[7] Judge Gilliam had not yet issued his Order denying without prejudice the Italian Almawave Defendants' motion to dismiss for lack of personal jurisdiction, and requiring the parties to stipulate to an appropriate scope and length of jurisdictional discovery. Dkt. No. 183 (filed

By directing its subpoena to Orrick, the Italian Almawave Defendants' former counsel, and then directing a subpoena to Venable, their current litigation counsel, and arguing that Almawave USA does not have standing to assert the attorney-client privilege on the Italian Almawave Defendants' behalf, Loop essentially argues that the Italian Almawave Defendants must either surrender their challenge to personal jurisdiction or waive their attorney-client privilege.[8]

The Italian Almawave Defendants must be permitted to protect their claim of privilege without waiving their jurisdiction challenge.[9] Should this Court determine that the Italian Almawave Defendants must bring a motion for protective order in order to prevent the disclosure of their privileged documents, a ruling should be deferred until their jurisdictional challenge is finally determined pursuant to Judge Gilliam's recent Order. *See* Dkt. No. 183 at 6:19-7:1.

## III. ALMAWAVE USA HAS ESTABLISHED THAT THE DOCUMENTS WITHHELD ARE PRIVILEGED.

Where attorney-client privilege is concerned, any doubt should be resolved in favor of the privilege, not in favor of disclosure. *U.S. v. Mett*, 178 F.3d 1058, 1065 (9th Cir. 1999). The unrefuted evidence establishes that all but two of the Orrick Documents are protected from disclosure by the attorney-client privilege. *See* Wallerstein Decl., Dkt. No. 168-2 ¶¶ 5-7; Sandei Decl., Dkt. No. 168-1; Reply Wallerstein Decl., ¶¶ 3-8.

### A. Logos, Gifs, or Other Similar "Blank" Files Are Part of Privileged Documents.

Loop argues that seventeen of the documents contained in the Orrick Documents are logos, gifs or similar "blank" files which cannot be privileged. Opp. at 10:5-9, n.15. These

---

September 3, 2015). In any event, given Judge Gilliam's order, the jurisdiction question remains open.

[8] Loop's argument that Almawave USA does not have standing to invoke the Italian Almawave Defendants' privilege also contradicts Loop's argument that Almawave USA has standing to waive the Italian Almawave Defendants' privilege. *See* Opp. at 22:16-23:3.

[9] At least half a dozen times in as many months, Loop has tried to trick or force the Italian Almawave Defendants into waiving their personal jurisdiction challenges; *e.g.*, most recently inserting a jurisdiction waiver into the proposed Confidentiality Protective Order. When pressed on the tactic by Judge Gilliam, Loop initially made an on-the-record stipulation that the Italian Almawave Defendants could participate in discovery issues without waiving their jurisdictional challenge. Loop promptly revoked that stipulation shortly after the hearing.

documents are part of privileged email communications even though they are considered by the document reviewing software to be separate documents.  Reply Wallerstein Decl., ¶ 4.

After reviewing the Orrick Documents, counsel for Almawave determined that all but two of the documents were privileged.  Wallerstein Decl., Dkt. No. 168-2 at ¶ 6; Reply Wallerstein Decl., ¶ 4.  When determining privilege, e-mails, together with any "blank" documents attached, were considered one document.  Reply Wallerstein Decl., ¶ 4.  The software's count of the number of documents (613) was also relied upon.  *Id*.  Consequently, two different concepts regarding the number of documents were employed.  *Id*.  Instead of stating that there are 613 documents and all but two are privileged, the statement should have been that there are 594 privileged documents, which include emails attaching 17 "blank" documents that are non-responsive to the requests.  *Id*.  Of the responsive documents, the fact remains that all but two are privileged.  *Id*.

Nonetheless, if Loop requires, Almawave USA will produce the logos, gifs, or other similar "blank" documents providing that doing so will not be deemed a waiver of its attorney-client privilege as to the communications of which they are a part.

**B.   Communications or Documents Exchanged Between Orrick and Gatti as an Agent of Almawave For the Purpose of Legal Advice Are Privileged.[10]**

The record shows that Almawave USA is seeking to protect documents and communications in which Almawave communicated in confidence with Orrick for the purpose of seeking legal advice.  *See* Sandei Decl., Dkt. No. 168-1 at ¶ 5; Wallerstein Decl., Dkt. No. 168-2 at ¶ 5-7 (describing nature of privileged documents).  There is no evidence that it is withholding documents or communications involving third parties because it is not.  *See Id*.

