1  VALERIA CALAFIORE HEALY (*phv*)
   valeria.healy@healylex.com
2  HEALY LLC
   154 Grand Street
3  New York, New York  10013
   Telephone:     (212) 810-0377
4  Facsimile:     (212) 810-7036

5  DANIEL J. WEINBERG (SBN 227159)
   dweinberg@fawlaw.com
6  FREITAS ANGELL & WEINBERG LLP
   350 Marine Parkway, Suite 200
7  Redwood Shores, California  94065
   Telephone:     (650) 593-6300
8  Facsimile:     (650) 593-6301

9  Attorneys for Plaintiff
   LOOP AI LABS INC.

10

11              UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13

14  LOOP AI LABS INC.,                    CASE NO.: 3:15-cv-00798-HSG-(DMR)

15          Plaintiff,                    **PLAINTIFF LOOP AI LABS INC.'S
                                          NOTICE OF MOTION AND MOTION
16                                        TO DISQUALIFY FORMER ORRICK
        v.                                ATTORNEY STERNBERG AND HIS
17                                        NEW FIRM VENABLE LLP**

18  ANNA GATTI, et al,                    **Date: November 5, 2015
                                          Time: 2:30p.m.**
19          Defendants.                   Action Filed:  February 20, 2015
                                          Trial Date:    July 11, 2016
20

21                                        Hon. Haywood S. Gilliam, Jr.
                                          Hon. Donna M. Ryu
22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

**PLEASE TAKE NOTICE** that on November 5, 2015, at 2:30p.m. or as soon thereafter as this matter may be heard in the courtroom of the Honorable Haywood S. Gilliam, Jr., located in the United States District Courthouse, 450 Golden Gate Avenue, Courtroom 15, San Francisco, California, or, in the event the Motion is referred to the Honorable Donna M. Ryu, in Courtroom 4, 1301 Clay Street, Oakland, California on a date and at a time to be advised by the Court, Plaintiff Loop AI Labs Inc. ("Loop AI") will and hereby does move for the disqualification of (1) former Orrick Herrington & Sutcliffe LLP ("Orrick") partner, now Venable LLP partner, Peter Sternberg, Esq. ("Attorney Sternberg"), and (2) Venable LLP from the representation in this litigation of Defendants Almaviva S.p.A., Almawave S.r.l., and Almawave USA Inc. (together "Almaviva"), and further moves for entry of appropriate prophylactic measures to address Attorney Sternberg's continuation of his conflicted representation of Almaviva in this litigation.  In support of this Motion, Loop AI respectfully submits the accompanying Memorandum of Points and Authorities, the Declaration of Loop AI dated September 16, 2015 ("GMC Decl."), the Declaration of Loop AI's counsel dated September 16, 2015 ("VCH Decl."), and all other matters already of record with the Court, or of which the Court may take judicial notice, and any further argument or evidence that may be received by the Court in connection with this Motion.

**GROUNDS FOR THE MOTION**

The basis for this motion is the past and present employment of Attorney Sternberg, a senior attorney who was a member of the Orrick partnership until earlier this year, and now is a partner of Venable.[1]  Orrick began representing Loop AI in April 2012.  Orrick's representation of Loop AI continued without interruption until Orrick's sudden withdrawal, communicated to Loop AI on March 11, 2015.  Throughout this time Orrick was Loop AI's primary counsel in connection with virtually all aspects of Loop AI's business.  Of particular relevance here,

---

[1] As more fully discussed below, Loop AI does not know whether Attorney Sternberg continues to have any financial or other relationship with Orrick.

Orrick's representation of Loop AI covered employment matters and matters related to the issuance of Loop AI stock and included Loop's employment of Defendant Gatti and its issuance of stock to her. The Orrick attorneys who did most of the work on the Loop AI account were members of Orrick's Corporate practice group. While Orrick represented Loop AI —and until he left Orrick in or around February 2015— Attorney Sternberg was also a senior member of Orrick's Corporate practice group and worked closely with several of the same Orrick attorneys who worked on the Loop AI account. Throughout the time of Orrick's representation of Loop AI, as an Orrick partner, Attorney Sternberg owed Orrick's client Loop AI an undivided duty of loyalty and was required to act at all times in the interest of, and not adversely to, Loop AI.

On March 27, 2014, while he remained a partner at Orrick (and approximately one year before he left Orrick for Venable), Attorney Sternberg undertook the concurrent adverse representation of Almaviva S.r.l. and provided its representatives substantial assistance in crucial aspects of the wrongdoing alleged in this action. Attorney Steinberg and the team of Orrick attorneys headed by him helped Almaviva S.r.l. to negotiate and implement agreements with Anna Gatti that required Gatti to breach various contractual and fiduciary obligations owed by Gatti to Orrick's client Loop AI (including obligations owed pursuant to the employment agreement with Gatti that was drafted by Orrick for its client Loop AI). As more fully set forth in the accompanying Memorandum, Orrick's conflicted concurrent adverse representation of Almaviva S.r.l. would not have happened if Attorney Sternberg had followed proper conflict clearance practice. During his impermissibly conflicted representation of Almaviva while he was at Orrick, Attorney Sternberg dealt directly with Anna Gatti, who throughout that period of time was Loop AI's CEO and later President. In that capacity, Gatti had access to virtually all of Loop AI's confidential information, including its attorney-client privileged information and advice received from Orrick. Thus, for almost one year, Attorney Sternberg had direct and extensive access to confidential and privileged information of Loop AI both from within Orrick, as well as through Anna Gatti.

In February 2015, after Ms. Gatti was terminated by Loop AI and Loop AI discovered the wrongdoing alleged in this action, Attorney Sternberg elected to continue his conflicted

representation of Almaviva from another firm, Venable.  Attorney Sternberg was not permitted to begin, let alone continue, his conflicted representation of Almaviva against Loop AI.  The taint of Sternberg's almost one-year long representation, could not be suddenly removed by changing firms and continuing to conceal from Loop AI his role in the case.  In addition to his having had unfettered access to Loop AI's privileged and confidential information, Attorney Sternberg is personally and materially implicated in this case, including by his having provided substantial assistance to Almaviva and Gatti in inducing and facilitating Gatti's breaches of her obligations to Loop AI.  Because of his role in the wrongdoing alleged in this case, Attorney Sternberg faces personal liability to multiple parties involved in this case and he never should have continued his conflicted representation in this litigation whether alone or through Venable.

Because Venable admits that Attorney Sternberg has been personally working on this litigation since he moved to Venable,[2] his conflicts must be imputed to Venable, and disqualification of the entire firm is appropriate under any one of the three independent grounds discussed in the accompanying Memorandum of Points and Authorities.

### ATTEMPTS TO RESOLVE THE ISSUE WITHOUT COURT INTERVENTION

After Loop AI discovered this conflict through discovery received from Orrick in August 2015, Loop AI made several attempts to meet and confer with counsel for Almaviva and for Venable, in an effort to determine if alternatives to disqualification existed and could be implemented.  *See* VCH Decl. at ¶¶ 4-6.  Loop AI continued in its attempts to meet and confer with both Almaviva and Venable regarding this issue through September 3, 2015.  Almaviva and Venable declined to engage in any discussion regarding this issue.

### RELIEF SOUGHT

Loop AI respectfully requests the Court to order the disqualification of Attorney Sternberg and of Venable from any further participation as counsel in this case, whether by

---

[2] Although Attorney Sternberg was a corporate partner at Orrick, in his biography at Venable he identifies himself as handling both corporate and litigation matters, and being "actively engaged in multijurisdictional disputes, including … litigation, patent infringement, trade secret misappropriation, employment, and construction matters."  *See* Venable website at https://www.venable.com/peter-r-sternberg/ (last accessed September 14, 2015).

formal appearance or by informal consultation with other counsel.  Loop AI also requests that any confidential information or advice Attorney Sternberg shared with Almaviva or with anyone else regarding Loop AI or Orrick's work-product for Loop AI, including the agreements that are at issue in this action, be isolated and that the persons to whom Attorney Sternberg made such disclosures be prohibited from using it.  Loop AI further requests entry of any other remedy that the Court may deem just and proper under the circumstances.

Respectfully submitted,

September 16, 2015                              By:   /s/ *Valeria Calafiore Healy*

Valeria Calafiore Healy, Esq. (*phv*)
Valeria.healy@healylex.com
HEALY LLC
154 Grand Street
New York, New York 10013
Telephone:      (212) 810-0377
Facsimile:       (212) 810-7036

Daniel J. Weinberg, Esq. (SBN 227159)
dweinberg@fawlaw.com
FREITAS ANGELL & WEINBERG LLP
350 Marine Parkway, Suite 200
Redwood Shores, California 94065
Telephone:      (650) 593-6300
Facsimile:       (650) 593-6301

Attorneys for Plaintiff
LOOP AI LABS, INC.

