LAW OFFICES OF JANET BRAYER
JANET BRAYER (SBN 117397)
230 California Street,   Suite 600
San Francisco, California 94111
Telephone:  (415) 445-9555
Facsimile:  (415) 445-9541

Attorney for Defendant IQSYSTEM, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS, INC.,<br><br>                  Plaintiff,<br><br>      vs.<br><br>ANNA GATTI, an individual, ALMAVIVA S.p.A., an Italian corporation, ALMAWAVE S.r.l an Italian corporation, ALMAWAVE USA, Inc., a California corporation, IQSYSTEM LLC, a California limited liability company, IQSYSTEM, Inc., a Delaware corporation,<br><br>                Defendants. | **Case No. 3:15-cv-00798-HSG-DMR**<br><br>**DEFENDANT IQSYSTEM, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL PARTICULARIZED TRADE SECRET DISCLOSURE AND FOR STAY OF DISCOVERY UNTIL COMPLIANCE WITH CA CCP SECTION 2019.210**<br><br>**DATE:  NOVEMBER 12, 2015**<br>**TIME:   2:00 P.M.**<br>**COURTROOM 15, 18th FLOOR**<br>**JUDGE:  HAYWOOD S. GILLIAM, JR.**<br>**450 Golden Gate Avenue, San Francisco, CA** |

## NOTICE OF MOTION AND MOTION TO COMPEL PARTICULARIZED TRADE SECRET DISCLOSURE AND STAY DISCOVERY

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 12, 2015 at 2:00 p.m., or as soon thereafter as counsel may be heard, before the Honorable Haywood S. Gilliam, Jr. in Courtroom 15, 18th Floor, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant IQSystem, Inc., (hereinafter "IQS") will and hereby does move, pursuant to California Code of Civil Procedure section 2019.210, and Civil Local Rule 7 for a more particularized trade secret disclosure from trade secret Plaintiff Loop AI Labs, Inc., (hereinafter "Loop"), and for a stay of discovery until such time as Loop provides a particularized trade secret disclosure.

This motion is based on this notice of motion and supporting memorandum of points and authorities, the Declaration of Janet Brayer, the records and papers on file in this action, and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

Dated: October 2, 2015

LAW OFFICES OF JANET BRAYER

By:    /S/   Janet Brayer_____
       JANET BRAYER
       Attorneys for Defendant
       IQSYSTEM, INC.

**TABLE OF CONTENTS**

I.      INTRODUCTION   ....................................................................................   2

        A.   This Motion is Properly filed before the Honorable Judge Gilliam, Jr .   2

        B.   Relief Requested ...................................................................................   2

II.     ISSUES TO BE DECIDED   .....................................................................   5

III.    FACTUAL AND PROCEDURAL BACKGROUND   .............................   5

IV.     ARGUMENT   ...........................................................................................   8

        A.   Plaintiffs Asserting CUTSA Claims in Federal Court are
             Bound by §2019.210   .......................................................................   8

        B.   Loop's alleged disclosure by way of complaint and unspecified
             declaration does not comply with § 2019.210   ..............................   10

        C.   Loop's disclosure is insufficient to distinguish Loop's alleged
             trade secrets from general knowledge   ..........................................   12

        D.   Loop's disclosure is qualitatively insufficient   ..............................   12

        E.   Loop may not engage in discovery until it has adequately
             disclosed its trade secrets   ..............................................................   15

        CONCLUSION .......................................................................................   16

## TABLE OF AUTHORITIES

### CASES

*Advanced Modular Sputtering, Inc. v. Superior Court,*
132 Cal. App. 4th 826 (2005) ....................................................... 11, 13

*Agency Solutions.Com, LLC v. TriZetto Grp., Inc.,*
819 F. Supp. 2d 1001 (E.D. Cal. 2011) ........................................ 7, 9, 15

*AMEC Env't & Infrastructure, Inc. v. Integral Consulting, Inc.,*
2014 U.S. Dist. LEXIS 120999 (N.D. Cal. Aug. 28, 2014) ........................ 16

*Brescia v. Angelin,*
172 Cal. App. 4th 133 (2009).......................................................... 9, 13

*Computer Econ., Inc. v. Gartner Grp., Inc.,*
50 F. Supp. 2d 980 (S.D. Cal. 1999) ........................................... 8, 9, 12

*Consolidated Data Terminals v. Applied Digital Data Sys.,*
708 F. 2d 385, 390 n.3 (9th Cir. 1983) ......................................... 11-12

