

**HEALY**LLC

154 Grand Street
New York, NY 10013
T: 212.810.0377
F: 212.810.7036
www.healylex.com

Valeria Calafiore Healy
vch@healylex.com

October 5, 2015

By ECF

The Honorable Donna M. Ryu
United States District Court
Northern District of California
1301 Clay Street, Courtroom 4
Oakland, California 94612

    Case No.: *Loop AI Labs Inc. v. Anna Gatti et. al.*,
        **3:15-cv-00798-HSG-DMR**

| | |
|---|---|
| **RE:** | Defendant Gatti/IQSystem LLC's Request for Motion for Protective Order Regarding 5 Subpoenas. |
| **Submitted by:** | Thomas LoSavio, Esq., Low Ball and Lynch P.C., counsel for Defendants Gatti and IQSystem LLC by<br>Valeria Calafiore Healy, Esq., Healy LLC, counsel for Plaintiff Loop AI Labs Inc. |
| **Meet & Confer Date:** | September 24, 2015 |
| **Case Mgmt Deadlines:** | Fact discovery ends January 29, 2016.  Dkt. No. 105.<br>Expert discovery due March 18, 2016.  *Id.*<br>Dispositive motion due March 31, 2016.  *Id.*<br>Pretrial conference set for June 28th, 2016.<br>Trial begins July 11, 2016.  *Id.* |

Dear Judge Ryu:

      This is a joint discovery letter brief regarding Defendant Gatti ("Gatti") and IQSystem LLC's ("IQS") Motion for a Protective Order relating to aspects of five (5) Subpoenas duces tecum issued by Plaintiff Loop AI Labs, Inc. ("Loop AI") to: AT&T, Bank of the West, Carr & Ferrell, LLP (a law firm), Google (Gatti's former employer) and WI Harper Group (a China-US venture capital firm).  The Subpoenas are attached as Exhibits 1-5.

**Meet and Confer Attestation:**  Counsel Gatti attests that he attempted to meet and confer with counsel for plaintiff via telephone on 9/25/15 (twice), 9/28/15 and 9/29/15.[1]

**Issue 1: ATT Subpoena  - Gatti's Position**   — This subpoena seeks, among other things. "text or other data messages and data transfers" of Anna Gatti and IQSystem, LLC for the time period from March 1, 2013 through the present.  The subpoena is objected to as overbroad as to time and scope and calls for documents not relevant to any party's claim or defense nor relevant to the subject matter of this dispute nor reasonably calculated to lead to the discovery of admissible evidence. It potentially calls for attorney-client communications and documents protected by the California right of privacy. In addition, Plaintiff has alleged a trade secret misappropriation under the California Uniform Trade Secret Act ("CUTSA"), Cal. Civil Code section 3426 et seq., but has failed to identify the trade secret(s) with reasonable particularity prior to commencing discovery as required by Cal. Civ. Proc. Code § 2019.210.  The element "to the present" calls for communications after any allegation of the Second Amended Complaint ("SAC") and is, therefore, overbroad as to time. The element "text or other data messages and transfers" is without limitation and calls for communications, for example, between Gatti and her physician or Gatti and her counsel. F.R.C.P.(b)(1).  Loop AI must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade." *Universal Analytics v. MacNeal-Schwendler Corp.*, 707 F. Supp. 1170, 1177 (C.D. Cal. 1989) (citation omitted), aff'd, 914 F.2d 1256 (9th Cir. 1990).

      **Gatti Proposed Compromise**: Limit the time period to that alleged in the SAC (June 1, 2012) to the date of filing the complaint (February 23, 2015).  Limit the scope to documents concerning Loop and the Almaviva Defendants. Exclude documents between Gatti and her counsel and between counsel for Almaviva and Gatti when acting as employee of Almaviva. Loop to promptly provide "(1) a summary of the specific trade secret; (2) the background of the trade secret and a description of how each secret has derived independent, actual or potential economic value by virtue of not being generally known to the public; (3) a description of how each secret has been the subject of reasonable efforts to maintain its secrecy; and finally (4) each of the precise claimed trade secrets, numbered, with a list of the specific elements for each, as claims would appear at the end of a patent," as set forth in *Jobscience, Inc. v. CVPartners, Inc.*, N.D. Cal. 2014 LEXIS 64350.

