VALERIA CALAFIORE HEALY (*pro hac vice*)
HEALY LLC
154 Grand Street
New York, New York  10013
Telephone:     (212) 810-0377
Facsimile:     (212) 810-7036

DANIEL J. WEINBERG (SBN 227159)
FREITAS ANGELL & WEINBE *Jobscience* RG LLP
350 Marine Parkway, Suite 200
Redwood Shores, California  94065
Telephone:     (650) 593-6300
Facsimile:     (650) 593-6301

Attorneys for Plaintiff
Loop AI Labs Inc.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS INC., <br><br> Plaintiff, <br><br> v. <br><br> ANNA GATTI, et al, <br><br> Defendants. | CASE NO.: 3:15-cv-00798-HSG-DMR <br><br> **PLAINTIFF LOOP AI LABS INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO IOSYSTEM INC.'S MOTION TO COMPEL PARTICULARIZED TRADE SECRET DISCLOSURE AND FOR STAY OF DISCOVERY UNTIL COMPLIANCE WITH CA CCP SECTION 2019.210 FILED AT DKT. 232.** <br><br> Action Filed:  February 20, 2015 <br> Trial Date:  July 11, 2016 <br><br> Hon. Donna M. Ryu |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................1

RELEVANT BACKGROUND ...................................................................................................4

A.    The Complaint and The Loop AI Declarations Contain Clear Descriptions of the Trade Secrets at Issue. ................................................................................................................2

ARGUMENT .............................................................................................................................10

I.    Section 2019.210 Is A State Rule of Civil Procedure and Cannot Apply in Federal Court to Stay Discovery Which Has Already Commenced Pursuant to the Federal Rules of Civil Procedure and to the Court's Case Management Order .............................................10

II.    Even if Section 2019.210 Did Apply in Federal Courts, it Could Not Apply to Claims Other Than Loop AI's Claim for Misappropriation of Trade Secrets ...............................16

III.    Even if this Court Were To Apply Section 2019.210 to this Case, Loop AI Provided At The Inception of This Case a Detailed Trade Secrets Description, Which Exceeds the "Particularity" Requirement of Section 2019.210 .............................................................19

CONCLUSION .........................................................................................................................23

**TABLE OF AUTHORITIES**

**CASES**

Page

*Advanced Modular Sputtering, Inc. v. Superior Court.*,
        132 Cal. App. 4th 826 (Cal. App. 2d Dist. 2005) ..................................................18, 20, 22

*Agency Solutions.Com, LLC v. TriZetto Group, Inc.*,
        819 F. Supp. 2d 1001 (E.D. Cal. 2011) ...........................................................................19

*Brescia v. Angelin*,
        172 Cal. App. 4th 133 (Cal. App. 2d Dist. 2009) ...................................................19, 20, 22

*Burlington N.R. Co. v. Woods*,
        480 U.S. 1 (1987)............................................................................................................11, 13

*Erie R. Co. v. Tompkins*,
        304 U.S. 64 (1938) .........................................................................................................11

*Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*,
        No. 06-533, 2007 U.S. Dist. LEXIS 8870 (E.D. Cal. Jan. 29, 2007) ..............................12

*Goldberg v. Pac. Indem., Co.*,
        627 F.3d 752 (9th Cir. 2010)  .........................................................................................12

*Hanna v. Plumer*,
        380 U.S. 460 (1965) ......................................................................................................11

*Hilderman v. Enea Teksci, Inc.*,
        No. 05-1049, 2010 WL 143440, 2010 U.S. Dist. LEXIS 1527 (S.D. Cal. Jan. 8, 2010) ..15

*Hynix Semiconductor, Inc. v. Rambus, Inc.*,
        250 F.R.D. 452 (N.D. Cal. 2008)..................................................................................15

*Jobscience, Inc. v. CVPartners, Inc.*,
        No. 13-04519, 2014 U.S. Dist. LEXIS 26371 (N.D. Cal. Feb. 28, 2014) ...................18, 20

*Jobscience, Inc. v. CVPartners, Inc.*,
        No.13-4519, 2014 U.S. Dist. LEXIS 64350 (N.D. Cal. May 1, 2014).........................3, 21

*Loop AI Labs Inc v. Gatti, 2015*,
        U.S. Dist. LEXIS 117330, at *9 (N.D. Cal. Sept. 2, 2015) ..................................................3

*MAI Sys. Corp. v. Peak Computer, Inc.*,
        991 F.2d 511 (9th Cir. Cal. 1993) ..................................................................................21

*Metabolife Int'l, Inc. v. Wornick*,
        264 F.3d 832 (9th Cir. 2001)  ........................................................................................14, 15

*Neothermia Corp. v. Rubicor Med., Inc.*,
        345 F. Supp. 2d 1042 (N.D. Cal. 2004) ...........................................................................17, 20

*Perlan Therapeutics, Inc. v. Superior Court*,
 178 Cal. App. 4th 1333 (Cal. App. 4th Dist. 2009). ....................................................17, 22

*Prolifiq Software Inc. v. Veeva Sys.*,
 No. 13-03644, 2014 U.S. Dist. LEXIS 77493 (N.D. Cal. June 4, 2014)..........................22

*Shady Grove Orthopedic Ass., P.A. v. Allstate Ins. Co.*,
 559 U.S. 393 (2010)................................................................................11, 12, 13, 14, 15

*Solid Sys. CAD Servs. v. Total Risc Tech., Pty. Ltd.*,
 No. 12-3176, 2015 U.S. Dist. LEXIS 25791 (S.D. Tex. Mar. 3, 2015)...............................8

*Tessera, Inc. v. Advanced Micro Devices, Inc.*,
 No. 05-4063, 2013 U.S. Dist. LEXIS 8104 (N.D. Cal. Jan. 18, 2013) ............................17

*Vess v. Ciba-Geigy Corp. USA*,
 317 F.3d 1097 (9th Cir. 2003) .........................................................................................11

## STATUTES AND RULES

Cal. Code Civ. Proc. § 2019.210 ........................................................................... *passim*

Cal. Civ. Code § 3426.1(d) ..............................................................................................21

Cal. Code Civ. P. § 425.16(g) ...........................................................................................15

Fed. R. Civ. P. 16.............................................................................................10, 13, 14

Fed. R. Civ. P. 26.........................................................................................3, 12, 13, 14, 16

Fed. R. Evid. 408(a)(1)-(2) .................................................................................................5

Rules Enabling Act, 28 U.S.C. § 2072 ............................................................................13

Plaintiff Loop AI Labs Inc. ("Loop AI") respectfully submits this Memorandum of Law in Opposition to Defendant IQSystem Inc.'s ("IQSystem") Motion to Compel a Particularized Trade Secret Disclosure and For a Stay of Discovery filed on October 2, 2015 at Dkt. 232 (the "Motion").

## PRELIMINARY STATEMENT

This Motion is the latest attempt by the Defendants to continue delaying and obstructing discovery in this proceeding and to prejudice Loop AI in its ability to efficiently compile a record to present at the trial of this case. The Defendants take turns filing unfounded motions with the Court to impede discovery, duplicate proceedings, and obfuscate their egregious violations of the Case Management Order, while at the same time continuing to run the clock on Loop AI's ability to obtain discovery. Respectfully, this conduct must be brought to an end. After eight months of litigation, Loop AI has been able to obtain zero documents from the Defendants. This is an egregious abuse that cannot be tolerated and that has been highly prejudicial to Loop AI's ability to efficiently bring this case to trial.

