1  **VENABLE LLP**
   Thomas E. Wallerstein (SBN 232086)
2  Kimberly Culp (SBN 238839)
   Email: twallerstein@venable.com
3        kculp@venable.com
   505 Montgomery Street, Suite 1400
4  San Francisco, CA 94111
   Telephone:   415.653.3750
5  Facsimile:    415.653.3755

6  Attorneys for Defendant Almawave USA, Inc.

7

8                  **UNITED STATES DISTRICT COURT**

9            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10

    LOOP AI LABS, INC., a Delaware                CASE NO.: 3:15-cv-00798-HSG (DMR)
11  corporation,
                                                  Hon. Haywood S. Gilliam, Jr.
12              Plaintiffs,
13                                                **DEFENDANT ALMAWAVE USA, INC.'S**
                                                  **OPPOSITION TO LOOP AI LABS, INC.'S**
14         v.                                     **MOTION TO DISQUALIFY VENABLE LLP**

15

16  ANNA GATTI, an individual,                    Date:       November 5, 2015
    ALMAVIVA S.p.A., an Italian corporation,      Time:       2:00 p.m.
17  ALMAWAVE S.r.l., an Italian corporation,      Courtroom: 15, 18th Floor
    ALMAWAVE USA, Inc., a California
18  corporation, IQSYSTEM LLC, a California
    limited liability company, IQSYSTEM Inc., a
19  Delaware corporation,                         Action Filed:  February 20, 2015
                                                  Trial Date:    July 11, 2016
20              Defendants.

21

22

23

24

25

26

27

28

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

V E N A B L E   L L P
SPEAR TOWER, 40ᵀᴴ FLOOR, ONE MARKET PLAZA
1 MARKET STREET, SAN FRANCISCO, CA  94105
415-653-3750

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ........................................................................................2

LEGAL STANDARD..............................................................................................4

ARGUMENT .......................................................................................................5

I.    LOOP'S MOTION FAILS BECAUSE STERNBERG NEVER OBTAINED
      LOOP'S CONFIDENTIAL INFORMATION AND NEVER HAD AN
      ATTORNEY-CLIENT RELATIONSHIP WITH LOOP..............................................5

      A.    The Existence of an Attorney-Client Relationship Is a Prerequisite to
            Disqualification...........................................................................5

      B.    Sternberg Never Had An Attorney-Client Relationship With Loop..................6

      C.    Sternberg Never Obtained Loop's Confidential Information. ........................6

II.   MERE "ACCESS" TO CONFIDENTIAL INFORMATION IS INSUFFICIENT
      FOR DISQUALIFICATION. ..........................................................................8

III.  CALIFORNIA REJECTS LOOP'S DOUBLE-IMPUTATION THEORY. .................10

      A.    *Aerojet* And Its Progeny Reject Loop's Double-Imputation Theory................11

      B.    Loop Fails The "Modified Substantial Relationship" Test Because It Fails
            To Show That There Was A Reasonable Probability That Sternberg
            Obtained Loop's Confidential Information. ..........................................11

            1.    There Was No Relationship Between Bautista's Representation Of
                  Loop And Sternberg's Work At Orrick. ......................................13

            2.    Sternberg Spent No Time Working For Loop And Was Never
                  Exposed To Loop Policy Or Strategy Relating To The Current
                  Dispute. ......................................................................13

            3.    Bautista Works In Orrick's Silicon Valley Office While Sternberg
                  Worked In Orrick's New York Office And Frequently Was In
                  Europe. .......................................................................14

            4.    Sternberg Had No Administrative Or Management Duties That Put
                  Him In A Position To Obtain Loop's Confidential Information. ..........14

IV.   THE "CONCURRENT REPRESENTATION" TEST DOES NOT APPLY. ...............15

V.    STERNBERG'S ALLEGED ROLE IN THE CASE DOES NOT WARRANT
      DISQUALIFICATION................................................................................16

A.   Loop Does Not Have Standing To Seek Disqualification Based On A Purported Breach Of A Duty Owed To Almawave By Sternberg Or Venable. ........................................................................................16

B.   Sternberg Has Not Appeared In This Case And Will Not Serve As Trial Counsel. .........................................................................................17

C.   Loop May Not Manufacture a Conflict Through Its Amended Pleading. ..........18

D.   Sternberg's Testimony At Trial Is Not Necessary. ...............................18

VI.   DISQUALIFICATION WOULD IMPEDE NOT ADVANCE THE ADMINISTRATION OF JUSTICE. .................................................................20

A.   Disqualification Would Prejudice Almawave And Violate Almawave's Right To Counsel Of Its Choice. .................................................................20

B.   Loop's Assertions About The Conflicts Checks At Orrick Are Baseless And Irrelevant. .........................................................................................21

C.   Loop Impermissibly Seeks Disqualification As Punishment. ............................22

CONCLUSION ..................................................................................................24

VENABLE LLP
SPEAR TOWER, 40TH FLOOR, ONE MARKET PLAZA
1 MARKET STREET, SAN FRANCISCO, CA 94105
415-653-3750

ii

1

## <u>TABLE OF AUTHORITIES</u>

2

### <u>Cases</u>

3   *Abraham v. Super Buy Tires Inc.*

4          No. 05cv1296-B (NLS), 2007 WL 173846 (S.D. Cal. Jan. 10, 2007)............................17

5   *Abubakar v. Cnty. of Solano*

6          No. CIV. S-o6-2268 LKK/EFB, 2008 WL 336727 (E.D. Cal. Feb. 4, 2008) ...............7

7   *Adams v. Aerojet-General Corp.*

8          86 Cal. App. 4th 1324 (2001) ...............................................................2, 6, 11

9   *Adams v. Village of Keesville*

10          2008 WL 3413867 (N.D.N.Y. Aug. 8, 2008) ..............................................18

11  *Allen v. Academic Games Leagues of Am., Inc.*

12          831 F.Supp.785 (C.D. Cal. 1993) ..........................................................5

13  *Barco N.V. v. Tech. Props. Ltd.*

14          2011 WL 841283 (N.D. Cal. Mar. 8, 2011)................................................21, 22

15  *Benas v. Baca*

16          2003 WL 21692037 (C.D. Cal. Jul. 10, 2003)..............................................17

17  *Blue Water Sunset, LLC v. Markowitz*

18          192 Cal.App.4th 477 (2011) ................................................................15

19  *Colyer v. Smith*

20          50 F. Supp. 2d 966 (C.D. Cal. 1999) ......................................................16

21  *DCH Health Servs. Corp. v. Waite*

22          95 Cal. App. 4th 829 (2002) ...............................................................16

23  *DHR Int'l Inc. v. Charlson*

24          No. C 14–1899 PJH, 2014 WL 4808752 (N.D. Cal. Sept. 26, 2014).....................17, 19

25  *Dieter v. Regents of Univ. of Cal.*

26          963 F. Supp. 908 (E.D. Cal. 1997).........................................................11, 14

27  *End of Road Trust v. Terex Corp.*

28          No. 99–477 (GMS), 2002 WL 242464 (D. Del. Feb. 20, 2002)...................................22

V E N A B L E   L L P
SPEAR TOWER, 40TH FLOOR, ONE MARKET PLAZA
1 MARKET STREET, SAN FRANCISCO, CA  94105
415-653-3750

iii

*Eurocom, S.A. v. Mahoney, Cohen & Co.*

    522 F. Supp. 1179 (S.D.N.Y. 1981)................................................................19

*Exterior Sys., Inc. v. Noble Composites, Inc.*

    210 F. Supp. 2d 1062 (N.D. Ind. 2002) ......................................................23

*Fed. Home Loan Mortg. Corp. v. La Conchita Ranch Co.*

    68 Cal. App. 4th 856 (1998) ........................................................................18

*FlatWorld Interactives LLC v. Apple, Inc.*

    No. 12–cv–01956–WHO, 2013 WL 4039799 (N.D. Cal. Aug. 7, 2013) ................12, 14

*Frazier v. Super. Ct.*

    97 Cal. App. 4th 23 (2002) .....................................................................11, 12

*Fund of Funds v. Arthur Andersen*

    567 F.2d 225 (2nd Cir. 1977)......................................................................16

*Gotham City Online, LLC v. Art.com, Inc.*

    2014 WL 1025120 (N.D. Cal. Mar. 13, 2014)................................................5

*Gregori v. Bank of Am.*

    207 Cal. App. 3d 291 (1989) ........................................................................23

*H.F. Ahmanson & Co. v. Salomon Brothers, Inc.*

    229 Cal.App.3d 1445 (1991) ........................................................................12

*Havasu Lakeshore Investments, LLC v. Fleming*

    217 Cal.App.4th 770 (2013) ........................................................................15

*Hayes v. City and Cnty. of S.F.*

    No. C06-03510 MJJ, 2007 WL 2021865 (N.D. Cal. Jul. 12, 2007) ........................5, 15

*Haynes v. R.H. Dyck, Inc.*

    No. 2:06-CV-02944-MCE-EFB, 2008 WL 80749 (E.D. Cal. Jan. 7, 2008)..................17

