LAW OFFICES OF JANET BRAYER
JANET BRAYER (SBN 117397)
230 California Street,   Suite 600
San Francisco, California 94111
Telephone:  (415) 445-9555
Facsimile:  (415) 445-9541

Attorney for Defendant IQSYSTEM, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS, INC., <br><br>                    Plaintiff, <br><br>        vs. <br><br> ANNA GATTI, an individual, ALMAVIVA S.p.A., an Italian corporation, ALMAWAVE S.r.l an Italian corporation, ALMAWAVE USA, Inc., a California corporation, IQSYSTEM LLC, a California limited liability company, IQSYSTEM, Inc., a Delaware corporation, <br><br>                    Defendants. | **Case No. 3:15-cv-00798-HSG-DMR** <br><br> **DEFENDANT IQSYSTEM, INC.'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PARTICULARIZED TRADE SECRET DISCLOSURE AND FOR STAY OF DISCOVERY UNTIL COMPLIANCE WITH CA CCP SECTION 2019.210** <br> **[Dkt. 272,  232]** <br><br><br> **DATE:  TO BE SET** |

Loop AI Labs, Inc. ("Loop")  opposes the motion to compel particularized trade secret disclosure,  stating that "Loop AI has no obligation to volunteer further information to IQSystem absent a discovery request." [Dkt 272,  Loop's opposition brief, at 10:9-10].  The game playing of Loop must come to an end -  Loop recognizes its obligation time and time again to provide trade secret disclosure,  simply refuses to timely do so or says it has already done so or that it will do so upon certain conditions or terms.  Loop must comply with CAL. CCP §2019.210 so that the defendants can structure discovery,  and both defendants and this

court can determine what if any particular trade secrets are the subject of this case.   This is particularly true when one reviews the answers provided by Loop to interrogatories propounded regarding the trade secrets at issue -  no substantive answer was provided,  with Loop instead responding that it would provide a supplemental list of trade secret information, "in accordance with the applicable rules governing the identification of confidential information or trade secrets." (See,   Loop response to Almawave USA Inc,'s Interrogatories Set No. 1,   **Exhibit 1** to Reply Declaration of Janet Brayer filed herewith,  e.g.,  Interrogatory 6).

The motion to compel disclosure of trade secrets is not only appropriate,  but necessary.

## 1.    PROPRIETY OF MOTION

Loop argues that discovery was ordered "commenced," citing to Dkt. 105 [June 5, 2015 Scheduling Order],[1] hence there should be no stay of discovery pending identification of trade secrets with particularity pursuant to CAL. CCP §2019.210.  As noted, Defendant IQSystems, Inc. ("IQS") filed this motion based on two directives stating that any motion relating to a stay of discovery should be filed with the Honorable Judge Gilliam.  [Dkt.  111 at 15-16, Judge Gilliam, May 26, 2015; [Dkt 157 at 14 at 95-97, Judge Ryu, July 23, 2015].

Loop is aware of its obligations to provide trade secret disclosure, and has failed to do so with reasonable particularity. IQS has not delayed in seeking such disclosure, having demanded the same on June 18, 2015, [Dkt. 118], and relying on Loop's representations that it would provide such disclosure.  [Dkt. 111, page 97 [Healy:  "we are perfectly aware of our obligations in respect to the trade secrets, and we are in the process of producing a trade secret list," and Dkt. 210 at ¶339 ["a complete list of trade secrets misappropriated by the Defendants will also be provided to them before discovery in accordance with California law."].  IQS did

---

[1]  The Scheduling Order makes no mention of discovery "commencement,"  CAL C.C.P. Section 2019.210 or trade secret disclosure.  Loop also asserts that the Honorable Judge Gilliam ordered "all merits discovery to proceed immediately and to end in January 2016. Dkt. 105 and Dkt. 111 at 21:20-23."  Such is not the case. [Dkt. 111 at 21:20-23 "But I'm of a mind that we  just need to have a firm schedule to keep the case moving forward."

not delay in bringing this motion, but instead relied on the representations of Loop that such disclosure would be made,  and then when the disclosure was not forthcoming,  IQS engaged in the meet and confer process,  and was then forced to file this motion.  See Brayer Dec. [Dkt. 232, filed in support of this motion] Exhibits 2-13; [Exh. 5: fax from counsel for Loop, 9-24-15, "we will provide you with a list relevant trade secrets, and are presently compiling that list."]

Contrary to Loop's assertion,  case law does not hold that the proper avenue for trade secret discovery is by way of response to discovery requests,  as such a procedure would eviscerate the public policy behind trade secret disclosure -  to promote well-investigated claims,  dissuade the filing of meritless trade secret complaints,  prevent plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets,  assist the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope, and enable defendants to form complete and well-reasoned defenses.  *Computer Econs., Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980, 985 (S.D. Cal. 1990).

Regardless of whether a stay of discovery is issued,   Loop must be ordered to comply with CAL. CCP §2019.210 by a date certain.

