VALERIA CALAFIORE HEALY (*phv*)
valeria.healy@healylex.com
HEALY LLC
154 Grand Street
New York, New York  10013
Telephone:    (212) 810-0377
Facsimile:     (212) 810-7036

DANIEL J. WEINBERG (SBN 227159)
dweinberg@fawlaw.com
FREITAS ANGELL & WEINBERG LLP
350 Marine Parkway, Suite 200
Redwood Shores, California  94065
Telephone:    (650) 593-6300
Facsimile:     (650) 593-6301

Attorneys for Plaintiff
LOOP AI LABS INC.

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| LOOP AI LABS INC., | CASE NO.: 3:15-cv-00798-HSG-(DMR) |
|---|---|
| Plaintiff, | **PLAINTIFF LOOP AI LABS INC.'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISQUALIFY FORMER ORRICK ATTORNEY STERNBERG AND HIS NEW FIRM VENABLE LLP** |
| v. | |
| ANNA GATTI, et al, | |
| Defendants. | **Date: November 5, 2015**<br>**Time: 2:00p.m.**<br>Action Filed:  February 20, 2015<br>Trial Date:    July 11, 2016<br><br>Hon. Haywood S. Gilliam, Jr. |

# TABLE OF CONTENTS

**Pages**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................... 1

ARGUMENT ....................................................................................................................................... 2

I.     LEGAL FRAMEWORK ........................................................................................................ 2

II.    DISQUALIFICATION BASED ON THE CLIENT CONFLICT IS APPROPRIATE ................................................................................................................... 5

      A.    Sternberg Undertook Representation That Was Directly Adverse To Loop AI .......... 6

      B.    Sternberg Owed Loop AI Fiduciary Duties, Which He Breached .............................. 8

      C.    Sternberg's Duties To Loop AI Did Not End When He Left Orrick ......................... 10

      D.    Even if Loop AI Is Treated as a Former Client, Disqualification is Warranted ........ 11

III.   THE PERSONAL CONFLICT CREATED BY STERNBERG ARE AN INDEPENDENT REASON FOR HIS AND VENABLE'S DISQUALIFICATION ......... 14

# TABLE OF AUTHORITIES

## CASES

**Page**

*Adams v. Aerojet-General Corp.*,
    86 Cal. App. 4th 1324 (2001) .................................................................................11, 12

*Advanced Messaging Techs., Inc. v. Easylink Servs. Int'l Corp.*,
    913 F. Supp. 2d 900 (C.D. Cal. Dec. 19, 2012) ..................................................................9

*Ames v. State Bar of California*,
    8 Cal. 3d 910 (1973) ..........................................................................................................8

*Apple Computer, Inc. v. Sup. Ct.*,
    126 Cal. App. 4th 1253 (Cal. App. 2d Dist. 2005) ..........................................................15

*Blue Water Sunset, LLC v. Markowitz*,
    192 Cal. App. 4th 477 (2011) ............................................................................................4

*Cal Pak Delivery, Inc. v. United Parcel Service, Inc.*,
    52 Cal. App. 4th 1, 60 Cal. Rptr. 2d 207 (1997)..........................................................5, 14

*Cardinale v. Golinello*,
    43 N.Y.2d 288 (1977) ........................................................................................................4

*Chugach Electric Asso. v. US*,
    370 F.2d 441 (9th Cir. 1966) ...........................................................................................15

*Ehrich v. Binghamton City Sch. Dist.*,
    210 F.R.D. 17 (N.D.N.Y. 2002) .......................................................................................10

*Elan Transdermal, Ltd. v. Cygnus Therapeutic Sys.*,
    809 F. Supp. 1383 (N.D. Cal. 1992) (WHO) ..................................................................12

*El Camino Res., LTD. v. Huntington Nat'l Bank*,
    623 F. Supp. 2d 863 (W.D. Mich. 2007) ...................................................................10, 11

*Flatt v. Super. Ct.*,
    9 Cal. 4th 275 (1994) .............................................................................................4, 9, 10

*Flatworld Interactives LLC v. Apple Inc.*,
    No. 12-01956, 2013 WL 4039799, 2013 U.S. Dist. LEXIS 111496 (N.D. Cal. Aug. 7,
    2013) ............................................................................................................................9, 10

*Global Van Lines, Inc. v. Super. Ct.*,
    144 Cal.App.3d 483, 192 Cal. Rptr. 609 (1983)..............................................................14

*In re Cal. Growers and Canners*,
    74 B.R. 336 (Bankr. N.D. Cal. 1987) ..............................................................................10

*Moreno v. AutoZone, Inc.*,
    No. 05-4432, 2007 WL 4287517,
    2007 U.S. Dist. LEXIS 98250 (N.D. Cal. Dec. 5, 2007) ...................................................8

*Ore. v. Jelco*,
    646 F.2d 1339 (9th Cir. 1981) ............................................................................................10

*People ex. rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*,
    20 Cal. 4th 1135 (1999) ................................................................................................4, 9

*Rosenfeld Constr. Co. v. Super. Ct.*,
    235 Cal. App. 3d 566 (1991) ..........................................................................................14

*Truck Ins. Exch. v. Fireman's Fund Ins. Co.*,
    6 Cal. App. 4th 1050 (Cal. App. 1992) ...........................................................................10

*Unified Sewerage Agency v. Jelco, Inc.*,
    646 F.2d 1339 (9th Cir. 1981) ........................................................................................10

