1   VALERIA CALAFIORE HEALY (*pro hac vice*)
    HEALY LLC
2   154 Grand Street
    New York, New York  10013
3   Telephone:     (212) 810-0377
    Facsimile:      (212) 810-7036
4
5   DANIEL J. WEINBERG (SBN 227159)
    FREITAS ANGELL & WEINBERG LLP
6   350 Marine Parkway, Suite 200
    Redwood Shores, California  94065
7   Telephone:     (650) 593-6300
    Facsimile:      (650) 593-6301
8
    Attorneys for Plaintiff
9   LOOP AI LABS INC.

10              UNITED STATES DISTRICT COURT

11         FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13   LOOP AI LABS INC.,                    CASE NO.: 3:15-cv-00798-HSG-(DMR)

14                                         **PLAINTIFF LOOP AI LABS INC.'S**
                 Plaintiff,                **NOTICE OF MOTION AND MOTION**
15                                         **PURSUANT TO FED. R. CIV. P.**
                 v.                        **16(b)(4) and (f) FOR MODIFICATION**
16                                         **OF CASE MANAGEMENT ORDER**
     ANNA GATTI, et al,                    **AND FOR SANCTIONS AGAINST**
17                                         **ANNA GATTI. IOSYSTEM LLC.**
                 Defendants.               **IOSYSTEM INC. ALMAWAVE SRL,**
18                                         **ALMAVIVA SPA.**

19                                         Action Filed:  February 20, 2015
                                           Trial Date: July 11, 2016
20

21

22

23

24

25

26

27

28

**PLEASE TAKE NOTICE THAT** based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and supporting exhibits and all other relevant pleadings and filings made in this matter, Plaintiff Loop AI Labs Inc. ("Loop AI" or "Plaintiff") hereby moves this Court for a modification of the Case Management Order, Dkt. 105 ("CMO"), pursuant to Federal Rule of Civil Procedure 16(b)(4), extending all pending deadlines set by the Court at the May 26, 2015 Case Management Conference, and reflected in the CMO filed on June 5, 2015, by the same period of time for which Defendants have refused (and continue to refuse) to provide discovery to Loop AI — as of the time of filing of this motion, that period of time is 5 months and 26 days, or 179 days.

On September 25, 2015, (Dkt. 214), as a result of the Defendants' refusal to produce any discovery, Loop AI moved the Court to enforce the CMO ("Motion to Enforce"). The Defendants did not respond to Motion to Enforce, nor did they take any steps to comply with it and start producing documents in response to Loop AI's discovery requests. Loop AI has met and conferred with the Defendants dozens of times to obtain their compliance with the CMO, and confirmed to the Defendants during an in-person meet and confer held on November 6, 2015 that it would move for sanctions under Rule 16 if they continued to refuse to produce documents in response to Loop AI's discovery requests. Accordingly, Loop AI also respectfully moves for sanctions pursuant to Federal Rule of Civil Procedure 16(f) and Northern District of California Civil Local Rule 7-8 against Defendants Anna Gatti, IQSystem LLC, IQSystem Inc., Almawave S.r.l., and Almaviva S.p.A. ("Defendants") in the form of an Order requiring each of these 5 Defendants to sign authorization forms for Loop AI to obtain certain discovery directly from certain nonparties who are storing the responsive documents that the Defendants should have produced, but did not. This Order is necessary so that Loop AI can finally obtain the discovery that these Defendants have refused to provide. The Court's intervention is especially necessary because, after delaying the start of discovery for several months after this action was filed, the

Defendants are now trying to run out the clock on the discovery period set forth in the CMO to leave the Plaintiff without any opportunity to obtain discovery and force it to take depositions without any documentary production by the Defendants.  Respectfully, Defendants' gamesmanship is inappropriate and should not be allowed.

Loop AI reserves the right to also move against Defendant Almawave USA Inc. Specifically, Almawave USA, like the other Defendants, has refused to either produce documents or to allow Loop AI to inspect any document responsive to Loop AI's discovery requests.  On November 17, 2015, however, Almawave USA sent a letter to Loop AI indicating that it would begin producing documents.  According, Loop AI does not presently move for sanctions against Almawave USA pending its ability to evaluate Almawave's revised position.

Loop AI respectfully requests a Conference to address the modifications to the Civil Case Management Conference sought herein.  Loop AI is not certain whether the Case Management Conference and this Motion should be noticed for a hearing before the Honorable Haywood S. Gilliam, Jr. or before the Honorable Donna M. Ryu, and respectfully requests the Court's clarification in that regard.

Respectfully submitted,

November 23, 2015                          By:  /s/ *Valeria Calafiore Healy*

Valeria Calafiore Healy, Esq. (*phv*)
HEALY LLC

Daniel J. Weinberg, Esq. (SBN 227159)
FREITAS ANGELL & WEINBERG LLP

Attorneys for Plaintiff
LOOP AI LABS, INC.

