1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7    LOOP AI LABS INC,                           Case No.  15-cv-00798-HSG   (DMR)

          Plaintiff,

8

9    v.                                          ORDER RE DEFENDANT IQSYSTEM,
                                                 INC.'S MOTION TO COMPEL

10   ANNA GATTI, et al.,                         Re: Dkt. No. 232

          Defendants.

11

12          Defendant IQSystems, Inc. ("IQS") filed a motion to compel Plaintiff Loop AI Labs, Inc.

13   ("Loop") to provide a particularized trade secret disclosure and to stay discovery until Plaintiff

14   provides such disclosure.  [Docket No. 232.]  The court has determined that this matter is suitable

15   for resolution without a hearing pursuant to Civil Local Rule 7-1(b).  For the following reasons,

16   IQS's motion is granted in part and denied in part.

17   I.     BACKGROUND

18          Plaintiff filed this action in February 2015 against Defendants IQS; Almawave USA, Inc.;

19   Almaviva S.p.A. ("Almaviva") and Almawave S.r.l. (together, the "Italian Almaviva

20   Defendants"); Anna Gatti; and IQSystems LLC.  Plaintiff is a startup company that develops

21   artificial intelligence technology.  It alleges that Gatti, its former CEO, conspired with the Italian

22   Almaviva Defendants to misappropriate Plaintiff's trade secrets and sabotage its investor

23   negotiations.  Specifically, Plaintiff alleges that it hired Gatti to assist in raising venture capital

24   and establish business partnerships, but that she lied about her true credentials and experience.

25   According to Plaintiff, while Gatti pretended to work full time for Loop AI, she was

26   simultaneously providing advisory services for multiple competing startups and took a concurrent

27   CEO position with Almawave USA.

28          Gatti allegedly established Almawave USA on behalf of the Italian Almaviva Defendants

and domiciled the new startup company at her home in San Francisco. According to Plaintiff, the Italian Almaviva Defendants intended to use Gatti's assistance to buy Loop for a "bargain price" or to hire away its key employees and obtain access to its proprietary technology and trade secrets. Plaintiff alleges that a principal component of Gatti's scheme involved sabotaging Loop's access to funding, including venture capital. Gatti also allegedly shared Plaintiff's proprietary information and other property with the other defendants, and used Plaintiff's time, property, and other resources to conduct business on behalf of the Italian Almaviva Defendants. Further, Plaintiff alleges that Gatti created IQS and IQSystems LLC in order to funnel compensation she received from the Italian Almaviva Defendants for the unlawful scheme. In its second amended complaint, Plaintiff brings seventeen claims against some or all of the Defendants, including, *inter alia*, RICO violations, computer fraud and abuse, misappropriation of trade secrets, unfair competition, and various business torts. [*See* Docket No. 210 (2d Am. Compl.).]

Plaintiff asserts its claim for misappropriation of trade secrets against all Defendants. The claim is based upon Defendants' alleged violation of California Civil Code section 3426, California's Uniform Trade Secrets Act ("CUTSA"). IQS now moves to compel Plaintiff to comply with California Code of Civil Procedure section 2019.210 by identifying its alleged trade secrets with particularity. IQS also asks the court to stay all discovery in this case until Plaintiff provides a proper trade secret disclosure.

Plaintiff opposes IQS's motion on the ground that section 2019.210 is a state procedural rule that does not apply in this action. It also argues that to the extent that section 2019.210 does apply, Loop has already complied with the statute by providing a detailed explanation of the trade secrets at issue in its pleadings and other submissions. Finally, Plaintiff argues that a stay of all discovery in this case is unwarranted and unsupported where the majority of its claims do not arise out of or implicate CUTSA in any way.

