UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LOOP AI LABS INC,

    Plaintiff,

v.

ANNA GATTI, et al.,

    Defendants.

Case No. 15-cv-00798-HSG

**ORDER DENYING MOTION TO DISQUALIFY**

Re: Dkt. No. 199

Pending before the Court is Plaintiff Loop AI Labs, Inc.'s ("Loop AI") motion to disqualify former Orrick Herrington & Sutcliffe LLP ("Orrick") attorney Peter Sternberg and Sternberg's current law firm, Venable LLP ("Venable"). Venable represents Almaviva S.p.A., Almawave S.r.l., and Almawave USA, Inc. (collectively, "Defendants") in the underlying lawsuit.

A hearing on the disqualification motion was held on November 5, 2015. Having carefully reviewed the parties' papers, and considered their arguments and relevant legal authority, the Court **DENIES** Plaintiff's motion to disqualify Defendants' counsel Sternberg and his law firm Venable.

**I.   BACKGROUND**

Orrick began representing Loop AI in April 2012 and remained its primary counsel until March 11, 2015, when Orrick withdrew from the representation. Dkt. No. 199-1 ("Calafiore Decl.") ¶ 4; Dkt. No. 278-1 ("Sandei Decl.") ¶ 4. Anna Gatti was the Chief Executive Officer of Loop AI from mid-2012 until early February 2015. *Id.* Plaintiff alleges that in January 2014 Gatti took a concurrent executive position at Almawave USA. Dkt. No. 210 ("SAC") ¶ 14.

Sternberg joined Orrick in 2004. Dkt. No. 278-2 ("Sternberg Decl.") ¶ 2. At that time, Almaviva S.p.A. and Almaviva S.r.l. already were Orrick clients. *Id.* at ¶ 3. Sternberg met Almaviva principals shortly after joining Orrick, *id.* at ¶ 4, and first provided informal legal advice to them in April and May 2011, *id.* at ¶ 5. In March 2014, Defendants formally engaged Orrick to

1  assist Defendants in forming Almawave USA, *id.* at ¶ 6; Sternberg was the "originating attorney"
2  for the matter, Dkt. No. 285-6 at 7.  On January 31, 2015, Sternberg left Orrick for professional
3  reasons.  Sternberg Decl. ¶ 11.  Sternberg joined Venable on February 1, 2015 and brought
4  Almawave with him to Venable as a client.  *Id.*
5  On February 20, 2015, Loop AI filed a lawsuit against Defendants.  Dkt. No. 1.  The
6  operative complaint alleges that Loop AI was a victim of a commercial conspiracy undertaken by
7  its former CEO Gatti, IQSystem LLC, IQSystem, Inc., Almaviva S.p.A., Almawave S.r.l., and
8  Almawave USA.  Dkt. No. 210.  On March 23, 2015, Sternberg sent an engagement letter on
9  behalf of Venable to Almaviva S.p.A. confirming Venable's representation of the Defendants in
10 this matter.  Dkt. No. 199-3 at 5.  From February 22, 2015 through August 17, 2015, Sternberg
11 recorded 73.0 hours on the matter.  *Id.* at 7.
12 On September 16, 2015, Plaintiff filed this motion to disqualify Sternberg and Venable
13 from representing Defendants in this action.  Dkt. No. 199.

## II. LEGAL STANDARD

The Northern District of California's Local Rules provide that every attorney that practices before this Court must "comply with the standards of professional conduct required of members of the State Bar of California . . . [and] with the Local Rules of this Court."[1]  Civ. L-R 11-4(a).  In addition to the Rules of Professional Conduct of the State Bar of California ("California Rules"), California looks to the American Bar Association Model Code of Professional Responsibility ("Model Code") and the Restatement in resolving issues not fully addressed in the California

