UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS INC,<br><br>           Plaintiff,<br><br>      v.<br><br>ANNA GATTI, et al.,<br><br>           Defendants. | Case No. 15-cv-00798-HSG   (DMR)<br><br>**ORDER ON MOTION TO QUASH SUBPOENA AND/OR FOR A PROTECTIVE ORDER**<br><br>Re: Dkt. No. 169 |

Third party Orrick, Herrington & Sutcliffe LLP ("Orrick") moves for an order quashing a subpoena issued by Plaintiff Loop AI Labs, Inc. ("Loop"), or in the alternative, for an order protecting Orrick from having to respond to requests in the subpoena to which it timely objected. [Docket No. 169.]  Loop opposes the motion.  [Docket Nos. 176 (Pl.'s Opp'n).]  The court conducted a hearing on December 10, 2015 and ordered Orrick to submit documents withheld on the basis of attorney-client privilege for in camera review.  [Docket No. 323.]  Orrick timely lodged the documents.  For the following reasons, Orrick's motion is granted in part.

**I.     BACKGROUND**

Loop filed this action in February 2015 against Defendants Almawave USA; Almaviva S.p.A. ("Almaviva") and Almawave S.r.l. (together, the "Italian Almaviva Defendants"); Anna Gatti; IQSystems LLC; and IQSystems, Inc.  Loop is a startup company that develops artificial intelligence technology.  It alleges that Gatti, its former CEO, conspired with the Italian Almaviva Defendants to misappropriate Loop's trade secrets and sabotage its investor negotiations. According to Loop, while pretending to work full time for Loop, Gatti took a concurrent CEO position with Almawave USA.  In its second amended complaint, Loop brings seventeen claims against some or all of the Defendants, including, *inter alia*, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 *et seq.*, violations of the Computer

Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq.*, misappropriation of trade secrets, unfair competition, and various torts. [*See* Docket No. 210 (2d Am. Compl.).]

Third party Orrick is a law firm that represented Loop from 2012 through March 2015. Orrick also represented the Italian Almaviva Defendants and Almawave USA for a period of time that overlapped with its representation of Loop. In June 2015, Loop attempted to serve Orrick with a subpoena requesting the production of 30 categories of documents. Alderman Decl. Aug. 13, 2015, Ex. A (Subpoena). The subpoena included requests for production of documents ("RFPs") related to Orrick's representation of and communications with the Italian Almaviva Defendants and Almawave USA. Orrick disputed whether Loop had properly served the subpoena, and on July 7, 2015, Loop moved for an order to show cause why a contempt citation should not issue based on Orrick's failure to timely respond to the subpoena. [Docket No. 124.] At the July 23, 2015 discovery management conference, the court denied Loop's motion without prejudice and deemed the subpoena served as of July 23, 2015. The court ordered Orrick to serve responses and/or objections to the subpoena by July 30, 2015, and ordered the parties to immediately confer regarding any objections. The court also ordered the "Almawave Defendants and Orrick [to] file [any] motion(s) for protective order" by August 13, 2015. [Docket No. 156 (Minute Order).]

Orrick provided responses to certain RFPs, and also objected on the grounds that they sought documents protected by the attorney-client privilege belonging either to Almawave S.r.l. or Almaviva, or to Orrick itself. Orrick also objected that certain RFPs sought irrelevant information and/or were unduly burdensome. Alderman Decl. ¶ 3, Ex. B (Orrick Responses and Objections). To the extent that the subpoena requested communications that could be subject to a claim of privilege asserted by Almawave S.r.l. or Almaviva, Orrick forwarded those documents to counsel for the Italian Almaviva Defendants, (who also represent Almawave USA,[1]) so that counsel could make any privilege determinations and object on those grounds. Alderman Decl. ¶¶ 8, 9. Orrick

---

[1] Defendants Almawave USA, Almaviva, and Almawave S.r.l. are represented by the Venable law firm in this action.

is withholding communications that it claims are protected by its own attorney-client privilege and/or work product protection, and asks the court to quash the subpoena as to these documents.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 45 governs discovery of nonparties by subpoena. Fed. R. Civ. P. 45. The Advisory Committee Notes to Rule 45 state that "the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules," which in turn is the same as under Rule 26(b). Advisory Committee Notes to 1970 Amendment; Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b)."). Rule 26(b) allows a party to obtain discovery concerning

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

Rule 45 provides that "on timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . . subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iii), (iv). "[A] court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Gonzales v. Google*, 234 F.R.D. 674, 680 (N.D. Cal. 2006) (citation omitted). The party who moves to quash a subpoena bears the "burden of persuasion" under Rule 45(c)(3). *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (citations omitted).

