1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7   LOOP AI LABS INC,                        Case No.  15-cv-00798-HSG   (DMR)

                    Plaintiff,
8
                                             **ORDER ON DEFENDANTS' MOTION**
9        v.                                  **FOR PROTECTIVE ORDER**

10  ANNA GATTI, et al.,                       Re: Dkt. No. 295

                    Defendants.
11

12          Plaintiff Loop AI Labs Inc. ("Loop") and Defendants Anna Gatti, IQSystem LLC, and

13  IQSystem Inc. filed a joint letter in which these three Defendants move for a protective order as to

14  five subpoenas issued by Loop.[1]  [Docket No. 295 (Joint Letter).]  The court has determined that

15  this matter is suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b).

16  For the following reasons, Defendants' motion is granted in part and denied in part.

17  **I.      BACKGROUND**

18          Loop filed this action in February 2015 against Defendants Almawave USA; Almaviva

19  S.p.A. ("Almaviva") and Almawave S.r.l. (together, the "Almaviva Defendants"); Gatti; IQSystem

20  LLC; and IQSystem Inc.  Loop is a startup that develops artificial intelligence technology.  It

21  alleges that Gatti, its former CEO, conspired with the Almaviva Defendants to misappropriate

22  Loop's trade secrets and sabotage its investor negotiations.  According to Loop, while pretending

23  to work full time for Loop, Gatti took a concurrent CEO position with Almawave USA and

24  allegedly established IQSystem LLC and IQSystem Inc. "to funnel the money that she was

25  receiving as compensation" for her illegal activities.  [Docket No. 210 (2d Am. Compl.) ¶¶ 26, 42,

26

27  _____

    [1] For ease of reference, the court refers collectively to the three moving defendants as
28  "Defendants," even though there are other defendants in this case.  No other defendant joined in
    this motion.

43.]  In its second amended complaint, Loop brings seventeen claims against some or all of the Defendants, including, *inter alia*, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 *et seq*., violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 *et seq*., misappropriation of trade secrets, unfair competition, and various torts.

Loop issued five subpoenas for documents to the following third parties: 1) AT&T Communications ("AT&T"); 2) Google, Inc. ("Google"); 3) WI Harper Group, Inc. ("WI Harper"); 4) Carr & Ferrell, LLP ("Carr & Ferrell"); and 5) Bank of the West.  Joint Letter Exs. 1-5.  Defendants Gatti, IQSystem LLC, and IQSystem Inc. move for a protective order as to each of the five subpoenas, arguing that they improperly seek their private and privileged information that is irrelevant to this action.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs discovery of nonparties by subpoena.  Fed. R. Civ. P. 45.  The Advisory Committee Notes to Rule 45 state that "the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules," which in turn is the same as under Rule 26(b).  Advisory Committee Notes to 1970 Amendment.  Rule 26(b) allows a party to obtain discovery concerning

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  "Information within this scope of discovery need not be admissible in evidence to be discoverable."  *Id*.

Rule 45 provides that "on timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . . subjects a person to undue burden."  Fed. R. Civ. P. 45(c)(3)(A)(iii), (iv).  "[A] court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the

United States District Court
Northern District of California

party subject to the subpoena." *Gonzales v. Google*, 234 F.R.D. 674, 680 (N.D. Cal. 2006) (citation omitted).  The party who moves to quash a subpoena bears the "burden of persuasion" under Rule 45(c)(3).  *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (citations omitted).

A party generally lacks standing under Federal Rules of Civil Procedure Rule 45(c)(3) to challenge a subpoena issued to a non-party "unless the party claims a personal right or privilege with respect to the documents requested in the subpoena."  *In re REMEC, Inc. Sec. Litig.*, No. CIV 04CV1948 JLS AJB, 2008 WL 2282647, at *1 (S.D. Cal. May 30, 2008) (citing *Nova Prods., Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004); *In re Cree Inc. Sec. Litig.*, 220 F.R.D. 443 (M.D.N.C. 2004)); *see also Moon*, 232 F.R.D. at 636 ("A party cannot object to a subpoena duces tecum served on a nonparty, but rather, must seek a protective order or make a motion to quash.").  "A party can move for a protective order in regard to a subpoena issued to a non-party if it believes its own interests are jeopardized by discovery sought from a third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information."  *In re REMEC*, 2008 WL 2282647, at *1.

