LAW OFFICES OF JANET BRAYER
JANET BRAYER (SBN 117397)
230 California Street, Suite 600
San Francisco, California 94111
Telephone: (415) 445-9555
Facsimile: (415) 445-9541

Attorney for Defendant IQSYSTEM, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>ANNA GATTI, an individual, ALMAVIVA S.p.A., an Italian corporation, ALMAWAVE S.r.l an Italian corporation, ALMAWAVE USA, Inc., a California corporation, IQSYSTEM LLC, a California limited liability company, IQSYSTEM, Inc., a Delaware corporation,<br><br>Defendants. | **Case No. 3:15-cv-00798-HSG-DMR**<br><br>**DEFENDANT IQSYSTEM, INC.'S NOTICE OF MOTION AND MOTION TO ENFORCE COURT ORDER DATED DECEMBER 21, 2015 REGARDING SUBMISSION BY PLAINTIFF OF A THOROUGH AND COMPLETE TRADE SECRET DISCLOSURE; REQUEST FOR SANCTIONS [DKT. 331, DKT 371]**<br><br>**DATE: APRIL 28, 2016**<br>**TIME: 11:00 A.M.**<br>**COURTROOM: 4, 1301 Clay Street, Oakland, CA**<br>**JUDGE:DONNA M. RYU** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on **April 28, 2016** at **11:00 a.m.**, or as soon thereafter as counsel may be heard, before the The Honorable Donna M. Ryu, at 1301 Clay Street, Courtroom 4, Oakland, California 94612, Defendant IQSystem, Inc., (hereinafter "IQS") will and hereby does move, pursuant to California Code of Civil Procedure section 2019.210, and Civil Local Rule 7, To Enforce Court Order Dated December 21, 2015 Regarding Submission By Plaintiff Of A Thorough

And Complete Trade Secret Disclosure; Request For Sanctions [Dkt. 331, Dkt 371].

This motion is based on this notice of motion and supporting memorandum of points and authorities, the records and papers on file in this action, and any material of which this Court takes judicial notice, and such other written or oral argument as may be presented at or before the time this motion is taken under submission by the Court.

Dated: March 9, 2016

LAW OFFICES OF JANET BRAYER

By: /S/__Janet Brayer_________________
JANET BRAYER
Attorneys for Defendant
IQSYSTEM, INC.

## MEMORANDUM OF POINTS & AUTHORITIES

**1) RELIEF REQUESTED**: Defendant IQSystems, Inc. ("IQS") requests that the Court enforce the Order of December 21, 2015 (Dkt. 331) requiring Loop AI Labs, Inc. ("Loop") to provide thorough and complete identification, with reasonable particularity, of the trade secrets that are the basis of the CUTSA Claim pursuant to CA CCP 2019.210. IQS requests that Loop face a sanction in the form of: (1) preclusion of the introduction of evidence as to CUTSA Claim, and/or (2) the sanction of dismissal for failing to specify the trade secrets. Alternatively, should good cause be found for Loop's failure to provide detailed trade secret identification, IQS would request that the Court impose an issue preclusion sanction until such time as Loop complies with the Court's Order of December 21, 2015.

**2) PROCEDURAL HISTORY**:

On December 21, 2015, the Honorable Judge Ryu entered an Order (Dkt. 331) requiring Plaintiff Loop to file a statement identifying trade secrets, and staying discovery as to Loop's CUTSA claim ("TS Order"). On January 3, 2016, Loop filed a Motion for Relief from the TS Order (Dkt. 350), relief was not granted, and on January 11, 2016, Loop filed a document entitled "Submission Pursuant to Court's Order at Dkt. 331" (Dkt. 372, hereafter ("Submission"), purportedly setting forth the trade secrets with specificity as required by the TS Order. Thereafter, counsel for IQS Inc. sent a letter of January 13, 2016 and January 29, 2016 outlining the deficiencies in the Submission and requesting further particularization of the trade secret in accord with the directives set forth in the TS Order. In addition, counsel Brayer met and conferred on the phone with Counsel Diana Wong to discuss her concerns regarding the inadequacy of the disclosure. Loop refused to consider supplementing the trades secret disclosure (or responding to Ms. Brayer's correspondence of January 13, 2016) contending that it had complied with Judge Ryu's directive that "Plaintiff's identification of trade secrets must be thorough and complete. (Dkt. 331, 7:7-9), and that

Plaintiff had filed a "statement identifying with reasonable particularity the trade secrets at issue in this lawsuit." (Dkt. 331, 7:19-22).

