UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS INC, <br> Plaintiff, <br> v. <br> ANNA GATTI, et al., <br> Defendants. | Case No. 15-cv-00798-HSG (DMR) <br><br> **ORDER ON MOTION TO ENFORCE COURT ORDER RE PLAINTIFF'S TRADE SECRET DISCLOSURE** <br><br> Re: Dkt. No. 459 |

Defendant IQSystem, Inc. ("IQS") filed a motion to enforce the court's December 21, 2015 order directing Plaintiff Loop AI Labs Inc. to submit a particularized trade secret disclosure. Defendant Almawave USA, Inc. ("Almawave") joins in IQS's motion. [Docket Nos. 459 (Mot.), 472.] Plaintiff timely filed an opposition. [Docket No. 541 (Opp'n).] This matter is appropriate for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, IQS's motion is granted.

## I. BACKGROUND

Plaintiff is a startup that develops artificial intelligence technology. In this action, Plaintiff pursues a number of claims for relief, including a claim for misappropriation of trade secrets against all Defendants based upon their alleged violation of California Civil Code section 3426, California's Uniform Trade Secrets Act ("CUTSA"). In October 2015, IQS moved to compel Plaintiff to comply with California Code of Civil Procedure section 2019.210 by identifying its alleged trade secrets with particularity. IQS also asked the court to stay all discovery until Plaintiff provided a proper trade secret disclosure. [Docket No. 232.] Section 2019.210 provides that in any action alleging misappropriation of trade secrets under CUTSA, "before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity subject to any orders that may be appropriate under

Section 3426.5 of the Civil Code."[1] Cal. Civ. Proc. Code § 2019.210. Plaintiff opposed the motion on the ground that section 2019.210 is a state procedural rule that does not apply in federal court. Alternatively, Plaintiff argued that if section 2019.210 applies, then Plaintiff had already complied with the statute by providing a detailed explanation of the trade secrets at issue in its pleadings and other submissions. In support of this assertion, instead of submitting a trade secret disclosure document, Plaintiff identified descriptions of trade secrets contained in specific paragraphs in its amended complaint, second amended complaint, and three declarations filed in support of two April 2015 motions.

On December 21, 2015, the court granted in part and denied in part IQS's motion (Docket No. 331). *Loop AI Labs Inc. v. Gatti*, No. 15-cv-00798 HSG (DMR), 2015 WL 9269758 (N.D. Cal. Dec. 21, 2015). The court first concluded that section 2019.210 applies to CUTSA claims brought in federal court. *Id*. at *3. It then analyzed the sufficiency of Plaintiff's purported trade secret disclosure. *Id*. at *3-4. The court concluded that "Plaintiff's ersatz 'trade secret disclosure' [was] insufficient to meet the requirements of section 2019.210," and that its designation of certain paragraphs in previous court filings "[was] no substitute for specifically identifying and describing the actual claimed trade secrets in order 'to permit [Defendants] to ascertain at least the boundaries within which the secret[s] lie[].'" *Id*. at *4 (quoting *Brescia v. Angelin*, 172 Cal. App. 4th 133, 147 (2009)). The court ordered Plaintiff to file and serve a statement identifying the specific trade secrets at issue by a date certain. The court warned Plaintiff that its trade secret disclosure "must be thorough and complete," and that "[a]ny future amendment to the disclosure [would] only be permitted upon a showing of good cause." *Id*. (citing *Neothermia Corp. v. Rubicor Med., Inc.*, 345 F. Supp. 2d 1042, 1045 (N.D. Cal. 2004)). The court also denied IQS's motion to stay all discovery, but did stay discovery as to Plaintiff's CUTSA claim until such time that Plaintiff filed a statement "identifying with reasonable particularity the trade secrets at issue in this lawsuit." *Id*.

Plaintiff timely filed its trade secret disclosure on the public docket. [Docket No. 372 (Disclosure).] IQS challenges the sufficiency of Plaintiff's disclosure. It moves to enforce the

---

[1] California Civil Code section 3426.5 allows a court to enter appropriate orders to ensure the confidentiality of a plaintiff's trade secrets identified in accordance with section 2019.210.

