**VENABLE LLP**
Thomas E. Wallerstein (SBN 232086)
Kimberly Culp (SBN 238839)
Email: twallerstein@venable.com
        kculp@venable.com
505 Montgomery Street, Suite 1400
San Francisco, CA 94111
Telephone:   415.653.3750
Facsimile:   415.653.3755

Attorneys for Defendants Almaviva S.p.A.,
Almawave S.r.l., and Almawave USA, Inc.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> ANNA GATTI, an individual, ALMAVIVA S.p.A., an Italian corporation, ALMAWAVE S.r.l., an Italian corporation, ALMAWAVE USA, INC., a California corporation, IQSYSTEM LLC, a California limited liability company, IQSYSTEM Inc., a Delaware corporation, <br><br> Defendants. | CASE NO.: 3:15-cv-00798-HSG-DMR <br><br> Hon. Haywood S. Gilliam <br><br><br> **DEFENDANTS ALMAVIVA S.P.A., ALMAWAVE S.R.L., ALMAWAVE USA, INC.'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11** <br><br> <u>Hearing</u>: <br> Date:  September 1, 2016 <br> Time:  2:00 p.m. <br> Department: Courtroom 10 – 19th Floor |

*VENABLE LLP*
*505 MONTGOMERY STREET, SUITE 1400*
*SAN FRANCISCO, CA 94111*
*415-653-3750*

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

**NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT defendants Almaviva S.p.A., Almawave S.r.l., (together the "Italian Almawave Defendants") and Almawave USA, Inc. ("Almawave USA") (jointly with the Italian Almawave Defendants, either the "Almawave Defendants" or just "Almawave") will and hereby do move, pursuant to Federal Rules of Civil Procedure 11, to strike certain allegations in the Second Amended Complaint ("SAC") filed by plaintiff Loop AI Labs, Inc. ("Loop") on September 23, 2015 as detailed below.  Almawave further will and hereby does move for monetary sanctions in the amount of $1,250,000 to be imposed, jointly and severally, on Loop, its counsel Valeria Healy and Daniel Weinberg, and their law firms.  This Court may set a hearing on this motion before the Honorable Haywood S. Gilliam, United States District Court Judge, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 10; 19th Floor.

The motion is brought on the grounds that Loop filed and its attorneys signed and maintained the Second Amended Complaint that contains allegations with respect to the Almawave Defendants that are factually baseless and frivolous, and that Loop filed and its attorneys signed and maintained the Second Amended Complaint before conducting a reasonable and competent inquiry.

This motion is based on the this notice of motion and motion, the following memorandum of points and authorities, the declaration of Thomas E. Wallerstein ("Wallerstein Decl.")., the proposed order filed herewith, pleadings and other papers on file in this matter, the reply Almawave intends to file, any material of which this Court takes judicial notice, and any further argument the Court might allow.

The portions of the SAC that Almawave requests the Court strike are:

1.     Paragraph 17 in its entirety.

2.     Paragraph 21 in its entirety.

3.     Paragraph 22 in its entirety.

4.     Paragraph 29 at 9:28: "and participation of Almaviva"

1

1

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

5.      Paragraph 30 at 10:12-13: "The Almaviva Defendants would profit by being able…" through the end of the paragraph.

6.      Paragraph 45 at 14:15-19: "Almaviva IT sent their highest-level executives repeatedly to San Francisco to oversee…" through the end of the paragraph.

7.      Paragraph 46 in its entirety.

8.      Paragraph 47 at 15:20-26: "Almawave USA was simply a shell corporation used as a front for the Almaviva and the other Defendants…" through the end of the paragraph.

9.      Paragraph 51 in its entirety.

10.    Paragraph 54 in its entirety.

11.    Paragraph 66 in its entirety.

12.    Paragraph 70 at 21:1-2: "Defendants, the Almaviva Defendants acquiesced to, were or should have been aware, and were willfully blind to the wrongdoing."

13.    Paragraph 71 in its entirety.

14.    Paragraph 72 at 21:17: "to consider, approve, and fund the activities alleged herein."

15.    Paragraph 72 at 21:23-24: "and other terms pursuant to which the Defendants would jointly carry out the wrongful activities against the Company;"

16.    Paragraph 72 at 21:25-27: "IT directly engaged with Gatti and the IQSystem Defendants in conduct, discussions and negotiations to further the activities alleged herein;"

17.    Paragraph 72 at 22:1-2: "systematically directed, participated and controlled on behalf of Almawave IT the wrongful activities alleged herein,"

18.    Paragraph 72 at 22:6-9: "Valeria Sandei, top level officer of all of the Almaviva Defendants, repeatedly and systematically directed, participated and controlled on behalf of all three of the Almaviva Defendants, the wrongful activities alleged herein being perpetrated against the Company,"

19.     Paragraph 72 at 22:21-22: "who was intimately involved in and participated in the wrongdoing described in the Complaint"

20.     Paragraph 72 at 22:25-26: "Felice, was communicating from Italy to San Francisco in furtherance of the wrongdoing described in the complaint."

21.     Paragraph 72 at 23:13-14: "in furtherance of the activities alleged herein, including the funding of Defendant Gatti and the IQSystem Defendants;"

22.     Paragraph 115 at 33:3-6: "Company with ready access to confidential technological information, business contacts, and marketing strategy…" through the end of the paragraph.

23.     Paragraph 117 at 33:17-19: "The Almaviva Defendants also agreed that the IQSystem defendants…" through the end of the paragraph.

24.     Paragraph 118 in its entirety.

25.     Paragraph 119 at 33:26-34:1: "The Almaviva Defendants agreed to participate in this scheme because through Gatti they could immediately gain access to highly proprietary information, technology and strategies, investors, and potential business partners by simply paying a tiny fraction of what they would have had to pay to even be taken into consideration as a legitimate investor.

26.     Paragraph 120 in its entirety.

27.     Paragraph 121 in its entirety.

28.     Paragraph 122 at 34:23-24: "In fact, as Gatti failed to inform the Company, she was already working with the Almaviva Defendants to steal from the Company."

29.     Paragraph 125 at 35:19-21: "With the aid and assistance of the Almaviva Defendants, Gatti continued perpetrating her unlawful scheme, by sending fraudulent communications through the wires to the Company's other executives and key employees."

30.     Paragraph 131 at 37:28-38:1: "incompetence. It was intentional wrongdoing, part and parcel of the Defendants' unlawful scheme against the Company."

31.     Paragraph 134 in its entirety.

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

3

32.   Paragraph 135 at 38:16: "the Almaviva Defendants"

33.   Paragraph 136 in its entirety.

34.   Paragraph 137 in its entirety.

35.   Paragraph 139 in its entirety.

36.   Paragraph 140 in its entirety.

37.   Paragraph 141 at 40:18-21: "Rather, this technology, encompasses the Company's confidential information and trade secrets, more fully described below, which Gatti improperly acquired, and continued to solicit, form the Company, while she was secretly working for the Almaviva Defendants."

38.   Paragraph 146 in its entirety.

39.   Paragraph 148 in its entirety.

40.   Paragraph 150 in its entirety.

41.   Paragraph 155 in its entirety.

42.   Paragraph 157 in its entirety.

43.   Paragraph 158 in its entirety.

44.   Paragraph 162 in its entirety.

45.   Paragraph 163 in its entirety.

46.   Paragraph 164 in its entirety.

47.   Paragraph 165 in its entirety.

48.   Paragraph 166 in its entirety.

49.   Paragraph 167 in its entirety.

50.   Paragraph 168 in its entirety.

51.   Paragraph 169 in its entirety.

52.   Paragraph 170 in its entirety.

53.   Paragraph 171 in its entirety.

54.   Paragraph 172 in its entirety.

55.   Paragraph 173 in its entirety.

56.   Paragraph 174 in its entirety.

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

1    57.    Paragraph 175 in its entirety.

2    58.    Paragraph 176 in its entirety.

3    59.    Paragraph 177 in its entirety.

4    60.    Paragraph 178 in its entirety.

5    61.    Paragraph 179 in its entirety.

6    62.    Paragraph 180 in its entirety.

7    63.    Paragraph 181 in its entirety.

8    64.    Paragraph 182 in its entirety.

9    65.    Paragraph 183 in its entirety.

10   66.    Paragraph 184 in its entirety.

11   67.    Paragraph 185 in its entirety.

12   68.    Paragraph 186 in its entirety.

13   69.    Paragraph 187 in its entirety.

14   70.    Paragraph 188 in its entirety.

15   71.    Paragraph 190 in its entirety.

16   72.    Paragraph 191 in its entirety.

17   73.    Paragraph 192 in its entirety.

18   74.    Paragraph 193 in its entirety.

19   75.    Paragraph 194 in its entirety.

20   76.    Paragraph 195 in its entirety.

21   77.    Paragraph 196 in its entirety.

22   78.    Paragraph 197 in its entirety.

23   79.    Paragraph 198 in its entirety.

24   80.    Paragraph 199 in its entirety.

25   81.    Paragraph 201 at 59:23-24: "who were all acting within the scope of their

26          employment for the Almaviva Defendants."

27   82.    Paragraph 201 at 59:25: "and agent"

28

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

ALMAWAVE USA, INC.'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11
Case No.: 3-15-cv-00798-HSG-DMR

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

83.   Paragraph 202 at 60:3-6: "Each of the Almaviva Defendants had the ability to, and did, direct, control and supervise the activities of Gatti and the IQSystem Defendants as they were committing the wrongdoing alleged herein."

