1  VALERIA CALAFIORE HEALY (*pro hac vice*)
   HEALY LLC
2  154 Grand Street
   New York, New York  10013
3  Telephone:     (212) 810-0377
   Facsimile:     (212) 810-7036
4
   DANIEL J. WEINBERG (SBN 227159)
5  FREITAS ANGELL & WEINBERG LLP
   350 Marine Parkway, Suite 200
6  Redwood Shores, California  94065
   Telephone:     (650) 593-6300
7  Facsimile:     (650) 593-6301
8  Attorneys for Plaintiff
   LOOP AI LABS INC.
9

10              UNITED STATES DISTRICT COURT

11         FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13  LOOP AI LABS INC.,                CASE NO.: 3:15-cv-00798-HSG-(DMR)

14                                    **PLAINTIFF LOOP AI LABS INC.'S
                  Plaintiff,          OPPOSITION TO ALMAVIVA
15                                    DEFENDANTS' MOTIONS FOR
                  v.                  RULE 11 SANCTIONS AT
16                                    DKT.  801 AND LOOP AI'S
                                      REQUEST FOR THE AWARD OF
17  ANNA GATTI, et al,                FEES AND COSTS FOR
                                      RESPONDING TO THIS MOTION**
18                Defendants.
                                      Action Filed:  February 20, 2015
19                                    Trial Date: September 19, 2016

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

GLOSSARY ....................................................................................................................... v

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ...................................................................................................................... 8

    I.    Rule 11 Sanctions Are Reserved For Extraordinary Circumstances Not Present Here ....... 8

    II.   The Almaviva Defendants' Rule 11 Motion Was Not Timely. The Timing of The Motion Also Suggests it Was Brought For Improper Purposes ................................................... 10

    III.  The Court Already Has Found That Support Exists For Core Allegations Made By Loop AI In The Complaint ........................................................................................................ 12

    IV.  The "Evidence" Proffered By The Almaviva Defendants In Support Of The Rule 11 Motion Is Wholly Inadequate ............................................................................................ 13

        A.  Almaviva has failed to rebut Loop AI's evidence regarding Almaviva's patent application .......................................................................................................... 13

        B.  Almaviva has failed to rebut Loop AI's evidence regarding Almaviva's Misappropriation of Loop AI's trade secrets ................................................... 15

        C.  Almaviva has failed to rebut Loop AI's evidence regarding Almaviva's conspiracy to buy Loop AI on the cheap ......................................................... 16

        D.  Almaviva has failed to rebut Loop AI's evidence regarding Almaviva's interference with Loop AI's contract with Gatti ................................................ 16

        E.  Loop AI's allegations regarding Peter Sternberg have a substantial basis ........... 17

    V.   Under Ninth Circuit Law, In Addressing the Rule 11 Motion The Court Is Required To Consider All Evidence That Supports Loop AI's Allegations, And Not Merely The Evidence That Was Known To Loop AI When It Filed Its Complaint ........................... 19

    VI.  Almaviva's "Estoppel" Theory Is Unsupported and Incorrect ..................................... 21

VII.    Almaviva Should be Required to Pay Loop AI's Costs Incurred in Responding to The Rule 11 Motion ........................................................................................................22

CONCLUSION ..............................................................................................................23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Page**

*Benedict v. Hewlett-Packard Co.*,
No. 13-CV-00119-LHK, 2014 U.S. Dist. LEXIS 7323 (N.D. Cal. Jan. 21, 2014) ..........20

*Brockman Music v. Aire/Ink Inc.*,
151 F.R.D. 652 (D. Mont. 1993) ................................................8

*Gaiardo v. Ethyl Corp.*,
835 F.2d 479 (3d Cir. 1987) ................................................12

*GN Resound A/S v. Callpod, Inc.*,
No. C 11-04673 SBA, 2013 WL 5443046 (N.D. Cal. Sept. 30, 2013).....................7, 8, 11

*Huntair, Inc. v. Gladstone*,
774 F. Supp. 2d 1035 (N.D. Cal. 2011) ................................................17

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
2007 WL 6137003 (C.D. Cal. Apr. 16, 2007) ................................................21

*In re Yagman*,
803 F.2d 1085 (9th Cir. 1986) ................................................0

*Islamic Shura Council of S. California v. F.B.I.*,
757 F.3d 870 (9th Cir. 2014) ................................................18

*Man Lee Trading Co. v. Duval Motors of Gainesville, Inc.*,
No. C08-03887 MHP, 2009 U.S. Dist. LEXIS 15566 (N.D. Cal. Feb. 26, 2009) .............8

*Matter of Yagman*,
796 F.2d 1165 (9th Cir.) ................................................11

*Moore v. Keegan Mgmt. Co. (In re Keegan Mgmt. Co., Sec. Litig.)*,
78 F.3d 431 (9th Cir. 1996) ................................................5, 20

*Moser v. Bret Harte Union High Sch. Dist.*,
366 F. Supp. 2d 944 (E.D. Cal. 2005) ................................................10

*Nakash v. United States Dep't of Justice*,
708 F. Supp. 1354 (S.D.N.Y. 1988)................................................11, 12

*Netbula, LLC v. Bindview Dev. Corp.*,
No. C-06-0711 MJ (EMC), 2007 WL 1694820 (N.D. Cal. June 11, 2007) ....................11

*Operating Eng'rs Pension Trust v. A–C Co.*,
859 F.2d 1336 (9th Cir.1988) ................................................7, 8

*PAE Gov't Servs. v. MPRI, Inc.*, 514 F.3d 856 (9th Cir. 2007)
    514 F.3d 856 (9th Cir. 2007) .................................................................. *passim*

*Patelco Credit Union v. Sahni,*
    262 F.3d 897, 913 (9th Cir. 2001) .........................................................22

*Rachel v. Banana Rep. Inc.*,
    831 F.2d 1503 (9th Cir. 1987) ...............................................................20

*Rich v. TASER Int'l, Inc.,*
    2012 U.S. Dist. LEXIS 107927 (D. Nev. Aug. 2, 2012). ......................22

*Schoggen v. Haw. Aviation Contract Servs.*,
    No. 12-00049 LEK-BMK, 2012 U.S. Dist. LEXIS 172247 (D. Haw. Dec. 4, 2012) ........8

## **STATUTES**

Fed. R. Civ. P. 11, Advisory Committee Notes (1993 Amendments) .................................. *passim*

Fed. R. Civ. P. 11 ................................................................................................ *passim*

Fed. R. Civ. P. 26 ...................................................................................................4

Fed. R. Civ. P. 56 ...................................................................................................4

# GLOSSARY

| Abbreviation | Definition |
|---|---|
| Action | Designates the civil action pending in the United States District Court for the Northern District of California, styled *Loop AI Labs Inc. v. Gatti et al*, N.D. Cal. 15-798, filed on February 20, 2015. |
| Almaviva or Almaviva Defendants | Defendants Almaviva S.p.A., Almawave S.r.l., and Almawave USA Inc.. "Almaviva" is used throughout the brief solely for ease of reference. |
| Summary Judgment Appendix | Designates Plaintiff's Appendix of Summary Judgment Exhibits ("SJX-___") filed at the Dkts. Listed in Exhibit 4 to the Declaration of V.C. Healy dated July 21, 2016 |
| Complaint | Second Amended Complaint filed at Dkt. 210 |
| Decl. | Declaration |
| Dkt. | Designates entries on the ECF docket of the District Court for the Northern District of California, N.D. Cal. Civil Action No. 3:15-cv-0798-HSG-(DMR) |
| Federal Rules | Federal Rules of Civil Procedure |
| Italian Defendants | Defendants Almaviva S.p.A. and Almawave S.r.l. |
| Loop AI | Plaintiff Loop AI Labs Inc. |
| SJX | Loop AI's Summary Judgment Appendix |

