VALERIA CALAFIORE HEALY (*pro hac vice*)
HEALY LLC
154 Grand Street
New York, New York  10013
Telephone:      (212) 810-0377
Facsimile:      (212) 810-7036

DANIEL J. WEINBERG (SBN 227159)
FREITAS ANGELL & WEINBERG LLP
350 Marine Parkway, Suite 200
Redwood Shores, California  94065
Telephone:      (650) 593-6300
Facsimile:      (650) 593-6301

Attorneys for Plaintiff
LOOP AI LABS INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS INC.,<br><br>Plaintiff,<br><br>v.<br><br>ANNA GATTI, et al,<br><br>Defendants. | CASE NO.: 3:15-cv-00798-HSG-(DMR)<br><br>**PLAINTIFF LOOP AI LABS INC.'S OPPOSITION TO ALMAWAVE USA INC.'S MOTION FOR SANCTIONS FILED AT DKT. 840**<br><br>Action Filed:  February 20, 2015<br>Trial Date: September 19, 2016<br><br>Hon. Haywood S. Gilliam, Jr.<br>Hon. Donna M. Ryu |

**GLOSSARY**

| Abbreviation | Definition |
| --- | --- |
| Action | Designates the above captioned civil action pending in the United States District Court for the Northern District of California, styled *Loop AI Labs Inc. v. Gatti et al*, N.D. Cal. 15-798, filed on February 20, 2015. |
| Almawave | Defendants Almawave USA Inc., the party who filed the Motion for Sanctions at Dkt. 840. |
| Complaint | Second Amended Complaint filed at Dkt. 210 |
| Decl. | Declaration |
| Dkt. | Designates entries on the ECF docket of the District Court for the Northern District of California, N.D. Cal. Civil Action No. 3:15-cv-0798-HSG-(DMR) |
| Federal Rules | Federal Rules of Civil Procedure |
| Loop AI | Plaintiff Loop AI Labs Inc. |
| Motion | Designates the Motion for Sanctions filed by Almawave USA Inc. at Dkt. 840 |
| Wallerstein | Counsel for the Almaviva Defendants in this Action. |

Almawave's latest Motion is outrageous and should never have been filed.  Almawave's false allegations that Loop AI's lead counsel committed the crime of assault and lied to the Court is baseless and defamatory.[1]  Even though Wallerstein claims to be the alleged victim, he presented these serious accusations of "violence" and unethical conduct without submitting a declaration under penalty of perjury.  Wallerstein did so because he knew his statements in the Motion were false.[2]  Almawave's false accusation was especially damaging because Wallerstein claimed they were supported by Loop AI's counsel's own admission on the record - a false record that Mr. Wallerstein improperly procured and submitted to the Court.[3]  Mr. Wallerstein has no justification for using a transcript he knows to be untrue to try and give credence to his false accusations against counsel.  Indeed, in the same paragraph in which he accuses Loop AI of lying to the Court and of admitting to the alleged assault, he cites the audio recording he was given by the court reporter, which recording readily establishes the falsity of the quote Mr. Wallerstein attributed to Loop AI.  *See* Dkt. 840 at 3:1-10.[4]  Mr. Wallerstein, the author of the Motion, also knew that the cited portion of the transcript was untrue (he was present at the deposition, and knew what was said).  But Wallerstein repeated the false allegation anyway.  The Motion also relies on allegations that are not only unsubstantiated but also flatly inconsistent with other evidence.  Almawave alleges in the Motion that a cup was thrown *at* Wallerstein, but

[1] All defined terms are set forth in the Glossary *supra*.

[2] Mr. Wallerstein did not submit a declaration in support of the Motion, even though the focus of the Motion is on what allegedly happened to him, and on his state of mind during the incident. Mr. Wallerstein's declaration under penalty of perjury was not optional.  It was required by several local rules.  *See, e.g.,* Civil L.R. 7-5 ("Factual contentions made in support of or in opposition to any motion **must** be supported by an affidavit or declaration and by appropriate references to the record."); Civ. L.R. 7-8 (requirements for a motion for sanctions); Civ. L.R. 7-2(d).  Mr. Wallerstein has repeatedly asked this Court to enforce strict compliance with the Rules requiring the affidavit of fact witnesses.  In light of his past arguments to the Court, Mr. Wallerstein's failure to submit a declaration supporting his statements in the Motion was not accidental.  Presumably Mr. Wallerstein was concerned by the evidence that Loop AI's counsel had from the videos that she took.

[3] As Loop AI has learned, Mr. Wallerstein also issued several subpoenas on July 15, 2016, including to the Court Reporter, without any prior notice or basis.  *See* VCH Decl.  Discovery in this case has long been closed.  It is an abuse of process for Mr. Wallerstein to issue subpoenas over matters unrelated to this case, using this case caption.

[4] The Motion alleges Loop AI's counsel admitted throwing a cup at Wallerstein. As Almawave has now admitted, the statement attributed to Loop AI's counsel in the transcript cited in the Motion was the *opposite* of what she actually said – which was that she DID NOT throw anything at Wallerstein. *See* Dkt. 848.

