# EXHIBIT 19

HEALY..

**Valeria Calafiore Healy <valeria.healy@healylex.com>**

## Loop AI Labs, Inc. vs. Gatti, et al. - Pieraccini, Roberto 10025478 HEALY

**production@aptuscr.com** <production@aptuscr.com>                                  Mon, Jul 25, 2016 at 11:35 AM
To: valeria.healy@healylex.com



July 25, 2016

Re: **Deposition of Roberto Pieraccini**

   **Loop AI Labs, Inc. vs. Gatti, et al.**
   **Deposition taken on 07/15/2016**

Dear Counsel:

The transcripts and exhibits from the Roberto Pieraccini deposition taken on July 15, 2016 are now available for you to access online.

**Click here to access transcripts and exhibits**

**To access and download all the depositions related to the case, log in to AptusWeb2.0 using your login credentials.**

**Click here to login to AptusWeb2.0 account**

**NEW Users** will receive an automated email containing the login credentials. Once you login, you may change your password by clicking "My Profile" in the topmost left corner. ***Should you forget your password, click the "Forgot Password" link on the login page and enter your email address (username). Your password will be emailed to you.***

**Share Access.** Attorneys may share access to all the content within their account. Once logged in, click the Users tab and provide the email address of others to share. To share, other users must have email addresses within the same domain as the primary account holder.

**Mobile Access.**  You may login to your account from your mobile devices (iPads, iPhones, Blackberries).

*Other electronic files (i.e. LEF, XMEF, SBF, MDB, CMS) are still being processed and will immediately be visible upon upload. If the files are unavailable at this time, please check the link later.*

Please refer to the list of applications and software supported by the following electronic files provided:

| File Format | APPLICATIONS |
|---|---|
| .TXT | ASCII, AMICUS (text editing software) |
| .LEF | LiveNote, Case Notebook, WestLaw |
| .PTX | E-Transcript, LiveNote |
| .XMEF | TextMap |
| .MDB | Sanction,  Trial Director, Visionary |
| .SBF | Summation \| Access Data |
| .CMS | Trial Director |

If you have any questions, please contact our Production Department. Thank you for your business.

Sincerely,

Production Department

*Aptus Court Reporting*

*P: 619.546.9151*

*F: 619.546.9152*

*production@aptusCR.com*

Job No.:  10025478 HEALY

# Loop AI Labs, Inc. vs. Gatti, et al.

## Deposition of
## ROBERTO PIERACCINI
## July 15, 2016

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LOOP AI LABS, INC., a Delaware )
corporation, )
               )
     Plaintiffs, )
               )
     vs. ) Case No.
               ) 3:15-cv-00798-HSG
ANNA GATTI, an individual, ) (DMR)
ALMAVIVA S.p.A. an Italian )
corporation, ALMAWAVE S.r.l., )
an Italian corporation, )
ALMAWAVE USA, Inc., a )
California corporation, )
IQSYSTEM LLC, a California )
limited liability company, )
IQSYSTEM, Inc., a Delaware )
corporation, )
               )
     Defendants. )
_____ )

DEPOSITION OF ROBERTO PIERACCINI

60 State Street, Boston, MA 02109

Friday, July 15, 2016 9:54 a.m.

Reported by:

Janet Sambataro, RMR, CRR, CLR

Job No. 10025478

**Roberto Pieraccini**                    **Loop AI Labs, Inc. vs. Gatti, et al.**

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LOOP AI LABS, INC., a Delaware  )
corporation,                    )
                                )
        Plaintiffs,             )
                                )
        vs.                     ) Case No.
                                ) 3:15-cv-00798-HSG
ANNA GATTI, an individual,      ) (DMR)
ALMAVIVA S.p.A. an Italian      )
corporation, ALMAWAVE S.r.l.,   )
an Italian corporation,         )
ALMAWAVE USA, Inc., a           )
California corporation,         )
IQSYSTEM LLC, a California      )
limited liability company,      )
IQSYSTEM, Inc., a Delaware      )
corporation,                    )
                                )
        Defendants.             )
_____ )

July 15, 2016

9:54 a.m.

Deposition of ROBERTO PIERACCINI, held at

the offices of Regus, 60 State Street, Boston,

Massachusetts, pursuant to Agreement before Janet

Sambataro, a Registered Merit Reporter, Certified

Realtime Reporter, Certified LiveNote Reporter,

and a Notary Public within and for the

Commonwealth of Massachusetts.

APPEARANCES:


HEALY LLC

(By Valeria Calafiore Healy, Esquire)

154 Grand Street

New York, New York 10013

212.810.0377

vch@healylex.com

Counsel for the Plaintiff



VENABLE LLP

(By Thomas E. Wallerstein, Esquire)

505 Montgomery Street, Suite 1400

San Francisco, California 94111

415.653.3750

twallerstein@venable.com

Counsel for the Almawave entities

**Roberto Pieraccini**                                    **Loop AI Labs, Inc. vs. Gatti, et al.**

I N D E X

WITNESS        DIRECT    CROSS    REDIRECT

ROBERTO PIERACCINI

By Mr. Wallerstein 5


E X H I B I T S

Number          Description                    Page

Exhibit 1  E-mail chain with top e-mail

     dated February 26, 2016 from

          Thomas E. Wallerstein          30

Exhibit 2  E-mail dated February 12, 2016

          from Roberto Pieraccini          53

Exhibit 3  Declaration of Roberto

          Pieraccini                    56

Exhibit 4  Declaration of Thomas E.

