**VENABLE LLP**
Thomas E. Wallerstein (SBN 232086)
Kimberly Culp (SBN 238839)
Email: twallerstein@venable.com
           kculp@venable.com
505 Montgomery Street, Suite 1400
San Francisco, CA 94111
Telephone:    415.653.3750
Facsimile:     415.653.3755

Attorneys for Defendants Almaviva S.p.A
Almawave S.r.l., and Almawave USA, Inc.

**VENABLE LLP**
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>ANNA GATTI, an individual, ALMAVIVA S.p.A., an Italian corporation, ALMAWAVE S.r.l., an Italian corporation, ALMAWAVE USA, Inc., a California corporation, IQSYSTEM LLC, a California limited liability company, IQSYSTEM Inc., a Delaware corporation,<br><br>Defendants. | CASE NO.: 3:15-cv-00798-HSG-DMR<br><br>Hon. Haywood S. Gilliam, Jr.<br><br>**REPLY IN SUPPORT OF DEFENDANTS ALMAVIVA S.P.A., ALMAWAVE S.R.L., ALMAWAVE USA, INC.'S MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11**<br><br>Date:       September 1, 2016<br>Time:       2:00 p.m.<br>Dept:       Courtroom 10 – 19th Floor<br><br>Action Filed:    February 20, 2015<br>Trial Date:       September 19, 2016 |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT...............................................................................................................................2

I.      ALMAWAVE'S MOTION IS TIMELY...................................................................2

II.     LOOP DOES NOT DENY THAT IT FAILED TO CONDUCT A
        REASONABLE INVESTIGATION PRIOR TO FILING ITS CLAIMS.......................4

III.    LOOP'S OPPOSITION REGARDING THE ESTOPPEL ISSUE IS A RED
        HERRING...................................................................................................................4

IV.     LOOP'S ALLEGATIONS HAVE NO REASONABLE BASIS. ...................................5

        A.      The Pending Motion To Exclude Compels Granting this Motion.......................5

        B.      This Court Has Not Found That Loop's Allegations Are Supported By
                Evidence.........................................................................................................5

        C.      Discovery Proves Loop's Claims Remain Factually Baseless. ...........................6

V.      LOOP'S CONDUCT DEMONSTRATES "BAD FAITH" FOR THE PURPOSES
        OF RULE 11................................................................................................................9

VI.     MR. WEINBERG, AS SIGNER OF THE ORIGINAL COMPLAINT AND AS
        LOCAL COUNSEL THROUGHOUT THIS ACTION, IS "RESPONSIBLE FOR
        THE VIOLATION" OF RULE 11 ...............................................................................10

VII.    REVERSE SANCTIONS ARE UNWARRENTED. ......................................................13

CONCLUSION...........................................................................................................................14

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

i

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*287 Franklin Ave. Residents' Ass'n v. Meisels*
   No. 11-CV-976 KAM JO, 2015 WL 5457967 (E.D.N.Y. Sept. 17, 2015).......................8

*BondPro Corp. v. Siemens Power Generation, Inc.*
   463 F.3d 702 (7th Cir. 2006) ....................................................................................7

*BTS, USA, Inc. v. Executive Perspectives, LLC*
   166 Conn.App. 474 (Conn. App. Ct. Jun. 28, 2016) ........................................................9

*Donaldson v. Clark*
   819 F.2d 1551 (11th Cir. 1987) ...................................................................................3

*Emma C. v. Eastin*
   No. C-96-4179 TEH, 2001 WL 1180638 (N.D. Cal. Oct. 4, 2001)...............................11

*Gabriel Techs. Corp. v. Qualcomm Inc.*
   No. 08cv1992 AJB (MDD), 2013 WL 410103 (S.D. Cal. Feb. 1, 2013) ......................11

*Garr v. United States Healthcare*
   22 F.3d 1274 (3d Cir. 1994)........................................................................................10

*Greenfield v. United States Healthcare*
   146 F.R.D. 118 (E.D. Pa. 1993).....................................................................................10

*Holgate v. Baldwin*
   425 F.3d 671 (9th Cir. 2005) .........................................................................................2

*In re Keegan Mgmt. Co., Sec. Litig.*
   78 F.3d 431 (9th Cir. 1996) ...........................................................................................4

*Madison Oslin, Inc. v. Interstate Resources, Inc.*
   NO. MJG-12-3041, 2015 WL 7732638 (D. MD. Dec. 1, 2015) .....................................7

*Matter of Yagman*
   796 F.2d 1165 (9th Cir. 1986) ....................................................................................3, 4

V E N A B L E   L L P
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

ii

*Mulato v. Wells Fargo Bank, N.A.*

    76 F. Supp. 3d 929 (N.D. Cal. 2014) ...............................................................................2

*Netbula, LLC v. Bindview Dev. Corp.*

    No. C-06-0711 MJJ (EMC), 2007 WL 1694820 (N.D. Cal. June 11, 2007)...................3

