**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LOOP AI LABS INC., | CASE NO.: 3:15-cv-00798-HSG-DMR |
| Plaintiff, | |
| v. | **DECLARATION OF VALERIA CALAFIORE HEALY IN SUPPPORT OF LOOP AIL LABS INC.'S OPPOSITION TO DEFENDANT ALMAWAVE USA INC.'S MOTION FOR SANCTIONS AT DKT. 858 (OPPOSITION FILED AT DKT. 866)** |
| ANNA GATTI, et al, | |
| Defendants. | Action Filed:  February 20, 2015<br>Trial Date:  September 19, 2016 |
| | Hon. Haywood S. Gilliam, Jr.<br>Hon. Donna M. Ryu |

I, Valeria Calafiore Healy, hereby declare under penalty of perjury that the following statements are true and correct to the best of my knowledge, information and belief:

1.  I am an attorney admitted to practice law in the State of New York and have been admitted *pro hac vice* by this Court as counsel for Plaintiff Loop AI Labs Inc. (the "Plaintiff" or "Loop AI") in this action.

2.  I have been lead counsel in this case from its inception.  I have personal knowledge of and am fully familiar with the investigation, discovery and court proceedings in this action.

3.  I submit this declaration pursuant to Civil Local Rule 7-5 to address facts within my personal knowledge regarding the discovery matters addressed in Defendant Almawave USA Inc.'s ("Almawave USA") Motion for Sanctions filed at Dkt. 840 ("Motion"), and in Loop AI's Opposition to the Motion filed at Dkt. 866.

4.  I am familiar with all the deposition notices served in this case.  Almawave USA is the only defendant who served notices of deposition for the following witnesses: (1) Gianmauro Calafiore, Loop AI's CEO, deposed on January 25, 2016 as a percipient witness, and again on April 7, 2016, as percipient witness for a total of approximately 12 hours on the record; (2) Dr. Peintner, Loop AI's CTO, deposed on March 29, 2016 for 7 hours on the record (and over 9 hours at the deposition site); (3) Dr. Ehlen, Loop AI's Chief Scientist deposed on April 6, 2016 for 7 hours on the record (and almost 10 hours at the deposition site); (4) Loop AI 30(b)(6), by corporate designee Mr. Calafiore, deposed as a Rule 30(b)(6) witness on April 8, 2016 for approximately 8 hours on the record (and 10 hours total time at the deposition site).

5.  During each of the foregoing depositions counsel for Defendants Gatti, IQSystem Inc. and IQSystem LLC were intermittently present.  At times counsel for these other Defendants asked their own questions.  In total, Loop AI has provided 32 hours of deposition testimony on the record from three witnesses.

---

1

**Almawave USA's Exhibit 857-3**

6.     I have reviewed Almawave USA's Exhibit 857-3 ("Chart"), in which Almawave lists lines of testimony on which it bases its Motion for sanctions.

7.      Almawave's Chart is an inaccurate and misleading representation of the transcripts and of the over 32 hours of testimony provided by the witnesses.  I provide a few examples below.

**Alleged –"Instructions Not to Answer for Reasons Other than Privilege"**

| *Peintner Deposition* | | |
|---|---|---|
| 40:3-11 | Who are the top three shareholders in Loop? | Relevance and Court Order excluding stock ownership from 30(b)(6) topics) |

Dkt. 857-3 at 1 and 3.

8.     Almawave claims an improper objection was made to the foregoing question, but does not advise the Court that it had asked the identical question just one page before the cited page and that the witness provided his response:

> BY MR. WALLERSTEIN:
>     Q.   **Sir, who are the top three investors in Loop?**
>
> THE WITNESS:  I don't know who the top three are.

*See* Peinter Deposition Tr. ("Peintner Tr.") at 39:2-4 and 39:17-18[1]

9.     Further, following the question identified by Almawave in its Chart the witness provided his knowledge as to some of the investors.

