VALERIA CALAFIORE HEALY (*pro hac vice*)
HEALY LLC
154 Grand Street
New York, New York  10013
Telephone:    (212) 810-0377
Facsimile:    (212) 810-7036

DANIEL J. WEINBERG (SBN 227159)
FREITAS ANGELL & WEINBERG LLP
350 Marine Parkway, Suite 200
Redwood Shores, California  94065
Telephone:    (650) 593-6300
Facsimile:    (650) 593-6301

Attorneys for Plaintiff
LOOP AI LABS INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS INC.,<br><br>Plaintiff,<br><br>v.<br><br>ANNA GATTI, et al,<br><br>Defendants. | CASE NO.: 3:15-cv-00798-HSG-(DMR)<br><br>**PLAINTIFF LOOP AI LABS INC.'S NOTICE OF *DAUBERT* MOTION AND MOTION TO EXCLUDE TESTIMONY AND SUBMISSIONS OF KENDYL A. ROMAN FROM CONSIDERATION AT SUMMARY JUDGMENT AND TRIAL**<br><br>Hearing Date: September 29, 2016<br>(or earlier date as the Court may order)<br><br>Action Filed:  February 20, 2015<br>Trial Date: September 19, 2016<br><br>Hon. Haywood S. Gilliam, Jr. |

**PLEASE TAKE NOTICE THAT** on September 29, 2016 at 2:00pm, or as soon before that as the parties may be heard, Plaintiff Loop AI Labs Inc. ("Plaintiff"), will move the Court, before the Honorable Haywood S. Gilliam, Jr. of the United States District Court for the Northern District of California, for an Order excluding Mr. Kendyl A. Roman from offering any testimony in this case on the grounds that Mr. Roman does not qualify as an expert witness under Rule 702 and that his testimony fails to meet the requirements of Rule 702, as explained by *Daubert* and its progeny.  *See* Fed. R. Evid. 702, *Daubert v. Merrill Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 158 (1999).  This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Declaration of V.C. Healy dated July 6, 2016 filed at Dkt. 793, and certain exhibits referenced therein ("SJX"), which are already part of the record in this case as set forth at Dkt. 851-5 and 861.

On August 2, 2016, the three Almaviva Defendants identified Kendyl A. Roman as one of their putative expert witnesses that they intend to call at trial to offer the opinions set forth in his May 1, 2016 Report, *see* SJX-2000-2073 (Report), as well as 110 exhibits that Mr. Roman produced well after any discovery deadline in this case.  Loop AI seeks to exclude Mr. Roman's Report, Declaration and proposed testimony on the following key grounds:

- Mr. Roman lacks the requisite qualifications under Rule 702 to offer the opinions and conclusions he proposes to offer.  Mr. Roman proposes to offer opinions and conclusion on a broad variety of subjects ranging anywhere from artificial intelligence deep learning technology, to the credibility of the Almaviva Defendants' witnesses, to the assessments of certain Almaviva employees  ability to think "outside the box" and invent artificial intelligence technology without being skilled in the art, to legal opinions, to many other topics.  *See* SJX-2000-73 and Dkt. 740-20 (Roman Declaration).  Mr. Roman is not qualified to give any of the opinions he proposes to give.  Mr. Roman has demonstrated to be extremely confused about the field of artificial intelligence technology, and knows nothing about Loop AI's technology in particular.  During his deposition it was clear that Mr. Roman is also completely

unfamiliar Almawave S.r.l., its alleged technology, or the start-ups Almawave previously acquired.  Despite his lack of knowledge and qualifications, Mr. Roman purports to impermissibly opine on all these subjects.  Mr. Roman appears to have some experience comparing software source code, but no software source code is at issue in this case and his potential expertise in that area has not been deployed in this case and is not needed.  In an attempt to compensate for his lack of expertise in the field of artificial intelligence ("AI"), Mr. Roman claims to have  augmented his AI knowledge by speaking to three alleged experts in the field – specifically, Mr. Carmack, Mr. Casper, and Mr. Koval.  Mr. Carmack and Mr. Casper.  *See, e.g.,* SJX-2032 at 126 (claiming that three individuals identified in his Report were allegedly "key" to Mr. Roman's "understanding and knowledge."); SJX-2032 at 129:14-24 (testifying that Mr. Koval, Mr. Casper and Mr. Carmack "were specific people who were key to [his] understanding of the technology at issue in this case.").   Even if it were permissible to gain the qualifications necessary to testify as a Rule 702 expert simply by talking to third parties – it is not – Mr. Roman's representations about his consultations with those three alleged experts are untrue.   Mr. Roman has never spoken to these individuals about any aspect of this case, or about AI.  Mr. Casper and Mr. Carmack both testified that Mr. Roman is nothing more than an acquaintance from their church and that they have never consulted with him as he claims.  *See* SJX-2517-18.  Mr. Koval, similarly, confirmed in writing that the last time he spoke to Mr. Roman was more than 20 years ago.  SJX-2590-91.  Mr. Roman's misrepresentations regarding his qualifications as an expert witness in the field of AI are serious violations and are alone sufficient to exclude him as a witness.

- Mr. Roman's proposed opinions and conclusions are also subject to exclusion because they are both irrelevant and unreliable, and therefore inadmissible under Rule 702.

For these and the reasons more fully set forth in the accompanying Memorandum of Points and Authorities and in the supporting materials, Loop AI respectfully requests that the

Court exclude Mr. Roman as a witness for all purposes, and exclude all of Mr. Roman's testimony in whatever form, including his Report and Declaration, as well as the 110 exhibits he claims he seeks to introduce at trial.

Respectfully submitted,

August 8, 2016                                    By:  /s/ *Valeria Calafiore Healy*

Valeria Calafiore Healy, Esq. (*phv*)
HEALY LLC

Daniel J. Weinberg, Esq. (SBN 227159)
FREITAS ANGELL & WEINBERG LLP

Attorneys for Plaintiff
LOOP AI LABS, INC.

## TABLE OF CONTENTS

**Pages**

TABLE OF AUTHORITIES ................................................................................................ iii

GLOSSARY ..................................................................................................................... vii

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

RELEVANT BACKGROUND ........................................................................................... 1

    (1) Category 1 - Opinions Regarding Artificial Intelligence and Deep Learning Technology .................................................................................................................. 2

    (2) Category 2- Opinions Regarding Factual And Credibility Matters ...................... 2

    (3) Category 3 – Opinions Regarding Legal And Other Matters ................................ 3

ARGUMENT ...................................................................................................................... 4

I.    Relevant Legal Standards ......................................................................................... 4

II.    Roman is Not Qualified to Offer Any of The Opinions He Proposes to Offer. ...... 6

    A. Roman Is Not an Artificial Intelligence Expert Under Rule 702 ....................... 7

    B. Mr. Roman Cannot Compensate for His Lack of Expertise By Claiming He Has Consulted Other Alleged Experts And Read Books After Being Engaged by Venable for This Case ................................................................... 11

    C. Mr. Roman's Untrue Representations Regarding His Qualifications as An Expert Witness Are Alone Sufficient to Bar Him From Testifying ................... 12

    D. Mr. Roman Is Not Qualified to Give Legal or Other Opinions ....................... 13

    E. Mr. Roman Cannot Serve as the Almaviva Defendants' Mouthpiece To Present Their Arguments In The Form of A Purported Expert Opinion ........... 15

III.    Mr. Roman's Proposed Opinions Lack Relevance and Would Not "Help the Trier of Fact" In this Case ...................................................................................... 17

    A. This Case Does Not Involve Any Issue Requiring a Technical Expert ........... 19

IV.    Mr. Roman's Proposed Opinions Are Unreliable ................................................ 21

V.    Mr. Roman Impermissibly Relies on Evidence from the Italian Almaviva Defendants Who Have Refused to Provide Any Discovery in This Case – They Cannot Now Use an Expert to Introduce at Trial Evidence They Refused to Provide ........ 23

CONCLUSION ................................................................................................................. 25

## TABLE OF AUTHORITIES

### CASES

**Page**

*523 IP LLC v. CureMD.com,*
48 F. Supp. 3d 600 (S.D.N.Y. 2013) ...................................................................................11

*Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.,*
738 F.3d 960 (9th Cir. 2013) ............................................................................................17

*Ayala v. City of S. San Francisco,*
No. C 06-02061 WHA, 2007 U.S. Dist. LEXIS 54051 (N.D. Cal. July 13, 2007) .........5, 6

*C. Wright & V. Gold,*
Federal Practice and Procedure: Evidence § 6266, p. 302 (2016) ......................................5

*Claar v. Burlington N.R.R.,*
29 F.3d 499 (9th Cir. 1994) ............................................................................................... 1

*Cook v. Am. S.S. Co.,*
53 F.3d 733 (6th Cir. 1995) ................................................................................................7

*Daubert v. Merrill Dow Pharmaceuticals, Inc.,*
509 U.S. 579 (1993) .................................................................................................. *passim*

*Dep't of Toxic Substance Control v. Technichem, Inc.,*
No. 12-cv-05845, 2016 U.S. Dist. LEXIS 33379 (N.D. Cal. Mar. 15,
2016)..............................................................................................................................15, 16

*Doe v. Reddy,*
No. C 02-05570, 2004 U.S. Dist. LEXIS 30792 (N.D. Cal. Mar. 24, 2004) ...............18, 20

*Domingo v. T.K.,*
289 F.3d 600 (9th Cir. 2002) ............................................................................................21

*DSU Med. Corp. v. JMS Co., LTD.,*
296 F. Supp. 2d 1140 (N.D. Cal. 2003) ............................................................................21

