# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS INC.,<br><br>         Plaintiff,<br><br>         v.<br><br>ANNA GATTI, et al,<br><br>         Defendants. | CASE NO.: 3:15-cv-00798-HSG-DMR<br><br>**DECLARATION OF VALERIA CALAFIORE HEALY IN SUPPORT OF LOOP AI'S OPPOSITION AT DKT. 876 (RE: ALMAVIVA DEFENDANTS' MOTION AT DKT. 869)**<br><br>Action Filed:  February 20, 2015<br>Trial Date:  September 19, 2016<br><br>Hon. Haywood S. Gilliam, Jr. |

I, Valeria Calafiore Healy, hereby declare under penalty of perjury that the following statements are true and correct to the best of my knowledge, information and belief:

1.      I am an attorney admitted to practice law in the State of New York and have been admitted *pro hac vice* by this Court as counsel for Plaintiff Loop AI Labs Inc. ("Loop AI") in this action.

2.      I submit this Declaration pursuant to N.D. Cal. Civil Local Rule 7-5 to address facts within my personal knowledge regarding various pretrial proceedings in this case, in support of Loop AI's Opposition to the Almaviva Defendants' Motion at Dkt. 869, filed by Loop AI at Dkt. 876.

3.      Mr. Wallerstein's statements that I refused to comply with the Pretrial Order or that I surprised him with a large number of trial exhibits are untrue.

4.      As the Court is aware, throughout the month of July (as well as before) I have had to respond to dozens of motions and other court applications made by the Defendants.  I also had to attend to further discovery sought by Almaviva and travel for deposition and hearings also requested by Almaviva.

5.      Because of the volume of motions that the Defendants continuously file against Loop AI and/or me in this case, including during the month of July 2016, I have had to prioritize our work in order to ensure that we could properly respond to the numerous filings.[1]  As a result

---

[1] In addition to the motion practice, Mr. Wallerstein has had a practice of bombarding me with correspondence.  Frequently, he sends us several items of correspondence per day over extended periods of time.  Most of Mr. Wallerstein's correspondence is bellicose, and virtually all of it includes misrepresentations clearly intended to create a false record of events.  If I were to respond in detail and in real time to Mr. Wallerstein's correspondence I literally would not have sufficient time to do anything else.  So I have followed the practice of scanning Mr. Wallerstein's correspondence in batches, every few days.  I respond only to the correspondence that seems significant and that requires a response.  Mr. Wallerstein is well aware of my approach to dealing with his correspondence.  His letter writing campaign described in the Motion and in his supporting declaration reflects an attempt to create a record, not an attempt to cooperate in good faith to comply with the Pretrial Order. The approach I have taken instead is to avoid unproductive skirmishing while focusing on trial preparation.

1

3:15-CV-00798-HSG-DMR                                                DECLARATION OF VCH

of lack of time, for instance, on July 19, 2016, I was unable to respond to one of the many administrative motions that Mr. Wallerstein improperly has used in this case to seek substantive relief while limiting the time available to Loop AI to respond to just four calendar days.[2]  Also as a result of our need to prioritize, although the Defendants have refused to comply with various Orders of this Court (for instance, Venable has ignored my request that Mr. Wallerstein reimburse me for half the transcript of Mr. Pieraccini's deposition, a small cost, but one which this Court ordered be borne personally by counsel, *see* Dkt. 841, and IQSystem Inc. has refused to pay even $1 dollar of the $30,000 this Court ordered IQSystem Inc. to pay Loop AI many months ago, *see* Dkt. 660 and 703), I have been unable to seek relief for important matters affecting Loop AI, including, for instance, moving to enforce the Court's foregoing orders.

6.  Despite the extraordinary volume of court filings made by the Defendants against Loop AI, often requiring a response on a very short briefing schedule, we have continued to work seven days a week to ensure that we could meet all of the Court's deadlines without seeking an extension.  There was simply no basis for Mr. Wallerstein's accusations in his latest Motion, and it is clear that he was simply trying to again impact our ability to complete our pretrial submissions by requiring us to re-direct our resources to responding this latest Motion.

