**VENABLE LLP**
Thomas E. Wallerstein (SBN 232086)
Kimberly Culp (SBN 238839)
Email: twallerstein@venable.com
        kculp@venable.com
505 Montgomery Street, Suite 1400
San Francisco, CA 94111
Telephone:    415.653.3750
Facsimile:    415.653.3755

Attorneys for Defendants Almawave USA, Inc.,
Almawave S.r.l., and Almaviva S.p.A.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> ANNA GATTI, an individual, ALMAVIVA S.p.A., an Italian corporation, ALMAWAVE S.r.l., an Italian corporation, ALMAWAVE USA, Inc., a California corporation, IQSYSTEM LLC, a California limited liability company, IQSYSTEM Inc., a Delaware corporation, <br><br> Defendants. | CASE NO.: 3:15-cv-00798-HSG-DMR <br><br> Hon. Haywood S. Gilliam <br><br><br> **ALMAWAVE'S OPPOSITION TO LOOP'S *DAUBERT* MOTION TO EXCLUDE TESTIMONY AND SUBMISSIONS OF KENDYL A. ROMÁN FROM CONSIDERATION AT SUMMARY JUDGMENT AND TRIAL** <br><br><br> Action Filed:    February 20, 2015 <br> Trial Date:      September 19, 2016 |

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

ALMAWAVE'S OPPOSITION TO LOOP'S DAUBERT MOTION TO EXCLUDE KENDYL A. ROMÁN
– Case No.: 3-15-cv-00798-HSG-DMR

**VENABLE LLP**
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

# TABLE OF CONTENTS

<u>**Page**</u>

I. PRELIMINARY STATEMENT ...................................................................................1

II. MR. ROMÁN'S TESTIMONY IS RELEVANT ............................................................1

    A. Expert Testimony Allowed If Helpful To Lay Juror ...........................................1

    B. Expert Need Only Be Helpful On Some Issues Not All Issues ............................2

    C. Mr. Román's Testimony Will Be Helpful To Lay Jurors ....................................3

    D. Loop Cannot Deny That At Least Some Subjects Of This Case Are Beyond The Common Knowledge Of Lay Jurors ................................................5

III. MR. ROMÁN IS QUALIFIED TO TESTIFY ABOUT ISSUES IDENTIFIED BY ALMAWAVE ......................................................................................................6

IV. MR. ROMÁN'S ANALYSIS IS RELIABLE ................................................................7

V. ITALIAN ALMAWAVE DEFENDANTS COMPLIED WITH THE COURT'S DISCOVERY ORDERS ........................................................................................9

VI. PROCEDURAL DEFECTS ........................................................................................9

    A. Loop's Notice Is Insufficient In Light Of Its Re-Noticed Hearing Date. ............9

    B. Alternatively, Loop Has Not Shown Good Cause For An Order Shortening Time. ..............................................................................................................10

    C. Loop's Motion is Improper to the Extent It Seeks Exclude Evidence Introduced at Summary Judgment. ...................................................................10

    D. Loop's Motion Should Be Refiled As A Motion *In Limine* As Provided In This Court's Civil Pretrial Order. ...................................................................11

VII. CONCLUSION .......................................................................................................12

ALMAWAVE'S OPPOSITION TO LOOP'S DAUBERT MOTION TO EXCLUDE KENDYL A. ROMÁN
– Case No.: 3-15-cv-00798-HSG-DMR

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Ajaxo Inc. v. E\*Trade Group Inc.*

135 Cal.App.4th 21 (2005) ......................................................................................................2

*Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*

738 F.3d 960 (9th Cir. 2013) ..................................................................................................8

*Arble v. State Farm Mut. Ins. Co.*

272 F.R.D. 604 (D.N.M. 2011)...............................................................................................6

*AT & T Intellectual Prop. II, L.P. v. Toll Free Yellow Pages Corp.*

No. CV 09-5707 PSG PJWX, 2009 WL 4723613 (C.D. Cal. Dec. 2, 2009)..................10

*Atmel Corp. v. Information Storage Devices, Inc.*

189 F.R.D. 410 (N.D. Cal. 1999)...........................................................................................5

