UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS INC,<br><br>    Plaintiff,<br><br>    v.<br><br>ANNA GATTI, et al.,<br><br>    Defendants. | Case No. 15-cv-00798-HSG   (DMR)<br><br>**ORDER ON MOTION FOR SANCTIONS RE DEPOSITIONS OF PLAINTIFF'S WITNESSES**<br><br>Re: Dkt. No. 858 |

The court has received Defendant Almawave USA, Inc.'s ("Almawave") motion for sanctions regarding the depositions of Plaintiff Loop AI Labs Inc.'s ("Loop") witnesses. [Docket No. 858 (Mot.).] Almawave asks the court to impose evidentiary sanctions for Plaintiff's alleged misconduct during the depositions of its witnesses Gianmauro Calafiore, Bart Peintner, and Patrick Ehlen. Specifically, Almawave asks the court to sanction Plaintiff by precluding it from offering or relying on any testimony by the three witnesses at trial or in connection with any motions. Plaintiff opposes the motion. [Docket No. 866 (Opp'n).] This dispute is appropriate for determination without oral argument. Civ. L.R. 7-1(b).

**I.  DISCUSSION**

    **A.  Background**

Almawave first deposed Plaintiff's CEO Calafiore on January 25, 2016. Following the deposition, Almawave filed a discovery letter brief seeking leave to file a motion to compel further deposition of Calafiore and for sanctions based on the conduct of Calafiore and Plaintiff's counsel at the deposition. [Docket No. 418.] After consideration of Almawave's letter and Plaintiff's opposition thereto, (Docket No. 426), on February 29, 2016, the court ordered Calafiore to appear for an additional five hours of deposition in his individual capacity, finding the Calafiore deposition transcript "replete with examples of inappropriate behavior by Plaintiff's counsel,

Valeria Calafiore Healy." [Docket No. 436 (Feb. 29, 2016 order).] The court noted that Calafiore "was often argumentative and uncooperative in providing testimony," and that Healy and Calafiore's "obstructionist conduct repeatedly stymied Almawave USA's attempts to obtain discovery through this key deposition." *Id*. The court concluded by making the following order:

> In the future, Ms. Healy, and indeed, all attorneys defending depositions in this litigation (1) shall state the basis for an objection, and no more (e.g., "relevance," "compound," "asked and answered"); (2) shall not engage in speaking objections or otherwise attempt to coach deponents; and (3) shall not direct a deponent to refuse to answer a question unless the question seeks privileged information.

*Id*. at 2. The court also noted that "[g]iven Ms. Healy's repeated inappropriate conduct in her defense of the Calafiore deposition, any further breach of these deposition conduct rules shall result in the imposition of sanctions against her, and shall expose her to the possibility of a referral to the Court's Standing Committee on Professional Conduct. Civil L.R. 11-6." *Id*.

On April 19, 2016, following the depositions of Peintner, Ehlen and Calafiore, (both individually and as Plaintiff's 30(b)(6) designee), Almawave filed an administrative motion seeking leave to file a motion for sanctions based on the witnesses' alleged failure to answer questions on grounds other than privilege as well as Healy's conduct at the depositions. [Docket No. 610.] In its administrative motion, Almawave stated that it had proposed a compromise to Plaintiff: for questions for which counsel instructed the witnesses not to answer, Plaintiff could provide written responses instead of deposition testimony. *Id*. According to Almawave, Plaintiff refused the compromise. Almawave also asserted that Plaintiff had refused to participate in the court's joint letter procedure for resolution of discovery disputes and had failed to participate in the parties' court-ordered meet and confer calls, and had otherwise refused to meet and confer regarding the depositions. *Id*.; *see also* Ex. A (emails to Plaintiff dated Apr. 4, 2016, Apr. 7, 2016, Apr. 8, 2016, Apr. 11, 2016, Apr. 15, 2016).

In Plaintiff's opposition to Almawave's administrative motion, Plaintiff did not dispute that it had rejected Almawave's proposed compromise, failed to participate in mandatory meet and confer calls, and refused to respond to Almawave's correspondence about the depositions. Instead, Plaintiff argued that Almawave's counsel "has no interest in meeting and conferring" with

1  Plaintiff and has "abused the meet and confer process by turning it into a tool through which they
2  seek[] to force opposing counsel to expend unnecessary time and resources, over frivolous and
3  false disputes that [Almawave's] counsel constantly manufactures." [Docket No. 622.]

4  The court subsequently ordered Almawave to file and lodge the full transcripts of the four
5  depositions at issue, (Docket No. 624), and on July 21, 2016, the court granted Almawave leave to
6  file a motion for sanctions regarding Plaintiff's refusal to answer questions at its witnesses'
7  depositions. [Docket No. 849.] The present motion followed.

