VALERIA CALAFIORE HEALY (*pro hac vice*)
HEALY LLC
154 Grand Street
New York, New York  10013
Telephone:     (212) 810-0377
Facsimile:     (212) 810-7036

DANIEL J. WEINBERG (SBN 227159)
FREITAS ANGELL & WEINBERG LLP
350 Marine Parkway, Suite 200
Redwood Shores, California  94065
Telephone:     (650) 593-6300
Facsimile:     (650) 593-6301

Attorneys for Plaintiff
LOOP AI LABS INC.

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS INC., <br><br> Plaintiff, <br><br> v. <br><br> ANNA GATTI, et al, <br><br> Defendants. | CASE NO.: 3:15-cv-00798-HSG-(DMR) <br><br> **PLAINTIFF LOOP AI LABS INC.'S REPLY IN FURTHER SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE TESTIMONY AND SUBMISSIONS OF KENDYL A. ROMAN FROM CONSIDERATION AT SUMMARY JUDGMENT AND TRIAL FILED AT DKT. 875** <br><br> [Opposition at Dkt. 882] <br><br><br> Action Filed:  February 20, 2015 <br> Trial Date: <br><br> Hon. Haywood S. Gilliam, Jr. |

Plaintiff Loop AI Labs Inc. respectfully submits this Reply in further support of its *Daubert* motion filed at Dkt. 875 ("Motion") seeking to preclude Mr. Kendyl Roman from offering testimony or declarations in any aspect of this case.  Because the Almaviva Defendants' Opposition fails to establish that Mr. Roman meets the threshold requirements of Rule 702, as explained by *Daubert* and its progeny, Loop AI respectfully requests that its Motion be granted.

**INTRODUCTION[1]**

In its Motion, Loop AI established that Mr. Roman fails to meet three key requirements for the admissibility of expert testimony under Rule 702: (1) qualifications, (2) fit,[2] and (3) reliability.[3]  *See* Fed. R. Evid. 702.  To overcome Loop AI's challenge, the Almaviva Defendants were required to show by a "preponderance of proof" how Mr. Roman met each of these requirements as to each of the many opinions he seeks to proffer.  Mot. at 4; *Daubert*, 509 U.S. at 592, n. 10.  The Almaviva Defendants have failed to meet their burden.

The Almaviva Defendants' Opposition repeatedly conflates and misrepresents the applicable legal standards, ignores virtually all of Loop AI's arguments in the Motion, and mischaracterizes the few arguments that it purports to address.  Some of Almaviva's mischaracterizations are so egregious that they could not have been made in good faith.  For instance, despite Loop AI's detailed objections to Mr. Roman's qualifications and to each of the categories of his proposed testimony, Almaviva tells the Court that "Loop [AI] does not deny Mr. Roman's qualifications to offer this testimony, nor dispute its relevance."  *See* Dkt. 882 at 3:14-15.  *See id.* at 1:25-26.  Almaviva also argues everywhere that Loop AI challenges the "correctness" of Mr. Roman's testimony, even though such challenge appears nowhere in Loop

---

[1] All defined terms are set forth in the Glossary at Dkt. 875 at iii-iv.
[2] "Fit" is used herein as a short reference to describe the requirements of Rule 702(a) – namely that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."  *See, e.g., Daubert v. Merrill Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 591-92 (1993); *Feduniak v. Old Republic Nat'l Title Co.* No. 13-CV-02060-BLF, 2015 U.S. Dist. LEXIS 57694, at *4-5 (N.D. Cal. May 1, 2015).
[3] *See* Motion at Section II (addressing Mr. Roman's lack of qualifications for the opinions he seeks to offer in this case) (Dkt. 875 at 6); Section III (addressing the lack of "fit" of Mr. Roman's proposed opinions) (Dkt. 875 at 17); Section IV (addressing the lack of "reliability" of Mr. Roman's proposed opinions) (Dkt. 875 at 21).

