VALERIA CALAFIORE HEALY (*pro hac vice*)
HEALY LLC
154 Grand Street
New York, New York  10013
Telephone:     (212) 810-0377
Facsimile:     (212) 810-7036

DANIEL J. WEINBERG (SBN 227159)
FREITAS ANGELL & WEINBERG LLP
350 Marine Parkway, Suite 200
Redwood Shores, California  94065
Telephone:     (650) 593-6300
Facsimile:     (650) 593-6301

Attorneys for Plaintiff
LOOP AI LABS INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS INC., <br><br> Plaintiff, <br><br> v. <br><br> ANNA GATTI, et al, <br><br> Defendants. | CASE NO.: 3:15-cv-00798-HSG-(DMR) <br><br> **PLAINTIFF LOOP AI LABS INC.'S NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT AGAINST ALMAWAVE S.R.L. AND ALMAVIVA S.P.A.** <br><br> Action Filed:  February 20, 2015 <br><br> Motion Hearing Date: December 8, 2016, 2:00pm. <br><br> Hon. Haywood S. Gilliam, Jr. |

**PLEASE TAKE NOTICE THAT** on December 8, 2016 at 2:00pm, or as soon before that as the parties may be heard, Plaintiff Loop AI Labs Inc. ("Loop AI"), will move the Court, before the Honorable Haywood S. Gilliam, Jr. of the United States District Court for the Northern District of California, for an Order granting Loop AI a default as a sanction against Defendants Almawave S.r.l. and Almaviva S.p.A. ("Italian Almaviva Defendants"). Loop AI respectfully requests that the Court enter a default judgment following the determination of damages at trial. In support of this Motion, Loop AI respectfully submits the accompanying Memorandum of Points and Authorities, the declaration of V.C. Healy dated September 26, 2016, the supporting exhibits included in the Default Judgment Appendix ("DJX") attached thereto, all other papers already of record with the Court in this case, and any additional evidence the Court may receive.

As explained below, entry of a default judgment is appropriate because the Italian Almaviva Defendants deliberately refused to provide *any* merits discovery to Loop AI. The United States Supreme Court recognized long ago the inherent power of a court to strike an answer and enter a default where a corporate defendant refuses to provide discovery, because the "refusal to produce material evidence creates a presumption that its asserted defense is meritless." *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 351 (1909). This principle is alive and well in the Ninth Circuit, and supports Loop AI's request for entry of default against the Italian Almaviva Defendants for their bad faith refusal to comply with their discovery obligations in this case. *See, e.g., Hager v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233 (9th Cir. 2016) ("*Goodyear*"); *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007).

The Italian Almaviva Defendants' misconduct in failing to provide any discovery to Loop AI has been extensive. For example, they have refused to provide any documentary discovery, have failed to produce a single witness for any merits deposition noticed by Loop AI, have completely ignored documents and deposition subpoenas served on their executives in California, and have substantially interfered with jurisdictional depositions. Through their discovery misconduct, the Italian Almaviva Defendants have successfully impeded the regular

course of the discovery process, and interfered with the "rightful decision of th[is] case." *Conn. Gen. Life*, 482 F.3d at 1097. The Italian Almaviva Defendants' discovery violations "make it impossible for [this C]ourt to be confident that [Loop AI] will ever have access to the true facts." *Id.* By refusing to provide discovery, the Italian Almaviva Defendants "completely sabotaged the federal trial machinery, precluding the 'fair contest' which the Federal Rules are intended to assure." *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978). *Goodyear*, 813 F.3d 1233. Accordingly, Loop AI is entitled to entry of a default against the Italian Almaviva Defendants based on the Court's inherent power. *See Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995). In the alternative, Loop AI is entitled to the same relief under Rule 37 of the Federal Rules of Civil Procedure. *Conn. Gen. Life Ins.*, 482 F.3d 1091, 1097 (9th Cir. 2007); Fed. R. Civ. P. 37(b)-(c).[1]

Because this Motion seeks dispositive relief with respect to two defendants, and because this Motion is grounded on the Court's application of its inherent power, Loop AI respectfully request that the Motion be heard and decided by the presiding District Judge without referral to a magistrate.[2]

To the extent the Court deems appropriate, Loop AI respectfully requests the opportunity to present its evidence at an evidentiary hearing.

---

[1] If the Court grants Loop AI's Motion pursuant to its inherent power, there is no need to address Loop AI's alternative basis for this Motion under Fed. R. Civ. P. 37. *See Anheuser-Busch*, 69 F.3d at 348.

[2] Pursuant to the Federal Magistrate Act, a Magistrate lacks authority to decide dispositive motions. *See* 28 U.S.C. § 636(b)(1)(A). *See also, e.g., Flam v. Flam*, 788 F.3d 1043, 1046 (9th Cir. 2015) ("To determine whether a motion is dispositive, we have adopted a functional approach that 'look[s] to the effect of the motion, in order to determine whether it is properly characterized as dispositive or non-dispositive of a claim or defense of a party.'"). In addition, a Magistrate's powers are limited to those described in the statute. *See, e.g., N.L.R.B. v. A-Plus Roofing*, 39 F.3d 1410, 1415 (9th Cir. 1994) ("federal magistrates are creatures of statute, and so is their jurisdiction. We cannot augment it; we cannot ask them to do something Congress has not authorized them to do."). A Magistrate Judge does not have power to decide an issue under the district court's "inherent power" as an Article III Judge is permitted to do. *See, e.g., Reddick v. White*, 456 F. App'x 191, 193 (4th Cir. 2011) ("A motion for sanctions under the district court's 'inherent' power is not a pretrial matter under § 636(b)(1)(A). Magistrate judges have no inherent Article III powers – they have only those powers vested in them by Congress. Congress has not created statutory authorization for magistrate judges to exercise inherent Article III powers." (internal citations omitted)).

Respectfully submitted,

September 26, 2016                    By:   /s/ *Valeria Calafiore Healy*

Valeria Calafiore Healy, Esq. (*phv*)
HEALY LLC

Daniel J. Weinberg, Esq. (SBN 227159)
FREITAS ANGELL & WEINBERG
LLP

Attorneys for Plaintiff
LOOP AI LABS, INC.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................................... iii

GLOSSARY .....................................................................................................................................v

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................1

INTRODUCTION .............................................................................................................................1

RELEVANT FACTS .........................................................................................................................3

    A. Claims Brought Against the Italian Almaviva Defendants ....................................................3

    B. This Court's Orders Required The Italian Almaviva Defendants to Provide
       Discovery ...............................................................................................................................4

    C. The Italian Almaviva Defendants' Discovery Misconduct ....................................................5

         1.     Threats of Discovery Obstruction......................................................................5

         2.     Intentionally Delaying Loop AI's Ability to Promptly Begin
              Discovery..............................................................................................................5

         3.     Refusing to Respond to Any of <u>Hundreds of Requests</u> in Five Separate
              Sets of Rule 33 and 34 Requests.........................................................................5

         4.     Certifying Hundreds of Frivolous "Constitutionality" Objections In
              Violation of Rule 26(g)........................................................................................6

         5.     Ignoring Document and Deposition Subpoenas in Violation of Rule 45 ..........6

         6.     Ignoring Notices of Deposition And Refusing to Produce Even <u>One</u>
              Witness for A Merits Deposition In Violation of Rule 30...............................6

         7.     Improperly Interfering with Jurisdictional Depositions ...................................6

         8.     Making False Representations to the Court that The Italian Almaviva
              Defendants Complied With Their Discovery Obligations.................................6

ARGUMENT.....................................................................................................................................7

I.      Relevant Legal Standards ........................................................................................................7

    A    Source of Power to Strike Answer and Enter a Default As a Sanction for A
       Party's Total Failure to Provide Discovery ...............................................................7

    B.    Key Authorities Supporting Entry of a Default Against the Italian Almaviva
       Defendants. ..................................................................................................................9

**Page**

II.   A Default Judgment Is Necessary and Just To Remedy The Italian Almaviva Defendants' Total Failure to Provide Merits Discovery ......................................................11

    A.   There is Clear Evidence of the Italian Almaviva Defendants' Bad Faith ................11

        1.   Scheme to Divest the Court of Jurisdiction, Delay, and Obstruct Discovery ...............................................................................................11

        2.   Execution of the Scheme to Delay and Obstruct Discovery.............................13

            a.   Bad Faith Refusal To Respond to <u>Any</u> of Hundreds of Rule 33 and 34 Requests ...........................................................................13

            b.   The Italian Almaviva Defendants' Continued False Representations to the Court In Response to Loop AI's Second Motion for Sanctions ...............................................................18

            c.   Bad Faith Refusal To Respond to Document and Deposition Subpoenas ....................................................................................21

            d.   Bad Faith Refusal To Appear for Depositions Pursuant to Deposition Notices...............................................................................22

            e.   Bad Faith Interference With Jurisdictional Depositions.........................23

    B.   Imposing a Default Judgment Against the Italian Almaviva Defendants is Appropriate Under the Ninth Circuit's Five-Part Test. ...........................................23

CONCLUSION............................................................................................................................25

