VALERIA CALAFIORE HEALY (*pro hac vice*)
valeria.healy@healylex.com
HEALY LLC
154 Grand Street
New York, New York 10013
Telephone: (212) 810-0377
Facsimile: (212) 810-7036

Attorneys for Plaintiff
LOOP AI LABS INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS INC., | CASE NO.: 3:15-cv-00798-HSG-DMR |
| Plaintiff, | |
| v. | **DECLARATION OF VALERIA CALAFIORE HEALY IN OPPOSITION TO ALMAWAVE USA INC.' MOTION AT DKT. 895.** |
| ANNA GATTI, et al, | Action Filed: February 20, 2015 |
| Defendants. | |
| | Hon. Donna M. Ryu |

I, Valeria Calafiore Healy hereby declare under penalty of perjury that the following statements are true and correct to the best of my knowledge, information and belief:

1.     I am an attorney admitted to practice law in the State of New York and have been admitted *pro hac vice* by this Court as counsel for Plaintiff Loop AI Labs Inc. ("Loop AI") in this action.

2.     I have personal knowledge of the matters set forth below and submit this Declaration pursuant to Civil Local Rule 7-5 in support of Loop AI's Objections to the Magistrate's Order at Docket 893 regarding Almawave USA Inc.'s request for sanctions regarding the deposition of Mr. Ferri.

3.     Attached hereto as Loop AI's Appendix are true and correct copies of various excerpts of the record compiled in a single Appendix, and numbered sequentially beginning with the number **MPX-214** through **MPX-325.**

**REFERRAL TO AND APPEARANCES BEFORE THE MAGISTRATE JUDGE**

4.     On June 16, 2015, the Court issued an Order "referring case to a Magistrate Judge for Discovery purposes re: Dkt. 112." A true and correct copy of this Order is set forth at Dkt. 113.

5.     On June 18, 2015, a Magistrate Judge was assigned to this case. A true and correct copy of the Magistrate's Order is set forth at Dkt. 117.

6.     On July 23, 2015, we appeared for the first time in front of the Magistrate assigned to the case for a status conference about discovery. The conference lasted approximately 2 hours. A true and correct copy of excerpts of the transcript relating to this conference is attached hereto at MPX-345-412.

7. At the beginning of the conference, the Magistrate surprised us by addressing – and denying from the bench – a motion for contempt that I had filed before the presiding District Judge against a nonparty, and which was not fully briefed yet. *See* MPX355-363.

8. Because I did not know that the motion for contempt had been referred to the Magistrate, or that he it would be ruled on by her before the motion was fully briefed, I asked the Magistrate for some clarification. The Magistrate remarked:

> THE COURT: … I think part of the problem, Ms. Healy, is that I don't know how much you practice in our District. So it may be that you're used to doing things differently and that's why it's confusing because I don't – you're asking questions that usually don't come up, which is fine, but –

MPX-409.

9. On December 10, 2015, we appeared before the Magistrate again for a hearing on certain discovery motions. The hearing lasted approximately 3 hours excluding recesses. A copy of the transcript relating to this hearing is set forth at Docket 335.

10. The above two hearings, were the only hearings the Magistrate ever scheduled in this case.

### NOTICES OF JURISDICTIONAL DEPOSITION

11. On January 4, 2016, Loop AI served on all parties its notices of jurisdictional depositions. A true and correct copy of these deposition Notices is available at Docket No. 353. Included in these notices, were notices for the jurisdictional depositions of representatives of Almaviva S.p.A. and/or Almawave S.r.l. ("Italian Almaviva Defendants"), Ms. Perri, Ms. Nicollella, Mr. Ferri, Ms. Sandei and Mr. Romagnoli. Each of the deposition notices provided the date and time of commencement of the deposition, and stated that the deposition "will continue from day to day until completed." Dkt. 353 at 2, 3.

12. Mr. Ferri's deposition was noticed for January 21, 2016 at 8:00am. Attached hereto at **MPX-214-216, 219, 323-25** is a true and correct copy of a copy of the notice in chart form, as filed with the court in January 2016, listing the depositions start times.

13. As set forth in the Chart summarizing the Notices of depositions, on January 20, Loop AI noticed two depositions, for Ms. Perri beginning at 8:00am, and that Ms. Nicolella beginning at 2:00pm. *Id.* Both these individuals are officers of Almaviva S.p.A.

