*Loop AI Labs Inc.*

*v.*

*Gatti et al*

N.D. Cal. 3:15-cv-00798-HSG

---

**Loop AI Labs Inc.
Appendix
MPX-214 to MPX-412**

---

VALERIA CALAFIORE HEALY (*pro hac vice*)
HEALY LLC
154 Grand Street
New York, New York 10013
Telephone: (212) 810-0377
Facsimile: (212) 810-7036

DANIEL J. WEINBERG (SBN 227159)
FREITAS ANGELL & WEINBERG LLP
350 Marine Parkway, Suite 200
Redwood Shores, California 94065
Telephone: (650) 593-6300
Facsimile: (650) 593-6301

Attorneys for Plaintiff
LOOP AI LABS INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS INC., <br><br> Plaintiff, <br><br> v. <br><br> ANNA GATTI, et al, <br><br> Defendants. | CASE NO.: 3:15-cv-00798-HSG-(DMR) <br><br> **PLAINTIFF LOOP AI LABS INC.'S ERRATA REGARDING DOCKET # 353.** <br><br> Action Filed: February 20, 2015 <br> Trial Date: July 11, 2016 |

3:15-CV-00798-HSG-DMR     **MPX-214**     PL.'S ERRATA RE: DKT. NO. 353

Plaintiff Loop AI Labs Inc. hereby respectfully submits this Errata to correct the following errors in its Notice of Jurisdictional Depositions Pursuant to Court Order at Dkt. 323, filed at Docket number 353:

- The address "DTI Global, 27 Maiden Lane, Suite 300, San Francisco, California 94108" on page 1 at line 4 and line 15 is hereby corrected to "333 Bush Street, 16th Floor, San Francisco, CA 94014".

- The term "Almaviva S.p.A" on page 6 line 14, page 7 line 9 is amended as followsL "Almaviva S.p.A. and Almawave S.r.l."

- The date "January 20, 2016" on page 6 at line 16 is hereby corrected to "January 21, 2016".

For clarity, the below chart is provided setting out the dates and times of all depositions:

## CHART OF JURISDICTIONAL DEPOSITIONS

| Date | Deponent | Time | Place |
|------|----------|------|-------|
| **Monday January 18** | Anna Gatti<br><br>Tony Di Napoli (IQS Inc.) | 8:00am<br><br>2:00pm | DTI Global<br>333 Bust Street<br>16th Floor<br>San Francisco, CA 94014 |
| **Tuesday January 19** | Marco Tripi (Almaviva Spa)<br><br>Gennaro Di Napoli (IQS Incl) | 8:00am<br><br>2:00pm | Venable LLP<br>505 Montgomery St<br>San Francisco, CA 94111<br>(Venable to confirm it agrees to have its clients deposed in its office) |
| **Wednesday January 20** | Mariantonietta Perri (Almaviva Spa)<br><br>Angela Nicolella (Almaviva Spa) | 8:00am<br><br>2:00pm | Venable LLP<br>505 Montgomery St<br>San Francisco, CA 94111<br>(Venable to confirm it agrees to have its clients deposed in its office) |
| **Thursday January 21** | Luca Ferri (Almaviva Spa) | 8:00am | Venable LLP<br>505 Montgomery St<br>San Francisco, CA 94111 |

**MPX-215**

1

| | | | (Venable to confirm it agrees to have its clients deposed in its office) |
|---|---|---|---|
| **Friday January 22** | Valeria Sandei (Almaviva Spa) | 8:00am | Venable LLP 505 Montgomery St San Francisco, CA 94111 (Venable to confirm it agrees to have its clients deposed in its office) |
| **Saturday January 23** | Raniero Romagnoli (Almaviva Spa) | 8:00am | Venable LLP 505 Montgomery St San Francisco, CA 94111 (Venable to confirm it agrees to have its clients deposed in its office) |
| | | | |

Respectfully submitted,

January 7, 2016

By: /s/ *Valeria Calafiore Healy*

Valeria Calafiore Healy, Esq. (*phv*)
HEALY LLC
154 Grand Street
New York, New York 10013
Telephone: (212) 810-0377
Facsimile: (212) 810-7036

Daniel J. Weinberg, Esq. (SBN 227159)
FREITAS ANGELL & WEINBERG LLP
350 Marine Parkway, Suite 200
Redwood Shores, California 94065
Telephone: (650) 593-6300
Facsimile: (650) 593-6301

Attorneys for Plaintiff
LOOP AI LABS, INC.

**MPX-216** 2

VALERIA CALAFIORE HEALY (*pro hac vice*)
HEALY LLC
154 Grand Street
New York, New York 10013
Telephone:    (212) 810-0377
Facsimile:    (212) 810-7036

DANIEL J. WEINBERG (SBN 227159)
FREITAS ANGELL & WEINBERG LLP
350 Marine Parkway, Suite 200
Redwood Shores, California 94065
Telephone:    (650) 593-6300
Facsimile:    (650) 593-6301

Attorneys for Plaintiff
LOOP AI LABS INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS INC., <br><br> Plaintiff, <br><br> v. <br><br> ANNA GATTI, et al, <br><br> Defendants. | CASE NO.: 3:15-cv-00798-HSG-(DMR) <br><br> **PLAINTIFF LOOP AI LABS INC.'S NOTICE OF AMENDED DEPOSITION VENUE REGARDING DOCKET # 353.** <br><br> Action Filed:  February 20, 2015 <br> Trial Date: July 11, 2016 |

**MPX-217**

Plaintiff Loop AI Labs Inc. hereby respectfully submits this Amended Notice of Deposition which modifies the venue of the jurisdictional depositions occurring from January 19 to January 23, 2016.

Specifically, on January 4, 2016, pursuant to the Order entered at Dkt. 323, Loop AI identified and served its Notices of jurisdictional depositions on all parties. *See* Dkt. 353. As a matter of professional courtesy, Loop AI selected as the deposition venue for the Almaviva witnesses the San Francisco offices of Venable LLP, its counsel. During a meet and confer held on January 8, 2016, Venable declined to confirm whether it would allow the depositions of its clients to take place in its San Francisco offices. Instead, Venable noted that it may need to charge for heating & A/C, as well as lighting, which it claimed may cost Venable extra during certain hours. In the afternoon of January 9, 2016, Venable also notified Loop AI that it does not intend to allow the Noticed depositions to occur at the noticed times and it will not allow certain depositions to occur on one of the dates notices, despite the Court order.

Accordingly, to ensure the smooth proceeding of the jurisdictional depositions and avoid situations in which Venable refuses to allow the court reporter or counsel in and out of its offices, Loop AI respectfully gives notice herein of its amended venue for the depositions of the Almaviva witnesses scheduled between January 19, 2015 and January 23, 2015. The venue of said depositions is modified from Venable LLP's San Francisco's office to DTI Global's San Francisco's office at 333 Bush Street, 16th Floor, San Francisco, California, as set forth in the below chart. Other than the change in venue for the dates described above, no other change is being made to the depositions notices previously served on January 4, 2016 filed at Dkt. 353 and its Errata filed at Dkt. 356.

**MPX-218** 1

**CHART OF JURISDICTIONAL DEPOSITIONS NOTICED**

| Date | Deponent | Time | Place |
|---|---|---|---|
| **Monday January 18** | Anna Gatti<br><br>Tony Di Napoli (IQS Inc.) | 8:00am<br><br>2:00pm | DTI Global<br>333 Bush Street<br>16th Floor<br>San Francisco, CA 94014 |
| **Tuesday January 19** | Marco Tripi (Almaviva Spa)<br><br>Gennaro Di Napoli (IQS Incl) | 8:00am<br><br>2:00pm | **New Venue**<br>DTI Global<br>333 Bush Street<br>16th Floor<br>San Francisco, CA 94014 |
| **Wednesday January 20** | Mariantonietta Perri (Almaviva Spa)<br><br>Angela Nicolella (Almaviva Spa) | 8:00am<br><br>2:00pm | **New Venue**<br>DTI Global<br>333 Bush Street<br>16th Floor<br>San Francisco, CA 94014 |
| **Thursday January 21** | Luca Ferri (Almaviva Spa) | 8:00am | **New Venue**<br>DTI Global<br>333 Bush Street<br>16th Floor<br>San Francisco, CA 94014 |
| **Friday January 22** | Valeria Sandei (Almaviva Spa) | 8:00am | **New Venue**<br>DTI Global<br>333 Bush Street<br>16th Floor<br>San Francisco, CA 94014 |
| **Saturday January 23** | Raniero Romagnoli (Almaviva Spa) | 8:00am | **New Venue**<br>DTI Global<br>333 Bush Street<br>16th Floor<br>San Francisco, CA 94014 |

Respectfully submitted,

January 11, 2016                 By:  /s/ *Valeria Calafiore Healy*

Valeria Calafiore Healy, Esq. (*phv*)
HEALY LLC

Daniel J. Weinberg, Esq. (SBN 227159)
FREITAS ANGELL & WEINBERG

Attorneys for Plaintiff
LOOP AI LABS, INC.

**MPX-219** 2

3:15-CV-00798-HSG-DMR                                    PL.'S ERRATA RE: DKT. NO. 353

Page 6

| | |
|---|---|
| SAN FRANCISCO, CALIFORNIA; THURSDAY, JANUARY 21, 2016 | 07:55:26 |
| 8:30 A.M. | 07:55:26 |
| --oOo-- | 07:55:26 |
| P R O C E E D I N G S | 07:55:15 |

MS. HEALY:  The time is now 8:30 a.m. on January 21st, 2016.  Counsel for Loop AI labs, Valeria Calafiore Healy and Dianna Wong, are at the deposition site pursuant to the notice of deposition for Mr. Luca Ferri noticed for 8:00 a.m. this morning.  There are no other counsel present in the room, and the witness has not arrived, so counsel will wait until they arrive.

Counsel also notes that during the last three days of deposition AlmavivA's counsel and their witnesses have arrived more than an hour late each day of deposition.

(Recess taken from 8:31 to 9:06.)

(Discussion off the record.)

MS. HEALY:  The time is now 9:09.  Counsel for the AlmavivA defendants, Mr. Wallerstein, Ms. Culp, and two witnesses, Ms. Nicolella and Mr. Ferri, and a witness who testified yesterday, Ms. Perri, arrived at 9:06 a.m. at the deposition site.  The time is now 9:09, and Mr. Wallerstein has asked to meet and confer on the record.

MR. WALLERSTEIN:  Yeah, I received a facsimile

before I ran out of the house this morning saying that

there was no interpreter that was ordered by the Court.

So I am not sure how we are supposed to proceed today,

but we are here ready to go if there is an interpreter.

MS. HEALY:  So we have worked through the

night to find an interpreter, and we have located one

finally, so the interpreter is on her way or his way.

They will arrive shortly.

In the meantime we would like to proceed

immediately with Ms. Nicolella's deposition.  We have

some English language documents that were drafted by

her.  I would like to -- you know, we can start with

what she wrote in English and we can start with some

very preliminary questions, including establishing her

knowledge of the English language.  So we can start with

that, and if she has difficulty with the English

language, the interpreter will be arriving in about an

hour and 20 minutes.

And I also note for the record that during the

jurisdictional discovery you never made a request that

we provide an interpreter.  And in fact, you

specifically indicated that at least two of your

witnesses would be testifying in English, specifically

Ms. Sandei and Mr. Romagnoli.  So I am ready to proceed

and we are ready to go, and the time is now 9:11.

ANGELA NICOLELLA - 1/21/2016

Page 8

MR. WALLERSTEIN:  Do you have the time recorded?                                                                09:11:18 / 09:11:19

THE REPORTER:  I do.                                                                                              09:11:21

MR. WALLERSTEIN:  It's really not necessary, Ms. Healy.  It's ridiculous to keep saying that.                    09:11:21 / 09:11:23

So pursuant to the court order, we have the right to have an interpreter.  Ms. Nicolella is going to testify in Italian, which I do not understand.         09:11:26 / 09:11:28 / 09:11:33

So no matter what you ask her, even if you ask it -- well, you must ask it in English.  But even if it's about an English document, she is going to answer in Italian.  I cannot understand it without an interpreter.  That is why the Court ordered you to have one today.                                                       09:11:38 / 09:11:41 / 09:11:45 / 09:11:48 / 09:11:52 / 09:11:55

As soon as you are ready to proceed, we will proceed.                                                            09:11:56 / 09:11:58

MS. HEALY:  I am ready to proceed now.  And I want to establish that Ms. Nicolella speaks or doesn't speak English.  So I am asking for the witness to sit on the witness seat, which you are currently occupying, and we can ask her some questions, and if she doesn't understand --                                              09:11:58 / 09:12:00 / 09:12:05 / 09:12:11 / 09:12:13 / 09:12:18

MR. WALLERSTEIN:  It's not a matter of whether she understands or not.  That has nothing to do with it.           09:12:18 / 09:12:18

MS. HEALY:  I have a right to establish                                                                           09:12:20

whether she speaks English.

          MR. WALLERSTEIN:  No, you do not.  You do not.
That's not even part of the scope of this deposition, so
no, you do not.

          MS. HEALY:  Yes, because the Court is
requiring us to pay for her interpreter --

          MR. WALLERSTEIN:  Correct.

          MS. HEALY:  -- and I have a right to establish
whether or not she speaks English --

          MR. WALLERSTEIN:  Incorrect.

          MS. HEALY:  -- because that's the law.  The
law does not allow you to impose this cost on an
opponent without establishing that the person does not
speak English.

          MR. WALLERSTEIN:  I'm not imposing anything.
The judge has made a ruling on this precise issue.  The
judge has ruled, and we are going to obey the judge's
order.  She is not testifying unless you obey the
judge's order with an interpreter.  So we will wait
until there is an interpreter so that I can understand
her testimony.

          MS. CULP:  And so that she can understand the
question and so she can be sworn in, which she can't be.

          MR. WALLERSTEIN:  Of course.  For innumerable
reasons.

09:12:21
09:12:23
09:12:24
09:12:26
09:12:27
09:12:29
09:12:31
09:12:31
09:12:33
09:12:36
09:12:36
09:12:37
09:12:41
09:12:45
09:12:46
09:12:46
09:12:49
09:12:50
09:12:54
09:12:58
09:12:58
09:13:00
09:13:02
09:13:05
09:13:07

**EXCERPTS**

ANGELA NICOLELLA – 1/21/2016

Page 10

MS. HEALY:  I also would like to note for the record that all three witnesses are here today without an interpreter, so presumably you have been speaking to them in English.

09:13:08
09:13:10
09:13:12
09:13:15

MR. WALLERSTEIN:  That's an amazing presumption, Ms. Healy.

09:13:16
09:13:18

So we will adjourn, and I guess you could send me an email if you have an interpreter, and we will try to come back.

09:13:20
09:13:22
09:13:27

MS. HEALY:  So I think probably the best way is for us to call the Court again if you --

09:13:27
09:13:30

MR. WALLERSTEIN:  We already did that, and she has ruled.  I don't think there is any ambiguity whatsoever in the ruling.

09:13:31
09:13:33
09:13:35

MS. HEALY:  So if you don't want to call the Court, there is nothing I can do.  I am not going to be able to force you.  We will be here ready to take the deposition, and we are not moving from here, because the judge ordered us to take these depositions.

09:13:37
09:13:39
09:13:41
09:13:44
09:13:46

MR. WALLERSTEIN:  Are you going to stay on the record again?  That was...

09:13:50
09:13:51

MS. CULP:  Do you have an estimate on when the interpreter will be here?

09:13:52
09:13:52

MR. WALLERSTEIN:  We are on standby, I suppose.

09:13:58
09:13:59

MS. HEALY:  Excuse me?                                    09:14:00

MS. CULP:  Do you have an estimate on when the            09:14:02
interpreter will be here, so we have an idea of when to   09:14:03
be back here?                                             09:14:07

MS. HEALY:  We were told that around 10:00 or            09:14:08
10:30.  It was very difficult.  And actually we have      09:14:12
collected some evidence relating to, you know, the        09:14:15
difficulties.                                             09:14:17

MR. WALLERSTEIN:  It really would have been              09:14:18
prudent to do this long, long ago, I agree.  It was very  09:14:19
foolish to wait.  I think that's one thing we agree on.   09:14:24

MS. HEALY:  Let the record reflect that                 09:14:27
Mr. Wallerstein --                                        09:14:28

MR. WALLERSTEIN:  Do you have something else            09:14:30
that we need to talk about?                               09:14:31

MS. HEALY:  Did you get what the witness said?          09:14:33
Did you get what she said?                                09:14:34

MS. CULP:  I couldn't tell you what she said.           09:14:38
It was in Italian, and I didn't understand her.           09:14:39

MS. HEALY:  Let the record reflect that the            09:14:44
witness is speaking to Mr. Wallerstein in English.        09:14:47

MR. WALLERSTEIN:  That's false.                         09:14:50

MS. HEALY:  Ms. Nicolella --                            09:14:51

MR. WALLERSTEIN:  That's false.                         09:14:54

Would you like to meet and confer about the              09:14:56

30(b)(6) of -- or not of your brother?  `09:14:58`

MS. HEALY:  I am here to take a deposition.  `09:15:07`

MR. WALLERSTEIN:  I am asking you a question.  `09:15:08`

MS. HEALY:  I am here to take a deposition of Ms. Nicolella and Mr. Ferri.  Will Mr. Ferri sit for the deposition now?  We are ready to take the deposition. We can even retake Ms. Perri if you like.  But we are here to take depositions --  `09:15:09` `09:15:12` `09:15:17` `09:15:20` `09:15:24`

MR. WALLERSTEIN:  Okay.  Just -- I am asking you if you would like to talk about Gianmauro.  Yes or no?  `09:15:26` `09:15:28` `09:15:32`

MS. HEALY:  I am here to take a deposition, Mr. Wallerstein.  `09:15:33` `09:15:34`

MR. WALLERSTEIN:  Well, apparently you are not, because you are not prepared.  So let us know when you are ready.  `09:15:35` `09:15:36` `09:15:38`

MS. CULP:  Just for your planning purposes, Mr. Ferri will also need an interpreter, as well as the witnesses tomorrow, so we can't proceed with Mr. Ferri either.  `09:15:39` `09:15:42` `09:15:47` `09:15:50`

MS. HEALY:  Okay.  Thank you for noting that.  `09:15:53`

(Mr. Wallerstein, Ms. Culp, Ms. Nicolella, Ms. Perri, and Mr. Ferri exit.)  `09:15:56` `09:15:56`

MS. HEALY:  The time is now 9:16 and we are off the record, and all the witnesses and counsel for  `09:16:01` `09:16:03`

AlmavivA have walked out of the deposition room.         09:16:06

(Recess taken from 9:16 to 9:19.)         09:16:07

(Mr. Wallerstein enters.)         09:19:09

MR. WALLERSTEIN:  We are going to Venable.         09:19:09
Send us a text or an email, or even a fax I should get,         09:19:10
too, whenever you have an interpreter.         09:19:18

(Recess taken from 9:19 to 11:12.)         09:19:20

MS. HEALY:  Q.  We are back on the record.         11:12:11
The time is 11:12.  And present in the room is counsel         11:12:12
for Loop AI Labs, Valeria Calafiore Healy and Dianna         11:12:16
Wong.  And also present in the room is the interpreter         11:12:22
brought by Loop AI Labs.  Would you please state your         11:12:25
name for the record?         11:12:29

THE INTERPRETER:  Marta Farinati.         11:12:30

MS. HEALY:  And will opposing counsel please         11:12:32
state his name for the record, as well as introduce         11:12:36
everyone else who is in the room?         11:12:40

MR. WALLERSTEIN:  I will.  This is Tom         11:12:42
Wallerstein, and with me is the deponent, Angela         11:12:43
Nicolella, my consultant, Arianna --         11:12:48

MS. HEALY:  Her last name?         11:12:52

MS. SCHNEIDER-STOCKING:  Schneider-Stocking.         11:12:54

MR. WALLERSTEIN:  Thank you, ma'am.         11:12:56

-- Kimberly Culp, my associate, and Luca         11:12:59
Ferri, and Mariantonietta Perri.         11:13:02

ANGELA NICOLELLA - 1/21/2016

Page 64

said earlier I spoke to Valeria Sandei or it could have     13:39:01

been Christian De Felice, but I don't remember.     13:39:04

MR. WALLERSTEIN:  Counsel, it's been six     13:39:10
minutes since my warning.  If you will be concluded with     13:39:12
this witness in five minutes, I will give you five     13:39:15
minutes more.  Otherwise I am taking our lunch break.     13:39:18

MS. WONG:  I do have a few more questions     13:39:22
about this topic, and I don't want to obstruct --     13:39:23

MR. WALLERSTEIN:  You can either represent     13:39:28
that you will be concluding the deposition of     13:39:30
Ms. Nicolella in the next five minutes or, if you cannot     13:39:34
make that representation, then we will take our lunch     13:39:38
break now.     13:39:41

MS. WONG:  I cannot make that representation.     13:39:42

MR. WALLERSTEIN:  So we are taking our break.     13:39:44

(Lunch recess taken from 1:40 to 2:50.)     13:39:46

(Mr. Raniero Romagnoli additionally present.)     14:50:05

MS. HEALY:  Back on the record.  The time is     14:50:06
now 2:50.  And let the record reflect that counsel for     14:50:08
AlmavivA and the witnesses returned to the deposition     14:50:13
room at approximately 2:46 p.m.     14:50:15

MR. WALLERSTEIN:  Including with Mr. Luca     14:50:20
Ferri, who is ready to be deposed today, as per his     14:50:21
notice.  He will not be available tomorrow.  We are     14:50:25
ready to proceed with him right now and at any time     14:50:28

ANGELA NICOLELLA - 1/21/2016

Page 65

hereafter.  I don't see us staying later than 6:00 or 7:00 o'clock tonight, so if you intend to take Mr. Ferri's deposition, I think you should begin.

MS. WONG:  The deposition for Mr. Ferri is noticed for today.  We will continue with Ms. Nicolella's deposition right now, though.

Q.   Ms. Nicolella, you were discussing home banking this morning.  I just want to understand.  Is that the same as online banking?

A.   Yes.

Q.   And to clarify, when did you start the online -- taking charge of the online banking for Almawave USA?

A.   So you mean to say when did I have access for the first time on -- to the online banking for -- on Bank of the West?

Q.   Yes.

A.   If I remember correctly, it was 2015 under -- after February 2015.

Q.   And why did you take over the online banking at Almawave USA?

A.   I was asked to take care of online banking for Almawave USA, Bank -- at Bank of the West.

Q.   Who asked you?

A.   Valeria Sandei.

objections on privilege grounds. So I am asking the 17:51:13

witness to answer the question of how much money she 17:51:17

recalls being in the bank account at Bank of the West 17:51:20

the last time she checked. 17:51:23

MR. WALLERSTEIN: Counsel, the -- the grounds 17:51:36

for the objection do not change by you repeating it 17:51:39

three times. So we have the same grounds and I have the 17:51:41

same proffer to investigate if you would like us to. I 17:51:45

understood you were refusing that proffer earlier. I 17:51:49

repeat it now. 17:51:51

MS. HEALY: There is nothing to investigate, 17:51:52

because the Court -- 17:51:53

Excuse me. I am just discussing with him. 17:51:54

The Court said that you can only object on 17:51:57

privilege grounds. So if you are instructing her not to 17:51:59

answer, that's fine. Go ahead and do it. But you are 17:52:02

not allowed to confer with the witness about how much 17:52:05

money is in the bank account. I am asking her a 17:52:08

question. 17:52:11

Q. Ms. Nicolella, will you answer my question? 17:52:12

How much money is in Bank of the West of Almawave USA's 17:52:21

bank account in San Francisco? 17:52:27

MR. WALLERSTEIN: The same objection on 17:52:31

grounds of privacy. And I repeat my offer to counsel. 17:52:32

If you would like us to investigate whether we can 17:52:35

ANGELA NICOLELLA – 1/21/2016

Page 130

provide that information, I am happy to do so, now or later.   17:52:37 / 17:52:40

MS. HEALY:  I want the witness to answer.  The witness came here to answer questions.   17:52:40 / 17:52:42

THE WITNESS:  I don't answer, because it is privileged -- private information.   17:52:54 / 17:52:56

MR. WALLERSTEIN:  Counsel, Mr. Ferri has been here waiting to be deposed for many, many hours.  May he be excused today, or do you intend to take his deposition?   17:53:19 / 17:53:20 / 17:53:25 / 17:53:28

MS. HEALY:  I intend to take his deposition.   17:53:29

MR. WALLERSTEIN:  He has a hard stop at 7:00 p.m.   17:53:31 / 17:53:33

MS. HEALY:  You took many breaks.  You arrived super late.  You have been doing this every day.  So I am continuing the depositions.  If you want to take your witnesses away -- you have been doing that before.  I am here and I am staying as long as it takes to take his deposition, as the Court ordered me.   17:53:34 / 17:53:35 / 17:53:40 / 17:53:42 / 17:53:45 / 17:53:49

MR. WALLERSTEIN:  He was here shortly after 9:00 a.m., Counsel, and he is leaving at 7:00.   17:53:51 / 17:53:52

(Deposition Exhibit 12 was marked for identification.)   17:54:18 / 17:54:18

MS. HEALY:  Q.  Ms. Nicolella, I am placing in front of you what's been premarked as Exhibit Number 12.   17:54:19 / 17:54:20

**EXCERPTS**

ANGELA NICOLELLA - 1/21/2016

Page 155

the witness to answer my question because we have little time.    19:01:22  19:01:24

MR. WALLERSTEIN:  We have no time.    19:01:25

MS. HEALY:  Q.  Can you please explain?  You said that Venable has been communicating with Lloyd's regarding your claim.    19:01:26  19:01:28  19:01:30

MR. WALLERSTEIN:  What's the question?    19:01:32

MS. HEALY:  Q.  -- is that correct?    19:01:33

MR. WALLERSTEIN:  Is that correct?  Is that what you said?    19:01:35  19:01:36

THE WITNESS:  No, Venable did not write to Lloyd's.    19:01:47  19:01:50

MR. WALLERSTEIN:  Okay.  Let's go.    19:01:50

MS. HEALY:  Q.  What did you mean when you said that?    19:01:52  19:01:53

MR. WALLERSTEIN:  We are done.    19:01:53

MS. HEALY:  I am sorry.  We are still taking her deposition.  Can you please not interrupt the deposition?    19:01:55  19:01:56  19:02:00

MR. WALLERSTEIN:  Mr. Ferri is still here.  Unfortunately he must go.  So he has been here since 9:00 a.m.    19:02:18  19:02:20  19:02:24

MS. HEALY:  I am here ready to continue the depositions.  We are still on the record, and I am here ready to continue.    19:02:25  19:02:27  19:02:30

MR. WALLERSTEIN:  It's 7:00 p.m., and we can't do that, so --

MS. HEALY:  Who said that?

MR. WALLERSTEIN:  Who said that?  I just said it.  I said it all day long.  I told you, like, four times.

(Whereupon, the deposition was adjourned at 7:02 p.m.)

--oOo--

I declare under penalty of perjury the foregoing is true and correct.  Subscribed at _____, this _____ day of _____, 2016.

_____

Angela Nicolella

MARIANTONIETTA PERRI – 1/20/2016

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

--oOo--

LOOP AI LABS INC.,                     )
                                       )
                Plaintiff,             )
                                       )
          vs.                          ) No. 3:15-cv-00798-HAG
                                       )
ANNA GATTI, an individual,             )
ALMAVIVA S.p.A., an Italian            )
corporation, ALMAWAVE S.r.l.,          )
an Italian corporation,                )
ALMAWAVE USA, Inc., a                  )
California corporation,                )
IQSYSTEM LLC, a California             )
limited liability company,             )
IQSYSTEM Inc., a Delaware              )
corporation,                           )
                                       )
                Defendants.            )
_____)

DEPOSITION OF

MARIANTONIETTA PERRI

_____

JANUARY 20, 2016

REPORTED BY:  SARAH LUCIA BRANN, CSR 3887  (JOB SF-070110)

**MPX-234**

MARIANTONIETTA PERRI - 1/20/2016

Page 3

QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER

| Page | Line |
| --- | --- |
| 94 | 14 |
| 99 | 24 |
| 102 | 12 |
| 102 | 18 |
| 103 | 16 |
| 103 | 24 |
| 104 | 21 |
| 105 | 3 |
| 105 | 12 |
| 107 | 5 |
| 107 | 13 |
| 107 | 18 |
| 107 | 25 |
| 108 | 18 |
| 108 | 23 |
| 112 | 5 |
| 112 | 12 |
| 112 | 19 |
| 112 | 24 |
| 113 | 3 |
| 113 | 17 |
| 113 | 20 |
| 114 | 3 |

MARIANTONIETTA PERRI - 1/20/2016

Page 4

QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER

| Page | Line |
| --- | --- |
| 114 | 23 |
| 115 | 4 |
| 117 | 6 |
| 119 | 24 |
| 122 | 2 |
| 122 | 9 |
| 126 | 6 |
| 132 | 6 |
| 134 | 8 |
| 134 | 17 |
| 134 | 25 |
| 137 | 6 |
| 143 | 19 |
| 146 | 12 |
| 154 | 7 |
| 157 | 3 |

--oOo--

Deposition of MARIANTONIETTA PERRI, taken by the plaintiff, at 333 Bush Street, Suite 1600, San Francisco, California, commencing at 8:48 a.m., on January 20, 2016, before SARAH LUCIA BRANN, CSR, pursuant to Notice.

