VALERIA CALAFIORE HEALY (*pro hac vice*)
valeria.healy@healylex.com
HEALY LLC
154 Grand Street
New York, New York  10013
Telephone:     (212) 810-0377
Facsimile:     (212) 810-7036

Attorneys for Plaintiff
LOOP AI LABS INC.

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS INC., | CASE NO.: 3:15-cv-00798-HSG-DMR |
| Plaintiff, | |
| v. | **DECLARATION OF VALERIA CALAFIORE HEALY PURSUANT TO ORDER 915** |
| ANNA GATTI, et al, | Action Filed:  February 20, 2015<br>Trial: TBA |
| Defendants. | |
| | Hon. Haywood S. Gilliam, Jr. |

I, Valeria Calafiore Healy, hereby declare under penalty of perjury that the following is true and correct to the best of my personal knowledge, information and belief:

1. I am an attorney admitted to practice law in the State of New York and have been admitted *pro hac vice* by this Court as counsel for Plaintiff Loop AI Labs Inc. ("Loop AI") in this action.

2. I submit this Declaration in response to the Court's Order at Dkt. 915 ("Order 915") and address below each item stated in Order 915.[1]

**OVERVIEW AND BACKGROUND**

3. In Part 1 of this Declaration I answer the Court's questions posed in Order 915. In Part 2 of this Declaration I address my request that the Court immediately vacate Order 915 and retract its improvidently made personal attacks on the undersigned counsel, made without notice and an opportunity to be heard, and most importantly without any factual and legal basis.

4. Before proceeding, I would like to state upfront, and fully based on my personal knowledge of all my work, filings and participation in this case, including the (few) hearings the Court has ever held in this case, that the Court's statements and personal attacks directed at me and at my professional integrity in Order 915, lack any basis in the facts and the law, and appear (to me) to have been made as retribution for having repeatedly challenged orders of the Magistrate that I believe to be inconsistent with the law.

5. I have always addressed the Court with the utmost respect and even when I disagreed with the Court's or the Magistrate's orders, I have challenged those orders using respectful language. I have never used anywhere in my filings any "accusations" let alone "accusations" that the Court engaged in "misconduct" or "ethical violations." Reciting facts of what I believe has actually happened is not an "outlandish" "astonishing" or "unsubstantiated"

---

[1] The term "Order" or "Motion" or "Declaration" followed by a number refers to the Docket Number at which the specific filing is found the Electronic Docket of the above captioned proceeding.
[2] *See, e.g.,* http://nypost.com/2016/09/27/judge-apologizes-after-ripping-facebook-for-sending-

allegation or accusation, and I have supported my challenges of the Magistrate's orders in reliance on detailed recitations of the facts and evidence. I know that I have conducted myself with the utmost professionalism in this case, despite the stringent deadlines imposed by the Court, the unusual procedures imposed by the Magistrate, and the exceptionally difficult circumstances that the proceedings in this case have presented, during which I have been subjected to constant attacks and false and vicious accusations made by my opposing counsel. I recognize that I had one moment of lapse during a deposition in Boston last July after a very stressful period of time in this case, and for that I immediately self-reported and apologized to the Court. What happened to me in the Boston deposition in no way reflects on my conduct throughout this case, during which I always behaved professionally and in good faith. Contrary to the Court's statements in Order 915, I am the only lawyer in this case who has always strived to provide the Court accurate representations of the law and the facts, accompanied with meticulous citations to the record.

6. Although I understand that judges are only human,[2] a judge's statements will be viewed by the pubic with the imprimatur of conclusive findings that what the judge says is a fact. The awesome power that Article III of the Constitution gives a federal judge, does not give the Court the right to issue a *sua sponte* Order (let alone repeated ones) with personal attacks on the undersigned counsel that are unfounded and which have very serious and irremediable consequences.

7. On October 4, 2016, I filed, on behalf of my client, a Rule 72 appeal of the Magistrate's Order to the District Judge, as it is my client's right to do and my obligation to pursue to preserve my client's rights against another sanction proceeding that the Magistrate is apparently pursuing, which I believe to be unsupported by the law ("Appeal 905" (Dkt. 905)).[3]

---

[2] *See, e.g.,* http://nypost.com/2016/09/27/judge-apologizes-after-ripping-facebook-for-sending-rookie-lawyer/ (reporting apology by federal District Judge Garaufis).

