1  VALERIA CALAFIORE HEALY, ESQ.
   (*pro hac vice*)
2  valeria.healy@healylex.com
   HEALY LLC
3  154 Grand Street
   New York, New York  10013
4  Telephone:      (212) 810-0377
   Facsimile:      (212) 810-7036
5
   Attorneys for Plaintiff
6  LOOP AI LABS INC.

7              UNITED STATES DISTRICT COURT

8        FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                    SAN FRANCISCO

10

11  LOOP AI LABS INC.,                   CASE NO.: 3:15-cv-00798-HSG

12           Plaintiff,                  **PLAINTIFF LOOP AI LABS INC.'S
                                         RESPONSE TO ORDER TO SHOW
13                                       CAUSE AT DKT. 894 AND
                                         APPLICATION FOR A SHOW CAUSE
14       v.                              EVIDENTIARY HEARING**

15                                       Action Filed:  February 20, 2015
                                         Trial Date:     TBA
16   ANNA GATTI, et al,

17           Defendants.

18                                       Hon. Haywood S. Gilliam, Jr.

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................ iv

INTRODUCTION ........................................................................................................ 1

SUMMARY OF ORDERS LISTED IN ORDER 894 ...................................................6

ARGUMENT ................................................................................................................7

I.   Order 894 Violates Loop AI Due Process Rights ................................................7

    A.  Order 894 Was Issued Without Notice, Briefing and a Hearing ............................7

    B.  To The Extent Order 894 Is Based on Communications Between the
       Magistrate and the District Judge Loop AI Is Entitled to An Opportunity to
       Respond ...............................................................................................................7

    C.  Order 894 Fails to Provide Particularized Notice As to the Specific
       Misconduct And Specific Legal Authority that the Court Has Relied On in
       Support of Its Order or Which The Court Believes Supports Any Type of
       Sanction Against Loop AI .....................................................................................8

II.  Neither The Record Cited By The Court Nor Any Other Part Of The Record
    Supports The Court's Characterization Of Loop AI's Conduct ...........................12

      1.   No "obstructionist discovery conduct" by Loop AI .......................................12

      2.   No "persistent failure to follow Court orders" ..............................................13

      3.   No continuing refusal to comply with the Court's orders and the
         Federal Rules .............................................................................................14

      4.   Loop AI's Conduct Did Not Cause the Court to Expend An
         Unreasonable Amount of Time on This Case .................................................16

III. There is No Legal or Factual Basis for the Court to Threaten To Sanction Loop AI,
    Let Alone Impose a Dismissal Sanction ..............................................................17

      1.   The Court Cannot Aggregate Past Sanctions or Conduct to Impose A
         Bigger Sanction Than Was Previously Imposed ...........................................17

      2.   The Court Is Not Authorized to Suddenly Treat Rule 72(a) Pretrial
         Orders of the Magistrate as Rule 72(b) Reports and Recommendations .........17

      3.   The Court Has Never Warned Loop AI that It Was Contemplating The
         Imposition of a Terminating Sanction ..........................................................19

      4.   There is No Basis for Rule 37(b) or Inherent Authority Sanctions ................19

IV.   Request for an Evidentiary Hearing....................................................................................20

CONCLUSION....................................................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Ahanchian v. Xenon Pictures, Inc.*,
    624 F.3d 1253 (9th Cir. 2010) ...................................................................14

*Bay Area Painters & Tapers Pension Tr. Fund v. Golden Vas Painting*,
    No. C-10-02923 CW (DMR), 2011 U.S. Dist. LEXIS 141309
    (N.D. Cal. Nov. 7, 2011) ...........................................................................18

*Cole v. United States Dist. Court for the Dist. of Idaho*,
    366 F.3d 813 (9th Cir. 2004) ......................................................................8

*Faerfers v. Caviar Creator, Inc.*,
    359 F. App'x 739 (9th Cir. 2009) .............................................................17

*Fjelstad v. American Honda Motor Co.*,
    762 F.2d 1334 (9th Cir. 1985) ..................................................................20

*Foster v. Wilson*,
    504 F.3d 1046 (9th Cir. 2007) ....................................................................8

*In re Deville*,
    361 F.3d 539 (9th Cir. 2004) ......................................................................8

*In re Rubin*,
    769 F.2d 611 (9th Cir. 1985) ....................................................................19

*In re United States*, 441 F.3d 44
    441 F.3d 44 (1st Cir. 2006).........................................................................4

*In re Yagman*,
    796 F.2d 1165 (9th Cir. 1986) ....................................................................1

*Leon v. IDX Sys. Corp.*,
    464 F.3d 951 (9th Cir. 2006) ....................................................................20

*United States v. Nat'l Med. Enters., Inc.*,
    792 F.2d 906 (9th Cir. 1986) ............................................................ *passim*

*United States v. Seale*,
    461 F.2d 345 (7th Cir. 1972) ......................................................................2

## Statutes

28 U.S.C. § 636(b)(1)(B)-(C) ...........................................................................18

Civil Local Rule 7 ...............................................................................................3

Civil Local Rule 72 .................................................................................. *passim*

Fed. R. Civ. P. 37...................................................................................................................8

Fed. R. Civ. P. 72............................................................................................... *passim*

California Code of Civil Procedure Section 2019.210   ......................................10, 11

1   Plaintiff Loop AI Labs Inc. ("Loop AI") respectfully submits this Response as directed

2   by the Court's Order to Show Cause dated September 26, 2016 ("Order 894"), and Order 899

3   extending the deadline to submit this response.

4   **INTRODUCTION**

5   The Court violated Loop AI's due process rights by issuing Order 894 without first

6   giving Loop AI notice and an opportunity to be heard regarding the Court's assertions, set forth

7   in Order 894, to the effect that Loop AI has engaged in discovery obstruction and refusal to

8   follow Court orders.  Respectfully, the Court's assertion that Loop AI engaged in discovery

9   obstruction is unfounded, since Loop AI is the only party in this case that has given over 33

10  hours in deposition and produced over 64,000 pages of documents even though Loop AI's claims

11  are not about its conduct, but are about what the Defendants did.  The Court's publication of the

12  assertion contained in Order 894 has unfairly and improperly caused irreparable harm to Loop AI

13  and its counsel.  For this reason, and because under binding precedent it would be inappropriate

14  to issue terminating sanctions even if the assertions contained in Order 894 were well-founded,

15  Order 894 should be vacated.

16  "The sanction of dismissal should be imposed only in extreme circumstances."  *United*

17  *States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 910 (9th Cir. 1986).  A dismissal sanction is

18  appropriate "only if the deceptive conduct is willful, in bad faith, or relates to the matters in

19  controversy in such a way as to interfere with the rightful decision of the case."  *Id.*  Nothing in

20  the record cited in Order 894, or indeed in the entire record, satisfies those requirements.  All but

21  one of the orders listed in Order 894 are orders issued by the Magistrate assigned to this case (the

22  "Magistrate's Orders").[1]  None of the Magistrate's Orders contains a finding of bad faith

23  misconduct by Loop AI, nor is there any basis for such a finding.  Order 894 does not explain

24  how any of the orders cited would justify any further sanction.  Most of the Magistrate's Orders

25  listed in Order 894 are sanction orders issued in violation of Loop AI's rights to due process, the

26

27  _____

28  [1] The only order listed in Order 894 that was issued by the presiding District Judge concerns
Loop AI's counsel inclusion in an opposition brief of single-spaced bullet points, and of a
declaration by counsel that the Court found to have been deficient in how it attached exhibits,
and how it presented information.  *See* Dkt. 633.

