PAGES 1-68

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE DONNA M. RYU, MAGISTRATE JUDGE

LOOP AI LABS INC.,                    )
                                      )
            PLAINTIFF,                )
                                      )
   VS.                                ) NO. C15-798 HSG-DMR
                                      )
ANNA GATTI, ET AL,                    )
                                      )  OAKLAND, CALIFORNIA
            DEFENDANTS.               )  MONDAY
                                      )  OCTOBER 31, 2016
_____)  1:00 O'CLOCK P.M.

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**FOR PLAINTIFF:**            **VALERIA CALAFIORE HEALY, ATTORNEY AT LAW**
                             **HEALY LLC**
                             154 GRAND STREET
                             NEW YORK, NEW YORK 10013


**FOR DEFENDANT ALMAWAVE: VENABLE LLP**
                             505 MONTGOMERY STREET, SUITE 1400
                             SAN FRANCISCO, CALIFORNIA 94111
                       **BY:  THOMAS E. WALLERSTEIN, ESQUIRE**
                             **YEVGENIYA (ENIA) TITOVA, ATTORNEY AT LAW**

**FURTHER APPEARANCES ON NEXT PAGE.**

*REPORTED BY:   KATHERINE WYATT, CSR 9866, RMR, RPR*
          *COMPUTERIZED TRANSCRIPTION BY ECLIPSE*

FURTHER APPEARANCES:

**FOR DEFENDANT IQSYSTEM, INC.:**

LAW OFFICES OF JANET BRAYER

456 MONTGOMERY STREET, 20TH FLOOR

SAN FRANCISCO, CALIFORNIA 94104

**BY:   JONATHAN VARNICA, ESQUIRE**


**FOR VALERIA CALAFIORE HEALY:**

**REED SMITH, LLP**

101 SECOND STREET

SUITE 1800

SAN FRANCISCO, CALIFORNIA 94105

**BY:   RAYMOND A. CARDOZO, ESQUIRE**

**ASHLEY L. SHIVELY, ATTORNEY AT LAW**

**OCTOBER 31, 2016**                                    **1:00 O'CLOCK  P.M.**

## P R O C E E D I N G S

**THE CLERK:**  CALLING CIVIL CASE 15-798, LOOP AI LABS, INCORPORATED VERSUS GATTI, ET AL.

COUNSEL, PLEASE STEP FORWARD, AND STATE YOUR APPEARANCES.

**MS. HEALY:**  GOOD AFTERNOON, YOUR HONOR.  VALERIA CALAFIORE HEALY FOR LOOP AI LABS, INC.

**MR. WALLERSTEIN:**  TOM WALLERSTEIN, YOUR HONOR, WITH MY COLLEAGUE, ENIA TITOVA, ON BEHALF OF THE THREE ALMAWAVE DEFENDANTS.  GOOD AFTERNOON.

**MR. VARNICA:**  JON VARNICA ON BEHALF OF DEFENDANT IQSYSTEM, INC.

**MR. CARDOZO:**  GOOD MORNING, YOUR HONOR.  RAY CARDOZO FROM THE REED SMITH LAW FIRM REPRESENTING MS. HEALY ON THE MOTION DOCKETED AS NUMBER 840.  AND WITH ME IS ASHLEY SHIVELY, ALSO FROM MY OFFICE.

**THE COURT:**  ALL RIGHT.  GOOD AFTERNOON, EVERYBODY.

HERE'S HOW I'M GOING TO CONDUCT THE HEARING.  I WANT TO START WITH SOME QUESTIONS THAT I COULD USE SOME CLARITY ON. DURING THIS PORTION OF THE HEARING I ASK THAT THE PERSON TO WHOM THE QUESTION IS DIRECTED JUST ANSWER THE QUESTION.  DON'T STRAY INTO FURTHER ARGUMENT.  I'M NOT GOING TO HEAR ARGUMENT AT THIS TIME.

IT'S JUST REALLY SOME BASIC INFORMATION ON SOME OF THE

MOTIONS THAT ARE BEFORE ME TODAY THAT I WANT TO MAKE SURE I HAVE BETTER CLARITY ON.

I'M THEN GOING TO GIVE EACH SIDE AN OPPORTUNITY TO CONDUCT ARGUMENT ON THEIR MOTIONS.  YOU CAN DIVIDE THE TIME ON THE MOTIONS HOWEVER YOU SEE FIT.  I'VE READ EVERYTHING OVER, SO IT'S REALLY -- YOU MIGHT JUST WANT TO HIT THE HIGHLIGHTS.  IF THERE'S THINGS THAT YOU WANT TO STRESS WITH ME, THEN THAT'S FINE.  EACH SIDE WILL HAVE AN OPPORTUNITY TO DO THAT.

OKAY.  SO I WANT TO START WITH PLAINTIFF'S MOTION, WHICH IS DOCKET NUMBER 731.

MR. WALLERSTEIN, I THINK THESE QUESTIONS ARE DIRECTED TO YOU.  COULD YOU PLEASE COME TO THE PODIUM TO ANSWER THEM?

**MR. WALLERSTEIN:**  YES, YOUR HONOR.  THANK YOU.  TOM WALLERSTEIN FOR THE ALMAWAVE DEFENDANTS.

**THE COURT:**  OKAY.  I WANT TO START BY ASKING ABOUT THE RESPONSES TO DISCOVERY BY -- I'M GOING TO CALL THEM THE ITALIAN ALMAWAVE DEFENDANTS, BUT IT'S -- I GET THE INITIALS MIXED UP. IT'S ALMAWAVE S.R.L. AND ALMAVIVA S.P.A.; IS THAT CORRECT?

**MR. WALLERSTEIN:**  YES.  AND I REFER TO THEM AS THE "ITALIAN ALMAWAVE DEFENDANTS," THOSE TWO PARTIES, YOUR HONOR.

**THE COURT:**  ALL RIGHT.  SO I'M GOING TO CALL THEM THE "ITALIAN ALMAWAVE DEFENDANTS," AS WELL.  SO IT'S THOSE TWO SEPARATE DEFENDANTS.

AND WE ALSO HAVE THE ALMAWAVE USA DEFENDANT.  SO WITH RESPECT TO REQUESTS FOR PRODUCTION THAT WERE PROPOUNDED TO THOSE

THREE DEFENDANTS, THE TWO ITALIAN ALMAWAVE DEFENDANTS AND THE ALMAWAVE USA DEFENDANT, WERE THE DOCUMENTS PRODUCED ON BEHALF OF ALL THE DEFENDANTS OR FOR JUST SOME OF THEM?

**MR. WALLERSTEIN:**  I WANT TO MAKE CERTAIN I'M UNDERSTANDING, SO I'M GOING TO ANSWER JUST AS DIRECTLY AS I CAN. AT THE TIME THAT THE WRITTEN RESPONSES WERE FILED, THE ITALIAN ALMAWAVE DEFENDANTS HAD OBJECTIONS TO JURISDICTION, SO THEY DID NOT PRODUCE DOCUMENTS.  THEY OBJECTED AND SAID:

"WE HAVE JURISDICTIONAL OBJECTIONS PENDING."

THE ALMAWAVE USA RESPONDED.  AS A PRACTICAL MATTER, ALL THE -- WHEN ALMAWAVE USA SEARCHED FOR, COLLECTED, REVIEWED AND PRODUCED DOCUMENTS, THEY DID SO ON BEHALF OF NOT ONLY THEMSELVES, ALMAWAVE USA, BUT ALSO ON BEHALF OF THE ITALIAN ALMAWAVE DEFENDANTS.

THAT'S WHAT I TOLD YOUR HONOR IN DECEMBER WHEN I WAS HERE, AND WE'VE SUBMITTED IT WITH CLIENT DECLARATIONS SINCE THEN, AND I'M SAYING IT AGAIN.  WE NEVER MADE A DISTINCTION AMONGST THE THREE PARTIES.  ALL THE DOCUMENTS FROM ALL THREE DEFENDANTS, ALL THREE ALMAWAVE DEFENDANTS, WERE GATHERED, SEARCHED FOR, COLLECTED AND PRODUCED BY ALMAWAVE USA, WITHOUT DISTINCTION.

SO THERE ARE NO FURTHER DOCUMENTS TO PRODUCE FROM THE ITALIAN ALMAWAVE DEFENDANTS THAT WERE NOT PRODUCED BY ALMAWAVE USA.  AND I'M HAPPY TO OBVIOUSLY ANSWER MORE QUESTIONS.  I JUST WANT TO ANSWER THEM CORRECTLY.

**THE COURT:**  WERE THERE ANY DOCUMENTS WITHHELD FROM THE

ITALIAN DEFENDANTS ON ANY BASIS OTHER THAN PRIVILEGE?  IN OTHER WORDS, IN PRODUCING THE DOCUMENTS DID YOU DRAW ANY DISTINCTION IN DECIDING WHAT TO PRODUCE FOR THE ITALIAN DEFENDANTS AS OPPOSED TO ALMAWAVE USA?

MR. WALLERSTEIN:  NO, YOUR HONOR.  ALMAWAVE USA DID HAVE OBJECTIONS OTHER THAN PRIVILEGE, SOME OF WHICH WERE THE SUBJECT OF MOTION PRACTICE, SOME OF WHICH WERE NOT.  AND THAT PLAYED OUT THE I WAY IT PLAYED OUT.

SEPARATE AND APART FROM THAT, THERE WAS NO DISTINCTION. THERE WERE NO ADDITIONAL DOCUMENTS WITHHELD FROM THE ITALIAN ALMAWAVE DEFENDANTS THAT ALMAWAVE USA DID NOT WITHHOLD.

THE COURT:  YOU JUST MENTIONED THAT SOME OBJECTIONS WERE THE SUBJECT OF MOTION PRACTICE.  WHAT ARE YOU REFERRING TO EXACTLY?

MR. WALLERSTEIN:  ALMAWAVE USA MADE OBJECTIONS, I BELIEVE, MAYBE MOVED FOR A PROTECTIVE ORDER ON SCOPE OF WHEN THE TIME FRAME FOR WHEN DOCUMENTS WERE -- HAD TO BE PRODUCED.  AND YOUR HONOR RULED ON THAT, AND ALMAWAVE USA ABIDED BY YOUR HONOR'S RULING ON ITS ON BEHALF AND ON BEHALF OF THE ITALIAN ALMAWAVE DEFENDANTS.

THE COURT:  THIS IS WHAT IS CONFUSING TO ME.  I KNOW THAT JUDGE GILLIAM DIRECTED JURISDICTIONAL DISCOVERY.  I UNDERSTAND THERE WAS OBJECTION, BUT HE ORDERED JURISDICTIONAL DISCOVERY.  I THINK EVERYBODY UNDERSTOOD THAT THE JURISDICTIONAL DISCOVERY CROSSED OVER INTO THE MERITS.  AND THERE WAS A TIME

FRAME, AND I ISSUED AN ORDER IN DECEMBER FOLLOWING A LENGTHY HEARING DESCRIBING THE SCOPE OF THAT JURISDICTIONAL DISCOVERY.

THE JURISDICTIONAL DISCOVERY WAS AIMED AT THE ITALIAN DEFENDANTS AS WELL AS ALMAWAVE USA.  WHEN I REVIEWED THE WRITTEN RESPONSES FOR THE ITALIAN DEFENDANTS, I SAW THAT THEY ALL CONTAINED JUST OBJECTIONS AND NOT SUBSTANTIVE RESPONSES.  I'M WONDERING WHY THERE WASN'T A SUBSTANTIVE RESPONSE.

**MR. WALLERSTEIN:**  I BELIEVE -- WHEN YOU SAY THAT YOU REVIEWED THE RESPONSES, I BELIEVE YOU'RE REFERRING TO RESPONSES THAT WERE PREPARED AND SERVED PRIOR TO THAT.  BUT --

**THE COURT:**  NO.  ACTUALLY, I AM REFERRING TO A SERIES OF RESPONSES.  THEY ARE ATTACHED TO PLAINTIFF'S MOTION, ACTUALLY TO MS. HEALY'S DECLARATION IN SUPPORT OF THE MOTION.  AND WHEN I WENT THROUGH -- SO, FOR EXAMPLE, THERE'S THE FIRST SET OF RESPONSES IN SEPTEMBER.  IT WAS ON SEPTEMBER 16TH, 2015.

SO THAT'S A COUPLE OF WEEKS AFTER JUDGE GILLIAM ORDERS JURISDICTIONAL DISCOVERY.  AND THERE'S ANOTHER SET WHICH WAS RESPONDED TO IN MID-OCTOBER, A THIRD SET FOR WHICH A RESPONSE WAS SERVED ON FEBRUARY 25TH, FOURTH SET MARCH 28TH AND FIFTH SET RESPONSE WAS ALSO MADE ON MARCH 28, 2016.

WHEN I LOOKED AT THEM, IT APPEARED THAT THE ITALIAN ALMAWAVE DEFENDANTS MADE OBJECTIONS, BUT THEN NEVER WENT ON TO SAY:

"SUBJECT TO THOSE OBJECTIONS, WE RESPOND AS FOLLOWS."

AND THAT'S FOR BOTH REQUESTS FOR PRODUCTION AND FOR INTERROGATORIES.

**MR. WALLERSTEIN:** WELL, I -- FOR THE INTERROGATORIES, LET ME CARVE THOSE OUT. I RECALL, FIRST OF ALL, JUDGE GILLIAM OBVIOUSLY RULED AS HE DID. THEN, THERE WAS A DISPUTE AS TO WHAT THAT, THE SCOPE OF WHAT THAT DISCOVERY WOULD ENTAIL. AND YOUR HONOR CONDUCTED A HEARING ON DECEMBER 10TH, 2015 WHERE WE CLARIFIED THAT.

WHAT RESULTED FROM THAT WAS AN ORDER THAT THE ITALIAN ALMAWAVE DEFENDANTS RESPOND TO FIVE INTERROGATORIES EACH. THEY DID THAT, AND I DON'T BELIEVE THEY JUST MADE OBJECTIONS. I THINK THEY RESPONDED SUBSTANTIVELY.

**THE COURT:** UNDERSTOOD. AND, ACTUALLY, THOSE INTERROGATORIES ARE NOT IN THE RECORD BEFORE ME TODAY. THOSE WERE NOT THE SUBJECT OF PLAINTIFF'S MOTION.

**MR. WALLERSTEIN:** SO WE'RE TALKING ABOUT REQUESTS FOR PRODUCTION OF DOCUMENTS. TO THOSE YOUR HONOR DID NOT MAKE AN EXPRESS ORDER ABOUT DISCOVERY FOR THE ITALIAN ALMAWAVE DEFENDANTS, SO THAT WAS NOT ACTUALLY PART OF THE DECEMBER 10 ORDER. IT DID NOT RESULT FROM THAT. BUT IN ANY EVENT, I --

**THE COURT:** WELL, I GUESS THE PROBLEM THAT I'M HAVING WITH THAT IS THAT JUDGE GILLIAM SPECIFICALLY SAID THAT IF SOMEBODY IS CLAIMING THERE'S A STAY, THE PARTY CLAIMING THERE IS A STAY OF SOME KIND, WHETHER THEY ARE MOVING FOR IT, OR THEY CLAIM THAT IT'S AUTOMATIC, NEEDS TO CONFIRM IT WITH THE PRESIDING JUDGE.

AND I DIDN'T SEE ANY ORDER BY JUDGE GILLIAM SAYING:

"NO DISCOVERY NEEDS TO GO FORWARD EXCEPT FOR THE JURISDICTIONAL DISCOVERY."

SO I'M TRYING TO UNDERSTAND WHAT DISTINCTION THE ITALIAN DEFENDANTS WERE DRAWING IN THE RESPONDING OR NOT RESPONDING TO DISCOVERY.

**MR. WALLERSTEIN:**  SIMPLY BY SUBMITTING WRITTEN RESPONSES THE CONCERN WAS THAT WE WOULD -- MORE THAN A CONCERN. WE WERE TOLD WE WOULD FACE AN ARGUMENT THAT THAT WAS A WAIVER OF THEIR JURISDICTION CHALLENGE.

THAT WAS NOT -- THAT JURISDICTIONAL CHALLENGE WAS NOT RESOLVED UNTIL JUNE.  WHAT'S MOST IMPORTANT -- AND I'M TRYING TO ESCHEW ARGUMENT -- IF YOUR HONOR WERE TO ORDER TODAY A RULE 34 CERTIFICATION, WE COULD DO THAT IN NO TIME FLAT.

WE HAVE EFFECTIVELY DONE THAT WITH CLIENT DECLARATIONS, COUNSEL DECLARATIONS.  WE HAVE EFFECTIVELY DONE THAT PRECISE CERTIFICATION YOU'RE TALKING ABOUT WITH DECLARATIONS UNDER OATH THAT SAY:

"THERE'S NOTHING ELSE.  EVERYTHING HAS BEEN PRODUCED BY ALMAWAVE USA.  THERE WERE NO DISTINCTIONS MADE."

**THE COURT:**  OKAY.  SO IF I'M UNDERSTANDING YOUR POSITION, THERE WERE WRITTEN RESPONSES MADE BY THE ITALIAN DEFENDANTS TO WRITTEN DISCOVERY.  THEY WERE SOLELY OBJECTIONS BECAUSE THE ITALIAN ALMAWAVE DEFENDANTS WERE WORRIED THAT IF THEY PROVIDED SUBSTANTIVE ANSWERS THAT WOULD BE CONSTRUED AS A WAIVER OF THE JURISDICTIONAL OBJECTIONS.

**MR. WALLERSTEIN:**  THAT'S ABSOLUTELY CORRECT.  AND MULTIPLE TIMES WE MADE A PROFFER THAT IF WE COULD ONLY RECEIVE ASSURANCE THERE WOULD NOT BE A WAIVER ARGUMENT THEY WOULD BE HAPPY TO APPEAR TO RESPOND TO THE DISCOVERY, ET CETERA.

