VALERIA CALAFIORE HEALY
(*pro hac vice*)
valeria.healy@healylex.com
HEALY LLC
154 Grand Street
New York, New York  10013
Telephone:    (212) 810-0377
Facsimile:    (212) 810-7036

Attorneys for Plaintiff
LOOP AI LABS INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| LOOP AI LABS INC.,<br><br>Plaintiff,<br><br>v.<br><br>ANNA GATTI, et al,<br><br>Defendants. | CASE NO.: 3:15-cv-00798-HSG-DMR<br><br>**MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER AT DKT. 977 AND OBJECTIONS PURSUANT TO FED. R. CIV. P. 72 AND CIV. L.R. 72-2 (AMENDED)**<br><br>Action Filed:  February 20, 2015<br>Trial Date:  TBD<br><br>Hon. Haywood S. Gilliam, Jr. |

# GLOSSARY

| Abbreviation | Definition |
|---|---|
| Action | Designates the civil action pending in the United States District Court for the Northern District of California, styled *Loop AI Labs Inc. v. Gatti et al*, N.D. Cal. 15-798, filed on February 20, 2015. |
| AW-USA | Defendant Almawave USA Inc., the only movant in respect of the motion filed at Docket 840 leading to Order 977. |
| Boston Deposition | Refers to the deposition of nonparty Roberto Pieraccini taken by Almawave USA and its counsel, Mr. Wallerstein, on July 15, 2016 in Boston, Massachusetts. |
| Decl. | The Declaration of Loop AI's counsel dated February 10, 2017. |
| Dkt. | Designates entries on the ECF docket of the District Court for the Northern District of California, N.D. Cal. Civil Action No. 3:15-cv-0798-HSG-(DMR). |
| Federal Rules or Rules | Federal Rules of Civil Procedure. |
| Loop AI | Plaintiff Loop AI Labs Inc. |
| Magistrate | The Honorable Donna M. Ryu. |
| Motion or Motion 840 | The "Administrative Motion for Sanctions" filed by Almawave USA Inc. at Dkt. 840. |
| Order [#] | Designates the Docket No. at which the referenced Order was filed. |
| Order 912 | The Order of the Magistrate dated October 18, 2016 entered at Dkt. 912. |
| Order 977 | The Order of the Magistrate dated January 27, 2017 entered at Dkt. 977. |

Pursuant to Local Rule 72-2 and Federal Rule of Civil Procedure 72, Plaintiff Loop AI Labs Inc. ("Loop AI") and its undersigned counsel ("Counsel"), hereby respectfully appeal, object to, and move for relief from the Magistrate's Order entered on January 27, 2017 at Docket 977 ("Order 977") ("Appeal").  In support of this Appeal, Loop AI and its Counsel respectfully submit the prior filings,[1] a supplemental Declaration by Counsel and supporting exhibits.  Because the errors in Order 977 implicate Counsel's personal and professional reputation, and have resulted in outrageous harassment, including hate mail by strangers published on websites as well as sent to Counsel's private email, justice requires that they be corrected promptly, by vacating Order 977. [2]

## INTRODUCTION

Loop AI and its Counsel have opposed Motion 840, and bring this Appeal, not because Counsel "refuse[s] to take responsibility," as Order 977 states, but because the outrageous and scandalous allegations made by AW-USA and its counsel regarding the Boston Deposition are false, and the statements and conclusions made in Order 977 are contrary to the facts, contrary to law, and issued in violation of Loop AI and its Counsel's due process rights.  Charging Loop AI's Counsel with "assault," and seeking the disqualification of Counsel based on false allegations that Mr. Wallerstein was "shocked and scared,"[3] that Counsel engaged in a "violent, expletive laden tirade[4]" and that she is "a physical danger to all concerned" is a serious matter.  To level such charges of violence against a member of the bar based solely on a 3-page administrative motion that is filled with falsehoods, contained no law and no documentary evidence, was accompanied by no declaration of Mr. Wallerstein (the self-proclaimed victim), that relied on an undisputedly incorrect deposition transcript, that included a purported

[1] Attached as exhibits hereto are true and correct copies of Loop AI's prior submissions to the Court at Dkts. 853, 854, 855, 953.

