VALERIA CALAFIORE HEALY
(*pro hac vice*)
HEALY LLC
154 Grand Street
New York, New York  10013
Telephone:    (212) 810-0377
Facsimile:    (212) 810-7036

Counsel for Plaintiff
LOOP AI LABS INC.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| LOOP AI LABS INC., | CASE NO.: 3:15-cv-00798-HSG-(DMR) |
| Plaintiff, | **PLAINTIFF LOOP AI LABS INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AGAINST DEFENDANT ANNA GATTI** |
| v. | Hearing Date: May 4, 2017, 2:00pm |
| ANNA GATTI, et al, | Action Filed:  February 20, 2015<br>Trial Date: TBA |
| Defendants. | Hon. Haywood S. Gilliam, Jr. |

**PLEASE TAKE NOTICE THAT** on May 4, 2017 at 2:00pm, or as soon before that as the parties may be heard, Plaintiff Loop AI Labs Inc. ("Loop AI"), will move the Court, before the Honorable Haywood S. Gilliam, Jr. of the United States District Court for the Northern District of California, for an Order pursuant to Fed. R. Civ. P. 12(c) granting partial judgment on the pleadings in favor of Loop AI and against Defendant Anna Gatti as to the issue of liability for certain breaches of contract set forth in Count VI of the Second Amended Complaint filed at Dkt. 210.  This Motion is based on this Notice, the accompanying Memorandum of Law, the Declaration of V.C. Healy dated February 23, 2017 and supporting exhibits, and all other papers of record with the Court and which may be further received by the Court.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to Fed. R. Civ. P. 12(d), the Court may convert the motion into a motion for summary judgment under Fed. R. Civ. P. 56.

Respectfully submitted,

February 23, 2017                                     By:   /s/ *Valeria Calafiore Healy*

Valeria Calafiore Healy, Esq. (*phv*)
HEALY LLC

Counsel for Plaintiff
LOOP AI LABS, INC.

# GLOSSARY

| Abbreviation | Definition |
|---|---|
| Action | The civil action pending in the United States District Court for the Northern District of California, styled *Loop AI Labs Inc. v. Gatti et al*, N.D. Cal. 15-798, filed on February 20, 2015. |
| Almaviva or Almaviva Defendants | Defendants Almaviva S.p.A., Almawave S.r.l., and Almawave USA Inc. |
| Answer | Ms. Gatti's Answer to the SAC filed at Dkt. 244. |
| AW-USA | Defendant Almawave USA |
| AW-USA Answer | Defendant Almawave USA's Answer filed at Dkt. 264. |
| CIIAA | Refers to the CIIAA defined in the SAC as consisting of Ms. Gatti's Confidential Information and Invention Assignment Agreement with the Company. *See* SAC at ¶ 91; Answer at ¶ 91. |
| Company | Plaintiff Loop AI Labs Inc. |
| Complaint | Second Amended Complaint filed at Dkt. 210 |
| Decl. | Declaration of VC Healy dated February 23, 2017 |
| Dkt. | Designates entries on the ECF docket of this Action. |
| Employment Agreement | Refers to the Employment Agreement defined in the SAC as consisting of the Executed OL and the CIIA. *See* SAC at ¶ 91; Answer at ¶ 91. |
| Executed OL | Refers to the Executed OL defined in the SAC as consisting of Ms. Gatti's Executed Offer Letter with the Company. *See* SAC at ¶ 91; Answer at ¶ 91. |
| Federal Rules | Federal Rules of Civil Procedure |
| Italian Almaviva Defendants | Defendants Almaviva S.p.A. and Almawave S.r.l. |
| IT Answer | Italian Almaviva Defendants Answer filed at Dkt. 762. |
| Loop AI | Plaintiff Loop AI Labs Inc. |
| SAC | Second Amended Complaint filed at Dkt. 210 |

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Loop AI Labs Inc. respectfully submits this Memorandum of Points and Authorities in support of its Motion for entry of partial judgment against Defendant Anna Gatti on a single key part of its breach of contract claim alleged in Count VI of the Second Amended Complaint.

