UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LOOP AI LABS INC,

             Plaintiff,

    v.

ANNA GATTI, et al.,

             Defendants.

Case No.  15-cv-00798-HSG

**ORDER IMPOSING TERMINATING SANCTIONS**

Under Federal Rule of Civil Procedure 37(b) and the Court's inherent authority, the Court issues terminating sanctions dismissing Plaintiff Loop AI Labs Inc.'s action with prejudice.  The Court previously issued an order to show cause why terminating sanctions should not issue, Dkt. No. 894, to which Plaintiff responded, Dkt. No. 922.  For the reasons discussed below, the Court concludes that Plaintiff's obstructionist discovery conduct, flagrant disregard for the Court's authority, and inability to meet its most basic professional obligations warrant no lesser sanction.

## I.      BACKGROUND

Plaintiff initiated this action in February 2015.  Dkt. No. 1.  The operative complaint alleges eighteen causes of action including civil conspiracy, fraud, breach of contract, theft of corporate opportunity, misappropriation of trade secrets, and conversion against Defendants Anna Gatti; Almaviva S.p.A, Almawave S.r.l., Almawave USA Inc. (collectively, "Almawave"); IQSystem, Inc. ("IQS, Inc."), and IQSystem LLC ("IQS LLC").  *See* Dkt. No. 210 ("SAC").  Plaintiff alleges that Defendant Gatti, its now-former CEO, conspired with Defendants to misappropriate Plaintiff's trade secrets and generally sabotage its business prospects.  According to Plaintiff, while Gatti pretended to work full time for Loop AI, she was simultaneously providing advisory services for multiple competing startups and took a concurrent CEO position with Defendant Almawave.  SAC ¶ 116.  Plaintiff contends that Almaviva intended to use Gatti's

assistance to buy Loop AI for a "bargain price" or to hire away its key employees and obtain access to its proprietary technology and trade secrets.  SAC ¶ 21.  Plaintiff alleges that Gatti's scheme involved sabotaging Plaintiff's access to funding, sharing Plaintiff's proprietary information with the other Defendants, and using Plaintiff's time, property, and other resources to conduct business on behalf of Almawave.  SAC ¶¶ 22-23, 29.

From the beginning, this case has been marked by a level of dysfunction and inability to work together that is unprecedented in the Court's experience.  *See, e.g.*, Dkt. Nos. 96 & 98 (parties filed separate case management statements in contravention of Local Rule 16-9); Dkt. No. 101 (inability to conduct Rule 26(f) Meet and Confer); Dkt. No. 157 at 47-57 (Plaintiff's counsel blocked emails from Defendants, choosing to accept only faxes, letters, and phone calls from opposing counsel, because receiving emails from Defendants was too "intrusive"); Dkt. No. 288 (Defendants requested a discovery referee because Plaintiff allegedly "refuses to discuss any items beyond Loop's own agenda" during meet-and-confer meetings).  Magistrate Judge Donna M. Ryu attempted to "impose a workable structure on the parties' discovery dispute resolution process," Dkt. No. 271 at 2, and the docket highlights the Court's many, many attempts to advance this litigation in a productive way.[1]  Over the course of the last two years, the Court has tried numerous approaches, such as ordering court-supervised discovery management conferences, Dkt. No. 136 at 2; ordering the parties to audio record meet and confer sessions, Dkt. No. 156 at 2; instituting standing meetings each week to encourage substantive and meaningful meet-and-confer sessions, Dkt. No. 271 at 2; and eventually requiring the parties to provide dial-in information and agendas for the weekly meet-and-confer teleconferences, so that the Court could monitor the parties' conduct by joining the calls, Dkt. No. 415 at 2.

As described more fully below, Plaintiff's insubordination, through its counsel Valeria C. Healy, was and continues to be particularly egregious, posing a significant obstacle to the progress of this case.  The Court has given Plaintiff many chances to litigate in a professional and

---

[1] On June 16, 2015, the Court referred all discovery motions to a magistrate judge under Local Rule 72-1.  Dkt. No. 113.  In this order, all uses of the word "Court" refer either to the District Court or collectively to Judge Ryu and this Court.

United States District Court
Northern District of California

productive manner, and has been consistently confronted with counsel's utter disregard for the Court's authority and her persistent refusal to comply with the Court's orders and the Federal Rules. The following section details the key discovery orders serving as the basis of this order.

### A. Improper Conduct in Depositions of Three Key Witnesses

As early as December 2015, Judge Ryu gave specific warnings with respect to the issue of privilege during depositions: "there can be no instructions to not answer except for privilege. . . . And it has to be clearly privilege. Because if it's not, again there will be sanctions." Dkt. No. 335 at 46.

On January 25, 2016, Almawave first deposed Plaintiff's co-founder and CEO Gianmauro Calafiore. Dkt. No. 884 at 1 ("Order 884"). After reviewing the deposition transcript, Judge Ryu issued an order regarding Healy's conduct during the deposition. Dkt. No. 436 ("Order 436").

> [The deposition transcript] is replete with examples of inappropriate behavior by Plaintiff's counsel, Valeria Calafiore Healy. Ms. Healy made speaking objections, instructed the deponent not to answer questions for reasons other than the invocation of privilege, and repeatedly objected without stating a basis for the objection. The deponent, Gianmauro Calafiore, was often argumentative and uncooperative in providing testimony, thereby delaying the deposition process. Ms. Healy and Mr. Calafiore's obstructionist conduct repeatedly stymied Alma[w]ave USA's attempts to obtain discovery through this key witness.

*Id.* at 1. Judge Ryu sanctioned the Plaintiff, ordering five additional hours of deposition and requiring Plaintiff to bear the cost. *Id.* The order again provided specific instructions:

> In the future, Ms. Healy, and indeed, all attorneys defending depositions in this litigation (1) shall state the basis for an objection, and no more (e.g., "relevance," "compound," "asked and answered"); (2) shall not engage in speaking objections or otherwise attempt to coach deponents; and (3) shall not direct a deponent to refuse to answer a question unless the question seeks privileged information.

*Id.* at 2. Judge Ryu further warned that "[g]iven Ms. Healy's repeated inappropriate conduct in her defense of the Calafiore deposition, any further breach" would result in sanctions. *Id.*

On August 25, 2016, Judge Ryu issued an order regarding Healy's continued conduct during the deposition of Calafiore, as well as Loop AI's other executives Bart Peintner and Patrick Ehlen. Dkt. No. 884. Leading up to this order, Judge Ryu had already twice directed Plaintiff to produce Peintner and Ehlen for depositions as they "appeared to be percipient witnesses." *See*

1    Dkt. No. 465 (March 10, 2016); Dkt. No. 526 (March 25, 2016).  Judge Ryu's March 25 order

2    included specific dates, ordering that Ehlen and Peintner appear on March 29 and March 30, and

3    that Calafiore and any of Plaintiff's 30(b)(6) witnesses appear either on March 31 or April 1.  Dkt.

4    No. 526.  This Court denied Plaintiff's motion for relief from Judge Ryu's nondispositive order

5    regarding the deposition dates.  Dkt. No. 533.  Plaintiff nonetheless failed to follow Judge Ryu's

6    orders.  *See* Dkt. No. 555 (Almawave's letter brief indicating that "Loop and its witnesses refused

7    to appear for deposition as ordered").  On April 4, 2016, Judge Ryu *again* ordered Plaintiff to

8    make witnesses Calafiore, Ehlen, and Plaintiff's corporate representative available.  Dkt. No. 564.

9           Order 884 is based on Judge Ryu's review of the deposition transcripts of these witnesses.

10   Judge Ryu found that "[i]n direct contravention of the court's February 29, 2016 order, Healy

11   instructed witnesses to refuse to answer questions on grounds other than privilege."  Order 884 at

12   4 (noting, for example, that Healy "instructed Plaintiff's 30(b)(6) designee (Calafiore) not to

13   answer certain questions, unilaterally deciding that the questions were outside the scope of the

14   noticed Rule 30(b)(6) topics"); *id.* at 5 ("[W]hen Almawave asked Ehlen, 'Can you tell us how

15   your particular algorithms work?', Healy instructed him not to answer on the basis of relevance,

16   again unilaterally taking the topic off the table.").[2]  Judge Ryu cited Healy's "numerous improper

17   speaking objections, in direct contravention of this court's order that counsel confine objections to

18   a statement of their basis, (e.g., 'compound,' or 'asked and answered'), and not engage in speaking

19   objections or otherwise attempt to coach the witness."  *Id.* at 5.  Order 884 found "Healy's

20   coaching was so effective that the witnesses occasionally repeated her objections, sometimes

21   verbatim, to the examining attorney," and that "[o]n other occasions, Healy actually attempted to

22   answer the question for the witness."  *Id.* at 6-7.[3]  Order 884 held that Healy improperly asserted

23   _____

24   [2] As the order further explained, "[o]pposing counsel responded by asking Healy to stipulate that the
     subject matter would not be raised by Plaintiff at trial (i.e., that the matter was truly irrelevant).  Healy

25   refused, stating that such a request was 'absolutely absurd.'"  Dkt. No. 884 at 5.
     [3] The order provides numerous examples:

26           "Q: And is it true that, in June 2015, Loop first launched to the
27           public?  Ms. Calafiore Healy: Objection. Vague and ambiguous.
             What do you mean launched? A: What do you mean launched?"

