JANET BRAYER, ESQ. #117397
LAW OFFICES OF JANET BRAYER
456 Montgomery Street, 20th Floor
San Francisco, California 94104
Telephone: (415) 445-9555
Facsimile: (415) 445-9541

Attorney for Defendants IQSYSTEM, INC. and IQSYSTEM, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS, INC., | **Case No. 3:15-cv-00798-HSG-DMR** |
| Plaintiff, | **IQSYSTEM INC. AND IQSYSTEM LLC'S MOTION AND NOTICE OF MOTION FOR FEES AND COSTS** |
| vs. | |
| ANNA GATTI, an individual, ALMAVIVA S.p.A., an Italian corporation, ALMAWAVE S.r.l an Italian corporation, ALMAWAVE USA, Inc., a California corporation, IQSYSTEM LLC, a California limited liability company, IQSYSTEM, Inc., a Delaware corporation, | Action Filed: February 20, 2015 |
| | Hearing Date: June 1, 2017, 2:00 p.m. |
| Defendants. | Judge:  Hon. Haywood S. Gilliam, Jr. |

## NOTICE OF MOTION

**TO ALL PARTIES OF RECORD AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT, on June 1, 2017, at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable Haywood S. Gilliam, Jr., United states District Court Judge, Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Courtroom 2, 4th Floor, Defendants IQSystem, Inc. and IQSystem, LLC (collectively "IQS Entities" or "IQS") will and hereby do move pursuant to Federal Rules of Civil Procedure 54, Local Rule 54-1, 28 U.S.C. section 1927, and California Civil Code section 3246.4 for an order for  $293,218.73 in fees and $24,698.30 in costs  incurred by the IQS Defendants in connection with this case.[1] IQS seeks fees and costs jointly and severally against (1) plaintiff Loop AI Labs, Inc. ("Loop"); (2) its counsel Valeria Healy, Esquire; and (3) her firm Healy LLC.

In pro per Anna Gatti is filing a joinder in this motion.  Ms. Gatti and IQS, LLC while represented by Low, Ball and Lynch incurred $440,948.55 in attorney fees.

IQS Defendants and Gatti, by way of joinder, seek an order for a total of $734,167.28 in fees and $24,698.30 in costs incurred in connection with this case, jointly and severally against (1) plaintiff Loop AI Labs, Inc. ("Loop"); (2) its counsel Valeria Healy, Esquire; and (3) her firm Healy LLC.

This motion is based on this notice of motion and motion, the following memorandum of points and authorities, the Declaration of Janet Brayer, the Declaration of Tony DiNapoli, the Declaration of Anna Gatti, co-defendant Almawave's motion for fees and costs, and other pleadings and orders on file in this matter, specifically including this Court's Order Imposing

---

[1] Attorneys' fees calculated through February 28, 2017. IQS will supplement its request to include fees incurred after February 28, 2017. IQSystem, Inc. has incurred a total of $293,218.73 in attorney fees through February of 2017 broken down as follows: IQSystem, Inc. incurred $24,400.73 in fees to Valla and Associates from March to June of 2015, and $268,818.00 in fees to the Law Offices of Janet Brayer from June of 2015 through February of 2017. IQSystem, Inc. was invoiced $11,465.55 in costs for the depositions and videotapes taken in connection with this case. IQSystem, Inc. has incurred $4,056.25 in costs for the reproduction of discovery material, including document reproduction by the Law Office of Janet Brayer's document processing vendor for a total of $15,521.80. In addition, IQSystem, LLC was invoiced $9,176.50 in costs for the depositions and videotapes taken in connection with this case through Low, Ball & Lynch.

1

**IQSYSTEM INC. AND IQSYSTEM LLC'S MOTION AND NOTICE OF MOTION FOR FEES AND COSTS**

Terminating Sanctions, Dkt. 993 and Judgment, Dkt 995, any material of which this Court takes judicial notice, and any further argument the Court might allow. [2]

Dated: April 3, 2017                                    LAW OFFICES OF JANET BRAYER


                                        By:    /s/ Janet Brayer_____
                                               Janet Brayer
                                               Attorney for Defendants
                                               IQSystem, Inc.
                                               IQSystem, LLC

---

[2] File concurrently is IQS' joinder to the Almawave Defendants' motion for fees and costs. For the sake of brevity, by way of joinder, IQS thereby adopts the factual arguments presented in support of an attorney fee award against Loop and its counsel based on 28 U.S.C. section 1927 and California Uniform Trade Secret Act section 3426.4.