Loop's speculation as to allegedly non-privileged documents and communications that may be contained in the Orrick Documents is fiction.  Loop hypothesizes that "Gatti's communications with Orrick before she became an officer of [Almawave USA] cannot be covered by privilege" (Opp. at 15:7-8), but no such documents are contained in the Orrick

---

[10] Loop's references throughout the Opposition to statements made by Almawave's counsel during meet and confer discussions are irrelevant, taken out of context and misleading.

1  Documents. Reply Wallerstein Decl., ¶ 5. Similarly, Loop hypothesizes that "[c]ommunications
2  between Gatti and Orrick regarding the terms of Gatti's employment, or on the topic of whether
3  Gatti's employment by [Almawave USA] breached Gatti's employment contract with Loop AI,
4  would not be privileged." Opp. at 165:16-16:1. Again, no such documents exist. *See* Reply
5  Wallerstein Decl., ¶¶ 5 and 6. Nor are there any documents or communications contained in the
6  Orrick Documents in which Gatti or anyone disclosed "Loop AI's confidential or proprietary
7  information." *See* Opp. at 16:1-6; *see* Reply Wallerstein Decl., ¶¶ 5 and 6.[11]

Loop also argues that Gatti's duties and responsibilities on behalf of Almawave USA make it unlikely that she "would have occasion to seek legal advice on behalf of [Almawave USA] from Orrick." *See* Opp. at 16:7-12 and 24:14-25:7. Gatti was the CEO of Almawave USA from June 2014 through March 9, 2015. Dkt. No. 25-1 at ¶¶ 10, 28. Not surprisingly then, as CEO, Gatti was also included in Almawave USA's communications with Orrick relating to obtaining legal advice. Reply Wallerstein Decl., ¶ 6.

### C. The Documents Contained in the Orrick Documents that Relate to Introductions to Attorneys at Orrick and Engagement Letters Encompass Legal Advice and Are Privileged.

Almawave USA has provided evidence establishing that the Orrick Documents relating to introductions of Orrick attorneys to Almawave and engagement letters between Orrick and Almawave encompass legal advice and are privileged. *See* Wallerstein Decl., Dkt. 168-2 at ¶ 6(a). Loop does not dispute that communications relating to the engagement of Orrick by Almawave USA could be privileged, but instead opines that this would be "highly unlikely." Opp. at 16:22-24. The undisputed evidence provided by Almawave USA provides sufficient information to dispel Loop's fears and provides sufficient information to assess Almawave

---

[11] Even if there were, Loop is wrong that any such documents "cannot be protected from disclosure on privilege grounds." Opp. At 16:1-2. A party cannot discover privileged matters even if relevant to the party's claim or defense. *Real v. Cont'l Grp., Inc.*, 116 F.R.D. 211, 213 (N.D. Cal. 1986) ("Pursuant to Rule 26(b)(1), Federal Rules of Civil Procedure, even relevant evidence is not discoverable if such evidence is privileged.").

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

1  USA's claim of privilege. Wallerstein Decl., Dkt. 168-2 at ¶¶ 5, 6(a) and 7.[12]

2  *U.S. v. Blackman*, 72 F.3d 1418, 1424 (9th Cir. 1995), relied upon by Loop to claim that engagement letters are not privileged, actually supports Almawave USA's position. In *Blackman*, the Ninth Circuit noted that "[a]s a general rule client identity and the nature of the fee arrangement between attorney and client are not protected from disclosure by the attorney-client privilege." *Id*. However, the Court also held that "where disclosure would compromise confidential communications between attorney and client" this general rule would not apply. *Id*. Here, the exception to the general rule applies because the engagement letter sets forth the legal issues upon which Orrick was to assist Almawave (Wallerstein Decl., Dkt. No. 168-2 at ¶ 6(a); Reply Wallerstein Decl., ¶ 7), and thus, disclosing the engagement letter would "compromise confidential communications between attorney and client." *Blackman*, 72 F.3d at 1424.