3:15-CV-00798-HSG-DMR                              PL.'S MOTION TO DISQUALIFY
                                                  VENABLE LLP'S ATTORNEYS

# TABLE OF CONTENTS

**Pages**

TABLE OF AUTHORITIES ........................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

SUMMARY OF ARGUMENT ...................................................................................... 1

ARGUMENT .................................................................................................................. 6

I.      LEGAL FRAMEWORK .................................................................................... 6

II.     STERNBERG IS NOT PERMITTED TO CONTINUE ACTING ADVERSELY
        TO LOOP AI EITHER DIRECTLY OR THROUGH VENABLE ..................... 8

        A.    Sternberg's Conflicted Representation of Almaviva Was in Breach of His
              Duty of Loyalty to Loop AI And Cannot Be Cured By His Move to Venable
              Right Before this Action Was Filed ........................................................... 11

        B.    Sternberg and Venable Should Be Disqualified Even if The Court Evaluates
              The Conflicts Under the "Substantial Relationship" Test  ......................... 17

III.    STERNBERG'S PERSONAL INVOLVEMENT IN THE FACTS
        UNDERLYING THIS CASE PROVIDE AN INDEPENDENT BASIS FOR HIS
        AND VENABLE'S DISQUALIFICATION ....................................................... 21

CONCLUSION .............................................................................................................. 24

# TABLE OF AUTHORITIES

## CASES

**Page**

*Adams v. Aerojet-General Corp.*,
   86 Cal. App. 4th 1324 (2001) ...................................................20

*Cinema 5, Ltd. v. Cinerama, Inc.*,
   528 F.2d 1384 (2d Cir. 1976) ...................................................11

*Cord v. Smith*,
   338 F.2d 516 (9th Cir. 1964) ................................................7, 23

*Davis v. EMI Grp., Ltd.*,
   No. 12-1602, 2013 WL 75781,
   2013 U.S. Dist. LEXIS 1642 (N.D. Cal. Jan. 4, 2013) ...................19

*Dieter v. Regents of the Univ. of Calif.*,
   963 F. Supp. 908 (E.D. Cal. 1997)...........................................7

*E.F. Hutton & Co. v. Brown*,
   305 F. Supp. 371 (S.D. Tex. 1969) ..........................................7

*Erickson v. Newmar Corp.*,
   87 F.3d 298 (9th Cir. 1996) ....................................................6

*Eurocom, S.A. v. Mahoney, Cohen & Co.*,
   522 F. Supp. 1179 (S.D.N.Y. 1981)......................................22, 23

*Flatt v. Super. Ct.*,
   9 Cal. 4th 275 (1994) ....................................................9, 11, 12

*Flatworld Interactives LLC v. Apple Inc.*,
   No. 12-01956, 2013 WL 4039799,
   2013 U.S. Dist. LEXIS 111496 (N.D. Cal. Aug. 7, 2013)...............6, 11, 12, 13

*Hempstead Video, Inc. v. Inc. Vill. Of Valley Stream*,
   409 F.3d 127 (2d Cir. 2005).....................................................6

*Holm v. City of Barstow*,
   No. 08-420, 2008 WL 4290857,
   2008 U.S. Dist. LEXIS 110391 (C.D. Cal. Sept. 16, 2008)..................23

*Jessen v. Hartford Cas. Ins. Co.*,
   111 Cal. App. 4th 698 (2003) .........................................9, 17, 18

*Kaselaan & D'Angelo Assoc., Inc. v. D'Angelo*,
   144 F.R.D. 235 (D.N.J. 1992)...................................................18

*Packard Bell NEC, Inc. v. Aztech Sys.*,
   No. 98-7395, 2001 WL 880957,
   2001 U.S. Dist. LEXIS 11194 (C.D. Cal. Jan. 22, 2001) ...............17, 20

DQ MOTION
RE: VENABLE LLP'S ATTORNEYS

*Paul E. Iacono Structural Eng., Inc. v. Humphrey*,
  722 F.2d 435 (9th Cir. 1983) ...............................................................................6, 20

*People ex. rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*,
  20 Cal. 4th 1135 (1999) ..............................................................................10, 11, 14

*Pumphrey v. K.W. Thompson Tool Co.*,
  62 F.3d 1128 (9th Cir. 1995) .......................................................................................7

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .....................................................................................15

*State Farm Mut. Auto Ins. Co. v. Fed. Ins. Co.*,
  72 Cal. App. 4th 1422 (1999) ......................................................................13, 14, 16

*The Fund of Funds Ltd. v. Arthur Andersen & Co.*,
  567 F.2d 225 (2d Cir. 1977).........................................................................9, 11, 15, 16

*Trone v. Smith*,
  621 F.2d 994 (9th Cir. 1980) .....................................................................................17

*Unified Sewerage Agency v. Jelco, Inc.*,
  646 F.2d 1339 (9th Cir. 1981) ...................................................................................15

*US v. Napoli*,
  No. 10-642. 2011 WL 1302317.
  2011 U.S. Dist. LEXIS 37226 (N.D. Cal. Apr. 5, 2011) ...........................................23

*William H. Raley Co. v. Superior Court*,
  149 Cal. App. 3d 1042 (1983) ..............................................................................11, 18

*Woods v. Superior Court*,
  149 Cal. App. 3d 931 (1983) .....................................................................................23


**STATUTES AND RULES**


ABA Model Rule of Professional Conduct 1.7  ............................................................12

ABA Model Rule of Professional Conduct 1.9 .............................................................17

ABA Model Rule of Professional Conduct 1.10  ..........................................................11

ABA Model Rule of Professional Conduct 8.5  ..............................................................8

California Rule of Professional Conduct 3-310...............................................12, 17

Civil Local Rule 5-1..............................................................................................7

Civil Local Rule 11-4...........................................................................................6

New York Rule of Professional Conduct 1.7 ...............................................................12

New York Rule of Professional Conduct 1.9....................................................17, 20

New York Rule of Professional Conduct 1.10 ............................................................11

New York Rule of Professional Conduct 8.5................................................................8

DQ MOTION
RE: VENABLE LLP'S ATTORNEYS

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Loop AI Labs Inc. ("Loop AI") respectfully submits this Memorandum of Points and Authorities in support of its Motion to Disqualify Attorney Sternberg ("Sternberg") and his new firm Venable LLP ("Venable") from any further participation as counsel for the Almaviva Defendants in this litigation.[3]

## SUMMARY OF ARGUMENT[4]

This Motion arises out of a peculiar set of circumstances recently discovered by Loop AI — namely that the Orrick attorney responsible for taking on Orrick's conflicted representation of Almaviva against Orrick's client Loop AI, attorney Sternberg, moved to Venable in February 2015 — when the wrongdoing alleged in this action was discovered — and continued his conflicted representation of Almaviva against Loop AI from that new firm.  While at Orrick, Sternberg was the lead client partner and was in charge of supervising the Orrick team performing work for Almaviva, including supervising the implementation of some of the key transactions at issue in this action.[5]  Sternberg now has the same role at Venable.[6]  Although Venable was able to successfully conceal Sternberg's role at Orrick and his participation in this case until early August 2015, Venable now has admitted that Sternberg has been actively involved in representing Almaviva against Loop AI in this action since February 22, 2015.[7]  Sternberg's personal exposure to liability resulting from the underlying conduct at issue in this

---

[3] Because the distinction between the three Almaviva entities is not material to any issue presented by this Motion, the terms "Almaviva" or "Almaviva Defendants" are used generally herein to refer to Defendants Almaviva S.p.A., Almawave S.r.l., and Almawave USA Inc..

[4] All facts recited in this motion are already in the record or are otherwise supplemented by the accompanying declarations and evidence.  Although certain facts are provided for context, the material facts relevant to this Motion are few and undisputed — namely that (1) Orrick was Loop AI's counsel from April 2012 to March 11, 2015, (2) that during this period of time until February 2015, Sternberg was an Orrick partner, (3) that during the last year of this period (i.e., beginnin in March 2014), Sternberg impermissibly undertook and caused Orrick to undertake the concurrent conflicted representation of Almaviva, (4) that in February 2015, Sternberg moved his conflicted representation of Almaviva to Venable from where he began workin on this case in February 22, 2015, (5) that Sternberg has since been working on the case with the rest of the Venable team tainting the entire firm.

[5] *See* VCH Decl., Ex. I at Response to Request 12.

[6] *See id.* at Ex. A at, e.g., Responses to Requests 1, 2, 5, 7.

[7] As the Court may be aware, Venable vigorously objected to a Subpoena issued to Orrick requesting the identification of the Orrick attorneys who had worked on the Almaviva-Gatti-IQSystem matter, which both Orrick and Almaviva's counsel refused to identify voluntarily.

case, as well as his residual fiduciary obligations to Loop AI raise serious irreconcilable conflicts in this case requiring his and Venable's disqualification.