*Diodes, Inc. v. Franzen,*
260 Cal. App. 2d 244 (1968) ....................................................... 11

*Erie R. Co. v. Tompkins,*
304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938) ..................................... 8

*Gabriel Technologies Corp. v. Qualcomm Inc.,*
2012 WL 849167 (S.D. Cal. Mar. 13, 2012) ................................................ 8

*Interserve, Inc. v. Fusion Garage PTE, Ltd.,*
2010 WL 1445553 (N.D. Cal. Apr. 9, 2010)................................................ 9

*Jobscience, Inc. v. CVPartners, Inc.,*
2014 U.S. Dist LEXIS 64350 (N.D. Cal. May 1, 2014).............................. 8

*Jobscience, Inc. v. CVPartners, Inc.,*
2014 U.S. Dist LEXIS 26371 (N.D. Cal. Feb. 28, 2014)............................ 9, 13, 15

*Jobscience, Inc. v. CVPartners, Inc.,*
2014 U.S. Dist LEXIS 2741 (N.D. Cal. Jan. 9 2014)................................... 11

*Lilith Games (Shanghai) Co. v. uCool, Inc,*
No. 15-01267, 2015 U.S. Dist. LEXIS 89365 (N.D. Cal. July 9, 2015)..... 9, 12, 14

*MAI Sys. Corp. v. Peak Computer*,
   991 F.2d 511, (9th Cir. 1993)  ....................................................................   4, 11

*Neothermia Corp. v. Rubicor Med., Inc.,*
   (ND Cal 2004) 345 F Supp2d 1042 .............................................................   9, 12

*Ophthalmic Research Associates, Inc. v. SARcode Corp.,*
   2013 WL 2247584 (D. Mass. May 22, 2013)  ..............................................   8-9

*Perlan Therapeutics, Inc. v. Superior Court,*
   178 Cal. App. 4th 1333 (2009) ...................................................................   9, 10,
   .......................................................................................................... 12, 13, 15

*Prolifiq Software Inc. v. Veeva Sys. Inc.,*
   2014 WL 2527148 (N.D. Cal. June 4, 2014)  ..............................................   14

*Social Apps, LLC v. Zynga, Inc.,*
   2012 WL 2203063 (N.D. Cal. June 4, 2014)  .............................................. 8, 9, 12, 15

*Silvaco Data Systems v. Intel Corp.,*
   184 Cal. App. 4th 210 (2010) ....................................................................   7

*Switch Commc'ns Grp. v. Ballard,*
   2012 WL 2342929 (D. Nev. June 19, 2014)  ...............................................   15

*Universal Analytics v. MacNeal-Schwendler Corp.,*
   707 F. Supp. 1170, 1177 (C.D. Cal. 1989) (citation omitted),
   aff'd, 914 F.2d 1256 (9th Cir. 1990) ...........................................................   11

**STATUTES**

California Code of Civil Procedure Section 2019.210 ........................................... *passim*

California Civil Code § 3246 .................................................................................   3

California Civil Code § 3246.1(d) ........................................................................   4, 11

\* \* \*

## I.   INTRODUCTION

### A.  This motion is properly filed before the Honorable Judge Gilliam, Jr.

The parties have been provided with two directives stating that any motion relating to a stay of discovery should be filed with the Honorable Judge Gilliam.  The first such directive was from Judge Gilliam on May 26, 2015 [Dkt.  111 at 15-16], and the second directive was from the Honorable Judge Ryu on July 23, 2015 [Dkt 157 at 14 at 95-97].

Defendant IQ System, Inc. ("IQS") moves the court to compel plaintiff Loop AI Labs, Inc. ("Loop") to identify trade secrets with particularity  pursuant to CAL. CCP §2019.210, and to stay discovery until such time as Loop provides proper trade secret disclosure.  Loop has admitted that it has an obligation to comply with CAL. CCP §2019.210. (See, Dkt. 111, page 97 [Healy:  "we are perfectly aware of our obligations in respect to the trade secrets, and we are in the process of producing a trade secret list," and Dkt. 210 Second Amended Complaint ("SAC"), ¶339 ["a complete list of trade secrets misappropriated by the Defendants will also be provided to them before discovery in accordance with California law."].  Despite such admissions, Loop now contends that it need not provide a separate trade secret disclosure statement as the trade secrets are identified in the complaints on file and declarations that Loop filed in support of its motion for a temporary restraining order,  a motion that was denied, in part, as Loop "has not identified what business information was allegedly misappropriated,  or submitted evidence that particular business information taken constitutes a trade secret under California Law."  [Dkt.  32, at 4:2-12].  The failure to identify the trade secrets with particularity persists, thus forcing the filing of this motion.