**Issue 1 — Loop AI's Position:**  Gatti/IQS assert general boilerplate objections to the single document request made in the subpoena *duces tecum* issued to AT&T (the "AT&T Subpoena").

---

[1] Counsel for Loop AI attests: That her associate, Ms. Wong, met and conferred by telephone with Mr. LoSavio, on 9/24/15.  During the meet and confer, Mr. LoSavio declined to discuss Ms. Wong's queries regarding each of his objections and ultimately hung up the phone on Ms. Wong.  A recording of the call can be provided to the Court upon request.  Mr. LoSavio was informed that counsel for Loop AI's office was closed on 9/25/15, but nevertheless Ms. Wong agreed to meet and confer a second time at a time requested by Mr. LoSavio.  However, Mr. LoSavio declined to answer the phone at the appointed time.  On 9/29/15, Ms. Wong again wrote to Mr. LoSavio's asking him for any specific issues that needed to be discussed by telephone regarding the subpoenas.  Mr. LoSavio did not respond.

*See* Ex. 1. Gatti argues generally and without any explanation that the request (1) is "overbroad as to time and scope," (2) "calls for attorney-client communications," (3) calls for documents "protected by the California right of privacy" and (4) violates "Cal. Civ. Proc. Code §2019.210." ECF 205 at 4. The objections are so general that Gatti fails to even identify which of the telephone numbers in question is hers or IQSystem LLC's or how each objection applies to the respective numbers. Gatti and her co-conspirators were using the numbers at issue to engage in the transactions that are part of the scheme alleged in the complaint, as amended. *See* ECF 210. Part of that scheme continues to date, and, as alleged in the Second Amended Complaint ("SAC"), Gatti has continued to improperly solicit Loop AI's confidential investors and advisors by telephone and text messages as recently as a few weeks ago. *See id.* at ¶143. The limitation proposed by Gatti would allow her to conceal her ongoing wrongdoing, whereas production would not prejudice her in any way, since the records can all be protected as Attorney's Eyes Only or confidential. Moreover, throughout Gatti's tenure at Loop AI, Gatti repeatedly claimed she was going to the doctor, to the school, or attending to various other purportedly compelling family, medical or other needs to justify her repeated disappearances. *See, e.g., id.* at ¶169. By using requests for accommodation of her family and medical needs (among others) as purported excuses for her disappearances while she was supposed to work full time for Loop AI, she cannot now shield from discovery the metadata of the phone records that would confirm her true whereabouts and activities during the times in question. Particularly since Gatti has brought a counterclaim against Loop AI purporting to demand even more money than she was already paid for her alleged service while at Loop AI, there can be little question that Loop AI has a right to prove what she was actually doing during her tenure and how she has continued to misuse and interfere with Loop AI's investors, service providers, advisors, witnesses, and others by continuously contacting them until as recently as a few weeks ago. The AT&T Subpoena is narrowly tailored and within the scope of Loop AI's discovery rights.[2]

As to Gatti's assertion that the Subpoena would breach her privacy or privilege because it would provide the content of communications with doctors or lawyers, that argument is without any basis in fact or law. Mr. LoSavio has advised the Court that he has 44 years of practice. *See* ECF 216 at 2. He is unquestionably aware, therefore, that civil subpoenas to service providers or carriers such as ATT **do not return any text content.** Nor does Loop AI's subpoena ask for the content of any messages. To obtain content from ATT or other service providers, a warrant would be necessary. In civil cases, it is not possible to obtain such content directly from carriers or service providers. Rather, subpoenas of the type issued by Loop AI result in productions of charts of metadata, *i.e.*, a list of technical data of the date/time the call was made or received, the numbers called, and other *technical* data.[3] Disclosure of such data (i.e., not including the contents of communications) is expressly permitted by the Stored Communications Act,[4] and is common in civil litigation of the type at issue here. *See, e.g., Chevron Corp. v. Donziger*, No. 12-80237, 2013 U.S. Dist. LEXIS 119622, at *32 (S.D.N.Y. Aug. 22, 2013) (analyzing California law). Because the data produced by ATT would reveal no text content it could never infringe on the rights invoked by the Defendants, even if those rights applied in this case. They do not. *See id.* Courts have "reject[ed] the assertion