The Defendants' latest excuse as to why Loop AI is not permitted to obtain discovery in this case is that discovery has been automatically stayed for Loop AI by operation of Section 2019.210 of the California Rules of Civil Procedure ("Section 2019.210"), which governs the "Methods and Sequence of Discovery," and specifically the "***commencement***" in certain cases pending in California state courts that involve a claim under the California Uniform Trade Secrets Act ("CUTSA"). *See* Cal. Code Civ. P. § 2019.210. Only IQSystem filed the Motion, but all Defendants have resisted discovery from Loop AI on that basis.[1] While IQSystem claims

---

[1] Counsel for Defendants Gatti and IQSystem LLC advised Loop AI that did not need to formally join in IQSystem's Motion, because IQSystem has taken the lead on this Motion and the other defendants can simply rest on the invocation of the alleged "automatic stay" proffered to Loop AI in lieu of discovery responses. When Loop AI asked for clarification as to why Gatti and Almaviva had sent discovery requests in light of the alleged "stay" he clarified that only

in its Motion that it seeks a prospective order staying discovery while the Court allegedly "compels" Loop AI to comply with Section 2019.210, as discussed above and below, IQSystem and the other Defendants have all already granted themselves a stay of discovery.[2]  Although the Defendants have been consistent in claiming that discovery in this case was, is, and should continue to be stayed, the grounds on which the Defendants have based their self-granted stay has been more of a moving target.

In May 2015, the Defendants argued to Judge Gilliam that discovery could not commence and was automatically stayed by operation of a state rule of civil procedure found in the California anti-SLAPP Statute.  They also asked Judge Gilliam, in the alternative, to enter a Case Management Order providing for multi-phase discovery.  On May 26, 2015, the Court rejected both arguments and ordered discovery to commence immediately, as set forth in its Case Management Order ("Order").  *See* Dkt. 105.  The Order, however, was insufficient to dissuade the Defendants from their belief that, despite Judge Gilliam's rejection of their position, discovery in this case was nonetheless stayed.  Thus, the Defendants simply proceeded to treat the Order as a nullity and refused to produce any discovery.  Most recently, the Defendants abandoned their argument that the discovery stay was grounded in the anti-SLAPP statute, and moved on to claiming, instead, that this alleged stay is effected automatically by another provision of the California Code of Civil Procedure — namely Section 2019.210.

Loop AI's ability to obtain discovery is stayed, but the Defendants are permitted to proceed with their own discovery.

[2] For instance, IQSystem has refused to respond to all discovery request propounded by Loop AI by asserting a general objection to *all* discovery titled "OBJECTION BASED ON STAY OF DISCOVERY."  *See* BW Decl, Exhibit A at 5-7.  IQSystem asserts that it "will not respond to any discovery request until Plaintiff identifies the trade secret with 'reasonable particularity,' *as discovery is stayed until such time*."  *Id.* at 7 (emphasis supplied).  The other Defendants have taken the same positions.  *See, e.g., id.,* Exhibit B at 1-2 (Almaviva S.p.A.'s objections on the grounds that Loop AI's discovery requests "seek information relating to the misappropriation of trade secrets that Loop has failed to specify with particularity;"  *Id.*, Exhibit C at 1-2 (same by Almawave S.r.l.); *Id.*, Exhibit D at 2 (same by Almawave USA Inc.); *Id.*, Exhibit E at 2 (same by Gatti); *Id.*, Exhibit F at 2 (same by IQSystem LLC).

2

As more fully set forth below, IQSystem's Motion fails for many reasons and should never have been brought.  First, IQSystem fails to bring to the Court's attention that its request for the application of Section 2019.210 — a state rule of civil procedure — in this federal proceeding is directly contrary to controlling precedent of the Supreme Court regardless of whether Section 2019.210 is in conflict or in harmony with Rule 26 or other Federal Rules of Civil Procedure.  Rule 26(d) expressly governs the "commencement" of discovery in a federal proceeding, and there is no basis for a change of Rule 26(d) based on Section 2019.210.  Moreover, if a basis for such a change exists, the time to invoke it was *before* discovery commenced, not four months *after*.  Here, IQSystem and the other Defendants submitted to the Court their proposed discovery plan and the Court issued the Case Management Order governing the commencement and continuation of discovery in this case.

Second, even if Section 2019.210 applied in this case — it does not — IQSystem fails altogether to explain the basis for its discovery stay, past and future, where 16 of the claims at issue in this action do not arise out of CUTSA, which is the only claim to which Section 2019.210 relates, even if this proceeding was in state court.  In particular, two of the main claims in this case arise under federal law, specifically the Racketeer Influenced and Corrupt Organization Act ("RICO") and the Computer Fraud and Abuse Act ("CFAA").  *See* Dkt. 210.  The Court has already held that CUTSA can have no effect on federal claims.[3]  IQSystem does not even attempt to explain how and why the California Code of Civil Procedure could or should govern the commencement of discovery of federal claims.  IQSystem also fails to provide any basis for its remarkable contention that Section 2019.210 would apply to Loop AI's pendent state law claims, which are brought under laws *other than CUTSA*.  There is none.  IQSystem's

---

[3] *See* Dkt. 185 at 5; *Loop AI Labs Inc v. Gatti*, 2015 U.S. Dist. LEXIS 117330, at *9 (N.D. Cal. Sept. 2, 2015) ("Gatti does not explain how CUTSA, a statute enacted by the state of California, could preempt claims under the federal causes of action asserted in the FAC. '[I]t is fundamental that state law cannot preempt a federal statute . . . . There is absolutely no authority for [the] erroneous contention that CUTSA in any way preempts federal law.'")

3

argument is especially frivolous in light of the fact that the Court has already found Loop AI's non-CUTSA "causes of action also arise from alleged misconduct besides misappropriation," Dkt. 185 at 6.

Third, even if Section 2019.210 applied in this case to Loop AI's CUTSA claim or otherwise, Loop AI has already more than sufficiently identified the trade secrets at issue in this action. If IQSystem was not satisfied with the descriptions already provided by Loop AI, under the Case Management Order and Rule 26, IQSystem was permitted to propound specific discovery requests seeking whatever additional information it claims it needs. IQSystem's contention that it is not required to propound discovery requests and that it can compel Loop AI to volunteer further information without a discovery request lacks any legal support and has resulted in another wasteful motion, and in further prejudicial delay to Loop AI's ability to proceed with discovery in this case. Discovery in this case *commenced more than four months ago*, after IQSystem and the other Defendants submitted their proposed discovery plan to the Court, which the Court took into consideration before issuing the Case Management Order that governs this action. Nothing in Section 2019.210 — which is limited to the "commencement" of discovery — permits IQSystem or the other Defendants to now claim, in the face of the Court's Order, that discovery is instead stayed and should not commence. IQSystem's Motion is baseless and should be denied in its entirety.