*In re Cnty. of L.A.*

    223 F.3d 990 (9th Cir. 2000) ........................................................................4

*In re EXDS, Inc.*

    No. C05-0787 PVT, 2005 WL 2043020 (N.D. Cal. Aug. 24, 2005)............................10

VENABLE LLP
SPEAR TOWER, 40TH FLOOR, ONE MARKET PLAZA
1 MARKET STREET, SAN FRANCISCO, CA 94105
415-653-3750

iv

*In re Marvel*

    251 B.R. 869 (N.D. Cal. 2000) ...................................................................5

*In re Tevis*

    347 B.R. 679 (B.A.P. 9th Cir. 2006)..........................................................6

*Jessen v. Hartford Casualty Ins. Co.*

    111 Cal.App.4th 698 (2003) ..................................................6, 12, 15

*Kendrick v. Zanides*

    609 F. Supp. 1162 (N.D. Cal. 1985) .........................................................18

*Khani v. Ford Motor Co.*

    215 Cal.App.4th 916 (2013) .....................................................................15

*Kirk v. First Am. Title Ins. Co.*

    183 Cal. App. 4th 776 (2010) ...................................................................20

*Koo v. Rubio's Restaurants, Inc.*

    109 Cal.App.4th 719 (2003) ......................................................................5

*Med-Trans Corp., Inc. v. City of Cal. City*

    156 Cal. App. 4th 655 (2007) .....................................................................7

*Mendonca v. Caliber Home Loans, Inc.*

    No. CV 14–02384 BRO (AJWx), 2015 WL 1566847 (C.D. Cal. Apr. 6, 2015)......19, 21

*M-I LLC v. Stelly*

    No. 4:09-CV-1552, 2010 WL 219628 (S.D. Tex. May 26, 2010)..................................5

*Neal v. Health Net, Inc.*

    100 Cal. App. 4th 831 (2002) ...................................................................23

*Ochoa v. Fordel, Inc.*

    146 Cal.App.4th 898 (2007) ...............................................................10, 12

*Optyl Eyewear Fashion International Corp. v. Style Companies, Ltd.*

    760 F.2d 1045 (9th Cir.1985) .................................................................5, 19

*Parkinson v. Phoenix*

    857 F. Supp. 1474 (D. Utah 1994)............................................................22

VENABLE LLP
SPEAR TOWER, 40TH FLOOR, ONE MARKET PLAZA
1 MARKET STREET, SAN FRANCISCO, CA  94105
415-653-3750

1  *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*
2       20 Cal.4th 1135 (1999) ...............................................................................6
3  *River West, Inc. v. Nickel*
4       188 Cal. App. 3d 1297 (1987) ...........................................................17, 20
5  *S.E.C. v. King Cheun Tang*
6       831 F. Supp. 2d 1130 (N.D. Cal. 2011) ....................................................4
7  *Scala's Original Beef & Sausage Co., LLC v. Alvarez*
8       No. 09-cv-7353, 2009 WL 4823916 (N.D. Ill. Dec. 10, 2009)...................21
9  *SDS Korea Co., Ltd. v. SDS USA, Inc.*
10      732 F. Supp. 2d 1062 (S.D. Cal. 2010) ...................................................19
11 *Smith, Smith & Kring v. Superior Court*
12      60 Cal.App.4th 573 (1997) .....................................................................21
13 *Solow v. W.R. Grace*
14      83 N.Y.2d 303 (1994) ..............................................................................4
15 *Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Tech., Inc.*
16      69 Cal. App. 4th 1399 (1999) ..................................................................5
17 *Streetspace, Inc. v. Google, Inc.*
18      No. C 11–04574 JW, 2012 WL 293642 (N.D. Cal. Feb. 1, 2012) .......................9, 10, 14
19 *United States v. Ketner*
20      370 F. Supp. 2d 1045 (C.D. Cal. 2005) ...............................................11, 14
21 *W. Sugar Coop. v. Archer-Daniels-Midland Co.*
22      No. CV 11–3473 CBM (MANx), 2015 WL 690306 (C.D. Cal. Feb. 13, 2015) ......12, 15
23 *Yee v. Ventus Capital Servs.*
24      No. C 05–03097(RS), 2006 WL 3050827 (N.D. Cal. Oct. 26, 2006) ...........................17

## Statutes

26 F.R.E. 602 ..........................................................................................7, 9, 19, 21
27 F.R.E. 701 .......................................................................................................9
28 F.R.E. 802 ...............................................................................................9, 19, 21

VENABLE LLP
SPEAR TOWER, 40TH FLOOR, ONE MARKET PLAZA
1 MARKET STREET, SAN FRANCISCO, CA  94105
415-653-3750

vi

1   F.R.E. 901 .................................................................................................................19, 21

2   Fed. R. Civ. P. 15(a)(2) ................................................................................................18

3                                     **Other Authorities**

4   Cal. R. Prof. Conduct, Rule 3-310 ................................................................................6

5   Cal. R. Prof. Conduct, Rule 5-210 .........................................................................17, 19

6   N.Y. Disciplinary Rule 5-101(B) ................................................................................19

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

V E N A B L E   L L P
SPEAR TOWER, 40TH FLOOR, ONE MARKET PLAZA
1 MARKET STREET, SAN FRANCISCO, CA  94105
415-653-3750

1

**PRELIMINARY STATEMENT**

2      Plaintiff Loop AI Labs, Inc. ("Loop") seeks to disqualify Venable LLP ("Venable"),

3   chosen counsel for defendants Almawave S.r.l., Almaviva S.p.A., and Almawave USA, Inc.

4   (collectively, "Almawave"), based on a "double-imputation" theory.  Specifically, Loop

5   contends that the prior representation of Loop by Orrick Herrington & Sutcliffe LLP ("Orrick")

6   should be imputed to Peter Sternberg, a former Orrick partner who had no relationship with

7   Loop, never worked on Loop matters, and never accessed any information regarding Loop, and

8   that Sternberg's imputed representation of Loop should then be imputed to Venable, the firm to

9   which Sternberg later moved and current counsel for Almawave.  Loop's theory has been flatly

10  rejected in California and, in any event, is devoid of factual support.

11      Sternberg, a Venable partner and a former Orrick partner, never did work for Loop, never

12  acquired Loop's information (confidential or otherwise), never spoke to Anna Gatti, never spoke

13  to or about Loop with anyone until this lawsuit was filed, and never even heard of Loop prior to

14  this lawsuit.  Because Sternberg never acquired any of Loop's confidential information, he of

15  course could not and did not transfer it to anyone at Venable.  Thus, Venable acquired no

16  improper advantage because of Sternberg's presence at Orrick.  Disqualification is improper

17  under these facts.

18      Loop's supposed examples of Almawave and their counsel using Loop's confidential

19  information highlight the weakness of Loop's motion.  For example, Loop insists that Venable

20  must have acquired confidential information because Venable issued a subpoena to a confidential

21  investment fund asking "extensively detailed questions."  But Venable issued that subpoena only

22  after and because Loop publicly disclosed the name of the fund in its First Amended Complaint

23  ("FAC").  The document requests in the subpoena contain no confidential information at all; they

24  are basic requests based on the allegations in the FAC and nothing more.

25      Loop devotes much of its motion to criticizing Orrick's conflicts check.  But this is a red

26  herring.  During Orrick's concurrent representations of Almawave and Loop, the parties were not

27  then legally adverse, and Loop's proposed substantial relationship test is inapplicable in any

28  event because Sternberg and Venable never represented Loop at any time.

**VENABLE LLP**
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA  94111
415-653-3750

1

Buried in footnote 49 on page 20 of Loop's motion is *Adams v. Aerojet-General Corp.*, 86 Cal. App. 4th 1324 (2001), he controlling California Court of Appeal case that sets forth the test that actually applies here because Loop seeks to "double-impute" a conflict (*i.e.*, first from Orrick to Sternberg, and second from Sternberg to Venable). As *Adams* and its progeny make clear, the type of double-imputation that Loop advances is rejected in California. Rather, the party seeking disqualification must first show that there is a "reasonable probability" that the attorney actually received material confidential information at his prior firm. As explained below, Loop does not meet its burden of showing a reasonable probability that Sternberg received Loop's confidential information. Even if Loop met this burden, the undisputed facts demonstrate that Sternberg did not obtain any of Loop's confidential information, and Loop's motion must be denied on this basis alone.

## STATEMENT OF FACTS

In 2004, Sternberg joined Orrick. Declaration of Peter Sternberg ("Sternberg Decl.), ¶ 1. At that time, defendants Almaviva S.p.A. and/or Almawave S.r.l. were already clients of Orrick, which had represented the companies in litigation. *Id.*, ¶ 3. Shortly after joining Orrick, Sternberg met Almaviva S.p.A.'s Director of Legal Affairs and General Manager of Staff, as well as other Almaviva principals. *Id.*, ¶ 4. Sternberg first provided legal advice to Almawave S.r.l. in April and May 2011, although he did not charge for his advice and did not open a formal matter within Orrick. *Id.*, ¶ 5.