**2.    FEDERAL COURTS HAVE ORDERED TRADE SECRET DISCLOSURE PURSUANT TO CAL. CCP §2019.210**

Loop cites to *Shady Grove Orthopedic Ass.,  P.A. v. Allstate Ins. Co*., 559 U.S. 393, 398, 406 (2010) and argues that CAL. CCP §2019.210 is a state procedural rule that cannot be applied.   However,  CCP §2019.210 does apply.  *Jobscience, Inc. v. CVPartners, Inc*., 2014 U.S. Dist LEXIS 64350, at *2 (N.D. Cal. May 1, 2014);  *Soc. Apps, LLC v. Zynga, Inc*., 2012 U.S. Dist. LEXIS 82767 (N.D. Cal. June 14, 2012);  *Computer Econ., Inc. v. Gartner Grp.,*

*Inc.*, 50 F. Supp. 2d 980, 992 (S.D. Cal. 1999) *Interserve, Inc. v. Fusion Garage PTE, Ltd*., 2010 WL 1445553, at *3 (N.D. Cal. Apr. 9, 2010) (applying § 2019.210 procedures under the court's inherent power to enter case management orders); *Neothermia Corp. v. Rubicor Med., Inc.* (ND Cal 2004) 345 F Supp2d 1042, 1043–1044; *Lilith Games (Shanghai) Co. v. uCool, Inc.* No. 15-01267, 2015 U.S. Dist. LEXIS 89365 (N.D. Cal. July 9, 2015), *Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1015 (E.D. Cal. 2011) (same); *Gabriel v. Qualcomm Inc.*, 2012 U.D. Dist. EXIS 33417 [§2019.210 should be applied to avoid forum shopping]

The case of *Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*, No. 06-533, 2007 U.S. Dist. LEXIS 8870 (E.D. Cal. Jan. 29, 2007) relied upon by Loop, has not been followed in the Northern District as of late,  and regardless this court has the inherent power to compel disclosure of trade secrets as part of its case management. (See, *Avago Techs., Inc. v. IPtronics Inc.,* 2015 U.S. Dist. LEXIS 66177,  at *15 (N.D. Cal. May 19, 2015) ["Avago also may be right that the Ninth Circuit has not clarified whether Cal. Code Civ. P. § 2019.210 applies in federal court with regard to amendments to trade secret disclosures.  But no defendant should have to litigate against a moving target because a plaintiff does not know what its own trade secrets are."]).

Loop cites to the case of *Hilderman v. Enea Teksci, Inc.*, No. 05-1049, 2010 WL 143440, 2010 U.S. Dist. LEXIS 1527 (S.D. Cal. Jan. 8, 2010) for the proposition that section 2019.210 does not apply.  However, in Hilderman the plaintiff filed a trade secret statement before initiating discovery as § 2019.210 would require in state court,   and the court after hearing motions in limine after discovery had concluded,  held that, although § 2019.210 did not apply to federal actions, the plaintiff did not have "free reign to try trade secret claims that were not disclosed in its 'Trade Secret Disclosure.'" *Id.* at *3.

The case of *Tessera, Inc. v. Advanced Micro Devices, Inc.*, No. 05-4063, 2013 U.S. Dist. LEXIS 8104, at \*11-13 (N.D. Cal. Jan. 18, 2013) cited by Loop is inapposite as in Tessera the Special Master found that section 2019.210 was not implicated because "trade secrets" were not at issue in the claim.

Loop also cites to the case of *Neothermia Corp. v. Rubicor Med., Inc.*, 345 F. Supp. 2d 1042, 1044 (N.D. Cal. 2004), but in that case the court applied § 2019.210 (then § 2019(d)) in a federal action for breach of a nondisclosure agreement, which included factual allegations of trade secret misappropriation finding that "there is no real dispute that Neothermia has in fact identified its trade secrets with 'reasonable particularity' as required by § 2019(d). Cal. Code Civ. Proc. § 2019(d)." *Id.* at 1044.

### 3.   FEDERAL COURTS HAVE STAYED DISCOVERY PENDING TRADE SECRET DISCLOSURE

Loop asserts that IQS "fails to provide any legal support for its argumenta that Section 2019.210 stays discovery of all 17 actions in this case." IQS did indeed provide authority.[2] Good policy reasons exist for staying discovery when the claims presented have a common nuclear of operative facts.

### 4.   LOOP HAS NOT PROVIDED THE REQUESTED DISCLOSURE INFORMATION

A review of the "declarations," and sections of the Second Amended Complaint cited by Loop does not lead to the conclusion that Loop has identified its trade secrets with particularity. Defendants should not be forced to cull through voluminous declarations and hunt for trade secrets (or try to assess what Loop contends is confidential material as opposed to trade secret information), particularly when this court has stated that "[w]hile Loop AI asserts that it undertakes reasonable efforts to maintain the secrecy of its business information,

---

[2] e.g. *Jobscience Inc. v. CV Partners* (N.D. Cal. February 28, 2014) U.S Dist. LEXIS 26371 at\*5; See also, *Agency Solutions.Com. LLC v. TriZeto Group, Inc.* (E.D. Cal. 2011) 819 F. Supp. 2d. 1001.