*United States v. Sun Keung Lee*,
    No. CR 10-0186 MHP, 2011 WL 52599,
    2011 U.S. Dist. LEXIS 1198 (N.D. Cal. Jan. 5, 2011) ....................................................13

*White v. Experian Info. Solutions*,
    No. 05-01070, 2014 WL 1716154,
    2014 U.S. Dist. LEXIS 61433 (C.D. Cal. May 1, 2014) ..............................................4, 5

**STATUTES AND RULES**

ABA Model Rule of Professional Conduct 1.7 ......................................................................8, 9

ABA Model Rule of Professional Conduct 1.9 .........................................................................13

ABA Model Rule of Professional Conduct 1.10 .........................................................................9

California Rule of Professional Conduct 3-310.................................................................7, 8, 9

New York Rule of Professional Conduct 1.7 ........................................................................8, 14

New York Rule of Professional Conduct 1.10 ............................................................................9

# INTRODUCTION[1]

In its Opposition, Almawave cites no case in which disqualification was denied on facts such as those presented here.[2] This is unsurprising, because no such case exists. While at Orrick, in March 2014, Sternberg undertook to represent Almawave and Anna Gatti ("the Almawave-Gatti representation") in a manner that was directly adverse to Orrick's client, Loop AI. This conflicted representation continued for almost a year. Almawave's unsupported claim that the Almawave-Gatti representation did not become "adverse" to Loop AI until this action was filed is patently false. For one thing, Sternberg/Orrick caused the implementation of agreements between Almawave and Gatti, as well as IQSystem (of which Gatti was the sole owner)[3] — which required Gatti to breach fiduciary and contractual obligations to Loop AI that were set forth in agreements also prepared by Orrick. By this conduct, Sternberg/Orrick breached the fiduciary duties they owed to Loop AI.

Almawave does not dispute that, had Sternberg remained at Orrick, he would have been automatically disqualified. Instead, Almawave claims in conclusory fashion that, because he has now moved his adverse representation to Venable, Loop AI is no longer entitled to the protection afforded by the conflicts of interest rules, and has no recourse for the continuing prejudice caused by Sternberg's conflicted representation. Courts do not so easily allow attorneys to circumvent their ethical obligations to a client, and both case law and public policy require rejection of Almawave's unfounded position.

Almawave asks this Court to apply a body of law whose test Almawave distorts completely and which is inapplicable to the facts here. The standard that Almawave invokes throughout its Opposition — to which it refers at times as the double-imputation standard, and

---

[1] In this Reply, Loop AI adopts the same definitions used in its DQ Motion. In addition, Loop AI refers to Sternberg's and Orrick's representation of Almawave that began in March or April 2014 as the "Almawave-Gatti representation."
[2] See Almawave USA Inc.'s Opposition to DQ Motion ("Opp.") at Dkt. 278.
[3] Sternberg knew or should have known that Gatti was sole owner of IQSystem. A simple search of public records, which most conflict checks require when a company is not publicly owned, would have immediately revealed that information since Gatti was officially listed as the sole member of IQSystem and the company was listed as being based in the apartment where she lived at the time Orrick's conflict check was run.

---

other times as the modified substantial relationship standard — does not apply to an attorney, as Sternberg here, who is personally involved in a conflicted representation at one firm, and who then moves his conflicted representation to a new firm, from where he continues to work on, and in fact be in charge of, the conflicted representation.  The standard invoked by Almawave applies only to situations where the target attorney had no involvement in any aspect of the former conflicted engagement, and simply happens to find himself in a new firm who has a client that is in conflict with a second client of the firm with which the attorney was formerly affiliated, *through no fault of or involvement by the attorney*; and where appropriately effective prophylactic measures are taken at the new firm to prevent any taint by the attorney of his new firm.  That paradigm is entirely absent here.  The paradigm would have been applicable if Sternberg (i) while at Orrick, had no involvement in the conflicted Almawave-Gatti representation or, perhaps, was effectively screened with Loop AI's consent from contact with Orrick's attorneys working for Loop AI, (ii) had no contact with Loop AI's executive officer (Gatti), directly and through the team he supervised, or with anyone else at Orrick that could result in his receipt of Loop AI's confidential information, and (iii) had no involvement while at Venable in the current litigation and instead was behind an ethical screen imposed between Sternberg and the Venable litigation team from the outset.  If those were the facts, (and Almawave concedes they are not), the situation here would be different.  But Sternberg is not the victim of an accidental conflict featured in the cases cited in Almawave's Opposition.  Far from it.  Sternberg *did* actively participate in the conflicted representation while at Orrick, *did* have access while at Orrick to Loop AI's confidential information, including through Gatti and the overlapping Orrick teams participating in both representations, *was not* walled off when he arrived at Venable, and failed to take *any* action to prevent or mitigate the conflict he caused.  As a result, the body of law examined confusingly in the Opposition is simply irrelevant to the present situation.