# TABLE OF CONTENTS

**Pages**

MEMORANDUM OF POINTS AND AUTHORITIES .........................................................................1

INTRODUCTION .........................................................................................................................1

PROCEDURAL BACKGROUND...................................................................................................2

ARGUMENT ................................................................................................................................4

I.   RULE 16 AUTHORIZES MODIFICATION OF THE SCHEDULING ORDER
     FOR GOOD CAUSE SHOWN ..........................................................................................4

     A.   Loop AI Exercised Diligence in its Pursuit of Discovery in Order to Meet the
          Deadline Listed in the CM Order .........................................................................5

     B.   The Deadline for Close of Fact Discovery Cannot Reasonably by Met.....................8

II.  SANCTIONS ARE APPROPRIATE FOR FAILURE TO OBEY THE RULE 16
     CASE MANAGEMENT ORDER ENTERED BY THE COURT ...................................10

     A.   The Almaviva Defendants Refusal to Produce Documents Violates the CM
          Order ................................................................................................................11

     B.   Gatti and the IQS Defendants' Refusal to Produce Documents Violates the
          CM Order ..........................................................................................................13

     C.   Type of Sanctions Requested Against the Italian Defendants .................................13

     D.   Form of Sanctions Requested Against the Gatti and IQSystem Defendants ............13

          1.   The Request to Compel Authorization by the Gatti/IQSystem Is An
               Appropriate Sanction ...............................................................................14

CONCLUSION............................................................................................................................16

1

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Rules 16(b)(4) and 16(f) of the Federal Rules of Civil Procedure,[1] and

Northern District of California Civil Local Rule 7-8, Plaintiff Loop AI Labs Inc. ("Loop AI")

respectfully submits this Memorandum of Points and Authorities in support of its motion for

modification of the Scheduling Order and for sanctions against Defendants Anna Gatti,

IQSystem LLC, IQSystem Inc., Almawave S.r.l., and Almaviva S.p.A.[2] for their refusal to

produce documents in response to any discovery request, in violation of the Case Management

Order requiring that they engage in discovery.  *See* Dkts. 100 (Minute Order), 105, 111.

## INTRODUCTION

The Defendants should not be permitted to continue frustrating Loop AI's rights under

the Federal Rules of Civil Procedure to obtain discovery from each of them.  After this Court

denied Loop AI's Motion for Expedited Discovery in March 12, 2015, the Defendants embarked

in their first attempt to delay discovery by making themselves unavailable for more than two

months to have the Rule 26(f) conference, so that they could delay the beginning of discovery.[3]

Thereafter, the Defendants proposed a Case Management Order to the Court that would have

allowed for *no discovery* until "the pleadings including any cross-complaint are closed," [Dkt. 98

at 5:19] and for extremely limited discovery thereafter to be conducted *in four separate phases*.

Even though the Court rejected the Defendants' multi-phase merits discovery proposal in its

entirety, *see* Dkt. 111, the Defendants nonetheless granted themselves the right to evade all

discovery served on them by Loop AI.  Specifically, despite the fact that the Court expressly

---

[1] All further references to any "Rule" or "Rules" refer to the Federal Rules of Civil Procedure unless otherwise stated.

[2] Almawave USA, Inc. ("AUSA"), Almawave S.r.l. ("Almawave IT"), Almaviva S.p.A. ("Almaviva IT" and, together with AUSA and Almawave IT, the "Almaviva Defendants"), Anna Gatti ("Gatti"), IQSystem Inc. ("IQS Inc."), and IQSystem LLC ("IQS LLC" and, together with IQS Inc., the "IQS Defendants") (together with IQS Inc., Gatti, and the Almaviva Defendants, "Defendants").

[3] *See* Fed. R. Civ. P. 26(d) (allowing discovery to begin immediately after Rule 26(f) conference among the parties' counsel).

stated on May 26, 2015 that no party was permitted to invoke an automatic stay of discovery without a Motion, the Defendants ignored the Court's instruction and have since come up with a varied series of excuses under which they have claimed that all discovery by Loop AI was automatically stayed and could not go forward.

The Defendants' strategy of first delaying the beginning of discovery and now trying to run out the clock on discovery without producing a single document is impermissible and must be put to an end.  Loop AI is entitled to avail itself of the period of discovery that the Court allowed without the Defendants frustrating Loop AI's attempts to get even the most basic discovery.  Accordingly, Loop AI respectfully moves for modification of the Case Management Order to recoup the discovery time during which the Defendants have refused to produce documents (which time is continuing) and for sanctions.