## II.    DISCUSSION

### A.    Applicability of Section 2019.210

California Code of Civil Procedure section 2019.210 provides that in any action alleging misappropriation of trade secrets under CUTSA, "before commencing discovery relating to the

United States District Court
Northern District of California

trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity subject to any orders that may be appropriate under Section 3426.5 of the Civil Code." Cal. Civ. Proc. Code § 2019.210.  Section 3426.5 allows a court to enter appropriate orders, including protective orders, to ensure the confidentiality of a plaintiff's trade secrets identified in accordance with section 2019.210.  As one court explained, the early identification of trade secrets serves four purposes:

> First, it promotes well-investigated claims and dissuades the filing of meritless trade secret complaints.  Second, it prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets.  Third, the rule assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope.  Fourth, it enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation.

*Computer Economics, Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 988-92 (S.D. Cal. 1999).

The Ninth Circuit has not decided whether section 2019.210 applies to actions in federal court.  Courts within this circuit have reached different conclusions.  *Compare Social Apps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 WL 2203063, at *1-2 (N.D. Cal. June 14, 2012) ("Section 2019.210 does not conflict with any Federal Rule of Civil Procedure but rather assists the court and parties in defining the appropriate scope of discovery"; collecting cases), *with Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*, No. S-06-0533 GEB GGH, 2007 WL 273949, at *2 (E.D. Cal. Jan. 29, 2007) ("application of § 2019.210 would serve to prevent application of Rule 26").  Plaintiff argues that section 2019.210 governs the commencement of discovery in California state court for claims arising out of CUTSA, while the commencement of discovery in federal court is expressly addressed and governed by Federal Rule of Civil Procedure 26(d).  That provision, the "Timing and Sequence of Discovery," permits the parties to commence discovery after "confer[ing] as required by Rule 26(f)."  Fed. R. Civ. P. 26(d)(1).  Therefore, Plaintiff argues, since the timing of discovery is already governed by Rule 26, and since Judge Gilliam already entered a scheduling order allowing discovery to commence, (*see* Docket No. 105 (June 2015 Scheduling Order setting discovery cutoff deadlines)), any state procedural rule

United States District Court
Northern District of California

United States District Court
Northern District of California

1    addressing the same question is inapplicable.[1]  Pl.'s Opp'n at 12-14 (citing *Shady Grove*

2    *Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 406 (2010) (holding that state law

3    barring suits to recover penalties from proceeding as class actions does not apply in federal court

4    because FRCP 23 addresses whether a suit may proceed as a class action; "[w]e must first

5    determine whether Rule 23 answers the question in dispute.  If it does, it governs . . . unless it

6    exceeds statutory authorization or Congress's rulemaking power." (citation omitted)).)

7            This court agrees with the reasoning of cases finding that a federal court may properly

8    apply section 2019.210 in federal suits alleging CUTSA claims.  *See, e.g., Social Apps*, 2012 WL

9    2203063, at *2; *Computer Economics*, 50 F. Supp. 2d at 988-92; *Lilith Games (Shanghai) Co. Ltd.*

10   *v. uCool, Inc.*, No. 15-CV-01267-SC, 2015 WL 4149066, at *3 (N.D. Cal. July 9, 2015).

11   Specifically, section 2019.210 does not conflict with Rule 26 (or any other Federal Rule of Civil

12   Procedure), but instead complements and is consistent with "Rule 26's requirements of early

13   disclosure of evidence relevant to the claims at issue and the Court's authority to control the

14   timing and sequence of discovery in the interests of justice."  *Social Apps*, 2012 WL 2203063, at

15   *2; *see also Interserve, Inc. v. Fusion Garage PTE, Ltd.*, No. C 09-05812 JW (PVT), 2010 WL

16   1445553, at *3 (N.D. Cal. Apr. 9, 2010) (ordering plaintiffs to comply with section 2019.210;

17   noting that the court "finds it appropriate to require identification of trade secrets as a case

18   management tool" prior to discovery into "opponents' proprietary information.").  Additionally,

19   the application of section 2019.210 to CUTSA claims brought in federal court deters forum

20   shopping, for "[a] plaintiff with a weak trade secret claim would have ample reason to choose

21   federal court if it offered a chance to circumvent the requirements of [section 2019.210]."