---

[1] Plaintiff contends this Court should apply New York law because Sternberg is a member of the New York bar.  The Court rejects this argument and applies California law.  *See Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1103 (N.D. Cal. 2003) ("The Northern District of California has adopted the California Rules of Professional Conduct at Civ. L.R. 11–4, and attorneys practicing in this court are required to adhere to those standards, as articulated in the rules and any court decisions interpreting them."); *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 820 F. Supp. 1212, 1217 n.5 (N.D. Cal. 1993) (rejecting the argument that the California Rules did not apply to attorneys who were acting outside of California and were not members of the California Bar, because "the standards of professional conduct *before this court* are those applicable under the California Rules of Professional Responsibility"); *Advanced Messaging Techs., Inc. v. EasyLink Servs. Int'l Corp.*, 913 F. Supp. 2d 900, 906 (C.D. Cal. 2012) ("[T]he Ninth Circuit . . . has made clear that a federal court in California must apply California law in a disqualification motion.").

1   Rules. *Paul E. Iacono Structural Eng'r, Inc. v. Humphrey*, 722 F.2d 435, 439-40 & n. 6 (9th Cir.

2   1983); *Dieter v. Regents of Univ. of California*, 963 F. Supp. 908, 910 (E.D. Cal. 1997).

3       This Court's duty to supervise the conduct of attorneys who practice before it includes the

4   power to disqualify counsel if necessary. *See Trust Corp. v. Piper Aircraft Corp.*, 701 F.2d 85, 87

5   (9th Cir. 1983). When evaluating a motion to disqualify counsel,

> [t]he court must weigh the combined effect of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel and any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest.

*In re Lee G.*, 1 Cal. App. 4th 17, 26 (1991) (internal quotation marks and alterations omitted); *see Smith, Smith & Kring v. Superior Court*, 60 Cal. App. 4th 573, 70 (1997) (considering the "strong interest parties have in representation by counsel of their choice and in avoiding the duplicate expense and time-consuming effort involved in replacing counsel"). Because motions to disqualify counsel are "often tactically motivated," a moving party carries a heavy burden and "disqualification motions [are subject] to particularly strict judicial scrutiny." *Kelly v. Roker*, No. C 11-05822 JSW, 2012 WL 851558, at *2 (N.D. Cal. Mar. 13, 2012) (citation omitted).

### III. ANALYSIS

Plaintiff's motion implicates two fundamental values of our legal system: counsel's duties of loyalty and confidentiality. California Rule 3-310 addresses both of these duties in the context of conflicts of interests arising from an attorney's simultaneous or successive representation of clients. In relevant part, the rule provides that:

> (C) A member shall not, without the informed written consent of each client:
>
> (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or
>
> (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or
>
> (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.

3

> . . .
>
> (E) A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

The rule is designed to "assure the attorney's absolute and undivided loyalty and commitment to the client and the protection of client confidences." *Sharp v. Next Ent't, Inc.*, 163 Cal. App. 4th 410, 427 (2008). Thus, to determine whether disqualification is warranted in this case, the Court examines whether Sternberg violated either the duty of loyalty or the duty of confidentiality.

### A. Sternberg did not violate his duty of loyalty to Loop AI while he was a partner at Orrick.

"Under California law, attorneys owe current clients a duty of undivided loyalty." *Emblaze Ltd. v. Microsoft Corp.*, No. 12-CV-05422-JST, 2014 WL 2450776, at *2 (N.D. Cal. May 30, 2014) (quoting *Flatt v. Superior Court*, 9 Cal.4th 275, 284 (1994)). "[I]t is a violation of the duty of loyalty for the attorney to assume a position adverse or antagonistic to his or her client." *State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co.*, 72 Cal. App. 4th 1422, 1431 (1999). "An actual conflict of interest between jointly represented clients occurs whenever their common lawyer's representation of the one is rendered less effective by reason of his representation of the other." *Blue Water Sunset, LLC v. Markowitz*, 192 Cal. App. 4th 477, 488-89 (2011) (internal quotation marks and alterations omitted) (holding interests were adverse where each side claimed ownership rights to the exclusion of the other). Importantly, this duty extends to all members of an attorney's firm, requiring attorneys to act loyally towards their firm's clients as well. *FlatWorld Interactives LLC v. Apple Inc.*, No. 12-CV-01956-WHO, 2013 WL 4039799, at *6 (N.D. Cal. Aug. 7, 2013). For instance, in *FlatWorld*, a Morgan Lewis partner violated the duty of loyalty to his firm's client, Apple, by helping his wife, a FlatWorld officer, find a law firm to sue the client. *Id.* at *1. *FlatWorld* held that the partner owed the "duty to his firm's client regardless of whether or not he personally worked on that client's matter." *Id.* at *6.