## III. DISCUSSION

### A. Whether Federal or State Law Governing Attorney-Client Privilege Applies to These Disputes

As a preliminary matter, Loop and Orrick dispute whether federal or state privilege law

3

applies to this dispute. This court exercises federal question jurisdiction over Loop's federal RICO and CFAA claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Loop's pendent state law claims. Federal privilege law generally applies in federal question cases. Fed. R. Evid. 501, Advisory Committee Notes ("In nondiversity jurisdiction civil cases, federal law privilege will generally apply.") However, "[i]n civil actions and proceedings, where the rule of decision as to a claim or defense or as to an element of a claim or defense is supplied by state law . . . state privilege law [applies]." *Id.* While the "interplay of these two principles has created somewhat inconsistent case law regarding the application of federal privilege doctrine to pendent state law claims in federal question cases," *Love v. Permanente Med. Grp.*, No. C-12-05679 WHO (DMR), 2013 WL 4428806, at *2-4 (N.D. Cal. Aug. 15, 2013) (discussing cases), the Ninth Circuit has held that "[w]here there are federal question claims and pendent state law claims present, the federal law of privilege applies." *Agster v. Maricopa Cty.*, 422 F.3d 836, 839 (9th Cir. 2005).

Despite clear Ninth Circuit authority that the federal law of privilege applies here, Orrick argues that Loop's claims are based overwhelmingly on state law. It contends that where a party seeks to obtain privileged documents from a non-party that invokes its own privilege, the court should apply California law. Orrick offers no authority to support its position. Applying state privilege law to the instant dispute while potentially applying federal privilege law to other disputes that may arise in this litigation would be inconsistent and unworkable, as well as contrary to *Agster*. Accordingly, the court applies federal privilege law.

The attorney-client privilege protects from discovery "confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citation omitted). The privilege is "narrowly and strictly construed," and the party asserting it bears the burden of proving that it applies. *Vasudevan Software, Inc. v. IBM Corp.*, No. 09-5897-RS (PSG), 2011 WL 1599646, at *1 (N.D. Cal. Apr. 27, 2011) (citations omitted); *accord United States v. Bergonzi*, 216 F.R.D. 487, 493 (N.D. Cal. 2003) (holding that party asserting privilege "must make a *prima facie* showing" that privilege applies) (citing *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992)); *see*

4

1   *Richey*, 632 F.3d at 566.  The privilege attaches when:

> (1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Richey*, 632 F.3d at 566 (brackets and citation omitted).

The privilege extends to versions of electronic communications and preliminary drafts of communicated documents, *Laethem Equip. Co. v. Deere & Co.*, 261 F.R.D. 127, 139-40 (E.D. Mich. 2009) (citations omitted), as well as communications with "third parties who have been engaged to assist the attorney in providing legal advice." *Richey*, 632 F.3d at 566 (footnote omitted).  If the advice sought from the professional legal advisor is not legal advice, the privilege does not apply.  *Id.* at 566.

### B.  RFPs at Issue

Orrick objects to RFPs 23, 24, 26, and 29 to the extent that they seek documents protected by the attorney-client privilege and work product protection belonging to Orrick.  Those RFPs are as follows:

**RFP 23:** Produce all documents and communications received or sent by any one at Orrick, including John Bautista, from February 1, 2015 to the present, including from his personal email address johnvbautista@gmail.com regarding, discussing, addressing, referencing or containing a reference or a discussion of any one of the following: (A) TOPIC: any actual or potential litigation by Plaintiff, including, but not limited to, any discussion of litigation strategy, litigation, funding for Plaintiff or any similar topic, (B) TERMS: (1) gatti, (3) calafiore, (4) sandei, (5) almawave, (6) almaviva, except that communications also sent to gm@loop.ai or to valeria.healy@healylex.com need not be produced.

**RFP 24:** Produce all of Orrick internal documents, correspondence and any other records, from February 1, 2015 to the present discussing, referencing or in any way addressing any conflicts or other issue relating to Orrick's representation of Plaintiff or Almaviva S.p.A., Almawave S.r.l., Almawave USA Inc., Gatti, Valeria Sandei, including any correspondence with Orrick's insurers regarding Plaintiff or Almaviva S.p.A., Almawave S.r.l., Almawave USA Inc., Gatti, Valeria

Sandei.

**RFP 26:** Produce all documents and communications within Orrick from February 1, 2015 to the present relating to, discussing or in any way mentioning the Lawsuit or Litigation filed by Plaintiff; as defined above.

**RFP 29:** Produce all documents and correspondence from February 1, 2015 to (and including) March 11, 2015 between Larry Low and anyone else, including anyone inside Orrick, regarding, addressing, concerning or in any way referencing Plaintiff, the Lawsuit or Litigation (as defined above), Gatti, Almawave, Sandei, Venable, Healy LLC, or regarding, addressing, concerning or in any way referencing the subject matter or contents of Mr. Low's email filed in this action at Dkt. No. 29-1.