## III.   DISCUSSION

As a preliminary matter, Defendants[2] appear to object to all five subpoenas on the ground that Loop has failed to comply with California Code of Civil Procedure section 2019.210.  Loop alleges a claim for misappropriation of trade secrets pursuant to California Civil Code section 3426, California's Uniform Trade Secrets Act ("CUTSA").  Section 2019.210 provides that in any action alleging misappropriation of trade secrets under CUTSA, "before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity subject to any orders that may be appropriate under Section 3426.5 of the Civil Code."  Cal. Civ. Proc. Code § 2019.210.  Although it is not clearly stated, it appears that Defendants' position is that unless and until Plaintiff identifies its alleged trade secrets with

---

[2] The joint letter does not always make clear on whose behalf the objections are made, whether it be Gatti, IQSystem LLC, or IQSystem Inc., or some combination thereof.  Therefore, the court will refer to the objections as "Defendants' objections," meaning Gatti, IQSystem LLC, and IQSystem Inc. collectively.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    particularity, Plaintiff is not entitled to discovery.

2           This argument is without merit.  After the parties filed the instant joint letter, the

3    undersigned granted in part and denied in part Defendant IQSystem Inc.'s motion to compel Loop

4    to provide a particularized trade secret disclosure pursuant to section 2019.210 and to stay

5    discovery until Loop provides such disclosure.  [Docket No. 331.]  The court concluded that

6    section 2019.210 applies in this case and that Loop had failed to sufficiently identify the trade

7    secrets at issue.  However, the court denied IQSystem Inc.'s motion to stay all discovery in this

8    case pending Loop's compliance with section 2019.210, holding that section 2019.210 only

9    supports a stay of "discovery related to the trade secret[s]."  *Id*. at 7.  The court stayed discovery as

10   to Loop's CUTSA claim only, and ordered that Loop could proceed with such discovery upon

11   filing a statement identifying with reasonable particularity the trade secrets at issue in this lawsuit.

12   *Id*.

13          Loop filed a statement regarding its trade secrets on January 11, 2016.  Without expressing

14   an opinion on the sufficiency of Loop's disclosure, the court notes that to date, no party has moved

15   to challenge Loop's disclosure.  Moreover, there is no argument or indication that the five

16   subpoenas at issue relate solely to Loop's CUTSA claim.  Accordingly, Defendants' objections to

17   the five subpoenas based on section 2019.210 are overruled.

18          **A.      Subpoena to AT&T**

19          Loop's subpoena to AT&T seeks "all records reflecting the incoming and outgoing call

20   history, text or other data messages, and data transfer from March 1, 2013 through the present" for

21   five specified phone numbers that are associated with accounts held by Gatti, IQSystem LLC, and

22   IQSystem Inc.  The subpoena also asks for the same information for any other phone numbers

23   held by Gatti.  Loop argues that the records of communications by Gatti, IQSystem LLC, and

24   IQSystem Inc. are highly relevant to its allegations about Gatti's participation in a conspiracy

25   involving wire fraud.  In its second amended complaint, Loop alleges that "Gatti utilized a wide

26   variety of communications means including in-person meetings, teleconference meetings,

27   telephone calls, emails, text messages, and social media messages" in order "[t]o carry out as well

28   as conceal her fraudulent activities and wrongdoings."  2d Am. Compl. ¶ 143.  It also argues that

1    Gatti justified "repeated disappearances" from work on the basis of personal reasons, and that

2    these records will confirm "her true whereabouts and activities" during her employment with

3    Loop.

4          Defendants object on the ground that the subpoena potentially calls for attorney-client

5    communications and documents protected by California's right to privacy, such as

6    communications between Gatti and her physician.  They also argue that the subpoena may not be

7    enforced to the extent that it violates the federal Stored Communications Act ("SCA"), 18 U.S.C.

8    §§ 2701-2712.  Further, Defendants argue that the subpoena is overbroad as to time and scope and

9    calls for documents not relevant to any party's claim or defense, since it seeks information about

10   communications that post-date the allegations in the operative complaint.

11         Defendants' privacy objections appear solely based on their reading of the subpoena as

12   calling for the *substance* of potentially privileged or protected communications.  This is contrary

13   to Loop's intent, since Loop contends that it does not seek the content of the communications.