### 3) LOOP HAS FAILED TO COMPLY WITH THE COURT'S ORDER REGARDING TRADE SECRET DISCLOSURE

The Honorable Judge Ryu rejected Loop's argument that the pleadings/declarations in this case satisfy Plaintiff's requirement for trade secret identification (Dkt. 331, 5:1-5), yet Loop's Submission is in large part a reference to pleadings and declarations in this case. Judge Ryu found that "Plaintiff's ersatz 'trade secret disclosure' was insufficient to meet the requirements of section 2019.210." (Dkt. 331, 6:19-20). Judge Ryu further stated, "Plaintiff's 'disclosure' through designation of certain paragraphs in pleadings and declarations is no substitute **for specifically identifying and describing** the actual claimed trade secrets . . ." (emphasis added) (Dkt. 331, 6:22-25). As set forth below, Loop has ignored Judge Ryu's directive by referring to pleadings and declarations in its Submission.

Loop AI has also failed to provide a detailed identification of the trade secrets in accordance with the cases cited by Judge Ryu: "Under section 2019.210, a plaintiff is required 'to identify or designate the trade secrets at issue with 'sufficient particularity' to limit the permissible scope of discovery by distinguishing the trade secrets 'from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade.'" *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835 (2005) (quoting *IMAX Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164-65(9th Cir. 1998) (citation omitted). " (Dkt. 331, 5:7-12).

As noted by Judge Ryu, California Civil Code section 3426.1 defines a trade secret as follows:

> "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
> (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
> (2) Is the subject of efforts that are reasonable under the

circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d)

As further stated by Judge Ryu, "[w]hile the particularity mandated by section 2019.210 'does not mean that the party alleging misappropriation has to define every minute detail of its claimed trade secret at the outset of the litigation,' a plaintiff 'must make some showing that is reasonable, i.e., fair, proper, just and rational.'"*Advanced Modular*, 132 Cal. App. 4th at 935-36." (Dkt. 331, 5:20-23). A plaintiff that fails to indicate with specificity what it is claiming as a trade secret has failed to carry its burden, as a matter of law, as to the existence of that trade secret. *Imax Corp. v. Cinema Techs*., 152 F.3d 1161, 1167 (9th Cir. 1998) (granting summary judgment for defendant on the ground that in failing to specify the trade secret with specificity plaintiff had failed to carry its burden of showing the existence of a trade secret.) [1]

The Submission in this case is a far cry from the particularized disclosure that is reasonable, and indeed the Submission includes virtually everything but the kitchen sink and "broad categories of trade secrets" that the Court found to be inappropriate for disclosure purposes. Plaintiff makes two sweeping directives as to where Plaintiff's trade secrets are identified; the pleadings and Plaintiff's declarations, both of which have already been rejected by this Court as insufficient specification of a trade secret. Plaintiff directs Defendants to the look for its trade secrets in the following:

[1] The requirement of specificity here is similar to that requiring specificity in pleading fraud, except that in the trade secret context courts do not require specificity in the complaint itself, so as not to force Plaintiff to disclose secret matters in open court. Thus provisions such as CCP § 2019.210 are designed to enable the plaintiff to specify the trade secret confidentially, as expeditiously as possible, because as a substantive matter a defendant need not defend itself against an improperly vague trade secret claim. *Computer Econs., Inc. v. Gartner Group, Inc*., 50 F. Supp. 2d 980, 984-985 (S.D. Cal. 1999); see also, *Imax, supra*, upholding dismissal on summary judgment of a trade secret action where plaintiff failed to specify trade secret with particularity.