1 court's December 21, 2015 order that Plaintiff provide a thorough and complete identification of

2 the trade secrets that are the basis of its CUTSA claim. It also asks the court to sanction Plaintiff

3 by precluding Plaintiff's introduction of evidence as to its CUTSA claim and/or dismissing

4 Plaintiff's suit for failing to specify the trade secrets at issue.

## II. DISCUSSION

### A. Legal Standards

California Civil Code section 3426.1 defines a trade secret as follows:

> "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d). "The *sine qua non* of a trade secret, then, is the plaintiff's possession of information of a type that can, at the possessor's option, be made known to others, or withheld from them, i.e., kept secret." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 220 (2010), *disapproved on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 210 (2011). As explained by the court in *Silvaco Data Systems*, trade secret law protects the right to maintain the confidentiality of facts, not ideas:

> A patent protects an *idea*, i.e., an invention, against appropriation by others. Trade secret law does not protect ideas as such. Indeed, a trade secret may consist of something we would not ordinarily consider an *idea* (a conceptual datum) at all, but more a *fact* (an empirical datum), such as a customer's preferences, or the location of a mineral deposit. In either case, the trade secret is not the idea or fact itself, but *information* tending to communicate (disclose) the idea or fact to another. Trade secret law, in short, protects only *the right to control the dissemination of information*.
>
> It is critical to any CUTSA cause of action—and any defense—that the information claimed to have been misappropriated be clearly identified.

*Id*. at 220-21 (emphases in original).

Under section 2019.210, a plaintiff is required "to identify or designate the trade secrets at

United States District Court
Northern District of California

issue with 'sufficient particularity' to limit the permissible scope of discovery by distinguishing the trade secrets 'from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade.'" *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835 (2005) (quoting *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998) (citation omitted)). Review of the case law cited in the moving papers, as well as the court's own research, makes clear that there is no bright-line rule governing the level of particularity required by section 2019.210. *See Advanced Modular*, 132 Cal. App. 4th at 835 (noting the lack of clear authority defining "reasonable particularity," and observing that "the law is purposely vague in some areas so that there is 'play in the joints.'" (quoting *Locke v. Davey*, 540 U.S. 712, 718 (2004)). However, courts generally agree that in order to satisfy section 2019.210, a party alleging misappropriation need not "define every minute detail of its claimed trade secret at the outset of the litigation," but nevertheless "must make some showing that is reasonable, i.e., fair, proper, just and rational." *Advanced Modular*, 132 Cal. App. 4th at 835-36; *see, e.g.*, *Lilith Games (Shanghai) Co. v. uCool, Inc.*, No. 15-CV-01267-SC, 2015 WL 4149066, at *3-4 (N.D. Cal. July 9, 2015) (discussing *Advanced Modular*). "What is required is not absolute precision, but 'reasonable particularity[,]'" the degree of which "will differ, depending on the alleged trade secrets at issue in each case." *Advanced Modular*, 132 Cal. App. 4th at 836. For example, as noted in *Advanced Modular*, where alleged trade secrets "consist of incremental variations on, or advances in the state of the art in a highly specialized technical field, a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field." *Id*. at 836; *see also Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333, 1350 (2009) (applying "more exacting level of particularity" standard in trade secrets case involving protein-based therapeutics).

"'[R]easonable particularity' should . . . be understood in light of the purpose of section 2019.210," which is as follows:

> First, [section 2019.210] promotes well-investigated claims and dissuades the filing of meritless trade secret complaints. Second, it prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets. Third, the rule assists the court in framing the appropriate scope of discovery and in determining

4

> whether plaintiff's discovery requests fall within that scope. Fourth, it enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation.

*Lilith Games*, 2015 WL 4149066, at *4 (quoting *Advanced Modular*, 132 Cal. App. 4th at 833-34 (quoting *Comput. Econs., Inc. v. Gartner Grp. Inc.*, 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999))).