84.   Paragraph 205 in its entirety.

85.   Paragraph 220 at 65:1-3: "and the Almaviva Defendants, through Ms. Sandei as well as other executives of the Almaviva Defendants"

86.   Paragraph 220 at 65:7-8: "and the Almaviva Defendants"

87.   Paragraph 222 in its entirety.

88.   Paragraph 230 in its entirety.

89.   Paragraph 233 at 70:13-15: "Misappropriating for their own benefit, and that of the Almaviva Defendants and the other Defendants, the confidential and proprietary information of the Company;

90.   Paragraph 238 in its entirety.

91.   Paragraph 242 in its entirety.

92.   Paragraph 247 in its entirety.

93.   Paragraph 249 in its entirety.

94.   Paragraph 250 in its entirety.

95.   Paragraph 251 in its entirety.

96.   Paragraph 275 at 81:3-4: "and as an agent of the other Defendants, and within the scope of her employment and agency for the Defendants,"

97.   Paragraph 275 at 81:8-9: "and as an agent of the other Defendants, and within the scope of her employment and agency for the Defendants"

98.   Paragraph 275 at 81:17-18: "and as an agent of the Almaviva Defendants, and within the scope of her employment and agency for these Defendants,"

99.   Paragraph 275 at 81:19-20: "and then acting at the direction and control of the Almaviva Defendants fraudulently"

100.  Paragraph 275 at 81:24-25: "and as an agent of the other Defendants, and within the scope of her employment and agency for these Defendants,"

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

101. Paragraph 275 at 82:5-6: "for the benefit of the Almaviva Defendants;"

102. Paragraph 275 at 82:7-8: "and as an agent of the other Defendants, and within the scope of her employment and agency for these Defendants,"

103. Paragraph 275 at 82:15-16: "and as an agent of the other Defendants, and within the scope of her employment and agency for these Defendants,"

104. Paragraph 275 at 82:21-22: "and as an agent of the other Defendants, and within the scope of her employment and agency for these Defendants,"

105. Paragraph 275 at 83:2-3: "and as an agent of the other Defendants, and within the scope of her employment and agency for these Defendants,"

106. Paragraph 275 at 83:7-8: "and as an agent of the other Defendants,"

107. Paragraph 281 in its entirety.

108. Paragraph 282 in its entirety.

109. Paragraph 319 in its entirety.

110. Paragraph 320 at 91:2-3: "and the other Defendants"

111. Paragraph 320 at 92:9: "in their capacity as employees and agents of the Almaviva Defendants,"

112. Paragraph 320 at 92:16: "Gatti and the Almaviva Defendants"

113. Paragraph 320 at 92:18-21: "Gatti's scuttling of Almaviva IT's attempt to invest in the Company by preventing that investment and converting it to a highly paid position for herself at Almawave USA in exchange for the Company's confidential and trade secret information;"

114. Paragraph 320 at 92:22: "and the other Defendants"

115. Paragraph 324 at 93:4: "including, but not limited to, DV,"

116. Paragraph 325 in its entirety.

117. Paragraph 329 at 93:26: "and the Almaviva Defendants had actual knowledge of these contractual relationships."

118. Paragraph 331 at 94:8: "The Almaviva and"

119. Paragraph 332 in its entirety.

7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

120.  Paragraph 333 in its entirety.

121.  Paragraph 335 in its entirety.

122.  Paragraph 339 in its entirety.

123.  Paragraph 340 in its entirety.

124.  Paragraph 341 in its entirety.

125.  Paragraph 342 in its entirety.

126.  Paragraph 343 in its entirety.

127.  Paragraph 344 in its entirety.

128.  Paragraph 363 in its entirety.

129.  Paragraph 375 in its entirety.

130.  Paragraph 376 in its entirety.

131.  Paragraph 377 in its entirety.

132.  Paragraph 378 in its entirety.

133.  Paragraph 380 in its entirety.

134.  Paragraph 381 in its entirety.

135.  Paragraph 382 in its entirety.

136.  Paragraph 383 in its entirety.

137.  Paragraph 384 in its entirety.

138.  Paragraph 385 at 105:11: "and Almawave S.r.l."

139.  Paragraph 386 in its entirety.

140.  Paragraph 387 in its entirety.

141.  Paragraph 388 in its entirety.

142.  Paragraph 390 in its entirety.

143.  Paragraph 392 in its entirety.

144.  Paragraph 398 in its entirety.

145.  Paragraph 385 at 108:23: "and Almaviva Defendants"

146.  Paragraph 385 at 108:26: "Almaviva and"

147.  Paragraph 406 at 109:6: "acted in concert"

8

1    148.    Paragraph 411 in its entirety.

2    149.    Paragraph 412 in its entirety.

3    150.    Paragraph 413 in its entirety.

4    151.    Paragraph 414 in its entirety.

5

6    Dated: July 7, 2016                          VENABLE LLP

7

8                                          By:    /s/ Thomas E. Wallerstein
                                                  Thomas E. Wallerstein (SBN 232086)
9                                                 Kimberly Culp (SBN 238839)
                                                  505 Montgomery Street, Suite 1400
10                                                San Francisco, CA 94111

11                                                *Attorneys for Almaviva S.p.A.,*
                                                  *Almawave S.r.l., and Almawave USA, Inc.*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

ALLEGATIONS AND EVIDENCE ..........................................................................2

    Loop Initially Fails To Allege Wrongdoing By Almawave ..............................2

    Loop Receives Sworn Evidence Contradicting Alleged Wrongdoing By
        Almawave .................................................................................................2

    Almawave Moves To Dismiss Loop's Complaint Based On Loop's Failure To
        Allege Wrongdoing By Almawave ..........................................................3

    Loop Receives More Sworn Evidence Contradicting Alleged Wrongdoing By
        Almawave .................................................................................................4

    Loop Files A First Amended Complaint With New Allegations Of Wrongdoing
        By Almawave Contradicting The Evidence Loop Had Received ...............4

    Almawave Provides Rule 11 Notice To Loop .................................................5

    Loop Receives More Sworn Evidence Contradicting Alleged Wrongdoing By
        Almawave .................................................................................................5

    The Court Makes Findings Contradicting Certain Alleged Wrongdoing By
        Sternberg .................................................................................................5

    Loop Receives Voluminous Discovery Contradicting Alleged Wrongdoing By
        Almawave .................................................................................................6

    Loop Admits It Has No Factual Basis For Its Allegations And Declines To Offer
        Evidence Of Any Investigation ...............................................................6

ARGUMENT ............................................................................................................7

I.      LEGAL FRAMEWORK FOR RULE 11 SANCTIONS ..................................7

II.     LOOP AND ITS ATTORNEYS VIOLATED RULE 11 ..................................7

    A.     Loop and Its Attorneys Made And Maintained Factually Baseless
           Allegations ........................................................................................7

           1.     Loop's Allegations Were Rebutted By Prior, Undisputed, Sworn
                 Evidence ................................................................................8

           2.     Loop's Founders' Lack Factual Basis For Loop's Allegations ...............9

           3.     Loop Is Estopped From Providing A Factual Basis...........................10

           4.     Loop's Allegations Were Rebutted By Findings Of This Court............15

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

5.   This Court Should Not Consider Any Factual Basis That Loop Belatedly Presents ................................................................................16

B.   Loop And Its Attorneys Failed to Conduct a Reasonable Inquiry ....................16

1.   Loop And Its Attorneys' Lack Of Reasonable Inquiry Is Self-Evident..16

2.   Loop's Founder And CEO Admitted (And Loop Is Estopped From Denying) That Loop Failed To Make A Reasonable Inquiry ................17

III.   SANCTIONS ARE REQUIRED ......................................................................................19

CONCLUSION ...............................................................................................................................21

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## **TABLE OF AUTHORITIES**

2
**Page**

3

## **CASES**

4 *Altmann v. Homestead Mortgage Income Fund*

5      887 F. Supp. 2d 939 (E.D. Cal. 2012)............................................................19

6 *Baker v. Alderman*

7      158 F.3d 516 (11th Cir. 1998) ......................................................................8

8 *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*

9      498 U.S. 533 (1991)....................................................................................16

10 *Childs v. State Farm Mut. Auto. Ins. Co.*

11      29 F.3d 1018 (5th Cir. 1994) ......................................................................15

12 *Estate of Blue v. Cnty. of LA.*

13      120 F.3d 982 (9th Cir. 1997) ........................................................................8

14 *Fort James Corp. v. Solo Cup Co.*

15      412 F.3d 1340 (Fed.Cir.2005).....................................................................11

16 *Garr v. United States Healthcare*

17      22 F.3d 1274 (3d Cir. 1994).......................................................................21

18 *Greenberg v. Sala*

19      822 F.2d 882 (9th Cir. 1987) .........................................................8, 17, 19

20 *Greenfield v. United States Healthcare*

21      146 F.R.D. 118 (E.D. Pa. 1993)..................................................................21

22 *Gwaltney of Smithfield v. Chesapeake Bay Found.*

23      484 U.S. 49 (1987)........................................................................................7

24 *Hall v. Cole*

25      412 U.S. 1 (1973)........................................................................................20

26 *Hendrix v. Naphtal*

27      971 F.2d 398 (9th Cir. 1992) ......................................................................17

28

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

ALMAWAVE USA, INC.'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11
Case No.: 3-15-cv-00798-HSG-DMR

1   *Holgate v. Baldwin*

2        425 F.3d 671 (9th Cir. 2005) ........................................................................7

3   *ICU Med., Inc. v. Alaris Med. Sys.*, Inc.