# MEMORANDUM OF POINTS AND AUTHORITIES[1]

Plaintiff Loop AI Labs Inc. ("Loop AI") respectfully submits this Opposition to the Almaviva Defendants' Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11 filed at Docket 801 (the "Rule 11 Motion"). In support of this Opposition, Loop AI respectfully submits the Declaration of V.C. Healy, dated July 21, 2016 ("VCH Decl.") and supporting evidence, Loop AI's evidence of record submitted in support of Loop AI's Opposition to the Almaviva Defendants Summary Judgment Motion, set forth in Loop AI's Summary Judgment Appendix, and all additional evidence that the Court may receive into evidence.

## PRELIMINARY STATEMENT

The Rule 11 Motion is the latest in a series of improper and meritless attempts by a desperate group of defendants to escape liability for their wrongdoing. That wrongdoing is based on numerous undisputed facts and mountains of evidence, both direct and circumstantial, that the Almaviva Defendants have never even attempted to explain, and have simply ignored. The Almaviva Defendants are desperate because their misguided strategy for this Action has failed, and now they must face the consequences of that failure. The Almaviva Defendants' strategy has involved issuing blanket, unsubstantiated denials of all allegations against them, seeking to have the Italian Defendants (the only Almaviva Defendants with assets) dismissed from this Action on unfounded jurisdictional grounds, which they have nonetheless continued to advance for over one year at great cost and expense to Loop AI; having the Italian Defendants refuse to participate in *any* merits discovery; concealing and improperly withholding material evidence; interfering with third party witnesses; engaging in vexatious and improper motion practice. All of this transparently was designed to impede and impose crushing costs on Loop AI, which the Almaviva Defendants have disparaged at various points in this Action as "struggling." *See, e.g.,* Dkt. 38 at 1, Dkt. 60 at 1. Counsel for the Almaviva Defendants warned at the beginning of this Action that this would be Almaviva's strategy. *See, e.g.,* VCH Decl. at ¶

---

[1] All defined terms are set forth in the Glossary *supra*. For ease of reference, the three Almaviva entities are referred to as Almaviva where not necessary to distinguish between each of these entities.

4, Exhibit 1.  But despite the Almaviva Defendants' improper machinations, Loop AI has marshaled an overwhelming body of evidence in support of its claims against them.  Loop AI has presented a substantial portion of that evidence to the Court in support of its opposition to the Defendants' multiple summary judgment motions, including the summary judgment motions brought by the Almaviva Defendants.[2]

The Almaviva Defendants have seen the evidence and know that this case is going to trial.  Indeed, in their most recent provocation, filed at Dkt. 840, Almaviva admits that this case is going to trial and seeks instead the revocation of Loop AI's lead counsel's "pro hac vice status" as a sanction, "but not at the expense of granting Loop [AI] a continuance of the trial date."  Dkt. 840 at 3:25-26.  The Almaviva Defendants apparently have decided to try to fight their way out of liability by making constant unfounded applications for extraordinary relief and disgraceful accusations against Loop AI's counsel.  They have applied for terminating sanctions (*see, e.g.,* Dkt. 547 at 2; 691 at 1; 715 at 1; 816 at 2); they have applied for orders limiting Loop AI's ability to use the evidence it has marshaled (*see, e.g., id.*; Dkt. 738); they have intentionally published to the Court and the media false and defamatory and outrageous accusations that Loop AI's lead counsel, Valeria Healy, is allegedly "violent" and poses "a physical danger to all concerned," (*see, e.g.,* Dkt. 840 at 1 and 4), and now in their Rule 11 Motion, they are heaving another Hail Mary pass toward the end zone with a request that the Court gut Loop AI's Complaint less than two months before trial.

Rule 11 is an extraordinary remedy, reserved for rare and exceptional cases where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose.  Almaviva does not and cannot show that Loop AI's Complaint represents one of those rare and exceptional cases.  Its flimsy attempt to do so is transparently dishonest.  Almaviva is dishonest about the record – it continues to make absurd and patently false statements, such as "[Loop AI] has refused to disclose any factual basis for its allegations of

---

[2] Loop AI's Opposition to the Almaviva Defendants' Motions for Summary Judgment, filed at Dkt. 779, as corrected at Dkt. 798-1, and the materials submitted in support of that opposition, are respectfully incorporated into this Opposition.

wrongdoing by [the Almaviva Defendants]."[3]   And Almaviva is dishonest about the law – the Rule 11 Motion is premised on a legal theory – that all that matters is what Loop AI and its lawyers knew when they initiated the action – that has definitively been rejected by the Ninth Circuit.  This is not the first time that the Almaviva Defendants file motions misrepresenting the applicable legal standards, and imposing substantial costs on Loop AI in having to defend against these frivolous filings.

The Rule 11 Motion suffers from numerous, serious deficiencies, of both a technical and a substantive nature, which require that it be dismissed.  Notably:

- **The Rule 11 Motion is untimely.**  According to the Almaviva Defendants, the deficiencies they purport to identify in the Complaint were immediately apparent to them in April 2015.  *See* Dkt. 801 at 5:5.  Nonetheless, for reasons they do not explain, the Almaviva Defendants waited one year and two months from their notice, and ten months after the Second Amended Complaint before serving and filing their Rule 11 Motion. Inappropriate delay in making a Rule 11 motion is grounds for denial on that basis alone. This especially appropriate in this case, where the circumstances show that the purpose and timing of Almaviva's Rule 11 Motion was to obtain an improper tactical advantage, to impose an unnecessary burden on Loop AI on the eve of trial, and not to further the purposes for which Rule 11 was adopted.  The Court should exercise its discretion to dismiss the Rule 11 Motion as untimely.

- **The Rule 11 Motion fails to address the Court's prior findings regarding the existence of evidence supporting Loop AI's key allegations.**  A Rule 11 Motion is not a substitute for a ruling on the merits. If Almaviva believed Loop AI's Complaint to lack a basis, nothing stopped those parties from seeking dismissal of the action.  Instead, the limited dismissal motions that the Almaviva Defendants did file, were baseless, and were denied

---

[3] Dkt. 801 at 21 (citing declarations provided by Mr. Wallerstein). Respectfully, such a statement could not have been made in good faith.  As discussed below, the Court already has acknowledged the factual bases asserted by Loop AI for many of its allegations.  *See, e.g.,* Dkt. 183 at 5.

each time virtually in their entirety. When the Court addressed the Italian Defendants'

second motion to dismiss for lack of jurisdiction, the Court found that Loop AI had

presented "significant and uncontested circumstantial evidence that Gatti's relationship

with the Italian Defendants was undertaken for an improper purpose." Dkt. 183 at 5.