3:15-CV-00798-HSG-DMR                                    LOOP AI'S OPP. TO ALMAWAVE USA INC.'S
                                                          MOTION FOR SANCTIONS (DKT. 840 )

the evidence shows otherwise and Almawave has recanted the only "evidence" that could have supported the allegation (the erroneous deposition transcript).  Almawave alleges that Wallerstein was "shocked and scared" by the incident that occurred at the deposition.  But not a scintilla of evidence was offered in support of this allegation, and it is clearly untrue -- on the audio recording submitted in support of the Motion, Wallerstein can be heard loudly laughing immediately after the incident.  And Almawave alleges that Loop AI's counsel was "yelling," but the audio recording refutes that allegation as well.  This is not mere sloppiness. Almawave and its counsel are responsible for carefully verifying the truth of any factual assertions they make to the Court.  When the assertions are extremely serious, as here, that obligation is heightened.  Almawave and its counsel failed entirely to discharge their duties of care and candor, and for that they deserve to be sanctioned.

What the record *does* show is that the incident was intentionally provoked by Almawave's counsel: Wallerstein provoked Loop AI's counsel into reacting to his boorish and improper behavior, and then sought to capitalize on the results of his provocation by telling lies about what happened.  It is altogether improper for Almawave to seek sanctions regarding an incident provoked by its own counsel.  It is similarly improper for Mr. Wallerstein to attempt to profit personally from an incident that he provoked.  But that is what he did.  Within a few hours after the deposition ended, Wallerstein's wife called Loop AI's counsel and left a message in which she insisted her husband had suffered burns from the coffee spill.  *See* Dkt. 832.  Mrs. Wallerstein demanded a return call (presumably to discuss financial compensation for personal injury). The tawdry shake-down scheme was never going to work because it was transparently based on a lie -- the iced coffee spilt at the deposition could not possibly have caused burns. After Loop AI's counsel provided the Court with a photo of the iced coffee cup, Wallerstein concocted a second scheme, based on a trumped-up claim of assault.  Under his revised story, Wallerstein seeks to have Loop AI or its counsel pay his laundry bill and other miscellaneous expenses he claims (without proof) to have incurred.  Indeed, the video of Mr. Wallerstein's clothes and belongings shows no sign that his clothes and belongings were in any way impacted.

The Motion ends on a note that combines the dishonesty and hyperbole that have become

2

the trademark of the Almaviva Defendants and their counsel in this case – asserting that the conduct of Loop AI's counsel "has reached the point of posing a physical danger to all concerned." Respectfully, that statement could not have been made in good faith. The malicious ECF notice used to file the Motion (referencing an "Assault" by Loop AI's counsel) was used intentionally to cause attention to the filing and the consequent widespread dissemination of Mr. Wallerstein's false statements. When Almawave notified the Court that it purportedly "discovered" that the deposition transcript relied on in support of their assault allegation was inaccurate, they should have *immediately* withdrawn the Motion and publicly apologized. Instead, Loop AI is faced with the vexatious task of responding to a Motion based on evidence that the proponent of the Motion has quietly disavowed, while Loop AI's counsel has suffered irreparable injury to her reputation caused by Almawave's malicious behavior. Mr. Wallerstein's filing of a motion for sanctions as an administrative motion, in violation of the Civil Local Rule 7-8, was also improper and clearly designed to distract Loop AI's counsel with another frivolous motion, giving her only an incredibly short time to respond to grave accusations, and impeding Loop AI's ability to have its counsel's time spent on serious pretrial matters.

1. ***Wallerstein provoked the incident.***[5] Wallerstein arranged to have Ms. Healy admitted to the premises where the deposition was to take place only shortly before it began, forcing her to remain outdoors on a hot and humid day. Mr. Wallerstein began behaving aggressively with Ms. Healy immediately upon her arrival. As soon as the deposition began, he made rude and inappropriate comments about Ms. Healy to the witness.[6] Wallerstein then

---

[5] Because the Motion does not address, or even cite, ***any*** law purportedly supporting the relief requested, Loop AI has no way of determining which law Almawave claims supports its Motion. Accordingly, Loop AI limits its response here to the factual statements presented by Almawave in the Motion.

[6] Shortly after the deposition began, Wallerstein told the witness "I'm going to ignore any distractions today, including anything that she says." Transcript at 6. The "she" in that sentence referred to Ms. Healy. A few moments later, Wallerstein said "The most important thing that I want to say in preface I've already said, which is if Ms. Healy speaks today, I'm not responding to her. I'm here to talk to you. She may have something to say. She often does, but I'm going to ignore that." Transcript at 8.

3

addressed the witness in a way calculated to intimidate.[7]  Subsequently, Wallerstein addressed objections made by Ms. Healy by ignoring her and speaking instead to the witness, telling the witness that Ms. Healy's objection was both wrong and improper.  *See* VCH Decl.  Wallerstein then further escalated matters, in an intentionally confrontational manner.  He rudely and improperly told Ms. Healy to "be quiet;" Ms. Healy told him if he did that again she would leave the deposition; whereupon Wallerstein immediately did exactly that – clearly for the purpose of provoking a response. *See* VCH Decl.  Wallerstein had made similarly inappropriate comments to Ms. Healy on numerous occasions in earlier phases of this Action.  *See* VCH Decl., Exhibits 1-9.