          Wallerstein in Support of

          Almawave USA, Inc.'s Opposition

          to Plaintiff's Emergency Application

          for a Protective Order          57

Exhibit 5  Loop AI Labs, Inc., Advisory

          Board Agreement, dated

          October 16, 2015              71

Exhibit 6  E-mail dated January 11,

          2013 from Russell Reynolds

          Associates                    77

**Roberto Pieraccini**                    **Loop AI Labs, Inc. vs. Gatti, et al.**

P R O C E E D I N G S

ROBERTO PIERACCINI,

having been duly sworn, after presenting

identification in the form of a driver's license,

deposes and says as follows:

DIRECT EXAMINATION

BY MR. WALLERSTEIN:

Q.   Hello, sir.  I introduced myself off
the record.  I'm Tom Wallerstein.  I represent
Almawave, several Almawave entities.

You are Mr. Roberto Pieraccini?

A.   Yes, I am.

Q.   Where do you live, sir?

A.   I live in Boston.

Q.   What address?

A.   15 Sleeper Street, Apartment 203.

Q.   Sleeper?

A.   Sleeper.  Yeah.

Q.   When did you move there?

A.   A month ago.

Q.   More precisely?

A.   Early June.

(Reporter clarification.)

A.   Early June.

Q.   Before that, you lived in San

Francisco?

A.   Mm-hmm.

Q.   And where do you work?

A.   I work at a company called Jibo Incorporated.

Q.   And where, physically, do you work?

A.   Two blocks from here.  Congress -- the address of the company is 230 Congress Street.

Q.   How long have you worked at that physical address?

A.   At the physical address, I worked for -- since I moved here, but I worked for the company since January 2014.  Yeah.

Q.   And where did you work -- what was their physical address before you moved to Boston?

A.   It was 805 --

MS. CALAFIORE HEALY:  Excuse me, you don't have to give your home address.

A.   Oh, my physical address?

Q.   Go on.

MS. CALAFIORE HEALY:  Excuse me, I'm sorry.  You're asking for his home address?

MR. WALLERSTEIN:  I'm going to ignore any distractions today, including anything that

she says.  So I'm just not going to --

MS. CALAFIORE HEALY:  I'm going to videotape this because you're harassing the witness already.

MR. WALLERSTEIN:  I object to the videotape.

A.  I don't have to give you my home address.  I prefer not to do it.

Q.  No.  You --

MS. CALAFIORE HEALY:  He's not going to give his home address.

Q.  That's not true that you don't have to, number one.  Number two, I'm asking for your business address before you moved to Boston.

A.  The business address is easily found, you know, because it's a private company, but -- and the business is 805 Veterans Boulevard, Redwood City, California.

Q.  Thank you.  And your home address when you were in San Francisco?

MS. CALAFIORE HEALY:  Objection.

MR. WALLERSTEIN:  It's on the record so I don't need that.

Q.  Have you ever had your deposition taken?  We're in a deposition.

**Roberto Pieraccini**                    **Loop AI Labs, Inc. vs. Gatti, et al.**

A.  No.

Q.  Have you ever done this before?

A.  No.

Q.  Have you ever testified in a court of law?

A.  No, I didn't.

Q.  You understand you are under oath?

A.  Yes, I do.

Q.  If I ask you a question and you don't understand what I mean, will you please just tell me, and I will try to rephrase it?

A.  Of course.  Yeah.

Q.  The most important thing that I want to say in preface I've already said, which is if Ms. Healy speaks today, I'm not responding to her.  I'm here to talk to you.  She may have something to say.  She often does, but I'm going to ignore that.

MS. CALAFIORE HEALY:  Objection.  The witness is not here to talk to you.  The witness is here to answer questions.

Q.  And while she's speaking, it's not my time running.  I have a certain amount of time, and that doesn't count as my time.  So the more she talks, the longer we're here.

**Roberto Pieraccini**                    **Loop AI Labs, Inc. vs. Gatti, et al.**

Is there any reason you can't testify truthfully and fully today?

A.   No.

Q.   Okay.  Are you aware that the Court has ordered your deposition to be taken?

A.   Yes, I do.

Q.   More than once?  Are you aware that the Court has done that more than once?

A.   I think I remember another time.  It was received in an e-mail.

(Reporter clarification.)

A.   I received an e-mail from your office, and it was -- I don't remember the date.  It was some time ago.

Q.   Okay.  You are represented by a lawyer here today?

A.   Yes.

Q.   And that's Ms. Healy?

A.   Yes.

Q.   When did you first, ever, speak to Ms. Healy?

A.   It would have been probably sometime -- I don't remember how long -- a few days after I received the subpoena to produce documents to you.

**Roberto Pieraccini**                              **Loop AI Labs, Inc. vs. Gatti, et al.**

Q.   And, in fact, it was after you spoke to me on the telephone.  Right?

A.   Yes.  That's true.

Q.   Okay.  So when we first spoke on the telephone, you had never spoken to Ms. Healy before?

A.   I had never spoken to Ms. Healy before.

Q.   How is it that you came to first speak to Ms. Healy?  Did she call you?

A.   No.  I think I was -- yes, I was contacted, because -- by Ms. Healy a few days after you and I spoke.

Q.   How did she contact you?

A.   I don't remember exactly.  It could have been by e-mail or by telephone.

Q.   If by e-mail, do you still have that e-mail?

MS. CALAFIORE HEALY:  Objection.  Calls for privileged information.  I instruct the witness not to answer.

BY MR. WALLERSTEIN:

Q.   I'm asking a "yes" or "no" question, whether you possess an e-mail or not?

A.   I don't remember.  I receive hundreds of e-mails every day.  I don't keep all of this

**Roberto Pieraccini**                                    **Loop AI Labs, Inc. vs. Gatti, et al.**

big amount of mails.

Q.   Okay.  I will ask you not to delete any e-mails to or from Ms. Healy or having anything to do with Loop in any way.  Okay?