*On–Line Technologies, Inc. v. Bodenseewerk Perkin–Elmer GmbH*

    386 F.3d 1133 (Fed. Cir. 2004)......................................................................................7

*Playtex Products, Inc. v. Georgia-Pac. Inc.*

    No. 02 CIV. 7848(HB), 2003 WL 21939706 (S.D.N.Y. Aug. 12, 2003)........................8

*Pony Exp. Courier Corp. of Am. v. Pony Exp. Delivery Serv.*

    872 F.2d 317 (9th Cir. 1989) .......................................................................................11

*Raylon LLC v. Complus Data Innovations, Co.*

    No. 6:09-CV-355, 2015 WL 11121530 (E.D. Tex. May 4, 2015) .................................12

*Religious Tech. Ctr. v. Gerbode*

    No. CV 93-2226 AWT, 1994 WL 228607 (C.D. Cal. May 2, 1994) .............................11

*Rich v. TASER Int'l, Inc.*

    2012 U.S. Dist. LEXIS 107927 (D. Nev. Aug 2, 2012) ...............................................13

*Roadway Express, Inc. v. Piper*

    447 U.S. 752 (1980)......................................................................................................10

*Val-Land Farms, Inc. v. Third Nat'l Bank*

    937 F.2d 1110 (6th Cir. 1991) ......................................................................................11

*Vehicle Operation Techs. LLC v. Am. Honda Motor Co. Inc.*

    67 F. Supp. 3d 637 (D. Del. 2014)................................................................................11

*Zaldivar v. City of L.A.*

    780 F.2d 823 (9th Cir. 1986) ..........................................................................................9

**STATUTES**

Fed. R. Civ. P. 11................................................................................................................ passim

L.R. 5-1 .........................................................................................................................................11

L.R. 7-8 .........................................................................................................................................13

iii

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

## PRELIMINARY STATEMENT

Loop and its counsel did not conduct a reasonable investigation, or any investigation at all, prior to filing its original Complaint, FAC, or SAC.  Loop does not point to any evidence which (a) it obtained during any supposed pre-filing investigation, or (b) would confirm that any such investigation took place.  Instead, Loop and its counsel commenced this action hoping that its shot-in-the-dark allegations would be confirmed through discovery.  Discovery confirmed that Loop has and had no evidence supporting Loop's allegations which contradicts the evidence Loop was provided before it even filed its SAC.

Loop and its counsel contend the motion is untimely because Almawave waited (in vain, it turns out) for the deposition testimony and interrogatory responses evidencing any investigation or factual basis of Loop's claims.  Loop and its counsel argue that Almaviva S.p.A., Almawave S.r.l., (the "Italian Almawave Defendants") and Almawave USA, Inc. ("Almawave USA") (jointly with the Italian Almawave Defendants, either the "Almawave Defendants" or just "Almawave") have not established Loop's "bad faith," but even a cursory review of the Orders in this case establishes such "bad faith."  And their contention that the Court has found that Loop's claims have a factual basis is not borne out by the Orders they cite, which found only that Loop's allegations were sufficiently drafted to survive a pleading challenge.

Loop's counsel includes Mr. Weinberg, who signed the original complaint.  As local counsel he is "responsible for" this chaotic and wasteful litigation.  It is telling that Mr. Weinberg does little to defend the conduct of this litigation or the merit of his client's claims, and instead relies on the contention that although he was copied on and involved in every aspect of the litigation, he nonetheless should be immune from Rule 11 because he signed only the first factually baseless complaint, but not the next two.  However, the complaint he did sign contains many of the same frivolous allegations that appear in the FAC and SAC.  Those allegations should be stricken, and Mr. Weinberg sanctioned for having made them.

This is not a case in which the plaintiff and its attorneys investigate their claims prior to filing suit, but, after discovery, turn out to be wrong.  Instead, Loop and its counsel concocted their allegations out of whole cloth, ignored the sworn and undisputed evidence they had, and

1

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

continued to levy their unfounded allegations after discovery confirmed they had no basis in fact that contradict the evidence. Rule 11 requires sanctions.

<b><u>ARGUMENT</u></b>

When a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine (1) whether the complaint is . . . factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Mulato v. Wells Fargo Bank, N.A.*, 76 F. Supp. 3d 929, 961 (N.D. Cal. 2014) (*citing Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005)).

## I.    <u>ALMAWAVE'S MOTION IS TIMELY.</u>

In its Opposition, Loop complains that even though Almawave believed Loop's complaint to be largely baseless when it was originally filed and in the two amendments thereafter, the Almawave Defendants waited until the close of discovery to file their sanctions motion. Loop Opp. at 10–12. Loop argues that this delay is evidence of Almawave using Rule 11 to acquire a tactical advantage. *Id.* at 11–12. Not so.

The Almawave Defendants' decision to wait until after discovery was driven by necessity, abundant caution, and patience. The Almawave Defendants wanted to know the basis of Loop's allegations <u>before</u> filing a Rule 11 motion. It sought discovery on that issue immediately. Unfortunately, Loop was never forthcoming with discovery. Instead, Loop engaged in discovery misconduct and refused to comply with court orders. *See* Dkt. Nos. 331, 397, 436, 640, 680, 778, and 795. After discovery closed, it was apparent that the Almawave Defendants had learned as much as Loop would allow, and concluded that the evidence established not only that Loop failed to conduct any pre-filing investigation, but also that Loop's claims were objectively baseless.