10.     I believe my objection was appropriate to enforce a limitation as to relevance based on a Court Order finding the topic of Loop AI's shareholders to be irrelevant.  *See* Dkt. 466 at 3:14-17.  In any event, Dr. Peintner provided his knowledge regarding Loop AI's stock

---

[1] I understand that the deposition transcripts were previously lodged with the Court.  The undersigned can resubmit copies of relevant excerpts if requested.

3:15-CV-00798-HSG-DMR                                                    DECLARATION OF VCH

ownership.  Furthermore, Almawave USA obtained extensive discovery on this topic both through written discovery and through other depositions.

11.     By way of another example, Almawave identifies the following as improper:

**Alleged – "Factual Basis of Loop's Claims"**

| *Peintner Deposition* | | |
|---|---|---|
| 72:13-19 | Have you talked to Gianmauro Calafiore about whether, aside from Anna Gatti, is there anything that my clients did to interfere with the potential investment of WI Harper? Did you discuss the complaints in this action with Mr. Calafiore before they were filed? | Privilege |
| 92:17-23 | Did you discuss the complaints in this action with Mr. Calafiore before they were filed? | Privilege |
| 93:1-7 | Do you know anyone at Loop that ever read the first or second amended complaint before it was filed? | Privilege |

Dkt. 857-3 at 1.

12.     As to the first line of questions reproduced by Almawave in its Chart, the transcript does not reflect those questions being asked.  Pages 71 and 72 of the transcript of Dr. Peintner's deposition show, instead, that the witness provided whatever personal knowledge he had regarding the questions being asked.  *See, e.g.*, Peintner Tr. at 71-72.

13.     As to the second line identified by Almawave, that line also does not reflect the actual questions and answers.  Page 92 of the Transcript shows that Dr. Peintner answered questions asked as to what he personally recalled doing in respect of the complaints filed in this action.

> **Q.  Did you read the Complaint before it was filed?**
> A.  Yes, I did.
> **Q.  And then there was a First Amended Complaint and a Second Amended Complaint.  Are you aware of that?**
> A.   I am aware that there were Amended Complaints.  I don't recall the deltas.
> **Q.  Okay.  Did you read either of those before they were filed?**

A.   I don't recall reading them before they were filed.

Dr. Peintner was instructed not to answer solely to protect privileged and attorney work-product communications.  *See* Peintner Tr. at 92.

14.    Moreover, these questions have nothing to do with the "factual basis of Loop [AI]'s Claims."

15.    The foregoing questions relate solely to Almawave's Rule 11 Motion, which has already been filed and is pending before Judge Gilliam.

16.    By way of another example, Almawave lists the following in its Chart:

**Alleged – "Questions About Document Collection, Production, and Deposition Preparation"**

| *Peintner Deposition* | | |
|---|---|---|
| 10:12-18 | Have you spoken to Gianmauro about his deposition? | Privilege |

Dkt. 857-3 at 4.

17.    The foregoing question is not related to any matter at issue in the case and called for privileged and attorney work-product information.

18.    As page 11 of the transcript shows, the foregoing question was part of an harassing and improper line of questions, in which Mr. Wallerstein required Dr. Peintner to read line by line the Court's Order chastising Mr. Calafiore and the undersigned.  *See* Peintner Tr. at 11-15.

19.    Similarly Almawave identifies various questions objected on privilege grounds, but does not explain why the privilege objection was improper.  Moreover, the majority of the questions identified in the Chart have nothing to do with any matter at issue in the case.  For instance, Almawave lists the following questions:

| 212:25-213:2 | Did Mr. Ehlen to your knowledge ever talk to Mr. Sharif about this litigation? | Privilege |
|---|---|---|
| 213:5-9 | Did Mr. Sharif ever opine on how this, to you, on how this litigation would affect Loop's ability to raise further | Privilege |
| 213:12-17 | Did Mr. Sharif ever opine to Mr. Calafiore as far as you know as to how this litigation would affect Loop's ability | Privilege |

3:15-CV-00798-HSG-DMR                                                    DECLARATION OF VCH

| 226:17-23 | Have you discussed with Mr. Calafiore the business impact a public trial in this litigation could have? | Privilege |
|---|---|---|
| 227:1-4 | Did you -- have you discussed with Mr. Ehlen the impact a public trial could have on Loop's business? | Privilege |
| 227:7-11 | Did Mr. Ehlen and Mr. Calafiore discuss amongst themselves the impact that a public trial could have on | Privilege |
| 227:17-25 | Did Mr. Calafiore ever discuss with Mr. Ehlen the prospect of how a public trial in this litigation would | Privilege |

Dkt. 857-3 at 5.