*Estate of Barabin v. AstenJohnson, Inc.,*
740 F.3d 457 (9th Cir. 2014) .......................................................................................4, 21

*Finjin Inc. v. BlueCoat Sys.,*
No. 13-cv-03999-BLF, 2015 U.S. Dist. LEXIS 91528 (N.D. Cal. July 15,
2015)...................................................................................................................................22

*Gable v. NBC,*
727 F. Supp. 2d 815 (C.D. Cal. 2010) ................................................................................6

*GE v. Joiner,*
522 U.S. 136 (1997) ......................................................................................................5, 21

*Good Tech Corp. v. MobileIron, Inc.,*
No. 5:12-cv-05826-PSG, 2015 U.S. Dist. LEXIS 87347 (N.D. Cal. July 5, 2015)

..............................................................................................................................9, 11

*Goodwin v. Danek Med.,*
       No. CV-S-95-433, 1999 U.S. Dist. LEXIS 19121 (D. Nev. July 2, 1999) .........................11

*GPNE Corp. v. Apple Inc.,*
       ..............No. 12-CV-02885-LHK, 2014 U.S. Dist. LEXIS 53234 (N.D. Cal. Apr. 16, 2014)

*Hangarter v. Provident Life & Accident Ins. Co.,*
       373 F.3d 998 (9th. Cir. 2004).................................................................................................14

*Hughes v. Unumprovident Corp.,*
       No. C 07-4088, 2008 U.S. Dist. LEXIS 77651 (N.D. Cal. Oct. 3, 2008) .........................14

*In re Ford Tailgate Litig.,*
       No. 11-cv-02953-RS, 2015 U.S. Dist. LEXIS 159534 (N.D. Cal. Nov. 25, 2015)
       ....................................................................................................................................7, 9

*Kumho Tire Co. v. Carmichael,*
       526 U.S. 137 (1999) ................................................................................................................4

*Law v. Allison,*
       No. CV 10-6189, 2013 U.S. Dist. LEXIS 113498 (C.D. Cal. July 2, 2013).......................11

*Maffei v. Northern Ins. Co.,*
       12 F.3d 892 (9th Cir. 1993)....................................................................................................14

*McHugh v. United Serv. Auto. Ass'n,*
       164 F.3d 451 (9th Cir. 1999) .................................................................................................14

*MicroStrategy Inc. v. Bus. Objects, S.A,.*
       331 F. Supp. 2d 396 (E.D. Va. 2004) ...................................................................................15

*Montgomery v. Noga,*
       168 F.3d 1282 (11th Cir. 1999) .............................................................................................10

*Nationwide Transp. Fin. v. Cass Info. Sys.,*
       523 F.3d 1051 (9th Cir. 2008)...........................................................................................14, 15

*Ollier v. Sweetwater Union High Sch. Dist,.*
       768 F.3d 843 (9th Cir. 2014)...........................................................................................5, 7, 17

*Open Text S.A. v. Box, Inc.,*
       No. 13-cv-04910-JD, 2015 U.S. Dist. LEXIS 8783 (N.D. Cal. Jan. 23, 2015)
       ..................................................................................................................................................22

*Pecover v. Elec. Arts Inc.,*
       No. C 08-2820 VRW, 2010 U.S. Dist. LEXIS 140632 (N.D. Cal. Dec. 21,
       2010).........................................................................................................................................23

*Pesch v. Indep. Brewers United Corp.,*
       No. C-13-05317, 2015 U.S. Dist. LEXIS 15442 (N.D. Cal. Feb. 8, 2015).............18, 19, 20

*Primiano v. Cook,*
       598 F.3d 558 (9th Cir. 2010)...........................................................................................5, 18

*Quintero v. Long,*
   No. 1:13-cv-01251, 2015 U.S. Dist. LEXIS 153453 (E.D. Cal. Nov. 12, 2015)
   ....................................................................................................................................11, 12

*Rowe v. DPI Specialty Foods, Inc.,*
   No. 2:13-cv-00708, 2015 U.S. Dist. LEXIS 110605 (D. Utah Aug. 19, 2015) .................15

*Synthes USA, LLC v. Spinal Kinetics, Inc.,*
   No. C-09-01201, 2011 U.S. Dist. LEXIS 93093 (N.D. Cal. Aug. 19,
   2011)................................................................................................................11, 12, 24

*Tyco Thermal Controls LLC v. Redwood Industrials,*
   No. C 06-07164, 2010 U.S. Dist. LEXIS 47019, 2010 WL 1526471 (N.D. Cal. Apr. 15,
   2010)...........................................................................................................................6

*United States v. Chang,*
   207 F.3d 1169 (9th Cir. 2000) ...........................................................................6, 7, 9

*United States v. Freeman,*
   498 F.3d 893 (9th Cir. 2007). ..................................................................................16

*United States v. Jones,*
   84 F. Supp. 2d 124 (D.C. Col. 1999) ..................................................................13. 14

*United States v. Kilgus,*
   571 F.2d 508 (9th Cir. 1978)......................................................................................23

*United States v. Kupau,*
   781 F.2d 740 (9th Cir. 1984) ....................................................................................18

*Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP,*
   593 F. Supp. 1153 (S.D. Cal. 2008) .........................................................................7, 9

*Weisgram v. Marley Co.,*
   528 U.S. 440 (2000) .................................................................................................5

*Whole Woman's Health v. Hellerstedt,*
   136 S. Ct. 2292 (2016) ..............................................................................................5

*Wong v. Belmontes,*
   558 U.S. 15 (2009) ...................................................................................................19

**STATUTES AND RULES**

**Page**

Fed. R. Evid. 403 ..................................................................................................... 6

Fed. R. Evid. 702 .............................................................................................. *passim*

Fed. R. Evid. 703-705 ...............................................................................................4

Fed. R. Civ. P. 26 .................................................................................................25

Fed. R. Civ. P. 37 .................................................................................................25

**GLOSSARY**

| Abbreviation | Definition |
|---|---|
| Action | Designates the civil action pending in the United States District Court for the Northern District of California, styled *Loop AI Labs Inc. v. Gatti et al*, N.D. Cal. 15-798, filed on February 20, 2015. |
| Almaviva or Almaviva Defendants | Defendants Almaviva S.p.A., Almawave S.r.l., and Almawave USA Inc.. |
| AW-USA | Defendant Almawave USA |
| Summary Judgment Appendix | Designates Plaintiff's Appendix of Summary Judgment Exhibits ("SJX-___") filed at the Dkts. Listed in Exhibit 4 to the Declaration of V.C. Healy dated July 21, 2016 |
| Complaint | Second Amended Complaint filed at Dkt. 210 |

| Decl. | Declaration |
| --- | --- |
| Dkt. | Designates entries on the ECF docket of the District Court for the Northern District of California, N.D. Cal. Civil Action No. 3:15-cv-0798-HSG-(DMR) |
| Federal Rules | Federal Rules of Civil Procedure |
| Italian Defendants | Defendants Almaviva S.p.A. and Almawave S.r.l. |
| Loop AI | Plaintiff Loop AI Labs Inc. |
| Roman Declaration | The June 15, 2016 Declaration of Mr. Roman filed at Dkt. 740-20. |
| Roman Deposition | The June 7, 2016 Deposition of Mr. Roman filed at Dkt. 784-43 (SJX-2000-2073). |
| Roman Report or "RR" | The May 1, 2016 Report of Mr. Roman filed at Dkt. 803 (SJX-2074-2157). |
| SJX | Loop AI's Summary Judgment Appendix |

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Loop AI Labs Inc. respectfully submits this Memorandum of Points and Authorities in support of its *Daubert* Motion seeking to exclude Mr. Kendyl Roman from testifying in any aspect of this case, whether by way of oral examination at trial or by way of written submissions, including through his June 15, 2016 Declaration, previously submitted by the Almaviva Defendants in support of their Motion for Summary Judgment (the "SJ Motion").[1]

## RELEVANT BACKGROUND

This case does not involve any issue of a type that requires a technical expert to assist the jury, such as for instance the analysis of source code. Indeed, this case does not involve any claim or issue relating to source code. Because the facts at issue in this case can be readily understood by any layperson, Loop AI has not retained a "technical" expert to testify at trial. Notwithstanding, on August 2, 2016, the Almaviva Defendants have indicated they plan to call their putative expert witness, Mr. Roman, to testify at trial. Mr. Roman proposes to give opinions in a broad range of areas ranging from artificial intelligence deep learning technology, to alleged market analyses of deep learning technology, to whether trade secrets were accessed and misappropriated by Almaviva, to whether the Almaviva witnesses are testifying truthfully, and a variety of other topics. *See* RR, SJX-2074-2157. On June 7, 2016, Mr. Roman was deposed. *See* SJX-2000 to 2073. On June 16, 2016, Almaviva submitted a slightly shortened version of the Roman Report in the form of a declaration in support of the Almaviva Defendants' motion for summary judgment. *See* Dkt. 740-20. The Declaration is in sum and substance identical to the Report.[2] On August 2, 2016, the Almaviva Defendants confirmed they plan to

---

[1] *See, e.g., Claar v. Burlington N.R.R.*, 29 F.3d 499, 502 (9th Cir. 1994) ("Before admitting the affidavits, the district court was affirmatively required to find that the experts' conclusions were based on scientific knowledge. This requirement means that the court had to determine that Drs. Hines and Nelson arrived at their conclusions using scientific methods and procedures, and that those conclusions were not mere subjective beliefs or unsupported speculation. In an effort to make this determination, the district court repeatedly ordered the experts to explain the reasoning and methods underlying their conclusions. Despite those orders, the affidavits are devoid of any such explanation.")