7.  During the August 1, 2016 meet and confer, Mr. Wallerstein had no intention of engaging in any constructive conversation regarding pretrial submissions or other things.  First, I was required to wait on hold for approximately 15 minutes.  A true and correct copy of my correspondence to Mr. Wallerstein in this regard is attached hereto as **Exhibit 3**.  Second, shortly after the purported meet and confer finally began, Mr. Wallerstein, who was joined in the call by at least 3 other attorneys and 1 paralegal from Venable, immediately directed me to "be quiet." A true and correct copy of Mr. Wallerstein's statement to me during the August 1, 2016 call is

---

[2] *See* Dkt. 831 (Administrative motion filed on Friday, July 15, 2016 seeking payment of over $5,600 for Almaviva's putative expert Mr. Roman, who demanded payment of exorbitant fees, including several hours of alleged travel time ("Motion 831")); Dkt. 837 (seeking a few days extension to respond to Motion 831 due on July 19, 2016); Dkt. 845 (certificate of service of check *in lieu* of responding to Motion 831).  Despite having received payment in full, Mr. Wallerstein neither advised the Court of this fact, nor withdrew his Motion at Dkt. 831.

3:15-CV-00798-HSG-DMR  DECLARATION OF VCH

attached hereto as **Exhibit 1**, and is also available at the following link: Exhibit 1, Part 1.  Mr. Wallerstein persisted with this behavior throughout the call.  *See* Exhibit 1, Parts 2-6, also available at the following links: Part 2, Part 3, Part 4, Part 5, and Part 6.  Third, Mr. Wallerstein indicated during the call he was filing another motion, as well as a long list of motions in limine.  Although he never advised me he was moving for sanctions, let alone terminating sanctions, there was nothing I could have said or done in the call to dissuade Mr. Wallerstein from filing yet another motion, because his strategy in this case is to find reasons to file motions.

8.      During the August 1, 2016 call when I asked Mr. Wallerstein to share his draft joint pretrial submissions, Mr. Wallerstein said they did not have anything in writing:  "Well, drafted no.  We need plaintiff's draft first." "We don't have anything in writing.  We need to receive Plaintiff's first."  I reiterated my request that Mr. Wallerstein share any draft joint pretrial submission on August 9, 2016 but Mr. Wallerstein has reiterated he is not required to do any draft joint pretrial submissions.  *See* **Exhibit 8-B** representing a true and correct copy of correspondence with Mr. Wallerstein.

9.      I never told Mr. Wallerstein or anyone else that I refused or would refuse to comply with Your Honor's Pretrial Order.  To the contrary, I told the Defendants' counsel that we were working to meet all of the Pretrial Order's requirements.

10.      I believe I have substantially complied with the Pretrial Order's requirements and we are continuing to work around the clock to prepare the remaining joint pretrial submissions in accordance with the Court's Pretrial Order and the Federal Rules.  I set for below the global status of pretrial submissions served by all parties to date.

### Loop AI's Pretrial Submissions to All Defendants to Date

11.      **Loop AI's Trial Exhibits** –  An electronic copy of each document that *will* or *may* be offered at trial pursuant to Fed. R. Civ. P. 26(a)(3)(A)(iii), stamped with the Trial Exhibit Stamp required by Sections 16-18 of Pretrial Order, enclosing an Index of documents served describing each item pursuant to the Pretrial Order Section 2A was served by Loop AI on all Defendants on August 1, 2, 3 and a remaining set of 83 documents on August 7, 2016.  The majority of Loop AI's exhibits were timely served under the Pretrial Order by August 2, 2016.

3:15-CV-00798-HSG-DMR                                            DECLARATION OF VCH

Only a small percentage was served the next day, and only 83 exhibits were served on August 7, 2016. On August 12, 2016, I served a consolidated index of Loop AI's trial exhibits, withdrawing some inadvertently included documents (45), identified in Loop AI's list and identifying each sponsoring witness. A true and correct copy of an excerpt of Loop AI's notice and list of all trial exhibits served is attached hereto as **Exhibit 2**. Pursuant to Fed. R. Civ. P. 26(a)(3)(A)(iii) by August 19, 2016, Loop AI will specify each exhibit that will or may be offered at trial. *See id.* Loop AI's trial exhibits include only Loop AI's exhibits already used in response to numerous motions, including Loop AI's Motion for a TRO, Loop AI's evidence n support of its opposition to various motions to dismiss and discovery motions, including Loop AI's evidence in support of its oppositions summary judgment, discovery documents, including specifically thousands of documents identified by individual Bates number more than five months ago in discovery responses served on March 9, 2016 and March 15, 2016; the remaining documents all consist of discovery documents, including those produced by third parties and some public domain documents that Loop AI believes will or may be used at trial.[3]