*Bausch & Lomb, Inc. v. Alcon Laboratories, Inc.*

79 F. Supp. 2d 252 (W.D.N.Y. 2000) ....................................................................................4

*Bryant v. Trexler Trucking, Inc.*

No. 4:11-CV-02254-RBH, 2013 WL 643768 (D.S.C. Feb. 21, 2013) ...........................12

*Daubert v. Merrell Dow Pharm., Inc.*

509 U.S. 579 (1993)..............................................................................................................1, 7

*Daubert v. Merrell Dow Pharms., Inc.*

43 F.3d 1311 (9th Cir.1995) ....................................................................................................1

*Feduniak v. Old Republic Nat'l Title Co.*

No. 13-CV-02060-BLF, 2015 WL 1969369 (N.D. Cal. May 1, 2015) ............................1

*Friedman v. Cunard Line Ltd.*

No. 95 CIV. 5232 (CSH), 1997 WL 698184 (S.D.N.Y. Nov. 10, 1997)........................12

*Hangarter v. Provident Life and Acc. Inc. Co.*

373 F.3d 998 (9th Cir.2004) ....................................................................................................8

**VENABLE LLP**
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

*Humphreys v. Regents of Univ. of California*

  No. C 04-03808 SI, 2006 WL 1867713 (N.D. Cal. July 6, 2006) ...................................8

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*

  87 F. Supp.3d 928 (N.D. Cal. 2015) ...............................................................................4

*In re Hanford Nuclear Reservation Litig.*

  292 F.3d 1124 (9th Cir. 2002) .......................................................................................12

*Kumho Tire Co., Ltd. v. Carmichael*

  526 U.S. 137 (1999)........................................................................................................2

*Lovett v. Omni Hotels Mgmt. Corp.*

  No. 14-CV-02844-RS, 2016 WL 777781 (N.D. Cal. Feb. 29, 2016) ..............................8

*Lucas v. Hertz Corp.*

  No. C 11-01581 LB, 2012 WL 3638568 (N.D. Cal. Aug. 22, 2012) .............................10

*Miller UK Ltd. v. Caterpillar, Inc.*

  No. 10-CV-03770, 2015 WL 10818831 (N.D. Ill. Nov. 1, 2015) ...................................3

*Primiano v. Cook*

  598 F.3d 558 (9th Cir. 2010) ...............................................................................2, 6, 7, 8

*Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*

  752 F.3d 807 (9th Cir. 2014) ..........................................................................................8

*Sloan v. Urban Title Servs., Inc.*

  770 F. Supp. 2d 227 (D.D.C. 2011) ..............................................................................11

*Thomas v. Newton Int'l Enters.*

  42 F.3d 1266 (9th Cir.1996)) ...........................................................................................8

*U.S. Gypsum Co. v. Lafarge North America Inc.*

  670 F. Supp. 2d 768 (N.D. Ill. 2009) ..............................................................................8

*United States v. Morales*

  108 F.3d 1031 (9th Cir. 1997) .........................................................................................5

*Watson v. Fleetwood Motor Homes of Indiana, Inc.*

  No. 1:06CV275, 2007 WL 1521144 (W.D.N.C. May 22, 2007) ...................................11

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

iii

**STATUTES**

Civil L.R. 7-3(a)..............................................................................................................................11

Fed. R. Evid. 401 .............................................................................................................................2

Fed. R. Evid. 702 .............................................................................................................................2

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

ALMAWAVE'S OPPOSITION TO LOOP'S DAUBERT MOTION TO EXCLUDE KENDYL A. ROMÁN
– Case No.: 3-15-cv-00798-HSG-DMR

**VENABLE LLP**
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

## I. PRELIMINARY STATEMENT

Relying on declarations from four non-disclosed "experts," Loop argues that Almawave's disclosed expert Kendyl Román is wrong about his opinions and therefore his testimony is irrelevant and inadmissible under the *Daubert* standard. Loop is wrong. Loop's arguments go to the weight of Mr. Román's opinion, and not its admissibility.