### B. Analysis

#### 1. Plaintiff's Procedural Objections

As a preliminary matter, Plaintiff objects to Almawave's motion for sanctions on the ground that Almawave "has never met and conferred with Loop AI about the subject of the motion it has presented." Opp'n at 2. As described above, in its administrative motion for leave to file the present motion, Almawave specifically enumerated its unsuccessful efforts to meet and confer with Plaintiff regarding the depositions of its witnesses. **Plaintiff did not dispute these representations**. Plaintiff's current objection about the parties' failure to meet and confer is therefore unavailing. Plaintiff cannot refuse to engage in mandatory substantive, good faith meet and confer sessions and ignore efforts to participate in the court's joint letter procedure for resolution of discovery disputes, and then object to a motion challenging its discovery conduct based on a purported failure to meet and confer.[1] [*See* Docket No. 271.]

Plaintiff also objects that Almawave seeks identical sanctions for the same discovery conduct in a separate motion pending before the Honorable Haywood S. Gilliam. [*See* Docket No. 738 (Defendants Almaviva S.p.A., Almawave S.r.l., and Almawave USA, Inc.'s motion to exclude or strike Plaintiff's evidence), filed June 16, 2016.] It argues that such conduct is "inappropriate" and an improper abuse of process. Opp'n at 2. As noted, this court granted Almawave leave to file the present motion on July 21, 2016, after Almawave filed its motion to

---

[1] Plaintiff also objects that Almawave's motion does not comply with the requirements of Local Rules 37-4 (motions for sanctions under Federal Rule of Civil Procedure 37) and 7-8 (motions for sanctions). This objection is without merit, since Almawave's motion was filed in accordance with the court's instructions in the July 21, 2016 order.

strike. Under these circumstances, Almawave's request for similar relief in two motions is not improper, and as described below, the court defers to Judge Gilliam the question of the appropriate sanctions for Plaintiff's deposition misconduct. Accordingly, there is no risk of inconsistent decisions on this matter.

Finally, Plaintiff argues that Almawave's motion challenges objections and responses to a number of questions posed by counsel for other defendants in this action. Plaintiff argues that Almawave lacks standing to seek sanctions on behalf of other parties. None of the other parties who questioned Plaintiff's witnesses joined Almawave's motion for sanctions.[2] In support of its position, Plaintiff cites *Payne v. Exxon Corp.*, 121 F. 3d 503, 510 (9th Cir. 1997), in which the Ninth Circuit held that "[o]nly 'the discovering party,' . . . may bring a motion to compel" a discovery response under Rule 37(a), and that a party lacks standing to move to compel answers to a different party's discovery requests. *Payne* arguably does not apply here, since Almawave has not moved to compel pursuant to Rule 37 but instead seeks sanctions pursuant to the court's inherent authority. However, the court need not decide whether Almawave has standing to challenge responses and objections to questions posed by other defendants in this action. As discussed below, even confining its analysis to responses to only those questions posed by Almawave, the court concludes that Plaintiff's conduct is sanctionable.

### 2. Plaintiff's Deposition Conduct

The court has carefully reviewed the transcripts of the depositions of Plaintiff's witnesses. Once again, the court finds that the transcripts are "replete with examples of inappropriate behavior" by Healy with respect to questions posed by Almawave. In direct contravention of the court's February 29, 2016 order, Healy instructed witnesses to refuse to answer questions on grounds other than privilege. "Generally, evidence objected to shall be taken subject to objections. As a rule, instructions not to answer questions at a deposition are improper." *Detoy*, 196 F.R.D. at 365 (citation omitted). For example, she instructed Plaintiff's 30(b)(6) designee

---

[2] The court notes that Defendant IQSystem Inc. separately moved for leave to file a motion to compel and request for sanctions related to the depositions of Plaintiff's witnesses, (Docket No. 607). This motion remains pending.

(Calafiore) not to answer certain questions, unilaterally deciding that the questions were outside the scope of the noticed Rule 30(b)(6) topics. *See, e.g*., 30(b)(6) Dep. at 229-30, 273-74, 356. Such instructions were improper. A party noticing a deposition pursuant to Rule 30(b)(6) must describe with reasonable particularity the matters on which the examination is requested. "However, the 'reasonable particularity' requirement of Rule 30(b)(6) cannot be used to limit what is asked of the designated witness at a deposition." *UniRAM Tech., Inc. v. Monolithic Sys. Tech., Inc.*, No. C 04-1268 VRW (MEJ), 2007 WL 915225, at *2 (N.D. Cal. Mar. 23, 2007) (citing *v. City & Cty. of San Francisco*, 196 F.R.D. 362, 365 (N.D. Cal. 2000) 196 F.R.D. at 366-67). "The 30(b)(6) notice establishes the minimum about which the witness must be prepared to testify, not the maximum." *Id.* (citing *Detoy*, 196 F.R.D. at 366-67); *see also Teknowledge Corp. v. Akamai Techs., Inc.*, No. C 02-5741 SI, 2004 WL 2480707, at *1 (N.D. Cal. Aug. 10, 2004) (declining to limit scope of a 30(b)(6) deposition to matters designated in deposition notice, noting "the liberal discovery requirements of the Federal Rules are still applicable.").