AI's Motion.[4]  That Mr. Roman's opinions are also incorrect is presumably a natural consequence of Mr. Roman's lack of qualifications, fit and reliability – the challenges that Loop AI has presented.[5]  Loop AI has proffered seven fact witnesses – Dr. Ehlen, Dr. Ivanov, Mr. Marchiori, Mr. Pieraccini, Mr. Gianoli, Mr. Casper, Mr. Carmack – to show that Mr. Roman lacks the necessary qualifications, has not used any "expert, scientific, or other technical knowledge," and that his proposed testimony in this case is unreliable.[6]

Almaviva's main (if not only) argument in support of Mr. Roman is its promise that he will be "helpful to the jury."  Opp. at 1-6.  But Almaviva's belief that Mr. Roman will be helpful is entirely irrelevant to the tripartite Rule 702 inquiry that is before the Court.  Rule 702 does not contemplate the use of hired speakers to present allegedly "helpful" testimony to the jury.  Rule 702 contemplates that only specifically qualified individuals be permitted to express opinions to the jury that are tied to the expert's specific qualifications for the case, that fit the case, and which are reliably prepared by the expert.  This is not Mr. Roman's case here.  Perhaps Mr. Roman is a "qualified [source code] analyst,"[7] but he lacks any of the qualifications required to offer any of the opinions he proposes to offer, and should not be allowed to testify in this case for any purpose.

## ARGUMENT

[4] Indeed, neither the word "correct," nor any permutations of that word, appears anywhere in Loop AI's Motion.
[5] Each of Loop AI's declarant was ***identified by the Almaviva Defendants,*** or by Mr. Roman himself in his Report and Declaration.  *See* SJX-2525 at ¶ 1 (Mr. Marchiori), SJX-2538:1-2 (Almaviva Defendants' Rule 26 Disclosures identifying Mr. Marchiori as knowledgeable on the "Plaintiff's claims and Almawave Defendants' defenses"); SJX-2554 at ¶1 (Mr. Pieraccini), SJX-2571:34 (identifying Mr. Pieraccini as knowledgeable about the "Almawave Defendants' defenses"); SJX-2975 (Dr. Ehlen, Loop AI's Chief Scientist) and Roman Report *at passim* (same); SJX-2135 (identifying Dr. Ivanov), SJX-2043-44, 47-49, 67-68 (same); SJX-2133 at ¶ 211 (identifying the product invented by Mr. Lorenzo Gianoli, Loop AI's own fact witness), SJX-2135, 37, 40, 58-59 (same) and Roman Report *at passim* (purporting to describe acquisition and development of technology by Almawave); SJX-2092 at ¶ 57 (identifying Mr. Carmack and Mr. Casper), and Roman Deposition *at passim* (same).
[6] *See, e.g., See, e.g., Dep't of Toxic Substances Control v. Technichem, Inc.*, No. 12-cv-05845-VC, 2016 U.S. Dist. LEXIS 33379, at *3 (N.D. Cal. Mar. 15, 2016) ("Key factual errors in Dr. Everett's declarations further undermine their reliability.").
[7] *Feduniak*, 2015 U.S. Dist. LEXIS 57694, at *15.

2

## I. The Opposition Fails to Establish That Mr. Roman is Qualified to Offer Any of His Proposed Testimony.

The Almaviva Defendants have failed to meet their burden to prove by a preponderance of the evidence that Mr. Roman is qualified to testify as to any of the opinions he proposes to offer. *Daubert*, 509 U.S. at 592, n. 10; *In re Ford Tailgate Litig.*, No. 11-cv-02953-RS, 2015 U.S. Dist. LEXIS 159534, at *23 (N.D. Cal. Nov. 25, 2015) ("Even the most qualified expert cannot offer any opinion on any subject; the expert's opinion must be grounded in his or her personal 'knowledge, skill, experience, training, or education.'").

In its Motion, Loop AI identified each category and subcategory of opinions that Mr. Roman claimed he would be offering in this case. Mot. at 2-4. Loop AI established that Mr. Roman is not qualified to offer any of those opinions. Mot. at 2-4, 6-17. Loop AI also established that Mr. Roman is not permitted to testify as a purported "fact" witness, because (a) Mr. Roman was never identified as a fact witness by any of the Almaviva Defendants, and (b) Mr. Roman lacks any personal knowledge regarding the facts at issue in this case. Mot. at 15-17, 20-21.