# TABLE OF AUTHORITIES

## CASES

**Page**

*Anderson v. Air W., Inc.*,
542 F.2d 1090 (9th Cir. 1976) ......................................................................................18

*Asea, Inc. v. S. Pac. Transp. Co.*,
669 F.2d 1242 (9th Cir. 1981) ......................................................................................21

*Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*,
69 F.3d 337 (9th Cir. 1995) ......................................................................................8, 11

*Baker v. Limber*,
647 F.2d 912 (9th Cir. 1981) ................................................................................8, 10, 14

*Chambers v. Nasco, Inc.*,
501 U.S. 32 (1991) ......................................................................................................11

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
482 F.3d 1091 (9th Cir. 2007) .................................................................................. *passim*

*Consol. Elec. Co. v. United States*,
355 F.2d 437 (9th Cir. 1966) .......................................................................................12

*Dulansky v. Iowa-Ill. Gas & Elec. Co.*,
191 F.2d 881 (8th Cir. 1951) .......................................................................................12

*Fink v. Gomez*,
239 F.3d 989 (9th Cir. 2001) ....................................................................................... 21

*Fjelstad v. Am. Honda Motor Co.*,
762 F.2d 1334 (9th Cir. 1985) .......................................................................................7

*Hager v. Goodyear Tire & Rubber Co.*,
813 F.3d 1233 (9th Cir. 2016) .................................................................................. *passim*

*Hammond Packing Co. v. Arkansas*,
212 U.S. 322 (1909) .................................................................................. *passim*

*Henry v. Sneiders*,
490 F.2d 315 (9th Cir. 1974) ................................................................................10, 14, 18

*Hester v. Vision Airlines, Inc.*,
687 F.3d 1162 (9th Cir. 2012) .................................................................................. *passim*

*Mattivi Bros. Leasing v. Ecopath Indus., LLC.*,
2010 U.S. Dist. LEXIS 134692 (D. Ariz. Dec. 9, 2010) ............................................. 25

**Page**

*Moser v. Bret Harte Union High Sch. Dist.*,
    366 F. Supp. 2d 944 (E.D. Cal. 2005) ................................................................ 11, 13, 16

*Nostalgia Network, Inc. v. Rayle*,
    56 F. App'x 344 (9th Cir. 2003) ................................................................................. 22

*O'Connell v. Fernandez-Pol*,
    542 F. App'x 546 (9th Cir. 2013) ...............................................................................14

*Pumphrey v. K.W. Thompson Tool Co.*,
    62 F.3d 1128 (9th Cir. 1995) .....................................................................................17

*Rainbow Pioneer # 44-18-04A v. Haw.-Nev. Inv. Corp.*,
    711 F.2d 902 (9th Cir. 1983) .....................................................................................14

*Reidhead v. Meyers*,
    490 F. App'x 884 (9th Cir. 2012) ........................................................................ *passim*

*Rozier v. Ford Motor Co.*,
    573 F.2d 1332 (5th Cir. 1978) ...............................................................................14, 20

*TeleVideo Sys., Inc. v. Heidenthal*,
    826 F.2d 915 (9th Cir. 1987) .................................................................................15, 20

*United States v. Perry*,
    431 F.2d 1020 (9th Cir. 1970) ...................................................................................11

*Westchester Fire Ins. Co. v. Mendez*,
    585 F.3d 1183 (9th Cir. 2009) .................................................................................. 20

### STATUTES AND RULES

**Page**

Civil Local Rule 5-1..............................................................................................................6

Fed. R. Civ. P. 1..................................................................................................................13

Fed. R. Civ. P. 26.......................................................................................................... *passim*

Fed. R. Civ. P. 30......................................................................................................... 7, 22

Fed. R. Civ. P. 33.......................................................................................................... *passim*

Fed. R. Civ. P. 34.......................................................................................................... *passim*

Fed. R. Civ. P. 37.......................................................................................................... *passim*

Fed. R. Civ. P. 45.......................................................................................................... *passim*

**GLOSSARY**

| Abbreviation | Definition |
|---|---|
| Action | Designates the civil action pending in the United States District Court for the Northern District of California, styled *Loop AI Labs Inc. v. Gatti et al*, N.D. Cal. 15-798, filed on February 20, 2015. |
| Almaviva or Almaviva Defendants | Defendants Almaviva S.p.A., Almawave S.r.l., and Almawave USA Inc. |
| AW-USA | Defendant Almawave USA Inc. |
| Default Judgment Appendix or DJX | Designates Plaintiff's Appendix of Default Judgment Exhibits ("DJX-___") attached to the Declaration of V.C. Healy dated September 26, 2016. |
| Complaint | Complaint filed by Loop AI against all Defendants in this case, as amended by the Second Amended Complaint filed at Dkt. 210. |
| Dkt. | Designates entries on the ECF docket of the District Court for the Northern District of California, N.D. Cal. Civil Action No. 3:15-cv-0798-HSG-(DMR). |
| Federal Rules | Federal Rules of Civil Procedure. |
| *Goodyear* | Refers to *Hager v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233 (9th Cir. 2016). |
| Italian Almaviva Defendants | Defendants Almaviva S.p.A. and Almawave S.r.l. |
| Loop AI | Plaintiff Loop AI Labs Inc. |
| Rule(s) | Federal Rules of Civil Procedure. |
| Rule 16 Conference | The Rule 16 Case Management Conference held before Judge Gilliam on May 26, 2015. |
| SAC | Second Amended Complaint filed by Loop AI Labs Inc. at Dkt. 210. |
| Scheduling Order(s) | Rule 16 Order regarding discovery and other pretrial matters entered by the Court on May 26, 2015 during the Rule 16 Conference, Dkt. 111 at 22:11-20; in a Minute Order at Dkt. 100; and in a formal Scheduling Order, Dkt. 105, amended on February 3, 2016 by Order entered at Dkt. 411. |
| SJX | Refers to the Summary Judgment Appendix previously filed |

| | with the Court in this case. |
|---|---|
| VCH Decl. | Declaration of V.C.Healy dated September 26, 2016 filed in support of Loop AI's Motion for Entry of a Default Against the Italian Almaviva Defendants. |

## INTRODUCTION

"Litigation is not a game. It is the time-honored method of seeking the truth, finding the truth, and doing justice. When a corporation and its counsel refuse to produce directly relevant information an opposing party is entitled to receive, they have abandoned these basic principles in favor of their own interests. The little voice in every attorney's conscience that murmurs *turn over all material information* was ignored."

*Hager v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, n. 1, 1247 (9th Cir. 2016) ("*Goodyear*") (affirming sanctions under the court's inherent power and finding that if "the misconduct [had] come to light while the case was ongoing, entry of default judgment with a trial on damages would have been the obvious solution."). *Goodyear* reaffirms the long established principle that a defendant cannot manipulate the result of a case by refusing to provide discovery, and then move for judgment (or go to trial) and claim there is no evidence supporting a plaintiff's claims, as the Italian Almaviva Defendants have sought to do in this case. The misconduct sanctioned by the court in *Goodyear* involved the failure by a corporate defendant to produce just **one set** of documents in response to discovery. *Id.* This case involves misconduct that is substantially more serious than that.

Loop AI was entitled to receive, and the Italian Almaviva Defendants were required to provide, discovery pursuant to the Federal Rules and to several Orders of this Court. But the Italian Almaviva Defendants have nonetheless refused to provide any merits discovery. Their refusal constitutes the most egregious discovery misconduct imaginable (and indeed appears to be unprecedented in extent). The discovery misconduct of the Italian Almaviva Defendants has been highly prejudicial to Loop AI, because it affects all ten claims against Defendant Almaviva S.p.A., all eleven claims against Almawave S.r.l., and many other claims asserted in Loop AI's Complaint against the other defendants. Discovery from the Italian Almaviva Defendants was of material importance to Loop AI's entire action, not just to its claims against those parties.

For more than a year, the Italian Almaviva Defendants have sought to conceal their discovery misconduct by falsely asserting to the Court that they have fully complied with their discovery obligations. The record shows those assertions were patently false. In hundreds of pages certified under Rule 26(g), the Italian Almaviva Defendants responded to every discovery request with the following statement: Almaviva S.p.A. (or Almawave S.r.l.) "objects ***to each***

*interrogatory, document request and does not provide a response on the grounds that the Court has not yet determined that it has personal jurisdiction over Almaviva S.p.A.* [Almawave S.r.l.]*; obligating Almaviva S.p.A. to participate in discovery before personal jurisdiction is determined violates Constitutional requirements of due process.*" DJX275 (emphasis added). A version of this statement was made in response to each of hundreds of requests. DJX174-488 at *passim*; DJX489-706 at *passim.* By refusing to respond to Loop AI's discovery requests, while falsely telling the Court they were complying with their discovery obligations, the Italian Almaviva Defendants acted in bad faith, willfully and with fault. Almaviva's misrepresentations regarding its discovery activities were egregious. For instance, on June 29, 2016, the Italian Almaviva Defendants submitted a declaration representing to the Court that the "Almawave Defendants have not withheld information or documents on the basis that such information was in the possession, custody, and control of the Italian Almawave Defendants and not Almawave." DJX1387 at ¶ 7:6-8. *That statement was false*. As more fully discussed below, AW-USA has **expressly limited** the few discovery responses it agreed to provide, to material in its possession, custody or control.[3] Moreover, even if AW-USA *had* complied with its discovery obligations (it did not), the Italian Almaviva Defendants were required to respond to all discovery separately propounded on each of them. By their misconduct, the Italian Almaviva Defendants have violated the Federal Rules and this Court's Orders, and have subverted the integrity of this proceeding.