**EX-PARTE COMMUNICATIONS AND SUBSEQUENT HEARING WITH MS. BEARD**

14. Mr. Wallerstein and Ms. Culp were aware that we noticed the jurisdictional depositions to begin at 8:00am because we had very limited time to prepare for and take 5 depositions over just 3 days. Punctuality was of critical importance to enable us to take the noticed deposition in the compressed time ordered by the Court.

15. On January 20, Loop AI noticed the deposition of Ms. Perri to begin at 8:00am, and that of Ms. Nicolella to begin at 2:00pm. **MPX-323-25.**

16. Mr. Wallerstein and Ms. Culp and their witness arrived more than 1 hour late, as they did each for each of the jurisdictional depositions of their witnesses. A true and correct copy of relevant excerpts of the jurisdictional depositions addressed here is attached at **MPX-238-89 and 220-233**; Dkt. 429-1.

17. Mr. Wallerstein then refused to allow me to begin deposing Ms. Perri (the first deponent) and told me he would not allow me to proceed with the deposition unless I agreed to pay unspecified fees for an interpreter that he had brought with him. *See* MPX238-244.

18. Instead of allowing me to proceed with the deposition, Mr. Wallerstein interrupted the deposition and walked away, falsely repeating on the record that I was required to pay for the interpreter he brought with him before he allowed the deposition to proceed. MPX 238-244. Mr. Wallerstein falsely stated on the record several times that he told me and the court that I was required to pay for the interpreter, even though that statements was not true. Instead at the hearing before the Magistrate, Mr. Wallerstein told the Court expressly that he would bring his own interpreter and that two of his witnesses would testify in English:

THE COURT: … SO WITH THAT IN MIND, MY ORDER IS AS FOLLOWS: YOU

CAN HAVE A TOTAL OF -- WILL SANDEI AND ROMAGNOLI BE IN ENGLISH OR ITALIAN?
**MR. WALLERSTEIN: *ENGLISH, YOUR HONOR*.**
**THE COURT:** OKAY. BUT --
**MR. WALLERSTEIN:** TRANSLATOR -- WITH A TRANSLATOR ON STANDBY.
**THE COURT:** OKAY.

Dec. 10, 2015 Hearing (Dkt. 335) at 49:9-15 (emphasis added) ("Docket 335").

**THE COURT:** WHERE WOULD THE TRANSLATORS COME FROM; ITALY OR WOULD THEY NEED TO BE TAKEN OVER?
**MR. WALLERSTEIN:** WE, REGARDLESS OF ANYTHING ELSE, WE ARE GOING TO HAVE A TRANSLATOR THERE. OUR WITNESSES INSIST ON IT. I DON'T KNOW HOW WE ARE GOING TO DO THAT YET.

Dec. 10, 2015 Hearing (Dkt. 335) at 44:2-6 (emphasis added).

19.     I believe that Mr. Wallerstein suddenly manufactured this English language emergency to further impede and delay our ability to take the jurisdictional depositions.  I base this belief on three key facts: (1) Mr. Wallerstein waited until one hour after the start time of the deposition to create this emergency, even though he had had plenty of time to file a motion with the Court to seek this relief, (2) Mr. Wallerstein had brought his interpreter and was only seeking to extort a payment from me by refusing to allow me to begin the deposition until I agreed to give him the money he wanted, *see* MPX255, 273, (3) when I asked the deponent if she spoke English, Mr. Wallerstein instructed her not to answer.  *See, e.g.,* MPX240 at 9:9-25.  Mr. Wallerstein even claimed that whether the witness spoke English was "not the point." *Id.*

20.     Shortly thereafter, Mr. Wallerstein, Ms. Culp and their witnesses left abruptly, but not before Mr. Wallerstein had the opportunity to tell my associate and the court reporter that they were "pathetic" and that they "should be ashamed," even though neither had done anything to cause Mr. Wallerstein's insults.  *See* MPX-258 at 26:1-5.

21.     After Mr. Wallerstein walked out of the deposition, he and Ms. Culp and their interpreter apparently called Ms. Sarah Beard.  Ms. Beard works for the Magistrate assigned to this case, and I understand her to be her permanent law clerk.

4

22. I understand that Ms. Culp is well acquainted with Ms. Beard because they were in the same class in law school, at UC Hastings College of Law, where the Magistrate assigned to this case also was a Professor, while Ms. Culp and Ms. Beard were students there.