--oOo--

A P P E A R A N C E S

FOR THE PLAINTIFF:

          HEALY LLC
          154 Grand Street
          New York, New York 10013
          212.810.0377
          By:  VALERIA CALAFIORE HEALY, Esq.
          vch@healylex.com
          By:  DIANNA WONG, Esq.
          dw@healylex.com

FOR ALMAVIVA S.p.A, ALMAWAVE S.r.l., ALMAWAVE USA:

          VENABLE LLP
          505 Montgomery Street, Suite 1400
          San Francisco, California 94111
          415.653.3750
          By:  THOMAS E. WALLERSTEIN, Esq.
          twallerstein@venable.com
          By:  KIMBERLY CULP, Esq.
          kculp@venable.com

ALSO PRESENT:

          VALERIA SANDEI, Almawave
          ANGELA NICOLELLA, Almawave
          ARIANNA SCHNEIDER-STOCKING, Interpreter

                    --oOo--

SAN FRANCISCO, CALIFORNIA; WEDNESDAY, JANUARY 20, 2016          07:59:32

8:48 A.M.          07:59:32

--oOo--          07:59:32

P R O C E E D I N G S          07:59:22

MS. HEALY:  The time is now 8:48.  Counsel for          08:48:00
Loop AI Labs is here at the deposition site for the          08:48:08
deposition of Ms. Perri.  The deposition was noticed for          08:48:12
a start time of 8:00 a.m.  Counsel and the court          08:48:15
reporter have been waiting since 8:00 a.m., and we will          08:48:18
continue to wait until the witness and all other counsel          08:48:21
arrives.  No other counsel is present except for Loop          08:48:26
AI, Loop AI's counsel.          08:48:31

(Recess taken from 8:48 to 9:00.)          08:48:35

MS. HEALY:  The time is now 9:00 a.m., and          09:00:03
counsel for Loop AI Labs, Valeria Calafiore Healy and          09:00:05
Dianna Wong, are still here in 333 Bush Street, in the          09:00:14
office of DTI, for the deposition of Ms. Perri.  Nobody          09:00:17
from Almawave or the AlmavivA defendants has yet          09:00:20
arrived, even though the deposition was noticed for          09:00:26
8:00 a.m.  So we will be continuing to wait for the          09:00:29
arrival of counsel and the witness.          09:00:31

(Recess taken from 9:00 to 9:04.)          09:00:33

MS. HEALY:  Good morning.  Let's go on the          09:04:47
record.          09:04:48

MS. WONG:  This is case number 15-798, the          09:04:51

matter of Loop AI Labs Inc. v. Anna Gatti, et al.  The date is January 20th, 2016.  The time is 9:05 a.m.  The witness is Mariantonietta Perri.

And will counsel please state their appearances for the record.

MR. WALLERSTEIN:  Who is speaking, please?

MS. WONG:  My name is Dianna Wong, counsel for Loop AI Labs.

MR. WALLERSTEIN:  This is Tom Wallerstein.  I am asking if there is an interpreter here, because my witnesses speak Italian.

MS. HEALY:  This is Valeria Calafiore Healy, and I am counsel for Loop AI Labs, and we are here to take the deposition of Ms. Perri.  And for the record, Ms. Perri and counsel for the AlmavivA defendants just arrived at 9:04 a.m.

MR. WALLERSTEIN:  So, is there an interpreter here, Ms. Healy?

MS. HEALY:  Are we ready to proceed for the deposition?

MR. WALLERSTEIN:  Obviously not, if there is not an interpreter.

MS. HEALY:  Will the court reporter please swear the witness?

MR. WALLERSTEIN:  Ms. Healy, we need an

09:04:54
09:05:00
09:05:05
09:05:11
09:05:14
09:05:16
09:05:18
09:05:20
09:05:20
09:05:20
09:05:25
09:05:26
09:05:27
09:05:32
09:05:34
09:05:39
09:05:41
09:05:43
09:05:44
09:05:47
09:05:48
09:05:50
09:05:51
09:05:53
09:05:54

interpreter, as we have told you repeatedly.                    09:05:55

MS. HEALY:  Would the court reporter please             09:05:59
swear the witness?                                             09:06:01

MR. WALLERSTEIN:  You can try.                          09:06:02

THE REPORTER:  Would you raise your right              09:06:08
hand, please?                                                  09:06:11

MR. WALLERSTEIN:  The witness is not going to           09:06:11
respond to English today, ma'am.                               09:06:13

MS. HEALY:  Ms. Perri, do you speak English?           09:06:14

MR. WALLERSTEIN:  She is not responding to             09:06:17
English, Ms. Healy, and I instruct her not to answer.          09:06:18

MS. HEALY:  Ms. Perri, will you --                     09:06:21

Ms. Court Reporter, will you be kind enough to          09:06:24
attempt to swear the witness?  If she doesn't want to          09:06:27
answer, that's fine.                                           09:06:30

MR. WALLERSTEIN:  Okay.  Well, I am going to            09:06:30
adjourn the deposition at this point if you don't have         09:06:31
an interpreter.                                                09:06:34

MS. HEALY:  I am asking the court reporter to           09:06:35
please attempt to swear the witness.  And if she doesn't       09:06:37
understand English, so it will be noted on the record          09:06:40
that she doesn't understand English.                           09:06:42

MR. WALLERSTEIN:  That's not the point.  I am           09:06:45
noting on the record that she is not proceeding with           09:06:47
this deposition in English.  We have told the Court            09:06:49

that.  We have told you that repeatedly.  If you are not   09:06:52
willing to provide an interpreter here today, I am   09:06:55
willing to discuss that with you, because we have some   09:06:59
alternate solutions, but proceeding in English is not   09:07:02
one of them.   09:07:08

Is this being videotaped, Ms. Healy?   09:07:09

MS. HEALY:  Ms. Court Reporter, could you   09:07:12
please try to swear the witness in?   09:07:13

THE REPORTER:  Would you raise your right   09:07:19
hand, please?   09:07:21

MR. WALLERSTEIN:  She is not going to respond   09:07:21
to English, ma'am.   09:07:23

MS. HEALY:  Let the record reflect that the   09:07:24
witness refuses to respond.   09:07:27

What's the exhibit number, the last exhibit   09:07:33
number we used last time?   09:07:36

MR. WALLERSTEIN:  So we are adjourning the   09:07:38
deposition.  And if you want to stay on the record,   09:07:40
whatever that means, we are adjourning the deposition.   09:07:42

Please come with me.   09:07:47

MS. HEALY:  Ms. Perri, I'd like to put in   09:07:48
front of you the --   09:07:48

MR. WALLERSTEIN:  Do not speak to my witness   09:07:49
in English without an interpreter.   09:07:51

(Ms. Perri, Ms. Nicolella, Ms.   09:07:53

Schneider-Stocking, and Ms. Culp exit.)                  09:07:53

MS. HEALY:  Okay.  Let the record reflect that          09:07:54
the witness just departed, and we will keep the video    09:07:56
going until everyone has left the room.                  09:08:01

Stay on the record, because we are                       09:08:05
obviously...                                             09:08:07

MR. WALLERSTEIN:  We are ready to call the               09:08:15
Court, if that's what you would like to do.              09:08:17

MS. HEALY:  I am here to take a deposition.  I           09:08:19
am not here to call the Court.                           09:08:21

So the witness has just left.  We will be                09:08:23
waiting for the next deponent at 2:00 p.m.               09:08:26

MR. WALLERSTEIN:  Well, we are ready to                  09:08:30
proceed and to talk to you about the situation.  We have 09:08:31
several alternate solutions for you.  We have taken the  09:08:37
liberty of procuring an interpreter if you would like to 09:08:40
hire one.  So would you not?                             09:08:44

MS. HEALY:  I am here to proceed with the                09:08:47
deposition.  The witness has left the room.  You have    09:08:49
instructed me that the deposition is adjourned.  We will 09:08:52
be here if the witness wishes to return.  We are going   09:08:55
to spend the whole day here waiting for the next witness 09:09:01
at 2:00 p.m.                                             09:09:03

MR. WALLERSTEIN:  Well, Ms. Healy, I am                  09:09:05
telling you that if you would like to talk about an      09:09:06

alternative solution so that the deposition may proceed,    09:09:09
I am here to do that.  Would you not like to do that?  I    09:09:11
am offering to have an interpreter for you, which I took    09:09:15
the burden and expense of making sure she would be here.    09:09:19
She is happy to be employed by you, if you would like to    09:09:24
proceed.                                                    09:09:27

         MS. HEALY:  Mr. Wallerstein, you didn't let us     09:09:27
ask the witness whether she speaks English, so I don't      09:09:31
find -- you haven't even established that she doesn't        09:09:34
speak English, because you were interfering with the        09:09:37
deposition.                                                 09:09:39

         The witness is now outside of the room, and we     09:09:39
are here to take her deposition.  I am not here to          09:09:41
engage in this colloquy with you.  The Court gave us a      09:09:44
very limited amount of time to actually depose             09:09:48
witnesses.                                                  09:09:50

         If you have an interpreter and you would like      09:09:50
your witness to speak with your interpreter, I am not       09:09:53
objecting to that.  You can do whatever you want.  But I    09:09:56
am here to ask questions of the witness and I am not        09:09:58
here to be cross-examined by you.  If you want to           09:10:02
interfere with the deposition, there's nothing I can do.    09:10:05
I can't go to the Court every two minutes because you       09:10:07
want to interfere.                                          09:10:10

         If you want to adjourn the deposition, as you      09:10:11

said on the record, there is nothing -- I am not going to force you. The Court granted these depositions because of what you told the Court, that there were no contacts. Sorry. You actually admitted the contacts, but said that these people didn't intend to do things, and they submitted declarations. So I am here to do what the Court ordered me to do.

MR. WALLERSTEIN: The Court also -- we mentioned that we would need an interpreter, and the Court agreed with that. We also told you that -- in any event, if you want to make a record of the witness's --

MS. HEALY: You adjourned the deposition, so I don't know what you want me -- I mean, this is not a game. We are spending a lot of money to be here. We have been waiting here since 8:00 a.m., the time that the deposition was noticed for, and you have done everything in your power to interfere. So I am going to stay here, and if you want to return with the witness, that's up to you, but I am not going to be --

MR. WALLERSTEIN: Okay. We will return in one minute.

(Mr. Wallerstein exits.)

(Pause in proceedings from 9:11 to 9:18.)

(The witness, Mr. Wallerstein, Ms. Culp, Ms. Nicolella, and Ms. Schneider-Stocking enter.)

MR. WALLERSTEIN:  Your name is Sarah?                        09:18:26

THE REPORTER:  Yes.                                         09:18:28

MR. WALLERSTEIN:  You work for DTI?                         09:18:30

THE REPORTER:  Yes.                                         09:18:31

MS. HEALY:  Let the record reflect that it's now 9:18 a.m. and the witness has returned to the room with counsel for the Almawave defendants, Mr. Wallerstein and Ms. Culp.  Also in the room is Ms. --                                         09:18:32

Who is the other person in the room?                        09:18:38

MR. WALLERSTEIN:  That's Ms. Angela Nicolella.             09:18:41

MS. HEALY:  Angela Nicolella, who is the witness noticed for deposition at 2:00 p.m.                        09:18:46

And will you introduce the other person in the room?                        09:18:51

MR. WALLERSTEIN:  This is my consultant, Arianna.                        09:18:55

MS. HEALY:  And consultant for Venable LLP is in the room, Arianna --                        09:18:57

MS. SCHNEIDER-STOCKING:  Schneider-Stocking.               09:19:06

MS. HEALY:  -- Schneider-Stocking.                         09:19:09

Do you need a spelling for that?                           09:19:09

Are you ready to proceed with the deposition?             09:19:09

MR. WALLERSTEIN:  No, she is not, because she doesn't understand English.                        09:19:12

MS. HEALY:  Would you like me to help you in bilingual?

MR. WALLERSTEIN:  No.

MS. HEALY:  Would you like me to translate for you?

MR. WALLERSTEIN:  That is not acceptable to me, no, Counsel.

MS. HEALY:  So I would like to --

Ms. Sarah, will you try again to swear the witness?

THE REPORTER:  Would you raise your right hand, please?

MR. WALLERSTEIN:  She is not responding to English, ma'am.

(Deposition Exhibit 5 was marked for identification.)

MS. HEALY:  Ms. Perri, I would like to put in front of you what we have premarked as Exhibit Number 5. Do you recognize that document?

THE WITNESS:  (Speaks in Italian.)

MS. HEALY:  (Speaks in Italian.)  Do you recognize this document?

MR. WALLERSTEIN:  No, no.  Do not respond.

I am not allowing you to translate and speak Italian at the deposition, per the court order.

MS. HEALY:  (Speaks in Italian.)                09:20:04

Translation:  Do you recognize this document?   09:20:07

MR. WALLERSTEIN:  No, the Court ordered,         09:20:08
pursuant -- on September 18, 2015, docket number 203 at   09:20:10
page 8, lines 9 through 12, "As to the language of the    09:20:16
deposition itself, plaintiff may use Italian only when    09:20:19
reading from a document."  It goes on to say, "and only   09:20:22
so long as plaintiff has provided a certified            09:20:26
translation of the document."                            09:20:29

So, Counsel, I will not allow you to speak       09:20:30
Italian today.                                           09:20:33

MS. HEALY:  Ms. Perri, do you recognize          09:20:35
Exhibit Number 5 in front of you?                        09:20:36

THE WITNESS:  (Speaks in Italian.)               09:20:40

MS. HEALY:  Ms. Perri, I am turning Exhibit 5    09:20:44
to page 2.  Is that your signature on that document?     09:20:47

THE WITNESS:  (Speaks in Italian.)               09:20:52

MS. HEALY:  Do you speak English, Ms. Perri?     09:20:58

THE WITNESS:  (Speaks in Italian.)               09:21:01

MS. HEALY:  Would you like me to translate?      09:21:06
Would you like me to translate?                          09:21:09

MR. WALLERSTEIN:  No, you are not allowed to     09:21:11
speak Italian here today, ma'am.                         09:21:13

MS. HEALY:  (Speaks in Italian.)                 09:21:15

Do you recognize the document?                   09:21:17

I am translating what I just said.    09:21:20

MR. WALLERSTEIN:  No, no.    09:21:22

MS. HEALY:  Do you recognize the document    09:21:23
that's in front of you?    09:21:24

MR. WALLERSTEIN:  Say what you need to say.  I    09:21:29
think you have already said it.    09:21:31

THE WITNESS:  (Speaks in Italian.)    09:21:33

MS. HEALY:  So you seem to understand what    09:21:40
Mr. Wallerstein is saying to you fine, apparently.  You    09:21:41
only understand him, but not me?    09:21:48

THE WITNESS:  (Speaks in Italian.)    09:21:52

MR. WALLERSTEIN:  Ms. Court Reporter, do you    09:22:07
not speak Italian?    09:22:08

THE REPORTER:  I do not.    09:22:11

MS. HEALY:  Excuse me.  Let me translate what    09:22:12
the witness just said.    09:22:14

MR. WALLERSTEIN:  Do not interrupt me,    09:22:15
Counsel.  I am speaking.    09:22:16

I understood that Ms. Healy had arranged to    09:22:18
have an Italian-speaking court reporter, but that's not    09:22:21
the case, apparently.  And you are not transcribing the    09:22:24
Italian today?    09:22:28

THE REPORTER:  I am not.    09:22:29

MS. HEALY:  I don't know where you understood    09:22:30
that.  For these depositions I never said the    09:22:33

jurisdictional depositions would have a bilingual court   09:22:36
reporter, so you are just completely making that up.   09:22:40

MR. WALLERSTEIN:  Well, I am not making up   09:22:43
what I understand, Counsel.   09:22:44

MS. HEALY:  Please, I am not here to engage in   09:22:46
colloquies with you.  The Court ordered us to take these   09:22:47
depositions.  I am asking Ms. Perri -- and I am happy to   09:22:52
translate for her.  I understand you have your own   09:22:54
interpreter in the room that you are free to use.   09:22:57
Nobody is objecting to you using any interpreter you   09:22:58
want.  I am happy to translate.   09:23:03

Ms. Perri, I am asking you again:  Is that   09:23:05
your signature on the document?  Did you sign that   09:23:07
document?   09:23:09

MR. WALLERSTEIN:  Ms. Healy, no, you are not   09:23:10
permitted to speak Italian, so your interpretation is   09:23:12
neither here nor there.  I am not permitting you to   09:23:15
speak Italian.   09:23:18

MS. HEALY:  Well, then I will keep asking my   09:23:19
questions.  And if she doesn't want to answer, she can   09:23:22
repeat what she wants to say.   09:23:27

Ms. Perri, can you look at the document,   09:23:29
please?   09:23:29

(Speaks in Italian.)   09:23:29

MR. WALLERSTEIN:  No, I am not allowing her to   09:23:30

respond to instructions or questions in Italian from you.          09:23:32 09:23:36

MS. HEALY: Ms. Perri, did you draft -- did you read this document that you presented to the Court?          09:23:37 09:23:37

(Speaks in Italian.)          09:23:42

MR. WALLERSTEIN: No, do not respond.          09:23:43

Counsel, you are violating a court order by speaking Italian.          09:23:45 09:23:47

MS. HEALY: If you don't want to allow the taking of these depositions, then I don't know why you are here. I am not going to be wasting the court reporter's time if you don't want the deposition to proceed.          09:23:49 09:23:51 09:23:53 09:23:56 09:23:59

MR. WALLERSTEIN: We are agnostic as to whether the deposition proceeds. I understood that Loop wants the depositions to proceed, which is why my witnesses flew in from Italy to be here.          09:23:59 09:24:03 09:24:05 09:24:09

MS. HEALY: And I'm here to take the deposition.          09:24:13 09:24:13

Ms. Perri --          09:24:14

MR. WALLERSTEIN: Do not interrupt me.          09:24:15

As I told you, Counsel, we require an Italian interpreter. You, Counsel, are not permitted to speak Italian at the deposition, pursuant to court order, and we require an Italian interpreter. If you do not --          09:24:16 09:24:19 09:24:23 09:24:25

MS. HEALY:  Ms. Perri --

MR. WALLERSTEIN:  Counsel, stop interrupting me.

If you do not have an Italian interpreter, then we can do this for as long as you like, but the witness will not be responding to questions in English and I will not allow her to respond to you speaking Italian.

MS. HEALY:  Ms. Perri, do you speak English?

MR. WALLERSTEIN:  Asked and answered.

MS. HEALY:  Ms. Perri --

MR. WALLERSTEIN:  That question has been asked --

MS. HEALY:  Don't let me interrupt you. Please go ahead.

MR. WALLERSTEIN:  The question has been asked and answered.  You can respond however you responded the first several times.

MS. HEALY:  Ms. Perri, I put in front of you a declaration that was presented to the Court.  Did you sign that declaration?

THE WITNESS:  (Speaks in Italian.)

MS. HEALY:  Translation:  "I will not respond to a question posed to me in English because English is not my first language and I don't feel comfortable

09:24:28
09:24:29
09:24:30
09:24:31
09:24:33
09:24:36
09:24:38
09:24:41
09:24:42
09:24:45
09:24:45
09:24:46
09:24:48
09:24:49
09:24:51
09:24:52
09:24:54
09:24:56
09:24:57
09:25:00
09:25:02
09:25:05
09:25:16
09:25:18
09:25:23

responding in English."

MR. WALLERSTEIN:  Counsel, you are behaving inappropriately, and I -- if you continue to proceed in this fashion, I am offering to call the Court.  I am offering to discuss alternative solutions with you.  If you don't want to do that, that's your prerogative, but we are not going to continue the charade for -- I don't know how many hours you intend to do this.

MS. HEALY:  Ms. Perri, is this your declaration, the document in front of you?

MR. WALLERSTEIN:  Objection; asked and answered.

MS. HEALY:  Ms. Perri, will you answer the question, please?

MR. WALLERSTEIN:  Objection.

MS. HEALY:  The witness can answer.

MR. WALLERSTEIN:  Well, she cannot, because you are not speaking Italian.

MS. HEALY:  You don't want me to speak Italian.

MR. WALLERSTEIN:  Touché.

MS. HEALY:  It's difficult.

MR. WALLERSTEIN:  Touché.  She will not, because you do not have an interpreter here.

MS. HEALY:  Then if she is not going to speak,

the deposition is over.  I mean, there is nothing we can do, and we will move for sanctions.  And I think what you have done today is completely inappropriate.  There is nothing we can do.  If you are not going to let her --

MR. WALLERSTEIN:  There are things we can do.

MS. HEALY:  If you are not going to let her answer any questions and -- I just don't know how to proceed.  You know, you want us to waste the whole morning?

MR. WALLERSTEIN:  No.

MS. HEALY:  There is really -- I am taken aback by your behavior.

MR. WALLERSTEIN:  That's odd, because we told you this several times in writing, at the court, and otherwise, so being taken aback is disingenuous.

I am here to have the deposition proceed.  I am going to permit her to answer questions, provided they are asked in English and interpreted into Italian by someone other than you.

MS. HEALY:  So you brought your own interpreter, and you are free to use her.

MR. WALLERSTEIN:  It's not my responsibility --

MS. HEALY:  Did you bring your interpreter

here today?                                                    09:27:05

MR. WALLERSTEIN:  Not to provide services to                   09:27:07
you.                                                           09:27:08

MS. HEALY:  Okay.  So you don't want to use                    09:27:08
her?                                                           09:27:09

MR. WALLERSTEIN:  Use her for what?                            09:27:10

MS. HEALY:  You have an interpreter here that                  09:27:11
can do whatever you want her to do with the witness.  I        09:27:13
am confused as to what it is that you want.                    09:27:16

MR. WALLERSTEIN:  I want you to live up to                     09:27:19
your obligations that we expressed in writing and orally       09:27:21
more than once, which is to have a certified interpreter       09:27:25
interpret for the witness.                                     09:27:28

MS. HEALY:  Okay.  We don't have an                            09:27:29
interpreter.  So if you will only allow us to take a           09:27:31
deposition if we bring our own interpreter, then we            09:27:34
don't have one.  And if you don't allow me to translate,       09:27:36
then there is no basis for -- you know, there is nothing       09:27:39
we can do.                                                     09:27:42

I believe your statements are completely                       09:27:44
contrary to the law.  We have a declaration by                 09:27:46
Ms. Perri, and I am here to ask her questions about what       09:27:49
she submitted to the Court.  I am not objecting to you         09:27:53
using your own interpreter.  So if you want to use her,        09:27:57
let's move forward, because it's 9:28.  We have been           09:27:59

waiting, two counsel and one court reporter, in this    09:28:04

room for one hour and 28 minutes.  So I don't think what    09:28:06

you are doing is consistent with either what the Court    09:28:10

required or the law.    09:28:14

Anyway, I am not going to make speeches.    09:28:15

MR. WALLERSTEIN:  What the heck was that?    09:28:18

MS. HEALY:  I just -- right.  That was my    09:28:20

objection for the record, and I am done.    09:28:21

I am going to keep asking questions of    09:28:23

Ms. Perri.  If she is not going to answer, that's going    09:28:25

to be our record.    09:28:27

MR. WALLERSTEIN:  I am waiting for you to stop    09:28:28

talking so that I may say something.  Are you done?    09:28:30

We have a solution for you, which is we are    09:28:34

happy to have you hire the interpreter, which we can    09:28:36

provide to you in about 10 seconds' notice.  And yes, it    09:28:42

would be Arianna, who is happy to be engaged and serve    09:28:45

the function, if you are willing to pay for that.    09:28:49

MS. HEALY:  I am here.  I can translate.  You    09:28:51

can verify the translation accuracy of anything I    09:28:53

translate for Ms. Perri --    09:28:56

MR. WALLERSTEIN:  No.    09:28:58

MS. HEALY:  -- with your own interpreter who    09:28:58

is in the room.    09:29:00

MR. WALLERSTEIN:  You may not.  There is a    09:29:02

court order preventing you from doing that, for good
reason.

MS. HEALY:  I disagree.  The court order says
absolutely nothing about these depositions, and it's a
court order which was never addressing the
jurisdictional depositions that were ruled on many
months later.

MR. WALLERSTEIN:  No, it was addressing the
language of depositions.  It says, "As to the language
of deposition itself, plaintiff may use Italian only
when recording from -- when reading from a document."

MS. HEALY:  That was talking about the
deposition of Mario Pepe, and it has nothing to do with
any of the depositions this week.

MR. WALLERSTEIN:  It was talking about the
deposition of Mario Pepe, with the understanding that
counsel does not speak Italian, and it's the same
counsel that also does not speak Italian.

MS. HEALY:  I understand.  That was your
understanding.

And I am not speaking Italian.  I am only
trying to help the witness, who you claim doesn't speak
English, even though she has submitted a sworn
declaration to the Court in English.

So I am here to ask her questions about what

she submitted to the Court.

Obviously it was a lie.  So, I mean, I guess we didn't really need to bring her here, because she lied about what she submitted.  She doesn't speak English, and she submitted a declaration to the Court.

So, Ms. Perri, I am here to ask you some questions.

Do you understand what I am saying?

THE WITNESS:  (Speaks in Italian.)

MS. HEALY:  "Attorney, I repeat again that I cannot answer because I don't feel comfortable answering in a language that is not my mother tongue."

MR. WALLERSTEIN:  Move to strike the interpretation -- the purported translation of Ms. Healy, who is not permitted to speak Italian at this deposition.

If you continue to engage in contempt of the Court's order, Ms. Healy, explicit or implicit, we will not allow the witness to proceed.

MS. HEALY:  Ms. Perri --

MR. WALLERSTEIN:  We are taking a break, Counsel.

MS. HEALY:  Let the record reflect that at 9:31 the witness and counsel are taking a break.

(Recess taken from 9:31 to 9:33.)

09:29:53
09:29:54
09:29:57
09:30:00
09:30:03
09:30:05
09:30:11
09:30:12
09:30:14
09:30:31
09:30:34
09:30:37
09:30:41
09:30:42
09:30:46
09:30:51
09:30:51
09:30:57
09:31:00
09:31:14
09:31:15
09:31:16
09:31:17
09:31:18
09:31:22

Page 26

MR. WALLERSTEIN:  Pathetic.                      09:33:30

(Addressing Ms. Wong)  You should be ashamed     09:33:31

to be part of it.                                09:33:32

(Addressing the Reporter)  As should you,        09:33:34

ma'am.                                           09:33:34

MS. HEALY:  Let the record reflect that the      09:33:36

witness is back in the room.  The time is now 9:33 a.m.   09:33:37

Counsel for the AlmavivA defendants is back in the room,  09:33:40

along with their consultant/interpreter and another      09:33:43

witness, and counsel, Ms. Culp.                  09:33:48

(Deposition Exhibit 6                            09:33:51

was marked for identification.)                  09:33:51

MS. HEALY:  Ms. Perri, I am going to place in    09:33:52

front of you what we have premarked as Exhibit Number 6.  09:33:54

First of all, I guess we should try again to     09:33:59

swear the witness.                               09:34:01

MR. WALLERSTEIN:  Do you have copies for         09:34:02

counsel?                                         09:34:03

MS. HEALY:  Here is a copy.                      09:34:04

Because she is not under oath at the moment,     09:34:06

so --                                            09:34:08

Ms. Perri, do you understand an oath?            09:34:10

THE WITNESS:  (Speaks in Italian.)               09:34:15

MS. HEALY:  I understand.  Ms. Perri, do you     09:34:22

understand what the words "I declare under --"   09:34:24

Excuse me.  Can you -- sorry.  I got distracted.

Ms. Perri, do you understand the words, quote, "I declare under penalty of perjury under the laws of the United States of America"?  Do you understand these words?

THE WITNESS:  (Speaks in Italian.)

MS. HEALY:  Would your translator care to translate what she said, for the record?

MR. WALLERSTEIN:  I assume I know what she said.

MS. HEALY:  I am asking you if you would like your translator, your interpreter, to translate what she said.  Otherwise I will.

MR. WALLERSTEIN:  It's your deposition, Counsel.

MS. HEALY:  For the record, the witness just said that she doesn't feel comfortable answering in English, because it's not her mother tongue.

MR. WALLERSTEIN:  Move to strike.  Move to strike counsel's interpretation.

MS. HEALY:  Ms. Perri, do you understand what taking an oath means?

MR. WALLERSTEIN:  Objection; asked and answered.

MS. HEALY:  (Speaks in Italian.)                              09:35:33

MR. WALLERSTEIN:  Objection.  Instruct the                   09:35:38
witness not to answer counsel's Italian.                     09:35:39

MS. HEALY:  That was my translation of my                    09:35:42
question.                                                    09:35:43

Ms. Perri, do you understand what it means to                09:35:44
make a statement under oath?                                 09:35:47

MR. WALLERSTEIN:  Objection; asked and                       09:35:49
answered.                                                    09:35:50

MS. HEALY:  Translation:  (Speaks in Italian.)               09:35:50

MR. WALLERSTEIN:  No.  I instruct the witness                09:35:55
not to answer counsel's Italian.                             09:35:56

MS. HEALY:  Ms. Perri, are you the director of               09:36:01
legal affairs of AlmavivA S.p.A.?                            09:36:03

Translation:  (Speaks in Italian.)                           09:36:07

MR. WALLERSTEIN:  No, I instruct the witness                 09:36:12
not to answer counsel's translation.  If you have a          09:36:13
certified interpreter who can interpret for the witness,     09:36:16
then we will do that.  We also have the ability to           09:36:19
provide one for you at your expense, if you want to          09:36:21
discuss that, or other alternatives as well.                 09:36:24

MS. HEALY:  Would you like your interpreter                  09:36:28
who is sitting in the room to translate for your             09:36:30
witness?  I have no objections to you doing that.  Is        09:36:32
that a no?  I am going to proceed to the next question.      09:36:37

Ms. Perri, have you reviewed the first amended complaint in this action?

THE WITNESS:  (Speaks in Italian.)

MS. HEALY:  Translation:  "Ms. Healy, I will not answer a question posed in English because I don't feel comfortable doing it, as it is not my first language."

Ms. Perri, do you understand the words, quote, "I have reviewed the First Amended Complaint and, in particular, paragraph 62 therein," close quote?

MR. WALLERSTEIN:  Objection.  Counsel, the witness has said several times, according to your interpretation, that she will not answer a question posed in English because she doesn't feel comfortable doing it, as it is not her first language.  That was your translation.  So please desist unless you have an interpreter.

MS. HEALY:  Translation of my question: (Speaks in Italian.)

MR. WALLERSTEIN:  Are you finished?

MS. HEALY:  That was the translation of the question.

MR. WALLERSTEIN:  I don't know if it was or not, but --

MS. HEALY:  You have an interpreter here to

tell you whether my translation was accurate, and she can feel free to correct the accuracy of the translation.

MR. WALLERSTEIN:  Counsel, please don't interrupt me.

I don't know if that was a correct translation or not.  I do know that the Court ordered on September 18, 2015 that Plaintiff may use Italian only when reading from a document, and I will not allow the witness to respond to counsel's interpretation.  If you want to make arrangements for a certified interpreter, we are willing to help you do that.

MS. WONG:  Mr. Wallerstein, you just asked the court interpreter, who was sitting there, to verify the accuracy, and she nodded, indeed.  So you are able to confirm the accuracy of the translation.

MS. HEALY:  And also, in respect of the court order you just referenced, for the record, the court order related to the deposition of Mario Pepe has nothing to do with this.

You never presented this question to the Court when there was the motion on the jurisdictional depositions.  In fact, I note that during the hearing you specifically said to the Court you would be bringing your own interpreter if needed.

09:38:24
09:38:26
09:38:29
09:38:29
09:38:31
09:38:31
09:38:33
09:38:35
09:38:39
09:38:42
09:38:45
09:38:47
09:38:51
09:38:54
09:38:57
09:38:59
09:39:03
09:39:05
09:39:08
09:39:14
09:39:14
09:39:17
09:39:19
09:39:23
09:39:27

In any event, I will proceed with the deposition to the best of our ability.