[3] As used herein the term "Rule" refers to the Federal Rules of Civil Procedure, and the terms "Local Rule" refer to the Civil Local Rules of the US District Court for the Northern District of California.

A true and correct copy of Docket 905 and 905-1 of Appeal 905 is attached hereto as Appendix MPX-1128-1143. A true and correct copy of the supporting evidence previously filed with the Court is located at Dkt. 905-2 (MPX-214-412).

8. Although the Court paints Appeal 905 as some kind of unsupported rant against the Magistrate, Appeal 905 is nothing of the sort. No part of Appeal 905 states anything about any "misconduct" or "ethical" violations and simply lays out the relevant facts as I know them to be and presents the questions to be resolved in the format required by Local Rule 72-2.

9. A person reviewing Order 915 (apparently over 900,000 people around the country thanks to the press dissemination of Order 915 in its entirety)[4] would never know that Appeal 905 states nothing about any "misconduct" and that Appeal 905 was filed **with the support of a detailed declaration under penalty of perjury**, accompanied by meticulous citations to the record. *See* MPX-1134-1143 and Dkt. 905-2.

10. I am certain that a person reviewing Order 915 would think, as the Court recounted, that I made various allegations of misconduct without support, because when I finished reading the Order I was myself persuaded by the Order that I must have forgotten to submit a declaration in support of the Appeal 905.

11. In fact, when I reviewed my filings at Appeal 905 (905-1, 905-2 and 905-3), I realized that I had indeed filed a very detailed and specific declaration under penalty of perjury. As the Court is aware, a declaration under penalty of perjury is legally equivalent to an oath under the binding authority of 28 U.S.C. § 1746. Furthermore, even though Appeal 905 **is not a motion to recuse**, my declaration would have been properly made based on my personal knowledge, "information and belief" even if it were in fact a motion to recuse the Magistrate. The United States Supreme Court has held since 1921 that an affidavit on "information and belief" is all that is required even when a party moves to recuse. *See Berger v. United States*,

---

[4] Attached hereto at MPX1145, 1146-47, 1150 are true and correct copies of the scope of dissemination of Order 915 to the public.

3:15-CV-00798-HSG                                      DECLARATION OF VCH

255 U.S. 22, 34 (1921) ("the value of averments on information and belief in the procedure of the law is recognized.")

12. Thus, the Court's statements that I made "accusations" "none of which [I] support[ed] with specific facts sworn under oath" is not borne by the record for three separate reasons: (a) because my declaration at Dkt. 905-1 (MPX-1134) is legally equivalent to an oath, (b) because my declaration made based on my personal knowledge, information, and belief is legally recognized under long-standing Supreme Court authority, and would have been sufficient even if my client was moving to recuse, and (c) because my declaration was also accompanied by a detailed recitation of facts and portions of the record.

13. In addition, I did not make any accusations in either my Declaration at Dkt. 905-2 or the Appeal at 905-1. In my Declaration I simply recited facts that I believed in good faith to be relevant to explaining the unusual circumstances upon which Order 397 was issued, which Order is the basis for the Magisrate's decision in Order 893 that Loop AI should be sanctioned and required to pay over $16,000 for having been unable to take Mr. Ferri's deposition, **for which he refused to sit because of the lack of the interpreter required by Order 397**.

14. Further, although the Court characterizes Order 893 as simply granting "the opportunity to file a three-page letter brief," that is not how I read Order 893. Almawave USA Inc. ("AW-USA") filed an actual letter motion at Docket 419 pursuant to the Magistrate's "amended procedures at Dkt. 401." Dkt. 419. Motion 419, however, did not contain any declaration for the amount sought. Order 893 states that "**Almawave's motion is granted**." Dkt. 893 (emphasis added). Order 893 then directs AW-USA to submit a "letter brief for Ferri's deposition related travel-expenses." *Id.* I decided to immediately appeal the Magistrate's Order because these statements meant to me that it was possible the Magistrate had already granted the sanction, and was looking solely for evidence of the expenses incurred. The Magistrate has previously issued sanctions against Loop AI based solely on 1-page letters of AW-USA, without any declaration or supporting evidence, and without any hearing. Because of the uncertainty in the Magistrate's procedures, I immediately appealed the order, to avoid the situation in which the Magistrate would later find she already "granted" the sanction motion, as stated in Order 893,

4

and that all we would be permitted to challenge was the amount of expenses that AW-USA – who was not even the party producing the witnesses – now has submitted.