1   Federal Rules, and the Civil Local Rules.  Even if those sanction orders were validly issued, they

2   cannot properly form the basis of further sanctions.[2]

3        The remaining orders cited in Order 894 are orders directing Loop AI to do something.

4   Loop AI has complied with those orders, and Order 894 does not state otherwise.  Those orders

5   cannot form a basis for sanctions.  Sanctions punish non-compliance, not compliance.  The **only**

6   order identified in Order 894 that the Court states Loop AI "still has not complied" is a prior

7   sanction order, specifically the Blanket Waiver Order.[3]  It would be wholly inappropriate for the

8   Court to punish Loop AI with *any* sanction for failing to comply with the Blanket Waiver Order

9   because *first,* the validity of that Order is under review in the pending *mandamus* proceeding,

10  and the Ninth Circuit has found Loop AI's petition to raise "issues that warrant an answer."  *See*

11  Dkt. 885.  Loop AI has acted in good faith in immediately petitioning the Ninth Circuit, while

12  ensuring it would not waive its important attorney-client privilege and work-product immunity,

13  while seeking review.[4]  *Second,* failure to comply with the Blanket Waiver Order does not cause

14  the exceptional prejudice required to justify the extraordinary remedy of terminating sanctions

15  (AW-USA, the only party involved in aspects of the Blanket Waiver Order had no reasonable

16  expectation that it would be assisted in defending themselves through access to Loop AI's

17  privileged work product).  *Third*, the Blanket Waiver Order is impossible to comply with

18  because it is vague and ambiguous and does not even identify any particular discovery request,

19  let alone its scope, requiring compliance under the Blanket Waiver Order.  *Finally*, further

20  sanctions of any sort would be inappropriate in respect of the Blanket Waiver Order because they

21  are not warranted by the facts and they are not warranted by the disparate treatment the

22  Magistrate has applied to the privilege log issue.  Specifically, it is unfair to sanction Loop AI *at*

23

24  [2] The Ninth Circuit has expressly held that a court cannot aggregate past sanction orders, or
25  accumulate misconduct throughout the case, to impose further "retribution in the form of a
    massive sanction."  *In re Yagman*, 796 F.2d 1165, 1183 (9th Cir. 1986).

26  [3] The Blanket Waiver Order subject of the Mandamus Petition is described in Order 894 as the
    "Refusal to Produce Privilege Log."

27  [4] *See, e.g., United States v. Seale*, 461 F.2d 345, 363 (7th Cir. 1972) ("Whether Seale entertained
    a good faith reasonable belief in the necessity to continue his protestations in order to preserve
28  his claims for review or to avoid being charged with waiver is a question which may be explored
    by the new judge on remand.")

*all* because of a putatively late and deficient privilege log production, when the Magistrate declined to compel the production of *any* privilege log, *at all*, by Almawave USA in respect of the Orrick firm's production made in response to discovery propounded by Loop AI. *See* Dkt. 335 at 64-65.[5]  Imposing sanctions in respect of the Blanket Waiver Order also would be inappropriate because Loop AI should not be forced under penalty of sanctions to comply with that Order at least until its validity has been addressed by the Ninth Circuit.  Complying now would cause the irreversible forfeiture of attorney-client privilege and attorney work-product immunity.

Further, the Magistrate has indicated on the record (both at a hearing and in written orders) that she has consulted about matters at issue in this case with the presiding District Judge *ex parte* (*i.e.*, privately and outside the presence of the parties).  To the extent any such communications occurred that are germane to any of the orders listed in Order 894, or to Order 894 itself, proceeding as contemplated by Order 894 (without affording Loop AI notice of and an opportunity to respond to the content of those communications) would violate Loop AI's due process rights.  Because the District Judge serves in an appellate capacity vis-à-vis the Magistrate, by communicating privately to the District Judge Loop AI is deprived of the opportunity to respond and address the issues.  In addition, Order 894 is entirely about the Magistrate's Orders with only one exception.  The assortment of the Magistrate's Orders included is unusual, and Loop AI believes it would have been difficult for the District Judge to identify certain of those orders, which are wholly unrelated to any particular issue or discovery, particularly in light of the extensive docket consisting of over 900 entries.  Loop AI believes that the selection of the orders listed in Order 894, therefore, would have required the Magistrate's

---

[5] Specifically, as set forth in the transcript of the December 10, 2016 hearing, the Magistrate did not sanction AW-USA at all for a 6-months failure to produce a privilege log regarding 600 documents they obtained in response to a Subpoena served by Loop AI and refused to produce to Loop AI on privilege grounds. *See* Dkt. 353 at 64-72.  Instead, for unspecified reasons, the Magistrate gave AW-USA a "second chance" by not requiring it to produce a privilege log for this production at all. *See id.*  Then, despite the fact that Loop AI was entitled to production of these documents beginning on June 15, 2015, the Magistrate withheld all document in camera for 9 months, and ultimately ordered production of substantially redacted documents that provide less information than event the most deficient of privilege logs would provide. *See, e.g.,* Dkt. 909-910.

input.  To the extent such input was received and Order 894 may have been issued following

communications between the District Court and the Magistrate, whose content is unknown to

Loop AI, Loop AI is entitled to be afforded an opportunity to know and address what

information the Magistrate provided.  The Magistrate is statutorily required to make her

recommendations to the Court on notice, so that the parties can respond and/or address them, as

the case may be.  That information is critical to Loop AI's ability to defend against the threat of

such a nuclear aggregate sanction based on the Magistrate's Orders.  Loop AI had no reason to

know or believe that having the Court pushed for a very stringent discovery and pretrial schedule

to begin trial in September, the Court had suddenly put off the trial because it was considering

whether the aggregate of the Magistrate's Orders would warrant a terminating sanction.[6]

Order 894 relies almost entirely on the Magistrate's Orders.  But those Orders are not a

reliable basis on which the Court can find Loop AI engaged in "obstructionist discovery"

conduct or refused to comply with the Court's Orders.  All of the Magistrate's Orders result from

proceedings in which Loop AI was allowed to make no record, was given no hearing, and was

generally prohibited from submitting the briefing and evidence with the due process, the Federal

Rules and the Civil Local Rules guarantee. Many of the Magistrate's Orders listed include *sua

sponte* arguments (or sanctions) of the Magistrate made for the first time in the order.  All but

one of the Magistrate's Orders listed in Order 894 were issued without a duly noticed motion and

briefing that Loop AI was entitled to submit under Civil Local Rule 7.  The procedural

deficiencies that permeate the Magistrate's Orders mean the Court would violate Loop AI's due

process rights if it relied on those Orders to issue any further sanctions of any kind.  These

flawed procedures also have adversely affected the consistency (and, therefore, the reliability) of

the Magistrate's rulings.  Thus, for example, the Magistrate denied Loop AI's request for an

order requiring Almawave USA to produce a privilege log regarding the production made by

non-party Orrick (which production Almawave USA intercepted and sequestered) in response to

discovery served by Loop AI.  As a result, no log was ever produced.  No sanction has been