THAT ACTUALLY HAPPENED AT THE VERY FIRST CASE MANAGEMENT CONFERENCE IN FRONT OF JUDGE GILLIAM WHEN I CAME UP AND INTRODUCED MYSELF.  AND I SAID:

"I'M HERE ON BEHALF OF ALMAWAVE USA."

HE SAID:

"WHAT ABOUT THE ITALIANS?"

AND I SAID:

"WELL, IF I COULD GET A STIPULATION THAT MY APPEARANCE WOULD NOT BE A WAIVER OF JURISDICTION."

JUDGE GILLIAM OBTAINED A STIPULATION TO THAT EFFECT, BUT IT WAS REVOKED IMMEDIATELY AFTER THE HEARING.  SO WE WERE NEVER -- THAT'S ALL THAT IS.  THAT'S ALL IT IS.  IT'S A TECHNICAL OBJECTION.  WE MADE NO DISTINCTION IN TERMS OF OUR DOCUMENT PRODUCTION OR COLLECTION, NOR EVEN IN THE INTERROGATORIES, FOR THAT MATTER.

**THE COURT:**  WELL, FOR THE INTERROGATORIES THERE ARE NO RESPONSES.  SAME THING.  I MEAN, THERE'S OBJECTIONS, BUT I DID NOT SEE SUBSTANTIVE RESPONSES.

THERE'S A REFERENCE IN MS. CULP'S DECLARATION THAT SAYS SOMETHING LIKE:

"IF THEY HAD BEEN PROVIDED THEY WOULD BE NEARLY

IDENTICAL TO THE RESPONSES MADE FOR ALMAWAVE USA."

**MR. WALLERSTEIN:**  THAT IS WHAT WE SAID, YOUR HONOR. AND SO TO BE CLEAR, I BELIEVE THE ITALIANS RESPONDED TO FIVE SPECIAL JURISDICTIONAL INTERROGATORIES EACH.  THERE WERE ANOTHER HOWEVER MANY.

**THE COURT:**  SEVENTEEN.

**MR. WALLERSTEIN:**  THANK YOU.  THAT FOR THE SAME REASON WITH THE DOCUMENTS THEY DID NOT TECHNICALLY RESPOND, AND WE SAID, AS YOU POINTED OUT, HAD THEY RESPONDED THEY WOULD BE THE SAME RESPONSE.

**THE COURT:**  ARE YOU SAYING THAT THE ONLY REASON THE ITALIAN ALMAWAVE DEFENDANTS DID NOT PROVIDE A RESPONSE IS BECAUSE OF THE WAIVER OF THE JURISDICTIONAL -- WAIVER OF JURISDICTION ARGUMENT?

**MR. WALLERSTEIN:**  YES, YOUR HONOR, I AM SAYING THAT, WITHOUT ANY EQUIVOCATION.  WE TOOK THE VIEW EARLY ON THAT WE WERE NOT GOING TO MAKE ANY DISTINCTION.  AS A PRACTICAL MATTER IN TERMS OF DISCOVERY, BEFORE WE EVEN RECEIVED ANY REQUESTS, WE UNDERTOOK TO COLLECT ALL THE DOCUMENTS FROM ALL THREE OF MY CLIENTS.  AND THEY WERE ALL PRODUCED SUBJECT TO THE MOTION PRACTICE.

**THE COURT:**  WHEN ALMAWAVE USA SUBMITTED RESPONSES, DID THEIR SUBSTANTIVE RESPONSE INDICATE THAT IT WAS BEING MADE ON BEHALF OF THE ITALIAN DEFENDANTS, AS WELL?  IN OTHER WORDS, I KNOW YOU MADE THE STATEMENT BACK IN DECEMBER, AND I REVIEWED IT,

AND I LOOKED AT THE TRANSCRIPT.  BUT WAS THERE ANYTHING IN YOUR RESPONSE THAT INDICATED THAT IS WHAT YOU WERE DOING?

**MR. WALLERSTEIN:**  I DON'T THINK SO, YOUR HONOR.  BEYOND WHAT I SAID AT THE DECEMBER 10 HEARING, WE ALSO SAID THAT IN WRITING TO COUNSEL.  AND MY CLIENTS HAVE SINCE SUBMITTED DECLARATIONS.  AT LEAST ONE DECLARATION THEY HAVE SUBMITTED RECENTLY TO THAT EFFECT.

**THE COURT:**  ARE YOU TALKING ABOUT MS. CULP'S DECLARATION?

**MR. WALLERSTEIN:**  NO, I'M ACTUALLY TALKING ABOUT OUR PRINCIPAL'S DECLARATION.  IT WAS -- I ASSUME YOUR HONOR KNOWS, BUT THERE'S A VERY SIMILAR MOTION FOR DEFAULT JUDGMENT PENDING IN FRONT OF JUDGE GILLIAM.  IN OPPOSITION TO THAT, WE SUBMITTED ANOTHER LAWYER DECLARATION FROM ME, INSTEAD OF MS. CULP, JUST MORE OF THE SAME.  AND A DECLARATION FROM OUR CLIENT THAT GOES INTO GREAT DETAIL AND MAKES THAT POINT, AS WELL.

**THE COURT:**  WERE THERE -- I THINK THERE WERE APPROXIMATELY 260 REQUESTS FOR PRODUCTION AIMED AT EACH OF THE DEFENDANTS IN VARIOUS FILINGS, 261, 264.  BUT THAT'S THE RANGE.

WERE THERE ANY REQUESTS FOR PRODUCTION THAT ANY DEFENDANT REFUSED TO RESPOND TO?

**MR. WALLERSTEIN:**  I ASSUME SO, GIVEN THAT THE BREADTH OF THE REQUESTS THAT I RECALL.  I ASSUME THERE WERE REQUESTS TO WHICH ALMAWAVE USA REFUSED TO PRODUCE DOCUMENTS, AND WE EITHER HAD MET AND CONFERRED OR YOUR HONOR RULED, OR WHATEVER HAPPENED

HAPPENED.  NOTHING OVER AND ABOVE THAT ON BEHALF OF THE ITALIAN ALMAWAVE DEFENDANTS.

THE COURT:  OKAY.  SO ANY TIME THAT A DEFENDANT -- THAT ALMAWAVE USA OBJECTED TO PRODUCING SOMETHING, THE SAME WOULD BE TRUE OF THE ITALIAN ALMAWAVE DEFENDANTS?

MR. WALLERSTEIN:  YES, YOUR HONOR.  AND CERTAINLY NOTHING BEYOND THAT.  THE ALMAWAVE -- THE ITALIAN ALMAWAVE DEFENDANTS DID NOT HAVE -- DO NOT, DID NOT HAVE ANY OBJECTIONS OVER AND ABOVE THOSE OF ALMAWAVE USA.

THE COURT:  MS. CULP'S DECLARATION SAYS SOMETHING LIKE -- SOMETHING LIKE:

"THE DEFENDANTS RESPONDED TO 261 DOCUMENT REQUESTS PROPOUNDED TO ALMAVIVA S.P.A., 264 TO ALMAWAVE S.R.L. AND 263 TO ALMAWAVE USA."

DID EITHER OF THE ITALIAN ALMAWAVE DEFENDANTS REFUSE TO RESPOND TO ANY OF THE RFP'S THAT YOU'RE AWARE OF?

MR. WALLERSTEIN:  WELL, I WANT TO BE CAREFUL BECAUSE I'VE SEEN THIS COME UP IN THE PAPERS.  WE RECEIVED THE REQUESTS.  THEY SERVED WRITTEN RESPONSES.

NOW, THE TEXT OF THOSE WRITTEN RESPONSES IN ORDER TO PRESERVE THEIR JURISDICTIONAL OBJECTIONS WERE, I THINK, SOMETHING ALONG THE LINES OF:

"WE'RE NOT RESPONDING."

SO THEY FILED PAPERS THAT WERE SIGNED BY COUNSEL THAT SAID, YOU KNOW:

"HERE'S OUR RESPONSE:  WE'RE NOT RESPONDING."

SO I DON'T KNOW HOW TO ANSWER YOUR HONOR MOST ACCURATELY.

**THE COURT:**  DID EITHER OF THE ITALIAN ALMAWAVE DEFENDANTS FAIL TO PRODUCE DOCUMENTS THAT WERE RESPONSIVE TO A PARTICULAR RFP BECAUSE OF AN OBJECTION THAT THEY MADE?

**MR. WALLERSTEIN:**  NOT OVER AND ABOVE ANY OBJECTION THAT ALMAWAVE USA MADE, NO.

**THE COURT:**  THERE WAS A REMARK MADE IN FOOTNOTE ONE OF YOUR CLIENT'S OPPOSITION THAT TALKS ABOUT THE UNTIMELINESS OF SETS FOUR AND FIVE.  AND I DIDN'T UNDERSTAND HOW THEY WERE UNTIMELY.

**MR. WALLERSTEIN:**  WHEN WE WROTE THAT -- I THINK IT'S AN ERROR.  WHEN WE WROTE THAT WHAT WE HAD IN MIND WAS A FEW DAYS PRIOR TO THE DISCOVERY CUTOFF I THOUGHT WE HAD RECEIVED A REQUEST FOR PRODUCTION, WHICH THE RESPONSES OBVIOUSLY WOULD HAVE BEEN DUE MUCH TOO LATE.  AND AT THE TIME I WASN'T SURE THAT WE EVER SENT PAPER BACK IN RESPONSE TO THAT.

I THINK IT'S A RED HERRING AND I'M NOT --

**THE COURT:**  WELL --

**MR. WALLERSTEIN:**  I MEAN, I THINK IT'S AN ERROR, YOUR HONOR.

**THE COURT:**  ERROR.

**MR. WALLERSTEIN:**  I THINK OUR FOOTNOTE IS AN ERROR.  THE ISSUE IS A RED HERRING.  THEY HAVE -- AS FAR AS I KNOW, WE HAVE SUBMITTED A DOCUMENT CALLED "A RESPONSE" TO X SET OF

REQUESTS FOR EVERY REQUEST THAT'S OUT THERE.

**THE COURT:**  OKAY.  BECAUSE FOOTNOTE ONE IS TALKING ABOUT THESE TWO SETS OF WRITTEN DISCOVERY PROPOUNDED BY THE PLAINTIFF.  THOSE WERE SERVED, I THINK, ON FEBRUARY 26TH, AND THE RESPONSE DATE WAS MARCH 28TH.

THE CUTOFF FOR DISCOVERY WAS MARCH 29TH, MAKING THESE, I THINK, TIMELY.  BUT YOU'RE SAYING YOUR FOOTNOTE IS IN ERROR.

**MR. WALLERSTEIN:**  I THINK WE'VE RESPONDED TO EVERYTHING.  AGAIN, THE RESPONSE MAY HAVE BEEN:  "WE'RE NOT RESPONDING," BUT I THINK THEY CERTAINLY RESPONDED.

**THE COURT:**  WELL, I'M TRYING TO FIGURE OUT WHETHER YOUR CLIENTS DID NOT PROVIDE RESPONSIVE DOCUMENTS TO ANY RFP'S BECAUSE THEY BELIEVED THEY WERE PROPOUNDED IN AN UNTIMELY MANNER.  AND IF SO, WHICH ONES.

**MR. WALLERSTEIN:**  NO, I DON'T THINK THAT'S THE CASE, YOUR HONOR.  WE, AGAIN -- UNLESS SOMEONE AT USA TOOK THAT POSITION.  BUT I DON'T BELIEVE WE DID.  I DON'T BELIEVE WE DID. I THINK THAT FOOTNOTE IS WRONG.

**THE COURT:**  OKAY.  IN RESPONDING TO THE RFP'S ON BEHALF OF ALL THE DEFENDANTS, WAS THERE ANY DISTINCTION DRAWN BETWEEN JURISDICTIONAL AND MERITS?

**MR. WALLERSTEIN:**  NO.

**THE COURT:**  IS THAT TRUE FOR BOTH THE REQUESTS FOR PRODUCTION AND THE INTERROGATORIES?

**MR. WALLERSTEIN:**  YES.  AGAIN, OUR WRITTEN RESPONSES --

I MEAN, I HOPE THEY DON'T SURPRISE ME, YOU KNOW.  I'VE REVIEWED THEM.  PERHAPS THEY MAKE -- PERHAPS THEY SAY SOMETHING.  BUT BEYOND WHATEVER OUR WRITTEN RESPONSES SAY, NO, WE DID NOT MAKE ANY KIND OF DISTINCTION LIKE THAT.

WE TOOK THE VIEW -- REMEMBER, THE JURISDICTION STUFF STARTED, YOU KNOW, AUGUST OR SEPTEMBER, 2015.  BY THE TIME WE WERE HERE IN DECEMBER 2015 -- AND I REMEMBER THIS.  I REMEMBER TELLING YOUR HONOR -- IT'S ON THE RECORD.  I REMEMBER SAYING:

"AT THIS POINT I DON'T EVEN CARE."  AND I REMEMBER.  I READ THAT THE OTHER DAY WHEN I LOOKED AT THE TRANSCRIPT.  I REMEMBER I SAID:

"I DON'T EVEN CARE ABOUT JURISDICTION VERSUS MERITS.  WE'RE DOING IT ALL AT ONCE."  AND THAT'S WHAT WE DID.

**THE COURT:**  OKAY.  WELL, THAT'S WHAT I'M GETTING AT.  REGARDLESS OF WHAT YOU THOUGHT, I WANT TO KNOW WHAT THE LAWYERS DID.  DID THE LAWYERS WITHHOLD ANY DOCUMENTS THAT WOULD HAVE OTHERWISE BEEN RESPONSIVE BECAUSE THEY WERE DRAWING A DISTINCTION BETWEEN JURISDICTIONAL AND MERITS DISCOVERY?

**MR. WALLERSTEIN:**  NEVER.

**THE COURT:**  OKAY.  NOW, YOU SAID THAT -- HANG ON.  YOU SAID THAT YOU COULD PROVIDE RULE 34 CERTIFICATIONS IMMEDIATELY.  BY THAT, WHAT DO YOU MEAN BY THAT?

**MR. WALLERSTEIN:**  I THINK WE DID, IN EFFECT.  IN THE CONTEXT OF THE MOTION FOR A DEFAULT JUDGMENT -- AND I'LL JUST READ THE DOCKET FOR THE RECORD.  IT WAS OUR DOCKET NUMBER 907-4

WAS A DECLARATION FROM MY CLIENT, WHO, AT SOME GREAT DETAIL, EXPLAINS AND ANSWERS THE VERY QUESTIONS YOUR HONOR HAS POSED TO ME THIS AFTERNOON.

SHE SAYS:

"WE DID NOT MAKE A DISTINCTION BETWEEN ALMAWAVE USA AND THE ITALIANS.  WE DID ONE COLLECTION WITHOUT DISTINCTION."

AND WE USED A GOOD FAITH, YOU KNOW, INVESTIGATION, AND WE PRODUCED EVERYTHING WE HAVE, AGAIN SUBJECT TO OUR OBJECTION AND THE MOTION PRACTICE THAT ALMAWAVE USA ADVANCED.  BUT BEYOND WHATEVER ALMAWAVE USA DID, THERE WERE NOTHING -- NO FURTHER WERE HOLDING OF DOCUMENTS, BOTH EITHER AT THE COLLECTION STAGE OR AT PRODUCTION STAGE OR ANYWHERE ELSE.

IT WAS JUST TOO MUCH WORK FOR US.  AND, FRANKLY, VALERIA SANDEI, BEING THE PRINCIPAL, IS THE GOOD EXAMPLE.  AND I USED THIS EXAMPLE ON DECEMBER 10.  SHE'S A PRINCIPAL BOTH OF ALMAWAVE USA AND AT LEAST ONE OF THE ITALIAN ALMAWAVE DEFENDANTS.  SO WHEN SHE GATHERS HER DOCUMENTS SHE'S NOT DECIDING:

"OH, WHAT HAT AM I WEARING?"

SHE JUST GATHERED HER DOCUMENTS, AND WE DID THAT WITH EVERYBODY.

**THE COURT:**  SO WITH RESPECT TO THE DOCUMENTS, I THINK WHAT YOU'RE SAYING IS THAT YOU COULD -- IF ORDERED TO, YOU COULD IMMEDIATELY TURN AROUND AND CERTIFY THAT ALL DOCUMENTS, ALL RESPONSIVE DOCUMENTS HAVE BEEN PRODUCED FOR THE ITALIAN

DEFENDANTS WHO, BY THE WAY, NOW ARE -- YOU KNOW, HE DID EVENTUALLY RULE --

**MR. WALLERSTEIN:**  RIGHT.

**THE COURT:**  -- ON THE MOTION TO DISMISS.  IT WASN'T UNTIL JUNE, BUT IT WAS DENIED.  SO AT LEAST FOR NOW THE QUESTION OF JURISDICTION IS STILL ALIVE.  AND IT LOOKS LIKE THE ALMAWAVE ITALIAN DEFENDANTS NEVER WENT BACK AND AMENDED THEIR RESPONSES TO DO THAT.

**MR. WALLERSTEIN:**  THAT'S TRUE, YOUR HONOR.

**THE COURT:**  BUT YOU'RE SAYING THAT'S EXACTLY WHAT THEY WOULD DO.  THERE WOULD BE NO DISTINCTION.

**MR. WALLERSTEIN:**  THAT'S TRUE, YOUR HONOR.  AND THAT'S WHAT DOCUMENT 907-4, THE SANDEI DECLARATION, DOES.  WHEN I -- THE IDEA IN SUBMITTING THAT DECLARATION WAS TO HAVE IT SERVE AS A PROXY FOR A RULE 34 CERTIFICATION.  I THINK IT DOES THAT.

**THE COURT:**  NOW, AS TO THE INTERROGATORY RESPONSES, MS. CULP'S DECLARATION SAYS SOMETHING A LITTLE BIT DIFFERENT, ALTHOUGH VERY CLOSE.  SAYS SOMETHING LIKE:

"THE RESPONSES WOULD BE VIRTUALLY THE SAME FOR THE ITALIAN DEFENDANTS."