[2] To the extent the Court believes that a sanction proceeding is appropriate regarding the events occurring during the Boston Deposition, this Court should allow discovery, proper briefing in accordance with Civil Local Rule 7-8, and an evidentiary hearing to resolve the disputed questions of fact, as Loop AI has repeatedly requested.

[3] In fact, the evidence shows that Mr. Wallerstein was not scared, but was laughing.[3]  The evidence also shows that when the deposition promptly resumed, within less than 3 minutes, Mr. Wallerstein was very aggressive, not scared; and Mr. Wallerstein continued to harass and insult both the witness and Counsel.  *See* Dkt. 854 at ¶¶ 26-28, 34-37.

[4] *See* Dkt. 840 (emphasis in original).

declaration of a court reporter that is unsupported and contrary to the documentary record, is not consistent with due process. AW-USA filed its sensational Motion 840 not because Mr. Wallerstein was "shocked and scared", but for the improper purpose of seeking to defame and demean opposing Counsel, and distract the Court from the merits of this case.

Respectfully, in light of the grave nature of the charges of physical violence, this Court should have had all interest in ensuring that a member of the bar be accorded all the safeguards available before irreparably damaging a party and its Counsel's reputation in this way. Such astonishing and unfounded allegations, which Order 977 implies were true without any basis, have caused irreparable damage to Loop AI and its counsel and must be corrected. The falsehoods presented in Motion 840, and the implications stemming from the unfounded statements included in Order 977, have resulted in widespread false reports by the media about the Boston Deposition and have instigated intolerable harassment against Loop AI's Counsel. These media accounts, commentary, and hate mail have focused on the suggestion, forcefully made in Order 977, that the Magistrate received testimony of witnesses establishing that Counsel did commit the crime of assault, and that Loop AI's Counsel lied to the Court – all of which are untrue.[5] For instance, on February 3, 2017, a man from Virginia sent a harassing email to Loop AI's Counsel, stating among others: "I read on LinkedIn what you did and the findings by a U.S. Magistrate Judge based on the testimony of the victim and the independent court reporter ... after you lied about HOW it happened…." Decl., ¶ 2, Ex. 3. Several articles reported Order 977 as follows: "Everyone at the incident, except for Healy – Pieraccini, the court reporter, and Wallerstein– *ultimately testified* that Healy threw coffee." Decl., ¶ 2, Ex. 4 (emphasis added). These statements are all false, but were nonetheless presented as the contents of Order 977. In

[5] For instance, the Magistrate wrote: "On the one hand, Wallerstein could have sought sanctions in a less inflammatory way. 'Assault' is a strong word that suggests criminal behavior. On the other hand, *three eyewitnesses agree* (i.e., everyone except Healy) that Healy used expletives, then threw a cup of coffee in Wallerstein's direction, splattering its contents on his clothes and belongings." Dkt. 977 at 6. In another part of Order 977, the Magistrate states: "Healy devotes much energy and *creativity* to painting Wallerstein as an exaggerating liar who has blown the incident entirely out of proportion." Dkt. 977 at 5 (emphasis added). The Magistrate does not explain the basis for this statement. It is not Counsel's "creativity" but a fact that Mr. Wallerstein has repeatedly lied in this case to obtain a litigation advantage for his clients. *See, e.g.,* Dkt. 158 (Wallerstein: "My representations to the Court were false."); Dkt. 965 at 2; Dkt. 969 at 6.

fact, there was no testimony presented to the Magistrate. Mr. Wallerstein never testified about anything. The Magistrate did not allow any evidentiary hearing, and she had no basis to reject Loop AI's Counsel's detailed declaration of what happened, accompanied by extensive documentary evidence, including video, audio and photographs, all of which the Magistrate disregarded in their entirety. The Magistrate quotes selectively from an undisputedly incorrect transcript filed at Dkt. 840-1 by AW-USA, and omits to mention that in both the transcript and the audio, Mr. Pieraccini actually stated that he saw coffee "fly *to the table and it splashed*." Dkt. 855-1 at 50:3-4 (emphasis added). Neither Mr. Pieraccini nor the court reporter ever stated anywhere that Counsel threw coffee at Mr. Wallerstein, as Motion 840 falsely repeats everywhere, and as the Magistrate implies in Order 977.