Specifically, Loop AI seeks partial judgment on the pleadings on the issue of Ms. Gatti's liability for her breaches of the full-time commitment and exclusivity provisions in her Employment Agreement with Loop AI. Those provisions required Ms. Gatti to devote her full time and best business efforts to the interests of Loop AI and to refrain from engaging in any other employment, consulting or other business activity without the written consent of Loop AI. As explained below, in her Answer to the Second Amended Complaint Ms. Gatti admits that she entered into the Employment Agreement with Loop AI; admits the Employment Agreement contained the full-time commitment and exclusivity provisions referred to above; and admits that she undertook employment and other business activities with the Almaviva Defendants, even as she continued to be employed by Loop AI, without obtaining the prior written consent of Loop AI that was required by her Employment Agreement. Ms. Gatti also makes clear in her Answer that none of this misconduct involved inadvertence on her part or on the part of the Almaviva Defendants – Ms. Gatti admits in her Answer that she told the Almaviva Defendants that she worked as the full-time CEO of Loop AI and that she was required to obtain Loop AI's consent before beginning her business relationship with the Almaviva Defendants.[1]

Because the facts evidencing Ms. Gatti's breaches of the full time and exclusivity provisions in her Employment Agreement have been admitted by Ms. Gatti and therefore are undisputed, Loop AI is entitled to judgment as a matter of law on the issue of liability for those breaches.

---

[1] Ms. Gatti admits that "[t]he Almaviva Defendants knew of Gatti's position as the full-time CEO of [Loop AI]," SAC at ¶¶ 20, 115:1-2; Answer at ¶¶ 20, 115:1-2, and that "the Almaviva Defendants were expressly informed by Gatti that she could not engage in other activities without the permission of the Company." SAC at ¶ 204; Answer at ¶ 204.

**FACTS ADMITTED IN THE PLEADINGS**

The following facts are undisputed based on the admissions made by Ms. Gatti and the Almaviva Defendants in their respective answers to the Second Amended Complaint:[2]

1. Loop AI is a Delaware corporation with its principal place of business in San Francisco, California. SAC at ¶ 40, Answer at ¶ 40.[3]

2. Defendant Anna Gatti is an individual residing at 24 Clarendon Avenue in San Francisco, California. SAC at ¶ 41; Answer at ¶ 41.

3. Defendant Almawave USA Inc. had its principal place of business and was domiciled at Ms. Gatti's home residence at 24 Clarendon Avenue, San Francisco California. SAC at ¶¶ 47, 117, 135; Answer at ¶¶ 47, 117, 135.

4. Loop AI is a startup founded in 2012. Loop AI seeks to deploy its proprietary artificial intelligence ("AI") technology, which automatically learns about people and things by understanding the internet-based data related to them, by automatically converting unstructured big data and social data to structured data, which can then be used by companies in a wide variety of industries to understand their customers, products, and more without the need to hire data scientists. Loop AI also has developed, among other things, a Digital Genome Platform that works automatically without human intervention to perform text analytics, semantic understanding, data/text mining, information/feature discovery and sentiment analysis on any data set of big data or social data. SAC at ¶ 3; Answer at ¶ 3.

5. Ms. Gatti was Loop AI's Chief Executive Officer and later President. SAC at ¶¶ 5, 100; Answer at ¶¶ 5, 100.

6. Ms. Gatti's assigned role at Loop AI included seeking out venture capital funding for Loop AI. Ms. Gatti was also expected to network within the venture capital community and

---

[2] The pleadings relevant to this Motion are the SAC filed at Dkt. 210, Ms. Gatti's Answer to the SAC filed at Dkt. 244, AW-USA's Answer to the SAC filed at Dkt. 264. Those portions of the pleadings relevant to this Motion are being submitted with the February 23, 2017 Declaration of V.C. Healy ("Declaration" or "Decl.") as **Exhibit 1** (excerpts of the SAC), **Exhibit 2** (excerpts of Gatti's Answer), and **Exhibit 3** (excerpts of AW-USA's Answer).

[3] Loop AI, formerly known as Soshoma Inc., is referred in the Complaint as the "Company." Complaint at 1:20.

the Northern California technology world, with a view to building awareness of Loop AI and of the value of its proprietary technology, to gather market intelligence that would be useful to Loop AI, and to find and attempt to close financing from investors.  SAC at ¶ 100; Answer at ¶ 100.

7.   Ms. Gatti entered into several contracts with Loop AI, including a Stock Purchase Agreement ("SPA"), an Application for Employment ("AFE"), an Offer Letter ("Executed OL") and a Confidential Information and Invention Assignment Agreement.  SAC at ¶¶ 91, 287, 303; Answer at ¶¶ 91, 287, 303.

8.   Ms. Gatti's employment obligations with Loop AI were memorialized in the Executed OL and in the CIIA, both of which were executed by Ms. Gatti on October 3, 2012 (the Executed OL and the CIIAA together referred to as the "Employment Agreement").[4]  SAC at ¶ 91; Answer at ¶ 91.