28           "Q: Do you think my clients did anything to interfere with the

                                                       4

attorney-client privilege to prevent witnesses from answering, noting that Healy "inexplicably refused to allow the witnesses to respond to questions about their own discussions with other Loop employees or third parties," and "refused to allow Plaintiff's witnesses to answer questions about their document collection and production in this litigation" on the basis of attorney-client privilege.  *Id.* at 7-8.  Judge Ryu concluded that Healy's conduct, "including instructions not to answer questions and speaking objections and coaching, was both improper and in direct violation of the court's February 29, 2016 order regarding the conduct of depositions" and "[a]ccordingly, it is sanctionable."  *Id.* at 9.  Judge Ryu deferred to this Court as to what sanction should be imposed.  *Id.*

United States District Court
Northern District of California

potential investments of WI Harper? Ms. Calafiore Healy: Objection. Without revealing attorney work product and attorney-client privilege, are you asking for his opinion? A: Are you asking for my opinion?"

"Q: Did you ever think about having Loop purchased by another company? Ms. Calafiore Healy: Objection, vague and ambiguous as to time period. A: During which time period?"

"Q. Not affiliated with Loop? A. Yeah. Q. Are -- Ms. Calafiore Healy: And I caution the witness and -- I'm objecting and caution the witness as to this question because I think he's confusing with Manuela Micoli."

"Q: Do you know how it would be done, tracking -- Ms. Calafiore Healy: Objection. Call – calls for speculation. The witness just testified it not [sic] – it's not his responsibility. A: Yeah, it's not really my area."

"Q. Which are what? Ms. Calafiore Healy: Cited in the declaration. A: Yeah, it was cited in the declaration."

"Q: Okay. As of today, you don't know? Ms. Calafiore Healy: Objection. Objection. Calls for a legal conclusion. As – this is not a question that – the witness is not here to testify in his capacity as the CEO of Loop AI for the 30(b)(6) deposition, which is tomorrow. So he's asking about – you're asking here questions about his personal knowledge, and the witness – and the question calls for a legal conclusion. A: So the – the answer is that your questions calls [sic] for a legal conclusion and we will find out."

Order 884 at 6 (citations and parentheticals omitted).

**B.  Refusal to Properly Respond to Key Interrogatories**

On multiple occasions Judge Ryu ordered Plaintiff to amend its responses to four key interrogatories.  With respect to Interrogatory No. 8, Almawave sought the factual bases for certain allegations in the SAC, including Almaviva's intent to buy Loop for a bargain price or to hire away Loop's key employees and thereby acquire access to Loop's proprietary technology.  Dkt. No. 428-1.  Judge Ryu first ordered Plaintiff on March 2, 2016 to submit an amended response by March 9, 2016.  Dkt. No. 438 ("Order 438").[4]  After receiving notice from Almawave that Plaintiff had not complied, Judge Ryu issued a second order on March 22, 2016, again directing Plaintiff to amend its response.  Dkt. No. 508.

With respect to Interrogatory Nos. 3, 5, and 7, Judge Ryu held that they permissibly sought the factual bases for Loop's allegations, and she ordered Plaintiff to serve amended responses by March 15, 2016.  Dkt. No. 465 ("Order 465").  On March 24, 2016, Almawave notified Judge Ryu that Plaintiff had failed to comply with both Order 438 and Order 465.  Dkt. No. 523.  Following submission of Almawave's brief and Plaintiff's opposition, Judge Ryu issued an order on May 3, 2016, finding that Plaintiff's responses to the four interrogatories were "plainly and grossly deficient."  Dkt. No. 640 ("Order 640").

> For each response, Plaintiff responded by directing Almawave to "all productions by all parties and non-parties in this case, and any further materials has [sic] may be obtained through discovery or otherwise."  This is improper.  An answer to an interrogatory "should be complete in itself."  In response to nos. 3, 7, and 8, Plaintiff also listed thousands of bates numbers with no explanation.  This is an improper use of Rule 33(d); a responding party "may not abuse the option . . . by directing the propounding party to a mass [o]f undifferentiated records."
>
> Plaintiff also included nearly 100 pages of allegations that appear to be cut and pasted from Plaintiff's second amended complaint. This too, is insufficient. . . .
>
> Plaintiff's response to no. 5, which sought the bases for Plaintiff's claimed damages, is also non-responsive. It simply lists the categories of damages Plaintiff seeks; it does not answer the question of how Plaintiff values its business, technology, trade

---

[4] According to Defendants, Loop refused to substantively respond.  Dkt. No. 428.  Plaintiff did not oppose Almawave's discovery letter brief on this issue, and the Court thus construed the motion as unopposed, ordering Plaintiff to respond by March 9, 2016.  Dkt. No. 438.

*United States District Court*
*Northern District of California*

secrets, patents, or confidential information.  None of the responses
were verified, violating Rule 33. . . .

*Id.* at 3 (citations omitted) (first ellipsis in original).  Judge Ryu concluded that Plaintiff's

responses to the interrogatories "are not substantially justified, and are subject to sanctions."  *Id.* at

4.  Judge Ryu again ordered Plaintiff to provide amended responses:

> Given that discovery has now closed, Plaintiff shall supplement its
> responses to interrogatory nos. 3, 5, 7, and 8 within seven days of
> the date of this order.  Plaintiff's responses may not include
> allegations pasted from the operative complaint, and Plaintiff must
> provide full, complete answers for each interrogatory which are
> verified under penalty of perjury.

*Id.*

Notwithstanding Order 640, Plaintiff refused to amend its responses.  *See* Dkt. No. 679

(Almawave's discovery letter brief indicating that Plaintiff has not complied with Order 640); *see*

*also* Dkt. No. 691 (Almawave's motion for leave to file a motion for terminating sanctions

regarding Plaintiff's alleged refusal to comply with Order 640); Dkt. No. 686 at 4-5 (Plaintiff's

motion for relief maintaining that it "properly responded to the Interrogatories and cannot be

compelled to change the factual basis of [sic] supporting its complaint, which is what the

interrogatories are directed to").

On July 21, 2016, Judge Ryu ordered Plaintiff to file a statement indicating whether it had

served supplemental and/or amended responses to each of the interrogatories at issue.  Dkt. No.

850.  Judge Ryu ordered Plaintiff to submit a copy of the supplemental and/or amended responses

that it had served along with a proof of service.  *Id.*  Plaintiff's response confirmed that Plaintiff

had refused to amend the interrogatories.  *See* Dkt. No. 856 ("[A]fter considering the requirements

of Order 640 and reviewing the responses already provided by Loop AI, Loop AI did not possess

any further information that was responsive to those interrogatories and did not have any further

information to provide as a supplement to the Interrogatories identified.").

**C.  Failure to Properly and Timely Respond to Requests for Production**

On May 3, 2016, Judge Ryu also admonished Plaintiff because its responses to several

RFPs failed to comply with Federal Rule of Civil Procedure 34(b)(2).  Order 640 at 5-6

("Plaintiff's responses render it impossible to determine the extent of Plaintiff's production and

whether Plaintiff has withheld documents responsive to any portions of the RFPs.").  Judge Ryu

United States District Court
Northern District of California

ordered Plaintiff to amend its responses to comply with Rule 34(b)(2) by May 10, 2016. *Id.* at 6. Almawave filed a discovery letter brief on May 13, 2016 indicating that Plaintiff had not complied with Judge Ryu's order to respond to the RFPs. Dkt. No. 679. Plaintiff's motion for relief from Judge Ryu's order confirmed Plaintiff's refusal to comply with the court's order. *See* Dkt. No. 686 at 5 (insisting that "Loop AI served appropriate discovery responses in compliance with the Federal Rules of Civil Procedure," and that it "cannot be required to amend discovery responses served almost a year ago to comply with a new rule"). The Court denied Plaintiff's motion for relief on May 24, 2016. Dkt. No. 702. On July 21, 2016, Judge Ryu ordered Plaintiff to file a statement by July 26, 2016 that specified whether Plaintiff had served the RFPs by the court's May 10 deadline. In its late-filed response, Plaintiff further confirmed its noncompliance: although the deadline for production was May 10, 2016, Plaintiff stated that it *began* to produce on May 11, 2016. *See* Dkt. No. 856 at 1 & n.1 (filed July 27, 2016). Moreover, Plaintiff's production extended far past the May 10 deadline, continuing through early June. Dkt. No. 807 at 3-4.[5]

### D.  Refusal to Produce Adequate Privilege Log

On March 8, 2016, Almawave filed a discovery letter brief regarding Plaintiff's failure to provide a privilege log. Dkt. No. 451. Almawave argued:

> Loop's responses to Almawave's First Set of Requests for Production of Documents were due and served on August 3, 2015. Loop's privilege log is now more than seven months overdue, nearly one month overdue from when Almawave raised the issue in writing via its agenda and over 14 days overdue from when Almawave expressly wrote demanding that Loop produce its privilege log.