2

**IQSYSTEM INC. AND IQSYSTEM LLC'S MOTION AND NOTICE OF MOTION FOR FEES AND COSTS**

**TABLE OF CONTENTS**

INTRODUCTION   ...................................................................................... 1

ARGUMENT   .......................................................................................... 2

I.   PLAINTIFF'S BAD FAITH ENTITLES IQS TO ITS ATTORNEY'S
     FEES PURSUANT TO 28 U.S.C. SECTION 1927 AND
     CALIFORNIA CIVIL CODE SECTION 3426.4   .................................... 2

     A.   Loop Brought and Maintained its Trade Secret Claim in Bad
          Faith thus Entitling IQS to Attorney Fees and Costs under California
          Civil Code Section 3426.4   ........................................................ 3

          i.    Loop's Trade Secret Claim was Objectively Specious.......... 3

          ii.   Loop's Trade Secret Claim was Brought and Maintained
                in Bad Faith because Plaintiff knew the Claim had no merit and
                Plaintiff never identified the Trade Secrets allegedly
                Misappropriated despite Loop's Acknowledgement that it
                was Required to do so …………………………………….. 5

     B.   IQS is Entitled to Attorney's Fees from Plaintiff Counsel's Pursuant
          to 28 U.S.C. Section 1927 in light of Vexatious Behavior................ 8

     C.   IQS Attorney's Fees are not Subject to Apportionment................... 10

     D.   IQS is Entitled to Costs as the Prevailing Party................................ 12

CONCLUSION........................................................................................... 12

i

# TABLE OF AUTHORITIES

## FEDERAL AUTHORITIES

*BladerRoom Grp. Ltd. v. Facebook, Inc*., 2015 U.S. Dist. LEXIS 164602, *12
(N.D. Cal. Dec. 7, 2015) ............................................................................ 4

*Computer Econ., Inc. v. Gartner Group, Inc*., 1999 U.S. Dist. LEXIS 22204,
*17-*18 (S.D. Cal. Dec. 14, 1999) ............................................................. 4-6

*Cotterill v. City of San Francisco*, 2010 U.S. Dist. LEXIS 28310, *23
(N.D. Cal. Mar. 10, 2010) .......................................................................... 9

*CRST Van Expedited Inc. v. Werner Enters.*, 479 F.3d 1099 (9th Cir. 2007) .... 4

*Malhoit v. S. Calif. Retail Clerks Union*, 735 F.2d 1133 (9th Cir. 1984) .......... 9

*Moore v. Keegan Mgmt. Co.* (*In re Keegan Mgmt. Co. Sec. Litig*.),
78 F.3d 431 (9th Cir. 1996) ........................................................................ 8

*Pixion, Inc. v. Placeware, Inc*., 2005 U.S. Dist. LEXIS 41652, *4
(N.D. Cal. Apr. 22, 2005) ........................................................................... 3-4

*Robinson v. Chefs' Warehouse*, 2017 U.S. Dist. LEXIS 40824, *28-29
(N.D. Cal. Mar. 21, 2017) ........................................................................... 9

*Thomas v. Girardi*, 611 F.3d 1027 (9th Cir. 2010) ............................................ 9

*VSL Corp. v. General Techs. Inc.*, 1998 U.S. Dist. LEXIS 7377, *11-*12
(N.D. Cal. Jan. 5 1998) .............................................................................. 4

## STATE AUTHORITIES

*Cypress Semiconductor Corp. v. Maxim Integrated Prods., Inc.*,
236 Cal. App. 4th 243 (2015) .................................................................... 5

*FLIR Systems, Inc. v. Parrish*, 174 Cal. App. 4th 1270 (2009) ......................... 4

*SASCO v. Rosedin Electric, Inc*., 207 Cal. App. 4th 837 (2012)........................ 6

*Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443 (2002) .............................. 5

**<u>STATUTES</u>**

Fed. R. Civ. P. 54(d)(1) ........................................................................... 1, 12

Fed. R. Civ. P. 54(d)(2).............................................................................. 1

28 U.S.C. §1927 .................................................................................. *passim*

CA CCP 2019.210 ................................................................................ 6, 9

California Uniform Trade Secret Act ("CUTSA") ............................................ 1, 3

California Civil Code section 3426 et seq ......................................................... 3, 11

Cal. Civ. Code § 3426.4 ..............................................................................3, 4, 8, 10