**D.    The Billing Statements Contained in the Orrick Document Contain Information Relating to Legal Advice and Are Privileged.**

Even if, as Loop alleges, the billing records contained in the Orrick Documents are not "inherently privileged," the evidence shows that they indicate the work performed by Orrick attorneys and the legal issues about which Orrick counselled Almawave. Wallerstein Decl., Dkt. No. 168-2 at ¶ 6(c). As explained in *Clarke v. Am. Commerce Nat. Bank*, because these documents "reveal the motive of the client in seeking representation" and "the specific nature of the services provided" they are protected from disclosure by the attorney-client privilege. 974 F.2d 127, 129 (9th Cir. 1992).

**E.    The Corporate Minutes and Other Corporate Documents Contained in the Orrick Documents Refer to or Incorporate Legal Advice and Are Privileged.**

Request No. 20 seeks the production of communications regarding Almawave's corporate minute book and other corporate documents. Loop asserts that it "does not seem reasonable" that all documents responsive to Request No. 20 are privileged. Opp. at 18:9-14. But the documents potentially responsive to request No. 20 are confidential communications

---

[12] In footnote 28 Loop asserts that Gatti had communications with third parties in which she "boasted that Almawave S.r.l. had hired the same law firm as Loop." Opp. at 16, n. 28. No such communications were contained in the Orrick Documents. Reply Wallerstein Decl., ¶ 5.

discussing legal advice, documents incorporating legal advice, or documents attached to privileged communications and incorporating the legal advice discussed in those communications and thus are privileged.  Reply Wallerstein Decl., ¶ 8.

### IV. ALMAWAVE HAS NOT WAIVED THE ATTORNEY-CLIENT PRIVILEGE.

#### A. Almawave USA Has Met its Burden Regarding Lack of Waiver.

Contrary to Loop's assertions that Almawave USA must somehow predict Loop's arguments and disprove any possible theory of waiver (*see* Opp. at 4:5-12, n.6), the Northern District of California applies a "shared burden" approach requiring the party claiming waiver to bear the initial burden of production on the issue of waiver. *U.S. v. Chevron Corp.*, 1996 U.S. Dist. LEXIS 8646, at *9-11 (N.D. Cal. May 30, 1996).[13] Further, Loop's characterization in *Chevron* as limited to the particular facts of that case is incorrect.  In *Chevron*, this Court explained that that the issue faced was a "classic one," and held that requiring the party asserting the attorney-client privilege to disprove all possible bases of waiver "would obviously be unsustainable." *Id*. at 9.

#### B. Almawave Has Not Waived the Attorney-Client Privilege.

Almawave has not expressly or implicitly waived the attorney-client privilege with respect to the materials sought by the Orrick subpoena.[14]  Almawave has provided evidence that it relied on the statements made by Gatti and third parties, not on privileged communications, to form its belief that Gatti "did not have any conflicts to any extent, legal or practical, to becoming involved with Almawave USA." Dkt. No. 25-1 at ¶ 9; *see also id*. ¶¶ 8, 12-13; Dkt. No. 25 at 4:19-28; 5:2-8; 7:25-8:2.  Almawave also stated "Raniero Romagnoli, Luca Ferri and Valeria Sandei knew about Loop <u>only what Ms. Gatti had mentioned</u> to them in passing (namely, that . . . <u>according to Ms. Gatti</u>, her involvement with the start-up posed no legal or practical impediment to her working for Almawave USA)." Dkt. No. 71 at ¶ 7 (emphasis added); *see also* Dkt. No. 62

---

[13] *Chevron* does not "modify" the Ninth Circuit's decision in *Weil v. Investment/Indicators, Research & Management*, 647 F.2d 18, 25 (9th Cir. 1981), but instead endorses and clarifies it. *Chevron*, 1996 U.S. Dist. LEXIS 8646, at *11.

[14] Counsel's use of quotation marks to describe Loop's "advice of counsel" defense (Motion, Dkt. No. 168 at 13:6-8) was not meant to imply that Loop necessarily used the particular phrase "advice of counsel," but merely to indicate that "advice of counsel" is a term of art.

at 3:6-11; *see also* Motion, Dkt. No. 168 at 5:14-7:10.