Sternberg was at the epicenter of Orrick's conflicted representation of Almaviva. Indeed, he appears to have been the proximate cause of Orrick's failure to detect and properly address the obvious conflict between the interests of Orrick's client Loop AI and the interests of Orrick's other client, Almaviva. The client matter opened by Sternberg in connection with Orrick's conflicted representation of Almaviva (coyly named "California Joint Venture")[8] required conflicts clearance within Orrick, through a process beginning with the submission of a conflicts clearance form.[9] That form conveniently omitted to list Gatti. Had the form submitted by Sternberg referred to Gatti, Orrick's clearance system would have identified the conflict and Orrick presumably would not have accepted the engagement.[10] The failure to name Gatti in the conflicts clearance form is puzzling, since she was the principal counterparty in the matter and actively communicated with Sternberg throughout the course of Sternberg's conflicted representation of Almaviva.[11] Whether the omission was intentional or inadvertent, Sternberg profited from it. Had he ensured proper conflicts clearance protocols were followed, he would have been unable to participate in the revenues generated by Orrick in the matter (or, presumably, in the revenues subsequently generated by Venable in this litigation). Because Sternberg failed to take appropriate action to identify the conflict, Orrick helped Almaviva sign up Gatti to a concurrent CEO position that violated the express terms of Gatti's agreements with Loop AI — agreements prepared for Loop AI by Orrick. Orrick also prepared a patent application for Almaviva that covers the same area of technology of Loop AI's proprietary technology, and on which Gatti appears to have provided input (also in breach of Gatti's agreements with Loop AI prepared by Orrick).[12]

---

[8] *See* VCH Decl., Ex. I at Response to Request 3.
[9] *See id.* at Ex. C.
[10] *See id.* at Ex. E (Orrick's conflicts clearance form for Loop AI listing Gatti).
[11] *See, e.g., id.* at Ex. D (email dated April 2014 discussing Orrick's work on Almaviva-Gatti-IQS's contracts).
[12] Indeed, although Almaviva repeatedly represented to the Court that Gatti had no participation in any technology pursuits by Almaviva, most recently Almaviva has asserted privilege over all communications between Orrick and Gatti involving the Almaviva patent application which is at issue in this action.

The adverse consequences flowing from Orrick's conflicted representation might have been at least modestly reduced if the Orrick teams working for Almaviva and Loop AI had been separated by ethical barriers. Instead, the opposite occurred. The Orrick team of lawyers and paralegals that worked under Sternberg's oversight on the Almaviva-Gatti-IQSystem "Joint Venture" matter overlapped with the Orrick team that worked on Orrick's representation of Loop AI – at least three fee-earners billed time to both clients, and most of the Orrick fee earners on Sternberg's Almaviva team were part of Orrick's corporate group, including its tight-knit compensation and benefits subgroup, which in the United States has only 9 lawyers.[13]

As a partner at Orrick, Sternberg breached his ethical obligations to Orrick's client Loop AI by taking on and participating directly in Orrick's conflicted representation of Almaviva and continuing this representation actively over the course of almost one year.[14] Had Sternberg remained a partner at Orrick, there is of course no question that neither he nor anyone else at Orrick could have undertaken to represent the Almaviva Defendants or any other party in this litigation. But in February 2015, Sternberg conveniently moved from Orrick to Venable, just a few weeks before the action was filed. Sternberg should not be permitted to continue a conflicted representation that unquestionably would be prohibited had he remained at Orrick, simply by changing firms at precisely the time the wrongdoing was detected. Even if Sternberg intends to claim that he was unaware of the serious ethical violations he committed to the detriment of Loop AI from March 2014 until Gatti's wrongdoing was discovered in February 2015, he was required at that point to take whatever actions he possibly could to address the past and continuing harm to Loop AI caused by his improper conduct. Instead, he elected to double down on the conflict, by continuing to represent Almaviva, in matters adverse to Loop AI, and to pretend that this course of conduct was perfectly acceptable because he had switched firms. Sternberg immediately got to work on this litigation on behalf of Almaviva, billing his first time entry on it on February 22, 2015 — a Sunday — and less than one business day after the Complaint was filed the evening of February 20, 2015. This was clearly improper. Neither

---

[13] *See, e.g.,* VCH Decl. and GMC Decl.

[14] *See* VCH Decl., Ex. I.

California nor New York law permit attorneys to so quickly escape their duties to clients, and to instead benefit at their expense.  Under the facts of this case, including Venable's concealment of Sternberg's role, equity requires that the representation of Almaviva by Sternberg and his current firm, Venable, be analyzed under the standards that would apply had he remained at Orrick. Those standards require his automatic disqualification.

Even if the Court were to examine Sternberg's conflicts as involving a successive representation against a former client, Sternberg's disqualification remains mandatory because neither he, nor by imputation his new firm, Venable, may represent clients with adverse interests in successive representations where, as in this case, there is a "substantial relationship" between the two representations.  Here, crucial aspects of Orrick's representation are not only substantially related, but directly at issue.  Among other things, Loop AI alleges various breaches of employment agreements drafted by Orrick, and Almaviva points to other virtually identical agreements also implemented by Orrick, which it claims contain representations that provide it a defense to certain claims.  Loop AI disputes Almaviva's reliance on the representations contained in the Almaviva agreements, as Orrick could never have properly advised Almaviva that it could go forward with those agreements with Gatti and IQSystem, without incurring liability to Loop AI.  The plain allegations in the complaint, as amended, can leave no doubt that there is a substantial relationship between the representations.  While Sternberg was at Orrick he had extensive access to Loop AI's confidential and privileged information both from within Orrick, as well as directly from Loop AI, by virtue of his personal interactions with Anna Gatti, who was Loop AI's CEO and President while Sternberg was dealing with her.  In the course of this litigation, Attorney Sternberg's colleagues at Venable already have used confidential information belonging to Loop AI that they did not obtain in discovery and that they could not have had but for their improper access to Loop AI's confidential information through Sternberg.[15]

---

[15] For instance, Venable's attorney were in possession of highly confidential information regarding Loop AI's investors and employees, which was not disclosed in any filing and which is not publicly available.  Most recently, Venable's attorneys issued a Subpoena to a Venture Capital firm detailing facts that Venable could not have known without using the wrongfully acquired confidential information of Loop AI.

DQ MOTION
RE: VENABLE LLP'S ATTORNEYS

As a result of Sternberg's breaches of the twin duties loyalty and confidentiality that he owed Loop AI while at Orrick, and which he continued to breach from Venable by undertaking to represent Almaviva against Loop AI in this litigation, the entire Venable firm is tainted by Sternberg. That taint causes a presumption that Venable should also be disqualified. This presumption is difficult for Venable to rebut because it has confirmed that Sternberg is the lead partner on Venable's Almaviva engagement and that he has billed a substantial amount of time to this litigation matter. In addition, Venable's response to a Subpoena issued by Loop AI confirms that Mr. Sternberg also has been advising Almaviva about the Loop AI's agreements with Gatti, which, as discussed above, were all prepared by Orrick. It is especially improper under the circumstances of this case for Sternberg (and the Venable team he directs) to provide legal advice to Almaviva presumably attacking Orrick's work-product for Loop AI. Sternberg has a lingering duty of loyalty to Loop AI that cannot be defeated simply by his move to a different firm just before the action was filed. His participation as a behind-the-scenes advocate for Almaviva in this litigation is not only unseemly, but legally impermissible. These facts require his and Venable's disqualification.

There is a third independent reason why Sternberg and Venable should be disqualified. Sternberg faces personal exposure to liability arising out of his own conduct in connection with the representation of Almaviva while at Orrick. For instance, if Sternberg and his Orrick team advised Almaviva that it could not hire Gatti without Loop AI's consent, but Almaviva did it any way, then Venable will have acted in a manner inconsistent with its duty of candor to the Court, in pressing the arguments it has thus far made on behalf of Almaviva to the effect that Almaviva had "no reason to believe" of any "legal" or "practical" consequences to the hiring of Gatti. Conversely, if Sternberg and his Orrick team failed to advice Almaviva of the legal implications that would flow from Almaviva's hiring of Gatti, Sternberg would be exposed to liability to Almaviva. One of these paradigms must be true (Sternberg and his Orrick team either did, or did not, advise Almaviva as to the legality of hiring Gatti without Loop AI's consent). Either way, Sternberg faces a material personal conflict that makes it improper for him and Venable to have

undertaken Almaviva's representation in this case.[16] Venable's desire to help its new partner Sternberg avoid or mitigate that exposure materially conflicts with Venable's role as an advocate in this case, creates an appearance of impropriety and is likely to impede the integrity of justice.

Finally, disqualification of Sternberg and Venable here would not be inequitable either to Almaviva or its lawyers, and instead is appropriate for two separate reasons. Venable's conflict is a continuation of the conflict caused by Sternberg when he failed to comply with Orrick's conflict clearance procedures. Partners in law firms are well aware of the importance of the conflicts clearance process, and of their ethical obligation to take reasonable and appropriate actions to identify and properly address actual or potential conflicts. Here, because Sternberg apparently couldn't be bothered to disclose to his colleagues at Orrick the name of the party his client had hired him to negotiate with (Gatti), he has needlessly damaged the interests of Loop AI. That is not conduct that deserves the benefit of the doubt. In addition, Almaviva will not be prejudiced by the disqualification of Sternberg and Venable because the case is still in its early stages, and Almaviva's fees and expenses in this litigation are being covered by Almaviva S.p.A.'s insurance.[17]

## ARGUMENT

## I. LEGAL FRAMEWORK

"In the federal system, the regulation of lawyer conduct is the province of the courts, not Congress." *Paul E. Iacono Structural Eng., Inc. v. Humphrey*, 722 F.2d 435, 439 (9th Cir. 1983). "The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Inc. Vill. Of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005).[18] "In exercising this power," courts attempt to strike a balance between "a client's right freely to choose his counsel" against "the need to

---

[16] In addition, Sternberg is a crucial witness regarding material aspects of this case over which Almaviva and Gatti have already provided differing accounts.