### B.  Relief Requested

Plaintiff Loop asserts multiple claims including claims for computer fraud and abuse,

IQSystem, Inc.'s Motion to Compel Particularized Trade Secret Disclosure & Stay of Discovery Until Compliance with CA CCP §2019. 210

-2-

trade secret misappropriation under California Civil Code § 3246, theft of corporate opportunity,   and unfair competition against Defendant IQS and others.  On June 18, 2015, IQS made a demand for Trade Secret Disclosure pursuant to CAL. CCP §2019.210 requesting that Loop identify the trade secrets with "reasonable particularity" prior to commencing discovery ("TS Request"). (See, declaration of Janet Brayer filed herewith, all exhibits referred to herein are attached thereto, Exhibit 1, Dkt. 118).  In connection with TS Request, IQS sent multiple follow up letters and met and conferred with Loop regarding the disclosure.  After first agreeing to provide a TS Disclosure Statement, Loop now refuses, asserting that "Loop AI has already identified its trade secrets at issue in this action in both its Amended Complaint and in subsequent declarations submitted to the Court.  See, e.g., Dkt. No. 45 at ¶¶137-182,  Dkt. Nos 49-51."   (Brayer Dec. ¶6, Exhibit 3).  Despite request,  Loop has not identified where in any version of the complaints on file or the declarations submitted in support of Loop's  motion for TRO where a particularized statement of the alleged trade secrets can be found.  (Brayer Dec. ¶4, Exhibit 13).  Loop's response to the TS Request falls well below the basic requirements of California Code of Civil Procedure ("CCP") § 2019.210.

The parties have met and conferred, and Loop confirms it will not produce a more particularized trade secret disclosure before seeking discovery (or compelling responses to discovery) from IQS,  despite representation in each and every complaint filed by Loop stating that "a complete list of trade secrets misappropriated by the Defendants will also be provided to them before discovery in accordance with California law."  (SAC ¶339 [Dkt. 210],  FAC ¶316 [Dkt. 45]).  Loop asserts that it has complied with the TS Request by directing IQS to multiple paragraphs in the complaint and unspecified paragraphs in declarations filed in support of Loop's unsuccessful motion for a TRO. [Dkt 32, Order denying TRO].  Counsel for IQS has

carefully reviewed the complaint and declarations as specified by Loop, but has not located any identification of trade secrets with particularity that would comply with the requirements of the TS Request.  The only references to trade secrets information that for the sake of argument might be considered "specific," are found in the declaration of Mr. Ehlen  pages 4 and 17-19 (Dkt. 50, Exhibit 14),  but a cursory review of the declarations leads to a conclusion that it contains nothing but generalities.  For example, paragraph 7 refers to a "prototype of a natural language processing algorithm" without providing specificity, paragraph 44 refers to "trade secrets relating to various aspects of Loop AI's business and technology" with no specificity while also setting forth some general statements as to what was deemed by AI to be "confidential information."  (Brayer Dec. ¶16).

This Court in denying Loop's request for TRO noted the lack of specificity provided by Loop in regard to the trade secret misappropriation allegations.[1]

In light of Loop's position that no further trade secret identification will be provided as sufficient "specificity" to comply with CCP § 2019.210 can be found in declarations and the complaint itself,  IQS moves to compel further disclosure of trade secrets from Loop, as

---

[1]  See,  Order,  Dkt. 32:

"On the record presented, Loop AI has not demonstrated that it is likely to meet this standard. While Loop AI asserts that it undertakes reasonable efforts to maintain the secrecy of its business information, it has not identified what business information was allegedly misappropriated, or submitted evidence that particular business information taken constitutes a trade secret under California law. See MAI Sys. Corp. v. Peak Computer, 991 F.2d 511, 522 (9th Cir. 1993) ("[A] plaintiff  who seeks relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing that they exist."); see also Cal. Civ. Code § 3426.1(d) (defining a trade secret to include information that "[d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can  obtain economic value from its disclosure or use; and . . . [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."). (Order, 4:2-12) "Instead, Loop AI's Application is premised on general, very broad assertions unsupported by specific evidence in the record. See Dkt. No. 9 at 9 ("The Company's confidential information, know-how, technology, business methods, strategies, business plans, funding plans, investments plans, business partnerships and marketing plans, contacts and related materials which the Company developed and used in connection with its business constitute trade secrets of the Company." (Order, 4:13-18)

As to the allegation that defendant Gatti "requested 700 files to which she did not have access, " the Order states: "[a]t this stage, Loop AI has not demonstrated that (1) Defendant Gatti retains those 700 files; (2) Defendant Gatti shared hose files with any of the other Defendants; or that (3) the unspecified contents of those files likely qualify as trade secrets under California law."  (Order,  4:21-23,  5:1-4).

required by CCP § 2019.210.