---

[2] Pursuant to Federal Rule of Civil Procedure 26(b), a party may obtain discovery concerning "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevancy, for the purposes of discovery, is defined broadly…" *See* ECF 203 at 9. "The party who moves to quash a subpoena bears the burden of persuasion under Rule 45(c)(3)." *Id*. *In re Seagate Tech. II Sec. Litig.*, 1993 U.S. Dist. LEXIS 18065, *2-3 (N.D. Cal. June 10, 1993) ("Discovery is not to be arbitrarily limited because it is intended to help clarify the issues.").

[3] Loop AI can provide the Court an example (from another case) of the type of data that ATT furnishes in response to subpoenas such as that issued by Loop AI here.

[4] *See* 18 U.S.C. 2702(c)(6)(an electronic communication service provider "may divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications…)… to any person other than a government entity.").

2

of privacy rights derived from the California constitution because state privilege law does not apply in federal question cases, but rather federal law governs even state law claims that are pendent to federal question cases." *Thomas v. Hickman*, No. 06-00215, 2007 U.S. Dist. LEXIS 95796 (E.D. Cal. Dec. 5, 2007). "It is well established that a reasonable expectation of privacy extends only to the content of telephone conversations, not to records that indicate that the conversations occurred…[T]here is no expectation of privacy in call origination, length and time of call because no content information is involved)." *Kamalu v. Walmart Stores, Inc.*, No. 13-00627, 2013 U.S. Dist. LEXIS 116590, 12-13 (E.D. Cal. Aug. 15, 2013), *citing United States v. Lustig*, 555 F.2d 737, 747 n.10 (9th Cir. 1977) and *United States v. Reed*, 575 F.3d 900, 914-15 (9th Cir. 2009). Finally, even though ATT records do not reveal any text data, Loop AI has no problem marking any data received as Attorneys-Eyes Only.[5]

Gatti's objections based on Cal. Civ. Proc. Code §2019.210 are meritless and inappropriate to block a response to a Subpoena in this manner. The lack of merit of this argument is perhaps best demonstrated by the fact that, while Gatti claims discovery is stayed, the Defendants (including Gatti) have issued dozens of discovery requests to Loop AI, which apparently they do not believe to be stayed. The Court has already issued a Case Management Order specifically ordering discovery to go forward. *See* ECF 105. Gatti's counsel's objections to discovery at the Case Management hearing were overruled.[6] If Gatti believes discovery should be stayed in this case it can file a motion for a stay of discovery, or join in IQSystem Inc.'s pending motion, giving Loop AI a full opportunity to be heard on the matter.

**Issue 2: Google Subpoena – Gatti's Position:**

A) **Category 1** of this subpoena seeks, among other things, Gatti's complete personnel file concerning her "employment with Google, Inc. ("Google") and Youtube, Inc. ("Youtube")". This category is objected to on the same grounds as in #1 above. Authorities relied on are as cited in #1 above, with the addition of *El Dorado Savings & Loan Assn. v. Superior Court* (1987) 190 C.A.3d 342 (employment records are protected by the California Constitutional right of privacy).

B) **Category 3** of this subpoena seeks documents regarding "any application for unemployment benefits made by Ms. Gatti". This category is objected to on the same grounds as in #1 above. Authorities relied on are as cited in #2A above.

**Gatti Proposed Compromise as to 2A and 2B**: withdraw the existing subpoena and re-issue it with respect to categories 2 and 4 only. Loop to promptly provide trade secret information per Compromise at #1 above.