## RELEVANT BACKGROUND

As extensively detailed in Loop AI's complaint, this case arises out of the Defendants' illegal scheme to loot Loop AI — a scheme that has involved not only the Defendants' misappropriation of Loop AI's confidential information and trade secrets, but also multiple acts of fraud and other illegal activities, such as the payment of bribes to further the illegal scheme. *See* Dkt. 210 at ¶¶ 1-39. Although Section 2019.210 has no application in this federal proceeding, Loop AI has in fact already provided a detailed explanation of which trade secrets

and confidential information are at issue in this action. In an effort to avoid yet another Motion, Loop AI repeatedly asked IQSystem to propound a discovery request so that Loop AI could review exactly what information IQSystem was looking for and respond as appropriate. Loop AI also offered to compile in a single list all of the trade secrets already identified by Loop AI in separate filings, even though it has no obligation to do so, since IQSystem has not propounded any discovery requests to Loop AI. Loop AI made this offer solely to avoid another motion, not because there was any merit to IQSystem's position. IQSystem seized on Loop AI's good faith attempts to compromise as to the dispute to impermissibly argue in its Motion that Loop AI's offer established that Loop AI agrees it has been deficient in identifying its trade secrets. Nothing could be further from the truth. Loop AI's attempt to compromise was made simply in a good faith attempt to reach a resolution. Instead of accepting Loop AI's offer to resolve the matter without the Court's intervention, however, IQSystem advised Loop AI that it would nonetheless bring its Motion. IQSystem was not interested in resolving any issue. IQSystem, like the other Defendants, are engaged in a concerted effort to raise as many issues as possible with the Court to obfuscate their misconduct, impede Loop AI's ability to compile a proper record through discovery, and delay the trial of this case. IQSystem was ethically and procedurally barred from using Loop AI's good faith attempts to negotiate a compromise of this issue, as purported evidence supporting its Motion. *See, e.g.,* Fed. R. Evid. 408(a)(1)-(2) (prohibiting use of statements made during compromise negotiations). IQSystem's improper use and mischaracterization of Loop AI's compromise negotiations also undermines further and future attempts to compromise on discovery or other disputes, which have abounded in this case.

In fact, Loop AI has more than fully identified its trade secrets at issue in this case both in its Amended Complaint filed on April 6, 2015, *see* Dkt. 45 at ¶¶ 137-192, and in three declarations submitted by Loop AI's officers and filed at Docket Nos. 49-51 (the "Loop AI Declarations") as well as in its SAC. *See* Dkt. 210 at ¶¶ 155-200. Loop AI's submissions are

5

more than sufficient to satisfy any disclosure required by Section 2019.210, even if such disclosure applied in this case — it does not. Loop AI made its disclosures immediately after the Court issued its Order denying Loop AI's Application for a Temporary Restraining Order, on which IQSystem misleadingly relies in its Motion without noting that Loop AI made these disclosures *after the Court's TRO Order*. Proof that Loop AI's disclosures were sufficient is easily found in the Defendants' own motions. For instance, prior to Loop AI's filing of its Amended Complaint and its Declarations, Defendant Almawave USA filed a motion to dismiss claiming that Loop AI had not sufficiently identified the trade secrets at issue in its misappropriation of trade secrets claim. *See* Dkt. 38 at 9. Following Loop AI's filing of its Amended Complaint and of the Loop AI Declarations, Defendant Almawave USA did not renew its motion to dismiss based on Loop AI's failure to identify the trade secrets at issue. *See* Dkt. 60. Similarly, although all of the other Defendants filed numerous motions to dismiss, including motions to dismiss directed to Loop AI's misappropriation of trade secrets claim, no Defendant argued to the Court that Loop AI had not sufficiently identified its trade secrets at issue in this action. *See* Dkts. 35, 73, 92, 93.

If IQSystem did not believe Loop AI's trade secret disclosures to be sufficient, the proper course of action was to immediately bring this to the Court' attention. As Judge Gilliam made clear, and as this Court reiterated at the status conference held on July 23, 2015, a stay of discovery requires the prior — not the subsequent — approval of the Court. *See* Dkt. 157 at 96:3-97:19.

### A. The Complaint and The Loop AI Declarations Contain Clear Descriptions of the Trade Secrets at Issue.

Loop AI has made several filings specifically describing the trade secrets at issue, including by making use of prominent headings such as, for instance, "Examples of Misappropriated Confidential Information and Trade Secrets." *See* Dkt. 49 at ¶¶ 68-83 ("GM

6

Decl."); Dkt. 50 at ¶¶ 35-50 ("Ehlen Decl."); and. Dkt. 51 at ¶¶ 41-51 ("Peintner Decl.").

IQSystem's contention that it is unable to locate Loop AI's trade secret descriptions either in the SAC or in the Loop AI Declarations simply lacks credibility. The Loop AI Declarations group the trade secrets and confidential information at issue in three categories (1) Technical Information, (2) Business Development Information, and (3) Financial/Operational. Loop AI identified very specific trade secrets, and even gave particularized and detailed examples. Although the complete list set forth in Loop AI's prior submissions cannot be reproduced here, Loop AI sets forth below some examples:

- **Application of Loop AI's technology concepts being discussed in meeting to Customer Relationship Management ("CRM") identified in BMP Exhibit 3**. After an internal meeting discussing certain concepts and applications of artificial intelligence technology in CRM, Gatti sent an email to herself titled "DATA TO RETRIEVE" noting the CRM application under discussion and wrote next to it write "Shall we try to test this with Almawave." In addition, Ms. Gatti had a call with the Almaviva Defendants to discuss their products prior to the meeting discussing applications to CRM. *See* Dkt. 51, Peintner Decl. at ¶ 42.

- **Detailed explanations of Loop AI's technology's use of semantic inference to resolve ambiguity in understanding the meaning of data, machine extraction of data for semantic association, examples of deep learned semantic space models and the creation of semantic clusters, various levels of sentiment analysis and related matters attached to Exhibit GMC 16**. Loop AI shared this information with Gatti prior to her participation in a key meeting with a prospective investor, IF-3. *See* Dkt. 49, GM Decl. at ¶ 74.

- **Loop AI's plans for its expanded technical team (including the number of individuals and specific positions), a bottom up master plan, and specific financial details relating to these topics attached to Exhibit GMC 16 available for in camera review**. These documents included the size, structure, and key competencies of Loop AI's proposed technical team, as well as expected costs for development of that team. *See id*.

- **Confidential Details of Loop AI's Consulting Relationship With Dario Vignudelli**. Ms. Gatti used her access to Loop AI's contact information to recruit Dario Vignudelli for IQSystem. In early June 2014, the IQSystem Defendants provided Mr. Vignudelli with a Consulting Agreement for his work for the Almaviva Defendants. The consulting agreement was virtually identical to the one that Loop AI provided Mr. Vignudelli the year before. *See id.* at ¶¶ 77-79.

- **Confidential Details Regarding Company A**.  Gatti forwarded the contact information of this key contact, which was not publicly available, to DiNapoli of IQSystem within hours of receiving the contact information.  *See id. at ¶ 70*.

- **Confidential Details Regarding Funding Group IF- 2**.  Gatti used the IF-2 contact information to invite the contact to the launch of defendant Almawave USA Inc. at the Italian Consulate in San Francisco.  *See id. at ¶ 71*.