Ten years after Sternberg first met the Almawave principals, in March 2014, Almawave S.r.l. formally engaged Sternberg through Orrick to assist in forming a new indirect subsidiary, Almawave USA, Inc. ("Almawave USA").[1] *Id.*, ¶ 6. Later, Sternberg learned that Almawave USA wished to enter into an employment agreement with an individual named Anna Gatti. *Id.*, ¶ 8. Orrick attorneys based in the Bay Area conformed Orrick's standard employee hiring documents for that purpose. *Id.*, ¶ 8. No Orrick attorneys, including Sternberg, had any contact with Gatti during this process, and no Orrick attorneys, including Sternberg, negotiated terms

---

[1] Almawave USA is a fully-functioning entity that is actively engaged in business. Declaration of Valeria Sandei ("Sandei Decl."), ¶ 8.

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

1    with Gatti or spoke to or emailed her during this process. *Ibid.*; Declaration of Anna Gatti

2    ("Gatti Decl."), ¶ 3). Sternberg was not asked to conduct any diligence about her, and did not in

3    fact conduct any diligence about her. Sternberg Decl., ¶ 8.

4         To this day, Sternberg has never met Gatti in person nor spoken with her on the phone,

5    except for possibly one call relating to Orrick's bills to Almawave well after Gatti signed her

6    employment agreement with Almawave. Sternberg Decl., ¶ 9. By the time Almawave informed

7    Sternberg that Gatti was to be employed, the company had already made its decision to hire her

8    and simply wanted Orrick's assistance conforming a standard form employment contract. *Id.* at

9    ¶ 8; Sandei Decl., ¶ 5.

10        While Sternberg was occasionally copied on emails on which Gatti was also copied or on

11   which Gatti was a recipient or sender, those emails concerned only Almawave USA and never

12   related to Loop in any way. Sternberg Decl., ¶ 9; Gatti Decl., ¶ 6. Sternberg's only direct

13   communication with Gatti occurred in October 2014 in the form of a brief email exchange

14   relating to Almawave billing issues. Sternberg Decl., ¶ 10; Gatti Decl., ¶ 2. That privileged

15   communication did not in any way involve or concern Loop or Gatti's employment with Loop.

16   Sternberg Decl., ¶ 10; Gatti Decl., ¶ 2. Gatti never gave Sternberg any information, much less

17   confidential information, belonging to or concerning Loop or any issues related to this litigation.

18   Sternberg Decl., ¶ 10; Gatti Decl., ¶ 4. Nor has Sternberg received any other communications

19   concerning, or been otherwise exposed to, Loop or any of Loop's confidential information.

20   Sternberg Decl., ¶ 10.

21        Similarly, Almawave has never received any of Loop's confidential information from

22   anyone, including Sternberg or Gatti. Sandei Decl., ¶¶ 2-3.

23        For professional reasons unrelated to any parties or issues in this case, Sternberg left

24   Orrick to join Venable early this year. Sternberg Decl., ¶ 11. His last day with Orrick was

25   January 31, 2015, and his first day with Venable was February 1, 2015. *Id.*, ¶ 11. The timing of

26   Sternberg's departure was based on the timing of his 2014 compensation from Orrick and had

27   nothing to do with this case. *Id.*, ¶ 11. Since Sternberg left Orrick and joined Venable, he has

28   had no role or participation, directly or indirectly, in the Orrick partnership. *Id.*, ¶ 12.

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

3

1    Loop filed this lawsuit on February 20, 2015 – several weeks after Sternberg left Orrick.

2    It was only after the lawsuit was filed that Sternberg even heard the names "Loop" or "Soshoma"

3    for the first time. *Id.*, ¶ 13. While he was a partner with Orrick, Sternberg was unaware of and

4    had never discussed those entities with anyone, nor had he ever spoken with anyone he knew to

5    be associated with those entities. *Id.*, ¶ 13. While Sternberg was at Orrick he was unaware of

6    and never discussed with anyone Gatti's employment with Loop, or indeed anything else about

7    Loop. *Id.*, ¶ 13. Sternberg has never rendered any legal advice or services to Loop, or

8    performed any work for Loop. *Id.*, ¶ 13.

9    Other than the modicum of information Loop provided in this litigation, no one at

10    Venable, including Sternberg, has ever been in possession of, been exposed to, or acquired any

11    confidential information about Loop, its business, its technology, or its investors. Declaration of

12    Thomas Wallerstein ("Wallerstein Decl."), ¶ 3; Sternberg Decl., ¶ 14. Because Sternberg never

13    acquired any of Loop's confidential information, he could not and did not transmit that

14    information to anyone at Venable. Sternberg Decl., ¶ 14.

15    <u>**LEGAL STANDARD**</u>

16    California law governs Loop's motion because courts "apply state law in determining

17    matters of disqualification." *In re Cnty. of L.A.*, 223 F. 3d 990, 995 (9th Cir. 2000); *see also*

18    *S.E.C. v. King Cheun Tang*, 831 F. Supp. 2d 1130, 1131 (N.D. Cal. 2011).[2] Under California

19    law, any "attorneys practicing in this district are required to adhere to 'the standards of

20    professional conduct required of members of the State Bar of California,' which are contained in

21    'the State Bar Act, the Rules of Professional Conduct of the State Bar of California and decisions

22    of any court.'" *Id.* at 1131.

23     "An order of disqualification of counsel is a drastic measure, which courts should

24    hesitate to impose except in circumstances of absolute necessity." *In re Marvel*, 251 B.R. 869,

25

26    _____

27    [2] Contrary to Loop's suggestion, this Court should apply California law, not New York law. *In re Cnty. of L.A.*, 223 F. 3d at 995 (9th Cir. 2000). In any event, New York also rejects Loop's

28    double-imputation theory. *See, e.g.*, *Solow v. W.R. Grace*, 83 N.Y.2d 303 (1994) (no imputed disqualification if the attorney did not obtain confidential information).

4

**VENABLE LLP**
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

871 (N.D. Cal. 2000). "[D]isqualification motions should be subjected to particularly strict judicial scrutiny." *Gotham City Online, LLC v. Art.com, Inc.*, No. C 14-00991 JSW, 2014 WL 1025120, at *3 (N.D. Cal. Mar. 13, 2014) (citing *Optyl Eyewear Fashion International Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1049 (9th Cir.1985)). Loop, therefore, carries a heavy burden and must satisfy a high standard of proof. *See Gotham City*, 2014 WL 1025120, at *3. Because disqualification is "extraordinary relief," it should not be granted where the evidence is vague or uncertain. *See M-I LLC v. Stelly*, No. 4:09-CV-1552, 2010 WL 2196281, at *7 (S.D. Tex. May 26, 2010).

## ARGUMENT

**I.   LOOP'S MOTION FAILS BECAUSE STERNBERG NEVER OBTAINED LOOP'S CONFIDENTIAL INFORMATION AND NEVER HAD AN ATTORNEY-CLIENT RELATIONSHIP WITH LOOP.**

    **A.   The Existence of an Attorney-Client Relationship Is a Prerequisite to Disqualification.**

No matter what test is applied, "[a]n attorney-client relationship must have existed before disqualification is proper." *Strasbourger Pearson Tulcin Wolff Inc. v. Wiz Tech., Inc.*, 69 Cal. App. 4th 1399, 1404 (1999); *see also Allen v. Academic Games Leagues of Am., Inc.*, 831 F.Supp.785, 787 (C.D. Cal. 1993). Conversely, the lack of an attorney-client relationship alone is dispositive of the disqualification inquiry. *See Hayes v. City and Cnty. of S.F.*, No. C06-03510 MJJ, 2007 WL 2021865, at *1 (N.D. Cal. Jul. 12, 2007) ("[The plaintiff] fails to show the existence of an attorney-client relationship between himself and [counsel for defendants]. He therefore fails to establish the first prong of the test for disqualification, the existence of an attorney-client relationship, and the Court need not proceed to the next prong."); *Koo v. Rubio's Restaurants, Inc.*, 109 Cal. App. 4th 719, 729 (2003) ("Disqualification was not proper unless an attorney-client relationship existed . . . .").

Thus, even if the concurrent or successive representation disqualification tests applied, there can be no disqualification unless Loop can prove that Sternberg had an attorney-client relationship with Loop. *See*, e.g., *Jessen v. Hartford Casualty Ins. Co.*, 111 Cal. App. 4th 698,

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA   94111
415-653-3750

709-10 (2003) ("the trial court must <u>first</u> identify where the attorney's former representation placed the attorney with respect to the former client," or put another way, "the relationship between the attorney and the former client with respect to the legal problem involved in the former representation.") (emphasis added).