it has not identified what business information was allegedly misappropriated, or submitted evidence that particular business information taken constitutes a trade secret under California law." [Dkt. 32, Order, 4:13-18). The information cited to by Loop does not even begin to address the particularity requirements of trade secret disclosure.[3]

Loop incorrectly asserts that it need not "specify how the secret or its elements are distinguishable from matters known to skilled persons in the field," citing to *Bresica v. Angelin*, 172 Cal. App. 4th 133, 149 (Cal. App. 2d Dist. 2009). Bresica relied on the seminal case of *Diodes, Inc. v. Franzen* (Cal. App. 2d Dist.1968) 260 Cal. App. 2d. 244, which held that "the trade secret complainant 'should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.' *Diodes*, supra, 260 Cal.App.2d at p. 253." *Bresica* at 850. The court in Bresica found that there was no showing that the identification of the alleged trade secret lacked the particularity necessary to serve the statutory purposes, "the burden on the trade secret claimant is to provide a level of detail adequate to distinguish the subject information from general knowledge or knowledge of skilled persons in the field. The defendant may then use that level of detail to determine the limits of the trade secret by investigating whether the information disclosed is within the public domain (meaning

---

[3] The court in Agency Solutions, provided some guidance as to "what is not a trade secret: 1. '[G]eneral knowledge in the trade or [. . .] special knowledge of those persons who are skilled in the trade' are not trade secrets. Diodes, Inc. 260 Cal.App.2d at 253. 2. Ideas or concepts are not, in and of themselves, trade secrets. Silvaco, 184 Cal.App.4th at 221-222. 3. Proprietary ways of doing the same thing that others in the same field do are not trade secrets. Id. (Note, however, that while the way something is done is not a trade secret, some discrete fact concerning that way could conceivably be a trade secret.)4. Plans, flows, inputs, outputs, rules of operation, priorities of operation, and the like are not trade secrets to the extent they are manifest in the way a program works. Id. In other words, background information comprising, for example, the features and functions, the business requirements and the high level design specifications that are incorporated into software and are evident in the operation of the software are not trade secrets. While source code is undoubtably a trade secret, the way the source code works when compiled and run is not." *Agency Solutions.Com. LLC v. TriZeto Group, Inc.* (E.D. Cal. 2011) 819 F. Supp. 2d. 1001, 1017.

IQS Reply Memo re Motion to Compel Particularized Trade Secret Disclosure & Stay of Discovery

it is not a trade secret (Civ. Code, § 3426.1, subd. (d)(1)), or to develop the defenses of independent development or ready ascertainability (meaning there was no misappropriation)." *Id.* at 850-851.  The Bresica court recognized that the type of specificity required to determine whether the trade secret was common knowledge was dependent on the secret at issue and the detail provided,  stating, "we emphasize that when the nature of the alleged trade secret or the technical field in which it arises makes a detailed description alone inadequate to permit the defendant to learn the limits of the secret and develop defenses or to permit the court to understand the secret and fashion discovery, the court may require an explanation of how the alleged trade secret differs from matters known to skilled persons in the field as necessary to satisfy those needs. But absent such necessity, requiring such an explanation in every case is unreasonable."  *Id* at 853.  In the case at bar,  Loop has not provided any detail from which to learn what the specific trade secret is,  let alone allow a determination as to whether the alleged trade secret differs from matters known to skilled persons in the field.

Loop must be order to provide trade secret disclosure including "(1) a summary of the specific trade secret; (2) the background of the trade secret and a description of how each secret has derived independent, actual or potential economic value by virtue of not being generally known to the public; (3) a description of how each secret has been the subject of reasonable efforts to maintain its secrecy; and finally (4) each of the precise claimed trade secrets, numbered, with a list of the specific elements for each, as claims  would appear at the end of a patent." *Jobscience Inc. v. CV Partners* (N.D. Cal. February 28, 2014), 2014 LEXIS 26371, at *5.

5)      **CONCLUSION**

Sanctions are certainly not warranted,  and indeed if sanctions are awarded it should be against Loop as Loop knows its obligation to identify the trade secrets at issue,  has represented

to the court it would do so,  agreed that it would do so on multiple occasions and has failed to do so.

IQS respectfully requests that the Court grant its Motion to Compel Trade Secret Particularization, compelling Loop to disclose its trade secrets with adequate particularity, and barring Loop from taking discovery until such productions are made.  At a minimum,  all discovery should be stayed as to any claims relating to trade secrets,  and/or Loop must provide a detailed trade secret disclosure.  IQS would also request the court amend its pre-trial order to require Loop to identify with particularity all of the trade secrets that Loop claims were misappropriated.

Dated: October 22, 2015                             By:    /S/__Janet Brayer_____
                                                                            JANET BRAYER
                                                                            Attorney for Defendant IQSYSTEM, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22rd day of October, 2015, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all counsel of record by operation of the Court's ECF system.


                              LAW OFFICES OF JANET BRAYER


                    By:     /S/   Janet Brayer_____
                            JANET BRAYER
                            Attorneys for Defendant
                            IQSYSTEM, INC.