In its DQ Motion Loop AI explained that disqualification is required by two separate and independent conflicts of interest.  ***First***, disqualification is required as a result of Sternberg's ***client conflict***.  Client conflicts are examined by courts under different tests depending on the

facts. Loop AI established in its DQ Motion that the client conflict at issue here should be examined in accordance with the ***current client*** test, applicable to conflicts that ***first arise*** where, as here, there was a simultaneous adverse representation of two current clients. Sternberg's conflicted representation began in March 2014, while he was at Orrick, and continued unabated into 2015, when he moved to Venable. The applicable case law does not allow lawyers to evade the nearly automatic disqualification rule utilized when they act adversely to current clients simply by changing firms; to avoid this unseemly result, courts apply the current client test ***as of the time the conflict first arose***. The Opposition cites no cases to the contrary.[4] ***Second***, independent of the client conflict, disqualification is also required as a result of Sternberg's ***personal interest conflict***. That conflict arises out of Sternberg's (and now Venable's) involvement in material facts at issue in this action – most recently, Almawave USA's recent move of its putative US "office" from Gatti's home to Venable's small San Francisco office suite, where the attorneys of record in this case are based.[5] The personal interest conflicts at issue in this case have already impeded the efficient administration of justice and will continue to do so unless disqualification is ordered.[6]

**ARGUMENT**

**I. LEGAL FRAMEWORK**

Despite telling the Court that "California law governs Loop's motion," Almawave neglects to cite a single California case discussing the standard for deciding disqualification motions.[7] This is so even though in one of the cases it cites for other reasons, *People ex rel.*

---

[4] Although Sternberg's conduct should be adjudged in accordance with the concurrent client conflict rule, as Loop AI explained in its DQ Motion, even under the test applicable to former clients, disqualification would still be required for several reasons.
[5] *See* VCHealy Declaration ("VCH Decl."), at ¶ 5, Ex. 3.
[6] Loop AI also explained in the DQ Motion that Sternberg's conflicts are imputable to Venable because Sternberg tainted the firm with his conflicts and was not screened from working on this case. Almawave also does not dispute that, if the Court disqualifies Sternberg, Venable's disqualification is also required.
[7] Loop AI has noted that Sternberg is a New York lawyer: although he admits to participating as counsel for Almawave in this case, he has not filed a motion to appear *pro hac vice*. Therefore, reference to New York law and the New York RPC is appropriate, particularly if a conflict of laws is found to exist. In its Opposition, Almawave asks the Court to judge Sternberg's conduct

*Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.*, 20 Cal. 4th 1135 (1999), the California Supreme Court made that standard clear: while "disqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility," the "paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. ***The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process.***" *Id.* at 1145–1146. (Emphasis added)

Almawave's claim that disqualification is a measure which courts should "hesitate to impose," is particularly difficult to square with the fact that one of the grounds on which Loop seeks disqualification is the concurrent client conflict which arose when Sternberg, while at Orrick, began acting adversely to Loop AI's interests on Almawave's behalf. As the Central District of California recently pointed out,

> The default rule for a concurrent conflict in California is automatic disqualification in all but a small number of cases. *See Blue Water Sunset, LLC v. Markowitz*, 192 Cal. App. 4th 477, 486-87 (2011) ("If an attorney simultaneously represents two clients with adverse interests, automatic disqualification is the rule in all but a few instances."). The disqualification rule in the case of a concurrent conflict is strict and requires disqualification in nearly every case. *See People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems., Inc.*, 20 Cal. 4th 1135, 1147, 86 Cal. Rptr. 2d 816, 980 P.2d 371 (1999) (noting that when a lawyer represents "clients whose interests are directly adverse in the same litigation…the rule of automatic disqualification applies"); *Flatt v. Superior Court*, 9 Cal. 4th 275, 282-85, 36 Cal. Rptr. 2d 537, 885 P.2d 950 (1994) ("Indeed, in all but a few instances, the rule of disqualification in simultaneous representation cases is a per se or 'automatic' one.")

---

by application of a "modified substantial relationship test" which is not recognized under New York law. *See, e.g., Cardinale v. Golinello*, 43 N.Y.2d 288 (1977) (disqualifying counsel under circumstances virtually identical, albeit less egregious, to the present situation). Although, Loop AI believes that disqualification would be required even under that test, to the extent the Court believes application of that test qualifies Sternberg and Venable to act as counsel adverse to Loop AI in this matter, Loop AI respectfully seeks leave to submit supplemental briefing on this issue.

4

*White v. Experian Info. Solutions*, No. 05-01070, 2014 U.S. Dist. LEXIS 61433, at *17-18 (C.D. Cal. May 1, 2014). Disqualification is automatic in cases where, as here, counsel has run afoul of the concurrent client conflict rule. But California courts – and federal courts sitting in California – have frequently disqualified counsel in situations where violations of other ethical rules have been found, and even in cases where no specific rule violation was found. *See, e.g., Cal Pak Delivery, Inc. v. UPS, Inc.*, 52 Cal. App. 4th 1, 11 (1997).

**II. DISQUALIFICATION BASED ON THE CLIENT CONFLICT IS APPROPRIATE.**

In its DQ Motion, Loop AI drew the Court's attention to the client conflict that warrants disqualifying Sternberg/Venable from acting adversely to Loop AI in this litigation. Specifically, the Orrick firm – having undertaken to represent Loop AI with respect to virtually all of its legal matters, including its employment agreement with its then-CEO and later President Anna Gatti – subsequently began to act adversely to Loop AI's interests, on behalf of Almawave, with respect to many of the very same matters, without Loop AI's knowledge or consent. When Loop AI discovered that Orrick had engaged in representation adverse to Loop AI's interests (including by preparing an Employment Agreement for Almawave that required Gatti to breach her Employment Agreement with Loop AI), Orrick did not immediately desist from acting adversely to Loop AI – instead, it dropped Loop AI like a hot potato. Only weeks before it did this, Sternberg – the partner in charge of the Orrick team representing Almawave adversely to Loop AI – jumped Orrick's ship and proceeded to carry on his conflicted representation at a different firm, Venable.