## PROCEDURAL BACKGROUND

On May 26, 2015, this Court conducted an initial case management conference, which was attended by all parties (the "CM Conference").  Dkt. 111.  During the CM Conference, the Court laid out a schedule for the remainder of the case, including, *inter alia*, a deadline for fact discovery: January 29, 2016.  *Id.* at 22:11-20.  Following the CM Conference, on May 27, the Court filed a Minute Entry memorializing the schedule laid out during the CM Conference.  Dkt. 100 (Minute Order).  The contents of this Minute Entry were fully set forth a few days later in the Court's Scheduling Order.  Dkt. 105. [4]

During the CM Conference, the Court unambiguously stated that discovery was not being stayed for any party.  *Id.* at 15:1-7.[5]

[4] The Court's statement during the CM Conference, Dkt. 111 at 22:11-20, its Minute Entry, Dkt. 100, and its Scheduling Order, Dkt. 105, all contain the same scheduling information, and are jointly referred to herein as the "CM Order."
[5] In the first of a series of baseless "discovery stay" arguments, the Defendants argued that California Code of Civil Procedure § 425.16(g) required a stay resulting from Loop AI's filing of

For instance, at the CM Conference, the parties and the Court addressed the Italian Almaviva Defendants' counsel's contention that his clients should not be forced to engage in discovery until the Court decided those parties' motions to dismiss, because those parties were in Italy. Dkt. 111 at 7-8. After Loop AI objected that Almaviva could not stop discovery without having filed a motion to stay discovery, the Court agreed and indicated to Almaviva's counsel "if you want to move for a stay – and I don't express any point of view on that …" Dkt. 111 at 9:20-21. Similarly, the Court addressed the Defendants' separate contention regarding a purported "automatic stay" of discovery, *see id.* at 15:1-7, raised by the Defendants in their proposed Case Management Order under a California Rule of Civil Procedure. *See* Dkt. 98 at 11. The Court was very clear that the Defendants were required to file a motion if they believed discovery was stayed. *See* Dkt. 111 at 15:1-7 (The Court: "I understand that there at least a representation that there's an automatic stay. And from my point of view, if a stay is sought, ***it needs to be moved for*** a just -- and, again, I don't know if this is an issue that's ripe, but it's my perspective that if any party is asserting that discovery is stayed, they need to seek -- seek the Court's concurrence with that." (emphasis supplied)).

Although at the CM Conference the Court directed that discovery should proceed and conclude by January 29, 2015, each of the Defendants have refused to produce a single document. Despite the Court's instruction that any defendant seeking a discovery stay was required to file a motion and not simply to invoke the existence of a stay, Defendants Gatti, IQSystem LLC, IQSystem Inc., Almaviva S.p.A., and Almawave S.r.l. (the "Stay Defendants") have claimed a variety of alleged automatic stays of discovery under one or another California Rule of Civil Procedure or on the basis of the Court's alleged lack of personal jurisdiction.

---

a Special Motion to Strike directed to a counterclaim filed by IQS Inc., even though the Special Motion to Strike pertained in no way to discovery from the Defendants.

Defendant Almawave USA also invoked a stay under California Rule of Civil Procedure 2019.210, and has refused to produce any documents with the exception of an insurance policy produced with its Initial Disclosures.  On November 17, 2015, Almawave USA claimed it would finally be making a production of documents.  This belated production does not restore Loop AI's discovery time.  Accordingly, although Loop AI does not yet move for sanctions against Almawave USA, it reserves the right to do so depending on the production that it will receive.

ARGUMENT

## I.   RULE 16 AUTHORIZES MODIFICATION OF THE SCHEDULING ORDER FOR GOOD CAUSE SHOWN.

Rule 16 authorizes modification of the CM Order "for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  Good cause exists when a deadline "cannot reasonably be met despite the diligence of the party seeking the extension."  Rule 16 Advisory Comm.'s Notes (1983 Am.).

The facts of this case clearly establish both that good cause exists for modification, and that Loop AI has diligently pursued compliance with the CM Order.  Through their gamesmanship the Defendants have effectively deprived Loop AI of over eight months of discovery time in two significant ways.  First, the Defendants delayed the beginning of discovery because they refused to participate, for more than 2 months, in the Rule 26(f) conference that could have allowed Loop AI to immediately begin discovery as early as March 2015.  *See* Fed. R. Civ. P. 26(d).  *See* also Dkt. 89-9 at 8; Dkt. 97 at 2 (Loop AI's counsel's declarations detailing repeated attempts to begin discovery).  Second, once the Court ordered discovery, the Defendants began engaging in a concerted effort to frustrate Loop AI's ability to obtain any discovery from them, while at the same time running out the clock on the discovery time allowed by the Court in the CM Order.  Loop AI is entitled to the full benefit of the discovery time the Court allowed, and respectfully requests that the six months during which the Defendants have

refused to provide discovery be fully restored to the CM Order so that Loop AI can actually have a reasonable amount of time to obtain its discovery.  Loop AI also respectfully requests that the Court impose stringent sanctions if the Defendants continue to frustrate Loop AI's attempts to obtain discovery.