22   *Computer Economics*, 50 F. Supp. 2d at 992.  Accordingly, the court applies section 2019.210 in

23   this case.

24   _____

25   [1] The court notes that Plaintiff's current position is inconsistent with its prior representations.  For
     example, in its second amended complaint, Plaintiff states in connection with its CUTSA claim

26   that "A complete list of trade secrets misappropriated by the Defendants will also be provided to
     them before discovery in accordance with California law."  (2d Am. Compl. ¶ 339.)  Further,

27   during the July 23, 2015 discovery hearing, Gatti's counsel raised section 2019.210 and Plaintiff's
     counsel responded "we are perfectly aware of our obligations in respect to the trade secrets, and

28   we are in the process of producing a trade secret list."  [Docket No. 157 (July 23, 2015 Hr'g Tr. at
     96-97).]  Plaintiff does not explain these inconsistencies.

United States District Court
Northern District of California

**B.      Sufficiency of Plaintiff's Trade Secret Disclosure**

While Plaintiff admits that it has not filed or served a list of the trade secrets at issue in this case, it argues that it has already provided a detailed explanation of the trade secrets in its second amended complaint, and in three declarations filed in support of Plaintiff's April 2015 motions for clarification and for leave to file a motion for reconsideration.  Plaintiff identifies the specific paragraphs therein that it asserts contain clear descriptions of the trade secrets at issue.  Pl.'s Opp'n at 6-7.[2]  Therefore, Plaintiff argues, it has satisfied the requirements of section 2019.210.

Under section 2019.210, a plaintiff is required "to identify or designate the trade secrets at issue with 'sufficient particularity' to limit the permissible scope of discovery by distinguishing the trade secrets 'from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade."  *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835 (2005) (quoting *IMAX Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998) (citation omitted)).  California Civil Code section 3426.1 defines a trade secret as follows:

> "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d).  While the particularity mandated by section 2019.210 "does not mean that the party alleging misappropriation has to define every minute detail of its claimed trade secret at the outset of the litigation," a plaintiff "must make some showing that is reasonable, i.e., fair, proper, just and rational."  *Advanced Modular*, 132 Cal. App. 4th at 935-36.  "What is required is not absolute precision, but 'reasonable particularity[,]'" the degree of which "will

---

[2] Plaintiff claims that the following paragraphs comprise its identification of the trade secrets at issue in this case: amended complaint (Docket No. 45), paragraphs 137-192; second amended complaint, (Docket No. 210) paragraphs 155-200; April 9, 2015 declaration of Gianmauro Calafiore (Docket No. 49), paragraphs 68-83; April 7, 2015 declaration of Patrick Ehlen (Docket No. 50), paragraphs 35-50; and April 7, 2015 declaration of Bart M. Peinter (Docket No. 51), paragraphs 41-51.

United States District Court
Northern District of California

differ, depending on the alleged trade secrets at issue in each case." *Id*. at 836. "The identification is to be liberally construed, and reasonable doubts concerning its sufficiency are to be resolved in favor of allowing discovery to commence." *Brescia v. Angelin*, 172 Cal. App. 4th 133, 152 (2009) (citing *Advanced Modular*, 132 Cal. App. 4th at 835).