Here, Loop AI was Orrick's client from April 2012 to March 2015. Orrick counseled Loop AI on matters related to "virtually all aspects of Loop AI's business and legal needs," including investment strategy, employment matters, stock issuances, and preparation of corporate

minute books. Calafiore Decl. ¶¶ 5-8. Although Sternberg did not personally represent Loop AI, he was a partner at the firm during this time. Sternberg Decl. ¶¶ 2, 13, 14. Accordingly, Sternberg owed Loop AI a duty of loyalty.

Plaintiff alleges that Sternberg violated his duty when he began representing Almaviva. Plaintiff argues that Sternberg, aware of Gatti's contractual obligations to Loop AI, drafted Gatti's Almawave employment agreement and thereby engaged in actions adverse to Loop AI. Plaintiff further contends that Orrick should have known there was a conflict of interest in representing Almaviva, that it was "highly unlikely that Almaviva or Gatti would not discuss with Sternberg that Orrick was already counsel to Loop AI," and that Sternberg, in particular, is at fault for submitting a conflict clearance form that omitted Gatti's name, Dkt. No. 199 at 13 & n.35; Dkt. No. 199-5, Ex. C.

The record does not support Plaintiff's allegations. First, unlike the Morgan Lewis partner in *FlatWorld*, Sternberg's representation of Almawave did not further a lawsuit against an Orrick client. Almawave and Loop AI were, at most, business competitors in March 2014. *See Unified Sewerage Agency v. Jelco Inc.*, 646 F.2d 1339, 1349 (9th Cir. 1981) (applying Oregon law) ("[W]e are not prepared to enunciate a per se rule that a client must forego in all circumstances his choice of a particular attorney merely because there is the foreseeability of a future conflict with one of the attorney's existing clients."). Second, Plaintiff has offered no evidence to suggest that Sternberg was aware of Gatti's contractual obligations. Sternberg's declaration to the contrary is persuasive: "While I was at Orrick I was unaware of and never discussed with anyone Ms. Gatti's employment with Loop, or indeed anything else about Loop." Sternberg Decl. ¶ 13. Finally, there is nothing to suggest that by assisting Orrick attorneys in conforming a "standard form employment contract" for Almawave's use in hiring Gatti, *see id.* at ¶ 8, Sternberg acted adversely to Loop AI's interests. Gatti's contract with Loop AI stated, in relevant part:

> 7. Outside Activities. While you render services to the Company, you agree that you will not engage in any other employment, consulting or other business activity without the written consent of the Company. In addition, while you render services to the Company, you will not assist any person or entity in competing with the Company, in preparing to compete with the Company or in hiring any employees or consultants of the Company.

5

Dkt. No. 285, Ex. 1 at 2 ("Loop AI Contract").  Gatti's contract with Almawave provided:

> 1. You will serve as Chief Executive Officer of the Company, reporting to the Chairman of the Board of Directors of the Company (the "Board") and/or to such other persons as the Board may determine. Your primary duties will [sic] determined from time to time by the Board and shall initially include the following . . . . By signing this letter, you confirm with the Company that you are under no contractual or other legal obligations that would restrict you from performing your duties with the Company.