### C. Analysis

Orrick asks the court to enter a protective order and/or to quash the subpoena to the extent that it seeks internal confidential communications between Orrick's lawyers and its Chief Legal Officer Larry Low or Claims Counsel William Alderman, that "request or provide legal advice" related to this lawsuit or to Loop's subpoena to the firm. Mot. at 3. Orrick submits a declaration by Alderman in which he states that each of the withheld communications "was made in confidence for the purpose of obtaining or giving legal advice in connection with this lawsuit or the demands made of Orrick made by [Loop] and its counsel." Alderman Decl. ¶ 10. In a second declaration, Alderman states that each of the withheld communications was dated on or after February 27, 2015, the date Orrick contends it first learned of this litigation.[2] Orrick argues that as with any other client, a law firm enjoys an attorney-client privilege covering confidential communications with its internal legal counsel. Loop does not dispute that the attorney-client privilege applies to the withheld communications. Instead, it notes that Orrick represented Loop for almost three years, beginning in April 2012 and continuing until March 11, 2015, when Orrick formally withdrew from any future representation of the company. Loop argues that federal

---

[2] On February 27, 2015, Orrick received an email from Loop's counsel notifying Orrick of this litigation and asking a series of questions about Orrick's representation of the interested parties. Alderman Decl. Sept. 3, 2015 ("2d Alderman Decl.") ¶ 3.

6

common law recognizes a "fiduciary" or "current client" exception to the attorney-client privilege, which would prevent Orrick from invoking its own attorney-client privilege against Loop for communications that took place during its representation of Loop.

As discussed above, federal common law governs here. The attorney-client privilege may apply to a law firm's communications with its own lawyers within the firm. *See United States v. Rowe*, 96 F.3d 1294, 1296-97 (9th Cir. 1996). The Ninth Circuit recognizes a fiduciary exception to the attorney-client privilege. *United States v. Mett*, 178 F.3d 1058, 1062 (9th Cir. 1999). In the context of a law firm's communications with its in-house counsel, one court has held that "a law firm cannot assert the attorney-client privilege against a current outside client when the communications that it seeks to protect arise out of self-representation that creates an impermissible conflicting relationship with that outside client." *In re SonicBlue, Inc.*, No. 03-51775, 2008 WL 170562, at *9 (Bankr. N.D. Cal. Jan. 18, 2008). Where conflicting duties exist, the law firm's right to claim privilege "must give way to the interest in protecting current clients who may be harmed by the conflict." *Id.*; *see also In re Sunrise Sec. Litig.*, 130 F.R.D. 560, 597 (E.D. Pa. 1989).

Loop states that from 2012 to 2015, Orrick represented Loop with respect to all critical aspects of its business, including matters related to Gatti and her employment with Loop. Loop asserts that Orrick was simultaneously working with Gatti and the Almaviva Defendants, and that Orrick had prepared an employment agreement between Almawave USA and Gatti, even though Gatti continued to be employed by Loop. Loop contends that Orrick never advised Loop that it was representing Almawave USA or the Italian Almaviva Defendants, and never disclosed that it was acting adversely to Loop's interests. Loop argues that until Orrick ceased its representation of Loop on March 11, 2015, Orrick had a fiduciary obligation not to act against Loop's interests in any way and to disclose all matters material to the representation, including the fact that Gatti had been acting in breach of her own obligations to Loop for more than a year. Therefore, Loop argues, Orrick should not be permitted to withhold any communications that pre-date Orrick's

termination of its attorney-client representation of Loop.[3]

Loop cites two cases to support its argument that the fiduciary exception warrants production of the otherwise privileged documents. Both *Landmark Screens, LLC v. Morgan, Lewis & Bockius LLP*, No. C08-02581 JF (HRL), 2010 WL 289858, at *1-3 (N.D. Cal. Jan. 15, 2010) and *E-Pass Technologies, Inc. v. Moses & Singer, LLP*, No. C09-5967 EMC (JSC), 2011 WL 3794889, at *2-3 (N.D. Cal. Aug. 26, 2011) are attorney malpractice cases in which the plaintiffs alleged that the defendant law firms had negligently represented them in patent cases. In both cases, the courts relied on a third case, *Thelen Reid & Priest LLP v. Marland*, No. 06-2071 VRW, 2007 WL 578989, at *8 (N.D. Cal. Feb. 21, 2007). In *Thelen*, the court held that where there is a potential conflict of interest between a firm and its client, the firm may not withhold any communications discussing 1) claims that the client might have against the firm, 2) known errors in its representation of the client, and 3) known conflicts between the firm and the client. However, the court in *Thelen* also held that a firm need not disclose communications reflecting consultations between the firm's lawyers regarding the firm's legal and ethical obligations to its client, noting that "[a] rule requiring disclosure of all communications relating to a client would dissuade attorneys from referring ethical problems to other lawyers, thereby undermining conformity with ethical obligations." *Id*. at *7; *see also SonicBlue*, 2008 WL 170562, at *9 (noting that public policy that "encourages lawyers to consult with in-house counsel to understand and comply with their professional responsibilities and ethical restraints . . . favors allowing the privilege to be asserted until such time as the firm has, or should have, determined that dual representation of itself and an outside client should not continue without the informed consent of the outside client.").