14   According to Loop, it simply seeks "a list of technical data of the date/time the communication

15   was made or received, the numbers called, and other *technical* data." Jt. Letter at 3.  It argues that

16   disclosure of such data—and not the contents of communications themselves—is expressly

17   permitted by the SCA.

18         Civil subpoenas are subject to the prohibitions of the SCA.  *See Theofel v. Farey-Jones*,

19   359 F.3d 1066, 1071-72, 1077 (9th Cir. 2004).  The SCA generally prohibits "'providers' of

20   communication services from divulging private communications to certain entities and/or

21   individuals." *Quon v. Arch Wireless Operating Co., Inc.*, 529 F.3d 892, 900 (9th Cir. 2008), *rev'd*

22   *on other grounds by City of Ontario v. Quon*, 560 U.S. 746 (2010).  It permits an electronic

23   communications service provider to "divulge a record or other information pertaining to a

24   subscriber to or customer of such service (not including the contents of communications . . . ) . . .

25   to any person other than a governmental entity." 18 U.S.C. § 2702(c)(6).  The Ninth Circuit has

26   held that wireless communications providers such as AT&T are properly classified as "electronic

27   communication service[s]." *Quon*, 529 F.3d at 901; *see Mintz v. Mark Bartelstein & Assocs., Inc.*,

28   885 F. Supp. 2d 987, 992 (C.D. Cal. 2012).  Because Loop is not a governmental entity, AT&T

United States District Court
Northern District of California

may disclose to it the subscriber information requested by the subpoena.  *See id*. at 992-93

(holding SCA permits AT&T to disclose subscriber information pursuant to subpoena, including

date, time, originating and receiving telephone number for specified date range); *see also Obodai*

*v. Indeed, Inc.*, No. 13-80027-MISC EMC (KAW), 2013 WL 1191267, at *3 (N.D. Cal. Mar. 21,

2013) ("Since subscriber information is not protected by the SCA, [litigant] may obtain non-

content information pursuant to a valid, civil subpoena.").  AT&T may not provide the content of

any communications, including text messages, consistent with the SCA.[3]  *See Mintz*, 885 F. Supp.

2d at 993.  To the extent that Loop's subpoena could be read to request the content of the

requested communications, this order explicitly holds that AT&T is prohibited from providing the

content of any communications.

   As to the scope of the subpoena, Loop seeks the requested information from March 1, 2013

through the present.[4]  Loop argues that the time frame is appropriate since Gatti's scheme

"continues to date as alleged in the Second Amended Complaint."  Jt. Letter at 2.  It also argues

that Gatti has continued to improperly solicit Loop's confidential investors and advisors by phone

and text messages "as recently as a few weeks ago."  *Id*.  Loop gives no other information about

these allegedly improper activities.  In the second amended complaint, Loop makes a number of

allegations about Gatti's continued wrongdoing, including the allegation that after her termination

from Loop, Gatti continued to make false and misleading communications with Loop's employees

and investors "with the intent to cause further damage to [Loop]."  2d Am. Compl. ¶ 36.  It alleges

that before and after Gatti's termination, she has "continued to use text messaging to solicit

[Loop's] confidential contacts, witnesses, past, current and prospective investors, advisors and

their families," and that Gatti "recently" solicited by text messages "key individuals in investment

funds" at issue in this action.  *Id*. at ¶ 143; *see also* ¶¶ 147, 149, 226 ("Defendants' [racketeering]

activities were ongoing for at least one year, and continued through her termination from [Loop]

---

[3] Since the content of Defendants' communications is not at issue, Defendants' privacy objections are overruled.

[4] Defendants ask the court to limit the time period to June 1, 2012 through February 23, 2015, the date Loop filed its complaint.  However, the AT&T subpoena does not seek data prior to March 1, 2013.

United States District Court
Northern District of California

1    on February 3, 2015.").  Given Plaintiff's allegations about Gatti's continued wrongdoing, the

2    court finds that the appropriate time period for the information requested in the AT&T subpoena is

3    March 1, 2013 through September 23, 2015, the date Loop filed its second amended complaint.

4         **B.    Subpoena to Google**

5         Loop's subpoena to Google requests four categories of information, two of which are

6    subject to Defendants' objections: 1) all documents and communications concerning Gatti's

7    employment with Google and Youtube, Inc. ("Youtube"), including her complete

8    employee/personnel file (Request for Production (RFP) 1); and 2) any documents related to any

9    application for unemployment benefits made by Gatti for which Google or Youtube received

10   notification (RFP 3).  Defendants argue that the requested information, including the "day to day

11   ins and outs of Gatti's employment with Google," is not relevant to any party's claims or defenses,

12   and that Gatti's employment file is private.