1) All information and documents identified by Plaintiff as containing its trade secrets at issue in this case in response to discovery propounded or sought by Defendant Almawave USA, Inc. and any other Defendants in the above captioned proceeding, as well as the information and documents identified in Plaintiff in its First Amended Complaint and Second Amended Complaint.

2) All information and documents identified with particularity in Plaintiff's documents produced to the Defendants at Bates Numbers Loop-00019679 to Loop-0020223. (Submission - Dkt. 372, 4:2-8)

The first category is an improper attempt by Plaintiff to rely on the pleadings for its trade secret disclosure despite the fact that Judge Ryu rejected Plaintiff's prior attempt to rely on pleadings and declarations, citing to *Brescia v. Angelin*, 172 Cal. App. 4th 133, 150 (2009) (Dkt. 331, 6:20-22). The pleadings, like the Submission, is a public court filing; a fact that belies any notion that the information contained therein is "confidential" trade secret information because access to any particularized description of trade secrets would be kept restricted or kept "secret."

Plaintiff's second category of trade secrets found in Bates Numbers Loop-00019679 to Loop-0020223 is similarly deficient because it points to documents in Plaintiff's production that are merely Plaintiff's declarations previously filed in this case. Plaintiff actually took a step back from specificity in the Submission by citing, not individual paragraphs in the declarations, but the entire Declaration of Gianmauro Calafiore plus exhibits and the entire Declaration of Patrick Ehlen plus exhibits in Bates Numbers Loop-00019679 to Loop-0020223. Plaintiff's cited bates range is a reproduction of the Docket Entry numbers 49 and 50 in this case, which are declarations in support of Plaintiff's Motion to Reconsider regarding the temporary restraining order. According to Plaintiff, all information contained in the two declarations are trade secrets "identified with particularity." (Dkt. 372, 4:7-8). As stated above, Judge Ryu already rejected Plaintiff's attempts to use self-serving declarations as a trade secret disclosure. What is particularly troubling is that

Plaintiff is hiding its use of the declarations as being the trade secret disclosure by directing the parties to Plaintiff's already difficult to navigate document production via EDirect and identifying bates stamp numbers as opposed to simply stating that Plaintiff is relying on declarations previously submitted. Plaintiff has not complied with the Court's directives, and must be sanctioned for failure to do so. As the Court stated, there must be good cause to amend the statement, and a simple failure to follow the directives of the Court Order is not "good cause" for a second attempt.[2]

Plaintiff's Submission goes on to generally describe categories of information that constitute its trade secrets, which not only fall short of specificity, but also exhibit a disingenuous attempt to manufacture trade secret information. For example, Paragraph 32 identifies "Plaintiff's confidential information regarding the interpretation of social signals and related discussion surrounding the CRM space as set forth in document at Bates number Loop-19772." (Dkt. 372, 9:6-8) But Bates number Loop-19772 has been described by Plaintiff in a much different manner before. Loop-19772 is Exhibit 21 to Calafiore's Declaration found at Docket Entry #49-22 [filed in camera, and produced to Defendants]. As part of Calafiore's Declaration, Plaintiff filed an Index of Exhibits (Dkt. 49-1). In that index, Exhibit 21 is described not as containing a trade secret, but innocuously as an "Email from Anna Gatti to Loop AI employees regarding Luca S. Paderni, a contact interested in a potential acquisition dated April 21, 2014." (Dkt. 49-1 at 3) Plaintiff has simply reconceptualised its prior document descriptions with a sprinkling of technical language in a failed attempt to describe its trade secrets.