### B. Plaintiff's Trade Secret Disclosure is Insufficient

Plaintiff's trade secret disclosure consists of a publicly-filed document listing 55 paragraphs of purported trade secrets. It falls far short of the "reasonable particularity" standard. In large part, it reads like an inventory of categories of Plaintiff's scientific or strategic business information. Rather than separately discuss each of the 55 paragraphs, the court will describe the basic problems with Plaintiff's disclosure, illustrate each problem with examples, and list other paragraphs with similar deficiencies.

As a preliminary matter, the fact that Plaintiff publicly filed its trade secret disclosure belies the proposition that it contains information specific enough to be considered "confidential" trade secrets. Section 2019.210 does not expressly require a plaintiff alleging a CUTSA claim to file the trade secret disclosure under seal. However, the statute contemplates the need for such a procedure by providing that "a party alleging . . . misappropriation shall identify the trade secret with reasonable particularity subject to any orders that may be appropriate under Section 3426.5 of the Civil Code." Cal. Civ. Proc. Code § 2019.210. California Civil Code section 3426.5 in turn requires a court to "preserve the secrecy of an alleged trade secret by reasonable means," including granting protective orders, holding in camera hearings, and sealing records. Cal. Civ. Code § 3426.5. In cases in which courts have addressed the sufficiency of a plaintiff's identification of alleged trade secrets, the parties have filed the disclosures under seal, and courts discuss the secrets in either "purposefully vague" terms or redact portions of the opinions. *See, e.g., Advanced Modular*, 132 Cal. App. 4th at 831 n.2 ("[t]o avoid disclosure of the parties' confidential information we are, in this publicly available opinion, purposefully vague in our descriptions of the claimed trade secrets . . ."); *Perlan*, 178 Cal. App. 4th at 1338 n.3 (noting that the court would "exercise caution in [its] recitation of facts" because the trade secret statement at issue was designated confidential and sealed at trial and on appeal); *Jobscience, Inc. v.*

*CVPartners, Inc.*, No. C 13-04519 WHA, 2014 WL 1724763, at *3-4 (N.D. Cal. May 1, 2014) (redacting specifics of plaintiff's claimed trade secrets); *see also Soc. Apps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 WL 2203063, at *5 (N.D. Cal. June 14, 2012) (finding trade secret disclosure insufficient and ordering plaintiff to serve an amended disclosure, noting "[t]he Court is mindful that an identification of the trade secrets at issue might require a protective order or sealing order . . . [h]owever, the need to seek further protective or sealing orders does not excuse [plaintiff's] failure to identify the trade secrets."). While the court does not hold that Plaintiff's disclosure is *per se* insufficient because it was publicly filed, the fact that the disclosure is public is a telling indication that it does not satisfy the "reasonable particularity" standard.[2]

The court also notes that in some cases, especially those involving technical or scientific information such as this one, plaintiffs have supported their trade secret disclosures with declarations by expert witnesses which attempt to distinguish the alleged trade secrets from information already known in the field. *See, e.g., Advanced Modular*, 132 Cal. App. 4th at 836; *Lilith Games*, 2015 WL 4149066, at *5; *see also Phoenix Techs., Ltd. v. DeviceVM, Inc.*, No. 09-4697-EDL, 2010 WL 8590525, at *4 (N.D. Cal. Mar. 17, 2010) (discussing plaintiff's expert declaration submitted with supplemental briefing in which expert rebutted assertions by defense expert that claimed trade secrets were not reasonably particular). Plaintiffs also submit documentation supporting their disclosures. *See, e.g., Phoenix Techs.*, 2010 WL 8590525, at *1 (noting plaintiff attached "almost one thousand pages of supporting documentation" to amended identification of trade secrets). Neither section 2019.210 nor the case law requires the submission of expert declarations or documentation, *see Brescia*, 172 Cal. App. 4th at 148, but it is noteworthy that Plaintiff failed to submit any support at all for its publicly-filed disclosure.