4        No. SACV 0400689MRP VBKX, 2007 WL 6137003 (C.D. Cal. Apr. 16, 2007 ..........11

5   *In re Keegan Mgmt. Co., Sec. Litig.*

6        78 F.3d 431 (9th Cir. 1996) .......................................................................19

7   *Laparade v. Ivanova*

8        116 F. App'x 100 (9th Cir. 2004) ................................................................19

9   *Lloyd v. Schlag*

10        884 F.2d 409 (9th Cir. 1989) .....................................................................17

11   *Marceaux v. Lafayette City-Par. Consol. Gov't*

12        14 F. Supp. 3d 760 (W.D. La. 2014) aff'd, 614 F. App'x 705 (5th Cir. 2015) ..............20

13   *Moser v. Bret Harte Union High Sch. Dist.*

14        366 F. Supp. 2d 944 (E.D. Cal. 2005)........................................................7, 20

15   *Mulato v. Wells Fargo Bank, N.A.*

16        76 F. Supp. 3d 929 (N.D. Cal. 2014) ...........................................................7

17   *Roadway Express, Inc. v. Piper*

18        447 U.S. 752 (1980)................................................................................20

19   *Southern Leasing Partners, Ltd. v. McMullan*

20        801 F.2d 783 (5th Cir. 1986) ...............................................................8, 17

21   *Telesaurus VPC, LLC v. Power*

22        888 F. Supp. 2d 963 (D. Ariz. 2012) aff'd, 584 F. App'x 905 (9th Cir. 2014) ..............20

23   *Townsend v. Holman Consulting Corp.*

24        929 F.2d 1358 (9th Cir. 1990) ....................................................................19

25   *Unioil, Inc. v. E.F. Hutton & Co., Inc.*

26        809 F.2d 548 (9th Cir. 1986) .....................................................................19

27   *Urenia v. Pub. Storage*

28        No. CV 13-01934 DDP AJWX, 2015 WL 3378247 (C.D. Cal. May 7, 2015) ...............8

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

iv

*Val-Land Farms, Inc. v. Third Nat'l Bank*
    937 F.2d 1110 (6th Cir. 1991) ...................................................................21

*vanova v. Columbia Pictures Indus., Inc.*
    217 F.R.D. 501 (C.D. Cal. 2003) ...............................................................19

*Weil v. Inv./Indicators, Research & Mgmt., Inc.*
    647 F.2d 18 (9th Cir. 1981)) .......................................................................11

*Willis v. City of Oakland*
    231 F.R.D. 597 (N.D. Cal. 2005) ...............................................................19

*Zaldivar v. City of Los Angeles*
    780 F.2d 823 (9th Cir. 1986) .......................................................................7

## **STATUTES**

28 U.S.C. § 1927 ..............................................................................................20

Fed. R. Civ. P. 11(b)(3) .....................................................................................7

Fed. R. Civ. P. 11(c)(1) ...................................................................................21

Fed. R. Civ. P. 11(c)(4) ...................................................................................19

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

ALMAWAVE USA, INC.'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11
Case No.: 3-15-cv-00798-HSG-DMR

1

**PRELIMINARY STATEMENT**

2      This is an extraordinary case.  The Almawave Defendants move for Rule 11 sanctions

3  against Loop and its counsel for making factual allegations that lack any reasonable basis and

4  were contradicted by undisputed, sworn evidence before the allegations were made.  Almawave

5  also moves to strike those allegations from Loop's operative complaint.

6      Loop's original complaint was long and detailed.  Loop's motion for a TRO was, if

7  nothing else, voluminous.  But both the complaint and TRO lacked any allegation that

8  Almawave itself did anything wrong.  Instead, Loop's entire theory of liability with regard to

9  Almawave was based on a tenuous application of vicarious liability and / or respondeat superior.

10      Almawave gave Loop multiple, detailed, sworn affidavits regarding Almawave's actual

11 role, what Almawave knew and did not know about Anna Gatti, and more.  Almawave also filed

12 a motion to dismiss Loop's legal theories.

13      Rather than allow the Court to consider the legal issues, however, Loop simply made up

14 all the factual allegations against Almawave that it thought it needed to overcome the motion to

15 dismiss.  That Loop added those allegations a matter of weeks after filing its original complaint

16 and TRO just highlights Loop's lack of inquiry.

17      Of course, after voluminous discovery and over a year of scorched-earth litigation[1],

18 Loop's central allegations remain lacking in any factual basis, as they were when Loop filed the

19 operative Second Amended Complaint ("SAC").

20      Almawave gave a detailed warning to Loop over a year ago, and again recently gave

21 Loop the "safe harbor" notice that would have allowed Loop to withdraw or modify its SAC so

22 as to avoid sanctions.  Loop has refused, and Almawave therefore now asks the Court to strike

23 the unsupported allegations from Loop's SAC and to find that Loop and its counsel are jointly

24 and severally liable for monetary sanctions.  Even though Almawave has incurred far in excess

25

26 [1] The manner in which Loop conducted the litigation, including its repeated contempt,
   unprofessionalism, and its quintessential abuse of process and malicious prosecution, all likely
27 will result in further proceedings at the appropriate time.  This motion, however, is limited to
   Rule 11 sanctions seeking a remedy for Loop and its counsel filing and maintaining factual
28 allegations without any reasonable basis in light of the evidence they were provided.

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

1    of $2 million defending against Loop's frivolous claims, Almawave seeks sanctions in the

2    relatively modest amount of $1,250,000.

3                          **ALLEGATIONS AND EVIDENCE**

4    **Loop Initially Fails To Allege Wrongdoing By Almawave**

5            On February 20, 2015, Loop filed its 253-paragraph, 59-page Complaint.  Dkt. 1.  The

6    gravamen of Loop's Complaint was the assertion that defendant Anna Gatti, while CEO of both

7    Loop and Almawave, committed "multiple acts of fraud and willful misappropriation of

8    proprietary information and trade secrets."  Dkt. 1 at ¶ 1.  Nowhere did the Complaint allege any

9    facts that Almawave USA directed, was involved in, or even knew about Ms. Gatti's alleged

10   wrongdoing.

11           On March 3, 2015, Loop filed a Motion for Temporary Restraining Order with

12   accompanying declarations ("TRO").  Dkt. 9.  All told, Loop's TRO papers consisted of dozens

13   of pages of evidence, and two prolix declarations.  Nowhere did the TRO allege that any person

14   other than Ms. Gatti directed, was involved in, or even knew about Ms. Gatti's alleged

15   wrongdoing.[2]

16   **Loop Receives Sworn Evidence Contradicting Alleged Wrongdoing By Almawave**

17           On March 9, Almawave filed a lengthy, factually-detailed, sworn declaration from

18   Valeria Sandei, the Chairman and President of Almawave, attesting to Almawave's lack of

19   involvement in any of the wrongful acts that Loop had alleged.  Dkt. 25-1 ("Sandei

20   Declaration").  This evidence showed that Almawave did not misappropriate Loop's trade

21   secrets and did not authorize Ms. Gatti to do so.  *Id.* ¶ 2.  Loop and its attorneys thus knew by

22   March 9, 2015, that "[t]o the extent that Ms. Gatti engaged in any wrongful conduct, she was

23   acting without direct or indirect authorization or knowledge of Almawave USA, and acting

24

25   _____

26   [2]  For instance, although Loop later alleged that Ms. Gatti accessed Loop's computers at the
     direction of Almawave (SAC ¶ 148), Loop first claimed that "when Gatti was asked by counsel
     to preserve documents, she responded by initiating an attack on her former corporate account
27   maintained by Plaintiff through the cloud, and, even though she no longer had a password to
     access it, she was able to delete from the account critical evidence at issue in the case."  TRO
28   (Dkt. 9) at 3:9-12.

**V E N A B L E   L L P**
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

1   outside the scope of her employment." *Id.*; *see also* ¶¶ 34-36.

2   Loop also knew that Almawave was led "to believe that Ms. Gatti was not precluded

3   from working with Almawave USA," that Almawave was unaware that Ms. Gatti allegedly "had

4   an exclusive employment relationship with Loop that prevented her from" working for

5   Almawave, and in fact, that Ms. Gatti had represented to Almawave that she was "under no

6   contractual or other legal obligations that would restrict [her] from performing [her] duties" for

7   Almawave USA. *Id.* ¶ 8-11.  Ms. Gatti also promised Almawave USA not to bring any

8   "confidential, proprietary or secret information of my former employer(s) or any other person" to

9   Almawave USA." *Id.* ¶ 12.

10   Loop learned that Almawave already had established technology and therefore was not

11   interested in developing (or, obviously, misappropriating) any new technology.  *Id.* ¶¶ 21-25.

12   Loop also learned that Almawave conducted a reasonable and good faith search but was unable

13   to locate any information, much less confidential information, concerning Loop.  *Id.* ¶¶ 31-32.