The Court made additional findings when it ruled on the Italian Defendants' second

jurisdictional motion, as discussed below, to the effect that other core allegations in the

Complaint were sufficiently supported by evidence. Those findings alone are sufficient

to support dismissal of the Rule 11 Motion, because the Court's findings go to the heart

of Loop AI's case against the Almaviva Defendants. Further, nothing stopped the

Almaviva Defendants from immediately moving for summary judgment, which is a

motion that can be filed at any time up to 30 days after the close of discovery. *See* Fed.

R. Civ. P. 56. Instead, Almaviva waiting until the last minute to move for summary

judgment, and then when it finally moved it simply repeated its arguments from the prior

Rule 12 Motions to dismiss accompanies by its usual empty denials.

- ***The Rule 11 Motion is being used to improperly obtain access to Loop AI's core
  attorney work-product.*** The Rule 11 Motion improperly seeks to compel disclosure of
  information regarding Loop AI's counsel's pre-filing investigation, which information
  constitutes core attorney-work product and is protected from disclosure. Indeed, when
  Almawave USA sought to compel disclosure of this identical information in discovery,
  the Court denied its request. *See* Order at Dkt. 465 at 2.[4] The Almaviva Defendants
  cannot use a Rule 11 Motion to seek to pry Loop AI's attorney work-product open under
  the false pretense of outrageous accusations of unethical conduct.

---

[4] Almawave USA "Interrogatory No. 4 asks Loop [AI] to describe 'any investigation conducted regarding potential claims against, or potential wrongdoing committed by Almawave, including but not limited to identifying the date when any such investigation was conducted and who conducted the investigation.' Almawave did not explain how the information sought by the interrogatory is relevant to any party's claim or defense and proportional to the needs of the case pursuant to Federal Rule of Civil Procedure 26(b)(1). Accordingly, its motion to compel further response to interrogatory No. 4 is denied without prejudice." Dkt. 465 at 2.

- ***The Rule 11 Motion misrepresents the applicable legal standards.*** The Rule 11 Motion is based on the false premise that all that matters is what Loop AI or its counsel knew when Loop AI filed its Complaint. Thus, the Almaviva Defendants focus their analysis entirely on the investigation conducted by Loop AI before it filed the Second Amended Complaint and on what Loop AI's officers, during their testimony *as percipient witnesses* (and not as Rule 30(b)(6) witnesses), could recall they knew at the time the Complaint was filed. But that is not the law in the Ninth Circuit. The Ninth Circuit has ruled definitively that a court considering a Rule 11 motion should consider *all* the evidence supporting the challenged allegations (including evidence gathered after the filing of the complaint), and that the district court *should not* confine its analysis to the evidentiary support that existed when the complaint was filed.[5] Here, that means the Court's evaluation of the Rule 11 Motion should take into account the entire, overwhelming body of evidence recently presented by Loop AI in opposition to the Almaviva Defendants' summary judgment motions. The Almaviva Defendants have no way to carry their burden to show, in light of that body of evidence, that Loop AI and its counsel had no reasonable basis for the claims asserted against the Almaviva Defendants in the Complaint. Their Rule 11 Motion, respectfully, is another frivolous and outrageous provocation and must be denied.

- ***Almaviva's attempt to avoid addressing Loop AI's overwhelming evidence by invoking an "estoppel" theory is unfounded and indeed frivolous.*** Almaviva clearly recognizes that Loop AI's evidence as presented to the Court ***before*** Almaviva filed its Rule 11 Motion, provides a more than sufficient basis to support Loop AI's allegations in the Complaint. That is why Almaviva pretends, as discussed above, that evidence gathered after the filing of the Complaint may not be considered in a Rule 11 proceeding (even

---

[5] *Moore v. Keegan Mgmt. Co. (In re Keegan Mgmt. Co., Sec. Litig.)*, 78 F.3d 431 (9th Cir. 1996). ("Cabraser and Jaeger argue that the district court ***erred by failing to consider after-acquired factual evidence that would have adequately supported the complaint. We agree***." *Id.* at 433. (emphasis added)).

though, as discussed above, Ninth Circuit law requires the Court to consider that evidence).  It is also why Almaviva resorts to an unprecedented estoppel theory.  According to Almaviva, the estoppel theory would allow the Court to impose Rule 11 sanctions, even though Loop AI and its counsel have identified ample evidence supporting the allegations in the Complaint, because the Court should prohibit Loop AI and its counsel from relying on that evidence.  The Court apparently should do so because Almaviva was dissatisfied with Loop AI's discovery.  Respectfully, this line of reasoning is preposterous.  As the record in this case makes clear, Almaviva's dissatisfaction with Loop AI's discovery is groundless.[6]  Further, Almaviva cannot plausibly claim that Loop AI has concealed the evidence supporting Loop AI's allegations: Loop AI has presented large volumes of evidence in support of its claims and has explained in various filings the theories applicable to that evidence. Almaviva has had an ample opportunity to review and consider that material.  It must know the evidence supports Loop AI's claims.  Otherwise, it would have no reason to try to suppress it.  Almaviva cites no support for its theory that a party to a civil action is required to share its entire case with its opponent, allegation by allegation (and of course no such obligation exists).  And Almaviva cites only one case in support of its estoppel theory, and as discussed below that case has no relevance at all here.  Indeed, as Almaviva fails to advise the Court, the Ninth Circuit has expressly held that it is improper for a district court to selectively delete portions of a complaint in a Rule 11 proceeding based on a theory like this, absent a finding of bad faith.[7] Respectfully, the estoppel theory is frivolous and unfounded.

---

[6] *See, e.g.,* Dkt. 807; Dkt. 834 to 834-10.  In addition, the Italian Almaviva Defendants have never served Loop AI any discovery request or deposition notice.  Their frivolous complaint about allegedly deficient discovery they never requested is further evidence of their bad faith.
[7] "The district court has no free-standing authority to strike pleadings simply because it believes that a party has taken inconsistent positions in the litigation. Rather, the district court's powers are generally limited to those provided by the Federal Rules of Civil Procedure." *PAE Gov't Servs. v. MPRI, Inc.*, 514 F.3d 856, 859 (9th Cir. 2007).