2.    *No "assault" occurred.* When Ms. Healy stood to leave, in response to Wallerstein's provocation, she was upset.  Mr. Wallerstein persisted in his provocation by falsely telling the witness that he was going to be held in contempt by the Court, even though the witness was never even Subpoenaed and appeared at the Boston deposition voluntarily.  *See* VCH Decl.  Ms. Healy slammed her plastic cup on the table and twice used the phrase "f----- break."  Ms. Healy did not throw her partially filled plastic coffee cup at Wallerstein, as Almawave falsely represented in the Motion.  Almawave has disavowed the only evidence that could have supported that allegation (the erroneous transcript), and the other evidence is to the contrary.  And Wallerstein certainly was not "shocked and scared."  To the contrary, in the recording made by the court reporter, Wallerstein can be heard laughing immediately after the incident.  Mr. Wallerstein was laughing during and after the incident and was observed laughing even when he called someone on the phone immediately after the incident.  *See* VCH Decl.  Nor was Loop AI's counsel "yelling," -- the audio recording refutes that allegation as well.  *See* VCH Decl.  The allegations of damage in the Motion also are false.  By the time of the incident, Ms. Healy had consumed most of her iced coffee.  But the damage alleged in the Motion would have

[7] "Sir, we've -- you don't need to respond to this. I'm going to tell you that if you refuse to answer questions today, I'm going to go to court, I'm going to get a court order, and we're going to have the judge decide.  And if we have to do it again, we'll do it again, and I will seek sanctions." Transcript at 12.

required not just a cup full, but gallons of liquid.  Ms. Healy returned to the conference room less than 3 minutes after she left, and no clean up activity occurred after she returned.  *See id.*  But when she returned, there were no visible stains on furniture, clothing, files or luggage (video of later parts of the deposition confirm this).  *See* VCH Decl.  And Wallerstein continued to use his laptop (on which he claims coffee was spilt) throughout the remainder of the deposition. *See* VCH Decl.

 3.　　　　*This was an isolated incident.*  Ms. Healy had not previously succumbed to Mr. Wallerstein's serial provocations. When the deposition resumed, Ms. Healy remained calm even as Wallerstein reverted to his disgraceful pattern of provocative behavior, including by loudly telling Ms. Healy to "be quiet" again; behaving in a demeaning manner; arguing with the witness; and badgering and seeking to intimidate the witness (on and off the record).  *See* VCH Decl.  Despite his continued harassment, the deposition continued until Wallerstein completed his questioning.  *See id.*

4.　　　　*The Motion should not have been brought.*  Mr. Wallerstein filed a Motion based on false statements.  Ms. Healy slamming of a plastic coffee cup on a table and her use of two expletives has never happened before, despite the many provocations that Mr. Wallerstein makes constantly.  Mr. Wallerstein has himself repeatedly slammed items on the table.  *See* VCH Decl.  Although his items did not result in coffee spillage, his conduct was not less reprehensible, because it was intended to be harassing toward the witness.  *See id.*  By contrast, as the video and audio readily show, Ms. Healy's  was not behaving in bad faith or with a view to obtaining an improper advantage.  Ms. Healy promptly apologized (something Mr. Wallerstein has never done), and there was no basis for Almawave to file the Motion.  If any sanctions are to be imposed, they should be imposed on Mr. Wallerstein.

5.　　　　*The Motion is baseless and should be denied.* Almawave's wild allegation of an assault is wholly unsubstantiated.  Its claims of damage to property are also false.  Mr. Wallerstein was not willing to back up any of the allegations made in the Motion with a declaration of his own, as he was required to do.  And the allegations are inconsistent with the evidence presented by Loop AI in the accompanying Declaration. Almawave not only fails to establish a factual predicate for

the relief it seeks; it also fails to cite any rule or authority pursuant to which the relief it seeks can or should be granted.  Mr. Wallerstein's tawdry attempt to personally profit from the incident supports the conclusion that the shoddily-presented Motion was not brought in good faith. The Motion should be denied. To deter further vexatious motion practice, Almawave should be required to pay Loop AI's costs incurred in defending against the Motion.

"

Respectfully submitted,

July 25, 2016                                              By:   /s/ *Valeria Calafiore Healy*

Valeria Calafiore Healy, Esq. (*phv*)
HEALY LLC
154 Grand Street
New York, New York 10013
Telephone:      (212) 810-0377
Facsimile:      (212) 810-7036


Daniel J. Weinberg, Esq. (SBN 227159)
FREITAS ANGELL & WEINBERG LLP
350 Marine Parkway, Suite 200
Redwood Shores, California 94065
Telephone:      (650) 593-6300
Facsimile:      (650) 593-6301


Attorneys for Plaintiff
LOOP AI LABS, INC.