MS. CALAFIORE HEALY:  Objection.  The witness is not here to take instructions from you.  Do you have a question?

Q.   What is your e-mail address?

THE WITNESS:  Is it something I can disclose?

MS. CALAFIORE HEALY:  Yes.  Go on.

A.   Roberto@jibo.com.

Q.   At -- say it again, please.

A.   Jibo is the name of the company that I work for, J-I-B-O.

Q.   Any other e-mail addresses you use?

A.   I may have other e-mail addresses.  I work for different companies.  I am alumni in different academic associations, so I have several e-mail addresses.

Q.   Do you have a Gmail address?

A.   No, I don't.

Q.   Are there any other e-mail addresses -- do you have a Yahoo! e-mail address?

A.   Yes, I do.

**Roberto Pieraccini**                                    **Loop AI Labs, Inc. vs. Gatti, et al.**

Q.   What is that?

A.   It's my first name, last name at yahoo.com.

Q.   When Ms. Healy first called you -- and she called you.  Correct?

A.   It could have been e-mail.  It could have been a call.  I don't remember.

Q.   At some point, you spoke to her on the phone?

A.   Yeah.

Q.   Who placed that phone call?

        MS. CALAFIORE HEALY:  Objection.  Asked and answered.

A.   I don't remember.

Q.   Okay.  What did she tell you?

        MS. CALAFIORE HEALY:  Objection.  Calls for attorney-client privileged information.  Instruct the witness not to answer.

Q.   Sir, we've -- you don't need to respond to this.  I'm going to tell you that if you refuse to answer questions today, I'm going to go to court, I'm going to get a court order, and we're going to have the judge decide.  And if we have to do it again, we'll do it again, and I will seek sanctions.

Roberto Pieraccini                                          Loop AI Labs, Inc. vs. Gatti, et al.

MS. CALAFIORE HEALY:  Objection.

MR. WALLERSTEIN:  Counsel, don't interrupt me.  We can talk in a moment.

BY MR. WALLERSTEIN:

Q.   This has happened many times in this case.  I'm not going to argue today, but your counsel is incorrect.

The first time she called you, she was not your lawyer.  Right?

MS. CALAFIORE HEALY:  Objection.  I instruct the witness not to answer as to what was discussed during our first call.

MR. WALLERSTEIN:  That wasn't the question.

MS. CALAFIORE HEALY:  Do you have another question?

MR. WALLERSTEIN:  Counsel, that wasn't the question.

Q.   I asked:  When Ms. Healy first called you, she was not your lawyer.  Right?

MS. CALAFIORE HEALY:  Objection.  Calls for a legal conclusion, and it has nothing to do with the case.  So please move on, Counsel.

Q.   Can you answer, please?

MS. CALAFIORE HEALY:  No.  He's -- the

**Roberto Pieraccini**                    **Loop AI Labs, Inc. vs. Gatti, et al.**

witness is instructed not to answer.

BY MR. WALLERSTEIN:

Q.   Okay.  I want to be -- I want to have a clear record.  The question is whether or not, when Ms. Healy first called you, if she was representing you.  And you won't answer that?

MS. CALAFIORE HEALY:  He will not answer that question.

MR. WALLERSTEIN:  Okay.

Q.   When did Ms. Healy first represent you? When did she become your lawyer?

A.   I think when we talked on the phone.

Q.   Whose idea was that?

MS. CALAFIORE HEALY:  Objection. Objection.  What does that have to do with anything, Mr. Wallerstein?

MR. WALLERSTEIN:  I'm not answering you.

MS. CALAFIORE HEALY:  No.  You're not going to answer that question.

MR. WALLERSTEIN:  Okay.

MS. CALAFIORE HEALY:  You're clearly here to harass the witness, so we can do two things:  Either you have questions that you told the Court you were going to disturb this very

**Roberto Pieraccini**                          **Loop AI Labs, Inc. vs. Gatti, et al.**

important scientist to ask him questions about the case.  It seems like you're here to harass him, and I'm not going to allow that.

So we can either call the Court or we can interrupt this deposition and come another day.

MR. WALLERSTEIN:  Neither of those things are happening.

MS. CALAFIORE HEALY:  I'm going to call Judge Gillian, because what you're doing is inappropriate.  You're harassing -- he is a very important scientist.  He canceled important meetings to be here today.

Why don't you ask him questions about the case instead of harassing him?

BY MR. WALLERSTEIN:

Q.  Sir, I'll respond to you.  I'm entitled to know when the privilege began so that I can see what is privileged and what is not.

MS. CALAFIORE HEALY:  And he already told you, during the first call.  So if you don't like his answer, please move on.

Q.  Whose idea was it --

MS. CALAFIORE HEALY:  Objection.  That lacks relevance.  And instruct the witness not to answer.

MR. WALLERSTEIN:  Well, I didn't even finish the question.

MS. CALAFIORE HEALY:  You already asked this question.  Asked and answered.  Please ask questions about the case.

MR. WALLERSTEIN:  I want to ask a question and get a clear instruction.

MS. CALAFIORE HEALY:  No.  You already got it.  Please move on.

MR. WALLERSTEIN:  I'm going to try it again.

MS. CALAFIORE HEALY:  Please move on. The witness is here voluntarily.  He's not appearing again.  And I'm asking you to please ask questions about the case like you falsely told Judge Ryu that you were calling this witness here to ask him questions about the case instead of harassing him.

MR. WALLERSTEIN:  Are you done?  Can I speak?

BY MR. WALLERSTEIN:

Q.  I want to get a clear question and an instruction not to answer so that when I file my motion with the Court, they understand what's going on.