Loop cites the Federal Rules of Civil Procedure Advisory Committee Notes to highlight that "[a] Rule 11 motion 'should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely,'" but ignores the next sentence: "in other circumstances, it should not be served until the other party has had a reasonable opportunity for discovery." Loop Opp. at 10, Fed. R. Civ. P. 11, Advisory Committee Notes (1993

**VENABLE LLP**
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

2

Amendments). Thus, "[a]lthough the timing of sanctions rests in the discretion of the trial judge, 'it is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation, and in the case of motions at the time when the motion is decided or shortly thereafter.'" *Donaldson v. Clark*, 819 F.2d 1551, 1555 (11th Cir. 1987) (*citing* Fed. R. Civ. P. 11, Advisory Committee Notes (1983 Amendments).

Loop cannot have it both ways. Loop argues that the Court should consider evidence found in discovery, Loop Opp. at 19-20, but then faults the Almawave Defendants for waiting until discovery closed to file their Rule 11 motion. Had the Almawave Defendants filed its sanctions motion earlier, Loop undoubtedly would have argued that the motion was untimely because Loop is entitled to discovery and Almawave should have waited until discovery closed.

Further, Loop does not and cannot demonstrate how it was prejudiced by the Almawave Defendants' alleged "delay" in bringing this motion. Quite the contrary; the Almawave Defendants' "delay" provided Loop extensive and lengthy discovery to try to uncover evidence contradicting the sworn evidence Loop had at the outset from Almawave. Further, Loop was warned via a letter early in the litigation that its baseless allegations were sanctionable. Thus, Loop had ample opportunity to reverse course.

In support of its contention that this sanctions motion is untimely, Loop cites *Netbula, LLC v. Bindview Dev. Corp.*, No. C-06-0711 MJJ (EMC), 2007 WL 1694820 (N.D. Cal. June 11, 2007). *Netbula*, however, is easily distinguishable because the potentially sanctionable statements appeared in various filings in motion practice, rather than the complaint itself. *Netbula*, 2007 WL 1694820 at *1. Also, the party moving for sanctions filed its sanction motion after the court had decided the motions in question. *Id.* The court explained that the sanctions motion was untimely because the safe-harbor provision was designed to allow "the opposing party to withdraw the offending contention before the court has the opportunity to consider or rule upon it." *Id.* Ironically, the court in *Netbula* rejected caselaw that the movant attempted to rely on because that "case involve[d] contentions made in motions, and not pleadings." *Id.*

Loop also cites *Matter of Yagman*, 796 F.2d 1165 (9th Cir. 1986), to argue that sanctions motions should be filed promptly in order to deter further abuse. Loop Opp. at 11. The Court in

3

**VENABLE LLP**
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

*Yagman* was concerned about the practice of waiting until after trial in order to rule on sanctions motions. *See Yagman*, 796 F.2d at 1183 ("[the purpose of sanctions] is not well served by tolerating abuses during the course of an action and then punishing the offender after the trial is at an end."). The Court made no prescription as to when a motion for sanctions should be <u>filed</u>. Further, while the Ninth Circuit in *Yagman* does extoll the virtues of promptly issuing sanctions, the court also notes that "findings under Rule 11 occasionally cannot be made until after the evidentiary portion of the trial." *Id*. at 1183.

It is unfortunate that the discovery process in this action was so protracted. But, Loop cannot credibly complain that the Almawave Defendants should have filed this motion earlier when Loop repeatedly, in violation of numerous court orders, refused to provide discovery on the very evidence it claims the Court must consider in ruling on this motion.

## II. <u>LOOP DOES NOT DENY THAT IT FAILED TO CONDUCT A REASONABLE INVESTIGATION PRIOR TO FILING ITS CLAIMS.</u>

Continuing to assert privilege, Loop makes no argument that it conducted a reasonable investigation before it filed its Complaint, the FAC, or the operative SAC. Instead, Loop's defense is that regardless of its pre-filing investigation, during discovery it found evidence supporting its case so no sanctions may be issued.

Loop cites *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431 (9th Cir. 1996). But in *Keegan*, the Ninth Circuit held only that an attorney may not "be sanctioned for a complaint which <u>is well-founded</u>, <u>solely because she failed to conduct a reasonable inquiry</u>." *Id*. at 434 (emphasis added). *Keegan* obviously does not immunize plaintiffs who fail to conduct a reasonable pre-filing investigation; it merely holds that a plaintiff whose allegations <u>are</u> well-founded should not be sanctioned. *Id*. As explained in below, Loop's allegations are not well-founded in light of the undisputed evidence Loop has long possessed.