20.    Mr. Sharif is an attorney, the founder of a venture capital firm, and a member of Loop AI's Board of Advisors.  The foregoing questions called for privileged and attorney work-product communications and I properly objected on those grounds.  Those questions also make self-evident that they were not asked for any proper purpose, as they bear no connection to any aspect of the case.

21.    Almawave also lists in its Chart dozens of questions that it never asked, but which were questions asked by counsel for other parties who have not moved for sanctions.  *See, e.g.,* Dkt. 857-3 at 1 (30(b)(6)), 2-4 (Ehlen and 30(b)(6), 6, 7 (30(b)(6)); 8-10.  But Almawave's counsel cannot complain based on other parties questions, because he had dozens and dozens of deposition hours to obtain all the testimony it sought from Loop AI and its witnesses.

22.    I have also reviewed the list of testimony placed under the label "Speaking Objections/Coaching" in Almawave's Chart.  Almawave does not provide any explanation as what exactly is objectionable about the citations it provides at pages 8-10 and how it was affected by the objections made (most of which were not posed by Almawave).  I have therefore compared the citations at pages 8-10 of the Chart to Almawave's and the other parties' counsel's own objections during depositions I took.  When comparting Mr. Wallerstein and his colleagues deposition objections, it is difficult to discern why those citations form the basis for Almawave USA's latest Motion.   Compared to the objections regularly made by Mr. Wallerstein's and his colleagues, I believe my objections were restrained.

23.    Although a complete list of all of Mr. Wallerstein's and his colleagues's objections would be too long to prepare, I provide a few examples below, from the first deposition I took in this case:

**24.    Q. Do you remember a time -- did you have a**
**25.    21 discussion with Jeff Capaccio about Almawave?**
26.    22 MR. WALLERSTEIN: I am going to object to the
27.    23 extent that any questions relating to discussions with
28.    24 Mr. Capaccio implicate the attorney-client privilege of
29.    25 any of my clients. Obviously there was a point at which
30.    Page 49
31.    1 Ms. Gatti became an agent of at least one or more of my
32.    2 clients and had conversations with Mr. Capaccio. To the
33.    3 extent that she did, they may be covered by privilege,
34.    4 so I object to Ms. Gatti revealing any privileged
35.    5 communications with regard to my client.

A.Gatti Jurisdictional Deposition of Jan. 19, 2016 ("Gatti Jur. Dep.") at 48-49.

MS. HEALY: Q. Okay. So during the first
15 quarter did you contact Jeff Capaccio to discuss
16 Almawave?
17 MR. WALLERSTEIN: Same objection.
18 MS. HEALY: What's the objection?
19 MR. WALLERSTEIN: I object to the extent that
20 any conversations between Mr. Capaccio and an agent of
21 one or more of my clients is privileged.
22 MS. HEALY: And who is the agent?
23 MR. WALLERSTEIN: At some point Ms. Gatti
24 became an agent.
25 MS. HEALY: Can you please identify the dates?
1 MR. WALLERSTEIN: Ms. Healy, do not interrupt
2 me.
3 At some point Ms. Gatti became an agent of one
4 or more of my clients. To the extent that an agent of
5 one or more of my clients had a conversation with an
6 attorney, Mr. Capaccio, that conversation is privileged,
7 and I object to the disclosure of it.
8 MR. LOSAVIO: And I am reiterating my previous
9 objection that there is a personal relationship between
10 an attorney and a client for which the person is
11 entitled to invoke the attorney-client privilege.
12 MS. HEALY: I understand your objection.
13 MR. LOSAVIO: And I tried to give you an out,
14 but you didn't take it. So I am going to instruct the
15 witness, conversations that you have with counsel are
16 protected by the attorney-client privilege and you are
17 privileged not to discuss those.
18 MS. HEALY: Maybe, Mr. Wallerstein, the
19 question is better directed to you. Can you identify
20 some dates in the first Q of 2014 or the second Q of
21 2014 where Ms. Gatti became an agent of AlmavivA S.p.A.