[2] Because the two documents are essentially identical, any discussion regarding the Report applies equally to the Declaration and viceversa.

use Mr. Roman to introduce at trial not only his Report, but also another 110 irrelevant exhibits that Mr. Roman (but not the Almaviva Defendants) produced in this case after the close of expert discovery.  Indeed, the 110 irrelevant exhibits that Mr. Roman proposes to offer constitute the bulk of the Almaviva Defendants' (as well as the other Defendants') trial exhibits in this case.[3]

Because of the broad scope of opinions that Mr. Roman proposes to offer, Loop AI has attempted to group them and has identified the following three areas in which Mr. Roman's proposed opinions fall:

(1) **Category 1 - Opinions Regarding Artificial Intelligence and Deep Learning Technology**[4]:

    a.  A variety of technical terms which appear to have been randomly selected;

    b.  the development of deep learning and unsupervised learning technology and the state of the technology;

    c.  the market for these technologies and its players;

    d.  the technology aspect of certain opinions listed in Category 2 below;

(2) **Category 2- Opinions Regarding Factual And Credibility Matters**[5]:

    a.  Loop AI's technology in general;

---

[3] These exhibits are not discussed anywhere in Mr. Roman's Report, and only a few are cited as purported references in footnotes included in the Report.

[4] *See, e.g.,* RR at ¶¶ 66, 70(m), 106, 107, 108, 109, 110, 215, 223, 232, 233, 243, 244, 245, 246, 247, 248, 249, 250, 251, 252, 253, 254, 255, 294, 295; RDecl. at ¶¶ 63, 67(m), 99, 100, 101, 102, 205, 211, 220, 221, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 272, 273.

[5] *See, e.g.,* RR at ¶¶ 66, 70(o), 93, 127, 211, 212, 215, 216, 220, 221, 222, 223, 224, 225, 226, 227, 228, 233, 234, 235, 236, 237, 294, 295, (Pg. 63); RDecl. at ¶¶ 63, 66, 67(o), 90, 118, 201, 202, 205, 206, 210, 211, 212, 213, 214, 215, 216, 217, 217, 221, 222, 223, 224, 225, 272, 273, (pg. 49) (compare and contrast products).  RR at ¶¶ 66, 93, 95, 100, 101, 115, 118, 119, 120, 123, 213, 229, 268, 269, 270, 271; RDecl. at ¶¶ 63, 90, 92, 96, 97, 107, 110, 111, 112, 115, 203, 217 (compare and contrast companies).  RR at ¶¶ 66, 70(h), 70(i), 70(j), 70(k), 93, 94, 95, 97, 98, 121, 211, 212, 217, 218, 219, 234, 235, 236, 237, 238; RDecl. at ¶¶ 63, 67(h), 67(i), 67(j), 67(k), 90, 91, 92, 93, 94, 95, 112, 201, 202, 207, 208, 209, 222, 223, 224, 225, 226 (Almawave alleged development of artificial intelligence unsupervised learning technology before Loop AI).  RR at ¶¶ 66, 127, 131, 233, 239, 240, 241, 242, 282; RDecl. at ¶¶ 63, 118, 122, 221, 227, 228, 229, 230 (access and use of Loop AI's trade secrets). RR at ¶¶ 66, 124, 125, 126, 127; RDecl. at ¶¶ 63, 115, 116, 117, 118 (Loop AI's relationship with Gatti (alleged)). RR at ¶¶ 66, 111, 112, 113, 114, 115, 116, 117, 118, 120, 122, 124, 125, 287, 288, 289, 290, 291, 292, 293; RDecl. at ¶¶ 63, 103, 104, 105, 106, 107, 108, 109, 110, 111, 115, 116, 117, 265, 266, 267, 268, 269, 270, 271 (alleged "roles that various individuals played.")

---

2

b. Almawave S.r.l.'s technology in general;

c. The differences between Almawave S.r.l. and Loop AI's technology in general;

d. What Loop AI and Almawave S.r.l. were working on and what products they were marketing;

e. The roles and alleged background of current and former employees of Loop AI and Almawave S.r.l.;

f. Access and use by the Almaviva Defendants of Loop AI's documents and information;

g. The credibility and ability to invent by certain of the inventors listed in Almawave S.r.l.'s first patent application at issue in this action;

h. Almawave S.r.l.'s alleged development of unsupervised learning technology before Loop AI.

i. Compare and contrast Loop AI and Almawave S.r.l. as companies;

(3) **Category 3 - Opinions Regarding Legal And Other Matters**[6]:

a. The sufficiency of Loop AI's trade secrets disclosure under California law;

b. Whether Loop AI has anything that can qualify as a trade secret under California law;

c. The validity of Loop AI's trade secrets under California law;

d. Whether the Almaviva Defendants accessed or used any trade secrets of Loop AI;

---

[6] *See, e.g.,* RR at ¶¶ 66, 70(b), 70(c), 70(d), 70(e), 70(f), 70(g), 128, 230, 231; RDecl. at ¶¶ 63, 67(b), 67(c), 67(d), 67(e), 67(f), 67(g), 119, 218, 219 (failure to sufficiently identify trade secrets under California law).  RR at 70(a), 70(l), 101, 102, 116, 117, 118, 218, 223, 232, 233, 243, 244, 245, 246, 247, 248, 249, 250, 251, 252, 253, 254, 255, 257, 258, 259, 260, 261, 262, 263, 264, 265, 266, 267; RDecl. at ¶¶ 63, 67(a), 67(l), 97, 98, 108, 109, 110, 208, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 245, 246, 247, 248, 249, 250, 251, 252, 253 (Loop AI's trade secrets are publicly known and have no value).  RR at ¶¶ 66, 70(p), 214, 226, 272, 273, 274, 275, 276, 277, 278, 279, 280, 281, 283, 284, 285, 286, 287; RDecl. at ¶¶ 63, 66, 67(p), 204, 214, 254, 255, 256, 257, 258, 259, 260, 261, 262, 263, 264, 265, 266, 267, 268, 269 (patent law and procedure and applicability to this case).

---

3:15-CV-00798-HSG

PL.'S *DAUBERT* MOTION
TO EXCLUDE KENDYL A. ROMAN

e.  The value of Loop AI's trade secrets;

f.  Patent law, patent procedure;

g.  A variety of nontechnical definitions, including purported description of parties, nonparties, and other randomly selected individuals and entities.

## ARGUMENT

### I.      Relevant Legal Standards.

In order to offer Mr. Roman as an expert for any purpose in this case, the Almaviva Defendants must prove by a preponderance of the evidence that Mr. Roman is qualified to offer each of the opinions he seeks to offer and that all other requirements for the admissibility of the proposed expert testimony are met.  *See Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993).  The principles established in *Daubert* apply to expert testimony of all types. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 464 (9th Cir. 2014) (*en banc*) (reversing decision to give each side leeway to present expert testimony to the jury and allow the jury to decide the shaky expert testimony). The determination of whether a putative expert's testimony is admissible is a critical one, because inadmissible expert testimony can be highly prejudicial to the party against whom it is offered, and may result in the need for a new trial.  *See id.* at 467 (explaining that in the Ninth Circuit prejudicial errors in the admission of expert testimony no longer are remanded for *Daubert* hearings and may require a new trial).

Federal Rule of Evidence 702 provides the initial framework for admissibility of testimony of an expert witness sought to be offered by a litigant:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Rules 703 to 705 set forth additional requirements regarding the admissibility of expert witness testimony.  *See* Fed. R. Evid. 703-705.  "Under the Rules the trial judge must

4

ensure that any and all expert evidence admitted is not only relevant, but reliable." *Whole Woman's Health v. Hellerstedt*, ____ U.S. ____, 136 S. Ct. 2292 (2016) (citations and brackets omitted); *GE v. Joiner*, 522 U.S. 136, 142 (1997). *Estate of Baravin*, 740 F.3d at 463 ("We have interpreted Rule 702 to require that '[e]xpert testimony … be both relevant and reliable."); *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 860 (9th Cir. 2014). The district court must make "gateway determinations" regarding a proposed expert, and "make findings of relevancy and reliability before admitting into evidence the expert testimony." *Estate of Baravin*, 740 F.3d at 467. "Since *Daubert* … parties relying on expert evidence have had notice of the exacting standards of reliability such evidence must meet." *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000) (affirming exclusion of expert witness).

The Almaviva Defendants cannot satisfy these exacting requirements in respect of Mr. Roman, for three primary reasons. First, Mr. Roman is not "qualified" to give the opinions he proposes to give. Second, Mr. Roman's proposed opinions are irrelevant, not based on any technical or specialized knowledge of Mr. Roman, and would not "assist the trier of fact." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that the opinion testimony 'assist the trier of fact' 'goes primarily to relevance.'"). Finally, Mr. Roman's proposed opinions are unreliable and not "likely to promote accurate factfinding." *Whole Woman's Health*, 136 S. Ct. 2292 (quoting 29 C. Wright & V. Gold, Federal Practice and Procedure: Evidence § 6266, p. 302 (2016)). Because Mr. Roman fails to meet the threshold requirements of Rule 702, as explained by *Daubert*, he should not be allowed to testify in this case, and his Report (as well as his Declaration submitted in support of summary judgment and all 110 exhibits he proposes to introduce) should be disregarded in their entirety as inadmissible.[7] *See, e.g., Daubert*, 509 U.S. at 586 (ruling on expert testimony introduced at summary judgment); *Ayala v. City of S. San Francisco*, No. C 06-02061 WHA, 2007 U.S. Dist. LEXIS

---

[7] In their summary judgment motion, the Almaviva Defendants only made passing references to Mr. Roman's Declaration. *See* Dkt. 740 at 2, 5, 10. Loop AI has objected to the admissibility of the Declaration in its Opposition to the Almaviva Defendants' Summary Judgment Motion.