12. Until receiving the Almaviva Defendants' Motion at Dkt. 869, the Almaviva Defendants' counsel never told me that it had a problem with the volume of Loop AI's exhibits. Contrary to Mr. Wallerstein's unfounded statements, Loop AI's trial exhibits have been carefully selected based on the expected needs of the case, and the fact that the Defendants have challenged even the most obvious facts, such as for instance personal jurisdiction. Moreover, the contacts between Gatti and the Defendants are materially at issue in this case and the numerous calendar entries submitted are highly relevant and not "garbage." Attached hereto as **Exhibit 2-A** is an electronic copy of Loop AI's trial exhibits served, being submitted to the Court for

---

[3] Many third parties did not Bates stamp their productions and therefore many documents do not contain a Bates number. Although Loop AI was initially affixing a Bates number to productions received from third parties, the Defendants filed a motion demanding (that third party productions be produced in the format submitted by the third party. *See* Dkt. 445 at 1:27-28. Accordingly, as a result of Defendants' application to the Court, and the Court's Order granting that request, many exhibits from third party productions have no Bates number.

inspection in an electronic binder.  Mr. Wallerstein's identification of a few exhibits that were inadvertently included does not support his arguments and certainly is no basis for an emergency motion for sanctions.  As set forth above Loop AI has already removed some duplicates and some inadvertently included items, and will provided a complete Rule 26(a)(3)(A)(iii) identification of the "will" and "may" exhibits by August 19, 2016.

13.    **Loop AI's Discovery Citations** – Pursuant to Section 2 of the Pretrial Order, on August 2, 2016 Loop AI served on all Defendants a list of discovery citations.  A true and correct copy of an excerpt of Loop AI's discovery citations served on all Defendants on August 2, 2016 is attached hereto as **Exhibit 4**.  Loop AI served an amended copy of Loop AI's Discovery Citations on August 3, 2016 to correct some errors and inadvertent omissions.

14.    **Loop AI's Draft Joint Voir Dire** – Pursuant to Sections 10-12 of the Pretrial Order, on August 11, 2016, Loop AI served on all Defendants its proposed voir dire questions for approval and/or editing by the Defendants.  A true and correct copy of an excerpt of Loop AI's served Voir Dire draft is attached hereto as **Exhibit 5**.

15.    **Loop AI's Objections to Trial Exhibits** – Pursuant to Section 6(h) of the Pretrial Order and to Fed. R. Civ. P. 26(a)(3), on August 11, 2016, Loop AI served on all Defendants its Objections (and non-objection) to the Defendants' Trial Exhibits.  A true and correct copy of an excerpt of Loop AI's Objections to trial exhibits is attached hereto as **Exhibit 6**.

16.    **Loop AI's Witness List** – Pursuant to Section 6(g) of the Pretrial Order and to Fed. R. Civ. P. 26(a)(3)(i), on August 11, 2016, Loop AI served on all Defendants its Witness list, specifically identifying each witness that will or may be called as required by Rule 26.  A true and correct copy of an excerpt of Loop AI's Witness list served on August 11, 2016 is attached hereto as **Exhibit 7**.

17.    **Loop AI's Objections to Defendants' Motions in Limine** – on August 12, 2016 I served a letter objecting to the motions in limine proposed by the Defendants.  In total, between August 5 and August 11, I have received three separate lists of approximately 20 topics.  A true and correct copy of the correspondence received is attached hereto as Exhibits 8-A, 8-B, and 8-

3:15-CV-00798-HSG-DMR                                    DECLARATION OF VCH

C. I believe the proposed motions are frivolous and in violation of the Pretrial Order limiting each motion in limine to one topic.

18.     **Loop AI's Compliance with Pretrial Order Settlement Requirement** – Loop AI has complied with Section 1 of the Pretrial Order regarding settlement discussions, as follows: on August 1, 2016, by exploring the issue during the call, and August 9, 2016, by providing a detailed written proposal.  Almaviva rejected the proposal and declined to participate in settlement discussions.