Moreover, Loop's *Daubert* challenge mischaracterizes the purpose and substance of Mr. Román's testimony. Mr. Román proposes to offer testimony that is (a) squarely within his unquestioned expertise; (b) beyond the common knowledge and therefore helpful to a lay juror; and (c) relevant to central disputes that Loop has raised for resolution at trial.

## II. MR. ROMÁN'S TESTIMONY IS RELEVANT

### A. Expert Testimony Allowed If Helpful To Lay Juror

Expert opinion testimony is admissible when it would "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "This condition goes primarily to relevance." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993). Expert testimony should only excluded when it "does not relate to any issue in the case [and therefore] is not relevant and, ergo, non-helpful." *Id.* Where an expert's "testimony addresses the precise issue that the jury must determine, it is relevant." *Feduniak v. Old Republic Nat'l Title Co.*, No. 13-CV-02060-BLF, 2015 WL 1969369, at *2 (N.D. Cal. May 1, 2015). In assessing relevance, the court must look to the governing substantive legal standard. *See Daubert v. Merrell Dow Pharms., Inc.*, 43 F. 3d 1311, 1320 (9th Cir.1995) ("*Daubert II*").

For example, Loop intends to argue that Almawave's technology is "similar" to Loop's, and that Almawave's patent application incorporates Loop's technology. Declaration of Yevgeniya A. Titova ("Titova Decl.") Ex. C. Loop also intends to argue that Almawave's patent application is suspicious on its face because it lists Ms. Valeria Sandei as an inventor.

Loop does not deny that Mr. Román is qualified and his testimony relevant to opine on issues relating to Almawave's technology and Almawave's patent. Further, if Loop proceeds with its trade secret claim at trial, the jury will be asked to determine whether information allegedly misappropriated by Almawave constitutes a trade secret, or whether these items were

1

secret, had potential independent economic value due to this secrecy, which plaintiff made reasonable efforts to maintain. *See, e.g.*, *Ajaxo Inc. v. E\*Trade Group Inc.*, 135 Cal.App.4th 21, 66 (2005) (reciting elements of trade secret misappropriation under California law). Therefore, at least those portions of Mr. Román's testimony addressing those topics would be relevant, and therefore admissible.

### B.    Expert Need Only Be Helpful On Some Issues Not All Issues

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. An expert may testify about relevant facts if the testimony will help the jury understand the evidence or determine a fact in issue. Fed. R. Evid. 702. The proposed testimony of Mr. Román will be helpful to the jury in determining facts at issue.

Mr. Román need not provide testimony that would be relevant, and therefore, helpful on all issues raised in this case in order for his testimony to be admissible. Just as a lay witness need not proffer testimony as to all the issues in the case, so too, an expert witness is permitted to testify on the subject of his expertise, even if such testimony does not resolve all the issues in the case. In its motion, Loop claims that "[t]he vast majority of Mr. Roman's [sic] proposed testimony is not relevant to any issue in the case and therefore it is not admissible." Dkt. 875, 28:8-9 (emphasis added).

But Loop's arguments as to "relevance" actually address the weight that should be given to the substance of Mr. Román's opinions. Whether Loop believes that Mr. Román's testimony is correct has no impact on its relevance.

Under *Daubert*, the court has a "gatekeeping" role, "to ensure the reliability and relevancy of expert testimony." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). However, this role does not require the Court to act as a fact finder to determine whether the expert's testimony is "correct." *Primiano v. Cook*, 598 F.3d 558, 564–65 (9th Cir. 2010), as amended (Apr. 27, 2010). "When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Id.* Therefore, excluding Mr. Román's testimony would be inappropriate.

2

**VENABLE LLP**
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

For instance, Loop criticizes as "irrelevant" the section of Mr. Román's report which provides definitions of various terms used in his analysis. Yet, in support of its argument, Loop relies on the declaration of Mr. Ehlen, its Chief Scientist, to explain how he disagrees with Mr. Román's definitions of these terms. Whether Mr. Ehlen disagrees with the substance of Mr. Román's anticipated testimony does not go to its relevance but to the weight it should be given, and in fact, demonstrates the need for presentation of Mr. Román's testimony at trial, where it can be evaluated together with testimony of other witnesses by the members of the jury.

As explained below, Mr. Román is indeed qualified to offer the opinions he was retained to provide in this case, and those opinions are relevant to facts in dispute.