Healy gave other improper instructions not to answer questions. For example, when Almawave asked Ehlen, "Can you tell us how your particular algorithms work?", Healy instructed him not to answer on the basis of relevance, again unilaterally taking the topic off the table. Opposing counsel responded by asking Healy to stipulate that the subject matter would not be raised by Plaintiff at trial (i.e., that the matter was truly irrelevant). Healy refused, stating that such a request was "absolutely absurd." Ehlen Dep. at 94-96. She also instructed Peintner not to answer a question about Plaintiff's shareholders on the same ground, asserting that the court had "exclude[ed] the topic of stock ownership in Loop from the allowable topics." Peintner Dep. at 40. However, although the court had previously held that Plaintiff did not need to produce a 30(b)(6) witness on the subject of "[o]wnership of Loop stock," (*see* Docket No. 466 at 3), Peintner was not Plaintiff's 30(b)(6) designee, and the court had not made a broad ruling that the subject was entirely out of bounds.

Healy also made numerous improper speaking objections, in direct contravention of this court's order that counsel confine objections to a statement of their basis, (e.g., "compound," or "asked and answered"), and not engage in speaking objections or otherwise attempt to coach the

witness.  Healy's coaching was so effective that the witnesses occasionally repeated her objections, sometimes verbatim, to the examining attorney.  *See, e.g*., Peintner Dep. at 28:14-18 ("Q. Does he do that in pitches?  Ms. Calafiore Healy: Objection; vague and ambiguous.  Do what in pitches?  The Witness: Can you state the question more precisely?")[3], 40:21-25, 43:19-23 ("Q: And is it true that, in June 2015, Loop first launched to the public?  Ms. Calafiore Healy: Objection.  Vague and ambiguous.  What do you mean launched?  A: What do you mean launched?"), 69:23-70-5 ("Q: Do you think my clients did anything to interfere with the potential investments of WI Harper?  Ms. Calafiore Healy: Objection.  Without revealing attorney work product and attorney-client privilege, are you asking for his opinion?  A: Are you asking for my opinion?"); 188:12-16 ("Q: Did you ever think about having Loop purchased by another company?  Ms. Calafiore Healy: Objection, vague and ambiguous as to time period.  A: During which time period?"); 205:16-21; Ehlen Dep. at 63:7-12, 81:3-17 ("Q. Not affiliated with Loop?  A. Yeah. Q. Are --  Ms. Calafiore Healy: And I caution the witness and -- I'm objecting and caution the witness as to this question because I think he's confusing with Manuela Micoli."), 90:17-21 ("Q: Do you know how it would be done, tracking  -- Ms. Calafiore Healy: Objection.  Call – calls for speculation.  The witness just testified it not – it's not his responsibility.  A: Yeah, it's not really my area."); 91:12-19, 185:21-186:7, 223:24-224:5, 254:18-23, 267:8-12 ("Q. Which are what?  Ms. Calafiore Healy: Cited in the declaration.  A: Yeah, it was cited in the declaration."); Calafiore Dep. at 439:9-16; 449:6-20, 495:18-496:1, 626:11-19, 644:20-645:6 ("Q: Okay.  As of today, you don't know?  Ms. Calafiore Healy: Objection.  Objection.  Calls for a legal conclusion.  As – this is not a question that – the witness is not here to testify in his capacity as the CEO of Loop AI for the 30(b)(6) deposition, which is tomorrow.  So he's asking about – you're asking here questions about his personal knowledge, and the witness – and the question calls for a legal conclusion.  A: So the – the answer is that your questions calls for a legal conclusion and we will find out."); 30(b)(6) Dep. at 174:19-175:6, 200:13-201:8, 203:23-204:24, 211:2-18, 216:9-23.  On other occasions, Healy actually attempted to answer the question for the

---

[3] The court lists examples by deponent in page order, providing illustrative examples as they occur.

witness or characterized a witness's testimony or the contents of a document in her objection. Calafiore Dep. at 502:15-503:3 ("Q. Did you say in late 2013 that happened? Rather, you did -- A. I -- I -- Q. -- say 2013. Was that correct? Ms. Calafiore Healy: No. No. The Witness: So this is what I understood, but I'm not sure about the dates. I understood that this happened in a -- in a period from late 20- -- I don't know exactly the date."), 577:14-23 ("Q: Mr. Ghanem told you on the phone call that what he was looking for was an institutional investor, not just a friends and family investment? Ms. Calafiore Healy: Objection. Misstates the record. I believe Mr. Ghanem referred to angel investors." Mr. Wallerstein: Thank you, Counsel. That's very helpful. Ms. Calafiore Healy: You're welcome.)[4], 581:13-582:7, 636:1-23.