The Almaviva Defendants do not address or rebut Loop AI's arguments. They present no evidence to support why Mr. Roman is qualified to offer any of the opinions identified in the Roman Report (or Declaration). The Almaviva Defendants' entire argument regarding Mr. Roman's qualifications is captured by the following statement: "Mr. Roman is more than qualified to offer expert testimony on Almawave's development of computer software, the patent process, and how trade secrets are kept and maintained in the normal course of business in a software company." Opp. at 6:6-9. This is plainly insufficient to satisfy Rule 702's threshold inquiry regarding the putative expert's qualifications.[8]

---

[8] The Almaviva Defendants make only a weak, passing attempt, to justify Mr. Roman's contention of being a self-taught artificial intelligence expert. Opp. at 12. And Almaviva half-heartedly tries to explain away Mr. Roman's efforts to bolster his alleged artificial intelligence expertise by misrepresenting that he consulted with artificial intelligence experts for this case. Opp. at n. 7. Contrary to the Almaviva Defendants' argument, Mr. Roman identified Mr. Carmack, Mr. Casper and Mr. Koval in the section of his Report titled - "Materials Reviewed" for this case. SJX-2091-92. Mr. Roman testified under oath that these individuals "were specific people who were **key** to [his] understanding of the technology at issue in this case." SJX-2032 at

Moreover, Mr. Roman was never even identified as a purported expert in any of the three areas described above. Mr. Roman confirmed at his deposition he was being "proffered" as an expert "based on the statement in [his] report in paragraph 1 on page 5," which does not include the foregoing areas. Roman Dep. (SJX-2021) at 84:24-25. The Almaviva Defendants point to nothing that qualifies Mr. Roman to testify as an expert in any of these areas. The topic of "Almawave's development of computer software" would require, at a minimum, qualifications and knowledge specific to Almawave's alleged development of software. The Almaviva Defendants fail to point to any evidence regarding Mr. Roman's qualifications in this regard. Mr. Roman did not work at Almawave, and was retained for this matter at the end of March 2016. *See* SJX-2010 at 41. Mr. Roman spoke to the Almaviva Defendants only twice in short telephone conversations - once with Mr. Romagnoli and once with Ms. Sandei. SJX-2039 at 156-157, SJX-2042 at 166-67; SJX-2050 at 199 (stating that he asked Mr. Romagnoli during the call about Almawave's software development). Mr. Roman cannot be offered as an expert on Almawave's software development based on two short phone calls he had after he was retained for this case. This topic is clearly a fact inquiry and if testimony is permitted on it, it must come from fact witnesses with personal knowledge. Mr. Roman's Report and deposition testimony also demonstrate that he lacks the qualifications to testify about Almawave's software development in any capacity. For instance, Mr. Roman identified in his Report (and during his deposition), Dr. Alexei Ivanov as one the researchers that the Almaviva Defendants were allegedly working with. Mr. Roman identified the work of Dr. Ivanov as the basis for the statements in his Report that "before 2014 Almawave used unsupervised learning," that *See, e.g.,* Roman Report, SJX-2135, at ¶¶ 217-218 (Dr. Ivanov's work), 219; SJX-2152, at ¶ 284 (last

129:14-24 (emphasis added). Unfortunately, Mr. Roman's claimed consultations simply never happened. *See* SJX-2591, SJX-2517-18, SJX-2590-91. Mr. Roman's misrepresentations to attempt to establish qualifications he does not have do not go to the weight of his testimony, as Almaviva claims. Opp. at n. 3 (citing *Primiano*, 598 F.3d at 564). They go to its admissibility. Nothing in *Primiano* supports Almaviva's argument. The expert at issue in *Primiano* did not lie about his qualifications and there was no issue at all about qualifications. The *Primiano* expert was a recognized expert on the specific topic he sought to offer opinions on – elbow prosthetics – having had "years of experience implanting elbow prosthetics." *Primiano*, 598 F.3d at 566.