The Italian Almaviva Defendants' discovery misconduct and related deception has caused material prejudice to Loop AI. It has forced Loop AI to expend an extraordinary amount

---

[3] *See, e.g.,* DJX1392 ("Almawave USA objects to each of the interrogatories and requests to the extent they seek documents and information not in Almawave USA's possession, custody, or control."); DJX1404 ("Almawave USA objects to the instructions to the extent they require the production of documents and information not in Almawave USA's possession, custody, or control."); DJX1390-1463 at *passim* (incorporating foregoing objections in response to each request); DJX1465-1490 at *passim* (same); DJX1404 ("Following a reasonable search, Almawave USA will produce all non-privileged documents responsive to this request *within its possession, custody or control.*"); DJX1390-1463, DJX1465-1490 at *passim* (same or similar objection).

of resources, time and effort to prepare this case for trial based on a fraction of the truth and based on an incomplete record.

The egregiousness of the Italian Almaviva Defendants' discovery misconduct and related deception not only justifies, but respectfully requires entry of a default against them.  Consistent with the applicable authorities, Loop AI respectfully requests entry of an Order striking the Italian Almaviva Defendants' answer, entering a default against them, and leaving the issue of damages for determination at trial before entry of a final default judgment.  *See, e.g., Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1169 (9th Cir. 2012) (affirming striking of answer, entry of default, and jury trial solely on the issue of damages after entry of default and remanding for determination of punitive damages); *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1097 (9th Cir. 2007).  (affirming entry of default before trial on damages).

## RELEVANT FACTS

### A.  Claims Brought Against the Italian Almaviva Defendants.

Loop AI commenced this Action on February 20, 2015.  DJX1.  Defendant AW-USA is a California entity formed by the Italian Almaviva Defendants on May 16, 2014.  DJX2-4.  On May 28, 2014, three executives of the Italian Almaviva Defendants[4] appointed Ms. Gatti to be the CEO of their newly formed US entity, AW-USA.  DJX10, 14.  At the time of this appointment, Ms. Gatti had not yet entered into an employment agreement with AW-USA.  *Id.*[5] In its Complaint, as amended, Loop AI brought ten claims against Almaviva S.p.A., and eleven claims against Almawave S.r.l.  *See* Dkt. 210 ("SAC").[6]  The Italian Almaviva Defendants answered the SAC on June 22, 2016.  DJX35.  Although the Answer purports to raise fifteen affirmative defenses, *see* DJX87-90, the Italian Almaviva Defendants have refused to provide

---

[4] The executives in question are Marco Tripi (Almaviva S.p.A.'s CEO), Christian DeFelice (Almaviva S.p.A.'s CFO), and Valeria Sandei (Almawave S.r.l.'s CEO).  *See* DJX91.

[5] Because the Italian Almaviva Defendants have refused to provide discovery, Loop AI received no documents showing (1) why, how, and when the Italian Almaviva Defendants' top level executives became directors of AW-USA, or (2) when they appointed Ms. Gatti to AW-USA's Board, a position reflected in the only document produced by AW-USA about its corporate formation.  DJX10, 14.  Indeed, Ms. Sandei has claimed that Ms. Gatti's employment with AW-USA began in June 2014.  Dkt. 25-1 at ¶ 10.

[6] Loop AI also brought nine (9) claims against AW-USA, and several other claims against Gatti and the IQSystem Defendants.  Dkt. 210.

any discovery as to any of the fifteen affirmative defenses asserted in their Answer. *See* DJX461-468, DJX679-685.

### B. This Court's Orders Required The Italian Almaviva Defendants to Provide Discovery.

On February 23, 2015, this Court issued its first Order directing the parties to conduct a Rule 26(f) conference and prepare a discovery plan in anticipation of the first Rule 16 case management conference. DJX92-93.[7] DJX112. Although the Court denied Loop AI's request for expedited discovery, the Court made clear it expected all defendants would be providing discovery: "discovery obviously will be needed to develop the facts." DJX132. On May 26, 2015, the Court conducted the initial Rule 16 Conference. DJX134-53. After hearing all parties' arguments in support of their respective discovery plan proposals, the Court imposed a discovery schedule on all parties. DJX148 (the Court: "we just need to have a firm schedule to keep the case moving forward"). The Court explained it was building more time into the discovery schedule that it was ordering, because it had taken into account the fact that the Italian Almaviva Defendants were based in Europe. DJX149. The Court set the close of fact discovery for all parties at January 29, 2016. *Id.* Following the Rule 16 Conference, on May 27, 2015, the Court memorialized its Rule 16 scheduling order governing discovery in two Orders. *See* Dkt. 100 (Minute Order), 105 (formal Order); DJX154. During the Rule 16 Conference, the Court unambiguously stated that fact discovery **was not** stayed as to any party. DJX142 at 15:1-7.[8]

---

[7] On March 3, 2015, Loop AI filed its first set of discovery requests to all the Defendants, in conjunction with its request for expedited discovery. Fed. R. Civ. P. 26(d)(2) early Rule 34 requests are "considered to have been served at the first Rule 26(f) conference." *See* Fed. R. Civ. P. 26(d)(2)(B). The Italian Almaviva Defendants never responded to these requests.

[8] For instance, during the Rule 16 Conference, the parties and the Court addressed the Italian Almaviva Defendants' counsel's contention that his Italian clients should not be forced to engage in discovery until the Court decided those parties' then pending motions to dismiss for lack of personal jurisdiction, because those parties were in Italy. DJX138-39. After Loop AI objected that Almaviva could not stop fact discovery without having filed a motion to stay discovery, the Court agreed and instructed the Italian Almaviva Defendants' counsel as follows: "if you want to move for a stay … I don't express any point of view on that …" DJX140 at 9:20-21. The Court also addressed the Defendants' contention that an "automatic stay" of discovery applied. DJX142 at 15:1-7. The Court very clearly instructed the Defendants that they were required to file a motion if they believed discovery was stayed. DJX-142 at 15:1-7 (The Court: "I understand that there [is] at least a representation that there's an automatic stay. And from my point of view, if a stay is sought, ***it needs to be moved for*** a just -- and, again, I don't know if this is an issue that's ripe, but it's my perspective that if any party is asserting that discovery is stayed, they need to seek -- seek the Court's concurrence with that." (emphasis added)).

Despite the foregoing Orders, the Italian Almaviva Defendants refused to provide any merits discovery.[9]  On February 2, 2016, at the Second Rule 16 Conference, the Court ordered that all fact discovery be completed by March 29, 2016.  *See* DJX155, DJX225.  The Order was directed to all parties in the case, including the Italian Almaviva Defendants.  *Id.*

**C. The Italian Almaviva Defendants' Discovery Misconduct.**

The record shows that the Italian Almaviva Defendants' discovery misconduct was deliberate and calculated:

1.    ***Threats of Discovery Obstruction -*** Threatening Loop AI with discovery obstruction unless Loop AI agreed to resolve this case "cheaply."  *See* DJX232-36, DJX-239.

2.    ***Intentionally Delaying Loop AI's Ability to Promptly Begin Discovery*** – The Italian Almaviva Defendants' counsel intentionally delayed Loop AI's ability to promptly begin discovery after the action was filed by refusing to provide a date for the Rule 26(f) conference ***for almost two months***, DJX239, 243-44, DJX-247-57, DJX263, DJX265-68, including by falsely claiming that Mr. Wallerstein only represented AW-USA.  *See* DJX236, DJX272-273.[10]

3.    ***Refusing to Respond to Any of <u>Hundreds of Requests</u> in Five Separate Sets of Rule 33 and 34 Requests -*** The Italian Almaviva Defendants refused to respond to five separate sets of written discovery requests  totaling 17 interrogatories and 260 document requests for a combined total of 554 discovery requests, by interposing in response to each request various iterations of a frivolous constitutionality objection and misrepresentation of the Court's order. DJX275 at ¶ 1 [for Almawave S.r.l. DJX490 at ¶ 1] (emphasis added); DJX274-488 at *passim* (Objections by Almaviva S.p.A. to each request in five separate sets of discovery); DJX489-706 at *passim* (Objections by Almawave S.r.l. to each request in five separate sets of discovery).

4.    ***Certifying Hundreds of Frivolous "Constitutionality" Objections In Violation of Rule 26(g)*** – The Italian Almaviva Defendants submitted a frivolous certification of discovery

---

[9] As a result, on November 23, 2015, Loop AI moved for an extension of the Scheduling Order and for sanctions against the Italian Almaviva Defendants for their refusal to engage in fact discovery as required by various Court Orders.  *See* Dkt. 300.  On February 1, 2016, Loop AI filed another motion again raising the issue of the Italian Almaviva Defendants' ongoing refusal to provide any merits discovery as required by the Scheduling Order.  DJX168-72; Dkts. 405-1 to 405-11.