23. I learned of the Almaviva Defendants' counsel ex-parte conversation with Ms. Beard later that day from the interpreter who indicated that she and the Almaviva Defendants' counsel spoke to Ms. Beard. The Order that the Magistrate issued shortly after Ms. Beard's call incorporates statements that were not made by the interpreter or the Almaviva Defendants' counsel in my presence. A true and correct copy of this order is attached hereto at MPX-328-29 ("Order 397").

24. Following this ex-parte call between the Almaviva Defendants' counsel and Ms. Beard, at 9:51am Mr. Wallerstein returned to the deposition room, where the court reporter, myself and my associate continued to wait. MPX269. Mr. Wallerstein then called Ms. Beard again. *Id.* This call was transcribed by the court reporter who was there for the deposition.

25. During this second call, Ms. Beard held a sort of hearing, which lasted over 15 minutes. MPX-269-283. Although I requested permission to submit evidence before a hearing with the Magistrate, Ms. Beard declined to allow me to do so. I assumed after the call with Ms. Beard that Ms. Beard would hear back about a time when the Magistrate would be available to hear from the parties. Instead, within approximately 1 hour from the conclusion of the call with Ms. Beard, the Court issued Order 397 granting the relief requested by the Almaviva Defendants based solely on the statements made to Ms. Beard. A true and correct copy of the Notice of Electronic Filing of Order 397 is attached hereto at MPX-343.

26. Order 397 reflects statements that I never made, while at the same time omitting statements by Mr. Wallerstein showing that he had completely changed his position. Ms. Beard characterizes statements in the Order as my "concessions," as well as quotes a portion of a prior transcript from a December 10 hearing while omitting in its entirety the portion of the transcript

in which Mr. Wallerstein told the Court that (1) he would bring his own interpreter and (2) that two of his witnesses would testify in English. *See* Order 397 and Dkt. 335 at 49:9-15; 44:2-6.

27. Order 397 incorporates statements regarding the interpreters experience which were never made in my presence and are not reflected on the record.

28. Similarly Order 397 required us to find (and pay for) within less than 24 hours a "certified" interpreter, exactly as Mr. Wallerstein and Ms. Culp asked Ms. Beard to give them.

29. Unfortunately, as Mr. Wallerstein and Ms. Culp omitted to advise Ms. Beard, the State of California does not certify Italian interpreters. We discovered this s after hours and hours of attempting to mobilize all of the interpreting agencies in and out of California that we could find to try to obtain an interpreter that met with the requirements that Ms. Beard incorporated in Order 397 at the request of the Almaviva Defendants.

30. As Mr. Wallerstein also failed to advise Ms. Beard, the interpreter he brought to the deposition was not a certified interpreter.

31. Before calling Ms. Beard ex-parte, Mr. Wallerstein had not filed any motion with the Court requesting the relief he asked Ms. Beard. Presumably he did not file a motion because there is no case law supporting the relief he was able to obtain from Ms. Beard.

**MS. NICOLELLA'S AND MR. FERRI'S DEPOSITIONS**

32. After Mr. Wallerstein allowed the first deposition to finally begin, it was not long that he immediately began requesting incessant breaks. *See* Dkt. 429-1. After only a few hours of deposition, Mr. Wallerstein abruptly departed with his witnesses again, refusing to allow us to take the second deposition noticed for January 20, that of Ms. Nicolella. *See* MPX-286, 288.

33. Before Mr. Wallerstein departed, I repeatedly requested that Mr. Wallerstein arrive punctually at the noticed time of 8:00am for the January 21st deposition. MPX-286, 288-89. As the record shows, Mr. Wallerstein was laughing out loud at my request that he comply with the deposition notice.

    

34. Further, when Mr. Wallerstein improperly left without allowing me to take the deposition of Ms. Nicolella he did not tell me that he had unilaterally decided to bring Ms. Nicolella to be deposed on January 21st. We had arranged to have a single deposition on January 21st – that of Mr. Ferri – because we expected to need several hours with Mr. Ferri and we also needed several hours to prepare for the two depositions noticed for January 22, 2016.