I am going to ask you again if you understand what taking an oath means.

MR. WALLERSTEIN: Counsel, I --

MS. HEALY: Please let me finish my question.

MR. WALLERSTEIN: I thought you were finished.

MS. HEALY: I was -- I am not finished.

MR. WALLERSTEIN: It's hard to tell sometimes. Please go on.

MS. HEALY: I am going to translate the question for the record.

MR. WALLERSTEIN: I won't allow the witness to answer your translations.

MS. HEALY: (Speaks in Italian.)

MR. WALLERSTEIN: No. I will not -- I instruct the witness not to answer, because you are violating the Court's order and --

MS. HEALY: Let the record reflect that Mr. Wallerstein has an interpreter in the room who can verify the accuracy of my translation for the witness.

MR. WALLERSTEIN: I believe the record is crystal clear at this point, Ms. Healy. Why are you continuing with the charade?

MS. HEALY: Ms. Perri, I am going to direct

your attention to paragraph 2 of Exhibit 2, which was    09:40:22

filed with the Court at docket number 596 and was also   09:40:27

refiled with the Court at the subsequent docket number.  09:40:32

I'm going to be reading from that document    09:40:38

that you signed, or purported to have signed.    09:40:41

Translation:  (Speaks in Italian.)    09:40:46

MR. WALLERSTEIN:  I won't allow the witness to    09:40:51

respond, and I object to the question because I don't    09:40:52

understand it.    09:40:56

MS. HEALY:  Your objection is noted.    09:40:57

Do you understand the meaning of the phrase,    09:41:01

quote, "The allegations against me contained in that    09:41:04

paragraph are false," close quote?    09:41:09

Translation:  (Speaks in Italian.)    09:41:14

MR. WALLERSTEIN:  Objection.  Move to strike    09:41:32

whatever it was that counsel just said.  Instruct the    09:41:33

witness not to respond to counsel's Italian.    09:41:38

If you want to have a certified interpreter,    09:41:42

as per the rules and the orders of this court, then you    09:41:43

can proceed, but I will not allow her to respond to your    09:41:48

Italian, Counsel.    09:41:51

MS. HEALY:  Ms. Perri, I am going to direct    09:41:54

your attention to paragraph 4.  Can you look at    09:41:56

paragraph 4?    09:41:58

Translation:  (Speaks in Italian.)    09:41:59

MR. WALLERSTEIN:  Same objection.  Same instruction.  Counsel, you are being harassing, and you are in contempt.

MS. HEALY:  (Speaks in Italian.)

Can you look at paragraph 4?

MR. WALLERSTEIN:  Counsel, I am going to give you one last chance.  The next time you speak Italian, then we will adjourn the deposition and try to contact the Court.

MS. HEALY:  I am not speaking Italian.  I am speaking in English, as the video will readily reflect.  I am, at your request, trying to help the witness, if she doesn't understand English, to speak in both English and give a translation.  And you have your interpreter here in the room who can correct my translation if it's inaccurate.

MR. WALLERSTEIN:  I did not -- I am sorry.

MS. HEALY:  You are refusing to use your own interpreter who you brought.  There is nothing I can do.

MR. WALLERSTEIN:  Counsel --

MS. HEALY:  I am here to try and be as efficient as I can to do what the Court ordered us to do.

MR. WALLERSTEIN:  I have something to say.  Let me know when you are finished.

Thank you.          09:42:59

No, I did not ask you to help the witness.          09:43:00
You have done plenty to -- for these witnesses already,          09:43:03
and it hasn't been helpful.          09:43:08

I am not asking you to help the witness.  I am          09:43:11
asking you to have a certified interpreter who can          09:43:13
translate, not you, Counsel, and we will not respond to          09:43:16
your Italian.  The next time you speak Italian we will          09:43:19
adjourn the deposition, unless you are reading from an          09:43:23
Italian language document.          09:43:26

MS. HEALY:  Next question, Ms. Perri.  I am          09:43:28
going to be reading from the document in front of you,          09:43:29
Exhibit Number 2.          09:43:32

Translation:  (Speaks in Italian.)          09:43:33

MR. WALLERSTEIN:  Well, as warned, we are          09:43:39
adjourning the deposition because, Counsel, you continue          09:43:40
to speak Italian.  I don't speak Italian.          09:43:42

MS. HEALY:  That was a translation of my          09:43:45
question because, at your request, you claim that the          09:43:47
witness doesn't speak English.  You don't even let me          09:43:50
ask her a question.          09:43:52

Let me ask this question.          09:43:52

MR. WALLERSTEIN:  Stop interrupting me,          09:43:54
Counsel.  I want to make an objection.          09:43:54

MS. HEALY:  Ms. Perri --          09:43:56

MARIANTONIETTA PERRI - 1/20/2016

Page 35

I am here to take a deposition.                          09:43:56

Ms. Perri, do you speak English?                        09:43:58

MR. WALLERSTEIN:  Asked and answered.                   09:44:01

MS. HEALY:  You can answer.                              09:44:02

Have you ever spoken English?                           09:44:05

THE WITNESS:  (Speaks in Italian.)                      09:44:07

MS. HEALY:  Translation:  "Ms. Healy --"                09:44:16

MR. WALLERSTEIN:  We are adjourning the                 09:44:18
deposition.                                             09:44:20

MS. HEALY:  "-- I am not comfortable answering          09:44:20
in English, because it's not my mother tongue."         09:44:22

(The witness, Ms. Culp, Ms. Nicolella, and Ms.          09:44:27
Schneider-Stocking exit.)                               09:44:34

MR. WALLERSTEIN:  Don't go far.                         09:44:39

MS. HEALY:  Let the record reflect that                 09:44:41
Mr. Wallerstein was talking to the witness in English   09:44:42
and instructed the witness to not go far --             09:44:44

MR. WALLERSTEIN:  I was talking to Ms. Culp.            09:44:48

MS. HEALY:  -- and she nodded, like she did             09:44:49
before.                                                 09:44:52

Mr. Wallerstein, in what language have you              09:44:52
been speaking to the witness?                           09:44:55

MR. WALLERSTEIN:  I am not being deposed.               09:44:56

MS. HEALY:  Let the record reflect that the             09:45:00
witness and everyone else has walked out of the room,   09:45:01

and now here in the room is just Loop AI's counsel, the court reporter, and Mr. Wallerstein.

MR. WALLERSTEIN:  And Ms. Wong, I guess Loop AI's counsel.

So, Counsel, I beseech you again to reach out to the Court so that we can finish the deposition.  They came a long way for this.

MS. HEALY:  I am going to reach out to the Court to move for sanctions.

MR. WALLERSTEIN:  Okay.  Let's do that.

MS. HEALY:  I am here to take a deposition, and I am not here to go speak to the Court this morning. If you want to get a protective order, you can feel free to seek a protective order, but I will be moving for sanctions, because you have an interpreter in the room that could help you.  I am here to help translate for the witness, and you don't let the witness answer questions.  There is nothing I can do.

MR. WALLERSTEIN:  There is something you can do.  You could reach out to the Court with me right now. Do you refuse?  That's fine.

MS. HEALY:  I am not refusing to reach out to the Court.  I am here to take a deposition, and you have been -- I want to be able to show the Court what you have been doing.

MARIANTONIETTA PERRI – 1/20/2016

Page 37

MR. WALLERSTEIN: Okay. So you have done that. Let's call the Court.

MS. HEALY: You can call the Court.

Are you adjourning the deposition?

MR. WALLERSTEIN: No, we are here. We are just waiting for you to figure out what you want to do.

(Mr. Wallerstein exits.)

MS. HEALY: Let the record reflect that Mr. Wallerstein has now left the room.

(Pause in proceedings from 9:46 to 9:51.)

(Mr. Wallerstein enters.)

MS. HEALY: Are we on the record now? Let's go on the record.

MR. WALLERSTEIN: I do, yes. We are trying to contact Judge Ryu for guidance.

MS. HEALY: On your own? Guidance at the last minute in the deposition?

MR. WALLERSTEIN: No. We tried to get guidance at the hearing, and on January 8, and again in writing, and on the phone.

(Mr. Wallerstein exits.)

(Recess taken from 9:51 to 9:58.)

(Mr. Wallerstein and Ms. Culp enter.)

(Sarah Beard, Judge Ryu's law clerk, now present telephonically.)

MS. BEARD: Judge Ryu's Chambers.     09:58:18

MR. WALLERSTEIN: Ms. Beard, this is Tom     09:58:18
Wallerstein.     09:58:18

MS. BEARD: Hi. Are all parties present?     09:58:19

MR. WALLERSTEIN: Sure. We have Valeria Healy     09:58:21
and Dianna Wong and a court reporter, I believe.     09:58:22

MS. HEALY: Yes. And, Ms. Beard, we are now     09:58:25
on the record with our own court reporter, so that the     09:58:29
statements of counsel can be recorded.     09:58:32

MS. BEARD: Okay. So just for the record, I     09:58:35
am just going to have each party give me a brief     09:58:37
statement about what the dispute is and any proposal to     09:58:39
move the deposition forward, so that I can try to get a     09:58:43
message to Judge Ryu and get you guys a ruling so that     09:58:47
you can move forward with the deposition today.     09:58:50

Mr. Wallerstein, please.     09:58:53

MR. WALLERSTEIN: Thank you. So at the     09:58:55
December 10 hearing we discussed -- I believe it was on     09:58:56
the record; we had part of the day on the record and     09:58:58
part off. I believe it was on the record that we     09:59:01
discussed some of our witnesses would require an     09:59:03
interpreter because they speak Italian as their first     09:59:06
language, were not comfortable being deposed in English,     09:59:10
were not comfortable hearing questions in English or     09:59:14
answering questions in English. So we had that     09:59:18

conversation with Judge Ryu.

We then received, on January 4, a list of the witnesses that Loop intended to depose. We immediately contacted them and said that we needed to have an interpreter for at least some of those witnesses. We then followed that up with several more communications to that effect, that we would require an interpreter. Counsel refused to engage with us on that issue and, as we feared, has shown up today without an interpreter.

The witnesses -- today has two witnesses, neither of whom speak English very well, both -- in my opinion, both of whom expressed their requirement that they have questions asked of them in Italian and that they be allowed to answer in Italian.

On the other hand, me, Tom Wallerstein and my colleague, Kimberly Culp, and all the lawyers in my office in San Francisco do not speak Italian. So it is unacceptable to us to have Ms. Healy, who conveniently speaks Italian, purport to translate and ask questions in Italian.

And in fact, Judge Ryu ordered on September 18, docket number 203 at page 8, line 9 through 12, "As to the language of the deposition itself, plaintiff may use Italian only when reading from a document."

That order resulted from our argument that I    10:00:47
and Ms. Culp, who will be defending the deposition, do    10:00:50
not speak Italian, and therefore we require that the    10:00:56
questions be in English.  And Judge Ryu agreed, and she    10:00:59
ordered that Ms. Healy may not speak Italian at the    10:01:04
deposition.    10:01:06

So we have two issues.  The witnesses require    10:01:07
Italian, and in our view Ms. Healy is obligated to    10:01:09
provide an Italian-speaking interpreter.  On the other    10:01:14
hand, I am entitled to understand the questions.  The    10:01:18
judge and the jury is entitled to understand the    10:01:22
questions.  So the questions need to be posed in    10:01:24
English, interpreted into Italian, answered in Italian,    10:01:27
interpreted back into English.    10:01:30

I also understand that the court reporter does    10:01:32
not speak Italian and cannot transcribe the Italian,    10:01:34
which is another reason we need the interpretation.    10:01:38

So this is why we have been trying to raise    10:01:41
this issue for several weeks with Ms. Healy, to make    10:01:43
sure that she would have an Italian-speaking    10:01:46
interpreter.    10:01:49

Now, Ms. Healy has offered to speak Italian    10:01:50
and to do the translations herself.  She has purported    10:01:53
to -- she asks a question in English, and then she says,    10:01:56
"Ah," and then she says something in Italian and    10:01:59

represents that she just translated it.

That is unacceptable to me for a variety of reasons.  Number one, I am not required -- I should not be required to trust opposing counsel to accurately translate.  Number two, I can't understand what she is saying in Italian.  And number three, I am informed by a consultant that I had the foresight to bring, who does speak Italian, that the translations have been less than adequate for the purpose in which they are required.

I have a proposal which is a solution, which is Ms. Healy can engage and pay a certified interpreter to conduct the deposition as it should be conducted.  I took the liberty of having her here, and if Ms. Healy would like to engage her, I think we can proceed.

MS. HEALY:  Let me know when you would like me to respond.

MS. BEARD:  Yes.  One moment.  One moment.

She is present at the deposition?

MR. WALLERSTEIN:  She is.

MS. BEARD:  Okay.  All right.  Ms. Healy?

MS. HEALY:  So as a first point, I would like to seek permission to submit to the Court the video of everything that happened here today, because the video will show that Mr. Wallerstein's statements lack any merit.  The video is really, like, the best evidence of

10:02:02
10:02:04
10:02:06
10:02:10
10:02:13
10:02:16
10:02:20
10:02:24
10:02:26
10:02:30
10:02:34
10:02:40
10:02:44
10:02:47
10:02:51
10:02:53
10:02:55
10:03:01
10:03:03
10:03:05
10:03:07
10:03:10
10:03:14
10:03:16
10:03:21

what's been going on in this room.

As a first matter, the depositions have been noticed for 8:00 a.m.  Nobody showed up until after 9:00.  The court reporter and counsel were waiting here in the room, and that's the second day that they arrived more than one hour late.  That's the first point.

The second point, the witness in particular submitted a declaration in English.  But even before I address this issue, this particular witness, as well as all the jurisdictional witnesses who have been noticed for deposition this week, were all specifically listed in the jurisdictional motion which the judge heard on December 10th.  And I don't have the docket handy in front of me, but my colleague is going to pull it.  And in that jurisdictional motion Mr. Wallerstein never made any application to have opposing counsel pay for an interpreter.

At the hearing on December 10 -- and my colleague will read the exact lines from that hearing -- the Court inquired as to whether an interpreter would be needed, and Mr. Wallerstein stated on the record that he would be bringing his own interpreter.

We noticed the depositions in accordance with the court order on January 4th.  Mr. Wallerstein sent us a letter on January 9th claiming he would not allow any

deposition to go forward until we provided him an

interpreter, even though under the law and the cases he

provided to us there is no basis to force opposing

counsel to pay for an interpreter until it is

established that the witness doesn't speak any English.

And in this particular case the reason why we

sought the depositions of these witnesses is because

they submitted sworn testimony to Judge Gilliam, where

they testified in English.  Today -- I am going to let

my co-counsel read from the transcript of the

December 10th hearing for a second.

MS. BEARD:  Why don't you -- in lieu of

reading from the transcript, why don't you just direct

me to the page numbers of the transcript so that the

Court can review it?

MS. WONG:  Sure.  It's page 44, beginning with

lines 2 through, I guess, line 6.

MS. BEARD:  Through 16?  Lines 2 through 16?

MS. WONG:  2 to 6.

MS. BEARD:  Okay.

MS. HEALY:  So this morning, when the witness

arrived, as the Court can see from the video of

everything that happened, Mr. Wallerstein was talking to

the witness in English, and that's actually captured on

the video.  So I -- she wouldn't even -- he wouldn't

even have allowed the witness to be sworn in, which is a

basic task.  He has the interpreter here.

I offer -- I am not objecting to his interpreter translating whatever she wants, but Mr. Wallerstein essentially demands that we engage and pay for his interpreter, and he is not going to allow his interpreter to speak unless we pay for her, which is nonsensical.  And also he never made an application to the Court to make this and give us an opportunity to respond, because clearly that's just simply seeking to impose costs that we are not required to pay.

So we tried to ask some questions of the witness, including about her own declaration.  She would turn to him, asking for input, and it would be like "Don't answer that, don't do this," and she completely understands him.  And she hasn't testified she doesn't speak English.  She says she is not comfortable.

So all I did -- I am not speaking Italian, and the video will show that.  He doesn't want his interpreter to speak.  I am trying to translate for the witness, and his interpreter is free to change the translation.  But I don't want -- I am here to take a deposition that the Court ordered me to take, and we were not required to bring an interpreter or to pay for Mr. Wallerstein's interpreter.

He has his interpreter here, and what I told him is that, if he wants his interpreter to translate, he is allowed to do so.

And the court order that Mr. Wallerstein referred previously, that related exclusively to Mr. Pepe's deposition. There was never any question that we would -- that was the rule for any other deposition in this case. And if that was the case, we would have objected to that, because we don't even know the scope of the cost of these depositions.

We called deponents who testified by declaration in the English language. And nowhere did they say that they didn't speak English and that their declarations were written by somebody else. So even if we are limited to just asking about the declarations, that's what they produced to the Court. It was a sworn statement.

So I respectfully request that the Court allow us to submit the video, again, because I think that's -- that will make everything clear and everything that's being going on in these depositions. Yesterday was the same thing. There were constant objections and abuse of privilege.

Mr. Wallerstein does not want us to take these depositions. So I don't know -- you know, we are trying

to proceed the best we can.

MR. WALLERSTEIN: Can I respond briefly?

MS. BEARD: Very briefly. Very briefly.

MR. WALLERSTEIN: Fine. The video that Ms. Healy is referring to is her iPhone that she is purporting to videotape. We object to the videotape for a number of reasons.

MS. BEARD: Okay.

MR. WALLERSTEIN: But more importantly, I have a wealth of case law that I think makes crystal clear that the party noticing the deposition is required to pay for the cost of having the deposition translated for the witness's convenience. That has been my experience. That is the experience of my interpreter, and as I say, I have a wealth of case law to cite.

MS. BEARD: I think the two sides -- you have set forth your positions in detail. I have taken copious notes of the statements that you have made. How do I get back in touch with one or both of you?

MS. HEALY: Could we submit the video? And by the way, it's not taken on an iPhone.

MS. BEARD: Again, I am just the law clerk, and not the judge. I can't grant you permission to submit anything. It's not my place. It's not appropriate.

10:08:38
10:08:41
10:08:43
10:08:45
10:08:47
10:08:51
10:08:55
10:08:57
10:08:57
10:08:59
10:09:02
10:09:04
10:09:08
10:09:12
10:09:15
10:09:20
10:09:22
10:09:26
10:09:28
10:09:32
10:09:35
10:09:38
10:09:39
10:09:44
10:09:46

I am going to track down the judge. Like I said, she is on the bench right now. I am going to find the judge. And I am going to put you guys on hold just one second. Let me -- so I can check the status of her court proceedings right now. Okay? I am just going to put you on hold. Thank you.

MR. WALLERSTEIN: Thank you.

MS. HEALY: Thank you.

THE REPORTER: Let me know if you ever want to go off the record.

(Pause in proceedings from 10:10 to 10:11.)

MS. BEARD: Okay. I am hopeful that I will be able to speak with the judge in the next 20 minutes.

Can I just ask you before -- are all the parties still present?

MR. WALLERSTEIN: Yes, ma'am.

MS. BEARD: Okay. Let me just ask you one more question. And I think this is probably to Mr. Wallerstein. The rest -- the remaining witnesses for this week -- I think there are five more --

MR. WALLERSTEIN: No.

MS. BEARD: -- after Ms. Perri?

MR. WALLERSTEIN: I will just -- I am sure there is probably a dispute about some future depositions, so forgive me for that. But today we have

two witnesses that require an interpreter.

MS. BEARD:  So today.  Okay.

MR. WALLERSTEIN:  So two today.

MS. BEARD:  And what about tomorrow?

MR. WALLERSTEIN:  Tomorrow, as I understand it, there is only one witness.  He requires an interpreter as well.

MS. BEARD:  Okay.

MR. WALLERSTEIN:  And on Friday we have one witness who also requires an interpreter.

MS. BEARD:  Okay.

MR. WALLERSTEIN:  On Friday we do not have -- we do not even have the ability to provide an interpreter for Ms. Healy to engage.

MS. HEALY:  I am sorry.  Excuse me.  Which -- what did you say about Friday?  I am sorry.  I missed a word.

MS. BEARD:  I am sorry.  Are you saying, Mr. Wallerstein, that your consultant, or the interpreter -- that it's not possible for you to bring an interpreter on Friday, or somebody is not available on Friday?

MR. WALLERSTEIN:  Yes.  But it's beyond that, too, if I may.

We brought a consultant who speaks Italian, an

interpreter, a certified interpreter, so that we could double check in a private way the interpretations that were being provided by the certified interpreter at the deposition, and we intended her to consult privately with our clients, protected by privilege.

MS. BEARD: Understood.

MR. WALLERSTEIN: Now I am making her available, if Ms. Healy would like to engage her, today and tomorrow, but she is not available on Friday.

MS. BEARD: Understood. Understood.

MS. HEALY: If I may just briefly -- just to give you an example, the witness tomorrow has a profile on his LinkedIn page, which the Court can access this very minute, where he says he is proficient in English. So it's -- this is just an excuse to impose costs.

MR. WALLERSTEIN: But that's not true. It's true that --

MS. BEARD: Okay. That's fine. That's all the information that I need. The last -- the very last question is how I get in touch with you folks.

MR. WALLERSTEIN: I don't know that, so...

MS. BEARD: Does somebody want to give me a cell phone so I can call, and that you can call me back?

MS. CULP: Yeah, I can give you -- this is Kimberly Culp.

MS. BEARD:  Okay.  It's your phone?                    10:13:40

MS. CULP:  Yeah, it is (925)640-8032.  We are           10:13:40
also at the Merrill location in San Francisco, and I    10:13:45
believe counsel has that number as well.                10:13:47

MS. HEALY:  Yes.  It's (415)296-0300.                   10:13:49

MS. BEARD:  Wait.  I am sorry.  I missed that.          10:13:55
(415)296 --                                             10:13:56

MS. HEALY:  0300.                                       10:13:56

MS. BEARD:  0300.  And I can just ask for the           10:14:01
Loop group --                                           10:14:04

MS. HEALY:  Yes.                                        10:14:06

MS. BEARD:  -- and they will be able to put me          10:14:06
through?                                                10:14:10

MS. HEALY:  Yes.  It's a small place.                   10:14:10

So just to be clear on the record, our                  10:14:12
proposal is that the deposition proceed.                10:14:12

MS. BEARD:  I understand.                               10:14:14

MS. HEALY:  We have no objection to them using          10:14:14
whoever they want to interpret, on the record, off the  10:14:17
record, in any way.                                     10:14:19

MS. BEARD:  Understood.  Understood.  I                 10:14:21
understand your position.                               10:14:22

Okay.  I am going to -- I am just going to ask          10:14:23
you -- I would normally say proceed, with objections    10:14:25
noted for the record.  Obviously the parties are so far 10:14:29

apart that that's not going to be possible.  I am going to try and get back in touch with you as soon as I can get the judge.

MS. CULP:  Thank you.

MS. HEALY:  Thank you.

MS. BEARD:  You are welcome.  Bye-bye.

(Ms. Beard no longer present telephonically.)

MS. HEALY:  I am sorry.  Can you clarify for the record your position about Friday?  Because I didn't really hear it.

MR. WALLERSTEIN:  It's the same position as today, except that we don't have the ability to provide someone you can hire.

MS. HEALY:  But you would be producing both witnesses on Friday, or no?

MR. WALLERSTEIN:  What both witnesses?

MS. HEALY:  Romagnoli and Sandei.

MR. WALLERSTEIN:  Oh, true.  Yes.

MS. HEALY:  Okay.

(Mr. Wallerstein exits.)

THE REPORTER:  Are we off the record?

MS. HEALY:  Yes.  Sorry.

(Recess taken from 10:15 to 11:38.)

MS. HEALY:  So we are back on the record, and the time is 11:38 a.m., and this is the deposition of

Ms. Perri.

Ms. Perri, could you please state your name for the record?

THE REPORTER:  Did you want anyone sworn?

MS. HEALY:  Oh, yes.

MR. WALLERSTEIN:  I believe the court reporter -- I am sorry -- I believe Judge Ryu ordered that Arianna --

Forgive me for using your first name.

MS. SCHNEIDER-STOCKING:  That's fine.

MR. WALLERSTEIN:  -- asked that you be sworn in.

MS. HEALY:  Shouldn't you translate what she says?

THE INTERPRETER:  She has to swear me in first, and from that moment on I can translate.

MS. HEALY:  That's what I was -- right.

(Testimony taken through an ITALIAN interpreter:)

ARIANNA SCHNEIDER-STOCKING, Interpreter, after having been duly sworn/affirmed, to translate the Italian language into the English language and the English language into the Italian language, to the best of his/her ability, interpreted the following:

MS. HEALY:  I think you need to swear the witness as well.

MARIANTONIETTA PERRI - 1/20/2016

Page 159

MR. WALLERSTEIN: Fortunately, I have a translator and a transcript. I don't need to be told what she said. — 17:06:29 / 17:06:30 / 17:06:38

MS. HEALY: Q. Okay. Are you going to answer the question? — 17:06:48 / 17:06:54

A. I have already answered. — 17:06:55

Q. Did Mr. Calderara ever travel to the United States, to your knowledge, in connection with the Almawave USA Gatti project? — 17:07:03 / 17:07:09 / 17:07:16

A. No. — 17:07:27

Q. Did you come to the United States before this trip? Had you traveled to the United States before this trip, other than on vacation? — 17:07:31 / 17:07:36 / 17:07:40

A. So if I ever -- the question is if I ever traveled to the United States for work? — 17:07:58 / 17:08:02

Q. Mm-hmm. That wasn't my question, but that's -- it's a different version. Excluding -- — 17:08:04 / 17:08:07

A. These were two questions I have been trying to answer, if possible. So otherwise can I ask you to please rephrase it? — 17:08:11 / 17:08:13 / 17:08:18

Q. Excluding any vacation, did you ever travel to the United States in 2014? — 17:08:20 / 17:08:24

A. No. — 17:08:36

MS. HEALY: I don't have any other questions. So we can get started with Ms. Nicolella. — 17:08:53 / 17:08:57

MR. WALLERSTEIN:  Let me take a moment.  I may have a -- let me take a moment.  I may have some questions.

No, I don't.

MS. HEALY:  Okay.  So thank you, Ms. Perri. This concludes the deposition of Ms. Perri.  And the time is 5:09 p.m., and we are ready to start whenever you are with Ms. Nicolella.

MR. WALLERSTEIN:  We will be back at 10:00, or 9:00.  I am sorry.

I'm sorry.  Are we on the record?

MS. HEALY:  Yes.

MR. WALLERSTEIN:  I am ready to conclude.  I will wait for you to...

THE REPORTER:  Okay.  Off?

MS. HEALY:  Thank you.

MR. WALLERSTEIN:  We will be here at 9:00.

MS. HEALY:  The deposition starts at 8:00.

MR. WALLERSTEIN:  I sincerely hope you go on the record at 8:00 and -- I sincerely hope you do.

MS. HEALY:  So we were not able to locate a --

THE REPORTER:  Off the record, or are you making a statement?

MS. HEALY:  I am making a statement to him, that we were not able to locate an interpreter, so we

will not be able to bring one tomorrow.  You are free to   17:10:16

bring your interpreter if she wants to come.  I need to   17:10:20

have some rates as to how much --   17:10:23

MR. WALLERSTEIN:  We have a court order.  She   17:10:26

is not working for you tomorrow.   17:10:27

MS. HEALY:  Okay.  Then I guess we asked and   17:10:29

we have been unable to find an interpreter.   17:10:32

MR. WALLERSTEIN:  I am sorry.  I thought we   17:10:36

were off the record.   17:10:37

MS. HEALY:  Yes, so did I.   17:10:59

THE REPORTER:  Oh, sorry.  Okay.  I thought   17:10:59

you were making a statement for the record.   17:10:59

MS. HEALY:  No, we were off the record, but we   17:10:59

might as well be on the record, because we are having a   17:10:59

meet and confer.  So you can keep the record.  Sorry.   17:10:59

That's fine.   17:10:59

THE REPORTER:  Do you want to be on the   17:10:59

record?   17:10:59

MR. WALLERSTEIN:  That's fine.  Sure, that's   17:10:38

fine.   17:10:38

MS. HEALY:  I am just letting you know that we   17:11:00

have inquired about an interpreter and we have been   17:11:02

unable to locate one.  So if you would like to bring   17:11:04

your interpreter tomorrow for the depositions, that's   17:11:08

fine, and we have no objection to you bringing your   17:11:10

interpreter.  We are asking that you please provide us

the rates of the interpreter if you want to bring the

interpreter.

MR. WALLERSTEIN:  Whether I bring the

interpreter has nothing to do with your requirement to

have a certified interpreter.

I may or may not bring Kimberly Culp.  I may

or may not bring Arianna.  It has nothing to do with

you.  It is none of your business whether I do or not.

If I bring her, she is working for me so that

I can have private conversations with my client, as I

needed to do today.  It happened today, where I was

unable to have a private conversation with my client,

because the interpreter that I had the foresight to hire

and pay for was, through my offer and resulting court

order, taken over to serve a function that you were

required to provide.  So you chose not to do it.

She is not doing it tomorrow.  That's for

sure.

MS. HEALY:  Okay.  I just gave you the

information we were able to have tonight, so I just

wanted you to know.  And I also want to note for the

record that Ms. Nicolella has left the room and she

refuses to start her deposition tonight.

I also reminded Mr. Wallerstein that the

MARIANTONIETTA PERRI – 1/20/2016

Page 163

depositions are noticed for 8:00 a.m., and I am 17:12:40
requesting that he appear on time. 17:12:43

MR. WALLERSTEIN: Why would I appear at 8:00, 17:12:45
9:00, or 10:00, if you can't follow the court order? 17:12:46
You are not going to; right? 17:12:51

MS. WONG: We are trying. We are trying to 17:12:53
locate an interpreter. 17:12:56

MR. WALLERSTEIN: I understand. I am very 17:12:57
sympathetic that it's hard to do it on short notice. 17:12:59
That's why it would have been prudent to do it starting 17:13:02
on December 10, over a month ago. Of course, to wait 17:13:05
until the day before was foolish. I agree with that. I 17:13:09
agree. 17:13:12

Anything else, Ms. Healy? 17:13:13

MS. HEALY: No, not from my end. 17:13:15

(Whereupon, the deposition was 17:13:17
concluded at 5:13 p.m.) 17:13:17

--oOo-- 17:13:17

I declare under penalty of perjury the foregoing is true and correct.  Subscribed at _____, this _____ day of _____, 2016.