**PART 1**

15. <u>**Direction in Order 915 that I submit a statement "under oath"**</u> - The Court directs me to make a statement under "oath." Order 915 at 1:19 and 4:18. In other parts of Order 915 the Court seems to indicate I can submit a "declaration under penalty of perjury." I address this point only to ensure that the Court will not come to think that I am seeking to defy Order 915. To the extent the reference to the "oath" was meant to direct me to submit my statement in the form of an affidavit sworn before a notary public, I did not have sufficient time, since the issuance of Order 915, to prepare a statement and locate a notary public to certify my statement, but can certainly provide the Court my statement in the form of an affidavit "under oath" if the Court gives me a few additional days.

16. I believe, however, that the form of this declaration fully meets the "oath" requirement of Order 915, pursuant Section 1746 of the United States Code. Section 1746 provides that "wherever, under any law of the United States or under any … order … any matter is required … to be supported, evidenced, established, or proved by the … *oath* … in writing of the person making the same … such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration … in writing of such person which is subscribed by him, as trued and correct under penalty of perjury, and dated…." 28 U.S.C. 1746 (emphasis added).

17. [intentionally omitted].

18. <u>**Direction in Order 915 that "A declaration … [based on] knowledge, information, and belief" will not suffice**</u> -- The Court states that "a declaration to the best of [my] knowledge, information and belief, will not suffice." Order 915 at 4. As set forth above, the Supreme Court has held that a statement based on "information and belief" is sufficient even in the much more serious instance (not implicated in Appeal 905) of a party's moving to recuse

under the precursor of 28 U.S.C. § 144.[5] To my knowledge, Section 144 is the only federal statute, addressing the conduct of judges in the context of a litigation, that requires an affidavit. Under modern recusal law, a party can even move to disqualify without any affidavit at all under 28 U.S.C. 455, because Section 455 is directed, among other things, to the appearance of impropriety, and not solely to actual bias. In addition, based on my review of the applicable law, a party can raise issues implicating a judge's or his staff's conduct in other manners and without reference to either Section 455 or 144, and without being required to submit any affidavit at all.[6] For these reasons, and based on my review of applicable law, I believe that the Court's requirement quoted above (and set forth at lines 16-18 of page 4 of Order 915) are beyond what any law would require me to do, particularly since Appeal 905 is not a motion to recuse. In any event, in compliance with Order 915, I set forth below all the facts that the Court has asked me to detail and will specify what I have personal knowledge of.

19. **Order 915- Section B(1) - Direction to provide "all facts" the statements that Ms. Beard (Magistrate's Law Clerk) and Ms. Culp (Defendants' Counsel) are "well acquainted" and "social acquaintances"** – The Court directs me to provide "all facts on which [I] base [my] claim that defense counsel and Judge Ryu's law clerk are 'social acquaintances' or 'well acquainted.'" Order 915 at 2-3, ¶ 1.

20. I have personal knowledge of the following facts supporting my statements:

    a. I have personally reviewed the dictionary definition of the terms I used in my declaration of October 4, 2016: "acquainted" is defined in one dictionary as

[5] *See Berger v. United States*, 255 U.S. 22, 34 (1921) ("We are of opinion, therefore, that an affidavit upon information and belief satisfies the section and that upon its filing, if it show the objectionable inclination or disposition of the judge, which we have said is an essential condition, it is his duty to 'proceed no further' in the case. And in this there is no serious detriment to the administration of justice nor inconvenience worthy of mention, for of what concern is it to a judge to preside in a particular case; of what concern to other parties to have him so preside?").

[6] *See, e.g., United States v. Navarro-Flores*, 628 F.2d 1178, 1182 (9th Cir. 1980) (finding that the right to an impartial judge implicates due process and does not need to be raised exclusively under the recusal statutes).

3:15-CV-00798-HSG            DECLARATION OF VCH

"having the knowledge of or being familiar with a person or thing."[7] "Acquaint" and "acquainted" are also defined in a second dictionary as "to cause to know personally" and "to make familiar."[8] The term "acquaintance" is also defined as "someone who is known but not a close friend" or "the state of knowing someone in a personal or social way" or "knowledge about something."[9] The word "social," is defined as "relating to or involving activities in which people spend time talking to each other or doing enjoyable things with each other."[10]

b.  I have personal knowledge of the context in which I used the terms "well acquainted" in in my declaration where I expressly explained the following:

"I understand that Ms. Culp is well acquainted with Ms. Beard *__because__* they were in the same class in law school, at UC Hastings College of Law, where the Magistrate assigned to this case also was a Professor, while Ms. Culp and Ms. Beard were students there."