---

[6] *See, e.g., In re United States*, 441 F.3d 44, 68 (1st Cir. 2006) ("Of particular concern is the decision by the district court to delay the trial, apparently in order to reserve the power to dismiss the indictment….").

imposed for this failure.  That outcome stands in stark contrast to the harsh sanction imposed on Loop AI by the Magistrate in the Blanket Waiver Order when Loop AI *did* produce a privilege log, but according to the Magistrate the log was produced too late and was deficient. To sanction Loop AI for being late in producing a privilege log while giving Almawave USA a free pass to produce no log at all for 600 documents that were already determined to be responsive, without any legal basis for such disparate treatment is, respectfully, patently unfair.  In addition, the Court has never issued any *sua sponte* (or other) orders to confirm the timeliness and validity of any other party's privilege log.  The Court has never harshly sanctioned any defendant in this case, sua sponte (or otherwise), for the late, at times non-existent, and certainly deficient logs that have been produced.   The inconsistency in the way the Magistrate addressed substantially similar issues like this makes her rulings unreliable.  Respectfully, the Court cannot appropriately rely on such a body of work, resulting from defective procedures that are not sanctioned by the Federal Rules.

Reliance on the Magistrate's Orders for purposes of imposing a new sanction also would be improper because it would alter the procedural posture of the Magistrate's Orders, by suddenly turning them into some sort of report and recommendation under Rule 72(b), even though none of those orders are such.  Had the Magistrate considered her orders Rule 72(b) report and recommendations she was required to so notify Loop AI, such that Loop AI could have appropriately moved for relief under the much more expansive provisions for appealing such a ruling, and obtained a full *de novo* review of the record, including by requesting evidentiary hearings, which are clearly required, since the Magistrate never permitted the creation of a proper record, and never held hearings on any type as to any of the orders listed in Order 894.  The Court cannot circumvent the procedural protections available to parties when a district court makes a referral to a magistrate seeking a report and recommendation, by taking a stack of the Magistrate's Orders towards the end of a case and aggregating them for the purpose of imposing a final dispositive sanction.  And even if the Court disregards the procedural irregularities that permeate the Magistrate's Orders and treats all of them as a reliable basis for findings of fact, the record those Orders provide does not support the assertions made in Order

894.  Loop AI did not commit the pervasive obstructions alleged in Order 894 – Loop AI's conduct has been entirely appropriate, and from the inception of this case Loop AI acted promptly to seek the Court's guidance on difficult discovery questions raised by overbroad and abusive discovery requests of AW-USA.  Loop AI repeatedly moved for leave to file a protective order, which Loop AI was entitled to file under the Federal Rules.  Instead, the Magistrate, applying her modified rules of discovery procedure, prohibited Loop AI from moving, and then suddenly imposed multiple sanctions, without briefing, a record, or a hearing, and in several cases *sua sponte*, or based on the Magistrate's own arguments.

Order 894 directs Loop AI's undersigned counsel to show cause why "terminating sanctions are not warranted" "in light" of what the Court describes as "pervasive and repeated disregard for the Court's authority and obstructionist discovery conduct."  Dkt. 894 at 3.  Order 894 and the orders it lists contain no findings that Loop AI engaged in bad faith or willful misconduct, or that Loop AI deceived (or attempted to deceive) the Court, or that Loop AI has prejudiced any Defendant's ability to present its defense.  The gravamen of the charge leveled in Rule 894 appears to be that Loop AI's conduct somehow caused the Magistrate do more work than the Court believes should have been required.[7]  But Loop AI has found no precedent upholding the imposition of terminating sanctions when the only prejudice identified by the Court was suffered by the Court itself, and consisted solely of the Court being required to spend more time than the Court deemed appropriate for a particular case.

Finally, issuance of any sanction against Loop AI – certainly, issuance of terminating sanctions – would be inequitable because anything Loop AI stands accused of doing is trivial in comparison to the misconduct of its opponents.  The Italian Almaviva Defendants committed the most egregious discovery violation imaginable, by refusing to provide any merits discovery, and have never been the subject of any show cause proceeding.  All of the Defendants, and their counsel, have so far managed to get away with the discovery equivalent of murder, because the Magistrate allowed them to provide either no discovery, or clearly deficient discovery, and

---

[7] "As a result of counsel's conduct, the Court has expended a grossly disproportionate and unreasonable amount of time and resources on this case."  Order 894 at 1.

declined to allow Loop AI to file motions to compel, which Loop AI was entitled to file under the Federal Rules.  The Magistrate was very lenient with the Defendants in the few instances when she did rule on some of their discovery violations.  For instance, despite the fact that the Gatti Defendants produced virtually no discovery until mid-May 2016, on July 4, 2016, a Federal Holiday, the Magistrate took the time to issue four orders that day, three of which were against Loop AI, and one of which was a *sua sponte* order in which the Magistrate found that she would not sanction the Gatti Defendants for their admitted discovery misconduct.  Similarly, Mr. Wallerstein, counsel for the Almaviva Defendants, admitted on the record to having lied to the Court and a sister court, which had the effect of interfering with Loop AI's ability to get a discovery matter heard before that court, in New York, where the matter belonged.  Mr. Wallerstein also used viciously false accusations of violence against Loop AI's counsel in an ECF notice and disseminated those false accusations to the press along with a deposition transcript that he knew to be false, without any consequence, let alone punishment.[8]  He submitted the same false transcript to the Ninth Circuit (*after he had admitted on the record that it was false by filing a corrected version with this Court*), without consequence, even though he sent copies of his filings to both the District Judge and the Magistrate.  He has engaged in extensive other misconduct throughout the course of depositions and engaged in various other misconduct.  Yet, neither the Magistrate nor the Court have ever imposed any sanction for any of these serious violations, let alone issued orders to show cause for terminating sanctions.  Respectfully, given this record it would be wholly inequitable to single out Loop AI for any type of further sanction.

Loop AI did not engage in the misconduct described in Order 894.  There is no factual or legal basis for the Court to threaten terminating sanctions, much less enter them.  Loop AI respectfully requests that the Court vacate Order 894 or, in the alternative, that Loop AI be allowed to present its evidence and call witnesses at an evidentiary hearing, so that it can have the ability to put forward the proof that the Magistrate never allowed Loop AI to present.  Loop

---

[8] *See, e.g., Forte v. Cty. of Merced*, No. 1:11-cv-0318 AWI BAM, 2015 U.S. Dist. LEXIS 73960, at *5 (E.D. Cal. June 5, 2015) (admonishing Plaintiff against the use of argument and punitive language in docket titles).

AI also requests that the Magistrate's communications with the presiding District Judge regarding any aspect of this case, including regarding counsel in this case, be placed on the record so that Loop AI can have a fair opportunity to respond to them.