WHAT DOES THAT MEAN:  "VIRTUALLY THE SAME"?

**MR. WALLERSTEIN:**  I CAN SPEAK TO -- FOR MS. CULP.  THAT LANGUAGE IS NOTHING MORE THAN A LAWYER BEING CONCERNED ABOUT MAKING A BLANKET STATEMENTS.  I DON'T HAVE, AND SHE DID NOT HAVE, ANY CERTAIN DISTINCTION IN MIND THAT THE ITALIANS MIGHT HAVE

MADE. JUST WAS LOATH TO SAY THAT THEY WOULD BE EXACTLY THE SAME, A HYPOTHETICAL REQUEST OR A HYPOTHETICAL RESPONSE. IT WAS JUST A LAWYER USING SOME WAFFLE WORDS. BUT WE DON'T HAVE ANY DISTINCTION IN MIND. AS FAR AS I KNOW THEY WOULD BE IDENTICAL. I DON'T SEE WHY THEY WOULD NOT BE.

**THE COURT:** MEANING IDENTICAL TO ALMAWAVE USA, WHICH DID RESPOND.

**MR. WALLERSTEIN:** WHICH DID RESPOND, AND WERE VERIFIED BY VALERIA SANDEI, AN OFFICER OF THE ITALIAN ALMAWAVE DEFENDANTS, AS WELL.

**THE COURT:** OKAY. IN 907-4, YOU SAID THAT IT WAS PROXY FOR A CERTIFICATION UNDER RULE 34. IS THERE ANYWHERE IN THAT DECLARATION, OR ANYWHERE ELSE IN THE RECORD, THAT CLEARLY SAYS FROM THE ITALIAN DEFENDANTS THAT THE INTERROGATORY RESPONSES WOULD BE NO DIFFERENT FROM THOSE SERVED ON BEHALF OF ALMAWAVE USA?

**MR. WALLERSTEIN:** THAT SAME DOCUMENT 907-4 HAS VERY SIMILAR LANGUAGE TO MS. CULP. AND I'M CHECKING RIGHT NOW TO SEE EXACTLY WHAT MS. SANDEI SAYS ABOUT THE INTERROGATORIES.

SHE USES THE SAME LANGUAGE. SHE SAYS:

"THE SUBSTANTIVE RESPONSES THAT'S LOOP RECEIVED FROM ALMAWAVE USA WERE VIRTUALLY THE SAME, IF NOT EXACTLY THE SAME, AS THE RESPONSES THAT THE ITALIAN ALMAWAVE DEFENDANTS WOULD HAVE PROVIDED, BUT FOR THEIR THEN PENDING JURISDICTIONAL OBJECTIONS."

**THE COURT:** OKAY. WHY DIDN'T THE ALMAWAVE DEFENDANTS GO BACK AND AMEND THEIR RESPONSES TO DISCOVERY AFTER JUDGE GILLIAM RULED ON THE MOTION TO DISMISS?

**MR. WALLERSTEIN:** WELL, IT WAS IN JUNE. I DON'T HAVE A GOOD ANSWER. I MEAN, THEY WEREN'T ORDERED TO DO SO. I DON'T THINK THEY WERE REQUIRED TO DO SO. WE CERTAINLY DURING THAT TIMEFRAME WERE TRYING TO MEET AND CONFER WITH LOOP, AND IT WAS NOT EVER SOMETHING THAT WAS BROUGHT UP. WE WERE NEVER ASKED TO DO IT UNTIL WE GOT THE MOTION FOR DEFAULT. THAT WAS THE FIRST -- I'M SORRY. UNTIL WE GOT THIS RULE 16 MOTION. THAT WAS THE FIRST TIME WE WERE ALERTED BY LOOP THAT THEY PERCEIVED THE ITALIAN ALMAWAVE DEFENDANTS' RESPONSES INADEQUATE.

AND THERE'S A REASON FOR THAT: BECAUSE THEY KNEW WE HAD ALREADY DONE ALL THE RESPONSES FROM USA. WE'D BEEN TELLING THEM THAT FROM THE BEGINNING. SO IT STRUCK US AS A LITTLE DISINGENUOUS, THE RULE 16 MOTION. BUT, IN ANY EVENT, WE WERE EVER NEVER ASKED TO SUPPLEMENT, AND WE DIDN'T.

**THE COURT:** THERE ARE A COUPLE OF CATEGORIES OF MISSING DOCUMENTS THAT PLAINTIFF IDENTIFIED IN HIS OPENING BRIEF. NOW, THERE ARE A NUMBER OF OTHERS IN THE REPLY BRIEF, BUT THEY ARE NOT MENTIONED UNTIL THE REPLY. SO I'M TALKING ABOUT THE ONES IN THE OPENING BRIEF. AND I DIDN'T SEE A RESPONSE TO IT IN YOUR OPPOSITION.

SO THE TWO CATEGORIES RAISED IN THE OPENING BRIEF WERE DOCUMENTS SHOWING INTERNAL DISCUSSIONS WITHIN ALMAVIVA ABOUT THE

REASONS AND PROCESS FOR RETAINING MS. GATTI AND THE ALLEGED CO-CONSPIRATORS.

THE OTHER CATEGORY IDENTIFIED IN THE OPENING BRIEF WAS CONFIDENTIALITY AGREEMENTS BETWEEN MS. GATTI AND ALMAWAVE S.R.L.

AGAIN, I DIDN'T SEE ANY RESPONSE TO THAT IN THE OPPOSITION. WHAT WOULD YOUR RESPONSE BE?

**MR. WALLERSTEIN:**  BESIDES A PROCEDURAL OBJECTION THAT IT'S FAR TOO LATE TO BE, YOU KNOW, ARGUING OVER WHAT WAS PRODUCED AND WHAT WAS NOT PRODUCED, WE PRODUCED SUBJECT TO OUR OBJECTION, SUBJECT TO PRIVILEGE OF THE ALMAWAVE USA DEFENDANTS WE'VE PRODUCED EVERYTHING.  SO THEY WERE PRODUCED.

**THE COURT:**  WELL --

**MR. WALLERSTEIN:**  THE INTERNAL DISCUSSIONS THAT LOOP'S COUNSEL SPECULATES EXISTED DO NOT, OR THEY WERE PRODUCED.  BUT A LOT OF IT IS JUST SPECULATION THAT SURELY THERE MUST HAVE BEEN SOMETHING, SOMETHING, SOMETHING THAT JUST DOESN'T EXIST.  AS FOR THE CONFIDENTIALITY AGREEMENTS, THEY WERE PRODUCED.  AND IT'S JUST FLAT OUT NOT TRUE THAT THEY WEREN'T PRODUCED, AT LEAST IN ONE INSTANCE.  BUT WE DIDN'T, FRANKLY, AS YOU SAW FROM THE OPPOSITION, WE DIDN'T GO BACK AND TRY TO ARGUE, YOU KNOW, THE DETAILS OF ALL THESE THINGS.

I JUST -- I GUESS I WOULD JUST SAY THERE ARE EXAMPLES IN THERE THAT ARE JUST FALSE, YOU KNOW.  THEY WERE PRODUCED.  SOME OF THEM WERE PRODUCED BY OTHER PARTIES.

**THE COURT:**  WELL, THAT, TAKE THAT OUT OF THE EQUATION.

**MR. WALLERSTEIN:** OKAY.

**THE COURT:** THE FACT THAT IT'S PRODUCED BY ANOTHER PARTY DOES NOT RELIEVE A PARTY FROM RESPONDING. SO PUT THAT TO THE SIDE.

**MR. WALLERSTEIN:** FAIR. FAIR ENOUGH.

**THE COURT:** DID YOUR CLIENTS PRODUCE THE CONFIDENTIALITY AGREEMENTS BETWEEN MS. GATTI AND ALMAWAVE S.R.L.?

**MR. WALLERSTEIN:** I'M CONFIDENT WE PRODUCED WHAT WE HAD, YOUR HONOR. I DON'T WANT TO SAY WE PRODUCED SOMETHING, AND TURNS OUT WE DIDN'T PRODUCE IT. BUT IF WE HAD IT WE PRODUCED IT. WE CERTAINLY DIDN'T WITHHOLD IT INTENTIONALLY.

**THE COURT:** ARE THERE ANY DOCUMENTS THAT YOUR CLIENTS WITHHELD BECAUSE THEY WERE PRODUCED BY OTHER PARTIES?

**MR. WALLERSTEIN:** NO.

**THE COURT:** OKAY. I'M GOING TO MOVE ON TO SOME QUESTIONS ABOUT A COUPLE OTHER MOTIONS, SINCE YOU'RE UP AT THE PODIUM.

FOR DOCUMENT 597, WHICH HAS TO DO WITH THE COSTS OF THE CALAFIORE, DINAPOLI AND PEINTNER DEPOSITIONS. IN THE RECORD, I DID NOT SEE WHAT THE COSTS WERE FOR THE RENEWED CALAFIORE DEPOSITION. SO I HAD ORDERED FIVE ADDITIONAL HOURS, AND THAT THE PLAINTIFF WILL PAY FOR THE COURT REPORTER AND VIDEOGRAPHER FOR THAT.

MY UNDERSTANDING IS THAT DEPOSITION DID GO FORWARD, CORRECT?

**MR. WALLERSTEIN:** YES, IT DID. WE WERE NEVER ACTUALLY

PAID FOR THAT.

THE COURT:  WELL, I DIDN'T SEE ANYTHING IN THE RECORD TO TELL ME HOW MUCH THE BILL WAS.

MR. WALLERSTEIN:  THAT'S A LITTLE DIFFERENT.  THAT'S A LITTLE DIFFERENT.  SO WE HAD THE FIRST CALAFIORE, AND YOUR HONOR ISSUED A ORDER THAT, AS YOU RECOUNTED, THAT GETS FIVE ADDITIONAL HOURS.  THEY PAY FOR THE FEES AND EXPENSES.

WE HAVE TRIED TO MEET AND CONFER ON THAT.  WE'VE NEVER BEEN PAID, AND LOOP REFUSES TO PAY THAT.  THAT IS ACTUALLY NOT BEFORE YOUR HONOR TODAY.

THE COURT:  WELL, YOU ASKED FOR SOMETHING LIKE AT LEAST $5,000 --

MR. WALLERSTEIN:  YES.

THE COURT:  AND DOUBLE THOSE FEES.  BUT I'M JUST TRYING TO FIGURE OUT HOW MUCH THAT WAS.

MR. WALLERSTEIN:  SO, YES, YOU DON'T HAVE THAT IN FRONT OF YOU BECAUSE WE'VE NEVER MOVED FOR SANCTIONS FOR THE FAILURE TO PAY FOR THAT SECOND CALAFIORE DEPOSITION.  WE PROBABLY SHOULD, BUT --

THE COURT:  YOU DIDN'T SO --

MR. WALLERSTEIN:  WELL, WE DIDN'T.  IT'S PENDING.  THEY WERE ORDERED TO PAY, AND WE HAVEN'T RECEIVED OUR PAYMENT YET.  SO I PRESUME WE WILL DO THAT AT SOME POINT.  BUT, I MEAN, THERE WAS NO PAYMENT DEADLINE, TECHNICALLY, ON THAT.  BUT SO THAT'S SEPARATE AND APART.  THAT'S ACTUALLY DOCKET 436, THAT CALAFIORE

DEPOSITION.  AND AS I SAY, TECHNICALLY WAS NOT ORDERED TO BE HEARD TONIGHT.  BUT YOU DO MAKE THE GOOD POINT THAT WE WERE ORDERED TO GET PAID, AND WE NEVER DID.

THE OTHER ONES, THOUGH, ARE PEINTNER, EHLEN AND 30 (B) (6).  THAT -- AM I MISSPEAKING?  PEINTNER AND EHLEN.

**THE COURT:**  I THOUGHT IT WAS PEINTNER ON AND DINAPOLI, NO?

**MR. WALLERSTEIN:**  NO.  NO.  IT WOULDN'T HAVE BEEN.  THAT'S DOCKET 597.

**THE COURT:**  RIGHT.

**MR. WALLERSTEIN:**  AND IT WOULD BE -- OUR MOTION WAS 597.

**THE COURT:**  I'M SORRY.  YOU ARE RIGHT.  MR. EHLEN AND MR. PEINTNER.  SORRY.

**MR. WALLERSTEIN:**  SO --

**THE COURT:**  MY QUESTION TO YOU IS --

**MR. WALLERSTEIN:**  YOU HAVE NOTHING IN FRONT -- I APOLOGIZE.  GO HEAD.

**THE COURT:**  FOR MR. EHLEN AND MR. PEINTNER, WHO WERE SUPPOSED TO BE DEPOSED THE WEEK OF MARCH 28TH, WERE ANY COSTS INCURRED?

**MR. WALLERSTEIN:**  JUST THE LETTER BRIEF AND JUST THIS, THE MOTION AND THE BRIEFING ON IT.  BUT, NO, THEY WERE ULTIMATELY DEPOSED.

SO I THINK THE QUESTION THERE IS THERE'S FRANKLY A PUNITIVE

ASPECT.  WHEN YOUR HONOR ISSUES AN ORDER THAT SAYS:

"THEY ARE GOING TO BE DEPOSED ON THESE DATES," AND THEY SAY:

"NO WE'RE GOING TO JUST NOT COMPLY," WHICH IS WHAT HAPPENED.  WE END UP -- SO THEN THEY APPEAR WEEKS LATER.  WE TAKE -- GO AHEAD AND TAKE THE DEPOSITION.  HAS YOUR HONOR NOW DIVESTED HERSELF OF AUTHORITY TO ENFORCE THAT ORDER?  I THINK NOT.

SO IT'S ALMOST A PUNITIVE ISSUE.  BUT, I MEAN, YOUR HONOR ISSUED AN ORDER, AND THEY SAID:

"NO, WE'RE NOT GOING TO OBEY IT."

THEY ACTUALLY FIRST APPEALED IT TO JUDGE GILLIAM OVER THE WEEKEND. HE -- YOU KNOW, THEY -- SO YOUR HONOR ATTENDED A TELEPHONE CONFERENCE AMONG THESE COUNSEL ON A FRIDAY AFTERNOON.

YOU ISSUED -- YOU MADE -- YOU MADE AN ORAL ORDER THAT WAS ON A RECORDED PHONE CALL.  YOU FOLLOWED IT UP WITH A MINUTE ORDER THAT WE RECEIVED IMMEDIATELY AFTER THE TELECONFERENCE.

LOOP THEN APPEALED A RULE 72 OBJECTION TO JUDGE GILLIAM, AND SAID:

"OH, WE CAN'T COME NEXT WEEK."

HE RULED ON THAT MONDAY MORNING.  THEY SAID:

"WELL, WE'RE STILL NOT COMING.  WE'RE STILL NOT COMING," AND THEY DIDN'T COME.

**THE COURT:**  OKAY.

**MR. WALLERSTEIN:**  BUT SO WERE WE DAMAGED?  I MEAN,

THROUGH OUR MOTION PRACTICE WE INCURRED FEES.

THE COURT:  WELL, THAT'S WHAT I'M TRYING TO UNDERSTAND IS IN DECIDING WHETHER SANCTIONS SHOULD BE IMPOSED, I HAVE TO UNDERSTAND WHAT IS THE BASIS FOR SEEKING SANCTIONS?  SO IS IT BASED ON INHERENT AUTHORITY?  IS IT BASED ON RULE 37?  IF RULE 37, WHAT PART OF RULE 37?  THERE'S A LOT OF DIFFERENT PARTS OF THAT THAT AUTHORIZE DIFFERENT SANCTIONS.

AND THEN, WHAT IS THE APPROPRIATE SANCTION?  AND PART OF IT HAS TO DO WITH WHAT WAS THE HARM?  SO MY UNDERSTANDING IS MR. EHLEN AND MR. PEINTNER EVENTUALLY WERE DEPOSED, AND THERE WERE NOT ADDITIONAL EXPENSES THAT YOUR CLIENT HAD TO PAY FOR BECAUSE THEY MISSED THE FIRST ROUND.  RIGHT?

MR. WALLERSTEIN:  I THINK THAT'S ACCURATE OTHER THAN THE MOTION PRACTICE.

THE COURT:  OKAY.

MR. WALLERSTEIN:  AND INCIDENTALLY THERE'S THEN MOTIONS OVER THE CONDUCT OF THOSE DEPOSITIONS, WHICH HAVE ALSO BEEN RULED ON.  AND THOSE ARE ALSO SUBJECT TO OTHER SANCTION MOTIONS.

THE COURT:  ALL RIGHT.  TURNING TO DOCKET 895, WHICH IS YOUR MOTION TO GET EXPENSES FOR LUCA FERRI'S DEPOSITION BACK IN JANUARY OF THIS YEAR, THIS MOTION IS BROUGHT BY ALMAWAVE USA IN SEPTEMBER OF THIS YEAR.

WHY DOES ALMAWAVE USA HAVE STANDING TO MOVE FOR THESE EXPENSES THAT HAVE TO DO WITH LUCA FERRI?

MR. WALLERSTEIN:  I THINK ESSENTIALLY, YOUR HONOR, THE

ANSWER IS THE -- HARKENS BACK TO THE VERY FIRST QUESTION AND ANSWER WE HAD.  WE NEVER MADE A DISTINCTION BETWEEN ALMAWAVE USA AND THE ITALIAN ALMAWAVE DEFENDANTS FOR PURPOSES OF THOSE DEPOSITIONS.  SO ALMAWAVE USA WAS BEING DEPOSED.  THE ITALIAN ALMAWAVE DEFENDANTS WERE BEING DEPOSED.  IT WENT TO THE MERITS. IT WENT TO JURISDICTION.  LUCA FERRI WAS A DEPONENT.