There was no valid basis for AW-USA to file Motion 840 and turn a 2-minute deposition break into an extended and distracting sanction proceeding that has resulted in substantial and irreparable harm to Loop AI and its Counsel. The Magistrate's decision to resolve such false allegations summarily, and to impose sanctions in Order 977 on a legal basis and for reasons never advanced in Motion 840, and as to which Loop AI and its Counsel had no notice or an opportunity to be heard, was improper and should be reversed.

*1. Motion 840 Was Legally and Procedurally Flawed and Should Have Been Denied* – Motion 840 consisted of a 3-page "administrative motion for sanctions," based solely on allegations regarding Mr. Wallerstein's alleged state of mind and damage to his belonging, but contained no declaration by Mr. Wallerstein or documentary evidence supporting his allegations or the alleged damage; relies on false quotes attributed to Counsel in a transcript that was incorrect; and attaches a self-serving declaration of the court reporter that is contrary to the documentary evidence, and which in any event supports none of the allegations in Motion 840. Motion 840 also identifies no law under which the sanctions are brought. Because Motion 840 was brought in violation of Civ. L.R. 7-8, and was legally and factually unsupported the Magistrate clearly erred in re-writing the legal and factual basis for Motion 840, and then granting it, without notice to Loop AI or its Counsel that the Magistrate was considering imposing sanctions for other reasons. To the extent Order 977 granted Motion 840 in reliance on

the modified rules of procedures of the Magistrate, Order 977 is clearly erroneous because the Magistrate lacked power to issue modified rules of procedure (including those at Dkt. 222 cited in Motion 840), and lacked power to issue sanctions that depart from the procedural and substantive requirements of the Civil Local Rules and of established due process requirements. The Magistrate also lacked power to cast the $250 fine as alleged "payment for damage caused by [Counsel's] act." Dkt. 977 at 7. AW-USA provided no evidence to the Magistrate of any damage, and the Magistrate does not explain the basis for imposing this sanction.[6] A court cannot circumvent the due process requirements for imposing what is clearly a fine simply by characterizing a sanction as compensatory instead.[7]

*2. Order 977 Violates Due Process in Other Ways* – Loop AI and its Counsel had no prior notice of, or opportunity to address, the legal basis on which the Magistrate ruled or the extraneous factual considerations, which were not raised in AW-USA's Motion 840. These failings denied Loop AI and its counsel due process.[8] The Magistrate also violated Loop AI and its Counsel's due process rights by denying Loop AI's request for discovery and an evidentiary hearing, thereby depriving her, among others, of the opportunity to confront and cross-examine the court reporter who AW-USA represented submitted a declaration, the contents of which are unaccompanied by any evidentiary support and were disputed by Loop AI's Counsel through her declaration and supporting evidence. The Magistrate's finding in Order 977 that Counsel behaved in "bad faith" because Loop AI vigorously opposed AW-USA's sanctions motion implicates additional due process concerns because if upheld the ruling will have a chilling effect on a litigant's exercise of his or her due process rights. This aspect of Order 977 is especially troubling because the sanctions motion contained outrageous allegations and was based on a transcript that contained undisputedly false statements, and on which Order 977 nonetheless

---

[6] *See, e.g., Miller v. City of L.A.*, 661 F.3d 1024, 1029 (9th Cir. 2011).

[7] Indeed, at the October 31st hearing, Mr. Wallerstein did not argue he suffered any damage, but argued instead that Motion 840 was brought because he "want[ed] the Court to make it clear to the public that you can't throw coffee at counsel in a deposition." Dkt. 946 at 51-52.

[8] "… the party against whom sanctions are being considered is entitled *to notice of the legal rule on which the sanctions would be based, the reasons for the sanctions, and the form of the potential sanctions*." *Saldana v. Kmart Corp.,* 260 F. 3d 228 (3d Cir. 2001) (citations and quotation marks omitted).

relies. Despite that, Order 977 implies that to avoid a finding of bad faith and sanctions Counsel and presumably Loop AI were required to refrain from challenging Motion 840.