9.   Through the CIIAA, Ms. Gatti agreed to devote her full-time and best efforts to Loop AI's interests, to not accept concurrent employment from anyone else, let alone actual or potential competitors, without Loop AI's prior written consent, and to not solicit any employees, advisors, consultants, investors or other service providers of Loop AI.  SAC at ¶ 286; Answer at ¶ 286.

10. Under the terms of the Employment Agreement, Ms. Gatti agreed, among other things, to the following contractual provisions:

- "**Position.**  You will start in a ***full-time*** position as Chief Executive Officer…. By signing this letter, you confirm with the Company that you are under no contractual or other legal obligation that would prohibit you from performing your duties with the Company."  Executed OL at § 1 (emphasis added).

- "**Outside Activities.**  While you render services to the Company, ***you agree that you will not engage in any other employment, consulting or other business activity without the written consent of the Company.***  In addition, while you render services to the Company, ***you will not assist any person or entity in competing with the Company, in preparing to compete with the Company or in hiring any employees or consultants of the Company.***"  *Id.* at § 7 (emphasis added).

---

[4] Ms. Gatti's Employment Agreement incorporated by reference and quoted extensively in the SAC is attached as **Exhibit 4** to the Declaration.

SAC at ¶ 92; Answer at ¶ 92.

11. In the CIIAA, Ms. Gatti further agreed, as a condition of her becoming employed (or her employment being continued) by Loop AI, that she would be bound by the following additional obligations:

- "**Relationship**. [] Any such employment or consulting relationship between the parties hereto, whether commenced prior to, upon or after the date of this Agreement, is referred to herein as the "Relationship." CIIAA at § 1.

- "**Duties**.  [] During the Relationship, *I will devote my entire best business efforts to the interests of the Company and will not engage in other employment or in any activities detrimental to the best interests of the Company without the prior written consent of the Company.*" *Id.* at § 2.

SAC at ¶ 93; Answer at ¶ 93.

12. Ms. Gatti also agreed to be bound by a "No Conflicts" provision, which provided, in relevant part:

- "No Conflicts.  []  I acknowledge and agree that I have listed on Exhibit A all agreements … if any, with a current or former client, employer, or any other person or entity, that may restrict my ability to accept employment with the Company or my ability to recruit or engage customers or service providers on behalf of the Company, or otherwise relate to or restrict my ability to perform my duties for the Company or any obligation I may have to the Company.  I agree not to enter into any written or oral agreement that conflicts with the provisions of this Agreement.  *Id.* at § 10(b).

SAC at  ¶ 97; Answer at ¶ 97.

13.  Ms. Gatti also admitted that she owed fiduciary duties to Loop AI.  SAC at ¶ 409; Answer at ¶ 409.

14.  Loop AI awarded Ms. Gatti restricted shares in Loop AI pursuant to the SPA. The award of shares to Ms. Gatti was conditioned upon Ms. Gatti's employment obligations to Loop AI.  Specifically, the vesting of any shares awarded Ms. Gatti under the SPA was conditioned on her "Continued Service Status" with Loop AI and provided a 1-year cliff before any vesting would begin.  After the first year, any additional vesting of shares in Loop AI continued to be conditioned on Gatti's Continued Service Status.  The SPA provided that in the event of a voluntary or involuntary termination of Ms. Gatti's Continuous Service Status, the Company was entitled to repurchase 100% of the shares that had not yet vested in accordance

with SPA's vesting provisions.  SAC at ¶ 90; Answer at ¶ 90.

15. Under the SPA, had Ms. Gatti left the Company or been terminated during the first year of employment, Ms. Gatti would not have vested a single share in Loop AI due to the SPA's 1-year cliff before vesting began.  Thereafter, Ms. Gatti's shares were to continue to vest based on her continued employment with Loop AI for a period of 4 years.   SAC at ¶ 98; Answer at ¶ 98.

16. Ms. Gatti began negotiating with Defendants Almaviva S.p.A. ("Almaviva IT") and Almawave S.r.l. ("Almawave IT"), referred to as the Italian Almaviva Defendants, in February 2014.  Dkt. 762 ("IT-Answer") at ¶ 20:5; Dkt. 264 ("AW-USA Answer") at ¶ 20:26-27.

17. The Italian Almaviva Defendants and Defendant Almawave USA are sometimes referred to in the SAC as the Almaviva Defendants.  SAC at 2:22-23.