*Id.* In response, Judge Ryu referred the parties to her January 27, 2016 Notice of Amended Discovery Procedures, which provided that "[i]f a party withholds responsive information by

---

[5] Plaintiff contends that its May 11, 2016 production was timely because it added three days to the deadline for compliance with the court's May 3, 2016 order, due to electronic service of the order. Dkt. No. 856 at 1 n.1. It cites Federal Rules of Civil Procedure 6(d) and 5(b)(2)(E) for support. *Id.* The Court does not read these provisions to extend the deadline by which a party must comply with a court order based on electronic service of the court order. But even giving Plaintiff the benefit of the doubt, Plaintiff was still grossly noncompliant. Judge Ryu ordered supplemental responses to be submitted *within* 7 days. Dkt. No. 640 at 6. Plaintiff only *began* production on May 11, Dkt. No. 856 at 1 n.1, and did not finish until early June, Dkt. No. 807 at 4, thus failing by several weeks to meet the court's deadline.

claiming that it is privileged or otherwise protected from discovery, that party shall produce a privilege log as quickly as possible, but no later than fourteen days after its disclosures or discovery responses are due, unless the parties stipulate to or the court sets another date." Dkt. No. 456 (citing Dkt. No. 401 at 4). Judge Ryu ordered Plaintiff to produce the privilege log no later than March 16, 2016. Dkt. No. 456.

On March 18, 2016, Almawave filed an administrative motion for leave to file a unilateral discovery letter brief in which it asserted that Plaintiff had refused to comply with the court's order to produce a privilege log, seeking leave to move to compel Plaintiff's production of documents over its privilege claims based on waiver. Dkt. No. 498. Plaintiff did not timely oppose Almawave's administrative motion and did not refute Almawave's representations about its refusal to produce a privilege log. Dkt. No. 540 ("Order 540"). Accordingly on March 29, 2016, Judge Ryu ordered Plaintiff to show cause why it should not be sanctioned for failing to comply with Order 456 and why its failure to produce a privilege log should not be deemed a waiver of any asserted privileges. *Id.*

Plaintiff's response to the order to show cause challenged the validity of Order 540, contending that Defendant's initial letter brief, Dkt. No. 451, should have been denied. Dkt. No 576. Plaintiff also argued that its conduct was "no different than what all the Defendants have done in this case," and that the "only difference is that Loop AI did not immediately run to the Court to seek sanctions." *Id.* Finally, Plaintiff represented that it intended to comply with Order 456 by April 11, 2016, *id.*, almost a month after the court's deadline.

On April 28, 2016, Almawave filed a third motion related to Plaintiff's privilege log, seeking leave to file a unilateral brief regarding the sufficiency of Plaintiff's privilege log, Dkt. No. 630, which Plaintiff opposed, Dkt. No. 637. After reviewing Plaintiff's privilege log, Judge Ryu issued an order on May 13, 2016, concluding Plaintiff had waived the attorney-client privilege and work-product protection as to most documents withheld from production. Dkt. No. 680 ("Order 680"). Order 680 provided three bases for the waiver:

> [First,] Almawave was literally unable to assess or challenge Plaintiff's claimed privileges or protection because Plaintiff did not serve a privilege log until April 2016, approximately seven months after Plaintiff's initial production, and after fact discovery closed on

9

1
2
3
4
5
6
7

> March 29, 2016. Plaintiff's privilege log was thus grossly late.
> [Second,] Plaintiff's service of its privilege log in April 2016
> violated three separate court orders: the June 2015 Notice of
> Reference and Order re Discovery Procedures, (Docket No. 117);
> the court's January 2016 Notice of Amended Discovery Procedures;
> and the court's March 9, 2016 order to produce a privilege log by
> March 16, 2016. Finally, Plaintiff's privilege log is grossly deficient.
> It contains no information about the titles and descriptions of the
> withheld documents, nor does it identify the subject matters
> addressed in the documents. This is exactly the kind of information
> that would enable Almawave to assess whether the assertion of
> privilege or protection is justified. It is also the kind of information
> that is required by Rule 26(b)(5), as well as the court's standing
> orders.

8   *Id.* at 4-5. Judge Ryu concluded that Plaintiff must "produce the documents described above for

9   which the court deems the attorney-client privilege and work product production waived within

10  seven days of the date of this order," i.e., by May 20, 2016. *Id.* at 6 (emphasis omitted).

11         Plaintiff sought reversal of Order 680 by this Court, Dkt. No. 700, which denied the

12  request, Dkt. No. 712. Plaintiff then sought a writ of mandamus in the U.S. Court of Appeals for

13  the Ninth Circuit. *In re: Loop AI Labs, Inc.*, No. 16-cv-71736, Dkt. No. 1 (9th Cir. May 31,

14  2016). On the same day, Almawave filed an administrative motion regarding Plaintiff's failure to

15  produce the documents consistent with Order 680, requesting either the issuance of an order to

16  show cause why terminating sanctions should not be imposed for Plaintiff's failure to comply or

17  leave to file a unilateral brief seeking such relief. Dkt. No. 715. On June 6, 2016, Plaintiff

18  acknowledged that it had refused to comply with Order 680, but asked Judge Ryu to "grant it at

19  least the ability to have its petition reviewed by the Ninth Circuit before entertaining any further

20  motions" on Order 680. Dkt. No. 725. Accordingly, Judge Ryu directed Plaintiff to identify

21  "authority for the position that petitioning for a writ of mandamus to a United States Court of

22  Appeals has the effect of staying a party's duty to comply with the order that is the subject of the

23  writ of mandamus." Dkt. No. 777. Plaintiff's response indicated that it had no such authority.

24  Dkt. No. 804. On July 11, 2016, Almawave filed an opposition to Plaintiff's response, in which it

25  cited authority for the proposition that the filing of the mandamus petition did not impose such a

26  stay. Dkt. No. 808. On December 21, 2016, the Ninth Circuit denied Plaintiff's petition for "the

27  extraordinary remedy of mandamus." *See* Dkt. No. 961 at 2. The Ninth Circuit held that

28  Plaintiff's "general overbreadth objections . . . did not excuse [Plaintiff] from its obligation to

1   provide a privilege log of documents responsive to proper, more narrow requests for production."

2   *Id.* at 1.

3        On December 27, 2016, Plaintiff notified that Court that it had "now produced to

4   Defendants all of the documents listed on its privilege log." Dkt. No. 963. But this was over nine

5   months after Judge Ryu first ordered Plaintiff to produce a proper privilege log, over seven

6   months after Judge Ryu ordered Plaintiff to produce the documents listed in its "plainly deficient"

7   log, and nearly nine months after the March 29, 2016 fact discovery deadline. Plaintiff thus acted

8   in direct defiance of multiple orders.

9        **E. Trade Secrets Disclosure**

10       The eleventh cause of action alleges misappropriation of trade secrets against all

11  Defendants. In accordance with California Code of Civil Procedure § 2019.210, Defendant IQS,

12  Inc. requested that Plaintiff provide trade secret disclosure on multiple occasions. *See, e.g.*, Dkt.

13  Nos. 118, 232. After reviewing Plaintiff's disclosures, Judge Ryu concluded on December 21,

14  2015 that Plaintiff's "explanation of the trade secrets in its second amended complaint" did not

15  satisfy § 2019.210's requirements. Dkt. No. 331 at 6-8 ("Order 331") ("Plaintiff's 'disclosure'

16  through designation of certain paragraphs in pleadings and declarations is no substitute for

17  specifically identifying and describing the actual claimed trade secrets in order to permit

18  [Defendants] to ascertain at least the boundaries within which the secret[s] lie[]." (some internal

19  quotation marks omitted)). Judge Ryu ordered Plaintiff "to file and serve a statement identifying

20  the specific trade secrets at issue within 21 days of the date of this order." *Id.* at 7. Judge Ryu

21  warned that "Plaintiff's identification of trade secrets must be thorough and complete," and that

22  "[a]ny future amendment to the disclosure will only be permitted upon a showing of good cause."

23  *Id.*

24       After the court's deadline passed, Defendant IQS, Inc. moved to enforce Order 331,

25  seeking to require Plaintiff to provide a thorough and complete identification of the trade secrets

26  under § 2019.210. Dkt. No. 459. Defendant IQS, Inc. sought sanctions in the form of (1)

27  preclusion of the introduction of evidence as to the claim and/or (2) the sanction of dismissal for

28  failing to specify the trade secrets. *Id.* at 3. Defendant Almawave joined in Defendant IQS, Inc.'s

United States District Court
Northern District of California

United States District Court
Northern District of California

motion to enforce Order 331.  Dkt. No. 472.

After reviewing Plaintiff's revised disclosures, Judge Ryu held that Plaintiff's trade secret disclosures fell "far short of the 'reasonable particularity' standard," Dkt. No. 795 at 5 ("Order 795"), and that Plaintiff "failed to comply with [Order 331] to provide a 'thorough and complete' identification of the trade secrets at issue in this litigation," *id.* at 12.