\* \* \*

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 54 and Civil Local Rule 54-1, Defendants IQSystem, Inc. and IQSystem, LLC (collectively "IQS Defendants" or "IQS") hereby move to recover their attorney's fees and costs incurred litigating this action. On March 21, 2017, this Court entered judgment in favor of Defendants. [Dkt. 995]. As the prevailing party, IQS is entitled to costs pursuant to Federal Rule of Civil Procedure 54(d)(1), and IQS moves to recover its attorney's fees pursuant to Federal Rule of Civil Procedure 54(d)(2). IQS is entitled to recover its attorney's fees by statute, specifically, California Civil Code section 3426.4. In addition, IQS seeks an attorney fee award against Plaintiff's counsel pursuant to 28 U.S.C. section 1927.

The pursuit of justice was not Loop's goal in this litigation. This case was a concerted effort to harass defendants. Loop and its counsel, Valeria Healy, conducted this litigation in a manner calculated to magnify IQS' legal expenses and evade response to IQS' demand for specification of the trade secrets at issue. Plaintiff's tactics were not only disrespectful and inconsiderate, but vexatious. Loop manufactured criminal histories of IQS employees and targeted and telephoned IQS customers for discovery in a purposeful scheme to besmirch Tony DiNapoli, an officer at IQS, Inc, and destroy IQS business by way of innuendo. [*See e.g.*, Dkt. 580, 613]. When the time came to prove its accusations, Loop's counsel had the hubris to not show up at Mr. Tony DiNapoli's deposition and Loop never produced evidence to support its allegations of criminal conduct. The failure to attend the deposition of Mr. Tony DiNapoli, after requiring counsel to spend hours scheduling the same, and the insistence at the deposition of Italian citizen and shareholder Gennaro DiNapoli that he testify in English (Dkt. 408), are just two examples where Loop's counsel sacrificed opportunities to find support for its claims to instead pursue contrived and financially draining discovery disputes.

Loop accused IQS of stealing and selling its trade secrets, to which IQS countered with a simple question: What trade secrets did IQS steal? [Dkt. 118]. Multiple letters, motions, and hours of review time were spent by IQS in search of Loop's alleged trade secret, but after two years of litigation Loop could not identify any protectable trade secret information or the misappropriation of any confidential information. Loop accused all defendants of stealing its

1

trade secrets, but Loop's conduct establishes that either Loop does not know what its own trade secrets are, or never had any protectable trade secrets to begin with. At the outset of the litigation, Loop had no basis for suggesting that IQS misappropriated anything, but nonetheless continued to pursue this litigation despite Loop's glaring inability to specify what was allegedly stolen, even after extensive discovery and a court order to do so.

The behavior exhibited in this case demands that attorney's fees be awarded against not only Loop but Loop's counsel, both to compensate IQS and to act as a deterrent to any repeat of what happened here. Plaintiff's bad faith permeated throughout this case. Simple courtesy regarding the most ordinary elements of litigation was not provided by Loop, and meaningful discussion to get to the heart of the case was non-existent, but IQS did not succumb to Loop's deleterious tactics - even after being falsely accused of not engaging in the meet and confer process, counsel for IQS continued to act in a courteous and professional manner in the face of Ms. Healy's persistent demands that litigation could only be conducted on Loop's terms. IQS respectfully requests that this Court award attorney's fees and costs incurred in this case because of Plaintiff's bad faith and as a deterrent to any similar behavior in the future.

## **ARGUMENT**

**I.    PLAINTIFF'S BAD FAITH ENTITLES IQS TO ITS ATTORNEY'S FEES PURSUANT TO 28 U.S.C. SECTION 1927 AND CALIFORNIA CIVIL CODE SECTION 3426.4.**

The egregious bad faith exhibited by Plaintiff, through its counsel Valeria Healy, entitles IQS to its attorney's fees incurred in this litigation. The Court found willful and deliberate misconduct by Ms. Healy that resulted in "an unconscionable waste of time and resources for all concerned." [Dkt. 993 at 23:3-4]. IQS spent an excessive amount of resources trying to decipher the nature of Loop's allegations, but clarity remained elusive. Instead of articulating Loop's claims, Ms. Healy implemented a state of permanent and universal disagreement. Regardless of the issue, Ms. Healy inevitably refused to accommodate or compromise without the Court's intervention, compelling excessive motion practice. The Court noted that Ms. Healy's behavior "clogged the Court's docket, protracted this litigation, and made it impossible for this case to proceed to any remotely fair trial." [Dkt. 993 at 23:18-19].