Loop cites this and other similar evidence to support its argument that Almawave has implicitly waived privilege by putting its privileged communications at issue. Opp. at 20:1-17, nn.35-40. However, this evidence establishes that Almawave had an objectively reasonable basis for its beliefs regarding Gatti's employment with Almawave USA, but Almawave does not assert that it relied on any privileged communications to form that belief. *Id*.; *see also* Motion, Dkt. 168 at 5:14-7:10. Accordingly, it shows that Almawave's privileged communications with Orrick have <u>not</u> been put in issue and that Almawave has not implicitly waived its attorney-client privilege. *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1327 (9th Cir. 1995) (finding that plaintiff "did not impliedly waive its attorney-client privilege because [it] did not put into issue its privileged communications. There was sufficient objective evidence of the reasonableness of the settlement amount for [plaintiff] to prove reasonableness to the jury without resort to its attorneys' communications.").

Almawave's mere denial of knowledge and intent do not waive privilege because Almawave did not disclose the contents of any communication with its counsel. *See* Opp. at 20:1-17, n. 35-40; Motion, Dkt. 168 at 5:14-7:10. "The mere denial of intent is insufficient to establish waiver of the privilege." *Genentech, Inc. v. Insmed Inc.*, 236 F.R.D. 466, 469 (N.D. Cal. 2006); *Laser Indus., Ltd. v. Reliant Tech., Inc.*, 167 F.R.D. 417, 446 (N.D. Cal. 1996). Privileged communications are not "in issue" simply because they could be relevant, and do not necessarily become "in issue" even if the privileged communications may have affected the client's state of mind in a relevant manner. *Genentech*, 236 F.R.D. at 469 (citation omitted). "Waiver is not likely to be found when the statements alleged to constitute waiver do not disclose the contents of a specific communication between client and attorney." *Id*.; *see also Laser Indus.*, 167 F.R.D. at 446.

Neither *U.S. v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1285) nor *U.S. v. Exxon*, 94 F.R.D. 246 (D.D.C. Nov. 30, 1981), apply here. In *Bilzerian*, the defendant did not deny that he had engaged in the conduct alleged, but instead argued that he believed his conduct was lawful. *Id*. at 1291. The defendant sought to testify as to his mental state, specifically that "he did not

intend to violate the securities laws" and that he had believed "in the lawfulness" of his undisputed actions. *Id*. Similarly, in *Exxon*, defendants did not deny the acts alleged; instead, they raised "the affirmative defense of good faith reliance on the government's regulations and communications." *Id*. at 246. Thus, in both *Bilzerian* and *Exxon*, the defendants admitted that they had committed the acts alleged but argued they were not culpable because of their belief about the legality of their actions.

By contrast, Almawave has not argued that it is not liable because of what it believed about the law. It does not admit unlawful conduct but plead ignorance of the law or merely a good-faith belief that its conduct was lawful. Instead, Almawave's defense, as it has consistently stated, is that it did not actually do what the FAC alleges it did. *See, e.g.*, Declaration of Luca Ferri [Dkt. No. 64] ("I did not directly or indirectly engage in any wrongful or illegal activities alleged in the FAC."). Almawave has not put its belief in the lawfulness of the conduct alleged in the FAC at issue, because Almawave did not actually undertake that conduct.[15]

Loop also asserts that a party "may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes." Opp. at 21:11-13. But no communications between Almawave and Orrick have been selectively disclosed. *See* Opp. at 20:1-17, n.35-40. In any event, Loop has not and could not show that withholding the Orrick Documents based on privilege would prejudice Loop.

1. <u>Almawave's Reliance on the Factual Assertions Made by Gatti in Her Employment Contract Does Not Implicitly Waive Privilege.</u>

Loop argues that Almawave USA waived privilege because, according to Loop, it "said that [its] belief in the lawfulness of [its] hiring of Gatti was based in part on a provision contained in an agreement they entered into with Gatti . . ." Opp. at 22:16-23:3. Almawave did not argue that it believed hiring Gatti was "lawful" because of the terms of her employment agreement. Almawave USA's reference to Gatti's factual assertion in her employment

---

[15] *Regents of Univ. of Cal. v. Micro Therapeutics, Inc.*, No. 03-05669, 2007 WL 2069946 (N.D. Cal. July 13, 2007) is also distinguishable. In *Regents* plaintiff produced redacted copies of letters from their attorneys which conveyed a general conclusion. *Id*. at *1. Plaintiff asserted a defense of "good faith" reliance based on that conclusion, which necessarily implicated the redacted portions of the attorney's letter, and therefore waived privilege. *Id*. at *4.