[17] In addition, Almaviva retained Orrick with full knowledge that Orrick was already Loop AI's counsel. It would be unfair, after Almaviva caused Loop AI to loose its important relationship with Orrick, that it is instead permitted to continue to improperly benefit in this litigation from Sternberg's knowledge from his time at Orrick.

[18] *See also, e.g., Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996) ("Federal courts have inherent powers to manage their own proceedings and to control the conduct of those who appear before them."); *Flatworld Interactives LLC v. Apple Inc.*, No. 12-01956, 2013 U.S. Dist. LEXIS 111496, at *16 (N.D. Cal. Aug. 7, 2013).

maintain the highest standards of the profession." *Id.* "The district courts are free to regulate the conduct of lawyers appearing before them." *Humphrey*, 722 F.2d at 439. The Northern District of California directs attorneys to comply with the Standards of Professional Conduct of the State Bar of California, including "the decisions of any court applicable thereto." *See* Civil L.R. 11-4(a)(1). "Where those rules do not provide an applicable standard, the Model Rules of Professional Conduct of the American Bar Association and the Restatement may be considered guidance." *Dieter v. Regents of the Univ. of Calif.*, 963 F. Supp. 908, 910 (E.D. Cal. 1997). The Ninth Circuit has held that even though the Northern District of California local rules do not incorporate by reference the ABA Model Rules of Professional Conduct, a court in this district can properly disqualify counsel based on an ABA model rule, even if such rule is not included in the State Bar Act of California or the Rules of Professional Conduct of the State Bar of California. *Humphrey*, 722 F.2d at 439 (disqualifying counsel for failure to "maintain the appearance of propriety" in violation of an ABA model rule.).

An attorney's participation in the representation of a party to a litigation is sufficient to render him an officer of the court, even if the attorney remains in the background and never enters a notice of appearance in the court presiding over the litigation, as Sternberg has done in this case.[19] *See, e.g., Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1131 (9th Cir. 1995) (house counsel participation in the case sufficient to render him an officer of the court) (citing *E.F. Hutton & Co. v. Brown*, 305 F. Supp. 371, 381 (S.D. Tex. 1969)).[20] For instance in *E.F. Hutton,* the Texas district court considered whether it had power to disqualify attorneys in a New York law firm who, as Sternberg here, were participating in the litigation from behind the scenes, by "advising" and "consulting with" the attorneys in a local Texas firm who were of record in the case. The court found that its "inherent power to manage its affairs [was] broad enough to reach such conduct, which can only be intended to influence the course of litigation pending

---

[19] In this case, none of the Venable attorneys working on this litigation has filed the notice of appearance required by Local Rule 5-1(c)(2) or a motion for pro hac vice admission.
[20] *Cord v. Smith*, 338 F.2d 516, 526 (9th Cir. 1964), *mandate clarified*, 370 F.2d 418 (9th Cir. 1966) (clarifying that attorney who was not of record was disqualified from "at any time, directly or indirectly, and whether as attorney of record or not, represent, counsel or advise plaintiff … in connection with said action.").

DQ MOTION
RE: VENABLE LLP'S ATTORNEYS

before it."[21]  *E.F. Hutton*, 305 F. Supp. at 378-379.   The court also considered the question of whether the New York attorneys, who were neither residents of Texas nor admitted to practice before that court either generally or *pro hac vice*, could nonetheless be subject to the Court's disqualification order.  The court held that its "power over attorneys is broader than its jurisdiction over nonresidents generally, for when attorneys undertake to represent parties to pending litigation, they become officers of the court, at least in connection with that litigation."  *Id.* at 379-380.  The court concluded that seeking disqualification of the New York attorneys was appropriate because their advising and consulting with the attorneys of record about the pending litigation from the background was "equivalent to the practice of law in [that court] without leave."  *Id.*

Similarly, in this case, although Sternberg appears to be based in New York, in response to the Subpoena,[22] Venable has confirmed that his first time entry on this litigation was recorded on February 22, 2015 and his total "recorded time" to this litigation through August 17, 2015 was 73 hours.[23]  In light of his undisputed participation in this litigation, Sternberg is properly subject to any order this Court may issue regarding his further participation in the case.[24]  As the *EF Hutton* court noted, "the New York attorneys' failure to identify themselves as counsel for" a party, does not diminish that "the New York attorneys are actively representing Hutton in connection with this litigation."  *EF Hutton*, 305 F. Supp. at 382-383.  The "court therefore has a great interest in supervising their conduct in connection with this litigation, as great an interest as if they had entered a formal appearance and were attending proceedings had in open court."  *Id.*  In addition, this Court has power to issue orders regarding Sternberg's participation in this case by virtue of its jurisdiction over Venable and Almaviva.

---

[21] As set forth in *Pumphrey* above, the Ninth Circuit relied on *E.F. Hutton* and similar authorities to affirm the disqualification of other counsel who was not of record with the Court.
[22] *See, e.g.,* VCH Decl. at Ex. F.
[23] *See id.* at Ex. A at 7.
[24] *See also, e.g.,* ABA Model Rules of Professional Conduct ("Model Rules") § 8.5(a) ("A lawyer not admitted in this jurisdiction is also subject to the disciplinary authority of this jurisdiction if the lawyer provides or offers to provide any legal services in this jurisdiction.").

Finally, because Sternberg is an attorney licensed by the State Bar of New York, in considering his disqualification this Court should also look to the New York Rules of Professional Conduct.[25]

## II. STERNBERG IS NOT PERMITTED TO CONTINUE ACTING ADVERSELY TO LOOP AI EITHER DIRECTLY OR THROUGH VENABLE.

Disqualification based on an attorney's conflicts of interests involving two clients traditionally arise in two situations: "where the attorney successively represents clients with potential or actual adverse interests [("former client")] and where the attorney simultaneously represents clients with potential or actual adverse interests [("concurrent client")]." *Jessen v. Hartford Casualty Ins. Co.*, 111 Cal. App. 4th 698, 705 (Cal. App. 5th Dist. 2003).   Courts have formulated distinct tests to apply in these two situations. *Id.*   When the facts involve concurrent clients, "the rule of disqualification, in all but a few instances, … is per se or [an] automatic one." *Id.* at 705-706.  When the facts involve a former client, the governing test looks to whether there is a "substantial relationship" between the antecedent and current representations. *Id.* As the *Jessen* court cautioned, however, "in many contexts, exacting specificity in the law is unrealistic, so the relevant legal principles are only generally stated and must be applied to individual cases by the exercise of the court's considered judgment based in reason, logic and common sense." *Id.* at 713.  For instance, courts have not hesitated to apply the concurrent clients test where an attorney's conduct surrounding the beginning of the challenged representation involves a past breach of fiduciary duty to the client against whom the attorney is now acting. *See, e.g., The Fund of Funds Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 232-233 (2d Cir. 1977).  That is because "the primary value at stake in cases of simultaneous or dual representation is the attorney's duty—and the client's legitimate expectation—of *loyalty*, rather

---

[25] *See* N.Y. Rule of Professional Conduct ("NY Rules") § 8.5(b)(2)(i) ("If the lawyer is licensed to practice only in this state, the rules to be applied shall be the rules of this state."); ABA Model Rules 8.5(b)(2).  *See also* VCH Decl. Ex. F.

DQ MOTION
RE: VENABLE LLP'S ATTORNEYS

than confidentiality." *Flatt v. Superior Court*, 9 Cal. 4th 275, 282 (1994).  Attorneys are not allowed to escape this important duty on technicalities, such as by turning a current client into a former one.

The circumstances of this case are such as to require that Sternberg's conflicts be evaluated under the "current client" test.  As more fully discussed below, while he was at Orrick, Sternberg owed (and breached) his fiduciary duty of loyalty to Loop AI.  Had Orrick and Sternberg promptly disclosed the conflict to Loop AI while Sternberg was still at Orrick, there is no question that his disqualification would have been immediate and automatic.  Instead, Sternberg conveniently moved his conflicted representation from Orrick to Venable in February 2015, right before the action was commenced, and while Orrick remained counsel for Almaviva with Sternberg through at least March 11, 2015.[26]  Sternberg was instrumental in having Almaviva retain Venable,[27] knowing of Orrick's conflicts but without disclosure of such conflicts to Loop AI.[28]  In addition, Sternberg and his new team at Venable continued to conceal Sternberg's role both while he was at Orrick and after he moved to Venable and even aggressively objected to Orrick's disclosure, in response to a subpoena, of the identity of the attorneys who had worked on the Almaviva matter.  Sternberg's role was only discovered as a result of the Court's order during a status conference held on July 23, 2015, that the Orrick Subpoena be responded to and the Court's questioning the assertion of privilege over the identity

---

[26] During this period of time, Orrick continued as Loop AI's counsel until its sudden withdrawal on March 11, 2015.  *See* Dkt. No. 29-1.  When Orrick first informed Loop AI of its conflict and of its withdrawal from Loop AI's representation, Orrick claimed that it was also withdrawing from the representation of Almaviva.  However, Both Venable and Orrick have refused to produce the alleged letter of termination by Orrick to Almaviva.  As of today's date, Orrick continues to be listed as counsel of record for Defendant Almawave S.r.l. before the United States Patent Office in connection with the Almaviva/Sandei patent application that is at issue in this action.  *See* VCH Decl. at Ex. B.  Venable also indicated in response to a Subpoena to be working on the Almaviva/Sandei patent application that is at issue in this action.  *See* VCH Decl. Ex. A at 8.  In light of this evidence, it appears that Sternberg and Orrick continue to be co-counsel for Almawave S.r.l. on at least the patent matter.