In addition, as Loop contends that it has the right to engage in discovery having complied in full with CCP § 2019.210,  IQS seeks an order staying discovery until Loop provides the required trade secret disclosure;  as noted above,  Loop concedes that discovery is stayed until such time as it complies with CCP § 2019.210 – the issue presented is whether Loop has indeed provided proper "particularized" disclosure.  All discovery must be stayed until the statute is complied with particularly where, as here, the claims share a common operative nucleus of facts and the requirements of  § 2019.210 would become meaningless if all discovery is not stayed until Loop complies with § 2019.210.

## II.    ISSUES TO BE DECIDED

Should Loop be compelled to disclose its claimed trade secrets with particularity, as required by CCP § 2019.210, before Loop is permitted to take discovery from IQS?

Has Loop disclosed its claimed trade secrets with particularity,  as it contends through allegations in the complaints and declarations in support of the TRO,  such that it has complied with CCP § 2019.210?

Should discovery be stayed until such time as Loop complies with CCP § 2019.210?

## III.    FACTUAL AND PROCEDURAL BACKGROUND

IQS first requested that Loop properly identify its trade secrets in June of 2015.  IQS has continually requested such disclosure, has sent multiple meet and confer letters on the topic, and recently Loop promised to provide the same, only thereafter advising that it had fully complied with CCP § 2019.210 but would respond to discovery requesting trade secret disclosure if IQS agreed not to file this motion.  (See, e.g., Brayer Dec.¶¶5, 6, 8).  Further, Loop has engaged in extensive discovery (and filed multiple motions and letters regarding

discovery)  asserting that there is no "stay,"  as it has fully complied with CCP § 2019.210.

Loop's claimed intellectual property is impossible to decipher.  There is no differentiation between "confidential information" and "trade secret" information.  The Second Amended Complaint ("SAC") does not identify the trade secrets with reasonable particularity but instead refers to broad categories of information (see, SAC ¶159,  Dkt. 210), does not distinguish between confidential information and trade secret information, and the SAC does not differentiate between "confidential information and trade secrets unlawfully acquired, used, and/or disclosed or misappropriated." (see, SAC ¶158).  The trade secrets are not specified in the Second Amended Complaint, which pleads generally:

"Technical information, including, but not limited to: experiments relating to the Company's proprietary technology, test results, research regarding the state of the art and the development of the Company's technology, detailed analysis and evaluations of the Company's technology, applications, system integration, design concepts underlying the Company's technology, detailed instructions on testing and modeling of the Company's technology, as well as highly confidential information regarding scientific recruiting targets."  (SAC ¶159, see also SAC ¶160 [Business development/Investor Information), and SAC ¶161 [Financial/Legal Information]).

The SAC is replete with general allegations regarding the trade secret.  For example, it is alleged generally that Gatti was provided with, "highly technical details regarding important aspects of the Company's technology. Although the information provided to her is too voluminous to be listed here, these documents included compilations of Loop AI's analysis and annotations regarding specifications of the development of the Company's technology, of conceptual models, of options for validating technical assumptions, applications with business

partners and system integration, experiments and experiment results and the like. All of these documents were highly confidential, and many contained the Company's trade secrets…" (SAC ¶165, see also general allegations SAC ¶¶177 [unidentified "unpatented inventions], 178 [unidentified "technical information" and "semantic analysis," 179 [unidentified "deep learning" technical information"]).[2]

Further, there are no allegations or facts set forth from which it can be determined if the alleged trade secret information is distinguishable from general knowledge in the field of which Loop AI operates. It is generally alleged that a list of confidential "advisors" was appropriated but again, there is no way to distinguish whether such advisors are generally known in the field or were known to Gatti prior to working for Loop AI. (See, e.g., SAC ¶185-186, identifying providers including the Orrick law firm which is generally known as a large reputable law firm doing work in technical fields).