**Issued 2 — Loop AI's Position:** Gatti's objection to 2 of the 4 document requests sought by the subpoena *duces tecum* issued to Google, Inc. ("Google Employment Subpoena") also lack merit. *See* Ex. 2. Gatti has not identified any specific privacy rights nor cited any legal authority to

---

[5] **Proposed Compromise**: Loop AI agrees to designate any materials received in response to this Subpoena as Attorney's Eyes Only and to confer with Gatti's counsel to the extent Loop AI believes such designations to be inappropriate for any aspect of the production.

[6] In addition, nowhere in the case cited by Gatti does the court state that a stay of discovery is appropriate. *See Universal Analytics v. MacNeal-Schwendler Corp.*, 707 F. Supp. 1170 (C.D. Cal. 1989). In fact, in that case, discovery had concluded and the court was ruling on the party's motion for summary judgment. Indeed, discovery has not and cannot be stayed on the remaining 16 causes of action alleged by Plaintiff simply because one is a trade secret misappropriation claim. Furthermore, the Court already made clear at the first hearing before Judge Gilliam that if any party argues that there is a stay in discovery, that party must first seek the Court's concurrence. *See* May 26, 2015 Hearing Tr., ECF 111 at 15:2-7 ("And from my point of view, if a stay is sought, it needs to be moved … it's my perspective that if any party is asserting that discovery is stayed, they need to seek -- seek the Court's concurrence with that."). The Court has not issued any stay.

substantiate her privacy arguments.  Gatti's employment records are critically at issue in this case, as fully detailed by the Complaint, as amended, in which Gatti is accused of having fraudulently induced the company into giving her a large percentage of shares and a high salary on the basis of her fraudulent employment and academic history.  That employment history, included numerous aspects of her purported employment at Google/Youtube, as well as her compensation and the reasons why she left that employment.  *See* SAC at ¶¶11, 275.  Loop AI respectfully requests permission to make an offer of proof regarding this matter if the Court deems necessary.  Moreover, the Ninth Circuit "has held that personnel files are discoverable in federal question cases…" *Garrett v. San Francisco*, 818 F.2d 1515, 1519 (9th Cir. Cal. 1987).  Particularly, in this case, where Gatti's fraudulent representations regarding her credentials, qualifications and past employment are at the core of several of Plaintiff's claims (e.g. fraud in the inducement and breach of contract), *see* SAC at ¶¶11, 258, 261, 275, 289.  Gatti's personnel files are highly relevant and are subject to discovery.  As set forth supra, n. 5, Loop AI agrees to designate all production received under this Subpoena as AEO and to meet and confer with Gatti's counsel about downgrading any confidentiality designation that may be inappropriate.

**Issue 3: WI Harper Subpoena — Gatti's Position:**

      A) **Category 3** of this subpoena seeks all documents "including the name Anna Gatti or Anna or Gatti or any of Ms. Gatti's contact information."  This category is objected to on the same grounds as in #1 above. Authorities relied on are as cited in #1 above.
      B) **Category 4** seeks all text messages "between anyone at Wi-Harper and Anna Gatti". This category is objected to on the same grounds as in #1 above. Authorities relied on are as cited in #1 above.
      C) **Category 6** seeks all "social media messages, incoming and outgoing, sent by Anna Gatti or to Anna Gatti from anyone at Wi-Harper." This category is objected to on the same grounds as in #1 above. Authorities relied on are as cited in #1 above.
      D) **Category 16** seeks, among other things, all documents relating to IQSystem LLC. This category is objected to on the same grounds as in #1 above. Authorities relied on are as cited in #1 above.
      **Gatti Proposed Compromise as to 3A-3D**: Limit the time period in these categories to that alleged in the SAC (June 1, 2012) to the date of filing the complaint (February 23, 2015).  Limit the scope to documents concerning Loop and the Almaviva Defendants. Loop to promptly provide trade secret information per Compromise at #1 above.