- **Confidential Details Regarding Loop AI Relationship with Company B**.  Gatti was copied on correspondences that identified certain confidential details and contacts, which were not readily publicly available, and forwarded the key contact information to DiNapoli of IQSystem.  Gatti used this contact to pitch business she was conducting with DiNapoli to Company B.  *See id. at ¶¶ 72-73*.

- **Loop AI's Confidential Employment and Consulting Agreements With Various Persons**.  The majority of provisions contained in the contract between Ms. Gatti and Loop AI were reproduced verbatim in her contract with the Almaviva Defendants.  *See id. at ¶ 80*.  Mr. Vignudelli's contract with IQSystem similarly mirrored his contract with Loop AI.  *See id. at ¶ 79*.

- **A listing of key service providers, including the law firm, accounting firm, bank, payroll service provider and expense reimbursement provider that Loop AI developed, cultivated, and engaged and which were critical to its business.**  The Almaviva Defendants misappropriated *each* of the service providers identified, cultivated, developed with substantial time and effort, and who were all under engagement with Loop AI.  These service providers were all are selected by Loop AI because of specific characteristics and were critically important to Loop AI.  *See id. at ¶ 83*.  Service providers are protectable as a trade secret. *Solid Sys. CAD Servs. v. Total Risc Tech., Pty. Ltd.*, No. 12-3176, 2015 U.S. Dist. LEXIS 25791, 22-23 (S.D. Tex. Mar. 3, 2015).

- **Loop AI's confidential list of scientific advisors identified in PE Exhibit 1 identified with substantial effort and expense**.  Loop AI cultivated and developed a highly confidential list of scientific advisors.  This list contained Loop AI's compilation of the skills and competencies that Loop AI believed were important to their field of technology, and was not known to the public.  The Defendants blatantly misappropriated Loop AI's list.  Gatti even provided the name of one of the persons listed in this document to Almaviva's headhunting agency, Russell Reynolds Associates, Inc. ("RRA"), who even blatantly approached Loop AI under false pretenses to obtain an introduction to this high-level scientist.  *See* Dkt. 50 Ehlen Decl. at ¶¶ 36-37.

- **A shortlist of highly skilled engineers identified in PE Exhibit 6**.  This list, which would have been highly valuable to any company involved with artificial intelligence, was provided to Gatti at Gatti's request while she was meeting with the Almaviva Defendants.  *See id. at ¶ 38*.

- **An unpatented invention identified in PE Exhibit 7**.  Ms. Gatti asked for, and was granted access to, details intended for patenting despite having no legitimate reason to seek access to it.  *See id. at ¶ 39*.

8

- **Proprietary technical concepts relating to "automatic understanding" and "semantic analysis" identified or attached to Exhibits PE-8, 9A, 9B and 9C**. Gatti requested that Loop AI employees explain certain technical concepts included and/or tested with its technology as well as the test results and the technology's performance with certain specific scientific experiments of automatic understanding of concepts contained in a data set. Gatti then forwarded this information to her personal account in furtherance of Defendants' scheme. *See id. at ¶ 40*.

- **Confidential research of Loop AI underlying aspects of its development of unsupervised and highly advanced deep learning techniques**. Gatti called Ehlen, an employee of Loop AI, and asked him about Loop AI's use of "deep learning of language models for speech recognition." Following the call, Ehlen sent Gatti two documents that constituted part of Ehlen's confidential research for the development of Loop AI's technology. *See id. at ¶ 41*.

- **Documents relating to, *inter alia*, technical master plans (containing a list of 31 future employees that the company planned to hire for its scientific and engineering team, with roles and detailed descriptions of the quarterly technology development goals for each employee); and a deeper description of the technology and comparisons to the state of the art and competitive landscape that Ms. Gatti dropped into her own personal data room where she could (and still can) access the documents under her personal email account**. Gatti requested, and was given access to, a large amount of highly confidential information and trade secrets relating to various aspects of Loop AI's business and technology for the purpose of preparing for due diligence with an investment fund. She placed this information in a personal data room accessible only through her personal email address. *See id. at ¶ 44*.

- **The metrics from certain Loop AI experiments and results given to Ms. Gatti in response to her request shown in PE-Exhibit 13**. Gatti requested, and was given access to, metrics from certain Loop AI experiments and results, explaining that she needed to show the information to Investment Fund 4. Investment Fund 4, however, did not request these metrics. Instead, this and other requests by Gatti for Loop AI's highly confidential technical and other information preceded her two-day meeting with the Almaviva Defendants in San Francisco. *See id. at ¶ 46*.

- **A Loop AI proprietary document titled "Soshoma Engineering Innovation" attached to Exhibit BMP 15, available for in camera review**. *See* Dkt. 51 Peintner Decl. at ¶ 44.

- **Results of an experiment and improvements over past experiments set forth at Exhibit BMP 16**. This information was sent to Gatti on a day she called in sick but was actually working for the Almaviva Defendants, setting up their new business and even using (unbeknownst to Loop AI) Loop AI's corporate counsel, Orrick Herrington & Sutcliffe LLP ("Orrick"), to handle the Almaviva Defendants' new venture in the United States. *See id. at ¶ 46*.

- **Proprietary technology described in Exhibit BMP 21 relating to the integration of Loop AI's technology with a third party company**. Ms. Gatti claimed that the CEO of the third party company reached out to her and that the information was needed for that purpose. The day after Gatti requested and received this information, however, Gatti had

9

a call with the Almaviva Defendants and not with the third party company. *See id. at ¶ 48.*

- **Loop AI's technology's use with "call centers."** *See id. at ¶ 49.*

- **Loop AI's confidential development and updates regarding certain artificial intelligence experiments.** *See id. at ¶ 50.*

Although these are just few examples, they are sufficient to demonstrate that IQSystem's accusation that Loop AI only identified "broad statements" is bizarre and unfounded. These identifications clearly demonstrate exemplars of the trade secrets in question or identify the documents provided or which will be provided to IQSystem when IQSystem propounds discovery requests. Loop AI has no obligation to volunteer further information to IQSystem absent a discovery request. The identification made by Loop AI at the inception of this case contains more than the reasonable particularity required by Section 2019.210, even if that section applied in this case.

**ARGUMENT**

I.  **Section 2019.210 Is A State Rule of Civil Procedure and Cannot Apply in Federal Court to Stay Discovery Which Has Already Commenced Pursuant to the Federal Rules of Civil Procedure and to the Court's Case Management Order.** [4]

On May 26, 2015 the Court held the Initial Case Management Conference pursuant to Federal Rule of Civil Procedure 16, *See* Dkt. 6 at 2, Dkt. 100 (minute entry), Dkt. 105 ("Order"), Dkt. 111. At that conference, the Court rejected the Defendants' proposal to phase merits discovery. *See* Dkt. 98 at 5-6. It ordered instead all merits discovery to proceed immediately and to end in January 2016. Dkt. 105 and Dkt. 111 at 21:20-23. Despite the Court's unambiguous Order, IQSystem has refused to respond **to any discovery** propounded by Loop AI on the ground that discovery in this case has been purportedly automatically stayed by operation

---

[4] References to "Rule" or "Rules" or "Federal Rules" are to the Federal Rules of Civil Procedure, unless otherwise specified.