### B.   Sternberg Never Had An Attorney-Client Relationship With Loop.

Loop must prove the existence of an attorney-client relationship between Sternberg and Loop, not just Orrick and Loop.  California Rule of Professional Conduct 3-310, "Avoiding the Representation of Adverse Interests," governs conflicts an attorney may have between current or successive clients.  But under that rule, a conflict arises only if there was a relationship between the client and "the individual attorney, not the law firm," and therefore disqualification "presuppose[s] that attorney-client confidences are acquired by <u>individual attorneys</u>, not by law firms in general."  *See Adams*, 86 Cal. App. 4th at 1334 (emphasis in original).[3]

"An attorney represents a client – for purposes of a conflict of interest analysis – when the attorney knowingly obtains material confidential information from the client and renders legal advice or services as a result."  *In re Tevis*, 347 B.R. 679, 692 (B.A.P. 9th Cir. 2006) (*quoting People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1148 (1999)).

Neither Sternberg nor Venable ever rendered legal advice or services to Loop.  Sternberg Decl., ¶ 13; Gatti Decl., ¶ 8; Wallerstein Decl., ¶ 3.  Loop admits that "Sternberg never personally billed time to the Orrick/Loop matter."  Mtn. at 19:9-10.  The analysis begins and ends here.  Because neither Sternberg nor Venable rendered legal advice or services to Loop, there was no attorney-client relationship between Sternberg or Venable, on one hand, and Loop on the other, and Loop cannot meet this prerequisite to disqualification.

### C.   Sternberg Never Obtained Loop's Confidential Information.

There also can also be no attorney-client relationship between Sternberg and Loop

---

[3] Even the portion of *Jessen*, 111 Cal.App.4th at 705 cited by Loop is clear that disqualification is not appropriate unless the individual attorney, not just the firm, had the conflict.  *See* Mtn. at 9:6-10.

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA  94111
415-653-3750

because Sternberg never personally obtained any of Loop's information, confidential or otherwise.  Because Loop cannot establish that any confidential information was ever imparted to Sternberg, "no actual representation occurred for the purposes of showing a conflict of interest."  *Med-Trans Corp., Inc. v. City of Cal. City*, 156 Cal. App. 4th 655, 669 (2007); *see also Abubakar v. Cnty. of Solano*, No. CIV. S-06-2268 LKK/EFB, 2008 WL 336727, at *5 (E.D. Cal. Feb. 4, 2008) ("[T]he formation of an attorney-client relationship for conflict of interest purposes turns on 'whether and to what extent the attorney acquired confidential information.'").

Here, no Venable attorneys, including Sternberg, ever obtained Loop's material confidential information.  Wallerstein Decl., ¶ 3; Sternberg Decl. ¶ 14.  While at Orrick, Sternberg was unaware of and never discussed with anyone anything about Loop.  Sternberg Decl., ¶ 13.  While at Orrick, Sternberg never even knew that anyone at Orrick was representing Loop.  *Id.*, ¶ 15.  Gatti never transferred any of Loop's confidential information to Sternberg at any time.  Gatti Decl., ¶ 4; Sternberg Decl., ¶ 14.  While at Orrick, Sternberg's only direct interaction with Gatti was a single privileged email exchange relating to billing issues for Almawave that did not in any way involve or concern Loop.  Gatti Decl., ¶ 2; Sternberg Decl., ¶ 10.[4]

Loop points to several instances where Sternberg and Venable purportedly used confidential information "that they could not have had but for their improper access to Loop AI's confidential information through Sternberg."  Mtn. at 4:22-25; *see also id.* at 19:13-20:2.

First, Loop argues that Venable would not have been able to identify the name of one of its potential investors – WI-Harper – and draft subpoena topics for WI-Harper without Loop's confidential information.[5]  Mtn. at 4:26-28.  But the only reason that Venable knew that WI-Harper was a potential investor in Loop is because <u>Loop itself disclosed in the FAC that WI-</u>

---

[4] Almawave has also never received any of Loop's confidential information, whether from Gatti, Sternberg, or anyone else.  Sandei Decl., ¶¶ 2-3.

[5] The Declaration of Gianmuoro Calafiore) [Dkt. No. 199-1] repeats the false speculation.  *Id.*, ¶ 7.  Almawave objects that this evidence is inadmissible because it calls for speculation, lacks foundation and lacks personal knowledge.  F.R.E. 602.

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

1    <u>Harper was a potential investor</u>.  *See* Dkt. No. 45 (FAC), ¶ 116.  Almawave had not even heard

2    of WI-Harper at the time Venable served the subpoena.  Sandei Decl., ¶ 6.  No Venable attorneys

3    working on this matter had heard of WI-Harper until after they reviewed the FAC.  Wallerstein

4    Decl., ¶ 4; Sternberg Decl., ¶ 16.  Additionally, no confidential information was used to draft the

5    subpoena document requests.  Wallerstein Decl., ¶ 4.

6         Next, Loop argues that Venable's litigation counsel disclosed Loop's confidential

7    information to Loop's counsel during a phone call on March 5, 2015.  *See* Mtn. at 19:20-21:1.

8    This is false; Venable's litigation counsel did not discuss Loop's confidential information

9    (because, among other reasons, he did not possess any).  Wallerstein Decl., ¶ 5.  The conclusory,

10   unsupported assertion by Loop's counsel that Almawave's counsel "detailed knowledge of

11   specific investor and other Loop AI matter[s] that were highly-confidential" (Healy Decl., ¶ 19)

12   is insufficient basis to conclude that Venable obtained Loop's confidential information.[6]

13   ## II.    MERE "ACCESS" TO CONFIDENTIAL INFORMATION IS INSUFFICIENT

14   ## FOR DISQUALIFICATION.

15        Loop's Motion repeatedly refers to and relies on the purportedly "direct and extensive

16   access to confidential and privileged information of Loop."  Ntc. of Mtn. at 2:24-25.  But

17   Sternberg's mere (and supposed) "access" is insufficient to support the disqualification Loop

18   seeks.

19        For instance, Loop argues that because Sternberg theoretically had access to Gatti while

20   he was at Orrick, Sternberg necessarily had access to all the confidential Loop information to

21   which Gatti herself had access.  However, Sternberg never spoke with Gatti, and the only direct

22   communication between the two was a single privileged email exchange which was completely

23   unrelated to Loop.  Sternberg Decl., ¶ 10; Gatti Decl., ¶ 2.

24        Loop vaguely argues that Sternberg's involvement in negotiating Gatti's contract with

25   Almawave would have exposed him to confidential Loop information, but cannot explain how

26   ─────────────────────

27   [6] Following the March 5 call, Loop's counsel repeatedly referred to the call.  Wallerstein Decl., ¶
     6.  It was only in the context of this motion that Loop's counsel "remembered," six months later,

28   that confidential information allegedly was disclosed.  *Id.*

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA  94111
415-653-3750

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

1    this is so.  In any event, Sternberg never negotiated Gatti's contract with Almawave and never

2    communicated with Gatti regarding that contract.  Sternberg Decl. ¶ 8; Gatti Decl., ¶ 3; Sandei

3    Decl., ¶ 5.

4         Loop further argues that "Orrick also prepared a patent application for Alma[wave] that

5    covers the same area of technology of Loop AI's proprietary technology, and on which Gatti

6    appears to have provided input."  Mtn. at 2:20-23.  Loop's inadmissible evidence aside,[7] this is

7    factually untrue.  The patent Almawave applied for is not in the "same area of technology" as

8    Loop's technology (Sandei Decl., ¶ 9), and neither Gatti nor Sternberg had input on it (Gatti

9    Decl., ¶ 7; Sternberg Decl., ¶ 17).

10        Loop asserts that "[t]he Orrick team of lawyers and paralegals that worked [on the

11   Almawave USA] matter overlapped with the Orrick team that worked on [the Loop matter] – at

12   least three fee-earners billed time to both clients, and most of the Orrick fee earners on

13   Sternberg's Almaviva team were part of Orrick's corporate group, including its tight-knit

14   compensation and benefits subgroup, which in the United States has only 9 lawyers."  Mtn. at

15   3:5-8.  Even if this statement of Loop's counsel were admissible,[8] the mere fact that other

16   attorneys at Orrick (but not Sternberg) worked on Almawave and Loop matters does not show

17   that Loop's confidential information was, nor would ordinarily have been, imparted to Sternberg.

18   *See Streetspace, Inc. v. Google, Inc.*, No. C 11–04574 JW, 2012 WL 293642, at *3 (N.D. Cal.

19   Feb. 1, 2012) (holding that the fact that the attorney in question "worked on one occasion with

20   [an attorney who represented the client seeking disqualification] on another project . . . [did not]

21   support[] the contention that [the attorney in question] obtained confidences regarding [the client

22   seeking disqualification] while at [his prior firm], let alone rebuts his unequivocal assertion that

23

---

24   [7] Almawave objects to this testimony as lacking foundation and constituting expert opinion from

25   a lay witness.  F.R.E. 602, 701.

26   [8] The Healy and Calafiore Declarations are cited as examples in support of this assertion, but no

27   specific paragraph or exhibits therein are cited.  Healy's assertion that "[t]hree of the Orrick

     attorneys used by Attorney Sternberg on the [Almawave] matter also worked on the [Loop]

     matter" (Healy Decl., ¶ 20) is inadmissible on grounds of hearsay, lack of personal knowledge

28   and lack of foundation.  *See* F.R.E. 602, 802.