Most attorneys would immediately recognize the conflict problem Sternberg and his new firm had created; but, if Almawave's Opposition is to be believed, Almawave does not. Although its Opposition is opaque in parts, and relies on a number of "red herring" defenses (such as the erroneous claim that Loop AI is seeking to disqualify Sternberg and his new firm under a "double imputation" theory),[8] it appears that the gist of Almawave's defense can be

---

[8] Concerns about "double imputation" arise when client A's confidences are imputed to a target lawyer at Firm X (even though the target lawyer never had contact with client A), and then

boiled down to three contentions: (1) Orrick had no conflict while Sternberg was still a partner there because Almawave and Loop were not then "legally" adverse [Opp. at 1:27]; (2) even if Orrick was conflicted while Sternberg was an Orrick partner, Sternberg had no problem because he personally "never represented Loop" [Opp. at 1:28]; (3) and, even if Sternberg could not have ethically continued to represent Almawave had he stayed at Orrick, he cured the conflict by moving to Venable, thereby converting Loop to a "former" client.  None of these arguments survive scrutiny.

### A.  Sternberg Undertook Representation That Was Directly Adverse To Loop AI.

Almawave's first line of defense is premised on its baffling claim that "[w]hile Orrick at one time did simultaneously represent Loop and Almawave," there was no conflict then because Loop AI and Almawave were "not adverse at the time."  Opp. at 15:12-15.  This is both factually and legally wrong.  In connection with the Almawave-Gatti representation, Sternberg, while an Orrick partner, directly participated in negotiating and implementing the Almawave-Gatti employment agreements, which on their face required Gatti, while she was the Loop AI's CEO, to breach her fiduciary and contractual obligations to Orrick's existing client, Loop AI, which were set forth in agreements also prepared by Orrick.[9]  For instance,

---

reimputed to those attorneys at target lawyer's new firm Y, who work for client B against client A (even though the target lawyer is not involved in new firm Y representation).  In this case no concern about "double imputation" or "reimputation" arises, because there is no dispute that Sternberg himself is directly involved in (and in fact is the responsible partner) for Almawave's representation adverse to Loop AI.

[9] See Dkt. 45 at ¶ 308; Dkt. 156 at 2:9-23:20; Dkt. 210 at ¶¶ 1, 377; VCH Decl., Ex. 1 (Employment agreement between Gatti and Loop AI); VCH Decl., Ex. 2 (Employment agreement between Gatti and Almawave USA).  While Sternberg claims in his Declaration that he did not participate in the negotiation of the Almawave-Gatti employment agreement, that self-serving statement is not proof that that is so.  Loop AI has repeatedly tried to obtain discovery over Sternberg and Orrick's involvement, but all forms of discovery were objected-to, and Almawave (as well as Orrick and Venable) have refused to even provide a privilege log.  *See* VCH Decl. at ¶ 9; Dkt. 257-1, 124-2, 9-2, 278-1.  Clearly, if Sternberg was not involved in any communications or negotiations, as he now claims, there would have been no reason to make such objections and there would have been nothing to list on the privilege log that Almawave has refused to provide.  Further, Loop AI has provided evidence showing that Sternberg, or someone else at Orrick at his direction, was working on the agreement as of April 17, 2014, but that the agreement allegedly did not get signed until June 6, 2014.  See e.g. Dkt. 199 at 14; 199-6 at

- Gatti's employment agreement with Loop AI did not permit her to have another job, let alone a second concurrent job as the part-time CEO of a competitor, or to engage in other business activities without Loop AI's written consent. *See* Dkt. 210 at ¶ 93, VCH Decl., Ex. 1 at § 2. Directly contrary to these requirements, Sternberg, while an Orrick partner, assisted Almawave in implementing an employment agreement with Gatti that required Gatti to work as Almawave's part-time CEO. *See* Dkt. 199-6 at ECF p. 12 (stating Orrick was working on Alma-Gatti agreement), and VCH Decl., Ex. 2.

- Under her employment agreement with Loop AI, Gatti was not permitted to participate in technology development for other companies or share Loop AI's confidential information or trade secrets with anyone else outside of Loop AI or without Loop AI's consent. In addition, Gatti assigned to Loop AI any "right, title and interest throughout the world in and to any and all Company Inventions and all patent, copyright, trademark, trade secret and other intellectual property rights therein." VCH Decl., Ex. 1 at § 4(d). Directly contrary to these requirements, Sternberg, while an Orrick partner, assisted Almawave in implementing an employment agreement with Gatti that required Gatti to assign ***to Almawave*** any "right, title and interest throughout the world in and to any and all Company Inventions and all patent, copyright, trademark, trade secret and other intellectual property rights therein." VCH Decl., Ex. 2 at § 4(d).

- Sternberg directed a paralegal in Orrick's San Francisco office to incorporate Almawave's new subsidiary in Gatti's home, also in breach of her fiduciary and contractual duties set forth in her employment agreement with Loop AI.

- For almost one year, Sternberg and a team of other Orrick attorneys acting at his direction, including three who worked on the Loop AI matter, continued to assist Gatti as the new CEO of Almawave in conduct that continued to violate her fiduciary and contractual obligations to Loop AI.