### A. Loop AI Exercised Diligence in its Pursuit of Discovery in Order to Meet the Deadline Listed in the CM Order.

Loop AI has vigorously pursued discovery from the inception of this case.  On March 3, 2015, Loop AI served interrogatories and requests for production of documents on all Defendants by ECF filing.[6] Dkt. 9-1.  No documents were produced in response to these requests, which remain outstanding.  Loop AI diligently continued its pursuit of discovery, from parties and non-parties, following entry of the CM Order as well:

- Immediately following the CM Conference, Loop AI sought to conduct the Court-ordered Rule 26(f) ESI Meet and Confer as it had been attempting to do without success prior to the CM Conference.  See Dkt. 111 at 10:19-20 ("it strikes [that the Rule 26 ESI meet and confer] ought to be routine, so let's do this this week.") The Defendants refused to do so.  See Dkts. 101, 101-1 (Summarizing Loop AI's attempts to promptly conduct the ESI meet and confer, and the Defendants' refusal to do so).[7]

- In early June 2015, Loop AI subpoenaed Russell Reynolds Associates ("RRA"), a key witness in this case.  Dkt. 102.  The Defendants embarked on a flurry of filings to obstruct all discovery from this nonparty, both in California and in New York.  As a result of the Almaviva Defendants' direct interference with Loop AI's attempt to obtain responses to its nonparty Subpoena, Loop AI was required to expend substantial resources to get documents responsive to a Subpoena with a mere 13 Requests.  See, e.g. Dkts. 128, 129, 130, 132, 133, 140, 153, 155, 158, 162, 164, 166.  The Almaviva Defendants' interference was in bad faith and their counsel admitted to

---

[6] Loop AI has sought to meet and confer as to these discovery requests and ESI matters since March 5, 2015.  See, e.g., Dkt. 53 at ¶¶ 16-18; Dkt. 89 at ¶¶ 27-30; Dkt. 89-9; Dkt. 96 at 4, 7; Dkt. 97 at ¶¶ 8-18; Dkt. 101-1; Dkt. 111 at 14:14-18, 20:21-22:01.  The Defendants' conduct regarding the initial ESI conference is representative of their conduct vis-à-vis discovery as a whole:  "the [defendants] declined to make themselves available for the Rule 26(f) conference until May 4, 2015, the penultimate day allowed under the Court's Scheduling Order."  Dkt. 89 at ¶ 28.
[7] See also Dkt. 111 at 7:10-22 (Counsel for the Almaviva Defendants stated that there are "several" downsides to having a prompt ESI conference following the CM Conference, including "the personal jurisdiction motions from the two Italian Almawave entities.  And those are obviously dispositive motions – yay or nay – whether they are in or out of the case.").

having made "false statements" in its filings seeking to stop Loop AI from obtaining discovery from RRA. Dkt. 158 at 3; SDNY No. 15-MC-211, Dkt. 16 at 2.

- In early June 2015, Loop AI also served a subpoena on its former corporate counsel, Orrick, Herrington & Sutcliffe LLP ("Orrick"), another key witness in this case. The Almaviva Defendants promptly interfered with this Subpoena as well by directing Orrick not to respond and filing an emergency motion before the Court. *See, e.g.* Dkts. 112, 114, 124, 141, 168. Despite the fact that the Court promptly granted the Almaviva Defendants permission to move for a protective order, they then, without any justification, delayed the filing of this protective order ***for over three months,*** impeding crucial discovery and resolution of the disputes over the requests in the Subpoena, which disputes remain pending. Moreover, the Almaviva Defendants also refused to produce or to allow Orrick to produce a privilege log of the documents received from Orrick, foreclosing Loop AI's ability to make all its privilege challenges in the same motion. *See, e.g.,* Dkt. 177 at 9:20-10:9. The Almaviva Defendants also refused to turn over documents produced by Orrick that were not privileged and that they told the Court they would produce, but which were never in fact produced.

- Loop AI propounded discovery requests on all Defendants between August 17, 2015 and August 20, 2015 (the "Discovery Requests"). *See* VCH Declaration dated November 23, 2015 ("VCH Decl."), Exhibits G-L. Each of the Discovery Requests contained a request to meet and confer in order to expeditiously resolve any objections thereto and provided numerous dates for the meet and confers in order not to delay production. *See id.* The Defendants simply ignored these requests and have refused to produce a single document in response to then. *See* Dkt. 272-2, 272-3, 272-4, 272-5, 272-6, to 272-7. After Loop AI filed a motion to compel and the Court directed the parties to meet and confer, the Defendants again confirmed they do not have to produce anything to Loop AI because discovery is automatically stayed as to Loop AI.[8]

---

[8] *See, e.g.,* Audio Recording of Meet and Confer dated October 30, 2015 between counsel for Loop AI (Bryan Wolin ("BW")) and counsel for IQSystem Inc. (Janet Brayer ("JB")) at minute 5:04:

> BW: "Everything is stayed pending a decision on the trade secrets motion, and then after that we'll proceed in the usual course of addressing your objections to each of the individual requests."

> JB: "Yeah. Then we can talk about, the, uh, address the objections, and hopefully we can narrow them or address the concerns and move forward."

*See also* Audio Recording of Meet and Confer dated October 21, 2015 between counsel for Loop AI (Bryan Wolin ("BW")) and, *inter alia*, counsel for Anna Gatti and IQSystem LLC (Thomas LoSavio ("TL")) at minute 38:08:

> TL: "I'm joining in the position by IQSystem Inc. with respect to the nature and extent of the statutory prohibition on discovery that results from Loop's failure to adequately describe its trade secrets."