The paragraphs identified in Plaintiff's complaints and declarations consist largely of detailed allegations of Gatti's wrongdoing, including her improper acquisition of Plaintiff's "confidential and proprietary information and trade secrets." (*See, e.g.*, 2d Am. Compl. ¶¶ 162-183.) Plaintiff's second amended complaint also includes the identification of broad categories of trade secrets, including "Technical Information," "Business Development/Investor Information," and "Financial/Legal Information." (2d Am. Compl. ¶¶ 159-161.) In his declaration, Patrick Ehlen, Head of Deep Learning at Loop, describes examples of "misappropriated confidential information and trade secrets" in the form of specific pieces of information Gatti was provided or given access to by Plaintiff, but he also includes the disclaimer that these descriptions are "only a few [of] some of the examples of the confidential information and trade secrets that [Plaintiff] believe[s] the Defendants improperly acquired" through Gatti, and that "[i]t is not intended to be an exhaustive list." (Ehlen Decl. ¶ 47.) Gianmauro Calafiore (Loop's founder and CEO) and Bart M. Peintner (Loop's Chief Technology Officer and Chief Scientist), make similar disclaimers in their declarations. (*See* Calafiore Decl. ¶ 68; Peintner Decl. ¶¶ 41, 51.)

Plaintiff's ersatz "trade secret disclosure" is insufficient to meet the requirements of section 2019.210. *See, e.g., Brescia*, 172 Cal. App. 4th at 150 (affirming trial court's determination that section 2019.210 disclosure consisting of descriptions in cross-complaint and identification of documents in discovery was "inadequate"). Plaintiff's "disclosure" through designation of certain paragraphs in pleadings and declarations is no substitute for specifically identifying and describing the actual claimed trade secrets in order "to permit [Defendants] to ascertain at least the boundaries within which the secret[s] lie[]." *See id*. at 147 (emphasis removed) (quoting *Diodes v. Franzen*, 260 Cal. App. 2d 244, 253 (1968)). For example, Peintner states that he provided Gatti with files and communications containing "highly technical details" regarding Plaintiff's technology, asserting that "[a]ll of these documents are highly confidential,

1   and many contain our trade secrets." (Peintner Decl. ¶ 43.) Since Plaintiff identifies no specific

2   documents that contain trade secrets, this statement is vague and lacks the "reasonable

3   particularity" sufficient to enable Defendants to prepare their defenses. *See Computer Economics*,

4   50 F. Supp. 2d at 985 (noting that one of the purposes of section 2019.210 is to "enable[]

5   defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the

6   eve of trial to effectively defend against charges of trade secret misappropriation.").

7          Plaintiff shall file and serve a statement identifying the specific trade secrets at issue within

8   21 days of the date of this order. Plaintiff's identification of trade secrets must be thorough and

9   complete. Any future amendment to the disclosure will only be permitted upon a showing of good

10   cause. *See Neothermia Corp. v. Rubicor Med., Inc.*, 345 F. Supp. 2d 1042, 1045 (N.D. Cal. 2004)

11   (holding that any amendment to trade secret identification must be supported by good cause,

12   consistent with the Federal Rules of Civil Procedure and the Northern District's Patent Local

13   Rules). However, the court denies IQS's motion to stay all discovery in this case until Plaintiff

14   has complied with section 2019.210. Section 2019.210 only supports a stay of "discovery relating

15   to the trade secret[s]." Cal. Civ. Proc. Code § 2019.210. Only one of Plaintiff's seventeen claims

16   is for misappropriation of trade secrets, and Plaintiff expressly alleges that its claims for fraud,

17   intentional interference with prospective economic advantage, tortious interference, unfair

18   competition, unjust enrichment, and conversion are not based on any allegations of

19   misappropriation of trade secrets. (*See* 2d Am. Compl. at n.5-n.10.) Accordingly, discovery is

20   stayed as to Plaintiff's CUTSA claim, and Plaintiff may proceed with such discovery upon filing a

21   statement identifying with reasonable particularity the trade secrets at issue in this lawsuit.

22   **III.   CONCLUSION**

23          For the foregoing reasons, IQS's motion to motion to compel Plaintiff to provide a

24   particularized trade secret disclosure and to stay discovery until Plaintiff provides such disclosure

25   is granted in part and denied in part. Plaintiff shall file a statement identifying the trade secrets at

26   issue within 21 days of the date of this order.

27

28          **IT IS SO ORDERED.**

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Dated: December 21, 2015



Donna M. Ryu
United States Magistrate Judge
Judge Donna M. Ryu