Dkt. No. 285, Ex. 2 at 1 ("Almawave Contract").  This side-by-side comparison demonstrates that the contract provisions do not show that Sternberg represented adverse interests.  Significantly, the Loop AI Contract expressly anticipates a scenario where Gatti could work for another company while she was Loop AI's CEO, by stating "you agree that you will not engage in any other employment . . . *without the written consent of the Company*." (emphasis added).  Likewise, there is nothing in the Almawave Contract to suggest that Gatti could not have pursued concurrent employment; rather, the last sentence of the Almawave Contract places the burden on the contract's endorser to ensure that he or she did not have conflicting contractual or legal obligations.  Thus, the possibility that Gatti might violate a preexisting duty to another Orrick client does not compel a finding that Sternberg acted adversely to Loop AI when he assisted in the preparation of an employment agreement for Almawave's use in hiring Gatti.  Because Sternberg's representation of Almaviva was not adverse to Loop AI, he did not violate his duty of loyalty to Loop AI while he was an Orrick partner.[2]

### B.  Sternberg has not violated his duty of confidentiality by representing Defendants in this lawsuit.

Having concluded that Sternberg did not violate his duty of loyalty to Loop AI while at Orrick, the Court turns to the present, where Sternberg's representation of Defendants in this litigation is indisputably adverse to Loop AI's interests.  To determine whether disqualification is

---

[2] Rule 3-310 concerns the *member's* duties of loyalty and confidentiality, not the law firm's. Insofar as Plaintiff's argument focuses on Orrick's (rather than Sternberg's) alleged violations of its duties to Loop AI, the Court need not consider those contentions in deciding this motion.  The Court notes that, despite Plaintiff's suggestion to the contrary, *see* Dkt. No. 199 at 10 n.26, Orrick no longer represents any party in this case. Dkt. No. 29-1, Ex. A.

warranted, the Court must decide whether Sternberg's representation of Defendants violates his duty of confidentiality to Loop AI. *See Flatt*, 9 Cal. 4th at 283-84 ("Where the potential conflict is one that arises from the *successive* representation of clients with potentially adverse interests, the courts have recognized that the chief fiduciary value jeopardized is that of client *confidentiality*.").

In these circumstances, where an attorney's representation of a client is adverse to the interests of a client of his former firm, California courts apply the substantial relationship test to examine the relationship between the former and current representations. *H. F. Ahmanson & Co. v. Salomon Bros., Inc.*, 229 Cal. App. 3d 1445, 1452 (Ct. App. 1991); *see generally Dieter*, 963 F. Supp. at 911 (applying substantial relationship test where an attorney "was not personally involved in the prior representation[,] . . . had left the firm that handled the prior representation and joined a new firm" (emphasis omitted)). If the court finds that there is a substantial relationship, then "access to confidential information by the attorney in the course of the first representation . . . is presumed and disqualification of the attorney's representation of the second client is mandatory." *Flatt*, 9 Cal. 4th at 283; *see H. F. Ahmanson*, 229 Cal. App. 3d at 1452-53 ("[I]t is well settled actual possession of confidential information need not be proved in order to disqualify the former attorney.").

In its evaluation, "the Court looks to the practical consequences of the attorney's representation of the former client and considers whether confidential information material to the current dispute would normally have been imparted to the attorney by virtue of the nature of the former representation." *I-Enter. Co. LLC v. Draper Fisher Jurvetson Mgmt. Co. V*, LLC, No. C-03-1561 MMC, 2005 WL 757389, at *4 (N.D. Cal. Apr. 4, 2005) (internal quotation marks omitted). Two representations are substantially related where the evidence "supports a rational conclusion that information material to the evaluation, prosecution, settlement or accomplishment of the former representation given its factual and legal issues is also material to the evaluation, prosecution, settlement or accomplishment of the current representation given its factual and legal issues." *Jessen v. Hartford Cas. Ins. Co.*, 111 Cal. App. 4th 698, 713 (2003). The Court examines "the similarities between the two factual situations, the legal questions posed, and the nature and extent of the attorney's involvement with the cases[,] . . . [including] the time spent by the attorney

7

on the earlier cases, the type of work performed, and the attorney's possible exposure to formulation of policy or strategy." *H. F. Ahmanson*, 229 Cal. App. 3d at 1455.