For its part, Orrick challenges Loop's central factual assertion. Orrick points out that Loop has not submitted any evidence to support its contention that Orrick knew that Gatti was working simultaneously for its conflicting clients, Loop and Almawave USA. Orrick also argues that

---

[3] At the hearing, Plaintiff conceded that it is not entitled to communications post-dating March 11, 2015.

1  *Landmark Screens* and *E-PassTechnologies* are distinguishable. In those malpractice cases, the
2  law firms knew that their clients had a legal claim against them. By contrast, there is no evidence
3  that Loop had a "claim" against Orrick. Orrick also notes that unlike in those cases, Orrick did not
4  perform any work for Loop after it became aware of the potential conflict on February 27, 2015.
5  Orrick never simultaneously performed work for its conflicting clients, and instead, took
6  immediate steps to evaluate its ethical obligations, and promptly withdrew from representation
7  within two weeks.

8       The court agrees that the cases cited by Loop are distinguishable on their facts. Orrick
9  notified Loop that it was withdrawing from its representation on March 11, 2015, only twelve days
10  after learning of the conflict through a February 27, 2015 email from Loop's counsel. Orrick did
11  not perform any work for Loop during that two-week period. There is no evidence that Orrick was
12  aware of "impending ethical issues" prior to February 27, 2015, and it appears that it promptly
13  ceased its representation of all parties with conflicting interests. *See, e.g., SonicBlue*, 2008 WL
14  170562, at *10 (finding that even though firm "had some inkling of impending ethical issues," an
15  actual conflict did not arise until over a year later when the firm executed a tolling agreement with
16  the client; as of that date, firm's ability to withhold intra-firm communications "became
17  impaired.").

18       At the December 10, 2015 hearing, the court ordered Orrick to submit for in camera review
19  all documents dated between February 27, 2015 and March 11, 2015 withheld on the basis of
20  attorney-client privilege. Orrick submitted approximately 650 documents. The court has carefully
21  reviewed these documents, many of which are duplicates or include chains of emails that appear in
22  other documents. With two exceptions, the documents contain communications about Loop's
23  subpoena and this lawsuit, and subsequent internal communications about Orrick's legal and
24  ethical obligations in connection with representing Loop, the Italian Almaviva Defendants and
25  Almawave USA. The withheld documents do not contain communications discussing claims that
26  Loop might have against Orrick, errors in Orrick's representation of Loop, or conflicts between
27  Orrick and Loop. The court adopts the reasoning set forth in *Thelen* and *SonicBlue*, and therefore
28  finds that the fiduciary exception to attorney-client privilege does not apply here. The documents

are therefore protected from production.[4]

The two documents that do not appear to be attorney-client privileged communications are bates-labeled OHS0000279 and OHS0000280. These are emails dated March 3, 2015 from Peter Sternberg to Orrick attorneys. Peter Sternberg is a former Orrick attorney who works at the Venable firm, which represents the Italian Almaviva Defendants and Almawave USA. It is not clear how these communications are protected by Orrick's own attorney-client privilege, since they involve an individual who no longer worked at Orrick at the time of the communications, and who does not represent Orrick. Additionally, the communications were not made for the purpose of obtaining or giving legal advice in connection with this lawsuit or the Loop subpoena. Accordingly, the documents bates-labeled OHS0000279 and OHS0000280 must be produced to Loop.

## IV.   CONCLUSION

For the foregoing reasons, Orrick's motion for a protective order and/or to quash is GRANTED in part. Orrick shall produce to Loop documents bates-labeled OHS0000279 and OHS0000280 within seven days of the date of this order.

**IT IS SO ORDERED.**

Dated: February 24, 2016



Donna M. Ryu
United States Magistrate Judge

---

[4] Loop also argues that Orrick has waived its attorney-client privilege by advising the court in an earlier filing that it was unaware of its conflicted representation of Loop and the Italian Almaviva Defendants, and that it resigned its representation immediately upon learning of this litigation and the conflict. [*See* Docket No. 141 at 2 n.1.] Loop argues that if Orrick's representation is true, it could not have been seeking the advice of internal counsel regarding a conflict that it did not know existed. This argument is not persuasive, since the communications at issue took place only after Loop's counsel notified Orrick of this litigation and put it on notice of the potential conflict. Again, Loop offers no evidence that Orrick attorneys were aware of Gatti's employment by both Loop and Almawave USA prior to February 27, 2015.