13        In response, Loop argues that Gatti's employment records are "critically at issue in this

14   case," because Loop alleges that Gatti made material misrepresentations regarding her past

15   employment, compensation, and academic history in order to fraudulently induce Loop into giving

16   her a large percentage of company shares and a high salary.  Jt. Letter at 4.  While Loop alleges a

17   claim of fraud in the inducement against Gatti based upon alleged misrepresentations about her

18   education and prior employment at the University of California, Berkeley and Skype, it makes no

19   allegations about any misrepresentations by Gatti about her employment with Google or Youtube

20   in connection with that or any other claim.  *See* 2d Am. Compl. ¶¶ 258-262.  Moreover, to the

21   extent that Loop seeks to confirm details about Gatti's employment with Google and Youtube,

22   such as the dates of employment and compensation, it does not need the contents of Gatti's

23   personnel file to do so; it can obtain this information through less burdensome sources, including

24   depositions of Gatti and/or her former supervisors.  Since Gatti's personnel file from Google

25   and/or Youtube are of minimal relevance and are not proportional to the needs of the case,

26   Defendants' motion to quash the subpoena to Google is granted as to RFP 1.  *See* Fed. R. Civ. P.

27   26(b)(1).  This ruling is made without prejudice to Loop re-serving the portion of its subpoena

28   seeking Gatti's personnel file from Google and/or YouTube should Loop learn facts in discovery

1    that establish the clear relevance of those personnel files.

2         As to any application by Gatti for unemployment benefits, Loop offers no argument about

3    the relevance of such documents.  Accordingly, the motion to quash the subpoena is granted as to

4    RFP 3.

5         **C.    Subpoena to WI Harper Group**

6         Loop's subpoena to WI Harper Group seeks 24 categories of information.  Defendants

7    object to the following four categories: 1) all documents and communications related to, referring

8    to, or in any way discussing or including the name Anna Gatti or any of Gatti's contact

9    information (RFP 3); 2) all text messages between anyone at WI Harper Group and Gatti,

10   including any text messages to or from Shahi Ghanem (RFP 4); 3) all LinkedIn, Facebook, and

11   any other social media messages to or from Anna Gatti and anyone at WI Harper Group, including

12   any message or request sent to Peter Liu (RFP 6); and 4) all documents and communications

13   regarding or relating to IQSystem Inc. and IQSystem LLC (RFP 16).

14        Loop explains that WI Harper was one of Loop's business relationships that "was

15   destroyed by Gatti directly and through the other Defendants," and that Gatti improperly continued

16   to solicit WI Harper after her termination.  Loop contends that Gatti admitted that she has waived

17   objections to this subpoena since she did not assert objections to the Almaviva Defendants'

18   subpoena to WI Harper seeking "all documents related to Anna Gatti."  Jt. Letter at 5.

19        Although not clearly stated, it appears that Defendants object to these four categories of

20   information on privacy and overbreadth grounds.  However, they provide no support or

21   explanation for these objections, merely incorporating by reference their arguments related to the

22   AT&T subpoena, which do not appear applicable.  They also do not respond to Loop's assertion,

23   and therefore concede that Defendants waived their objections to the subpoena.  Accordingly, the

24   motion to quash the WI Harper subpoena is denied.