Finally, Plaintiff's Submission is insufficient because it directs Defendants where to find Plaintiff's secrets with broad, catchall language as opposed to identifying specific trade secrets. See e.g., *IMAX Corp.*, 152 F.3d at 1167 (rejecting the plaintiff's contention that use of "catchall

[2] "Plaintiff shall file and serve a statement identifying the specific trade secrets at issue within 21 days of the date of this order. Plaintiff's identification of trade secrets must be thorough and complete. Any future amendment to the disclosure will only be permitted upon a showing of good cause." (TS Order - Dkt. 331 at 7:7-10)

phrasing" achieved the level of specificity required to identify trade secrets). The Submission does not comport with the directive to provide a statement "specifically identifying and describing the actual claimed trade secrets in order 'to permit [Defendants] to ascertain at least the boundaries within which the secret[s] lie[].'" See *Brescia* at 147 (emphasis removed) (*quoting Diodes v. Franzen*, 260 Cal. App. 2d 244, 253 (1968))." (Dkt. 331, 6:23-26). Plaintiff offers broad descriptions of its trade secret as "Application of Plaintiff's technology to the analysis of big data generally…" without describing how Plaintiff's application is not generally known to the public or requires special knowledge specific to Plaintiff. (Dkt. 372, 4:20). In numerous paragraphs, Plaintiff broadly describes its trade secrets with the phrase "All information." For example, "all information stored in Plaintiff's Macbook Air computer . . ." and "all information stored in Plaintiff's data accounts used by Gatti . . ." and "all Loop AI information sent and received by Ms. Gatti to third parties . . ." (Dkt. 372 at 11:5-6, 12:16-20). The Submission also fails to differentiate between what is or is not a trade secret when describing large swaths of information. For example, Plaintiff describes its trade secret as "Plaintiff's information sent to Defendant Gatti's email address while she was working for Plaintiff . . ." (Dkt. 372, 12:23-24). It is not up to the Defendants to decipher what Plaintiff alleges was stolen.

It is IQS Inc.'s position that discovery is still stayed as to the CUTSA claim, and will continue to be stayed until Loop AI complies with the Court Order to provide trade secret disclosure that comports with section 2019.210. (Order, Dkt. 331, 7:19-21: "discovery is stayed as to Plaintiff's CUTSA claim, and Plaintiff may proceed with such discovery upon filing a statement identifying with reasonable particularity the trade secrets at issue in this lawsuit.")

The actual trade secret descriptions Plaintiff offers are broadly stated and lack particularity. Plaintiff's Submission appears to identify trade secrets that are not, in fact, trade secrets at all based on the descriptions provided, or identifies trade secrets with such a lack of particularity that

Defendants or any expert in the field would be unable to compare and determine whether the alleged trade secret is in reality a trade secret or has been "appropriated" by Defendants. Plaintiff must provide enough detail about its alleged trade secrets to at least suggest that the alleged trade secrets might be legally protectable. Defendants should not be required to waste time guessing at the basis of Plaintiffs' trade secret claims, particularly at this junction in the case with less than 30 days left of discovery.

Loop has failed to comply with the Court's Order regarding trade secret identification, and either Loop must comply or face dismissal of its claim or other appropriate sanction.

**4) SANCTIONS ARE APPROPIATE**

Plaintiff has failed to comply with this Court's Order, and has in fact acted in defiance of the Order, even after being advised early on that vague descriptions of trade secrets are inadequate.[3] Plaintiff was advised by Judge Ryu to file a thorough and complete trade secret disclosure and was advised that "any future amendment to the disclosure will only be permitted upon a showing of good cause," [Dkt. 331, 7:7-10). It is apparent from the Submission itself that Loop simply decided that it need not to obey the Order, as evidenced by Loops' continuing reference to the pleadings and declarations on file as being the "identification" of the trade secret. Preclusive sanctions are within

[3] Early in this litigation in its Order Denying Plaintiff's Motion for Temporary Restraining Order the Honorable Judge Gilliam advised Plaintiff that the vague descriptions offered in the pleadings failed to meet specificity standards. (Dkt. 32 "Order") "On the record presented, Loop AI has not demonstrated that it is likely to meet this standard. While Loop AI asserts that it undertakes reasonable efforts to maintain the secrecy of its business information, it has not identified what business information was allegedly misappropriated, or submitted evidence that particular business information taken constitutes a trade secret under California law. See MAI Sys. Corp. v. Peak Computer, 991 F.2d 511, 522 (9th Cir. 1993) ("[A] plaintiff who seeks relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing that they exist."); see also Cal. Civ. Code § 3426.1(d) (defining a trade secret to include information that "[d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and . . . [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."). (Order, 4:2-12) "Instead, Loop AI's Application is premised on general, very broad assertions unsupported by specific evidence in the record. See Dkt. No. 9 at 9 ("The Company's confidential information, know-how, technology, business methods, strategies, business plans, funding plans, investments plans, business partnerships and marketing plans, contacts and related materials which the Company developed and used in connection with its business constitute trade secrets of the Company." (Order, 4:13-18)