Turning to Plaintiff's disclosure, problems are evident from the outset. The first two

---

[2] In one article exploring the "ubiquitous" problem of litigating disputes related to identification of trade secrets, the authors propose a rule that "if the list of alleged secrets is not marked as a confidential document or could have been listed verbatim in the complaint without actually disclosing the plaintiff's alleged trade secrets, the list is prima facie insufficient," for "[n]o plaintiff making a good faith identification would disclose its alleged secrets in a non-confidential document." Charles Tait Graves & Brian D. Range, *Identification of Trade Secret Claims in Litigation: Solutions for a Ubiquitous Dispute*, 5 Nw. J. Tech & Intell. Prop. 68, 91 (2006).

paragraphs contain "catchall" descriptions that refer to allegations made in pleadings and other court filings. The first paragraph of the disclosure informs the reader that Plaintiff's trade secrets include "[a]ll information and documents identified by Plaintiff as containing its trade secrets at issue in this case in response to discovery propounded by or sought by" any defendant, as well as "the information and documents identified in Plaintiff['s] . . . First Amended Complaint and Second Amended Complaint." Disclosure at ¶ 1. In the next paragraph, Plaintiff identifies "[a]ll information and documents identified with particularity in Plaintiff's documents produced to the Defendants at Bates Numbers Loop-00019679 to Loop-00020223." *Id*. at ¶ 2. As to the first category, the court has already rejected Plaintiff's prior attempt to rely on the pleadings and other filings to satisfy its trade secret disclosure obligations. Regarding the second category, IQS asserts (and Plaintiff does not dispute) that the specified bates range identifies two declarations previously publicly filed in this litigation. Plaintiff already tried to argue that it had satisfied its obligations under section 2019.210 by citing to paragraphs in these declarations. The court was not persuaded. *See Loop*, 2015 WL 9269758, at *3 n.2. Plaintiff's attempt to meet its disclosure obligation by pointing to allegations in its pleadings and other court filings was insufficient the first time, and is no more sufficient now.

Plaintiff divides the remaining 53 paragraphs of its trade secret disclosure into three groups: technical data, business development/marketing data, and financial/operational data. The vast majority of Plaintiff's disclosures consist of paragraphs in which Plaintiff simply lists categories of alleged trade secrets in broad terms. Paragraph 4 is representative of the level of specificity Plaintiff uses when describing categories of claimed trade secrets:

> Application of Plaintiff's technology to the analysis of big data generally owned by medium to large companies and governmental entities (including the target customers and partners from among those types of entities) with large volumes of structured and unstructured data from multiple sources and in need of quickly performing analyses of the data and obtain actionable inputs or results that can quickly be used for a variety of applications in various fields including customer relationship management, customer experience needs.

Disclosure at ¶ 4. This does not constitute a "particularized" disclosure of trade secrets, but is simply a listing of concepts that Plaintiff asserts constitute its trade secret information. *See, e.g.,*

7

Disclosure at ¶¶ 3, 6-8, 10-30, 32-42, 45-50, 54; *see Soc. Apps*, 2012 WL 2203063, at *5 (finding insufficient disclosure in which plaintiff "only offered the most general concepts to describe what it believes is its trade secret information"). Similarly, in paragraph 6, Plaintiff identifies "Plaintiff's confidential information regarding the generation of semantics from structured and unstructured text data." Disclosure at ¶ 6. This general category of information merely echoes Plaintiff's description of its technology as pleaded in the second amended complaint. [*See* Docket No. 210 (SAC) at ¶ 138 ("similar to the main thrust of [Plaintiff's] technology: generating semantics from unstructured text data").] Plaintiff's use of technical language does not mask the fact that its descriptions fail to identify any "confidential information" described therein. *See, e.g., Perlan*, 178 Cal. App. 4th at 1339 ("[d]espite the highly technical language used, it is apparent that this description does not provide specific identifications of the peptides or reagents used in the process.").