14   Finally, Loop learned that Almawave was shocked when it learned of the allegations in

15   Loop's original complaint, and that Almawave had determined to immediately terminate Ms.

16   Gatti.  *Id.* ¶ 28-30.[3]

17   **Almawave Moves To Dismiss Loop's Complaint Based On Loop's Failure To Allege**

18   **Wrongdoing By Almawave**

19   On March 17, 2015, Almawave filed a motion to dismiss.  The central theme of the

20   motion was that Loop's complaint was legally deficient because it failed to allege facts

21   supporting Almawave's involvement in any of the alleged wrongful acts separate and apart from

22   Ms. Gatti herself.  *See* Dkt. 38 (Motion to Dismiss) at 5:1-4 ("[T]he complaint does not contain a

23   single reference to an act of Almawave USA, other than its hiring of Ms. Gatti and innocuous

24   conduct (e.g., opening an office, hiring a business development team).");  *Id.* at 4:13 ("As to

25   Almawave USA, Loop alleges only conclusions and conjecture, not facts.");  *Id.* at 5:4-7 ("Loop

26   does not provide any facts regarding the form of Almawave USA's alleged 'aide' or 'assistance'

27   ───────────────

28   [3] Almawave did in fact terminate Ms. Gatti that same day; *i.e.*, on March 9, 2015.

ALMAWAVE USA, INC.'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11
Case No.: 3-15-cv-00798-HSG-DMR

. . . to Gatti, nor does it allege that Almawave USA benefitted from Ms. Gatti's alleged scheme, either by gaining additional prospective customers or by absconding funding opportunities or otherwise."); *Id.* at 5:11-12 ("Loop does not . . . make a single allegation of fact of any communication between Almawave USA and Ms. Gatti to execute the alleged scheme."); *Id.* at 5:18-20 ("Nor are there allegations that Almawave USA received any proprietary or confidential information, that it knew it received any such information, or that it used such information for its benefit or to Loop's detriment."); *Id.* at 4:22-24 ("Loop does not and cannot allege that Almawave USA ever saw Ms. Gatti's employment agreement with Loop, or otherwise knew about the terms contained therein, including that Ms. Gatti was prohibited from seeking a concurrent role with Almawave USA.").

**Loop Receives More Sworn Evidence Contradicting Alleged Wrongdoing By Almawave**

Also on March 17, the Italian Almawave Defendants filed motions to dismiss based on lack of personal jurisdiction.  Dkt. 39.  On April 24, 2015, Almawave filed nine more declarations further directly rebutting its involvement in the acts alleged in Loop's complaint. Dkt. 63-71, Declarations of Christian De Felice,  Antonio Dibitonto, Luca Ferri, Angela Nicolella, Sabrina Nobili, Mariantonietta Perri, Francesco Renzetti, Raniero Romagnoli, Valeria Sandei ("the Jurisdiction Declarations").

**Loop Files A First Amended Complaint With New Allegations Of Wrongdoing By Almawave Contradicting The Evidence Loop Had Received**

Before Almawave USA's motion could be heard, Loop filed the FAC on April 6, 2015. Notwithstanding the Sandei Declaration and the Jurisdiction Declarations already filed with the Court, approximately six weeks after Loop filed its prolix complaint and TRO that alleged no wrongdoing of Almawave, Loop filed its FAC and made a number of allegations specifically alleging, for the first time, Almawave's involvement in the alleged wrongdoing.  Dkt. 45.

For example, to plead around the motion to dismiss, Loop alleged that the "Almaviva Defendants . . . directly oversaw, directed, controlled and funded . . . all of Gatti's wrongful activities alleged herein."  FAC ¶ 183.  Loop also alleged that Almawave "participated, directed, financed, approved and substantially benefited from every aspect of the scheme and conspiracy

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

orchestrated by Gatti." Dkt. 45 at ¶ 40. These new allegations in Loop's FAC were and are expressly contradicted by the evidence that Loop had already received, as were most of the other new allegations.

**Almawave Provides Rule 11 Notice To Loop**

On April 27, 2015, counsel for Almawave gave formal notice to Loop and its counsel that Loop's new allegations in the FAC violated Federal Rule of Civil Procedure 11. (Declaration of Thomas E. Wallerstein ("Wallerstein Decl.") Ex. F ("2015 Rule 11 Notice")). The 2015 Rule 11 Notice warned that the FAC contained a number of allegations against Almawave USA that not only were false, but also were not based on any reasonable belief or inquiry. The 2015 Rule 11 Notice referred to and enclosed the unrebutted sworn evidence; *i.e.*, the Sandei Declaration and the Jurisdiction Declarations.

**Loop Receives More Sworn Evidence Contradicting Alleged Wrongdoing By Almawave**

Loop also served subpoenas on Orrick and Venable, on or around June 1 and August 7, 2015 (with a second subpoena to Venable on March 9, 2016), respectively, to which it received responses rebutting facts alleged in the FAC (and yet later re-alleged in the SAC). Wallerstein Decl Ex. G, (Orrick Responses to Loop's subpoena); Ex. H, (Venable Responses to Loop's subpoena); Wallerstein Decl ¶ 8.

Loop filed its SAC on September 23, 2015. Dkt. 210.

On September 16, 2015, Loop filed a motion to disqualify Venable LLP. In opposition, Loop received still more documents and information from Venable refuting Loop's speculation of wrongdoing. Dkt. 278. All the evidence Loop received further contradicted Loop's allegations of wrongdoing by Almawave. On October 21, 2015, Loop also received further sworn declarations from Valeria Sandei, Peter Sternberg and Anna Gatti, all providing Loop with further evidence contradicting Loop's allegations. Dkts. 278-1, 278-2, 278-4.

**The Court Makes Findings Contradicting Certain Alleged Wrongdoing By Sternberg**

On January 28, 2016, this Court issued an Order denying Loop's motion to disqualify former Orrick Herrington & Sutcliffe LLP attorney, Peter Sternberg, and Sternberg's current law firm, Venable LLP. Dkt. 402. In so doing, the Court considered evidence submitted by the

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

1   parties, considered requests to hear further evidence, and then made certain findings, set forth

2   *infra*, that were contrary to certain of Loop's allegations of wrongdoing by Almawave in the

3   SAC.

4   **Loop Receives Voluminous Discovery Contradicting Alleged Wrongdoing By Almawave**

5          As of March 29, 2016, Almawave had produced more than 54,000 pages of documents in

6   response to 788 document requests propounded by Loop.[4]  Wallerstein Decl. ¶ 11. The

7   Almawave Defendants have responded to 66 interrogatories.  *Id.*  Further, in response to Loop's

8   request, the Almawave Defendants produced their 30(b)(6) designee, and their employee

9   witnesses, Valeria Sandei, Raniero Romagnoli, Luca Ferri, Mariantonietta Perri and Angela

10  Nicolella for depositions during the week of January 19, 2016.  Wallerstein Decl. ¶ 11.

11         Loop deposed Anna Gatti on January 19, 2016 and April 4, 2016 and Gennaro Di Napoli,

12  the founder of defendant IQSystem, Inc., on February 3, 2016. Wallerstein Decl. ¶ 12.

13         Loop also has issued over 60 subpoenas, receiving in response voluminous further

14  documents.[5]  Wallerstein Decl. ¶ 14.

15  **Loop Admits It Has No Factual Basis For Its Allegations And Declines To Offer Evidence**

16  **Of Any Investigation**

17         Loop has refused to disclose any factual basis for its allegations of wrongdoing by

18  Almawave.  Wallerstein Decl. ¶ 13; Wallerstein Decl. Ex. D (Rule 30(b)(6) Deposition of Loop

19  ("30(b)(6) Depo.")) at 48:7–17, 94:24-100:3, 103:10–24, 106:2–9, 143:13-144:18, 165:25-166:6,

20  213:25-215:10, 273:22–274:2, 274:22–275:4, 275:13–19.

21         As detailed below, Loop's founder and CEO, Gianmauro Calafiore, testified on January

22  25, 2016 that he lacked knowledge of any factual basis for the allegations, and he otherwise

23  refused to disclose whether or to what extent Loop or its counsel conducted any investigation

24  prior to filing the SAC.  Wallerstein Decl. Ex. A (Deposition of Gianmauro Calafiore on Jan. 25,

25

26  [4] Loop propounded 261 document requests to Almaviva S.p.A., 264 document requests to
    Almawave S.r.l., and 263 document requests to Almawave USA, Inc.

27  [5] The precise number of third party documents Loop has received remains a mystery because

28  Loop has steadfastly refused to produce them to defendants despite court orders.

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

2016 ("Jan. 25 Calafiore Depo.")).  Loop's other co-founders, Bart Peintner and Patrick Ehlen, similarly refused to disclose any facts uncovered in Loop's investigation and lacked personal knowledge of such facts.  Wallerstein Decl. Ex. B (Mar. 29, 2016 Deposition of Bart Peintner ("Peintner Depo.")) and Wallerstein Decl. Ex. C (Apr. 6, 2016 Deposition of Patrick Ehlen ("Ehlen Depo.")).

## **ARGUMENT**

## I.     **LEGAL FRAMEWORK FOR RULE 11 SANCTIONS**

By signing, filing, and advocating for the SAC, Loop's attorneys certified that to the best of their "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that "the factual contentions have evidentiary support . . . ."  Fed. R. Civ. P. 11(b)(3).

When a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is . . . factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it."  *Mulato v. Wells Fargo Bank, N.A.*, 76 F. Supp. 3d 929, 961 (N.D. Cal. 2014) (*citing Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005)).