- ***The Rule 11 Motion misrepresents the relevance of deposition testimony given by Loop AI's officers.*** The Almaviva Defendants refer extensively to deposition testimony of Gianmauro Calafiore and other Loop AI officers. For example Mr. Calafiore, *who appeared as a fact witness in the deposition cited,* declined on counsel's instructions to answer questions on various topics outside of his personal knowledge, including why Almaviva stole Loop AI's trade secrets; what Almaviva saw in a trade secrets list; whether Almaviva wanted to acquire Loop AI; and why Almawave hired Anna Gatti. The Almaviva Defendants' exhaustive recital of the responses to their own misguided line of questioning proves nothing: Loop AI has never claimed that Mr. Calafiore or anyone else at Loop AI has personal knowledge of what Almaviva knew or why it acted as it did. Almaviva also cites instances in which Loop AI's officers declined on advice of counsel to answer deposition questions where the responses would have implicated privileged information. As discussed below, Rule 11 sanctions are appropriate only in exceptional circumstances, on a showing that the document in question (here, the Complaint) was "clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose."[8] To the extent the snippets of deposition testimony that Almaviva pasted into charts in its brief have any discernible purpose, they appear to be an attempt to show what Loop AI and its counsel did and did not know at the time the Complaint was filed. But as discussed elsewhere in this Opposition, that analysis is irrelevant in the Ninth Circuit. Almaviva's ramblings about deposition testimony are also incorrect and entirely out of context. They certainly provide no basis for a Rule 11 Motion.
- ***Almaviva's repeated insistence that it has produced evidence that compellingly rebuts Loop AI's claims does not make its contention true. It is not.*** The Rule 11 Motion contains repeated assertions to the effect that the Almaviva Defendants have disproved Loop AI's allegations. But the support advanced for these assertions is the same tired set

---

[8] *GN Resound A/S v. Callpod, Inc.*, No. C 11-04673 SBA, 2013 WL 5443046, at *2 (N.D. Cal. Sept. 30, 2013) (quoting *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988)).

of affidavits relied on by the Almaviva Defendants since the beginning of this case –
containing self-serving, unsubstantiated statements by the Almaviva Defendants' own
officers and employees.  Respectfully, the Court should find Almaviva's affidavit
testimony inadmissible to the extent it is presented by individuals who refused to appear
for depositions in the merits phase of discovery or otherwise covers topics on which the
Italian Defendants improperly refused to provide discovery. *See, e.g.,* Dkt. 731.  Even if
the Court finds Almaviva's affidavit testimony admissible, it should disregard it because
it is unsubstantiated and conclusory and therefore has no probative value.  Certainly, as
more fully explained below, Almaviva's affidavit testimony is inadequate to rebut Loop
AI's evidentiary showing, much less to support the finding of bad faith required in a Rule
11 proceeding.

The Almaviva Defendants' Rule 11 Motion is groundless. The Court should dismiss the
Motion and sanction the Almaviva Defendants and their counsel for having brought it.

## ARGUMENT

## I.    Rule 11 Sanctions Are Reserved For Extraordinary Circumstances Not Present Here.

"'Rule 11 is an extraordinary remedy, one to be exercised with extreme caution.'"
*Operating Eng'rs Pension Trust v. A–C Co.*, 859 F.2d 1336, 1345 (9th Cir.1988)).  The Ninth
Circuit has expressly directed that Rule 11 sanctions be imposed with "restraint."  *Id.*  Rule 11
"should be reserved for 'rare and exceptional case[s] where the action is clearly frivolous, legally
unreasonable or without legal foundation, or brought for an improper purpose.'"  *GN Resound
A/S v. Callpod, Inc.*, No. C 11-04673 SBA, 2013 WL 5443046, at *2 (N.D. Cal. Sept. 30, 2013).
Those are cases involving truly egregious of conduct.  *See, e.g., Man Lee Trading Co. v. Duval
Motors of Gainesville, Inc.*, No. C08-03887 MHP, 2009 U.S. Dist. LEXIS 15566, at *7-9 (N.D.
Cal. Feb. 26, 2009) (sanctioning plaintiff for alleging that it was not given a chance to oppose the
motion to dismiss in writing form); *Brockman Music v. Aire/Ink Inc.*, 151 F.R.D. 652 (D. Mont.
1993) (sanctioning defendant for attempting to circumvent law and take oral deposition of

protected parties in a copyright action);[9] *Schoggen v. Haw. Aviation Contract Servs.*, No. 12-00049 LEK-BMK, 2012 U.S. Dist. LEXIS 172247 (D. Haw. Dec. 4, 2012) (upholding sanctions where all of plaintiffs claims were barred by res judicata and thus, were legally baseless).

Moreover, the Ninth Circuit has held that to establish a Rule 11 violation, a party must show that the alleged violator acted in bad faith. *See PAE Gov't Servs. v. MPRI, Inc.*, 514 F.3d 856, 859 n. 3 (9th Cir. 2007) ("Though false factual assertions may be evidence of bad faith, they are usually not; generally, they are the result of ignorance, misunderstanding or undue optimism."). "If bad faith is found, in accordance with the procedures outlined in Rule 11, the district court has wide latitude to impose sanctions, including the striking of the offending pleading." *Id.* "But ***absent a finding of bad faith***, factual allegations in the complaint (or answer) must be tested through the normal mechanisms for adjudicating the merits." *Id.* (emphasis added). As Chief Judge Kozinski clearly explained:

> As the litigation progresses, and each party learns more about its case and that of its opponents, some allegations fall by the wayside as legally or factually unsupported. This rarely means that those allegations were brought in bad faith or that the pleading that contained them was a sham. Parties usually abandon claims because, over the passage of time and through diligent work, they have learned more about the available evidence and viable legal theories, and wish to shape their allegations to conform to these newly discovered realities. We do not call this process sham pleading; we call it litigation.

*Id.* at 859. Despite the fact that the Almaviva Defendants had over one year to research their Rule 11 Motion, they apparently missed this controlling decision, which they did not cite in their Rule 11 Motion. Instead, as it is customary with Almaviva's filings, they misrepresent to the Court that "Loop [AI]'s bad faith ***may be inferred and assumed*** if the factual allegations are determined to be baseless or not subject to prior reasonable investigation." Dkt. 801 at 7:19-21 (emphasis added). Almaviva's citation to *Moser v. Bret Harte Union High Sch. Dist.*, 366 F. Supp. 2d 944, 979 (E.D. Cal. 2005) for the incorrect legal standard they present is also frivolous. If *Moser* teaches anything, it is

[9] In this case, for instance, despite the fact that discovery is closed, on **July 15, 2016**, the Almaviva Defendants **improperly served two Subpoenas to a Boston court reporter**, not only violating the Court's Case Management Order, but seeking discovery over matters having nothing to do with any claim in this case.

that a party and its counsel have duty of candor to the Court and an affirmative duty to refrain from misrepresenting and distorting applicable legal standards and the record. In *Moser* the court imposed sanctions after finding that a defendant and its counsel acted in "bad faith" for engaging in conduct that is virtually indistinguishable from the conduct of the Almaviva Defendants and its counsel in this case:

> The defendants' "actions in these proceedings have greatly increased the work of Plaintiff's attorney and the Court itself, as well as delayed the just resolution of the case. The objectionable acts fall into four general categories: (1) bad faith, frivolous objections, (2) misstatement and mischaracterization of facts contained in the administrative record, (3) misstatements of the applicable law, and (4) intentional obstruction of the speedy and just resolution of the dispute. Taken as a whole, they show that Defendant and its counsel made a concerted effort to distort, if not outright deceive, the court when shaping the court's view of both the record and applicable law in the case. By consistently presenting untruths and half-truths, Defendant and its counsel obstructed the fair, just, and expeditious resolution of the proceedings. These actions were undertaken in violation of, and with reckless disregard for counsel's duties to the court. When evaluated as a whole, the actions of counsel and the District amount to bad faith and are sanctionable."