**Roberto Pieraccini**                                    **Loop AI Labs, Inc. vs. Gatti, et al.**

The question I'm trying to ask, and I hope I can finish it without being interrupted, whose idea was it for you to engage Ms. Healy as your lawyer?

MS. CALAFIORE HEALY:  Objection.  Lacks relevance.  Instruct the witness not to answer.

Q.  You won't tell me today what you spoke -- what Ms. Healy told you on that first phone call?

A.  No.

Q.  You won't tell me today when -- well, I strike that.

You believe that Ms. Healy became your lawyer during that first phone call?

A.  Yes.

Q.  Do you have a written engagement letter with Ms. Healy?

A.  No.

Q.  Do you have a fee agreement with Ms. Healy?

A.  No.

Q.  Do you pay her any money?

A.  No.

Q.  She's doing it for free?

A.  That's not my business.  She's

**Roberto Pieraccini**                    **Loop AI Labs, Inc. vs. Gatti, et al.**

representing me as an adviser of Loop.AI.

Q.  For free?  At no cost to you, rather?

A.  I don't know.

Q.  Well, you know if it's a cost to you?

A.  Oh, no cost for me.  Definitely.

Q.  Have you invested money into Loop AI?

A.  No.

Q.  Do you own any stock?

A.  No.

Q.  Do you own stock options?

A.  Yes.

Q.  Are the stock options that you own pursuant to the advisory agreement you signed with Loop?

A.  Yes, they are.

Q.  Any others?

A.  No.

Q.  Have you seen a stock option plan from Loop AI?

A.  Not that I remember.

Q.  How many options do you own?

A.  I don't remember.

Q.  What are they worth?

A.  It depends very much on the valuation of the company.  I don't know.

**Roberto Pieraccini**                                    **Loop AI Labs, Inc. vs. Gatti, et al.**

Q.   Right.  What is your opinion of what they're worth today?

A.   I have no idea.

Q.   Is Loop paying you for your time here today?

A.   Absolutely not.

Q.   You canceled important meetings to be here?

A.   Yes, I did.

Q.   Has Loop ever or Soshoma -- today I'm going to say "Loop" and "Soshoma" pretty much interchangeably.  If it ever matters, I will try to clarify.  But, generally speaking, I use them synonymously.

A.   I don't know the term "Soshoma."

Q.   Oh, fair enough.  So that makes it easy.

Has Loop ever paid you any money?

MS. CALAFIORE HEALY:  Objection. "Loop" is not the name of the company.  The company is called "Loop AI."

MR. WALLERSTEIN:  That's actually not an objection.  That's a statement.

BY MR. WALLERSTEIN:

Q.   But go on, sir.  Has Loop ever paid you

any money?

A.  No.

Q.  Have you ever spoken on the phone or in person with Gianmauro Calafiore?

A.  Yes.

Q.  How many times?

A.  A few times.  I don't remember the number.

Q.  When was the last time?

A.  The last time was probably a couple of months ago.

Q.  What was it about?

MS. CALAFIORE HEALY:  Objection to the extent counsel was present, and it was a communication involving counsel.  Then that communication is privileged, and the witness cannot discuss that.

MR. WALLERSTEIN:  That's not true.

Q.  But was counsel present?

A.  Yes.

Q.  Who?  Ms. Healy?

A.  Ms. Healy.

Q.  Was it a phone call?

A.  No.  It was in person.

Q.  Where?

Roberto Pieraccini                                    Loop AI Labs, Inc. vs. Gatti, et al.

A.   It was in San Francisco.

Q.   Where?

A.   It was a cafe.  I don't remember exactly which one.

Q.   Who else was there, you, Gianmauro, Valeria?

A.   That's it.

Q.   You know they're related?

A.   Oh, yes.

Q.   When did you learn that?

A.   I learned that by simply looking at the last name of Ms. Calafiore Healy and then it was obvious, but probably during the first phone call.

Q.   Actually, I told you on the phone call, didn't I?

A.   I don't remember that.

Q.   Have you ever spoken to Bart Peintner?

A.   No.

Q.   Have you ever spoken with Anna Gatti?

A.   Never.

Q.   You talked about the last time you spoke to Gianmauro.

A.   Mm-hmm.

Q.   How long was that conversation?

**Roberto Pieraccini**                    **Loop AI Labs, Inc. vs. Gatti, et al.**

A.   Probably about half an hour, one hour, the time while having a coffee.

Q.   Were -- were you seeking legal advice?

A.   No.

Q.   Was he?

A.   No.

Q.   You were talking to Gianmauro.  Why was Ms. Healy there?

A.   Because she happened to be there.  I don't know what they were doing in San Francisco.  It's not my business.

Q.   Okay.

A.   And we decided to have a friendly meeting to see each other, to know each other, you know, face-to-face.  I knew Gianmauro before.  I met Gianmauro before.

Q.   Okay.  Your counsel is not going to let you answer this question, but I want to have a clear record, because it's not privileged, in my opinion.  So I want to be clear.

What did you talk about with Gianmauro at that meeting?

MS. CALAFIORE HEALY:  So let me just object.  Calls for attorney-client privileged information.  Anything regarding any discussion

**Roberto Pieraccini**                                    **Loop AI Labs, Inc. vs. Gatti, et al.**

that I was involved in regarding the case, that you cannot disclose.  Anything else that we discussed, that was discussed that did not relate to the case, you can, of course, disclose.

BY MR. WALLERSTEIN:

Q.   Sir, you should -- I guess you've got to follow your counsel's advice.  That's just flat out wrong.  It's just not true that her presence means that the conversations between you and Gianmauro becomes privileged.  Otherwise --

MS. CALAFIORE HEALY:  That's absolutely not what I said.