## III. <u>LOOP'S OPPOSITION REGARDING THE ESTOPPEL ISSUE IS A RED HERRING.</u>

As outlined above, Almawave has been forced to defend this litigation without knowing what Loop's evidence is or what investigation it conducted. The only witness in this case who

4

knows is Loop's counsel. Thus, as the Almawave Defendants argued in their moving papers, it would be unfair to allow Loop to rely on evidence previously withheld on grounds of privilege or work product. Almawave Mot. at 10–11. Almawave's concerns appear to be moot because Loop offered no evidence of any pre-filing investigation, basing its entire opposition on its (false) contention that it has uncovered evidence during discovery that support its claims that were unsubstantiated when made. Loop Opp. at 20–21.

## IV.    LOOP'S ALLEGATIONS HAVE NO REASONABLE BASIS.

### A.    The Pending Motions To Exclude Compels Granting this Motion.

There are various pending motions before the Court regarding Loop's refusal to comply with this Court's orders. Loop's refusal requires that this Court grant Almawave's pending motion (Dkt. 738) to exclude or strike Loop's evidence filed in support of its summary judgment motion, and motion to exclude testimony from Loop's witnesses (Dkt. 858). That evidence is the same that Loop relies on to oppose this motion. In their motion and reply (Dkt. 816) on the motion to strike Loop's evidence, and in response (Dkt. 817) to Loop's untimely-filed declaration opposing that motion, the Almawave Defendants explain why the evidence Loop relies on should be excluded for all purposes, including to oppose this motion.

Similarly, Loop has refused to offer deposition testimony supporting its claims. *See* Dkt. 858. For this reason, too, Loop cannot be heard to offer evidence opposing this Rule 11 motion.

In sum, if the Court grants the motions to exclude then it should necessarily also grant Almawave's Rule 11 motion.

### B.    This Court Has Not Found That Loop's Allegations Are Supported By Evidence.

Contrary to Loop's contentions in its Opposition, the Court has never found that any of Loop's pleadings have an adequate factual basis. Rather, the Court has held only that Loop's alleged facts stated a claim for relief and served as sufficient basis for personal jurisdiction. In denying Almawave USA's motion to dismiss the FAC in part (and granting it in part), the Court merely found that Loop alleged facts that stated certain claims for relief, not that those allegations had any actual factual basis. *See, e.g.,* Dkt. No. 186 at 2 ("In considering a motion to

5

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

dismiss, a court must accept all the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff."). In denying the Italian Almawave Defendants' motion to dismiss for lack of personal jurisdiction, the Court disclaimed any inquiry into the factual basis for Loop's allegations, stating that "at this stage of the proceeding (assuming there is no evidentiary hearing), a plaintiff need not prove the substantive merits of its case in order to demonstrate personal jurisdiction." Dkt. No. 726 at 5. In fact, the Court noted that Loop's opposition to the motion to dismiss the SAC for lack of personal jurisdiction was based on "plaintiff['s] allege[ation] that the details of the alleged misconduct were affirmatively concealed from it." *Id*. at n. 5. Nothing in any of the Court's orders suggest that Loop conducted a reasonable pre-filing investigation or that Loop's allegations have any reasonable basis in fact.

### C.   Discovery Proves Loop's Claims Remain Factually Baseless.

As discussed in the Almawave Defendants' motion for summary judgment and, in particular, its reply brief (Dkt. 818), Loop's "evidence" does not support the claims alleged against the Almawave Defendants.[1] Early in this litigation, the Almawave Defendants gave Loop sworn evidence that contradicted Loop's allegations. Loop ignored that evidence and chose to "plead around" it, hoping to uncover substantiation. Loop's gamble failed.

The Almawave Defendants have uncontroverted evidence that Ms. Sandei is an inventor on the Almawave Defendants' patent. *See e.g.* Dkt. 740-6 ¶¶ 33-34, Dkt. 25-1 ¶¶ 32-33. Loop speculates that Ms. Gatti "was emailing her colleagues at Loop AI to ask them questions about Loop AI's then confidential patent application . . . and then noting that she had shared with Almaviva the patent information." Opp. Dkt. 851 at 14:11-13. First, Loop's patent application filed February 6, 2013 was published on August 8, 2013. SJX 240. Loop also filed a patent application on March 23, 2013, which was published on September 18, 2014. SJX 261. The chat thread that Loop relies on (SJX 2700-2702) is inadmissible because the chat itself is

[1] In opposing this motion, Loop incorporates by reference its oppositions to summary judgment. So, too, do the Almawave Defendants incorporate by reference their own papers and objections.

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

unauthenticated and also because the Italian to English translation is unauthenticated. In any event, there is no evidence of what patent application, if any, was being discussed. Moreover, anything claimed in a patent application cannot be a trade secret.[2] *See BondPro Corp. v. Siemens Power Generation, Inc.*, 463 F.3d 702, 707 (7th Cir. 2006) (*citing On–Line Technologies, Inc. v. Bodenseewerk Perkin–Elmer GmbH*, 386 F.3d 1133, 1141 (Fed. Cir. 2004)) ("Publication in a patent destroys the trade secret"). Courts have awarded defendants their attorney's fees against plaintiffs who filed trade secret claims, but had previously disclosed the alleged secrets in patents. *Madison Oslin, Inc. v. Interstate Resources, Inc.*, NO. MJG-12-3041, 2015 WL 7732638, *2 (D. MD. Dec. 1, 2015) (finding plaintiff's claims "groundless in fact.").