or Almawave S.r.l.?
MR. LOSAVIO: Ms. Healy, that doesn't address my objection and my concern about the personal privilege, which applies prior to any time that she became an agent or employee of some other entity.
MS. HEALY: Q. Ms. Gatti, did you have communications with Mr. Capaccio about Almawave S.r.l.? I am not asking you about the content of the communications. I am asking only whether you reached out to Mr. Capaccio in first Q, so January through March 31st, 2014, to tell him about Almawave S.r.l. or AlmavivA S.p.A.
MR. LOSAVIO: Objection.
MR. WALLERSTEIN: Objection to the extent it requires disclosure of privileged information.
MS. HEALY: Are you instructing her not to answer?
MR. LOSAVIO: May I make my objection?
MS. HEALY: Sure.
MR. LOSAVIO: So my objection is only with respect to the component of your question that contains the phrase about Almawave. That gets into the substance of what the client and the attorney talked about.
MS. HEALY: Can you explain to me what's the basis for this privilege?
MR. LOSAVIO: Let me explain the difference. Did you talk to --
MS. HEALY: No, I don't want to understand. I am going to call the Court.

Gatti Jur. Dep. at 50-53.

**And what was the purpose of your call to Capaccio regarding Almawave?**
MR. LOSAVIO: Objection to the extent it calls for attorney-client privilege.
MS. HEALY: Well, are you instructing her not to answer?
**Q. Were you calling Mr. Capaccio on behalf of Almawave?**
A. What do you mean, on behalf of?
**Q. He is saying that it may call for attorney-client privilege, so I am trying to establish whether you were calling Mr. Capaccio as you were doing something for Almawave.**
A. I -- I don't understand the legal -- you know.
**Q. Why were you calling Mr. Capaccio regarding Almawave?**
MR. WALLERSTEIN: Objection to the extent it

calls for attorney-client privilege.
MS. HEALY: Q. You can answer.
MR. LOSAVIO: I am going to object on the same grounds. You don't have to disclose the content of communications between you and an attorney that you consult with.
MS. HEALY: Q. Did you consult with Mr. Capaccio on behalf of Almawave?
MR. LOSAVIO: Same objection.
MS. HEALY: Are you instructing? I am not clear whether you are instructing her not to answer or not. Because you are basically impeding her to answer any questions. So I am asking her:
**Q. Did you reach out to -- is Mr. Capaccio a lawyer?**

Gatti Jur. Dep. at 54-56.

**Q. So after this first meeting did there come a point -- you said you reached out to Mr. Capaccio for legal services for Ms. Sandei. What was the nature of the legal services that you thought she could use?**
MR. WALLERSTEIN: Objection. Withdrawn.
MR. LOSAVIO: You can answer.
MR. WALLERSTEIN: Compound. Objection; compound. I am not sure which question. One of which calls for privilege. The second does not.
MR. LOSAVIO: Can I have the question read back?

Gatti Jur. Dep. at 61.

**Q. Did you have any discussions with Orrick, Herrington & Sutcliffe about your going to work for Almawave?**
MR. WALLERSTEIN: Objection; vague as to time. More importantly, I object to the extent it calls for privileged conversations. To the extent that Ms. Gatti was serving as an agent for my client and having conversation with my client's attorneys, I object on grounds of privilege.

MS. HEALY: For which client?
MR. LOSAVIO: And --
MS. HEALY: For which client?
MR. WALLERSTEIN: To the extent that Ms. Gatti was serving as an agent for any of my clients, I object on the grounds of privilege to her disclosing communications, directly or indirectly, between any of my clients and Orrick.
MR. LOSAVIO: And to the extent --

8

MS. HEALY: Q. Ms. Gatti --

MR. LOSAVIO: Wait a second.