54051, at \*15-16 (N.D. Cal. July 13, 2007) ("[o]n summary judgment, a testimony by an expert witness must be ... admissible at trial ...").

District courts have a lot of discretion, and are accorded a "high degree of deference," in respect of their "findings regarding … [a putative expert's] qualifications and the relevance of his proffered testimony to the issues presented at trial." *United States v. Chang*, 207 F.3d 1169, 1172 (9th Cir. 2000).   A court's discretion extends to its power to exclude "otherwise admissible" Rule 702 testimony, "if its probabitve value is substantially outweighed by the danger of … confusion of the issues, … undue delay, or waste of time…." *Id.* (citing Fed. R. Evid. 403).  Expert declarations are subject to same admissibility standards of Rule 702 of the Federal Rules of Evidence and *Daubert*.  *See, e.g., Ayala v. City of S. San Francisco*, No. C 06-02061 WHA, 2007 U.S. Dist. LEXIS 54051, at \*15-16 (N.D. Cal. July 13, 2007) ("[o]n summary judgment, a testimony by an expert witness must be… admissible at trial…").  Expert declarations that do not meet Rule 702 are disregarded.  *See, e.g., id.* at \*17 (expert in police practices was not qualified to opine on medical issues outside his expertise); *Tyco Thermal Controls LLC v. Redwood Industrials*, C 06-07164 JF (PVT), 2010 U.S. Dist. LEXIS 47019, at \*39-40 (excluding expert witness; legal conclusions and opinions on matters outside of his expertise).  Because Mr. Roman does not meet any of the Rule 702 and *Daubert* requirements, his proposed testimony, including as submitted through his Declaration, is inadmissible and should be disregarded.

## II.    Mr. Roman is Not Qualified to Offer Any of The Opinions He Proposes to Offer.

As a threshold matter, a party seeking to offer a witness under Rule 702 must show that the "witness … is qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702.  The Ninth Circuit has interpreted Rule 702 to require an expert's qualifications to be specific to the issues at bar.  *See, e.g., Chang*, 207 F.3d at 1171-73 (9th Cir. 2000) (despite an expert's tremendous experience dealing with securities and obligations, he "did not have the requisite 'knowledge, skill, experience, training, or education' required..." to deal with identifying false securities); *Gable v. NBC*, 727 F. Supp. 2d 815, 832-36 (C.D. Cal. 2010)

(an expert in copyright law did not have the proper expertise to opine on the similarities between two literary works).  Regardless of how extensive a witness' general expertise may be, he may still be considered unqualified under Rule 702 if his expertise is only tangentially related to the matters at issue in a case.  *See, e.g., Ollier*, 768 F.3d at 860 ("'experience with the non-relevant issue of school finance' did not qualify [expert] 'to opine on Title IX compliance.'"); *Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP*, 593 F. Supp. 1153, 1163 (S.D. Cal. 2008) (despite an expert's 50 years of experience in the field of patent law, he is not an expert of legal ethics and conflict of interest in regards to patent litigation).

A witness must have the requisite qualifications as to every opinion he seeks to offer.  *See, e.g., In re Ford Tailgate Litig.*, 11-cv-02953-RS, 2015 U.S. Dist. LEXIS 159534, at *23 (N.D. Cal. Nov. 25, 2015) ("Even the most qualified expert cannot offer any opinion on any subject; the expert's opinion must be grounded in his or her personal 'knowledge, skill, experience, training, or education.'  Fed. R. Evid. 702.").  "The court's determination whether the opinion [an] expert wishes to offer is properly the subject of 'scientific, technical, or other specialized knowledge' is a question of law" for the court.  *Cook v. Am. S.S. Co.*, 53 F.3d 733, 738 (6th Cir. 1995).

As discussed below, Mr. Roman lacks the requisite knowledge, training or experience, practical or otherwise, to offer the opinions he seeks to offer in this case.  *Chang*, 207 F.3d at 1173.

### A.   Roman Is Not an Artificial Intelligence Expert Under Rule 702

As set forth above, Mr. Roman seeks to offer a variety of opinions regarding artificial intelligence ("AI") technology in general, and deep learning and supervised and unsupervised learning AI technology in particular.  *See* Relevant Background, *supra,* Category 1.  But Mr. Roman is not qualified to offer any of his proposed opinions on AI technology, because he lacks the required Rule 702 qualifications, whether by way of training, education, skill or experience.

Roman claims he has been hired for this case as an expert in "computer software."  SJX-2078, ¶ 1; Dkt. 740-20 at 1, ¶ 1.  Mr. Roman then proceeds to include within his alleged

3:15-CV-00798-HSG

expertise in computer software, various other fields such as software architecture, code analysis, *AI,* enterprise systems, networking, and computer hardware.  SJX-2078, ¶ 1; Dkt. 740-20 at 1, ¶ 1.  Of the numerous subfields he lists, only artificial intelligence ("AI") is generally relevant to this case.  But "AI" is not a subfield of "computer software," as Mr. Roman claims, and he cannot be an expert in AI simply because he claims to be an expert in "computer software."  *See, e.g.,* SJX-2561 at ¶ 28; SJC-2609 at ¶ 12.  Mr. Roman fails to list any education, experience or other specialized knowledge he has relating to any aspect of AI, let alone aspects of AI that are relevant to this case.  *See* SJX-2078-2091, ¶¶ 6-50; Dkt.740-20 at 1-11, ¶¶ 6-47.  Indeed, based on his deposition testimony, it is clear that Mr. Roman lacks even the most basic knowledge about AI technology.  *See* SJX-2525-34; SJX-2554-67; SJX-2519-24; SJX-2586-87; SJX-2605-2627.  Although Mr. Roman claims wide experience with coding languages (SJX-2078, ¶ 6; Dkt. 740-20 at 1, ¶ 6), foreign languages (SJX-2079-2080, ¶¶ 7-11), a bachelor's degree in computer science (SJX-2081, ¶ 15; Dkt. 740-20 at 3, ¶ 12), and professional experience in alleged technology firms (SJX-2082-2084, ¶¶ 16-25; Dkt. 740-20 at 3-5, ¶¶ 13-22), he does not identify any education, training, experience or other specialized knowledge in the field of AI.  Similarly, none of the cases in which Mr. Roman claims to have been an expert witness dealt with AI or with any distinct component of AI technology, such as deep learning, supervised or unsupervised learning.  SJX-2084-2091, ¶¶ 26-47; Dkt. 740-20 at 5-11,¶¶ 23-47.  Mr. Roman has never been qualified as an expert in any aspect of AI technology.  The cases in which Mr. Roman claims to have testified as an expert witness dealt specifically with source code, and Mr. Roman was allowed, in part, to testify as to his analysis of source code.  SJX-2084-2091, ¶¶ 26-47; Dkt. 740-20 at 5-11, ¶¶ 23-47.  But no source code is at issue in this case.  SJX-2139-2040, ¶ 231.  Indeed, Mr. Roman has not reviewed even Almawave S.r.l.'s alleged source code.  *See* SJX-2059 at 236-37.  Mr. Roman seems to believe that his expertise in computer software gives him inherent authority and expertise in AI.  *See* SJX-2021 at 85: 16-18 ("… as an expert in computer science, I can shed light on the meaning of many computer science terms, including deep learning.").  But Mr. Roman's belief is legally and factually flawed.

3:15-CV-00798-HSG

PL.'S *DAUBERT* MOTION
TO EXCLUDE KENDYL A. ROMAN

As discussed above, for a witness to qualify as an expert under Rule 702, his area of expertise must be specific.  His qualifications must be related to the dispute at hand.  Expertise in a related field is not sufficient to confer expertise for the issue at bar.  *See Chang, supra*; *Good Tech Corp. v. MobileIron, Inc.*, No. 5:12-cv-05826-PSG, 2015 U.S. Dist. LEXIS 87347, at \*22 (N.D. Cal. July 5, 2015) (expert's experience with computer software did not qualify him to opine on the consumer expectations of computer software); *Vaxiion*, 593 F. Supp. at 1163 (expert's long tenure in a tangential field is insufficient to meet the standard set by Rule 702).  The areas of expertise in the realm of computer science are vast and deep, and having a degree in computer science is insufficient to qualify a person as an expert in AI technology.  *E.g., Law v. Allison*, No. CV 10-6189-OWD, 2013 U.S. Dist. LEXIS 113498, at \*25-26 (C.D. Cal. July 2, 2013) (expert "ran a computer consulting company"… but lacked "particular expertise in networking, computer forensics, or 'ghosting'").

Even if AI could be considered a field of "computer software," as Mr. Roman claims in his Report, SJX-2078 at ¶ 1, experts in certain general fields are not by that fact considered experts in specific, specialized areas within such fields.[8]  *In re Ford Tailgate Litig.*, No. 11-cv-02953-RS, 2015 U.S. Dist. LEXIS 159534, at \*31-32 (N.D. Cal. Nov 25, 2015) (an expert automotive engineer was not qualified to opine on issues relating to corrosion of metals or causes of glass shattering, though both are reasonably within his realm of knowledge).  This is particularly true in the field of computer science, which is a very broad field.  *See, e.g., Law v. Allison*, No. CV 10-6189-OWD, 2013 U.S. Dist. LEXIS 113498, at \*25-26 (C.D. Cal. July 2, 2013) (computer expert lacked sufficient expertise in relevant issues such as networking or computer forensics); *Good Tech. Corp. v. MobileIron, Inc.*, No. 5:12-cv-05826-PSG, 2015 U.S.