### Almaviva's Pretrial Submissions to Loop AI to Date

19.     To date, the only pretrial items we received from the Almaviva Defendants, are the following:

20.     **Almaviva Defendants' Trial Exhibits** –  An electronic copy of the Almaviva Defendants' trial exhibits was first provided to Loop AI on August 2, 2016.  The exhibits are not stamped as required by Section 18 of the Court's Pretrial Order.   None of these exhibits has been previously identified by Almaviva as ones that they intended to rely on in this case.  Approximately 60% of the exhibits consist of documents produced by Almaviva's experts the second week of June 2016, and Loop AI has no idea what is the purpose or relevance of any of those exhibits.  Loop AI has addressed its objections to these exhibits in accordance with the Court's Pretrial Order and the Federal Rules of Civil Procedure.

21.     **Almaviva Defendants' Discovery Citations –**  An electronic copy of the Almaviva Defendants' extensive discovery citations was first provided to Loop AI on August 2, 2016.  Loop AI is in the process of finalizing its objections and counter-designations to these citations and expects to be able to serve its objections by August 19, 2016.

22.     **Almaviva Defendants' List of Motions in Limine** –  Loop AI received two lists of motions in limine that the Almaviva Defendants have indicated they plan to file.  *See* Exhibits 8-A and 8-B.  Because Loop AI believes the motions in limine proposed by Almaviva to be lacking in merit, there is no way to resolve them and Loop AI has so informed Almaviva and requested that they refrain from filing more frivolous motions.  To the extent Almaviva is allowed to file these motions, Loop AI respectfully requests a reasonable amount of time to

respond to this new round of motions, which also takes into account the global volume of motions and other pretrial work that needs to be completed.

### IQSystem Inc.'s Pretrial Submissions to Date

23.    To date, the only pretrial items we received from Defendant IQSystem Inc., are the following:

24.    **IQSystem Inc.' Trial Exhibits** –  An electronic copy of IQSystem Inc.'s trial exhibits was first provided to Loop AI on August 2, 2016.  The exhibits are not stamped as required by Section 18 of the Court's Pretrial Order.  Loop AI has addressed its objections to these exhibits in accordance with the Court's Pretrial Order and the Federal Rules of Civil Procedure.

25.    **IQSystem Inc.' Compliance With Pretrial Order Settlement Requirement**  – Pursuant to Section 1 of the Pretrial Order, IQSystem Inc., provided Loop AI a written settlement proposal on August 2, 2016, to which Loop AI responded with its detailed written proposal to all Defendants on August 9, 2016.  Settlement discussions were unsuccessful.

26.    **IQSystem Inc.' Pretrial Statement** – IQSystem Inc. served on Loop AI its draft portion of the joint pretrial statement in the evening of August 11, 2016.  Loop AI will incorporate IQSystem Inc.'s draft into its own and will serve the un-served portions of the draft joint pretrial statement by August 19, 2016 or sooner if possible.  Loop AI has already served on all parties many parts of the joint pretrial statement (e.g. witness list, exhibit list, objections or stipulations to exhibits).

### Gatti/IQSystem LLC's Pretrial Submissions to Date

27.    To date, the only pretrial items we received from Defendants Gatti and IQSystem LLC, are the following:

28.    **Gatti's Compliance With Pretrial Order Settlement Requirement**  – Pursuant to Section 1 of the Pretrial Order, during the August 1, 2016 call, Gatti's counsel made a verbal settlement proposal on behalf of Ms. Gatti, to which Loop AI responded with its detailed written proposal to all Defendants on August 9, 2016.  Settlement discussions with Gatti, also previously held in December 2015, were unsuccessful.

29.    **Gatti/IQSystem LLC's Pretrial Submissions -** The Gatti/IQSystem LLC Defendants have not made any pretrial submissions of their own.

**Loop AI's Ongoing Preparation of Remaining Pretrial Submissions**

30.    We are in the process of preparing the remaining pretrial submissions, including draft jury instructions and verdict forms, *in limine* motions, the remaining parts of the joint pretrial statement, and a draft statement of the case.

31.    Telephonic meet and confers in this case have proven unconstructive and a waste of substantial time.  I believe the most efficient way to proceed to complete joint pretrial submissions are in writing.  I will continue to immediately circulate to all Defendants the remaining draft joint pretrial submission as they are completed.

Executed: August 13, 2016
         New York, New York

Respectfully submitted,

/s/ Valeria Calafiore Healy
Valeria Calafiore Healy

---