### C.   Mr. Román's Testimony Will Be Helpful To Lay Jurors

Loop claims that Almawave's patent application naming Valeria Sandei is proof that Almawave received and used Loop's trade secret. Therefore, it will be helpful for the jury to understand the patent process and, in particular, what it means to be named as an inventor on a patent. Loop does not deny Mr. Román's qualifications to offer this testimony, nor dispute its relevance.

Moreover, expert testimony about whether any trade secret might have been used in a defendant's technology and whether any information revealed in a patent precludes a claim that something is a trade secret is all testimony that will be helpful to a jury. *See e.g. Miller UK Ltd. v. Caterpillar, Inc.*, No. 10-CV-03770, 2015 WL 10818831, at *8-11 (N.D. Ill. Nov. 1, 2015). To know whether any trade secret was used in the Almawave Defendants' technology, the jury will need to understand that technology, including any differences between it and Loop's own technology. Indeed, in its proposed statement of the case, Loop claims that Almawave's technology is "similar to the technology being developed by Loop." Titova Decl. Ex. C. at ¶ 7. Because Loop has expressly disavowed any claim that Almawave received any of Loop's software or its algorithm, this case is not about a technical comparison of the two companies' technologies. Rather, to the extent they need to understand the differences in the technology, it will be with regard to generalized concepts about artificial intelligence. Therefore, testimony that generally helps the jury understand concepts will be more than adequate to help them

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

3

determine whether Loop and Almawave have different or "similar" technologies.

Loop alleges that Almawave's patent application relies on Loop's trade secret and Loop points to Ms. Sandei being a named inventor on the patent as evidence of the misappropriation. For the jury to understand whether and to what extent Ms. Sandei's name appearing on the patent is evidence of any misappropriation of a trade secret, jurors need to have a general understanding of Almawave's technology, how it was developed, Ms. Sandei's role in its development, and the patent process. Mr. Román is the named inventor on 74 U.S. patents (Titova Decl. Ex. B (Dkt. 740-20) at p. 66), he certainly has more knowledge about what it means to be a named inventor than the average person and his testimony will be helpful on this issue to the jury. *See e.g. Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F. Supp.3d 928, 946-947 (N.D. Cal. 2015) *citing Bausch & Lomb, Inc. v. Alcon Laboratories, Inc.*, 79 F. Supp. 2d 252, 256 (W.D.N.Y. 2000) ("Obviously PTO procedures are foreign to the average person, and it may be helpful to the jury to hear someone experienced in those procedures explain how they operate in terms that a layperson can understand").

Loop has placed at issue whether Ms. Gatti obtained Loop's trade secrets from Loop and provided those trade secrets to Almawave, and whether Almawave used those trade secrets in a patent application. It will be helpful to the jury then, to hear testimony about how Loop maintained (or failed to maintain) whatever its trade secret is, including evidence about the ways in which trade secrets can be maintained as secrets. It would also be helpful for the jury to understand what kinds of trade secrets would be common to find in a company that develops software.

Loop has claimed generalized concepts as "trade secrets."[1] To the extent that the Court allows Loop to claim that generalized concepts are indeed trade secrets, Mr. Román is prepared

---

[1] As the Court knows, the Court has determined that "a fact finder will not be able to determine whether the information in Plaintiff's disclosure qualifies as trade secrets, including whether they are in fact secret, if the parameters of the secrets remain unclear." Dkt. 795 at 9:1-3. Because the parameters of Loop's purported secrets have not been clarified, Loop's trade secret claim, any claim that relies on Loop's allegation that it had trade secrets, and Loop's allegations that it had trade secret, confidential, or proprietary information should not be submitted to the jury.

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

to offer testimony as to whether those general concepts are well known or secret. In a trade secret case, a defense expert is permitted to review relevant literature and consult with relevant individuals in the respective technical area to opine on what was generally known and, thus, whether what the plaintiff claims to be a trade secret was in fact secret. *See Atmel Corp. v. Information Storage Devices, Inc.*, 189 F.R.D. 410, 418 (N.D. Cal. 1999) ("[Defendant's] experts only needed such references as would show that the alleged trade secrets were public."). Likewise, it will be helpful for the jury to understand whether what Loop claims to be a trade secret was publicly known, and thus whether it had value, by virtue of being kept secret by Loop (if it ever was).