      Plaintiff's witnesses also refused to respond to questions seeking the factual bases of Plaintiff's claims based on improper assertions of attorney-client privilege. This court has repeatedly ordered Plaintiff to respond to discovery seeking information about the factual allegations in Plaintiff's complaints. *See* Docket Nos. 436 at 1 ("Mr. Calafiore must answer questions about the factual allegations in Loop AI's complaints to the extent that he has responsive information."); 466 at 3 ("A company cannot shield from discovery facts learned by an attorney in the course of an investigation because the attorney-client privilege protects communications, not facts." (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981)); 640 at 4 (ordering Plaintiff to respond to interrogatories seeking the factual bases for Plaintiff's allegations, noting "[n]one seek information protected by the attorney work product doctrine."). Notwithstanding these instructions, Healy objected to such questions on the grounds that they called for "attorney-client privileged information" and "attorney work product information" and refused to allow the witnesses to disclose the factual bases of Plaintiff's claims. *See, e.g.*, Peintner Dep. at 92 ("Did you discuss [the first amended complaint or the second amended complaint] with Mr. Calafiore before they were filed?"), 93. Healy also inexplicably refused to allow the witnesses to respond to questions about their own discussions with other Loop employees or third parties on attorney-client privilege and attorney work product grounds. *See, e.g.*, Peintner Dep. at 10, 72, 92, 212-13,

---

[4] In the context of the deposition, it is clear that counsel are speaking sarcastically rather than literally.

7

226, 227; 30(b)(6) Dep. at 161-62, 192-93, 194-95, 197, 198. Underlying facts – regardless of their source – are discoverable, because the attorney-client privilege "only protects disclosure of communications; *it does not protect disclosure of the underlying facts* by those who communicated with the attorney." *Upjohn*, 449 U.S. at 395 (emphasis added).

Healy also refused to allow Plaintiff's witnesses to answer questions about their document collection and production in this litigation on the basis of attorney-client privilege. For example, following a question about whether he had retrieved Google chat communications with Defendant Anna Gatti for purposes of this litigation, Healy objected that the question called for attorney-client privileged information. Peintner stated "I won't answer about something my attorney has required me to recollect." Peintner Dep. at 183. Counsel again asked the question, to which Healy reiterated her objection and instructed the witness not to answer, stating, "[e]verything he's done in this litigation is at the direction of counsel." This objection, along with counsel's other objections based on attorney-client privilege as to questions about the witnesses' own document collection efforts, was improper. It appears to rest on a misunderstanding of what attorney-client privilege protects, since the questions did not seek the content of attorney-client privileged communications. *See, e.g.*, Peintner Dep. at 185, 186, 187 ("Have you ever seen the document requests that my client served on Loop?"); Ehlen Dep. at 33 ("Have you looked for a copy of documents related to your employment with Loop?"), 34, 102; Calafiore Dep. at 444-46 ("Did you look for documents to give to the company attorney? . . . Did you search your e-mails for documents in this litigation? . . . Did you search the servers for any documents to produce in this litigation?"), 447-48, 527, 534; 30(b)(6) Dep. at 405-06 ("Did you collect the document and give it to your counsel to produce?").

In sum, the court concludes, once again, that Healy's "obstructionist conduct repeatedly stymied Almawave USA's attempts to obtain discovery" through its depositions of Plaintiff's witnesses. *See* Feb. 29, 2016 order at 1. Healy's conduct, including instructions not to answer questions and speaking objections and coaching, was both improper and in direct violation of the court's February 29, 2016 order regarding the conduct of depositions in this litigation. Accordingly, it is sanctionable. As noted, Almawave asks the court to sanction Plaintiff by

precluding it from offering or relying on any testimony by the three witnesses at trial or in connection with any motions. Since Almawave's motion to strike Plaintiff's evidence remains pending before Judge Gilliam, the court defers to Judge Gilliam the question of the appropriate sanctions for Plaintiff's deposition misconduct.

## II.   CONCLUSION

For the foregoing reasons, the court finds that Plaintiff's counsel's conduct at the depositions of Plaintiff's witnesses was improper and violated the court's February 29, 2016 order. The issue of sanctions for this misconduct is deferred to Judge Gilliam.

**IT IS SO ORDERED.**

Dated: August 25, 2016



Donna M. Ryu
United States Magistrate Judge