3:15-CV-00798-HSG

PL.'S REPLY IN SUPPORT
OF *DAUBERT* MOTION TO EXCLUDE KENDYL A. ROMAN

2 lines); SJX-2156, at ¶ 294. But as the evidence establishes, Mr. Roman's testimony regarding Dr. Ivanov and his work are untrue. *See* SJX-2519-2524 (Dr. Ivanov's Declaration).[9] Similarly, Mr. Gianoli, a fact witness with personal knowledge regarding Almawave, testified that Mr. Roman's testimony regarding the alleged "development of software" at Almawave since 2008 is untrue. *See* SJX-2586 at ¶ 23 to SJX-2587. These issues do not go to the weight of evidence, but rather establish that Mr. Roman lacks the knowledge necessary to be qualified as an expert on the topics as to which the Almaviva Defendants claim Mr. Roman seeks to offer testimony. The fact that the Almaviva Defendants need to hire a purported expert to testify about their own alleged product development also speaks volumes about their contention that they are "one of Italy's top information and communication technology providers,"[10] and that they developed their own technology.

The Almaviva Defendants also offer no support for their sudden contention that Mr. Roman' is an expert on the "patent process," and on "how trade secrets are kept and maintained in the normal course of business in a software company."[11] As discussed above, Mr. Roman was never disclosed as an expert in either of these areas and is not qualified to give opinions on these topics. The Almaviva Defendants' unsupported contention that Mr. Roman allegedly is a "named inventor on 74 patents,"[12] does not qualify Mr. Roman to be offered as an expert on the "patent process" or "what it means to be a named inventor." Opp. at 3. Nowhere in his Report

---

[9] The Almaviva Defendants' argument that the Court should disregard Dr. Ivanov and Mr. Marchiori's declarations are unfounded. The Almaviva Defendants are the ones who identified Dr. Ivanov in Mr. Roman's Report and deposition, and made him the centerpiece of the Almaviva Defendants' alleged "unsupervised" artificial learning technology development. Loop AI is well within its rights to proffer Dr. Ivanov's declaration showing that Mr. Roman testimony regarding Dr. Ivanov and his work lacks any basis and is entirely unreliable. Similarly, the Almaviva Defendants are the ones who identified Mr. Marchiori as a fact witness and even directly contacted him on **February 19, 2016**. If they wanted to depose him, they should have done so during the discovery period. That a fact witness is also an expert in his field of work does not make the fact witness a Rule 702 expert or subject to Rule 26(b) expert disclosures.
[10] Dkt. 740 at 2:6-7.
[11] The Almaviva Defendants do not spend even a single word to explain why Mr. Roman is qualified to offer opinions on this latter topic. Accordingly, Loop AI does not further address Mr. Roman's lack of qualifications on this topic in this Reply.
[12] Loop AI also notes that Mr. Roman has refused to provide ***any*** discovery as to any of these alleged patents. *See* Declaration of V.C. Healy dated August 29, 2016 ("Decl."), Exhibit 1.

3:15-CV-00798-HSG

PL.'S REPLY IN SUPPORT
OF *DAUBERT* MOTION TO EXCLUDE KENDYL A. ROMAN

does Mr. Roman disclose to be an expert in these areas, or identify what are his qualifications to give Rule 702 expert testimony in these areas. Mr. Roman nowhere claims to have qualifications or expertise on the "patent process" or the Manual of Patent Examining Procedure (MPEP) or the Code of Federal Regulations (CFR). The Almaviva Defendants' reliance on *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.,* 87 F. Supp. 3d 928 (N.D. Cal. 2015) is misplaced. Opp. at 3.[13] In *Icon-IP* the court allowed Mr. Kunin, a patent attorney, to testify on the patent process because he was qualified to serve as an expert in that field by his "more than ***thirty four years***" of service at the United States Patent and Trademark Office ("PTO"). *Icon-IP*, 87 F. Supp. 3d at 946 (emphasis added). Among other things, Mr. Kunin spent the last 10 years of his long career at the PTO as the Deputy Commissioner for Patent Examination and Policy, from where he oversaw the revisions to the patent examination process rules, which are published by the PTO in the MPEP.[14] Even with all his qualifications, the court limited Mr. Kunin's testimony to very specific items. *See id.* Mr. Roman does not have any of Mr. Kunin's qualifications, is not a patent lawyer, and has not identified any qualifications to offer opinions as to any aspect of the patent process, even if such opinions were relevant to this case.