[10] To this date, no counsel has filed a Notice of Appearance to appear as counsel of record in this case for the Italian Almaviva Defendants as required by Civil Local Rule 5-1(c)(2).

objections, which also contained a false representation of the Court's discovery orders, in violation of Rule 26(g).  *See* DJX274-488; DJX489-706; DJX1344 (showing the statement certified by the Italian Almaviva's counsel in each of their objections to be false).

5.     ***Ignoring Document and Deposition Subpoenas in Violation of Rule 45*** – After Almaviva refused to provide dates for the depositions of the Italian Almaviva Defendants for over six months, Loop AI located two key witnesses (Almaviva officers Valeria Sandei and Raniero Romagnoli) in San Diego, California and **served them in hand** with deposition and document subpoenas.  Both witnesses refused to appear for the deposition as required by the subpoena and refused to produce **any** documents.  *See* DJX707-864.

6.     ***Ignoring Notices of Deposition And Refusing to Produce Even <u>One</u> Witness for A Merits Deposition  In Violation of Rule 30*** – The Italian Almaviva Defendants ignored all deposition notices served by Loop AI and refused to produce **any witnesses** to testify at a merits deposition.  *See* DJX865-67.

7.     ***Improperly Interfering with Jurisdictional Depositions*** – The Italian Almaviva Defendants substantially interfered with Loop AI's attempt to take jurisdictional depositions and caused Loop AI to expend thousands of dollars for nothing.  *See, e.g.,* DJX868-887 (arriving over one hour late for each deposition and abruptly ending depositions early and without basis); Dkt 407 at 2-6 (manufacturing false excuse regarding witnesses' ability to communicate in English); DJX889-1340 (engaging in conduct to frustrate entirety of jurisdictional depositions).

8.     ***Making False Representations to the Court that The Italian Almaviva Defendants Complied With Their Discovery Obligations*** – The Italian Almaviva Defendants have repeatedly misrepresented to the Court that they complied with their discovery obligations, when they had not.  *See e.g.,* DJX-1364; DJX1349-59; DJX1366-67; DJX1368-74; DJX1375-76; DJX1377-79.

## ARGUMENT

I. **Relevant Legal Standards.**

    A. **Source of Power to Strike Answer and Enter a Default As a Sanction for A Party's Total Failure to Provide Discovery.**

Over a century ago, the Supreme Court held that "striking the answer and entering a default judgment against a corporate defendant that refused to produce any documents or to permit its officers to be deposed did not deny *the defendant* due process because its *refusal to produce material evidence creates a presumption that its asserted defense is meritless*." *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1342 (9th Cir. 1985) (emphasis added) (citing *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 351 (1909)).  Although the general rule is that a district court may not enter terminating sanctions based on discovery violations, under the "*Hammond* exception" the court has inherent power "to strike an answer and enter default when a party fail[s] to produce evidence."[11]  *SEC v. Seaboard Corp.*, 666 F.2d 414, 416-17 (9th Cir. 1982).  "The generating source of the power (to strike the answer and enter default) [is] the right to create a presumption flowing from the failure to produce."  *Id.*

The Italian Almaviva Defendants' complete failure to provide *any* discovery to Loop AI in this case – including by failing to respond to five separate sets of interrogatories and document requests, by failing to produce any witness for duly noticed merits deposition, by failing to produce witnesses as commanded by subpoenas, by failing to produce documents as commanded by subpoena, and by frustrating and interfering with Loop AI's attempt to take jurisdictional discovery – is an extraordinary violation of numerous Federal Rules and of this Court's Orders directing that all discovery proceed and be completed by March 29, 2016.  *See* Fed. R. Civ. P. 26, 30, 33, 34, 45; DJX154-55, DJX230.  The Italian Almaviva Defendants' refusal to produce documents and witnesses is fully within the *Hammond* exception and justifies entry of a default against them as a sanction under the Court's inherent power, as well as under Rule 37.[12]  *See,*

---

[11] The "*Hammond* exception" relates to an exception created by the Supreme Court to the rule established in *Hovey v. Elliott*, 167 U.S. 409, 413 (1897) which held that a court cannot use its inherent power to strike a pleading and enter terminating sanctions as mere punishment for failing to comply with a court order.  *SEC*, 666 F.2d at 416.

[12] Because the standard for entering a default judgment as a sanction is the same under the Court's inherent power as under Rule 37 of the Federal Rules of Civil Procedure, Loop AI addresses them here together.  The Court can decide this Motion solely by reference to the

*e.g., Hammond*, 212 U.S. at 351 (affirming default under court's inherent power for defendant's failure to produce documents and witnesses for deposition); *Reidhead v. Meyers*, 490 F. App'x 884, 885 (9th Cir. 2012) (court's inherent power); *Conn. Gen. Life*, 482 F.3d at 1097 (Rule 37); *Baker v. Limber*, 647 F.2d 912, 918 (9th Cir. 1981) (affirming entry of default judgment under Rule 37 as a result of defendant's refusal to produce documents and answer deposition questions on the basis of infirm constitutional objection); *Hester*, 687 F.3d at 1169 (affirming striking of answer and entry of default under Rule 37, and remanding for determination of punitive damages).

Entry of a default as a sanction for failure to produce documents or other discovery requires a finding that the violation at issue was due to "willfulness, bad faith, or fault" of the party to be sanctioned, regardless of whether the sanctioning authority relied on is the court's inherent power or Rule 37.  *Hester*, 687 F.3d at 1169; *Anheuser-Busch*, 69 F.3d at 348.  In addition, in deciding whether a default judgment is an appropriate sanction "pursuant to the court's inherent power" the court must weigh five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id*.[13]  The same five-part test is used to determine a default judgment sanction under Rule 37.[14]  *Conn. Gen. Life Ins.*, 482 F.3d at 1096.  These factors are addressed further below.

Court's inherent power.  *See, e.g., Anheuser-Busch.*, 69 F.3d 337, 348 (9th Cir. 1995) (affirming sanction under court's inherent power and finding no need to address appropriateness of sanction under "alternate authority of Rule 37").

[13] *See also, e.g., Conn. Gen. Life*, 482 F.3d at 1097; *Baker*, 647 F.2d at 918 (9th Cir. 1981); *Hester*, 687 F.3d at 1169 (9th Cir. 2012).

[14] Entry of a default as a sanction is also appropriate under Rule 37(b) because the Italian Almaviva Defendants' discovery misconduct was in violation of several court orders to provide merits discovery and not to interpose frivolous objections to delay the discovery process.  *See* DJX154, 155, 230.  The same sanction would be appropriate under Rule 37(c), because Rule 37(c) is considered self-executing and allows the imposition of the Rule 37(b) sanctions when the five-part test addressed above and the bad faith requirements are met.  *See, e.g., Reidhead v. Meyers*, 490 F. App'x 884, 885-86 (9th Cir. 2012) ("we have generally used the same five factors in analyzing default sanctions under the rules and under the district court's inherent powers….").

**B. Key Authorities Supporting Entry of a Default Against the Italian Almaviva Defendants.**

Both the Supreme Court and the Ninth Circuit have repeatedly affirmed that entry of a default judgment is an appropriate sanction where a party refuses to provide discovery. For instance, in *Hammond*, an antitrust case, a defendant corporation refused to respond to requests for documents and refused to produce its executives for deposition, on the grounds that complying with the discovery requests and deposition notices would have required the corporation to surrender its constitutional rights. *Hammond*, 212 U.S. at 339. In affirming the entry of a default judgment, the Supreme Court held that the "failure by the defendant to produce what we must assume was material evidence in its possession" gives the court "power to create a presumption of fact as to the bad faith and untruth of an answer begotten from the suppression or failure to produce the proof ordered, when such proof concerned the rightful decision of the cause." *Id.* at 350-51.

In *Goodyear*, a product liability case, a corporate defendant failed to produce one set of documents - tests regarding its tires that were relevant to the plaintiff's entire case - that the plaintiff had requested in discovery. *Goodyear*, 813 F.3d 1233. Goodyear falsely told the plaintiff and the court no other document existed regarding tests for its tires. *Id.* The court held that "had the misconduct come to light while the case was ongoing, entry of a default judgment with a trial on damages would have been the obvious solution." *Id.* at 1247. In light of Goodyear's misrepresentations to the plaintiff regarding its production, the court found that Goodyear's "decision to withhold documents 'was a bad faith attempt to hide responsive documents…." *Id.*

In *Conn. Gen. Life*, a RICO case, the Ninth Circuit affirmed entry of default as a sanction as a result of the defendants' "evasion of discovery obligations." *Conn. Gen. Life*, 482 F.3d at 1094. One defendant had taken the position that he was not subject to discovery because he had filed for bankruptcy and was "protected by the automatic stay," while the other defendant claimed he was not subject to discovery because he had not appeared in the case and was in default. *Id.* When those parties finally began producing some discovery, the individual defendant "refused to answer some questions and provide some documents … on the ground that

his answers might tend to incriminate him." *Id.* at 1095.  Both defendants also refused to produce certain documents claiming that they were "unable to locate" them.  *Id.*  The court found that the "[d]efendants' discovery responses appear[ed] calculated to prevent plaintiffs from learning and proving the truth."  *Id.*  The court held that "where a party so damages the integrity of the discovery process that there can never be an assurance of proceeding on the true facts, a case dispositive sanction may be appropriate."  *Id.* at 1097.