## JANUARY 21ST DEPOSITION

35. On January 21, 2016, Mr. Ferri was the only witness noticed for a jurisdictional deposition and was required to be in attendance to start his deposition at 8:00am. *See* MPX-215, 219. We were there punctually, as was the court reporter, and the deposition record was opened and ready to proceed at 7:55am. *See* MPX-220. However, neither Mr. Ferri, nor his counsel, appeared for his deposition at the time required by Loop AI's notice. *Id.* As of 8:35am on January 21st, Mr. Ferri still had not arrived, nor had his counsel. *Id.* As of 9:00am, a full hour after the noticed start time of the deposition, Mr. Ferri was still not there, nor was his counsel. *Id.* Mr. Ferri and Mr. Wallerstein arrived at 9:09am – over one hour late. *Id.* Mr. Wallerstein then refused to allow Mr. Ferri to sit for his deposition without an interpreter. *See* MPX-226. Mr. Wallerstein took this position even though it is undisputed that Mr. Ferri is proficient in the English language. *See* MPX-286. I observed Mr. Wallerstein speak to both Mr. Ferri and the other Italian witnesses in English. When Mr. Wallerstein arrived with Mr. Ferri and others they were not accompanied by any interpreter. *Id.* Mr. Wallerstein then left the deposition venue and did not return until 11:12am. MPX-227.

36. When Mr. Wallerstein finally returned to the deposition venue at approximately 11:15am, we proceeded immediately with the depositions and agreed to start with Ms. Nicolella. Ms. Nicolella's deposition began at approximately 11:15am on January 21. MPX-227. Deposing Ms. Nicolella (as well as all other witnesses) with an interpreter was an extremely cumbersome and lengthy process. This was compounded by numerous other issues, including

3:15-CV-00798-HSG-DMR            DECLARATION OF VCH

the fact that Mr. Wallerstein intentionally tried to limit the remaining deposition time by imposing repeated unreasonable breaks. For instance, at 12:18pm, Mr. Wallerstein interrupted the deposition and took a 25 minute break. MPX-309. The deposition finally resumed at 12:45. MPX-309. Within approximately fifty minutes, Mr. Wallerstein interrupted the deposition again and disappeared with the witness for 1 hour and 10 minutes. MPX-310. Because Mr. Wallerstein refused to tell Loop AI when he would return, the court reporter and I did not leave the deposition room and remained there until the witnesses finally returned. For the remainder of the day, Mr. Wallerstein continued to interrupt the deposition, until he abruptly terminated it at 7:00pm and left with Ms. Nicolella and Mr. Ferri. MPX-232-233. *See* MPX220-227, MPX-229. Because they left abruptly, I was prevented from completing Ms. Nicolella's deposition and from taking Mr. Ferri's deposition. MPX-232. When they left, I was prepared to proceed with Mr. Ferri's deposition, with the interpreter, who was still there with us. *Id*

**Mr. Ferri**

37. Attached hereto at MPX-294-296 are true and correct copies of Mr. Ferri's declarations stating that he was an employee of Almawave S.r.l., and not of Almawave USA Inc.

38. Attached hereto as MPX-292-293 is a true and correct copy of Mr. Ferri's Linked-In profile available on the Internet printed by Loop AI's counsel in preparation for Mr. Ferri's jurisdictional deposition noticed for January 21, 2016. This document was previously filed with the Court at Dkt. 429-1. Mr. Ferri states in his profile that he is proficient in English.

39. I have personally observed Mr. Wallerstein and his team speak to Mr. Ferri and the other witnesses in English. When Mr. Ferri, Ms. Nicolella, Ms. Perri arrived at the deposition on January 21, 2016 with Mr. Wallerstein and Ms. Culp there was no interpreter with them. In addition, I have personally reviewed several items of correspondence produced by Almawave USA showing that Mr. Ferri, as well as the other witness are proficient in English. I am a non-native English speaker of Italian origin and have experience assessing other Italians

ability to speak English. Based on my observation and my review of Mr. Ferri's communications written in English, Mr. Ferri was perfectly capable of being deposed in English as he is completely fluent and competent to testify in English.

40. Mr. Wallerstein's statement that he made us aware that Mr. Ferri "did not speak English with sufficient competence" is false. In addition, it is clear that Mr. Wallerstein had never spoken or met with Mr. Ferri until sometime after Mr. Ferri arrived in the United States, and did not have any basis to claim that Mr. Ferri did not speak English.

41. Attached hereto at MPX-326-327 is a true and correct copy of a document previously filed on the record at Dkt. 419.

42. Attached hereto at MPX-340-341 is a true and correct copy of the Notice of Electronic Filing of Order 408.

43. Attached hereto at MPX-342-343 is a true and correct copy of a document previously filed on the record at Docket 429.

44. Attached hereto at MPX-344 is a true and correct copy of the Notice of Electronic Filing of Order 408.

Respectfully submitted,

Executed: October 4, 2016
        New York, NY

/s/ Valeria Calafiore Healy

Valeria Calafiore Healy

3:15-CV-00798-HSG-DMR          DECLARATION OF VCH