_____

                                    Mariantonietta Perri

CERTIFICATE OF REPORTER

I, SARAH LUCIA BRANN, a Certified Shorthand Reporter, hereby certify that the witness in the foregoing deposition was by me duly sworn to tell the truth, the whole truth, and nothing but the truth in the within-entitled cause;

That said deposition was taken in shorthand by me, a disinterested person, at the time and place therein stated, and that the testimony of the said witness was thereafter reduced to typewriting, by computer, under my direction and supervision;

That before completion of the deposition, review of the transcript [X] was [ ] was not requested. If requested, any changes made by the deponent (and provided to the reporter) during the period allowed are appended hereto.

I further certify that I am not of counsel or attorney for either or any of the parties to the said deposition, nor in any way interested in the event of this cause, and that I am not related to any of the parties thereto.

DATED:  January 27, 2016

*Sarah Lucia Brann*
_____

SARAH LUCIA BRANN, CSR No. 3887

165

**MPX-291**



LinkedIn.                                                    What is LinkedIn?   Join Today   Sign In



# Luca Ferri

Head of Information Management at Almawave

Rome Area, Italy │ Information Technology and Services

Current       Almawave

**292**
connections

**Search by name**

Over 400 million professionals are already on LinkedIn. Find who you know.

| First Name | Last Name |

**Example:** Jeff Weiner

**People Also Viewed**


**Raniero Romagnoli**


**Viviana Bocci**
--


**morethen new**
Attended jagannath university


**Valeria Sandei**
CEO at Almawave


**Viviana Durante**
Head Hunter presso Experis Italia


**Marco Tripi**
CEO at Almaviva


**Raffaella Boldini**
Responsabile IT - Iride Presales&Services at Almawave


**Giancarlo Colacino**
Programmatore Senior presso INDRA Italia SPA


**Emanuele Caloisi**
Personal trainer presso Virgin Active


**Paolo Angelo Paravento**
Sales Manager presso Almawave

## Join LinkedIn and access Luca's full profile. It's free!

As a LinkedIn member, you'll join 400 million other professionals who are sharing connections, ideas, and opportunities.

- See who you know in common
- Get introduced
- Contact **Luca** directly

**View Luca's Full Profile**

---

Published by Luca

See more ▸



**Bring Data Warehouse conceptual models to life**

August 7, 2015

---

## Summary

Luca Ferri is currently Head of the Information Management Division of Almawave (Almaviva Group), company specialized in developing and providing innovative products and consultancy on Big Data, Semantic Knowledge Management and Speech Analytics. In his present role he is in charge of the coordination of resource, projects, consultancy and partnerships on Big Data, Advanced Analytics, Open Data, Data Warehousing and Business Intelligence customers' needs for private and public companies. From 2013 to 2015 he has been on the Board of Directors of Pervoice (controlled by Almawave) a technology leader in the ASR sector.

From 2011 and 2014 he was responsible of the coordination of product management and professional services consultancy for the Almawave Group (Italy, Brazil and USA). In this period he has been on the Board of Directors of Almawave do Brasil. In 2010 he was responsible for project management and resource planning for the Almawave "Solution Delivery" and in 2008-2009 he was head of the Almawave "Semantic Enterprise LAB". From 2005 to 2007 in Almaviva he was group manager of the "Business Intelligence Consulting".

From 1992 to 2005 he worked at Datamat (Finmeccanica Group) starting as a trainee to become manager and coordinator of Data Warehousing and Business Intelligence Projects in the Health

**MPX-292**

Care and Government Division.

## Experience

### Head of Information Management



Almawave

December 2014 – Present (1 year 2 months) | Italy

The Information Management division offers, on behalf of the entire Group Almaviva, specialized competencies on Big Data, Advanced Analytics, Open Data, Data Warehousing and Business Intelligence to private and public companies for the national market and offers specialized support to the US and the Brazilian Almawave subsidiaries.

## Skills

| Business Intelligence | Big Data | Project Management | Data Warehousing |

| Analytics | Business Analysis | Product Management | International Experience |

| Open data | Data Quality | Metadata Management | Language Technology |

| Semantic Technology | Speech analytics | Resource Management | See 6+ |

## Languages

**Italiano**

Native or bilingual proficiency

**English**

Professional working proficiency

**Portuguese**

Professional working proficiency

**French**

Limited working proficiency

## Certifications



**Machine Learning by Stanford University (Associate Professor Andrew Ng - Computer Science Department)** ›

Coursera Course Certificates, License Z92WRQ9WTGXT

November 2015 – Present

## View Luca's full profile to...

· See who you know in common
· Get introduced
· Contact **Luca** directly

**View Luca's Full Profile**

**MPX-293**

VENABLE LLP
SPEAR TOWER, 40TH FL. ONE MARKET PLAZA, ONE MARKET STREET
SAN FRANCISCO, CA 94105
415.653-3750

## DECLARATION OF LUCA FERRI

I, Luca Ferri, declare as follows:

1.  I am the Head of the Information Management Division of Almawave S.r.l.. I make this declaration in support of Almaviva S.p.A. and Almawave S.r.l.'s Motion to Dismiss the First Amended Complaint for Lack of Personal Jurisdiction. I have personal knowledge of the facts stated herein.

2.  I have reviewed the First Amended Complaint (the "FAC") and, in particular, paragraph 164 therein.

3.  The allegations against me contained in that paragraph are false.

4.  I did not directly or indirectly engage in any wrongful or illegal activities alleged in the FAC (or any other wrongful or illegal activities), nor did I encourage or request Anna Gatti, IQ System LLC, or IQSystem, Inc. (or anyone else) to engage in any such activities.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 20th day of April, 2015, Rome, Italy.

_____

2

DECLARATION OF LUCA FERRI ISO DEFENDANTS' MOTION TO DISMISS FAC
FOR LACK OF PERSONAL JURISDICTION – Case No.: 3:15-cv-00798-HSG

**MPX-294**

## DECLARATION OF LUCA FERRI

I, Luca Ferri, declare as follows:

1. I am the Head of the Information Management Division at Almaviva S.r.l. I have personal knowledge of the facts stated herein.

2. I have reviewed the Second Amended Complaint (the "SAC") and, in particular, a certified Italian translation of paragraph 182 of the SAC, in which it is alleged that Anna Gatti obtained "technical information regarding certain language applications and capabilities of [Loop's] technology . . . while she was working for" myself and Valeria Sandei and "for the benefit of the Almaviva Defendants, and within the scope of her employment and agency," and in which it is implied that Ms. Sandei and I induced and/or requested Ms. Gatti to do so.

3. Those allegations are false. I did not request or induce Ms. Gatti or anyone else to obtain Loop's technical information (or any other information from Loop). I had and have no interest in Loop's technical information.

4. The purpose of my communications with Ms. Gatti was for me to explain Almawave's technology to Ms. Gatti so that Ms. Gatti (as Almawave USA's CEO) had an understanding of the technology that Almawave USA was marketing in the United States. Ms. Gatti did not provide me with any of Loop's confidential technical information, including any such information regarding any language application or capabilities of Loop's technology.

5. Any phone call or other communication that I had with Ms. Gatti, including the phone call which allegedly took place on July 9, 2014, was unrelated to obtaining information about or from Loop.

6. Until after the Original Complaint in this matter was filed, I knew only of Loop what Ms. Gatti had mentioned to me in passing (namely, that she had a start-up with an Italian co-founder which operated in the artificial intelligence and e-commerce spaces, that the start-up was primarily focused on product development, and that, according to Ms. Gatti, her involvement with the start-up posed no legal or practical impediment to her working for Almawave USA, Inc.).

7. I did not receive any confidential information about Loop's technology, resources,

VENABLE LLP
SPEAR TOWER, 40TH FL. ONE MARKET PLAZA, ONE MARKET STREET
SAN FRANCISCO, CA 94105
415.653-3750

2

DECLARATION OF LUCA FERRI – Case No.: 3:15-cv-00798-HSG

**MPX-295**

competencies, customers, plans, or investors from Ms. Gatti or anyone else. I did not access Loop's computers or ask anyone else to do so. I did not directly or indirectly attempt to interfere with Loop's contracts or potential investments.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _9th_ day of March, 2016, Rome, Italy.

Luca Ferri

VENABLE LLP
SPEAR TOWER, 40TH FL, ONE MARKET PLAZA, ONE MARKET STREET
SAN FRANCISCO, CA 94105
415 653-3750

2

DECLARATION OF LUCA FERRI – Case No.: 3:15-cv-00798-HSG

**MPX-296**



VENABLE LLP
Ben D. Whitwell
Email:    bwhitwell@venable.com
2049 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:    (310) 229-9900
Facsimile:    (310) 229-9901

VENABLE LLP
G. Stewart Webb *(Not Admitted to Practice in California)*
Email:    gswebb@venable.com
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
Telephone:    (410) 244-7565
Facsimile:    (410) 244-7742

Attorneys for VENABLE LLP

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS, INC.<br><br>                        Plaintiff,<br><br>v.<br><br>ANNA GATTI, et al.<br><br>                        Defendants. | CASE NO. 3:15-cv-00798-HSG<br><br>Hon. Haywood S. Gilliam, Jr.<br>Courtroom 15<br><br>**CORRECTED OBJECTIONS AND RESPONSES OF VENABLE LLP TO SUBPOENA *DUCES TECUM* SERVED BY LOOP AI LABS INC.**<br><br>Action Filed:    Feb. 20, 2015<br>Trial Date:    July 11, 2016 |

Non-party Venable LLP ("Venable"), by its undersigned attorneys, hereby serves its Objections and Responses to the Subpoena *Duces Tecum* served on Venable by Plaintiff Loop AI Labs Inc. ("Loop AI"), which subpoena may hereinafter be referred to as the "Loop Subpoena" or the "Subpoena." Venable objects to the Loop Subpoena pursuant to Rule 45(d)(2)(B) of the Federal Rules of

**MPX-297**

1

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

Request, and there is no reason to impose the burden on Venable of trying to identify and collect documents that may be responsive to this Request.

**REQUEST NO. 2:**

Produce any letter of engagement provided to Almaviva to the extent it names or references Mr. Sternberg anywhere in the letter.

**RESPONSE TO REQUEST NO. 2:**

Venable objects to this Request for the reasons set forth above, including privilege grounds. Without waiving this objection, Mr. Sternberg sent an engagement letter dated March 23, 2015 on behalf of Venable to Almaviva S.p.A confirming Venable's engagement to represent the Almaviva Defendants in this litigation. With this statement, Venable has provided the material information requested by this Request, and there is no reason to require production of the letter, as to which the Almaviva Defendants assert privilege.

**REQUEST NO. 3:**

Produce all documents and communications between Mr. Sternberg and anyone at Almaviva, or with Anna Gatti, or with any current or former attorney or staff or other employee at Orrick, Herrington & Sutcliffe LLP ("Orrick") regarding the above captioned litigation.

**RESPONSE TO REQUEST NO. 3:**

Venable objects to this Request for the reasons set forth above, including privilege grounds. Without waiving this objection, Mr. Sternberg reports that he 7has not had discussions with Anna Gatti, or with any current or former attorney or staff or other employee at Orrick, Herrington & Sutcliffe LLP ("Orrick") regarding the above captioned litigation. Mr. Sternberg's documents and communications with "anyone at Almaviva . . . regarding the above captioned litigation" are protected from discovery by the attorney-client privilege and the work-product doctrine, and Venable has been instructed to assert privilege. This is an example

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

**MPX-298**

5

Assuming that the confidential information referenced in this Request is the identity of Wi-Harper, Venable does not have any responsive documents because it learned the identity from the First Amended Complaint.

Dated: August 21, 2015

VENABLE LLP

By: _____
Ben D. Whitwell

Attorneys for Venable LLP

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

**MPX-299**

11

10063193-v1

VENABLE LLP'S CORRECTED OBJECTIONS AND RESPONSES TO SUBPOENA
*DUCES TECUM* SERVED BY LOOP AI LABS INC.

**VENABLE LLP**
Thomas E. Wallerstein (SBN 232086)
Kimberly Culp (SBN 238839)
Email: twallerstein@venable.com
          kculp@venable.com
505 Montgomery Street, Suite 1400
San Francisco, CA 94111
Telephone:     415.653.3750
 Facsimile:     415.653.3755

 Attorneys for Defendant ALMAWAVE USA INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ANNA GATTI, an individual, ALMAVIVA S.p.A., an Italian corporation, ALMAWAVE S.r.l., an Italian corporation, ALMAWAVE USA, Inc., a California corporation, IQSYSTEM LLC, a California limited liability company, IQSYSTEM Inc., a Delaware corporation,<br><br>Defendants. | CASE NO.: 3:15-cv-00798-HSG-DMR<br><br>**ALMAWAVE USA INC.'S RESPONSES AND OBJECTIONS TO LOOP AI LABS INC.'S THIRD SET OF DISCOVERY REQUESTS**<br><br>Date of Service:  February 26, 2016<br>Date Responses Due: March 28, 2016<br><br><br>Action Filed: February 20, 2015<br>Trial Date:  September 19, 2016 |

PROPOUNDING PARTY:     Plaintiff Loop AI Labs, Inc.

RESPONDING PARTY:     Defendant Almawave USA Inc.

SET NUMBER:              THIRD

**VENABLE LLP**
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

8.      Almawave USA objects to the instructions to the extent they require the production of documents and information that are subject to confidentiality agreements with third parties.

9.      Almawave USA objects to the instructions to the extent they require the production of documents and information not in Almawave USA's possession, custody, or control.

10.      Almawave USA objects that the time period set forth in the instructions is an overbroad timeframe as applied to the requests, and does not reflect a relevant time period.  Most of the key events occurred between 2012, when Loop was founded, and February 20, 2015, when Loop filed its original complaint in this litigation.  Almawave USA will not produce any documents dated after February 20, 2015 and, to the extent necessary, Almawave USA reserves the right to use a date restrictor for documents pre-dating 2012 to limit the burden in responding to Loop's requests.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**DOCUMENT REQUEST NO. 219:**

All documents and communications relating to any Almaviva S.p.A. business plans dated January 2012 to the present day.

**RESPONSE TO DOCUMENT REQUEST NO. 219:**

In addition to the foregoing general objections, which are expressly incorporated herein, Almawave USA objects to this request on the grounds and to the extent that it (1) is overbroad, harassing and unduly burdensome; (2) seeks information that is neither relevant to any claim or defense raised in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence; and (3) improperly seeks documents dated after Loop filed its original complaint in this litigation on February 20, 2015. Almawave USA also objects to the term "business plans" as vague and ambiguous.

**DOCUMENT REQUEST NO. 220:**

All documents relating to Almaviva or Almawave expenditure or payment of any fees and costs in this case, including all DOCUMENTS regarding any person or entity who is in any

7

**MPX-301**

**VENABLE LLP**
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

way funding or promising to fund Almaviva, Almawave, Gatti, IQSystem LLC or IQSystem Inc.'s litigation costs in the above captioned matter.

**RESPONSE TO DOCUMENT REQUEST NO. 220:**

In addition to the foregoing general objections, which are expressly incorporated herein, Almawave USA objects to this request on the grounds and to the extent that it (1) is overbroad, harassing and unduly burdensome; (2) seeks information that is neither relevant to any claim or defense raised in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence; (3) improperly seeks documents dated after Loop filed its original complaint in this litigation on February 20, 2015; (4) seeks the disclosure of attorney work product and/or information protected from disclosure by the attorney-client privilege; and (5) seeks documents that are not within Almawave USA's possession, custody, or control. Almawave USA also objects to the terms "promising," "Almaviva," and "Almawave" as vague and ambiguous.

**DOCUMENT REQUEST NO. 221:**

All DOCUMENTS sent by Almaviva or Almawave for the Court's in camera review in this case.

**RESPONSE TO DOCUMENT REQUEST NO. 221:**

In addition to the foregoing general objections, which are expressly incorporated herein, Almawave USA objects to this request on the grounds and to the extent that it (1) seeks the disclosure of attorney work product and/or information protected from disclosure by the attorney-client privilege; and (2) seeks documents that are not within Almawave USA's possession, custody, or control.  Almawave USA also objects to the terms "Almaviva" and "Almawave" as vague and ambiguous.

**DOCUMENT REQUEST NO. 222:**

All versions of the curriculum vitae of Valeria Sandei, Marco Tripi, Raniero Romagnoli, Alberto Tripi, Luca Ferri, Tony DiNapoli, Jeff Capaccio, Boldini, Raffaella, Calderara, Sergio, De Felice, Christian, Di Curzio, Diego, Ferri, Luca, Gatti, Anna, Dibitonto, Antonio, Nicolella, Angela, Sandei, Valeria, Perri, Mariantonietta, Nobili, Sabrina, Rossetti, Andrea, Romagnoli Raniero, Tripi, Marco, Nigri, Gugliemo, Maestro, Giordano, Folino. Simone, Renzetti,

**VENABLE LLP**
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

8

Francesco, Gennaro DiNapoli.

**RESPONSE TO DOCUMENT REQUEST NO. 222:**

In addition to the foregoing general objections, which are expressly incorporated herein, Almawave USA objects to this request on the grounds and to the extent that it (1) is overbroad, harassing and unduly burdensome; (2) seeks information that is neither relevant to any claim or defense raised in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence; and (3) improperly seeks documents dated after Loop filed its original complaint in this litigation on February 20, 2015.

**DOCUMENT REQUEST NO. 223:**

All engagement letters with any attorney listed in Almaviva or Almawave's privilege log.

**RESPONSE TO DOCUMENT REQUEST NO. 223:**

In addition to the foregoing general objections, which are expressly incorporated herein, Almawave USA objects to this request on the grounds and to the extent that it (1) is overbroad, harassing and unduly burdensome; (2) seeks information that is neither relevant to any claim or defense raised in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence; (3) improperly seeks documents dated after Loop filed its original complaint in this litigation on February 20, 2015; (4) seeks the disclosure of attorney work product and/or information protected from disclosure by the attorney-client privilege; and (5) seeks documents that are not within Almawave USA's possession, custody, or control. Almawave USA also objects to the terms "Almaviva" and "Almawave" as vague and ambiguous.

**DOCUMENT REQUEST NO. 224:**

All documents showing Ms. Perri and Mr. Calderara status as members of any attorney Bar.

**RESPONSE TO DOCUMENT REQUEST NO. 224:**

In addition to the foregoing general objections, which are expressly incorporated herein, Almawave USA objects to this request on the grounds and to the extent that it (1) is overbroad, harassing and unduly burdensome; (2) seeks information that is neither relevant to any claim or defense raised in this litigation, nor reasonably calculated to lead to the discovery of admissible

**V E N A B L E   L L P**
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

9

ALMAWAVE USA INC.'S RESPONSES TO
LOOP AI LABS INC.'S THIRD SET OF DISCOVERY REQUESTS

documents that are not within Almawave USA's possession, custody, or control.  Almawave USA also objects to the term "Almawave" as vague and ambiguous.

**DOCUMENT REQUEST NO. 230:**

Any communications and other documents constituting Almaviva and/or Almawave's efforts to recruit any person to work in the United States since January 1, 2013.

**RESPONSE TO DOCUMENT REQUEST NO. 230:**

In addition to the foregoing general objections, which are expressly incorporated herein, Almawave USA objects to this request on the grounds and to the extent that it (1) is overbroad, harassing and unduly burdensome; (2) seeks information that is neither relevant to any claim or defense raised in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence; and (3) improperly seeks documents dated after Loop filed its original complaint in this litigation on February 20, 2015. Almawave USA also objects to the terms "Almawave," "Almaviva," "recruit" and "work" as vague and ambiguous.

**DOCUMENT REQUEST NO. 231:**

All documents and communications with any actual, prospective and potential witness in this case.

**RESPONSE TO DOCUMENT REQUEST NO. 231:**

In addition to the foregoing general objections, which are expressly incorporated herein, Almawave USA objects to this request on the grounds and to the extent that it (1) is overbroad, harassing and unduly burdensome; (2) seeks information that is neither relevant to any claim or defense raised in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence; (3) improperly seeks documents dated after Loop filed its original complaint in this litigation on February 20, 2015; (4) seeks the disclosure of attorney work product and/or information protected from disclosure by the attorney-client privilege; and (5) seeks documents that are not within Almawave USA's possession, custody, or control.

**DOCUMENT REQUEST NO. 232:**

All documents and communications with Venable regarding Loop AI, Healy, Calafiore or any aspect of this case.

12

**MPX-304**

ALMAWAVE USA INC.'S RESPONSES TO LOOP AI LABS INC.'S THIRD SET OF DISCOVERY REQUESTS

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

**RESPONSE TO DOCUMENT REQUEST NO. 232:**

In addition to the foregoing general objections, which are expressly incorporated herein, Almawave USA objects to this request on the grounds and to the extent that it (1) is overbroad, harassing and unduly burdensome; (2) seeks information that is neither relevant to any claim or defense raised in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence; (3) improperly seeks documents dated after Loop filed its original complaint in this litigation on February 20, 2015; (4) seeks the disclosure of attorney work product and/or information protected from disclosure by the attorney-client privilege; and (5) seeks documents that are not within Almawave USA's possession, custody, or control.

**DOCUMENT REQUEST NO. 233:**

Any document signed by Almaviva or Almawave waiving the conflicts of interests of Venable in this case.

**RESPONSE TO DOCUMENT REQUEST NO. 233:**

In addition to the foregoing general objections, which are expressly incorporated herein, Almawave USA objects to this request on the grounds and to the extent that it (1) is overbroad, harassing and unduly burdensome; (2) seeks information that is neither relevant to any claim or defense raised in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence; (3) improperly seeks documents dated after Loop filed its original complaint in this litigation on February 20, 2015; (4) seeks the disclosure of attorney work product and/or information protected from disclosure by the attorney-client privilege; and (5) seeks documents that are not within Almawave USA's possession, custody, or control.

**DOCUMENT REQUEST NO. 234:**

All Acknowledgment of the Protective Order forms executed by anyone at the request of Almaviva, Almawave, IQSystem, Gatti in this case pursuant to the Protective Order entered in this case at Dkt. 230.

**RESPONSE TO DOCUMENT REQUEST NO. 234:**

In addition to the foregoing general objections, which are expressly incorporated herein, Almawave USA objects to this request on the grounds and to the extent that it (1) is overbroad,

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

13

**MPX-305**

ALMAWAVE USA INC.'S RESPONSES TO
LOOP AI LABS INC.'S THIRD SET OF DISCOVERY REQUESTS

that are not within Almawave USA's possession, custody, or control.

March 28, 2016                                    **VENABLE LLP**

                                          By: _Wallerstein_
                                          _____
                                          Thomas E. Wallerstein (SBN 232086)
                                          Kimberly Culp (SBN 238839)
                                          505 Montgomery Street, Suite 1400
                                          San Francisco, CA 94111
                                          twallerstein@venable.com
                                          kculp@venable.com
                                          Tel.:  (415) 653-3750
                                          Fax:  (415) 653-3755

                                          *Attorneys for Almawave USA Inc.*

15

**MPX-306**

ALMAWAVE USA INC.'S RESPONSES TO
LOOP AI LABS INC.'S THIRD SET OF DISCOVERY REQUESTS

ANGELA NICOLELLA - 1/21/2016

Page 15

whispering.  Thank you.                                    11:14:15

THE INTERPRETER:  All right.                               11:14:16

MR. WALLERSTEIN:  I agree.  I agree.  Please.              11:14:16

And if I didn't mention it, we object to the              11:14:19

videotape as well.  To the extent that it is not          11:14:23

synchronized with the court reporter, with the            11:14:27

transcription, it's going to be absolutely impossible to  11:14:29

try to do designations at trial or for hearings.  So for  11:14:32

that reason as well we certainly object to the setup      11:14:35

there, which is not appropriate for this setting.         11:14:39

MS. HEALY:  Perfect.  Thank you.  My                      11:15:17

colleague, Ms. Wong, will start your deposition.          11:15:18

THE REPORTER:  I need to swear them.                      11:15:23

MS. HEALY:  Oh, yes, after you are sworn.                 11:15:24

(Testimony taken through an ITALIAN interpreter:)         11:15:26

MARTA FARINATI, Interpreter, after having been            11:15:26

duly sworn/affirmed, to translate the Italian language    11:15:26

into the English language and the English language into   11:15:26

the Italian language, to the best of her ability,         11:15:26

interpreted the following:                                11:15:26

ANGELA NICOLELLA,                                         11:15:26

after having been duly sworn/affirmed, through the        11:15:26

interpreter, testified as follows:                        11:15:26

MS. HEALY:  Good morning.                                 11:16:06

EXAMINATION BY MS. WONG                                   11:16:07

ANGELA NICOLELLA - 1/21/2016

Page 16

MS. WONG:  Q.  Good morning.  Could you please state your name and address for the record?   11:16:09  11:16:10

A.  Good morning.  My name is Angela Nicolella.   11:16:23

MR. WALLERSTEIN:  Before Ms. Nicolella discloses her address, I think it's an appropriate time to designate that as confidential pursuant to the protective order.   11:16:26  11:16:28  11:16:30  11:16:33

Further, pursuant to the protective order -- and I am referring to the order dated October 1, 2015, docket number 230, paragraph 5.2, pages 5 through 6 -- the three Almawave defendants that I represent invoke their right to have up to 21 days from the conclusion of this deposition to designate any testimony as confidential or highly confidential, attorneys' eyes only, as the case may be.   11:16:35  11:16:37  11:16:42  11:16:48  11:16:52  11:16:56  11:16:59  11:17:00

MS. WONG:  Q.  You can state your address.   11:17:28

A.  I do not answer the question.  It is private. I do not answer the question.  The address is --   11:17:38  11:17:41

Q.  The witness refuses to answer the question?   11:17:44

THE REPORTER:  I'm sorry.  I might have to have you switch places, because it's hard for me to hear.   11:17:54  11:17:54  11:17:54

MS. WONG:  I will speak up.  Is this better?   11:17:56

THE INTERPRETER:  It's better.   11:17:58

MS. WONG:  Okay.  I'll try to speak up, just   11:17:58

A.   So I said that Sabrina Nobili sent me an email informing me that Almawave USA had been founded.   12:17:06 12:17:12

Q.   Do you know what the purpose was for the founding of Almawave USA?   12:17:20 12:17:24

A.   Yes.   12:17:34

Q.   What did she say?   12:17:35

A.   You asked me if I am aware or know the objective of why it was founded?   12:17:43 12:17:47

Q.   And what was the objective?  I -- sorry.  What was the objective?   12:17:50 12:17:54

A.   The objective why Almawave USA was founded?   12:18:02

Q.   Yes.   12:18:10

A.   To market products that were developed in Italy with the Almawave technology.   12:18:22 12:18:27

MR. WALLERSTEIN:  Counsel, we have been going for over an hour, so I would like to take a five-minute break.   12:18:30 12:18:31 12:18:35

MS. WONG:  Can I just ask a couple more questions, just to wrap this?   12:18:42 12:18:44

MR. WALLERSTEIN:  Normally I would, but due to the conduct of the depositions over the last two days, no.   12:18:47 12:18:49 12:18:52

MS. HEALY:  The time is now 12:19.   12:18:59

(Recess taken from 12:19 to 12:44.)   12:19:01

MS. WONG:  Q.  Ms. Nicolella, before the break   12:45:13

said earlier I spoke to Valeria Sandei or it could have been Christian De Felice, but I don't remember.

MR. WALLERSTEIN:  Counsel, it's been six minutes since my warning.  If you will be concluded with this witness in five minutes, I will give you five minutes more.  Otherwise I am taking our lunch break.

MS. WONG:  I do have a few more questions about this topic, and I don't want to obstruct --

MR. WALLERSTEIN:  You can either represent that you will be concluding the deposition of Ms. Nicolella in the next five minutes or, if you cannot make that representation, then we will take our lunch break now.

MS. WONG:  I cannot make that representation.

MR. WALLERSTEIN:  So we are taking our break.

(Lunch recess taken from 1:40 to 2:50.)

(Mr. Raniero Romagnoli additionally present.)

MS. HEALY:  Back on the record.  The time is now 2:50.  And let the record reflect that counsel for AlmavivA and the witnesses returned to the deposition room at approximately 2:46 p.m.

MR. WALLERSTEIN:  Including with Mr. Luca Ferri, who is ready to be deposed today, as per his notice.  He will not be available tomorrow.  We are ready to proceed with him right now and at any time

ANGELA NICOLELLA - 1/21/2016

Page 89

A.    I don't remember.    15:49:09

Q.    I will look it up.    15:49:14

MR. WALLERSTEIN:  We have been going an hour,    15:49:22
so let's take our break now.    15:49:23

MS. HEALY:  No, I have a question pending.    15:49:26

MR. WALLERSTEIN:  No, you don't.    15:49:28

MS. HEALY:  Yes, I do.  Yes, I do.  You are    15:49:30
not taking a break, because the witness -- you have been    15:49:31
taking so many breaks.    15:49:35

MR. WALLERSTEIN:  We take them no more than    15:49:37
once an hour, and we are taking a break now.    15:49:37

MS. HEALY:  I have to -- I have a question    15:49:39
pending.    15:49:40

MR. WALLERSTEIN:  No, you do not.    15:49:40

(Recess taken from 3:49 to 4:08.)    15:49:44

MS. HEALY:  Q.  Ms. Nicolella, we are back on    16:08:51
the record.  You mentioned during your testimony earlier    16:08:54
a company called Interplay?    16:09:03

A.    Yes.    16:09:13

Q.    You said you made some payments to this    16:09:13
company through the Bank of the West account of Almawave    16:09:16
USA?    16:09:19

A.    Yes.    16:09:36

Q.    What does this company do?  What does    16:09:37
Interplay do?    16:09:40

the companies that we need or we need to add companies.

Q. But I am asking if you discuss specific type of risks you wanted to cover.

A. I informed them that it was a new company that was formed, Almawave USA, and I inquired that we needed to cover this newly formed company.

Q. Did you discuss with the broker an exclusion from the policy coverage in the event Almawave USA went bankrupt?

A. No.

Q. Are you aware of any exclusion in the policy you obtained covering Almawave USA in the event of Almawave USA going bankrupt?

A. I don't recall the extent of the insurance policy.

MR. WALLERSTEIN: That's my timer for one hour and five minutes, so we are taking a break.

MS. HEALY: I am not asking -- I have some questions, please. I am not asking for -- I am not asking --

MR. WALLERSTEIN: Counsel, we are taking a break.

(Recess taken from 5:11 to 5:25.)