Dkt. 905-1 at ¶ 22 (MPX-1139) (emphasis added).

c.  My use of the terms "well acquainted" and "social acquaintances" is consistent with the dictionary definition of those terms because Ms. Beard and Ms. Culp are "well familiar with" each other since they were law-school classmates.

d.  I have personal knowledge that Ms. Beard and Ms. Culp are well familiar with each other, "well acquainted" or "social acquaintances." I formed this knowledge after speaking to a lawyer who was their law school classmate at UC Hastings College of Law ("UCHL") and who knows both Ms. Beard and Ms. Culp personally, and graduated with them in the same class, Class of 2005. I also learned that Ms. Culp is very social and continues to be highly involved with UCHL Class of 2005, and is even a member of the 2005 Reunion Class

---

[7] *See free online edition at* http://thelawdictionary.org/acquainted/ (last accessed on October 23, 2016).

[8] *See* http://www.merriam-webster.com/dictionary/acquainted (last accessed on October 23, 2016).

[9] *See* http://www.merriam-webster.com/dictionary/acquaintance (last accessed on October 23, 2016).

[10] *See* http://www.merriam-webster.com/dictionary/social (last accessed on October 23, 2016).

Committee. I also learned that Ms. Culp is highly involved with alumni of the UCHL and is a member of UCHL "Alumni Association" Board of Governors, whose function is advertised to be, among others, "outreach efforts to alumni and students." I also learned that Ms. Culp and Ms. Beard both are married to two other members of the same UCHL Class of 2005. I independently verified this information through other sources.

e. Attached hereto as MXP-1148 and 1149 are true and correct copies of two documents relating to Ms. Culp's ongoing social activities with the alumni's of the UCHL Class of 2005 of which Ms. Beard is a member.

f. I am not required to provide the Court the name of the member of the UCHL Class of 2005 from whom I learned about Ms. Culp and Ms. Beard and decline to do so because I have no right or obligation to negatively affect this person in his relationships and career. The information I included in my declaration, however, is true and correct, and is neither "outlandish" or "unsubstantiated" as the Court described it. I did not in any way overstate information that I did not have. For instance, I did not state that Ms. Culp and Ms. Beards are friends, although they may very well be.

g. In addition, to the foregoing information, I believe that defense counsel's familiarity with Ms. Beard is relevant to the issues I addressed in Appeal 905 and to the manner in which defense counsel reached out to Ms. Beard. First, the Magistrate remarked at my first appearance words to the effect that I was not a local practitioner. *See* Dkt. 905-1 at 2, ¶ 8. Second, I recently had the need to call the Chambers of the Magistrate. Specifically, I called the Calendar and Docket Clerks who are the only contacts listed on the Magistrate's website, to inquire whether a hearing would be scheduled on a pending motion. Despite calling three times and leaving messages, I never even received a call back, let alone been put through to a live voice or to Ms. Beard to discuss my calendaring question. By contrast, on January 20, 2016, defense counsel was able to immediately access

Ms. Beard, and speak to her about whether he was entitled to force me to pay for his interpreter, and get an Order signed by the Magistrate all within approximately one and one half hours. Presumably, Almawave's counsel knew to speak to Ms. Beard because Ms. Culp was familiar with who Ms. Beard was, and Ms. Beard, and later the Court in Order 397, felt it appropriate to rely on the unsworn and undocumented statements of Almawave's counsel made on January 20, 2016.

21.    **Order 915- Section B(2) – "Ex Parte" Communications between Almawave USA's Counsel and Ms. Beard (Magistrate's Law Clerk)** – I have personal knowledge of the following facts supporting my statement that Almawave USA's counsel had an ex-parte communication with Ms. Beard regarding a matter ruled on shortly after that call in Order 397:

a.    On January 20, 2016, I was present in San Francisco in a conference room at 333 Bush Street beginning at 8:00am for the noticed, and court ordered, jurisdictional depositions of Ms. Perri and Ms. Nicolella.