**SUMMARY OF ORDERS LISTED IN ORDER 894**

**Magistrate's Blanket Waiver Order Not Yet Complied With** —Order 894 identifies only one Order that Loop AI has not complied with –the Magistrate's Blanket Waiver Order (Order 680), which is the subject of Loop AI's Petition for a Writ of Mandamus currently pending in the Ninth Circuit.

**Magistrate's Prior Sanction Orders Complied With And Identified As Having Caused The Court To Expend Time** —Order 894 identifies six categories of the Magistrate's Orders described as requiring "multiple orders to obtain compliance" or evidencing Loop AI's "disregard for the Court's authority."

**Orders by Presiding District Judge** —Order 894 identifies the following two matters before the presiding District Judge: (1) an Order dated April 29, 2016 directing Loop AI's counsel to show cause for including single-space bullet points in one part of its opposition to a motion to dismiss and for submitting a deficient declaration (Order 633), and (2) Loop AI's counsel's letter of July 5, 2016, notifying the Court that despite best efforts it was unable to complete and file by July 4, 2016 all of the responsive briefs to the numerous summary judgments and related motions concurrently filed by the Defendants, and filing some of the briefs with a delay of 1 and 2 days.

**ARGUMENT**

I.     **Order 894 Violates Loop AI's Due Process Rights.**

        ***A. Order 894 Was Issued Without Notice, Briefing and a Hearing --*** Loop AI respectfully submits that Order 894 was improvidently issued because it makes statements cast as findings, to the effect that Loop AI or its counsel have engaged in "obstructionist discovery conduct and persistent refusal to follow court orders." By publicly making statements of such serious misconduct, the Court violated the due process rights of Loop AI and its counsel, because the Court should have given Loop AI and its counsel notice and an opportunity to be heard

*before* making the statements recited in Order 894.  The Court's assertion that Loop AI engaged in "obstructionist conduct" is not borne out by the facts.   To the contrary, Loop AI is the only party in this case that has complied in all material respects with its discovery obligations.  None of the other parties even came close.  The serious charges of "discovery obstruction" contained in Order 894 are based solely on Magistrate's Orders.  All of the Magistrate's Orders cited in Order 894 were issued without a hearing and without proper briefing, and some even involved the issuance of sanction orders *sua sponte*, in violation of both the Federal Rules and Civil Local Rules.  Accordingly, and for the reasons more fully set forth above and below, The Magistrate's Orders are not a basis upon which this Court validly could find that Loop AI engaged in "obstructionist discovery conduct" causing the Court to "expend[] a grossly disproportionate and unreasonable amount of time and resources on this case."

**B.  To The Extent Order 894 Is Based on Communications Between the Magistrate and the District Judge Loop AI Is Entitled to An Opportunity to Respond --**  The record reflects that the Magistrate has been consulting with the District Judge about issues pending in this case.  *See, e.g.,* Dkt. 335 at 4 (The Magistrate: "So I not only read the papers and Judge Gilliam's Order on the jurisdictional motion to dismiss, I also had a discussion with him.  So I have a fairly good idea of what he's thinking."); Dkt. 415 at 1 ("Having reviewed the record of the discovery disputes in the above-titled action, and having conferred with Magistrate Judge Donna Ryu"); Dkt. 795 at 13 ("after consultation with Judge Gilliam").  The content of these communications between the Magistrate and the District Judge has not been shared with Loop AI.  This is directly relevant here.  For instance, in Order 795, which is one of the Magistrate's Orders listed in Order 894, the Magistrate indicated she consulted privately with the presiding District Judge.  Without knowing what information the Magistrate provided privately to the District Judge about Order 795, or the other Orders listed in Order 894 (all but one of which are orders the Magistrate), or other matters relevant to this case, Loop AI cannot effectively respond to the assertions that evidently led to Order 894.   Because the Magistrate has acknowledged communicating privately with the District Judge about issues pending in the case, Loop AI has effectively been deprived of its right to have the Magistrate's Orders reviewed, because Loop AI does not know what else

may have been discussed privately between the two judges and has not had an opportunity to respond to it.  This makes it especially inappropriate for the Court to rely on those Magistrate's Orders as a basis for the issuance of sanctions.

   ***C.  Order 894 Fails to Provide Particularized Notice As to the Specific Misconduct And Specific Legal Authority that the Court Has Relied On in Support of Its Order or Which The Court Believes Supports Any Type of Sanction Against Loop AI.[9]***   Order 894 directs Loop AI to discuss "why terminating sanctions are not warranted under Rule 37(b) and the court's inherent authority."  Loop AI respectfully submits that this general directive, followed by a bullet point listing of prior and completed sanctions or other orders, makes it impossible for Loop AI to know precisely what legal and factual basis the Court may believe it has for the issuance of terminating sanctions.   The Court's reference to Rule 37(b) provides inadequate guidance because Rule 37(b) contains an extensive, complex series of provisions.   In addition, the case law addressing both Rule 37(b) and a court's  "inherent authority" is extremely extensive and Order 894 cites none of it.  This makes it impossible for Loop AI to determine from Order 894 exactly what the Court may have in mind.  The Court similarly does not identify any particular facts that could warrant a sanction under either Rule 37 or the court's "inherent authority."  The Court also gives no indication in Order 894 of the nature or extent of the sanctions it may be considering.  For instance, all but one of the Magistrate's Orders listed in Order 894 resulted from motions filed solely by Defendant Almawave USA regarding discovery sought solely by that particular Defendant.  The Court does not explain whether it is considering terminating sanctions solely in respect of Defendant Almawave USA, or also in respect of other Defendants that did not seek or pursue the discovery at issue in the cited Magistrate's Orders.  The Court also does not explain whether it is considering terminating sanctions solely as to a particular claim or claims made in the Complaint, or as to the entire Complaint. The Italian Almaviva Defendants never sought any discovery from Loop AI of any type.  *See, e.g.,* Dkt. 807 at 4:25-

---

[9] The Ninth Circuit has held that particularized advance notice of exactly what conduct is alleged to be sanctionable must be given before a court can levy sanctions upon a party. *Foster v. Wilson*, 504 F.3d 1046, 1052 (9th Cir. 2007); *In re Deville*, 361 F.3d 539, 549 (9th Cir. 2004); *Cole v. United States Dist. Court for the Dist. of Idaho*, 366 F.3d 813 (9th Cir. 2004).