IT'S NOT TRUE THAT HE WAS ONLY A DEPONENT FOR THE ITALIAN ALMAWAVE DEFENDANTS.  HE WAS AS MUCH A WITNESS FOR ALMAWAVE USA. HE'S GOING TO BE -- IF THE ITALIAN ALMAWAVE DEFENDANTS WERE NOT PART OF THIS CASE, HE WOULD STILL BE A WITNESS.  HE WOULD STILL BE A WITNESS FOR USA.  HE WOULD BE TESTIFYING AS A DEFENSE WITNESS FOR THEM, AND LOOP WOULD BE TAKING HIS DEPOSITION.  SO IT'S AN ODD DISTINCTION.

THE COURT:  WELL, MAYBE -- WHAT IS HIS ROLE WITH RESPECT TO ALMAWAVE USA?

MR. WALLERSTEIN:  I DON'T KNOW THAT HE REALLY HAS A FORMAL EMPLOYMENT OR TITLE WITH THEM.  BUT OBVIOUSLY THEY WERE A SUBSIDIARY OF THE ITALIANS.  HE IS THE TECH GUY WHO UNDERSTOOD THE TECHNOLOGY.  SO HE WAS HERE.  AND IF NOTHING ELSE HE CERTAINLY WAS COLLABORATING WITH ALMAWAVE USA TO SELL THEIR PRODUCTS HERE.

THE COURT:  OKAY.  THANK YOU, MR. WALLERSTEIN.

MR. WALLERSTEIN:  THANK YOU, YOUR HONOR.

THE COURT:  NOW, MR. CARDOZO OR MS. SHIVELY, IS ONE OF YOU GOING TO ARGUE ON THE 840?

**MR. CARDOZO:** YES, YOUR HONOR, I WILL.

**THE COURT:** MR. CARDOZO, IS THAT GOING TO BE YOU?  DO YOU WANT TO STEP TO THE PODIUM, PLEASE?

**MR. CARDOZO:** SURE.

**THE COURT:** I DID NOTICE THAT MS. HEALY RETAINED YOUR SERVICES.  AND SO WHILE I READ THE BRIEFS AND THE SUBMISSIONS, AS HER COUNSEL MAYBE I CAN JUST ASK YOU TO ANSWER A COUPLE OF DIRECT QUESTIONS.

I'D LIKE TO KNOW FROM PLAINTIFF'S POSITION WHAT MS. HEALY SAYS SHE DID.  SHE DOES NOT DISPUTE THAT SHE USED PROFANITY, BUT SHE SAYS SHE SLAMMED THE COFFEE.  SO I DON'T KNOW IF THAT MEANS SHE TOOK THE CUP AND KEPT CONTROL OF IT AND SLAMMED IT ON THE TABLE, BUT MAINTAINED CONTROL OF THE CUP OR IF THE CUP SOMEHOW LEFT HER HAND.

WHAT DOES IT MEAN TO "SLAM HER COFFEE"?

**MR. CARDOZO:** SHE SLAMMED IT DOWN ON THE TABLE, BUT SHE DID NOT MAINTAIN CONTROL OF THE CUP.  IT BOUNCED ACROSS THE TABLE AFTER SHE SLAMMED IT DOWN.

**THE COURT:** SHE SLAMMED IT DOWN AND IT LEFT HER HANDS, BOTH THE CUP AND THE CONTENTS, AND IT WENT ACROSS THE TABLE TOWARD MR. WALLERSTEIN.

**MS. HEALY:** NO.

**MR. CARDOZO:** NOT TOWARDS MR. WALLERSTEIN.  IT WENT AT A CHAIR, AS I UNDERSTAND IT.

**THE COURT:** OKAY.  SO BUT AWAY FROM HER.

**MR. CARDOZO:** YEAH, IT WENT AWAY FROM HER, AND IT BOUNCED ACROSS THE TABLE.

**THE COURT:** AND WHAT IS HER POSITION ON WHY SHE DID THAT? IN OTHER WORDS, WHY SHE USED PROFANITY AND WHY SHE SLAMMED THE CUP AND LOST CONTROL OF IT.

**MR. CARDOZO:** I WOULD DESCRIBE IT BEST AS AN UNINTENTIONAL MOMENT OF PIQUE. IT'S BE AN EXTRAORDINARILY DIFFICULT CASE FOR BOTH SIDES. IN THE HEAT OF THE MOMENT, I BELIEVE IT'S SIMILAR TO COUNSEL WHO GETS UPSET AND SLAMS ON THE TABLE.

WHAT HAPPENED IS SHE HAD GOTTEN UP. SHE HAD THE COFFEE IN HER HAND. SO IN THAT GESTURE, IT CAME DOWN ON THE TABLE. BUT IT WAS -- IT WASN'T AN INTENTIONAL ACT OR ANYTHING LIKE THAT. IT WAS -- IT WAS A REACTION, I WOULD SAY. YOU KNOW, SORT OF A -- KIND OF AN OUTBURST KIND OF REACTION.

**THE COURT:** OKAY. THE TAKEAWAY FROM THE BRIEFING SEEMED TO BE THAT THE REASON SHE DID IT WAS BECAUSE SHE WAS PROVOKED BY THE OTHER SIDE. IN OTHER WORDS, IT WAS NOT HER FAULT; THAT THE OTHER SIDE MADE HER DO IT. IS THAT THE POSITION SHE'S TAKING?

**MR. CARDOZO:** I WOULD QUALIFY THAT A LITTLE BIT. THERE WAS PROVOCATION IN THE SENSE THAT WHAT WAS GOING ON WITH THIS WITNESS AND WHY THEY WERE EVEN IN BOSTON IN THE FIRST PLACE AND EVERYTHING WAS SORT OF CUMULATIVELY UPSETTING, AND WHAT WAS GOING ON ON THAT DAY IN THE DEPOSITION WAS VERY UPSETTING.

THAT BEING SAID, OF COURSE THAT ISN'T SUFFICIENT TO JUSTIFY WHAT HAPPENED.  BUT IT WAS -- I WOULD DESCRIBE IT AS MITIGATION.

THE COURT:  OKAY.  AND IS MS. HEALY TAKING THE POSITION THAT HER CONDUCT WAS NOT SUBJECT TO CRITICISM?  SO, IN OTHER WORDS, IS SHE ARGUING THAT MR. WALLERSTEIN WAS PROVOCATIVE IN CREATING A PROBLEM IN THIS CASE OR -- AND/OR SPECIFICALLY IN THAT DEPOSITION, BUT THAT HER CONDUCT WAS OTHERWISE PROFESSIONAL?

MR. CARDOZO:  ABSOLUTELY NOT.  OF COURSE IT WAS SUBJECT TO CRITICISM.  BUT I THINK I WOULD DESCRIBE HER POSITION AS TWOFOLD.  THE REQUESTED RELIEF ON THIS MOTION IS EXTRAORDINARY AND EXTREME, AND I WOULD SUBMIT POTENTIALLY TACTICALLY ABUSIVE.  AND I'LL LEAVE THAT TO THE ARGUMENT PART OF THIS THING.

I THINK THERE WAS BAD CONDUCT ON BOTH SIDES.  I THINK THE RECORD CLEARLY REFLECTS THAT.

THE COURT:  JUST A MOMENT.

MR. CARDOZO:  BUT SHE'S SUBJECT TO CRITICISM FOR SURE.

THE COURT:  AND I THINK I WASN'T CLEAR.  PUTTING ASIDE THE PROFANITY AND THE COFFEE, OKAY?  I THINK WE CAN ALL AGREE IT'S NOT GOOD, RIGHT?  BUT MS. HEALY TALKS ABOUT BEHAVIOR BY MR. WALLERSTEIN.  AND I GUESS I'M ASKING ABOUT HER OWN BEHAVIOR OTHER THAN THE PROFANITY AND THE COFFEE CUP.

IS SHE SAYING THAT SHE OTHERWISE BEHAVED PROFESSIONALLY IN HER CONDUCT IN THE DEPOSITION?

MR. CARDOZO:  I WOULD SAY YES, YOUR HONOR.  I HAVE TO QUALIFY THAT IN THE SENSE THAT THOSE WHO SORT OF AREN'T IN THE

MOMENT, SOMETHING LIKE ME COMING IN COOLY FROM THE OUTSIDE COULD LOOK AT THAT TRANSCRIPT AND PROBABLY THINK OF BETTER WAYS TO HANDLE THINGS, YOU KNOW, BEYOND JUST THE COFFEE AND SO ON.

THERE ARE BETTER WAYS TO HANDLE THE SITUATION.  I THINK IN THE HEAT OF THE MOMENT GIVEN WHAT SHE'S DEALING WITH I DON'T WANT TO LEVY THAT CRITICISM AT HER.  THERE WERE SPECIFIC THINGS SHE DID, FOR SURE.  BUT THE REST, YOU KNOW, THERE WAS SORT OF A BACK AND FORTH GOING ON WITH THIS WITNESS.  THE WITNESS HIMSELF, HE'S A SCIENTIST WHOSE VIEW IS:

"I HAVE NOTHING TO DO WITH THIS CASE."

HE HIMSELF IS SAYING:

"STOP, PLEASE.  LET ME GIVE THE ANSWERS AND GET ON WITH IT."

AND I THINK SHE FEELS AN OBLIGATION TO STEP IN AND SORT OF VIGOROUSLY PROTECT THE WITNESS.

**THE COURT:**  DID SHE REPRESENT THE WITNESS?

**MR. CARDOZO:**  SHE DID NOT, ACTUALLY, YOUR HONOR.  THAT WAS PART OF THE DIFFICULTY OF THIS WHOLE SITUATION.

**THE COURT:**  DID THIS DEPOSITION TAKE PLACE AFTER I ISSUED THE ORDER LIMITING OBJECTIONS TO OBJECTIONS?

**MR. CARDOZO:**  YES, IT DID.

**THE COURT:**  DID SHE GO BEYOND THAT?

**MR. CARDOZO:**  HONESTLY, I DIDN'T SEE WHERE SHE DID.  I MEAN, THERE WERE TIMES, YOUR HONOR, WHERE THINGS ARE BEING SAID TO THE WITNESS THAT ARE SORT OF LEANING ON THE WITNESS IN A

CERTAIN WAY.

AND I THINK AT THAT POINT, AT THAT POINT HER STEPPING IN, THERE'S NO ONE ELSE TO DO IT, YOU SEE.  AND SO I THINK THERE ARE SOME -- THERE ARE SOME ANSWERS SHE GAVE DURING THAT DEPOSITION OR OBJECTIONS SHE MADE THAT ARE IN A GRAY AREA, BECAUSE THE WITNESS IS BEING LEANED ON.  THE TRANSCRIPT SHOWS THAT, I THINK, FAIRLY CLEARLY.

AND MORE IMPORTANTLY, SOME OF THE THINGS THAT HAPPENED OFF THE RECORD THAT ARE NOW IN EVIDENCE FROM THE AUDIO OR THE VIDEO SHOW THAT, AS WELL.

**THE COURT:**  OKAY.  THANK YOU, MR. CARDOZO.

**MR. CARDOZO:**  THANK YOU.

**THE COURT:**  ALL RIGHT.  I'M NOW GOING TO OPEN THIS TO ARGUMENT.  HERE'S HOW WE'RE GOING TO DO IT.  I'M GOING TO GIVE EACH SIDE 20 MINUTES.

I'LL START WITH THE PLAINTIFF.  YOU CAN USE YOUR 20 MINUTES HOWEVER WOULD YOU LIKE TO ADDRESS THE MOTIONS EITHER IN YOUR OPPOSITION TO THE FOUR MOTIONS, OR IN ACCORDING YOUR MOTION.

I'LL THEN SWITCH TO THE DEFENSE AND ALLOW THEM 20 MINUTES. AND BECAUSE THE PLAINTIFF IS FACING MORE OF THEM, SO THERE'S FOUR LEVELED AT THE PLAINTIFF, I'LL THEN ALLOW LIMITED REBUTTAL TIME. PROBABLY SOMETHING LIKE TEN MINUTES.  OKAY?

SO I JUST ASK THAT -- I'M NOT GOING TO LET THE OTHER SIDE INTERRUPT WHILE A PARTICULAR SIDE HAS THE PODIUM AND IS ARGUING THEIR SIDE OF THE MOTIONS.

IF YOU MOVE BEYOND ONE MOTION TO ANOTHER ONE IT WOULD BE VERY HELPFUL IF YOU JUST LET ME KNOW SO THAT I CAN FOLLOW ALONG. OKAY?

SO WHO WILL ARGUE ON BEHALF OF PLAINTIFF?

**MR. CARDOZO:** IF I CAN HAVE JUST TEN SECONDS.

**THE COURT:** SURE. SURE. OKAY.

**MR. CARDOZO:** OKAY. SO I'LL ADDRESS THE 840 MOTION FIRST, AND THEN MS. HEALY WILL ADDRESS THE REST.

**THE COURT:** OKAY. SOUNDS GOOD. SO 20 MINUTES TOTAL. I'M GOING TO HOLD EVERYBODY TO THE TIME. OKAY?

**MR. CARDOZO:** OKAY. I'LL TRY TO BE FIVE MINUTES OR LESS.

**THE COURT:** ALL RIGHT.

**MR. CARDOZO:** AND, YOUR HONOR, I WANT TO START WITH SOMETHING THAT IS ENTIRELY MISSING FROM THE MOTION AND YOU REMARKED ON EARLIER IN YOUR REMARKS, WHICH IS ANY IDENTIFICATION OF THE SPECIFIC BASIS OR LAW IN SUPPORT OF THE 840 MOTION. THERE'S NOTHING ARTICULATED, ANY LAW ON THAT MOTION AT ALL, AND ANY IDENTIFICATION OF THE HARM IN RELATION TO THE EXTREME AND EXTRAORDINARY REQUEST.

AND I THINK IT'S IMPORTANT TO REMEMBER WHAT THE SPECIFIC REQUEST OF THE MOTION WAS.

**THE COURT:** MR. CARDOZO, DON'T YOU THINK THAT THERE IS HARM?

**MR. CARDOZO:** ABSOLUTELY. ABSOLUTELY. BUT I'M -- WHAT

I'M REFERRING TO IS HARM TO THE UNDERLYING DEFENDANT.

**THE COURT:**  OH, OKAY.

**MR. CARDOZO:**  AND WHY I SAY THAT AND WHY I WANT TO BEGIN WITH THE LAW HERE THAT WAS NEVER MENTIONED IN THE MOTION IS BECAUSE THE LAW IS CLEAR THAT A REVOCATION OF A PRO HAC VICE IS GOVERNED BY THE SAME STANDARD AS A MOTION TO DISQUALIFY COUNSEL.

AND WHAT THE NINTH CIRCUIT AND THIS COURT HAS DESCRIBED AS THE RELEVANT CONSIDERATIONS THE COURT MUST WEIGH THE COMBINED EFFECT OF PARTY'S RIGHT TO COUNSEL OF CHOICE, AN ATTORNEY'S INTEREST IN REPRESENTING A CLIENT, THE FINANCIAL BURDEN ON A CLIENT FOR REPLACING DISQUALIFIED COUNSEL, AND ANY TACTICAL ABUSE UNDERLYING A DISQUALIFICATION PRINCIPLE AGAINST THE FUNDAMENTAL PRINCIPLE OF FAIR RESOLUTION OF DISPUTES WITH AN ADVERSARY SYSTEM REQUIRES VIGOROUS REPRESENTATION OF PARTIES BY INDEPENDENT COUNSEL UNENCUMBERED BY CONFLICTS OF INTEREST.

BECAUSE THE POTENTIAL FOR ABUSE, DISQUALIFICATION MOTIONS MUST BE SUBJECT TO PARTICULARLY STRICT JUDICIAL SCRUTINY.  AND I WANT TO START WITH THAT LEGAL STANDARD, BECAUSE THE REQUEST IN THE MOTION WAS MADE AFTER THE CLOSE OF THE DISCOVERY TO TAKE AWAY FROM A SMALL STARTUP ITS LEAD COUNSEL OF CHOICE.  AND THE SPECIFIC REQUEST WAS REVOKE A PRO HAC VICE AND DO NOT CONTINUE THE TRIAL DATE.

AND I WOULD SUBMIT THIS IS A VERY DIFFICULT SITUATION.  THERE ARE A LOT OF THINGS NOT TO LIKE ABOUT IT.  BUT THAT IS A CLEAR POWER PLAY IN WHICH WE'VE GOT AN UNDERLYING CASE HERE,

VERY SERIOUS ALLEGATIONS OF TRADE SECRET THEFT.  AND THE GOAL HERE IS TO KNOCK OUT THE LAWYER ON THE EVE OF TRIAL AND PREVENT THE ADJUDICATION OF THIS CASE ON THE MERITS.

WE CAN'T EVER LOSE SIGHT OF THE FACT THAT ALL OF US, ALL OF OUR PROFESSIONAL OBLIGATIONS, EVERYONE IN THIS ROOM, WE OWE THOSE OBLIGATIONS SO THAT THE PEOPLE OUTSIDE THESE ROOM, WHOSE LIVELIHOOD DEPENDS UPON THE OUTCOME OF THIS DISPUTE DOESN'T HAVE THAT COMPROMISED.

THERE IS -- AND I BRING THAT UP, AND THE REASON WHY I SAID: "NO HARM TO THE UNDERLYING PARTY," IS BECAUSE THAT'S WHAT WE ALWAYS LOOK AT IN THESE CASES.

LOOP WOULD BE ABSOLUTELY CRUSHED BY THE REMOVAL OF THE LAWYER WHO HAS REPRESENTED HER -- THE COMPANY FROM THE BEGINNING, IS AN ITALIAN SPEAKER, WHO KNOWS THIS CASE INSIDE AND OUT.

THIS DEPOSITION WENT ON AND WAS COMPLETED.  THERE HAVE BEEN ARGUMENTS ABOUT THE RELEVANCE OF THIS WITNESS AND SO ON.  BUT WHATEVER RELEVANCE OR INFORMATION HE HAD WAS OBTAINED.