**3. *Order 977's Inherent Power Analysis Is Clearly Erroneous.*** Order 977 is clearly erroneous because the Magistrate purports to exercise an inherent authority that only Article III judges possess,[9] in a way that would have been improper even for an Article III judge. Motion 840 nowhere invokes the court's inherent power, nor does it allege that Counsel behaved in "bad faith," nor does it rely on *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) and its progeny, as the Magistrate did. But *Chambers* does not support the use of inherent power to sanction conduct outside the presence of the court of the type at issue here.[10] The Magistrate failed to follow *Chambers*. Order 977 contains no finding that the sanctioned conduct impeded the administration of justice or involved an abuse of process – to the contrary, the Order acknowledges the conduct did not materially delay Pieraccini's deposition.[11] Nor does Order 977 contain a finding that Counsel or Loop AI sought an improper advantage or acted for another improper purpose.[12] *Saldana*, which involves facts similar to those presented here, illustrates how the Magistrate should have applied *Chambers* and compellingly demonstrates that Order 977 must be vacated. *Saldana v. Kmart Corp.,* 260 F. 3d 228, 237 (3d Cir. 2001).

**4. *Flawed Findings of Fact.*** The Magistrate purports to invoke the testimony of three eyewitnesses, Wallerstein, Pieraccini and the court reporter, as being inconsistent with Ms. Healy's version of events. Order 977 at 6. This misrepresents the record. Wallerstein submitted no affidavit or other testimony. And on several occasions the Magistrate has found Wallerstein to be untruthful. Pieraccini responded to a harassing examination at the deposition by saying he was unsure what happened with the coffee but that it flew over the table and splashed. The court reporter's testimony is demonstrably unreliable: her affidavit testimony paints a picture of a

---

[9] *See* 28 U.S.C. § 636; *Reddick v. White*, 456 F. App'x 191, 193 (4th Cir. 2011) ("Magistrate judges have no inherent Article III powers — they have only those powers vested in them by Congress.").

[10] Order 977 quotes *Chambers* for the proposition that a party "may be sanctioned *for abuses of process* occurring beyond the courtroom." Order 977 at 7 (emphasis supplied). Order 977 fails to explain how the conduct sanctioned in Order 977 involved any *abuse of process*.

[11] Indeed, the break lasted less than 3 minutes. *See* Dkt. 854.

[12] No authority cited by the Magistrate holds that a finding of bad faith could be based on whether in the Magistrate's personal opinion Ms. Healy's apology was sufficiently immediate or heartfelt, or her response to AW-USA's sanctions motion was insufficiently submissive.

coffee-soaked conference room that is flatly contradicted by extensive documentary evidence. Video and audio evidence show no sign of coffee spillage, and no evidence was ever submitted by AW-USA showing any damage of any type.  No receipts were submitted in support of any request for compensation, because no damage occurred.  Order 977 clearly erred in issuing a fine against Loop AI's counsel, without the requisite process, and attempting to characterize the fine as compensatory, even though no evidence was ever before the Court of any damage or need for compensation.  Similarly, the Magistrate's findings as to the timing and depth of Ms. Healy's apology are both legally irrelevant and unfounded.  There is no testimony in the record showing Ms. Healy did not apologize at the deposition, and there was no basis on which the Magistrate could make such a finding.

**5. *The Magistrate Was Not Permitted to Rule on Motion 840*** – Loop AI lacks sufficient space to address this and other points of error, and respectfully lists it here summarily to preserve it for appeal, and requests leave to submit full briefing addressing these issues.[13]

For the reasons set forth above, and in Loop AI's prior filings, Order 977 is contrary to law and clearly erroneous and should be vacated.[14]

Respectfully submitted,

February 10, 2017
(Amended on February 11, 2017)

By:   /s/ *Valeria Calafiore Healy*

Valeria Calafiore Healy, Esq. (*phv*)
Valeria.healy@healylex.com
HEALY LLC
154 Grand Street
New York, New York 10013
Telephone:    (212) 810-0377
Facsimile:    (212) 810-7036

Counsel for Plaintiff
LOOP AI LABS, INC.

[13] Some of the legal authorities supporting Loop AI's position that the Magistrate was not permitted to rule on Motion 840 and is not permitted to continue presiding in this case in light of her law clerk's interjection in this case as an adversary witness against Loop AI is set forth at Dkt. 938.

[14] Loop AI respectfully requests leave *nunc pro tunc* to exceed the 5-page limit of Civ. L.R. 72-2, by the additional half page, as set forth above.