18. The Almaviva Defendants operate a technology company.  SAC at ¶ 114; Answer at ¶ 114.

19. The Almaviva Defendants sought to enter the San Francisco and Silicon Valley space.  SAC at ¶ 114; Answer at ¶ 114.

20. The Almaviva Defendants knew that Ms. Gatti was already employed as the CEO of Loop AI.  SAC at ¶ 115, 411; Answer at ¶ 115, 411.

21. The Almaviva Defendants knew that Gatti's position as the CEO of Loop AI was full-time.  SAC at ¶ 21; Answer at ¶ 21.

22. Indeed, the Almaviva Defendants were expressly informed by Ms. Gatti that she could not engage in other activities without the permission of Loop AI.  SAC at ¶ 204; Answer at ¶ 204.

23. Upon commencing their relationship with Ms. Gatti, Almaviva IT touted on its website the fact that Ms. Gatti was concurrently CEO of the Company in San Francisco, as well as the new CEO of their newly launched subsidiary Almawave USA.  Specifically in the bio published, they state as follows: "**Anna Gatti - Chief Executive Officer of Almawave USA** lives in San Francisco, ***where she is co-founder and CEO of a start-up using artificial intelligence applied to big data***. []."  SAC at ¶ 72 (paragraph beginning on page 22, line 11 of

the SAC); Answer at ¶ 72.

24. Ms. Gatti was terminated by Loop AI at the beginning of February 2015.  SAC at ¶¶ 6, 130; Answer at ¶¶ 6, 130.

## ARGUMENT

### I.   RELEVANT LEGAL STANDARDS

A party may move for judgment on the pleadings after the pleadings are closed.  Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law."  *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990).  "For purposes of the motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false."  *Id.*  In deciding the motion, the court "may consider materials incorporated into the complaint or matters of public record."  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  The Ninth Circuit has "extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance."  *Id.*  If the court goes beyond the pleadings to resolve an issue, it must treat the motion "as one for summary judgment under Rule 56" and ensure that all parties are "given a reasonable opportunity to present all material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).[5]  To the extent the Court were to convert this motion into one of summary judgment in order to consider materials beyond the pleadings, the applicable standard would be the same.  Under Rule 56, a party is entitled to summary judgment as to the whole or part of a claim when "there is no genuine issue as to any material fact… and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

---

[5] *See also, e.g., Calloway v. Contra Costa Cty. Jail Corr. Officers*, No. C 01-2689, 2007 U.S. Dist. LEXIS 3038, at *33 (N.D. Cal. Jan. 16, 2007) ("When the district court must go beyond the pleadings to resolve an issue on a motion for judgment on the pleadings, the proceeding is properly treated as a motion for summary judgment.").

Loop AI respectfully submits that, because the material facts admitted in the pleadings evidence that Ms. Gatti breached the full-time and exclusivity provisions in her Employment Agreement with Loop AI, as set forth in Count VI, Loop AI is entitled to judgment as a matter of law on the issue of Ms. Gatti's liability for those breaches.[6]

## II. Partial Judgment of Liability Against Ms. Gatti for Breach of Contract is Appropriate.

Loop AI seeks partial judgment on the pleading on the issue of Ms. Gatti's liability for her breaches of Sections 1 and 7 of the Executed OL, and her breaches of Sections 2 and 10(b) of the CIIA. *See* SAC at Count VI.   As demonstrated above and as further discussed below, there is no genuine dispute of material fact regarding Ms. Gatti's breaches of those provisions because Ms. Gatti has admitted all the material facts.  Accordingly, Loop AI is entitled to judgment as a matter of law based on those admissions in the pleadings.

Under California law, which governs the Employment Agreement,[7] "a contract is an agreement to do or not to do a certain thing."  Cal. Civ. Code § 1549.  Ms. Gatti admits that "[b]y executing the SPA, ATA, Executed OL, CIIA and Application for Employment, [she] entered into several California contracts with [Loop AI]."  SAC at ¶ 303; Answer at ¶ 303.  Ms. Gatti admits that her employment obligations with Loop AI were memorialized in her Employment Agreement with Loop AI, which included the Executed OL and the CIAA.  SAC at ¶¶ 91, 286; Answer at ¶¶ 91, 286.  Ms. Gatti admits that while employed by Loop AI she was not permitted to engage in any other work without Loop AI's written consent.  For instance, Ms. Gatti admits that her "employment by [Loop AI] was contingent upon her execution of the Executed OL and the CIIAA, in which Gatti agreed to keep confidential, hold in trust, not duplicate, and not disclose to any third parties all of the Company's confidential and trade secret information without the Company's consent. Through the CIIAA, [she] also agreed to devote her full-time and best efforts to the Company's interests, to not accept concurrent employment from anyone else, let alone actual or potential competitors, without the Company's prior written consent, and

---

[6] Count VI alleges additional breaches of contract against Ms. Gatti that have not been included in this Motion as beyond Rule 12(c).