> [T]he fact that Plaintiff publicly filed its trade secret disclosure belies the proposition that it contains information specific enough to be considered 'confidential' trade secrets. . . Plaintiff's attempt to meet its disclosure obligation by pointing to allegations in its pleadings and other court filings was insufficient the first time, and is no more sufficient now. . . Plaintiff's technique of listing general concepts or categories of information is plainly insufficient; Defendants cannot fairly be expected to rebut Plaintiff's trade secrets claim without a reasonably concrete definition of the purported secrets. . . . Plaintiff's categorical descriptions render it impossible for Defendants to conduct public domain or other research to challenge the alleged secrecy of the information at issue.

*Id.* at 6-11.[6]  Judge Ryu noted that Order 331 had "warned Plaintiff that '[a]ny future amendment to [its] disclosure [would] only be permitted upon a showing of good cause.'"  Order 795 concluded that Plaintiff had "not sought leave to amend its trade secret disclosure" and its "failure to comply with the court's order [does not] constitute good cause to amend."  *Id.* at 12.  Finding Plaintiff's disclosures inadequate, Judge Ryu deferred to this Court in determining the ramifications under Federal Rule of Civil Procedure 37(b) of Plaintiff's failure to obey her discovery order.  *Id.* at 13.

---

[6] For example, Order 795 explained:

> Plaintiff identifies categories of information such as "actual and prospective investors and partners," "key contact information . . . at a large Japanese technology company," "key contacts at a major telephone company," "confidential target partner, client, investor, supplier, employee, consultant, advisor information," and "key service providers."  Potential investors, clients, suppliers, or contacts theoretically could constitute protectable facts.  However, as noted above, Plaintiff's disclosure was unaccompanied by any supporting documentation, and there is no indication that Plaintiffs identified these claimed trade secrets with more specificity.  Without more, Defendants are left to guess. Who exactly are the secret companies or individuals?

*Id.* at 9 (citations omitted).

United States District Court
Northern District of California

## II.     LEGAL STANDARD

"Federal Rule of Civil Procedure 37 authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983). Rule 37 allows for terminating sanctions that dismiss a plaintiff's action where there has been willfulness, bad faith, or fault. Fed. R. Civ. P. 37(b)(2)(A)(v); *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007); *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1337 (9th Cir. 1985). "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault." *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003) (internal quotation marks omitted).

In determining whether to impose terminating sanctions under Rule 37(b)(2), courts consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Conn. Gen. Life*, 482 F.3d at 1096 (internal quotation marks omitted). "The sub-parts of the fifth factor are whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions."[7] *Id.* "Where a court order is violated, the first and second factors will favor sanctions and the fourth will cut against them." *Comput. Task Grp., Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004) (per curiam). Thus, the Court's determination of whether terminating sanctions are appropriate often turns on the third and fifth factors. *Id.*

Moreover, "[d]ue process concerns further require that there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression 'threaten[s] to interfere with the rightful decision of the case.'" *Anheuser-Busch, Inc. v. Nat.*

---

[7] "Like most elaborate multifactor tests, our test has not been what it appears to be, a mechanical means of determining what discovery sanction is just. The list of factors amounts to a way for a district judge to think about what to do, not a series of conditions precedent before the judge can do anything, and not a script for making what the district judge does appeal-proof." *Valley Eng's Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998).

13

1    *Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995).  Sanctions interfering with a litigant's claim

2    or defenses violate due process when imposed merely for punishment of an infraction that did not

3    threaten to interfere with the rightful decision of the case.  *G–K Props. v. Redev. Agency*, 577 F.2d

4    645, 648 (9th Cir. 1978).

5            Finally, the Ninth Circuit has noted that "an evidentiary hearing on the matter for which a

6    party is sanctioned *might* be required before dismissal if the party had sought to show that it was

7    impossible for them to comply with the discovery order." *Religious Tech. Ctr. v. Scott*, 82 F.3d

8    423, at *4 (9th Cir. 1996), *as amended on denial of reh'g* (July 5, 1996) (unpublished) (emphasis

9    in original); *see also Wyle*, 709 F.2d at 592 ("When necessary, the district court may hold an

10   evidentiary hearing on a motion for sanctions.  Indeed, that method best determines the

11   appropriate sanctions while protecting a party's due process rights.").  That said, no court "has

12   said that evidentiary hearings are absolutely required prior to a Rule 37 dismissal," and "the

13   decision whether to hold an evidentiary hearing is well within the court's discretion." *Religious

14   Tech.*, 82 F.3d at *4 ("*Wyle* does not make an evidentiary hearing an absolute prerequisite to a

15   dismissal sanction, even when issues are in dispute."); *see also Pac. Harbor Capital, Inc. v.

16   Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000) (holding that a hearing is not

17   necessary so long as the party has had notice and opportunity to be heard).

18   **III.    DISCUSSION**

19           As an initial matter, the Court finds that Plaintiff's discovery violations were willful.  The

20   record illustrates that Plaintiff's failures to provide a privilege log, submit amended responses to

21   interrogatories or RFPs, provide adequate trade secret disclosures, and proceed in a manner

22   consistent with the Federal Rules during depositions were not outside Plaintiff's control.  *See In re

23   Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1233 (9th Cir. 2006)

24   ("Disobedient conduct not shown to be outside the litigant's control meets this standard.").

25   Instead, Plaintiff's refusal to comply clearly can be attributed to Plaintiff counsel's unrelenting

26   belief that she was right, the Court was wrong, and that her disagreement with the Court excused

27   her from complying with its orders.  *See, e.g.*, Dkt. No. 686 at 5 (continued argument that Judge's

28   Ryu's discovery orders are in error); Dkt. No. 541 (contending that Order 331 is in error and that

United States District Court
Northern District of California

14

1   Plaintiff's trade secret disclosures were sufficient).  But this is not the law.  It is well established

2   that "[a]n attorney who believes a court order is erroneous is not relieved of the duty to obey it."

3   *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 133 (9th Cir. 1987); *see also Adriana Int'l Corp. v.*

4   *Thoeren*, 913 F.2d 1406, 1411 (9th Cir. 1990) (rejecting the plaintiff's argument that failure to

5   produce documents or comply fully with production orders was excused because the court's orders

6   were in error, and declaring that "[d]isagreement with the court is not an excuse for failing to

7   comply with court orders"); *Chapman v. Pac. Telephone & Telegraph Co.*, 613 F.2d 193, 197 (9th

8   Cir. 1979) ("An attorney who believes a court order is erroneous is not relieved of the duty to obey

9   it.  The proper course of action, unless and until the order is invalidated by an appellate court, is to

10  comply and cite the order as reversible error should an adverse judgment result.")  Because

11  Plaintiff's repeated intentional actions, committed despite the Court's many orders to the contrary,

12  establish the willful conduct necessary for the imposition of terminating sanctions, the Court

13  proceeds to consider the five factors below.

14      **A.  First and Second Factors**

15          The first two factors—the public's interest in expeditious resolution of litigation and the

16  Court's need to manage its docket—weigh in favor of dismissal, given that Plaintiff has violated

17  countless orders of the Court.  *See Comput. Task Grp.*, 364 F.3d at 1115 (holding that the first two

18  factors were met when party failed to provide clear answers to interrogatories and failed to

19  produce documents as ordered).  Plaintiff refused to produce amended responses to its RFPs and

20  interrogatories, insisting (despite several court orders) that its answers were sufficient.  Plaintiff

21  failed to provide trade secret disclosures, maintaining (again in the face of many court orders) that

22  its general categories of disclosures were reasonably particular.  Plaintiff obstructed the deposition

23  of multiple key witnesses through coaching and improper objections, again undeterred by the

24  Court's repeated admonitions.  And this does not even include the many times Plaintiff eventually

25  complied, but only after repeatedly being directed to do so.  *See, e.g.*, Dkt. Nos. 501, 584, 587

26  (regarding Judge Ryu's multiple orders that Plaintiff produce documents in a searchable and

27  printable format); Dkt. Nos. 456, 540, 680, 712, 961, 963 (failing to produce an adequate privilege

28  log, or produce the documents listed in the inadequate log, until long after the close of discovery

United States District Court
Northern District of California

15

and in defiance of several court orders); *see also Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906

(9th Cir. 2002) ("[B]elated compliance with discovery orders does not preclude the imposition of

sanctions.  Last-minute tender of documents does not cure the prejudice to opponents nor does it

restore to other litigants on a crowded docket the opportunity to use the courts." (citation and

internal quotation marks omitted)).[8]

The Ninth Circuit has held that "the public has an overriding interest in securing 'the just,

speedy, and inexpensive determination of every action.'"  *In re PPA Prods. Liab. Litig.*, 460 F.3d

at 1227 (quoting Fed. R. Civ. P. 1).

> Orderly and expeditious resolution of disputes is of great importance
> to the rule of law. By the same token, delay in reaching the merits,
> whether by way of settlement or adjudication, is costly in money,
> memory, manageability, and confidence in the process. . . . The goal
> is to get cases decided on the merits of issues that are truly
> meritorious and in dispute.