2

Even the simple act of receiving and responding to correspondence was controversial, and the failure to respond typically led to unnecessary docket entries. For example, IQS efforts to have Loop respond to interrogatories presents a classic example of Ms. Healy's misconduct that resulted in superfluous filings. In April, 2016 IQS sent multiple letters to Loop regarding written discovery responses, but did not receive any response, which compelled IQS to file an administrative motion. [Dkt. 602]. On April 20, 2016 IQS withdrew its administrative motion regarding Loop's failure to respond to discovery because Loop (only after forcing a docket filing to bring the matter to the Court's attention) finally served a written response to the multiple requests for discovery from IQS to Loop. [Dkt. 615]. Simply responding to letters from counsel would have moved this case along, but that basic courtesy was largely absent throughout this case where Ms. Healy went so far as to block counsel's email messages. [Dkt. 993 at 2:9-11].

Loop and its counsel Valeria Healy should be held responsible for the attorney's fees and costs incurred by IQS so as to not reward their strategy of destroying IQS' business. This frivolous case was brought, maintained, and litigated in manner designed to harass defendants. If Loop and Ms. Healy escape without liability for IQS' fees and costs, they will have achieved their goal of harrying defendants with needless legal bills, besmirching their reputations, and driving IQS' business into the ground. The egregious circumstances that led to the Order Imposing Terminating Sanctions demand that Loop and Ms. Healy pay the price for their behavior with joint and several liability for IQS' attorney's fees and costs.

A.      **Loop Brought and Maintained its Trade Secret Claim in Bad Faith thus Entitling IQS to Attorney Fees and Costs under California Civil Code Section 3426.4**

California's version of the Uniform Trade Secrets Act (Cal. Civ. Code §3426 *et seq*.) provides for recovery of fees to the prevailing party "[i]f a claim of misappropriation is made in bad faith." Cal. Civ. Code § 3426.4. Courts apply a two-part test for determining the "bad faith" requirement of section 3426.4: (1) objective speciousness of the plaintiff's claim, and (2) subjective bad faith in bringing or maintaining a claim for misappropriation. *Pixion, Inc. v. Placeware, Inc*., 2005 U.S. Dist. LEXIS 41652, *4 (N.D. Cal. Apr. 22, 2005). Section 3426.4 is designed to deter spurious claims alleging misappropriation, and "embodies a substantive state

policy against the frivolous filing of trade secret claims." *CRST Van Expedited Inc. v. Werner Enters.*, 479 F.3d 1099, 1111 (9th Cir. 2007).

### i. Loop's Trade Secret Claim was Objectively Specious

Objective Speciousness is present where the action superficially appears to have merit, but there is a complete lack of evidence to support the claim. *FLIR Systems, Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1276 (2009). A total failure of proof of the existence of an alleged trade secret can constitute bad faith when the plaintiff claims trade secret status of publically available information. *See e.g. VSL Corp. v. General Techs. Inc.*, 1998 U.S. Dist. LEXIS 7377, *11-*12 (N.D. Cal. Jan. 5 1998) (finding objective speciousness where plaintiff freely disclosed alleged trade secrets to the public); *see also Computer Econ., Inc. v. Gartner Group, Inc*., 1999 U.S. Dist. LEXIS 22204, *17-*18 (S.D. Cal. Dec. 14, 1999) (finding objective speciousness when alleged trade secret was found in plaintiff's published newsletters). Objective speciousness is also supported by vague assertions of trade secret protection where plaintiff is unable to identify protectable information with any admissible evidence. *See Computer Econ.*, 1999 U.S. Dist. LEXIS 22204 at *18 (Plaintiff's "complete failure to provide evidence of trade secrets or misappropriation satisfies the objective speciousness requirement.").

Loop never identified a specific trade secret at issue in this case, which by itself is objectively specious, but Loop's failed attempts to do so reveal that Loop's trade secret claim was a sham. In its trade secret disclosure, Loop identified its trade secrets as embodied in two published patent applications (Dkt. 372 at ¶¶9, 13; Dkt. 733 at 18:19-19:10), however, "it is well established that the disclosure of a trade secret in a patent places the information comprising the secret into the public domain." *BladerRoom Grp. Ltd. v. Facebook, Inc*., 2015 U.S. Dist. LEXIS 164602, *12 (N.D. Cal. Dec. 7, 2015). Loop also identified confidential research contained in a Loop document (Dkt. 372 at ¶16), but that document was an email stating that Loop's techniques are described by two public research papers written by Google employees. [Dkt. 733 at 19:23-20:6]. Loop could not identify a trade secret, and when pushed to do so could only point to information that was publically available. Most telling is the fact that even the disclosure itself

was filed on the public docket system. [Dkt. 372]. By any objective measure, Loop's trade secret claim was specious.