1  agreement does not waive privilege because it provides factual support for Almawave's
2  objectively reasonable beliefs as to any implications of Gatti's employment, without implicating
3  privileged communications. *Home*, 43 F.3d at 1327. Loop's assertion that there may be a
4  factual dispute as to the facts Gatti represented to Almawave USA (Opp. at 23:3-5) does not
5  waive the privileged communications between Almawave and Orrick. *Genentech*, 236 F.R.D. at
6  469 (Privileged communications are not "in issue" simply because they might be relevant).

        2.       <u>Venable's Response to Loop's Subpoena Did Not Waive Privilege.</u>

Loop claims that Venable's response to the subpoena served upon it by Loop waives privilege. In the subpoena, Loop asked for all documents in which attorney Peter Sternberg advised about Anna Gatti's employment with Loop. In response, Venable said no such documents exist because "while at Orrick, [Mr. Sternberg] did not advise anyone about implications arising from Anna Gatti's employment with Loop AI . . ." Opp. at 23:17-20 (citing Healy Decl., Ex. 7, Dkt. No. 178-6 at 9) (Response to Venable Subpoena Request No. 8). This response does not expressly waive privilege because it does not disclose the content of privileged communications. *Weil*, 647 F.2d at 24. Nor does it implicitly waive privilege, as Loop suggests, by providing a "selective and self-serving disclosure" that puts all communications between Orrick and Almawave "in issue." Opp. at 23:20-24:11 (alleging that "Mr. Sternberg very carefully refrained from saying anything about the advice provided ***by other Orrick lawyers*** . . .) (emphasis in original). Request No. 8 seeks "all documents and communications" between <u>only</u> Mr. Sternberg and Almawave while Mr. Sternberg was at Orrick and relating to Gatti's involvement with Almawave. Healy Decl., Ex. 7, Dkt. No. 178-6 at 9:3-13. It does not seek any communications between any other Orrick lawyer and Almawave. *Id*. Accordingly, Loop cannot claim any "gross[] unfair[ness]" or "selective and self-serving disclosure," (Opp. at 23:21-24:2) because the response directly responds to the specific question Loop posed. *Id*. at 178-6 at 9:3-26.

/ / /

/ / /

/ / /

## V. A PRIVILEGE LOG SHOULD NOT BE REQUIRED BECAUSE ALMAWAVE USA HAS PROVIDED THE INFORMATION NECESSARY TO ASSESS ITS CLAIMS OF PRIVILEGE.

Loop hypothesizes that a privilege log is necessary because the Orrick Documents are "likely to contain communications or documents within the categories" discussed above, "over which there can be no possible basis to assert privilege." Opp. at 10:14-15. However, as explained, no such documents exist. Wallerstein Decl., Dkt. No. 168-2 at ¶¶ 5-7; Reply Wallerstein Decl., ¶¶ 5-8.

Although a privilege log may be a common way to provide the information necessary to assess a claim of privilege (Opp. at 11, n.16), it is not the only way to provide such information and in situations involving voluminous documents it is not required. *See, e.g., In re Imperial Corp. of Am.*, 174 F.R.D. 475, 478-79 (S.D. Cal. 1997*)* (recognizing that a privilege log is but "[o]ne method" of identifying allegedly privileged documents but that assertions of privilege do not require production of a document-by-document log when preparing such a log would be unduly burdensome); Adv. Notes to 1993 Amendments to Fed. R. Civ. P. 26. Almawave USA already has provided all the information necessary for Loop and the Court to assess its claims of privilege. *See* Motion, Dkt. No. 168; Sandei Decl., Dkt. No. 168-1; Wallerstein Decl., Dkt. No. 168-2 ¶¶ 5-7; Reply Wallerstein Decl., ¶¶ 3-8. Almawave USA has not made a blanket assertion of privilege but instead has provided descriptions of the nature of the documents, the subject matters, the senders and recipients, the dates of the documents and that the documents are protected from disclosure by the attorney-client privilege. Wallerstein Decl., Dkt. No. 168-2 at ¶¶ 6-7.