[27] *See* VCH Decl. at Ex. A (Response to Request 1).

[28] In light of Sternberg's conduct to date, it would not be surprising if he has also failed to disclose his conflicts to Almaviva before signing them up with Venable in connection with this litigation.

---

of the Orrick attorneys who had worked on the Almaviva matter.[29]   Under these facts, applying

the "current client" analysis is appropriate.   To hold otherwise would be to allow an attorney as

deeply conflicted as Sternberg to escape the consequences of his multiple breaches of duty by the

simple expedient of a timely change of firms, and to allow him to benefit from litigation over

wrongdoing that he facilitated.   As the California Supreme Court has observed, "[u]ltimately,

disqualification motions involve a conflict between the clients' right to counsel of their choice

and the need to maintain ethical standards of professional responsibility." *People ex. rel. Dept.*

*of Corporations v. SpeeDee Oil Change Systems, Inc.,* 20 Cal. 4th 1135, 1145 (Cal. 1999).   "The

paramount concern must be to preserve public trust in the scrupulous administration of justice

and the integrity of the bar.   The important right to counsel of one's choice must yield to ethical

considerations that affect the fundamental principles of our judicial process." *Id.*

In any event, as more fully set forth below, Sternberg's disqualification, and by

imputation that of Venable, is also required under the "former client" test.

**A.     Sternberg's Conflicted Representation of Almaviva Was in Breach of His Duty of Loyalty to Loop AI And Cannot Be Cured By His Move to Venable Right Before this Action Was Filed.**

During the time that Sternberg was at Orrick, until February 2015, Orrick served as Loop

AI's principal counsel, having began in that role in April 2012.[30]   *See* GMC Decl. at ¶ 4.   As a

partner at Orrick, Sternberg owed Orrick's client Loop AI a fiduciary duty of undivided loyalty.

*Flatt,* 9 Cal. 4th at 286, 288[31] (adopting same rule as *Cinema 5, Ltd. v. Cinerama, Inc.,* 528 F.2d

---

[29] *See* VCH Decl. at ¶¶ 19-20.

[30] Sternberg is believed to have moved from Orrick to Venable sometime in February 2015. Loop AI does not know whether Sternberg continued to receive partner distributions or other payments from Orrick after he moved to Venable, or whether he continues to have any direct or indirect role or participation in the Orrick partnership.   Loop AI notes, however, that as ***of September 16, 2015***, Sternberg continues to be listed with the New York State Bar as being affiliated with Orrick.   *See* VCH Decl.. Ex. B.

[31] Also noting that "cases of dual representations involving unrelated matters--analogous to the biblical injunction against 'serving two masters' (Matthew 6:24)--is such a self-evident one that there are few published appellate decisions elaborating on it."

1384 (2d Cir. 1976)); *SpeeDee Oil*, 20 Cal. 4th at 1146; *Flatworld Interactives LLC v. Apple Inc.*, No. 12-01956, 2013 U.S. Dist. LEXIS 111496, at *21 (N.D. Cal. Aug. 7, 2013).[32]  "So inviolate is the duty of loyalty to an existing client that not even by withdrawing from the relationship can an attorney evade it."  *Id.* at 288.  The duty of loyalty bars a lawyer from acting contrary to the interest of another current client on any matter, regardless of whether there is a relationship between the matters or any sharing of confidences.[33]

In *Flatworld*, for instance, the court examined a conflict involving the law firm of Morgan Lewis & Bockius LLP ("Morgan Lewis") to determine a disqualification motion involving a third firm, Hagens Berman, that a partner at Morgan Lewis had assisted in finding.[34]  Specifically, a partner in the Philadelphia office of Morgan Lewis, without doing a conflict check, began providing informal legal advice to his wife who was an officer in a company – Flatworld – that was planning to sue Apple Inc. ("Apple").  *See id.* at *5-6.  At the time, Apple was a client of Morgan Lewis, albeit using attorneys from Morgan Lewis' Palo Alto, San Francisco and Washington, D.C. offices.  *Id.* at *5.  The Morgan Lewis partner in question had never personally worked on any Apple matter nor had he had any contact with any Apple representatives.  *Id.*  There was also "no evidence before the Court that [the partner in question]

---

[32] *See also, e.g.,* ABA Model Rules of Prof'l Conduct R. 1.10 (2014-2015); N.Y. Rules of Prof'l Conduct R. 1.10 (2013-2015); *The Fund of Funds Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225 (2d Cir. 1977); *William H. Raley Co. v. Superior Court,* 149 Cal. App. 3d 1042, 1048 (Cal. App. 4th Dist. 1983).

[33] *See, e.g.,* ABA Model Rules of Prof'l Conduct R. 1.7 (2014-2015); N.Y. Rules of Prof'l Conduct R. 1.7 (2013-2015); Cal. Rules of Prof'l Conduct R. 3-310.  *See also, e.g., Flatt v. Super. Ct.,* 9 Cal. 4th 275, 284-286 (1994) (also citing identical bar under New York law).  Further, as *Flatt* explains it does not "matter that the intention and motives of the attorney are honest.  The rule is designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to attempt to reconcile interests, rather than to enforce to their full extent the right of the interest which he should represent."  *Id.* at 289.

[34] As set forth below, unlike Sternberg in this case, the Morgan Lewis partner who created the conflict in *Flatworld* did not have any involvement in any aspect of the litigation before the Court and ***did not continue his conflicted representation*** either from Morgan Lewis or from the firm, McCarter & English LLP, to which he moved while the motion was pending.  In addition, the law firm that Apple's sought to disqualify, Hagens Berman, ***was not affiliated with and had not had any contacts with the Morgan Lewis partner in question***.

personally obtained or even tried to access any material confidential information about Apple

while with Morgan Lewis." *Id.* The court held that

> Just as a Morgan Lewis attorney working on Apple matters could not act
> adversely against Apple, so too was [the partner in question] barred from doing
> so, whether in a legal capacity or not. He owed a duty of loyalty to his firm's
> client, and 'it is a violation of that duty for him to assume a position adverse or
> antagonistic to that client without the latter's free and intelligent consent.'

*Id.* at *21. As in *Flatworld*, so here, Sternberg was not permitted to act adversely to Loop AI, an

Orrick client, "whether in a legal capacity or not." Despite his fiduciary obligations to Loop AI,

in March 2014, Sternberg nonetheless agreed to take on the representation of Almaviva in

connection with its dealings with Anna Gatti and her companies, the IQSystem Defendants —

which representation was not only contrary to the interest of Orrick's pre-existing client, Loop

AI, but directly adverse and materially damaging to it. When Sternberg agreed to undertake this

conflicted representation of Almaviva, Anna Gatti, was Loop AI's CEO, and she was bound by

employment and confidentiality agreements prepared by Orrick. During this time, Gatti was

dealing with Orrick on behalf of Loop AI. *See* GMC Decl. at ¶ 4. Presumably in an effort to

avoid Orrick's detection of this material conflict, on March 27, 2014, Sternberg caused a conflict

clearance form to be submitted to Orrick which omitted to list Gatti, and omitted to list the

names of the sole member of the IQSystem Defendants — also Anna Gatti — which was readily

available from the California Secretary of State, and which Sternberg was required to examine to

properly clear conflicts.[35] *See* VCH Decl. Ex. C. Sternberg's failure to list Gatti, both in March

2014 when he agreed to represent Almaviva and later, when he was directly preparing

agreements involving Anna Gatti and personally dealing with her, is not reasonably justifiable as

---

[35] It should also be noted that Almaviva's retention of Loop AI's counsel was not coincidental.
In addition to soliciting Loop AI's counsel, Almaviva solicited each of Loop AI's crucial
relationship with its service providers, such as its accountant, its advisors, its consultants, and
even its payroll provider and its bank. Moreover, in an email dated April 5, 2014, Gatti informed
the recruiting firm Russell Reynolds that Almaviva was now working with the same firm she
used. *See* VCH Decl., Ex. D at RRA223. It seems highly unlikely that Almaviva or Gatti would
not discuss with Sternberg that Orrick was already counsel to Loop AI.

Anna Gatti was the primary counterparty in all of the Almaviva transactions.[36]  Had Sternberg included Gatti's name as he was required to do, Orrick's conflicts clearance system would have readily detected the conflict because Gatti was listed in the conflict clearance form previously submitted for Loop AI in 2012 (then named Soshoma).  *See* VCH Decl. at Ex. E. In addition, Gatti, was regularly in contact with Orrick on behalf of Loop AI, and was specifically in contact with Orrick in March and April 2014 to address various employment related and other matters for Loop AI.