Loop promises to comply with CCP § 2019.210 (and admits the need to comply with the same prior to discovery), and then shifts gears and states that it has complied with CCP § 2019.210 by way of pleading and declaration. Loop states that it will provide a list of trade secrets, and then advises that this will be done only in response to discovery and a promise not to file a motion. (Brayer Dec. ¶ 14).

IQS's only recourse is to now ask this Court, pursuant to CCP § 2019.210, to require that Loop make a particularized disclosure of its trade secret and ask this Court to stay all discovery until Loop so complies.

---

[2] California courts routinely find that trade secret designations that attempt to characterize various aspects of a party's underlying design of a software program as trade secrets fail to describe a trade secret properly as the only protectable trade secret identified by such a description is the source code itself. *See Silvaco Data Systems v. Intel Corp.,* 184 Cal. App. 4th 210 (2010); *Agency Solutions.com LLC v. Trizetto Group, Inc.*, 819 F.Supp. 2d 1001 (E.D. Cal. 2011).

## IV.    ARGUMENT

"Experience has shown that it is easy to allege theft of trade secrets with vagueness, then take discovery into the defendants' files, and then cleverly specify whatever happens to be there as having been trade secrets stolen from plaintiff." *Jobscience, Inc. v. CVPartners, Inc.*, 2014 U.S. Dist LEXIS 64350, at *2 (N.D. Cal. May 1, 2014). To avoid a Jobscience scenario, Loop must be required, as all plaintiffs seeking relief under the California Uniform Trade Secrets Act are required, to disclose its alleged trade secret with particularity pursuant to CCP § 2019.210.  Thus far Loop has failed to do so.

### A.    Plaintiffs Asserting CUTSA Claims in Federal Court Are Bound by § 2019.210

Loop admits that § 2019.210 applies in Federal Court,  as set forth by way of allegation in the SAC and verbal representation to this Court.  Courts throughout the Ninth Circuit, and particularly within the Northern District of California, have identified three distinct reasons why § 2019.210 is applicable in Federal Court.  First, where the action is based, in part, upon diversity jurisdiction, then the Supreme Court's decision in *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). requires that the district court apply § 2019.210.  See, e.g. *Gabriel Technologies Corp. v. Qualcomm Inc.*, 2012 WL 849167, at *3 (S.D. Cal. Mar. 13, 2012) (applying § 2019.210 after Erie analysis); *Computer Econ., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 992 (S.D. Cal. 1999) (same). Second, because § 2019.210 guards against the kinds of litigation abuses identified above by the Jobscience court, courts in the Northern District of California apply it out of policy concerns. See, e.g. *Soc. Apps, LLC v. Zynga, Inc.*, 2012 WL 2203063, at *2 (N.D. Cal. June 14, 2012). Third, as a matter of guaranteeing uniformity among judicial decisions, courts have noted a "growing consensus that the rule [§ 2019.210] does apply" in federal court.  See, e.g. *Ophthalmic Research Associates, Inc. v.*

*SARcode Corp.*, 2013 WL 2247584, at *4 (D. Mass. May 22, 2013) (applying California law); See also, *Interserve, Inc. v. Fusion Garage PTE, Ltd.*, 2010 WL 1445553, at *3 (N.D. Cal. Apr. 9, 2010) (applying § 2019.210 procedures under the court's inherent power to enter case management orders); *Neothermia Corp. v. Rubicor Med., Inc.* (ND Cal 2004) 345 F Supp2d 1042, 1043–1044; *Lilith Games (Shanghai) Co. v. uCool, Inc.* No. 15-01267, 2015 U.S. Dist. LEXIS 89365 (N.D. Cal. July 9, 2015), *Jobscience*, 2014 U.S. Dist LEXIS 26371 (N.D. Cal. Feb. 28, 2014), at *4 (applying § 2019.210); *Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1015 (E.D. Cal. 2011) (same).

Turning to the policy concerns identified in Jobscience and Zynga: those concerns are present here. Courts have generally recognized four goals behind § 2019.210: "First, it promotes well-investigated claims and dissuades the filing of meritless trade secret complaints. Second, it prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets. Third, the rule assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope. Fourth, it enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until theeve of trial to effectively defend against charges of trade secret misappropriation." *Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333, 1343 (2009); accord *Zynga, Inc.*, .2012 WL 2203063, at *2, see also, *Computer Econs., Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980, 985 (S.D. Cal. 1990); see *Brescia v. Angelin*, 172 Cal. App. 4th 133, 149 (2009) (stating that the last two purposes are the most important ones").