**Issue 3 — Loop AI's Position:**  Gatti lacks any standing to object to any aspect of the Subpoena issued to the WI Harper Group, Inc. ("WH Subpoena").  *See* Ex. 3.  WI-Harper was one of the Loop AI's business relationships destroyed by Gatti, and which is critically at issue in the complaint.[7]  *See* SAC at ¶¶127-131, 181-183, 275, 279, 320, 328, 331, 332.  Although it is not surprising that Gatti wants to shield from discovery the contents of her communications with Wi-Harper, she lacks any standing to do so.  Indeed, this entity is one of the ones that Gatti improperly continued to solicit after she was terminated in violation of Loop AI's contractual and other rights, as fully alleged in the Complaint, as amended.  *Id.*  Accordingly, Gatti's objections should be denied in its entirety.

Gatti's objections are particularly incongruous in light of the fact that the Almaviva Defendants, who work jointly with Gatti's counsel, have already issued a Subpoena to Wi-Harper and obtained records in response, which undoubtedly have been provided to Gatti's counsel.   The

---

[7] Matters relating to this company are highly confidential and Loop AI respectfully requests permission to make an offer of proof on this matter under seal.

Defendants obtained those records without issue because Loop AI did not seek to obstruct the discovery process by running to the Court to object over every aspect of discovery and getting an emergency ex-parte stay.  The Defendants and Wi-Harper have refused to produce copies of what was produced to the Defendants.  Despite this history, Gatti has the audacity to falsely claim to the Court this subpoena was improper and obtain an ex-parte order restraining compliance with the Subpoena.  That type of conduct, respectfully, is sanctionable.  In addition, as alleged in the Complaint, Defendant Gatti has stolen from Loop AI the vast majority of records relating to Wi-Harper, including a large number of records and communications relating to Loop AI and that she was transmitting from her personal email, and are therefore not accessible to Loop AI.  *Id.*  The Subpoena issued by Loop AI is clearly appropriate and should never have been objected by Gatti.

Gatti has no standing to make objections, has not identified any privacy rights nor provided any legal support for her claims of privacy with Wi-Harper, and has no basis to claim that there is a stay on all discovery.  *See supra.*  The disputed document requests are clearly relevant to this action as they all relate, among others, to Gatti's improper communications and deliberate efforts to sabotage Loop AI's fundraising efforts from its potential investor as alleged in the complaint.  *See e.g. id.* at ¶¶31, 124-130, 275, 291. The various means of communications are requested because, as alleged in the SAC, Gatti uses a mixture of in-person meetings, teleconference meetings, telephone calls, emails, text messages, and social media messages to conceal her fraudulent activities.  *See e.g. id.* at ¶143.  Further, Gatti's proposed compromises—limiting the responsive time period to June 1, 2012 through February 23, 2015, to documents concerning Loop AI and the Almaviva Defendants, and demanding that Plaintiff first provide a list of trade secrets—are designed to avoid production of relevant documents to Plaintiff.  Importantly, Gatti asserted no objections to much broader document requests in the subpoena *duces tecum* the Almaviva Defendants issued to WI Harper, demanding unrestricted production of "ALL DOCUMENTS RELATING TO Anna Gatti."  This subpoena issued to Wi-Harper by the defense in this case can be provided to the Court for review.  Gatti simply has no basis to now argue that Loop AI is not entitled to the same documents obtained by the Almaviva Defendants.

**Issue 4: Carr & Ferrell LLP Subpoena — Gatti's Position:**

A) **Category 1** of this subpoena seeks, among other things, all engagement letters between this law firm and Anna Gatti and IQSystem, LLC.  This category is objected to on the same grounds as #1 above as well as attorney work-product privilege.
B) **Category 2** of this subpoena seeks all documents "from the files of Jeffrey Capaccio".  This category is objected to on the same grounds as #1 above as well as attorney work-product privilege.
C) **Category 3** of this subpoena seeks all documents regarding IQSystem, LLC.  This category is objected to on the same grounds as #1 above as well as attorney work-product privilege.
D) **Category 4** seeks, among other things, "all documents….to Jeff Capaccio from Anna Gatti…any of the of the ISQ Defendants". This category is objected to on the same grounds as #1 above as well as attorney work-product privilege.
E) **Category 5** seeks all documents "referring to …IQS Defendants goals for You in connection with your work".  This category is objected to on the same grounds as #1 above as well as attorney work-product privilege.
F) **Category 6** seeks all documents "received from or sent to Ms. Gatti from March 1, 2013 to the present."  This category is objected to on the same grounds as #1 above as well as attorney work-product privilege.
G) **Category 9** seeks "all documents and communications by or to Jeff Capaccio relating to or discussing (sic)".  This category is unintelligible.