10

of Section 2019.210 of California Code of Civil Procedure ("Section 2019.210").[5]  *See* BW Declaration dated October 16, 2015, Exhibit A.  IQSystem's Motion therefore does not really seek a stay, because IQSystem already has granted itself that stay, as have the other defendants.  Rather, IQSystem seeks the Court's validation for its egregious violation of the Federal Rules of Civil Procedure and of the Court's Case Management Order, which directed IQSystem more than four months ago to immediately engage in merits discovery.  *See* Dkt. 105.

The extraordinary relief that IQSystem has already granted itself, and seeks to now belatedly validate through this Motion, respectfully, lacks even a grain of merit.  The Supreme Court held long ago that "[w]hen a situation is covered by one of the Federal Rules … the court has been instructed to apply the Federal Rule," despite the existence of a conflicting state statute. *Hanna v. Plumer*, 380 U.S. 460, 471 (1965).[6]  "To hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power in the Enabling Act." *Id.* at 473-474.

IQSystem's reliance on district court decisions applying *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) to hold that Section 2019.210 is allegedly not in collision with the Federal Rules and can apply in federal court is misplaced.  *See* Dkt. 232 at 8.  The Supreme Court has repeatedly rejected the argument that IQSystem advances in its Motion.  *Hanna*, 380 U.S. 460, 471 (1965); *Burlington N.R. Co. v. Woods*, 480 U.S. 1, 4 (1987); *Shady Grove Orthopedic Ass.,*

---

[5] The other Defendants have also refused to respond (other than by objections) to **all discovery** propounded by Loop AI.  *See* BW Declaration dated October 16, 2015, Exhibits A-F.  As previously noted, not a single document has been produced by any of the Defendants with the exception of an insurance policy produced by Almaviva S.p.A.  All Defendants have also expressly refused to provide discovery by invoking the alleged automatic stay of discovery of Section 2019.210.  The Italian Almaviva Defendants have also claimed that discovery is separately stayed as to them for other reasons not relevant here.

[6] "The Federal Rules of Procedure apply [in federal court] irrespective of the source of subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003).

11

*P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398, 406 (2010).[7]  Under *Erie*, "federal courts are to apply state substantive law and federal procedural law to diversity cases."  *Goldberg v. Pac. Indem., Co.*, 627 F.3d 752 (9th Cir. 2010).  But the "relatively unguided *Erie*" analysis has no application when the state rule in question is a ***procedural***, rather than substantive one, as Section 2019.210 indisputably is.[8]  *See Shady Grove*, 559 U.S. at 398.  This is so even if the state procedural rule in question is found not to be in "conflict" with a Federal Rule that occupies the same field or subject.  *Id.* at 406.[9]  The *Shady Grove* Court reaffirmed the framework of its decision in a situation where, as in this case, a party invokes the application of a state procedural rule.  *Id.* at 398-406.  In such a case, a district court must first determine whether the Federal Rule "answers the question in dispute."  *Id.* at 398.  "If it does, it governs—[state]'s law notwithstanding— unless it exceeds statutory authorization or Congress's rulemaking power."  *Id.*

Here, IQSystem invokes the application of Section 2019.210 which governs the "commencing [of] discovery" in California state court for claims arising under the California Uniform Trade Secrets Act ("CUTSA").  *See* Cal. Code Civ. Proc. § 2019.210.  Section 2019.210 is part of the California Code of *Civil Procedure* Chapter 5, titled "Methods and Sequence of Discovery," Article 2, titled "Methods and Sequence of Discovery in Specific Contexts." *Id.*  The commencement of discovery in federal courts, however, is a subject expressly addressed and governed by Rule 26(d), titled (similarly to the California Code of Civil Procedure) "Timing and Sequence of Discovery."  Fed. R. Civ. P. 26(d).  Under the *Shady Grove* framework, therefore, because Rule 26 answers the question of when discovery can commence in a federal civil proceeding, Rule 26 governs, California law notwithstanding, and can only be

---

[7] *Erie* "is not the test for either the constitutionality or the statutory validity of a Federal Rule of Procedure."

[8] *See, e.g., Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*, No. 06-533, 2007 U.S. Dist. LEXIS 8870 (E.D. Cal. Jan. 29, 2007).

[9] *See also id.* at n. 7 and 429-431, 436.

12

set aside or disregarded if it is found to exceed the statutory authorization or Congress's rulemaking power. *Shady Grove*, 559 U.S. at 417-418.[10]

Because there is no basis here for claiming that Rule 26 exceeds the boundaries of the Rules Enabling Act, 28 U.S.C. § 2072, Rule 26 governs the "commencement" of discovery in this action. As a result, there is no merit to IQSystem's argument that Section 2019.210 automatically stayed or should stay discovery in this case. Discovery in this case is not only permitted by Rule 26, but its "commencement" was expressly ***ordered*** by the Court more than four months ago in accordance with Rule 16 and 26(d).[11] *See* Dkt. 105. Rule 26(d) is very liberal and, absent a court order or stipulation to the contrary, it permits the parties to commence discovery immediately after they "have conferred as required by Rule 26(f)." *Id.* Rule 26(f), in turn, requires the parties to make a discovery plan and present it to the Court for approval. Fed. R. Civ. P. 26(f). In this case, the parties held the Rule 26(f) conference on May 4, 2015. *See* Dkt. 97 at ¶ 9. IQSystem (and the other Defendants) submitted their proposed discovery plan to the Court in anticipation of the Rule 16 conference. *See* Dkt. 98. IQSystem (and the other Defendants) participated in the Rule 16 conference before the Court, during which they were heard in their proposal to shape the discovery plan and limitations to be ordered by the Court. *See* Fed. R. Civ. P. 16(b)-(c). *See* Dkt. 6 at 2, Dkt. 100 (minute entry), Dkt. 105 ("Order"), Dkt. 111 IQSystem (or the other defendants) never raised with the Court the possibility that discovery in this case should be stayed under Section 2019.210 because Loop AI allegedly had not yet properly identified its trade secrets as required by the California Code of Procedure. *See*

---

[10] Under *Shady Grove* there is simply no basis to apply a state ***procedural*** rule, even if a court were to find that Section 2019.210 does not conflict with Rule 26. *Id.* at 398-400.

[11] Even under the "collision test" utilized by courts to examine state ***substantive*** law vis-à-vis a Federal Rule, Rule 26 would still apply exclusive of state rule in Section 2019.210 because its purpose is co-extensive with the state rule —*i.e.*, they both seek to govern ***the method and sequence of discovery***. *See, e.g., Burlington*, 480 U.S. at 7 ("the purposes underlying the Rule are sufficiently coextensive with the asserted purposes of the Alabama statute to indicate that the Rule occupies the statute's field of operation so as to preclude its application in federal diversity actions.").[11]

Dkt. 98 and 97 (setting forth contents of Rule 26(f) Conference); Dkt. 111.  The only stay the Defendants raised before the Court was a stay under the anti-SLAPP Statute.  *See* Dkt. 97 at ¶ 10; Dkt. 98 at 10.