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA  94111
415-653-3750

1   he did not").

2          Loop fails to submit any evidence that Sternberg actually obtained Loop's material

3   confidential information, and mere inference based on access or exposure is insufficient to

4   warrant disqualification.  *See Ochoa v. Fordel, Inc.*, 146 Cal.App.4th 898, 911-12 (2007)

5   (finding that the fact that an attorney had access to confidential information is not "a sufficient

6   basis for finding or conclusively presuming that confidential information material to the current

7   representation would normally have been imparted to the attorney during his tenure at the old

8   firm."); *In re EXDS, Inc.*, No. C05-0787 PVT, 2005 WL 2043020, at *2 (N.D. Cal. Aug. 24,

9   2005) ("Mere exposure to the confidences of an adversary does not, standing alone, warrant

10  disqualification.").

11         Indeed, courts specifically reject the "access" argument which Loop relies on here.  "[I]f

12  disqualification was required based merely on having access to confidential records . . ., then

13  disqualification of every attorney within a firm would be required where . . . all attorneys and

14  staff throughout the United States could access the system," and "[s]uch a broad rule would be

15  inconsistent with the directive of *Adams* to 'engage in a fact-based examination.'" *Streetspace,*

16  2012 WL 293642, at *3; *see also Ochoa*, 146 Cal. App. 4th at 911 n.8 (rejecting the proposition

17  that "mere access to confidential information always creates a substantial relationship that

18  mandates disqualification.").  Thus, Sternberg's theoretical "access" to Loop's confidential

19  information is not sufficient basis for disqualification absent a showing that Sternberg actually

20  obtained Loop's confidential information.[9]

21  **III.    CALIFORNIA REJECTS LOOP'S DOUBLE-IMPUTATION THEORY.**

22         Loop's disqualification motion is based on a theory of double-imputation:  Loop first

23  asks the Court to impute John Bautista's[10] purportedly conflicted representation of Loop to all

24  Orrick attorneys, including Sternberg.  Loop then asks the Court to make the additional leap of

25

26  _____

27  [9] Loop itself characterizes its Motion as based on a double-imputation theory – not a theory that
    Sternberg or Venable actually obtained Loop's confidential information.  *See* Mtn. at 1:6, n.4.

28  [10] John Bautista was the Orrick partner in charge of Loop matters.  Sternberg Decl., ¶ 15.

DEFENDANT ALMAWAVE USA, INC.'S OPPOSITION TO LOOP AI
LABS, INC.'S MOTION TO DISQUALIFY VENABLE LLP

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

imputing Sternberg's supposed imputed conflict to Sternberg's new firm, Venable, and by extension, the Venable attorneys representing Almawave in this litigation.

California has rejected Loop's double-imputation theory for disqualification motions. Instead, to the extent there is a question as to whether an attorney obtained a client's confidential information at his prior firm, California courts apply the "modified substantial relationship" test for disqualification in double-imputation situations. *Adams,* 86 Cal. App. 4th at 1337.

A.    ***Aerojet* And Its Progeny Reject Loop's Double-Imputation Theory.**

California has definitively rejected Loop's proposed double-imputation theory in the disqualification context as unnecessary and inconsistent with the modern practice of law. *See, e.g., id.* at 1337; *Frazier v. Super. Ct.*, 97 Cal. App. 4th 23, 31 (2002) ("What [the] parties seek is a double imputation . . . . But [the] parties cite no California case casting the shadow of taint this far . . . . To reimpute knowledge from [an attorney with no actual knowledge] to [that attorney's new firm] would be to go too far."); *Dieter v. Regents of Univ. of Cal.*, 963 F. Supp. 908, 911 (E.D. Cal. 1997) (denying defendant's motion to disqualify based a theory of "imputation upon imputation – imputing to the attorney knowledge of confidences in the first representation and then imputing to the attorney's new firm knowledge of these imputed confidences.").

Moreover, "[d]isqualification based on a conclusive presumption of imputed knowledge derived from a lawyer's past association with a law firm is out of touch with the present day practice of law" in which firms are larger, with multiple offices across state and national borders; attorneys more frequently switch firms; and imputing conflicts to the new firm in this context "would . . . pose insurmountable practical problems in screening for conflicts" when lawyers make lateral moves. *Adams*, 86 Cal. App. 4th at 1336; *see also United States v. Ketner*, 370 F. Supp. 2d 1045, 1046-47 (C.D. Cal. 2005).

B.    **Loop Fails The "Modified Substantial Relationship" Test Because It Fails To Show That There Was A Reasonable Probability That Sternberg Obtained Loop's Confidential Information.**

Loop admits the substantial relationship test is merely a proxy for determining whether Sternberg actually obtained confidential information from Loop. *See* Mtn. at 18:1, n.42. Here,

11

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

1  the evidence proves that Sternberg obtained no confidential information, rendering even the

2  modified substantial relationship test superfluous.  *See Ochoa*, 146 Cal.App.4th at 908-09

3  (upholding denial of motion to disqualify and holding that even where modified substantial

4  relationship test is met, disqualification is not warranted where there is an affirmative showing

5  that the attorney did not obtain confidential information).[11]  Here, disqualification is improper

6  even if the test is satisfied.[12]

7           Even if it was uncertain whether Sternberg obtained Loop's confidential information,

8  rather than "double-imputing" a conflict, California courts would use the "modified substantial

9  relationship" test to "determine whether confidential information material to the current

10  representation would normally have been imparted to the attorney during his tenure at the old

11  firm."  *See Frazier*, 97 Cal. App. 4th at 33.  The following factors apply:

12           (1) "the relationship, if any, between the attorney and the former client's
         representation;" (2) "any time spent by the attorney working on behalf of the
13         former client and the attorney's possible exposure to formulation of policy
         or strategy in matters relating to the current dispute;" (3) "whether the
14         attorney worked out of the same branch office" that handled the prior
         matter; and (4) "whether his administrative or management duties may have
15         placed him in a position where he would have been exposed to matters
         relevant to the current dispute."

16  _____

17  [11] Loop relies on *FlatWorld Interactives LLC v. Apple, Inc.*, No. 12–cv–01956–WHO, 2013 WL

18  4039799 (N.D. Cal. Aug. 7, 2013), but that case confirms that disqualification is not warranted
    because Sternberg never had Loop's confidential information.  In *FlatWorld*, despite the fact that

19  the two representations at issue both related to the same Apple patent (*id*. at *1), and despite
    finding that the attorney sought to be disqualified clearly breached his duty of loyalty to Apple

20  (*id*. at *7), disqualification was improper because there was no showing that the attorney in
    question had obtained Apple's confidential information.  Accordingly, the Court denied the

21  motion to disqualify.

22  [12] The Motion fails even under Loop's proposed "substantial relationship" test (Mtn. at 17:21-

23  24), which would still require Loop to prove the existence of a "direct relationship" between
    Loop and Sternberg.  *W. Sugar Coop. v. Archer-Daniels-Midland Co.*, No. CV 11–3473 CBM

24  (MANx), 2015 WL 690306, at *4 (C.D. Cal. Feb. 13, 2015); *H.F. Ahmanson & Co. v. Salomon
    Brothers, Inc*., 229 Cal.App.3d 1445, 1454 (1991).  Even *Jessen*, the case Loop relies on to

25  establish the substantial relationship standard acknowledges that "the trial court must first
    identify where the attorney's former representation placed the attorney with respect to the former

26  client . . . ."  *Jessen, supra*, 111 Cal.App.4th at 710.  Thus, even under Loop's proposed test,

27  disqualification is improper because Sternberg has never had any relationship with Loop.

28

*Id.*

  1. <u>There Was No Relationship Between Bautista's Representation Of Loop And Sternberg's Work At Orrick.</u>

There is no relationship between Sternberg and the work that Orrick did for Loop. According to Loop, "Orrick's representation of Loop AI covered employment matters and matters related to the issuance of Loop AI stock and included Loop's employment of Defendant Gatti and its issuance of stock to her." Mtn. at 2:1-3. But in contrast to Orrick's work for Loop performed under the direction of Bautista, Sternberg's work at Orrick had nothing to do with Loop, including its employment matters, matters related to issuance of Loop stock, Loop's employment of Gatti, and Loop's issuance of stock to Gatti. Sternberg Decl., ¶ 18.