There can be little question that the Almawave-Gatti representation that Sternberg took on and continued for almost one year while at Orrick was adverse to Loop AI, and was not permissible without Loop AI's knowledge and consent. The "adversity" requirement in Rule 3-310(C) of the California Rules of Professional Conduct, which bars the concurrent "adverse" representation of the interests of two clients, does not depend on the filing of litigation, as Almawave contends.[10] The ABA and NY Rules are to the same effect.[11] The California

---

RRA-221. Unless there was negotiaton over the terms of the agreement, the long gap of time cannot be explained.
[10] Cal. Rules of Prof'l Conduct R. 3-310(C). Official Comment dated 1992 ("Subparagraph (C)(3) is intended to apply to representations of clients in both litigation and transactional matters.").
[11] ABA Model Rules of Prof'l Conduct R. 1.7; N.Y. Rules of Prof'l Conduct R. 1.7.

Supreme Court has construed the term "adverse" in the context of the California Rules of Professional Conduct as consistent with the following dictionary definition: "acting against or in contrary direction … hostile, opposed, antagonistic…. 2a: in opposition to one's interests: detrimental, unfavorable…. 3:… 4 law: having opposing interests: having interests for preservation of which opposition is essential." *Ames v. State Bar of California*, 8 Cal. 3d 910, 917 (1973).[12]  The Almawave-Gatti representation that Sternberg undertook while an Orrick partner was unquestionably "adverse" to Orrick's client, Loop AI.  Sternberg's alleged ignorance of the conflict, whether willful or not, does not excuse a violation of the Rules.[13]

### B. Sternberg Owed Loop AI Fiduciary Duties, Which He Breached.

According to Almawave, "Loop must prove the existence of an attorney-client relationship between Sternberg and Loop, not just Orrick and Loop" [Opp. at 6, 16], which Loop cannot do because Sternberg "never represented Loop." *Id.* at 1:28.  These contentions are not only conclusory and unsupported,[14] but defy both basic partnership law and the principles of

---

[12] *See also, e.g., Moreno v. AutoZone, Inc.*, No. 05-4432, 2007 U.S. Dist. LEXIS 98250, at *12 (N.D. Cal. Dec. 5, 2007) ("a conflict of interest exists when a lawyer's duty on behalf of one client obligates the lawyer to take action prejudicial to the interest of another client.").
[13] *See e.g.* ABA Model Rule 1.7, Comment [3]: "To determine whether a conflict of interest exists, a lawyer should adopt reasonable procedures, appropriate for the size and type of firm and practice, to determine in both litigation and non-litigation matters the persons and issues involved…. **Ignorance caused by a failure to institute such procedures will not excuse a lawyer's violation of this Rule**." (emphasis supplied); *California State Bar Standing Committee on Professional Responsibility and Conduct*, Formal Opinion No. 2011-182 ("attorney should check for any potential conflicts with those who are adverse and potentially adverse, including reasonably foreseeable parties and witnesses, before accepting representation of a client.[] The attorney should also refresh conflict checks upon the appearance of new parties and witnesses during the pendency of a representation.").
[14] Almawave misleadingly cites several cases, not one of which stands for the false proposition it argues.  There is no case that holds that a partner in a law firm, as Sternberg was while at Orrick, has no attorney-client relationship with the clients of his firm for conflicts or other purposes.  If that were the case, there would be no necessity for the often complex conflict clearance procedures that lawyers in law firms are required to comply with, and which regularly require law firms to have to turn down business even where the possibility of a conflict is just slight or speculative.  If Almawave and Sternberg's proposition had any basis, it is unclear why Sternberg even felt the need to perform a conflict check at all before taking on the Almawave-Gatti representation while at Orrick.

imputed disqualification that are in force in New York, where Sternberg is admitted to practice,[15] as well as in California, and likely every other American jurisdiction.[16] *See, e.g., Flatworld Interactives LLC v. Apple Inc.*, No. 12-01956, 2013 U.S. Dist. LEXIS 111496, at *21 (N.D. Cal. Aug. 7, 2013) ("As a partner at Morgan Lewis, John McAleese ***owed a duty to his firm's client regardless of whether or not he personally worked on that client's matters***. Just as a Morgan Lewis attorney working on Apple matters could not act adversely against Apple, so too was John McAleese barred from doing so, whether in a legal capacity or not. ***He owed a duty of loyalty to his firm's client, and 'it is a violation of that duty for him to assume a position adverse or antagonistic to [that] client without the latter's free and intelligent consent'***", quoting *Flatt v. Superior Court of Sonoma Cnty.*, 9 Cal. 4th 275, 289 (1994) (emphasis supplied)). Sternberg — as an Orrick Partner — owed Orrick's client, Loop AI, fiduciary duties.[17] While he continued to be an Orrick partner, Sternberg's fiduciary duties to Loop AI prohibited him from acting adversely to Loop AI, an Orrick client, ***on any matter***.[18] By taking on and causing Orrick to take on the conflicting Almawave-Gatti representation in March 2014, and by continuing that representation for almost one year without disclosure to (let alone consent from) Loop AI, Sternberg unquestionably breached his fiduciary duties to Loop AI.[19]