Loop AI stands ready to provide audio recordings of each of these meet and confers upon request by the Court.

- On September 15, 2015, Loop AI propounded further supplemental discovery requests upon the Almaviva Defendants (the "Supp. Requests"). *See* VCH Decl., Exhibit M. The Supp. Requests also included requests to meet and confer, which were likewise ignored. The Italian Almaviva Defendants also continue to claim that discovery is stayed as to them because the Court has no jurisdiction over them. However, at the May 26, 2015 conference, during which Almaviva's counsel raised this same contention, the Court expressly told Almaviva that if wanted to obtain a stay on jurisdictional grounds it needed to file a motion. *See* Dkt. 111 at 15:1-7 (The Court: "I understand that there at least a representation that there's an automatic stay. And from my point of view, if a stay is sought, ***it needs to be moved for*** a just -- and, again, I don't know if this is an issue that's ripe, but it's my perspective that if any party is asserting that discovery is stayed, they need to seek -- seek the Court's concurrence with that." (emphasis supplied)).

- After continued failure by all Defendants to produce a single document in response to dozens of discovery requests, Loop AI filed its Emergency Motion to Enforce the Federal Rules of Civil Procedure and Case Management Order ("Motion to Enforce"). Dkt. 214. The Defendants provided no response or opposition to the Motion to Enforce.

- Loop AI also continued to diligently seek discovery from nonparties. For instance, as a result of the Almaviva Defendants' refusal to produce any documents, Loop AI had to undergo the expense of serving Subpoenas on two officers of the Italian Almaviva Defendants that Loop AI discovered were traveling to California in October 2015. After undergoing the expense of serving these individuals in person in the United States, the Almaviva Defendants' counsel has nonetheless refused to produce a single document in response to the Subpoena on the ground of yet more baseless objections.

- On October 7, 2015, Loop AI filed its Administrative Motion for Leave to File Motions to Compel Discovery. Dkt. 247. The Defendants vigorously objected to this Motion resulting in the Court sending back the Motion to the parties to meet and confer about the disputes. *See* Dkt. 271.

- Since the Court's Order at Dkt. 271, Loop AI has participated in weekly meet and confers with each of the Defendants, many of which were outright ignored by those defendants. *See* Dkt. 299-2 (Log of Meet and Confers). The Defendants have persisted in their positions that discovery is stayed, or sought to discuss deposition scheduling first – ignoring the fact that it is unreasonable to force Loop AI to participate in depositions before Loop AI has been able to obtain the discovery it has been seeking for months. On November 17, 2015, Almawave USA finally communicated to Loop AI it would begin producing some documents.

- Loop AI attempted, repeatedly and unsuccessfully, to meet and confer with each of the Defendants to resolve objections to the Discovery Requests and Supp. Requests, dozens of times. Despite that the Defendants continue to block all party discovery.

- Loop AI issued subpoenas *duces tecum* to various non-parties. Loop AI has received documents in response to only seven of these subpoenas, at least several of which were incomplete, and is diligently seeking to obtain responses from the various nonparties, which is a time-consuming task because the Defendants object to virtually every subpoena that Loop AI issues.

Loop AI is entitled to obtain its requested document discovery before taking depositions. Without any document production, Loop AI cannot reasonably begin taking depositions. Loop AI needs to conduct the depositions efficiently and should not have to depose witnesses twice, which would be necessary if documents are produced after a deposition has already happened.

In sum, Loop AI has pursued discovery for some eight months, before and after the CM Order was entered. Yet, today, after countless hours expended on meeting and conferring, the Defendants have refused to produce copies or to make available for inspection any documents. Fact discovery is scheduled to end in just over two months, leaving Loop AI without sufficient time within which to reasonably conduct the discovery it is entitled to obtain. Similarly, Loop AI's non-party discovery has only barely progressed because the Defendants object to virtually every Subpoena.

**B.  The Deadline for Close of Fact Discovery Cannot Reasonably be Met.**

In light of the near total lack of party discovery in this case, a great deal remains to be done before close of fact discovery – currently scheduled for January 29, 2016. *See* Dkt. 105.  In order to compile the factual record necessary to prosecute its case, Loop AI will need to, at minimum:

1.  Resolve outstanding objections filed by all Defendants to every item of the Discovery Requests, as well as other Discovery propounded by Loop AI;

2.  Obtain documents from each of the Defendants;

3.  Review all documents received from each of the Defendants, which counsel for the Almaviva Defendants has indicated are likely to be substantial in number;

4.  Schedule and conduct party depositions, which cannot reasonably be scheduled until documents are produced;

5.  Propound, and receive, further documentary discovery as may be necessary based on the productions received;

6.  Resolve objections to third-party discovery from various entities and individuals;

7.  Schedule and conduct depositions of various crucial third-party entities and individuals.

Loop AI has vigorously pursued completion of each of these items, but has been obstructed at every turn by the Defendants.[9]  Even if the Defendants agreed to cease their stonewalling and immediately produced all requested documents, the time remaining before close of fact discovery – 66 days as of November 23, 2015 – would be barely sufficient to complete these tasks.  The high likelihood of continued delaying tactics by the Defendants renders the current schedule impossible to meet.