If Sternberg had been personally involved in Orrick's representation of Loop AI, this would be a relatively simple motion to resolve. The factual bases and legal questions in this lawsuit appear related to Orrick's former representation,[3] and the firm's attorneys would have been exposed to information "material to the evaluation, prosecution, settlement or accomplishment of the current representation." *See H. F. Ahmanson*, 229 Cal. App. 3d at 1455. But if Sternberg had no personal involvement in the representation of Loop AI, *Orrick's* substantial relationship with Loop AI is not dispositive. *See Adams v. Aerojet-Gen. Corp.*, 86 Cal. App. 4th 1324, 1333-34 (2001) (rejecting the contention that an attorney has "presumptive knowledge [about the former client and relevant legal issues] based solely on his former membership in a law firm which represented the former client").[4]

Rather, under those circumstances, disqualification depends on whether Sternberg "was reasonably likely to have obtained confidential information material to the current lawsuit" while at Orrick. *See Adams*, 86 Cal. App. 4th at 1335; *see also Dieter*, 963 F. Supp. at 911 ("[I]f a lawyer while with one firm acquired no knowledge or information relating to a particular client of the firm, and that lawyer later joined another firm, neither the lawyer individually nor the second firm is disqualified from representing another client in the same or a related matter even though the interests of the two clients conflict.").[5] Defendants bear the burden under the *Adams* test. *See Adams*, 86 Cal. App. 4th at 1340-41 (considering factors such as "whether the attorney worked out of the same branch office that handled the former litigation, and/or whether his administrative or

---

[3] Orrick drafted employment agreements for Loop AI, including those related to Gatti's employment and termination as well as the patent application at issue in this lawsuit. Calafiore Decl. ¶ 8; Dkt. No. 199, Ex. G.

[4] The Court is not persuaded by Plaintiff's attempt to distinguish *Adams* based on the number of years between the former representation and the current representation. *See* Dkt. No. 285 at 11 (arguing that in *Adams* several years lapsed between the challenged attorney's former and current representations). Nothing in *Adams* suggests that the applicability of the test laid out there depends on that factor.

[5] *See also Restatement (Third) of the Law Governing Lawyers* § 124 (2000) cmt. c(ii) (explaining that a lawyer who leaves a firm "whose lawyers were subject to imputed prohibition owing to presence in the firm of another lawyer" can be free of imputation when he leaves the firm "so long as that lawyer obtained no material confidential client information relevant to the matter").

management duties may have placed him in a position where he would have been exposed to matters relevant to the current dispute").

Defendants contend that Sternberg was not reasonably likely to obtain confidential information material to this lawsuit. Sternberg explains that he did not provide any legal services or advice to Loop AI, was not involved in or aware of Orrick's representation of Loop AI, and never received any of Loop AI's confidential information during his time at Orrick. Sternberg Decl. ¶¶ 2, 13, 14. Sternberg worked in Orrick's New York office, never visiting the firm's Silicon Valley office where Orrick's representation of Loop AI was handled. *Id.* at ¶ 2. While Sternberg was a senior partner in the firm's corporate practice group, he did not have a firm-wide management role or a role within the practice group that would have exposed him to Loop AI. *Id.* Orrick partner John Bautista was Loop AI's primary relationship partner and Sternberg and Bautista did not speak about Loop AI. According to Sternberg, the last time the partners spoke about any topic, they simply exchanged pleasantries at a partner retreat several years ago. *Id.* at ¶ 15. Moreover, Sternberg and Gatti never met in person, and they never spoke on the phone except for possibly one call in October 2014 relating to Orrick's bills for Almawave. Sternberg Decl. ¶ 10; Dkt. No. 278-4 ("Gatti Decl.") ¶ 2.