25        **D.    Subpoena to Carr & Ferrell**

26        Loop's subpoena to the Carr & Ferrell law firm seeks thirteen categories of documents.

27   Defendants object to the following categories: 1) correspondence by attorney Jeffrey Capaccio

28   regarding Loop, its employees, Gatti, Tony DiNapoli, Gennaro DiNapoli, and the Almaviva

United States District Court
Northern District of California

8

1   Defendants, and documents from Capaccio's files regarding the same (RFP 2); 2) all documents

2   regarding IQSystem Inc. and IQSystem LLC (RFP 3); 3) documents regarding payments to

3   Capaccio from Gatti, Tony DiNapoli, or any of the defendants (RFP 4); 4) all documents related to

4   the Almaviva Defendants or the IQSystem Defendants' goals for, expectations of, and

5   requirements for Carr & Ferrell in connection with its work as a contractor for the Almaviva

6   Defendants (RFP 5); 5) communications with Gatti from March 1, 2013 through the present (RFP

7   6); and communications by or to Capaccio regarding this litigation (RFP 10).  Defendants also

8   object to RFP 1, which seeks all engagement letters between Carr & Ferrell and any of the

9   defendants in this action and/or Tony DiNapoli.  Loop contends that Capaccio is Gatti's co-

10  conspirator, and a close friend of Gatti's boyfriend and alleged co-conspirator Tony DiNapoli.  It

11  alleges that Capaccio schemed with Gatti to force Loop to sell its intellectual property at a bargain

12  price.  *See* 2d Am. Compl. ¶¶ 211-13.  Loop alleges that Capaccio and DiNapoli "have a tried and

13  true modus operandi for seeking to force start-ups to sell on the cheap to other companies."  *Id*. at

14  211.

15          Defendants again incorporate by reference their arguments related to the AT&T subpoena.

16  They baldly assert that the subpoena calls for attorney-client privileged communications and

17  documents protected by the attorney work product doctrine, without providing any information or

18  context about the relationship between Carr & Ferrell, Capaccio, and any of the defendants in this

19  case.  They ask the court to limit the time period to June 1, 2012 to February 23, 2015, and to limit

20  the scope to documents excluding privileged communications and documents containing attorney

21  work product and documents concerning Loop and the Almaviva Defendants, "excluding attorney-

22  client privileged communications between Almaviva's counsel and Gatti as Almaviva's agent and

23  other Almaviva agents/employees."  Jt. Letter at 7.  In response, Loop argues that Defendants do

24  not, and cannot allege that they ever retained Carr & Ferrell as counsel for any matter, and that

25  they have no basis to block the production of these highly relevant documents.

26          Federal privilege law applies in this federal question case.  Fed. R. Evid. 501; *see also*

27  *Loop AI Labs Inc. v. Gatti,* No. 15-cv-00798 HSG (DMR), 2016 WL 730211, at *2 (N.D. Cal.

28  Feb. 24, 2016).  The attorney-client privilege protects from discovery "confidential

United States District Court
Northern District of California

1   communications between attorneys and clients, which are made for the purpose of giving legal

2   advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citation omitted).  The

3   privilege is "narrowly and strictly construed," and the party asserting it bears the burden of

4   proving that it applies.  *Vasudevan Software, Inc. v. IBM Corp.*, No. 09-5897-RS (PSG), 2011 WL

5   1599646, at *1 (N.D. Cal. Apr. 27, 2011) (citations omitted); *accord United States v. Bergonzi*,

6   216 F.R.D. 487, 493 (N.D. Cal. 2003) (holding that party asserting privilege "must make a *prima*

7   *facie* showing" that privilege applies) (citing *In re Grand Jury Investigation*, 974 F.2d 1068, 1071

8   (9th Cir. 1992)); *see Richey*, 632 F.3d at 566.  Here, Defendants have made no showing that the

9   privilege applies, as they do not assert that Carr & Ferrell or Capaccio ever represented them in

10   any capacity.  Moreover, as to Loop's request for engagement letters between Carr & Ferrell and

11   any of the defendants in this action and/or Tony DiNapoli, the Ninth Circuit has held that the

12   attorney-client privilege usually does not protect from disclosure "the identity of the client, the

13   amount of the fee, the identification of payment by case file name, and the general purpose of the

14   work performed."  *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992).

15        The work product doctrine protects from discovery "materials prepared by an attorney in

16   anticipation of litigation," be they "by or for the attorney."  *Bergonzi*, 216 F.R.D. at 494 (citations

17   omitted); *accord Richey*, 632 F.3d at 567.  To qualify for work-product protection, materials must

18   "(1) be prepared in anticipation of litigation or for trial and (2) be prepared by or for another party

19   or by or for that other party's representative."  *Richey*, 632 F.3d at 567 (citation omitted).  When a

20   document was not prepared exclusively for litigation, it will receive protection if "in light of the

21   nature of the document and the factual situation in the particular case, the document can be fairly

22   said to have been prepared or obtained because of the prospect of litigation."  *Id.* at 568 (citation

23   omitted).  As with their attorney-client privilege objection, Defendants make no showing that the

24   work product doctrine applies to the documents requested by Loop's subpoena.