the court's discretion. See *Apple Inc. v. Samsung Electronics Co.*, Case No. 5:11-cv-1846-LHK, 2012 U.S. Dist. LEXIS 62971, 2012 WL 1595784, at *3 (N.D. Cal. May 4, 2012); (citing *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001)) ("Sanctions may be warranted under Federal Rule of Civil Procedure 37(b)(2) for failure to obey a discovery order as long as the established issue bears a reasonable relationship to the subject of the discovery.").

When a discovery order has been violated, absent substantial justification or injustice, the court must order the offending party, its counsel or both to pay the opposing party's reasonable expenses under Fed. R. Civ. P. 37, and may sanction further. See Fed. R. Civ. P. 37(b)(2) (authorizing a range of sanctions, from terminating sanctions to mandatory expenses and attorney's fees for "fail[ure] to obey an order to provide or permit discovery[.]"); *Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*, Case No. 05-cv-1516-RSWL, 2007 U.S. Dist. LEXIS 72953, at *16 (C.D. Cal. Sept. 18, 2007) ("For the discovery system to function properly, the costs of resisting discovery must be sufficiently great so that the benefits to be gained from sharp or evasive discovery practices are outweighed by the sanctions imposed when those practices are discovered.")."Rule 37 sanctions are mandatory and must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent." (See, *Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*, Case No. 05-cv-1516-RSWL, 2007 U.S. Dist. LEXIS 72953, at *54 (C.D. Cal. Sept. 18, 2007); See also *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001)) ("Sanctions may be warranted under Federal Rule of Civil Procedure 37(b) (2) for failure to obey a discovery order as long as the established issue bears a reasonable relationship to the subject of the discovery.") (*Navellier*, 262 F.3d at 947; Fed. R. Civ. P. 37(b) (2) (A) ("(2) Sanctions Sought in the District Where the Action Is Pending. (A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery,

including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following: . . . (ii) prohibiting the disobedient party from supporting or opposing designated [14] claims or defenses, or from introducing designated matters in evidence"). The court may dismiss a plaintiff's suit as a sanction for violating a court order rule or order. FRCP 41(b); see *Deben v. U.S., 517 U.S. 820,827-28 (1996); Chimorro v. Puerto Rican Cars, Inc.*, 304 F.3d 1, 4 (1st Cir. 2002) (courts' inherent power to dismiss cases for disregard of judicial orders is reinforced by FRCP 41(b)).

At this juncture of the case, preclusion sanctions are appropriate as it is simply too late for Plaintiff to identify with particularity the trade secrets at issue in this case, particularly as Plaintiff has been aware of the obligation to do so since filing the First Amended Complaint, and promised to produce such identification in the First Amended Complaint itself. (See, FAC, ¶316 (Dkt.45)).

**CONCLUSION**

Plaintiff has willfully failed to comply with the TS Order, and instead of preparing a detailed trade secret submission, has once again focused on pleadings and declarations to "identify" trade secrets along with broad assertions lacking in particularity. Sanctions in the form of issue preclusion or dismissal are appropriate, at a minimum, until such time as Plaintiff provides a detailed trade secret disclosure as specified by the Court.

Dated: March 9, 2016

LAW OFFICES OF JANET BRAYER

By: /S/ Janet Brayer
JANET BRAYER
Attorneys for Defendant
IQSYSTEM, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of March 2016, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all counsel of record by operation of the Court's ECF system.

LAW OFFICES OF JANET BRAYER

By: /S/__Janet Brayer________________
JANET BRAYER
Attorneys for Defendant
IQSYSTEM, INC.