Rather than a "reasonably particular" list of trade secrets, Plaintiff's disclosure resembles an effort to categorize every piece of information or know-how that could potentially have value to the company. For example, paragraph 3 lists unnamed experiments, test results, research, analysis, evaluations, applications, and design concepts, among other things, as examples of Plaintiff's "highly confidential technical data." Disclosure at ¶ 3. The disclosure is devoid of any details about the claimed experiments, test results, research, etc. Paragraph 19 is similarly vague and unspecific: "Plaintiff's confidential modeling and discussions regarding its development and experimentation of supervised and unsupervised artificial intelligence technology." *Id*. at ¶ 19. Plaintiff's technique of listing general concepts or categories of information is plainly insufficient; Defendants cannot fairly be expected to rebut Plaintiff's trade secrets claim without a reasonably concrete definition of the purported secrets. *See, e.g., Jobscience*, 2014 WL 1724763, at *3-4 (N.D. Cal. May 1, 2014) (dismissing trade secrets claim based on inadequate disclosure, noting "Defendants cannot reasonably prepare [their] defenses and search for art in the field if the boundaries of the trade secret are so undetermined."); *Imax*, 152 F.3d at 1167 ("CTI could not be expected to prepare its rebuttal to Imax's trade secrets claim without some concrete identification of exactly which 'dimensions and tolerances' Imax alleged were incorporated into CTI's own

projector system."). In the same vein, a fact finder will not be able to determine whether the information in Plaintiff's disclosure qualifies as trade secrets, including whether they are in fact secret, if the parameters of the secrets remain unclear.

In many of the paragraphs, particularly those classified under the "Business Development/Marketing Data" and "Financial/Operational Data" headings, Plaintiff identifies categories of information such as "actual and prospective investors and partners," (¶ 34), "key contact information . . . at a large Japanese technology company," (¶ 36), "key contacts at a major telephone company," (¶ 38), "confidential target partner, client, investor, supplier, employee, consultant, advisor information," (¶ 42), and "key service providers" (¶ 46). *See also* Disclosure at ¶¶ 17, 37, 39, 45-47, 54. Potential investors, clients, suppliers, or contacts theoretically could constitute protectable facts. However, as noted above, Plaintiff's disclosure was unaccompanied by any supporting documentation, and there is no indication that Plaintiffs identified these claimed trade secrets with more specificity. Without more, Defendants are left to guess. Who exactly are the secret companies or individuals? Are the names easily identifiable, or must Defendants engage in mindreading to determine which of them constitute trade secrets? What prevented Plaintiff from naming them in a sealed document? Plaintiff's categorical descriptions render it impossible for Defendants to conduct public domain or other research to challenge the alleged secrecy of the information at issue. Instead, Defendants are left to guess at the specifics. *See Brescia*, 172 Cal. App. 4th at 147 ("the burden on the trade secret claimant is to provide a level of detail adequate to distinguish the subject information from general knowledge or knowledge of skilled persons in the field. The defendant may then use that level of detail to determine the limits of the trade secret by investigating whether the information disclosed is within the public domain . . . or to develop . . . defenses.").

Many of the paragraphs in Plaintiff's disclosures contain "catchall" wording such as "including" when describing the trade secrets. For example, paragraph 33 states, "Plaintiff's confidential information, *including* regarding problems experienced with certain tests . . ." (emphasis added). Disclosure at ¶ 33; *see also id*. at ¶¶ 13-14, 18, 21-22, 33-35, 37, 45, 49-50, 55. The Ninth Circuit has rejected the use of "catchall" language, holding that such language is

insufficiently specific "because it does not *clearly refer* to tangible trade secret material." *Imax*, 152 F.3d at 1167 (emphasis in original) (determining that the phrase "including every dimension and tolerance that defines or reflects that design" was an insufficient disclosure).