Rule 11 is violated if Loop's SAC lacks a factual foundation, "even [if] the paper was not filed in subjective bad faith."  *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986).  Loop's bad faith may be inferred and assumed if the factual allegations are determined to be baseless or not subject to prior a reasonable investigation.  *See Moser v. Bret Harte Union High Sch. Dist.*, 366 F. Supp. 2d 944, 979 (E.D. Cal. 2005).

## II.    **LOOP AND ITS ATTORNEYS VIOLATED RULE 11**

### A.     **Loop and Its Attorneys Made And Maintained Factually Baseless Allegations**

"Rule 11 . . . requires pleadings to be based on a good-faith belief, formed after reasonable inquiry, that they are 'well grounded in fact,' [in order to] protect[] defendants from frivolous allegations."  *Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49, 65 (1987).  "Federal Rule of Civil Procedure 11 provides for the imposition of sanctions when a filing is frivolous, legally unreasonable, or without factual foundation . . . ."  *Estate of Blue v.*

1    *Cnty. of LA.*, 120 F.3d 982, 985 (9th Cir. 1997).  "A factual assertion is baseless and violates

2    Rule 11(b)(3) if there is no evidentiary support for it and such support is not 'likely' to be

3    developed by discovery."  *Urenia v. Pub. Storage*, No. CV 13-01934 DDP AJWX, 2015 WL

4    3378247, at *3 (C.D. Cal. May 7, 2015).

5         A complaint is factually frivolous if "a competent attorney, after reasonable inquiry,

6    could not form a reasonable belief that the complaint was well founded in fact."  *Greenberg v.*

7    *Sala*, 822 F.2d 882, 887 (9th Cir. 1987); *see also, e.g., Southern Leasing Partners, Ltd. v.*

8    *McMullan*, 801 F.2d 783, 788 (5th Cir. 1986) ("Appellants sued Phillips without knowing how

9    he fit into the picture, apparently hoping that later discovery would uncover something.  If Rule

10   11 is to mean anything and we think it does, it must mean an end to such expeditionary

11   pleadings.  [T]his 'shotgun approach' to pleadings, . . . where the pleader heedlessly throws a

12   little bit of everything into his complaint in the hopes that something will stick, is to be

13   discouraged.").

14        Rule 11 sanctions are appropriate "when the claimant exhibits a 'deliberate indifference

15   to obvious facts.'"  *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).  Loop displayed

16   worse than "deliberate indifference."  Loop's SAC contains myriad factual allegations that are

17   baseless and violate Rule 11(b)(3).  **First**, before it ever filed its SAC, Loop had undisputed,

18   sworn evidence that numerous fundamental allegations in the SAC were factually baseless.  *See*

19   *e.g.,* Sandei Declaration; the Jurisdiction Declarations.  **Second**, some of those fundamental

20   allegations also were already subject to a judicial determination that they lack evidentiary

21   support.  Dkt. 32.  **Third**, the founder and CEO of the 4-person startup, Gianmauro Calafiore,

22   admitted that Loop lacked any factual basis for many of those allegations, which admissions

23   were corroborated by his co-founders. *See* Wallerstein Decl. Ex. A (Jan. 25 Calafiore Depo.);

24   Wallerstein Decl. Ex. B (Peintner Depo.); Wallerstein Decl. Ex. C (Ehlen Depo.); Wallerstein

25   Decl. Ex. D (30(b)(6) Depo.).  These facts dwarf the lack of reasonable factual basis found in the

26   reported cases.

27              1.    Loop's Allegations Were Rebutted By Prior, Undisputed, Sworn Evidence

28        Almawave filed a motion to dismiss Loop's original complaint and this Court was

**V E N A B L E   L L P**
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

therefore poised to determine, as a matter of law, whether Almawave could be held legally

responsible for the alleged conduct of Anna Gatti.  But Loop prevented the Court from making

that determination.  Rather, Loop chose to concoct new allegations out of whole cloth

notwithstanding the contrary evidence it had already received.  Specifically, Loop filed a FAC,

and later Loop filed an SAC, the gravamen of which was that the "Almaviva Defendants . . .

directly oversaw, directed, controlled and funded . . . all of Gatti's wrongful activities alleged

herein . . . ."  SAC ¶ 201.

2.    Loop's Founders' Lack Factual Basis For Loop's Allegations

The following factual allegations were not only contradicted by the prior undisputed,

sworn evidence, but also subject to Loop's CEO and founder's admitted lack of factual basis.

His co-founders likewise did not have personal knowledge of facts alleged in the SAC.  There is

no basis to believe that these allegations and similar ones like them in the SAC were the subject

of any reasonable investigation before being made.  They lacked factual support when made, and

still lack support.

| Loop's Allegation | Loop's Admitted Lack Of Factual Basis |
|---|---|
| Gatti "told Almaviva IT and Almawave IT that she needed the permission of [Loop] to engage with any of the Almaviva Defendants." (SAC ¶ 71) | "Did Gatti ever tell anyone at Almawave that she needed Loop's permission to work for them?"  "I don't know."  Wallerstein Decl. Ex. A (Jan. 25 Calafiore Depo.) at 248:1-16; *see also* Wallerstein Decl. Ex. B (Peintner Depo.) at 106:25-107:23 |
| "A principal objective of the Almaviva Defendants in hiring Gatti was to exploit her knowledge of the Company and to gain access to the Company's proprietary technology and trade secrets." SAC ¶ 21; FAC ¶ 17 | "Did Almawave hire Anna Gatti because she was the CEO of Loop?"  Following instruction of counsel, "I don't have an opinion on – on this."  Wallerstein Decl. Ex. A (Jan. 25 Calafiore Depo.) at 250:11-251:6; *see also* Wallerstein Decl. Ex. B (Peintner Depo.) at 114:8-17; Wallerstein Decl. Ex. C (Ehlen Depo.) at 297:5-6, 303:9-323:2 |
| "But for Gatti's role as CEO of the Company, the Almaviva Defendants would never have hired Gatti . . . ." (SAC ¶ 118) | "Did Almawave hire Anna Gatti because she was the CEO of Loop?"  Following instruction of counsel, "I don't have an opinion on – on this."  Wallerstein Decl. Ex. A (Jan. 25 Calafiore Depo.) at 250:11-251:6; *see also* Wallerstein Decl. Ex. B (Peintner Depo.) at 108:3-14 |
| Almawave used Loop's confidential or trade secret information  (SAC ¶¶ 22, 66, 120, 134, 136, 139, 140, 150, 155, 157-158, 163-188, 190-199, 222, | "Do you have an opinion as to whether my client ever used Loop's confidential information in any way?"  "In my personal capacity, I don't have an opinion."  Wallerstein Decl. Ex. A (Jan. 25 Calafiore Depo.) at 301:11-17; *see also* Wallerstein Decl. Ex. B |

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

| Loop's Allegation | Loop's Admitted Lack Of Factual Basis |
|---|---|
| and 250) | (Peintner Depo.) at 134:11-135:9, Wallerstein Decl. Ex. C (Ehlen Depo.) at 101:3-6 |
| Multiple allegations that Loop was damaged as a result of Almawave's actions; *see, e.g.*, SAC ¶¶ 238, 281, 325, 333, 335, 344, 363 and 414. | "Has Loop been damaged by my client in any way?" Following advice of counsel inviting witness to offer his opinion on this. "Yes. Yeah, but I – I don't have an opinion on this." "No opinion one way or the other?" "In my personal capacity, I don't have an opinion on this." Wallerstein Decl. Ex. A (Jan. 25 Calafiore Depo.) at 300:19-301:9 *see also* Wallerstein Decl. Ex. B (Peintner Depo.) at 127:24-128:21 |
| "Gatti, at the behest or for the benefit of the Almaviva Defendants, deleted numerous calendar entry on the Company's computer system to conceal the involvement of Sandei and other officers of the Almaviva Defendants." SAC ¶ 148 | "Did Gatti delete calendar entries because of something my clients told her to do?" Following the instruction of counsel, "I think this one is speculation about your client – client. I don't have an opinion on this." Wallerstein Decl. Ex. A (Jan. 25 Calafiore Depo.) at 243:24-244:5; *see also* Wallerstein Decl. Ex. B (Peintner Depo.) at 103:1-104:3; Wallerstein Decl. Ex. C (Ehlen Depo.) at 260:11-261:4<br><br>"Did my client ever ask Anna Gatti to conceal their involvement?" "I have no idea about the conversation between your client and Anna Gatti." Wallerstein Decl. Ex. A (Jan. 25 Calafiore Depo.) at 245:14-20; Wallerstein Decl. Ex. D (30(b)(6) Depo.) at 275:24-279:2 |
| "Gatti and the Almaviva Defendants even sent one of their employees, Francesca Valentini, to the Company's offices under the false pretense that . . .." SAC ¶ 146. | "Did my clients ever send Francesca Valentini to Loop's offices under false pretenses?" "I don't know." Wallerstein Decl. Ex. A (Jan. 25 Calafiore Depo.) at 300:11-14; *see also* Wallerstein Decl. Ex. B (Peintner Depo.) at 168:17-169:2, 170:5-10 |
| "Despite knowing that Vignudelli was a Company's consultant bound by written confidentiality agreements . . . ." SAC ¶ 398 | "Did my clients know that Loop had any kind of relationship with Dario Vignudelli?" Following objection "I lack personal knowledge on this particular question." Wallerstein Decl. Ex. A (Jan. 25 Calafiore Depo.) at 257:21-258:5; *see also* Wallerstein Decl. Ex. B (Peintner Depo.) at 118:5-119:9 |