*Id.* at 959. The Almaviva Defendants do not even argue, let alone establish, that they meet the mandatory "bad faith" standard established by the Ninth Circuit in *PAE, above.* Indeed, the phrase "bad faith" appears in their brief only three times, in passing. *See* Dkt. 801 at 7:18-19 and 18:18. The Almaviva Defendants lacked any reasonable basis in fact and law for bringing their Rule 11 Motion, for improperly threatening Loop AI's lead and local counsel with personal financial pain, for improperly commanding those lawyers and their firm to either "withdraw the Second Amended Complaint" or "contact their respective insurance carriers immediately." *See* VCH Decl. at ¶ 6, Exhibit 3. This conduct by Almaviva and its counsel is improper and should not be condoned by the Court.

## II. The Almaviva Defendants' Rule 11 Motion Was Not Timely. The Timing of The Motion Also Suggests it Was Brought For Improper Purposes.

A Rule 11 motion "should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely." Fed. R. Civ. P. 11, Advisory Committee Notes (1993 Amendments); *see also Netbula, LLC v. Bindview Dev. Corp.*, No. C-06-0711 MJ (EMC), 2007 WL: 1694820, at *1 (N.D. Cal. June 11, 2007) (explaining the Rule 11 motion "was

untimely because it was not filed until many months after Defendants' offending contentions were made and long after the presiding judge had already considered or ruled upon the papers containing the offending contentions"). "[P]rompt action helps enhance the credibility of the rule and, by deterring further abuse, achieve its therapeutic purpose." *Matter of Yagman*, 796 F.2d 1165, 1183 (9th Cir.), *opinion amended on denial of reh'g, sub nom. In re Yagman*, 803 F.2d 1085 (9th Cir. 1986).

Here, the Rule 11 Motion was filed over nine months after Loop AI filed its Second Amended Complaint, after the Court ruled on a series of motions to dismiss brought by the Almaviva Defendants, and at essentially the same time the Almaviva Defendants filed their summary judgment motion. The Almaviva Defendants argue that they first discovered the alleged Rule 11 violations immediately upon the filing of the First Amended Complaint and that they even served a purported Rule 11 "warning letter" on April 27, 2015.[10] Dkt. 801 at 5. They fail to explain, however, why, having discovered the alleged violations so long ago, they waited all this time to serve it and file it. The timing of the Rule 11 Motion suggests it was filed to obtain a tactical advantage, while the Almaviva Defendants' Motion for Summary Judgment is pending.[11] It is improper to use a Rule 11 motion as a way to bolster a party's summary judgment or as a form of motion to dismiss. *See, e.g., Nakash v. United States Dep't of Justice*, 708 F. Supp. 1354, 1366-70 (S.D.N.Y. 1988); *GN Resound A/S v. Callpod, Inc.*, No. 11-04673 SBA, 2013 U.S. Dist. LEXIS 142822 at *15 (N.D. Cal. Sept. 30, 2013).

"A request for sanctions under Rule 11 is not a tactical device. Asserting [such] a

---

[10] In fact, their Rule 11 "warning letter" was another improper intimidation attempt, in which Almaviva's counsel falsely accused Loop AI's counsel of "ethical violations." *See* VCH Decl. at Exhibit 2 ("I write … to express our concern about what appears to be a violation of ethical duties…"). If Almaviva's counsel believed an ethical violation had occurred, its counsel was required to immediately report it. *See* VCH Decl., Exhibit 1. What Almaviva's counsel was not permitted to do, however, was to use threats of reporting ethical violations to seek to extort from Loop AI an outcome not warranted by the facts. *See id.*
[11] The Rule 11 Motion addressed many of the same issues presently before the Court on Almaviva's summary judgment motion. Filing it allowed Almaviva to buttress its contentions made in that motion. As set forth above, the letter sent by Almaviva's counsel accompanying the Rule 11 sanctions was clearly designed to intimidate. *See supra* and VCH Decl., Exhibit 1. Presumably because Almaviva recognizes the improper nature of that letter, it did not submit it to the Court with its Motion.

request for strategic reasons when there is any colorable argument supporting an adversary's position constitutes an 'improper purpose' within the meaning of the Rule." *Nakash,* 708 F. Supp. at 1370. *See also, e.g.,* Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments) ("Rule 11 motions… should not be employed… to test the sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes."); *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 484 (3d Cir. 1987) ("The use of Rule 11 as an additional tactic of intimidation and harassment has become part of the so-called 'hardball' litigation techniques espoused by some firms and their clients. Those practitioners are cautioned that they invite retribution from courts which are far from enchanted with such abusive conduct. A court may impose sanctions on its own initiative when the Rule is invoked for an improper purpose.").

Respectfully, under these circumstances, the Court should exercise its discretion to reject the Rule 11 Motion as untimely and filed for an improper purpose.

### III. The Court Already Has Found That Support Exists For Core Allegations Made By Loop AI In The Complaint.

Almaviva's preposterous argument that "[Loop AI] has refused to disclose any factual basis for its allegations of wrongdoing by [Almaviva]" (Dkt. 801 at 21) is flatly inconsistent with findings made by the Court in earlier phases of this Action. That Almaviva had the temerity of making this argument after Loop AI responded to its summary judgment motion, producing hundreds of items of evidence, establishes Almaviva's bad faith in presenting this argument to the Court.

When the Court addressed the Italian Defendants' first motion to dismiss for lack of jurisdiction, the Court found there was "significant and uncontested circumstantial evidence that Gatti's relationship with the Italian Almaviva Defendants was undertaken for an improper purpose." Dkt. 183 at 5. In that same decision, the Court found that:

> Loop AI further alleges that the first named inventor on the patent application is Valeria Sandei, an employee of the Italian Almaviva Defendants with no technology background whatsoever. Id. *These uncontested allegations also support an inference, at least at the pleading stage, that the Italian Almaviva Defendants participated in the scheme alleged in the FAC*.

*Id.* (emphasis added.)

In its decision on the second motion to dismiss for lack of jurisdiction, the Court found based on the evidence presented that "on February 17, 2014, Gatti requested and received access to Loop AI's technical information to which she previously had no access" (which Loop AI relied on in support of its allegation that Gatti was misappropriating Loop AI's trade secrets and furnishing them to the Almaviva Defendants). Dkt. No. 726 at 7. The Court also found that email exchanges between Ms. Gatti and Ms. Sandei are "at least consistent with Plaintiff's theory that the Italian Defendants solicited Loop AI's business contacts, such as by working with the same law firm, and the same accountant." *Id.* at 9.

Respectfully, in light if this record it is difficult to fathom how the Almaviva Defendants can have brought the Rule 11 Motion in good faith. The Court already has found that Loop AI has a sufficient basis for its claims to rebut the self-serving, conclusory, unsubstantiated affidavit testimony that was presented in support of the Almaviva Defendants' jurisdictional claims.[12] But the Almaviva Defendants have relied on precisely the same affidavit testimony in support of the Rule 11 Motion. As the law above makes clear, this is improper.

## IV. The "Evidence" Proffered By The Almaviva Defendants In Support Of The Rule 11 Motion Is Wholly Inadequate.

Almaviva repeats throughout its Rule 11 Motion that it has provided uncontroverted evidence allegedly proving the falsity of Loop AI's allegations. But repetition does not make the statement true. It is not. A few examples follow.