Q.   Otherwise, a lawyer --

MS. CALAFIORE HEALY:  Mr. Wallerstein, that's absolutely not what I said.  I said to the extent the discussion involved my communications regarding the case, he's not to disclose them. To the extent he remembers any other conversation with Mr. Calafiore not involving counsel, that did not relate to the case, that he can absolutely discuss it.

BY MR. WALLERSTEIN:

Q.   So that's not true.  And if that's the position your counsel is taking, so be it.  I just want to get a clear answer.

**Roberto Pieraccini**                                    **Loop AI Labs, Inc. vs. Gatti, et al.**

Will you tell me anything that you said to Mr. Calafiore at that coffee meeting?

A.  Yes.  We spoke about our families, children.  We spoke about our life, why from Italy we moved to the United States.  The companies we have worked for.  And these type of things.

Q.  Including Loop?

A.  We didn't speak much about Loop, because I'm not -- I'm interested in technical aspects.  So I understand Gianmauro, as a CEO, is more related to business, so it is not a topic that I have much interest in.

Q.  He doesn't know much about the technology?

A.  Oh, he does.  Yes.  We spoke, you know, about general -- generality about the technology.

Q.  What did you say?

A.  I don't remember what I said.

Q.  What did he say?

A.  I can't remember.

Q.  Okay.  Did you talk about this case?

MS. CALAFIORE HEALY:  Objection.  Calls for attorney-client privileged information.

Q.  Are you going to answer the question?

**Roberto Pieraccini**                                    **Loop AI Labs, Inc. vs. Gatti, et al.**

I assume not, and I don't mean to imply otherwise.

A.   No.  I'm not going to answer the question.

Q.   When was the prior time, the next time before that, that you spoke to Gianmauro?

A.   I spoke on the telephone in regard to my engagement as an adviser for the company.

Q.   That was -- so there was a coffee meeting and, I'm sorry, I think you said a few months ago?

A.   Yeah.  I think so, a couple.

Q.   I'm sure.  And there was a time when you spoke to him about becoming an adviser?

A.   I already decided to become an adviser. We spoke about the -- you know, we're Italians so we like to speak together.  So it's easy to, especially for -- I don't know if you have ever lived in a foreign country, but when you find someone that speaks the same language, it's nice to talk to them, especially a nice person like Gianmauro.

So we had a chance to speak on the phone. He told me he'd send me the documents to sign for me to formally accept the position of adviser.

**Roberto Pieraccini**                              **Loop AI Labs, Inc. vs. Gatti, et al.**

And then we had a general chitchat about, you know, personal issues.  Yeah.

Q.  And then you didn't speak to him again until the -- a few months ago?

A.  Yeah.  Probably this is true.  Yeah.

Q.  I'm sorry.  That is true?

(Reporter clarification.)

A.  Yeah.  I didn't speak to him.

Q.  You did or did not?

A.  I did not.

Q.  I apologize for my ears.

MR. WALLERSTEIN:  Counsel, I object to being videotaped or recorded.

BY MR. WALLERSTEIN:

Q.  Did you give him advice about the company at that earlier meeting?

A.  I believe that too.  I'm not an expert in -- what I do, I'm an expert in speech recognition and natural language understanding for interactive machines --

(Reporter clarification.)

A.  -- engaged in dialogue interactions with users.

Q.  And so, no, you did not give him any advice?

**Page 26**

**Roberto Pieraccini**                    **Loop AI Labs, Inc. vs. Gatti, et al.**

A.   I wasn't asked for any particular advice.

Q.   Have you ever given him advice about Loop?

MS. CALAFIORE HEALY:  Objection.  He's addressing a company that is not the same company on which you're an adviser of.  The company is not called Loop.

A.   I did give advice in relation to the deposition of Mr. Roman.

Q.   Roman, R-O-M-A-N.  We'll get there. Prior to the deposition of Mr. Roman, I believe he pronounced his name Roman, did you give any advice to Loop?

A.   Not that I remember.

Q.   When is the last time you spoke to Patrick Ehlen, E-H-L-E-N?

A.   A few days ago.

Q.   What about?

A.   We are personal friends, so we keep in touch sometimes.

Q.   What did you talk about?

A.   We talked about his family, his daughter and his wife.  They're traveling in Europe, and he was, you know, interested in

knowing how I'm doing in my new move in Boston. And that's what we spoke about.

Q.   Did you talk about this deposition?

A.   He knows that I was going to come to have a deposition.

Q.   What did he have to say about that?

A.   Nothing in particular.  He invited me to say the truth, which I'm doing.  It's not -- it's kind of preposterous, because I generally say the truth.

Q.   That's good advice, nonetheless.  And if you're going to give someone advice, that's the advice I would give, as well.

What else did he tell you about his deposition?

A.   I don't think we talked about his deposition.

Q.   Okay.  Did he talk about this litigation in any way?

A.   Not -- not really.  We don't discuss -- didn't discuss about the litigation.

Q.   He knew you were going to be deposed this week?

A.   Yup.

Q.   And that's why he called you?

**Roberto Pieraccini**                                    **Loop AI Labs, Inc. vs. Gatti, et al.**

MS. CALAFIORE HEALY:  Objection.  Asked and answered.

A.   No.  We talked --

Q.   Do you think it was just a coincidence that he called you this week?

A.   Yeah.  We're friends.  Do you ever talk to your friends?

Q.   When was the time, before this, that he called you?

A.   It was probably a few weeks ago, before he left for Europe, before I moved to Boston.  It was probably a little bit over a month ago.  We had dinner together with a common friend.