Moreover, there is absolutely no evidence that Ms. Gatti did anything improper vis-à-vis Almawave with any Loop patent application. The document upon which Loop relies (SJX-2702) should be stricken because it contains unauthenticated Italian/English translations, and lacks foundation. Most importantly, the document nowhere mentions Loop or that any information of Loop was provided to Almawave. Loop grasps at straws to support its unfounded claim that Ms. Gatti ever provided the Almawave Defendants with Loop's confidential information.

Loop's "evidence" that Ms. Sandei did not invent the Almawave Defendants' patented technology amounts to an *ad hominem* attack on Ms. Sandei and the Almawave Defendants. Loop's "evidence" is speculative, lacking in foundation, objectionable, and should be disregarded. SJX 2584-87 (a former employee who is not a named inventor, does not claim to be, and whose employment terminated two years before Almawave filed its patent application speculating about Almawave's inventions); SJX 053-56 (Loop's employee Patrick Ehlen

---

[2] Loop also cites a declaration from Bart Peintner where he claims to have provided Ms. Gatti with Loop's PCT application. (SJX 311 at ¶ 47). The exhibit Loop cites, LOOP-00020164-166, refers to PCT Application No. PCT/US14/24621. The PCT Application was filed on March 12, 2014, and first published on October 9, 2014. *See* Electronic Acknowledgement Receipt for PCT Patent Application No. US14/24621 (Soshoma, Inc., applicant), dated March 12, 2014 (EFS ID 15214949); International Patent Application Publication No. WO 2014/165166 A1, dated Oct. 9, 2014. The PCT Application also claims priority to U.S. Application No. 13/802,327, which was filed on March 13, 2013, and published on September 18, 2014. *See* Electronic Acknowledgment Receipt for U.S. Patent Application No. 13/802,327, dated March 13, 2013 (EFS ID 18450181), Notice of Publication for U.S. Patent Application No. 13/802,327, Publication Number US-2014-0279906-A1, dated September 18, 2014.

7

speculating about Ms. Sandei's role, but not claiming to have personal knowledge, in inventing Almawave's technology); SJX 306-307 (Loop's co-founder Bart Peintner speculating about Ms. Sandei's role, but not claiming to have personal knowledge, in inventing Almawave's technology). This "evidence" proves nothing and does not contradict defendants' evidence.

Loop's evidence of any purported "conspiracy" is similarly lacking (now and when Loop filed the SAC). Loop mischaracterizes the few documents on which it relies. As Loop's opposition emphasizes, the only evidence Loop has is that the Almawave Defendants had "communications" with "Gatti, DiNapoli, Capaccio" and IQSystem Inc., Opp. at 16:11, but this evidence does not establish the existence of an enterprise. *See 287 Franklin Ave. Residents' Ass'n v. Meisels*, No. 11-CV-976 KAM JO, 2015 WL 5457967, at *4 (E.D.N.Y. Sept. 17, 2015). The rest of Loop's theory is pure speculation and conjecture not reasonably related to any evidence Loop obtained in any pre-filing investigation, or thereafter. For example, there is absolutely no evidence that the Almawave Defendants sought to push any company into bankruptcy to buy it "on the cheap."

The evidence remains the same since Loop filed the SAC – Ms. Gatti told the Almawave Defendants that there was no restriction from her from working for them. Moreover, as this Court found, Ms. Gatti's employment relationship with Loop was not exclusive. *See* Dkt. 402, 6:8-15 ("Loop AI Contract expressly anticipates a scenario where Gatti could work for another company while she was Loop AI's CEO . . . ."). As discussed in the Almawave Defendants' reply on its motion for Summary Judgment, Loop mischaracterizes its evidence. And there is nothing *ipso facto* inappropriate about Ms. Gatti holding two jobs.

Similarly, as discussed in its opening motion, and in its Motion for Summary Judgment, Loop has no evidence that Mr. Sternberg did anything wrong. Loop's only "evidence" – the Almawave Defendants' privilege log in this litigation – is evidence of nothing because this Court may not infer any conduct or actions from the privilege log. *See, e.g.*, *Playtex Products, Inc. v. Georgia-Pac. Inc.*, No. 02 CIV. 7848(HB), 2003 WL 21939706, at *7 (S.D.N.Y. Aug. 12, 2003).

//

//

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

8

## V.   LOOP'S CONDUCT DEMONSTRATES "BAD FAITH" FOR THE PURPOSES OF RULE 11.

Loop argues that Almawave "fails to even argue, let alone establish, the bad faith required for a Rule 11 Motion." Opp. at 17.  As an initial matter, the Almawave Defendants did in fact argue that Loop acted in bad faith.  Motion at 7 ("Loop's bad faith may be inferred and assumed if the factual allegations are determined to be baseless or not subject to prior a reasonable investigation.").  Moreover, as noted in the Motion, Rule 11 is violated if Loop's SAC lacks a factual foundation, "even [if] the paper was not filed in subjective bad faith."  *Id*. (quoting *Zaldivar v. City of L.A.,* 780 F.2d 823, 831 (9th Cir. 1986)).