MS. HEALY: Go ahead.

MR. LOSAVIO: If she was seeking legal advice from an attorney with respect to employment or anything else, that invades the attorney-client privilege, as it asks for the content.

MS. HEALY: I understand.

MR. LOSAVIO: But there is a form that doesn't ask for the content that's an acceptable question.

MS. HEALY: That's a good point, Tom. Thank you. You are really helpful.

**Q. So let's look into that, Ms. Gatti. Did you ask for legal advice about your employment agreement?**

MR. WALLERSTEIN: Objection.

MR. LOSAVIO: Objection; form. It calls for invasion of the attorney-client privilege.

MS. HEALY: Q. I am not asking about the nature of the advice. I am asking whether you went to any lawyer seeking advice about a job offer that was given to you by Almawave USA.

MR. WALLERSTEIN: Objection to the extent it calls for attorney-client privileged communications between any of my clients, their agent, and their attorney.

MS. HEALY: What does that have to do with whether she got -- if she is going to ask for legal advice about the job offer she is getting? How is that relating to your client?

MR. LOSAVIO: My objection is that, again, the question as put asks for the invasion of the attorney-client privilege because of the element that describes the content of the consultation.

MS. HEALY: Q. Ms. Gatti --

MR. LOSAVIO: You can ask in the absence of describing the content.

MS. HEALY: I did not ask for the content. I said, "Did you go to any lawyer seeking legal advice about the job offer you were being given?" I didn't ask for what was said.

MR. LOSAVIO: "About the job offer" is the content of the potential conversation --

MS. HEALY: Okay. Fine.

MR. LOSAVIO: -- between attorney and client.

MS. HEALY: It doesn't really matter.

MR. WALLERSTEIN: It's 12:30, and I would like to take our lunch break.

Gatti Jur. Dep. at 129- 134.[2]

> **Q. Okay. When did he come to San Francisco?**
> A. Fall 2014 --
> **Q. Okay.**
> A. -- with Valeria Sandei.
> **Q. Okay. So he came as an investor?**
> MR. WALLERSTEIN: Objection; calls for
> speculation.
> MS. HEALY: She is explaining her view.
> MR. WALLERSTEIN: Counsel, let me state my
> darn objections, please.

Gatti Jur. Dep. at 182.

> MS. HEALY: Q. Did you ever discuss any
> conflict of interest relating to Orrick?
>
> MR. WALLERSTEIN: Objection; vague as to time,
> lacks foundation -- well, let me try that again.
> Objection; vague as to time. To the extent
> that my client was involved in a discussion, it's
> privileged.
> MS. HEALY: Q. Did you ever have any
> discussion, Ms. Gatti, with anyone at Almawave regarding
> conflicts of interest regarding anyone --
> MR. WALLERSTEIN: Objection.
> MS. HEALY: Q. -- Orrick, other vendors,
> employees, anyone? I am just curious if you had any
> discussions addressing conflicts of interest.
> MR. WALLERSTEIN: Objection to the extent that
> that would include conversations with or among counsel,
> including Orrick.
> MS. HEALY: Q. You can answer.
> MR. WALLERSTEIN: You can answer to that
> extent.
> MR. LOSAVIO: If you can answer without
> disclosing communications where attorneys were present.
> THE WITNESS: I don't have any recollection.
> MR. LOSAVIO: It's past 4:20, and --
> MS. HEALY: Do you need a break?
> MR. LOSAVIO: Well, and I think the reporter
> deserves a break as well.

Gatti Jur. Dep. at 237-238.

---

[2] The objection extending through page 134 is not reproduced in its entirety, but it spanned 6 pages ending in Mr. Wallerstein's breaking the deposition for lunch, impeding the witness from actually providing any testimony on a critical topic in the case.