---

[8] During his deposition, Mr. Roman attempted to expand the scope of his Report by claiming that he is generally an expert in "computer science."  SJX-2007 at 24:7-8 ("I am an expert in computer science, very broadly.");  SJX-2021 at 85:6-9 ("deep learning is a portion of artificial intelligence, which is a portion of computer science, which I intend to offer opinions about.").  But as discussed above, generalized knowledge in a broad field does not qualify a person to provide expert opinions in a specialized technical field as to which the witness lacks the requisite specialized knowledge.

9

PL.'S *DAUBERT* MOTION
TO EXCLUDE KENDYL A. ROMAN

Dist. LEXIS 87347, at *22 (N.D. Cal. July 5, 2015) (computer software expert's long tenure and experience in the field did not give him expertise to opine on consumer expectations of technology). *See also, e.g., Montgomery v. Noga*, 168 F.3d 1282, 1303 (11th Cir. 1999) (upholding a district court's decision that an expert in commercial software licensing could not opine on shareware and utility licensing, the two fields were "totally distinguishable").

Second, Mr. Roman's Report, Declaration and deposition testimony make clear that he lacks even the most basic knowledge about AI. During his deposition, Mr. Roman struggled to answer even the most basic questions about AI, and in particular about deep learning and unsupervised learning, which are the specific areas of Loop AI's technology. *See, e.g.*, SJX-2009 at 34-36 (Roman, in attempting to answer even the most simple questions about AI and deep learning, resorts to parsing out words to derive meaning as if he is hearing the phrase for the first time); SJX-2013 at 52:6-7 (Roman, in explaining what "geometric structures" are as defined by Widdows, launches into a discussion of lines, triangles, and squares); SJX-2039 at 92:16-18 (in discussing Loop AI technologies using ontologies, Roman refers back to the linguistic development of the word ontology from the year 1605). Mr. Roman was unable to answer even simple questions without trying to find an answer to the pending question in his Report. SJX-2023 at 92-93 (Roman could not explain the simple idea of "ontology" without referencing his report).

It was clear from Mr. Roman's deposition and written submissions that he lacks very fundamental understanding of the AI technology he is seeks to opine on, and that he is engaged in nothing more than speculation and guesswork. *See, e.g.,* SJX-2525-2553 (describing, in detail, Roman's fundamental failure to answer basic questions in relation to the field of AI and deep learning, specifically in relation to Loop AI's technology); SJX-2554-2580 (describing, in detail, Roman's false statements regarding specific technologies such as IBM Watson as well as the state of technology in the industry); SJX-2605-2627 (describing Roman's inability to answer simple questions about AI and Loop AI's technology). Because Mr. Roman has failed to demonstrate by a preponderance of the evidence that he possess the requisite Rule 702

qualifications in the field of AI, he cannot be allowed to testify as an expert witness on any matter pertaining to AI. *See, e.g., Good Tech. Corp.*, 2015 U.S. Dist. LEXIS 87347, at *22 ("[i]t would be improper to present such testimony to the jury cloaked in the guise of expert opinion.").

**B. Mr. Roman Cannot Compensate for His Lack of Expertise By Claiming He Has Consulted Other Alleged Experts And Read Books After Being Engaged by Venable for This Case.**

Recognizing his lack of expertise in AI, Mr. Roman claims (1) that he has read AI related books after he was engaged for this case in March-April 2016, and (2) that he has augmented his knowledge by consulting other individuals who he alleges are AI experts. *See, e.g.,* SJX-2007, SJX-2010 at 40-41, SJX-2012 at 46-47; SJX-2092 at ¶ 57. But even if those claims were true – and as set forth below they are not – consulting books and other alleged experts does not cure deficiencies in one's individual expertise. *See, e.g., Quintero v. Long*, No. 1:13-cv-01251-JLT, 2015 U.S. Dist. LEXIS 153453, at *28 (E.D. Cal. Nov. 12, 2015) (upholding a decision to exclude "armchair expert" witnesses who "watched documentaries and read books" to qualify as experts); *Goodwin v. Danek Med.*, No. CV-S-95-433-HDM (RJJ), 1999 U.S. Dist. LEXIS 19121, at *8 (D. Nev. July 2, 1999) (excluding the expert testimony of an osteopathic doctor who did not have specialized knowledge of osteopathic surgery beyond "the general literature" that he had read); *523 IP LLC v. CureMD.com*, 48 F. Supp. 3d 600, 646-47 (S.D.N.Y. 2013) (excluding expert testimony of a "self-taught" computer programming expert). Similarly, a witness who lacks the relevant expertise individually cannot compensate for such deficiencies simply by having conversations with other experts. *See Synthes USA, LLC v. Spinal Kinetics, Inc.*, No. C-09-01201 RMW, 2011 U.S. Dist. LEXIS 93093, at *22-23 (N.D. Cal. Aug. 19, 2011) ("Simply 'speaking' with [another expert] is not enough to bestow the 'knowledge, skill, experience, training, or education' required to meet Fed. R. Evid. 702 Standards.")

Moreover, Mr. Roman's contentions that he has read books and has consulted with other experts to learn about AI are unsupported by the record. As to the books, it is clear that Mr. Roman simply copied in his Report (and Declaration) a list of books that he took from Loop AI's Chief Scientist, Dr. Ehlen. *See* SJX-2605-27. Mr. Roman was unable to answer even basic

3:15-CV-00798-HSG

questions as to some of the key AI books he cites in his Report and Declaration, and which he claimed in his Deposition he relied on to write his Report. *See, e.g.,* SJX-2616-2620. He claims to have read the books he cites in his Report in a few months, after being retained for this case in March 2016. *See* SJX-2010 at 41. He then admits, however, that even just a few of the books he cites in his Report would take a year to read and analyze (let alone understand). SJX-2016 at 65:8-9 ("I am not going to sit here and do a year's worth of analysis on the fly."). By Mr. Roman's own admission, therefore, the short period of time he had between being engaged for this case (in March 2016 according to him, SJX-2016) and submitting his Report (on May 1, 2016), is clearly insufficient for Mr. Roman to have acquired expertise in AI. Regardless, Mr. Roman's last minute attempt to polish his resume is insufficient as a matter of law to qualify him as an expert in any aspect of AI. Rule 702 prohibits the use of this type of unqualified "armchair" expert. *See, e.g., Quintero,* 2015 U.S. Dist. LEXIS 153453, at *28.

Mr. Roman's separate contention that he "augmented" his AI knowledge by having "discussions" with three alleged AI experts is also unsupported by the record. SJX-2092 at ¶ 57; SJX-2032 at 126 (claiming that three individuals identified in his Report were allegedly "key" to Mr. Roman's "understanding and knowledge."). Mr. Roman testified under oath at his deposition that he listed Mr. Koval, Mr. Casper and Mr. Carmack in his Report because "they were specific people who were key to [his] understanding of the technology at issue in this case." SJX-2032 at 129:14-24. But these individuals have stated they never consulted with Mr. Roman, and they had no idea that Mr. Roman listed them in his Report. As the record shows, prior to submitting his Report, Mr. Roman had last spoken to Mr. Koval over 20 years ago. SJX-2591. Mr. Roman only spoke to the other two individuals in passing at church events about church matters. *See* SJX-2517 (Casper Declaration); SJX-2518 (Carmack Declaration). Furthermore, even if Mr. Roman's representations about his discussions with these individuals were true, "discussions" with other experts are insufficient to render Mr. Roman a Rule 702 expert in AI technology. *Synthes*, No. C-09-01201 RMW, 2011 U.S. Dist. LEXIS 5088, at *22.

### C. Mr. Roman's Untrue Representations Regarding His Qualifications as An Expert Witness Are Alone Sufficient to Bar Him From Testifying.

12

A witness who lies about his qualifications to testify as an expert in a matter should not be allowed to take the stand. *See United States v. Jones*, 84 F. Supp. 2d 124, 126 (D.C. Col. 1999) (finding that a witness who had lied about his "expert witness qualifications" would not have been permitted to take the stand had the evidence been discovered before trial). Such an issue goes beyond credibility, and addresses an expert's admissibility before he is allowed to testify at trial. *Id.* In this case, Mr. Roman has repeatedly made untrue and misleading representations about his alleged expert qualifications in the field of AI, as well as the other fields he seeks to opine on (legal and factual issues).

For instance, Mr. Roman represented that he is qualified to opine as an expert witness on matters of AI. *See, e.g.,* SJX-2021 at 85:5-9. In fact, as the record shows, Mr. Roman does not have any understanding of AI. *See* SJX-2525-34; SJX-2554-67; SJX-2519-24; SJX-2586-87; SJX-2605-2627. Mr. Roman claims to have had conversations with Albert Koval, Jared Casper, or Phil Carmack to "augment [his] independent understand of the AI and CRM areas." SJX-2092, at ¶ 57; Dkt. 740-20 at 12, ¶ 54. Such conversations never occurred. *See* SJX-2517 (Casper); SJX-2518 (Carmack); SJX-2591 (Koval). Mr. Roman claims to have read books regarding artificial intelligence. SJX-2116 at 43, n. 72. However, he could not even testify as to the key concepts from any of the books he claims to have relied on in his Report. *See, e.g.,* SJX-2009 at 36:20-25; SJX-2605-2627. Mr. Roman misstates important AI concepts that even someone without expertise would be able to explain. *See, e.g., See* SJX-2525-34; SJX-2554-67; SJX-2519-24; SJX-2586-87; SJX-2605-2627. Mr. Roman falsely represented that Almawave developed unsupervised learning, *see, e.g.,* SJX-2037-2039, SJX-2142 at ¶ 238, and that Almawave presented its unsupervised learning technology at the NVIDIA GPU conference, through Dr. Ivanov. *See, e.g.,* SJX-2135 at ¶ 217; SJX-2038 at 153:9-10. But Dr. Ivanov explained that Mr. Roman's contentions are wholly unfounded and that the technology cited by Mr. Roman (and authored by Dr. Ivanov) had nothing to do with unsupervised learning or semantic analysis, as Mr. Roman writes in his Report and as he testified in Deposition. SJX-2523 at ¶ 18. In fact, "[a]ny person minimally familiar with GPUs or artificial intelligence

13

would be able to immediately recognize that neither [Ivanov's] GTC Slides or [his] GTC video describe or demonstrate any aspect of unsupervised learning or semantic analysis." *Id.* Mr. Roman's entire testimony (and statements in his Report and Declaration) regarding Dr. Ivanov and Almawave's alleged development of technology through a start-up called PerVoice was untrue. SJX-2519-2524. Mr. Roman's proposed testimony in his Report and Declaration impermissibly stand on nonexistent qualifications, combined with fabricated facts that he seeks to offer in this case as a purported expert opinion. *See, e.g., Jones, 84 F. Supp. 2d* at 126. The Court should use its gatekeeping powers to exclude such testimony.