**D.      Loop Cannot Deny That At Least Some Subjects Of This Case Are Beyond The Common Knowledge Of Lay Jurors**

"An expert witness's testimony is admissible under Rule 702 if the subject matter at issue is beyond the common knowledge of the average layman." *United States v. Morales*, 108 F.3d 1031, 1038 (9th Cir. 1997) (internal quotations omitted). Yet, in attempt to explain its failure to disclose a technical expert, Loop absurdly claims that "this case does not involve any issue requiring a technical expert." Dkt. 875 at 19:19. This argument is in direct contradiction to statements from its Chief Scientist, Dr. Ehlen, that Loop developed "very advanced" technology, Dkt 785-4 at SJX-2608, and Loop's previous allegations that Almawave misappropriated Loop's technology. *See generally* Second Amended Complaint.

If the facts are in this case are as so "straightforward, [that] there is no need for a technical expert in this case," as Loop contends, query why Loop finds it necessary to support its argument for exclusion of Mr. Román's testimony with at least four declarations from experts in the field of artificial intelligence. The fact that Loop needs supporting declaration of alleged AI "experts," Dr. Ehlen, Mr. Ivanov, Mr. Pieraccini, and Mr. Marchiori, itself proves that the subject is beyond the common knowledge of lay jurors.[2] Given that the Court is not supposed to

---

[2] Moreover, the testimony of at least Mr. Ivanov and Mr. Marchiori should not be considered in support of Loop's *Daubert* challenge because Almawave never had an opportunity to depose

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

evaluate the correctness of expert testimony as part of its gatekeeping function, it would be entirely inappropriate to exclude Mr. Román's testimony at this point. *See Primiano v. Cook*, 598 F.3d 558, 564–65 (9th Cir. 2010), as amended (Apr. 27, 2010).

### III.     MR. ROMÁN IS QUALIFIED TO TESTIFY ABOUT ISSUES IDENTIFIED BY ALMAWAVE

Despite Loop's assertions to the contrary, Mr. Román is more than qualified to offer expert testimony on Almawave's development of computer software, the patent process, and how trade secrets are kept and maintained in the normal course of business in a software company, etc.

Loop argues that Mr. Román cannot offer his expert testimony in this matter because he's not an "artificial intelligence expert." Dkt. 875 at 7-11. However, it's not up to Loop to define the field of Mr. Román's expertise, or the scope and purpose of his testimony. Mr. Román's anticipated testimony concerns issues relating to Almawave's technology and Almawave's patent.

Further, to the extent that Loop proceeds on its trade secret claim, Mr. Román may opine on what kinds of trade secrets would be common to find in technology companies of the kinds at issue here, as well as the process for obtaining a patent, in light of Loop's allegations that Almawave improperly patented its technology.

Instead of challenging Mr. Román's expertise in this regard, Loop instead argues that it is not a software company, and that its algorithm and source code are not relevant to this case. Both contentions are problematic. Loop's unsupported statements that it is "not a software company," Dkt. 875 at 19:9, is belied statements on its own company website, where Loop

these individuals, and also did not have an opportunity to depose Dr. Ehlen with respect to his opinion regarding the reliability of Mr. Román's testimony. To the extent the Court relies on these declarations, Almawave respectfully requests that it be permitted an opportunity to reopen discovery to depose these individuals as to their opinions on the issue of Mr. Román's qualifications, and to submit additional briefing. *See Arble v. State Farm Mut. Ins. Co.*, 272 F.R.D. 604, 606–07 (D.N.M. 2011) (ordering deposition of a party's non-disclosed expert affiants prior to allowing those individuals to provide testimony regarding same party's *Daubert* challenge of an opposing expert).