Because the Almaviva Defendants have failed to establish that Mr. Roman is qualified to offer any of the opinions identified in his Report (and Declaration), he should not be permitted to testify in any aspect of this case and his Report and Declaration should be disregarded for all purposes.

**II.     The Almaviva Defendants Have Not Established Fit and Reliability.**

Because the Almaviva Defendants have failed to establish that Mr. Roman is qualified to offer any of the opinions he proposes to offer, Loop AI addresses Almaviva's remaining arguments only briefly.

---

[13] Similarly, *Bausch & Lomb, Inc. v. Alcon Laboratories, Inc.,* the second case cited by the Almaviva Defendants, involved a "patent law expert" who was a **lawyer**, Mr. "Roman L. Harmon, Esq." 79 F. Supp. 2d 252, 254 (W.D.N.Y. 2000).
[14] *See, e.g.,* Mr. Kunin's biography, http://www.oblon.com/stephen-g-kunin/ (last accessed August 29, 2016).

3:15-CV-00798-HSG                                                              PL.'S REPLY IN SUPPORT
                                                       OF *DAUBERT* MOTION TO EXCLUDE KENDYL A. ROMAN

The Almaviva Defendants cite Rule 702(a) and promise throughout their brief that Mr. Roman will be helpful to the jury. *See* Opp. at 1-6. But Rule 702(a) requires that the proposed "***expert's scientific, technical, or other specialized knowledge*** will help the trier of fact to understand the evidence or to determine a fact in issue...." Fed. R. Evid. 702(a) (emphasis added). Whether testimony is helpful according to the proffering party is irrelevant if the proposed testimony does not come from the "expert's scientific, technical, or other specialized knowledge." Because Mr. Roman does not qualify as an expert to offer the proposed opinions identified in his Report (and Declaration), his proposed testimony is not based on any "expert's scientific, personal, or other specialized knowledge" and cannot meet the Rule 702(a) requirements. The Almaviva Defendants' unsupported belief that Mr. Roman's testimony will be helpful, therefore, is entirely irrelevant. Because the Almaviva Defendants offer no argument, let alone support, to explain how Mr. Roman meets all of the requirements of Rule 702(a), they have not satisfied their burden here.

The Almaviva Defendants offer a series of string cites in support of their argument that Mr. Roman's proposed testimony is "reliable," but they fail to explain how any of those authorities actually supports such argument. *See* Opp. at 8. Those cases provide no support to Mr. Roman. For instance, *Lovett v. Omni Hotels Mgmt. Corp,* simply addresses a four-part test used to determine whether a technical expert's testimony is reliable and finds that the proposed opinion by three proffered experts in that case met the requirements. *Lovett v. Omni Hotels Mgmt. Corp.*, No. 14-cv-02844-RS, 2016 U.S. Dist. LEXIS 25480, at *10-11 (N.D. Cal. Feb. 29, 2016). Almaviva does even identify the four-part test discussed in *Lovett*, let alone explain how Mr. Roman's proposed opinions (each of which is on a different topic) meet that test. *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, concerned solely a challenge to a damages expert's "assumptions and comparisons." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 968 (9th Cir. 2013). There was no challenge in *Alaska Rent-A-Car* to the reliability of the expert's methodology. *Id.* at 970. Almaviva's citation to *Pyramid Techs., Inc. v. Hartfors Cas. Ins. Co.* is perhaps more on point. *Pyramid Techs., Inc. v. Hartfors Cas. Ins. Co.* 752 F.3d 807, 817 (9th Cir. 2014). There, the Ninth Circuit affirmed the exclusion of an expert who was not

7

qualified under Rule 702 and therefore was also unreliable. *See id.* ("Mortenson' testimony is not reliable because he did not have the knowledge or experience required under Rule 702 to permit him to give expert testimony in this matter."). The other two technical experts that the court allowed to testify were both qualified on the specific and narrow topics on which they sought to opine, and had proffered extensive explanations regarding the methodology they each used to reach their technical opinions. *Id.* The remaining cases cited by the Almaviva Defendants also have no bearing on Mr. Roman's reliability to offer opinions in this case.[15]