In *TeleVideo Sys., Inc. v. Heidenthal*, the Ninth Circuit affirmed entry of a default judgment as a sanction, as well as an award of treble damages under the RICO statute, and rescission of a stock purchase agreement with a former officer of the plaintiff.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).  The default sanction resulted from the discovery that the defendant had falsely denied during his deposition and in his answer to having engaged in certain conduct alleged in the complaint.  The court found that "[a]lthough the perjury occurred before the trial began, it infected all of the pretrial procedures and interfered egregiously with the court's administration of justice."  *Id.*

In *Henry v. Sneiders*, a case involving breach of contract and fraud claims, the court entered a default judgment and a damages award as a result of defendants' refusal to produce document in response to Rule 34 discovery requests.  *Henry v. Sneiders*, 490 F.2d 315, 316 (9th Cir. 1974).  In affirming the default and damages award, the Ninth Circuit rejected the defendants' contention that their constitutional right against self-incrimination justified their refusal to produce documents.  *Id.*[15]

II.     **A Default Judgment Is Necessary and Just To Remedy The Italian Almaviva Defendants' Total Failure to Provide Merits Discovery.**

**A.  There is Clear Evidence of the Italian Almaviva Defendants' Bad Faith.**

The first requirement for the imposition of a default as a sanction is a finding that the misconduct at issue was due to "willfulness, bad faith or fault."  *Anheuser-Busch*, 69 F.3d at 348 (court's inherent power); *Hester*, 687 F.3d at 1169 (9th Cir. 2012) (Rule 37).  Courts "have found bad faith in a variety of conduct stemming from 'a full range of litigation abuses.'"

---

[15] *See also, e.g., Baker*, 647 F.2d at 918 (upholding default for refusal to produce discovery based on constitutionality objection).

*Goodyear*, 813 F.3d at 1243.  The evidence of the Italian Almaviva Defendants' "bad faith, willfulness or fault" in this case is clear and undisputed, and is fully documented by an extensive written record.  *See, e.g., supra*, Relevant Facts, Section B.  The Italian Almaviva Defendants' refusal to provide discovery has been accompanied by a variety of other "objectionable acts" that "fall into four general categories: (1) bad faith, frivolous objections, (2) misstatement and mischaracterization of facts contained in the … record, (3) misstatement of the applicable law, (4) and intentional obstruction of the speedy and just resolution of the dispute." *Moser v. Bret Harte Union High Sch. Dist.*, 366 F. Supp. 2d 944, 953 (E.D. Cal. 2005).  "Taken as a whole, they show that" the Italian Almaviva Defendants and their "counsel made a concerted effort to distort, if not outright deceive, the court when shaping the court's view of both the record and applicable law in this case." *Id.*  "By consistently presenting untruths and half-truths," the Italian Almaviva Defendants and their "counsel obstructed the fair, just, and expeditious resolution of the proceedings.[]  When evaluated as a whole, the actions of" the Italian Almaviva Defendants "amount to bad faith and are sanctionable." *Id.*

    **1.  *Scheme to Divest the Court of Jurisdiction, Delay, and Obstruct Discovery*** – From the inception of this action, the Italian Almaviva Defendants "devised first, to deprive this Court of jurisdiction and, second, to [create] obstruction, delay, harassment and expense sufficient to reduce" Loop AI "to a condition of exhausted compliance." *Chambers v. Nasco, Inc.*, 501 U.S. 32, 41 (1991).  Immediately after this action was filed, the Italian Almaviva Defendants threatened Loop AI with discovery obstruction, unless Loop AI agreed to resolve this case "cheaply." *See* DJX232, DJX239, 243-44, 247-57, 263, 265-68.[16]  Thereafter, the Italian Almaviva Defendants intentionally delayed Loop AI's ability to begin discovery by refusing to provide a date for the Rule 26(f) meet and confer. *See id.*[17]  The Ninth Circuit has held that "a party demonstrates bad faith by delaying or disrupting the litigation." *Goodyear*, 813 F.3d at

---

[16] Loop AI promptly brought these issues to the Court's attention in various filings. *See, e.g.,* Dkts. 53, 89 at ¶¶ 27-30, 89-9 (attaching correspondence), 96, 97 (also attached at DJX237-271).
[17] *See also* Fed. R. Civ. P. 26(f) (providing that a party may not begin any discovery before the Rule 26(f) conference).

1243. In this case there was no justifiable reason for delaying the Rule 26(f) conference by almost two months, other than to impede Loop AI's effort to promptly obtain discovery.

The Italian Almaviva Defendants brought two frivolous motions to dismiss for lack of personal jurisdiction, both of which were denied by the Court. *See* Dkts. 183, 726. Respectfully, it is difficult to believe that these motions could have been brought in good faith. The Italian Almaviva Defendants admitted that they engaged in literally hundreds of contacts within California that gave rise to each of the claims brought against them in this Action, and their motions to dismiss for lack of personal jurisdiction were based solely on unsubstantiated affidavit testimony by their corporate executives to the effect that they did not intend to engage in any wrongdoing. *See, e.g.,* Dkt. 183 at 2; Dkt 726 at 9:4. The Italian Almaviva Defendants' challenges to jurisdiction were frivolous on their face because no court has ever held (and no authority was cited by the Italian Almaviva Defendants to support the contention), that a foreign defendant can escape a U.S. court's jurisdiction simply by having its executives swear that their conduct was lawful and not wrongful. Indeed, declarations of the type repeatedly submitted by the Italian Almaviva Defendants have been routinely rejected in this Circuit even at the summary judgment stage. *See, e.g., United States v. Perry*, 431 F.2d 1020, 1022 (9th Cir. 1970) (holding that summary judgment is not appropriate on the basis of affidavits that deny wrongdoing "where a trial, with its opportunity for cross-examination and testing the credibility of witnesses, might disclose a picture substantially different from that given by the affidavits.").[18] In light of the lack of any legal authority supporting the position advanced by the Italian Almaviva Defendants, their repeated motions to dismiss on that basis were clearly frivolous and made in bad faith. *See, e.g., Moser*, 366 F. Supp. 2d at 979 ("When an attorney repeatedly and vexatiously presents 'facts'

---

[18] *See also, e.g., Consol. Elec. Co. v. United States*, 355 F.2d 437, 438-39 (9th Cir. 1966) ("It is important, and ordinarily essential, that the trier of fact be afforded the opportunity to observe the demeanor, during direct and cross-examination, of a witness whose subjective motive is at issue."); *Dulansky v. Iowa-Ill. Gas & Elec. Co.*, 191 F.2d 881, 884 (8th Cir. 1951) ("Whatever the weight of the testimony of these witnesses might be on trial a party may not, we think, ***by resorting to motion for summary judgment supported by affidavits, withdraw his witnesses from cross-examination, the best known method for testing the truthfulness of testimony.*** Their credibility and the weight to be given to their opinion should be determined on trial in the regular manner." (emphasis added)).

and 'law' to the Court that are plainly wrong or misleading, which needlessly prolong and multiply … proceedings and materially increase the burden on the Court, bad faith can be inferred.").

**2. *Execution of the Scheme to Delay and Obstruct Discovery*** – On May 26, 2015, during the Rule 16 Conference, the Court expressly denied the Italian Almaviva Defendants' request for phased discovery.  *See* DJX161-63 (request), DJX148-49, DJX154.  The Court's orders required the Italian Almaviva Defendants to participate and provide full merits discovery by January 29, 2016 (as later extended to March 29, 2016).  DJX154-55.  After the Court extended the fact discovery deadline, the Court issued a separate order expressly stating that "objections" should not be used "as an excuse to delay production."  DJX230.  The Court also ordered as follows:

> The ***parties*** must act responsibly during discovery, and ensure that their conduct is consistent ***with the spirit and purposes of the discovery rules*** (including the parties' personal obligation "to secure the just, speedy, and inexpensive" determination of this case).  *See* Fed. R. Civ. P. 1.  [] To this end, the parties are expressly ORDERED to prioritize determining what can be provided without controversy first, and then produce that material expeditiously, rather than using formalistic discovery disputes and objections at the margins as an excuse to delay *any* production. Obstructionist behavior will not be tolerated.

DJX230 (emphasis added).  The Italian Almaviva Defendants repeatedly violated these orders, as well as their obligations under Rules 26, 33, and 34 of the Federal Rules of Civil Procedure.[19]

*a. Bad Faith Refusal To Respond to <u>Any</u> of Hundreds of Rule 33 and 34 Requests* – The Italian Almaviva Defendants have refused to respond to <u>any</u> of the 34 Interrogatories (17 each) and 520 discovery requests (260 each) that Loop AI propounded through five sets of requests served between August 17, 2015 and February 26, 2016.  *See* VCH Decl., Exhibit A; DJX274-706.  Instead of responding as required by Rules 33 and 34 and by the Court's various

---

[19] Although not relevant to this motion, Defendant AW-USA also repeatedly violated these orders.  AW-USA refused to respond to hundreds of discovery requests other than by objections.  *See* DJX1390-1575.  AW-USA refused to produce **even one document** in response to three separate sets of discovery requests served right before and right after the Court's February Orders regarding discovery.  *See* DJX155, 230 (Orders); DJX1510-1575 (refusal to provide any discovery).