MS. HEALY: So before we resume, the court reporter correctly noted that after lunch there was

ANGELA NICOLELLA - 1/21/2016

Page 128

make it simple and say you need not translate as far as     17:49:17
I am concerned.     17:49:20

MS. HEALY:  Q.  So was it your understanding     17:49:27
that -- strike that.     17:49:30

Will you tell me how much money you know to be     17:49:34
in Bank of the West's bank account as of today, to the     17:49:41
extent you remember?     17:49:45

MR. WALLERSTEIN:  Objection on grounds of     17:50:00
privacy.  Had you permitted us to look into this     17:50:02
earlier, we would be prepared to give you an answer.  If     17:50:04
you would like us to adjourn and reinvestigate, I again     17:50:07
repeat my offer to do so.     17:50:10

MS. HEALY:  You had many breaks and you had     17:50:11
many opportunities to discuss that.     17:50:14

MR. WALLERSTEIN:  So nothing has changed.  The     17:50:29
objection is privacy.     17:50:31

MS. HEALY:  Which privacy?     17:50:35

MR. WALLERSTEIN:  I apologize.  I thought the     17:50:47
question was to me.  Was it a question to the witness or     17:50:48
for me?     17:50:53

MS. HEALY:  It's for the witness.     17:50:55

MR. WALLERSTEIN:  Objection; calls for a legal     17:50:58
conclusion.     17:50:59

MS. HEALY:  I believe the Court instructed you     17:51:08
at the December 10th hearing that you could only make     17:51:10

MS. HEALY:  Let her answer.                    18:30:13

MR. WALLERSTEIN:  I am letting her answer.     18:30:14
That was my timer going off, because we have gone well     18:30:15
over an hour.                                  18:30:20

Please finish your answer, and we will take     18:30:22
our break.                                     18:30:24

THE WITNESS:  Through MAG JLT, with the        18:30:36
Lloyd's policy for AlmavivA S.p.A., Almawave USA, and     18:30:41
Almawave S.r.l.                                18:30:57

MS. HEALY:  Q.  Did that include --           18:30:57

MR. WALLERSTEIN:  We are taking a break.       18:30:58
Counsel, you can resume when we finish our break.     18:31:00

(Recess taken from 6:31 to 6:42.)             18:31:12

MS. HEALY:  Q.  So, Ms. Nicolella, before you     18:42:15
went for a break I was asking you whether you had     18:42:17
submitted a claim to the insurance company involving     18:42:21
Anna Gatti.                                    18:42:26

A.  So the -- the file -- the claim I filed was     18:42:55
opened through the broker, MAG JLT, for AlmavivA S.p.A.,     18:43:01
Almawave USA, and Almawave S.r.l.             18:43:10

MS. HEALY:  And I am just going to note for     18:43:12
the video recording that the time is now 6:43 and we     18:43:14
just came back on the record a few minutes ago.     18:43:21

MR. WALLERSTEIN:  Thank you, Counsel.  That's     18:43:24
a good point, because we are stopping at 7:00.  And the     18:43:24

**EXCERPTS**

**VENABLE LLP**
Thomas E. Wallerstein (SBN 232086)
Kimberly Culp (SBN 238839)
Email: twallerstein@venable.com
        kculp@venable.com
505 Montgomery Street
14th Floor
San Francisco, CA 94111
Telephone:    415.653.3750
Facsimile:    415.653.3755

Attorneys for Defendant
ALMAWAVE USA, INC.

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LOOP AI LABS INC., a Delaware corporation, | CASE NO.: 3:15-cv-00798-HSG-DMR |
| Plaintiff, | |
| v. | **ALMAWAVE USA INC.'S RESPONSES AND OBJECTIONS TO LOOP AI LABS INC.'S SUPPLEMENTAL DISCOVERY REQUESTS** |
| ANNA GATTI, an individual, ALMAVIVA S.p.A., an Italian corporation, ALMAWAVE S.r.l., an Italian corporation, ALMAWAVE USA, Inc., a California corporation, IQSYSTEM LLC, a California limited liability company, IQSYSTEM Inc., a Delaware corporation, | Date of Service: September 15, 2015 Date Responses Due: October 15, 2015 |
| Defendants. | Action Filed:  February 20, 2015 Trial Date:  July 11, 2016 |

PROPOUNDING PARTY:    Plaintiff Loop AI Labs, Inc.

RESPONDING PARTY:    Defendant Almawave USA, Inc.

SET NUMBER:    Two

**MPX-315**

<div style="margin-left:0">VENABLE LLP<br>505 MONTGOMERY STREET, SUITE 1400<br>SAN FRANCISCO, CA 94111<br>415-653-3750</div>

**EXCERPTS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant Almawave USA, Inc. ("Almawave USA") submits the following objections and responses to Plaintiff Loop AI Labs Inc.'s ("Loop") "Supplemental Discovery requests" consisting of Requests for Production of Documents:

**GENERAL OBJECTIONS**

1.     These General Objections are hereby incorporated by reference into the objections made with respect to each supplemental request.  The inclusion of any specific objection to a supplemental request is neither intended as, nor shall be in any way deemed, a waiver of any general objection or of any other specific objection that may be asserted at a later date.  In addition, the failure to include at this time any general or specific objection to a supplemental request is neither intended as, nor shall in any way be deemed, a waiver of Almawave USA's right to assert that or any other objection at a later date.

2.     Almawave USA objects to each of the supplemental requests to the extent they purport to impose obligations greater or more extensive than those required by the Federal Rules of Civil Procedure, the Local Rules of the Northern District of California, or any other applicable law or rule.

3.     Almawave USA objects to each of the supplemental requests to the extent they purport to impose a burden of producing information that cannot be found in the course of a reasonable search.

4.     Almawave USA objects to each of the supplemental requests to the extent they are unreasonably cumulative or duplicative of other discovery, or seek documents or information that are obtainable from some other source that is more convenient, less burdensome, or less expensive.

5.     Almawave USA objects to each of the supplemental requests to the extent they are overbroad, harassing, oppressive, or unduly burdensome.

6.     Almawave USA objects to each of the supplemental requests to the extent they seek documents or information for which the burden or expense of obtaining and disclosing outweighs its likely benefit in resolving the issues of this action.

**MPX-316**

1

ALMAWAVE USA, INC.'S RESPONSES TO
LOOP AI LAB'S INC.'S SUPP. DISC. REQUESTS

EXCERPTS

6.      Almawave USA objects to the instructions to the extent they require the production of documents and information that are protected from production by any other privilege, immunity, doctrine or exemption protecting confidential commercial, financial and/or proprietary information.

7.      Almawave USA objects to the instructions to the extent that they require the production of documents and information relating to the misappropriation of trade secrets that Loop has failed to specify with particularity.

8.      Almawave USA objects to the instructions to the extent they require the production of documents and information that are subject to confidentiality agreements with third parties.

9.      Almawave USA objects to the instructions to the extent they require the production of documents and information not in Almawave USA's possession, custody, or control.

10.     Almawave USA objects that the time period set forth in the instructions is an overbroad timeframe as applied to the supplemental requests, and does not reflect a relevant time period. Most of the key events occurred between 2012, when Loop was founded, and February 20, 2015, when Loop filed its original complaint in this litigation. Almawave USA will not produce any documents dated after February 20, 2015 and, to the extent necessary, Almawave USA reserves the right to use a date restrictor for documents pre-dating 2012 to limit the burden in responding to Loop's interrogatories and requests.

**RESPONSES TO SUPPLEMENTAL REQUESTS FOR**

**PRODUCTION OF DOCUMENTS**

**SUPPLEMENTAL REQUEST 1:**

Produce all documents and communications regarding any authorization, request, demand, or offer by Almaviva IT to pay, reimburse, indemnify, advance, or otherwise cover, or for any insurer with whom Almaviva IT has an insurance policy, including but not limited to Lloyd's, to pay, reimburse, indemnify, advance, or otherwise cover, all or part of any costs, fees, or expenses incurred by one or more defendants, including but not limited to Almawave USA, in

**MPX-317**

6

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

connection with the above captioned litigation, or any other matters or disputes arising from the same or similar facts as those underlying the above-captioned litigation.

**RESPONSE TO SUPPLEMENTAL REQUEST 1:**

In addition to the foregoing general objections, which are expressly incorporated herein, Almawave USA objects to this supplemental request on the grounds and to the extent that it (1) is overbroad, harassing, unduly burdensome and seeks information that is neither relevant to any claim or defense raised in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence; (2) seeks the production of confidential and/or proprietary business information, including confidential and/or proprietary business information of third parties; (3) seeks the disclosure of attorney work product and/or information protected from disclosure by the attorney-client privilege; and (4) improperly pursues discovery before Loop has identified its alleged trade secrets with particularity.

**SUPPLEMENTAL REQUEST 2:**

Produce all documents and communications with Lloyd's, including, but not limited to, those regarding Gatti, and those regarding Almaviva IT or Almawave IT's relationship with or control over Almawave USA.

**RESPONSE TO SUPPLEMENTAL REQUEST 2:**

In addition to the foregoing general objections, which are expressly incorporated herein, Almawave USA objects to this supplemental request on the grounds and to the extent that it (1) is overbroad, harassing, unduly burdensome and seeks information that is neither relevant to any claim or defense raised in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence; (2) seeks the production of confidential and/or proprietary business information, including confidential and/or proprietary business information of third parties; (3) seeks the disclosure of attorney work product and/or information protected from disclosure by the attorney-client privilege; and (4) improperly pursues discovery before Loop has identified its alleged trade secrets with particularity.

///

///

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

**MPX-318**

7

3:15-CV-00798-HSG                                            ALMAWAVE USA, INC.'S RESPONSES TO
                                                            LOOP AI LABS INC.'S SUPP. DISC. REQUESTS

**VENABLE LLP**
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

**SUPPLEMENTAL REQUEST 3:**

Produce all documents and communications, including, but not limited to, those exchanged between Almawave USA and Venable LLP, those exchanged between Almawave USA or Venable LLP and Lloyd's, and those exchanged between Almawave USA or Venable LLP and any other insurer or insurance provider, regarding payment, indemnification, advancement, reimbursement, or coverage, by any means, whether in part or in full, and whether in the form of a loan, credit line, or otherwise, of any costs, fees, or expenses relating to the above-captioned litigation, or any potential related actions, disputes, negotiations, arbitrations, or other matters arising from the same or similar facts as those underlying the above-captioned litigation, by any other person or entity, including, but not limited to, any defendant, Lloyd's, or any other insurance provider or insurance company.

**RESPONSE TO SUPPLEMENTAL REQUEST 3:**

In addition to the foregoing general objections, which are expressly incorporated herein, Almawave USA objects to this supplemental request on the grounds and to the extent that it (1) is overbroad, harassing, unduly burdensome and seeks information that is neither relevant to any claim or defense raised in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence; (2) seeks the production of confidential and/or proprietary business information, including confidential and/or proprietary business information of third parties; (3) seeks the disclosure of attorney work product and/or information protected from disclosure by the attorney-client privilege; and (4) improperly pursues discovery before Loop has identified its alleged trade secrets with particularity.

**SUPPLEMENTAL REQUEST 4:**

Produce all invoices issued by Venable LLP to Almawave USA. This request calls only for invoices, and does not call for the production of any detailed time entries or billing statements that may be included with any invoices.

**RESPONSE TO SUPPLEMENTAL REQUEST 4:**

In addition to the foregoing general objections, which are expressly incorporated herein, Almawave USA objects to this supplemental request on the grounds and to the extent that it

MPX-319

8

**EXCERPTS**

(1) is overbroad, harassing, unduly burdensome and seeks information that is neither relevant to any claim or defense raised in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence; (2) seeks the production of confidential and/or proprietary business information, including confidential and/or proprietary business information of third parties; (3) seeks the disclosure of attorney work product and/or information protected from disclosure by the attorney-client privilege; (4) is duplicative of other discovery, including but not limited to Loop's first set of discovery requests propounded on Almawave USA; and (5) improperly pursues discovery before Loop has identified its alleged trade secrets with particularity.

**SUPPLEMENTAL REQUEST 5:**

Produce all non-privileged documents and communications regarding the above captioned litigation exchanged between Almawave USA and any other defendant, any third party witnesses, any non-parties, and any insurance provider or insurer, including but not limited to Lloyd's.

**RESPONSE TO SUPPLEMENTAL REQUEST 5:**

In addition to the foregoing general objections, which are expressly incorporated herein, Almawave USA objects to this supplemental request on the grounds and to the extent that it (1) is overbroad, harassing, unduly burdensome and seeks information that is neither relevant to any claim or defense raised in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence; (2) seeks the disclosure of attorney work product; (3) seeks the production of confidential and/or proprietary business information, including confidential and/or proprietary business information of third parties; (4) is duplicative of other discovery, including but not limited to Loop's first set of discovery requests propounded on Almawave USA; and (5) improperly pursues discovery before Loop has identified its alleged trade secrets with particularity.

**SUPPLEMENTAL REQUEST 6:**

Produce any conflict waiver executed by Almawave USA regarding legal representation by Peter Sternberg or Venable LLP in connection with the above captioned litigation or any

**MPX-320**

9

ALMAWAVE USA, INC.'S RESPONSES TO
LOOP AI LAB'S INC.'S SUPP. DISC. REQUESTS

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

potential related actions, disputes, negotiations, arbitrations, or other matters arising from the same or similar facts as those underlying the above-captioned litigation.

**RESPONSE TO SUPPLEMENTAL REQUEST 6:**

In addition to the foregoing general objections, which are expressly incorporated herein, Almawave USA objects to this supplemental request on the grounds and to the extent that it (1) is overbroad, harassing, unduly burdensome and seeks information that is neither relevant to any claim or defense raised in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence; (2) seeks the disclosure of attorney work product and/or information protected from disclosure by the attorney-client privilege; (3) is duplicative of other discovery already propounded in this action, including but not limited to Loop's subpoenas directed to Venable LLP ("Venable"), Orrick Herrington & Sutcliffe LLP ("Orrick"), and Peter Sternberg, Esq.; and (4) improperly pursues discovery before Loop has identified its alleged trade secrets with particularity.

**SUPPLEMENTAL REQUEST 7:**

Produce all letters of engagement between Almawave USA and any law firm located in the United States, including, but not limited to Venable LLP, or litigation service provider located in the United States including, but not limited to, e-discovery or document management services, investigative services, printing services, and other litigation services, dated between February 1, 2015 and the present. Privileged portions of any such letters may be redacted.

**RESPONSE TO SUPPLEMENTAL REQUEST 7:**

In addition to the foregoing general objections, which are expressly incorporated herein, Almawave USA objects to this supplemental request on the grounds and to the extent that it (1) is overbroad, harassing, unduly burdensome and seeks information that is neither relevant to any claim or defense raised in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence; (2) seeks the disclosure of attorney work product and/or information protected from disclosure by the attorney-client privilege; (3) is duplicative of other discovery already propounded in this action, including but not limited to Loop's subpoenas directed to Venable and Peter Sternberg, Esq.; (4) improperly seeks documents dated after Loop filed its

10

**EXCERPTS**

**SUPPLEMENTAL REQUEST 19:**

Produce documents and communications sufficient to identify all payments, loans, or transfers of funds to Almawave USA from any other member of the Almaviva Group or their agents, including, but not limited to insurers, financial institutions, and any other intermediaries used by the Almaviva Group.

**RESPONSE TO SUPPLEMENTAL REQUEST 19:**

In addition to the foregoing general objections, which are expressly incorporated herein, Almawave USA objects to this supplemental request on the grounds and to the extent that it (1) is overbroad, harassing, unduly burdensome and seeks information that is neither relevant to any claim or defense raised in this litigation, nor reasonably calculated to lead to the discovery of admissible evidence; (2) is duplicative of other discovery already propounded in this action, including but not limited to Loop's first set of discovery requests propounded on Almawave USA; (3) seeks the production of confidential and/or proprietary business information, including confidential and/or proprietary business information of third parties; and (4) improperly pursues discovery before Loop has identified its alleged trade secrets with particularity.

October 15, 2015

**VENABLE LLP**

By: _____
Thomas E. Wallerstein (SBN 232086)
Kimberly Culp (SBN 238839)
505 Montgomery Street, Suite 1400
San Francisco, CA 94111

*Attorneys for Almawave USA Inc.*

VENABLE LLP
505 MONTGOMERY STREET, SUITE 1400
SAN FRANCISCO, CA 94111
415-653-3750

**MPX-322**

18

VALERIA CALAFIORE HEALY (*pro hac vice*)
HEALY LLC
154 Grand Street
New York, New York  10013
Telephone:     (212) 810-0377
Facsimile:     (212) 810-7036

DANIEL J. WEINBERG (SBN 227159)
FREITAS ANGELL & WEINBERG LLP
350 Marine Parkway, Suite 200
Redwood Shores, California  94065
Telephone:     (650) 593-6300
Facsimile:     (650) 593-6301

Attorneys for Plaintiff
LOOP AI LABS INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS INC.,<br><br>Plaintiff,<br><br>v.<br><br>ANNA GATTI, et al,<br><br>Defendants. | CASE NO.: 3:15-cv-00798-HSG-(DMR)<br><br>**PLAINTIFF LOOP AI LABS INC.'S NOTICE OF AMENDED DEPOSITION NOTICED AT DOCKET # 353 PURSUANT TO COURT ORDER AT DOCKET # 389**<br><br>Action Filed:  February 20, 2015<br>Trial Date: July 11, 2016 |

**MPX-323**

Plaintiff Loop AI Labs Inc. hereby respectfully submits the below amendments to its Deposition Notices filed at Dkt. 353, as amended at Dkts. 356 and 370. The new amendments are made to reflect the Court's Order at Dkt. 389 ("Order-389").

| Date | Deponent | Time | Place |
|---|---|---|---|
| **Tuesday January 19** | **New Date Pursuant to Order-389**<br><br>**Anna Gatti**<br><br>**(Unchanged)** Gennaro Di Napoli (IQS Inc.) | 8:00am<br><br>2:00pm | DTI Global 333 Bush Street 16th Floor San Francisco, CA 94014 |
| **Wednesday January 20** | **(Unchanged)** Mariantonietta Perri (Almaviva)<br><br>Angela Nicolella (Almaviva) | 8:00am<br><br>2:00pm | DTI Global 333 Bush Street 16th Floor San Francisco, CA 94014 |
| **Thursday January 21** | **(Unchanged)** Luca Ferri (Almaviva) | 8:00am | DTI Global 333 Bush Street 16th Floor San Francisco, CA 94014 |
| **Friday January 22** | **(Unchanged)**<br><br>Valeria Sandei (Almaviva Spa)<br><br>**New Date Pursuant to Order-389** Raniero Romagnoli (Almaviva) | 8:00am<br><br>2:00pm | DTI Global 333 Bush Street 16th Floor San Francisco, CA 94014 |

Respectfully submitted,

January 16, 2016

By: /s/ *Valeria Calafiore Healy*

Valeria Calafiore Healy, Esq. (*phv*)
HEALY LLC

**MPX-324**

1

3:15-CV-00798-HSG-DMR                                    PL.'S AM. NOTICE AT DKT. 353

Daniel J. Weinberg, Esq. (SBN 227159)
FREITAS ANGELL & WEINBERG

Attorneys for Plaintiff
LOOP AI LABS, INC.

**MPX-325**

3:15-CV-00798-HSG-DMR                                    PL.'S AM. NOTICE AT DKT. 353



505 MONTGOMERY STREET   SUITE 1400   SAN FRANCISCO, CA 94111
**T** 415.653.3750   **F** 415.653.3755   www.Venable.com

February 12, 2016

**By ECF**

The Honorable Donna M. Ryu
United States District Court
Northern District of California
1301 Clay Street, Courtroom 4
Oakland, California 94612

RE:   ***Loop AI Labs Inc. v. Anna Gatti et al.*, Case No. 3:15-cv-00798-HSG-DMR**

Dear Judge Ryu:

Judge Gilliam indicated that he is inclined to soon appoint a special master.  Until such time, Almawave USA, Inc. ("Almawave") will continue to abide by Your Honor's Amended Discovery Procedures, Dkt. 401.

Almawave therefore respectfully submits this letter regarding Loop's failure to depose Luca Ferri, an employee of the Almawave defendants.  Almawave seeks recovery of reasonable expenses pursuant to Federal Rule of Civil Procedure 30(g) for Loop's refusal to take Mr. Ferri's deposition, or leave to file a motion seeking same.

The parties met and conferred about this issue on the telephone on January 29, 2016.  Almawave sent a joint letter to Loop on January 29, 2016, but Loop refused to participate.

On February 10, Almawave again raised the issue via letter to Loop.  Loop refused and continues to refuse to participate in a joint letter, in violation of several express orders of this Court.

**Relevant Case Management Deadlines**

Fact and expert discovery close on March 29, 2016 and May 17, 2016, respectively.  The dispositive motion filing cutoff is set for May 31, 2016.  Trial is set in this matter for September 19, 2016, with the pretrial conference set for August 30, 2016.

**MPX-326**

### Loop Must Reimburse Almawave for Fees And Costs

On January 21, 2016, Loop declined to depose Almawave's employee witness, Mr. Luca Ferri. Mr. Ferri made himself available for deposition at Loop's insistence, Dkts. 353, 356, 370 and 394, <u>and travelled from Rome, Italy to attend the deposition</u>.

Mr. Ferri made himself available for deposition all day on January 21 pursuant to Loop's demand, at the court reporting office where Loop chose to conduct the depositions. He waited all day to be deposed and Loop never took his deposition, even though two of Loop's attorneys were present at the location of depositions that day, and both of them conducted depositions of Almawave witnesses during the week.

Pursuant to Federal Rules of Civil Procedure Rule 30, "[a] party who, expecting a deposition to be taken, attends in person or by an attorney may recover reasonable expenses for attending, including attorney's fees, if the noticing party failed to . . . attend and proceed with the deposition." *Id.* at (g).

Almawave therefore seeks the costs of Mr. Ferri's travel from Italy to the United States to attend his deposition, the costs of his accommodation in San Francisco, as well as fees and costs incurred by Almawave's counsel preparing for his deposition, as per the Rule. "Courts have consistently interpreted Rule 30(g) to allow an award of expenses and attorney's fees where the party noticing the deposition fails to attend and does not deliver sufficient notice of cancellation to the other party." *Pine Lakes Int'l Country Club v. Polo Ralph Lauren Corp.*, 127 F.R.D. 471, 472 (D.S.C. 1989); *see also Ceglia v. Zuckerberg*, No. 10–CV–00569A(F), 2012 WL 5988637, at *5 (W.D.N.Y. Nov. 29, 2012) (collecting cases where courts "have awarded the costs of canceled depositions, including travel and lodging expenses, as well as expenses for the time expended by the experts and attorneys preparing for the canceled depositions"); *Spalding & Evenflo Cos., Inc. v. Graco Metal Prods., Inc.*, No. 5:90 CV 0651, 1992 WL 109092, at *4 (N.D. Ohio Feb. 14, 1992) (awarding costs pursuant to Rule 30(g) when witness was already traveling before deposition was cancelled).

Therefore, Almawave respectfully requests recovery of reasonable expenses pursuant to Federal Rule of Civil Procedure 30(g), or leave to file a motion seeking same.

Respectfully submitted,

*Thomas E. Wallerstein*

Thomas E. Wallerstein
VENABLE LLP
*Counsel for Defendant Almawave, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LOOP AI LABS INC,

                    Plaintiff,

          v.

ANNA GATTI, et al.,

                    Defendants.

Case No. 15-cv-00798-HSG   (DMR)

**ORDER REGARDING INTERPRETER SERVICES AT DEPOSITIONS**

At the commencement of today's deposition, counsel for Plaintiff Loop AI Labs Inc. and the Almawave Defendants contacted the court regarding the parties' dispute about the use of a certified interpreter for jurisdictional depositions of Italian-speaking witnesses.  According to defense counsel, none of the Italian-speaking witnesses scheduled to be deposed during the week of January 19, 2016 are comfortable proceeding in English at their depositions and have requested to have the questions translated into Italian.  Plaintiff's counsel concedes that she was on notice of Defendants' request for interpreters for these depositions, but did not retain certified interpreters. (*See also* Dec. 10, 2015 Hr'g Tr. at 44 ("Our witnesses insist on [having a translator present at depositions].").)  This is because Plaintiff's counsel does not believe that the deponents require an English language interpreter because each of them filed a declaration in English in this case.

The fact that a witness is able to submit an English language declaration, or communicate at some level in English does not mean that he or she is competent to accurately answer questions in English under oath at a deposition.  Plaintiff's counsel's offer to interpret her own questions in Italian is inappropriate, because she is the advocate for the opposing party.  Without a certified interpreter present, Plaintiff bears the risk of obtaining testimony that is not fully usable on a motion or at trial, because a witness may attempt to explain deposition responses on the basis that he or she did not understand the question posed in English.

**MPX-328**

Accordingly, the court orders as follows. The court is aware that the Almawave Defendants retained their own interpreter as a "consultant" for today's deposition. The interpreter has experience in providing Italian language translation in California courts. That interpreter shall be put under oath to provide accurate translation, and shall translate for the depositions today (January 20, 2016). Plaintiff and the Almawave Defendants shall share the cost of that interpreter (i.e., Plaintiff shall bear 50% of that cost). Going forward, Plaintiff shall provide a certified interpreter for all of the Italian language deponents who are scheduled to be deposed this week, as the Almawave Defendants have put Plaintiff on notice that all require an interpreter. Plaintiff shall pay the full cost of the interpreter(s), but shall reserve the right to seek reimbursement for interpreter costs if it can show that such services were unnecessary.

**IT IS SO ORDERED.**

Dated: January 20, 2016



Donna M. Ryu
United States Magistrate Judge

United States District Court
Northern District of California

**MPX-329**2

VALERIA CALAFIORE HEALY (*pro hac vice*)
HEALY LLC
154 Grand Street
New York, New York 10013
Telephone: (212) 810-0377
Facsimile: (212) 810-7036

DANIEL J. WEINBERG (SBN 227159)
FREITAS ANGELL & WEINBERG LLP
350 Marine Parkway, Suite 200
Redwood Shores, California 94065
Telephone: (650) 593-6300
Facsimile: (650) 593-6301

Attorneys for Plaintiff
LOOP AI LABS INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS INC., | CASE NO.: 3:15-cv-00798-HSG-(DMR) |
| Plaintiff, | **PLAINTIFF LOOP AI LABS.. INC'S APPLICATION REGARDING LAST JURISDICTIONAL DEPOSITION OF GENNARO DINAPOLI SCHEDULED FOR FEBRUARY 3, 2016** |
| v. | |
| ANNA GATTI, et al, | |
| Defendants. | Action Filed: February 20, 2015 |
| | Trial Date: July 11, 2016 |

Plaintiff Loop AI Labs Inc. ("Loop AI"), hereby, submits this application regarding the use of an interpreter during the last jurisdictional deposition of Mr. Gennaro DiNapoli, scheduled to be held tomorrow, February 3, 2016, in San Francisco.  In support of this application, Loop AI respectfully submits as follows:

## ISSUE PRESENTED

1.      On January 20, 2016, the Almaviva Defendants obtained an emergency Order from the Court regarding the use and payment for interpreting services during jurisdictional depositions.  *See* Dkt. 398 ("Order-397").

2.      Although Loop AI will be addressing the issues surrounding Order-397 and the Almaviva Defendants separately,[1] in light of IQSystem Inc.'s extension of Order-397 to the jurisdictional deposition of Gennaro DiNapoli, Loop AI makes this application to clarify whether Loop AI is required to procure and pay for an interpreter for Mr. Gennaro DiNapoli's deposition to be held on February 3, 2016, and to seek recoupment for these costs later.

3.      As more fully set forth below, until Order-397 was issued on January 20, 2016, IQSystem Inc. never advised the Court or Loop AI that Gennaro DiNapoli allegedly does not speak English.[2]  Until Order-397, IQSystem Inc. never requested that Loop AI procure, let alone pay for an interpreter.  Moreover, the use of an interpreter is extremely time consuming, and unless the witness is truly unable to speak English, Loop AI respectfully submits that the

---

[1] Loop AI respectfully submits that the Almaviva Defendants made misleading representations to the Court in order to the get Order-397 issued.  A summary of the record leading up to that Order and illustrating the Almaviva Defendants' misleading statements to the Court is set forth below.

[2] Loop AI has reached out to one of Mr. Gennaro DiNapoli's past employers in the United States, the law firm of Carr & Ferrell, where Mr. DiNapoli spent time as an intern in 2013.  Loop AI was advised that during Mr. DiNapoli's time as an intern at the firm he had no trouble speaking English.  Attached hereto as Exhibit 1 is a true and correct copy of the letter received from Carr & Ferrell on February 1, 2016.  Loop AI has also previously submitted the declaration of Charles Ferguson, a witness who employed Mr. Gennaro DiNapoli as babysitter for his daughter in 2014.  *See* Dkt. 54.  Loop AI's counsel has spoken to Mr. Charles Ferguson, and he does not speak any Italian.  He would have had no way to engage with Mr. Gennaro DiNapoli in the discussions referenced in his declaration in a language other than English.

Defendants have been demanding the interpreter to impede Loop AI's ability to meaningfully take the witnesses' testimonies.

4.     For the foregoing reasons, Loop AI respectfully request that the Court clarify Loop AI's obligations at this stage in respect of Mr. Gennaro DiNapoli's deposition.

5.     Loop AI also sets forth below a summary of the record leading up to Order-397, as relevant to the interpreter's issues.

### ALMAVIVA DEFENDANTS' REPRESENTATIONS TO THE COURT REGARDING THE LANGUAGE OF THE JURISDICTIONAL DEPOSITIONS

6.     On September 23, 2015, Loop AI and the Almaviva Defendants submitted a joint discovery letter to the Court regarding the scope and conduct of the jurisdictional discovery (the "Jurisdictional Discovery Letter").  *See* Dkt. 211.  The Jurisdictional Discovery Letter also included two proposed orders, one by Loop AI, Dkt. 211-1, and one by the Almaviva Defendants, Dkt. 211-2.  Loop AI's proposed order listed 9 proposed jurisdictional deponents. *See* Dkt. 211-1 at ¶ 16. The 5 Almaviva jurisdictional deponents ultimately selected by Loop AI for the January 19-22, 2016 jurisdictional depositions were all included in Loop AI's list submitted to the Court on September 23, 2015.

7.     Neither in the Jurisdictional Discovery Letter nor at any time through the Court's ruling on the Jurisdictional Discovery Letter, did the Almaviva Defendants or anyone else ever make an application, or even raise the argument, that all of the witnesses listed in the Jurisdictional Discovery Letter were allegedly unable to speak English, and that Almaviva demanded that Loop AI provide and pay for an interpreter for each of their depositions.  *See* Dkt. 211.

8.     On December 10, 2015, the Court held a hearing to address and rule on the Jurisdictional Discovery Letter.  *See* Dec. 10, 2015 Hear. Tr. at Dkt. 335.