b.    As already set forth in my Declaration of October 4, 2016, Mr. Wallerstein did not want to allow the deposition to proceed unless I agreed to "pay" for the interpreter. There was no emergency because the only issue was one of who pays for the interpreter. Mr. Wallerstein was perfectly willing to allow the use of his interpreter during the jurisdictional depositions, but wanted to suddenly extract from me an agreement that I or my client pay for it:

```
MR. WALLERSTEIN: Well, Ms. Healy, I am telling
you that if you would like to talk about an
alternative solution so that the deposition may
proceed, I am here to do that. Would you not like
to do that? I am offering to have an interpreter
for you, which I took the burden and expense of
making sure she would be here. She is happy to be
employed by you, if you would like to proceed.
```

Dkt. 905-2 at MPX-243 (emphasis added).

```
MR. WALLERSTEIN: I am waiting for you to stop
talking so that I may say something. Are you
done? We have a solution for you, which is we are
happy to have you hire the interpreter, which we
```

> can provide to you in about 10 seconds' notice.
> And yes, it would be Arianna, who is happy to be
> engaged and serve the function, ***if you are
> willing to pay for that.***

*Id.* at MPX-255 (emphasis added).

> MR. WALLERSTEIN: ….I have a proposal which is a
> solution, which is Ms. Healy ***can engage and pay a
> certified interpreter***
> to conduct the deposition as it should be conducted. I
> took the liberty of having her here, ***and if Ms. Healy
> would like to engage her, I think we can proceed.***

*Id.* at MPX-255 (emphasis added) (statement during pseudo-hearing before Ms. Beard).

    c.  Mr. Wallerstein wanted my client or I to agree to pay for the interpreter he brought with him regardless of the witnesses English language skills, which he specifically said on the record were irrelevant to his request that we pay for his interpreter:

> MS. HEALY: Ms. Perri, do you speak English?
> MR. WALLERSTEIN: She is not responding to English, Ms.
> Healy, and I instruct her not to answer.

*Id.* at MPX-240.

> MS. HEALY: I am ready to proceed now. And I want
> to establish that Ms. Nicolella speaks or
> doesn'tspeak English. So I am asking for the
> witness to sit on the witness seat, which you are
> currently occupying, and we can ask her some
> questions, and if she doesn't understand --
>
> MR. WALLERSTEIN: It's not a matter of whether she
> understands or not. That has nothing to do with
> it.
>
> MS. HEALY: I have a right to establish whether
> she speaks English.
>
> MR. WALLERSTEIN: No, you do not. You do not.
> That's not even part of the scope of this
> deposition, so no, you do not.

*Id.* at MPX-222-23.

d. After Mr. Wallerstein refused to allow the first jurisdictional deposition of the Italian Almaviva Defendants to proceed, on January 20, 2016, at approximately 9:44am, Ms. Culp, Ms. Schneider-Stocking (the interpreter brought by Almawave), and two officers of Almaviva S.p.A. left the deposition room. *See* MPX267.

e. At approximately 9:51:35am of January 20, 2016, Mr. Wallerstein also exited the conference room where I was. *See* MPX269.

f. Shortly before 9:58am the same day, I was summoned to a different conference room by Mr. Wallerstein or one of his colleagues. I don't remember who came to call me, but it was a member of the defense counsel's team. I was directed to go to another conference room because the Court was on the phone. When I entered this smaller conference room located at the end of the hall and right before the pantry of the office in which we were, I saw the interpreter, Ms. Schneider Stocking sitting down, and Mr. Wallerstein was to her side. Ms. Culp and their clients were standing. Defense counsel noted that I was now in the room, and Ms. Beard introduced herself and asked me to state my position. I responded that I did not feel comfortable stating my position without a record and requested that I be allowed to state my position on the record, and explained that since the court reporter was in the other room we could call back from the other room. As a result, the call that Almawave's counsel was having in the small conference room ended, and we all returned to the deposition room. At 9:58am Mr. Wallerstein then called Ms. Beard again in the presence of everyone, including the court reporter who recorded the call.

g. At the time of this call I had never heard of Ms. Beard before, and had no idea why we were being asked to make statements to her.

h. As set forth above, and in response to the Court's question, I personally observed, after entering the small conference room, that defense counsel was on the phone with Ms. Beard. Because she asked me to state my position, I assumed that Ms.