27.  The Italian Almaviva Defendants did not move, and did not join into any of the motions leading to the Magistrate's Orders listed in Order 894.  There could be no basis for sanctions in favor of the Italian Almaviva Defendants who did not even engage in discovery of any type, let alone move to compel or for sanctions.  But Order 894 does not indicate the Court's thinking on that issue, and accordingly Loop AI is unable to effectively address the issue.  Out of all the orders listed in Order 894, the Italian Almaviva Defendants were only involved in a single non-discovery matter addressed in Order 633.  Order 633 chastises Loop AI for having filed a brief that included a few single spaced bullet points, and that attached a declaration that the Court found deficient.  *See* Dkt. 633.  Loop AI responded to Order 633, and the Court found Loop AI had cured the issues identified in Order 633 in respect of the declaration.  Dkt. 726 at n. 6.  This would leave the single-spaced bullet points as the only remaining issue in Order 633, to the extent not resolved by Order 726.  Even if the bullet point issue was still deemed outstanding, respectfully the issuance of terminating sanctions would be entirely inappropriate in respect of a minor infraction like that.  The issues addressed in Order 633 were the only issues ever raised by the Italian Almaviva Defendants against Loop AI, and respectfully there would be no basis in the law or in the facts for terminating Loop AI's case against those two parties.  This is especially the case in light of the very serious discovery violations those two parties committed by refusing to provide any merits discovery to Loop AI.  *See* Dkts. 897, 913. Instead, it is Loop AI, and not vice-versa, who is entitled to dispositive sanctions against the Italian Almaviva Defendants.  *Id.*

Similarly, the Gatti and IQSystem LLC defendants (the "Gatti Defendants") did not move for, or join in, any of the motions leading to any of the Orders addressed in Order 894.  Loop AI has provided extensive discovery to those parties, as well as the other Defendants.  *See, e.g.,* Dkt. 807.  There would be no legal or factual basis to terminate Loop AI's case against the Gatti Defendants, particularly where those Defendants have committed egregious discovery violations that have not been cured.  The Gatti Defendants did not even **begin** to make the bulk of their production until May 2016 – well after fact discovery had closed.  Defendant IQSystem Inc. ("IQS-INC"), in turn, was the movant in respect of only one of the orders identified in Order 894 -- "Trade Secrets Disclosure."  *See* Dkt. 894 at 2.  Order 331 is not a discovery order, but instead

is an order enforcing Section 2019.210 of the California Code of Civil Procedure.  *See* Dkt. 331.

Loop AI complied with Order 331 and filed the disclosure ordered by the Magistrate.  *See* Dkt.

372.  Loop AI separately produced in response to discovery requests all documents regarding its

trade secrets at issue.   Loop AI's production relating to its trade secrets was never challenged

and never addressed by the Magistrate.  The Magistrate had no basis to know what discovery

Loop AI provided on its trade secrets, because that issue was never before her.  The Magistrate

was never asked to, and did not, review the production by Loop AI containing Loop AI's trade

secrets.  Rather, IQS-INC's motion leading to Order 795 related exclusively to the sufficiency of

Loop AI's statement under Section 2019.210, filed pursuant to Order 331.  Dkt. 459.  The

Magistrate found Loop AI's statement filed at Dkt. 372 insufficient and sanctionable for the first

time in Order 795, which is legally improper under controlling Ninth Circuit law.[10]  *See* Dkt.

795.  But the Magistrate failed to cite any legal authority supporting the proposition that a party

can be sanctioned at all, let alone sanctioned with dismissal of its federal case, simply for failing

to sufficiently meet the requirements of a California rule of civil procedure.  Thus, even if

Section 2019.210 were applicable in this federal proceeding (Loop AI submits it is not), Loop AI

cannot properly be subject to terminating sanctions because the Magistrate suddenly held Loop

AI's Section 2019.210 statement was deficient.[11]  Order 331 was not an order to provide

discovery, but was an order to comply with a California state rule of civil procedure, with which

Loop AI did comply by providing a "thorough and complete" trade secret identification.  *See*

Dkt. 372, Order 331 at 7:8-9.  In Order 331, the Magistrate simply stated that "any future

amendment to the disclosure will only be permitted upon a showing of good cause."  *Id.*  The

Magistrate never stated that if she found that Loop AI's trade secret disclosure unsatisfactory she

would find that Loop AI is sanctionable under Rule 37(b)(2)(A) or under the Court's inherent

authority.  The first time the Magistrate found Loop AI's trade secret statement deficient was in

her sanction order.  The Ninth Circuit has held such a process to be improper.[12]  A further

---

[10] *See, e.g., In re Rubin*, 769 F.2d 611 (9th Cir. 2014).

[11] As set forth in Loop AI's Rule 72 appeals from Orders 331 and 795, Section 2019.210 of the
California Code of Civil Procedure is not applicable in a federal proceeding.

[12] *See In re Rubin*, 769 F.2d 611, 616 (9th Cir. 1985) ("We are troubled by the findings that

sanction relating to Order 795 would also be inappropriate for other reasons, further discussed below.  Even if Order 795 could be the basis for a further sanction, the Court does not explain why, or in respect of what claims, and under what legal authority the Court could re-open the Magistrate's Order 795 to impose a sanction, given that the appeals over Order 331 and 795 have been already denied or "deemed denied" by the Court pursuant to Local Rule 72-2.

The Court's listing in Order 894 of two broad potential sources of authority (Rule 37(b) and inherent authority) and a series of bullet points summarily identifying certain of the Magistrate's Orders, fails to provide the particularized advance notice that is required before a sanction of any type can be imposed.  Loop AI has no idea, and no way to guess, how the Court believes any of the Orders it listed, or the cryptic comments placed next to the bullet points, support the nuclear sanction proposed in Order 894.

Loop AI provides below its response as to why there is no basis to enter terminating sanctions against Loop AI under any authority on the basis identified by the Court: that Loop AI's counsel has allegedly caused the Court to "expend[] a grossly disproportionate and unreasonable amount of time and resources on this case," Dkt. 894 at 1, and "in light" of Loop AI's's counsel's alleged "pervasive and repeated disregard for the [Magistrate's] authority and obstructionist discovery conduct." Dkt. 894 at 3.  To the extent the Court finds this response to be "off-point," Loop AI respectfully requests that the Court provide it the particularized notice to which Loop AI is entitled, with reference to the specific legal authorities and factual predicates that the Court wishes Loop AI to address.

## II.   Neither The Record Cited By The Court Nor Any Other Part Of The Record Supports The Court's Characterization Of Loop AI's Conduct.

The assertions made in Order 894 are incorrect.  Even if the Magistrate's Orders cited in Order 894 provided a reliable basis on which to make findings of fact (they do not), those orders do not support the Court's characterization of Loop AI's conduct set forth in Order 894.

The Court asserts in Order 894 that Loop AI has engaged in a "documented history of

(continued)

relate to the sufficiency of Rubin's submissions in response to court orders… The first time the court indicated that these submissions were insufficient was when it entered the order imposing sanctions.").

obstructionist discovery conduct and persistent refusal to follow Court orders notwithstanding repeated warnings."  The Court further asserts that "[m]ultiple orders were required to obtain compliance on several issues, and in many instances [Loop AI] simply continues to refuse to comply with the Court's orders and the Federal Rules."  Finally, the Court asserts that because of the conduct of Loop AI's counsel, the Court "expended a grossly disproportionate and unreasonable amount of time and resources" on this Action.  The Court cites examples in support of these assertions, consisting virtually entirely of Orders entered by the Magistrate accompanied in some cases by cryptic summaries of those Orders.  Based on this rudimentary level of explanation Loop AI cannot know what led the Court to conclude that the cited orders supported the Court's assertions of misconduct.  But those orders and the remainder of the record do not support the Court's assertions.