NOW, ABSOLUTELY THE CONDUCT OF COUNSEL MUST BE ADDRESSED, AND THERE MUST BE A REMEDY FOR THAT.  BUT TO PREJUDICE THE MERITS OF THE CASE IS WHEN WE'RE ON VERY SHAKY GROUND.  AND THERE'S ANOTHER --

**THE COURT:**  WHAT'S AN APPROPRIATE REMEDY?

**MR. CARDOZO:**  WELL, FOR ONE, THE CLEANING EXPENSES, WHICH HAVEN'T BEEN SUPPORTED BY EVIDENCE.  AND THERE'S SOME DISPUTE ABOUT -- BECAUSE IT'S JUST A STATEMENT IN THE BRIEF.

THERE'S NO DECLARATION FROM MR. WALLERSTEIN.  BUT IF THERE'S SOME SUBSTANTIATION OF THAT, THAT WOULD BE ONE.

I WOULD CONTRAST THAT WITH THE REQUEST FOR THE FLIGHT TO BOSTON, THE EXPENSES OF THE DEPOSITION WHICH WENT FORWARD, WHICH WAS ANOTHER THING THAT IS REQUESTED IN THE MOTION.

**THE COURT:**  DO YOU AGREE THAT YOUR CLIENT'S BEHAVIOR WAS INAPPROPRIATE AND SANCTIONABLE?

WE ARE JUST TALKING ABOUT WHAT SANCTIONS SHOULD BE IMPOSED.

**MR. CARDOZO:**  I DON'T WANT TO -- I'M IN A DIFFICULT SPOT HERE.  I DON'T WANT TO CONCEDE IT, YOUR HONOR.  I DON'T WANT TO CONCEDE THAT.

I'LL STAND SILENT.  IF I COULD STAND SILENT ON THAT POINT. I THINK I'VE MADE THE POINT THAT --

**THE COURT:**  WELL, NO.  I'M NOT GOING TO LET YOU STAND SILENT ON THE POINT.

**MR. CARDOZO:**  OKAY.

**THE COURT:**  YOU REPRESENT HER ON THIS.

**MR. CARDOZO:**  I WOULD SAY SOME SANCTION IS IN ORDER. SOME.

**THE COURT:**  OKAY.

**MR. CARDOZO:**  BUT NOTHING --

**THE COURT:**  I UNDERSTAND.

**MR. CARDOZO:**  NOTHING THAT HAS BEEN DEMONSTRATED TO THE COURT OR JUSTIFIED.

**THE COURT:**  IF HER BEHAVIOR IS INAPPROPRIATE AND

SANCTIONABLE AND SHOULD BE SANCTIONED, WHAT SHOULD THE SANCTION BE?

**MR. CARDOZO:** WELL, I MENTIONED THE ONE.  IF THERE'S SOME PROOF, SOME PROOF THAT THERE WERE CLEANING EXPENSES INCURRED, WHICH IS A FACT THAT THE RECORD IS INCOMPLETE ON.  I'LL PUT IT AT THAT.  THEN THAT MIGHT BE AN APPROPRIATE ONE.

**THE COURT:** HOW ABOUT A REFERRAL TO THE PROFESSIONAL CONDUCT COMMITTEE OF THIS COURT?

**MR. CARDOZO:** I WOULD NOT CONCEDE THAT UNLESS IT WAS A MUTUAL REFERRAL, BECAUSE I DON'T THINK --

**THE COURT:** WELL, THOSE ARE NOT MADE THROUGH MUTUAL REFERRALS.  NO ONE USUALLY AGREES TO BE REFERRED THERE.  BUT IT WOULDN'T BE SOMETHING THAT WOULD HARM MS. HEALY'S CLIENT.

**MR. CARDOZO:** I THINK FOR THAT LAST ONE, YOU'D HAVE TO CONSIDER THE BROADER CONTEXT IN THE SENSE THAT I LOOK IN, YOUR HONOR -- YOU KNOW, ONE OF THE INTERESTING THINGS ABOUT SOMEONE BRAND NEW COMING INTO THIS OVERHEATED SITUATION, I LOOKED AT IT AND THE FIRST THING I NOTICED WAS THIS OVERREACHING ATTEMPT TO KNOCK HER OFF THE CASE AND SORT OF PREJUDICE THE MERITS.

AND I IMMEDIATELY SMELL A RAT WHEN I SEE THAT.  THAT TELLS ME THERE'S A LOT MORE GOING ON IN THE SITUATION.  AND I SEE -- I HONESTLY SEE WHEN I LOOK BACK IN A LOT OF EVIDENCE OF BULLYING AND BAITING LEADING UP TO THIS MOMENT.

I MEAN, WE HAVE GOT A LETTER -- WE'VE GOT LETTER IN HERE APOLOGIZING TO THE SOUTHERN DISTRICT OF NEW YORK FOR FALSE

STATEMENTS MADE THERE.

WE'VE GOT THIS VERY TROUBLING BUSINESS OF THE CALL FROM MR. WALLERSTEIN'S WIFE IMMEDIATELY AFTER THIS DEPOSITION CLAIMING HE HAD FIRST AND SECOND DEGREE BURNS FROM ICED COFFEE.

I MEAN, THERE IS AN ATTEMPT TO OVERPLAY THIS SITUATION.  THE RECORD CLEARLY SHOWS THAT.  AND I AM VERY UNCOMFORTABLE WITH THE WAY THE BLACK HAT IS BEING ATTEMPTED TO BE PUT SOLELY ON MS. HEALY WHEN, FOR ALL I KNOW FROM WHAT I'VE SEEN, THAT THIS IS A CALCULATED WAY TO GET HER TO MAKE THE MISTAKE OF RISING TO THIS STUFF SO THAT THEY CAN KNOCK LOOP OUT.

I'VE SEEN ENOUGH IN THIS RECORD TO GIVE ME SERIOUS CONCERNS ABOUT THAT, YOUR HONOR.

**THE COURT:**  ARE YOU ARGUING THAT THEY BAITED HER IN ORDER TO GET HER TO RESPOND THIS WAY SO THEY COULD KNOCK HER OUT OF THE CASE?

**MR. CARDOZO:**  I'M SAYING THROUGHOUT THE COURSE OF THE CASE IT FEELS LIKE THERE'S BEEN SOME BAITING GOING ON.  THAT'S JUST MY IMPRESSION FROM WHAT I'VE READ IN THE RECORD.  I MEAN, THEIR -- EVERY MOVE WITH WHICH SHE MAKES WITH WHICH THEY DISAGREE, THERE'S NOT JUST THE SANCTIONS REQUEST, BUT AN OVERREACHING ONE.  AND THAT TO ME IS VERY, VERY TROUBLING.  AND THAT TO ME CONTRIBUTES TO A CLIMATE WHICH, WHILE IT DOESN'T EXCUSE WHAT HAPPENED, IT CERTAINLY MITIGATES IT.  AND THAT'S MY ONLY POINT THERE.

**THE COURT:**  JUST SO YOU KNOW YOU'RE EIGHT-AND-A-HALF

MINUTES IN.

MR. CARDOZO: OKAY. SO LET ME LEAVE THE SUBJECT ON THIS THOUGHT. THEY HAVEN'T CITED ANY LAW IN THE MOTION. THEY DIDN'T CITE THE REQUEST. THEY HAVEN'T IDENTIFIED ANY HARM TO THE UNDERLYING PARTY.

THIS WAS A CLEARLY OVERREACHING ATTEMPT TO PREJUDICE THE MERITS OF THIS CASE, WHICH IS THE ONE THING THE COURTS HAVE TO BE -- THAT'S WHY THAT QUOTE I MADE ABOUT PARTICULARLY VIGILANT, PARTICULARLY STRICT SCRUTINY, AND ONE THING THE COURTS CAN NEVER LOSE SIGHT OF.

I DON'T THINK THIS COURT SHOULD EVER LOSE SIGHT OF THE FACT THAT WHAT IS ALLEGED IN THIS CASE IS WE HAVE A SMALL STARTUP. PROMINENT SCIENTISTS DEVOTE YEARS OF THEIR LIFE TO DEVELOPING A PATH-BREAKING TECHNOLOGY. AND THEIR CEO IS ALLEGED TO BE A DOUBLE AGENT.

THIS, THE FOCUS AT THIS POINT IN THE CASE, HAS GOT TO BE ON GETTING THESE ALLEGATIONS TRIED. THAT'S WHAT OUR SYSTEM DEPENDS UPON. THAT'S WHAT PEOPLE OUTSIDE THIS COURTROOM ARE DEPENDING UPON. AND I'LL LEAVE IT AT THAT, YOUR HONOR, AND TURN IT OVER TO MS. HEALY FOR THE NEXT MOTION.

THE COURT: OKAY.

MS. HEALY: YOUR HONOR, FIRST OF ALL, BEFORE I MOVE ON, IF I HAVEN'T APOLOGIZED ENOUGH I PROFUSELY APOLOGIZE AGAIN. I'VE BEEN ADMITTED PRO HAC VICE IN MANY COURTS AROUND THE COUNTRY. BEFORE YOUR HONOR SANCTION ME, I HAVE NEVER BEEN SANCTIONED

BEFORE IN MY ENTIRE CAREER. I'M NOT PROUD OF WHAT HAPPENED. AND I KNOW I HAVE COUNSEL HERE BECAUSE I WANTED TO AVOID, YOU KNOW, BEING PERSONALLY INVOLVED WHEN I'M HERE TO DO A JOB REPRESENTING MY CLIENT. BUT I WANTED TO MAKE THIS KNOWN TO THE COURT.

I THINK I HAVE BEEN SANCTIONED BY THE PUBLIC. MR. WALLERSTEIN HAS TOLD EVERYONE THAT I'VE ASSAULTED HIM, WHICH IS NOT TRUE. AND I THINK MY CAREER CERTAINLY HAS, YOU KNOW -- WILL ALWAYS BEEN SUBJECT TO THOSE FALSE ALLEGATIONS, INCLUDING TO HIS FORMER BLOG EMPLOYER. THEY REFUSED TO ACTUALLY RETRACT THE ATTRIBUTION OF A LINE THAT HE MADE IN HIS MOTION WHERE HE CLAIMED THAT I AGREED THAT I THREW COFFEE AT HIM.

THAT BLOG WAS REDIRECTED TO MY WEBSITE THOUSANDS OF TIMES. EVERYONE WAS READING THAT ARTICLE THAT I AGREED I ASSAULTED HIM, WHICH I SWEAR, YOUR HONOR, I DID NOT. I HAD A MOMENT THAT I -- I WISH I COULD GO BACK, AND I AM NOT ABLE TO. AND IT'S -- IT WAS A VERY STRESSFUL -- THERE'S NO JUSTIFICATION FOR SURE.

SO IF YOUR HONOR WANTS TO REFER ME, I WILL CERTAINLY ACCEPT THAT PUNISHMENT, EVEN THOUGH I BELIEVE I HAVE BEEN SANCTIONED MUCH MORE THAN ANYTHING I EVER THOUGHT POSSIBLE.

AND WITH THAT I JUST WOULD LIKE TO ADDRESS NOW MY CLIENT'S --

**THE COURT:** OKAY.

**MS. HEALY:** -- POSITION. WELL, IN RESPECT OF MOTION 840, CERTAINLY IT WASN'T CLEAR TO US WHETHER IT WAS DIRECTED TO THE CLIENTS OR WE ADDRESSED THIS, JUST, YOU KNOW, MR. RAYMOND --

MR. CARDOZO JUST ADDRESSED ON BEHALF OF MYSELF, BECAUSE IT SEEMED IT WAS MORE DIRECTED AT ME.

IN TERMS OF MOTION 731, YOUR HONOR, I THINK I ONLY WANT TO MAKE A FEW POINTS BECAUSE I THINK IT'S A VERY CLEARCUT MOTION INSOFAR AS WE -- IT'S NOT OUR ALLEGATIONS.  IT'S THE RECORD.  AND WHAT MR. WALLERSTEIN STOOD UP AND SAID HERE TODAY IS VERY CONVENIENT, IN MY VIEW.

I HAVE REPEATEDLY TRIED TO GET -- MS. KERRY (PHONETIC) TRIED TO GET HER.  IN THAT SUBSEQUENT DEFAULT MOTION THERE WAS A FOOTNOTE.  YOU KNOW, I DIDN'T HAVE A LOT OF TIME TO PREPARE, SO I AM HAPPY TO SUBMIT MORE CITATIONS TO THE RECORD.

BUT WE INCLUDED FOOTNOTE CITING EVERY SINGLE PLACE WHERE WE TIME AND AGAIN TRIED TO MOVE TO COMPEL.  AND TO HEAR MR. WALLERSTEIN SAY HERE TODAY THAT WE NEVER ASKED HIM IS JUST ABSOLUTELY FALSE.

AND IN RESPECT TO THE CONTROL, POSSESSION, CUSTODY AND CONTROL, THEY REPEATEDLY IN THIS CASE TOOK THE POSITION THAT ALMAWAVE USA WAS TOTALLY SEPARATE.  AND NOW, APPARENTLY, IN A COMPLETE TURNAROUND THEY SAY THAT IT'S NOT SEPARATE, AND THEY HAVE DONE EVERYTHING FOR EVERYONE.

BUT IN FACT, YOUR HONOR, I CAN'T GO BY WHAT MR. WALLERSTEIN IS SAYING EX POST FACTO IN DEFENDING A VERY SERIOUS MOTION.  I GO BY THE WRITTEN RECORD.

AND YOUR HONOR HAS BEEN VERY HARSH WITH US.  AND I AM ENTITLED TO RELY ON WHAT HE'S SAYING.  AND WHAT HE SAID IN THE

WRITTEN RECORD, INCLUDING BY ALMAWAVE USA, THAT THEY WOULD ONLY PRODUCE WHAT ALMAWAVE USA HAS POSSESSION, CUSTODY AND CONTROL OF.

AND JUST ONE SECOND, BECAUSE I WANT TO GIVE YOU A CITE.

I WANT TO POINT THE COURT TO -- I DON'T BELIEVE THIS DOCUMENT WAS INTRODUCED IN RESPECT OF THE 731 MOTION.  BUT I THINK IT WAS INTRODUCED IN RESPECT OF THE MOTION FOR DEFAULT. WE -- BECAUSE WHEN THEY PRESENTED THE CULP DECLARATION, THAT DECLARATION IS NOT CONSISTENT WITH THE RECORD.

THE RECORD ABOUT ALMAWAVE USA, TIME AND AGAIN, SAYS:

"WE'RE ONLY PRODUCING WHAT IS IN ALMAWAVE USA POSSESSION, CUSTODY AND CONTROL."

AND THEY POINT THE COURT TO DOCKET 8972.

**THE COURT:**  897-2?

**MS. HEALY:**  SORRY.  THAT'S ACTUALLY 897-2 ACTUALLY HAS A CHART OF THE REQUEST.  AND 897-12, BEGINNING AT DJX -- ACTUALLY, I THINK IT'S, YEAH, DJX1390.

WE PUT IN THE DISCOVERY RESPONSES OF ALMAWAVE USA.  FIRST OF ALL, YOUR HONOR, THEY RESPONDED TO ONLY A FEW OF THE DISCOVERY RESPONSES.  I'VE PERSONALLY REVIEWED THE ENTIRE PRODUCTION BY ALMAWAVE USA, BECAUSE A LOT OF IT'S IN MIXED LANGUAGES. SO I KNOW, YOUR HONOR.  I SPEAK WITH KNOWLEDGE OF WHAT THEY PRODUCED.

AND THE ITEMS WE IDENTIFIED AS EXAMPLES OF WHAT WE WERE ABLE TO FIND, BECAUSE SOME OF THE PEOPLE PRODUCED THEM, THEY ARE NOT IN THERE.  THEY DIDN'T PRODUCE MOST OF THE STUFF THAT IS AT THE HEART OF THIS LITIGATION THAT WE REQUESTED.

FOR INSTANCE, TO GIVE THE COURT ANOTHER EXAMPLE, WE SUBPOENAED GE.  AS THE COURT MAY RECALL, GE IS AN INVESTOR OR HAS SOME TYPE OF RELATIONSHIP TO THE ITALIAN ENTITIES.

AND THEY PRODUCED BOARD MINUTES OF THE ITALIAN COMPANY SAYING THAT LOOP AI IS ONE OF THEIR COMPETITORS.  THAT'S IN THE RECORD.  IT'S UNDER SEAL.  I'M HAPPY TO PROVIDE THE COURT A CITE.  BUT THAT'S CRITICAL INFORMATION, BECAUSE THEY HAVE MAINTAINED ALL ALONG:

"OH, WE'RE NOT COMPETITORS."

THERE'S MANY, MANY EXAMPLES.  AND, OF COURSE, I'M LIMITED, BECAUSE I DIDN'T -- I WASN'T ABLE TO GET ALL OF THE STUFF.  FOR INSTANCE, WE SUBPOENAED THEIR OWN ACCOUNTANT, SENSIBA SAN FILIPPO, WHICH WE ALLEGE IS ONE OF THE SERVICE PROVIDERS THAT THEY STOLE FROM OUR CLIENT.

AND WHEN WE SUBPOENAED THEM THEY WERE READY TO SERVE THE DOCUMENTS.  AND THEN, I GUESS MR. WALLERSTEIN OBJECTED, SO THEY GAVE US NOTHING.

SO THERE'S A LOT OF STUFF OUT THERE THAT WE WEREN'T ABLE TO GET, EVEN FROM THIRD PARTIES.  AND FOR THEM TO COME IN AND SAY:

"WE GAVE YOU EVERYTHING," THAT'S JUST TOTALLY UNTRUE.  IT'S UNTRUE ON TWO GROUNDS.  IT'S UNTRUE BECAUSE THEY ALWAYS MAINTAIN IN FRONT OF THE COURT THAT THEY WERE SEPARATE ENTITIES.

IT'S UNTRUE BECAUSE IT'S REFLECTED IN THEIR DISCOVERY RESPONSES THAT THEY ONLY WERE PRODUCING FOR ALMAWAVE USA.