[7] *See* Decl. at Exhibit 4 at § 12(a).

to not solicit any employees, advisors, consultants, investors or other service providers of the Company." SAC at ¶ 286, Answer at ¶ 286. Ms. Gatti also admits that under Sections 1 and 7 of the Executed OL she agreed to work "full-time" for Loop AI and to "not engage in any other employment, consulting or other business activity without the written consent of the Company." SAC at ¶ 92 (quoting Sections 1 and 2 of the Executed OL), Answer at ¶ 92. Ms. Gatti admits that "[i]n the CIIAA, [she] further agreed that as 'a condition of her becoming employed (or her employment being continued) by' the Company, she would … devote [her] entire best business efforts to the interests of the Company and will not engage in other employment or in any activities detrimental to the best interest of the Company without the prior written consent of the Company." SAC at ¶ 93 (quoting Section 2 of the CIIAA), Answer at ¶ 93. Ms. Gatti admits that in the CIIAA she "agree[d] not to enter into any written or oral agreement that conflicts with the provisions of this Agreement." SAC at ¶ 97 (quoting Section 10(b) of the CIIAA), Answer at ¶ 97. Ms. Gatti admits that she "owed fiduciary duties to [Loop AI]." SAC at ¶ 409; Answer at ¶ 409.

There is no genuine dispute that while Ms. Gatti was employed by Loop AI she undertook work for other companies without obtaining the prior written consent of Loop AI that was required by her Employment Agreement and therefore breached her Employment Agreement with Loop AI, specifically Sections 1 and 7 of the Executed OL, and Sections 2 and 10(b) of the CIIA. For instance, it is undisputed that Ms. Gatti breached those provisions by working for the Almaviva Defendants from early 2014 and through her termination by Loop AI in February 2015, without Loop AI's written consent. *See supra* at 2-6 (listing relevant admissions contained in the pleadings).

While Ms. Gatti alleges in her Answer that the requirement of written consent for concurrent employment was waived by Loop AI,[8] this allegation is insufficient as a matter of law to defeat this Motion because it is contrary to the express terms of the Employment Agreement.[9]

---

[8] Answer at ¶ 286.
[9] Ms. Gatti does not allege that she obtained any written authorization from Loop AI evidencing this alleged waiver. Indeed, in one of her Declarations filed at Dkt. 737-7, Ms. Gatti claims that she allegedly "discussed with [her] Loop co-founder, Gianmauro Calafiore [her] desire to take a

Specifically, Ms. Gatti contractually agreed that there could be no waiver or modification of Ms. Gatti's contractual obligations except in writing:

> "The Company shall not be deemed … to have waived given any authorizations or waived any of its rights under this Agreement, unless, and only to the extent, it does so by a specific writing signed by a duly authorized officer of the Company, it being understood that, even if I am an officer of the Company, I will not have authority to give any such authorizations or waivers for the Company under this Agreement without specific approval by the Board of Directors.  Any subsequent change or changes in my duties, obligations, rights or compensation will not affect the validity or scope of this Agreement."  CIIA at § 12(b).

Accordingly, because the facts evidencing Ms. Gatti's material breaches of her Employment Agreement at issue in this Motion have been admitted by Ms. Gatti and therefore are undisputed, Loop AI is entitled to judgment as a matter of law on the issue of liability for Ms. Gatti's breaches of the full time and exclusivity provisions in her Employment Agreement.

## CONCLUSION

For the foregoing reasons, Loop AI respectfully requests that this Court enter an Order granting partial judgment on the pleadings on the issue of Ms. Gatti's liability for her breaches of Sections 1 and 7 of the Executed OL, and her breaches of Sections 2 and 10(b) of the CIIA, as set forth in Count VI of the SAC.

Respectfully submitted,

February 23, 2017                              By:  /s/ *Valeria Calafiore Healy*

Valeria Calafiore Healy, Esq.
(*phv*)
HEALY LLC

Counsel for Plaintiff
LOOP AI LABS, INC.

---

part time CEO position with Almawave USA and he agreed to permit her to do so."  Dkt. 737-7 at ¶ 3.