*Id.*  Plaintiff's conduct has hindered and consistently undermined the Court's ability to move this

case towards orderly disposition.  The action is around two years old and yet there are nearly

1,000 docket entries to date.  Taking the depositions of the three key executives at Loop AI as a

representative example, Plaintiff's behavior necessitated at least six orders directing Plaintiff to

comply, to make witnesses available for deposition, to not coach deponents, and to limit

objections to non-speaking objections.  *See* Dkt. Nos. 436, 465, 526, 533, 564, 884.  Similarly,

Plaintiff's interrogatory responses occasioned at least five orders, all of which in some form

directed Plaintiff to provide adequate responses under the Federal Rules and this Court's orders.

*See* Dkt. Nos. 428, 438, 508, 465, 640.  These orders highlight the enormously disproportionate

time and resources the Court has been required to devote to this action.  Plaintiff's unwillingness

or inability to comply has hamstrung the Court's ability to fairly manage its docket for the benefit

of *all* litigants with pending cases before the Court.  For these reasons, the Court unequivocally

---

[8] Plaintiff's conduct with respect to the production of expert Robert Pieraccini provides another example.  On March 22, 2016, following briefing on a motion to compel, Dkt. Nos. 481, 489, Judge Ryu ordered Plaintiff to produce Pieraccini for up to three hours of deposition.  Dkt. No. 511.  On June 3, 2016, following briefing on a second motion to compel, Judge Ryu held that Plaintiff had again refused to comply with the court's previous order and ordered Plaintiff for the second time to produce Pieraccini for deposition within 7 days.  Dkt. No. 720.  Judge Ryu postponed ruling on Almawave's request for sanctions based on Plaintiff's noncompliance with the March 22, 2016 order.  *Id.* at 2.

United States District Court
Northern District of California

and without hesitation finds that the public's interest in expeditious resolution of litigation and the Court's need to manage its docket strongly favor terminating sanctions.

### B.  Third Factor

The third factor—prejudice to the party seeking the sanction—also favors a terminating sanction.  Here, the Court looks to the impact the recalcitrant party's actions have had on the other party.  "A defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case."  *Adriana*, 913 F.2d at 1412 (holding that the plaintiff's repeated failure to appear at depositions and continuing refusal to comply with court-ordered production of documents interfered with the rightful decision of the case and therefore were prejudicial).  Moreover, "[f]ailure to produce documents as ordered . . . is considered sufficient prejudice."  *Id.* at 1412.  "Late tender is no excuse."  *In re PPA Prods. Liab. Litig.*, 460 F.3d at 1227.

With each discovery violation, Plaintiff prejudiced Defendants' ability to prepare for and defend this case.  The Court's deadline for the completion of fact discovery was March 29, 2016, Dkt. No. 411, and yet Plaintiff's refusal to comply with discovery orders extended far past the March deadline.  As detailed above, Plaintiff failed to produce, or belatedly and incompletely produced, responses to document requests; failed to provide adequate responses to interrogatories; hindered the depositions of key witnesses; and failed to disclose the trade secrets at issue in the case.  These failures have obstructed Defendants' attempts to learn what, if any, support Plaintiff has for its claims.[9]  The Court finds that Plaintiff's conduct prejudiced Defendants' ability to defend themselves and hampered the search for truth, and that Plaintiff's actions were particularly harmful given the discovery deadline and the need to prepare summary judgment motions.  *See N.*

---

[9] Along the same lines, Plaintiff's counsel has a persistent habit of dumping hundreds or thousands of documents into the record, which obscures, rather than clarifies, the issues to be decided, and makes it impossible to move the case forward in an orderly manner.  *See, e.g.*, Dkt. No. 878 (indicating that in the lead-up to a trial then set for September 19, 2016, Plaintiff had designated 3,371 potential exhibits numbering in the tens of thousands of pages); Dkt. Nos. 344-46 (three motions for relief from nondispositive pretrial orders, all filed on the same day, and totaling 850 pages); Dkt. Nos. 549-552, 651-56 (1,626 pages of documents filed along with Plaintiff's opposition brief, and subsequently refiled); Dkt. Nos. 781-86 (4,096 pages of documents filed along with Plaintiff's opposition brief).

United States District Court
Northern District of California

*Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986) (endorsing

district court's finding that "willful violation of the discovery order had, given the imminence of

the trial date, prejudiced North American's ability to prepare for trial").

### C.  Fourth Factor

The fourth factor considers the public policy in favor of deciding cases on their merits.  On

the one hand, dismissal certainly prevents resolution on the merits.  At the same time, however,

the Ninth Circuit has held:

> [A] case that is stalled or unreasonably delayed by a party's failure
> to comply with deadlines and discovery obligations cannot move
> forward toward resolution on the merits. Thus, we have also
> recognized that this factor 'lends little support' to a party whose
> responsibility it is to move a case toward disposition on the merits
> but whose conduct impedes progress in that direction.

*In re PPA Prods. Liab. Litig.*, 460 F.3d at 1228.  It is a party's responsibility to respond to

discovery, obey court orders, and avoid dilatory tactics, and Plaintiff has failed to discharge these

responsibilities.  Despite the Court's significant efforts to enable resolution of this case on the

merits, Plaintiff has persistently undercut those efforts through repeated refusal to comply with the

Court's orders and a chronic and utter disregard for its obligations in this matter.  In circumstances

such as these, the public policy favoring resolution on the merits does not outweigh Plaintiff's

bold refusal to comply with multiple discovery orders.  *See Rio Props., Inc. v. Rio Int'l Interlink*,

284 F.3d 1007, 1022 (9th Cir. 2002) ("While the public policy favoring disposition of cases on

their merits weighs against default judgment, that single factor is not enough to preclude

imposition of this sanction when the other four factors weigh in its favor.").

### D.  Fifth Factor

The fifth factor—availability of less drastic sanctions—weighs strongly in favor of

dismissal.  The factor involves consideration of three sub-factors: whether the court considered

lesser sanctions, whether it tried lesser sanctions, and whether the court warned the disobedient

party.  *Valley Eng's Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998).  Although these

measures are not necessarily required, *see id.* at 1056-57, the Court has used all of them in an

United States District Court
Northern District of California

attempt to foster resolution of this case on the merits.[10]

Section I of this order illustrates that for each discovery dispute, Judge Ryu gave Plaintiff multiple opportunities to comply.  For example, Judge Ryu warned the parties in December 2015 that there could be no instruction not to answer except for privilege during depositions.  Dkt. No. 335 at 46.  After Plaintiff failed to heed the court's warning and again obstructed the Calafiore deposition, Judge Ryu issued another warning, instructing Healy that speaking objections, the coaching of deponents, and instructing a deponent not to answer on a basis other than privilege were unacceptable.  Order 436.  Judge Ryu also issued a lesser sanction, requiring Plaintiff to bear the cost of an additional five hours of deposition.  *Id.*  Notwithstanding these orders and the sanction, Healy's behavior remained unchanged during the deposition of Loop's key executives.  *See* Order 884.

Additionally, the Court has issued unambiguous warnings that a refusal to correct course and abide by the local rules, standing orders, court orders, and Federal Rules would result in sanctions.  As early as July 25, 2015, Judge Ryu warned during a discovery management conference that "if somebody takes a position that is not substantial[ly] justified, of course, they may open themselves up to Rule 37 sanctions or other sanctions."  Dkt. No. 157 at 18.

In February 2016, the Court noted that

> [t]he one-year history of this action reflects a profoundly troubling and unprofessional pattern of behavior. The parties are warned to self-correct the wasteful and dysfunctional discovery dynamic in this case, immediately. *Failure to do so will be punished as severely and as often as necessary to ensure the level of professional conduct required of those who practice before this Court. See* Civ. L-R 11-4(a) (attorneys permitted to practice in this Court must "[p]ractice with the honesty, care and decorum required for the fair and efficient administration of justice").

Dkt. No. 415 at 3 ("Order 415") (emphasis added).  The parties were warned that the status quo was "unacceptable" and "unprecedented," and that if the "current conduct continues, the offending

---

[10] Rule 37(b)(2) does not require that the Court warn the parties that dismissal could be an appropriate sanction.  *Valley Eng's*, 158 F.3d at 1056.  Rather, the Court has discretion "to make such orders . . . as are just in regard to a party's failure to obey a discovery order, including dismissal."  *Id.* (internal quotation marks omitted).  "Thus the central factor in evaluating the district court order is justice, and everyone has notice from the text of Rule 37(b)(2) that dismissal is a possible sanction for failure to obey discovery orders."  *Id.* at 1056-57.

United States District Court
Northern District of California

parties and their counsel" would face significant consequences, including the imposition of

monetary or other sanctions and referral to the Northern District's Standing Committee on

Professional Conduct (Civil Local Rule 11-6(a)(1)).  *Id.* at 3.  Order 415 spoke to discovery

conduct specifically:

> Consistent with their ethical obligations, the attorneys must treat their discovery obligations with the seriousness and diligence required of them.   The parties must act responsibly during discovery, and ensure that their conduct is consistent with the spirit and purposes of the discovery rules (including the parties' personal obligation "to secure the just, speedy, and inexpensive" determination of this case).  *See* Fed. R. Civ. P. 1.  This requires cooperation among the parties, and mandates adherence to the proportionality requirement of Federal Rule of Civil Procedure Rule 26. . . . Obstructionist behavior will not be tolerated.