Loop's misappropriation claim is objectively specious because its theory of misappropriation by implication is barred by California law. Loop's theory of the case was that Anna Gatti must have stolen Loop's trade secrets because she simultaneously worked at Almawave, or IQS must have stolen trade secrets as they used Loop's office for a week (with the knowledge and consent of Loop), but Loop was not able to present evidence of direct misappropriation by Anna Gatti to Almawave or any misappropriation by IQS. Loop inappropriately appears to have been basing its entire misappropriation case on the doctrine of inevitable disclosure – a theory that is not viable. The inevitable disclosure doctrine is a misappropriation theory where in lieu of actual proof of misappropriation, the trade secret plaintiff will reason that an employee will necessarily rely upon knowledge of one employer's trade secrets in performing new job duties for another employer. *See Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443 (2002). The inevitable disclosure doctrine is not a substitute for actual proof of misappropriation of trade secrets, and has been flatly rejected by California courts. *See Cypress Semiconductor Corp. v. Maxim Integrated Prods., Inc.*, 236 Cal. App. 4th 243, 270 (2015) (rejecting misappropriation claim where the only evidence of misappropriation was defendant's access to plaintiff's trade secrets during the course of their employment with plaintiff). Loop's misappropriation theory is objectively specious because the theory of inevitable disclosure, which of necessity Loop would need to rely upon in light of the startling lack of evidence of actual disclosure or misappropriation of any trade secret, is not the law in California.

### ii. Loop's Trade Secret Claim was Subjectively Brought and Maintained in Bad Faith because Plaintiff knew the Claim had no merit and Plaintiff never identified the Trade Secrets allegedly Misappropriated despite Loop's Acknowledgement that it was Required to do so

Subjective bad faith is misconduct where a plaintiff knows or is reckless in not knowing that its claim for trade secret misappropriation has no merit. *Computer Econ.*, 1999 LEXIS U.S. Dist. 22204 at *18. Subjective bad faith can also be supported by litigation that was commenced

or maintained for improper purposes, such as harassment. *SASCO v. Rosedin Electric, Inc*., 207 Cal. App. 4th 837, 847 (2012). Subjective misconduct can be inferred when a plaintiff evades requests to identify its trade secrets in discovery. *Computer Econ*., 1999 LEXIS U.S. Dist. 22204 at *19 (finding subjective bad faith where plaintiff's refusal to identify trade secrets at issue erupted into a discovery dispute in front of the Magistrate Judge); *see also Cypress*, 236 Cal. App. 4th at 270 (inferring oppressive intent by plaintiff's belated and evasive responses to demand for trade secret specificity).

Throughout this litigation, IQS spent hours on correspondence, discovery, and motion practice demanding that Loop identify its trade secret with specificity in accordance with California Code of Civil Procedure § 2019.210. [Dkt. 118, 232, 459]. Loop stated in its Second Amended Complaint that it would provide a complete list of trade secrets before discovery in accordance with California law. [Dkt. 210 at ¶339]. On June 18, 2015, IQS filed a request for compliance with § 2019.210. [Dkt. 118]. At the July 23, 2015 hearing in front of the Honorable Magistrate Donna M. Ryu, Ms. Healy stated that Loop was "perfectly aware of our obligations in respect to the trade secrets, and we are in the process of producing a trade secret list." [Transcript of Hearing held on July 23, 2015, Dkt. 157 at 97:1-10]. Subsequently in August and September, 2015, IQS continued to request that Loop comply with its obligation to provide a trade secret disclosure, but to no avail. [Brayer Declaration filed herewith, ("Brayer Decl.") **Exhibit 4**]. As is the norm when dealing with Ms. Healy, IQS was required to seek the Court's intervention with a motion to compel a trade secret disclosure from Loop, which Loop frivolously opposed. [Dkt. 232, 272].