Loop asserts without evidence that compiling a privilege log would not be "unreasonable in respect of time or expense" but fails to refute Almawave USA's evidence establishing that compiling a privilege log here will take significant time and expense. *See* Wallerstein Decl., Dkt. No. 168-2 at ¶ 8; *cf.*, Opp. at 12:7-8, n.21 (citing *Coleman v. Schwarzenegger*, 2007 U.S.

Dist. LEXIS 102305 (E.D. Cal. Dec. 6, 2007).[16] [17]  *Coleman* is distinguishable.  In *Coleman*, the court held that certain privilege logs must be supplemented because the information provided did "not establish essential elements of the attorney client privilege."  *Id*. at *43-44.  Here, Almawave USA has established the essential elements of the attorney-client privilege and provided the necessary information to assess its claims of privilege.  *See* Sandei Decl., Dkt. No. 168-1; Wallerstein Decl., 168-2 at ¶¶ 5-7.[18]

## VI.  AT MOST, THE COURT SHOULD ORDER AN *IN CAMERA* REVIEW OF THE DOCUMENTS WITHOUT WAIVING PRIVILEGE.

If this Court is inclined to deny Almawave USA's motion in whole or in part, or require a privilege log, it should instead first conduct an *in camera* review of documents it might order produced or logged.

Nothing in the Orrick Documents is the least bit harmful to Almawave's position, and nothing in the Orrick Documents is even vaguely necessary for Loop's case.  This motion is not about hiding a smoking gun, or gaining a litigation advantage.  This motion is about nothing more than the critically important principle of privilege.

/ / /

/ / /

---

[16] Loop's recognition that Almawave USA has been incurring significant expense defending itself in this litigation is irrelevant and premised on baseless assumptions.  Loop further alleges that an insurer is paying Almawave USA's litigation costs. Opp. at 13:16-14:1.  This is irrelevant even were it true.

[17] Also distinguishable is *Tyco Healthcare Group LP v. Mut. Pharm. Co*., No. 07-1299, 2012 WL 1585335, 2012 U.S. Dist. LEXIS 63393, at *12-13 (D.N.J. May 2, 2012).  First, *Tyco* involved a patent infringement claim, and the court expressly stated that the local patent rule which the resisting party cited "should be read as creating an additional obligation on a party in a patent case, aside from what is already required under the Federal Rules of Civil Procedure in any standard litigation matter." *Id*. at *3.  Second, the party seeking the production of documents in *Tyco* had "offered two compromises, which would reduce the number of post-complaint documents [the responding party] would have to log by 75 percent," and the Court expressly noted "the significant reduction of responsive documents that would result ..." *Id.* at *2.

[18] Loop argues because the Orrick Documents were produced in Concordance format generating a privilege log through Concordance would not be time intensive or costly.  Opp. a12:9-13:4.  However, Almawave USA would have to review and confirm the correctness of any report generated from Concordance, including making sure the sender, recipient, subject, date of the document, subject line or title, etc. are correct.  Almawave USA would also be required to manually enter any additional information that would not be generated by a Concordance report.

1    Protecting privilege is especially important in this case because Loop has served a
2    subpoena not only on Almawave's former counsel Orrick, but also on its current litigation
3    counsel Venable LLP.
4    Loop's Opposition makes a number of false assumptions as to possible documents that
5    might be contained in the Orrick Documents.  If necessary, this Court's *in camera* review can
6    confirm that Loop's speculations are baseless.

### CONCLUSION

For the forgoing reasons, Almawave USA respectfully seeks a protective order that would prevent Orrick's disclosure of Almawave's privileged documents, or in the alternative, an order quashing the Orrick subpoena.

Dated: September 3, 2015                **VENABLE LLP**

By:    /s/ Thomas E. Wallerstein
       Thomas E. Wallerstein (SBN 232086)
       Kimberly Culp (SBN 238839)
       505 Montgomery Street, Suite 1400
       San Francisco, CA 94111
       twallerstein@venable.com
       kculp@venable.com
       *Attorneys for Almawave USA, Inc.*