Despite the material conflicts that barred Sternberg from undertaking and authorizing Orrick's undertaking of the Almaviva representation involving Gatti and the IQSystem Defendants, on April 4, 2014, Sternberg caused Orrick to nonetheless begin the conflicted representation.  From that date and until his departure from Orrick in February 2015, Sternberg was the Orrick attorney responsible for supervising all aspects of Orrick's representation of Almaviva in connection with the matters at issue in this action.  *See* VCH Decl, Ex. I.  For instance, on April 17, 2014, Almaviva's CEO, Valeria Sandei, emailed Anna Gatti to advise her that "Orrik [sic] is also working on your contract, along the lines shared with Pepe.  That contract can also be executed by AW USA once it is formed."  VCH Decl., Ex. D at RRA221.  The contract referenced by Ms. Sandei, which was ultimately signed by Gatti and Almaviva in June 2014 was directly in violation of Gatti's pre-existing obligations under another contract also prepared by Orrick.  The entirety of Sternberg and his Orrick team's representation of Almaviva in connection with Gatti and IQSystem was contrary to the interests of Loop AI and should never have been undertaken let alone continued for almost one year, without any disclosure to Loop AI.   By this conduct, Sternberg breached the most "fundamental value of our legal system … the

---

[36] *See, e.g., State Farm*, 72 Cal. App. 4th at 1435 ("it is the attorney who is charged with the responsibility of performing conflict checks upon accepting a new client.[] Thus, the burden was on [the attorney] to avoid creating a conflict.").

attorney's obligation of loyalty." *SpeeDee Oil*, 20 Cal. 4th at 1146.[37]  There is no question that while Sternberg was still at Orrick, his disqualification would have been automatic.  *Id.* at 1147.[38]  Sternberg's move to Venable in February 2015 did not and could not "remove the taint of a[n eleven]-month concurrent representation.  Consequently, the mandatory disqualification rule applies." *State Farm Mut. Auto Ins. Co. v. Fed. Ins. Co.*, 72 Cal. App. 4th 1422, 1432-1433 (Cal. App. 5th Dist. 1999).  Application of this rule here is required to vindicate and preserve Loop AI's legitimate expectation of loyalty from all of its attorneys at Orrick.  *See also, e.g., The Fund of Funds Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 232-233 (2d Cir. 1977).[39] Sternberg's move to Venable could not eliminate this direct conflict and the appearance of impropriety that followed from his continuing the conflicted representation from a different firm. Courts are vigilant in strictly addressing exactly this kinds of conflicts.

For instance, in *Fund of Funds*, the law firm Morgan Lewis & Bockius LLP ("Morgan Lewis") was retained to represent an accounting firm, Arthur Andersen & Co. ("Andersen").  *Id.* at 227-228.  During the course of its representation of Andersen, Morgan Lewis was separately retained by representatives of The Fund of Funds ("Fund") in connection with the examination of fraudulent transactions regarding natural resource assets.  *Id.*  After discovering its conflict, Morgan Lewis referred the representation of the Fund to another attorney outside of Morgan Lewis (Meister) in connection with a suit that the Fund sought to bring against Andersen.  *Id.* at

---

[37] As the California Supreme Court explained in *SpeeDee Oil*, "[a]ttorneys have a duty to maintain undivided loyalty to their clients to avoid undermining public confidence in the legal profession and the judicial process."  20 Cal. 4th at 1146.  "The effective functioning of the fiduciary relationship between attorney and client depends on the client's trust and confidence in counsel." *Id.*  "The courts will protect client's legitimate expectations of loyalty to preserve this essential basis for trust and security in the attorney-client relationship." *Id.*

[38] "If an attorney—or more likely a law firm—simultaneously represents clients who have conflicting interests" "disqualification follows automatically, regardless of whether the simultaneous representations have anything in common or present any risk that confidences obtained in one matter would be used in the other." *Id.  See also, e.g., Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967-968 (9th Cir. 2009) ("Simultaneous representation of clients with conflicting interests … is an automatic violation in California and grounds for disqualification.").

[39] *See also, e.g., Unified Sewerage Agency v. Jelco, Inc.*, 646 F.2d 1339, 1345 (9th Cir. 1981) (citing *Fund of Funds* with approval).

232.  The Court held that Meister and his firm must be disqualified because Morgan Lewis was "instrumental … in having Meister [the new attorney] selected as the Fund's attorney," Meister was tainted and had to be disqualified.  *Id.*  Permitting Meister's firm to pursue the litigation, the court held, "would be allowing Morgan Lewis to violate by indirection those very strictures it [could] not directly contravene."  *Id.* at 233.  The need "to safeguard against the indirect breach of 'the lawyer's duty of absolute fidelity."  *Id.* at 234.  The court concluded that "[t]he truism that the firm of Morgan Lewis would have been disqualified from suing Andersen because it was Andersen's counsel, is of little comfort to Andersen which now finds itself embroiled in litigation resulting from Morgan Lewis's extensive investigation of the natural resource assets scheme."  *Id.*  "And Robert Meister is the extension of Morgan Lewis's continuing involvement in the underlying action for, as we have earlier stated, Morgan Lewis was instrumental in the choice of Meister and his firm … and helpful to Meister in advancing the suit even if, as claimed by Meister, that help was of small significance."  *Id.*

The facts of this case present a must stronger and more egregious conflict of interest than the conflict that the Second Circuit found impermissible in the *Fund of Funds* case.  Here Sternberg is not only an indirect, but the actual extension of Orrick.  He is the one who personally caused and continued Almaviva's conflicted representation while at Orrick, and then in February 2015, after he left Orrick, he moved his conflicted representation of Almaviva to the Venable firm.  When this action was filed,  Sternberg was, as in the *Fund of Funds* case, instrumental in getting Venable retained, and in moving his conflicted representation of Almaviva to his new firm.  *See* VCH Decl, Ex. A at Response to Request 1.  In addition, in this case, Sternberg himself moved to the second firm and personally continued the conflicted representation.  This conduct cannot be reconciled with any of the duties he owed Loop AI and cannot cure his taint.  *See supra, State Farm*, 72 Cal. App. 4th at 1432-1433.  The conflicted representation that Sternberg carried on for Almaviva while at Orrick substantially facilitated the

wrongdoing at issue in this action.  But for Sternberg's failure to advise Loop AI of the conflict, Loop AI would have promptly learned of Defendant Gatti's unfaithful conduct.  To add insult to injury, Sternberg has now been using and sharing with Venable his knowledge from while he was at Orrick to attack Loop AI, including the contracts prepared for Loop AI by Orrick, and to interpose the contracts he prepared for Almaviva during the course of his conflicted representation at Orrick as a defense to this action, all the while extracting maximum financial benefit for himself, through his participation as counsel in this action.  Respectfully, neither Sternberg nor Venable should be permitted to take advantage of Sternberg's prior breaches to Loop AI in this manner and they should both be disqualified from any further participation as counsel of any sort in this action.[40]

**B.    Sternberg and Venable Should Be Disqualified Even if The Court Evaluates The Conflicts Under the "Substantial Relationship" Test.**

Even if the court were to examine disqualification under the former client test, Sternberg's  disqualification (and by imputation that of Venable) should still be required under the facts of this case.  Both California and New York law prohibit attorneys from undertaking a representation adverse to a former client without informed written consent where "by reason of the representation of the … former client the member has obtained confidential information material to" his representation of the current client.[41]  To avoid inquiries into what confidential information was revealed during the course of the attorney-client relationship, courts have adopted a rule that ***conclusively presumes*** that an attorney received confidential information from a former client if the "former representation is substantially related to the current representation."  *Trone v. Smith*, 621 F.2d 994, 998 (9th Cir. 1980).  *Jessen v. Hartford Cas. Ins.*

---

[40] *See also, e.g., Packard Bell NEC, Inc. v. Aztech Sys.*, No. 98-7395, 2001 U.S. Dist. LEXIS 11194, at *24-25 (C.D. Cal. Jan. 22 2001) ("The Court is mindful that it 'must not hesitate to disqualify an attorney when it is satisfactorily established that he or she wrongfully acquired an unfair advantage that undermines the integrity of the judicial process and will have a continuing effect on the proceedings before the court.").
[41] *See* Cal. Rules of Prof'l Conduct R. 3-310(E); N.Y. Rules of Prof'l Conduct R. 1.9.  *See also* ABA Model Rules of Prof'l Conduct R. 1.9.