In light of the voluminous discovery propounded by Loop, it appears that Loop is abusing the litigation or discovery processes of this Court, and many of the concerns listed in Perlan are present here; it is impossible to discern a single trade secret from filings made by

IQSystem, Inc.'s Motion to Compel Particularized Trade Secret Disclosure & Stay of Discovery Until Compliance with CA CCP §2019. 210

-9-

Loop, yet Loop requests that defendants provide discovery regarding their own trade secrets.[3]

Loop must comply with the particularity requirements of section 2019.210 before engaging in further discovery or filing motions to compel discovery.[4]

### B. Loop's alleged disclosure by way of complaint and unspecified declaration does not comply with § 2019.210

Loop alleges compliance § 2019.210 by way of complaint allegations and declarations filed in support of its TRO motion. The California Court of Appeal has identified two principles which govern proper disclosure under § 2019.210: (1) the disclosure must contain "sufficient particularity to . . . distinguish[] the trade secrets from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade" and (2) "in a highly specialized technical field, a more exacting level of particularity may be required to distinguish the alleged trade secrets[.]" *Perlan Therapeutics*, 178 Cal. App. 4th at 1346 (citations and quotations omitted).

The letter and spirit of Section 2019.210 require Loop, subject to the protective order that this Court has approved, to identify or designate the trade secrets at issue with sufficient particularity to limit the permissible scope of discovery by distinguishing the trade secrets from

---

[3] Without identifying its trade secrets, Loop requests that IQS and other defendants provide their trade secret information. For example, Discovery Request No. 1 propounded on IQS by Loop includes the following requests:

**REQUEST 17:** Produce all documents and communications discussing, relating or referring to, or concerning Loop AI, Loop AI's technology, employees, consultants, service providers, or investors, whether potential or actual.

**REQUEST 19:** Produce all documents and communications relating to the Almawave Defendants' use or ownership of, or interest in, semiconductor manufacturing process technologies.

**REQUEST 44**: Produce all documents and communications relating to, referring, or concerning "AI" or "artificial intelligence" or analytics or CRM or speech or "big data."'

**REQUEST 52:** Produce all documents and communications relating to, concerning, or referring to any actual, potential or prospective customers, business partners, investors, and/or service providers.

[4] Defendants have objected to the discovery propounded by Loop on several grounds, including the failure to comply with trade secret disclosure requirements.

IQSystem, Inc.'s Motion to Compel Particularized Trade Secret Disclosure & Stay of Discovery Until Compliance with CA CCP §2019. 210

matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade. *Adv. Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 834 (2005) (quotations and citations omitted); see *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968) (trade secret must be distinguished from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade);  see also *Universal Analytics v. MacNeal-Schwendler Corp.*, 707 F. Supp. 1170, 1177 (C.D. Cal. 1989) (citation omitted), aff'd, 914 F.2d 1256 (9th Cir. 1990).

While reasonable particularity does not require a party to define its trade secret down to the finest detail, it does require that the plaintiff make some effort to define the trade secret in a manner that is fair and proper under all of the circumstances. *Adv. Modular Sputtering, Inc.*, 132 Cal. App. 4th at 835-36. A plaintiff seeking relief for misappropriation of trade secrets "must identify the trade secrets and carry the burden of showing that they exist." *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993).  Plaintiff's broad statements regarding its trade secrets is simply insufficient.  See, *Jobscience, Inc v. CVPartners, Inc*, 2014 U.S. Dist LEXIS 2741 (N.D. Cal. Jan. 9, 2014), at *5 (mere identification of "software code" too vague under California law).

California law defines a trade secret as follows:

Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
(1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
Cal. Civ. Code § 3426.1(d) (West 1997).

It is settled that California law applies to plaintiff's misappropriation of trade secrets and unfair competition claims. See *Consolidated Data Terminals v. Applied Digital Data Sys.*, 708

F.2d 385, 390-91 n.3 (9th Cir. 1983).  The Northern District has also applied this state-law requirement to a suit based on disclosure of trade secrets in violation of a nondisclosure agreement.  *Neothermia Corp. v. Rubicor Med., Inc.* (ND Cal 2004) 345 F Supp2d 1042, 1043–1044;  see also *Computer Econs., Inc. v. Gartner Group, Inc.* (SD Cal 1999) 50 F Supp2d 980, 986–990,  *Lilith Games (Shanghai) Co. v. uCool, Inc.* No. 15-01267,  2015 U.S. Dist. LEXIS 89365 (N.D. Cal. July 9, 2015),  *Soc. Apps, LLC v. Zynga, Inc.*, 2012 WL 2203063, at *2 (N.D. Cal. June 14, 2012).