H) **Category 10** seeks all documents "by or to Jeff Capaccio regarding any aspect of this litigation". This category is objected to on the same grounds as #1 above as well as attorney work-product privilege. Authorities relied on for 4A-4H are as cited in #1 above and Cal. Ev.Code §950-955.

**Gatti Proposed Compromise at to 4A-4H**: Limit the time period in these categories to that alleged in the SAC (June 1, 2012) to the date of filing the complaint (February 23, 2015). Limit the scope to documents excluding Gatti attorney-client communications and documents containing attorney work-product. Limit the scope to documents concerning Loop and the Almaviva Defendants but excluding attorney-client privileged documents between Almaviva's counsel and Gatti as Almaviva's agent and other Almaviva agents/employees.

**Issue 4 — Loop AI's Position:** Gatti/IQS fail to provide any basis for their objections to the Carr & Ferrell LLP subpoena ("CF Subpoena"). *See* Ex. 4. Carr & Ferrell is the employer of Jeff Capaccio, who is alleged to be a co-conspirator with Gatti and the other defendants in the scheme at issue in the case. *See* ECF 210 ¶¶ 53, and page 61-63; ECF 28-4 to 28-7; ECF 199-6 at 10-17; Exhibit A to CF Subpoena. Loop AI respectfully seeks leave to make an offer of proof regarding Jeff Capaccio's involvement in the scheme and his use of the Carr & Ferrell email to communicate about the scheme. Neither Gatti nor IQSystem LLC have any basis to object. They do not, and cannot, allege that they ever retained Carr & Ferrell as counsel for any matter, and in any event the evidence would prove to the contrary. Jeff Capaccio and Tony DiNapoli used a specific modus operandi, including the payment of bribes and techniques for forcing start-up companies with valuable technology into bankruptcy if they refused to sell themselves as requested. *See, e.g.,* ECF 28-5 and 28-6. Loop AI alleges in this case, that Jeff Capaccio and Tony DiNapoli were hired to work under the cover of Gatti's newly created corporations to provide the same services as part of the scheme alleged in this case. SAC at ¶¶1, 28, 48, 53, 117, 196, 211-213. Neither Gatti nor IQSystem have any basis to block production of documents that are not only highly relevant but critical to this case. Some additional specific responses to the objections are set forth below.

**Request No. 1 –** This request calls for engagement letters between Carr & Ferrell and Anna Gatti and IQSystem LLC. The Ninth Circuit Court has found that engagement letters are generally not privileged. Loop AI believes no records responsive to this category actually exist, because Jeff Capaccio is alleged to have been working as a purported business development consultant in the context of the scheme alleged in this case and not as a lawyer. *See* ECF 199-6 at 10-7, SAC at ¶¶211-213. Loop AI is ready to make an offer of proof to the Court to substantiate this point with evidence.[8] In addition, "[a]s a general rule, client identity and the nature of the fee arrangement between attorney and client are not protected from disclosure by the attorney-client privilege." *United States v. Blackman,* 72 F.3d 1418, 1424 (9th Cir. 1995). *See also Pickard v. United States, (In re Grand Jury Subpoena Duces Tecum)*, 94 Fed. Appx. 495 (9th Cir. 2004). Furthermore, the Court has stated if a party seeks to withhold documents on privilege grounds, such party must provide a privilege log. *See* ECF 203 at 12. No privilege log has been provided.

**Request Nos. 2, 4, and 10 –** These requests call for documents "from the files of Jeffrey Capaccio" regarding Loop AI, the Defendants and their co-conspirators including payment records and other aspects of the allegations made in this litigation. Gatti has no basis to object to this request on relevance, no standing to object on overbreadth, no legal grounds to object on privacy, and has produced no privilege log supporting any assertion of privilege. *See supra*.