In light of these Rules and of IQSystem's own participation in shaping the discovery plan Case Management Order entered by the Court on May 26, 2015, IQSystem had (and has) no basis in law, or in fact, to refuse to engage in discovery and to now file this wasteful Motion.  The "Methods and Sequence of Discovery" laid out in Section 2019.210, purporting to stay discovery, absent a trade secrets disclosure that IQSystem finds satisfactory, is not only inapplicable in light of Rule 26 and *Shady Grove*, but is specifically contrary to the Order entered the Court in accordance with Rule 16 — *after* consultation with IQSystem (and the other Defendants) about the discovery plan that was to govern this case.

Rule 26 nowhere permitted IQSystem or the other Defendants to grant themselves a stay of discovery and to now seek its validation by the Court on the basis of Section 2019.210 of the California Code of Civil Procedure.  Nor is there any basis for IQSystem's demand that Loop AI be compelled to comply with Section 2019.210 in an unspecified way that IQSystem will find satisfactory.  If IQSystem wants more details about Loop AI's trade secrets at issue in this case **it is required to issue a discovery request to that effect** — something that Loop AI has repeatedly invited IQSystem to do, but which IQSystem claims it is nor required to do.  Further, if IQSystem believed that Loop AI's discovery requests propounded to it were beyond the scope of the claims or allegations in this case, IQSystem was required to participate in a meet and confer with Loop AI explaining the reasons why it believes any request is outside the scope, and failing that, it was required to seek a protective order from the Court.  IQSystem has not done so.  IQSystem has no legal basis to compel Loop AI to respond to discovery that IQSystem **has not issued** or to otherwise claim discovery is stayed.

IQSystem's separate contention that Section 2019.210 has been applied by courts in the Northern District of California "out of policy concerns," is also squarely contrary to the *Shady Grove* controlling holding.  *Shady Grove*, 559 U.S. at 404-406, and n. 7 (rejecting displacement of a Federal Rule "to the extent that it conflicts with the substantive policies of" a state rule.)

Finally, even before *Shady Grove* clarified the analysis that is to apply in a case where a party invokes a state procedural rule in a federal proceeding, the Ninth Circuit had already rejected the application in federal proceedings of "discovery limiting aspects" of state laws, even those found in substantive laws.  *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 845 (9th Cir. 2001).  In *Metabolife*, the Ninth Circuit rejected the applicability in federal courts of Section 425.16(g) of the California anti-SLAPP Statute, which "provides that the filing of an anti-SLAPP motion ***automatically stays*** all further discovery until the court rules on the motion."  *Id.* at 846 (emphasis supplied).  This discovery-limiting provision of the anti-SLAPP statute is similar to the discovery-limiting provision of Section 2019.210, in that the they both limit the commencement of discovery, albeit in respect of different claims.  *See* Cal. Code Civ. P. § 425.16(g) and § 2019.210.  Even under the teachings of *Metabolife*, which was decided prior to *Shady* Grove, Section 2019.210 would not apply here to stay discovery permitted by Rule 26 and the Court's Case Management Order entered pursuant to Rule 16, neither of which imposes the limitations to commencement or continuation of discovery found in Section 2019.210.

Not a single one of the cases cited by IQSystem applies — nor even mentions —  the controlling decision in *Shady Grove*, or even *Metabolife*.  The cases on which IQSystem relies, instead, all are based on the same few district courts decisions, and do not consider or apply any intervening appellate decisions directly affecting the analysis in question.  *See* Dkt. 232 at 8-9, 15-16.  In fact, those California courts that have applied *Metabolife* were constrained to find, even before the *Shady Grove* was decided, that Section 2019.210 cannot and does not apply in

federal court. *See, e.g., Hilderman v. Enea Teksci, Inc.*, No. 05-1049, 2010 WL 143440, 2010 U.S. Dist. LEXIS 1527 (S.D. Cal. Jan. 8, 2010).

For the foregoing reasons, as a matter of federal law, IQSystem's invocation of Section 2019.210 to validate and perpetuate the stay it has granted itself, or to compel a response without issuing any discovery request, must be rejected. IQSystem's Motion is especially frivolous in light of the fact that IQSystem participated in shaping the discovery plan entered by the Court four months ago, but never raised the applicability of the stay under Section 2019.210 that it now invokes. The only discovery stay that the Defendants ever invoked before and during the Case Management Conference was under the one found in the anti-SLAPP statute, whose stay provisions in federal courts have been rejected by the Ninth Circuit in *Metabolife* more than 14 years ago. *See supra.* Despite the Court's rejection of that stay on May 26, 2015, the Defendants continued to claim to Loop AI and even to the Court the anti-SLAPP discovery stay applied. *See, e.g.,* Dkt. 157 at 95 (there is an issue of whether "any discovery should go forward given that there is an anti-SLAP motion pending…"). After the Court ruled on the anti-SLAPP motion, the Defendants now have found another frivolous excuse to further delay and derail discovery in this proceeding.

Because Section 2019.210 does not apply here, this Court can and should deny the Motion on this ground alone. Rule 26 and the Case Management Order govern this case and IQSystem has failed to establish any "good cause" to stay discovery contrary to that Order. *See, e.g., Hynix Semiconductor, Inc. v. Rambus, Inc.*, 250 F.R.D. 452, 457 (N.D. Cal. 2008).

**II.     Even if Section 2019.210 Did Apply in Federal Courts, it Could Not Apply to Claims Other Than Loop AI's Claim for Misappropriation of Trade Secrets.**

Even if there was any basis to apply Section 2019.210 in a federal proceeding, such as this case, IQSystem fails to provide any legal support for its argument that Section 2019.210 stays discovery of all 17 causes of action in this case, 16 of which do not arise under CUTSA. On its face, Section 2019.210 is a rule of procedure governing the "commencement" of

16

discovery in state court actions involving CUTSA claims: "in any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act (Title 5 (commencing with Section 3426) of Part 1 of Division 4 of the Civil Code), ***before commencing discovery relating to the trade secret*** …" Cal. Code Civ. P. § 2019.210 (emphasis supplied).  This language is not ambiguous.  It simply does not apply to discovery on subjects other than "trade secrets" at issue in a claim brought under CUTSA.  Even the state cases on which IQSystem relies make this clear.  *See, e.g., Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333, 1338, n. 2 (Cal. App. 4th Dist. 2009) (ruling that breach of fiduciary, conversion and contract causes of action not subject to Section 2019.210).  Other cases are to the same effect. *See, e.g., Tessera, Inc. v. Advanced Micro Devices, Inc.*, No. 05-4063, 2013 U.S. Dist. LEXIS 8104, at *11-13 (N.D. Cal. Jan. 18, 2013).  For instance, in *Tessera* the Court explained that Section 2019.210 cannot apply to a breach of a confidentiality agreement that involves confidential information because the plaintiff can establish the breach simply by reference to "confidential information" and does not have to prove a trade secret.[12]