Loop asserts, without any evidence, that "Steinberg [sic] and the team of Orrick attorneys headed by him helped Almaviva . . . to negotiate and implement agreements with Anna Gatti that required Gatti to breach various contractual and fiduciary obligations owed by Gatti" to Loop. Mtn. at 2:13-16. This is false. Sternberg did not help negotiate Almawave's employment contract with Gatti or, for that matter, Loop's contract with Gatti. Sternberg Decl., ¶¶ 8, 18; Sandei Decl., ¶ 5. Loop also asserts, without any basis, that "Venable's response to a Subpoena issued by Loop AI confirms that Sternberg also has been advising Almaviva about the Loop AI's agreements with Gatti." Venable's response to Loop's subpoena said no such thing (*see* Healy Decl., Ex. A), and Sternberg's work at Orrick did not include advising Almawave about any agreement Loop had with Gatti prior to leaving Orrick (Sternberg Decl., ¶ 13; Sandei Decl., ¶ 5.). As explained above, Sternberg had never even heard of Loop until after he left Orrick.[13] Sternberg Decl., ¶ 13.

  2. <u>Sternberg Spent No Time Working For Loop And Was Never Exposed To Loop Policy Or Strategy Relating To The Current Dispute.</u>

Loop concedes that "Sternberg never personally billed time to" Bautista's and Orrick's

---

[13]Sternberg left Orrick for professional unrelated to any parties or issues in this case. Sternberg Decl., ¶ 11. And neither Almawave nor Sternberg nor Venable ever "concealed" Sternberg's long and open relationship with Almawave.

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

Loop matter (Mtn. at 19:9-10). In fact, Sternberg has never worked on Loop matters.  Sternberg Decl., ¶ 18.  Sternberg has never been in possession of, been exposed to, or acquired any of Loop's confidential information.  *Id.*, ¶ 14.  Sternberg has never spoken to any Loop principals, including Gatti, and had only passing conversations with Bautista irrelevant to this dispute, the most recent of which were mere pleasantries exchanged three years ago at a partner retreat.  *Id.*, ¶¶ 10, 13, 15.  Thus, Sternberg was not exposed to Loop policy or strategy at all, much less relating to this matter.

> 3.  Bautista Works In Orrick's Silicon Valley Office While Sternberg Worked In Orrick's New York Office And Frequently Was In Europe.

That Bautista and Sternberg worked across the country from each other, and Sternberg frequently was in Europe working with his clients there (Sternberg Decl., ¶ 2), weighs strongly against Loop.  *See Dieter*, 963 F. Supp. at 911 (E.D. Cal. 1997) (noting that the attorneys in question "worked out of the San Francisco office, as opposed to the Palo Alto office, which had the [client who sought disqualification's] accounts"); *See Flatworld,* 2013 WL 4039799, at *5 ("The traditional concern behind the conflict-imputation rule [is] that attorneys physically working closely together might come upon confidential information about a particular client even without working on that client's matters").

> 4.  Sternberg Had No Administrative Or Management Duties That Put Him In A Position To Obtain Loop's Confidential Information.

Sternberg also had no firm-wide administrative or management duties at Orrick, did not have any such roles in Orrick's corporate department, and did not have any such role in Orrick's Silicon Valley office, from where Orrick's representation of Loop was based.  Sternberg Decl., ¶ 2.  Sternberg has never been to Orrick's Silicon Valley office, and was last in San Francisco a few years prior to when Almawave S.r.l. retained him to assist in forming Almawave USA.  *Ibid*. The fact that an attorney "never worked in an administrative position where his duties would have intersected with the [former] engagement" supports "the conclusion that [the attorney] was not exposed to the [former engagement] while at" his or her prior firm.  *See Ketner*, 370 F. Supp. 2d at 1048; *Streetspace,* 2012 WL 293642, at *3 (denying motion to disqualify where the

14

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA  94111
415-653-3750

1   attorney's "management responsibilities as a partner [at his prior firm] were limited to the cases

2   he handled" and "never held any firm-wide management functions").

3   **IV.**   **THE "CONCURRENT REPRESENTATION" TEST DOES NOT APPLY.**

4          As explained above in Section I, *supra*, disqualification is improper in the absence of an

5   attorney-client relationship between Sternberg and Loop.  *See Hayes*, 2007 WL 2021865, at *1;

6   *W. Sugar Coop.*, 2015 WL 690306, at *4; *Khani v. Ford Motor Co.*, 215 Cal.App.4th 916, 920

7   (2013); *Jessen*, 111 Cal.App.4th at 705 (concurrent representations are those in which an

8   "attorney simultaneously represents clients with potential or actual adverse interests").[14]

9          Loop contends that the Court should apply the concurrent representation test to analyze

10  this dispute; however, the test is inapplicable because there is simply no simultaneous

11  representation.  Sternberg and Venable represent Almawave, but they do not represent Loop.

12         While Orrick at one time did simultaneously represent Loop and Almawave,[15] there was

13  no conflict then because Loop and Almawave were not adverse at the time.[16]  An actual conflict

14  exists where the attorney's representation of one client is rendered less effective by reason of the

15  representation of the other.  *See Blue Water Sunset, LLC v. Markowitz*, 192 Cal.App.4th 477,

16  499-89 (2011).  A potential conflict exists where an actual conflict is reasonably foreseeable and

17  not simply hypothetical.  *See Havasu Lakeshore Investments, LLC v. Fleming*, 217 Cal.App.4th

18  770, 779 (2013).[17]

19         Here, Loop and Almawave only became legally adverse when Loop's complaint was

20  filed.  Ex post facto, Loop decries that Gatti was working for both clients.  But sharing an officer

21

22  [14] Loop implies that Sternberg still has some relevant connection to Orrick.  Mtn. at 11:19, n. 30.
    This is false; Sternberg currently has no relevant connection to Orrick.  Sternberg Decl., ¶ 12.

23  [15] Loop implies that Orrick still represents Almawave.  Mtn. at 10:12, n. 26.  This is false; Orrick
24  does not represent Almawave for any matters.  Sandei Decl., ¶ 4.

    [16] Orrick no longer represents Loop.  Mtn. at 10:12, n. 26.
25
26  [17] To the extent Loop implies that Loop and Almawave were business competitors, the mere
    representation of two business competitors does not create a conflict. *See, e.g.*, ABA Model Rule
27  1.7, Comment 6 ("[S]imultaneous representation in unrelated matters of clients whose interests
    are only economically adverse, such as representation of competing economic enterprises in
    unrelated litigation, does not ordinarily constitute a conflict of interest and thus may not require
28  consent of the respective clients.").

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA  94111
415-653-3750

1  does not make two clients adverse.  Before Loop filed its suit, any conflict between Loop and

2  Almawave would have been merely speculative or hypothetical, and "[s]peculative contentions

3  of conflict of interest cannot justify disqualification of counsel."  *DCH Health Servs. Corp. v.*

4  *Waite*, 95 Cal. App. 4th 829, 851 (2002).

5       Even though this case does not involve a concurrent representation, Loop argues that the

6  Court should nonetheless apply the concurrent representation rule.  *See* Mtn. at 9:20-23.  Loop's

7  argument lacks any legal basis, and the Second Circuit case cited by Loop for this proposition

8  (*Fund of Funds v. Arthur Andersen*, 567 F.2d 225 (2nd Cir. 1977)) does not even discuss the

9  concurrent representation test, much less approve of its application in any situation other than a

10  true concurrent representation.  *Fund of Funds* is distinguishable because it involves a concurrent

11  representation – simultaneous representation of two current clients.  Moreover, *Fund of Funds*

12  does not address the effect of a departing attorney.

13  **V.     STERNBERG'S ALLEGED ROLE IN THE CASE DOES NOT WARRANT**
          **DISQUALIFICATION.**
14

15       A.     **Loop Does Not Have Standing To Seek Disqualification Based On A**
                **Purported Breach Of A Duty Owed To Almawave By Sternberg Or Venable.**
16

17       According to Loop, Sternberg could face malpractice litigation for "failing to do more to

18  protect" Almawave from this litigation.  Mtn. at 22:11.  This speculative and attenuated

19  suggestion is, in any event, irrelevant to potential disqualification.

20       Loop lacks standing to bring a motion to disqualify Venable based on a purported

21  violation of Sternberg's or Venable's duty of loyalty to Almawave because "a non client litigant

22  must establish a personal stake in the motion to disqualify sufficient to satisfy the 'irreducible

23  constitutional minimum' of Article III.  Generally, only the former or current client will have

24  such a stake in a conflict of interest dispute."  *Colyer v. Smith*, 50 F. Supp. 2d 966, 971 (C.D.

25  Cal. 1999).  "[A] generalized attorney interest in the integrity of the legal system . . . [is]

26  insufficient in this Court's view to support standing in an attorney to move to disqualify

27  opposing counsel."  *Id.* at 972.

28

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA  94111
415-653-3750

16

Even if there was "conflicted representation of a current client" in this case, Almawave can waive that conflict. *Abraham v. Super Buy Tires Inc.*, No. 05cv1296-B (NLS), 2007 WL 173846, at *3 (S.D. Cal. Jan. 10, 2007). Here, if and to the extent any such conflict of interest were deemed to exist, Almawave consents to Venable's representation. Sandei Decl., ¶ 7.