### C. Sternberg's Duties To Loop AI Did Not End When He Left Orrick.

---

[15] *See, e.g.,* N.Y. Rules of Prof'l Conduct R. 1.10(a) (2015) ("While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7, 1.8 or 1.9, except as otherwise provided therein").
[16] *Flatt v. Superior Court*, 9 Cal. 4th 275, 286 (1994) (citing authorities from NY and Conn.).
[17] *See, e.g., Flatworld Interactives,* 2013 U.S. Dist. LEXIS 111496, at *21 (N.D. Cal. Aug. 7, 2013); *Advanced Messaging Techs., Inc. v. Easylink Servs. Int'l Corp.*, 913 F. Supp. 2d 900 (C.D. Cal. Dec. 19, 2012); ABA Model Rules of Prof'l Conduct. R. 1.10; N.Y. Rules of Prof'l Conduct R. 1.10(a) (2015).
[18] *Flatt*, 885 P.2d at 955-956; *People ex. rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.,* 20 Cal. 4th 1135, 1146 (1999); Cal. Rules of Prof'l Conduct R. 3-310(C); ABA Model Rules of Prof'l Conduct R. 1.7; N.Y. Rules of Prof'l Conduct R. 1.7.
[19] *See, e.g., Flatworld Interactives,* 2013 U.S. Dist. LEXIS 111496, at *21.

Almawave argues that, even if Sternberg owed Loop AI a duty of loyalty while he still worked at Orrick, once he left Orrick that duty disappeared; and, because it did, Sternberg's conduct should not be judged by the "automatic" disqualification test which courts utilize when, as here, a lawyer has acted in a manner that is contrary to the interests of a current firm client; but, rather, the court should decide whether to disqualify Sternberg in accordance with a modified version of the "substantial relationship" test that is used when a lawyer acts adversely to the interests of a former client.

The California Supreme Court has made it clear that the duty of loyalty cannot be so easily escaped: "[s]o inviolate is the duty of loyalty to an existing client that not even by withdrawing from the relationship can an attorney evade it." *Flatt*, supra at 288. Other courts have remarked, in different circumstances, upon a lawyer's inability to cure a conflict by converting a current client into a former one. *See, e.g., In re Cal. Growers and Canners*, 74 B.R. 336, 344 (Bankr. N.D. Cal. 1987) (stating that, when a lawyer voluntarily resigns because of a conflict, the termination must be disregarded). For this reason, courts decide whether disqualification should be ordered in accordance with the current or former client conflict test by evaluating whether the moving party was a current or former client at **the time the conflict first arose**.[20] Almawave cites no authority to contradict these principles. Simply stated, Almawave has failed to explain why Sternberg's conduct should be judged under the more lenient former client conflict rule even

---

[20] The per se rule of disqualification "applies if an attorney simultaneously represents clients with differing interests even though the representation ceases prior to filing the disqualification motion." *Ehrich v. Binghamton City Sch. Dist.*, 210 F.R.D. 17, 25 (N.D.N.Y. 2002) (citing *Unified Sewerage Agency of Washington Co., Ore. v. Jelco*, 646 F.2d 1339, 1345 n. 4 (9th Cir. 1981)). *See also Truck Ins. Exch. v. Fireman's Fund Ins. Co.*, 6 Cal. App. 4th 1050, 1057 (Cal. App. 1992). "The critical event is when the conflict arose, not when the motion was brought." *Ehrich*, 210 F.R.D. at 25. In *Ehrich*, the court found that while an attorney had last represented the moving client 7-months earlier, "the facts generating the lawsuit and the conflict arose during [the attorney's] employment." *Id. See also, e.g., El Camino Res., LTD. v. Hungtington Nat'l Bank*, 623 F. Supp. 2d 863, 877-878 (W.D. Mich. 2007) ("the status of the attorney/client relationship is assessed at the time the conflict arises, not at the time the motion to disqualify is presented to the court.").

though he not only acted adversely to Loop AI's interests while he was still a partner at Orrick, but also created the concurrent conflict that precipitated this motion by failing, intentionally or otherwise, to perform a proper conflict check. Sternberg's self-serving contention that he moved to Venable, right before this case was filed, for unrelated reasons does not alter the analysis, even if true. As one court has observed, "[t]his ethical rule is not triggered only when the attorney's motives are selfish or otherwise suspect. The rule vindicates the attorney's fundamental duty of loyalty: ***the breach of ethics is not triggered by bad motive or excused by good motive.***" *El Camino*, 623 F. Supp. 2d at 877-878 (emphasis supplied).[21]

Respectfully, under these facts, application of the current client test is appropriate here and Sternberg's and Venable's disqualification is automatic.

### D. Even if Loop AI is Treated as a Former Client, Disqualification is Warranted

As explained above and in Loop AI's DQ Motion, this is not a typical "former client conflict" scenario – like the one in *Adams v. Aerojet* – where the conflict at issue did not begin ***until long after*** (almost 10 years after) the challenged lawyer had left his former firm.[22] But

---

[21] Moreover, the evidence to which Loop AI points in its DQ Motion is undisputed: Almawave and Venable vigorously tried to conceal Sternberg's involvement in this case, including by directing Orrick to object to the identification of the Orrick attorneys who had worked on the Almawave-Gatti representation. *See* DQ Motion. at 1, n. 7. If Almawave or its counsel had no concerns about the consequences of Sternberg's conflict, there would have been no reason to conceal from Loop AI Sternberg's role while he was at Orrick, or his participation in this case, let alone vigorously file objections to impede or delay the disclosure of his identity. Indeed, it is quite unusual for the senior partner in charge of a litigation, and who describes himself on Venable's website as being "actively engaged in multijurisdictional disputes, including … litigation, … trade secrets misappropriation, [and] employment … matters," to not file a formal appearance in the matter he is in charge of and remain instead in the background. *See* Venable's Biography for Peter R. Sternberg, https://www.venable.com/peter-r-sternberg/ (last accessed October 27, 2015).