Loop AI requested an expedited trial on the assumption that the Defendants would comply with the CM Order.  Unfortunately, this has not been the case.  The Defendants are not permitted to deprive Loop AI the right to compile a proper record for trial through discovery.  Accordingly, Loop AI respectfully requests modification of the CM Order, extending all deadlines as follows:

| Event | OLD Deadline CM Order Dkt. 105 | NEW [Proposed] Deadline |
| --- | --- | --- |
| Filing of Third Amended Complaint in Respect of Jurisdictional Allegations | | (This deadline has already been set by the Court at Order Dkt. 231) 14 days after the expiration of the jurisdictional discovery period. |
| Italian Almaviva Defendants Answer of Rule 12(b)(2) Motion. | | (This deadline has already been set by the Court at Order Dkt. 231) 35 days after the expiration of the jurisdictional discovery period. |
| Fact Discovery Close | Jan. 29, 2016 | July 1, 2016 |
| Designate Opening Experts | Feb. 12, 2016 | Sept. 2, 2016 |
| Designate Rebuttal Experts | Feb. 26, 2016 | Sept. 19, 2016 (this deadline takes into account the Labor Day weekend) |
| Experts Reply Date | Mar. 4, 2016 | Sept. 26, 2016 |
| Expert Discovery Close | Mar. 18, 2016 | Oct. 15, 2016 |
| Dispositive Motion Filing | Mar. 31, 2016 | Aug. 31, 2016 |

---

[9] Precisely as counsel for the Almaviva Defendants promised to Loop AI, and as Loop AI advised the Court in April 2015.  *See* Dkt. 53 at ¶ 16 ("On March 5, 2015, [counsel for Loop AI] had a telephone conference with counsel for the Almaviva Defendants, Mr. Wallerstein.  During that call, the Almaviva Defendants' counsel [stated] that it would take a long time before [Loop AI] could get any discovery from the Almaviva Defendants.")

| Deadline | | |
|---|---|---|
| Dispositive Motion Hearing Date | May 5, 2016 at 2 p.m. | Oct. 20, 2016 |
| Pretrial Conference | Jun. 28, 2016 at 3 p.m. | Nov. 24, 2016 |
| Trial Date | Jul. 11, 2016 | Dec. 5, 2016 |

## II. SANCTIONS ARE APPROPRIATE FOR FAILURE TO OBEY THE RULE 16 CASE MANAGEMENT ORDER ENTERED BY THE COURT.

Rule 16 authorizes a Court to impose sanctions where parties "fail[] to obey a scheduling or other pretrial order."  Rule 16(f)(1)(C).  Rule 16 further requires that, "[i]nstead of or in addition to any other sanction, the court **must** order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance  was substantially justified or other circumstances make an award of expenses unjust."  Rule 16(f)(2) (emphasis added).

Loop AI respectfully moves for the imposition of sanctions against Defendants Gatti, IQSystem LLC, IQSystem Inc., Almaviva S.p.A., and Almawave S.r.l. ("Defendants").  As stated above, in light of AUSA's counsel's correspondence to Loop AI on November 17, 2015 claiming that it would begin to produce documents, Loop AI does not at this time move for sanctions against that party pending its ability to determine what this party is producing or making available for inspection by Loop AI.  As more fully set forth below, AUSA's refusal to produce documents or make them available for inspection until November 17, 2015 was also unjustified and simply a dilatory tactic.

As set forth *supra*, none of the Defendants has produced a single document in response to Loop AI's discovery requests.  *See* VCH Decl. at ¶¶ 3-6; *See* Dkt. 272-2, 272-3, 272-4, 272-5, 272-6, to 272-7.  While the reasons proffered for this failure vary, the end result is the same – the Defendants have granted themselves an automatic stay discovery without the Court's concurrence.  These Defendants' refusal to produce or make available for inspection any discovery in response to Loop AI's discovery requests is directly in violation of the CM Order.

1    *See* Dkts. 100 (Minute Order), 105, 111.  The Defendants' conduct will no doubt continue

2    through the end of the discovery period – now barely two months away – absent prompt,

3    affirmative action by the Court.

### A. The Almaviva Defendants' Refusal to Produce Documents Violates the CM Order.

6    The Almaviva Defendants have failed to produce more than a single document — namely

7    an insurance policy — to Loop AI, and have proffered no legally valid explanation for their

8    refusal to engage in discovery to date.  The end result of the Almaviva Defendants' delay tactics

9    is, in effect, a less-than-two-month discovery period during which it would force Loop AI to

10   resolve not only the voluminous outstanding interrogatories and requests for production, but also

11   schedule and conduct numerous depositions, without having any documents.  This is,

12   respectfully, an unreasonable task, and is precisely the outcome the Almaviva Defendants sought

13   to engineer from the very beginning of this case.