The Court finds that Defendants have met their burden. Although the contacts between Orrick and Loop AI may have been frequent, the contacts between Sternberg and Loop AI appear nonexistent. Defendant's contention that as a partner in Orrick's New York office, Sternberg was not directly or indirectly involved in the drafting of Gatti's Loop AI employment and termination contracts, or in the counseling of Loop AI in its investment decisions or patent applications, is supported by and consistent with the evidence. Nothing in the record suggests Sternberg provided Loop AI legal advice or services. Sternberg did not receive communications, much less confidential information, about Loop AI. On this record, the billing issue is the only direct communication between Gatti and Sternberg, and that communication did not involve Loop AI. Billing issues involving Almawave are not the type of matter that would expose Sternberg to information or strategy relevant to this litigation. The Court credits Sternberg's representations made under penalty of perjury, including his affirmation that he never even heard of Loop AI until

9

the lawsuit was filed, weeks after he left Orrick. *See Barco N.V. v. Tech. Properties Ltd.*, No. 5:08-CV-05398 JF HRL, 2011 WL 841283, at *2 (N.D. Cal. Mar. 8, 2011) (relying on counsel's express declarations that no confidential information was exchanged as one basis for denying disqualification motion).

Moreover, theoretical access to confidential information is not enough. *See Streetspace, Inc. v. Google Inc.*, No. C 11-04574 JW, 2012 WL 293642, at *3 (N.D. Cal. Feb. 1, 2012) (showing that defense attorney worked in the same practice group as another attorney who represented plaintiff, and that the two attorneys worked together on a different client matter, was insufficient to establish defense attorney acquired confidential information about plaintiff); *Gas-A-Tron of Az. v. Union Oil Co.*, 534 F.2d 1322, 1325 (9th Cir. 1976) (reversing district court's disqualification where attorney was an associate at a large law firm who, although she had physical access to files and worked with lawyers who knew confidential information, saw no confidential files, heard no confidential information, and did not work on any matters "substantially related" to the pending litigation). Here, assuming that three Orrick attorneys worked on both Loop AI and Almawave matters, Dkt. No. 199-2 ("VCH Decl.") ¶ 20, there is nothing to suggest that Sternberg received confidential information as a consequence of the dual representations by these attorneys.[6]

Adopting the pragmatic approach to the "substantial relationship" test counseled by California authority, this Court concludes that Sternberg was not reasonably likely to acquire confidential information.[7] *See H. F. Ahmanson*, 229 Cal. App. 3d at 1455 ("The pragmatic

---

[6] Any argument regarding Sternberg's alleged failure to conduct a more thorough conflicts check is not relevant here. *See Barco*, 2011 WL 841283, at *2 (failure to "perform a broader conflicts check is not probative as to whether counsel now possesses confidential material").

[7] The Court also rejects Plaintiff's assertion that Sternberg *actually* possessed confidential information that Venable used in drafting a subpoena. Venable's counsel of record on this case, Thomas Wallerstein, indicates that no confidential information was used to draft the subpoena. Dkt. No. 278-3 ("Wallerstein Decl.") ¶¶ 3-4; *see Dieter*, 963 F. Supp. at 912 (relying on declarations averring that the attorneys did not have access to confidential information). Moreover, the Court notes that (1) Plaintiff revealed the name of the investment fund (the information alleged to be disclosed) in its complaint; and (2) Sternberg states that he had nothing to do with Venable's decision to issue the subpoena, and had never heard of the fund before he read the subpoena. Sternberg Decl. ¶ 17; *see* Dkt. No. 45.

1    approach . . . is intended to protect the confidences of former clients *when an attorney has been in*
2    *a position to learn them*. Therefore, to apply the remedy of disqualification when there is no
3    realistic chance that confidences were disclosed would go far beyond the purpose of the
4    substantial relationship test." (citations and internal quotation marks omitted) (emphasis added)).
5    Accordingly, Sternberg's current representation of the Defendants in this lawsuit does not violate
6    his duty of confidentiality.