25        The court notes its concern that Defendants did not respond to any of Loop's assertions

26   about the lack of an attorney-client relationship between Defendants and Capaccio.  Further, even

27   though it appears that Capaccio represented the Almaviva Defendants at some point, the Almaviva

28   Defendants did not move to quash the subpoena or participate in the instant joint letter.  Since the

attorney-client privilege is "narrowly and strictly construed," the court declines to quash the subpoena on attorney-client privilege and attorney work product protection grounds.  However, in an abundance of caution, the court will allow for the possibility that Carr & Ferrell may withhold certain documents based on privilege.  To the extent that Carr & Ferrell withholds documents in response to Loop's subpoena, it must promptly provide a privilege log in conformance with this court's Standing Order.  [*See* Docket No. 401 (Notice of Amended Discovery Procedures).]  Carr & Ferrell may only withhold documents based on an objectively reasonable assertion of attorney-client privilege and/or attorney work product protection.

As to the scope of the subpoena, Loop seeks the requested information for various time frames, including 2012 to the present, June 1, 2013 to the present, January 2014 to the present, and March 1, 2013 to the present.  Loop argues that Capaccio and DiNapoli's alleged modus operandi is continuous and ongoing.  *See* 2d Am. Compl. ¶¶ 211-13, 228-31.  The court orders Carr & Ferrell to produce the responsive information starting from the dates requested in the subpoena through September 23, 2015.

### E.        Subpoena to Bank of the West

Loop's subpoena to Bank of the West seeks 15 categories of information, including the identification of bank accounts held by Gatti, Tony DiNapoli, IQSystem Inc., IQSystem LLC, the Almaviva Defendants, Almawave USA, and others, and documents associated with opening such accounts; communications between Gatti and specific Bank of the West employees or representatives; documents and communications related to specific instances of cash pick-ups; and documents and communications related to Loop and/or this litigation.  Loop argues that the requested information is relevant to its allegations that Gatti used the assistance of specific Bank of the West employees to conduct her unlawful activities related to the Almaviva Defendants and used bank accounts to obtain and make fraudulent payments.  2d Am. Compl. ¶¶ 27, 43, 50, 151-54, 234.  It also argues that the information requested is relevant to review the funds Gatti received while she was supposed to be exclusively working for Loop.

Defendants object to nine RFPs, again incorporating by reference their arguments related to the AT&T subpoena.  They also argue that their personal financial information is private and

United States District Court
Northern District of California

that the subpoena is overbroad and should be limited to documents concerning Loop and the Almaviva Defendants only. Defendants seek to limit the scope to documents and information from June 1, 2012 through February 23, 2015.

As noted above, federal privilege law applies in this case. Defendants provide no support for their claim that the information sought is protected from discovery, and no explanation why their privacy would not be sufficiently protected if sensitive financial information is designated as "confidential" or "highly confidential—attorneys' eyes only" pursuant to the parties' protective order. [Docket No. 230.] *See, e.g., In re Heritage Bond Litigation*, No. CV 02-1475-DT(RCX), 2004 WL 1970058, at *5 n.12 (C.D. Cal. July 23, 2004) ("Any privacy concerns Kasirer defendants have in their bank records and related financial statements are adequately protected by the protective order, and are not sufficient to prevent production in this matter.") (citing *Sneirson v. Chemical Bank*, 108 F.R.D. 159, 162 (D. Del. 1985); *accord In re Yassai*, 225 B.R. 478, 483 (Bankr. C.D. Cal. 1998). As to the scope of the subpoena, Loop does not seek documents or information prior to June 1, 2012. The court finds that the appropriate time period for the information requested in the Bank of the West subpoena is June 1, 2012 through September 23, 2015.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion for a protective order and/or to quash Loop's subpoenas to AT&T, Google, WI Harper Group, Carr & Ferrell, and Bank of the West is granted in part and denied in part.

**IT IS SO ORDERED.**

Dated: February 29, 2016



Donna M. Ryu
United States Magistrate Judge