Several paragraphs read more like requests for production of documents rather than trade secret disclosures. For example, paragraphs 51 and 52 identify "[a]ll information stored in Plaintiff's Apple MacBook Air computer . . . assigned to Anna Gatti in 2012 for use in conjunction with Plaintiff's business" and "[a]ll information stored in Plaintiff's data accounts used by Gatti while she purported to work as Plaintiff's CEO and President." Disclosure at ¶¶ 51, 52. Similarly, in another paragraph, Plaintiff identifies, "Plaintiff's information sent to Defendant Gatti's email address while she was working for Plaintiff, which Gatti improperly forwarded to her personal email account . . ." *Id*. at ¶ 53; *see also id*. at ¶¶ 43, 44. These disclosures are so vague and unspecific as to constitute no disclosure at all since Defendants cannot "ascertain at least the boundaries within which the secret[s] lie[]." *Comp. Econs.*, 50 F. Supp. 2d at 984 (citation omitted).

In several paragraphs, Plaintiff identifies categories of information, and states that the specifics have been disclosed to Defendants in discovery and/or identifies the Bates numbers of documents which it apparently contends contain the secret information. *See, e.g*., Disclosure at ¶¶ 3, 5, 9, 16-17, 21-22, 26, 31-32, 37, 40, 47-48. While on their face these paragraphs appear to be more specific than those described above, they also do not satisfy the requirement of "reasonable particularity." This is because simply stating that specifics have been "provided in discovery" does not identify *where* in the discovery the alleged trade secret can be found. For example, paragraph 48 lists, "Plaintiff's confidential contracts and agreements setting forth offer letters and employment agreements and confidentiality agreements with Anna Gatti, Dario Vignudelli and DB as discovered to date." *Id*. at ¶ 48. However, Plaintiff does not specify which contracts and agreements contain the alleged trade secrets, nor does it describe where the contracts and agreements can be found in Plaintiff's discovery responses or productions. Moreover, identifying documents alone would not be an adequate substitute for detailed identification of the trade secrets therein, since review of the documents may not inform Defendants as to what precisely Plaintiff is

asserting is a trade secret. As a further example, paragraph 31 lists, "Plaintiff's confidential patent application provided to Gatti on May 29, 2014, as set forth at Loop-00020163-66. The Plaintiff's patent application that Gatti obtained at the time, purporting to be acting as Plaintiff's CEO was confidential and remained confidential for an extended period of time through 2015." *Id*. at ¶ 31. This paragraph is confusing and does not clearly identify the claimed trade secret. To the extent that Plaintiff is asserting that its patent application is a trade secret, it does not specify which portion of the application describes the claimed secret.[3] *See, e.g., Myrio Corp. v. Minerva Network, Inc*., No. C 00-20996 RMW (PVT), 2001 U.S. Dist. LEXIS 10461, at *3 (N.D. Cal. Apr. 10, 2001) (ordering plaintiff to describe all trade secrets "in narrative form, rather than by cross-reference to other trade secrets or documents," and stating, "[i]f Plaintiff references a document as setting forth one or more trade secrets, it shall specify precisely which portions of the document describes the trade secret[s].").

In its opposition, Plaintiff argues that its trade secret disclosure and "various discovery served on the Defendants" satisfy its section 2019.210 obligations, but offers no support for its position. *See* Opp'n at 2. The court finds Plaintiff's contention without merit. Notably, Plaintiff does not specifically identify any of its discovery responses that purportedly identified its trade secrets.[4] Plaintiff also asserts that the purpose of section 2019.210 "is to define the scope of discovery, before discovery begins, in a case filed in State court, where only trade secrets are at issue." Opp'n at 2. It contends that IQS's motion is "simply a red herring, particularly since discovery in this case has now closed." *Id*. at 3. This argument, too, lacks merit, given that the court has already held that section 2019.210 applies in this action. Moreover, the purpose of

---

[3] The court notes that in several paragraphs Plaintiff appears to refer to patent applications. *See, e.g*., Disclosure at ¶¶ 5, 7, 9, 13. However, "[i]t is well established that the disclosure of a trade secret in a patent places the information comprising the secret into the public domain." *Forcier v. Microsoft Corp*., 123 F. Supp. 2d 520, 528 (N.D. Cal. 2000) (citation omitted).