### 3.   Loop Is Estopped From Providing A Factual Basis

Loop is estopped from arguing that it did indeed possess some factual basis for making its allegations because, notwithstanding court orders, Loop consistently refused to provide such information in response to interrogatories, in the context of a 30(b)(6) deposition, or through testimony of its founders. *See e.g.*, Wallerstein Decl. ¶ 13; Wallerstein Decl. Ex. A (Jan. 25

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

Calafiore Depo.) at 318:7-319:2 (Instruction and refusal to answer, "Other than what you heard from counsel, prior to February 20, 2015, did you have any basis for making the allegations in [the original complaint?"); Wallerstein Decl. Ex. D (30(b)(6) Depo.) at 48:7–17, 94:24-100:3, 103:10–24, 106:2–9, 143:13-144:18, 165:25-166:6, 213:25-215:10, 273:22–274:2, 274:22–275:4, 275:13–19.  Loop's own witnesses lacked personal knowledge of facts supporting the allegations against Almawave.  Loop's witnesses also repeatedly testified that Loop's "investigation" into the facts supporting its claims was known only to its attorney, Valeria Calafiore Healy (the sister of Loop's CEO and principal shareholder Gianmauro Calafiore, and a shareholder herself), and that Loop was not going to waive privilege.

Loop is estopped from selectively disclosing such information now.  *ICU Med., Inc. v. Alaris Med. Sys.*, Inc., No. SACV 0400689MRP VBKX, 2007 WL 6137003, at *12 (C.D. Cal. Apr. 16, 2007 ("It is axiomatic that a party cannot use the attorney-client privilege as a sword and a shield.") (*citing Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed.Cir.2005) ("The waiver extends beyond the document initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not." (*citing Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981))).

The following factual allegations were not only contradicted by the prior undisputed, sworn evidence, but also subject to Loop's cofounders' refusal to provide any factual basis.

| Loop's Allegation | Loop's Refusal To Provide Factual Basis or Even Endorse Factual Allegations |
|---|---|
| Almawave misappropriated Loop's confidential or trade secret information.  SAC ¶¶ 22, 66, 120, 134, 136, 139, 140, 150,155, 157-58, 163-188, 190-199, 222, and 250 of the SAC. | "Mr. Calafiore, why do you think my company stole Loop's trade secrets?"  Instruction not to answer. Wallerstein Decl. Ex. A (Jan. 25 Calafiore Depo.) at 287:19-24; *see also* Wallerstein Decl. Ex. D (30(b)(6) Depo.) at 213:25-215:10; *see also* Wallerstein Decl. Ex. C (Ehlen Depo.) at 292:11-294:15, 335:8-18.<br><br>"Do you think that Almawave used Loop's trade secrets?" Instruction not to answer. Wallerstein Decl. Ex. A (Jan. 25 Calafiore Depo.) at 264:24-265:22.<br><br>"Sir, do you have any knowledge as to whether Almawave used Loop's trade secrets?"  Instruction not to answer. Wallerstein Decl. Ex. A (Jan. 25 |

| Loop's Allegation | Loop's Refusal To Provide Factual Basis or Even Endorse Factual Allegations |
|---|---|
| | Calafiore Depo.) at 265:24-266:4; Wallerstein Decl. Ex. B (Peintner Depo.) at 135:11-137:7, 149:8-152:9.<br><br>"Do you have any reason to believe that my clients saw anything listed in [Loop's Trade Secret Submission dated January 11, 2016]?" Instruction not to answer. Wallerstein Decl. Ex. A (Jan. 25 Calafiore Depo.) at 416:14-20.<br><br>"Prior to Loop filing the first amended complaint on April 6, 2015, did you have any basis to believe that any of my clients ever looked at anything in [Loop's Trade Secret Submission dated January 11, 2016]?" Instruction not to answer. Wallerstein Decl. Ex. A (Jan. 25 Calafiore Depo.) at 417:3-9.<br><br>"Prior to Loop filing the first amended complaint on April 6, 2015, are you aware of anyone at Loop having any basis to believe that any of my clients ever looked at anything in [Loop's Trade Secret Submission dated January 11, 2016]?" Instruction not to answer. Wallerstein Decl. Ex. A (Jan. 25 Calafiore Depo.) at 417:12-19 or 418:8-16.<br><br>"[P]rior to Loop filing the first amended complaint on April 6, 2015, did you have any basis to believe that any of my clients ever used any of the information in [Loop's Trade Secret Submission dated January 11, 2016]?" Instruction not to answer. Wallerstein Decl. Ex. A (Jan. 25 Calafiore Depo.) at 417:24-418:6. |
| the "highest-level executives of Almaviva IT, including Marco Tripi [] and his wife Valeria Sandei [], . . . authorized . . . the wrongful scheme against the Company . . . ."  SAC ¶ 46<br><br>"Marco Tripi . . . was . . . overseeing all aspects of [Gatti's] conduct in the United States."  SAC ¶ 46<br><br>"Almaviva's executives personally participated, directed, financed, approved and substantially benefited from every aspect of the scheme . . . ." SAC ¶ 46 | "Mr. Calafiore, why do you believe that Marco Trip[i] and his wife, Valeria Sandei, authorized any wrongful scheme against Loop?" Instruction not to answer. Wallerstein Decl. Ex. A (Jan. 25 Calafiore Depo.) at 288:14-289:8. |

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

| Loop's Allegation | Loop's Refusal To Provide Factual Basis or Even Endorse Factual Allegations |
|---|---|
| Loop was damaged by Almawave. SAC ¶¶ 238, 281, 325, 333, 335, 344, 363 and 414. | "Sir, do you believe my clients ever harmed Soshoma?"  Confirms refusal to answer.  Wallerstein Decl. Ex. A (Jan. 25 Calafiore Depo.) at 204:1-9; *see also* Wallerstein Decl. Ex. D (30(b)(6) Depo.) at 143:13-144:20.<br><br>"Why do you believe my clients did anything to hurt your company?"  Instruction not to answer.  Wallerstein Decl. Ex. A (Jan. 25 Calafiore Depo.) at 204:10-14. |
| the "Almaviva Defendants intended, with Gatti's assistance . . . to buy the Company for a bargain price  . . . and thereby get access to the Company's proprietary technology."   SAC ¶ 21 | "Did my clients want to buy Loop?"  Instruction not to answer.  Wallerstein Decl. Ex. A (Jan. 25 Calafiore Depo.) at 255:16-20.<br><br>"Did my clients want to buy Loop for a bargain price?"  Instruction not to answer.  Wallerstein Decl. Ex. A (Jan. 25 Calafiore Depo.) at 255:22-256:1<br><br>"Mr. Calafiore, why do you think that my clients wanted to force Loop to sell itself?"  Instruction not to answer. Wallerstein Decl. Ex. A (Jan. 25 Calafiore Depo.) at 288:1-5. |
| "But for Gatti's role as CEO of the Company, the Almaviva Defendants would never have hired Gatti . . . ." (SAC ¶ 118);<br><br>a "principal objective of the Almaviva Defendants in hiring Gatti was to exploit her knowledge of the Company and to gain access to the Company's proprietary technology and trade secrets." SAC ¶ 21 | "Why did Almawave hire Anna Gatti?"  Instruction not to answer.  Wallerstein Decl. Ex. A (Jan. 25 Calafiore Depo.) at 250:5-9; Wallerstein Decl. Ex. D (30(b)(6) Depo.) at 94:24-100:3; Wallerstein Decl. Ex. C (Ehlen Depo.) at 74:3-20. |
| "Italian Almaviva . . . unlawfully directed Gatti . . . to access the Company's computer . . . . ." SAC ¶ 242 | "Do you know if anyone at Almawave directed Gatti to access the company's computer?"  Instruction not answer.  Wallerstein Decl. Ex. A (Jan. 25 Calafiore Depo.) at 247:18-24; *see also* Wallerstein Decl. Ex. D (30(b)(6) Depo.) at 165:25-166:6. |
| "Gatti, at the behest or for the benefit of the Almaviva Defendants, deleted numerous calendar entry on the Company's computer system to | "Sir, do you have an opinion one way or the other whether my client asked Anna Gatti to delete calendar entries?"  Instruction not to answer.  Wallerstein Decl. Ex. A (Jan. 25 Calafiore Depo.) at |