### A. *Almaviva has failed to rebut Loop AI's evidence regarding Almaviva's patent application.*

If Almaviva wanted to disprove Loop AI's allegations that Valeria Sandei could not possibly have invented the technology described in Almaviva's only-ever patent application filed after Ms. Sandei and Gatti began working together, they should have done more than simply deny the allegation: at a minimum, they should have produced documentation showing the prior

---

[12] "That the Defendants have submitted their employees' affidavits disputing the purpose of those contacts and contending they did not receive confidential information about Loop does not disprove a foundational fact or negate the weight of the evidence Plaintiff presents to make the requisite prima facie showing." Dkt. 726 at 6.

and current work that Ms. Sandei's and her colleagues had done on the invention. Instead, Almaviva refused to produce even **one** document or response to interrogatory regarding Almawave S.r.l.'s patent application. *See, e.g.,* SJX-1215-16, SJX-1235, SJX-1236, SJX-1293, SJX-1346, SJX-1375, SJX-1443-44, SJX-1463-64, SJX-1521-22, SJX-1576, SJX-1605, SJX-1751, SJX-1765, SJX-1810, SJX-1828, SJX-1842, SJX-1887.[13] If the work had really been done by Almaviva, there would have been a great deal of documentary evidence. Instead, the only evidence to date is that presented by Loop AI, showing that Ms. Sandei lacked the education, training and experience to come up with the artificial intelligence technology disclosed in the patent application, *see* SJX-2584-87; SJX-053-56, SJX-306-307, showing that around the time when Ms. Sandei and Ms. Gatti were discussing Almaviva's first ever patent application, Ms. Gatti was emailing her colleagues at Loop AI to ask them questions about Loop AI's then confidential patent application, *see* SJX-311 at ¶ 47, SJX-2700-02 (and SJX-2695-97 for context), and then noting that she had shared with Almaviva the patent information. *See* SJX-2702. Ms. Gatti had no information to share other than that misappropriated from Loop AI. Indeed, the language used in Almaviva's patent application is virtually identical to what was used by Loop AI, as is the field of technology covered. *See* SJX-053-56. Almaviva has proffered Ms. Sandei's own conclusory, unsubstantiated affidavit testimony on this point (again) and affidavit testimony of a computer software specialist, who knows nothing about artificial intelligence, let alone about Ms. Sandei's abilities. That specialist testified that in his opinion, Ms. Sandei is a sort of *accidental savant* who managed to come up with a sophisticated and complex invention in the artificial intelligence (AI) field without any formal education, training or experience in said field. *See, e.g.,* Dkt. 740 at 62, ¶ 266; SJX-2154-55. The Almaviva's position is, respectfully, implausible. *See, e.g.,* SJX-2532-34, SJX-2565-66, SJX-2584-85, SJX-2587; SJX-2607; SJX-2615; SJX-2625; SJX-2700. Almaviva's software specialist himself lacks

---

[13] For ease of reference, and to avoid refiling evidence already in the record, Loop AI respectfully refers the Court to its previously filed "Summary Judgment Appendix" or "SJX" and provides attached hereto a key to the Docket Numbers corresponding to each of Loop AI's "SJX" citations. *See* VCH Decl., Exhibit 4 (Listing SJX pages and corresponding Docket numbers at which each document was previously filed by Loop AI).

any experience, knowledge or education about artificial intelligence. *See* SJX-2525-34; SJX-2554-2567; SJX-2586-87; SJX-2609-2627. Instead he claims to be "self-taught" in the AI field, and to have relied significantly in this self-education process on in-depth "discussions" with three AI experts. *See* SJX-2610; SJX-2611 at ¶ 17; SJX-2616; SJX-2092 at ¶ 57. This turns out to be yet another example of the Almaviva Defendants failing to get their story straight: all three alleged AI experts named by Almaviva's software specialist have denied having had any such conversation with Almaviva's purported expert. *See* SJX-2591; SJX-2517-18. Notably, the software specialist based his "opinion" on a purported 1-hour telephone conversations with Sandei. *See* SJX-2039. This situation only reinforces the conclusion that Loop AI's allegation that neither Sandei, nor her colleagues, are the inventors they claim to be is more than sufficiently justified. Certainly there is nothing in Almaviva's "evidence" that could support a finding that Loop AI's allegations lack foundation or were made in bad faith.

### B. *Almaviva has failed to rebut Loop AI's evidence regarding Almaviva's Misappropriation of Loop AI's trade secrets.*

If Almaviva wanted to disprove Loop AI's allegation that Valeria Sandei arranged for Anna Gatti to steal Loop AI's trade secrets for Almaviva's benefit, it needed, at a minimum, to provide a plausible explanation for Gatti's dozens of communications with Almaviva's patent team, as disclosed in a privilege log submitted by Almawave USA, *see* SJX-820-1186, and for Ms. Gatti's sudden and continuous requests for proprietary and highly technical information of Loop AI, while she was secretly working with Almaviva. *See* SJX-039-56; SJX-61-280; SJX-308-13; SJX-321-628; SJX-643-658, SJX-686-753. As discussed above, the Court already has noted the evidence regarding Gatti's sudden access to Loop AI's technical information. That evidence and the privilege log provide powerful support for Loop AI's allegations. But Almaviva instead has elected to not produce evidence from two of its defendants, and cloak virtually all of Almawave USA's communications with Gatti, and with the patent team, with privilege. Indeed, for a company as Almawave USA that had no employees beyond Gatti, and no business, it is utterly improbable that it would have had over 2500 of privileged communications in the less than 10 month period covered by the privilege log. Contrary to

Almaviva's assertions, the evidence in the record is more than enough to support Loop AI's allegations.

**C.** ***Almaviva has failed to rebut Loop AI's evidence regarding Almaviva's conspiracy to buy Loop AI on the cheap.***

If Almaviva wanted to disprove Loop AI's allegation that they conspired with Gatti, DiNapoli and Capaccio to push Loop AI into financial difficulties in order to then acquire it on the cheap, it needed at a minimum to provide a plausible explanation for why it hired those fellows, virtually on the spot, even though they would not be a prominent company's obvious candidates for the alleged launch of their first ever business in the United States. It is difficult to imagine, for instance, why Almaviva needed the services of a litigation attorney, as Mr. Capaccio appears to be, to launch a business in the United States. Almaviva also needed to provide evidence of what was discussed in the dozens of communications they admit occurred among Almaviva, Gatti, Capaccio and DiNapoli in early 2014. But again, Almaviva instead has elected to not produce any documents, and have Almawave USA cloak virtually all communications with privilege assertions. Loop AI already has submitted to the Court substantial evidence linking the co-conspirators to various activities (including pushing another technology start-up into financial difficulties with a view to buying it on the cheap) that powerfully supports its claims against the Almaviva Defendants. Loop AI respectfully refers the Court to its Oppositions to the Defendants summary judgment motions and supporting evidence submitted therewith. *See* Dkts. 798-1, 791, 800-1. And Gatti's apparent role in Loop AI's failed venture funding is consistent with Loop AI's theory. Almaviva's response has been to hide behind more self-serving affidavits, unsupported by even a shred of evidence. Respectfully, Almaviva's affidavit are insufficient for summary judgment, and provide no support to Almaviva's Rule 11 Motion.