Q.   Where?

A.   In San Francisco.

Q.   Why were you in San Francisco?

A.   I was living in San Francisco.

Q.   Oh, that's before you moved here?

A.   Yes, exactly.

Q.   I see.  Have you ever given Patrick Ehlen advice about Loop?

A.   No.  Except regarding the deposition of Mr. Roman.

Q.   Right.  We'll get there.

MR. WALLERSTEIN:  Can you mark this for

**Roberto Pieraccini**                           **Loop AI Labs, Inc. vs. Gatti, et al.**

me, please.

(E-mail chain with top e-mail dated February 26, 2016 from Thomas E. Wallerstein marked Exhibit 1.)

BY MR. WALLERSTEIN:

Q.   I'm handing you a series of e-mails that I have had the court reporter mark as Exhibit 1, and I just ask that you look that over and see if it's familiar to you.

A.   Okay.

Q.   Did you send and/or receive the e-mails in Exhibit 1?

MS. CALAFIORE HEALY:  Objection. Please identify which one.

A.   Which one?

Q.   All of them.

A.   Yes.  I am familiar with this.  Yes.

Q.   Is it helpful for me to clarify which one?

(No response.)

Q.   Let's start at the back on Page 2.  It says on February 10, 2016 -- pardon my reach. Right here (indicating).  Do you see that?

A.   Yeah.  I see it.

Q.   Did you receive that e-mail from me?

Roberto Pieraccini                          Loop AI Labs, Inc. vs. Gatti, et al.

A.  Yes.  I believe so.

Q.  Did you read it when you received it?

A.  I think so.

Q.  You read that before you spoke to me.
Right?

MS. CALAFIORE HEALY:  Objection.  Calls
for speculation.  Lacks relevance.

Q.  I'm sorry.  Go on.

A.  I definitely read the e-mail.

Q.  Okay.  Before you spoke to me?

A.  Yeah.

Q.  Do you see in the second paragraph, I
wrote, "If you have a lawyer, have him or her
contact me"?

A.  Mm-hmm.

Q.  You saw that --

A.  Yeah.

Q.  -- before you spoke to me?

A.  Yeah.

Q.  Did you have a lawyer at the time?

A.  I don't have a lawyer.

MS. CALAFIORE HEALY:  Objection to the
verb.  You said "I don't."

THE WITNESS:  I didn't.  I didn't.
Sorry.  I didn't have a lawyer.

**Roberto Pieraccini**                                    **Loop AI Labs, Inc. vs. Gatti, et al.**

BY MR. WALLERSTEIN:

Q.   If you look at the first page, on the very bottom, you see it says on February 10, 2016 --

A.   Right.

Q.   -- I wrote, "Thanks, Roberto.  I'll be happy to tell you everything I know.  Call me at my office number below any time.  I'll be here until at least 6:00 or 7:00."

A.   Mm-hmm.

Q.   Does that refresh your recollection that we spoke on February 10, 2016?

A.   Yeah.

Q.   That's when we spoke.  Correct?

A.   Right.

Q.   We've only spoken, you and I, one time on the telephone.  Right?

A.   That's correct.

Q.   That was about ten minutes long?

A.   Pretty much, yeah.

Q.   Shortly before 4:00 p.m.?

A.   It's possible.

MS. CALAFIORE HEALY:  Objection.  Lacks relevance.

MR. WALLERSTEIN:  That's not an

**Roberto Pieraccini**                                    **Loop AI Labs, Inc. vs. Gatti, et al.**

objection you're allowed to make, and that's actually -- the Court has ordered that counsel that does that will be sanctioned.  It's not an objection.

Q.   Who called who on February 10th?

A.   You know, it's hard to remember, but apparently I called you, probably.

Q.   Did you record the call?

A.   No.

Q.   Do you know if I did?

A.   I don't know, because you would have told me if you recorded the call.  I don't think you can record my call if you didn't tell me in advance.

Q.   Did you take notes?

A.   No.  We didn't talk about too many things, so I -- you know, it was a ten-minute call, not enough needed to take notes.

Q.   Do you know if I took notes?

A.   How could I know?

Q.   Do you know if I sent an e-mail to my entire firm or my entire team, documenting what we spoke about on the call?

A.   I have no idea.

Q.   You don't.  Do you have anything in

**Roberto Pieraccini**                                    **Loop AI Labs, Inc. vs. Gatti, et al.**

writing, in writing, that would corroborate what

you and I spoke about on that phone call?

A.  I don't think so.  Yeah.

Q.  When I spoke to you on the phone call,

I told you my name.  Yes?

A.  Mm-hmm.

Q.  I told you my law firm?

A.  Mm-hmm.

Q.  Yes?

A.  Yeah.  I think so.

Q.  I told you who I represented?

A.  Yeah.  I think so.

Q.  I told you specifically that I did not

represent Anna Gatti.  True?

MS. CALAFIORE HEALY:  Objection.

Leading.

A.  I don't remember that.

Q.  Did I tell you that I do not represent

Loop?

MS. CALAFIORE HEALY:  Objection.

Leading.

A.  I don't think you -- it was explicit,

but I don't remember.

Q.  Did I tell you that I don't represent

you?

Roberto Pieraccini                                      **Loop AI Labs, Inc. vs. Gatti, et al.**

MS. CALAFIORE HEALY:  Objection. Leading.

Q.  I told you that, didn't I?

A.  I don't recall that.  You know, it could be, but I don't recall, you know.

Q.  You told me that you understood that I'm not your lawyer --

MS. CALAFIORE HEALY:  Objection.

Q.  -- didn't you tell me that?

MS. CALAFIORE HEALY:  Objection. Leading.  You're putting words --

A.  I don't remember everything what I say. I don't remember.  You don't -- you're not my lawyer at the time, so it was clear that you didn't represent me.  So I never had any thought about you representing me.

Q.  I asked you if you had a lawyer, didn't I?

MS. CALAFIORE HEALY:  Objection. Leading.  You can answer.