Courts have found conduct less egregious than Loop's to be evidence of improper purposes.  *BTS, USA, Inc. v. Executive Perspectives, LLC*, 166 Conn.App. 474, *14 (Conn. App. Ct. Jun. 28, 2016) ("For the plaintiff to maintain these claims after the discovery process made crystal clear that the very premises upon which his suspicions were purportedly based were factually inaccurate give rise to an inference that the litigation was maintained for improper purposes.") (internal quotation marks and brackets removed).

In any event, even if bad faith were required, Loop's bad faith is readily apparent from numerous orders Loop has violated in this case (*see* Dkt. Nos. 331, 397, 436, 640, 680, 717, and 778), not to mention Loop's counsel's recent deposition conduct (*see* Dkt. No. 840, and 848)).  For example, at various points during this litigation, the Court has noted Loop's counsel's "obstructionist conduct" and "inappropriate behavior" at depositions (Dkt. No. 436), Loop's "plainly and grossly deficient" discovery responses which "are not substantially justified, and are subject to sanctions" (Dkt. No. 640), Loop's "repeated and unjustified failures to provide a timely and useable privilege log" (Dkt. No. 680), and the "recurring problem" of Loop's counsel appearing "incapable of submitting the straightforward declaration required by the local rules" (Dkt. No. 717).  Further, in a statement filed on July 27, Loop admits that it did not comply with the Court's May 3 Order (Dkt. No. 640) with regard to supplementing its interrogatory responses or supplementing its written discovery responses, and only began its supplemental production

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

9

*after* the date on which the Court required the production to be <u>complete</u>.[3]  Setting aside the fact that Loop chose not to supplement interrogatory responses the Court had described as "plainly and grossly deficient" (Dkt. No. 640 at 3), Loop's disregard of the Court's Order and its own burden to present evidence is itself evidence of marked bad faith.  *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980) ("this Court recognized the 'well-acknowledged' inherent power of a court to levy sanctions in response to abusive litigation practices").

## VI.   MR. WEINBERG, AS SIGNER OF THE ORIGINAL COMPLAINT AND AS LOCAL COUNSEL THROUGHOUT THIS ACTION, IS "RESPONSIBLE FOR THE VIOLATION" OF RULE 11

Absent Mr. Weinberg's dereliction of his duties, the Court and the parties would not be in this lamentable situation.  Mr. Weinberg commenced this lawsuit by signing the factually baseless original complaint without conducting any investigation, reasonable or otherwise.  He does not argue otherwise, nor does he suggest that he understood Ms. Healy to have conducted any investigation, reasonable or otherwise.  Since signing the original complaint, Mr. Weinberg has stood idly by as this case quickly devolved into bad faith, "scorched-earth litigation" which has wasted the resources of the Court and the defendants.  In the language of Rule 11, he is "responsible for" the numerous Rule 11 violations made by his client and co-counsel.

Mr. Weinberg attempts to escape responsibility for this fiasco first by mischaracterizing Almawave's motion as based entirely on the argument that he "signed" the FAC and SAC.  Weinberg Opp. at 1.  Not so.  Mr. Weinberg was made aware of every nuance of this litigation.  He was copied on every email to Loop, served every filing via ECF, and emailed with Almawave's counsel.  He appeared at three hearings.

As explained in the motion, local counsel like Mr. Weinberg "have an independent non-delegable duty under Rule 11," a duty in which he has been completely derelict.  Motion at 21 n.8; *see generally Greenfield v. United States Healthcare*, 146 F.R.D. 118 (E.D. Pa. 1993), *aff'd sub nom. Garr v. United States Healthcare*, 22 F.3d 1274 (3d Cir. 1994); *see also Gabriel Techs.*

_____
[3] Moreover, Loop's May 11 production related to expert discovery and had nothing to do with the documents it was ordered on May 3 to produce by May 10.

10

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

*Corp. v. Qualcomm Inc.,* No. 08cv1992 AJB (MDD), 2013 WL 410103, at \*13 (S.D. Cal. Feb. 1, 2013) (imposing Rule 11 sanctions against attorney for failing to undertaken a reasonable inquiry "[e]ven when serving in the more limited role of local counsel"); *Val-Land Farms, Inc. v. Third Nat'l Bank*, 937 F.2d 1110, 1118 (6th Cir. 1991) (rejecting notion that sanctions are inappropriate for local counsel who rely on primary outside counsel).