3:15-CV-00798-HSG-DMR                                    DECLARATION OF VCH

36.     Mr. Wallerstein's objections during just one deposition were so extensive that it was virtually impossible to obtain any testimony from a key party in the case who is not even represented by Mr. Wallerstein:

> **Q. Okay. Perfect. Great. So when you refer to**
> **Almawave, that refers to the company Ms. Sandei was**
> **working for, the S.r.l.?**
> MR. WALLERSTEIN: Objection; Ms. Sandei works
> for more than one company.

Gatti Jur. Dep. at 192.

> **Q. What was that reason?**
> A. She -- my recollection is that she said that
> she had a good meeting with them, that she liked -- she
> liked the meeting with them.
> MR. WALLERSTEIN: Ms. Gatti, I caution you not
> to reveal communications you had with Ms. Sandei after
> you began working for Almawave as to --
> MS. HEALY: That's before.
> MR. WALLERSTEIN: Counsel, please don't
> Page 153
> interrupt.
> MS. HEALY: Please don't interrupt the
> testimony of the witness.
> MR. WALLERSTEIN: I am making my objection and
> I am going to continue.
> MS. HEALY: No, you are not allowed to make an
> objection while she is speaking before -- we are
> strictly in the period before she is starting working
> for Almawave.
> MR. WALLERSTEIN: Counsel, do not interrupt me
> when I am making my objection.
> Ms. Gatti --
> MS. HEALY: The Court said no speaking
> objections.
> MR. WALLERSTEIN: Counsel --
> MS. HEALY: If you want to, instruct her not
> to answer, but don't feed her testimony. If you want to
> instruct her not to answer on attorney-client privilege,
> that's your prerogative, and you can do it, and then we
> can review the testimony and take to the Court. But
> don't interrupt the witness while she is answering about
> a period of time that she said she was not working for
> Almawave.
> MR. WALLERSTEIN: I need to hear the question
> back. And the instruction stands. Or you can rephrase

DECLARATION OF VCH

it.

MS. HEALY: Q. I am asking you, Ms. Gatti --
you were talking about why Ms. Sandei -- what Ms. Sandei
told you as to why she could not or would not retain
Carr & Ferrell and was hiring Orrick instead.

MR. WALLERSTEIN: Objection to the extent that
calls for attorney-client communications. And I caution
the witness not to disclose any conversations that
Ms. Sandei revealed that she had with or about Carr &
Ferrell.

MS. HEALY: Q. You can answer.

MR. LOSAVIO: Object to the form. It's
ambiguous as to time.

Gatti Jur. Dep. at 152- 154.

37.    A true and correct copy of the above cited deposition excerpts is attached hereto as **Exhibit 1**.  During Ms. Gatti's jurisdictional deposition alone, Mr. Wallerstein objected and engaged in speeches in excess of 160 times.  *See* Exhibit 1 at 37 (Word Index).  Mr. Wallerstein's objections were separate from the hundreds of objections made by Ms. Gatti's own counsel.  *See id.* at 19-20.

38.    The foregoing deposition excerpts are representative of Almawave USA's counsel's objections in each of the few depositions I took in this case.  Although I have not had sufficient time to provide the Court excerpts from each of the depositions I took in this case, a complete list of all of Mr. Wallerstein extensive speeches, speaking objections, and coaching during deposition can be submitted.

### Other Exhibits

39.    In Loop AI's Opposition to the Motion, I refer to a recent recorded meet and confer teleconference held on August 1, 2016 with counsel for the Defendants.  *See* Dkt. 866 at 3.  Attached hereto as **Exhibit 2** and also available at this link is a true and correct copy of the excerpt from the August 1, 2016 teleconference quoted in Loop AI's Opposition at page 3.  Similar audio excerpts from that meet and confer are also included in Exhibit 2 and are available at the following links: Part 2, Part 3, Part 4, Part 5, and Part 6.

3:15-CV-00798-HSG-DMR                                                      DECLARATION OF VCH

Respectfully submitted,

Executed: August 4, 2016
            New York, New York

/s/ Valeria Calafiore Healy
Valeria Calafiore Healy

3:15-CV-00798-HSG-DMR                                    DECLARATION OF VCH