### D. Mr. Roman Is Not Qualified to Give Legal or Other Opinions.

As set forth above, Mr. Roman also seeks to offer opinions about legal and other matters. *See* Relevant Background, *supra* at Section 3. Mr. Roman proposes to opine on topics such as whether Loop AI sufficiently identified its trade secrets under California law in this case, or matters relating to patent law or any other legal matters.[9] *See Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (quoting *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th. Cir. 2004)) ('That said, an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law.'). Statements of law, no matter how minute, will trigger exclusion. *See, e.g., McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999) ("[expert's] testimony cannot be used to provide legal meaning or interpret the [insurance] policies as written."); *Hughes v. Unumprovident Corp.*, No. C 07-4088 PJH, 2008 U.S. Dist. LEXIS 77651, at *16-17 (N.D. Cal. Oct. 3, 2008) (excluding expert testimony that stated that defendant breached industry standards and failed to make a fair and objective evaluation of plaintiff's claims)*; Maffei v. Northern Ins. Co.*, 12 F.3d 892, 898-99 (9th Cir. 1993) (expert testimony could not use legally definitive language, i.e. "hostile fire").

Moreover, even if such expert testimony were allowed, Mr. Roman does not have the qualifications to offer the proposed opinions identified in his Report. *See* Relevant Background,

---

[9] Moreover, this case does not involve any question bearing on patent law, even if Mr. Roman somehow was an expert in patent law – he is not.

*supra* at Section 3. Mr. Roman appears to believe that his alleged experience comparing "source code" in trade secret cases qualifies him to offer opinions on legal issues regarding California trade secret law in this case. *See, e.g.,* SJX-2094 at ¶ 67; Dkt. 740-20 at 14, ¶ 64. He argues that disclosure during litigation made unspecified trade secrets public, even though he has no qualifications to express that opinion. SJX-2146 at ¶¶ 259-61; Dkt. 740-20 at 56, ¶¶ 246-48.[10] Mr. Roman argues that patent applications disclosed trade secrets. SJX-2149-2151 at ¶¶ 276-81; Dkt. 740-20 at 57-59, ¶¶ 254-59. He even boldly analyzes and interprets patent law.[11] SJX-2151 at ¶ 287; Dkt. 740-20 at 61-62, ¶ 265. As set forth above, Mr. Roman is barred from offering any of these opinions. *See, e.g., Nationwide,* 523 F.3d at 1059 (prohibiting an expert from interpreting or applying the Uniform Commercial Code). Mr. Roman may not invade the province of the Court to determine what the law is. *See id.* at 1058.

### E. Mr. Roman Cannot Serve as the Almaviva Defendants' Mouthpiece To Present Their Arguments In The Form of A Purported Expert Opinion.

Based on Mr. Roman's Report and Declaration, it is clear that Mr. Roman intends to serve in this case as nothing more than a mouthpiece to give credence to Defendants' own arguments at trial, by casting them in the form of an alleged "expert" opinion. An expert is not allowed under Rule 702 to use his status merely to advance factual arguments on behalf of his clients or to give his personal opinions. *See, e.g., Dep't of Toxic Substance Control v. Technichem, Inc.*, No. 12-cv-05845-VC, 2016 U.S. Dist. LEXIS 33379, at *2 (N.D. Cal. Mar. 15, 2016). *See, also, e.g., Rowe v. DPI Specialty Foods, Inc.*, No. 2:13-cv-00708-DN-DJF, 2015 U.S. Dist. LEXIS 110605, at *20-21 (D. Utah Aug. 19, 2015) (excluding an expert who serves only to "add his 'expert' imprimatur to make [evidence] seem more credible."). Because Mr. Roman is not (and never has been identified as) a percipient witness he is not allowed to testify

---

[10] Indeed, such an opinion lacks any basis in the law. *See, e.g., MicroStrategy Inc. v. Bus. Objects, S.A.*, 331 F. Supp. 2d 396, 418-19 (E.D. Va. 2004) (holding that plaintiff did not publicize its trade secret by disclosing it at trial or failing to file it under seal with the clerk of court).

[11] As discussed above, Mr. Roman interjects patent law in this case, even though this case presents no patent law question and even though the Almaviva Defendants have never previously identified any "patent law" theories as a purported defense to Loop AI's claims.

3:15-CV-00798-HSG

PL.'S *DAUBERT* MOTION
TO EXCLUDE KENDYL A. ROMAN

in this case as to factual matters of which he lacks both personal knowledge and expertise. *See United States v. Freeman*, 498 F.3d 893, 904 (9th Cir. 2007).

Mr. Roman's Report and proposed testimony is filled with factual arguments of which he has no personal knowledge. Mr. Roman simply proposes to repeats to the jury the arguments that the Almaviva Defendants's counsel would like to make. For instance, Mr. Roman states that he is going to "opine as to whether certain documents, architecture, software, and/or other alleged trade secrets of Loop were improperly accessed or used by the Almawave Defendants." SJX-2093 at ¶ 66. He promises to "shed light on how those patent documents disclosed the alleged trade secrets, more clearly explain what companies were working on and marketing, and the roles that various individuals played." *Id.* But Mr. Roman lacks any personal knowledge to testify on these matters, and lacks the qualifications to offer his testimony on these topics as an expert. Mr. Roman has no qualifications, and no basis, to opine on what the Almaviva Defendants accessed while Gatti was concurrently working for Loop AI and for them. Mr. Roman also opines that Almawave S.r.l.'s products have not substantially changed since 2013. SJX-2093 at ¶ 121; Dkt. 740-20 at 13-14, ¶ 63. He claims that the only significant similarities between Almawave's and Loop's technologies are well known and used in a wide range of technologies. SJX-2138 at ¶ 223; Dkt. 740-20 at 49, ¶ 211. He argues that Almawave would have no interest in profiling for recommendations since such practices are heavily scrutinized by European Union law. SJX-2138 at ¶ 225; Dkt. 740-20 at 50, ¶ 213. He states Almawave did not steal any of Loop's trade secrets. SJX-2142-2143 at ¶¶ 240-42; Dkt. 740-20 at 53, ¶¶ 227-30. He claims that Sandei developed the technology disclosed in the patent application because she thinks "outside the box," despite having no expertise in technology development. SJX-2155-2156 at ¶¶ 292-93; Dkt. 740-20 at 63-64, ¶¶ 270-71. All of these statements are adopted, quite literally, from the Almaviva Defendants' arguments in this case, and presented by Roman as his purported expert opinions. *See, e.g.,* SJX-2141 at n. 156-158; Dkt. 740-20 at 53, n. 134. But Rule 702 does not permit Mr. Roman to serve as a mouthpiece for the Almaviva Defendants and offer their arguments as a purported expert opinion. *See Technichem*, U.S. Dist. LEXIS 33379,

at *2.  Similarly impermissible is Mr. Roman's proposal to vouch for the credibility of the Almaviva Defendants' witnesses.  For instance, Mr. Roman claims that Ms. Sandei is telling the truth when she says she invented the technology described in Almawave S.r.l.'s first patent application.  *See, e.g.,* SJX-2155-56.  Alternatively, he argues by implication that Almawave could have developed the technology described in the patent application by accident.  SJX-2155 at ¶ 291; Dkt. 740-20 at 62-63, ¶ 269.  This proposed use of Mr. Roman has nothing to do with the qualifications Mr. Roman claims to have and is not permissible under Rule 702.

In a similar vein, Mr. Roman argues that Loop AI "has not been very successful in obtaining funding or traction in the marketplace." SJX-2139 at ¶ 229; Dkt. 740-20 at 50, ¶ 217.  Mr. Roman argues that Loop AI was "never a successful startup" and only ever had one client, "an Asian company." SJX-2147 at ¶ 266; Dkt. 740-20 at 56, ¶ 250.  Mr. Roman claims that Loop AI could never hire talent in the artificial intelligence space because it is competing with Google or Facebook.  *See, e.g.,* SJX-2147 at ¶¶ 265-66; Dkt. 740-20 at ¶¶ 251-52.  He even purports to opine on the credentials and skills of Loop AI's scientists.  SJX-2148 at ¶¶ 268-71; Dkt. 740-20 at 56, ¶ 249.   These arguments are also entirely outside the scope of any expertise Mr. Roman claims to have and consist of nothing more than a repeat of the Almaviva Defendants' arguments throughout this case, cast in the Report as Mr. Roman's personal opinions.  "[P]ersonal opinion testimony is inadmissible as a matter of law under Rule 702." *Ollier*, 768 F.3d at 861.  While the Almaviva Defendants may be free to present their theories in their opening and closing arguments at trial, they cannot offer them as purported expert opinions through Mr. Roman.