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

describes its product as integrating "software and hardware," touts its "proprietary software," and advertises that its product is available as "Software-as-a-Service." Titova Decl. Ex. D. And if one were to accept Loop's argument that its source code and algorithms are not relevant to this case, an "artificial intelligence expert" would not be necessary in this case anyway. Moreover, in its recently provided proposed statement of the case to be read to the jury, Loop alleges that Almawave's technology is "similar to the technology being developed by Loop." Titova Decl. Ex. C. Therefore, Mr. Román need not be an expert in artificial intelligence in order to be qualified to offer opinions helpful to the factfinder in this case, he need only be able to opine about Almawave's software and the extent to which Almawave's technology is similar to Loop's technology. So Mr. Román's alleged lack of experience and expertise in the "artificial intelligence" field would not be relevant to evaluating his qualifications as an expert in this matter.

The reality is that Mr. Román developed an expertise in artificial intelligence over the years, as well as in preparation of his report, by reviewing publications relevant to the subject, as well as through conversations with noted scientists in the field. With respect to conversations with certain individuals, Mr. Román has not indicated that these conversations took place recently and exclusively for the purpose of preparing this report.[3] Rather, he has stated that these conversations took place sometime in the past, and did not overstate their content. These facts are not contradicted by declarations submitted by these individuals.

## IV.    MR. ROMÁN'S ANALYSIS IS RELIABLE

Expert opinion testimony is reliable if such knowledge has a "basis in the knowledge and experience of [the relevant] discipline." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993). Where an expert "has applied that general practice to the situation presented in this case and 'explain[ed] how that experience leads to the conclusion reached,' Fed. R. Evid. 702

---

[3] Loop's allegation that Mr. Román "lied" – and any other assaults on credibility – go to weight, not admissibility, and further confirm why Loop's motion must be denied. "When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Primiano v. Cook*, 598 F.3d 558, 564–65 (9th Cir. 2010), as amended (Apr. 27, 2010).

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

advisory committee's note," his methodology is reliable and therefore, admissible. *See Lovett v. Omni Hotels Mgmt. Corp.*, No. 14-CV-02844-RS, 2016 WL 777781, at \*5 (N.D. Cal. Feb. 29, 2016). Expert opinion based on "experience-based expertise" where the expert describes "his or her relevant background and experience" is reliable and admissible. *Id*. The judge is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.,* 738 F.3d 960, 969 (9th Cir. 2013). An expert opinion is reliable "if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Pyramid Techs., Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 816 (9th Cir. 2014) (citing *Alaska Rent–A–Car*, 738 F.3d at 969; *Primiano*, 598 F.3d at 565)). "When expert testimony is offered for 'specialized 'knowledge,' courts have long recognized that reliability may come from experience in the field." *Humphreys v. Regents of Univ. of California*, No. C 04-03808 SI, 2006 WL 1867713, at \*2 (N.D. Cal. July 6, 2006) (citing *Hangarter v. Provident Life and Acc. Inc. Co.*, 373 F.3d 998, 1015-16 (9th Cir.2004); *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269-70 (9th Cir.1996)). A witness's expertise in a particular field is relevant to determining the reliability of the opinion. *See U.S. Gypsum Co. v. Lafarge North America Inc.*, 670 F. Supp. 2d 768, 773 (N.D. Ill. 2009) (admitting testimony of expert regarding trade secrets over objection to expert's qualifications).

As discussed above, Mr. Román is qualified to render the opinions he offers. Moreover, the approach he took to reaching those opinions is reliable. Mr. Román discusses in great detail that all evidence produced in the case was available to him, his review of that evidence, his own independent research regarding the concepts about which Loop claims secrecy, and his interview with Almawave's own inventors of its technology (persons whom Loop also had the opportunity to depose). For example, as described, Mr. Román has compared the general concepts that Loop claims were secret with what was publicly known about artificial intelligence to conclude that those concepts were not secret. Likewise, he compared the available evidence about Loop and Almawave's technologies to conclude that the technologies are dissimilar. He also draws from his own experience about developing patentable technology and his interview of Almawave's inventors to determine that the Almawave patent does not incorporate any trade secret of Loop's.

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

ALMAWAVE'S OPPOSITION TO LOOP'S DAUBERT MOTION TO EXCLUDE KENDYL A. ROMÁN
– Case No.: 3-15-cv-00798-HSG-DMR

His opinions are reliable and whatever criticism Loop has of his methodologies are best left for cross-examination.