### III.    Almaviva's Other Arguments Are Unsupported or Irrelevant.

Almaviva asserts that the Italian Defendants "timely responded to [Loop AI]'s discovery and asserted legitimate grounds for the objections they asserted." Opp. at 14. This is flatly untrue. The Italian Defendants refused to respond to *any* merits discovery requests and the discovery responses of AW-USA ignored the most critical requests served by Loop AI. *See* Dkt. 731. The fact that Judge Ryu has prohibited Loop AI from filing discovery motions to compel the Almaviva Defendants to comply with their discovery obligations does not justify the Almaviva Defendants' abuses of the discovery rules and the Court's case management order. Rule 37(c) of the Federal Rules of Civil Procedure is self-executing. It is very unlikely that any court reviewing the Almaviva Defendants' discovery record would ever justify that two key parties in this case have provided ***no merits discovery of any type***, have rested on frivolous "constitutionality" objections, and that that all three of the Almaviva Defendants have refused to proffer even one merits witness to testify in deposition.

---

[15] For instance, Almaviva cites *Humphreys v. Regents of the Univ. of Cal.*, No. C 04-03808 SI, 2006 U.S. Dist. LEXIS 47822, at \*6 (N.D. Cal. July 6, 2006), for the proposition that "[w]hen expert testimony is offered for 'specialized knowledge,' courts have long recognized that reliability may come from experience in the field." But on this point *Humphreys* was addressing a human resource experts, not a technical expert. As the cases on which *Humphreys* rely (and which Almaviva defendants also repeat in their brief) make clear, this standard is not applicable for "scientific or technical testimony." *Hangarter v. Provident Life and Acc. Inc. Co.*, 373 F.3d 998, 1015-16(9th Cir.2004) (reviewing the admissibility of an expert in the process of "claim adjustment" in an insurance bad faith claim, and finding that "unlike scientific or technical testimony, the reliability of [that insurance expert's] testimony was not contingent upon a particular methodology or technical framework.").

3:15-CV-00798-HSG

PL.'S REPLY IN SUPPORT
OF *DAUBERT* MOTION TO EXCLUDE KENDYL A. ROMAN

Almaviva's accusation that Loop AI improperly re-noticed its *Daubert* Motion also lacks any merit. Loop AI's counsel received a call from the Court's Deputy Clerk directing that the *Daubert* Motion be re-noticed for August 30, and Loop AI promptly complied with that instruction. Almaviva's other arguments regarding the form of Loop AI's Motion are also unfounded. There is no rule or authority requiring that Loop AI file its *Daubert* challenge by as a 5-page *in limine* motion. The threshold issues raised by the challenge as to Mr. Roman's qualifications, fit and reliability to proffer any testimony in this case are inherently more complex than the issues addressed through short *in limine* motions, which more typically seek to limit rather than fully exclude an expert. Accordingly, a more extensive briefing of the type the parties have provided here is more appropriate and (hopefully) more useful to the Court. Loop AI is aware that this Court, like others, has in the past entertained amfully briefed *Daubert* motion that was not brought as an *in limine* motion. *See, e.g., TVIIM, LLC v. McAfee, Inc.*, No. 13-cv-04545-HSG, 2015 U.S. Dist. LEXIS 89376, at *3 (N.D. Cal. July 9, 2015). Loop AI relied in part on the Court's past practice in proceeding in this fashion.

## CONCLUSION

For the reasons set forth above and in loop AI's Motion, Loop AI respectfully requests that Mr. Roman be excluded as a witness in this case for all purposes, and that Mr. Roman's Report and Declaration be excluded from consideration in any aspect of this case.

Respectfully submitted,

August 29, 2016                                    By:   /s/ *Valeria Calafiore Healy*

Valeria Calafiore Healy, Esq. (*phv*)
HEALY LLC

Daniel J. Weinberg, Esq. (SBN 227159)
FREITAS ANGELL & WEINBERG LLP

Attorneys for Plaintiff
LOOP AI LABS, INC.