Orders to provide discovery, the Italian Almaviva Defendants provided various iterations of the following statement as the basis for their refusal to respond to all 554 discovery requests:

> Almaviva S.p.A. [or Almawave S.r.l.] objects ***to each interrogatory, document request* and *does not provide a response* on the grounds that the Court has not yet determined that it has personal jurisdiction over Almaviva S.p.A.** [Almawave S.r.l.]***; obligating Almaviva S.p.A. to participate in discovery before personal jurisdiction is determined violates Constitutional requirements of due process.*** The Court has ordered that only limited jurisdictional discovery may proceed; which discovery has not yet been approved by stipulation or court order.

DJX275 at ¶ 1 [for Almawave S.r.l., DJX490 at ¶ 1] (emphasis added); DJX174-488 at *passim* (objections by Almaviva S.p.A. to each request in five separate sets of discovery); DJX489-706 at *passim* (objections by Almawave S.r.l. to each request in five separate sets of discovery). There was no basis in the law for the Italian Almaviva Defendants' refusal to respond to discovery on constitutional grounds.  The Ninth Circuit has affirmed entry of a default judgment where a party has resisted all merits discovery based on improper assertions of constitutionality objections.  *See, e.g., Baker*, 647 F.2d at 918 ("***On two occasions appellant refused to answer any questions concerning the subject matter of the lawsuit against him*** or the counterclaims he raised against the trustees.  ***No more serious refusal to comply with discovery is conceivable, and the imposition of harsh sanctions is well within the court's discretion.  Appellant's silence was predicated on a gravely defective assertion of a constitutional privilege***." (emphasis added));[20] *Henry*, 490 F.2d at 317 (9th Cir. 1974) (upholding default for failure to produce documents based on invocation of Fifth Amendment).

The Italian Almaviva Defendants' frivolous assertion that they were not required to provide discovery violated not only Rules 33 and 34, and the Court's Order not to use objections to delay discovery, but also Rule 26(g), which prohibits the assertion of such legally unfounded objections.  *See* Fed. R. Civ. P. 26(g).  By refusing to provide any discovery, the Italian Almaviva Defendants completely subverted this litigation.  *See, e.g., Rozier v. Ford Motor Co.*,

---

[20] *See also, e.g., Rainbow Pioneer # 44-18-04A v. Haw.-Nev. Inv. Corp.*, 711 F.2d 902, 906 (9th Cir. 1983) (affirming entry of default based on total refusal to provide responses to interrogatories on the basis of frivolous objections); *O'Connell v. Fernandez-Pol,* 542 F. App'x 546, 548 (9th Cir. 2013) (affirming striking of answer and entry of default for failure to "produce documents requested by Plaintiffs during discovery…").

573 F.2d 1332, 1345 (5th Cir. 1978) ("Our system of civil litigation cannot function if parties … suppress information called for upon discovery. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.")

The Italian Almaviva Defendants' bad faith in refusing to provide discovery is also demonstrated by the fact that their assertion in response to each discovery request that the "Court has ordered that only limited jurisdictional discovery may proceed" was a knowingly false statement.  The Court never issued such an order or imposed such a limitation.  To the contrary, as of the time the Italian Almaviva Defendants first made this misrepresentation the Court had **denied** the Italian Almaviva Defendants' first motion to dismiss for lack of personal jurisdiction **in its entirety**.  Dkt. 183.  The statement that the Italian Almaviva Defendants falsely attributed to the Court appears nowhere in the Court's Orders.  Despite that inconvenient truth, the Italian Almaviva Defendants repeated various versions of the same misrepresentation in response to five separate sets of discovery requests propounded by Loop AI over the course of seven months. *See* DJX274-706.  At the Rule 16 Conference, the Court expressly rejected the Italian Almaviva Defendants' request for phased discovery. *See* DJX162-63 (request) and DJX148-149 (explaining that instead of phased discovery the Court would allow a longer discovery period in light of the fact that the Italian Almaviva Defendants were abroad).  The Court's Orders on discovery unambiguously provide that all parties were to engage in fact discovery by January 29, 2016, as extended to March 29, 2016.  DJX-154-55.  The Court's Order prioritizing jurisdictional discovery expressly takes into account the fact that the parties were already engaged in discovery (or so the Court believed). *See* DJX1343.  The Court's further orders admonishing all parties to comply with their discovery obligations expressly refer to all "parties."  DJX230.

The Italian Almaviva Defendants distortion of the record and attribution to the Court of an Order that does not exist was clearly in bad faith, because at the Rule 16 Conference the Court made clear that if any party sought to stay discovery, or believed discovery to be stayed, that party **was required to move for the stay and obtain the Court's approval**.[21]  But the Italian

---

[21] *See* DJX140 at 9:20-21 ("if you want to move for a stay … I don't express any point of view on that …"); DJX142 at 15:1-7 (The Court: "I understand that there [is] at least a representation that there's an automatic stay.  And from my point of view, if a stay is sought, *it needs to be*

Almaviva Defendants did not move for a stay because, while they were refusing to provide discovery, they were concurrently misrepresenting to the Court that they were in full compliance. When Loop AI repeatedly tried to bring this issue to the Court's attention, the Italian Almaviva Defendants responded by obfuscating the record with incessant *ad hominem* attacks against Loop AI and its counsel, and by falsely representing to the Court that they had fully complied with their discovery obligations.[22]  *See, e.g.,* DJX1345, DJX1349, DJX1351-1359, DJX352, DJX1361 and DJX1364, DJX1366-1367, DJX1369.  The Italian Almaviva Defendants even persuaded the Court to deny Loop AI's request for a discovery extension because they assured the Court they were in full compliance.  *See, e.g.,* DJX1368-1373.  The Court clearly relied on the Italian Almaviva Defendants' counsel's representations to set the schedule for the case.  *See, e.g.,* DJX155, DJX225.[23]  The Italian Almaviva Defendants' false representations to the Court about their compliance with discovery alone are sufficient to support a finding of bad faith and therefore entry of a default.[24]

For instance, in *Goodyear*, the lawyers "throughout numerous discovery dispute filings and hearings, convinced the district court that Goodyear had produced all … data relevant to the [plaintiffs'] claims." *Goodyear,* 813 F.3d at 1245.  "The district court noted that 'in fact, at various points the Court became exasperated with Plaintiffs' apparently unsubstantiated claims that additional information must exist." *Id.*  As the court further noted:

---

***moved for*** a just -- and, again, I don't know if this is an issue that's ripe, but it's my perspective that if any party is asserting that discovery is stayed, they need to seek -- seek the Court's concurrence with that." (emphasis added)).

[22] *See, e.g., Moser*, 366 F. Supp. at 976 (finding bad faith where "[s]eparate from the distortions and misrepresentations detailed above, Ms. Yama and Lozano Smith engaged in ad hominem attacks on Plaintiff, suggesting he had a bad attitude and was a malingerer. They also attacked Plaintiff's counsel with accusations she was mischaracterizing the record and falsely attributed arguments in the federal case to Plaintiff that Plaintiff's counsel did not advance.").

[23] Even during the short additional time of discovery that the Court allowed, the Italian Almaviva Defendants continued to refuse to "respond" and produce even one document.  *See* DJX396-488; DJX612-706; VCH Decl., Exhibit A.

[24] *See, e.g., Hester*, 687 F.3d at 1169 (defendant "misrepresented its current and past production to both the Court and the Class, and otherwise engaged in bad faith conduct."); *TeleVideo*, 826 F.2d at 917.  The Italian Almaviva Defendants' counsel has had a habit of making false representations to interfere with the integrity of the judicial process in this case.  *See* DJX1342.

> It was not until the sanctions proceedings that the district court realized that the Sanctionees had adopted a plan of making discovery as difficult as possible, providing only those documents they wished to providing, timing the production of the small subset of documents they were willing to turn over such that is was inordinately difficult for Plaintiffs to manage their case, and making false statements to the Court in an attempt to hide their behavior.