9.     During the December 10 hearing, the Court *sua sponte* raised the question of

---

whether any of the jurisdictional deponents would need an interpreter.  In response, Mr. Wallerstein advised the Court that the two key jurisdictional witnesses – Valeria Sandei and Raniero Romagnoli — would be testifying **in English** and that he would otherwise bring his own interpreter:

```
THE COURT: …  SO WITH THAT IN MIND, MY ORDER IS AS FOLLOWS: YOU
CAN HAVE A TOTAL OF -- WILL SANDEI AND ROMAGNOLI BE IN ENGLISH
OR ITALIAN?
MR. WALLERSTEIN: ENGLISH, YOUR HONOR.
THE COURT: OKAY. BUT --
MR. WALLERSTEIN: TRANSLATOR -- WITH A TRANSLATOR ON STANDBY.
THE COURT: OKAY.
```

Dec. 10, 2015 Hearing (Dkt. 335) at 49:9-15 (emphasis added).

```
THE COURT: WHERE WOULD THE TRANSLATORS COME FROM;
ITALY OR WOULD THEY NEED TO BE TAKEN OVER?
MR. WALLERSTEIN: WE, REGARDLESS OF ANYTHING ELSE, WE
ARE GOING TO HAVE A TRANSLATOR THERE. OUR WITNESSES INSIST ON
IT. I DON'T KNOW HOW WE ARE GOING TO DO THAT YET.
```

Dec. 10, 2015 Hearing (Dkt. 335) at 44:2-6 (emphasis added).

10.	At no time during the December 10, 2015 hearing or thereafter (until January 9, 2016) did the Almaviva Defendants or their counsel, or anyone else, ever advise the Court or Loop AI's counsel that Mr. Wallerstein demanded that Loop AI procure, use and pay for an interpreter for all of the Almaviva's deposition.

11.	Similarly, although Loop AI and IQSystem Inc. submitted a joint discovery letter to the Court to address whether Gennaro DiNapoli and Tony DiNapoli should be subjected to a jurisdictional deposition the week of January 19, 2016, IQSystem never raised with the Court the argument that Gennaro DiNapoli demanded an interpreter be provided to him and paid for by Loop AI.  *See* Dkt. 368.  Indeed, despite making other applications to the Court regarding Gennaro DiNapoli's jurisdictional deposition, *see* Dkt. 395, until the Court's emergency Order procured by Almaviva on January 20, 2016, IQSystem had never previously advised Loop AI or the Court that Gennaro DiNapoli allegedly does not speak English and demands an interpreter at

Loop AI's expense.

**ALMAVIVA'S EMERGENCY APPLICATION TO THE COURT
ON JANUARY 20, 2016**

12.     Despite having told the Court that Ms. Sandei and Mr. Romagnoli would testify in English and that Almaviva would otherwise bring its own interpreter to the depositions, in the afternoon of *Saturday*, January 9, 2016, the Almaviva Defendants sent Loop AI's counsel a fax containing the following statements:

> Further, we expect Loop to question all witnesses in English, and to provide an Italian-language interpreter who will translate into Italian for the benefit of Almawave's witnesses, all of whom speak Italian as their native language and have reported that they require an interpreter.  Loop, as the discovering party, is required to pay for such an interpreter.
> \*\*\*
> **Please be advised that should Loop not provide a certified translator, or not provide certified English translations of ltalian-language documents, or not ask questions in English, we will instruct the witness not to answer the question.  We believe this is consistent with all of Judge Ryu's comments on the issue.**

Letter from Almaviva Defendants' counsel faxed January 9, 2016 (emphasis in original).

13.     On Thursday, January 14, 2016, the Almaviva Defendants made an application to the Court stating that on January 9, 2016, they had "request[ed] confirmation that Loop would provide an Italian-English interpreter for Almawave's Italian-speaking witnesses.... *in compliance with Court order (Dkt. 203)*."  Dkt. 383 (emphasis added).  Order at Docket 203 ("Order-203"), however, has nothing to do with jurisdictional depositions or with a request by Almaviva or anyone else that Loop AI bring an interpreter to any deposition.  Order-203 concerned exclusively the deposition of Mario Pepe, which has not yet taken place.  Although the Court ruled on Almaviva's application at Dkt. 383, the Court did not hold that Loop AI had to procure and pay for an interpreter for unspecified witnesses. *See* Dkt. 389.

14.     On January 20, 2016, Loop AI noticed the jurisdictional deposition of the first Almaviva witness to begin at 8:00am, followed by a second Almaviva witness to begin at

---

3:15-CV-00798-HSG-DMR                                 **MPX-334** 4                           PL.'S APPLICATION RE: DINAPOLI

2:00pm.   After the Almaviva's counsel and the witness finally arrived, more than one hour late (as they did each day of the jurisdictional depositions), Loop AI's counsel began the deposition by asking the deponent, Ms. Perri, if she spoke English:

```
 5 THE REPORTER: Would you raise your right
 6 hand, please?
 7 MR. WALLERSTEIN: The witness is not going to
 8 respond to English today, ma'am.
 9  MS. HEALY: Ms. Perri, do you speak English?
10 MR. WALLERSTEIN: She is not responding to
11 English, Ms. Healy, and I instruct her not to answer.
12 MS. HEALY: Ms. Perri, will you --
13 Ms. Court Reporter, will you be kind enough to
14 attempt to swear [sic] the witness? If she doesn't want to
15 answer, that's fine.
16 MR. WALLERSTEIN: Okay. Well, I am going to
17 adjourn the deposition at this point if you don't have
18 an interpreter.
19 MS. HEALY: I am asking the court reporter to
20 please attempt to swear the witness. And if she doesn't
21 understand English, so it will be noted on the record
22 that she doesn't understand English.
23 MR. WALLERSTEIN: That's not the point. I am
24 noting on the record that she is not proceeding with
25 this deposition in English. We have told the Court
 1 that. We have told you that repeatedly.
```

Perri Dep. at 8-9.

15.     Although all counsel was in the same deposition room with a court reporter present and with several telephones available to make calls, Mr. Wallerstein elected to call the Court ex-parte and to present arguments to Judge Ryu's clerk before seeking to join Loop AI's counsel in the call.  Loop AI's counsel learned this information from the interpreter after the call. The interpreter informed Loop AI's counsel that she had personally spoken to Judge Ryu's clerk with Mr. Wallerstein.  Although Loop AI is not sure what was discussed during the first part of the call in which Loop AI's counsel was not present, Almaviva clearly did not advise the Court that on December 10, 2015 it had represented to the Court that Sandei and Romagnoli would testify in English and that he personally would be bringing his own interpreter, as set forth on the record of that hearing.  Further, the Almaviva Defendants' counsel never advised the Court that each of his witnesses speaks English fluently and uses English for work.

16.     As a result of Mr. Wallerstein's misleading representations to the Court, the Court

issued Order-397, which unfairly imposed on Loop AI the sudden requirement to procure and pay for an interpreter (whose costs are extremely high). The need to identify, retain and use of an interpreter in the middle of the jurisdictional depositions resulted in a substantial waste of time and resources that essentially defeated the purpose of the jurisdictional depositions. Adding insult to injury, while Loop AI was suddenly subject to Order-397, Mr. Wallerstein comfortably spoke English with each of his witnesses throughout the course of the depositions and even expended valuable deposition time to boast of having persuaded the Court to issue Order-397.[3]

### LOOP AI SHOULD NOT BE REQUIRED TO PROCURE AND PAY FOR AN INTERPRETER FOR GENNARO DI NAPOLI

17. Pending the Court's clarification, Loop AI has procured an interpreter to be present at the Gennaro DiNapoli deposition, which is scheduled to begin at 8:30am tomorrow, February 3, 2016.

18. The costs of an Italian interpreter are extremely high. Particularly when considering that the Defendants' counsel has arrived late each of the prior deposition dates and has taken interminable recesses, the costs of paying for an interpreter for the duration of the deposition of a witness who is unquestionably fluent in English and who claims to be the President of a US based corporation, seem unreasonable and unnecessary.

Respectfully submitted,

February 2, 2016                                    By:   /s/ *Valeria Calafiore Healy*

---

[3] *See* Jan. 22, 2016 Deposition of Mr. Romagnoli at 10-11 ("MR. WALLERSTEIN: Were you able to reach Judge Ryu? MS. HEALY: I am not calling the judge without other counsel present. I wouldn't do what you have done a few days ago. So Ms. Culp -- MR. WALLERSTEIN: That didn't turn out very well, did it? MS. HEALY: Ms. Culp has advised us -- I am sorry. What did you mean? What didn't turn out well? MR. WALLERSTEIN: Having the judge rule on our dispute. MS. HEALY: I don't know what you mean. MR. WALLERSTEIN: You didn't like the ruling, apparently. MS. HEALY: Who said that? MR. WALLERSTEIN: You. MS. HEALY: I don't recall ever telling that to you.")

Valeria Calafiore Healy, Esq. (*phv*)
HEALY LLC
154 Grand Street
New York, New York 10013
Telephone:     (212) 810-0377
Facsimile:     (212) 810-7036


Daniel J. Weinberg, Esq. (SBN 227159)
FREITAS ANGELL & WEINBERG LLP
350 Marine Parkway, Suite 200
Redwood Shores, California 94065
Telephone:     (650) 593-6300
Facsimile:     (650) 593-6301

Attorneys for Plaintiff
LOOP AI LABS, INC.

# EXHIBIT 1

**MPX-338**



**carr/ferrell** LLP
ATTORNEYS AT LAW

Writer's Direct Dial Number
(650) 812-3453

February 1, 2016

**VIA ELECTRONIC MAIL ONLY**

Valeria Calafiore Healy
Healy LLC
154 Grand Street
New York, New York 10013
Email Address: valeria.healy@healylex.com

Re:  *Loop AI Labs Inc. v. Anna Gatti, et al.*
 Case No. 3:15-cv-00798-HSG

Dear Ms. Healy:

Pursuant to your inquiry, we confirm that Gennaro DiNapoli worked as an intern for Carr & Ferrell *LLP* from July 8, 2013 to the end of August of that year. We did not encounter any difficulty with Mr. DiNapoli's English speaking abilities during the course of his work at our firm.

I trust that this correspondence adequately responds to your inquiry.

Very truly yours,

CARR & FERRELL *LLP*

ROBERT J. YORIO

/cmb

Healy.

Diana Wong <dw@healylex.com>

## Activity in Case 3:15-cv-00798-HSG Loop AI Labs, Inc. v. Gatti et al Order on Motion for Miscellaneous Relief

**ECF-CAND@cand.uscourts.gov** <ECF-CAND@cand.uscourts.gov>        Tue, Feb 2, 2016 at 7:13 PM
To: efiling@cand.uscourts.gov

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### U.S. District Court

### California Northern District

## Notice of Electronic Filing

The following transaction was entered on 2/2/2016 at 4:13 PM PST and filed on 2/2/2016
**Case Name:**          Loop AI Labs, Inc. v. Gatti et al
**Case Number:**       3:15-cv-00798-HSG
**Filer:**
**Document Number:** 408(No document attached)

**Docket Text:**
**ORDER by Magistrate Judge Donna M. Ryu re [407] Plaintiff's Application. By no later than 5:00 p.m. on 2/2/2016, IQ System Inc. shall notify Plaintiff whether Gennaro DiNapoli requires an Italian language interpreter for his deposition. If he does, Plaintiff shall pay the full cost of the interpreter, but shall reserve the right to seek reimbursement for cost of the interpreter if it can show that such services were unnecessary. (This is a text-only entry; there is no document associated with this entry.) (dmrlc1, COURT STAFF) (Filed on 2/2/2016)**

**3:15-cv-00798-HSG Notice has been electronically mailed to:**

Becki Diana Graham &nbsp &nbsp becki.graham@ogletreedeakins.com, cora.chiu@ogletreedeakins.com, elena.ruiz@ogletreedeakins.com

Daniel Justin Weinberg &nbsp &nbsp dweinberg@fawlaw.com, marlantico@fawlaw.com

Diana Wong &nbsp &nbsp dw@healylex.com

Eric A Lerner &nbsp &nbsp elerner@healylex.com

James Francis Regan &nbsp &nbsp jregan@lowball.com

Janet M. Brayer &nbsp &nbsp janet@brayer.net, anita@brayer.net

Thomas Edward Wallerstein &nbsp &nbsp TWallerstein@Venable.com, dlcox@venable.com,

**MPX-340**

etitova@venable.com, jcho@venable.com, KCulp@Venable.com, lalitigationdocketing@venable.com, rcook@venable.com, RLMeyerhoff@Venable.com, SChintanaseri@Venable.com, wwchang@venable.com

Thomas J. LoSavio &nbsp &nbsp tlosavio@lowball.com, sherrera@lowball.com

Valeria Calafiore Healy &nbsp &nbsp valeria.healy@healylex.com, bart@loop.ai, dcarrera@healylex.com, elerner@healylex.com, GM@loop.ai, jgalicki@healylex.com

William F. Alderman &nbsp &nbsp walderman@orrick.com, jcopoulos@orrick.com

**3:15-cv-00798-HSG Please see Local Rule 5-5; Notice has NOT been electronically mailed to:**

**MPX-341**



**HEALY**LLC

154 Grand Street
New York, NY 10013
T: 212.810.0377
F: 212.810.7036
www.healylex.com

Valeria Calafiore Healy
vch@healylex.com

**By ECF**

February 23, 2016

The Honorable Donna M. Ryu
United States District Court
Northern District of California
1301 Clay Street, Courtroom 4
Oakland, California 94612

> Re: *Loop AI Labs Inc. v. Anna Gatti et. al.*, 3:15-cv-00798-HSG-DMR-
> **<u>Opposition to Discovery Letter Brief At Dkt. 418</u>**

Dear Judge Ryu:

Pursuant to Your Honor's Order at Dkt. 401 Plaintiff Loop AI Labs Inc. ("Loop AI") respectfully opposes the Almaviva Defendants' Motion filed at Docket No. 419 regarding the deposition of Mr. Ferri. Loop AI could not depose Mr. Ferri as scheduled because Almaviva's counsel did not allow any of the jurisdictional depositions of Almaviva witnesses to proceed as scheduled.

**<u>Impediments to Depositions Proceeding as Scheduled</u>** – A summary and chart of the time used during the jurisdictional depositions was prepared by the court reporter at Mr. Wallerstein's request. *See* VCH Declaration dated February 22, 2016, **Exhibit 1**. The time chart that the court reporter shared with all counsel shows the following data points relevant to the 3 days of jurisdictional depositions of Almaviva, between Jan. 20-22:[1]

**Total Time Spent Trying to Take Almaviva ("AV") Depositions Jan-20-22**:  29hrs 52min
- **Testimony Time (including objections) AV Depositions Jan-20-22**:  16hrs 11min
- **Other Time (as per the breakdown below):** 13hrs 41min

  ➢ **Wait Time During AV Depositions Jan-20-22**:  4hrs 31min (AV and its counsel were more than 1 hour late each day of deposition)
  ➢ **Recesses During AV Depositions Jan-20-22**:  7hrs 44min (all recesses demanded or caused by AV)
  ➢ **Colloquy During AV Depositions Jan-20-22**:  1hr 26min (colloquies demanded by AV's counsel)

---

[1] The summary and chart prepared by the court reporter also includes the first day of jurisdictional deposition, Jan. 19th, during which Ms. Gatti was deposed. Although, Ms. Gatti and her counsel, as well as Mr. Wallerstein, arrived more than 1 hour late for that deposition as well, Ms. Gatti's deposition time is not relevant here and has been excluded.

**MPX-342**

*See* VCH Decl., **Exhibit 2**.

Almaviva's counsel expressly refused to allow Mr. Ferri to be deposed when asked to do so, on January 21st, the date of his noticed deposition. *See* VCH Decl. at ¶¶ 7-8. In addition to refusing to have him sit for the deposition when Almaviva finally arrived to the deposition venue, the morning of January 21st, Almaviva also abruptly terminated the deposition day, precluding the possibility of taking Mr. Ferri's deposition at the conclusion of the deposition of Ms. Nicolella. *Id.* at ¶ 8. As the record shows, Ms. Nicolella's deposition was required to be postponed as a result of the unreasonable delays, recesses and early termination by Almaviva of the two depositions scheduled for January 20, 2016. *See* VCH Decl., ¶ 6, and Exhibit 2-A.

Loop AI also respectfully submits that the language emergency that Almaviva asked the Court to address on January 20, 2016 was not made in good faith. *See* Dkt. 407 at 3-6; Dec. 10, 2015 Hearing (Dkt. 335) at 49:9-15 and 44:2-6. Mr. Ferri, in particular, describes himself on his personal Linked-In profile as having a "Professional Working Proficiency" of the English Language. *See* **Exhibit 3**. Almawave USA's production contains dozens of documents authored by Mr. Ferri in English. All the documents are marked Attorney's Eyes Only but can be provided to the Court upon request.

Aside from objections and colloquies, Almaviva's counsel and its witnesses arrived late, took unreasonable recesses and left early each day of deposition. *See* VCH Decl., Exhibits 1 and 2. They also unreasonably demanded an interpreter even though their witnesses are fluent in English, knowing that it would be difficult for Loop AI to procure an interpreter at the last minute and that it would be very time consuming to depose a witness through an interpreter.

  **Any Reimbursement Should be By Almaviva to Loop AI** — The facts presented here do indeed give rise to a claim for reimbursement in favor of Loop AI. *See* Fed. R. Civ. P. 30(d)(2) ("The court may impose an appropriate sanction — including the reasonable expenses and attorney's fees incurred by any party — on a person who impedes, delays, or frustrates the fair examination of the deponent."). Indeed, Loop AI was assessed additional fees by the court reporting agency to account for the wait time caused by Almaviva and for the fact that an interpreter was being used during the depositions. After its conduct during the depositions, Almaviva had no basis to file this Motion and force Loop AI to expend additional time to respond to an unfounded Motion. Rule 30(g), on which Almaviva purports to rely, is directed to instances in which "the noticing party failed to: (1) attend and proceed with the deposition." Fed. R. Civ. P. 30(g). Loop AI's counsel both attended and repeatedly requested Almaviva's counsel to allow it to take all the noticed depositions, including that of Mr. Ferri. It was Almaviva's counsel who impeded the depositions. Almaviva's Motion should be rejected and Loop AI should be allowed to recover both the additional costs it was forced to incur during the jurisdictional depositions and the cost for having to respond to this Motion.

       Respectfully submitted,

       HEALY LLC

       Valeria Calafiore Healy

**MPX-343**

 HEALY

## Activity in Case 3:15-cv-00798-HSG Loop AI Labs, Inc. v. Gatti et al Order

1 message

**ECF-CAND@cand.uscourts.gov** <ECF-CAND@cand.uscourts.gov>                Wed, Jan 20, 2016 at 2:23 PM
To: efiling@cand.uscourts.gov

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
***NOTE TO PUBLIC ACCESS USERS*** There is no charge for viewing opinions.

**U.S. District Court**

**California Northern District**

## Notice of Electronic Filing

The following transaction was entered on 1/20/2016 at 11:23 AM PST and filed on 1/20/2016
**Case Name:**            Loop AI Labs, Inc. v. Gatti et al
**Case Number:**        3:15-cv-00798-HSG
**Filer:**
**Document Number:** 397

**Docket Text:**
**ORDER re Interpreter Services at Depositions. Signed by Magistrate Judge Donna M. Ryu on 01/20/2016. (dmrlc1, COURT STAFF) (Filed on 1/20/2016)**

**3:15-cv-00798-HSG Notice has been electronically mailed to:**

Becki Diana Graham &nbsp &nbsp becki.graham@ogletreedeakins.com, cora.chiu@ogletreedeakins.com, elena.ruiz@ogletreedeakins.com

Daniel Justin Weinberg &nbsp &nbsp dweinberg@fawlaw.com, marlantico@fawlaw.com

Diana Wong &nbsp &nbsp dw@healylex.com

Eric A Lerner &nbsp &nbsp elerner@healylex.com

James Francis Regan &nbsp &nbsp jregan@lowball.com

Janet M. Brayer &nbsp &nbsp janet@brayer.net, anita@brayer.net

Thomas Edward Wallerstein &nbsp &nbsp TWallerstein@Venable.com, dlcox@venable.com, etitova@venable.com, jcho@venable.com, KCulp@Venable.com, lalitigationdocketing@venable.com, rcook@venable.com, RLMeyerhoff@Venable.com, SChintanaseri@Venable.com, wwchang@venable.com

Thomas J. LoSavio &nbsp &nbsp tlosavio@lowball.com, sherrera@lowball.com

Valeria Calafiore Healy &nbsp &nbsp valeria.healy@healylex.com, bart@loop.ai, dcarrera@healylex.com, elerner@healylex.com, GM@loop.ai, jgalicki@healylex.com

William F. Alderman &nbsp &nbsp walderman@orrick.com, jcopoulos@orrick.com

**3:15-cv-00798-HSG Please see Local Rule 5-5; Notice has NOT been electronically mailed to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document                    **MPX-344**

**AMENDED TRANSCRIPT**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Donna M. Ryu, Magistrate Judge


LOOP AI LABS, INC.,            )
                              )
          Plaintiff,          )
                              )
vs.                           )     No. C 15-00798-HSG
                              )
GATTI, et al.,                )
                              )
          Defendants.         )
_____)


                              Oakland, California
                              Thursday, July 23, 2015


TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
     RECORDING 2:38 - 3:56/4:33 - 5:23 =   120 MINUTES


APPEARANCES:

For Plaintiff:
                         Healy, LLC
                         154 Grand Street
                         New York, New York 10013
                    BY:  VALERIA CALAFIORE HEALY, ESQ.

For Almawave:
                         Venable, LLP
                         505 Montgomery Street
                         Suite 1400
                         San Francisco, California
                           94111
                    BY:  THOMAS E. WALLERSTEIN, ESQ.
                         KIMBERLY COLT, ESQ.


          (APPEARANCES CONTINUED ON NEXT PAGE.)

*Echo Reporting, Inc.*

**MPX-345**

2

APPEARANCES:  (Cont'd.)

For the Orrick Firm:

                              Orrick, Herrington &
                                Sutcliffe, LLP
                              405 Howard Street
                              San Francisco, California
                                94105
                         BY:  WILLIAM F. ALDERMAN, ESQ.
                              KIMBERLY COLT, ESQ.

For IQ Systems:

                              Law Offices of Janet Brayer
                              230 California Street
                              Suite 600
                              San Francisco, CA 94111
                         BY:  JANET M. BRAYER, ESQ.

                              Low Ball & Lynch
                              505 Montgomery Street
                              San Francisco, California
                                94111
                         BY:  THOMAS J. LOSAVIO, ESQ.

For Russell Reynolds:

                              Ogletree, Deakins, Nash,
                                Smoak & Stewart
                              One Market Plaza, Suite 1300
                              San Francisco, California
                                94105
                         BY:  BECKI GRAHAM, ESQ.


Transcribed by:               Echo Reporting, Inc.
                              Contracted Court Reporter/
                              Transcriber
                              echoreporting@yahoo.com

**MPX-346**

3

Thursday, July 23, 2015                                2:38 p.m.

                    P-R-O-C-E-E-D-I-N-G-S

                         --oOo--

        THE CLERK:  Calling Civil Case C-15-0798-HSG, Loop Al Labs, Incorporated versus Gatti, et al.

     Counsel, please approach the podium and state your appearances.

        MS. HEALY:  Good afternoon, your Honor.  Valeria Calafiore Healy for Loop AI Labs, Inc., the Plaintiff.

        THE COURT:  Good afternoon.

        MR. WALLERSTEIN:  Good afternoon, your Honor.  Tom Wallerstein with Venable for Defendant Almawave USA.

        THE COURT:  Good afternoon.

        MS. COLT:  Good afternoon, your Honor.  Kimberly Colt (phonetic) with Venable, for Almawave USA.

        THE COURT:  Good afternoon.

        MS. GRAHAM:  Good afternoon, your Honor.  Becki Graham representing Russell Reynolds Associates.

        THE COURT:  Good afternoon.

        MR. ALDERMAN:  Good afternoon, your Honor.  William Alderman of Orrick, Herrington and Sutcliffe, appearing for the Orrick Firm, a non-party.

        THE COURT:  Good afternoon, and thank you for being here on short notice.

        MR. ALDERMAN:  You're welcome.

*Echo Reporting, Inc.*

**MPX-347**

4

THE COURT:  I think I have an appearance via Court Call, is that correct?

MS. BRAYER (telephonic):  Yes, thank you.  Good afternoon, your Honor.  Janet Brayer, appearing on behalf of IQ Systems, Inc., and thank you for allowing my Court Call.

THE COURT:  Okay.  Welcome everybody, and I'd like you to actually come to the podium.  I want you to address the Court from the microphone up here.  And, Mr. Alderman, if I could have you come nearby as well, because I'm going to have a few questions for you.

Let me note for the record that Ms. Sara Geckler (phonetic).  Good afternoon, Ms. Geckler.  And she is here as a court reporter that's been hired by one of the parties. Who is DTI Global?

MR. WALLERSTEIN:  DTI is her employer, your Honor.

THE COURT:  Oh.

MR. WALLERSTEIN:  She was hired by my client, Almawave USA.

THE COURT:  Okay.  So Ms. Geckler is welcome to be here, but the official record of the court is actually the tape recording that I'm making right now, and should a party seek a transcription or if the Court needs to refer to the official record, then that's that -- what we call the FTR system recording will be transcribed, and so that will be the official record and not Ms. Geckler's record.  Okay.

5

So thank you for being here.  After reviewing the filings in the case, it seemed to me that a discovery management conference was in order so that we can get everybody on the same page and working on the merits.  There were -- there was just a lot of disorder.  So that's today's agenda, to work through some of these outstanding disputes, at least to figure out when and where and how they're going to be resolved and then focus on some things that the parties need to do going forward.  Okay.

So let me start with the motion -- the motion or motions concerning the Orrick subpoena.  So my view is that we should really get to the merits of the subpoena, not today, but the parties should queue that up.  If they can't come to a resolution, they should queue it up for a court intervention, but there's always skirmishes on the side.

So the motion for contempt, Ms. Healy, is denied without prejudice, and that's because the parties failed to meet and confer in person or by phone, which is my order. It's in -- it's in the discovery referral order.  That's part of this case.  And the meet and confer did not seem adequate, and, again, it's going off on the side issues instead of getting at what the objections are and whether there are responsive documents that should be produced or whether there's claims of privilege that should be upheld or denied, all of those things.

6

So here's what I think should happen, and, Mr. Alderman, I'd like your views on this, but I think that Plaintiff and Orrick should just agree on re-service, okay, so that Orrick is served and Orrick can then object.  Once Orrick objects, then we also have objections that have been raised through the joint letter -- or not joint letter, sorry -- original ex parte letter that was filed by Defendants that I then instructed you to file a motion on but which never happened.

So let's have a discussion among the lawyers about what's going to happen in response to that subpoena, okay.

Mr. Alderman, on behalf of Orrick, would Orrick be willing to agree to re-service and then in a reasonable time, a perhaps shortened time at this point to file your objections?

MR. ALDERMAN:  Very much so, your Honor.  I had actually invited Ms. Healy to serve me by -- to serve the firm by E-mail service on me back on June 18th.

THE COURT:  Okay.

MR. ALDERMAN:  Instead of doing that, she filed the contempt --

THE COURT:  I did see that.

MR. ALDERMAN:  -- application.

THE COURT:  Can -- Ms. Healy, did you want to say something?

7

MS. HEALY:  Your Honor, I didn't want to interrupt the Court, obviously, but I know the Court, you know, called us here for a discovery management conference, and she just issued a ruling on a motion that's not even complete.  So I'd like to be heard if possible on that motion because --

THE COURT:  The motion for contempt is denied without prejudice because the Court requires that you meet and confer in person or by -- or by phone --

MS. HEALY:  I'd like to be heard if possible.  If the Court has already made the decision, it's not -- the meet and confer did happen, and, you know, there's a couple of points I would like --

THE COURT:  Did it happen in person or by phone?

MS. HEALY:  By phone, yes.  I even submitted -- with the motion for contempt, there is a record of the call. It lasted 35 minutes, accompanied by a record of what happened during the call, and Mr. Alderman did not want to meet and confer.  I attempted my best to meet and confer.

Your Honor, a couple of things.  We served -- in March of 2014, we were notified by Orrick, the Court is aware, that they were suddenly withdrawing from their representation of our client.  I advised them we would be serving a subpoena. So they had three months to prepare.

Before I served the subpoena, as a professional courtesy, I reached out to Mr. Lowe (phonetic) to ask Mr.

8

Lowe if he would accept service.  Mr. Lowe never said to me "I'm not authorized to accept service."  Because in the past, when we asked for things, they dragged their feet and made us wait and then refused to respond, I proceeded to serve in accordance with Rule 45.  I never got a call.  They received the subpoena.  They acknowledged that they received the subpoena.  We served it in person at Orrick's offices.

THE COURT:  I did read that part of the motion.

MS. HEALY:  Yeah.  And so the subpoena was received June 1st.  There's a time stamp even in Orrick's files.

THE COURT:  There's a question of whether it was properly served.

MS. HEALY:  Your Honor, I -- I actually reached this.  There's plenty of case law, and --

THE COURT:  I took a look at the -- you know, I have not -- it's not been briefed, and I have not fully considered the record, but let me just point this out Ms. Healy.

MS. HEALY:  Yes, we did --

THE COURT:  Hold on.

MS. HEALY:  Go ahead.

THE COURT:  I know that you're charged up about this, and I don't mean to cut off what you want to accomplish, but it appears to me from your filings that what

9

you -- it seems like your client's goal was to get to the heart of the matter.  Don't you want the materials or at least find out whether you're entitled to the materials?

MS. HEALY:  Yeah, I agree with -- with the Court.

THE COURT:  Okay.  So --

MS. HEALY:  But --

THE COURT:  Let me just say -- hold on.

MS. HEALY:  Yes.  Sure.

THE COURT:  -- that in looking at the service argument -- again, this is just my preliminary review -- you're going to spend a bunch of time litigating that service question, and, quite frankly, Ms. Healy, it looks like an uphill battle to me.

So then what ends up happening is you spend money, time getting -- getting at something that you may lose and Mr. Alderman may win, in which case there may be -- he's asked for sanctions, okay, versus resetting everything -- hold on.

MS. HEALY:  Yes.

THE COURT:  Let me -- you're shaking your head, which makes me think you're not listening to what I'm saying.