Culp or Mr. Wallerstein had already explained to her the issue they wanted to raise, but had no personal knowledge at that time of what was said in the ex-parte call.

i.  As I also previously explained in my prior Declaration and in Appeal 905, Ms. Beard held a pseudo-hearing for approximately 15 minutes on the record where she apparently was gathering the facts relating to the issue that defense counsel sought to raise.  This hearing is fully recorded and is not my "outlandish" or "unsubstantiated" statement, but is laid out in over 14 pages of transcript.  *See* MPX-267-83.

j.  As I also set forth in my prior Declaration, approximately one hour after the pseudo-hearing with Ms. Beard ended, we were surprised with an ECF notice that consisted of the issuance of Order 397.  *See* Dkt. 905-2 at MPX-244, 328-329.

k.  When I reviewed Order 397, I became certain that defense counsel had discussed his request with Ms. Beard ex parte because Order 397 recited information that was not provided to Ms. Beard in my presence.   Specifically, Order 397 stated that the interpreter brought by Almawave: ***"has experience in providing Italian language translation in California courts***."  See Dkt. 905-2 at MPX-329 (emphasis added).  Because I was not aware of this fact, which was not disclosed to the court in my presence, later that day I asked Almawave's interpreter, Ms. Schneider-Stocking how did the "court" learn that she had "experience in providing Italian language translation in California courts."  Ms. Schneider-Stocking told me that that information was provided to Ms. Beard when Almawave's counsel called her the first time that morning.

l.  I have personal knowledge of the foregoing facts because I was personally told so on January 20, 2016.  I have not asked Ms. Schneider-Stocking to give me a declaration, as the Court directs me to do, because it is not my place to do so and I am not required to put Ms. Schneider-Stocking in the difficult situation to corroborate what I know she told me.  What I was told is exactly what happened

as I know it happened because I was part of this conversation.  It is not as the Court describes it an "outlandish" or "unsubstantiated" statement.  Indeed, the record of the pseudo-hearing before Ms. Beard confirms that the information included in Order 397 about Ms. Schneider-Stocking's experience in California courts was never provided to Ms. Beard in my presence.  Furthermore, when I entered the small conference room I was asked to state my position.  Therefore, I have more than a sufficient and good faith basis to believe based on these facts that during the ex-parte call defense counsel discussed the pending issue with Ms. Beard, because there would be no reason to explain to Ms. Beard what qualifications Ms. Schneider-Stocking had except in connection with his request that I pay for her services, as defense counsel sought to persuade the Court to order and as Order 397 directs me to do.

m. Order 397 also contains numerous other statements that are incorrect.  For instance, Order 397 begins with the sentence that "counsel for" the parties contacted the court.  That statement is not what actually happened.  Counsel for the Almawave Defendants contacted the Court, and were speaking to Ms. Beard as I personally observed when I entered the small conference room.  In addition, the dispute was not about "the use of a certified interpreter" as Order 397 states, but was only about Almawave's desire that we pay for his interpreter, as fully set forth in the transcript of both what happened between counsel *before* Ms. Beard was called, and during the call with Ms. Beard in which I participated (as quoted above).  Order 397 states that I did not "believe that the deponents require an English language interpreter because each of them filed a declaration in English" when in fact, as fully set forth on the record, Mr. Wallerstein did not even let me determine if the witnesses did in fact speak English and the issue that defense counsel raised was solely one of payment – that he wanted us to pay for the interpreter.

3:15-CV-00798-HSG

DECLARATION OF VCH

n. The statement in Order 397 at lines 24-28 of page 1 is also incorrect, because the issue was solely one of payment, not one of interpreting, and I only offered to interpret because Mr. Wallerstein refused to allow the deposition to proceed unless I agreed to pay for his interpreter, as fully shown in the deposition transcript.

o. The statement in Order 397 that I was required to find a "certified interpreter" is also incorrect, because as I stated in Appeal 905 and supporting declaration, we learned that the State of California does not certify interpreters of the Italian language. The requirement that we find a "certified interpreter" in less than 24-hours made it impossible for us to comply with a requirement in Order 397 that was impossible to meet.

p. Further Order 397 omits any of the statements favorable to Loop AI and unfavorable to Almawave's position, such as for instance, what actually happened at the December 10, 2015 hearing in front of the Magistrate during which Mr. Wallerstein actually told the Magistrate both that (1) he would bring his own interpreter (without ever requesting or mentioning that he would ask me to pay for it or to bring my own interpreter), and (2) that two of the witnesses would testify in English. *See* Dkt. 905-1 at 3-4.