1.     **No "obstructionist discovery conduct" by Loop AI** -- Loop AI is the only party to this Action that has provided all the discovery required of it under the Federal Rules.  In addition to providing over 64,000 pages of documents, Loop AI has provided over 30 hours of deposition testimony.  *See, e.g.,* Dkt. 807, 889-910.  The Italian Almaviva Defendants refused to provide *any* merits discovery.  The Gatti and IQSystem Defendants produced virtually nothing and the majority of their materially deficient production did not even begin until May 2016, long after the discovery cut-off.  AW-USA's counsel effectively sabotaged the jurisdictional depositions of Almaviva's officers through improper conduct.  *See* Dkt. 889; 897; 914.  On this record it is strange indeed to single out Loop AI as having engaged in obstructionist discovery conduct.  Even if Loop AI *had* been obstructionist, Loop AI has produced all and more of the discovery it was asked for.  In addition, the Court necessarily should have issued an Order to Show Cause to all Defendants based on their extensive and documented discovery misconduct.  The fact that the Magistrate did not allow Loop AI to filed discovery motions that Loop AI was entitled to file under the Federal Rules because of unspecified reasons does not make the Defendants' conduct proper, as their discovery abuse is fully documented.  Loop AI began to bring that misconduct to the Court's attention in September 2015, with extensive supporting evidence.  *See, e.g.,* Dkt. 914 at n. 6.

Even setting aside the procedural deficiencies that taint the Magistrate's Orders cited in Order 894, those orders do not support a finding that Loop AI's discovery conduct was obstructionist.  Instead the record shows Loop AI repeatedly tried to move for a protective order as permitted to do so by the Federal Rules and made good faith objections to various of AW-USA's abusive discovery requests; when the parties were unable to resolve the objections, Loop AI did its best to explain its position within the procedural constraints improperly imposed by the Magistrate; and on those occasions when the Magistrate's ruled against it, Loop AI complied with those orders.  That's not a history of obstructionist conduct.  That's a history of ordinary course litigation.

   **2.      *No "persistent failure to follow Court orders"* --** Order 894 identifies only one of the Magistrate's sanction orders that Loop AI has not complied with – the Blanket Waiver Order. Loop AI has determined in good faith that this course of action is necessary to preserve and not waive its attorney-client privilege and work-product immunity, pending the Ninth Circuit's review of Loop AI's Mandamus Petition.  In addition, Loop AI is unable to comply with the Blanket Waiver Order because the Order does not even identify any particular discovery request that is covered by it or the scope of documents that is encompassed by that order.  If Loop AI complies with the Blanket Waiver Order it will have waived the privileges associated with those materials and thereby forfeited a right that the Ninth Circuit may find valid.  In addition, Loop AI has asked that the Magistrate exercise her discretion in deferring enforcement of the Blanket Waiver Order until the Ninth Circuit rules on Loop AI's Petition for Mandamus, and the Magistrate has never indicated she would not do so.  To the extent the Magistrate has communicated privately to the District Judge about this issue, and Order 894 is intended to mean that the Court will not exercise its discretion to await the Ninth Circuit ruling on the Blanket Waiver Order, Loop AI respectfully requests that the Court so notify Loop AI so that Loop AI can immediately address the issue with the Ninth Circuit.  Loop AI respectfully submits that in the light of the Ninth Circuit's briefing Order it would should be unnecessary to burden the Ninth Circuit with an emergency motion and that it would be in the interest of both the parties and this Court to await, and give the Ninth Circuit the opportunity to rule on an important issue.

Loop AI also is unable to comply with the Blanket Waiver Order because the order is too vague and does not even identify any specific discovery request or its temporal scope that the Court believes to be subject to the order.  Respectfully, this record comes nowhere close to satisfying the stringent standard that must be satisfied before terminating sanctions may be issued.

*3.  No continuing refusal to comply with the Court's orders and the Federal Rules.*
Nothing in the record cited by the Court plausibly supports the assertion that Loop AI "continues to refuse to comply with the Court's orders and the Federal Rules."  Respectfully, Loop AI has no idea what the Court possibly could have had in mind when it made that assertion.  As indicated above, the only order of the Magistrate cited by the Court that Loop AI has not complied with is the Magistrate's Blanket Waiver Order, because it is pending mandamus review.  The Court also references its own prior show cause order, but that cannot support a finding of continuing non-compliance because since the order was issued, Loop AI has complied with the Court's admonitions regarding use of single-spaced bullet points and use of affidavits to introduce documents into evidence.  The Court also refers to the fact that Loop AI's responses to the summary judgment motions brought by some of the Defendants were late – by a few hours in one case and less than a day in the other case.  Respectfully, this is not the stuff that terminating sanctions are made of and does not reflect continuing refusal to comply with orders and rules.  As the Court is aware, the Court refused Loop AI's request for a modest extension of a few weeks to respond to four simultaneously filed summary judgment and related motions, and a further sanctions motion served to Loop AI the day after all of the summary judgment motions.[13]  It was crystal clear from the record that the defendants intentionally timed their service and filings against Loop AI, and then opposed its request for extension, to reduce the amount of time that Loop AI would have available to respond to significant and voluminous motions.  Loop AI immediately sought a reasonable extension to be allowed sufficient time to respond to mountains of simultaneous filings.  *See* Dkt. 753.  Loop AI's request for an extension was made in good faith, because the number of filings required much more time than was available under the Local

---

[13] Although this motion was filed on the record later, Loop AI was legally obligated to immediately attend to it.

Rules to prepare appropriate responses to all pending matters. Under controlling Ninth Circuit precedent, Loop AI was entitled to the reasonable extension it requested. *See Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1258-59 (9th Cir. 2010). Loop AI was unable to meet the deadlines in respect of some of the briefs only because it was materially impossible to meet them, in light of the volume of work required. When it became apparent the night of July 4, 2016 that not all filings could be accomplished that day, Loop AI immediately advised the Court. No reasonable court would look at the letter that Loop AI's counsel filed at Dkt. 788 and conclude that Loop AI was making its own rules. Loop AI acted in good faith in immediately notifying the Court and completed its filings promptly. No party was affected by the delay and all Defendants were able to file their replies without issue. If the court would like statements "under oath" by each member of Loop AI's legal team, Loop AI can certainly provide that. The Court's refusal to allow a reasonable extension of the filing deadline was inconsistent with Ninth Circuit law; as a result, the very modest delays in Loop AI's filings cannot appropriately form the basis for *any* sanctions, let alone terminating sanctions. Furthermore, under Ninth Circuit law, the Court would still be required to conduct its own independent review and analysis of a summary judgment motion and could not simply grant a motion as unopposed, even where no brief is filed at all.