MS. SANDEI EVEN SAYS THAT.  IN THE SUMMARY JUDGMENT DOCUMENT

MOTION DECLARATION NUMBER 740-6, PARAGRAPH FIVE, SHE SPECIFICALLY SAYS SHE'S REVIEWED THE DOCUMENTS PRODUCED BY ALMAWAVE USA.

THAT'S WHAT THEY FILED IN SUPPORT OF THE SUMMARY JUDGMENT. AND IT'S NOT -- FOR HIM TO STAND UP AND SAY:

"WE'RE GOING TO GIVE YOU A RULE 34 CERTIFICATION NOW," WHEN WE'VE ASKED FOR A YEAR. AND WE HAVE REPEATEDLY TOLD THEM:

"MOVE FOR A STAY LIKE EVERY LITIGANT DOES."

JUDGE GILLIAM, WHEN HE SAID:

"IF A PARTY WANTS TO -- THINKS DISCOVERY IS STAYED, YOU HAVE TO MOVE FOR IT AND GET MY CONCURRENCE."

THAT'S BECAUSE HE ARGUED IN HIS SUBMISSION IN THE CASE MANAGEMENT ORDER THAT THERE SHOULDN'T BE DISCOVERY FROM THE ITALIANS.  AND JUST LIKE HE GOT A STIPULATION AT THE HEARING FOR THE INITIAL DISCLOSURES, HE WAS REQUIRED TO DO IT.

BUT, YOUR HONOR, AS WE ARGUE, HE DIDN'T MOVE FOR THAT STAY, NOT BECAUSE HE WAS CONFUSED, BUT BECAUSE HE WAS CONCURRENTLY TELLING JUDGE GILLIAM:

"EVERYTHING IS DONE.  WE PRODUCED EVERYTHING."

AND HE WAS TRYING TO RUN OUT THE CLOCK ON US, WHICH IS EXACTLY WHAT WOULD HAPPEN TODAY IF HE'S JUST PERMITTED TO GIVE A RULE 34 CERTIFICATION, WHICH WOULD BE WORTHLESS TO US.  BECAUSE HOW ARE WE GOING TO -- WHAT ARE WE GOING TO DO WITH IT?

ALL OF A SUDDEN HE CLAIMS:

"NO, I PRODUCED EVERYTHING" WHEN WE KNOW THAT'S NOT TO BE THE CASE. WE HAVE THE CORRUPTION E-MAIL WHERE MS. SANDEI IS

TALKING TO MS. GATTI ABOUT THESE PAYMENTS THAT WE ALLEGED WERE CORRUPT PAYMENTS.

WE RECEIVED THAT FROM RUSSELL REYNOLDS.  THEY NEVER PRODUCED THAT.  THERE'S MANY, MANY THINGS.  AND CLEARLY THERE WOULD HAVE BEEN DISCUSSIONS INTERNALLY ABOUT THESE ISSUES.  HOW COULD A COMPANY OF THAT STATURE, AS THEY CLAIM TO BE A VERY LARGE, PROMINENT COMPANY, FOR FOUR MONTHS BE DEALING WITH GATTI AND THE DINAPOLI PEOPLE AND NOT HAVE A SINGLE E-MAIL ABOUT WHY THEY ARE HIRING THEM?  YOU KNOW, WHAT ARE THESE PEOPLE GOING TO DO?

WHY ARE THEY GIVING -- SORRY.

THE COURT:  ONE MINUTE LEFT.

MS. HEALY:  SORRY.  THEN, MY LAST MINUTE I MOVE ON QUICKLY TO, I GUESS -- ONE SECOND.

I THINK IT'S MOTION 597.  SO I'M GOING TO LOOK UP THE NUMBER IN A SECOND.  BUT THE MOTION ABOUT THE PEINTNER, EHLEN DEPOSITION.

SO ONE POINT THERE, YOUR HONOR.  DR. PEINTNER APPEARED AS SCHEDULED.  IT WAS ONLY DR. EHLEN AND MR. CALAFIORE WHO COULD NOT APPEAR ON THEIR RESCHEDULED DAYS, BECAUSE THEY JUST COULDN'T. AND WE PUT IN DECLARATIONS FOR THAT.

THERE WAS -- I SPOKE TO THE COURT REPORTER PERSONALLY, AND I'M HAPPY TO PROVIDE A DECLARATION.  I BELIEVE I MAY HAVE SUBMITTED SOMETHING WITH OUR PAPERS.  BUT THERE WAS NO COURT REPORTER ORDERED TO THE PLACE THAT CAME.

THE COURT:  I THINK HE ADMITTED THAT.  THERE WERE NO

ADDITIONAL EXPENSES THAT THEY GOT.  THAT REALLY IT'S JUST A MATTER OF --

**MS. HEALY:**  PUNITIVE.

**THE COURT:**  OF FEES.  OF FEES.

**MS. HEALY:**  AND FINALLY --

**THE COURT:**  YOUR TIME IS UP ON THIS ROUND.

**MS. HEALY:**  YES, OKAY.

**THE COURT:**  BECAUSE THE PLAINTIFF HAS MORE MOTIONS AIMED AT IT, I'M GOING TO GIVE YOU TEN MINUTES AFTER HIS 20 MINUTES.  YOU CAN PICK UP THERE.

**MS. HEALY:**  OKAY.  THANK YOU, YOUR HONOR.

**THE COURT:**  I WON'T LIMIT IT TO REBUTTAL.  ALL RIGHT?

**MS. HEALY:**  THANK YOU.

**THE COURT:**  OKAY, MR. WALLERSTEIN.

**MR. WALLERSTEIN:**  THANK YOU, YOUR HONOR.

I'LL START WITH THE LOOP'S MOTION, RULE 16 MOTION.  THAT'S DOCKET 731.  IT'S NO COINCIDENCE, AND, IN FACT, IT'S ESSENTIAL THAT IT IS STYLED AS A FEDERAL RULE OF CIVIL PROCEDURE 16 MOTION.

IT'S NOT A RULE 37 MOTION.  AND THAT'S NOT AN OVERSIGHT. THAT WAS A VERY STRATEGIC, INTENTIONAL DISTINCTION THAT LOOP MADE IN BRINGING THE MOTION.

THERE IS A SEPARATE MOTION FOR DEFAULT PENDING IN FRONT OF JUDGE GILLIAM, BUT THAT'S NOT THIS.  THIS WAS A MOTION THAT WAS BROUGHT PURSUANT TO RULE 16 FOR A VERY STRATEGIC REASON OF LOOP. AND THAT IS THE FACT THAT THE DISCOVERY CUTOFF WAS TO END IN

JANUARY, 2016.  IT WAS LATER EXTENDED AT LOOP'S REQUEST SO THAT IT WOULD END IN MARCH, 2016.

THIS MOTION, HOWEVER, WAS NOT FILED FOR ANOTHER TWO-AND-A-HALF MONTHS AFTER THAT, AFTER THE SECOND DISCOVERY CUTOFF.

THE MOTION WAS REFERRED TO YOUR HONOR FROM JUDGE GILLIAM PRECISELY BECAUSE HE FOUND IT TO BE BASED ENTIRELY ON DISCOVERY DISPUTES AND CLAIMS THAT ARE PROPERLY BEFORE JUDGE RYU.  AND THAT'S DOCKET 764.

THAT ALONE ESTABLISHES THAT LOOP'S MOTION IS NOT TIMELY. YOU CAN'T BRING A DISCOVERY MOTION SIX -- SORRY -- TEN WEEKS AFTER THE SECOND DISCOVERY CUTOFF AND SAY THAT:

"OH, ALMAWAVE USA DIDN'T PRODUCE THIS DOCUMENT.  THEY DIDN'T PRODUCE THAT DOCUMENT."  IT'S NOT ONLY FALSE, BUT THAT'S THE WHOLE REASON WE HAVE A MEET AND CONFER PROCESS AND THE PROCESS THAT YOUR HONOR ORDERED.

CIVIL LOCAL RULE 37-3 SAYS THAT MOTIONS TO COMPEL DISCOVERY CANNOT BE FILED MORE THAN 7 DAYS AFTER THE DISCOVERY CUTOFF.  IF THAT'S WHAT WE'RE HERE TODAY FOR, IT'S NOT TIMELY.  BUT LOOP SAID:

"NO.  NO. THAT'S NOT WHAT WE'RE DOING.  WE'RE NOT ARGUING A MOTION TO COMPEL.  WE ARE NOT IN RULE 37.  THIS IS A RULE 16 MOTION." THAT'S WHAT THEY INSISTED.

WE BRIEFED, AND I WON'T REPEAT IT HERE, WHY RULE 16 DOES NOT PROVIDE THE AUTHORITY FOR LOOP TO GET WHAT IT'S TRYING TO DO.

THAT, IN ITSELF, IS SUFFICIENT AND, FRANKLY, NECESSARY REASON TO DENY THE MOTION.

THERE'S NO RULE 16 VIOLATION.  WHAT WE HEARD THIS MORNING -- WELL, I'M SORRY.  WHAT LOOP'S COUNSEL JUST EXPRESSED WAS REALLY A RULE 37 ARGUMENT ABOUT ALMAWAVE USA'S PRODUCTION AND THE SUFFICIENCY.  BUT WE MEET AND CONFERRED ABOUT THAT.  THERE WAS SOME MOTION PRACTICE ABOUT IT.  THAT IS ALL WATER UNDER THE BRIDGE.

HOWEVER, THE MERITS, I KNOW YOUR HONOR CARES ABOUT THE MERITS, THE MERITS OF THE DISCOVERY DISPUTE.  AND WE DO, TOO.

LOOP RECEIVED MERITS DISCOVERY NOTWITHSTANDING WHAT THE WRITTEN RESPONSES OF THE ITALIAN ALMAWAVE DEFENDANTS SAID.  AND THIS IS NOT SOMETHING WE JUST CAME UP WITH RECENTLY.  THIS IS SOMETHING WE TOLD LOOP IN THE FALL OF 2015.  WE TOLD YOUR HONOR ON THE TRANSCRIPT ON THE RECORD AND TOLD LOOP ON DECEMBER 10.

WE WROTE A LETTER TO LOOP ON FEBRUARY 18.  THAT'S DOCKET 907-1, EXHIBIT B, WHERE WE LAID OUT IN EXPRESS DETAIL.

WE SAID:

"WE ARE NOT WITHHOLDING DOCUMENTS ON THE BASIS OF OUR JURISDICTIONAL OBJECTIONS.  ALMAWAVE USA HAS PRODUCED ALL THE DOCUMENTS THAT THE ITALIANS HAVE.  PLEASE, LET'S MEET AND CONFER, IF YOU HAVE ANY QUESTIONS."

LOOP DECLINED TO DO THAT.  NEVER ONCE DID LOOP SAY:

"WAIT A MINUTE.  WE NEED NEW RESPONSES FROM THE ITALIANS," NEITHER BEFORE OR AFTER JUDGE GILLIAM RULED ON

THE JURISDICTION.

WE SUBMITTED DECLARATIONS OF COUNSEL.  WE TALKED ABOUT THE DECLARATION OF KIMBERLY CULP AT DOCKET 773-1.  I ALSO SUBMITTED A DECLARATION RECENTLY AT 907-1.

THOSE ARE SUFFICIENT TO ALLAY ANY CONCERNS ABOUT THE DOCUMENT PRODUCTION OF THE ITALIANS. THEY HAVE PRODUCED EVERYTHING SUBJECT TO THE OBJECTIONS THAT USA MADE AND LITIGATED OR MET AND CONFERRED ABOUT.

WE SUBMITTED A DECLARATION OF YOUR CLIENT, MS. SANDEI, AT 907-4.  THAT IS NOT -- I HEARD LOOP'S COUNSEL TALK ABOUT A PRIOR DECLARATION OF MS. SANDEI WHERE SHE SAYS:

"I REVIEWED THE RESPONSES, OR THE DOCUMENTS THAT WERE PRODUCED BY USA."

THAT'S CONSISTENT WITH THE POSITION THAT WE HAVE TAKEN FROM THE FIRST DAY OF THIS LITIGATION UP UNTIL TODAY, WHICH IS THAT USA PRODUCED EVERYTHING ON BEHALF OF ALL THREE DEFENDANTS.  THAT HAS NEVER CHANGED.  IT'S NEVER BEEN AMBIGUOUS TO COUNSEL.  AND THAT'S WHY WE'VE NEVER HAD THIS MOTION PRACTICE OVER THE SUFFICIENCY OF THE ITALIANS' DOCUMENT PRODUCTION.

ANOTHER IMPORTANT POINT ON THE MERITS OF THIS ARGUMENT, YOUR HONOR, IS THAT LOOP IS SEIZING ON A DISTINCTION WITHOUT A DIFFERENCE.  THEIR PAPERS SAY REPEATEDLY:

"WELL, THE ITALIANS GAVE JURISDICTIONAL DISCOVERY, BUT THEY NEVER GAVE MERITS DISCOVERY."

AND THAT'S NOT A DISTINCTION THAT HAS ANY MEANING IN THE

CONTEXT OF THIS CASE.

WHEN I WAS HERE IN FRONT OF YOU ON DECEMBER 10, I MADE QUITE CLEAR THAT WE HAD NO -- ALL OF US -- I MEAN, YOUR HONOR COMMENTED ABOUT JUDGE GILLIAM.  I COMMENTED.  LOOP'S COUNSEL AGREED THAT THERE'S GOING TO BE NO DISTINCTION BETWEEN MERITS AND JURISDICTION.  AND THAT'S WHAT WE DID.  WE NEVER MADE A DISTINCTION BOTH AT THE DEPOSITIONS AND IN THE DOCUMENT PRODUCTIONS.  SO THERE IS NO SEPARATE MERITS DISCOVERY THAT LOOP NEVER RECEIVED.

TO THE EXTENT THAT LOOP CONCEDES THEY GOT JURISDICTIONAL DISCOVERY, THAT IS AN ADMISSION THAT THEY RECEIVED MERITS DISCOVERY BECAUSE THERE WAS NEVER A DISTINCTION THAT HAD MEANING IN THIS CASE.

HAD LOOK MET AND CONFERRED ABOUT THE ITALIAN DEFENDANTS, THE ITALIAN ALMAWAVE DEFENDANTS' DISCOVERY RESPONSES AT MY TIME, WE COULD HAVE, AT ANY TIME, SUPPLEMENTED THOSE RESPONSES, WHICH WOULD HAVE JUST BEEN GIVING A ONE-PAGE PIECE OF PAPER SAYING:

"YES, WE PRODUCED EVERYTHING.  SEE ALMAWAVE USA."

AND THAT IS, IN FACT, WHAT THE CLIENT DECLARATION DOES AT 907-4.

AS FOR THE SPECIFIC EXAMPLES, ALL I CAN SAY IS ONE OF TWO THINGS.  EITHER THE DOCUMENTS DON'T EXIST OR THEY WERE PRODUCED.  IT'S AS SIMPLE AS THAT.  THIS RUSSELL REYNOLDS' DOCUMENT THAT I'M HEARING ABOUT, I DON'T KNOW OFFHAND WHETHER WE PRODUCED IT OR NOT.  WE EITHER PRODUCED IT OR WE DON'T HAVE IT.  WE DID NOT

WITHHOLD DOCUMENTS OTHER -- OTHER THAN WHAT USA HELD.  AND THAT'S -- THAT'S JUST A CONSISTENT CAVEAT.

ON THE OTHER MOTIONS, YOUR HONOR, I THINK OUR POSITION IS SUMMED UP WITH THE FACT THAT IF A PARTY AND THEIR LAWYER INTENTIONALLY DISOBEY A COURT ORDER THERE IS A CONSEQUENCE.  TO COME IN HERE AND SUGGEST THAT YOUR HONOR IS POWERLESS TO DO ANYTHING TO CURE CONTEMPT OR IN RESPONSE TO CONTEMPT BECAUSE WE HAVEN'T BEEN HURT ENOUGH, OR WE HAVEN'T CITED THE RIGHT RULE, WHAT RULE PROHIBITS COUNSEL FROM THROWING A CUP OF COFFEE?  I FIND THAT ARGUMENT OUTRAGEOUS.

THERE HAS TO BE A CONSEQUENCE FOR CONTEMPT.  AND I FRANKLY LEAVE IT TO YOUR HONOR AND TO JUDGE GILLIAM TO DO WHAT IS THE RIGHT THING.  A LOT OF THESE MOTIONS ARE -- HAVE BEEN SWALLOWED UP IN THE SCHEME OF THINGS SINCE WE'VE MOVED FORWARD.

I WILL ADDRESS THE COFFEE SITUATION JUST BRIEFLY.  YOUR HONOR HAS ASKED AND COUNSEL HAS ASKED WHAT RULE PROHIBITS THROWING A CUP OF COFFEE AT COUNSEL.  I FIND THAT QUESTION MIND BOGGLING.

BUT BY WAY OF BRIEF ANSWER, I GUESS IT'S RULE 37.  IT'S RULE 1 THAT REQUIRES THE JUST, FAIR AND SPEEDY RESOLUTION OR APPLICATION OF ALL THE OTHER RULES.  AND IT'S THIS COURT'S INHERENT AUTHORITY.

TO ADDRESS MS. HEALY'S COUNSEL'S ARGUMENTS, I ASK THAT THE PRO HAC VICE BE REVOKED.  I THINK THAT WOULD SEEM MINIMAL, A MINIMALIST SANCTION.  BUT I DON'T CARE WHAT SANCTION THE COURT

IMPOSES.  I JUST WANT THE COURT TO MAKE IT CLEAR TO THE PUBLIC THAT YOU CAN'T THROW COFFEE AT COUNSEL IN A DEPOSITION.  IT'S THAT SIMPLE.