Dkt. No. 415 at 2.

In light of this protracted history (which includes countless discovery orders directing

Plaintiff to comply as well as Order 415), the Court concludes that Plaintiff had sufficient notice

that continued refusal to follow the Court's orders and rules would lead to terminating sanctions.

The Court has considered lesser sanctions as an alternative and has tried alternative sanctions

leading up to this order, and finds that they are inadequate in the face of Plaintiff's persistent

disregard for the Court's authority.  Because Plaintiff has remained undeterred and because there

is no reason to believe additional lesser sanctions would be effective, the fifth factor strongly

favors terminating sanctions.

### E.  Due Process Considerations

To begin, the Court finds that no hearing is necessary for it to issue terminating sanctions.

*See Religious Tech.*, 82 F.3d at *4.  Plaintiff has had multiple opportunities to be heard with regard

to the underlying discovery orders, and the Court has reviewed each of Plaintiff's filings and

Judge Ryu's related orders in coming to the conclusion that Plaintiff's conduct warrants

terminating sanctions.

Moreover, the Court finds that terminating sanctions are "'just'" and "specifically related

to the particular 'claim' which was at issue in the order to provide discovery."  *See Wyle*, 709 F.2d

at 591.  The discovery orders described in Section I relate directly to the merits of the underlying

action, and Plaintiff's refusal to comply interfered with the rightful decision of the case.  For

example, Interrogatory No. 8 sought the factual bases for Plaintiff's claims relating to the Almaviva Defendant's alleged intent to buy Loop AI for a bargain price or to hire away Plaintiff's key employees and thereby acquire access to Loop's proprietary technology.  Dkt. No. 428-1.  The interrogatory goes to the heart of all of Plaintiff's allegations in the SAC.  And yet Plaintiff responded to the interrogatory by directing Almawave "'to all productions by all parties and non-parties in this case, and any further materials has [sic] may be obtained through discovery or otherwise,'" and by referring Defendants to "thousands of bates numbers with no explanation" and "nearly 100 pages of allegations that appear to be cut and pasted from [the SAC]."  Order 640 at 3.  Although Judge Ryu gave Plaintiff multiple opportunities to supplement its response, Plaintiff refused, indicating it had nothing to add to the responses Judge Ryu had found wholly inadequate.  *See* Dkt. No. 856.  This representative example illustrates that dismissal of Plaintiff's action is the only way to move forward.  Plaintiff's violations have harmed Defendants' ability to prepare a defense and patently obfuscated the basis for Plaintiff's claims, making it impossible to have confidence that Defendants or the Court have access to the facts and that any resolution at trial would be fair and just.  Accordingly, "[b]ecause there is a close nexus between [Plaintiff's] misconduct and the merits of [the] case, due process concerns are not implicated."  *Anheuser-Busch*, 69 F.3d at 355.

On September 26, 2016, the Court ordered Plaintiff's counsel to show cause why terminating sanctions should not be imposed, to allow Plaintiff another opportunity to be heard.  Dkt. No. 894.  Plaintiff's response reinforces the Court's conclusion that terminating sanctions are warranted and necessary here.  Astoundingly, Plaintiff's counsel characterizes "most" of Judge Ryu's orders with which the Court has found counsel failed to comply as "sanction orders issued in violation of Loop AI's rights to due process, the Federal Rules, and the Civil Local Rules."  Dkt. No. 922 at 1-2.  In other words, the orders and findings of the United States Magistrate Judge who has spent scores, if not hundreds, of hours managing the incessant discovery squabbling in this case "are not a reliable basis on which the Court can find Loop AI engaged in 'obstructionist discovery' conduct or refused to comply with the Court's orders."  *Id.* at 4.  Put yet another way, Plaintiff's counsel essentially contends that Judge Ryu's use of the most routine case management

tools to keep control of the sprawling and unprecedented discovery battles she confronted here, and her insistence on compliance with the Court's orders, *in itself* violated counsel's (unfounded) conception of her client's due process rights:

> All of the Magistrate's Orders result from proceedings in which Loop AI was allowed to make no record, was given no hearing, and was generally prohibited from submitting the briefing and evidence with [sic] the due process, the Federal Rules and the Civil Rules guarantee. Many of the Magistrate's Orders listed include *sua sponte* arguments (or sanctions) of the Magistrate made for the first time in the order. All but one of the Magistrate's Orders listed in [the OSC] were issued without a duly noticed motion and briefing that Loop AI was entitled to submit under Civil Local Rule 7. The procedural deficiencies that permeate the Magistrate's Orders mean the Court would violate Loop AI's due process rights if it relied on those Orders to issue any further sanctions of any kind.

*Id.*

This claim that Judge Ryu's basic, routine discovery management practices resulted in a grievous and comprehensive due process violation is frivolous in the Court's view. And counsel's argument that "[r]elying on the Magistrate's Orders for purposes of a new sanction . . . would be improper because it would alter the procedural posture of the Magistrate's Orders by suddenly turning them into some sort of report and recommendation under Rule 72(b)," *id.* at 5, is nonsensical. Judge Ryu had full authority to issue orders regarding nondispositive matters, like discovery, under Rule 72(*a*), and the litigants are bound to follow those orders unless modified or set aside by the district court, period and full stop. Counsel's bizarre contention that mundane discovery management procedures of the type that occur every day in this district and many others are broadly unconstitutional may explain her documented and repeated failure to comply with Judge Ryu's orders, but in no way excuses that failure.

Counsel also cites *United States v. National Medical Enterprises, Inc.*, 792 F.2d 906, 910 (9th Cir. 1986), for the principle that the Court "cannot aggregate orders that relate to different issues" when issuing sanctions. Dkt. No. 922 at 20. But the Ninth Circuit has clarified that consideration of all of the sanctioned party's conduct is proper where, as here, "all the misconduct is of the same type: discovery abuses." *Adriana Int'l*, 913 F.2d at 1412.

In addition, counsel contends that "the gravamen of the charge leveled in [the OSC] appears to be that Loop AI's conduct somehow caused the Magistrate do [sic] more work than the

United States District Court
Northern District of California

1    Court believes should have been required." Dkt. No. 922 at 6. But the Court is not saying that

2    plaintiff has simply been a busy litigant. Instead, the record establishes, abundantly, that counsel's

3    constant failure to follow the Court's rules and orders has resulted in an unconscionable waste of

4    time and resources for all concerned.

5         Everything about counsel's response to the OSC reinforces why terminating sanctions are

6    necessary: in the end, counsel simply thinks she knows better than the Court what the law

7    requires, and when she disagrees with a court order, she views compliance as a matter solely

8    within her own discretion. On appeal, counsel can press her arguments that her conduct was

9    justified because of the Court's allegedly unconstitutional procedures, or because of opposing

10   counsel's claimed bad behavior, or whatever other grounds she wishes to assert. But the

11   fundamental reality is this: a court cannot effectively manage a case when its orders are viewed

12   by counsel not as mandates to be followed, but as suggestions to be complied with if, when and

13   how counsel's judgment dictates. *See* Dkt. No. 964 (December 27, 2016 order of Judge Ryu) ("In

14   sum, the record is replete with examples of Plaintiff's unwillingness or inability to comply with

15   court-ordered procedures regarding discovery dispute resolution, and in particular, the requirement

16   that the parties meet and confer in good faith before seeking court intervention.").

17                              *        *        *

18        Plaintiff's conduct has clogged the Court's docket, protracted this litigation, and made it

19   impossible for this case to proceed to any remotely fair trial. "The most critical factor to be

20   considered in case-dispositive sanctions is whether a party's discovery violations make it

21   impossible for a court to be confident that the parties will ever have access to the true facts."

22   *Conn. Gen. Life Ins.*, 482 F.3d at 1097 (internal quotation marks omitted). This is such a case:

23   Plaintiff has "so damage[d] the integrity of the discovery process that there can never be assurance

24   of proceeding on true facts." *See id.* (internal quotation marks omitted). For these reasons, the

25   Court orders terminating sanctions pursuant to Rule 37(b)(2).

26   **F. Dismissal under the Court's Inherent Authority**

27        The Court will also address the bases separate from Plaintiff's discovery conduct that

28   warrant dismissal under the Court's inherent authority.

23

1        Courts have the inherent power to impose various non-monetary sanctions, including

2  "outright dismissal of a lawsuit" for conduct that "abuses the judicial process." *Chambers v.*

3  *Nasco, Inc.*, 501 U.S. 32, 44-45 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765

4  (1980).

> Courts of justice are universally acknowledged to be vested, by their
> very creation, with power to impose silence, respect, and decorum,
> in their presence, and submission to their lawful mandates. These
> powers are governed not by rule or statute but by the control
> necessarily vested in courts to manage their own affairs so as to
> achieve the orderly and expeditious disposition of cases.