It bears repeating that three months before IQS filed its motion to compel a trade secret disclosure, Ms. Healy unequivocally stated on record at the July 23 hearing that Loop knew of its trade secret obligation and would identify its trade secrets. Instead of fulfilling its known obligation, Loop and Ms. Healy engineered a discovery dispute, sometimes agreeing to provide a trade secret list, but ultimately characterizing the requests for a trade secret disclosure as "outrageous" that should be addressed in a motion. [Brayer Decl. **Exhibit 4-18, 4-22**]. Loop forced IQS to file a motion when the Court's intervention was wholly unnecessary. In the end,

IQSYSTEM INC. AND IQSYSTEM LLC'S MOTION AND NOTICE OF MOTION FOR FEES AND COSTS

the Court ordered Loop to fulfill the same obligation that Ms. Healy had previously acknowledged. [Dkt. 331]. The entire six-month ordeal was the very definition of vexatious.

Loop finally produced a trade secret disclosure, but failed to adequately identify its trade secrets at issue. [Dkt. 795]. Loop continued to rely on the claims in its complaint and vague assertions of confidential information, which had previously been rejected by the Court. [Dkt. 331]. Loop's failure to identify its trade secrets at issue alone constitutes subjective bad faith, but a deeper dive into the record exposes that Loop knew that it did not have a protectable trade secret from the outset of this litigation.

Loop knew that to maintain a trade secret that the information must not be put into a patent, yet directed defendants to review Loop's published patent applications to discern Loop's trade secrets. After filing its original complaint, Loop twice sought a temporary restraining order against defendants. [Dkt. 9, 47]. In April, 2015, in support of its amended temporary restraining order, Loop filed a declaration of its lead scientist, Patrick Ehlen, who stated that Loop decided to keep certain technology "as a trade secret, instead of patenting it, in order not to disclose to anyone how our technology works." [Dkt. 50 at ¶7]. Loop knew not to put trade secrets in patents, but nine months later, in January, 2016, in its woefully inadequate trade secret disclosure, Loop identified technology contained in two published patent applications. [Dkt. 372 at ¶¶9, 13; Dkt. 733 at 18:19-19:10]. Loop decided to maintain its trade secret claim, and fought against serving a trade secret disclosure, even though Loop knew its information did not qualify as a trade secret, having been disclosed in patent applications.

IQS challenged Loop's trade secret disclosure (Dkt. 459), but Loop maintained its trade secret claim despite its failure to identify its trade secrets with particularity, compelling IQS to file a summary judgment motion on the issue. [Dkt. 733]. In response, Loop defended its trade secret claim by frivolously relying on its publically available trade secret disclosure and other written discovery responses, despite the fact that the Court had previously ruled that Loop failed to identify any trade secrets in either set of documents, calling Loop's discovery responses "plainly and grossly deficient." [Dkt. 640, 795, and 811 at 12:24-13:15]. Loop recklessly maintained its trade secret claim by continuing to rely on documents and information in the

7

Complaint that Loop had been advised by this Court could not support a trade secret claim, evidently because Loop was of the belief that it had a unilateral right to reject the Court's prior ruling finding Loop's purported trade secret disclosure inadequate.

This Court's Order Imposing Terminating Sanctions specifically details Loop's failed attempts to disclose its trade secrets as reasons justifying termination. [Dkt. 993 at 11:9-12:18]. The same bad faith findings that warranted termination support a finding that Loop exhibited the requisite subjective bad faith in recklessly maintaining its trade secret claim. Loop knew that it did not have a legally cognizable trade secret, but nonetheless conducted vexatious motion practice to avoid its admitted obligations under California law to identify its trade secrets. Loop knew that it could not rely on patented information as trade secret, but when finally compelled by Court Order, Loop identified publicly available patent information in its own trade secret disclosure. Loop knew that its discovery responses were deficient, but continued to frivolously rely on the responses in opposition to summary judgment. Loop recklessly brought and maintained its trade secret claim in bad faith, therefore, IQS is entitled to recover its attorney's fees pursuant to California Civil Code Section 3426.4.