DQ MOTION
RE: VENABLE LLP'S ATTORNEYS

*Co.*, 111 Cal. App. 4th 698, 713 (2003).[42]  When the "substantial relationship" test is met

disqualification is "mandatory."   The "conclusive presumption" that applies under this test,

"avoids the ironic result of disclosing the former client's confidences and secrets through an

inquiry into the actual state of the lawyer's knowledge and it makes clear the legal profession's

intent to preserve the public's trust over its own self-interest."  *Id.* at 706.  "Successive

representations will be 'substantially related' when the evidence before the trial court supports a

rational conclusion that information material to the evaluation, prosecution, settlement or

accomplishment of the former representation given its factual and legal issues is also material to

the evaluation, prosecution, settlement or accomplishment of the current representation given its

factual and legal issues."  *Id.* at 713.  As examples of substantially related matters, the *Jessen*

courts cited cases involving "information received by the attorney from a third party which will

be, or may appear to the person or entity from whom the information was acquired to be, useful

in the attorney's representation in an action on behalf of the client."  *Id.* (quoting *William H.*

*Raley Co. v. Superior Court,* 149 Cal. App. 3d 1042, 1048 (Cal. App. 4th Dist. 1983)).  As well

as cases involving unfair competition and related torts claims arising out of employment

agreements prepared during an earlier representation.  *Id.*  (citing *Kaselaan & D'Angelo Assoc.,*

*Inc. v. D'Angelo*, 144 F.R.D. 235, 245-246 (D.N.J. 1992)).

　　　In this case, there is no question that the subject matter of  Sternberg and Orrick's prior

representation is substantially related to this litigation.  Indeed, Sternberg's and Orrick's prior

representation and their work product for both Almaviva and Loop AI is specifically at issue in

this action.  For instance, Loop AI alleges that the Defendants induced the breach of Gatti's

---

[42] "This standard, with its conclusive presumption of knowledge of confidential information, is 'justified as a rule of necessity' because 'it is not within the power of the former client to prove what is in the mind of the attorney.  Nor should the attorney have to 'engage in a subtle evaluation of the extent to which he acquired relevant information in the first representation and of the actual use of that knowledge and information in the subsequent representation.'" *Jessen*, 111 Cal. App. 4th at 706.

DQ MOTION
RE: VENABLE LLP'S ATTORNEYS

employment agreements with Loop AI all of which were prepared by Orrick.  In addition, during the course of his conflicted representation of Loop AI,  Sternberg had access to Loop AI's confidential information in three material ways: (1) he was part of the same corporate group that included virtually all of the Orrick attorneys and staff that worked on the Loop AI matter, (2) he used at least three Orrick attorneys who also did work on the Loop AI matter,[43] (3) he had continuous unfettered access and dealings with Anna Gatti, who was Loop AI's CEO and President, and who was in possession of all of Loop AI's confidential and attorney-client privileged information.  Thus, even though Sternberg never personally billed time to the Orrick/Loop AI matter, his unfettered access and communications with Loop AI's CEO are equivalent to a personal direct relationship with Loop AI, and to his direct access to all of the highly confidential information in possession of Anna Gatti which are at issue in this matter.

Indeed, in this case, Sternberg and his Venable team have already used against Loop AI in this litigation highly confidential information of Loop AI which they were not given by Loop AI in discovery.[44]  Almaviva's counsel has already displayed (and used against Loop AI) knowledge of highly-confidential information of Loop AI that were never provided to Almaviva through discovery.[45]  For instance, Almaviva issued a Subpoena to an investment fund extensively detailing factual questions that Almaviva could not have known to ask without access to Loop AI's highly confidential information.[46]  On other occasion, Venable disclosed knowledge of other highly confidential aspects of Loop AI's business that were not provided

---

[43] Loop AI respectfully notes that Orrick did not always bill all the time that its attorneys spent working on a matter.  Therefore, it is not possible to know precisely how many Orrick attorneys and staff members overlapped between the Loop AI and Almaviva matters.
[44] *See, e.g,* GMC Decl. at ¶¶ 6-7; VCH Decl. at ¶ 19.
[45] *Id.*
[46] *See, e.g,* GMC Decl. at ¶ 7.

through discovery.[47]  It would be grossly unjust to let Sternberg and his new team at Venable to continue to benefit from his serious breaches to Loop AI.[48]

In light of these facts, Sternberg had a sufficiently direct relationship with Loop AI while he was at Orrick to require this court to apply a conclusive presumption that he received confidential information relating to Loop AI.[49]  Accordingly, his disqualification from this "substantially related" case is mandatory.[50]

---

[47] VCH Decl. at ¶ 19.

[48] *See also, e.g., Davis v. EMI Grp., Ltd.*, No. 12-1602, 2013 U.S. Dist. LEXIS 1642, at *3-4 (N.D. Cal. Jan. 4, 2013) ("a 'paramount concern' that the Court is charged with preserving 'public trust both in the scrupulous administration of judge and in the integrity of the bar.'").

[49] The same prohibition extends to attorneys in a firm, even if, while in that firm, they never had any direct contact with information relating to the former client in question.  *See* N.Y. Rules of Prof'l Conduct R. 1.9(b)-(c); *Adams v. Aerojet-General Corp.*, 86 Cal. App. 4th 1324, 1340 (Cal. App. 3d Dist. 2001).  Where an attorney has no direct interaction with any representative of a former client, courts apply a "modified" substantial relationship test to determine whether an attorney "was exposed to client secrets during the time his former firm rendered services." *See id.* at 1332-1333, 1337-1338.  The distinguishing feature of this test lies in the fact that the presumption that confidences were imparted to the attorney is not conclusive, but can be rebutted by the attorney.  *Id.* at 1340 (courts consider whether "confidential information material to the current representation would normally have been imparted to the attorney during his tenure at the old firm.").  Loop AI respectfully submits that in light of (1) Sternberg's direct interaction with Gatti over the course of one year while he was at Orrick, and while she was a Loop AI officer, as well (2) Sternberg's role in using for Almaviva at least three of the same Orrick attorneys that worked on the Loop AI matter, and (3) Sternberg's membership in the same corporate group that included all the other Orrick attorneys working on the Loop AI matter, the standard substantial relationship test should be applied here.  But even if the Court were to examine Sternberg's conflicts under the modified substantial relationship test, his disqualification would still be required for the same reasons already discussed above.  There can be no reasonable dispute here that "confidential information" relevant to this litigation would have been imparted to Sternberg while he was at Orrick, and following his departure from Orrick, while he continued to work alongside Orrick and Gatti in respect of the matters at issue in this action.  Both before and after he left Orrick, Sternberg was dealing with Gatti and addressing her employment obligations in connection with his representation of Almaviva.  In addition, he was also dealing with Gatti in connection with Almaviva's application for a patent, which Loop AI alleges was in the same field of technology as that of Loop AI.  Attorney Sternberg simply is in no position to self-proclaim that whatever information he received from Gatti belongs to Almaviva, as Venable has claimed to date in its opposition to the Orrick subpoena.  Indeed, whether Gatti shared Loop AI's information with Almaviva is critically at issue in this action.

[50] *See also, cf., Packard Bell NEC, Inc. v. Aztech Sys.*, No. 98-7395, 2001 U.S. Dist. LEXIS 11194, at *24-25 (C.D. Cal. Jan. 22, 2001) (involving information learned from senior executive of party) ("Disqualification is proper where, as a result of a prior representation or through improper means, there is a reasonable probability counsel obtained information the court believes would likely be used advantageously against an adverse party during the course of the litigation.  Though such information cannot be unlearned, and the lawyer who obtained it cannot be prevented from giving it to others, disqualification still serves the useful purpose of eliminating from the case the attorney who could most effectively exploit the unfair advantage.")

DQ MOTION
RE: VENABLE LLP'S ATTORNEYS

Venable's disqualification is also required as a result of the taint brought by Sternberg. *See, e.g., Paul E. Iacono Structural Eng., Inc. v. Humphrey*, 722 F.2d 435, 441-442 (9th Cir. 1983). Venable admits that Sternberg brought the Almaviva matter to Venable, that he personally began working on this litigation for Almaviva on February 22, 2015, and that since that date he has continued to do substantial work on this litigation with the rest of his Venable team. Accordingly, Venable's disqualification is mandatory. *See id.*

## III. STERNBERG'S PERSONAL INVOLVEMENT IN THE FACTS UNDERLYING THIS CASE PROVIDE AN INDEPENDENT BASIS FOR HIS AND VENABLE'S DISQUALIFICATION.

There is another independent reason why Sternberg and Venable should be disqualified from any further participation as advocates in this case. Venable is conflicted in its representation of the Almaviva Defendants in this case because Sternberg faces exposure to multi-party liabilities arising out of his representation of Almaviva while at Orrick. Venable's desire to help its new partner Sternberg avoid or mitigate that exposure conflicts with Venable's obligation to represent the Almaviva Defendants in this case and to not impact the integrity of the judicial process. The basis for Sternberg's exposure in this case is at least two fold. First, Sternberg faces personal exposure to Loop AI for his own breaches of fiduciary duty and other violations while he was an Orrick partner, including, but not limited to, as a result of his providing substantial assistance and facilitating the breaches and violations of the other Defendants. Second, Sternberg faces exposure also in respect of the advice he gave Almaviva regarding the transactions that are at issue in this action. The Orrick team, headed by Sternberg, that advised Almaviva on its hiring of Gatti doubtless had a sophisticated understanding of the issues to be addressed when hiring a technology company CEO to a part-time position. That Orrick team would have understood that what the new part-time CEO was going to do with the rest of her time could have important consequences for their client Almaviva. Gatti might have conflicting time commitments that would have to be managed (for example, if two different employers wanted her in different cities on the same day). Gatti might have access to confidential information belonging to her other employer that could be imputed to Almaviva and could expose Almaviva to claims for misappropriation of that information. Gatti might be

DQ MOTION
RE: VENABLE LLP'S ATTORNEYS

exposed to corporate opportunities that potentially could benefit both employers.  And so on.