Loop's alleged compliance with trade secret disclosure requirements is woefully deficient.

### C.      Loop's disclosure is insufficient to distinguish Loop's alleged trade secrets from  general knowledge

Loop has also made no attempt at "distinguishing the trade secrets from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade[.]" *Perlan Therapeutics*, 178 Cal. App. 4th at 1346 (internal quotations omitted),  as Loop has not even bothered to identify the specific trade secrets at issue in this case.

### D.      Loop's disclosure is qualitatively insufficient

"[I]n a highly specialized technical field, a more exacting level of particularity may be required to distinguish the alleged trade secrets." See *Perlan Therapeutics*, 178 Cal. App. 4th at 1346 (technical fields require greater disclosure). In Jobscience, the court required: "(1) a summary of the specific trade secret; (2) the background of the trade secret and a description of how each secret has derived independent, actual or potential economic value by virtue of not being generally known to the public; (3) a description of how each secret has been the subject of reasonable efforts to maintain its secrecy; and finally (4) each of the precise claimed trade secrets, numbered, with a list of the specific elements for each, as claims  would appear at the

end of a patent." *Jobscience*, 2014 LEXIS 26371, at *5.

These precedents describe qualitative features of particularization which Loop's has not even attempted to provide.  Loop has offered virtually nothing – no identification of trade secret, no description of the elements of each claimed trade secret, no testimony of one skilled in the art, or any of the other hallmarks of a particularized showing necessary to distinguish Loop's claimed trade secrets from what is general knowledge.

In *Advanced Modular Sputtering, Inc. v. Superior Court*, the court found the trade secret disclosure acceptably particularized only where it: (1) "identified eight alleged trade secrets, each with several discreet features" and (2) was supported by the testimony of "credible experts declar[ing] that they are capable of understanding the designation and of distinguishing the alleged trade secrets from information already known to persons in the field[.]" *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 836 (2005).  Likewise, in *Brescia v. Angelin* the court similarly noted a finely detailed trade secret disclosure.  See *Brescia v. Angelin*, 172 Cal. App. 4th 133, 148, 151 (2009) (plaintiff puts forth expert testimony and further "particularly described the details of his pudding formula . . .listing the 15 specific ingredients by common name and the percentage of the total pudding. . . list[ing] the same 15 ingredients by their supplier and brand name [and] particularly describe[ing] each step in the mixing, testing, and code marking of the pudding.").

Needless to say, Loop has not identified anything so particular as the Advance Modular or Brescia plaintiffs; nor has Loop introduced expert testimony as those plaintiffs did.  Nor has Loop advised how its trade secrets can be distinguished from information already known to those in the field,  which what a proper trade secret disclosure requires. See *Perlan Therapeutics*, 178 Cal. App. 4th at 1346.

Loop contends that it has properly disclosed its trade secrets, citing to *Lilith Games (Shanghai) Co. v. uCool, Inc.* No. 15-01267, 2015 U.S. Dist. LEXIS 89365 (N.D. Cal. July 9, 2015) in support of Loop AI's position that it has made adequate disclosure. Lilith does not support Loop's position as Loop has not provided any specificity as to the trade secrets in this case, let alone differentiated between trade secrets and confidential information. Lilith was a case involving copyrighted software code for videogames, wherein it was alleged that 240,000 lines of software code embodied in plaintiff's videogame were trade secrets that were misappropriated. In addition to providing specifics as to the software code in the complaint, the plaintiff in Lilith provided additional information showing how its trade secret differed from other source code embodied in its game, and provided detailed information as to formation of the trade secret code. As stated by Judge Conti, the disclosure by plaintiff in Lilith included "facts, supported by Mr. Zhang's declaration, describing Lilith's alleged trade secret in the Sword and Tower code. The disclosure included information regarding the steps taken by Lilith to develop Sword and Tower, how Lilith's employees authored approximately 240,000 lines of Lua code to implement Lilith's development efforts, how the particular code embodied in Sword and Tower is unique to Lilith and not generally known, and a description of Lilith's efforts to keep its Lua code confidential." Loop AI has not made any such detailed disclosure of its trade secrets.