**Request Nos. 3, 5, and 6 –** These requests call for documents related to the work IQSystem LLC and IQSystem Inc. (together the "IQS Defendants") requested Carr & Ferrell to perform for or on behalf of the Almaviva Defendants and other entities. These matters are directly at issue in this

---
[8] The Court's Standing Order bars submission of evidence and Loop AI has no way of providing the court evidentiary support unless it is granted leave to submit evidence.

case. *See, e.g.,* SAC at ¶¶ 1, 26-28, 70, 72, 211-213. Gatti has no basis to object on relevance grounds, no standing to object on overbreadth, no legal grounds to object on unidentified rights of privacy, and has produced no privilege log to assert privilege. *See supra.*

Gatti's proposed compromises unduly limit the production of crucial and relevant information. Loop AI has already narrowly tailored the CF Subpoena to the relevant time period. As alleged in the SAC (and as already shown to the Court through certain evidence filed at ECF 28-5 and 28-6, Jeffrey Capaccio had an established modus operandi that he implemented with DiNapoli (Gatti's boyfriend and later began to work through IQSystem) and he used his firm's email address for the communications in question. That modus operandi was successfully used by Capaccio and DiNapoli well before June 2012 and is alleged by Loop AI in the Complaint to be continuous and ongoing. *See, e.g.* SAC ¶¶211-213, 228-231. Loop AI does not have sufficient space here to address in detail and provide argument regarding every aspect of every request and accordingly respectfully seeks leave to submit full briefing regarding this aspect of the Subpoena.

### Issue 5: Bank of the West Subpoena —Gatti's Position:

A) **Category 1** requests, among other things, at **subcategory (a)** "documents sufficient to identify any bank accounts or other account or service…..in the name of Anna Gatti" and (b) IQSystem LLC".

B) **Category 2** requests "all documents and communications between any representative of BOTW and Gatti from March 1, 2013 to the present."

C) **Category 7** seeks all documents "relating to the cash pick-up discussed by Anna Gatti with Elbgal Hazim".

D) **Category 8** seeks all documents between, to, by 6 named individuals "and Anna Gatti from March 1, 2013 to the present."

E) **Category 9, at subsections (2) and (3),** seeks "all forms, applications or request submitted to BOTW by or on behalf of….(2) the IQS Entities (3) Gatti in connection with the opening of any account or the request for opening any account."

F) **Category 10, by reference to Request 1(a) and 1(c),** seeks "records of all checking and/or savings accounts, certificates of deposits, and other saving instruments of any accounts identified above in response to Request 1….for the period from January 1, 2014 to the present."

G) **Category 11** seeks, among other things, "all records of physical entry by Anna Gatti…at any BOTW branch from January 1, 2014, to the present, including any access to any safe deposit boxes…".

H) **Category 13** seeks, among other things, "all documents…by or between BOTW employee John Gonzales and anyone else at BOTW relating to…Gatti during the period February 23, 2015, to the present."

I) **Category 14** seeks, among other things, "all documents…by, among or involving Vincenzo Mitolo or any other individual identified herein regarding…..Gatti…during the period February 20, 2015 to the present." Categories 5A-5H are each objected to on the same grounds as in #1 above. Authorities relied on are as cited in #1 above for 5A-5H. In addition, personal financial information is protected by the California right of privacy. *City of Carmel-by-the-Sea v Young* (1970) 2 Cal.3d 259.

**Proposed compromise**: Limit the time period in these categories to that alleged in the SAC (June 1, 2012) to the date of filing the complaint (February 23, 2015). Limit the scope to documents excluding confidential financial information of Gatti and IQSystem LCC and excluding communications between them and their banker. Limit the scope to documents concerning Loop and the Almaviva Defendants. Loop to promptly provide trade secret information per Compromise at #1 above.