IQSystem's global stay argument is especially inapposite in light of the fact that, in this case, the Court has already found that Loop AI's non-CUTSA claims do not depend on the existence of trade secrets.  *See* Dkt. 185 at 5-6 (Finding factual bases independent of misappropriation of trade secrets for Loop AI's first, second, fifth, sixth, twelfth, thirteenth, and fourteenth causes of action in its First Amended Complaint).  This presumably explains why IQSystem does not even ***attempt*** to argue that Loop AI's non-CUTSA claims hinge upon the misappropriation of trade secrets.  IQSystem also provides no legal authority actually supporting its contention that all discovery in this case was automatically stayed, and should continue to be stayed, where Loop AI's action includes 16 (previously 13) additional claims arising under

---

[12] *Tessera* also puts to rest IQSystem's arguments that courts have applied Section 2019.201 to claims for breach of nondisclosure agreements.  Dkt. 232 at 12 (citing *Neothermia Corp. v. Rubicor Med., Inc.*, 345 F. Supp. 2d 1042, 1044 (N.D. Cal. 2004)).

federal and state laws other than CUTSA.  *See* Dkt. 210.[13]  There is none.  Instead, IQSystem relies on misleading citation of cases involving different procedural stages and factual premises that have little bearing to this case.  For instance, IQSystem points to *Jobscience, Inc. v. CVPartners, Inc.*, No. 13-04519, 2014 U.S. Dist. LEXIS 26371 (N.D. Cal. Feb. 28, 2014).  Dkt. 232 at 12-13.  The Court in *Jobscience* was ruling on a motion to amend the pleadings.  The Court found that the proposed amendment to a misappropriation of trade secrets claim was too thin because it was articulated in just "one paragraph in the proposed second amended complaint." *Jobscience,* 2014 U.S. Dist. LEXIS 26371, at \*13.  The court found that "the one paragraph in the proposed second amended complaint describing plaintiff's trade secrets could be read so broadly as to incorporate everything about its business practices.  Such ambiguity leaves defendants **unable to effectively frame their responsive pleading**." *Id.* (emphasis supplied).  It was for pleading reasons, therefore, that the court in *Jobscience* directed the plaintiff to supplement its description of trade secrets.  *Jobscience* therefore in no way supports IQSystem's position in this case.  The other cases are similarly inapposite.  For instance, *Agency Solutions.Com, LLC v. TriZetto Group, Inc.*, 819 F. Supp. 2d 1001 (E.D. Cal. 2011), is a decision **on a preliminary injunction**, not a decision to stay discovery.  Moreover, in that case, the Court allowed, rather than denied, expedited discovery in preparation for the preliminary injunction hearing.  *Id.* at 1013.  IQSystem's contention that a global stay of discovery is in place and should now be validated by the Court based on Section 2019.210 is not well founded and should be rejected in its entirety.

---

[13] Loop AI's sixteen other counts include the following statutory and common law claims: Racketeer Influenced and Corrupt Organizations; 18 U.S.C. §§ 1962 et seq., Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 et seq., and Unauthorized Access to Computers, Cal. Penal Code §§ 502 et seq.; Fraud in the Inducement; Rescission and Restitution for Failure of Consideration; Fraud; Breach of Contract; Breach of Duty of Good Faith and Fair Dealing; Theft of Corporate Opportunity; Intentional Interference with Prospective Economic Advantage; Tortious Interference; Conversion; Unfair Competition; Unjust Enrichment; Tortious Interference and Aiding And Abetting Breach of Fiduciary Duty; Tortious Interference; Aiding and Abetting Breach of Fiduciary Duty.  *See* SAC at ¶¶214-414.

**III.    Even if this Court Were To Apply Section 2019.210 to this Case, Loop AI Provided At The Inception of This Case a Detailed Trade Secrets Description, Which Exceeds the "Particularity" Requirement of Section 2019.210.**

Even if the Court were to apply the "particularity" requirement of Section 2019.210 to this case, Loop AI already has identified its trade secrets with substantially more than the "reasonable particularity" required by that rule of procedure. *See supra,* Relevant Background § A.

The "reasonable particularity" standard mandated by Section 2019.210 "does not mean that the party alleging misappropriation has to define every minute detail of its claimed trade secret at the outset of the litigation. Nor does it require a discovery referee or trial court to conduct a miniature trial on the merits of a misappropriation claim before discovery may commence. Rather, it means that the plaintiff must make some showing that is reasonable, *i.e.*, fair, proper, just and rational." *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835 (Cal. App. 2d Dist. 2005). "The designation should be liberally construed, and reasonable doubts about its sufficiency ***resolved in favor of allowing discovery to go forward***. Under this flexible standard, absent a showing that the identification of the alleged trade secret alone lacks the particularity necessary to serve the statutory purposes, the trade secret claimant need not specify how the secret or its elements are distinguishable from matters known to skilled persons in the field." *Brescia v. Angelin*, 172 Cal. App. 4th 133, 149 (Cal. App. 2d Dist. 2009) (emphasis supplied).

Here, Loop AI has provided, and repeatedly directed IQSystem's attention to, its filings, including the Loop AI Declarations, describing with reasonable particularity the trade secrets and confidential information at issue. The Loop AI Declarations are suitable vehicles for trade secret disclosure. *See Neothermia Corp. v. Rubicor Med., Inc.*, 345 F. Supp. 2d 1042, 1044 (N.D. Cal. 2004). (The court determined "there is no real dispute" plaintiff identified its trade secrets "by way of interrogatory responses and declarations."). Loop AI's identification of specific

documents or information exemplified by those documents is more than sufficient. Despite the extensive descriptions contained in the Loop AI Declarations, IQSystem asserts that Loop AI has provided "no testimony of one skilled in the art" in support of its identification of trade secrets. Dkt. 232 at 13. In fact, although not a requirement of Section 2019.210, the Loop AI Declarations were very much made by top experts in their field. *See, e.g.,* Dkt. 50 at ¶¶ 1-2 (Briefly describing the technical background of Patrick Ehlen, Head of Deep Learning for Loop AI), Dkt. 51 at ¶¶ 1-2 (Briefly describing the technical background of Bart Peintner, Chief Technology Officer and Chief Scientists of Loop AI). IQSystem's argument on this point is emblematic of its position as a whole – advancing arguments that disregard entirely the actual record or law.

IQSystem contends that Loop AI's disclosure is qualitatively insufficient under *Jobscience*.[14] Dkt. 232 at 12-15. As already discussed, however, *Jobscience*, concerned allegations and procedural stages that have no bearing on this case. *Jobscience* did not concern a defendant's request, as IQSystem does here, to stay discovery made four months after the court issued a comprehensive Case Management Order expressly rejecting phased discovery and ordering all merits discovery to go forward immediately. *See* also Dkt. 105. The specific *Jobscience* decision on which IQSystem relies for this point was the decision following the court's prior ruling (described above) granting the plaintiff leave to file a second amended complaint amending the misappropriation of trade secrets claim. *See supra* (discussing *Jobscience,* No. 13-04519, 2014 U.S. Dist. LEXIS 26371, at *13 (N.D. Cal. Feb. 28, 2014). As already discussed, the court found that the amendment, consisting of one paragraph alone, was

---

[14] IQSystem also relies on *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826 (Cal. App. 2d Dist. 2005) and *Brescia v. Angelin*, 172 Cal. App. 4th 133 (Cal. App. 2d Dist. 2009) to support its position. Dkt. 232 at 9-13. The courts in each of these cases, however, found the identifications proffered by the respective plaintiffs to be sufficient without any application of the "*Jobscience*" test that IQSystem would inflict upon all trade secret plaintiffs. *Advanced Modular Sputtering*, 132 Cal. App. at 836; *Brescia*, 172 Cal. App. 4th at 151.