B.   **Sternberg Has Not Appeared In This Case And Will Not Serve As Trial Counsel.**

Sternberg's alleged involvement in the facts of the litigation is not grounds for disqualification because Sternberg is not trial counsel and has not appeared in the case (nor does he plan to). "Rule 5–210 is also not intended to apply where a partner or associate in the advocate's firm will act as a witness . . . [and] does not prevent [the attorney-witness's] firm from continuing to represent [a party] at trial while [the attorney-witness] testifies as a witness." *Benas v. Baca*, No. CV-0011507-LGB(SHX), 2003 WL 21692037, at *1 (C.D. Cal. Jul. 10, 2003); *Haynes v. R.H. Dyck, Inc.*, No. 2:06-CV-02944-MCE-EFB, 2008 WL 80749, at *2 (E.D. Cal. Jan. 7, 2008).

Moreover, even if Sternberg really was a critical witness, that would only bar his participation at a trial itself, and not in any pre-trial activity. "[T]he advocate-witness rule disqualifies the attorney only from acting as an advocate at trial." *DHR Int'l Inc. v. Charlson*, No. C 14–1899 PJH, 2014 WL 4808752, at *9 (N.D. Cal. Sept. 26, 2014); *Yee v. Ventus Capital Servs.*, No. C 05–03097(RS), 2006 WL 3050827, at *1 n.2 (N.D. Cal. Oct. 26, 2006). Thus, even if Sternberg were to be called as a witness at trial, he could still "participat[e] in pretrial activities, preparation of briefs and pleadings, and planning and trial strategy." *See DHR*, 2014 WL 4808752, at *9.

Finally, even if Sternberg were a necessary witness at trial and was trial counsel for Almawave, Almawave may still consent to his dual roles as witness and advocate. Cal. R. Prof. Conduct, Rule 5-210 ("A member shall not act as an advocate before a jury which will hear testimony from the member unless . . . [t]he member has the informed, written consent of the client."); *River West, Inc. v. Nickel*, 188 Cal. App. 3d 1297, 1308 (1987).

V E N A B L E  L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

17

C.   **Loop May Not Manufacture a Conflict Through Its Amended Pleading.**

Loop cannot cause disqualification just by amending its complaint to allege a conflict. Sternberg, who was mentioned in neither the original complaint nor the FAC, now according to the Second Amended Complaint ("SAC") is at the center of an international conspiracy to injure Loop. Loop insists that in light of its allegations, "crucial aspects of Orrick's representation are . . . directly at issue." Mtn. at 4:10-11. Loop added dozens of (baseless) allegations against Sternberg, and now argues that "[t]he plain allegations in the complaint, as amended, can leave no doubt that there is a substantial relationship between the representations." Mtn. at 4:17-18.

Courts reject such ploys.[18] *See, e.g., Adams v. Village of Keesville*, No. 8:07-CV-452 (LEK/RFT), 2008 WL 3413867, at *10 (N.D.N.Y. Aug. 8, 2008) (denying motion to disqualify despite the fact that the movant "has woven [the law firm] and [the attorney's] representations of others throughout the entire fabric of her lawsuit . . . [and both] are mentioned throughout the chronology of events that underline her actions against these ten Defendants"); *see also Fed. Home Loan Mortg. Corp. v. La Conchita Ranch Co.*, 68 Cal. App. 4th 856 (1998) ("In the absence of an actual conflict . . . , a party should not be able to create one through the simple expediency of filing a [complaint]. Any other rule would give a party the power to reject his opponent's choice of counsel.").[19]

D.   **Sternberg's Testimony At Trial Is Not Necessary.**

Contrary to Loop's assertions, Sternberg does not have a "unique knowledge of certain

---

[18] Loop's addition of the dozens of allegations to the SAC relating to Sternberg also violates Federal Rule of Civil Procedure 15 and this Court's September 2, 2015 Order granting in part and denying in part Almawave USA's Motion to Dismiss. Dkt. No. 186. In that Order, this Court granted Loop leave only "to amend its pleading to address the deficiencies discussed above" in the Order. *Id.* at 12. Loop's new Sternberg allegations do not relate to the pleading deficiencies in the FAC and in fact Loop added four additional claims. The Federal Rules provide that, after amending once, further amendment may be made "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

[19] Loop's SAC "is no ordinary pleading. It makes the gravest charges against . . . attorneys, impugning their honesty and professional integrity and implying criminal wrongdoing." *Kendrick v. Zanides*, 609 F. Supp. 1162, 1173 (N.D. Cal. 1985) (sanctioning attorney pursuant to Federal Rule of Civil Procedure 11).

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

V E N A B L E  L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA  94111
415-653-3750

key facts" (Mtn. at 24:8).  In truth, Loop has no legitimate need to call Sternberg as a witness at trial because he does not know anything even potentially relevant to Loop's claims.  Loop relies on its vague and unspported assertion that "[a]s attorney in charge of Orrick's relationship with Almawave S.r.l., Sternberg's knowledge of, and testimony in regards to this matter will be highly material in this case."  *Id.*[20]

In any event, Loop's suggestion that Sternberg will be an important witness at trial is insufficient to disqualify him or Venable.  *See Optyl Eyewear*, 760 F.2d at 1050 (denying motion to disqualify where the "prejudice [the movant] describes would exist in all cases, and courts would be forced to grant disqualification motions whenever counsel threatens to call opposing counsel").  "The ethical rules are not intended to allow a lawyer to disqualify opposing counsel merely by calling him or her as a witness."  *See DHR*, 2014 WL 4808752, at *9.

*Eurocom, S.A. v. Mahoney, Cohen & Co.*, 522 F. Supp. 1179 (S.D.N.Y. 1981) is not instructive.  *Eurocom* is a 1981 case in which the court granted a motion to disqualify a law firm based on then-operative N.Y. Disciplinary Rule 5-101(B), which required that a lawyer not accept employment in contemplated or pending litigation "if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness."  *Id.* at 1180.  While the analogous California Rules of Professional Conduct Rule 5-210 contains similar language, the California Supreme Court amended the Discussion of the Rule in 1992 to expressly clarify that "Rule 5-210

---

[20] Attached to the Healy Declaration as Exhibit D are what Loop's counsel purports to be "true and correct copies of correspondence . . ." (*id.* at ¶ 14), which Loop argues is evidence that "Sternberg assisted . . . in implementing agreements with Gatti . . . that were designed to conceal the payment of illegal bribes."  Mtn. at 24:10-12.  Almawave objects that these documents and Loop's characterization are inadmissible on grounds of hearsay, lack of personal knowledge and lack of foundation.  F.R.E. 602, 802.  Almawave further objects that the documents are not authenticated.  F.R.E. 901; *see also Mendonca v. Caliber Home Loans, Inc.*, No. CV 14–02384 BRO (AJWx), 2015 WL 1566847, at *2-3 (C.D. Cal. Apr. 6, 2015); *SDS Korea Co., Ltd. v. SDS USA, Inc.*, 732 F. Supp. 2d 1062, 1073 (S.D. Cal. 2010) (sustaining objection to email correspondence because the declarant's testimony "lacks foundation, and he does not have personal knowledge regarding the accuracy and authenticity of the email correspondence . . . [because the declarant] does not appear as a recipient on the email correspondence").  Even if the correspondence were admissible, it does not show that Sternberg was involved in anything relating to Loop, much less does it support Loop's outrageous accusation.

19

1   is not intended to apply to circumstances in which a lawyer in an advocate's firm will be a

2   witness." *Id*. at Discussion.  Thus, California rejects the holding of *Eurocom* (*i.e.*, that a law firm

3   should be disqualified because one of its lawyers will be a witness at trial).

4   **VI.    DISQUALIFICATION WOULD IMPEDE NOT ADVANCE THE**

5   **ADMINISTRATION OF JUSTICE.**

6          Loop's argument that "Venable's conflicted representation of the Almaviva Defendants is

7   likely to impede the efficient administration of justice" lacks citation to any precedent and cannot

8   serve as a basis for disqualification.  Similarly, Loop's reliance on "an appearance of impropriety

9   [that] is likely to impede the integrity of justice" is misplaced.  To the contrary, "California

10  courts . . . are in agreement that the mere appearance of a conflict is not sufficient to justify

11  disqualifying an attorney from a representation." *Kirk v. First Am. Title Ins. Co.*, 183 Cal. App.

12  4th 776, 808 n.27 (2010) (emphasis omitted).

13         A.    **Disqualification Would Prejudice Almawave And Violate Almawave's Right**

14               **To Counsel Of Its Choice.**

15         Loop's Motion should be denied because granting it would significantly prejudice

16  Almawave by depriving it of its trusted counsel and friend for over a decade, Sternberg, and its

17  litigation counsel which has already spent significant time and money litigating this case and

18  becoming familiar with the claims and evidence.

19         Loop suggests there will be no prejudice to Almawave from disqualification because "the

20  case is still in its early stages."  But Almawave has already incurred hundreds of thousands of

21  dollars in legal fees from Venable in defending this case.  Where the attorneys whose

22  disqualification have spent that much time, and their clients that much money, prejudice exists to

23  the party whose attorneys would be disqualified. *See, e.g.*, *River West*, 188 Cal. App. 3d at 1313

24  (finding waiver of a right to disqualify in light of time and money already spent).[21]

25

26  _____

27  [21] Loop asserts that Almawave will not be prejudiced because their fees are being paid by
    insurance.  Mtn., 6.  Loop lacks any factual basis for its false assumption.