[22] *See Adams v. Aerojet-General Corp.*, 86 Cal. App. 4th 1324 (2001). The *Adams* court decided that when a lawyer who spent no time rendering services for a client and who had no contact with a client or its executives or the team working for the client while at a firm went to another firm and, "years later", undertook to act adversely to the former client, his new firm would not be "automatically disqualified." In that case challenged counsel's first firm had represented Aerojet in the mid-1980's and the challenged attorney left the firm in ***1989*** – it was not until ***1998*** that he began acting adversely to Aerojet's interests. *Id.* at 1329.

even under the former client conflict rule that is applied in that far more common situation, Sternberg's disqualification would still be warranted here.

According to Almawave, Loop AI failed "to submit any evidence that Sternberg actually obtained Loop's material confidential information." Opp. 10:1:2.  But, as Almawave well knows from having read the *Adams* case it repeatedly cites, this is not the test "[d]isqualification of an attorney from undertaking representation adverse to a former client does not require proof that the attorney *actually* possesses confidential information. Rather, in applying rule 3-310(E)" California courts "have utilized the 'substantial relationship' test." *Adams*, 86 Cal. App. 4th at 1331.

Moreover, in this case, Almawave and its counsel ensured that Loop AI would not have access to the evidence Almawave now claims is missing.  *See* VCH Decl. at ¶¶ 9.  Almawave not only objected to all discovery (including document and deposition discovery) from Orrick, Venable, Sternberg, Gatti, and each of the Almawave Defendants, it also objected to (and directed other nonparties to object to) providing basic privilege logs, even though both – discovery and privilege logs — are plainly required under the Federal Rules.  In light of Almawave's, Sternberg's and Venable's objections, including those made in respect of documents possessed by Orrick, Almawave's self-serving declarations cannot be taken as evidence of anything and should be disregarded in their entirety.[23]  Clearly, if Almawave, Sternberg, and Venable had nothing to hide, there was no reason to oppose all forms of discovery over everything.

---

[23] *See, e.g., Elan Transdermal, Ltd. v. Cygnus Therapeutic Sys.*, 809 F. Supp. 1383, 1390 (N.D. Cal. 1992) (WHO) (disqualification granted) ("to allow this presumption to be rebutted by declarations by self-interested parties, the rebuttal evidence that would inevitably be put forward in every case of this sort, would raise a strong sense of impropriety."); *id.* at 1392-1393 ("The Court, reading the stack of declarations from Irell attorneys, all proclaiming their ignorance of Cygnus-related matters, is reminded of the words of Hamlet's mother: 'The lady doth protest too much, methinks.' William Shakespeare, Hamlet, act 3, sc. 2.").

Almawave is also wrong about who bears the ultimate burden of proof on this motion. Almawave says that Loop AI, as the moving party, "carries a heavy burden and must satisfy a high standard of proof." Opp. 4:4-5. But Loop AI's burden is, at most, to show that Orrick's representation of Loop AI and Sternberg's representation adverse to Loop AI are substantially related, which Loop AI has already done in its DQ Motion. *See* Mot. at 18:20-21:6. As the *Adams* court made clear, "in light of the paramount importance of maintaining the inviolability of client confidences, where a substantial relationship between the former firm's representation of the client and the current lawsuit has been shown (as is the case here), ***the attorney whose disqualification is sought should carry the burden of proving that he had no exposure to confidential information relevant to the current action while he was a member of the former firm***."[24]  *Id.* at 1341 (emphasis supplied). The court went on to emphasize that this "burden requires an affirmative showing and is not satisfied by a cursory denial." *Id.*

Even if the Court were to consider Sternberg's declaration, he simply denies, in cursory fashion, that he ever met Gatti, but does not rule out the possibility that he may have spoken to her over the telephone – he only says that he does not "recall" doing so. *See* Dkt. 278-2 at ¶ 10. Moreover, in prior briefs and declarations submitted by both Valeria Sandei and Thomas Wallerstein, Almawave represented that Gatti was communicating with the Orrick team. *See, e.g.,* Dkt. 168 at passim, VCH Decl., Ex. 5; Dkt. 168-1 at ¶ 5, 168-2. Sternberg's conclusory denials of contact with Gatti or with the Orrick lawyers working for Loop AI — three of which overlapped — are not the "affirmative showing" that he had no access to Loop AI's confidences that the applicable cases have in mind. *See, e.g., United States v. Sun Keung Lee*, No. CR 10-0186 MHP, 2011 U.S. Dist. LEXIS 1198, at *7 (N.D. Cal. Jan. 5, 2011) ("Whether Mr. Gruel

---

[24] The *Adams* court also explained, in deciding a disqualification motion, "[t]he trial court's discretion is broad. It may not only consider the declarations and other evidence before it, but may apply 'inferences, deductions or working presumptions that reasonably may be made about the way in which lawyers work together…'" *Id.* at 1340, quoting ABA Model Rule 1.9, com. [6].

has any present recollection is not dispositive here"), citing *Rosenfeld Constr. Co. v. Super. Ct.*, 235 Cal. App. 3d 566, 576 (1991) ("We find no authority that supports the notion that, standing alone, the present recollection of the members of the firm is an adequate criterion.") and *Global Van Lines, Inc. v. Super. Ct.*, 144 Cal.App.3d 483, 488 (1983) (finding that, notwithstanding an attorney's claims of no present recollection, it is not unreasonable to impute receipt of confidential information where it would have been logical for the attorney to have received such information in the course of his employment).