14   AUSA claimed that the lack of an ESI agreement governing the format of document

15   production was a sufficient basis to refuse to even begin document production until November

16   17, 2015.  This position is meritless, and AUSA has provided no legal support for it.  Further,

17   blame for the lack of an ESI agreement can be placed squarely on the Defendants' shoulders,

18   including AUSA, as they repeatedly rebuffed Loop AI's attempts to establish an ESI agreement

19   as far back as *May 2015*.  *See* Dkts. 101, 101-1.  In light of AUSA's refusal to come to an ESI

20   agreement prior to service of the Discovery Requests, Loop AI included instructions in those

21   Discovery Requests describing Loop AI's requested production format.  *See* VCH Decl., Exhibit

22   G at 2.[10]  AUSA's objection to that format, after its prior refusal to agree to a format in the first

_____

[10] In the interest of further clarity, and to facilitate production of documents, Loop AI also
specified search terms for two of its document requests made to each of the Almaviva
Defendants in the initial Discovery Requests.  *See* VCH Decl., Exhibit G at Requests 11-12,

place, is simply not a proper basis upon which to refuse to make ***any*** production or to even make the documents available for inspection by Loop AI.

Closer investigation shows that AUSA's ESI objection is merely another delay tactic. For instance, contained within the Discovery Requests is a request seeking production of documents obtained by way of non-party subpoenas. *Id.* at Request 19. Despite repeated requests that AUSA promptly produce at least those documents received pursuant to Subpoenas in whatever format they were received, ***AUSA refused to do so for over two months.*** If AUSA's objections were truly grounded in formatting concerns, AUSA would have at least promptly produce these documents received from nonparties in a format that could not be changed by AUSA. But its objections lacked any merit. The reality is much simpler: no documents have been produced because AUSA has been acting in concert with the other Defendants to run out the clock on the discovery time and prevent Loop AI from being able to obtain the discover to which it is entitled.

Almawave IT and Almaviva IT (jointly, the "Italian Almaviva Defendants") likewise have refused to produce any discovery, claiming that discovery is stayed as to them pending entry of a joint stipulation or order governing jurisdictional discovery. *See, e.g.,* Dkt. 272-3 and 272-4. Moreover, the Italian Almaviva Defendants have refused to even produce ***any*** jurisdictional discovery pending the court's ruling on Loop AI's supplemental discovery requests directed to jurisdiction. Loop AI repeatedly sought to resolve disputes over the jurisdictional discovery stipulation, but was rebuffed by the Italian Almaviva Defendants. In fact, many months after the Court ordered in the CM Order that discovery should proceed as to all parties,

---

Exhibit H at Requests 11-12, and Exhibit I at Requests 11-2. However, as with the other requests, no documents were produced in response to these two requests for production.

MOTION FOR MODIFICATION & SANCTIONS

the Italian Almaviva Defendants' have now taken the position that even as to jurisdictional discovery, it must be limited to a handful of discovery requests, interrogatories, and depositions.

The Italian Almaviva Defendants' refusal to produce documents in response in discovery is in violation of the CM Order entered by the Court pursuant to Rule 16 and should be sanctioned by the Court. Loop AI respectfully requests that the Court order these Defendants to immediately produce or make available for inspection documents responsive to the Discovery Request and that the Court enter against these parties any other sanction it deems appropriate.

### B. Gatti and the IQS Defendants' Refusal to Produce Documents Violates the CM Order.

Gatti and the IQS Defendants have likewise failed to produce a single document to Loop AI. Their purported justification for this failure – an absence of sufficiently identified trade secrets by Loop AI – is unavailing: IQS Inc. did not file its Motion to Stay Discovery ("Motion to Stay") until *October 2, 2015* – over four months after discovery began, and well after responses to the Discovery Requests were due. Dkt. 232. Further, Gatti and IQS LLC did not join in this motion. *Id.* In any case, during the CM Conference on May 26, 2015, the Court was clear that no party could grant itself an automatic stay of discovery and the filing of a belated motion by one party to stay discovery does not give any of these parties license to refuse to engage in discovery as required by the CM Order.

### C. Type of Sanctions Requested Against the Italian Almaviva Defendants.

Loop AI respectfully requests that the Court impose against the Italian Almaviva Defendants any sanction deemed appropriate by the Court, including an Order directing these parties to immediately produce documents or make documents available for Loop AI's inspection.

### D. Form of Sanctions Requested Against the Gatti and IQSystem Defendants.

As sanction against the Gatti and IQSystem Defendants (the "Gatti/IQSystem Defendants"), Loop AI respectfully requests that the Court order these parties to sign the authorization forms submitted herewith as Exhibits A-F, to allow Loop AI to obtain at least some of the discovery sought directly from some of the service providers that are storing the documents requested (the "Request to Compel Authorization").[11]   Loop AI also requests that the Court impose any other sanction deemed just and reasonable by the Court, including an Order directing these parties to immediately produce documents or make documents available for Loop AI's inspection.