### C. Disqualification is not warranted under Canon 9 of the Model Code.

Plaintiff finally contends disqualification is required under Canon 9 of the Model Code, which states that "[a] lawyer should avoid even the appearance of professional impropriety." *See In re Airport Car Rental Antitrust Litig.*, 470 F. Supp. 495, 507 (N.D. Cal. 1979). "Although the Ninth Circuit has held that Canon 9 alone can be a sufficient ground for disqualification," that course of action is only appropriate when the "circumstances are extreme, i.e., when the alleged impropriety is clear, affects the public view of the judicial system or the integrity of the court, and is serious enough to outweigh the parties' interests in counsel of their own choice." *Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1049 (9th Cir. 1985).

Plaintiff makes several contentions about the propriety of Sternberg's representation given his "personal involvement" in the underlying facts. Dkt. No. 199 at 21-24. Plaintiff contends that Sternberg faces exposure to liability because of his representation of Almawave while at Orrick, his "substantial assistance" and facilitation of Defendants' violations, and his failure to advise Almawave on the legal implications of hiring Gatti. Plaintiff also argues that Sternberg's possible liability impairs Venable's ability to represent Defendants.

The Court disagrees. To begin with, Almawave has consented to Venable and Sternberg's representation. Sandei Decl. ¶ 7. Thus, to the extent Plaintiff argues that Sternberg and Venable's continued representation creates a potential conflict of interest for Defendants, the argument is moot given Almawave's consent. *See Abraham v. Super Buy Tires Inc.*, No. CIV. 05CV1296-B(NLS), 2007 WL 173846, at *3 (S.D. Cal. Jan. 10, 2007) (holding that potentially prejudiced clients can waive a conflict, assuming the "wavier is based on full and informed consent").

1    But even were there not consent, the Court finds that Plaintiff does not have standing to
2    argue on behalf of a Venable client that Venable should be disqualified from representing that
3    client.  *See Colyer v. Smith*, 50 F. Supp. 2d 966, 969 (C.D. Cal. 1999) ("The majority view is that
4    only a current or former client of an attorney has standing to complain of that attorney's
5    representation of interests adverse to that current or former client."); *Abassi v. BAE Sys. Info. &*
6    *Elec. Sys. Integration*, No. 10CV1745 BEN AJB, 2011 WL 890883, at *1 (S.D. Cal. Mar. 7, 2011)
7    (denying defendant's motion to disqualify plaintiffs' counsel because of an alleged conflict of
8    interest among the plaintiffs).

9    Although there is an exception to this rule—"a non-client may have standing to move for
10   disqualification if the ethical breach so infects the litigation . . . that it impacts the moving party's
11   interest in a just and lawful determination of its claims," *Abassi*, 2011 WL 890883, at *2—
12   Plaintiff has not established that the exception applies here.  The exception requires that the
13   conflict between Defendants and Sternberg be so "manifest and glaring . . . that it obstructs the
14   orderly administration of justice."  *Coyler*, 50 Supp. 2d at 972 (internal quotation marks omitted).
15   Here Plaintiff makes only speculative assertions regarding Sternberg's supposed involvement in
16   Defendants' alleged violations.  The "potential injury . . . of a speculative nature does not carry
17   [Plaintiff's] burden of an injury from any conflict."  *Andrews Farms v. Calcot*, LTD., No. CV-F-
18   07-0464LJOSKO, 2010 WL 4010146, at *4 (E.D. Cal. Oct. 13, 2010) (requiring party "to
19   substantiate an actual, particularized and immediate injury in fact").  Based on the Court's review
20   of the substantial record before it, the Court finds the facts do not reasonably support the
21   conclusion (or even the inference) that Sternberg had any involvement in or exposure to the
22   alleged violations.  Accordingly, Plaintiff has not met the high threshold required to warrant
23   disqualification under Canon 9.

24   //
25   //
26   //
27   //
28

## IV. CONCLUSION

For the reasons discussed, the Court **DENIES** Plaintiff's motion.

**IT IS SO ORDERED.**

Dated: 1/28/2016

HAYWOOD S. GILLIAM, JR.
United States District Judge