[4] In its reply, IQS contends that Defendants propounded two interrogatories asking Plaintiff to identify its trade secrets. Brayer Decl., Apr. 6, 2016, ¶¶ 3, 4. Plaintiff did not respond to the first interrogatory. As to the second, Plaintiff responded by identifying pleadings and declarations, and stated, "Loop AI will produce a supplemental list of information covered by this Interrogatory in accordance with the applicable rules governing the identification of confidential information or trade secrets." *Id*. at Ex. 2.

section 2019.210 goes well beyond shaping discovery. It also "promotes well-investigated claims and dissuades the filing of meritless trade secret complaints . . . [and] enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation." *Comp. Econs.*, 50 F. Supp. 2d at 985.

Finally, Plaintiff responds by complaining that IQS has refused to respond to Plaintiff's discovery. This argument is irrelevant, since Plaintiff does not explain how it needs discovery from Defendants in order to identify with particularity its own trade secrets that it has put at issue in this case. *See Comp. Econs.*, 50 F. Supp. 2d at 985 (section 2019.210 "prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets . . . '[t]he purpose [of CCP § 2019(d)] is to prevent plaintiff from conducting 'fishing expeditions' into competitors' business files by unfounded claims of trade secret misappropriation.'" (citation omitted)).

In sum, the court finds that Plaintiff has failed to comply with the court's December 21, 2015 order to provide a "thorough and complete" identification of the trade secrets at issue in this litigation in accordance with section 2019.210. The court notes that in its December 21, 2015 order, it warned Plaintiff that "[a]ny future amendment to [its] disclosure [would] only be permitted upon a showing of good cause." *Loop*, 2015 WL 9269758, at *4 (citation omitted). Plaintiff has not sought leave to amend its trade secret disclosure, nor does its failure to comply with the court's order constitute good cause to amend.

**C.      Sanctions**

Although not entirely clear, it appears that IQS seeks preclusive sanctions under Rule 37(b)(2)(A) barring Plaintiff from introducing evidence related to its CUTSA claim, or in the alternative, dismissal of all of Plaintiff's claims under Rule 41(b) for its failure to obey the court's December 21, 2015 order. Mot. at 11.[5]

Plaintiff's main response to IQS's request for sanctions is its assertion that it did in fact

---

[5] The reason this is unclear is because IQS moves for the Rule 37(b)(2)(A) sanctions described above, but also requests an order enforcing the December 21, 2015 order to provide a thorough and complete trade secret disclosure. Mot. at 9.

12

comply with the December 21, 2015 order by filing an adequate trade secret disclosure.[6]  As discussed above, the court finds that Plaintiff did not comply with that order.  Rule 37(b)(2)(A) provides that "[i]f a party . . . fails to obey an order to provide or permit discovery," the court may "prohibit[] the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."  Fed. R. Civ. P. 37(b)(2)(A)(ii).  Defendants' motions for summary judgment currently are pending before the Honorable Haywood S. Gilliam.  For that reason, and after consultation with Judge Gilliam, the court defers to the trial judge the ramifications of Plaintiff's failure to comply with the court's December 21, 2015 order to provide an adequate section 2019.210 trade secret disclosure.

### III. CONCLUSION

For the foregoing reasons, IQS's motion is granted.  Plaintiff's trade secret disclosure is insufficient, and violated the undersigned's December 21, 2015 order.  The issue of sanctions for Plaintiff's failure to comply with the court's December 21, 2015 order is deferred to Judge Gilliam.

**IT IS SO ORDERED.**

Dated: July 6, 2016



_____
Donna M. Ryu
United States Magistrate Judge

---

[6] Plaintiff also argues that IQS failed to comply with Local Rule 7-8, which governs the form and timing of motions for sanctions.  Opp'n at 2.  However, Plaintiff does not identify the perceived failure, nor does Plaintiff explain why it believes Local Rule 7-8 applies in this instance.

13