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

V E N A B L E  L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

| Loop's Allegation | Loop's Refusal To Provide Factual Basis or Even Endorse Factual Allegations |
|---|---|
| conceal the involvement of Sandei and other officers of the Almaviva Defendants."  SAC ¶ 148 | 244:16-245:2. |
| "Almaviva Defendants intended . . . to hire away the Company's key employees  . . . ."  SAC ¶ 21 | "Who were the key employees that my company wanted to hire?"  "They hired the CEO that was the head of the company."  Wallerstein Decl. Ex. A (Jan. 25 Calafiore Depo.) at 256:20-23.<br><br>"Any others?"  Confirms refusal to answer.  Wallerstein Decl. Ex. A (Jan. 25 Calafiore Depo.) at 256:24-257:7. |
| Questions regarding factual basis for any/all allegations in general in the SAC and investigation of those allegations by the Company. | "What investigation have you done in regard to potential claims against Almawave?" Instruction not to answer. Wallerstein Decl. Ex. D (30(b)(6) Depo.) at 48:7–17; see also Wallerstein Decl. Ex. B (Peintner Depo.) at 158:4-23.<br><br>"Did you or did you not rely on any documents to support the factual allegations in the second amended complaint?" Instruction not to reveal any attorney-client privileged information.  Wallerstein Decl. Ex. D (30(b)(6) Depo.) at 103:10–24.<br><br>" . . . [O]f these thousands of documents supporting your factual basis of any allegation within the second amended complaint, can you identify a single one for me?" Instruction not to answer "insofar as it calls for attorney-client privilege and attorney work product . . . ."  Wallerstein Decl. Ex. D (30(b)(6) Depo.) at 106:2–9.<br><br>"Are you aware of the communications that Ms. Healy had with Mr. Ficano relating to Almawave or IQSystem or Tony Di Napoli?" Instruction not to answer.  Wallerstein Decl. Ex. D (30(b)(6) Depo.) at 273:22–274:2.<br><br>" . . . [D]o you have knowledge as you sit here today about Ms. Healy acquiring documents from Fabio Ficano or Elettranova? It's a yes or no." Objection. " . . . I'm asking if he has knowledge; yes or no." "So . . . all the knowledge that the company has about that person . . . the company knows through its attorney. And so . . . we are not going to disclose them." Wallerstein Decl. Ex. D (30(b)(6) Depo.) at 274:22–275:4, 275:13–19. |

1

          4.     <u>Loop's Allegations Were Rebutted By Findings Of This Court</u>

2          Following Loop's motion to disqualify Venable LLP, this Court made certain findings,

3  and separately invited Loop to file a Third Amended Complaint.  Dkt. 231.  Loop violated Rule

4  11 by not amending its operative complaint and instead continuing to advance factual allegations

5  that had been found to lack a reasonable basis, even after receiving Almawave's warnings

6  including the statutory safe harbor warning.  "Rule 11 applies to each and every paper signed

7  during the course of the proceedings . . . .  Accordingly, if facts are discovered that show that

8  there is no longer a good faith basis for a position taken by a party, a pleading, motion, or other

9  paper signed after those facts come to light reaffirming that position can be the basis of a

10  violation of the rule."  *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1024 n.18 (5th

11  Cir. 1994).

12          Thus, Loop violated Rule 11 by declining to withdraw the following factual allegations in

13  Loop's SAC because they were not only contradicted by the prior undisputed, sworn evidence,

14  but also subject to a judicial determination that they lack evidentiary support:

15

16

| Loop's Allegation | Order and Findings |
|---|---|
| ". . . in breach of . . .Attorney Sternberg's (while he was at Orrick) fiduciary duties to the Company." SAC ¶ 392 (x2)<br><br>"Defendants also aided and abetted Orrick's breaches of fiduciary duty by providing Orrick substantial assistance and/or encouragement to Orrick, including Attorney Sternberg (while he was a partner of Orrick) and while they owed fiduciary duties to the Company, to breach their fiduciary duties to the Company."  SAC ¶ 392 | "Because Sternberg's representation of Almaviva was not adverse to Loop AI, he did not violate his duty of loyalty to Loop AI while he was an Orrick partner." Dkt. 402 at 6:17-19 |
| "Sternberg agreed to not include Gatti's name in the conflict clearance form required by Orrick, so that they could avoid detection by Orrick's automated conflict clearance system." SAC ¶ 381 | "Plaintiff alleges that . . . Sternberg, in particular, is at fault for submitting a conflict clearance form that omitted Gatti's name . . .  The record does not support Plaintiff's allegations."  Dkt. 402 at 5:4-12 |

17

18

19

20

21

22

23

24

25

26

27

28

V E N A B L E   L L P<br>505 MONTGOMERY STREET, SUITE 1400<br>SAN FRANCISCO, CA 94111<br>415-653-3750

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

5.    This Court Should Not Consider Any Factual Basis That Loop Belatedly Presents

Post-complaint evidence would not retroactively cure the FAC or SAC from violating Rule 11 when they were filed.  And even if it could, Loop's refusal to produce evidence supporting the factual basis of its claims precludes it from opposing this motion with the very evidence it has refused to provide.  The prejudice and unfairness of permitting Loop to oppose this motion with such evidence is briefed in Almawave's motion to exclude, filed on June 16, 2016.

**B.    Loop And Its Attorneys Failed to Conduct a Reasonable Inquiry**

Rule 11 "imposes on any party who signs a pleading, motion, or other paper . . . an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing, and that the applicable standard is one of reasonableness under the circumstances."  *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 551 (1991).

1.    Loop And Its Attorneys' Lack Of Reasonable Inquiry Is Self-Evident

Whether Loop's inquiry was reasonable must be determined in light of the circumstances. Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment ("The standard is one of reasonableness under the circumstances.").

Loop's lack of reasonable inquiry is self-evident because it first filed a prolix complaint without allegations of Almawave wrongdoing, and then amended its complaint approximately six weeks later to plead around a motion to dismiss.  What did Loop learn in those few weeks that supported all the new allegations against Almawave?  Nothing.  The evidence Loop had all rebutted Loop's new allegations in the FAC and then later in the SAC.

Loop's invented factual allegations were (1) contradicted by the prior undisputed, sworn evidence; (2) the subject of Mr. Calafiore's admitted lack of basis, and in some instances, (3) contradicted by factual findings of this Court; and (4) not the product of a reasonable investigation.  Moreover, some of the allegations against Ms. Gatti are questionable as her status of major shareholder of Loop directly undermines any possible motivation for many of the misdeeds she is accused of.

Loop violated Rule 11 by intentionally disregarding the evidence that was presented to it. Loop's pleading strategy – "evidence be damned; plead whatever facts it takes to survive the motion" – demands Rule 11 sanctions.  Loop's conduct was more egregious than any of the reported cases; the law is clear that a reasonable investigation encompasses at the very least considering the sworn evidence it possessed.  *See, e.g., Southern Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986) (attorney's failure to review relevant court filings subjected him to Rule 11 sanctions); *Lloyd v. Schlag*, 884 F.2d 409, 412-13 (9th Cir. 1989) (affirming sanction for lack of adequate pre-filing investigation); *Hendrix v. Naphtal*, 971 F.2d 398 (9th Cir. 1992) (inadequate factual investigation warrants sanctions); *contra Greenberg v. Sala*, 822 F.2d at 887 (sanctions inappropriate where plaintiff relied on legal theories of respondeat superior instead of falsely pleading specific facts showing direction and control, and no evidence undermined the factual basis of the claim).

### 2.  Loop's Founder And CEO Admitted (And Loop Is Estopped From Denying) That Loop Failed To Make A Reasonable Inquiry

Mr. Calafiore repeatedly admitted (and Loop is estopped from denying) that Loop made no reasonable inquiry.  For example, Mr. Calafiore admitted that he might not even have read the complaints before they were filed.  Wallerstein Decl. Ex. A (Jan. 25 Calafiore Depo.) at 302:1-8 ("Did you read the [original] complaint before it was filed?"  "I believe so . . . .  I don't recall this time.  But I believe that maybe I read – read it . . . .  Yeah, maybe – yeah."); *Id.* at 313:21-25 ("Did you read this second amended complaint before it was filed?"  "Maybe . . . maybe not.").

Mr. Calafiore could not recall, and then refused to disclose, whether Loop had considered or even read the sworn evidence presented before the FAC was filed.  *See, e.g., Id.* at 342:9-15 (instruction not to answer "Before April 6, 2015, when Loop filed its first amended complaint, had you read any of the declarations submitted by my clients?"); *Id.* at 202:1-13 ("Have you ever read any declarations of Valeria Sandei?"  "I don't recall."); *Id.* at 197:21-198:3 ("Did you ever read any declarations of Valeria Sandei?" Following the instruction of counsel, "I cannot answer."); *Id.* at 319:10-18 (confirming refusal to answer whether he was even "aware that Almawave filed a motion to dismiss or throw out this complaint?").

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

1    Loop has consistently refused to provide any evidence as to what investigation had been

2    conducted, if any, prior to the complaint being filed.  *See, e.g.*, *Id.* at 317:21-318:2 (instruction

3    not to answer "Prior to February 20, 2015, did you do any investigation, other than with counsel,

4    into the facts alleged in [the original complaint]?"); *Id.* at 341:24-342:7 (instruction not to

5    answer "Between March 17, 2015 and April 6, 2015, was – did you do any investigation that did

6    not involve counsel, into wrongdoing by Almawave?"); *Id.* at 348:16-349:3 ("What new

7    information did you get between March 17 and April 6, 2015?"  "I didn't –" interruption by

8    counsel and instruction not to answer).

9    As suspected, Loop actually has done no critical investigation at all, and seems not to

10    care what the facts really are.  It had four months from when discovery opened to when it filed

11    its SAC, and did not conduct any critical discovery.  For instance, it waited until August 2015 to

12    serve discovery on Almawave and other defendants.  Wallerstein Decl. ¶ 14.  It never served

13    subpoenas on Andreessen Horowitz, Founders Fund, Horizon Ventures, Morgenthaler, or WI

14    Harper Group until Almawave did so in July 2015.  *Id.*  It never deposed Dario Vignudelli.  *Id.*

15    It waited until February 2016 to serve a subpoena on Tony DiNapoli.  *Id.*  These are but

16    examples of the critical discovery Loop declined to conduct all the while it was issuing

17    subpoenas to third parties such as Orrick, Venable, and Peter Sternberg that at best were

18    tangentially related to the case and at worst issued in bad faith.