**D.** ***Almaviva has failed to rebut Loop AI's evidence regarding Almaviva's interference with Loop AI's contract with Gatti.***

If Almaviva wanted to disprove Loop AI's allegation that it interfered with Loop AI's contract with Gatti, it should have revealed the substance of the analyses and advice that the Orrick employment team provided it. Otherwise Almaviva's failure to take any steps to mitigate

the legal and logistical challenges involved in having Gatti work two jobs is inexplicable. Gatti testified that she told Sandei she needed Loop AI's approval to take the Almawave job, *see* SJX-3023 at ¶ 23:15-16, but no explanation has been provided regarding what was done with that information. Indeed, the Almaviva Defendants have refused to produce a single document showing their internal discussions regarding the reasons for and their understanding as to the legality of hiring Ms. Gatti, while they expected her to continue working for Loop AI. Indeed, the Almaviva Defendants, even failed to produce a document (ultimately produced by a nonparty) showing that Almaviva required Ms. Gatti to sign a confidentiality agreement and not disclose her dealings with Almaviva to Loop AI.[14] *See* SJX-2379-81. In any event, Almaviva admits that it knew Gatti worked for Loop AI and would continue to do so while working for Almawave USA. *See, e.g.,* SJX-2721. Indeed, as one of the Court's prior decision shows, the undisputed evidence in the record establishes that Almaviva was even discussing the idea of having offices as close as possible to Loop AI. *See* Dkt. 726 at 9:13-15. Almaviva's admission that it knew Gatti would continue working as Loop AI's CEO, is more than sufficient to allow a jury to find in Loop AI's favor on its tortious interference claim.

### E.   *Loop AI's allegations regarding Peter Sternberg have a substantial basis.*

Almaviva argues that Loop AI's allegations in the Complaint regarding Peter Sternberg are sanctionable under Rule 11. First, Almaviva fails to even argue, let alone establish, the bad faith required for a Rule 11 Motion. *See PAE*, supra. Instead, Almaviva relies significantly on the Court's findings made in its Order on Loop AI's disqualification motion ("DQ Motion") entered on ***January 28, 2016*** at Docket 402. Respectfully, that reliance is misplaced. A Rule 11 Motion cannot be brought after "judicial rejection of the offending contention." Fed. R. Civ. P. 11, 1993 Advisory Committee's Notes. *See also, e.g., Islamic Shura Council of S. California v. F.B.I.*, 757 F.3d 870, 873 (9th Cir. 2014) (Rule 11 motions "cannot be served after the district

---

[14] For instance, one of the cases on which the Almaviva Defendants rely in one of their Motions to Dismiss for Lack of Personal Jurisdiction, *Huntair, Inc. v. Gladstone*, 774 F. Supp. 2d 1035 (N.D. Cal. 2011), *see* Dkt. 99 at 6, n. 4, establishes that concealment by an employee and his second employer that the employee is now doing two jobs is sufficient circumstantial evidence supporting the same type of claims asserted by Loop AI in this case. *See Huntair*, 774 F. Supp. 2d at 1045.

court has decided the merits of the underlying dispute giving rise to the questionable filing.").

Moreover, in its Order denying the DQ Motion the Court accepted the premise for Loop AI's

allegations, finding that "Sternberg owed Loop AI a duty of loyalty." *Id.* at 5. The Court then

found, based solely on affidavit testimony provided by Sternberg, that Sternberg did not breach

that fiduciary duty:

> Plaintiff has offered no evidence to suggest that Sternberg was aware of Gatti's contractual obligations. Sternberg's declaration to the contrary is persuasive: "While I was at Orrick I was unaware of and never discussed with anyone Ms. Gatti's employment with Loop, or indeed anything else about Loop." Sternberg Decl. ¶ 13. Finally, there is nothing to suggest that by assisting Orrick attorneys in conforming a "standard form employment contract" for Almawave's use in hiring Gatti, see id. at ¶ 8, Sternberg acted adversely to Loop AI's interests.

Dkt. 402 at 5. In making this finding, the Court was focused specifically on the issue before it –

i.e., the disqualification standards – and rejected Loop AI's contention that as a matter of law, the

knowledge of any attorney at Orrick (including the team that worked on Loop AI's account) was

imputed to every other lawyer working at Orrick (including Sternberg). That legal theory was

presented by Loop AI after performing substantial factual and legal due diligence, which has

included the retention of a legal ethics expert, to consult with Loop AI's lead counsel before,

during and after presenting these important issues to the Court. *See* VCH Decl. at ¶ 7. Further,

because the Court deemed the issues before it sufficient for purposes of the narrow

disqualification issue, the Court did not have the opportunity to consider the supplemental case

law, provided by Loop AI, which is relevant to the merits of the issues, and shows that Loop

AI's position was not legally unsupported, and certainly not a basis for a Rule 11 Motion based

on allegations contained in the Complaint regarding Sternberg, while he was a partner at Loop

AI's primary law firm. *See* Dkt. 296 at 1-15.

Since the Court entered its Order, Loop AI has obtained evidence that suggests the

affidavit testimony relied on by the Court may have been misleading. Privilege logs produced

after the Court issued its Order show dozens of communications, including numerous

communications involving Sternberg, regarding Gatti's employment agreement. *See* SJX-820-

1186. That suggests Sternberg and his team were not simply conforming a standard form to their

client's needs, as Sternberg represented to the Court, but instead were addressing more complex issues. Since Almaviva has refused to provide discovery on this issue, and since Sternberg has refused to provide discovery and appear for a deposition, Loop AI cannot know what these complex issues were. But other than figuring out how to address the dual employment situation with Loop AI, it is difficult to see what other issues were presented in an employment relationship Sternberg insisted was quite simple and simply a "form" agreement.

Other evidence further supports Loop AI's position. Valeria Sandei testified in her jurisdictional deposition that she knew Gatti was employed by Loop AI. *See* SJX-2232 at 130:24-25. She refused, however, to answer questions regarding what discussions she had with Orrick in respect of Gatti's relationship with Loop AI, asserting privilege. SJX-2232 at 130-131. Of course, if Sandei never had a conversation with Orrick regarding Gatti's contract with Loop AI, she could have simply said that without waiving privilege, because there would have been nothing to waive. It seems likely, therefore, that Sandei did discuss Gatti's Loop AI relationship with Sternberg's Orrick team.

In sum, Loop AI and its counsel had a good faith basis, grounded in evidence, to support all the allegations against the Almaviva Defendants in the Complaint.

**V.   Under Ninth Circuit Law, In Addressing the Rule 11 Motion The Court Is Required To Consider <u>All</u> Evidence That Supports Loop AI's Allegations, And Not Merely The Evidence That Was Known To Loop AI When It Filed Its Complaint.**

Loop AI respectfully submits that its counsel conducted a thorough and appropriate investigation before filing the Complaint and amended Complaints and that Almaviva's assertions to the contrary are simply false. Loop AI's level of detail in the allegations put forward in the Complaint alone make clear that they resulted from a substantial investigation. The evidence that Loop AI already has presented to the Court further corroborates the extent of Loop AI's investigation and provides substantial evidence supporting Loop AI's claims against the Almaviva Defendants.