A.  Yeah.  I think you did.  Yeah.

Q.  And you told me "no"?

A.  I didn't have a lawyer at the time. Yeah.

Q.  Do you know if I was reading off a

**Roberto Pieraccini**                    **Loop AI Labs, Inc. vs. Gatti, et al.**

script that I use whenever I talk to a

third-party witness?

MS. CALAFIORE HEALY:  Objection.  Lacks

knowledge, lacks relevance.

A.  I don't know.

Q.  You don't know.  Right?

A.  How could I know?

Q.  You told me that you were not aware of

the lawsuit, and I don't mean -- let me rephrase

that.

Did you tell me that you were not aware of

the lawsuit, this lawsuit?

MS. CALAFIORE HEALY:  Objection.

Leading.

A.  I was not aware until I received a

subpoena.  And then I did a quick Google search

on the names on the subpoena, and I found a few

articles regarding those.  That's the only thing

I knew.

Q.  Was that the first -- I don't -- I

don't -- have you ever seen a copy of the

Complaint?

A.  No.

Q.  I told you on that phone call that my

clients were adverse to Loop, did I not?

Roberto Pieraccini                                    Loop AI Labs, Inc. vs. Gatti, et al.

MS. CALAFIORE HEALY: Objection. Leading.

A.   I can't remember that.

Q.   I told you that Loop was suing not only my clients, but Anna Gatti. Right?

MS. CALAFIORE HEALY: Objection. Leading.

A.   I really don't remember that.

Q.   Okay. I told you that Loop was represented by Valeria Healy, did I not?

MS. CALAFIORE HEALY: Objection. Leading.

A.   I don't remember that.

Q.   You don't remember me telling you that Loop was represented by Valeria Healy, the sister of Gianmauro?

A.   I don't remember that.

Q.   I asked you if you were an employee of Loop, did I not?

MS. CALAFIORE HEALY: Objection. Leading.

A.   You could have asked, but I was not an employee, employee.

Q.   Did I ask you if you were an officer or director of Loop?

MS. CALAFIORE HEALY:  Objection. Leading.

A.  I don't remember that.

Q.  Are you?

A.  I am not.

Q.  You told me that you had no confidential information of Loop, did you not?

MS. CALAFIORE HEALY:  Objection. Leading.

A.  No.

Q.  You did not say that?

A.  I did not.  Yeah.

Q.  Did I ask you whether you had any confidential information of Loop?

A.  I don't recall that.

Q.  Did you tell me that your only interaction with Loop -- strike that.

Did you tell me that your only interaction about Loop was a single conversation you had with Patrick Ehlen?

MS. CALAFIORE HEALY:  Objection. Leading.

A.  I knew about Loop before.  I met Patrick Ehlen many times before, but we explicitly met for him to ask me to be the

**Roberto Pieraccini**                                    **Loop AI Labs, Inc. vs. Gatti, et al.**

adviser, to be an adviser for Loop a few months before this call.  Yeah.

Q.   Did I tell you that you were listed on Loop's website under the advisory board?

MS. CALAFIORE HEALY:  Objection. Leading.

A.   I knew that.

Q.   You knew that?

A.   Of course.

Q.   You didn't look it up with me on the phone?

MS. CALAFIORE HEALY:  Objection. Leading.

A.   No, I didn't.

Q.   You didn't chuckle?

A.   Absolutely not.  I was proud to be on the website of Loop AI.  I was so proud that I put that on my resume, and I put that on LinkedIn as one of my affiliations.

Q.   Well, let's be clear.  I want to be clear.  I'm not talking about your association with Loop or your service on the advisory board. I'm talking about the Loop website.

A.   Mm-hmm.

MS. CALAFIORE HEALY:  Objection.

**Roberto Pieraccini**                              **Loop AI Labs, Inc. vs. Gatti, et al.**

That's not the question --

MR. WALLERSTEIN:  It's not, Counsel.
So please be quiet.

MS. CALAFIORE HEALY:  Please don't give -- if you say that again, we're going to walk out of this deposition.

MR. WALLERSTEIN:  Be quiet.

Q.  Sir --

MS. CALAFIORE HEALY:  I'm going to call the Court.  We're going to stop this.  I'm going to call the Court.  Let's just go.  Let's go.

MR. WALLERSTEIN:  I don't advise that, sir.

MS. CALAFIORE HEALY:  Let's just go. I'm not going to be here.  I have the video of you insulting me.

MR. WALLERSTEIN:  Sir, I don't advise it, but you need to do what you need to do.  But it's contempt.  You're under an order, a court order to be here.

MS. CALAFIORE HEALY:  You're not under court order.  I'm not going to be here with you --

MR. WALLERSTEIN:  I'd be happy to show you the court order, two of them.

Roberto Pieraccini                                     **Loop AI Labs, Inc. vs. Gatti, et al.**

MS. CALAFIORE HEALY:  We're not going to be here with you insulting us.  I have the video here.

MR. WALLERSTEIN:  Sir, I think you should take five and think about it.

MS. CALAFIORE HEALY:  No.  I think you should take a fucking break.  You should take --

(Interruption in proceedings.)

MR. WALLERSTEIN:  Oh, my goodness.

MS. CALAFIORE HEALY:  Take a fucking break.

MR. WALLERSTEIN:  I need help.  She just threw her coffee at me.  She's going crazy.

Sir, you should get a lawyer.  You're a witness.  Oh, my God.

Sorry about that.  We're going to go off the record.

(A recess was taken.)

BY MR. WALLERSTEIN:

Q.  Are you ready, sir?

A.  Ready.

Q.  Your counsel just threw a cup of coffee at me.  Is that true?

A.  I don't want to talk about that.

Q.  I don't care.  Is it true?

Roberto Pieraccini                                    Loop AI Labs, Inc. vs. Gatti, et al.