Mr. Weinberg also contends that because the FAC and SAC did not bear a signature of his which accords with Local Rule 5-1, he cannot be held accountable for the Rule 11 violations. Weinberg Opp. at 16. Not so. "Rule 11 may apply to parties who did not actually sign the offending document." *Emma C. v. Eastin*, No. C-96-4179 TEH, 2001 WL 1180638, at \*1 (N.D. Cal. Oct. 4, 2001). The mere fact that attorneys "did not sign the original complaint does not prevent the Court from granting Rule 11 sanctions against them." *Vehicle Operation Techs. LLC v. Am. Honda Motor Co. Inc.*, 67 F. Supp. 3d 637, 653 (D. Del. 2014).

Mr. Weinberg relies on *Giebelhaus v. Spindrift Yachts*, 938 F.2d 962 (9th Cir. 1991), for the proposition that the type-written name of an attorney on pleadings is insufficient to expose that attorney to liability. As Mr. Weinberg notes, *Giebelhaus* was decided before the 1993 amendments to Rule 11 which expanded potential Rule 11 liability. Weinberg Opp. at 5. In any event, *Giebelhaus* involved the liability of a more senior attorney at a firm where only a junior attorney at the firm had signed the papers, not whether a local counsel could be held accountable for out-of-state counsel's Rule 11 violations. *Id*. at 965. The other Ninth Circuit case Mr. Weinberg cites, *Pony Exp. Courier Corp. of Am. v. Pony Exp. Delivery Serv.*, 872 F.2d 317 (9th Cir. 1989), did not involve the duties of local counsel, and the district court decision he cites, *Religious Tech. Ctr. v. Gerbode*, No. CV 93-2226 AWT, 1994 WL 228607 (C.D. Cal. May 2, 1994), states that "the court has the authority to sanction a co-counsel law firm, as well as the primary offending firm, even though co-counsel did not sign the offending pleading." *Id*. at \*5.

This Court should reject Mr. Weinberg's reckless vision of local counsel, as other courts have.

//

//

**VENABLE LLP**
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

11

> All counsel—whether local or national, with small firms or with large firms—who put their name on a pleading bear the responsibility for . . . the consequences when the pleading falls below the standards imposed by Rule 11. An attorney who is presented with the opportunity to file a new case . . . is obligated to at least ask the hard questions about the quality of the claims. If the attorney cannot find good answers to those questions, the attorney should withdraw from the case rather than pursue the claims to the significant detriment of opposing party and court resources.

*Raylon LLC v. Complus Data Innovations, Co.*, No. 6:09-CV-355, 2015 WL 11121530, at *9 (E.D. Tex. May 4, 2015).

In any event, <u>Mr. Weinberg signed the original complaint</u>, which commenced this action and which contains numerous factually-baseless allegations which are the subject of this motion, including, for example:

| Original Complaint (Signed by Mr. Weinberg) Paragraph | Second Amended Complaint Paragraph |
|---|---|
| 98. With the aid and assistance of the Almaviva Defendants, Gatti continued perpetrating her unlawful scheme, by sending fraudulent communications through the wires to the Company's other executives and key employees. In one such communication, Gatti falsely told the Company's President, that in her capacity as CEO and in charge of finding investments for the Company she was directing that the Company stop seeking investments from various sources, as she had knowledge that that would jeopardize investments from institutional sources. | 125. With the aid and assistance of the Almaviva Defendants, Gatti continued perpetrating her unlawful scheme, by sending fraudulent communications through the wires to the Company's other executives and key employees. In one such communication, Gatti falsely told the Company's President, that in her capacity as CEO and in charge of finding investments for the Company she was directing that the Company stop seeking investments from various sources, as she had knowledge that that would jeopardize investments from institutional sources. |
| 208. Gatti and the other Defendants intentionally acted to disrupt and harm the relationships between the Company and the Company's employees, consultants and advisors, by soliciting them to work for competitors of the Company. | 321. Gatti and the other Defendants intentionally acted to disrupt and harm the relationships between the Company and the Company's employees, consultants and advisors, by soliciting them to work for competitors of the Company. |
| 209. These acts were independently violative of numerous state and federal laws, as well as contractual and common-law obligations owed by Gatti to the Company. The Defendants acted in concert with Gatti, and provided her substantial assistance in committing these violations. | 322. These acts were independently violative of numerous state and federal laws, as well as contractual and common-law obligations owed by Gatti to the Company. The Defendants acted in concert with Gatti, and provided her substantial assistance in committing these violations. |

12

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

| 217.    The Almaviva Defendants intentionally or recklessly interfered with the contractual relationship between the Company and Anna Gatti, including but not limited to, by inducing her to breach numerous restrictive covenants and obligations set forth in the CIIAA, including §§2, §(a), 5, 6, 8(a), 8(b), 10(b), and 10(c) and the Executed OL, including §7. | 330.    The Almaviva and IQSystem Defendants intentionally or recklessly interfered with the contractual relationship, as well as the at will employment relationship, between the Company and Anna Gatti, including but not limited to, by inducing her to breach numerous restrictive covenants and obligations set forth in the CIIAA, including §§2, §(a), 5, 6, 8(a), 8(b), 10(b), and 10(c) and the Executed OL, including §7. |

Having signed the original complaint, which contained many of the same factually-baseless allegations as the SAC, Mr. Weinberg cannot be heard to argue that he is not responsible for those same allegations in the SAC even if he did not technically sign the SAC.