### III.    Mr. Roman's Proposed Opinions Lack Relevance and Would Not "Help the Trier of Fact" In this Case.

For expert testimony to be admissible under Rule 702, the "expert's scientific, technical, or other specialized knowledge" must help the jury "to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).  *See also Daubert*, 509 U.S. at 591 (quoting Fed. R. Evid. 702); *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.,* 738 F.3d 960, 969-70 (9th Cir. 2013) ("the judge is supposed to screen the jury from unreliable nonsense opinions… [specifically]

whether his testimony has substance such that it would be helpful to a jury.") "[E]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591. In other words, to be helpful within the meaning of Rule 702, the proposed testimony must be both based on the witness's specialized knowledge for which he qualifies as an expert and relevant to a fact in issue. *See, e.g., Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("The requirement that the opinion testimony 'assist the trier of fact' 'goes primarily to relevance.'"). Mr. Roman's proposed opinions in this case do not meet this test.

The vast majority of Mr. Roman's proposed testimony is not relevant to any issue in the case and therefore it is not admissible. *See, e.g.,* SJX-2078-84 (7 pages of irrelevant information regarding Mr. Roman); SJX-2084-2088 (4 pages of information about alleged cases in which Mr. Roman claims to have testified, but for which he refused to provide any information, including information as simple as the case number or the court); SJX-2094-2096 and 2139-2157 (22 pages listing the most disparate opinions as to matters ranging from legal issues to Mr. Roman's personal opinions on the parties, to Mr. Roman's purported analysis of AI technology, etc); SJX-2097-2110 and SJX-2111-2139 (41 pages of Mr. Roman's opinions on randomly selected terms, on the parties in this case, and his opinions as to what certain individuals and entities have or have not done); SJX-21110 at ¶¶ 72-127; Dkt. 740-20 at 16-27, ¶¶ 69-122 (13 pages of Mr. Roman's description of this case).

For instance, Mr. Roman does not explain why he seeks to give an opinion on dozens of terms that have no bearing on any issue in this case. *See* SJX-2621-2625. Mr. Roman also proposes to offer opinions "relating to Defendants' use and disclosure of "Loops [sic] claimed trade secret source code, documentation, and architecture." SJX-2094 at ¶ 70. But this case does not involve any issue relating to any "source code," nor its documentation or architecture as Mr. Roman claims. *See, e.g.,* SJX-2622 at ¶ 34. Mr. Roman also does not explain how he can give opinions on source code that is not only not at issue in this case, but which he admits he has not reviewed. *See* SJX-2095 at ¶ d; SJX-2157 at ¶ 297; SJX-2059 at 237. Indeed, the only source code that Mr. Roman claims to have reviewed in this case is the source code for SAP and for the

18

SAS Institute, SJX-2091 at ¶ 55, which appears to be source code relating to another case in which Mr. Roman claims to have been involved in, but not to the case at bar. *See* SJX-2089.[12] Despite these critical failings, Mr. Roman nonetheless opines that Loop AI "has not been able to develop any substantial product source code." SJX-2146 at ¶ 262. All of Mr. Roman's proposed opinions in this case, listed below Paragraph 70 of his Report relate to purported "source code" that is simply not part of the case. *See* SJX-2094. For instance, Mr. Roman proposes to opine that "[T]ypically, a software company asserting trade secret misappropriation will produce their source code, source code control system, [etc.]." SJX-2095 at ¶ c (similar opinions at a-g). But Loop AI is not a software company, and trade secret misappropriation is in no way a type of claim reserved for "source code" misappropriation. By way of another example, Mr. Roman proposes to opine that prior to 2014, AI, expert systems, NLP, text analysis, and a variety of other fields "were all well-known, well-published technologies." SJX-2096 at ¶ L *et seq*. But these opinions lack any relevance to the case. Mr. Roman's personal opinions as to whether extremely broad fields of technology were "well-known" and "well-published" are totally irrelevant and unconnected to any aspect of this case. Furthermore, the opinions that Mr. Roman seeks to offer are not based on any technical or other specialized knowledge that Mr. Roman is qualified to offer under Rule 702. As discussed above, Mr. Roman does not have any qualifications to provide these opinions.

### A. This Case Does Not Involve Any Issue Requiring a Technical Expert.

Because the facts at issue in this case are straightforward, there is no need for a technical expert in this case, as the facts in question can be easily understood by any layperson presented with testimony of percipient witnesses. *See, e.g., Wong v. Belmontes*, 558 U.S. 15, 24 (2009) (expert testimony was not necessary when the evidence "required only that the jury make logical connections of the kind a layperson is well equipped to make."); *United States v. Kupau*, 781

---

[12] Based on the SAP source code reference and the large number of other irrelevant matter contained in Mr. Roman's Report, it is clear that the Report is copied from another Report submitted in another case, which Mr. Roman has not bother to update to remove matters relating to other cases.

F.2d 740, 745 (9th Cir. 1984) (excluding expert testimony of a linguistics expert's testimony as unnecessary as he would opine on language in ordinary usage).  Courts exclude expert testimony where specialized knowledge, such as technical knowledge, is not required in a case, even if the proposed expert is qualified to offer it.  *Pesch v. Indep. Brewers United Corp*, No. C-13-05317-DMR, 2015 U.S. Dist. LEXIS 15442, at *11 (N.D. Cal. Feb. 8, 2015) (excluding expert testimony regarding the technical process of crafting beer since "the level of information about craft beer brewing that will be appropriate to elicit… will be well within a factfinder's ability to comprehend…").  This court has specifically noted that when the facts are within the experience of a lay jury, expert testimony is not needed, especially if such testimony goes beyond expert's knowledge.  *Doe v. Reddy*, No. C 02-05570-WHA, 2004 U.S. Dist. LEXIS 30792, at *12 (N.D. Cal. Mar. 24, 2004) ("No expert in any case should ever tell a jury which side's fact witnesses are telling the truth on a fact point when the expert has no first-hand knowledge… an expert with no personal knowledge of the underlying dispute will not be permitted to vouch for one side's version over another.  The jury does not need it, it would mislead the jury, and it would waste time.").

The Almaviva Defendants do not need a technical expert to explain to the jury what Ms. Sandei or what the Almaviva Defendants did or did not do.  The jury is more than capable of understanding the facts and the parties at issue in this case.  *Pesch*, 2015 U.S. Dist. LEXIS 15442, at *11.  For example, Mr. Roman details the alleged background and historic development of Almawave and Loop AI.  SJX-2132-2137 at ¶¶ 211-22; Dkt. 740-20 at 45-49, ¶¶ 201-210; SJX-2142-2143 at ¶¶ 234-38; Dkt. 740-20 at 51-53, ¶¶ 222-26.   He argues that Almawave could not have had access to Loop AI's trade secrets. See SJX-2142-2143 at ¶¶ 239-42; Dkt. 740-20 at 53, ¶¶ 227-30. He states that Loop AI's technology has no value. See SJX-2146-2147 at ¶¶ 262-67; Dkt. 740-20 at 56-57, ¶¶ 249-253. He purports to opine on the expertise of Loop AI's chief scientists as well as the value of their patents. *See* SJX-2148-2149 at ¶¶ 268-75.  He argues that Ms. Sandei can "think outside the box" and, as a result, has developed a complex AI patent.  *See* SJX-2154-2155 at ¶ 288-89; Dkt. 740-20 at 62, ¶ 266-268; SJX-2155 at

¶ 290; Dkt. 740-20 at 62-63, ¶ 269.  But these purported facts and arguments do not require the testimony of a technical expert, even if they were permissible arguments for an expert – they are not.  *Doe v. Reddy*, No. C 02-05570-WHA, 2004 U.S. Dist. LEXIS 30792, at *12 (N.D. Cal. Mar. 24, 2004) ("No expert in any case should ever tell a jury which side's fact witnesses are telling the truth on a fact point when the expert has no first-hand knowledge… an expert with no personal knowledge of the underlying dispute will not be permitted to vouch for one side's version over another.  The jury does not need it, it would mislead the jury, and it would waste time.").  To the extent Almaviva wishes to raise any of these contentions, they must offer them through percipient witnesses with personal knowledge, and cannot offer them through a purported expert.  It is inappropriate for Mr. Roman to disguise himself as an expert in order to relay these factual arguments to the fact finder.  *Id.* at *12.

### IV.    Mr. Roman's Proposed Opinions Are Unreliable.

Proposed expert testimony "that does not meet the standards of reliability required under Rule 702" is not admissible.  *Domingo v. T.K.*, 289 F.3d 600, 605 (9th Cir. 2002).  Reliability, for purposes of Rule 702, focuses on "whether an expert's testimony has 'a reliable basis in the knowledge and experience of the relevant discipline.'"  *Estate of Barabin*, 740 F.3d at 463-64 (citing *Kumho Tire*, 526 U.S. at 149).  To determine reliability courts examine the "principles and methodology" used by the proposed expert.  *Daubert*, 509 U.S. at 595.  "In determining the evidentiary reliability, the trial judge is limited to considering the methodologies relied upon by the expert, not the conclusions reached by the expert."  *DSU Med. Corp. v. JMS Co., LTD.* 296 F. Supp. 2d 1140, 1147 (N.D. Cal. 2003) (the court must "examine the connection between the opinion proffered and the… data.").  If there is too great a gap between the analytical method and the opinion offered, then the expert's testimony is inadmissible.  *See, e.g., Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002) ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. []  A trial court may exclude evidence when it finds that 'there is simply too great an analytical gap between the data and the opinion proffered.'" (citing *General Elec*.