## V.      ITALIAN ALMAWAVE DEFENDANTS COMPLIED WITH THE COURT'S DISCOVERY ORDERS

Loop argues that the Italian Almawave Defendants should be precluded from introducing evidence at trial through the testimony of Mr. Román that they allegedly failed to provide during discovery.  This issue already has been fully briefed, repeatedly, and most recently is the subject of a motion under submission to Judge Ryu.  Dkt. 773.

The Italian Almawave Defendants timely responded to Loop's discovery and asserted legitimate grounds for the objections they asserted.  To the extent Loop has challenged those responses, this Court has agreed with the Italian Almawave Defendants.

As Almawave has repeatedly explained to Loop, both in correspondence and briefing to this Court, *see, e.g.*, Dkt. 773, the Almawave Defendants have not withheld information or documents on the basis that such information was in the possession, custody, and control of the Italian Almawave Defendants and not Almawave. Dkt. 773-1 at ¶ 7. Therefore, Mr. Román's testimony and reliance on Almawave documents on behalf of the Italian Almawave Defendants is wholly appropriate.

## VI.      PROCEDURAL DEFECTS

### A.      Loop's Notice Is Insufficient In Light Of Its Re-Noticed Hearing Date.

Almawave opposes and objects to Loop's attempt to re-notice the hearing on its *Daubert* motion (Dkt. 880) to August 30, 2016.  Loop's proposed hearing date violates Northern District of California Civil Local Rule 7-2, which provides that "motions must be filed, served and noticed in writing on the motion calendar of the assigned Judge for hearing not less than 35 days after filing of the motion."  Loop's *Daubert* motion, Dkt. 875, was filed on August 8, 2016 and therefore the earliest hearing date that complies with the local rules is September 12, 2016.  Loop knows this, as it originally noticed its motion for September 29, 2016.

Further, Loop's new proposed hearing date prejudices Almawave because Loop's reply to its motion is not due until August 29, 2016, the day before Loop's newly-proposed hearing

**VENABLE LLP**
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

9

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

date.  *See* Dkt. 875 (setting reply date of August 29, 2016).

If Loop intended its *Daubert* motion to be heard on shortened time, it was required to file a motion for an order shortening time in compliance with Local Rule 6-1 and 6-3.  Loop admitted this when it asked Almawave whether it would consent to Loop filing a motion for an order shortening time.  Titova Decl. Exs. E and F.

**B.      Alternatively, Loop Has Not Shown Good Cause For An Order Shortening Time.**

Loop knows that if its motion is not deemed a motion *in limine* as per this Court's Pretrial Order, then Loop lacks good cause to seek an order shortening time because it unjustifiably delayed bringing its motion or requesting the OST.  Thus, rather than try to meet the standard required to obtain an order shortening time, Loop attempts to skirt the Local Rules by simply re-noticing its motion.  Local Rule 7-2 does not permit this.

Specifically, if Loop's motion is not governed by the Pretrial Order, then Loop should have brought the motion weeks or months ago.  Almawave disclosed its expert report on May 3, 2016 and Loop deposed Almawave's expert on June 7.  Titova Decl. Ex. A, ¶¶ 2-3.  Thus, by **June 7** Loop had all the information it needed to file a motion to exclude his testimony.  Loop offers no justification for why it waited two more months – until August 8 – to file its *Daubert* challenge, and August 16 to file its "renotice."  Almawave raised this issue with Loop and Loop failed to respond with any justification for why it waited.  Titova Dec. Ex. F.

Loop cannot unjustifiably delay bringing a motion and then ask for a hearing on shortened notice; in other words, Loop cannot create its own exigent circumstances to support its new hearing date or OST.  *See, e.g.*, *Lucas v. Hertz Corp.*, No. C 11-01581 LB, 2012 WL 3638568, at *5 (N.D. Cal. Aug. 22, 2012); *AT & T Intellectual Prop. II, L.P. v. Toll Free Yellow Pages Corp.*, No. CV 09-5707 PSG PJWX, 2009 WL 4723613, at *2 (C.D. Cal. Dec. 2, 2009).