*Id.* As the court eventually found, the "decision to withhold documents 'was a bad faith attempt to hide responsive documents…." *Id.* The Italian Almaviva Defendants' conduct in this case is substantially more egregious than that described in *Goodyear*, because here the Italian Almaviva Defendants refused to provide *any* discovery, not just one set of documents. In *Goodyear*, as in this case, counsel made "repeated representations to the district court that [his clients were] complying with all discovery requests when in fact, Goodyear withheld relevant and responsive documents." *Id.*

In this case, it was not until the hearing on the Italian Almaviva Defendants' motion to dismiss, on April 21, 2016 – almost one month after merits discovery had already closed – that the Italian Almaviva Defendants' counsel implicitly admitted to the Court that his clients had not provided any merits discovery: "THE COURT: They have got the burden. And there's no down side to having a more developed factual record, is there? MR. WALLERSTEIN: ***Well, there is a down side to our client to engaging in discovery***." DJX1383 (emphasis added). Shortly after this brief moment of candor, the Italian Almaviva Defendants resumed making misrepresentations to the Court that they had given all required discovery. *See, e.g.,* DJX1375-1379. Even after their challenge to personal jurisdiction was again denied, the Italian Almaviva Defendants did not advise the Court that they had not provided any discovery to Loop AI, nor did they update their discovery responses.[25] Instead, the Italian Almaviva Defendants immediately moved for summary judgment, falsely representing to the Court, again, that they had given extensive discovery and that there was no evidence of wrongdoing.[26] *See, e.g.,*

---

[25] *See, e.g., Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1133 (9th Cir. 1995) ("We note that Thompson failed to update the request for production, and also filed a misleading interrogatory answer regarding its drop-tests. We further note that Thompson did not reveal the fact that the gun fired during a drop-test until less than a month before trial.").

[26] Loop AI has filed a separate motion seeking preclusion sanctions against the Italian Almaviva Defendants' in respect of their summary judgment and other motions and in respect of the trial that was previously scheduled. *See* Dkt. 731.

DJX1377, and Dkt. 740 at *passim*. As the Ninth Circuit has made clear, a party who has refused to provide discovery is not entitled to summary judgment on the basis that the plaintiff has failed to adduce sufficient evidence, as the Italian Almaviva Defendants purported to do in this case. For instance in *Henry v. Sneiders*, the defendants refused to respond to Rule 34 discovery requests on the grounds that a response was in violation of their constitutional right against self-incrimination. *Henry,* 490 F.2d at 317. The Ninth Circuit affirmed entry of a default for failure to provide any of the requested discovery. *Id.* The court also affirmed the denial of the defendants' motion for summary judgment finding that a party who does not provide discovery may not move for summary judgment on the basis that there is no evidence supporting the plaintiff's claims. *See id.* at 317 ("Appellant argues that plaintiff lacked sufficient evidence with which to prove his case and that summary judgment against him should have been awarded. Any insufficiency of the plaintiff's evidence was a direct result of appellant's refusal to comply with a legitimate request for discovery."). In addition to improperly moving for summary judgment, the Italian Almaviva Defendants filed an Answer to Loop AI's Second Amended Complaint ("SAC") on June 22, 2016 – nine months after the SAC was filed and a week after they moved for summary judgment. *See* DJX35-90. In that belated Answer, the Italian Almaviva Defendant asserted 15 affirmative defenses, even though they had refused to provide *any* discovery as to the defenses they belatedly asserted. *See* DJX87-90 and DJX461-468, DJX679-685.[27]

> b. **The Italian Almaviva Defendants' Continued False Representations to the Court In Response to Loop AI's Second Motion for Sanctions** – When Loop AI moved to preclude the Italian Almaviva Defendants from pursuing summary judgment for failure to provide discovery, *see* Dkt. 731, the Italian Almaviva Defendants again lied to the Court regarding their failure to provide Loop AI discovery. *See* DJX1385-87; Dkt. 773-773-1. The Italian Almaviva Defendants' counsel submitted a declaration representing that the Italian Almaviva Defendants had timely provided all discovery. *See* DJX1387. That statement was patently false, as demonstrated by an extensive written record. That record consists of hundreds of pages signed

[27] *See Anderson v. Air W., Inc.*, 542 F.2d 1090, 1093 (9th Cir. 1976) (sanctioning failure to provide discovery on affirmative defenses).

by counsel for the Italian Almaviva Defendants, in which the Italian Almaviva Defendants certified under Rule 26(g) that they were **not responding** to Loop AI's discovery.  DJX274-706.

In her declaration, the Italian Almaviva Defendants' counsel also represented that "the Almawave Defendants have not withheld information or documents on the basis that such information was in the possession, custody, and control of the Italian Almawave Defendants and not Almawave."  DJX1387 at ¶7:6-8.  This statement is also false.  As discussed above, an extensive documentary record establishes that the Italian Almaviva Defendants did not "respond" to any of Loop AI's discovery requests.  DJX274-806.  To the extent counsel's statement was intended to encompass AW-USA, also it was still untrue.  In the few instances in which AW-USA indicated it would produce documents in response to discovery requests propounded to AW-USA, AW-USA **expressly limited its production** as follows:  "Following a reasonable search, AW-USA will produce all non-privileged documents responsive to this request *within its possession, custody or control*."  *See, e.g.,* DJX1404.  *See also* DJX1390-1463 at *passim*; DJX1465-1490 at *passim*.[28]  In addition, when Loop AI asked AW-USA to produce materials relevant to Almaviva S.p.A. and Almawave S.r.l., AW-USA objected by also claiming that the words "Almaviva" and "Almawave" were "vague and ambiguous."  *See, e.g.,* DJX1568. Respectfully, that objection could not have been made in good faith.  AW-USA also improperly limited its responses to providing only self-serving documents, and refused to provide the most critical and relevant documents responsive to Loop AI's requests.  For example, in Loop AI's document Requests 52 and 55 to AW-USA, Loop AI requested the following:

---

[28] AW-USA objected and refused to provide an answer and produce documents in response to virtually every one of Loop AI's requests.  DJX1390-1463.  Specifically, AW-USA refused to provide documents and substantive responses in response to four separate sets of discovery that Loop AI served on AW-USA.  Between December 11 and December 31, 2015, AW-USA produced a few thousand documents, which contained three and often four duplicates of the same document.  *See* DJX173.  The vast majority of the documents produced by AW-USA were nonresponsive to any of Loop AI's requests, while documents actually requested by Loop AI were never produced.  Besides the foregoing productions, AW-USA produced to Loop AI only a privilege log listing approximately 2500 documents and 4 additional documents relating to Loop AI's accountant.  AW-USA, like the other defendants, has provided no discovery in response to three separate sets of discovery requests propounded at the beginning of 2016.  *See* DJX1510-1575.

- Request No. 52: "Produce all documents and communications relating to, concerning, or referring to the work that Gatti has performed, is presently performing and/or is or was expected to perform for Almawave USA or Almaviva IT or Almawave IT." DJX1433.
- Request No. 55: "Produce all documents and communications relating to, concerning, or referring to Almawave USA's goals for, expectations of, and requirements for Gatti in connection with her role as an officer and/or employee of Almawave USA." DJX1435.

These requests seek information that was critical to Loop AI's claims against all defendants. Despite the crucial importance of the information requested, AW-USA improperly refused to produce any responsive documents, and instead, following extensive objections, agreed to make a self-serving selective production of only "Gatti's job description". DJX1434 ("Following a reasonable search *Almawave USA will produce non-privileged documents within its possession, custody or control sufficient to identify Gatti's job description at Almawave USA.*" (emphasis added)); DJX1435 (same). Respectfully, this is outrageous.

AW-USA has refused to respond to, and failed to produce, *any* documents relating to topics at the core of the case. For instance, AW-USA produced *no* documents reflecting any internal deliberations related to the hiring of Gatti and IQSystem. It even failed to produce the confidentiality agreement that was entered between Almawave S.r.l. and Ms. Gatti, and between Almawave S.r.l. and various other individuals at issue in this litigation. Loop AI was only able to discover the existence of these documents through nonparty productions. *See, e.g.,* DJX1576-1578. AW-USA produced *no* documents regarding the reasons why it hired IQSystem, Mr. Capaccio, or the members of the DiNapoli family, Gennaro and Tony. Nor did it produce any documents explaining why it agreed to give those individuals the large payments it made to them on a monthly basis. It produced *no* documents regarding Almaviva's interest in acquiring U.S. start-ups. It produced *no* documents regarding the decision to base AW-USA at Ms. Gatti's home. It produced *no* documents regarding the patent application that all three Almaviva Defendants claim was based on their own IP and not on IP stolen from Loop AI. It produced *no* documents regarding the reasons for Ms. Gatti's communications with the Orrick patent team that worked on Almawave S.r.l.'s patent application, nor did it produce any of the patent related documents that the record shows Ms. Gatti gave an employee of Almawave S.r.l. after soliciting information from Loop AI. *See, e.g.,* SJX-2697-2702 (Dkt. 785-6 to 785-7), Dkt. 862. AW-USA's selective disclosure of self-serving information was tantamount to nonproduction and

also constitutes discovery fraud.  *See, e.g., Rozier v. Ford Motor Co.*, 573 F.2D 1332, 1346 (5th Cir. 1978) (finding selective disclosure of discovery to be a fraud on the court and remanding for a new trial).

*   *   *

As the Ninth Circuit has held, the "discovery process is subject to the overriding limitation of good faith.  Callous disregard of discovery responsibilities cannot be condoned." *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1246 (9th Cir. 1981).  The misconduct of the Italian Almaviva Defendants described above is more than enough on its own to establish the Italian Almaviva Defendants' bad faith in depriving Loop AI of its right to obtain discovery. Entry of a default is the only just and appropriate sanction to remedy the Italian Almaviva Defendants' extraordinary violations.  *See Hester*, 687 F.3d at 1169; *Conn. Gen. Life Ins.*, 482 F.3d at 1097; *TeleVideo*, 826 F.2d at 917;  *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1187 (9th Cir. 2009) (affirming entry of default judgment for failure to produce discovery); *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001) ("Therefore, we hold that an attorney's reckless misstatements of law and fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings … are sanctionable under a court's inherent power.")