MS. HEALY:  I'm just concerned that the Court is rewarding behavior that we believe is highly inappropriate, and I would like just the opportunity to be heard on something that we proceeded in accordance with the Rules.  We researched how to serve.  We have plenty of case law that

10

confirms that our service was appropriate.  They've been playing games, your Honor, for months to delay this.  If they -- if they weren't served, the day after Mr. Lowe received the documents on his desk, he should have called me up and said "Re-serve me."  Instead, they delayed and delayed and delayed.  And, in addition, your Honor -- and that's why I'm very concerned because I believe, you know, they know, and Mr. Wallerstein knew, when they applied to the Court, the recognized that if they weren't going to object on time, they would waive their objection.  That's the law.

THE COURT:  Okay.  Here's what -- here's what we're going to do, all right, because I think, again, for case management purposes, to get this case moving so that you can get answers for your client and so that we can get the discovery that both sides are asking for or sort out what -- what they are or aren't entitled to, instead of these side skirmishes, I want to proceed on the -- figure out a way to proceed on the merits of that.

Now, I'm going to reserve for you and for Mr. Alderman the issue of sanctions.  If at the end of all of this we get through and we -- and the parties either agree to or I adjudicate the issue of what should be produced in response to the subpoena to Orrick, if we get to the end of that and either side believes that they have grounds to file for some form of sanctions, whether it's contempt or monetary

11

sanctions, then each party or non-party will have the opportunity to send a letter to me, a one-page letter saying "Judge, you reserved the question of sanctions.  Here's my pitch.  Here's why I think you should allow me to file my motions for sanctions and LOU it."  And I will pay attention, and I -- if -- it makes sense that I'm going to allow you to file on that.  Okay.

MS. HEALY:  Your Honor, I believe that -- you know, I didn't know that the Court was calling us here to rule on the motion.  I believed that motion was coming in front of Judge Gilliam.  I believe I followed --

THE COURT:  He referred it to me, and I'm denying it without --

MS. HEALY:  I under --

THE COURT:  -- prejudice.

MS. HEALY:  I understand.  Your Honor, I'd just like the opportunity to be heard.  I don't have a problem -- all -- like the Court recognized, all we want is a discovery. I do have a problem, however, with them being rewarded, all of them, for coming together and delaying this process two months since the subpoenas passed, and I'm going to be suffering the consequences of following the rules, and if the Court wants sanctions, that's fine.  I believe -- I take my responsibilities very seriously.  I would never have filed a motion for contempt that I believe wasn't warranted.  I

12

waited and waited because Mr. Alderman -- and I have the exhibit here with me -- told me that regardless of how he was served, he would produce the documents belonging to Loop AI with or without the subpoena. Two months later nothing has been produced.

So for the Court to say that I'm going to be punished for pursuing this and that he's going to have an opportunity to object I believe the --

THE COURT: What is the punishment that the Court is meting out here, because I'm not understanding?

MS. HEALY: The Court is allowing --

UNIDENTIFIED SPEAKER: Judge, I'm sorry. You guys cannot talk over top of each other.

MS. HEALY: Sorry. The Court is allowing Orrick to get away with not responding to a subpoena, which I've never heard. Your Honor, I practiced for quite a few years. I've never heard of a party just refusing in toto to respond to a subpoena, not even an objection. Everyone knows that if you don't respond to a subpoena, you waive certain objections. I'm very willing to work this out, but they shouldn't be allowed to be able to make objections two months later, which is only going to take two more months to resolve.

If they wanted to object, they should have reserved the right to re-service, and they -- I mean, that's the process

13

that's set forth in Rule 45.  There is a procedure that Rule 45 says the parties have to follow.  I did follow the procedure.  I was very scrupulous, your Honor.  We're talking about two subpoenas.  We know we're going against parties that are trying to protect their interests.  There is a very difficult situation that Orrick is facing.  They're trying to protect their interests, and they're doing that by delaying. I don't think it's appropriate.

If the Court wants to order -- I understand she denied my motion for contempt, but I don't think it's appropriate that they be allowed two months later to assert objections. I served that subpoena.  There is nothing in the rules -- and I'm happy to address the service issue if the Court wants me to, to explain, because the service issue is completely different than what he's portraying.

First of all, Rule 45 has a specific service provision which serves -- states to deliver, a person over the age of 18 must deliver the subpoena to the person.  It doesn't say personally, like Rule 4 which governs service of process and service of summons and a complaint.

So the two rules -- and there's court decisions that have analyzed these two rules and have found that even when somebody delivers a subpoena by registered mail, I mean courts allow a subpoena to be delivered by registered mail, and the reason for that is because Rule 45 does not have the

14

language personally which is found obviously in the service of process of a summons and complaint which is original process and requires different measures.

There is nothing in the rule that's required me to say that we sent somebody over the age of 18 to deliver this subpoena in hand to Orrick. They come up with this rule, internal rule. How am I supposed to know that the general counsel, the chief legal officer, which is prima -- he's prima facie the representative of Orrick, and he's claiming that only subordinates can accept subpoenas. I mean, first of all, Mr. Alderman changed even who was, you know, capable of accepting service for Orrick. So I -- I don't believe I violated anything. I believe I was only too scrupulous about service. I was courteous to them. I called them up. I asked them, and the only reason why they -- he's saying, "Oh, you can serve me by E-mail," he said that after the time to respond to the subpoena was expired. He never asked me for more time. In fact, Ms. Graham, who represents Russell Reynolds, they asked me for more time, and I readily said yes, of course. You know, they asked me for a week, and I gave it to them. We have other issues with them, but it doesn't mean that, you know, now, two months later -- it's the end of July. The subpoena was served on June 1st. So I agree with your Honor that -- excuse me, your Honor. I'm sorry.

15

THE COURT:  It's okay.

MS. HEALY:  I -- I don't mean to be -- you know, this has been an issue because I've never faced -- I know that big firms, you know, think they can get away with things, and I was in one of them for many years myself, but I don't --

THE COURT:  Okay.  Ms. --

MS. HEALY:  -- think it's appropriate that they should be able to object.

THE COURT:  All right.  I've heard you out, Ms. Healy.

MS. HEALY:  Yes.

THE COURT:  You've made your record.

MS. HEALY:  Uh-huh.

THE COURT:  And I've told you now probably four times --

MS. HEALY:  Okay.

THE COURT:  -- the motion is denied without prejudice.  I've told you that after we finish adjudication, if that's necessary, on the merits of the subpoena, then -- then if you want to raise the motion for contempt, if you want to re-raise it, okay.  Then, you know, you're kind of making gestures at me because you think that because of -- you know, I'm allowing them to object, otherwise you would have had access to all of those documents.  That's just

16

wrong, okay.  So we're going to put it aside.  You reserve the right to subpoena Mr. Alderman and serve as of today.

Is there any objection to that?

MR. ALDERMAN:  There is not.

THE COURT:  What reasonable and shortened time does Orrick need to file a response to the subpoena?

MR. ALDERMAN:  We appreciate your --

UNIDENTIFIED SPEAKER:  I'm sorry, sir.

THE COURT:  That's -- can you do it sooner?  It's been outstanding, and this dispute has been in the wind for a long time.

MR. ALDERMAN:  The only reason I ask for two weeks --

THE COURT:  Oh, I'm sorry, Mr. Alderman, I hate to -- there's a mic on the table if it's hard for you to come to the podium.  Great.  Thank you.  Let's give that a try.

MR. ALDERMAN:  Your Honor, the only reason I'm requesting two weeks rather than one is that I'm not going to be in my office next week.  I can do it -- I can have the work done while I'm gone, but I would like at least until sometime the week after next to file the written response.

THE COURT:  Is there anyone else who's -- this has been at Orrick now for sometime, correct?

MR. ALDERMAN:  It has.

THE COURT:  Okay.  So I think one week is

17

sufficient, and I understand that that means you may need to look at it remotely or have one of your partners take a look at it, but I don't think that this is a response that -- that is going to be very complicated. It seems to be there's a couple of big issues here that you could state the objections to, and then we can move forward on it. So one week to the -- to the response.

And then the parties need to meet and confer. There appears to be a pretty big issue about whether these documents are attorney-client privilege and, if so, there's some kind of waiver or some other way in which these are producible. Okay. I don't know. That hasn't been briefed yet. The parties need to meet and confer, and when I say that, I mean really meet and confer. I have a big concern in this case that the parties are having difficulties doing that in a meaningful way, and I don't know why that is happening. I just know that it is happening.

We -- we have guidelines on professional conduct. They're on the website. Every lawyer who appears in this Court is deemed to have read them and understood them. They are not to form the basis for a motion for sanctions. It's not -- you don't use it as a sword, but it's meant to guide counsel's behavior. When they're meeting and conferring, they're to actually have good discussion, professional, courteous, not personal, and you can agree to disagree, but

18

you have to try to reach compromises. You always have to bear in mind what would the Court do here because that's the backdrop against which a dispute would be measured. And if somebody takes a position that is not substantial justified, of course, they may open themselves up to Rule 37 sanctions or other sanctions.

So there are some incentives to be reasonable and open in talking to each other. Okay. So that meet and confer needs to happen, and I'm not going to set a date for it right this second because after we're done on the record, I'm going to have the parties meet and confer about a schedule because all of this needs to be scheduled. We've -- and we need to get moving because the parties have spent a long time on these skirmishes, and we have a discovery cutoff that's coming up, you know, sooner than everybody thinks.

So I'm going to set aside the scheduling for now, but that's something you're going to work on this afternoon.

MS. HEALY: Your Honor, is the Court going to issue an order on the denial of the motion for contempt?

THE COURT: The denial without prejudice? Yes.

MS. HEALY: Okay.

THE COURT: That will be part of my order.

MS. HEALY: And she will indicate that -- so, because the waiver that happened in connection with the motion, she's going -- the Court is going to indicate the

19

service issue?  Because the motion for contempt is not even fully briefed yet.

THE COURT:  That is correct.

MS. HEALY:  I haven't had an opportunity to even respond to --

THE COURT:  So --

MS. HEALY:  -- their -- to what they filed two days ago.

THE COURT:  I have the -- the discretion to manage discovery in a way that's consistent with Rule 1 of the Federal Rules of Civil Procedure, just, speedy, and inexpensive.  I have not ruled on your motion on the merits. I have postponed it pending getting to the meat of what your client needs.

MS. HEALY:  But the waiver arises also in connection with their failure to respond to that subpoena that was served.

THE COURT:  I understand that.

MS. HEALY:  Okay.  So is -- I mean, I just don't want to make arguments in future filings that the Court has already ruled on.  Is the Court allowing me to raise the waiver in connection with the first subpoena in future filings when they respond?

THE COURT:  In the future filing, if you want to make the argument that you properly served it and they should

20

never have been allowed to respond because they waived all their objections, if you really want to make that argument, you can.  I'm not sure if it's a winner, but I haven't seen everything on it, and I would proceed with caution, quite frankly.  I thought I was doing you a favor, but you have not waived that.  If you want to make that argument, you can later.  Okay.

All right.  So --

THE CLERK:  (Indiscernible.)

THE COURT:  Yes?

THE CLERK:  (Indiscernible.)

THE COURT:  Well, we have Ms. Brayer here on the phone, right, for Ms. Gatti?

THE CLERK:  Actually, she represents --

MS. BRAYER:  No, no.  Mr. LoSavio represents Ms. Gatti.  I represent IQ Systems, Inc.

THE COURT:  Oh, I see.  Well, apparently Mr. LoSavio is on his way in.  He's late.  I didn't realize we were expecting him.  So let's keep going.

So that is how we're going to handle the Orrick subpoena issue.  Now, I need to back up and mention one more thing.

It was originally queued up as an ex parte letter, and I ordered -- after seeing both sides of it, I ordered a motion, and that's because I -- I normally proceed by joint

21

letter, as explained in my referral, because it's flexible, it's faster, and usually I can get you in quicker than 35 days, but when it raises something like privilege where it takes a little more time to argue the issues and the Court would benefit from fuller briefing, then I tell the parties I want this fully briefed, which is what I did here. So normally you file a joint motion -- joint letter is the format, and then if I want a full motion I'll let you know.

So for the subpoena, if there ends up being motion work, the Orrick subpoena should be queued up with a motion, okay. And, again, if that's going to be a motion for a protective order or a motion to compel, whatever it might be, you'll meet and confer first, and we'll decide on the -- you will decide on a schedule, and I'll rule on it after we finish up the part on the record here.

MS. HEALY: Your Honor, may I say something --

THE COURT: Yes.

MS. HEALY: -- about the motion to quash? Because it goes back to the point of delaying. So we have a fairly tight schedule. I'm in total agreement. All we want is a production. The Court acted immediately on his request to file a motion to quash. It's more than a month later, and he hasn't filed anything.

THE COURT: That's why I said just now, Ms. Healy, the parties are going to have to come to an agreement on --

22

on filing.  I'm not going to allow delays in the schedule. I'd like you to come to an agreement.  If you can't, I will order the timing.

MS. HEALY:  No, I understand, but there's case law that says a motion to quash has to be filed within a certain time line.  He's past all those time lines.  So, you know, we can come to an agreement, but I would like to reserve my rights because, again, the Court acted immediately.  Your Honor was very kind to grant them immediately the right to move to quash, and for somebody to sit on his rights --

THE COURT:  It's not a granting.  He filed a -- a discovery letter --

MS. HEALY:  I understand.

THE COURT:  -- which acts as -- which acts in the Local -- in the Federal Rules as a motion, just like, you know, normally if you had a motion to compel in a joint letter forum, that's a motion.  I would consider that -- I'd look at that motion date to see whether it was timely.  I then ordered a motion.  I didn't say -- I should have but didn't say when it should be filed by.  I don't know why you took so long.  I don't need to hear why you took so long, but we're going to set a date today on when that motion is going to be filed so we can get this done, okay.

Now, moving on to the motions on the RRA subpoena, are you Mr. LoSavio?

23

MR. LOSAVIO:  Yes, your Honor.  I apologize for my tardiness.

THE COURT:  Please make your appearance on the record.

MR. LOSAVIO:  Tom LoSavio appearing for Anna Gatti and IQ Systems, LLC.  I believe Ms. Brayer has already appeared.

THE COURT:  Yes, she's on the phone.  Thank you.  Okay.  On the motions regarding the RRA subpoenas -- and I -- I say subpoenas because I can't tell, but it appears to be more than one.  Is there a document?

MS. HEALY:  Your Honor, yes.  I'd be happy to address this point.

THE COURT:  Well, all I want to know right now, I just have one question which is how many RRA subpoenas are there?

MS. HEALY:  So there is one subpoena duces tecum.  The subpoena was served -- was issued on June 2nd and served on June 3rd.

THE COURT:  Okay.

MS. HEALY:  And this is the subpoena that's subject of the SDNY proceeding.

THE COURT:  Okay.

MS. HEALY:  There is a second subpoena to RRA ad testificandum which was issued on I believe July -- I have

24

the document at counsel table. I think it was issued July 1st. I mean, it's for a deposition on July 30th in New York, RRA's principal place of business. So those are the two subpoenas on the table for that party.

THE COURT: And that's the Mr. Pepe (phonetic) subpoena?

MS. HEALY: Yes. That's where we designated under Rule 30(b)(1) Mr. Pepe as the corporate designee.

THE COURT: Okay. And that's the subject of the dispute filed by Defendants in front of this Court, correct?

MS. GRAHAM: May I speak, your Honor?

THE COURT: Please identify yourself for the record since --

MS. GRAHAM: Sure. This is Becki Graham for Russell Reynolds. There's actually -- just to clarify for the time renders, there were three subpoenas. The first was the document subpoena. The second was a deposition subpoena for Mario Pepe which was served on him individually. Then she unilaterally took that off calendar. And then there was a -- then she served another subpoena for him, but this one went to Russell Reynolds and asked -- asking Russell Reynolds to produce Mario Pepe for deposition in two different locations.

THE COURT: Okay. So but --

MS. HEALY: That's not correct, and I'd be happy

25

to address.  The Court I believe asked what are the current subpoenas pending before your Honor.

THE COURT:  Okay.

MS. HEALY:  So that's the subpoena to RRA ad testificandum, corporate designation under 30(b)(1) of Mario Pepe.  In June I issued a subpoena after -- and I -- I don't know if the Court wants all the detail.

THE COURT:  Not at this point.

MS. HEALY:  Right.  It's not before --

THE COURT:  All I want --

MS. HEALY:  The subpoena she claims was served was not served, and it's not before the Court.  It's not before anyone.  It doesn't exist.

THE COURT:  Okay.  Thank you.

So it looks -- it looks like everyone agrees -- I could be wrong -- that the disputes are that the RRA subpoenas can be handled here, and this is how I reach that conclusion, but I could be wrong.  You'll let me know.

The Defendants filed here.  So I assume the Defendants want it heard here.  Plaintiff's counsel indicated it would consent to have the matter in SDNY transferred here as long as RRA consented to jurisdiction for adjudication and enforcement of that subpoena.  Is that correct, Ms. Healy?

MS. HEALY:  That's correct, with a caveat that I'd be happy to address when the Court pleases.

26

THE COURT: Okay. And then, finally, RRA in the SDNY matter filed a consent pleading saying it consented to jurisdiction for the Northern District of California with respect to -- well, personal jurisdiction for adjudication of the subpoena, correct?

MS. GRAHAM: That is correct. We filed a motion for transfer.

THE COURT: So, Ms. Graham, does RRA want the subpoenas issued to it adjudicated here to the extent there's disputes?

MS. GRAHAM: That is correct, your Honor.

THE COURT: Okay. Ms. Healy, what --

MS. HEALY: Yes.

THE COURT: -- does Plaintiff want to see happen?

MS. HEALY: Your Honor, I want to see happen the quickest -- I would like to find the quickest way to get our production. So we worked with the general counsel of RRA even before Ms. Graham got involved in the matter and tried to accommodate like we did with Orrick. We called them ahead of time, subpoenas issuing, want to discuss that -- the contents of the subpoena. It's a very narrow subpoena. There's a few categories of information, 13 requests.

We served the subpoena. They asked for an extension. We -- when they asked for an extension the day before the subpoena was returnable, they never told me we're not going

27

to produce anything.  "They said we just need additional time.  We have to look at the documents."  I said fine.  I mean, that's normal.

So the next day after I granted the extension, they served me objections on everything, and when the extension came due, they served zero.  They didn't serve anything. When this happened, I began telling them you have to produce or I'm going to move to compel.  RRA, as the Court knows, is a business located in New York.  That's it's principal place of business.

So throughout that time, we went back and forth, and she never told me -- in fact, she specifically told me she's not comfortable submitting to the personal jurisdiction of this Court, and if the Court reviews the filings that they made, they said "I consent to the transfer," but they never actually indicated that RRA hereby consents to the personal jurisdiction of the Northern District of California in respect to the matter pending before the Court.  Now --

THE COURT:  Just one -- just one --

MS. HEALY:  Yes.

THE COURT:  -- moment.  Well, they don't -- they say RRA consents to jurisdiction of the Northern District of California for purposes of resolving the discovery dispute raised in its motion to compel, which it has to do with RRA. And Ms. Graham has now just said that RRA consents to

28

personal jurisdiction of RRA in the Northern District of California for purposes of adjudicating any -- can I say any of the subpoenas or both of the subpoenas issued to RRA in this case?  Is that correct, Ms. Graham?

MS. GRAHAM:  Yes, that is correct.

MS. HEALY:  Also for Mario Pepe?  You're consenting to this Court having personal jurisdiction over Mario Pepe in this District?

MS. GRAHAM:  I -- let me clarify that because --

THE COURT:  Okay.

MS. GRAHAM:  -- I think what she is trying to get at is where his deposition will be located.

MS. HEALY:  No.

THE COURT:  Okay.  So the question is Mario Pepe is going to -- it sounds like he's going to be the deponent who was produced pursuant to the subpoena.  And does he consent to the power of the Court to make decisions about his attendance, wherever that may be, and his participation in that deposition?

MS. GRAHAM:  This is Ms. Graham.  Yes, your Honor. Both RRA and Mario Pepe consent to this Court's jurisdiction over adjudicating matters associated with the document subpoena and the deposition subpoena.

THE COURT:  Okay.  Including enforcing the subpoenas?

29

MS. GRAHAM:  Including enforcing the subpoena.

THE COURT:  Okay.  So, with that clarification --

MS. HEALY:  Yes.

THE COURT:  -- Ms. Healy, does -- is your client comfortable with having everything heard here on the RRA subpoenas?

MS. HEALY:  Of course.  We're just following the rules.  I would only add one additional issue.  So that's completely covered now.

THE COURT:  Okay.

MS. HEALY:  The additional issue is that we gave them additional time and waited to file the motion to compel, which is now due to be heard next Tuesday.

THE COURT:  Right.

MS. HEALY:  So my only concern is that I don't want to delay any further, and we have -- so because on Tuesday the Court potentially could decide our pending motion to compel.  It's a very simple motion.  There's not that much to it.  So I wouldn't want this process to then place us at another month from now they have to travel again.  Obviously, it's not the Court's burden whether I am on the east coast or west coast.  I mean, we'll never make it the Court's burden, but there is case law that when a party asks for a transfer of such a motion, they have to pay the expenses associated with counsel, you know, having to go to a different court.

30

So in that -- in that case, I would -- you know, Ms. -- because I'm there in New York, there is a motion pending in New York that is due to be heard next Tuesday, and now at her request everything is being transferred here, and I would potentially have to return here for another hearing on that motion.  So that's -- that's what I would be asking, that she pay for the expenses of us having to return here.

THE COURT:  Okay.  Well, it's sort of two different things because the first question is -- and I think we have an answer that the RRA subpoenas are going to be adjudicated here, correct?

MS. HEALY:  No, your Honor.  I would like to ensure that there's the other issues because the motion to transfer also takes into account the expense of the parties. Here we have a party that's presumptively in New York.  He -- the motion to compel was filed there.  It's a very simple narrow motion.  I mean, I can't imagine that the Southern District is not capable of resolving such a motion, especially because Rule 45 allows the judge there to speak to your Honor, and that's specifically set forth in the advisory committee notes, that the Court can confer with the court presiding over the entire matter.

So to me it's just a matter of if we wait some more, we're going to be subject to further expense, having gone through the burden of having to file a motion to compel, and

31

we're going to be subject to having to travel here again, which is fine because obviously we filed here, but in this case we didn't cause this.

THE COURT:  Okay.

MS. GRAHAM:  May I be heard?

THE COURT:  Ms. Graham.

MS. GRAHAM:  This is Ms. Graham.  First, Ms. Healy represents the Plaintiff, who has filed in this Court.  We -- my client retained myself in California because the case is here.  The subpoena was issued by this Court.

THE COURT:  Rule 45 would dictate that the subpoena is adjudicated in New York absent exceptional circumstances.

MS. GRAHAM:  I understand.

THE COURT:  She was well within her rights to file there.

MS. GRAHAM:  I understand that.  I'm not contending that she was wrong in filing in that courtroom. The -- motions to transfer are usually with respect to third parties.  Now, the -- the burden is being placed on us.  She wants to shift the burden on us, but -- but for a third party, the burden is really -- should be shifted to the party who is issuing the subpoena, not the third party.  The -- in this case, the Plaintiff.

I don't understand -- I don't see how big of a burden

32

it is for her in comparison to my client who has spent hours and thousands of dollars to try and resolve this. So I would request that -- that my client not be imposed with the additional expense of having to adjudicate it here. Where she had filed here and the case itself was being adjudicated here --

THE COURT: Here is what I'm going to propose. Again, it's not perfect, but it's -- the situation is a little messy. Let me play it out. If you don't want to drop your motion in SDNY, then you can go forward with it in New York on the 28th. That Court may or may not adjudicate it or may transfer it here if they're -- if they are successful in arguing for a motion to transfer it here, and at that point you could also ask that as a -- as a condition that they pay and you can make your arguments and put your legal cases in front of that court, but it may end up here, right. And that court may also decide that there's no fees that should be allowed.

Here's what I'm going to suggest, that it's going to -- only -- you can go forward with your SDNY if you want or you can decide let's just do it here. But with respect to an -- but you can brief the issue in front of me about whether or not I should shift some of those costs given that you originally filed there and you're now having to come here.

I don't know the answer to that. I'd actually want to

33

see the cases and evaluate whether that is -- what's appropriate there.

MS. HEALY:  Also, your Honor, the other issue is that we waited to file this motion because she kept saying she would be complying.  They -- they had the opportunity to come to your Honor right away, and then we wouldn't have had to expend the money to move to compel.

So I'll think about it, your Honor.  I think if the Court is not prepared to -- I mean, I don't think our -- I can --

THE COURT:  Well --

MS. HEALY:  -- proceed in SDNY with what -- they presented SDNY with briefs full of statements --

THE COURT:  I'm going to get to that part in a moment.  But as to, Ms. Healy, the decision on behalf of your client, I'll need to know what you want to do.  I'll need your decision --

MS. HEALY:  We think your Honor should decide everything.  We -- we don't need any fees.

THE COURT:  Okay.  So as to the statements made by Venable -- who is Mr. Myerhoff?

MR. WALLERSTEIN:  That is my associate, your Honor.

THE COURT:  Okay.  I was very disturbed by the statements made by Mr. Myerhoff to the court in New York.

34

MR. WALLERSTEIN:  I --

THE CLERK:  I'm sorry.  You have to state your name.

MR. WALLERSTEIN:  Tom Wallerstein, your Honor.  I believe any statements made to the Court were made by me under my signature.  So I am happy to bear your Honor's wrath.

THE COURT:  I am looking at the document filed in that court on July 20th that talks about how this Court has decided that I'm going to -- you know, that I'm going to decide everything, and it made all kinds of representations that were not correct.

MR. WALLERSTEIN:  The responsibility is mine, your Honor, not Mr. Myerhoff's.  He is barred in New York, which is why he signed it and filed it.

THE COURT:  What is the basis for telling that judge that -- for example, that this Court ordered that the resolution of the right to designate confidential documents produced by RRA will be resolved here by this Court on this date?

MR. WALLERSTEIN:  The confidentiality order -- the confidentiality protective order, your Honor, is one of the several issues we raised in our July letter which led to this conference.

THE COURT:  I have -- tell me where I said

35

anywhere that I was going to be adjudicating the issues that are currently before the SDNY.

MR. WALLERSTEIN:  What our July -- your Honor's order setting this conference said that your Honor was going to consider three prior docket entries in particular.

THE COURT:  What did it say about that, Mr. Wallerstein?  What was the Court going to do with respect to those three prior orders?

MR. WALLERSTEIN:  I don't have your Honor's first order in front of me.

THE COURT:  That's a problem because the order which was filed prior to the order that you filed or the representations you made to the Court said that today I'm going to discuss the how, when, and where the disputes were going to be handled because it was confusing and there was one filed in New York and one filed here.  I made no statement or ruling that the RRA subpoena issue currently before the New York court would be decided by this Court.

MR. WALLERSTEIN:  I agree with that, your Honor, and I don't -- certainly did not intend to be misleading. What -- what I understood will be decided by this Court, I still understand will be decided by this Court, is a confidentiality order which will either allow or disallow my client the right to make objections to -- or, rather, to make designations of confidentiality about the RRA production, and

36

that's really our only agenda in that, your Honor.  It's not -- not the scope of the production per se, but it's a confidentiality issue as to whether we can designate our own confidential documents produced by RRA as confidential or not.

THE COURT:  There are numerous statements in this pleading you put before SDNY that lead that judge or that court to have the impression that all of the -- all of the -- the third party subpoena issues have been -- are going to be decided by me.  So -- and they've been laid out in Ms. Healy's letter.  I'm not inviting more letters but in that letter that I think you submitted on the -- I get one every day, if not --

MS. HEALY:  The 21st, your Honor

THE COURT:  -- not more than one a day.  So I think you know which letter I'm talking about, where she says here are the misstatements made by -- by the Defendant to that Court.  They were misstatements.  They're misrepresentations.  They lead that Court to believe that -- and they argued in favor of exceptional circumstances being present.  So, for that reason, here's what Venable is being ordered to do.

Venable shall file something by today in that court and also in this court apologizing to the judge in the Southern District of New York for making misrepresentations to that

37

Court about which -- which may have led that Court to believe that this Court had already assumed jurisdiction over those -- over the subpoena currently before that judge.  I don't want a wishy washy apology or something that says we hope we didn't say something that might have misled you.  It's that we made misrepresentations that may have led that judge to believe the following.  Okay.  I don't want sanctions motions filed on this.  I just want to correct the record.  That is to be done today.

And, by the same token, Ms. Healy, please withdraw the motion in front of that judge so she -- and please do that today, if you can, or first thing tomorrow morning so that that judge doesn't then spend time trying to prepare on that subpoena.  We got one judge working on it and the record being corrected.  Okay?

MR. WALLERSTEIN:  Understood, your Honor.  I want to make sure you are referring to a letter from Ms. Healy that lists statements.  I believe the prefatory language to the letter is referring to statements made either by -- by Venable or by Russell Reynolds' attorney.  So I want to be certain that the -- and perhaps they're all misleading, not by my intent but I want to be certain that I am not apologizing for a statement I didn't make.

THE COURT:  Okay.  I'm looking at the -- the pleading signed by Mr. Myerhoff.  So that's what I -- it's

38

Venable on behalf of the Defendants.  And, just to make certain -- sorry.  Ms. Beard (phonetic), can I ask you to come up here.

(Pause.)

MR. WALLERSTEIN:  Your Honor?

THE COURT:  Yes.

MR. WALLERSTEIN:  So I'm -- I have our brief in front of us.

THE COURT:  Yes.

MR. WALLERSTEIN:  And I'm looking at our page three where we make the representations that Loop's counsel quoted for your Honor in her letter.  And --

THE COURT:  Yes?

MR. WALLERSTEIN:  -- we make three sentences -- we say three sentences, specifically:

"At the July 23 discovery management conference, the California court will address resolution of Almawave's right to designate as confidential certain documents produced by RRA pursuant to Loop's subpoena."

I believe that is a true statement.  That was one of the issues in our letter which your Honor specifically referred here.

THE COURT:  Okay.  Mr. Wallerstein, you need to do

39

closer reading of my orders, okay. I didn't -- I did not say it, and actually I said the opposite. Now I'm going to read form my order. This is, for example, and order of July 19th, which is before you filed your pleading.

"The Court notes it will discuss how, when, and where the outstanding discovery disputes will be resolved at the conference. It will not address the merits of any of the parties' disputes."

So I don't know where you got the -- the notion that I was going to rule today about confidentiality and who gets to designate what. And also how you -- how you got to the conclusion that I'm going to address the scope of documents subpoenaed to RRA, again, that might lead that judge to believe that I had taken jurisdiction away from her. It's appropriately before her. It's for her to decide whether it should be transferred.

MR. WALLERSTEIN: If your Honor was confused, that judge may have -- I mean, I appreciate what you're saying, and I will do what you're suggesting.