22. **Order 915- Section B(3) and (4) – "Improperly Procuring" Order 397 and "influencing" the Magistrate to issue Order 397 Based on Communication that the Law Clerk Had No Power to Entertain** – I stated that Almawave's counsel "improperly procured" Order 397 twice at page 1 and 3 of Appeal 905. I have personal knowledge of the basis for my argument that Order 397 was improperly procured. I used that terminology because this is what I believe happened. I believe that based on all the facts recited above, that Almawave's counsel knew to call Ms. Beard to explain the issue that Almawave wanted to raise with the Magistrate – because Ms. Culp was familiar with her and Ms. Beard agreed to speak to them. During my entire representation in this case, I never was afforded to speak to Ms. Beard, would not know where to call her, and did not even get a call back from the Magistrate's Chambers even on a

14

simple calendar matter for which I left three messages. I also personally know that on January 20, 2016, Almawave's counsel, by Mr. Wallerstein and Ms. Culp, in fact did call Ms. Beard ex-parte in the presence of the interpreter and their client, because this is what I saw when I was called to the small conference room where they were on the phone with Ms. Beard. I know that Almawave's counsel discussed the issue ruled on in Order 397 ex-parte with Ms. Beard because when I entered the room I was asked to state my position, and I told Ms. Beard that I did not want to speak without a record, which caused the call to end and a new call to be placed in the presence of all counsel at 9:58am. I confirmed after receiving Order 397 that Almawave had in fact engaged in an ex-parte communication with Ms. Beard about the issue addressed in Order 397, because, as set forth above, Order 397 includes statements that Ms. Beard learned from Almawave during their ex-parte call. Based on these facts I believe Order 397 was obtained by the action of (and therefore procured)[11] Almawave's counsel in calling Ms. Beard which ultimately resulted in the issuance of Order 397, based solely on Ms. Beard's fact gathering, and without any motion, appearance or contact with the Magistrate herself.

23. I base my argument in Appeal 905 that Ms. Beard influenced the Magistrate to issue Order 397 in favor of Almawave, on all of the above and the following:

   a. the Magistrate had no way to know anything about the issue resolved in Order 397 because no papers were ever filed by the parties to address the issue resolved in Order 397, and because the parties did not have any discussion on or off the record with the Magistrate about that issue, and the Magistrate could not possibly know that Mr. Wallerstein was seeking to require me to pay for the interpreter he brought. Thus the only facts on which the Magistrate could have based Order 397 was the fact gathering made by Ms. Beard on January 20, 2016;

---

[11] The term "procure" is commonly defined to mean "to get (something) by some action or effort." *See* *http://www.merriam-webster.com/dictionary/procure* (last accessed on October 23, 2016).

b. Order 397 adopts the positions of Almawave in full, even though those positions are incorrect and legally unsupported. Nothing in the Federal Rules or in any case law permits a party to stop a deposition until its opponent agrees to pay the costs of an interpreter brought by one of the parties. The only issue that Mr. Wallerstein raised when he stopped the deposition, as set forth in the transcript, was one of payment. There was no urgency to obtain such a ruling on the fly, because the issue was strictly financial, and the Almawave Defendants claim to be a Euor 700 million company. Mr. Wallerstein had no basis in the law to refuse to allow a court ordered deposition to proceed unless I agreed to pay his interpreter. The prior orders of the Magistrate regarding these jurisdictional depositions never directed me to bring, let alone pay for, Mr. Wallerstein's interpreter, and it is crystal clear from the transcript that Mr. Wallerstein simply wanted to buy time (in addition to the time he already wasted by arriving over one hour late) and impose costs. Indeed, Mr. Wallerstein instructed his witness not to answer when I asked the simple question of whether she "spoke English." Thus, there was no urgency for Order 397 to issue, because there was no urgency, and no law supporting, that a deposition can be halted to immediately determine who pays for the payment demands made by opposing counsel during a deposition; (c) Order 397 makes numerous misstatements about what I did or said, casts us in a negatively light, and imposes unreasonable requirements on Loop AI. Since we did not speak to the Magistrate about any of the issues set forth in Order 397, I believe Ms. Beard is the only person who could have influenced the Magistrate into writing or approving and signing the statements made in Order 397.