The Court states in Order 894 that Loop AI "refuses to amend" its responses to the interrogatories regarding Order 640 (the "Interrogatory Order") which relates to interrogatories propounded by AW-USA. To the extent the Court has that view, it is incorrect. Loop AI has complied with the Interrogatory Order. The responses that Loop AI has provided are as complete as Loop AI is able to make them. Loop AI has verified that its responses are complete. The history related to the Interrogatory Order is reflective of the way the Magistrate's unusual procedures (and not anything Loop AI has done) have made the discovery process in this case chaotic. Loop AI in no way obstructed providing a response to Interrogatories, and instead immediately moved for leave to file a Rule 26 motion for a protective order in July 2015, so that it could obtain clarification of what it was required to provide. This was necessary because the interrogatories at issue are improperly broad. It is well established that a party cannot use an

1   interrogatory to demand the entirety of its opponent's case.  But the Magistrate repeatedly

2   refused to allow Loop AI to even file, much less pursue, its motion for a protective order.  *See,*

3   *e.g.,* Dkt. 151, 248.  Nonetheless, Loop AI has fully complied with the Magistrate's Orders and

4   has provided all the information in its possession that were responsive to AW-USA's

5   Interrogatory Order.  AW-USA has not identified anywhere any information that it is allegedly

6   missing.  Loop AI acted in good faith and simply does not have any other information that it

7   could possibly give in response.  Respectfully, nothing about this sequence of events justifies the

8   imposition of *any* sanctions on Loop AI, much less terminating sanctions.

9       ***4.  Loop AI's Conduct Did Not Cause the Court to Expend An Unreasonable Amount***

10  ***of Time on This Case.***  The Court asserts that Loop AI caused the Court to expend an

11  unreasonable amount of time in this case because "[m]ultiple orders were required to obtain

12  compliance on several issues, and in many instances Plaintiff simply continues to refuse to comply

13  with the Court's orders and the Federal Rules."  Respectfully, that turns the record on its head.  From

14  the filing of this Action to August 12, 2016, the Defendants, led by AW-USA -- and not Loop AI --

15  who filed 160 motions and other creatively titled applications for affirmative relief against Loop

16  AI.[14]  Thus, on average the Defendants have filed one motion or application for relief against

17  Loop AI every 2 days for a period of 15 months (and just 368 work days).  The Defendants were

18  able to file so many applications for relief primarily as a result of the Magistrate's individual

19  procedures, which allow quick-trigger 1-page filings.  Thus, if the Magistrate expended lots of

20  time it was not because of Loop AI.  Had the Magistrate allowed regular discovery motions to be

21  filed as permitted by the Federal Rules of Civil Procedure, most of the issues could have been

22  immediately resolved in one go, on a proper record, with proper briefing, with proper evidentiary

23  submissions, and with a hearing.  Indeed, counsel for the Gatti Defendants also addressed and

---

24  [14] *See, e.g.,* Dkt. Nos. 112, 128, 172, 192, 211, 219, 301, 303, 337, 379, 418, 419, 428, 443, 451,
25  462, 481, 488, 495, 496, 497, 498, 518, 519, 521, 522, 523, 531, 545, 546, 547, 555, 584, 585,
    597, 610, 630, 679, 691, 694, 714, 715, 769, 831, 840, 858, 417, 626, 735, 799, 857, 77, 264,
26  762, 421, 98, 404, 341, 342, 343, 472, 158, 221, 202, 239, 257, 468, 727, 288, 298, 869, 168,
    801, 740, 38, 59, 60, 39, 62, 196, 469, 870, 738, 217, 225, 253, 380, 383, 392, 487, 718, 848, 78,
27  287, 672, 180, 294, 344, 598, 676, 724, 808, 817, 822, 815, 835, 85, 35, 73, 197, 205, 216,
    241, 244, 295, 360, 363, 366, 386, 603, 736, 737, 865, 874, 33, 118, 138, 206 207, 232, 255, 309,
28  340, 395, 416, 424, 439, 441, 446, 447, 459, 460, 494, 567, 568, 580, 587, 602, 607, 645, 729,
    733, 734, 745, 794, 810, 812, 871.

concurred on this point, and expressed so to the Magistrate.  *See* Dkt. 335 at 130.  But in almost

every instance the Magistrate refused to allow that.  The Magistrate also put pressure on Loop AI

at the very first appearance to drop one of its discovery motion against a New York nonparty, and

refile it before her, even though that motion was already scheduled to be heard by another Judge in

New York and could have been resolved by the end of July 2015, without any work by the

Magistrate.  Instead, as directed by the Magistrate, Loop AI had to re-file everything in front of her,

leading to Order 175, listed in Order 894, and other motions, that would never have been in front of

the Magistrate and that a New York court was perfectly willing to immediately deal with and had

already scheduled to hear on July 27, 2016, without any burden on this Court.  The fact that Order

175 is included in Order 894, therefore, is especially difficult to understand.  If the Magistrate wanted

to limit her workload she should have left Loop AI to have its motion heard as scheduled in New

York, as Loop AI expressly sought to do.   The Magistrate also acted *sua sponte* on a number of

occasions, further increasing her workload in a way not fairly attributable to Loop AI.

### III.   There is No Legal or Factual Basis for the Court to Threaten To Sanction Loop AI, Let Alone Impose a Dismissal Sanction.

There is no basis in the law or in the facts to punish Loop AI, let alone punish it with a

dismissal sanction.  "The sanction of dismissal should be imposed only in extreme

circumstances."  *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 910 (9th Cir. 1986).  No

extreme circumstances are present here, and other than the Blanker Waiver Order the orders

listed in Order 894 are not outstanding, but instead are completed orders.   A terminating

sanction is also inappropriate because Loop AI has never acted willfully or in bad faith, and

nothing Loop AI has done has affected the matters in controversy in such a way as to interfere

with the rightful decision of the case.  *See Id.*   Imposing a terminating sanction on Loop AI is

inappropriate for many reasons.   Loop AI addresses a few of those reasons below.

### 1.   The Court Cannot Aggregate Past Sanctions or Conduct to Impose A Bigger Sanction Than Was Previously Imposed --

All but one of the Orders listed in Order 894,[15] are

Magistrate's Orders, many of which are already themselves completed sanctions orders.  It is

---

[15] The only Order of the District Judge listed in Order 894 is Order 633.  Loop AI addresses this Order in the accompanying declaration of counsel.

1   impermissible for the Court to look to past orders or to "accumulate[e] … all perceived

2   misconduct" for the purpose of imposing an enhanced form of "retribution in the form of a

3   massive sanction."  *In re Yagman*, 796 F.2d 1165, 1183 (9th Cir. 1986).  Moreover, the Court

4   does not explain what misconduct in particular would justify "terminating sanctions."  "The

5   district court may not use earlier incidents of misconduct 'as a fulcrum to elevate the final

6   incident of misconduct to a level that would allow dismissal of the action with prejudice' when

7   the final incident was 'a different kind of misconduct.'"  *Faerfers v. Caviar Creator, Inc.*, 359 F.

8   App'x 739, 741-41 (9th Cir. 2009).  *See also Nat'l Med. Enters.*, 792 F.2d at 910 (same) (court

9   cannot aggregate orders that relate to different issues).