I ASKED THAT PRO HAC VICE BE REVOKED, BUT THAT THE TRIAL NOT BE CONTINUED PRECISELY BECAUSE WE WANT A TRIAL ON THE MERITS.  OR AT LEAST WE DID.  OUR CLIENT WAS HOPING TO DEFEND ITSELF ON THE MERITS.  WE NEVER GOT THERE, AND IT DOESN'T LOOK LIKE WE'LL EVER GET THERE.

BUT THAT IS WHY I SPECIFICALLY SAID WE DON'T WANT THE TRIAL CONTINUED.  IT WAS MORE IMPORTANT FOR US TO GET A TRIAL ON THE MERITS.

THE LAST THING I'LL SAY ABOUT THE COFFEE, YOUR HONOR, IS THAT BEFORE I EVEN LANDED BACK IN SAN FRANCISCO, LOOP'S COUNSEL HAD FILED A FALSE DECLARATION WITH THE COURT, SAYING THAT:

"I LOST MY TEMPER.  I SLAMMED THE CUP OF COFFEE DOWN ON THE TABLE, WHAT ENDED UP TEN FEET AWAY FROM COUNSEL SITTING NEXT TO ME, AND I WASN'T SOAKED."

THE COURT REPORTER SUBMITTED A DECLARATION.  THE WITNESS ADMITTED IT ON THE RECORD.  SO -- AND I'M HAPPY TO SWEAR INTO EVERYTHING THAT I SAID IN MY BRIEF, AS WELL.

**THE COURT:**  I'M SORRY.  WHAT WAS THE COMMUNICATION FROM YOUR WIFE?  COULD YOU PLEASE EXPLAIN THAT?

**MR. WALLERSTEIN:**  I DON'T KNOW ANYTHING OTHER THAN WHAT YOUR HONOR KNOWS.  WHAT HAPPENED IS I RAN OUT IN THE HALLWAY.  THIS IS ON THE RECORD.  I SAID:

"OH, MY GOSH. HELP ME.  HELP ME."

I IMMEDIATELY CALLED MY WIFE.  I SAID:

"YOU WON'T BELIEVE WHAT HAPPENED."

MY WIFE IS ON AWARE OF SOME OTHER THINGS THAT HAPPENED IN THIS CASE.  I SAID:

"YOU WON'T BELIEVE WHAT HAPPENED.  OPPOSING COUNSEL JUST THREW COFFEE ON ME.  OH, MY GOSH.  WAIT.  SHE'S COMING BACK.  I GOT TO GO."

I HUNG UP.  MY WIFE APPARENTLY ASSUMED THAT THE COFFEE WAS HOT.  MY WIFE APPARENTLY CALLED MS. HEALY'S OFFICE.  I DON'T KNOW.  MY WIFE SAYS NO.  I DON'T KNOW ANYTHING ABOUT IT.  BUT, I MEAN, I ASKED MY WIFE.  SHE SAYS NO.

I DON'T KNOW ANYTHING ABOUT IT, THOUGH.  ALL I KNOW IS THAT BY THE TIME I ARRIVED BACK IN SAN FRANCISCO MS. HEALY HAD FILED A DECLARATION THAT SAYS WHAT IT SAYS.

**THE COURT:**  WAIT.  YOU ASKED YOUR WIFE WHETHER SHE CALLED AND SAID ANYTHING, AND SHE CLAIMS SHE DIDN'T?

**MR. WALLERSTEIN:**  WELL, I DIDN'T CROSS-EXAMINE MY WIFE, AND I DIDN'T SWEAR HER IN.

**THE COURT:**  OKAY.

**MR. WALLERSTEIN:**  I ASSUME THAT MS. HEALY'S DECLARATION IS ACCURATE AND TRUTHFUL IN THAT REGARD.  I'VE ASSUMED THAT WITHOUT WANTING TO CALL MY WIFE TO THE STAND.  I'VE TAKEN IT AS A GIVEN THAT MY WIFE LEFT WHATEVER VOICEMAIL OR SPOKE TO THE ATTENDANT OR WHATEVER.

I -- PERSONALLY, I HAVE NO REASON TO -- I DON'T HAVE INFORMATION SUFFICIENT TO LET ME DOUBT MS. HEALY'S DECLARATION, SO I ASSUME MY WIFE DID WHATEVER MS. HEALY THINKS SHE DID.

**THE COURT:** OKAY.

**MR. WALLERSTEIN:** I HAVE NOTHING TO DO WITH IT. I DON'T KNOW ABOUT IT. IT PROBABLY WAS NOT A WISE MANEUVER. YOU KNOW, IT WASN'T A MANEUVER. IT WAS AN EMOTIONAL REACTION THAT I APOLOGIZE TO THE EXTENT THAT IT HAPPENED, AND TO THE EXTENT THAT I CAN SPEAK FOR MY WIFE. BUT SHE DID WHAT SHE DID. SHE WAS UPSET. SHE'S LIVED WITH THIS CASE FOR A YEAR. AND, OBVIOUSLY, THERE IS A LONG HISTORY, AS MS. HEALY'S COUNSEL ALLUDED TO. THERE'S A LONG HISTORY.

THIS WAS JUST THE THEN TIP OF THE ICEBERG AT THE TIME, AND IT WAS THE LAST. AND I THOUGHT WE'D NEVER SEE ANYTHING, YOU KNOW, THAT EXCEEDED IT. BUT MY IMAGINATION IS LIMITED. AND IT NOW -- IN RETROSPECT, THAT WAS JULY. WORSE THINGS HAVE HAPPENED, AND WE'RE AT A MUCH WORSE PLACE TODAY THAN WE WERE EVEN THEN. SO IT IS WHAT IT IS.

I GUESS I'LL ADDRESS JUST THE INTERPRETER EXPENSE ISSUE. I SAW A NEW MOTION FOR LEAVE TO SUBMIT A DECLARATION OR SOMETHING THIS MORNING. I JUST WANT TO BE CLEAR SO THAT YOUR HONOR DOESN'T THINK WE'RE BEING DISINGENUOUS. I TOLD THE INTERPRETER ABOUT YOUR HONOR'S ORDER. I GAVE HER THE ORDER AND SAID:

"LOOP," OR WHETHER IT WAS MS. HEALY, OR WHATEVER IT WAS, "WAS ORDERED TO PAY 50 PERCENT OF THE FEES."

I SAID WE'RE -- YOU KNOW:

"I SUGGEST THAT YOU SEND THEM A BILL.  BUT, MEANWHILE, WE, VENABLE, WE'LL MAKE SURE YOU GET PAID."

SHE SAID:

"OH, WELL, I REALLY APPRECIATE THAT."

I SAID:

"I DON'T HAVE ANY IDEA IF LOOP IS GOING TO PAY THE SANCTION OR PAY THE FEES, BECAUSE THEY HAVEN'T PAID FOR CALAFIORE, SO GOSH ONLY KNOWS.  BUT IF THEY DON'T PAY YOU, WE WILL PAY YOU."

SO THEN WE TURNED AROUND AND WE WROTE A LETTER TO LOOP.  WE SAID:

"HERE'S THE COURT REPORTER'S BILL.  WILL YOU PAY HALF?"

NO RESPONSE.  WE WROTE ANOTHER LETTER TO LOOP, AND THIS IS IN MARCH, 2016.

"WILL YOU PAY THE COURT REPORTER'S HALF?  YOU KNOW, HERE'S THE BILL."

NO RESPONSE.

"WILL YOU DO A JOINT LETTER?"

NO RESPONSE.

SO WE FILED OUR ADMINISTRATIVE MOTION, WHICH WAS ULTIMATELY GRANTED.  SAID LOOP REFUSED TO PARTICIPATE.  AFTER THAT TIME, AFTER WE FILE OUR ADMINISTRATIVE MOTION, LOOP APPARENTLY PAID ALL BUT $200 TO THE COURT REPORTER.

AND I TAKE IT FROM THIS MORNING'S FILING THE COURT REPORTER DOESN'T CARE ABOUT THE EXTRA $200.  I CERTAINLY DON'T CARE IF THEY DON'T CARE.

THE COURT:  WELL, DID ALMAWAVE PAY THE WHOLE AMOUNT?

MR. WALLERSTEIN:  WE PAID 50 PERCENT.

THE COURT:  OKAY.  I JUST COULDN'T TELL WHETHER YOUR CLIENT WAS SAYING THAT THEY PAID THE WHOLE AMOUNT.  YOU JUST SAID YOU TOLD HER YOU WOULD, BUT SHE DIDN'T --

MR. WALLERSTEIN:  THAT'S CORRECT.

THE COURT:  OKAY.

MR. WALLERSTEIN:  SO AT THE TIME I FILED THE ADMINISTRATIVE MOTION, I SAID:

"LOOK.  WE'RE RESPONSIBLE."

I THOUGHT WE WERE.  APPARENTLY IF THE COURT REPORTER DOESN'T THINK WE ARE, THEN WE'RE NOT.  THE BIGGER POINT, AGAIN, I THINK IS THERE WAS A COURT ORDER TO DO SOMETHING.  WE HAD TO FILE AN ADMINISTRATIVE MOTION TO GET THE RELIEF.  AND WHETHER THEY PAID IT OR NOT, I GUESS THEY PAID MOST OF IT.  BUT IT WAS ONLY IN RESPONSE TO OUR FILING THE MOTION.

THE COURT:  DO YOU HAVE ANY OBJECTION TO THE ADMINISTRATIVE MOTION TO PUT IN THE DECLARATION THAT WAS SUBMITTED THIS MORNING?

MR. WALLERSTEIN:  NO, YOUR HONOR.  NO.

AND SO WITH THE OTHER ONES -- AND I'LL JUST MAKE SURE I'M HITTING THEM -- THE FAILURE TO APPEAR FOR DEPOSITIONS, LOOP'S

COUNSEL CALLED YOUR HONOR'S CHAMBERS THAT MORNING EX PARTE.  THEY TRIED TO GET SOME GUIDANCE, WHICH, YOU KNOW, IS WHAT PEOPLE DO WHEN THERE'S AN EMERGENT DISPUTE.  APPARENTLY THEY LEFT A MESSAGE.

AND WHEN WE HAD OUR TELEPHONE CALL LATER THAT AFTERNOON, THE RECORDED PHONE CALL, YOUR HONOR JOINED IN THE CALL, HEARD FROM COUNSEL, ISSUED A RULING, ISSUED A -- NO -- NO FURTHER THAN THREE TIMES DURING THAT CALL LOOP'S COUNSEL OBJECTED AND SAID:

"OH, WE CAN'T DO EHLEN ON THIS DAY," OR "WE CAN'T DO PEINTER ON THAT DAY."

AND THREE TIMES YOUR HONOR SAID:

"NO, NO AND NO."

AND THEN, YOU FOLLOWED IT UP WITH A WRITTEN ORDER.  IMMEDIATELY AFTER THE DEPOSITION, LOOP TURNED AROUND AND FILED A RULE 72 OBJECTION.  JUDGE GILLIAM RULED ON IT WITHIN 48 HOURS OR SO, I THINK MONDAY MORNING.  AND LOOP'S RESPONSE WAS:

"WE'RE STILL NOT COMING.  WE'RE NOT APPEARING."

AND THEY DIDN'T.  APPARENTLY, WE HAVEN'T BEEN HURT BY THAT.  AND, AGAIN, I JUST LEAVE IT TO YOUR HONOR.  TO ME, IT'S JUST CRYSTAL CLEAR, STRAIGHTFORWARD.  IF A PARTY SHOWS INTENTIONAL CONTEMPT WITH A SMALL "C" AND LITTLE "C" THERE SHOULD BE A CONSEQUENCE.

WHAT I'M NOT GOING TO ADDRESS, YOUR HONOR, IS YOUR HONOR'S AUTHORITY TO ISSUE RULINGS TODAY.  I THINK YOUR HONOR'S AUTHORITY IS CLEAR.  I THINK THE REFERRALS TO YOUR HONOR ARE CLEAR, AND I'M

JUST NOT PREPARED TO DO THAT.  IF LOOP IS CONTESTING YOUR HONOR'S VERY ABILITY TO ISSUE RULINGS TODAY, THAT'S JUST NOT SOMETHING I'M GOING TO ADDRESS.

**THE COURT:**  OKAY.  AND I AM NOT SURE.  I THINK -- WELL THEY WERE YOUR MOTIONS.  SO WHEN A PARTY MAKES A MOTION THEY HAVE TO EXPLAIN WHAT THE GROUND IS.  SO WHETHER IT'S MOVING UNDER 37 OR UNDER INHERENT AUTHORITY, THOSE ARE DIFFERENT STANDARDS.  THEY ARE QUITE DIFFERENT STANDARDS. SO I AM NOT ENTIRELY SURE FROM SOME OF YOUR MOTIONS WHAT BASIS YOU ARE MOVING UNDER.  SO THAT'S A QUESTION I HAD IN MY MIND.

DO YOU WANT TO ADDRESS THAT?  AND I UNDERSTAND I HAVE DIFFERENT KINDS OF AUTHORITY.  THAT'S NOT QUESTION.  THE QUESTION IS:  WHAT ARE YOU INVOKING?

**MR. WALLERSTEIN:**  WELL, THERE'S -- LOOP ACTUALLY ARGUES YOU DON'T HAVE AUTHORITY FLAT OUT TO HEAR SOME OF THESE MOTIONS. THEY SAY YOU DON'T HAVE AUTHORITY TO HEAR THE RULE 16 MOTION BECAUSE IT COULD BE DISPOSITIVE.

THEY SAY YOU DON'T HAVE AUTHORITY TO HEAR THE COFFEE MOTION BECAUSE IT WAS FILED BEFORE JUDGE GILLIAM, AND IT WASN'T PROPERLY REFERRED, AND IT SEEKS SANCTIONS.  AND THEY SAY YOU DON'T HAVE AUTHORITY TO DO SOME OF THE OTHER THINGS BECAUSE THEY ARE SANCTIONS IN NATURE, AND, THEREFORE, THEY HAVE AN ARGUMENT WHICH I'LL SAVE FOR THE NINTH CIRCUIT.

BUT THAT'S WHAT I WAS REFERRING TO.  IN TERMS OF THE AUTHORITY FOR OUR MOTIONS, ALL OF THEM RELY ON THE COURT'S

INHERENT AUTHORITY AND RULE 37.  YOUR HONOR HAS AUTHORITY TO ENFORCE HER PRIOR ORDERS.  THESE ARE ALL -- NONE OF THESE ARE RULE 37 DISCOVERY MOTIONS.  THEY ARE ALL -- I THINK I MISSPOKE.

THESE ARE ALL MOTIONS FOR CONTEMPT OF COURT ORDERS.  AND THE IMPORTANT THING IS WE ARE NOT HERE TO RELITIGATE THE PROPRIETY OF THOSE COURT ORDERS.  LOOP SEEMS TO WANT TO ARGUE THAT YOU HAD NO AUTHORITY TO ORDER THAT THEY SHARE THE INTERPRETER FEES.  BUT THAT WAS IN JANUARY.  THAT WAS TEN MONTHS AGO.  THAT SHIP HAS LONG SINCE SAILED.

LOOP'S NOT ONLY WAS HEARD ON THAT, BUT THEY FILED THEIR RULE 72 OBJECTIONS, WHICH WERE, YOU KNOW, EITHER DIED ON THE VINE OR THEY WERE REJECTED.  SOME OF THEM HAVE LED TO COLLATERAL SANCTIONS ORDERS OR INVESTIGATIONS, IF YOU WILL.  BUT THE PROPRIETY OF THOSE ORDERS ARE NOT AT ISSUE TODAY.  WHAT YOUR HONOR DID ON THE PHONE CALL IS NOT AT ISSUE TODAY.  YOU MADE RULINGS, AND YOU ARE ENTITLED -- NOT JUST ENTITLED.  YOU SHOULD EXPECT THAT THE PARTIES WILL ABIDE BY YOUR RULINGS.

SO THIS WHOLE IDEA THAT:

"WE WEREN'T HEARD ENOUGH," OR "YOU DON'T HAVE AUTHORITY," I FIND IT LUDICROUS.  I THINK, YOUR HONOR, I LEAVE TO YOUR HONOR TO IMPOSE THE PROPER RESPONSE TO INTENTIONAL CONTEMPT.

THAT'S ALL.  THANK YOU.

**THE COURT:**  OKAY.  LOOP YOU HAVE TEN MORE MINUTES.

**MR. CARDOZO:**  BRIEFLY, ON THE 840 MOTION BEFORE TURNING

IT OVER TO MS. HEALY, I APOLOGIZE IF I GAVE THE IMPRESSION, BUT I CERTAINLY NEVER ARGUED THAT THIS COURT DOESN'T HAVE ANY POWER OR THAT THERE'S NO CONSEQUENCE FOR COUNSEL UNCIVILITY.

WHAT I WAS RESPONDING TO WAS WE HAVE A MOTION THAT REQUESTS IN ITS FINAL SENTENCE:

"LOOP'S COUNSEL PRO HAC STATUS SHOULD BE REVOKED, BUT NOT AT THE EXPENSE OF GRANTING LOOP A CONTINUANCE OF THE TRIAL DATE."

AND THAT MOTION, AS YOUR HONOR POINTS OUT, DIDN'T CITE ANY BASIS, DIDN'T CITE ANY LAW FOR THAT EXTRAORDINARY OVERREACHING EVENT.

THAT IS WHERE I DRAW THE LINE.  KICKING COUNSEL OFF THE CASE AT THIS JUNCTURE ON AN ADMINISTRATIVE MOTION CITED WITHOUT ANY LAW, THAT I DON'T THINK IS PROPER.

THE ONLY THING THAT I DRAW THE LINE ON IS THERE'S ATTEMPT TO RELY ON SUPPOSED FACTS THAT AREN'T CLEARLY ESTABLISHED IN THIS RECORD, THAT THE ONLY PERSON WHO STATED EXACTLY WHAT HAPPENED UNEQUIVOCALLY WHERE YOU HAVE AN IDEA OF WHAT THAT PERSON SAW AND ALL OF THE FACTS IS MS. HEALY.