8  *Chambers*, 501 U.S. at 43 (citations and internal quotation marks omitted).  These "inherent

9  powers" enable courts "to manage their cases and courtrooms effectively and to ensure obedience

10  to their orders." *F.J. Hanshaw Enters. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir.

11  2001).  Through this power, courts may sanction a party that has "engaged deliberately in

12  deceptive practices that undermine the integrity of judicial proceedings," *Leon v. IDX Sys. Corp.*,

13  464 F.3d 951, 958 (9th Cir. 2006) (internal quotation marks omitted), and in conduct "utterly

14  inconsistent with the orderly administration of justice," *Wyle*, 709 F.2d at 589.

15        "Before awarding sanctions pursuant to its inherent power, the court must make an express

16  finding that the sanctioned party's behavior constituted or was tantamount to bad faith." *Haeger*

17  *v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, 1244 (9th Cir. 2016) (internal quotation marks

18  omitted).  The Ninth Circuit has "found bad faith in a variety of conduct stemming from 'a full

19  range of litigation abuses.'" *Id.* (quoting *Chambers*, 501 U.S. at 46).  For inherent power

20  sanctions to be proper, "the conduct to be sanctioned must be due to willfulness, fault, or bad

21  faith." *Anheuser-Busch*, 69 F.3d at 348 (internal quotation marks omitted); *see also Evon v. Law*

22  *Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012) ("[I]t is clear that a 'willful'

23  violation of a court order does not require proof of mental intent such as bad faith or an improper

24  motive, but rather, it is enough that a party acted deliberately.").

25        Plaintiff's refusal to follow the Court's orders has been pervasive and egregious.  Even if

26  Plaintiff's discovery failings had not cast doubt on the action's merits, Plaintiff's refusal to obey

27  Court orders and proceed in a professional manner has created an untenable situation.  The record

28  is riddled with examples of unprofessionalism that make clear that no adequate lesser sanction is

United States District Court
Northern District of California

24

1    available.

2         Plaintiff's actions evince a persistent belief that it is above any obligation to obey the

3    Court's orders, deadlines, or rules.  For example, Plaintiff's oppositions to the motions for

4    summary judgment were due on July 4, 2016.  Plaintiff had earlier asked for a three-week

5    extension to respond to the motions, which the Court denied.  Dkt. No. 766.  Plaintiff then asked

6    the Court for an extension until July 4, which the Court granted.  Dkt. No. 772.  On July 5, 2016,

7    however, Plaintiff notified the Court that it would not meet the Court's deadlines.  Dkt. No. 788.

8    Plaintiff then proceeded by rules of its own creation, assuming the Court's role in setting deadlines

9    and informing the Court when it would file its oppositions.  *See* Dkt. No. 788 ("I will be able to

10   file all remaining summary judgment briefing and materials by close of business today, and Loop

11   AI's Opposition to the Motion to Strike by no later than tomorrow.").  Such a deliberate and

12   willful refusal to follow the Court's orders was not an isolated occurrence.  *See, e.g.*, Dkt. No. 796

13   (opposition brief filed two days late); Dkt. No. 802 ("errata" of opposition brief filed three days

14   late); Dkt. No. 802-2 (redline of "errata" showing that substantial changes were made to

15   opposition brief, including the insertion of numerous new legal authorities); Dkt. No. 807

16   (declaration of Plaintiff's counsel in support of opposition brief, and six attached exhibits, filed six

17   days late and one day before the reply brief was due); *see also* Dkt. No. 850 (Judge Ryu orders a

18   response to be filed by July 26, 2016); Dkt. No. 856 (Plaintiff files the response on July 27, 2016).

19        In August 2015, Judge Ryu described Plaintiff's refusal to follow the court's instructions

20   when briefing a dispute.  Dkt. No. 175 at 1 ("Order 175").  Order 175 provided:

21            Plaintiff Loop AI, Inc. did not provide full argument on several of
             the disputes. Instead, as to one of the disputes, Plaintiff
22           requested leave to fully brief its position on a protective order, and attached an
             exhibit containing its redline of changes to Defendants' proposed
23           protective order, along with one page of annotations explaining
             certain edits, essentially granting itself additional pages of argument.
24           The court previously ordered the parties to follow the structure and
             limits of its joint letter process because it requires the parties to
25           focus on the most important issues, and to make appropriate
             compromises. The court is concerned that Plaintiff continues to
26           disregard this guidance.

27   *Id.* (citations omitted).

28        In April 29, 2016, this Court admonished Plaintiff's blatant disregard for the Court's rules

regarding page limits:

> [T]he single-spaced argument on pages 18-21 of Plaintiff's opposition blatantly circumvents the local rules page requirement and reflects complete disregard for the Court's filing rules. *See* Civ. L-R 3-4(c) ("Text must appear on one side only and must be double-spaced with no more than 28 lines per page . . . .").

Dkt. No. 633 ("Order 633").

In another incident, Plaintiff again confirmed its refusal to follow the Court's instructions and local rules.  In April 2016, the Court struck Plaintiff's declaration, exhibits, and appendix attached to its opposition to Defendants' motion to dismiss for lack of jurisdiction.  Order 633 (citing Civ. L.R. 7-5).  The Court held:

> In violation of part (a) [of Civil Local Rule 7-5], Plaintiff's attached exhibits and appendix, which include emails, screenshots taken from company websites, contracts, and other evidentiary materials, are largely unauthenticated; there is no sworn testimony or averment by a competent witness that each attached item is a true and correct copy of what Plaintiff purports it to be. Additionally, in violation of part (b), the declaration consists almost entirely of legal conclusions and argument.

*See id.*  In the interest of resolving the motion to dismiss on the merits (rather than based on counsel's compliance failures), the Court permitted Plaintiff to file revised declarations and exhibits.  *Id.*  Yet again, despite the Court's admonition, Plaintiff did not follow the Court's order, submitting the *same* exhibits (including an unsworn 32-page chart in timeline form that in no way complied with Order 633 or the local rules), and filing no declaration at all.  *See* Dkt. Nos. 651-56; Dkt. No. 717 ("Order 717") (holding that despite the fact that "Order 633 was narrowly directed to the straightforward requirements of the local rules[,] . . . Plaintiff refused to follow the order, instead filing an exasperatingly off-point 14-page response addressing Almawave's arguments and a host of issues simply irrelevant" to Order 633's limited scope).  The Court held that it would be fully justified in striking Plaintiff's filing in its entirety and granting the motion to dismiss based on an absence of evidence in the record, but provided Plaintiff yet another opportunity to comply, explaining that it wanted the record to be crystal clear that Plaintiff had been given multiple opportunities to comply with the local rules and the Court's order.  Order 717.

Additionally, Plaintiff has demonstrated a willingness to shade the truth when communicating with the Court.  For example, regarding whether Plaintiff's counsel and Defendant

26

United States District Court
Northern District of California

had met and conferred, Plaintiff's counsel alleged that when "Loop AI returned counsel's calls, they were not answered; when messages were left, there were no returned calls." Dkt. No. 589. Counsel for Defendant IQS, Inc. filed a response indicating that she called Plaintiff's counsel fifteen times between March 7 and March 31, 2016 attempting to meet and confer, and that Plaintiff did not return her calls. Dkt. No. 596. Judge Ryu ordered the parties to submit call, phone, and email records supporting their allegations. Dkt. No. 612. The submitted evidence substantiated IQS, Inc.'s position only, establishing that its counsel "called Plaintiff's counsel's office numerous times between March 7, 2016 and March 31, 2016, and that most calls lasted between three and four minutes because she left messages each time." Dkt. No. 625. Plaintiff's evidence, however, did not substantiate its position. "Plaintiff submitted evidence of only one telephone call to IQS[, Inc.]'s counsel from March 7, 2016 through March 31, 2016: on March 22, 2016, Plaintiff's counsel called IQS[, Inc.]'s counsel's office and left a message." Dkt. No. 625. Contrary to Plaintiff's suggestion to the court, Healy did not make multiple calls, IQS, Inc. made multiple calls to Healy, and there was no evidence showing that IQS, Inc. refused to participate in the court's joint letter process. Dkt. No. 625.[11]

   Finally, Plaintiff's counsel's conduct is unbecoming a member of the bar and the officers that practice in this Court. On July 15, 2016, Healy filed a letter with the Court indicating that she

---

[11] As another example, Plaintiff's motion for an extension indicated that she repeatedly reached out to Defendants without a response. Dkt. No. 753. Almawave's response, however, included the email communications between the parties showing that Defendant in fact responded multiple times. Dkt. No. 763. Almawave argued:

> Counsel for the Almawave Defendants ***repeatedly*** asked Loop to provide a proposed stipulation. Loop states that "[n]o counsel has agreed to stipulate to this request or to any extension of time" and "the Defendants refused to agree [to] any briefing schedule." Dkt. 753 at 2:14-15 and 2:26-27. This is true only because Loop refused to schedule a time for a recorded call and ***never*** provided a proposed stipulation.