**B.      IQS is Entitled to Attorney's Fees for from Plaintiff Counsel's Pursuant to 28 U.S.C. Section 1927 in light of Vexatious Behavior**

IQS is entitled to its attorney's fees litigating the entirety of this matter because Ms. Healy's conduct throughout this case generated excessive fees and costs. Loop's counsel misled the court, vexatiously multiplied the proceedings, and recklessly presented frivolous arguments to the court. 28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

An attorney's fees award under section 1927 "must be supported by a finding of subjective bad faith." *Moore v. Keegan Mgmt. Co.* (*In re Keegan Mgmt. Co. Sec. Litig.*), 78 F.3d 431, 436 (9th Cir. 1996). Subjective bad faith can be "present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purposes of

harassing an opponent." *Id*. In addition, attorney's fees under section 1927 can be supported by recklessly or intentionally misleading the court, or by findings that an attorney recklessly raised a frivolous argument that resulted in the multiplication of proceedings. *See Malhoit v. S. Calif. Retail Clerks Union*, 735 F.2d 1133, 1138 (9th Cir. 1984); *see also Thomas v. Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010). Ignoring court orders, bad behavior at depositions, and forcing the district court to "settle numerous petty discovery disputes" can exemplify the type of behavior that will support an attorney's fees award under section 1927. *See Cotterill v. City of San Francisco*, 2010 U.S. Dist. LEXIS 28310, *23 (N.D. Cal. Mar. 10, 2010*); *see also Robinson v. Chefs' Warehouse*, 2017 U.S. Dist. LEXIS 40824, *28-29 (N.D. Cal. Mar. 21, 2017) (finding sanctions available under section 1927 when counsel's "aggressive and unpredictable" behavior at depositions was in bad faith and multiplied proceedings).

The Court is well versed in the behavior exhibited by Ms. Healy, and the Court's own findings contained in the Order Imposing Terminating Sanctions at docket number 993 epitomize the bad faith behavior necessary to support an attorney's fee award under section 1927. Plaintiff's counsel was admonished for her behavior at depositions, ignored court orders to change her behavior, and even tossed a beverage at her opposing counsel. [Dkt. 993 at 3:4-5:9; 27:16-29:16]. Plaintiff's counsel deliberately and willfully refused to comply with court orders to supplement interrogatory answers, produce documents, and provide a privilege log. [Dkt. 993 at 6:1-10:7]. Plaintiff's counsel misled the Court on more than one occasion, for example, when she claimed she had attempted numerous meet and confer phone calls with counsel for IQS, requiring additional filings and court orders to set the record straight. [Dkt. 993 26:27-28:15]. Plaintiff's counsel routinely presented frivolous arguments to the court, for example, opposing IQS efforts to compel a § 2019.210 disclosure that led to Loop's woefully inadequate trade secret submission. [Dkt 993 at 12:2-11]. Plaintiff's counsel also maintained the habit of dumping hundreds or thousands of documents into the record, which required unnecessary hours of review for defendants. [Dkt. 993 at fn. 9]. Ms. Healy's behavior required IQS to draft duplicative meet-and-confer correspondence, file multiple letters with the court, and ultimately spend excessive time dealing with Ms. Healy's "case-long lack of professional judgment." [Dkt. 993 at 29:15].

9

When it came to trial, Loop designated 3600 exhibits (including court filings), and failed to comply with Pretrial Orders, thus necessitating yet another motion and ultimately resulting in the trial date being taken off calendar. [Dkt. 869, 871, 883].

For the same reasons that underscored the necessity of terminating sanctions, section 1927 sanctions are appropriate here because "Healy's unprofessional conduct, her refusal to obey the Court's deadlines, rules, and orders, and her inability to practice 'with the honesty, care, and decorum required for the fair and efficient administration of justice'" unreasonably multiplied the proceedings. [Dkt. 993 at 29:18-20]. Of import is to note that in many other cases where attorney's fees under 1927 were awarded, the cases had not been so corrupted that they could not *continue to be litigated*. Here, counsel's behavior was so outrageous, and had caused so many inefficiencies, that the entire case was terminated.

Ms. Healy's unprofessional conduct needlessly multiplied the proceedings in a cyclical pattern of draining dysfunction. Every failed attempt to meet-and-confer led to counsel sending a draft joint letter, which was invariably ignored by Ms. Healy. Thus followed more court filings and eventually a discovery Order, which was habitually disobeyed by Ms. Healy. When Ms. Healy ignored an Order, counsel was compelled to engage in another fruitless meet-and-confer, which required another joint letter that was disregarded, so on and so forth. This unproductive pattern multiplied proceedings by repeating itself numerous times throughout discovery, and is well documented by the Court. [Dkt. 993 at 2].

The Court recognized that Ms. Healy's conduct prevented this case from moving forward. Basic discovery obligations required five or six orders from the court to achieve compliance from Ms. Healy. [Dkt. 993 at 16:12-23]. The results of Ms. Healy's vexatious behavior can be seen on the docket, which now has over 1,000 entries. Ms. Healy's behavior unreasonably multiplied the proceedings in this case, and she should now be held liable for the results of her misconduct.