The obvious way to address these issues would have been for Almaviva to insist that Gatti could

be subject to competing obligations only after they were vetted by Almaviva and some

agreement was reached between Almaviva and the other employer as to how the conflicts should

be managed.[51]  If Almaviva had done this, starting with Loop AI, it would have discovered that

its proposed course of conduct was unlawful.  The Orrick team either did, or did not, advise

Almaviva of these issues, and either did, or did not, recommend that Almaviva approach Loop

AI to work the issues out before hiring Gatti.  If Orrick did not give this advice and Almaviva is

found liable in this litigation, Sternberg (and Orrick) face potential malpractice exposure to

Almaviva.  If Orrick did give this advice, and Almaviva chose to ignore it, Sternberg still may

face malpractice liability, for failing to do more to protect his client from the clearly foolhardy

course of action it sought to pursue notwithstanding Orrick's advice.[52]  Either way, Venable

should not be in the middle of this, because this fact pattern subjects Venable to conflicts that

would not be present if a wholly independent firm were advising Almaviva.  These conflicts are

likely to cause Venable to recommend different approaches to litigation strategy and to any

settlement discussions that may occur than would be recommended by a law firm that is entirely

free of conflict.  Thus, Venable's conflicted representation of the Almaviva Defendants is likely

to impede the efficient administration of justice and this conflict represents a separate ground on

which Venable should be disqualified.

This aspect of the case is strikingly similar to that described by a district court granting a

motion to disqualify in *Eurocom, S.A. v. Mahoney, Cohen & Co.*, 522 F. Supp. 1179, 1180

---

[51]  See, for example, Twitter's employment agreement with Jack Dorsey, containing the following provision relating to his simultaneous employment by another company, Square: "While you render services to the Company, you will not engage in any other employment, consulting, or other business activity that would create a conflict of interest with the Company, which includes engaging in any work that is competitive in nature.  *To that end, prior to your start date on July 1, 2015, we will develop and agree on a Conflict of Interest Policy as it pertains to your work with Square, Inc.*" (emphasis supplied), filed with the SEC at https://www.sec.gov/Archives/edgar/data/1418091/000119312515220557/d941786dex101.htm

[52]  If this second possible course of events is the one that occurred, some of the sworn testimony submitted in this case by Almaviva (professing ignorance of any possible illegality in hiring Gatti) will be proven at least disingenuous.

(S.D.N.Y. 1981). *Eurocom* involved a request to disqualify the law firm Cleary, Gottlieb, Steen & Hamilton LLP ("Cleary") on the grounds that the firm was counsel had been counsel to one of litigants in the underlying transaction that was now at issue in the litigation. The court held that "[t]he actions which Cleary, Gottlieb took or failed to take in connection with the underlying transaction will obviously be explored by defendant at trial." *Id.* at 1180. The court then concluded, that 'whether or not, strictly speaking, the witness rule applies," "[a] potential conflict arises between Cleary, Gottlieb and its own client." *Id.* at 1181. Because it could "face a malpractice action, brought by is own client" Cleary, Gottlieb

> has its own interest in minimizing its role during the underlying commercial transaction, and maximizing that of the plaintiff's own representatives, so that any factors tending to reduce plaintiff's recovery would not be laid at the door of Cleary, Gottlieb. Secondly, the theory defendant asserts against Cleary, Gottlieb constitutes an inevitable complicating factor in settlement discussions. The possibility of settlement is always encouraged by the Court; but the parties are entitled to advice on that subject from counsel who are entirely uninhibited by any personal involvement of their own in the merits. Of course, I intimate no view with respect to the merits of defendant's allegations against the Cleary, Gottlieb firm. That remains a matter for discovery and trial. But I do conclude that, in these circumstances, Cleary, Gottlieb must be disqualified as trial counsel.

*Id.*[53] Similarly, in this case, Loop AI has made claims against Almaviva and the other defendants which are based in part on Orrick's breaches and violations, resulting from Sternberg's undertaking of the Almaviva conflicted representation while he was at Orrick. There

---

[53] *Eurocom* is not unique in its holding. Numerous courts have held that a disqualifying appearance of impropriety is created when a counsel who is acting as advocate in a litigation was personally involved in the underlying transactions at issue in the litigation. *See, e.g., Cord v. Smith*, 338 F.2d 516, 525 (9th Cir. 1964) ("It may be that an attorney will be the only person whose knowledge, disclosed upon the witness stand, can give the court the information that it must have if it is to decide a particular case correctly. Like all privileges, the attorney-client privilege may, in a particular case, be a clog upon the proper administration of justice."); *US v. Napoli*, No. 10-642, 2011 U.S. Dist. LEXIS 37226, at *25-26 (N.D. Cal. Apr. 5, 2011) (disqualifying counsel involved in underlying transaction from acting as trial counsel or even in an "advisory capacity.") ("At the very least, [attorney's] reputation is on the line because he has asserted that the … business model described above is lawful. He has a vested interest in Defendant Napoli being vindicated, but that interest is in large part a selfish one. His previous stated positions and advice to Defendant Napoli and others calls into question his ability to fairly evaluate settlement offers in which Defendant Napoli would have to admit guilt and/or potentially implicate [attorney]."); *Woods v. Superior Court*, 149 Cal. App. 3d 931, 936 (Cal. App. 5th Dist. 1983) ("disqualification is proper here to avoid any appearance of impropriety."); *Holm v. City of Barstow*, No. 08-420, 2008 U.S. Dist. LEXIS 110391 (C.D. Cal. Sept. 16, 2008) (In "the Ninth Circuit" the "appearance of professional impropriety … is an independent basis for disqualification.").

DQ MOTION
RE: VENABLE LLP'S ATTORNEYS

1    is no question that, under the circumstances, Sternberg and his new firm, Venable, have a

2    personal conflict arising out of their interest in using the litigation to minimize Sternberg's own

3    exposure.  The repercussions of this conflict have already been apparent throughout the course of

4    the litigation.  Among other things, and presumably to avoid exposing Sternberg's own liability

5    to its client, Venable has vigorously opposed not only Almaviva's participation in a preliminary

6    mediation conference, but any involvement in such mediation by any representative of Almaviva

7    (both of which are generally mandatory in most federal proceedings).[54]

8         Finally, Sternberg's unique knowledge of certain key facts make his and Venable's role

9    as advocates in this case highly improper.  For instance, the evidence shows that Sternberg

10   assisted Almaviva and Gatti in implementing agreements with Gatti and the IQSystem

11   Defendants (which Gatti owns) that were designed to conceal the payment of illegal bribes.  *See,*

12   *e.g.*, VCH Decl. at Ex. D.  Gatti openly discussed with Almaviva's representative, Valeria

13   Sandei, the need to have Orrick implement further modifications to the "Orrik [sic] proposal" for

14   the IQSystem Defendant's contract, including increase in funding from $40,000 per month to

15   $70,000 per month for, among other things, "gifts" to "top US clients" and "government

16   entities," and that such payments be made as a "flat monthly retainer" because "i***t is better to***

17   ***keep a series of line items and consultants off the books of Almawave US***."  VCH Decl., Ex. D

18   at RRA119-220 (emphasis added).  As the attorney in charge of Orrick's relationship with

19   Almawave S.r.l., Sternberg's knowledge of, and testimony in regards to this matter will be

20   highly material in this case.

21        For the foregoing reasons, Loop AI respectfully submits that Sternberg and Venable's

22   disqualification can be ordered here for this independent reason.

---

[54] This leads to the strong implication that neither Sternberg nor others at Venable ever disclosed
to Almaviva the personal conflict they faced.

## CONCLUSION

Loop AI respectfully requests that the Court order the disqualification of Sternberg and Venable from any further participation as counsel in this case, whether formally or informally. In addition, Loop AI also respectfully requests that the Court impose certain prophylactic measures barring the turnover to substitute counsel of any confidential information or advice Sternberg shared with Almaviva or with anyone else regarding Loop AI or Orrick's work-product for Loop AI, including the agreements that are at issue in this action, and further providing that any person to whom Sternberg made such disclosure (e.g., counsel for other defendants in the case) be prohibited from using it.

Respectfully submitted,

September 16, 2015                    By:   /s/ *Valeria Calafiore Healy*

Valeria Calafiore Healy, Esq. (*phv*)
Valeria.healy@healylex.com
HEALY LLC
154 Grand Street
New York, New York 10013
Telephone:      (212) 810-0377
Facsimile:      (212) 810-7036

Daniel J. Weinberg, Esq. (SBN 227159)
dweinberg@fawlaw.com
FREITAS ANGELL & WEINBERG
LLP
350 Marine Parkway, Suite 200
Redwood Shores, California 94065
Telephone:      (650) 593-6300
Facsimile:      (650) 593-6301

Attorneys for Plaintiff
LOOP AI LABS, INC.