Loop also relies on *Prolifiq Software Inc. v. Veeva Sys.,* No. 13-03644, 2014 U.S. Dist. LEXIS 77493 (N.D. Cal. June 4, 2014) in support of its position that it has met its disclosure obligations. Again, the case of *Prolifiq* is distinguishable from the situation at hand where Loop AI has made no disclosure. In *Prolifiq* it was agreed that plaintiff had sufficiently identified what it considered to be its trade secret, and the issue presented dealt with the merits

of whether the information disclosed constituted trade secrets – an issue that cannot be addressed by way of CCP Section 2019.210.

Loop must comply with CCP Section 2019.210, and provide disclosure of its trade secrets with specificity and in accord to guidelines set forth above, prior to initiating or compelling any further discovery.

### E.     Loop may not engage in discovery until it has adequately disclosed its trade secrets

As courts within this district have noted, one major purpose of § 2019.210 is to protect against "litigation . . . becom[ing] a tool to force a defendant to reveal its own trade secrets in defense against unfounded or specious claims." *Zynga*, 2012 WL 2203063, at *2.  To that end, § 2019.210 precludes trade secret plaintiffs from taking any discovery until the statute is complied with.  See, e.g.  *Jobscience, Inc. v. CVPartners, Inc*., U.S. Dist. LEXIS 26371 at*5 (where § 2019.210 is deficient, "[p]laintiff may not take any discovery *at all* until a satisfactory statement has been filed") (emphasis in original); *Perlan Therapeutics*, 178 Cal. App. 4th at 1353 ("plaintiffs should be required to provide more details pursuant to section 2019.210 before plaintiffs are able to commence discovery"); *Agency Solutions.Com*, 819 F. Supp. 2d at 1015 (pursuant to § 2019.210, "a California trade secrets plaintiff must, prior to commencing discovery identify the trade secret with reasonable particularity.") (quotation omitted); see also *Switch Commc'ns Grp. v.Ballard*, 2012 WL 2342929 (D. Nev. June 19, 2012) (denying discovery on both copyright and trade secret claims until satisfactory trade secret disclosure is made pursuant to Uniform Trade Secrets Act).  This is necessary in order to effect the intended results of § 2019.210.  If a defendant is free to take discovery on other claims, particularly where, as here, the claims share an operative nucleus of facts, then the requirements of § 2019.210 become meaningless.  Instead, courts must stay all discovery by the trade secret

plaintiff until an adequate, particularized, disclosure is made.   Despite request,   Loop has failed to provide any case authority supporting its contention that discovery is not stayed as to claims other than the CUTSA claim.   Jobscience is clear in its directive that *all* discovery is stayed. Loop's additional argument that defendants already know the trade secrets falls similarly flat;  "'[a] true trade secret plaintiff ought to be able to identify, up front, and with specificity the particulars of the trade secrets without any discovery.' *Jobscience, Inc. v. CVPartners, Inc.*, No. 13-cv-04519 WHA, 2014 U.S. Dist. LEXIS 26371, 2014 WL 852477, at*5 (N.D. Cal. Feb. 28, 2014*)."  AMEC Env't & Infrastructure, Inc. v. Integral Consulting, Inc.*, 2014 U.S. Dist. LEXIS 120999 (N.D. Cal. Aug. 28, 2014).   Further, there is no case law supporting Loop's claim that despite inadequate trade secret disclosure,   the proper method of obtaining such disclosure is through discovery propounded to Loop.

Therefore, in addition to being compelled to produce the requisite particularized trade secret disclosure, Loop must also be barred from serving further discovery or moving to compel responses to discovery until it complies with any trade secret production order issued pursuant to this motion.

**CONCLUSION**

For the foregoing reasons, IQS respectfully requests that the Court grant its Motion to Compel Trade Secret Particularization, compelling Loop to disclose its trade secrets with adequate particularity, and barring Loop from taking discovery until such productions are made.  In light of the position taken by Loop,  moving party request that the Court provide Loop with directive as to what must be included in its trade secret disclosure.

Dated: October 2, 2015               By:     /S/   Janet Brayer_____
                                              JANET BRAYER
                                              Attorneys for Defendant IQSYSTEM, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of October, 2015, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all counsel of record by operation of the Court's ECF system.

LAW OFFICES OF JANET BRAYER

By:    /S/   Janet Brayer_____
        JANET BRAYER
        Attorneys for Defendant
        IQSYSTEM, INC.