**Issue 5 — Loop AI's Position:** Loop AI respectfully seeks leave to submit full briefing to respond to the objections submitted in respect of the subpoena issued to Bank of the West ("BOTW Subpoena"), *see* Ex. 5, because it does not have sufficient space to respond here to the arguments raised by Gatti. This Subpoena is of critical importance, because, as alleged in the SAC, it provides Loop AI the ability to compile a proper record regarding Gatti's financial transactions which are at issue in the SAC, as well as Gatti's use of certain bankers at Bank of the West to assist her with certain activities relating to the Almaviva Defendants, such as the event at the Italian Consulate which is at issue in the case, as well as various meetings with other investors that Gatti was not permitted to undertake on behalf of other entities. *See, e.g.* SAC at ¶¶27, 43, 50, 103, 151-154, 194, 234. The information produced can all be protected by Attorney's Eyes Only confidentiality. More specific responses to the objections are set forth below:

**Request Nos. 1, 9, 10:** These requests call for the identification of the bank accounts of the Gatti Defendants at the Bank of the West ("BOTW") and the documents associated with opening such accounts. The Defendants are alleged to have been secreting money they have gained from their wrongdoings. *Id.* Documents responsive to these requests are relevant to the identification of all their accounts. Gatti has failed to explain why the simple identification of bank accounts is overbroad, irrelevant, protected by privacy or stayed based on Plaintiff's CUTSA claim. The case cited by Gatti simply has nothing to do with a discovery request by a plaintiff to a defendant seeking clearly relevant information.[9]

**Request Nos. 2, 7, 8, 11, 13:** These requests call for communications between Gatti and specific BOTW employees or representatives and specific instances of potential secreting funds masked as cash-pickups. These requests are specifically limited to their relevant time periods. Gatti has failed to explain why these requests are overbroad, irrelevant, protected by privacy or stayed based on Plaintiff's CUTSA claim. *See supra*.

**Request No. 14:** This request calls for documents "regarding Soshoma, or Loop AI, or Gatti" or other matters alleged from February 2015 to the present especially relating to Gatti's activities, since the commencement of this action, that are intended to improperly access Loop AI's accounts or to secret ill-begotten funds. These requests are specifically limited to relevant time periods. Gatti has failed to explain why these requests are overbroad, irrelevant, protected by privacy or stayed based on Plaintiff's CUTSA claim.

Gatti's proposed compromise to limit the requests to arbitrary time periods and to exclude all communications with BOTW's employees unduly limit the production of crucial and relevant information. BOW was one of several Loop AI's confidential service providers selected after substantial effort by Loop AI to develop and establish a relationship and assist it in its business. Instead, Gatti and the other defendants misappropriated this and other of Loop AI's relationships with its critical service providers and now seek to block discovery that would expose the full extent of their misappropriation. Loop AI's subpoena requests are already narrowly tailored to only specific employees and relevant time periods where possible. Gatti's unidentified rights of privacy and confidentiality, can be addressed by designating all production made by BOTW as Attorneys' Eyes Only. There will be no prejudice to Gatti/IQS if production is allowed, since everything can be designated AEO. By contrast, if discovery is not allowed Loop AI would be unable to obtain highly relevant documents relating to its claims in the case.

---

[9] *See Carmel-by-the-Sea v. Young*, 2 Cal. 3d 259 (Cal. 1970). *Carmel* is a declaratory relief action attacking the validity of a "financial interests public disclosure statute… by its terms applying to a myriad of public officers and employees." *Id.* at 261-262. This case is not related to public officers and employees. Instead, courts have held that there are "no federal common law privilege to the banking records sought" and have found that "privacy concerns can be mitigated by subjecting the banking records to a stipulated protective order that limits the use of the documents and the people with access to them." *Paws Up Ranch, LLC v. Green*, No. 12-01547, 2013 U.S. Dist. LEXIS 167174, *9-13 (D. Nev. Nov. 22, 2013).

Respectfully submitted,

*Guy Stilson*
*For*

Thomas LoSavio
LOW, BALL & LYNCH P.C.
*Counsel for Defendant Gatti and IQSystem LLC*


Valeria Calafiore Healy
HEALY LLC
*Counsel for Plaintiff Loop AI Labs, Inc.*

9