---

3:15-CV-00798-HSG-DMR                                    PL.'S OPP. TO MOTION AT DKT. 232

insufficient, but granted leave to amend and ordered the plaintiff to also submit a more detailed description of the claim. *Id.* In the following decision, the court simply found that the plaintiff "did not come close" to providing the information the court had ordered when ***it granted leave to amend the claim***. *Jobscience, Inc. v. CVPartners, Inc.*, No.13-4519, 2014 U.S. Dist. LEXIS 64350, at *2 (N.D. Cal. May 1, 2014) (ruling on motion to strike misappropriation of trade secrets claim). The information that the court required the *Jobscience* plaintiff to provide in order to amend the complaint in that case was specific to that case, and has no application here. Here, the Defendants did not move to dismiss Loop AI's CUTSA claim, nor has the Court ordered Loop AI to replead that claim. In substantial contrast to *Jobscience*, here the Court expressly entered a comprehensive Case Management Order more than four months ago directing all merits discovery to proceed immediately. Dkt. 105.

IQSystem also repeatedly conflates compliance with Section 2019.210 with proving a trade secret misappropriation claim at trial. IQSystem cites *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. Cal. 1993) for the proposition that a "plaintiff seeking relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing they exist." Dkt. 232 at 11. *MAI,* however, is an appeal of an injunction and has nothing to do with discovery stays or lack thereof, or with Section 2019.210. The holding in *MAI* to which IQSystem points only relates to ultimate proof of a claim for misappropriation. It does not support IQSystem's contention that an automatic stay of discovery is in place in this case or that the Court should now grant such a discovery stay. IQSystem, moreover, ***twice*** cites Section 3426.1(d) of the California Civil Code, including recitation of its full text, which codifies trade secret law but has nothing to do with the California rule of civil ***procedure*** found in Section 2019.210. Loop AI is not required to prove its trade secret claim to IQSystem in order to obtain

discovery.  *See, e.g., Prolifiq Software*, No.13-03644, 2014 U.S. Dist. LEXIS 77493.[15]  ("Here, Veeva's challenges go not to whether Prolifiq has sufficiently identified what it considers to be its trade secrets, ***but to the merits of whether that information constitutes trade secrets.*** However, Cal. Civ. Proc. Code § 2019.210 does not create a procedural device to litigate the ultimate merits of the case—that is, to determine as a matter of law on the basis of evidence presented whether the trade secret actually exists.") (emphasis supplied).[16]

Finally, in its Motion, IQSystem argues that in addition to describing its trade secrets under Section 2019.210, before discovery can commence, Loop AI must voluntarily provide detailed explanations distinguishing its trade secrets from common knowledge in the trade.[17] This is not the law.  For instance, in *Brescia v. Angelin*, 172 Cal. App. 4th 133 (Cal. App. 2d Dist. 2009), one of the cases cited by IQSystem, the court holds that an explanation of how the alleged trade secret differs from matters known to skilled persons in the field **is not required**. *See id.* at 138  ("Section 2019.210 does not require in every case that a trade secret claimant explain how the alleged trade secret differs from the general knowledge of skilled persons in the field to which the secret relates.").  *See also Perlan Therapeutics*, 178 Cal. App. 4th at 1351) ("Perlan is not required to convince defendants or the court in its section 2019.210 statement that its alleged trade secrets are not generally known to the public. This is an element of their case that must be proven, but not at the prediscovery stage of the action."); *Prolifiq Software*, 2014

---

[15] IQSystem inexplicably states that *Prolifiq* turned on an issue that "cannot be addressed by way of CCP Section 2019.210."  Dkt. 232 at 13-15.  In *Prolifiq*, however, the Court quite clearly conducted an analysis under Section 2019.210, stating, "[t]he Court has reviewed Prolifiq's trade secret disclosure statement and concludes that it identifies the alleged trade secrets with reasonable particularity, thus satisfying section 2019.210." *Prolifiq Software Inc.*, 2014 U.S. Dist. LEXIS 77493, at *8.

[16] *Advanced Modular Sputtering,*132 Cal. App. 4th at 836.  ("For our purposes, at this prediscovery stage of the proceedings, it is appropriate to recognize the existence of this credible dispute, but not necessarily to resolve it.").

[17] *See, e.g.*, Dkt. 232 at 10-11 (claiming that Loop is required "to identify or designate the trade secrets at issue with sufficient particularity to limit the permissible scope of discovery by distinguishing the trade secrets from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade."); Dkt. 233-3 at 3; Dkt. 333-4 at 4.

3:15-CV-00798-HSG-DMR                                    PL.'S OPP. TO MOTION AT DKT. 232

U.S. Dist. LEXIS 77493 ("However, a claimant is not required "to explain why the alleged trade secret differs from matters already known in the industry."). In any event, even if this was a requirement, Loop AI already provided substantial information in this regard at the inception of the case. *See, e.g.,* GM Decl. at ¶¶ 70, 73, 79, 83; Dkt. 50 Ehlen Decl. at ¶¶ 36, 38, 39, 42; Dkt. 51 Peintner Decl. at ¶¶ 42, 48.

For the foregoing reasons, even if the Court were to find Section 2019.210 applied in a federal case, Loop AI has more than sufficiently described its trade secrets with reasonable particularity. If IQSystem desires more information it is required to engage in discovery, just like all parties are required to do in civil litigation.

### CONCLUSION

Loop AI respectfully requests that IQSystem's Motion be denied in its entirety and that IQSystem be sanctioned for its egregious violation of the Case Management Order. IQSystem had no basis in law or fact to ignore the Case Management Order and refuse to engage in discovery on the grounds that a purported stay was in place. In particular, this Court twice told the Defendants that a stay of discovery required the Court's approval. *See, e.g.,* Dkt. 111 at 15:5-7; Dkt. 157 at 95-96. The Defendants' conduct has been highly prejudicial to Loop AI and its ability to prosecute this action efficiently and expeditiously. After four months since the Case Management Order was issued, almost ten months since this action was filed, and three months from the close of discovery, Loop AI has been ***unable to obtain a single document*** or discovery response from any of the Defendants and has instead been forced to expend substantial resources on a flood of frivolous motions. Respectfully this conduct cannot be tolerated further and Loop AI requests that the Court impose appropriate sanctions for these repeated willful violations of the Court's Case Management Order.

Respectfully submitted,

3:15-CV-00798-HSG-DMR                                    PL.'S OPP. TO MOTION AT DKT. 232

October 16, 2015                                  By:   /s/ *Valeria Calafiore Healy*

Valeria Calafiore Healy, Esq. (*phv*)
Eric Lerner, Esq.  (*of counsel*)
Bryan J. Wolin, Esq. (*phv*)
HEALY LLC

Daniel J. Weinberg, Esq. (SBN 227159)
FREITAS ANGELL & WEINBERG
LLP

Attorneys for Plaintiff
Loop AI LABS, INC.