28

DEFENDANT ALMAWAVE USA, INC.'S OPPOSITION TO LOOP AI
LABS, INC.'S MOTION TO DISQUALIFY VENABLE LLP

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA  94111
415-653-3750

1    In addition, Sternberg has served as Almawave's counsel since 2011 (Sternberg Decl. at ¶

2    5), before Loop ever retained Bautista and Orrick.[22]  Disqualification would violate Almawave's

3    right to its choice of counsel.  *See Smith, Smith & Kring v. Superior Court*, 60 Cal.App.4th 573,

4    580 (1997) (in ruling on disqualification "the court must consider the combined effects of the

5    strong interest parties have in representation by counsel of their choice, and in avoiding the

6    duplicate expense and time-consuming effort involved in replacing counsel already familiar with

7    the case.").

8    B.    **Loop's Assertions About The Conflicts Checks At Orrick Are Baseless And**

9          **Irrelevant.**

10   Loop argues that because there was a purported failure to adequately screen conflicts at

11   Orrick, the rules governing concurrent conflicts, successive conflicts, and imputation of conflicts

12   should be cast aside.[23]

13    "[T]he fact that [an attorney] did not perform a broader conflicts check is not probative

14   as to whether counsel now possesses confidential material."  *Barco N.V. v. Tech. Props. Ltd.*, No.

15   5:08–cv–05398 JF (HRL), sc2011 WL 841283, at *2 (N.D. Cal. Mar. 8, 2011); *see also Scala's*

16   *Original Beef & Sausage Co., LLC v. Alvarez*, No. 09-cv-7353, 2009 WL 4823916, at *3 n.1

17   (N.D. Ill. Dec. 10, 2009) (denying motion to disqualify and stating that the suggestion that a

---

18

19   [22] Loop assumes that Almawave's hiring of Orrick "was not coincidental" and must have been
20   due to Orrick's connection to Loop (Mtn. at 13:21, n.35).  In fact, Almawave had retained Orrick
     on the recommendation of Almawave employees, and not due to any connection between Orrick
21   and Loop.  Sandei Decl., ¶ 4.  Indeed, Almaviva also had a long-standing prior relationship with
     Orrick in unrelated litigation matters.

22   [23] Loop has offered no admissible evidence on (a) Orrick's conflict clearance procedures; (b)
23   what conflicts check, if any, Bautista or his team conducted; (c) what conflicts check, if any,
     Sternberg or his team conducted; or (d) what the result would have been had some additional
24   conflict check been run.  The Valeria Calafiore Healy declaration [Dkt No. 199-2] attaches what
     she purports to be true and correct copies of Orrick's conflicts reports as Exhibits C and E.  *Id.* at
25   ¶¶ 13, 15.  Almawave objects that these documents are inadmissible on grounds of hearsay, lack
     of Healy's personal knowledge and lack of foundation.  F.R.E. 602, 802.  Almawave further
26   objects that the documents are not properly authenticated.  F.R.E. 901; *see also Mendonca*, 2015
27   WL 1566847, at *2-3 ("[T]he assertion by [the movant's] attorney that these are 'true and correct
     copies' . . . is insufficient to authenticate a document where the declarant
28   lacks personal knowledge of the exhibits in question.").

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA  94111
415-653-3750

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

1    "firm may not have conducted a thorough conflicts check prior to agreeing to take on the current

2    litigation . . . alone does not provide a basis for disqualification").

3              The court in *Barco*, quoting *Aerojet*, held that once a "tainted" attorney switches firms,

4    "the court's focus shifts to[] 'whether confidential information was actually exchanged.'" *Barco*,

5    2011 WL 841283, at *2.  *Barco* rejected an inventor's argument that a firm's "failure to discover

6    the potential conflict itself is evidence of breach . . . [and] that it was incumbent upon [the firm]

7    to check for conflicts not only between the firm and opposing parties but also between the firm

8    and the inventor." *Id*.  While noting "that this would have been better practice" for conflicts

9    check, the Court denied the inventor's motion to disqualify, holding that it "may rely on

10   declarations showing that none of [the plaintiff's] attorneys [at Baker] has received confidential

11   information stemming from [Baker's] previous representation of [the inventor]." *Id*. at *2.

12             Other courts also have held that a failure to conduct a conflict check does not warrant

13   disqualification. *See, e.g., Parkinson v. Phoenix*, 857 F. Supp. 1474, 1474 (D. Utah 1994)

14   (denying a motion to disqualify brought against a law firm which had concurrently represented

15   both the plaintiff and defendant in a lawsuit in which the intended conflict check was not actually

16   performed); *End of Road Trust v. Terex Corp.*, No. 99–477 (GMS), 2002 WL 242464, at *2 (D.

17   Del. Feb. 20, 2002) (denying a motion to disqualify Greenberg Traurig where the firm

18   "assert[ed] that the conflict was inadvertently overlooked in the conflicts check process").

19        C.    **Loop Impermissibly Seeks Disqualification As Punishment.**

20             Loop argues that it would be "unfair," "inequitable," "unseemly," and "grossly unjust to

21   let Sternberg and his new team at Venable to continue to benefit from his serious breaches to

22   Loop AI." Mtn., 20.  But such free-floating appeals to punish Sternberg and Venable for

23   perceived prior breaches of duties to Loop fail because Sternberg never breached a duty to Loop.

24   Even if he had, that breach would not warrant disqualification, which is appropriate only as a

25   prophylactic measure to preserve confidentiality – an objective irrelevant where, as here, the

26   evidence demonstrates that no confidential information was obtained by Sternberg or Venable.

27

28

Neither Sternberg nor Venable breached a duty to Loop.[24]  Sternberg personally could not have breached a duty of loyalty to Loop because he did not know about Loop.  Further, Orrick's concurrent representations of Almawave and Loop were not adverse at the time, so Orrick also could not have violated a duty of loyalty to Loop.  Sternberg also did not and could not have breached a duty of confidentiality to Loop because he never obtained any of Loop's confidential information.

In addition, even if Sternberg had ever represented Loop, he would not have a "lingering duty of loyalty to Loop," as Loop asserts.  *Id.* at 5.  "[O]nce [the former client] shifted his loyalty (and his work) to [other lawyers], and [his former attorney] left to join a different firm, [his former attorney] has no continuing duty of loyalty in matters related to work he did not perform."  *Exterior Sys., Inc. v. Noble Composites, Inc.*, 210 F. Supp. 2d 1062, 1072-73 (N.D. Ind. 2002).  To the extent that there is a "lingering" duty of loyalty, it does not mean Sternberg cannot become adverse to Loop as that duty "does not extend beyond the duty to preserve client confidences in cases of multiple-firm imputation."  *Exterior Sys.*, 210 F. Supp. 2d at 1072-73.  Sternberg has no Loop confidences to preserve and has *per se* fulfilled his duty.

Second, even if this Court found that Orrick's concurrent representations of Almawave and Loop were adverse and that Orrick or Sternberg violated a duty of loyalty, those findings would not warrant  disqualification of Sternberg or Venable because "disqualification must be prophylactic; an attorney may not be disqualified purely as a punitive or disciplinary measure."  *Neal v. Health Net, Inc.*, 100 Cal. App. 4th 831, 844 (2002); *see also Gregori v. Bank of Am.*, 207 Cal. App. 3d 291, 209 (1989) ("Disqualification is inappropriate, however, simply to punish a dereliction that will likely have no substantial continuing effect on future judicial proceedings.").  A purported prior violation of a duty of loyalty would not have any effect, much

---

[24] Loop is unclear what precise duties Sternberg (who never represented Loop) owed it (*see* Mtn. at 2 (his "undivided duty of loyalty" to Loop); *id.* at 5 ("his fiduciary duty of loyalty to Loop"); *id.* (his "twin duties of loyalty and confidentiality" to Loop); *id.* at 11 ("his fiduciary duty of undivided loyalty" to Loop); *id.* at 21 (his "fiduciary duty" to Loop).

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA  94111
415-653-3750

1   less a "substantial continuing effect," on this litigation.

2   <u>**CONCLUSION**</u>

3       For the forgoing reasons, Almawave respectfully requests that this Court deny Loop's

4   Motion to Disqualify in its entirety.

5

6   Dated: October 21, 2015                    **VENABLE LLP**

7                              By:    /s/ Thomas E. Wallerstein
8                                     Thomas E. Wallerstein (SBN 232086)
                                      Kimberly Culp (SBN 238839)
9                                     505 Montgomery Street, Suite 1400
                                      San Francisco, CA 94111
10                                    twallerstein@venable.com
                                      kculp@venable.com
11                                    Tel.: (415) 653-3750
                                      Fax: (415) 653-3755
12

13                                    *Attorneys for Almawave USA, Inc.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

24