In light of the above, as well as the California Supreme Court's admonition that the "important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process" – Loop AI respectfully submits that the Court should resolve any doubt it may have as to whether Sternberg received Loop AI confidences while at Orrick in favor of a finding that he did.

### III.  THE PERSONAL INTEREST CONFLICT CREATED BY STERNBERG IS AN INDEPENDENT REASON FOR HIS AND VENABLE'S DISQUALIFICATION.

In its DQ Motion Loop AI argued that Sternberg's and Venable's disqualification in this case is also required as a result of a personal interest conflict arising out of Sternberg's material participation in the events giving rise to this case. Loop AI explained that, as a result of his involvement in the underlying events at issue in this action, Sternberg is exposed to liability from multiple parties. Mot. at 21-24. Loop AI provided precedential authority from both New York and California that supports disqualification based on an attorney's personal conflict of interest.[25] Almawave does not dispute in its brief that Sternberg faces liability to Loop AI, Almawave and possibly others (e.g., Orrick) as a result of the events at issue.[26] Nor does Almawave provide any

---

[25] *See* Mot. at 23 and n. 53. The Rules of Professional Conduct and the case law recognize conflicts arising out of a lawyer's personal interest in the case. *See, e.g.,* NY Rules of Prof'l Con. R. 1.7(a)(2) (conflict exists whenever "there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own … personal interests."). *See also, e.g., Cal Pak Delivery, Inc. v. UPS, Inc.*, 52 Cal. App. 4th 1, 11 (1997) (disqualifying counsel based on personal interest conflict).

[26] Almawave also does not disclose in its brief or declarations whether it has already threatened Sternberg with any claims.

case law to the contrary.  Instead, Almawave ignores the points made by Loop AI and falsely re-characterizes Loop AI's position as based on a contention that under the attorney-witness rule disqualification is not appropriate.  Although there is no question that Sternberg will be a material witness in this case, Loop AI is not invoking the attorney-witness rule.

Loop AI demonstrated in its DQ Motion that, in this litigation, such a personal interest conflict is likely to impede the administration of justice and is improper.  Venable has been advocating positions on behalf of Almawave that it should have reason to know are incorrect and that a law firm without a personal interest would be unlikely to take.  For instance, the most recent example of this behavior is Venable's insistence that Almawave USA is a real, substantial, stand-alone enterprise — at a time when Almawave USA's ***only business address has been changed from Gatti's home to Venable's modest-sized San Francisco office***[27] (facts inevitably known to Venable that appear to directly refute the position taken, and reflecting an unusual entanglement of Venable in its client's business while that business is specifically at issue in this case).[28]

Almawave claims that Loop AI added allegations in its Second Amended Complaint regarding Sternberg for purposes of the supporting its DQ Motion, but this claim lacks any basis in fact. The personal interest conflicts afflicting Sternberg and Venable were created by them, not by Loop AI.[29]  These conflicts provide an independent basis for ordering Sternberg and Venable's disqualification.[30]

---

[27] *See, e.g.,* Dkt. 252-1; VCH Decl., Ex. 3.
[28] A firm's sharing of office space with a client has been recognized as creating disqualifying conflicts in other contexts.  *See, e.g., Apple Computer, Inc. v. Sup. Ct.*, 126 Cal. App. 4th 1253, 1266 (Cal. App. 2d Dist. 2005) (disqualifying counsel based on appearance of impropriety).
[29] As the Court is aware, Loop AI brought its claim based on Orrick's fiduciary breaches ***in April 2015***.  *See* Dkt. 45 at ¶ 308. On July 2, 2015, the Court even heard oral argument on that claim. *See* Dkt. 159 at 20-22.  During that hearing, Loop AI's counsel — before knowing that Sternberg was the lawyer personally responsible for the Orrick breaches at issue here — explained to the Court why Orrick breached its fiduciary duties to Loop AI by undertaking the conflicted Almawave-Gatti representation.  *Id.*  Loop AI could not have included Sternberg's name in the Complaint sooner because Almawave and Venable concealed his name and vigorously objected to Orrick's disclosure of that information, which was only provided as a result of Judge Ryu's Order regarding the Orrick Subpoena.
[30] *Chugach Electric Asso. v. US*, 370 F.2d 441, 442 (9th Cir. 1966) ("Where conflict of interest or abuse of professional confidence is asserted, the right of an attorney freely to practice his profession must, in the public interest, give way in cases of doubt.")

|   |   |   |
|---|---|---|
| | | Respectfully submitted, |
| October 28, 2015 | By: | /s/ *Valeria Calafiore Healy* |
| | | Valeria Calafiore Healy, Esq. (*phv*)<br>Valeria.healy@healylex.com<br>HEALY LLC<br>154 Grand Street<br>New York, New York 10013<br>Telephone:   (212) 810-0377<br>Facsimile:    (212) 810-7036 |
| | | Daniel J. Weinberg, Esq. (SBN 227159)<br>dweinberg@fawlaw.com<br>FREITAS ANGELL & WEINBERG LLP<br>350 Marine Parkway, Suite 200<br>Redwood Shores, California 94065<br>Telephone:   (650) 593-6300<br>Facsimile:    (650) 593-6301 |
| | | Attorneys for Plaintiff<br>LOOP AI LABS, INC. |