### 1.   The Request to Compel Authorization by the Gatti/IQSystem Is An Appropriate Sanction.

Many of those documents sought by Loop AI through its discovery requests are stored by various Service Providers (as defined under the Stored Communications Act ("SCA")), including, e.g., Google, LinkedIn, Facebook, and others and are therefore retrievable from sources other than the Defendants.  Discovery of some of the documents sought from certain service providers, even through a Subpoena, is governed by the SCA.  *See* 18 U.S.C. § 2701 *et seq.*  While generally precluding disclosure of such records, the SCA provides for certain circumstances under which service providers such as Google may be required to produce the contents of communications in their possession "with the lawful consent of the originator or an addressee or intended recipient of such communication."  SCA § 2702(b)(3).  The consent required under the SCA from an account holder may be ordered by the Court, and is not limited to freely given consent.  *See, e.g., Negro v. Superior Court*, 230 Cal. App. 4th 879, 899 (Cal. App. 6th Dist. 2014) ("the consent expressly given by [defendant] pursuant to court order

---

[11] The "Schedule A" accompanying the Subpoena *Duces Tecum* to Google, Inc. referenced in the Requests to Compel Authorization, VCH Decl. at Exhibits B-F, is also provided for the Court's review.  *See* VCH Decl. at Exhibit N.

constituted 'lawful consent' under the SCA."); *id.* at 904 ("In sum, we find no sound basis for the proposition that the [SCA] empowers service providers to defy civil subpoenas seeking discovery of materials that are excepted from the Act's prohibitions on disclosure."); *id.* ("when a user has expressly consented to disclosure, the Act does not prevent enforcement of a subpoena seeking materials in conformity with the consent given.").

Courts have found such a remedy appropriate in circumstances similar to those presented here — i.e., where a party has refused to produce documents also possessed by non-party service providers, Courts have ordered non-producing (or partially-producing) parties to provide their lawful consent to production by the service provider. *See Superior Court*, 230 Cal. App. 4th at 879.  In *Superior Court*, the plaintiff "asserted that [defendant] had an e-mail address in Google's Gmail domain, which he had used to conduct business during the time period relevant to the complaint," and therefore sought production by Google of "any communications between [defendant], his co-defendants and the persons who participated in the conduct alleged in the pending Complaint."  *Id.* at 884.  More specifically, the plaintiff sought "'[a]ll e-mails … from any gmail account belonging to or maintained by [defendant]' under a specified user name, from June 1, 2009, through June 2010, between [Defendant] and 14 specified persons or entities."  *Id.* After an extended discussion of the SCA, the underlying action, the defendant's varying attempts to avoid providing consent, and the Service Provider's refusal to produce the subpoenaed documents, the court ruled that court-ordered consent obtained in the underlying action falls within SCA § 2702(b)(3), and that Google must provide the subpoenaed documents.  *Id.* at 899-904.

In light of the Gatti/IQSystem Defendants' utter refusal to produce or make available for inspection any documents in response to Loop AI's discovery requests, and these Defendants' position that all discovery by Loop AI has been automatically stayed, allowing Loop AI the ability to obtain at least some of the discovery directly from certain service providers is

appropriate here.  The Gatti/IQSystem Defendants' refusal to engage in discovery is at least as egregious as the behavior of the *Superior Court* defendant, and leaves Loop AI with no option but to pursue other avenues of discovery – namely, production by nonparties, including service providers.   Loop AI limits its request for authorization here to one service provider — Google Inc..  *See* VCH Decl., Exhibits B-F.  Further, Loop AI has already issued a Subpoena to the California Employment Development Department ("EDD") and to expedite production by them relating to Gatti's unemployment records, which are at issue in this action, Loop AI respectfully requests that the Court order Gatti to sign the EDD authorization form as well.  *See id.* at Exhibit A.  Specifically, as set forth in Loop AI's complaint, Gatti's employment history is at issue in this action.  *See* Dkt. 210 at ¶¶ 11, 75, 80, 82, 84-88.  While Gatti claimed to have been employed by various entities, she instead had been terminated and filed for unemployment on various occasions, including after she became employed by Loop AI.[12]  Loop AI therefore seeks the official records of Gatti's unemployment directly from the EDD and requests the Court to compel Gatti to grant authorization for such disclosure, which will expedite release of the documents.

## CONCLUSION

For the foregoing reasons, Loop AI respectfully requests that this Motion be granted.


Respectfully submitted,

November 23, 2015                              By:   /s/ *Valeria Calafiore Healy*

Valeria Calafiore Healy, Esq. (*phv*)
HEALY LLC
154 Grand Street
New York, New York 10013

---

[12] Loop AI stands ready to produce documents in support of this statement upon request by the Court

Telephone:      (212) 810-0377
Facsimile:      (212) 810-7036


Daniel J. Weinberg, Esq. (SBN 227159)
FREITAS ANGELL & WEINBERG LLP
350 Marine Parkway, Suite 200
Redwood Shores, California 94065
Telephone:      (650) 593-6300
Facsimile:      (650) 593-6301


Attorneys for Plaintiff
LOOP AI LABS, INC.