19    Moreover, the evidence it has received has directly contracted the allegations in the SAC.

20    For instance, before the deposition of WI Harper (referred to as "Investment Fund 4" in the

21    SAC), Ms. Healy met with witnesses from WI Harper who explained that WI Harper did not

22    invest in Loop because of concerns with Loop's business model, understanding of the product

23    market, and WI Harper and Loop's inability to find other investors to support an investment in

24    Loop.  Wallerstein Decl. Ex. E (Deposition of WI Harper's corporate designee, Shahi Ghanem

25    ("WI Harper Depo.") at 21:6-11.  Mr. Ghanem's sworn deposition testimony was consistent with

26    what he told Ms. Healy in their pre-deposition meeting, and consistent with the testimony of the

27

28

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

ALMAWAVE USA, INC.'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11
Case No.: 3-15-cv-00798-HSG-DMR

1    other investors (*i.e.,* that their decision not to invest in Loop had nothing to do with Almawave).[6]

2    **III.    SANCTIONS ARE REQUIRED**

3    Rule 11 "mandates sanctions when a violation has occurred." *Greenberg v. Sala*, 822

4    F.2d at 885.  Thus, "[o]nce a court finds that an attorney has violated rule 11, it must impose

5    sanctions." *Unioil, Inc. v. E.F. Hutton & Co., Inc.*, 809 F.2d 548, 559 (9th Cir. 1986) (emphasis

6    in original) (upholding Rule 11 sanctions in excess of $294,000), *overruled on other grounds*, *In*

7    *re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996); *Townsend v. Holman*

8    *Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) ("[S]anctions must be imposed on the

9    signer of a paper if . . . the paper is 'frivolous.'"[7]).

10    A Rule 11 sanction "may include nonmonetary directives" as well as "an order directing

11    payment to the movant of part or all of the reasonable attorney's fees and other expenses directly

12    resulting from the violation." Fed. R. Civ. P. 11(c)(4).  **First**, Almawave requests that the Court

13    strike the factual allegations that lacked a reasonable basis when made.  *See, e.g., Ivanova v.*

14    *Columbia Pictures Indus., Inc.*, 217 F.R.D. 501, 512 (C.D. Cal. 2003) *aff'd sub nom. Laparade v.*

15    *Ivanova*, 116 F. App'x 100 (9th Cir. 2004) (striking all alleged facts and references in complaint

16    which were contrary to known facts or otherwise barred); *see also* Wallerstein Decl. Ex. I

17    (proposed amendment to the SAC striking Loop's frivolous allegations).

18    **Second**, Almawave seeks reimbursement of expenses, including attorneys' fees, in the

19    amount of $1,250,000 in defending against the uninvestigated, unsupported and baseless

20    allegations and resulting claims.  *See, e.g., Altmann v. Homestead Mortgage Income Fund*, 887

21    F. Supp. 2d 939, 957 (E.D. Cal. 2012) (awarding reimbursement of attorneys' fees where there

22    was no reasonable basis to support the subject allegations); *Willis v. City of Oakland*, 231 F.R.D.

23    597, 599, 602 (N.D. Cal. 2005) (awarding reimbursement of attorneys' fees where pre-filing

---

25    [6]  Almawave served this motion on Loop on June 15, 2016 and filed its Motion for Summary
26    Judgment on June 16, 2016.  To the extent that Loop does not take advantage of the safe harbor
     in Rule 11 by withdrawing its frivolous claims in light of the evidence in Almawave's Motion
27    for Summary Judgment, that, too, is a violation of Rule 11.

28    [7] "Frivolous" denotes "a filing that is both baseless and made without a reasonable and
     competent inquiry." *Townsend*, 929 F.2d at 1358.

ALMAWAVE USA, INC.'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11
Case No.: 3-15-cv-00798-HSG-DMR

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

1   investigation was inadequate); *Telesaurus VPC, LLC v. Power*, 888 F. Supp. 2d 963, 976 (D.

2   Ariz. 2012) aff'd, 584 F. App'x 905 (9th Cir. 2014) (awarding attorneys' fees for counsel's

3   groundless, speculative litigation); *Marceaux v. Lafayette City-Par. Consol. Gov't*, 14 F. Supp.

4   3d 760, 773 (W.D. La. 2014) aff'd, 614 F. App'x 705 (5th Cir. 2015) (award of attorneys' fees

5   based on plaintiffs' counsel's failure to remove allegations that had no factual basis).

6          This is an extraordinary case with misconduct that far surpasses the conduct in the

7   reported Rule 11 cases.  Almawave asks for $1,250,000 to ensure that the sanction imposed is

8   proportionate to the scope of the violation and because Almawave's actual attorney fees, not to

9   mention its costs, far exceed that number.  Wallerstein Decl. ¶ 15.

10          Loop and its lawyers were all expressly warned as early as April 2015 that they faced

11   potentially significant Rule 11 monetary sanctions.  Wallerstein Decl. Ex. F (2015 Rule 11

12   Notice).  "It is incomprehensible that none of the [many Loop] attorneys of record paid any

13   attention to [Almawave's] letters accusing [them] and [their] client of misconduct and

14   threatening a sanctions motion."  *Moser*, 366 F. Supp. 2d at 984.

15          Rather than consider their warning, and the mountain of evidence presented, Loop and its

16   attorneys decided instead to double-down and pursue a scorched-earth litigation strategy, filing

17   mountains of paper, motions for reconsideration, requests for clarification, notices and more.

18   Loop's tactics resulted in litigation that this Court correctly called "unprecedented,"

19   "outrageous," "not acceptable," and "unjustified." Dkt. 415, 680; February 2, 2016 Transcript of

20   Proceedings at pp. 5-7.  Unfortunately, as strong as was this Court's characterization, it also was

21   an understatement.

22          In assessing the appropriate sanction, it is within the Court's inherent authority to

23   consider how the litigation was conducted.  *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765

24   (1980) ("this Court recognized the 'well-acknowledged' inherent power of a court to levy

25   sanctions in response to abusive litigation practices"); *Hall v. Cole*, 412 U.S. 1, 15 (1973)

26   ("'[B]ad faith' may be found, not only in the actions that led to the lawsuit, but also in the

27   conduct of the litigation."); see also  28 U.S.C. § 1927 (any attorney "who so multiplies the

28   proceedings in any case unreasonably and vexatiously may be required by the court to satisfy

1  personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such

2  conduct").  Loop's excessively litigious approach in pursuing the Almawave Defendants is

3  presumably attributable to a dispute among Loop's shareholders, Ms. Gatti having been a major

4  shareholder and senior officer of Loop, combined with Loop's fledgling status as a start-up and

5  inability to raise financing and Loop's investors (including its trial counsel, who is also the sister

6  of Loop's CEO) attempting to obtain a return on their investment from a party with deep

7  pockets.  To that extent, this Court may wish to obtain further evidence before determining the

8  precise amount of sanctions.

9      Rule 11 contemplates sanctions against "any attorney, law firm, or party that violated the

10  rule or is responsible for the violation."  Fed. R. Civ. P. 11(c)(1).  Loop's FAC was electronically

11  signed and submitted using a signature block of attorneys Valeria Calafiore Healy of Healy LLC

12  and Daniel Weinberg of Freitas Angell Weinberg.[8]  Sanctions should be imposed against the

13  lawyers who signed the SAC, as well as their firms, and Loop itself.[9]

14  **CONCLUSION**

15      For all the foregoing reasons, Almawave asks that the Court grant its motion and impose

16  Rule 11 sanctions in accordance with the Proposed Order submitted herewith.

17      //

18      //

[8] Mr. Weinberg was expressly warned in the 2015 Rule 11 Notice, and several times thereafter, that he and his firm faced liability separate and apart from Ms. Healy.  In any event, attorneys acting as local counsel have an independent non-delegable duty under Rule 11.  *See generally Greenfield v. United States Healthcare*, 146 F.R.D. 118 (E.D. Pa. 1993), *aff'd sub nom. Garr v. United States Healthcare*, 22 F.3d 1274 (3d Cir. 1994); *see also Val-Land Farms, Inc. v. Third Nat'l Bank*, 937 F.2d 1110, 1118 (6th Cir. 1991) (rejecting notion that sanctions are inappropriate for local counsel who rely on primary outside counsel because if local attorneys "signed complaint relying entirely on the representations of [outside counsel], so much the worse for them").

[9] "Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee."  Fed. R. Civ. P. 11(c)(1).

21

ALMAWAVE USA, INC.'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11
Case No.: 3-15-cv-00798-HSG-DMR

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

1

2  Dated: July 7, 2016

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

VENABLE LLP

By: <u>/s/ Thomas E. Wallerstein</u>
  Thomas E. Wallerstein (SBN 232086)
  Kimberly Culp (SBN 238839)
  505 Montgomery Street, Suite 1400
  San Francisco, CA 94111

  *Attorneys for Almaviva S.p.A.,*
  *Almawave S.r.l., and Almawave USA, Inc.*

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

ALMAWAVE USA, INC.'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11
Case No.: 3-15-cv-00798-HSG-DMR