Ninth Circuit law eliminates any need to parse what Loop AI and its counsel knew when the Complaint was filed and what evidence they acquired subsequently. As discussed above, in

the Ninth Circuit, when a district court considers whether a plaintiff has a sufficient basis for the allegations made in its complaint, the court is required to consider all evidence, including evidence obtained after the complaint was filed.  In *Moore v. Keegan Mgmt. Co. (In re Keegan Mgmt. Co., Sec. Litig.)*, 78 F.3d 431 (9th Cir. 1996), the Court reversed an order issued by a district court imposing Rule 11 sanctions.  The Court of Appeals explained:

> Under the district court's understanding of the law, the key question was, 'What did plaintiffs know when they filed their lawsuit?' Applying this understanding, the district court excluded from consideration any evidence supporting the suit which was unknown to counsel at the time of filing.

*Id.* at 434.  The Court reversed, explaining that:

> An attorney may not be sanctioned for a complaint that is not well-founded, so long as she conducted a reasonable inquiry. May she be sanctioned for a complaint which *is* well-founded, solely because she failed to conduct a reasonable inquiry? ….We conclude that the answer is no.

*Id.*  Based on *Moore*, the analysis presented by Almaviva in its Rule 11 Motion is incorrect. All evidence supporting Loop AI's allegations must be taken into account by the Court when it considers the Rule 11 Motion.  Indeed, "circumstantial evidence, and the reasonable inferences drawn from that evidence, are treated as evidentiary support for purposes of Rule 11." *Benedict v. Hewlett-Packard Co.*, No. 13-CV-00119-LHK, 2014 U.S. Dist. LEXIS 7323, at *18 (N.D. Cal. Jan. 21, 2014) (citing *Rachel v. Banana Rep. Inc.*, 831 F.2d 1503, 1508 (9th Cir. 1987)).

In this case, Loop AI has provided more than sufficient evidence in its Opposition to various dispositive motions that have been filed, including the summary judgment motions, to establish that its claims are well founded, not brought in "bad faith," and not a proper basis for a Rule 11 Motion.

**VI.  Almaviva's "Estoppel" Theory Is Unsupported And Incorrect.**

Almaviva relies on *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 2007 WL 6137003 (C.D. Cal. Apr. 16, 2007) in support of its "estoppel" theory.  *See* Dkt. 801 at 11.  Almaviva cites *Alaris* for the proposition that "[i]t is axiomatic that a party cannot use the attorney-client

privilege as a sword and a shield." Dkt. 801 at 26. Almaviva does not explain how its reliance on *Alaris* applies to support its Rule 11 Motion. To the extent Almaviva speculates that Loop AI plans to oppose the Rule 11 Motion by waiving privilege in respect of the investigation performed by counsel before the Complaint was filed, that speculation would be incorrect. Loop AI neither needs nor plans to do that. Loop AI already has produced voluminous evidence in the record of this case that is more than sufficient to support all of its allegations. To the extent Almaviva is instead invoking its estoppel theory to support its purported request to strike allegations, that contention is also without merit and would be contrary to Ninth Circuit law. *See PAE Gov't Servs*, 514 F.3d at 859.

Finally, the deletions from the Complaint sought by Almaviva are difficult to understand. *See* Dkt. 801-10. Almaviva seems to wish to delete things it has acknowledged to be true, while leaving intact allegations on which it has sought summary judgment. For example, Almaviva seeks to strike all of paragraph 46, including the following: "Defendant Almawave S.r.l. ("Almawave IT") is an Italian company with its principal place of business in Rome, Italy." *See* Dkt. 801-10 at ¶ 46. But according to Almaviva's own website, this sentence is accurate. And Almaviva seeks to delete "The Almaviva Defendants knew that Gatti was employed by the Company" from Paragraph 441, even though Valeria Sandei testified that she knew Gatti worked for Loop AI. SJX-2232 at 13-:35. Meanwhile, the portions of the Complaint that Almaviva *does not* seek to have stricken (and therefore apparently admits have a valid basis) support all of the key counts alleged against Almaviva in the Complaint. *See* Dkt. 810-10 at *passim.* Thus, for example, among the many paragraphs in the Complaint that Almaviva *does not* seek to strike are important paragraphs 209, 217, 224, 232, 245, 246, 330, 336, 365, 391, 401 and 402. That Almaviva seeks such incoherent relief further suggests the Rule 11 Motion was filed for improper purposes and not out of any good faith desire to correct the record.

### VIII. Almaviva Should be Required to Pay Loop AI's Costs Incurred in Responding to The Rule 11 Motion.

Rule 11(c)(2) of the Federal Rules provides in relevant part that "If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred

for the motion." Fed. R. Civ. P. 11(c)(2). "A party defending a Rule 11 motion need not comply with the separate document and safe harbor provisions when counter-requesting sanctions." *Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir. 2001).

The Almaviva Defendants' Rule 11 Motion was legally and factually meritless and is itself sanctionable under Rule 11. *See, e.g., Rich v. TASER Int'l, Inc.,* 2012 U.S. Dist. LEXIS 107927 at *9 (D. Nev. August 2, 2012). In *Taser*, for instance, the court imposed sanctions on Rule 11 movant, Taser, because its Rule 11 motion was "composed almost entirely of arguments that Plaintiffs have not produced evidence of essential elements of their claims – arguments that have already been made in TASER's Motion for Summary Judgment [] and Motion in Limine [] to exclude the testimony of [an expert witness]…" *Id.* The court concluded that the sanctions motion was "completely without merit and quite probably, in this Court's estimation, brought for an improper purpose." *Id.* The circumstances here are indistinguishable from those in *Taser*. The Almaviva Defendants Rule 11 Motion here was clearly filed as an impermissible supplement to those parties summary judgment motion. Indeed, the Almaviva Defendants timed the filing of their Motion to happen several days after Loop AI had submitted its Opposition to the Almaviva Defendants' summary judgment motion.

Respectfully, sanctions are appropriate against the Almaviva Defendants for bringing this frivolous motion. Despite extensive misconduct by the Almaviva Defendants in this case, Loop AI has exercised restraint and has not burdened the Court with daily motions for sanctions. Loop AI understands that a sanction motion is a serious matter to be filed sparingly. By contrast, the Almaviva Defendants main work in this case has been their sanction practice, filing incessant motions for sanctions for clearly improper purposes. Loop AI respectfully submits that an award of sanctions against the Almaviva Defendants is warranted for filing this frivolous Rule 11 Motion.

## CONCLUSION

For the foregoing reasons, Loop AI respectfully requests that the Almaviva Defendants' Rule 11 Motion be denied in its entirety and that the Almaviva Defendants be required to pay

Loop AI's reasonable expenses, including attorney's fees, incurred in responding to the Rule 11 Motion.

Respectfully submitted,

July 21, 2016                              By:   /s/ *Valeria Calafiore Healy*

Valeria Calafiore Healy, Esq. (*phv*)
HEALY LLC
154 Grand Street
New York, New York 10013
Telephone:      (212) 810-0377
Facsimile:      (212) 810-7036


Daniel J. Weinberg, Esq. (SBN 227159)
FREITAS ANGELL & WEINBERG LLP
350 Marine Parkway, Suite 200
Redwood Shores, California 94065
Telephone:      (650) 593-6300
Facsimile:      (650) 593-6301


Attorneys for Plaintiff
LOOP AI LABS, INC.