A.  Can I not talk about this?

Q.  No.  You're going to talk about it.

MS. CALAFIORE HEALY:  Yeah.  You're entitled to say whatever you want.

A.  But I saw exactly the thing that you saw.

Q.  What did you see?

A.  That you insulted her.

Q.  How so?

A.  You told her to shut up.

Q.  Did I say "shut up"?

A.  I don't know exactly the words you said.

Q.  I said something.

A.  To not talk.

Q.  Okay.

A.  And she somehow was -- somehow felt insulted.

Q.  Yes.

A.  And she threw a cup of coffee.

Q.  She threw a cup of coffee at me?

A.  Yeah.  In your direction.

Q.  It hit me.  Right?

A.  I couldn't see.

Q.  I'm still wet.  Right?

Roberto Pieraccini                                      **Loop AI Labs, Inc. vs. Gatti, et al.**

MS. CALAFIORE HEALY:  Objection.

Q.   Sir, you can look.  Can you look?

MS. CALAFIORE HEALY:  I did not throw a cup of coffee at you.  You insulted me repeatedly. You told me to be quiet.  I have a video.

I'm tired of being bullied by you, Mr. Wallerstein.  I am tired of being bullied.

Mr. Pieraccini is here to be questioned.

If you want to --

THE WITNESS:  Can I say something?  I am a scientist.  I'm a technologist.  I'm a very important person, and I'm here responding to questions that are not relevant to what you called me for.  Whether I talked to her on the phone?  What did I say to Mr. Gianmauro Calafiore?

Let's get to the chase of it.  I'm answering stupid questions that have no bearing on what -- I have work to do.  Like you have work to do, I have work to do.  I'm here just -- I don't even know why.

I don't know anything about the case. And then just, please, let's get it over.  I cannot really continue this.  I'm not involved in anything.

**Roberto Pieraccini**                                    **Loop AI Labs, Inc. vs. Gatti, et al.**

I knew that I was on the website. I was proud to be on the website. You can tell how many times you want. I knew I was on the website.

How could I not know that my profile was there and that my picture was there? That I'm an adviser of this company. How could I not know that?

So let's get over with this and let me get back to work. That's what I want to do.

Please ask me relevant questions, not questions with no relevance. I'm not involved in anything. I didn't do any wrongdoing.

So I want to get this over, please, and get back to my life.

Q.   Did you submit a declaration in this case?

A.   Yes, I did.

Q.   Recently?

A.   Yes, I did.

Q.   Why?

A.   Because I was asked to advise Loop.AI, as an adviser, regarding something that this Roman, whatever his name is, said.

COURT REPORTER:  I'm sorry, who?

**Roberto Pieraccini**                                         **Loop AI Labs, Inc. vs. Gatti, et al.**

THE WITNESS:  Roman, R-O-M-A-N.

Q.  I'm wet with coffee, am I not?

A.  I'm wet with sweat.

Q.  Okay.  That's not the question.  Do you see coffee on me?

MS. CALAFIORE HEALY:  Objection.

A.  I don't know if it's coffee or sweat.  I don't know.

Q.  Did your counsel throw her cup of coffee?

A.  This is not relevant to what you called me for.  Okay.

Q.  It is now.  It is now.  So you're either going to answer the question or you're not.

MS. CALAFIORE HEALY:  Objection.  He's already answered the question.

A.  I answered the questions.  Yeah.

Q.  Did she throw coffee on my computer?

MS. CALAFIORE HEALY:  No, I did not throw coffee on your computer.

Q.  I'm asking you.

A.  I don't know what she aimed at.

MS. CALAFIORE HEALY:  I have a video.

A.  I'm not in her brain.  I saw a coffee

**Roberto Pieraccini**                                    **Loop AI Labs, Inc. vs. Gatti, et al.**

flying.  Okay?

Q.  Where did it fly to?

A.  To the table, and it splashed.  That's what I saw.

Q.  It splashed on my computer?

A.  It is possible.  It splashed on -- probably it was splashed on me too.

Q.  All over?

A.  Coffees splash.

Q.  All over my bag.  Correct?

A.  That possible.

Q.  It's not possible.  It's true.  Right?

A.  Okay.

MS. CALAFIORE HEALY:  Objection.

Q.  You know what a fact is?  Right, sir?  You're a scientist.  It's a fact, is it not?

A.  What I saw is not part of my --

Q.  Yes.  Did you see coffee on my bag?

A.  Yes, I did.

Q.  What's so hard about that?  Did you see it on my computer?

A.  Yes.

Q.  And on me?

A.  Yes.

Q.  Okay.  It's not that hard.

Roberto Pieraccini                                    **Loop AI Labs, Inc. vs. Gatti, et al.**

MS. CALAFIORE HEALY:  It is hard.  I did not throw coffee on you.  I threw coffee on the table.

MR. WALLERSTEIN:  Your time will come, Counsel.

Q.   When we spoke on the phone, sir --

A.   Yeah.

Q.   -- you told me -- strike that.

When we spoke on the phone, did you tell me that "companies sometimes like to use my name to bolster their credibility"?

MS. CALAFIORE HEALY:  Objection.

A.   Are you --

MS. CALAFIORE HEALY:  Leading.

A.   That doesn't sound true to me.

Q.   What doesn't -- it doesn't sound true that you said it?

A.   That I'd say that.  I definitely, Loop.AI didn't do that, because I was on their website, and I was proud.  I was on the LinkedIn. I know Patrick Ehlen very well, so that can happen, in general.

Q.   I'm just talking about our phone call.

A.   I don't remember our phone call.  I can't remember a phone call that happened months