## VII.    REVERSE SANCTIONS ARE UNWARRENTED.

Loop and its counsel are liable to Almawave for millions of dollars in damages.  For them to suggest that they should be rewarded with sanctions themselves is beyond the pale. Loop Opp. at 21, Weinberg Opp. at 15.

First, Loop's and Mr. Weinberg's motions for reverse sanctions violate Civil Local Rule 7-8.  Civil Local Rule 7-8 require motions for sanctions, "regardless of the sources of authority invoked," to be filed and noticed separately.  L.R. 7-8.  Loop and Mr. Weinberg may not cabin their motion for reverse sanctions within their Opposition.

Further, neither Loop nor Mr. Weinberg do much to support their motion for reverse sanctions.  Loop offers a single case that it claims involves "indistinguishable" circumstances in *Rich v. TASER Int'l, Inc.*, 2012 U.S. Dist. LEXIS 107927 (D. Nev. Aug 2, 2012).  Loop Opp. at 21.  *TASER*, however, involved a substantively different sanctions motion.  The defendant in *TASER* filed a sanctions motion that merely regurgitated a summary judgment motion the defendant had filed more than six months earlier.  *TASER*, 2012 U.S. Dist. LEXIS 107927 at *3, 9–11.  The Almawave Defendants' Rule 11 motion, by contrast, argues something different. This motion argues that in the face of overwhelming evidence to the contrary and no supporting evidence, Loop repeatedly insisted on filing amended complaints, which it knew were factually unsupportable, and which were unsupported by any reasonable investigation before filing.

//

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

13

**VENABLE LLP**
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

In direct contrast to *TASER*, the Almawave Defendants filed this motion as soon as they could and were delayed only by Loop's failure to produce evidence in support of its allegations and its refusal to comply with this Court's orders.  Unlike in *TASER*, this motion was filed contemporaneously with the Almawave Defendants' motion for summary judgment.  Finally, this motion does not seek to supplement or regurgitate the motion for summary judgment, but rather focuses on Loop's failure to conduct a reasonable and competent investigation, to which Loop opposes by essentially saying "so what?" and relying instead on its oppositions to the pending summary judgment motions.

Finally, despite the fact that the Almawave Defendants' "delay" in filing its motion gave Loop the opportunity to conduct discovery, Loop suggests that Almawave filed its Rule 11 motion simply to gain a tactical advantage.  In fact, the "delay" cited by Loop disproves Loop's argument.  Had the Almawave Defendants sought to use Rule 11 to intimidate Loop or its counsel into abandoning its claims, they would not have waited until they incurred millions of dollars in attorney fees.  As outlined above, the Almawave Defendants gained no advantage from the "delay," which was the product of good faith caution and a desire to ensure that Loop's allegations were truly baseless.  In fact, contrary to a tactical advantage for Almawave, the "delay" instead afforded Loop discovery and a long time to reconsider its baseless allegations.

## **CONCLUSION**

Loop does not deny that if the Court finds a Rule 11 violation, sanctions are mandatory.  Loop does not argue that the amount sought by the Almawave Defendants is unreasonable.  Loop does not deny that striking offending allegations from the SAC is the appropriate remedy.[4]

---

[4] Almawave's notice of motion and proposed order identify the allegations that should be stricken.  Loop's opposition complains about two sentences in two paragraphs of the many that should be stricken.  Paragraph 46 of the Second Amended Complaint is illustrative.  Loop claims that the sentence "Defendant Almawave S.r.l. ('Almawave IT') is an Italian company with its principal place of business in Rome, Italy" is accurate.  Opp. at 21:16-17.  But Loop does not argue that the remaining 17 lines of that paragraph are even remotely supported by evidence or investigation.  Loop offers no evidence that it investigated or has evidence to support the allegations in that paragraph that the "highest-level executives" of "Almaviva IT" "were the main participants and the ones who authorized and financed the wrongful scheme against [Loop]," etc.  Loop fails to establish that any of the paragraphs Almawave seeks to strike should not be stricken as factually frivolous.

14

For the foregoing reasons and those in its moving papers, the Almawave Defendants respectfully ask the Court to impose Rule 11 sanctions against Loop and its counsel, strike the offending allegations in the SAC, and award sanctions in the amount of $1,250,000.

Respectfully submitted,

Dated: July 28, 2016                                    **VENABLE LLP**

By:   /s/ Thomas E. Wallerstein
      Thomas E. Wallerstein (SBN 232086)
      Kimberly Culp (SBN 238839)
      505 Montgomery Street, Suite 1400
      San Francisco, CA 94111
      twallerstein@venable.com
      kculp@venable.com
      Tel: (415) 653-3750
      Fax: (415) 653-3755

      *Attorneys for Defendants Almaviva S.p.A.,*
      *Almawave S.r.l. and Almawave USA, Inc.*

**VENABLE LLP**
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

15