21

*Co. v. Joiner*, 522 U.S. 136, 147 (1997)).

In his Report and Declaration, Roman offers many opinions but fails to identify any of the methodologies he allegedly used to form his opinions. In fact, in the "Methodology" section of his Report and Declaration, the only methodology Mr. Roman identifies is a methodology to analyze source code. SJX-2110 at ¶ 128. But Mr. Roman did not use this methodology in this case, because no source code is at issue in this case, and no source code of any type was analyzed by him. Indeed, Mr. Roman concedes that he could not conduct an "objective analysis" in this case. *Id*. Mr. Roman also states that he has made determinations of what technology is well known (or not) based on his own knowledge and experience, as well as his research for this case. SJX-2111 at ¶ 129. But this is not a reliable methodology that can support the opinions that Mr. Roman proposes to offer. As set forth above, Mr. Roman lacks any knowledge or experience in AI, the discipline relevant to this case, and has no basis to use his experience as the methodology for reaching opinions in this case. Moreover, the opinions that Mr. Roman actually offers do not appear to follow any methodology at all, and are instead nothing more than Mr. Roman's *ipse dixit*. A proposed expert witness cannot proffer opinions when the link between such opinions and the data "is written in invisible ink." *Open Text S.A. v. Box, Inc.*, No. 13-cv-04910-JD, 2015 U.S. Dist. LEXIS 8783, at *19-21 (N.D. Cal. Jan. 23, 2015) (excluding testimony that is "an abstraction not visible to the eyes of the Court, the jury, and opposing counsel, or testable in the crucible of cross-examination"). Courts are specifically suspicious of methodologies that rely heavily or exclusively on an expert's experience. *See, e.g., Finjin Inc. v. BlueCoat Sys.*, No. 13-cv-03999-BLF, 2015 U.S. Dist. LEXIS 91528, at *10-11 (N.D. Cal. July 15, 2015) (excluding the testimony of an expert who disclosed no methodology other than an assurance of performing the requisite tests); *GPNE Corp. v. Apple Inc.*, No. 12-CV-02885-LHK, 2014 U.S. Dist. LEXIS 53234, at *19 (N.D. Cal. Apr. 16, 2014) ("[expert's] '30 years of experience' does not constitute 'sufficient facts or data', or 'reliable principles and methods.'")

Despite offering over 41 pages of opinions over disparate subjects, SJX-2097-2110 and SJX-2111-2139, Mr. Roman does not explain any of the methodologies he used to form the

many opinions he seeks to offer and how that methodology is tied to the relevant discipline. By way of example, Mr. Roman proposes to offer the following opinion:

> "Prior to 2014, several world technology leaders including Google, Microsoft, Apple, Baidu, NVIDIA, Facebook, and Yahoo had developed significant AI programs and technical staff.  As such the information now claimed by Loop [AI] were well known inside other companies.  Further, those companies were much more likely to hire technical talent from university research programs than Loop [AI]."

SJX-2096 at § m.  But Mr. Roman nowhere identifies the methodology he used to form this opinion.  The same is true for each of the opinions that Mr. Roman sprinkles throughout his Report and Declaration.  Without a discernable and sound methodology, expert testimony is not admissible under Rule 702.  *See, e.g., United States v. Kilgus*, 571 F.2d 508, 510 (9th Cir. 1978) (excluding a customs officer as an expert witness given that he relied on methodology that did not have general acceptance in the field); *Pecover v. Elec. Arts Inc.*, No. C 08-2820 VRW, 2010 U.S. Dist. LEXIS 140632, at *19-20 (N.D. Cal. Dec. 21, 2010) ("[expert's data] are merely illustrative, they provide no independent basis for [expert's] opinion.").

### V.      Mr. Roman Impermissibly Relies on Evidence from the Italian Almaviva Defendants Who Have Refused to Provide Any Discovery in This Case – They Cannot Now Use an Expert to Introduce at Trial Evidence They Refused to Provide

As the Court is aware, the Italian Almaviva Defendants have refused to engage in discovery in this case on the grounds that discovery from those two parties was allegedly unconstitutional.  *See* Dkt. 731; SJX-1187-1652.  Throughout the course of discovery, Loop AI propounded hundreds of discovery requests to the Italian Almaviva Defendants seeking information regarding their alleged technology and various other matters at issue in this case. The Italian Almaviva Defendants refused to provide discovery.  Instead, they interposed the same objection in response to each discovery request, claiming that "obligating Almaviva S.p.A. to participate in discovery before personal jurisdiction is determined violates Constitutional requirements of due process."  Dkt. 731 at 9.  Loop AI was also unable to obtain discovery from Ms. Sandei and Mr. Romagnoli, despite having personally served them in the United States with a Subpoena duces tecum and Subpoena for their merits deposition.  *See* Dkt. 731 at 10; SJX-

PL.'S *DAUBERT* MOTION
TO EXCLUDE KENDYL A. ROMAN

1192. Ms. Sandei appeared for a limited jurisdictional deposition that was abruptly interrupted by her counsel without justification. *See* SJX-2248 at 196. Similarly, Mr. Romagnoli appeared for an approximately 15-minute jurisdictional deposition, also abruptly interrupted by Almaviva's counsel. SJX-3334-3340. Having refused to provide discovery, the Almaviva Defendants cannot now use Mr. Roman to introduce self-serving evidence through him. If the Almaviva Defendants had done nothing wrong they would have had no reason to refuse to engage in discovery. For instance, although Mr. Roman purports to give extensive opinions on Ms. Sandei's ability to invent and on Almawave S.r.l.'s alleged invention, not a single document or discovery response was produced to Loop AI regarding this topic. Indeed, every single discovery request on this topic was met with extensive objections. *See, e.g., See, e.g.,* SJX-1215-16, SJX-1235, SJX-1236, SJX-1293, SJX-1346, SJX-1375, SJX-1443-44, SJX-1463-64, SJX-1521-22, SJX-1576, SJX-1605, SJX-1751, SJX-1765, SJX-1810, SJX-1828, SJX-1842, SJX-1887. As result, even if Mr. Roman were qualified to provide opinions on Ms. Sandei's ability to invent and on Almawave's alleged independent invention described in their first ever patent application, Mr. Roman is not allowed to offer these opinions because the Almaviva Defendants have refused to provide any discovery on this topic. *See, e.g., Synthes USA, LLC v. Kinetics, Inc.*, No. C-09-01201 RMW, 2011 U.S. Dist. LEXIS 93093, at *25-27 (N.D. Cal. Aug. 19, 2011) (excluded expert testimony that relied upon an alternative patent designed that was not produced in discovery).

Mr. Roman's proposed testimony relies heavily on information from Almawave S.r.l. that Almawave S.r.l. refused to provide in discovery, despite numerous and repeated requests. For instance, Mr. Roman relies on discussions he has had with Romagnoli and Sandei. *See, e.g.,* SJX-2091-2092 at ¶ 56; Dkt.740-20 at 12, ¶ 53. Further, he discusses AI technology that Almawave had developed in 2014 (SJX-2096, 2109, 2132, 2133 at ¶¶ 70(n), 121, 211; Dkt. 740-20 at ¶¶ 67(n), 112, 201), Almawave's patents (SJX-2134, 2138, 2152, 2153 at ¶¶ 214, 226, 284, 286; Dkt. 740-20 at ¶¶ 204, 214, 262, 264), Almawave's technology prior to 2014 (SJX-2134, 2135, 2141, 2142 at ¶¶ 215, 217, 235, 238, 239; Dkt. 740-20 at ¶¶ 205, 207, 223, 226), Almawave's technology produced after 2015 (SJX-2135 at ¶ 219; Dkt. 740-20 at ¶ 209), and

Almawave's AI technology (SJX-2156 at ¶ 294; Dkt. 740-20 at ¶ 272). All this information was requested by Loop AI in discovery and was not produced. Dkt. 731 and 731-1. In addition, Mr. Roman relies on documents that were produced to Loop AI the day before his deposition, and that Loop AI's counsel was unable to access until after Mr. Roman's deposition. *See* SJX-2009 at 34:19-21. As such, Roman's testimony relying on evidence that was not produced in discovery should be excluded under Rule 37(c)(1).

Finally, Mr. Roman claims he will introduce at trial 110 exhibits, of which approximately 80 are not discussed anywhere in his Report. Rule 26, however, requires any proposed expert to produce a report describing a "complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(ii). Mr. Roman cannot introduce at trial 80 or more exhibits that have never been previously addressed. Loop AI will address its specific objections to each of these exhibits in its pretrial submissions, in accordance with the Court's Standing Order.

## CONCLUSION

For the foregoing reasons, Loop AI respectfully requests that this Motion be granted, that Mr. Roman's be excluded as a witness in this case for all purposes, and that Mr. Roman's Report and Declaration be excluded from consideration in any aspect of this case.

Respectfully submitted,

August 8, 2016                                      By:    /s/ *Valeria Calafiore Healy*
                                                          Valeria Calafiore Healy, Esq. (*phv*)
                                                          HEALY LLC
                                                          154 Grand Street
                                                          New York, New York 10013
                                                          Telephone:    (212) 810-0377
                                                          Facsimile:    (212) 810-7036

                                                          Daniel J. Weinberg, Esq. (SBN 227159)
                                                          FREITAS ANGELL & WEINBERG LLP
                                                          350 Marine Parkway, Suite 200
                                                          Redwood Shores, California 94065
                                                          Telephone:    (650) 593-6300
                                                          Facsimile:    (650) 593-6301

Attorneys for Plaintiff
LOOP AI LABS, INC.

3:15-CV-00798-HSG

PL.'S *DAUBERT* MOTION
TO EXCLUDE KENDYL A. ROMAN