**C.      Loop's Motion is Improper to the Extent It Seeks Exclude Evidence Introduced at Summary Judgment.**

To the extent Loop's Motion seeks exclusion of Mr. Román's testimony from consideration at summary judgment, it is improper as well.  Mr. Román provided a declaration in

support of Almawave's motion for summary judgment.  *See* Titova Decl. Ex. B (Dkt. 740-20). To the extent Loop objected to introduction of Mr. Román's declaration, it needed to raise those objections in its opposition brief.  *See* Civil L.R. 7-3(a) ("Any evidentiary and procedural objections to the motion must be contained within the brief or memorandum.").

Loop's sole evidentiary objection with respect to Mr. Román's testimony referenced a single paragraph of his declaration.  *See* Dkt. 779 at 29.  Almawave's motion for summary judgment has been fully briefed and is under submission to the Court.  *See* Dkt. 844.  Loop is not entitled to use this already untimely motion to supplement its evidentiary argument in opposition to Almawave's motion for summary judgment.

**D.    Loop's Motion Should Be Refiled As A Motion *In Limine* As Provided In This Court's Civil Pretrial Order.**

This Court's Pretrial Order limits motions *in limine* to five pages and does not permit a reply.  Pretrial Order at ¶¶ 22-23.  Loop's *Daubert* motion is <u>five times the permitted length</u>, and Loop demands an <u>impermissible reply</u> without showing good cause.  Rather than hear the motion on shortened time, this Court should require that Loop re-file it in compliance with the Pretrial Order.

Loop's *Daubert* motion seeks to exclude evidence at trial and thus is properly deemed a pretrial motion *in limine* governed by this Court's Pretrial Order.  Loop implicitly admits this as it has indicated that it intends to file a separate motion *in limine* to strike or limit the testimony of Almawave's other expert witness, Greg Nachtwey.  Titova Decl. Ex. G.

Loop's motion also meets the traditional legal definition of a "motion *in limine*" as that term is used in the Pretrial Order.  *See* Black's Law Dictionary (10th ed. 2014) (defining motion *in limine* as "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial").

Courts agree that "[t]he proper vehicle for raising such issues [of an expert's qualifications] is a motion *in limine* filed in the context of pretrial proceedings . . . ."  *Sloan v. Urban Title Servs., Inc.*, 770 F. Supp. 2d 227, 238 (D.D.C. 2011); *see also Watson v. Fleetwood Motor Homes of Indiana, Inc.,* No. 1:06CV275, 2007 WL 1521144, at *1 (W.D.N.C. May 22,

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

ALMAWAVE'S OPPOSITION TO LOOP'S DAUBERT MOTION TO EXCLUDE KENDYL A. ROMÁN
– Case No.: 3-15-cv-00798-HSG-DMR

2007) ("The proper method for challenging an expert under *Daubert* is to file a Motion *In Limine* in close temporal proximity to the Final Pretrial Conference."); *Friedman v. Cunard Line Ltd.*, No. 95 CIV. 5232 (CSH), 1997 WL 698184, at *3 (S.D.N.Y. Nov. 10, 1997).[4]

## VII.   CONCLUSION

For the foregoing reasons, Almawave ask that this Court deny Loop's motion to exclude the testimony of Mr. Kendyl Román.

Dated: August 22, 2016                                  **VENABLE LLP**

                                   By:    /s/ Thomas E. Wallerstein
                                          Thomas E. Wallerstein (SBN 232086)
                                          Kimberly Culp (SBN 238839)
                                          *Defendants Almaviva S.p.A, Almawave*
                                          *S.r.l. and Almawave USA, Inc.*

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

---

[4] *Daubert* motions generally are distinguished from motions *in limine* only when a pretrial order expressly distinguishes them or when they seek to preclude evidence from being considered on summary judgment. *See, e.g., In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124 (9th Cir. 2002) (considering *Daubert* motion in the context of summary judgment); *Bryant v. Trexler Trucking, Inc.*, No. 4:11-CV-02254-RBH, 2013 WL 643768, at *4 (D.S.C. Feb. 21, 2013) (considering *Daubert* motion where pretrial order expressly distinguished such motions from other motions *in limine*).