**c.  Bad Faith Refusal To Respond to Document and Deposition Subpoenas** – In addition to refusing to respond to Rule 33 and 34 discovery requests, the Italian Almaviva Defendants (and AW-USA) refused to produce **any** witness for a merits deposition.  Loop AI began seeking to depose the principals of the Italian Almaviva Defendants immediately upon the filing of this action.  *See, e.g.,* Dkt. 9-2 (Request for permission to depose Ms. Sandei in March 2015).  The Italian Almaviva Defendants' counsel then claimed that his clients would be unavailable for extended periods of times, s*ee, e.g.,* DJX263, and that in any event Loop AI was required to "issue subpoenas" to the "witnesses from whom it seeks to take testimony." DJX1388.  After Loop AI was finally able to find Ms. Sandei and Mr. Romagnoli in San Diego, California, and serve them with deposition and document subpoenas[29] — as previously demanded by the Italian Almaviva Defendants' counsel — he changed his position and claimed

---

[29] *See* DJX707-712.

that it was improper to serve subpoenas on the Italian Almaviva Defendants and AW-USA's officers, and that regular deposition notices were all that was needed and how Loop AI should proceed. *See* DJX714, DJX790. Despite being duly served, both witnesses refused to appear for their depositions as commanded by the subpoenas, and refused to provide **even one document** in requested in the subpoena. *See* DJX713-788; DJX789-864. The witnesses' refusal to appear for deposition and produce even one document violated Rules 45, 30, and 26 of the Federal Rules and is further evidence of the Italian Almaviva Defendants' bad faith.[30] *See, e.g., Nostalgia Network, Inc. v. Rayle*, 56 F. App'x 344 (9th Cir. 2003) (total refusal to appear for a deposition and interference with the production of evidence supports entry of default under the Court's inherent power).

     **d. Bad Faith Refusal To Appear for Depositions Pursuant to Deposition Notices** – As set forth above, in response to the Subpoenas served in hand on Ms. Sandei and Mr. Romagnoli, the Italian Almaviva Defendants claimed that use of the "Subpoena is inappropriate, is designed to harass, and therefore constitutes an abuse of process. Loop [AI]'s counsel exercise of the subpoena power is unnecessary, since Loop [AI] could simply have noticed Responding Party's deposition, as Responding Party is an officer of a party." DJX714. However, when Loop AI served deposition notices, the Italian Almaviva Defendants (and AW-USA) refused to produce Ms. Sandei, Mr. Romagnoli **or any other witness**. *See* DJX865. The Italian Almaviva Defendants and AW-USA simply ignored Loop AI's notices of depositions in their entirety, and never applied for, let alone obtained, a protective order allowing them to not appear for the depositions noticed by Loop AI. Their refusal to appear for the depositions noticed by Loop AI, without seeking a protective order from the Court, was clearly in bad faith. The Italian Almaviva Defendants' refusal to appear was highly prejudicial to Loop AI, which has been precluded from taking even one merits deposition of any Almaviva representative. The Italian Almaviva Defendants and AW-USA have also improperly taken advantage of their own misconduct by continuously submitting these witnesses' purported testimony to the Court in affidavits, even while they refused to allow Loop AI to depose those witnesses.

---

[30] *See* Fed. R. Civ. P. 45(d)(3) (requiring a subpoenaed party to move to quash if a modification of a Subpoena is sought).

*e. Bad Faith Interference With Jurisdictional Depositions* – In addition to refusing to produce witnesses for any merits deposition, the Italian Almaviva Defendants and their counsel completely sabotaged and frustrated Loop AI's attempt to take the jurisdictional depositions as ordered by the Court. DJX176-180. For instance, despite the fact that Loop AI had only three days to take five depositions, the Italian Almaviva Defendants intentionally arrived late, repeatedly took extremely long breaks, and abruptly terminated each deposition early. *See, e.g.,* DJX174-178, DJX868-887. The Italian Almaviva Defendants' conduct in arriving late was clearly in bad faith, as shown by their counsel's own statement on the record. *See* DJX871. In addition to arriving late, the Italian Almaviva Defendants manufactured a language emergency that was false and clearly intended to disrupt and delay the jurisdictional depositions. DJX179-180. When Loop AI's counsel was finally allowed to begin the depositions, the Italian Almaviva Defendants made it virtually impossible to get any testimony. DJX889-1340. As the record shows, the Italian Almaviva Defendants' counsel incessantly spoke and directed the witnesses not to answer, frustrating the entirety of these limited depositions. *Id.* The record shows that Italian Almaviva Defendants' conduct in interfering with and frustrating Loop AI's ability to take the jurisdictional depositions was clearly in bad faith. *Id.*

### B. Imposing a Default Judgment Against the Italian Almaviva Defendants is Appropriate Under the Ninth Circuit's Five-Part Test.

The five-part test that the Court must consider before entering a default judgment "provides the district court with a way to think about what to do, not a set of conditions precedent for sanctions or a script that the district court must follow." *Conn. Gen. Life Ins.*, 482 F.3d at 1096.[31] "In deciding whether to impose case-dispositive sanctions, the most critical factor is not merely delay or docket management concerns, ***but truth… whether the discovery violations 'threaten to interfere with the rightful decision of the case*,**'" and "whether 'a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts.'" *Id.*

---

[31] As set forth above, the five-part test includes consideration of the following elements: (1) the public's interest, (2) the court's interest, (3) risk of prejudice to Loop AI, (4) public policy considerations, and (5) availability of less drastic sanctions.

In this case, the Italian Almaviva Defendants' pattern of deception and discovery abuse makes it impossible "to conduct [a] trial with any reasonable assurance that the truth would be available." *Id.* at 1097. Thus the first three factors are clearly met here. *See id.*; *Hester*, 687 F.3d at 1169-70. The public's interest and the court's interest "in the expeditious resolution of cases is best served by striking" the Italian Almaviva Defendants' belated "answer and entering a default against" them. *Id.* In addition, the Italian Almaviva Defendants repeatedly misrepresented to the Court their compliance with their discovery obligations in multiple filings and hearings. Because the Court relied on those representations to set the schedule for the case, the Italian Almaviva Defendants made the Court waste its time by entering an order governing discovery proceedings, with which the Italian Almaviva Defendants had no intention to comply and did not comply. There is no question that Loop AI has been substantially prejudiced by the Italian Almaviva Defendants' misconduct, as Loop AI has been deprived of all evidence from two defendants, and has been forced to prepare for trial based on an incomplete and substantially reduced record. *See id.* at 1170. While "public policy favors that cases be heard on their merits," the Italian Almaviva Defendants have "done everything [they] can to prevent such resolution. Through [their] conduct, [they have] attempted to ensure that an accurate and fair trial on the merits of this case will never happen." *Id.* Accordingly, public policy consideration does not counsel against entry of a default against those parties.

Finally, where, as in this case, "a party so damages the integrity of the discovery process that that there can never be assurance of proceeding on the true facts, a case dispositive sanction may be appropriate." *Conn. Gen. Life*, 482 F.3d at 1097. This is just such a case. In light of the extensive and egregious nature of the Italian Almaviva Defendants' discovery abuse, the only way to "secure a just resolution of the dispute" is by entering a default against those parties. *See id.* This is not a situation in which a defendant has refused to produce some documents or information. Here, the Italian Almaviva Defendants wholly ignored all of Loop AI's requests for discovery and falsely told the Court they were in full compliance. No other sanction can remedy this misconduct. The Italian Almaviva Defendants have been "willing to mislead the Court time after time in order to keep from producing relevant, possibly critical, discovery material."

*Hester*, 687 F.3d at 1170-71.  "This case cannot be resolved on the merits when" the Italian Almaviva Defendants "refuse to provide information needed for a ruling on the merits."  *Mattivi Bros. Leasing v. Ecopath Indus., LLC,* 10-49-PHX, 2010 U.S. Dist. LEXIS 134692, at *4 (D. Ariz. Dec. 9, 2010).  In light of the Italian Almaviva Defendants "utter failure to follow applicable federal rules and court orders" default is an appropriate and just sanction here.

## CONCLUSION

For the foregoing reasons, Loop AI respectfully requests that this Motion be granted and that the Court strike the Italian Almaviva Defendants' Answer, enter an Order of default, and enter a default judgment against the Italian Almaviva Defendants after damages have been determined at trial.

Respectfully submitted,

September 26, 2016                         By:   /s/ *Valeria Calafiore Healy*

Valeria Calafiore Healy, Esq. (*phv*)
HEALY LLC
154 Grand Street
New York, New York 10013
Telephone:     (212) 810-0377
Facsimile:     (212) 810-7036

Daniel J. Weinberg, Esq. (SBN 227159)
FREITAS ANGELL & WEINBERG LLP
350 Marine Parkway, Suite 200
Redwood Shores, California 94065
Telephone:     (650) 593-6300
Facsimile:     (650) 593-6301

Attorneys for Plaintiff
LOOP AI LABS, INC.