THE COURT: I'm not confused. It's a misstatement. Okay. So I'm leaving Venable to do this. RRA's were a little more equivocal. It was -- it came close to the line. I'm not going to order, Ms. Graham, for your client to make a corrective statement to that judge. But,

40

Mr. Wallerstein, that should happen by -- by the end of the day today.  Okay.  It's a simple letter, and you can file until midnight.  So make sure that that's done so that that judge knows what's going on and the motion will be withdrawn so the judge also knows record corrected and I don't need to worry about this, California is going to deal with it.  Okay?

MR. WALLERSTEIN:  We will make the most unequivocal statement, your Honor.  May I have another day.  It is three hours different in New York.  I do need my colleague in New York I believe to sign and file it because Mr. -- maybe I'm wrong about that but -- because I'm not admitted in New York, we were under the impression that he had to -- we needed a New York barred attorney.

THE COURT:  You've got until 9:00 o'clock tomorrow morning California, which gives your colleague in New York until noon.  Okay?

MR. WALLERSTEIN:  Thank you, your Honor.

THE COURT:  All right.  Same thing for you, Ms. Healy.

MS. HEALY:  Your Honor, that's -- perhaps --

THE COURT:  Okay.

MS. HEALY:  -- we can also call the clerk in the morning to explain briefly that we're withdrawing because your Honor is -- just so that the Court --

THE COURT:  Right.  My main concern on that is

41

just that I don't want Judge Skofield to have to prep on --

MS. HEALY:  Sure.  We'll try to file it tonight. That's not a problem.

THE COURT:  Yes.  And if you want to notify the clerk that that's being withdrawn, that's fine.  Okay.

MS. HEALY:  Yes.  So and the only other issue, and I believe the Court is going to address the timing of how this is going to move.

THE COURT:  Yes.  Yes.

Okay.  July 22nd, 2015 joint letter on RFPs, rogs and deposition notice served by the Defense.  So, Ms. Healy, your motion for protective order is denied without prejudice.  So you're seeking protection from even having to respond?

MS. HEALY:  No.

THE COURT:  No?

MS. HEALY:  Perhaps I wasn't clear.  No, no. We're going to respond to that obviously because we're not objecting on everything, but Rule 26 does permit us to even before the time to respond is due, move for a protective order on matters that are objectionable.  So that's what we're doing.  And, in particular, your Honor, because there is a 30(b)(6) notice, if we don't move for a protective order before the time for the notice is due, we actually could be sanctioned, and we looked into this.  So I tried to move as quickly as I could, but we are going to respond to certain --

42

to the -- you know, we're going to produce discovery and respond as -- there's other requests that are not objectionable.  We're not objecting to --

THE COURT:  Okay.

MS. HEALY:  -- everything.

THE COURT:  Okay.  Yes, I saw that you weren't objecting to everything, and I agree that some of the -- some of the requests are over-broad and otherwise objectionable but not so objectionable that you can't file a response.  So please file a --

MS. HEALY:  Oh, yes.

THE COURT:  -- response, okay.  File the response, and then you meet and confer so that the parties can discuss what is it exactly that you're looking for that seems over-broad, scope of time, people, and you have a discussion.  You try to reach agreements.  Most people do, folks.  Most people do.  And, in fact, I quote to you from the guidelines for professional conduct in discovery and motion practice:

"Motions should be filed or opposed only in good faith and when the issue cannot be otherwise resolved.  In particular, civil discovery motions should be filed sparingly."

In this case, it seems like the parties are going for a world record on filing motions.  Please stop.  Just stop.

*Echo Reporting, Inc.*

**MPX-386**

43

Talk.  I promise that I will be a good steward of your case, that I'm going to make sure it's managed and that we go forward in a reasonable -- at a reasonable pace and in an organized way.  I want this to be fair, but it takes -- it takes so much energy for the parties to just object to each other instead of actually trying to reach agreements.

My joint letter process requires the parties to do a few things.  One, it has to be joint.  I'm not going to allow any more ex parte letters.  Two, it actually has to be here's issue one, here's what we think, and here's what the other party thinks.  Here are the compromises we tried to make.  My letter requires that.

What I saw in your July 22nd one -- I'm not blaming anyone because I don't know why it happened this way, and I don't need to know, but it looks like, you know, here's one side saying what they had to say and here's another side, and we glued those two pieces of paper together.

That's not meet and conferring.  That's -- and that would be in violation of my rules.  So you need to do better than that.  You also need my -- my order says proceed and plan ahead in a fashion that both sides can meaningfully participate in a joint letter.  You don't sandbag somebody. You give each other time.  Everybody should know what the disputes are.  If you want me to decide them, then I need to know what the parties' positions are, okay.

44

MR. WALLERSTEIN:  Your Honor --

THE COURT:  Mr. Wallerstein?

MR. WALLERSTEIN:  There has been a complete and utter breakdown of the ability to meet and confer in this case.  I view it as my professional responsibility to not bring before your Honor the kinds of disputes that we have put before your Honor, and it's unfortunate.

THE COURT:  It is unfortunate.  It's not going to happen that way anymore.  Okay.

MR. WALLERSTEIN:  Part of the issue, your Honor, we're not allowed to send E-mails.  We're not allowed to talk to local counsel.  We're not allowed -- Loop will not talk to Ms. Colt, who's running the case.  So the only way we are permitted to communicate -- and -- and Loop will not put its positions in writing.  So the first time we hear about a dispute is on a telephone call, after which we're told you now have two days to file the joint letter, you know, "I'll give you the letter."

But Loop's counsel has taken the position that meeting and conferring in writing is prohibited by your Honor and that we are -- we're not allowed to send E-mails.  Venable's E-mails have been blocked, and we're not allowed to talk to local counsel.

THE COURT:  Okay.  So --

MS. HEALY:  Your Honor --

45

THE COURT:  Hold on. Hold on.  Ms. Healy, and then, Mr. LoSavio, if you want to be heard, you need to come up to the microphone.

Go ahead.

MS. HEALY:  Your Honor, before I address this noise -- and it's unfortunate that these kinds of topics have to be brought to the Court's attention.  I would like to address actually the merits of the protective order that we were just discussing for just one minute because the discovery requests that were served are -- I mean, they asked for our entire work product.  There's so many discovery requests that are just so facially inappropriate under the law of any district.

So I would like to understand, you know, how the Court would like us to proceed in that regard.

THE COURT:  Sure.

MS. HEALY:  We just object.  I don't want to be subject to a motion to compel.  Honestly --

THE COURT:  Right.

MS. HEALY:  -- you know, my goal --

THE COURT:  Here's what you should do.  You should file your objections so that they -- you know, whatever it is, that these are over-broad or this calls for work product, whatever they might be, as long as they're tailored to particular requests, and then -- and you should have

46

discussions. So, for example, if some -- and there were a number that were over-broad. "All documents relating to X person," that's ridiculously over-broad but not so burdensome that you shouldn't respond. So you should have a discussion, well, what -- you know, what exactly are you looking for here, can we narrow this in some fashion. But discussion means you're getting at what you're looking for and -- and you're having a better understanding of what you need to search for, and I know that's not always an easy conversation, but actually our profession requires that those conversations take place.

Now, if -- if we -- if they say -- if they stand on their objection, "We're not going to produce -- we're requesting all of this" -- sorry, not stand on their objection -- "We're requesting all of this and shame on you. It's not over-broad," and that came to me, okay, they are likely to face sanctions because they're taking a substantially wrong or not substantially justified position. That's how that works, okay. So there is actually a way that -- there's a rule of law here that's going to govern the scope of discovery, and everybody should know what that is. Let's just get down to, you know, the merits of things.

MR. WALLERSTEIN: It's really just impossible, unfortunately, to communicate.

THE COURT: Okay. So here's --

47

MS. HEALY:  Your Honor, I'd like to address -- sorry.

THE COURT:  Here's how this works.  Sometimes there are E-mails because you can't -- you know, it's convenient to at least get people thinking about, you know, here is the subject matter, the things that we'd like to talk about, okay.  And that -- that's a normal way of communicating, but the real meet and confer when you're getting down to discuss the issues, that should happen in person or on the phone and not through this sort of distanced medium.  It can also happen between an associate and an associate or a partner and associate, whatever it might be, but at the end of the day, the lead lawyer needs to sign any joint discovery letter that gets put in front of me so that I know the lead person has taken a look at the positions taken by his or her side and feels comfortable that they're justified.  Okay.

MR. WALLERSTEIN:  Understood, your Honor.  So --

MS. HEALY:  And, your Honor, I'd be happy to address the E-mail issue very briefly because I know the Court doesn't care.  You know, Mr. Alderman has been very kind.  We -- other than we have disputes over the merits, but we had the professional, you know, exchange, and I do use E-mail.  I think it's a very convenient tool sometimes.  It's also very easy to abuse E-mail.  When the E-mail becomes a

*Echo Reporting, Inc.*

**MPX-391**

48

tool for harassment, I don't believe it is appropriate. It's my job to run this case as efficiently as I can, and your Honor's order provides telephone or in person. So when the E-mails became abusive and they were not productive, your Honor, and I know that the Court doesn't want to see all this back and forth. So I have no problem to -- yes, we're communicating right now, but I do believe we're entitled to put an end to harassing E-mails. So I -- I -- in that sense, we don't enjoy their communications right now, and we prefer to communicate by telephone. There's no rule that requires us to be forced to be subjected to harassing E-mails by an opposing counsel. So that's really the background.

I don't think the Court really -- it's not a matter before the Court, and I personally have called Mr. Wallerstein many times. I've had my associates call him. I am in charge of the discovery. We're trying to resolve things efficiently. If I'm dealing with one of these associates, I don't know if she's making representations for the clients, for which client. Most of the time when we get on the phone, they didn't even want to identify which client they're representing. It's the three of them. It's the one of them. That's -- I completely agree that there was a breakdown, and it's not -- when I came to court here today, I asked him if I could call off my -- my court reporter because the Court ordered to bring -- me to go to -- of transcribing.

49

So I had a court reporter on call, and he didn't want to respond to that simple question. So I do try. There is no way of communicating, and I have professional communications with many opposing counsel. So I am following the rules, phone and in person. I'm not here in person, so I'm left to phone and fax to respond, but I'm not going to be subjected to, you know, a barrage of E-mails constantly. So --

THE COURT: Okay.

MS. HEALY: So I don't think we're required to, you know, have E-mail exchanges with Mr. Wallerstein.

THE COURT: Okay. Mr. LoSavio?

MR. LOSAVIO: With respect to the process only, your Honor, we in the past have been able to -- we have had E-mails issued from our office to Ms. Healy's office. I'm holding in my hand the confirmation that their office has blocked E-mails from my office. As the Court has indicated, there are times when setting an agenda of topics to be discussed or to avoid any ambiguity or subsequent dispute about what my position is, I like to express myself in writing. E-mail is the efficient way to do it, and E-mails that -- with which counsel may disagree are not harassing E-mails. So I would just request -- I just put that forth for the Court's consideration.

UNIDENTIFIED SPEAKER: I would like --

MS. HEALY: And, your Honor, some -- I'm sorry.

50

You're not a party -- if I may, at the outset of the case, I actually -- it's funny.  They raised this issue because before we had any communications, I sent them an E-mail asking if they would consent to service by E-mail, and they said no, and after all of this, I -- I cannot be a part, your Honor -- there's no rule that says I have to be a party to be subject to these E-mails.  There's facts -- we haven't had -- there's been no prejudice to communicating by fax, letter, and phone.  They can call me any time.  I'm very prompt in responding.  Mr. Alderman can confirm that, you know, he sent me correspondence.  I called him.  My associates have called him.  Did you confirm that?

        MR. WALLERSTEIN:  I confirmed it.  When I wrote you the E-mail inviting you to discuss the scope of the subpoena with me, you called me back right away.

        MS. HEALY:  Right away.

        THE COURT:  Okay.  So --

        MS. GRAHAM:  May I be heard?

        THE COURT:  Go ahead, briefly, Ms. Graham.

        MS. GRAHAM:  Very briefly.  I too have been blocked, and I've never once sent a harassing E-mail to her, and I'll just leave it at that.

        THE COURT:  Okay.  It seems -- have you ever blocked an E-mail from other opposing counsel?

        MS. HEALY:  Yes.

51

THE COURT:  Okay.

MS. HEALY:  Once only in a pro bono case.  We do also a lot of pro bono work.

THE COURT:  Okay.

MS. HEALY:  But only because it was being used self-servingly, and it was -- she wouldn't accept certain E-mails, but then she would send some E-mails.  So when -- when things get out of control with E-mails --

THE COURT:  Uh-huh.

MS. HEALY:  -- E-mails is very intrusive, there's -- there has to be a process that we cannot be -- he sends E-mails, and two seconds later if you're not responding, he starts threatening.  Your Honor, I can show the Court --

THE COURT:  Okay.  So here's what I'm going to suggest.  Although -- well, E-mails is a normal way of communicating these days.  I agree with you it can be abusive.  What I'd like to see if a fresh start.  If at all possible, I'm going to suggest a fresh start, which means that you begin, again, being willing to accept E-mails from them, but the E-mails need to be useful.  They need to be -- you know, if there are things like setting an agenda or confirming a time that you're going to talk or, you know, confirming a position taken briefly so that there's no miscommunication, then fine, but if it gets to the point where anybody believes the E-mail communication is harassing,

52

then I would hear that motion. I don't want to hear the motion, but I will because you've told me, Ms. Healy, that there's a record here that I should consider.

MS. HEALY: Yes.

THE COURT: And so what I'm doing is resetting. We're starting fresh. Everybody knows I'm going to keep an eye on it if I have to. So watch your tone. Watch your use. Understand that E-mail -- I'm specifying the ways in which it should be used and not in the whole, you know, constant barrage that sometimes -- I don't know if that happened here but that --

MS. HEALY: Yes.

THE COURT: -- can sometimes happen, so that going forward, if I have to police that, I will. I didn't invite it, but I will. Okay. Are you okay with that?

MS. HEALY: I'm sorry, your Honor. I can't accept that because I worked my way for many months accepting all of their correspondence. We have a system. There's fax. It's very easy. Fax goes -- it's very easy to do. It hasn't prejudiced anyone. I'm not willing at this stage, especially because Mr. Wallerstein, he's really representing the entire group also certain known parties. So he creates all these confusions, all these questions. I have to run the case efficiently, your Honor. My client is a very small startup. There's no reason -- there's no -- if he wants to send me an

53

agenda, which I doubt very much because normally he just sends threats, there is a fax. He sent me the fax. There's no problem. We have many tools. We delivered documents by electronic transfers. It's very easy. There's no reason for him to E-mail me. You know, I've really never done this. The issue I was talking to the Court before about the Family Court that I did this pro bono case, it was like one time with this one opposing counsel about one thing. I never had a situation like this before, never ever. And, you know, for full disclosure, March 5th I had a telephone call with Mr. Wallerstein, during which he told me that if my client didn't go away, discovery will be very expensive and we would not get any discovery.

So since that date he E-mails our local counsel without -- you know, that was before the block because the block was very recent. He was threatening us with everything, threatening us to -- it's just -- I love this job, honestly. I love the law. I don't love all these things. I want to practice in a way that's efficient that doesn't make me really hate this profession. That's what gives lawyers, unfortunately, a bad name, and I don't think E-mail sometimes is helpful because people immediately respond. Then they expect you to -- I'm not his associate. I'm not there to respond to every single thing that comes through his mind. Ms. Becki Graham also -- we were communicating by E-mail with

54

their general counsel.  Recently she told me she didn't want to get stuff by E-mail.  She's sending E-mails with stream of consciousness, you know --

THE COURT:  Okay.

MS. HEALY:  It's not --

THE COURT:  Let's.  Let's stop.  You're not willing to reset.  You're not willing to say "Okay, the past is the past.  Judge said she promises to police this if it gets to be a problem.  Let's try again," because people clearly aren't communicating.  I mean, this is -- this is a sad state of affairs, and I'm not blaming anybody.  I think sometimes we get in a position where lawyers' chemistry and issues and the clients really make things difficult, okay.  But I am really asking you to consider a reset because otherwise it makes it even harder to meet and confer.

MS. HEALY:  I think your Honor is being unfair to me because I -- you know, I already lost everything today, and every single motion was denied.  This is a matter of respect.  In Reconvergent, a case from this District, held that lawyers have a duty to take the high road.

THE COURT:  That's right.  That's what I'm asking you to do.

MS. HEALY:  And -- and -- right.  And we can't -- in order for me to comply with that duty, I'm just using, you know, the means that are required by the courts, by the

55

rules, which is fax mail.  It is an exceptional situation, and I -- your Honor, I'm sorry that the Court feels I'm not willing to reset, because I have agreed to withdraw the motion, and --

THE COURT:  Okay.

MS. HEALY:  -- I've agreed to everything the Court asked.

THE COURT:  Here's what we'll do -- here's what we'll do.  No E-mail for now.  If you have something you want to send, fax it, okay.  And because she can receive it, and that means you do the same, right?

MS. HEALY:  Yes.

THE COURT:  Of course.  And I -- I'm going to reserve the right to come back and look at how this meet and confer process is going and whether I need to impose other kinds of communication to make it work out smoothly.  But for now, given your objection and your -- your very vehement objection, I don't think that, frankly, if I allow -- if I ask you to reset, I'm not sure it's going to be useful because you feel really strongly about it.  So I'm willing to respect that.  We'll go by fax or other means for now, open to reconsideration later if things really aren't working out.

I'm hoping, just looking for a way --

MS. HEALY:  Yes.

THE COURT:  -- that you all can move forward more

56

productively, okay.

MR. WALLERSTEIN:  Your Honor --

MS. HEALY:  And, your Honor, I do have a request at this time because he's made all the requests.  He -- I -- I'm designated as lead counsel.  I asked him -- he can call me at any time.  I'm very responsive.  If I'm not in a meeting, I'm not in court, I will respond as soon as I can. That's something that I can do.  He cannot go behind my back seeking other counsel.  He -- if I am telling you I'm the one handling the discovery --

THE COURT:  Is the other counsel your local counsel?

MS. HEALY:  Yes.  He goes to ask --

THE COURT:  Okay.  So if he calls a local counsel, then you should tell your local counsel to say, if that's really how you want to run it, okay, "Please talk with Ms. Healy about this," if that's really how you want to run it. I am guessing, Ms. Healy, that one of the reasons why Mr. Wallerstein is calling your co-counsel is because you all -- the two of you have hit a wall, so you try to go around the wall.  That's not -- that's not logical.

MS. HEALY:  Your Honor, I called -- I honestly am not like that.  I have tried my absolute best because I want to get my production.  So I have no interest in picking fights with him.  We're -- you know, it's -- I want to be --

57

have the --

THE COURT:  My ruling --

MS. HEALY:  Yes, your Honor.

THE COURT:  -- is that I'm not going to order Mr. Wallerstein --

MS. HEALY:  I understand.

THE COURT:  -- to only call you.  I have already said the lawyers should, you know, associate to associate, partner to associate, whatever it might be, as long as it's productive.  If what you want to do is take the lead in all of the discovery, then just have your co-counsel say "Sorry. I can't help you on that.  Call Ms. Healy," if that's really how -- how you want to -- how to proceed, okay.  But the joint letters would -- if they're filed, need to be signed by lead counsel.

MR. WALLERSTEIN:  Your Honor, that's -- I appreciate that.

THE CLERK:  Please state your name.

MR. WALLERSTEIN:  Tom Wallerstein, your Honor. One related issue is that as I understand Loop's position, they will not set forth their legal positions in writing. They will only do that on the phone.  So for -- for example, we served our discovery requests.  Loop's counsel then wanted to have a telephonic meet and confer about all the requests. I responded in writing, probably in E-mail but also by some

58

other method, probably hand delivery, and said "Can you set forth your objections in writing?" No. No. We have to do it on the phone.

THE COURT: Okay. So I have just ordered her to go ahead and file her objections --

MR. WALLERSTEIN: Well --

THE COURT: -- to those discovery requests so you know what she's saying is objectionable about your discovery request, and then you're going to have to actually have conversations.

MR. WALLERSTEIN: And I --

MS. HEALY: Your Honor --

MR. WALLERSTEIN: -- I guess my --

MS. HEALY: -- I'm sorry --

THE COURT: Stop.

MS. HEALY: -- there is a --

THE COURT: Stop. Stop. I have been very patient here today, folks. I've allowed you to have plenty to say and to speak your minds, but I am really disappointed that this is -- you know, you all went to law school. You all spent a lot of time training for this profession, and this is where you're at? Whose phone is that?

UNIDENTIFIED SPEAKER: I think it's an alarm.

THE COURT: Oh, okay. Let us just take a pause. Ms. Beard, could you go investigate.

59

MS. HEALY:  Your Honor --

THE COURT:  Just one moment.

UNIDENTIFIED SPEAKER:  I think it might be Court Call.

MS. BRAYER:  Your Honor, this is Ms. Brayer speaking.  It's quiet on my end, and when it's appropriate, I have one question.

THE COURT:  We are investigating a -- some kind of alarm or noise, Ms. Brayer.  So hold on.

MS. BRAYER:  Okay.  I don't hear it on my end.

(Pause.)

THE COURT:  Give us just one more moment.

(Pause.)

MR. WALLERSTEIN:  Well, it says "An emergency has been reported in the building.  Please cease operations and leave the building.

THE COURT:  Okay.

MR. WALLERSTEIN:  It doesn't appear to be --

THE COURT:  Directed to us, okay.  So one of my clerks is going to go investigate.  Hold on just one moment so that my law clerk can be present.

(Pause.)

THE COURT:  Okay.

MS. HEALY:  Your Honor, I just wanted to direct the Court's attention -- it seems like perhaps the Court

60

doesn't think that we did give them the objections --

THE COURT: Well --

MS. HEALY: -- in annotated form the key questions, and I wanted -- to the Court's point, we can --

THE COURT: I did see it.

MS. HEALY: Okay.

THE COURT: And but what I read your letter to say is that these are so outrageous that we shouldn't even have to respond, and then I saw the -- you know, but obviously you were able to interlineate some responses and some objections, and I could see that you didn't object to all of them. So what I'm saying is they're not so outrageous that you shouldn't respond. You should respond, and then you should -- but, you know, there are some objections that are appropriately interposed because they're objectionable on a number of grounds, but --

(Pause.)

THE COURT: Hold just one moment, and could you please call the clerk's office. Sorry, Counsel.

(Pause.)

THE COURT: I'm very sorry. Let's go outside the building. I'll make sure that I -- please stay near the front unless they tell you to go somewhere further, and I'll make sure that I get word out to you -- actually, bring your things.

61

MS. HEALY:  We can have a meet and confer.

THE COURT:  Bring your things out just so that you have them, and I'll -- I'll come and -- we'll need to get your cell phones or something so we know how to contact you.

MS. HEALY:  Yes.

MR. WALLERSTEIN:  Your Honor, will you be immediately staying around or am I --

THE COURT:  Can you participate by phone later on the meet and confer with them, because you'll need to set some dates.

MR. WALLERSTEIN:  I'll stay around if you'd like me to.  I just didn't know if I was needed.

THE COURT:  Yeah.  It's just that we need to set a schedule, and I'll need you for that part.

MR. WALLERSTEIN:  All right.

THE COURT:  Thank you.

(Proceedings recessed briefly.)

THE CLERK:  Recalling Civil Case C-15-00798-HSG, Loop AI Labs, Incorporated versus Gatti, et al.  Counsel, please restate your appearances.

THE COURT:  Well, actually, I see that all counsel that were here earlier have made it back from our -- our evacuation drill.  Sorry about that, and thanks for your patience, and Ms. Brayer is also back on the phone here.  So let's pick up where we left off.

62

As we were leaving, I had -- well, during the evaluation, the parties were to talk about meeting and conferring to schedule -- to reach a proposed schedule on all of the items that have gone through so far.  So I don't know how much progress the parties have made.

Mr. Wallerstein?

MR. WALLERSTEIN:  Zero, your Honor.  We started to talk about the scheduling of Mr. Pepe's deposition, could not agree on location or time, and that's it.

THE COURT:  Okay.  Well, that's pretty disappointing.  What I was going to do and I think what I will do is have the parties -- we're going to go off record. You're going to be here meeting and conferring.  The first thing to take up is the Orrick subpoena.  Mr. Alderman can be involved in that, and then he's going to go.  This is just to schedule.  We're not going to meet and confer on the guts of that subpoena.  So I've already ordered that service is as of today and that Orrick will respond with their objections and their responses within a week from today.

So the next deadline will be when the meeting and conferring will conclude, because it should begin immediately after -- after the objections come in, and I don't know, Mr. Alderman, whether you're going to be involved in those meet and confer sessions or whether that's really in the Defendant's hands.

63

MR. ALDERMAN:  Your Honor, I think I will be involved to the extent an attorney-client privilege is not made by counsel for the Almawave parties.

THE COURT:  Okay.

MR. ALDERMAN:  I don't know what their -- the scope of their objections will be.  I will honor those when I file my responses, and to the extent that there are objections other than based on attorney-client privilege, I'll be -- I'll be the one on behalf of Orrick conducting those discussions with Ms. Healy.

THE COURT:  Okay.  Then I'm just going to order the following, that the responses are filed by the 30th. Meet and confer shall happen immediately.  I understand Mr. Alderman is not there the next week, but at least with respect to Almawave those discussions which is where I'm guessing most of the discussions will be, that should -- that should happen so that if the parties have not reached agreement on -- on certain things, then a motion will be filed by September 10th.  Sorry.  I'm looking -- sorry.  I've got the wrong month in front of me.  So, let's see, the following week will be -- okay, by August 13th motion will be filed.  And I don't know if that's going to be a joint motion by Orrick and the Defendants or separate, but whatever it's going to be, anything on  motion for protection should be filed by the 13th.

64

I don't think you need to file a separate motion, Ms. Healy.  I think if you're moving to compel, that will just be part of your opposition, correct?

MS. HEALY:  Well, I think there's a few procedural issues.  I think for us to be able to preserve our objections to the motion for contempt, I don't think we can just abandon the motion for contempt.

THE COURT:  I've told you --

MS. HEALY:  Oh, that's reserved for later?

THE COURT:  It's reserved.  We'll deal with it later.  You haven't abandoned it.  You haven't waived anything.

MS. HEALY:  Okay.

THE COURT:  Okay.

MS. HEALY:  So the Court is not going to issue an order, because the order would require me to then appeal within a certain amount of days.

THE COURT:  All I'm going to say in that -- hello?  All I'm going to say in the minute order today is that it's denied without prejudice.  Your objections are -- your arguments are preserved, and you may raise it at a later date after -- after I've ruled on the merits.

MS. HEALY:  Right.  I think just procedurally I would waive the appellate rights because refiling without prejudice, essentially a denial without prejudice --

65

THE COURT:  Do you mean an appeal to Judge Gilliam?

MS. HEALY:  Yes, so that he --

THE COURT:  Okay.  I promise you you won't be waiving those rights.  Okay?

MS. HEALY:  Okay.  Maybe you can -- would your Honor mind --

THE COURT:  Sure.

MS. HEALY:  -- indicating that, you know --

THE COURT:  Absolutely.  Absolutely.  I think part of the problem, Ms. Healy, is that I don't know how much you practice in our District.  So it may be that you're used to doing things differently and that's why it's confusing because I don't -- you're asking questions that usually don't come up, which is fine, but --

MS. HEALY:  Well, no.  I've seen an order by your Honor indicating that if an order by a magistrate judge is not appealed within the 14 days, it's waived.  So I've read all of the revisions here.  You know, I don't practice in this --

THE COURT:  I understand you --

MS. HEALY:  I have practiced in many federal courts, and --

THE COURT:  I'm not saying that you haven't.  I'm just saying that the points you're raising are quite unusual.

66

If you're concerned about it, I'm happy to put that in the order so that you --

MS. HEALY:  I'm just --

THE COURT:  -- feel covered.

MS. HEALY:  -- concerned about our appellate rights because --

THE COURT:  Please don't talk over the judge.

MS. HEALY:  Sure.  I understand.

THE COURT:  Okay.  All right.  We are up against a time limit here.  I'm trying to get through this.  I'm trying to meet the concerns of the parties.  I just met yours, okay.

MS. HEALY:  Okay.

THE COURT:  So the motions by the Defense and/or Orrick on protective order and documents responsive to the subpoena will be filed by the 13th, and then regular -- it's a regular notice.  So 14 days later your opposition will be due, Ms. Healy, and so on, and I will set the hearing date on that.  Okay.

Now, we move to the RRA subpoenas.  You need to meet and confer on them.  Is the issue when Mr. Pepe -- do we know when he's available in general?

MS. GRAHAM:  He -- I only know that he returns from out of the country on the 19th.

THE COURT:  Of?

MS. GRAHAM:  August.

67

THE COURT:  August.  Okay.  And when does he leave?

MS. GRAHAM:  He's already gone.

THE COURT:  He's already gone.  Okay.  So he can't be available until sometime after --

MS. GRAHAM:  After August 19th.

THE COURT:  -- August 19th.  Okay.  Then the deposition will not be -- obviously be taken prior to that time.  We know that much.  There's a dispute about where it will take place.  So what are the parties' positions?

MS. HEALY:  I mean, your Honor, I don't know how Mr. Pepe left when there was a subpoena pending.  Again, we go back to a subpoena doesn't mean anything in the hands of these parties, but --

THE COURT:  Under these -- this Court's guidelines, the parties are to meet and confer about scheduling depositions.  They are to do this cooperatively.  We don't just serve subpoenas and deposition notices and say, "Well, you better be there or else."

MS. HEALY:  Well, I agreed to the general counsel --

THE COURT:  You talk about it and say --

MS. HEALY:  I --

THE COURT:  You talk about it first.  You say, you know, when is this person available, when are you available,

68

here's when I'm available, let's block out this date tentatively.

MS. HEALY:  That's why I called the general counsel, and he told me after July the 4th, and I accommodated him in his every request.  So I don't think now they're saying he's out of the country for over a month.  I'm just surprised, your Honor.  In any event, we can bring him back.

THE COURT:  Yeah.  You're not under any prejudice by having it sometime after him being in the country.

MS. HEALY:  Yes.

THE COURT:  So what other disputes are there?  Is it where it's going to be?

MS. HEALY:  Yes.

THE COURT:  Okay.

MS. GRAHAM:  Correct, your Honor.

THE COURT:  Ms. Graham?

MS. GRAHAM:  I -- there -- she's had a lot of mischaracterizations of what's gone -- I'm not going to address those.

THE COURT:  All I need to know is what's your argument as to where it should be and when?

MS. GRAHAM:  He lives in Washington, D.C., and that's where I believe it should be.  That's where she originally agreed to take it.  When she took off the -- when