24. The Court's accusations that "***it should be plain to any competent attorney*** that there is nothing improper about a law clerk gathering information from the parties regarding a discovery dispute while the judge is unavailable, then conveying that information to the judge so the judge can resolve the dispute," Order 915 at 4 (emphasis added), are not plain at all. Although the Court has issued two orders now publicly stating that I am, in the Court's view,

3:15-CV-00798-HSG        DECLARATION OF VCH

"incompetent" the Court is respectfully mistaken. I am fully dedicated to the study of law and am perfectly competent to form the belief that Order 397, resulting solely from the fact-gathering of a law clerk of a Magistrate, is improper. I am confident in my belief that a law clerk is not permitted to gather facts for a judge, where the law clerk's fact gathering is the sole basis for an Order that imposes substantial costs and other impediments (for instance, meeting an impossible requirement, such as finding a "certified" Italian interpreter in a State that has no such certification) on a party. The Court's further statement that "Judge Ryu's law clerk" "only had authority to gather the information, not render any sort of ruling" is incorrect, because I could not find any authority supporting the proposition that a law clerk has such authority. I believe a law clerk does not and I also believe that a judge cannot issue a ruling based on his or her law clerk's "fact" or "information" gathering. In this particular instance, the law clerk's fact gathering also involved an ex-parte communication, a portion of which was subsequently included in Order 397, as I explained above and in my prior declaration. Although I have never accused anyone of misconduct, I believe based on my knowledge of the applicable rules that this is improper. I also believe that in this particular situation, the improper fact gathering of the law clerk was not harmless error because it resulted in the imposition of burdens on a party, my client, that were not warranted in the facts or the law. It also has resulted in additional costs and burdens by having to respond to several other motions, including the current motion for sanctions seeking to impose $16,000 in costs on Loop AI and a second motion which the Magistrate has now scheduled for a hearing.

25. The Court also states in Order 915 that "it should go without saying that it is not improper in any way for a law clerk to make a recommendation to a judge regarding the resolution of a discovery dispute." Dkt. 915 at 3-4. While this may be true when the law clerk is tasked with reviewing filings or presentations made by the parties to the Court, this is not what happened here. What Loop AI complained of in Appeal 905 is that the law clerk was the only source of fact gathering and the only basis for the statements and the order issued in Order 397.

26. Respectfully, and for the foregoing reasons and those stated in Appeal 905, I believe that the Court's Order 915, is incorrect in focusing on publicly attacking me because the Court or the Magistrate believe I said something offensive about the Magistrate and her law clerk. I am at a loss to understand why Order 915 does not focus instead on doing justice and addressing why Almawave's counsel (a) interrupted the deposition to get a payment order, which is **not one of the grounds permitted by the Federal Rules of Civil Procedure**, (b) why they called the Court and discussed their request ex-parte with Ms. Beard, (c) why they made false statements to Ms. Beard on the recorded pseudo-hearing that was transcribed, which statements are fully negated by the transcript of the December 10, 2015 hearing during which Mr. Wallerstein **represented to the Magistrate that he would bring his own interpreter and that two of his witnesses would testify in English (see Dkt. 905-1)**, and (d) why Almawave USA, a party who did not even produce any of the witnesses in question, is now being allowed to move for sanctions **again** by two separate and equally frivolous motions that are each based on the validity of Order 397, all at great costs to Loop AI and based solely on issues manufactured by Almawave.

### PART 2

27. I respectfully request that the Court vacate Order 915 and retract its personal attacks on the undersigned counsel. My statements in Appeal 905 and my supporting declaration and exhibits at Dkt. 905-1 and 905-2 are true and correct, and fully support my arguments in Appeal 905.

28. I did not make any unsubstantiated or outlandish comments, and have stated facts that are relevant to the issues presented in as respectful a manner as I could. I have tried to be respectful of the Court, while at the same time have exercised my client's right to seek review of Orders that we believe necessitate review.

29. The dissemination of Order 915 has caused me and my client irreparable harm that probably I will never be able to remedy and that I did not deserve because I submitted a perfectly valid declaration, supported by evidence in my declaration and its exhbits. I never, as the Court stated, accused the Magistrate of ethical breaches or misconduct, and simply laid out

18

Loop AI's position as to why Order 397 is invalid, and why Almawave USA's motions for sanctions that are based on the validity of that Order are impermissible and should have been denied instead of being scheduled for a hearing on October 31, 2016.

Respectfully submitted,

Executed: October 23, 2016
New York, NY

/s/ Valeria Calafiore Healy

Valeria Calafiore Healy

3:15-CV-00798-HSG                                                    DECLARATION OF VCH