10           **2.      The Court Is Not Authorized to Suddenly Treat Rule 72(a) Pretrial Orders of**

11   **the Magistrate as Rule 72(b) Reports and Recommendations –** As discussed above, all but

12   one of the orders listed in Order 894 is a non-dispositive pretrial order issued by the Magistrate

13   pursuant to Fed. R. Civ. P. 72(a).  None of the Magistrate's Orders at issue were issued as Rule

14   72(b) reports and recommendations.[16]  This distinction is critical.  If the Magistrate considered

15   her rulings to be reports and recommendations under Rule 72(b), she was legally required to so

16   notify Loop AI and to so write in her ruling, because in that case Loop AI would have been

17   entitled to file and seek a different type of review.   *See* Civ. L.R. 72-3, Fed. R. Civ. P. 72(b); 28

18   U.S.C. § 636(b)(1)(B)-(C).  Specifically, Local Rule 72-3 would have entitled Loop AI to seek

19   review through a fully noticed motion, and the Court would have been required to review any

20   report and recommendation *de novo*.  *See id.*  Here, such *de novo* review would have been

21   substantial and would have required not only the full briefing contemplated by Local Rule 72-3,

22   but also a full hearing, because the Magistrate never allowed either regular briefing and/or a

23   hearing on **any** of the Magistrate's Orders listed in Order 894.  The only regularly noticed

24   motion that resulted in one of the orders listed in Order 894 was IQS-Inc.'s trade secret motion,

25   as to which there was no hearing.  In addition Order 795, which resulted from that motion,

26

27   [16] In cases where Magistrate Judge Ryu has issued a Rule 72(b) Report and Recommendation,
     she has specifically so notified the parties.  *See, e.g., Bay Area Painters & Tapers Pension Tr.*
     *Fund v. Golden Vas Painting*, No. C-10-02923 CW (DMR), 2011 U.S. Dist. LEXIS 141309, at
28   *1 (N.D. Cal. Nov. 7, 2011).

contains substantial *sua sponte* arguments raised for the first time by the Magistrate in the order itself.  Because each of the Magistrate's Orders listed in Order 894 was issued as a non-dispositive pretrial order, Loop AI appealed the Magistrate's Orders as such, under Local Rule 72-2 and Fed. R. Civ. P. 72(a).  Loop AI's appeals of the Magistrate's Orders have all been summarily denied by the District Judge, or been deemed denied by operation of Local Rule 72-2.  That appeal procedure, and the scope of the Court's review, was improper if those orders were implicitly being deemed Rule 72(b) reports and recommendations.  Loop AI is not aware of any authority that allows the District Judge to re-open its denials, or deemed denials, of various of the Magistrate's Rule 72(a) Orders for the purpose re-visiting any sanction imposed (or not) in the Magistrate's Orders.  To treat the Magistrate's Orders as open to revising the type of sanction they imposed, would circumvent the careful procedural protections of several provisions that do not allow this type of procedure.  Because this Court acts as an appellate court in respect of the Magistrate,[17] this Court cannot, "as an original matter" re-assess the Magistrate's sanction for the purpose of enhancing it with a terminating sanction.  *See, e.g., Nat'l Med. Enters.,* 792 F.2d at 910; *In re Rubin*, 769 F.2d 611, 615 (9th Cir. 1985).

> **3.**     **The Court Has Never Warned Loop AI that It Was Contemplating The Imposition of A Terminating Sanction** – A court contemplating the imposition of sanctions *sua sponte* is required to give notice and a warning to "make orders of … dismissal conditional on a party's continued noncompliance with an outstanding order to compel."  *In re Rubin*, 769 F.2d 611, 616 (9th Cir. 1985).  Neither the Court or the Magistrate have ever issued such a warning to Loop AI.  None of the Orders listed in Order 894 states that unless Loop AI complies with some outstanding discovery obligation the Court will dismiss any or all of its claims.  Even in respect of the only order identified in Order 894 as outstanding, the Magistrate's Blanket Waiver Order (Order 680), that order does not in any way warn Loop AI that the Magistrate or the Court will dismiss Loop AI's case unless Loop AI complies with the sanction imposed.  Indeed, even after AW-USA filed a 1-page letter seeking further sanctions regarding the Blanket Waiver Order, the

---

[17] *See, e.g., United States v. Foumai*, 910 F.2d 617, 620 (9th Cir. 1990) ("Because the district court was sitting as a court of appeals the scope and procedure of its review was the same as that of the court of appeals.  Local Rule 404-4 (D. Haw.); see 28 U.S.C. § 636(c)(4).")

Court did not warn Loop AI that absent compliance it will terminate its case. Further, as discussed above, the Blanket Waiver Order does not identify any particular discovery request and fails to specify what exactly Loop AI is required to produce, in response to what requests.

**4.      There is No Basis for Rule 37(b) or Inherent Authority Sanctions –** There is no basis for Rule 37(b) sanctions against Loop AI, because there is no outstanding discovery order before the Court, and because none of the other requirements for Rule 37(b) sanctions are met here. As set forth above, the only order identified in Order 894 that Loop AI has not complied with is the Blanket Waiver Order, which is not a discovery order but a sanction order arising out of what the Magistrate found to be a deficient privilege log. *See* Order 680. Neither Rule 37, nor the Court's inherent power, contemplate the imposition of a terminating sanction for failure to comply with a prior sanction order to produce a privilege log, and such a sanction would be wholly inappropriate and unjust here. "Rule 37(b), Fed. R. Civ. P., authorizes the district court to impose a wide range of sanctions if a party fails to comply with a discovery order." *Nat'l Med. Enters.*, 792 F.2d at 910. "The district court's authority to issue the sanctions is subject to certain limitations: (1) the sanction must be just; and (2) *the sanction must specifically relate to the particular claim at issue in the order*." *Id.* (emphasis added). To determine whether the sanction is just the court must consider numerous factors, such as the severity of the sanction, the absence of any clear warning, the adequacy of alternative sanctions, the absence of prejudice, and also determine whether the severity of the sanction is warranted by the conduct involved. *See in re Rubin*, 769 F.2d at 615-19. In addition "a finding of 'willfulness, bad faith, or fault' is required for dismissal to be proper." *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). Sanctions under the Court's inherent power are only permissible in extreme circumstances, such as when a party, such as in the case of the Italian Almaviva Defendants, completely fails to provide discovery. *See, e.g.,* Dkt. 897. The Court "has the inherent power to dismiss an action if 'a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Nat'l Med. Enters., Inc.*, 792 F.2d 912-13. *See also, e.g., Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1338 (9th Cir. 1985). This is not the situation with Loop AI, which is the only party in this case

to have provided extensive discovery,[18] even though Loop AI's action relates primarily to conduct of the defendants, and not to its own.  For the foregoing reasons, terminating or other sanctions are inappropriate against Loop AI.

### IV.     Request for an Evidentiary Hearing.

Loop AI and its undersigned counsel respectfully requests an evidentiary hearing on the Court's Order to Show Cause.

### CONCLUSION

For the reasons set forth above, Loop AI respectfully submits that Order 894 should be vacated.  If the Court elects not to vacate Order 894, the issuance of terminating sanctions would be legally and factually unsupported and wholly inappropriate.

Respectfully submitted,

October 24, 2016                                     By:    /s/ *Valeria Calafiore Healy*

Valeria Calafiore Healy, Esq. (*phv*)
HEALY LLC
154 Grand Street
New York, New York 10013
Telephone:      (212) 810-0377
Facsimile:       (212) 810-7036

Attorneys for Plaintiff
LOOP AI LABS, INC.

---

[18] *See, e.g.,* Dkt. 780-786, 790, 792-793, 803, 805-807, 889-910.