MR. WALLERSTEIN SAID SEVERAL TIMES, AGAIN:

"SHE THREW THE CUP."

THIS MOTION RECORD DOESN'T ESTABLISH THAT.  IF WE'RE GOING TO TAKE THIS KIND OF EXTREME SANCTION BASED UPON THAT INFERENCE, I THINK THAT'S SOMETHING YOU'D HAVE TO DO AT AN EVIDENTIARY HEARING.  BECAUSE WHAT THE -- WE'VE GOT A SLENDER DECLARATION

FROM A COURT REPORTER OF WHAT THE COURT REPORTER SAW, WHERE SHE WAS LOOKING, WHETHER SHE SAW THE TAIL END OF THE INCIDENT, ET CETERA.

**THE COURT:** I FOUND IT SOMEWHAT EXTRAORDINARY THAT YOUR CLIENT TOOK THE POSITION THAT MR. WALLERSTEIN MUST HAVE OBTAINED THAT DECLARATION THROUGH NEFARIOUS MEANS.

**MR. CARDOZO:** WELL --

**THE COURT:** IS THERE ANY SUPPORT FOR THAT STATEMENT AT ALL?

**MR. CARDOZO:** WELL, THE PRIMARY REASON FOR THAT IS BECAUSE WHAT IS STATED IN THAT DECLARATION IS CONTRARY TO MS. HEALY'S OWN DIRECT RECOLLECTION.

**THE COURT:** OTHER THAN THAT, THAT SOMEBODY SAW SOMETHING QUITE DIFFERENT THAN WHAT SHE REMEMBERS, IS THERE ANY OTHER BASIS FOR HER ACCUSATION OR HER INSINUATION, OR ACTUALLY MORE THAN THAT, THAT MR. WALLERSTEIN, YOU KNOW, PROCURED THE DECLARATION THROUGH INAPPROPRIATE MEANS?

**MR. CARDOZO:** WELL, YOUR HONOR, I DON'T KNOW OF ANY BASIS THAT PERMITS A PARTY AFTER DISCOVERY IS CLOSED TO ISSUE A SUBPOENA TO A COURT REPORTER, AND BY WITH THE ONLY NOTICE GIVEN IN THIS CASE BEING E-MAIL NOTICE. WE DON'T HAVE AN E-MAIL SERVICE AGREEMENT.

THERE ARE A LOT OF THINGS ABOUT THAT SITUATION. I RECOGNIZE THIS IS AN UNPRECEDENTED SITUATION.

**THE COURT:** JUST -- IF YOU JUST ANSWER THE QUESTION.

SO THERE'S A SUBPOENA AFTER THE FACT.  THERE'S A FACT THAT THE FACTS DON'T ALIGN THE WAY SHE REMEMBERS.  ANYTHING ELSE THAT WOULD SUPPORT THAT KIND OF ACCUSATION?

**MR. CARDOZO:**  ALSO THE FACT THAT THE COURT REPORTER IS AN ARM OF THE COURT, REALLY.  SO HAVING A PARTY GET A DECLARATION -- COURT REPORTERS, WHAT THEY NORMALLY DO IS TRANSCRIBE WHAT HAPPENED.  THEY DON'T GIVE DIRECT TESTIMONY.  AND I'M NOT SURE ABOUT THE PROPRIETY OF THAT.  I DON'T CERTAINLY WANT TO CONCEDE IT ON THIS RECORD, BECAUSE I'VE NEVER HEARD OF IT, ACTUALLY.  I'VE JUST NEVER HEARD OF A PARTY EX PARTE GETTING A DECLARATION FROM A COURT REPORTER WITHOUT NOTICE, WHICH IS WHAT HAPPENED IN THIS CASE.

THAT WAS THE CLIENT'S CONCERN ON THAT POINT.  AS I RECOGNIZE, IT'S AN UNPRECEDENTED SITUATION, SO I DON'T KNOW WHAT TO THINK OF IT.

BUT I DON'T HAVE ANY AUTHORITY FOR THAT.  BUT I THINK THAT HIGHLIGHTS, YOU KNOW, A FUNDAMENTAL PROBLEM WITH THE EVIDENTIARY RECORD IN THIS CASE.  YOU KNOW, MR. WALLERSTEIN JUST GOT UP AND MADE STATEMENTS ABOUT WHAT HIS WIFE SUPPOSEDLY DID OR DID NOT DO.

NONE OF THAT IS IN THE RECORD.  THERE'S NO DECLARATION FROM EITHER HIM OR HIS WIFE, AND HE FILED THAT MOTION.  THIS ALL CAME TO THE COURT'S ATTENTION BECAUSE MS. HEALY, WHEN SHE GOT THAT VOICEMAIL, THE MESSAGE, WHICH WAS PASSED ON FROM AN OPERATOR AT A LAW FIRM WHO TOOK THE CALL, AND THAT CALL WAS CERTAINLY PLACED.  SHE PANICKED.  SHE DIDN'T KNOW, BECAUSE SUDDENLY, SHE HAD THIS

ONE INCIDENT IN DEPOSITION WHICH WAS UTTERLY REGRETTABLE, TO SAY THE LEAST.  AND NOW IT FEELS LIKE IT'S ESCALATING TO SOMETHING ELSE BASED UPON THE CONTENT OF THAT MESSAGE.  SHE WROTE AND LET THE COURT KNOW RIGHT AWAY ABOUT IT.

THEN THE MOTION'S FILED IN RESPONSE TO THAT.  AND NOTHING IS SAID ABOUT THE CALL TO THE WIFE, NOT ONE PIECE OF EVIDENCE.  AND NOW WE HAVE GOT FIRST A STATEMENT THAT THE WIFE DID PLACE THE CALL.  THAT WAS THE FIRST SUGGESTION THAT WAS MADE.

WHEN YOUR HONOR QUIZZICALLY QUESTIONED IF THAT WAS REALLY THE POSITION, THEN IT WAS:

"WELL, I DIDN'T CROSS-EXAMINE MY WIFE."

WE HAVE A VERY MURKY EVIDENTIARY RECORD, YOUR HONOR.

**THE COURT:**  YOU HAVE FIVE MINUTES NOW, JUST SO YOU KNOW.

**MR. CARDOZO:**  WE HAVE A VERY MURKY EVIDENTIARY RECORD. THE SEVERITY OF THE SANCTION THAT'S IN THE LAST LINE, I DON'T THINK IT'S PROPER ON THIS RECORD.  CERTAINLY NOT BASED ON A MOTION THAT DOESN'T EVEN ADDRESS THE LEGAL CRITERIA.

**MS. HEALY:**  SORRY.  YOUR HONOR, I'D BE HAPPY TO ADDRESS THE COURT'S QUESTION VERY BRIEFLY ON BEHALF OF LOOP AI THAT SHE JUST ASKED MY COUNSEL ABOUT THE COURT REPORTER DECLARATION.

**THE COURT:**  IT'S UP TO YOU.  YOU'VE GOT A LITTLE -- YOU'VE FOUR-AND-A-HALF MINUTES.

**MS. HEALY:**  YEAH.  I'LL BE VERY QUICK, YOUR HONOR.

**THE COURT:**  TELL ME WHATEVER YOU NEED.

**MS. HEALY:**  I THINK THAT'S PART OF THE REASON WHY WE ASKED FOR DISCOVERY AND EVIDENTIARY HEARING, BECAUSE THE FACTS IN THE COURT REPORTER'S DECLARATION ARE NOT ACCURATE.  AND WHEN WE ASKED HIM, HIS CLIENTS, FOR -- TO TURN OVER ALL DISCOVERY, THAT DECLARATION WAS NEVER PROVIDED TO US AND I DON'T KNOW WHO PREPARED IT.

AND WHEN WE FIND THAT HE SUDDENLY ISSUED SUBPOENAS, ESPECIALLY IN LIGHT OF ALL THE EVENTS THAT HAVE TAKEN PLACE IN THIS CASE, INCLUDING HOW HE WAS TRYING TO INTIMIDATE MY WITNESS, I CAME TO THE CONCLUSION THAT WHEN YOU COMBINE THE FACTS THAT ARE IN THAT DECLARATION WITH HIS SUBPOENA THAT HE ISSUED TO MS. COURT REPORTER -- I DON'T REMEMBER HER NAME -- CLEARLY, IT WAS NOT SOMETHING SHE WOULD HAVE PREPARED ON HER OWN.  WHY WOULD SHE EVEN PREPARE THAT DECLARATION?

SO, YOU KNOW, PERHAPS MR. WALLERSTEIN CAN ANSWER THE QUESTION OF WHO PREPARED THAT DECLARATION.  BUT CERTAINLY HE WAS ABLE TO VIOLATE THE COURT'S ORDER AND GO AHEAD AND GET HIS OWN DISCOVERY, AND WE WEREN'T ALLOWED TO GET DISCOVERY TO CHECK HOW THE DECLARATION WAS GOTTEN AND WHY MR. WALLERSTEIN MAKES STATEMENTS WITHOUT PUTTING IN HIS OWN DECLARATION.

AND THE SECOND POINT ON THAT, YOUR HONOR, MR. WALLERSTEIN HAS NEVER WITHDRAWN HIS MOTION AND THE FALSE STATEMENTS MADE THERE, INCLUDING THE ATTRIBUTION IN THE TRANSCRIPT.  INSTEAD, WHAT HE HAS DONE IS HE CONTINUES TO DISSEMINATE IT, INCLUDING IN THE NINTH CIRCUIT TO CLEARLY INFLAME THE COURT.

AND I THINK THAT'S CONSISTENT WITH THE MANY FALSE STATEMENTS THAT MR. WALLERSTEIN HAS MADE IN THIS CASE.  AND I TURN TO THE MOTION AT DOCKET 546.  IN THAT MOTION, MR. WALLERSTEIN DOESN'T SAY:

"WE ASSURED THE COURT REPORTING COMPANY WE'RE GOING TO PAY."

HE SAYS SPECIFICALLY:

"ALMAWAVE THROUGH VENABLE WAS FORCED TO PAY THE FEES THAT THIS COURT ORDERED TO BE PAID," AND THAT'S FALSE.

AND, YOUR HONOR, I, IN MY ENTIRE CAREER, I HAVE NEVER SEEN -- YOU KNOW, GENERALLY, SANCTIONS ARE RESERVED FOR VERY EXTREME THINGS.  AND THE COUNSEL AT LEAST THE WAY I WAS RAISED PROFESSIONALLY, RESERVES ONE OR TWO MOTIONS FOR EXTREME CIRCUMSTANCES.  AND THAT I HAVE CERTAINLY TRIED TO BE RESTRAINED.

WHEN THE COURT TOLD ME IN JULY WHEN HE LIED TO THE COURT AND YOUR HONOR MADE HIM APOLOGIZE, SHE SAID:

"I DON'T WANT A SANCTIONS MOTION ON THAT," AND I COMPLIED.  AND THAT WAS A VERY EGREGIOUS THING.  AND I WOULD HAVE LIKED TO MOVE FOR SANCTIONS, BUT I DIDN'T.

I FILED VERY FEW MOTIONS FOR SANCTIONS.  THAT DOESN'T MEAN THAT THE FACTS HERE DID NOT WARRANT AN EQUAL AMOUNT OF SANCTIONS AGAINST HIM.

SO I WOULD LIKE THE COURT TO KEEP AN OPEN MIND AS TO, YOU KNOW, A PARTY THAT MOVES FOR SO MANY SANCTIONS -- IT'S PROBABLY LIKE THE CASE WITH THE MOST SANCTIONS MOTION IN THE COUNTRY,

PROBABLY.

I'VE CERTAINLY NEVER SEEN A CASE WITH SO MANY SANCTIONS MOTIONS.  AND I DON'T THINK IT'S REALLY REPRESENTATIVE OF THE RECORD.  SO I QUICKLY -- I DON'T KNOW HOW MANY MINUTES I HAVE LEFT.

**THE COURT:**  A MINUTE AND A HALF.

**MS. HEALY:**  I WILL MOVE ON TO THE 731.  OH, JUST ONE POINT ABOUT -- SORRY.  ONE POINT ABOUT -- I THINK IT'S 597.  WE DID NOT CALL YOUR HONOR'S CHAMBERS EX PARTE.  ON FRIDAY, MARCH 25, MR. DINAPOLI DIDN'T SHOW UP FOR A NOTICED DEPOSITION.

I CALLED YOUR HONOR'S CALENDAR CLERK TO DETERMINE WHEN THE COURT WOULD BE AVAILABLE.  I HAD NO IDEA.  I DON'T EVEN KNOW WHEN THIS RESCHEDULING OF LOOP AI'S DEPOSITION, HOW IT CAME ABOUT.  I STILL DON'T KNOW, BECAUSE I STILL HAVEN'T LISTENED TO THE TAPE.

BUT IT WASN'T SOMETHING.  WE DIDN'T CALL THE COURT TO ORGANIZE SOMETHING CRAZY.  THERE WAS A NOTICED DEPOSITION OF MR. TONY DINAPOLI.  AND HE DIDN'T SHOW UP, AND I CALLED JUST FOR THAT REASON.  MY JUNIOR ASSOCIATE WHO WAS ON THE CALL, SHE HAD NO IDEA.

SO I JUST WANT TO CLARIFY THE RECORD, BECAUSE HE SAID WE CALLED CHAMBERS EX PARTE TO DISCUSS SOMETHING.  AND THAT'S COMPLETELY INACCURATE.

I CALLED MS. GARCIA AND SAID:

"WE HAVE THIS ISSUE.  WHEN CAN THE COURT HEAR?"  THAT'S ALL.

AND MOVING ON VERY QUICKLY TO 731, TWO POINTS. THE STUFF ABOUT A MEET AND CONFER, YOUR HONOR, IS THOROUGHLY UNTRUE.  I POINT THE COURT TO DOCKET 914, FOOTNOTE 6.  I WOULD READ THE DOCKETS LISTED THERE, BUT I WON'T FOR LACK OF TIME.

IN THAT FOOTNOTE, WHICH I BELIEVE WE REPEATED SOMEWHERE ELSE IN OUR BRIEF PENDING BEFORE YOUR HONOR, WE SO MANY TIMES, SO MANY TIMES ASKED THEM AND TRIED TO MOVE.  WE MOVED IN ALL POSSIBLE WAYS.  AND THERE'S ONLY SO MUCH SOMEBODY CAN DO.  WHEN HE SAYS I'M NOT RESPONDING, I DON'T HAVE TO.  AND I INVITED HIM TO MOVE TO SAY.

SO HIS CONTENTIONS HERE TODAY THAT THESE ARE NOT STRATEGIC, BECAUSE I MUCH RATHER HAVE THE DISCOVERY AT THE TIME.  AND IT'S GOT NOTHING TO DO WITH THAT.  NOTHING AT ALL.  I MEAN, THAT MEET AND CONFERS WERE JUST HOURS AND HOURS ON END.

SO I FEEL FRUSTRATED THAT WE'RE HERE AND I HAVE TO LISTEN TO THE FACT THAT HE CLAIMS WE DIDN'T MEET AND CONFER.  AND THE SECOND POINT, YOUR HONOR, ABOUT THE NONDISTINCTION, THAT THEY NEVER MADE A DISTINCTION BETWEEN THE ENTITIES, AGAIN, I ADDRESSED THAT IN MY OPENING.  AND THAT'S UNTRUE.

IT'S UNTRUE, YOU KNOW.  IN MOTION PRACTICE WE COMPLETELY SAID THEY ARE SEPARATE.  IT'S UNTRUE IN THE DISCOVERY.  AND HIM STANDING HERE TODAY DOESN'T CHANGE THAT.  IT DOESN'T CHANGE THE RECORDS, WHICH IS WHAT HE WAS REQUIRED TO PROVIDE SHOW.

AND TO ME THE MOST COMPELLING THING IS THAT HE IS CONSTANTLY ASKING YOUR HONOR TO IMPOSE EXTREME SANCTIONS AGAINST US.  BUT

THEN, WHEN IT COMES TO HIM EVERYTHING IS FINE.  HE CAN LIE.  HE CANNOT GIVE DISCOVERY.  AND EVERYTHING IS EITHER A STRATEGIC OR A MISUNDERSTANDING.

AND I DON'T THINK THAT'S APPROPRIATE.  HE CANNOT LAY THAT AT THE FEET OF THE COURT, BECAUSE IN DECEMBER HE SAID WHATEVER HE SAID.  HIS CLIENTS HAVE AN INDEPENDENT OBLIGATION.

AND WHETHER, YOU KNOW, THE COURT WAS HERE ON MANY DIFFERENT THINGS HAVING ONLY TO DO WITH JURISDICTIONAL DISCOVERY.  THE COURT CANNOT POSSIBLY KNOW WHAT HIS CLIENTS ARE DOING SEPARATELY.  SO HE CAN'T NOW COME AND BLAME THE COURT TO SAY "OH" -- OR TO FIND JUSTIFICATION THAT BECAUSE HE HAD HIS OWN OBLIGATION TO DO IT.

AND THE JURISDICTIONAL DISCOVERY WHICH HE SAYS IS THE SAME AS MERITS, IT'S NOT, BECAUSE THE ITALIAN ALMAWAVE DEFENDANTS ONLY GAVE FIVE INTERROGATORIES.

THANK YOU, YOUR HONOR.

**THE COURT:**  OKAY.  YOU'RE ABOUT TWO MINUTES OVER, COUNSEL, BUT I ALLOWED YOU TO FINISH YOUR THOUGHT.

**MS. HEALY:**  SORRY.

**THE COURT:**  ALL RIGHT.  THANK YOU ALL.  THIS HEARING IS CONCLUDED.  I'M TAKING ALL OF IT UNDER SUBMISSION.

**MR. WALLERSTEIN:**  THANK YOU, YOUR HONOR.

(THEREUPON, THIS HEARING WAS CONCLUDED.)

STENOGRAPHY CERTIFICATION

        "I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER."
        NOVEMBER 11, 2016
        KATHERINE WYATT
_____