*Id.* (emphasis and brackets in original). The attached email communications confirmed Almawave's characterization of their communications. *See* Dkt. No. 763-2. Contrary to Plaintiff's representation to the Court, it was Plaintiff's counsel who failed to respond appropriately: given the Court's order requiring calls to be recorded, Dkt. No. 156 at 2, it was disingenuous to repeatedly purport to seek to communicate via unrecorded calls, *see* Dkt. No. 763-2 at 1.

United States District Court
Northern District of California

had become so upset during a deposition that she "slammed" her coffee on the table and spilled

the contents of her beverage allegedly on Almawave's counsel. Dkt. No. 832.  The transcript

reveals that Almawave's counsel told Healy to "Be quiet," that Healy threatened to leave the

deposition with the deponent, and that Almawave's counsel advised the deponent to stay because

he was there under Court order. Dkt. No. 840-1 at 40.  Then the following exchange ensued:

> [Almawave's Counsel to deponent]: Sir, I think you should take five
> and think about it [before leaving the deposition with your counsel].
>
> [Healy]: No. I think you should take a fucking break. You should
> take --
>
> (Interruption in proceedings.)
>
> [Almawave's Counsel]: Oh, my goodness.
>
> [Healy]: Take a fucking break.
>
> [Almawave's Counsel]: I need help. She just threw her coffee at me.
> She's going crazy.  Sir, you should get a lawyer. You're a witness.
> Oh, my God.  Sorry about that.  We're going to go off the record.

*Id.* at 414.  When the deposition resumed, the deponent confirmed that Healy threw her coffee in

opposing counsel's direction, *id.* at 42, and that he saw coffee on opposing counsel's bag,

computer, and person, *id.* at 46.  By affidavit, the court reporter stated that Healy "threw a large

cup of iced coffee across the room," that the beverage "landed on a chair beside Attorney

Wallerstein," that "coffee was all over the chair, the rug, dripping down Mr. Wallerstein's

suitcase, across the width of the suitcase, on his phone, computer, and on the table," and that "the

side of his shirt and his pants were also wet." Dkt. No. 840-3 (Sambataro Decl.).

As Judge Ryu observed, "such an inappropriate outburst would lead most people to

apologize on the spot – something along the lines of 'I'm so sorry.  Are you okay?  I lost my

temper, and I shouldn't have done that.  Let me pay for any damage I caused.'  Unfortunately, that

did not happen here." Dkt. No. 977 ("Order 977") at 3.  Instead, Plaintiff's counsel sought to

justify her behavior and called the resulting sanctions motion "outrageous" and "baseless."  Dkt.

No. 853 at 1.[12]  The Local Rules require every attorney practicing before this Court to "[c]omply

---

[12] Judge Ryu ordered Plaintiff's counsel to pay Almawave's counsel $250 in damages caused by
her act, while deferring to the undersigned regarding whether more serious additional sanctions

United States District Court
Northern District of California

with the standards of professional conduct" imposed by the State Bar of California; "[c]omply with the Local Rules of the Court"; "[p]ractice with the honesty, care, and decorum required for the fair and efficient administration of justice"; and "[d]ischarge his or her obligations to his or her client and the Court[.]" Civ. L.R. 11–4(a). Healy has failed to meet these standards as exhibited by her behavior towards opposing counsel during this deposition. No excuse (not even Healy's belief that Almawave's counsel "insulted her" by telling her to "be quiet") can justify Healy's on-the-record use of profanity and the ensuing outburst that resulted in her hurling her coffee in opposing counsel's direction. And while these actions were "shocking and inappropriate," Healy's subsequent defiance was even more concerning: she "repeatedly refused to take responsibility for her conduct, as she has done throughout this case." Order 977 at 4. Judge Ryu aptly summarizes the arguments in Plaintiff's sanctions opposition brief as follows: (1) "[t]he devil (my opposing counsel) made me do it"; (2) "I apologized (sort of)"; (3) "[i]t wasn't that bad"; and (4) "[d]on't take it out on my client." *Id.* at 4-7 (emphasis omitted); *see also* Dkt. No. 853 (brief).[13] Overall, the behavior of Plaintiff's counsel during and following her outburst is part of a consistent and case-long lack of professional judgment, and a persistent unwillingness to meet the standards of conduct required of attorneys practicing in this District.

When Healy's conduct is viewed in the context of this case, the Court finds that only one remaining sanction is fitting. Healy's unprofessional conduct, her refusal to obey the Court's deadlines, rules, and orders, and her inability to practice "with the honesty, care, and decorum required for the fair and efficient administration of justice" underscore the necessity of terminating sanctions in this action. Accordingly, the Court concludes pursuant to its inherent power that terminating sanctions are appropriate.

---

were warranted in light of the order to show cause regarding terminating sanctions. Order 977 at 7.

[13] Plaintiff's counsel finally apologized at the sanctions hearing before Judge Ryu. *See* Dkt. No. 946 at 39-40. Much of her apology, however, centered on her belief that her reputation had been harmed by Almawave counsel's "false allegations" as well as her belief that she had already "been sanctioned by the public." *Id.* at 40. At any rate, the apology came over three months after her outburst and the filing of Plaintiff's remarkably remorseless sanctions opposition brief. *See* Dkt. No. 853. Judge Ryu appropriately characterized the apology as "too little, and far too late." *See* Order 977 at 5 n.7.

United States District Court
Northern District of California

1    In addition, the Court exercises its discretion to revoke Healy's *pro hac vice* admission in

2 this case and will not grant such admission in any future cases before the undersigned. *See* Civ.

3 L.R. 11-3(c) ("The assigned judge shall have discretion to accept or reject the [pro hac vice]

4 application. "); *see also Brooks v. Motsenbocker Advanced Devs., Inc.*, 378 F. App'x 753 (9th Cir.

5 2010) (noting that the district judge below revoked the *pro hac vice* admission of Plaintiff's

6 counsel with respect to that case only).[14]

7    **IV.   CONCLUSION**

8    Dismissal is a harsh sanction warranted in only extreme circumstances. *In re PPA Prods.*

9 *Liab. Litig.*, 460 F.3d at 1226. The Supreme Court has held that "the most severe in the spectrum

10 of sanctions provided by statute or rule must be available to the district court in appropriate cases,

11 not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to

12 deter those who might be tempted to [engage in] such conduct in the absence of such a deterrent."

13 *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). This case presents

14 such "extreme circumstances." Dismissal is appropriate not only as a sanction for Plaintiff's

15 flagrant disregard for its responsibilities, but also as a deterrent to others and to ensure the

16 integrity of the judicial process. The Court, therefore, **DISMISSES** Plaintiff's action with

17 prejudice. Each party will bear its own fees and costs. In addition, the Court **REVOKES** the *pro*

18 *hac vice* admission of Valeria C. Healy in this case and will not grant such admission in any future

19 cases before the undersigned.

20    To the extent not already resolved, the following motions are **MOOT**: the summary

21 judgment motions, Dkt. Nos. 733, 737, 740; the motion to strike or exclude Plaintiff's evidence,

22 Dkt. No. 738; Almaviva's motion for Rule 11 sanctions, Dkt. No. 801; Almawave's motion for

23 relief from Plaintiff's refusal to comply with pretrial orders and IQS, Inc.'s related joinder, Dkt.

24 Nos. 869 and 871; Plaintiff's *Daubert* motion, Dkt. No. 875; Defendants' motion for default

25 judgment, Dkt. No. 897; Plaintiff's motion for entry of judgment, enforcement of anti-SLAPP fee

26 award orders, and related remedies, Dkt. No. 957; Plaintiff's motion for partial judgment on the

27

28    [14] As an unpublished Ninth Circuit decision, *Brooks* is not precedent, but can be considered for its
persuasive value. *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

pleadings, Dkt. No. 986; several motions to withdraw or substitute counsel, Dkt. Nos. 892, 955, 956; Plaintiff's motion to file objections to the declaration of Judge Ryu's law clerk, Dkt. No. 938; Plaintiff's motions for relief from nondispositive trial orders and objections pursuant to Federal Rule of Civil Procedure 72, Dkt. Nos. 836, 846, 889, 905, 909, 968, 972, 974, 980, 984[15]; various administrative motions to file under seal, Dkt. Nos. 490, 535, 626, 729, 735, 736, 799, 803, 805, 810, 857, 910; and several other miscellaneous administrative motions, Dkt. No. 593 (regarding order on stipulation); Dkt. No. 629 (to enforce protective order); Dkt. No. 794 (to file answer out of time).

The case is hereby **CLOSED**.  No motion for reconsideration regarding this order will be entertained by the Court.

**IT IS SO ORDERED.**

Dated:  March 9, 2017

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[15]  Even if Plaintiff's motions for relief from nondispositive trial orders were not moot, the Court would nonetheless deem all of them denied.  *See* Civ. L.R. 72-2 ("If no order denying the motion or setting a briefing schedule is made within 14 days of filing the motion, the motion shall be deemed denied."); *see also* Dkt. No. 984 (Plaintiff's most recent motion for relief from nondispositive trial order, filed more than 14 days ago, on February 14, 2017).

United States District Court
Northern District of California