**C.    IQS Attorney's Fees are not Subject to Apportionment**

IQS Attorney's Fees are not subject to apportionment because Loop's vexatious behavior was case-long, and saturated every aspect of this litigation. Section 1927 limits recovery of

IQSYSTEM INC. AND IQSYSTEM LLC'S MOTION AND NOTICE OF MOTION FOR FEES AND COSTS

attorney's fees incurred solely due to the vexatious behavior that multiplied proceedings. Similarly, section 3426.4 limits recovery to fees attributable to Loop's bad faith trade secret claim. Fees should not be apportioned, though, because for IQS this was a trade secret case where every interaction with Loop's counsel was unnecessarily contentious.

The thrust of this case was always trade secret misappropriation because all but two of the eleven causes of action against IQS involve allegations of trade secret misappropriation. In support of the RICO cause of action, Loop alleged that IQS conspired with others to steal Loop's trade secrets. [Dkt. 210 at ¶217]. For computer fraud, Loop alleged that IQS gained access to Loop's computer to steal its trade secrets. [Dkt. 210 at ¶250]. In support of its fraud claim against IQS, Loop alleged that IQS employees accessed Loop's offices under false pretenses to steal its trade secrets. [Dkt. 210 at ¶275]. Loop alleged that IQS interfered with Loop's economic relationships in exchange for trade secret information. [Dkt. 210 at ¶¶320, 334]. Loop alleged that IQS converted its confidential information. [Dkt. 210 at ¶351]. In support of its unfair competition claim, Loop cited violations of California Civil Code section 3426, the trade secret act. [Dkt. 210 at ¶359]. Loop alleged that IQS was unjustly enriched by selling Loop's trade secrets. [Dkt. 210 at ¶368]. The causes of action against IQS that do not involve trade secrets are the insignificant interference claims regarding Orrick and Dario Vignudelli. It is entirely reasonable and fair to conclude that IQS exclusively litigated this case as a trade secret lawsuit in light of the allegations contained in the Second Amended Complaint.

Loop and its counsel's absolute repudiation of the standard meet-and-confer process set the tone of this entire litigation, and belies any attempt to apportion fees according to good and bad faith behavior. Coming to an amicable solution with Loop's counsel, and thus avoiding the Court's intervention, was anathema to Loop. Any compromise or agreement was obviously considered by Loop to be a sign of weakness as opposed to a sign of thoughtful consideration of the merits of the arguments or concerns being raised by opposing counsel. Worse, Loop's counsel would mislead the Court with fabricated efforts to meet-and-confer, requiring additional motion practice to set the record straight. [Dkt 993 at 26:27-27:15]. As noted by the Court, "[f]rom the beginning, this case has been marked by a level of dysfunction and inability to work

11

together that is unprecedented in the Court's experience." [Dkt. 993 at 2]. Loop and Ms. Healy litigated this case in bad faith from the beginning, therefore, IQS is entitled to all reasonable fees spent defending itself in this case.

### D.       IQS is Entitled to Costs as the Prevailing Party

Pursuant to Federal Rule of Civil Procedure 54(d)(1), IQS is entitled to costs as the prevailing party in this litigation. Filed herewith is local form CAND 133 for Bill of Costs and supporting declaration of Janet Brayer on behalf of both IQSystem, Inc. and IQSystem, LLC.[1] Defendant Anna Gatti is submitting a declaration in support of costs and will join this motion.

### CONCLUSION

For all the foregoing reasons, IQS requests that this Court order that Loop and its attorney Valeria Healy are jointly and severally liable for:  (1) as to IQS Defendants the sum of $293,218.73 in fees and $24,698.39, (2) as to Gatti and IQS LLC by way of Joinder  the sum of $449,948.55 in attorney fees incurred with Low, Ball, & Lynch,   (3)  for a total of $734,167.28 in fees and $24,698.30 in costs.

Dated: April 4, 2017

/s/     Janet Brayer_____
        JANET BRAYER
        Defendants
        IQSystem, Inc.
        IQSystem, LLC

---

[1] Substitution of counsel forms have been signed for both Anna Gatti and IQSystem, LLC, and filed at docket numbers 955 and 956.

12

**IQSYSTEM INC. AND IQSYSTEM LLC'S MOTION AND NOTICE OF MOTION FOR FEES AND COSTS**