United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOOP AI LABS INC,<br><br>  Plaintiff,<br><br> v.<br><br>ANNA GATTI, et al.,<br><br>  Defendants. | Case No. 15-cv-00798-HSG (DMR)<br><br>**AMENDED ORDER ON DEFENDANTS' MOTION FOR SANCTIONS**<br><br>Re: Dkt. No. 840 |

  The events underlying this dispute were featured in a National Law Journal article entitled "Lawyers Behaving Badly 2016: Deposition Edition."[1] An attorney became frustrated and used expletives during a deposition. Then, depending on whom you believe, she either threw a cup of iced coffee, or "lost control of it" in the direction of her opposing counsel. This sanctions motion ensued. The court has considered the parties' submissions and oral argument, and now orders sanctions as set forth below.

## I. BACKGROUND

  This case involves a heated business dispute. Plaintiff Loop AI, Inc. ("Loop") alleges that Defendants, including Almawave USA, Almaviva S.p.a., and Almawave S.r.l. (the Almawave Defendants) conspired with Defendant Anna Gatti to misappropriate Loop's trade secrets and interfere with its business prospects.

  Valeria Calafiore Healy is Loop's counsel. Thomas Wallerstein represents the Almawave Defendants. The two adversaries have a notably combative relationship. Their discovery disputes have swamped the docket. The court has reviewed many deposition transcripts which illustrate

---

[1] http://www.law.com/sites/almstaff/2016/12/28/lawyers-behaving-badly-2016-deposition-edition/ (last viewed January 23, 2017).

their contentious and cringe-worthy exchanges on the record.[2]

The events underlying this sanctions motion occurred during the deposition of Roberto Pieraccini on July 15, 2016. Wallerstein took the deposition, and Healy defended it. Proceedings had been underway for less than an hour before things completely unraveled:

MS. HEALY: Objection. That's not the question --

MR. WALLERSTEIN: It's not, Counsel. So please be quiet.

MS. HEALY: Please don't give -- if you say that again, we're going to walk out of this deposition.

MR. WALLERSTEIN: Be quiet.

Q. Sir --

MS. HEALY: I'm going to call the Court. We're going to stop this. I'm going to call the Court. Let's just go. Let's go.

MR. WALLERSTEIN: I don't advise that, sir.

MS. HEALY: Let's just go. I'm not going to be here. I have the video of you insulting me.

MR. WALLERSTEIN: Sir, I don't advise it, but you need to do what you need to do. But it's contempt. You're under an order, a court order to be here.

MS. HEALY: You're not under court order. I'm not going to be here with you --

MR. WALLERSTEIN: I'd be happy to show you the court order, two of them.[3]

MS. HEALY: We're not going to be here with you insulting us. I have the video here.

---

[2] The court has had to issue at least two other orders directed at Healy's deposition conduct. In early 2016, the court admonished Healy for obstructionist deposition tactics, and issued specific guidelines to all attorneys on deposition conduct. [Docket No. 436.] After Healy violated this order, the court issued another order detailing examples of Healy's inappropriate and sanctionable deposition conduct. [Docket No. 884.]

[3] Wallerstein was correct. This court issued two orders regarding Pieraccini's deposition. In March 2016, Almawave moved to compel his deposition. On March 22, 2016, the court granted the motion and ordered Loop to produce Pieraccini for up to three hours of deposition. [Docket No. 511.] Loop refused to comply with the court's order, prompting Almawave to file a motion to compel compliance, which the court granted on June 3, 2016. [Docket No. 720.]

      MR. WALLERSTEIN: Sir, I think you should take five and think about it.

      MS. HEALY: No. I think you should take a f*****g break. You should take --

      (Interruption in proceedings.)

      MR. WALLERSTEIN: Oh, my goodness.

      MS. HEALY: Take a f*****g break.

      MR. WALLERSTEIN: I need help. She just threw her coffee at me. She's going crazy. Sir, you should get a lawyer. You're a witness. Oh, my God. Sorry about that. We're going to go off the record.

      (A recess was taken.)

[Docket No. 840-1 (Tr. at 40-41).]

The court pauses to observe that such an inappropriate outburst would lead most people to apologize on the spot – something along the lines of "I'm so sorry. Are you okay? I lost my temper, and I shouldn't have done that. Let me pay for any damage I caused." Unfortunately, that did not happen here.

After the commotion passed, the deposition resumed. In response to Wallerstein's questions about what had just happened, Pieraccini responded that Healy "somehow felt insulted" and "threw a cup of coffee" in Wallerstein's direction. *Id*. at 42. Pieraccini confirmed that he saw coffee on Wallerstein's bag and person, and possibly on his computer. *Id*. at 46.

Wallerstein later secured an affidavit from the court reporter, Janet Sambataro, who also said that Healy threw the cup of coffee, which splashed on and around Wallerstein and his belongings:

> At 10:27 a.m., there was an exchange of colloquy on the record (Page 40-41), following which I witnessed Attorney Calafiore Healy stand up and then start to exit the conference room. She then threw a large cup of iced coffee across the room. It landed on a chair beside Attorney Wallerstein. I saw that the coffee was all over the chair, the rug, dripping down Mr. Wallerstein's suitcase, across the width of the suitcase, on his phone, computer, and on the table. I saw that the side of his shirt and his pants were also wet.

[Docket No. 840-3 (Sambataro Decl., July 18, 2016).]

Healy describes things differently: "I did not throw my coffee cup at him, on him, or

3

across the room. I very simply slammed it on the table causing the remains of my coffee to spill on the table." [Docket No. 854 (Healy Decl., July 26, 2016) ¶ 28.] When pushed for details at the hearing, Healy's counsel clarified that Healy "did not maintain control of the cup. It bounced across the table after she slammed it down." [Docket No. 946 (Oct. 31, 2016 Hr'g Tr.) 28.]

Later that day, Healy filed a letter addressed to the Honorable Haywood S. Gilliam and the undersigned, notifying the court of "an altercation" during the Pieraccini deposition. [Docket No. 832 (Healy Letter).]

Two days later, Almawave sought sanctions for Healy's "assault" on Wallerstein at the July 15, 2016 deposition. [Docket No. 840 (Def.'s Mot).]

Loop then filed its opposition papers, in which Healy doubled down and went on the attack, lobbing vitriol in the opening lines: "Almawave's latest Motion is outrageous and should never have been filed. Almawave's false allegations that Loop AI's lead counsel committed the crime of assault and lied to the Court is baseless and defamatory." [Docket No. 853 (Opp'n) 1.]

## II. ANALYSIS

Had Healy kept her temper in check, this never would have happened. Had she apologized for her behavior as soon as she uttered the curse words and lost control of the coffee, she might not be facing a sanctions motion. Healy's actions were shocking and inappropriate, but her response in the wake of those actions is in many ways much worse. As set forth below, Healy repeatedly refused to take responsibility for her conduct, as she has done throughout this case.

*<u>"The devil (my opposing counsel) made me do it."</u>* Healy argues that Wallerstein is to blame for her bad behavior. She points to discourteous comments made by him during the course of discovery. For example, in the Pieraccini deposition, Wallerstein told her to "be quiet." In Gianmauro Calafiore's deposition, he told her to "please keep your mouth shut when we're trying to take the deposition," and at another point, he told the witness "sir, I've been trying to ask you questions all day, but your sister[4] won't shut up, so I'm now talking to her . . . " [Docket Nos. 854-1 and 854-2.] To be sure, these snipes are inappropriate and reflect poorly on Wallerstein. If

---

[4] As noted above, counsel's full name is Valeria Calafiore Healy. Loop's CEO is Gianmauro Calafiore. This exchange suggests that they are siblings.

4

he were the lone provocateur, this might well be a different story. However, there is ample evidence in the record that Wallerstein and Healy bait each other, and their exchanges are often fractious and frayed.[5] By placing the entire blame at Wallerstein's feet, Healy glosses over how her own conduct contributed to the toxic exchanges that, regrettably, have become routine in this case.

*"I apologized (sort of)."* Healy asserts that she "promptly apologized (something Mr. Wallerstein has never done.)." Opp'n at 5. Her "apology" falls short:

> I apologize to the Court and to Mr. Wallerstein for having slammed my coffee cup on the table. Although it is evident that Mr. Wallerstein uses insults and provocation as a strategy, I acknowledge that I should have resisted his provocation more effectively. I did so when Mr. Wallerstein's misconduct continued following the coffee cup incident.

Healy Letter. This amounts to "I'm sorry that Mr. Wallerstein is so awful." Once again, Healy fails to take ownership in her own indisputably unprofessional behavior.[6]

*"It wasn't that bad."* In her opposition papers, Healy devotes much energy and creativity to painting Wallerstein as an exaggerating liar who has blown the incident entirely out of proportion. Healy even attacks the court reporter's declaration at length, suggesting that Wallerstein bullied Sambataro into embellishing the facts:

> [Sambataro's affidavit] states that "coffee was 'dripping down on ... [Wallerstein's] computer' – from where – the ceiling? In fact, as set forth below, the videos (and screenshots from the videos) show no dripping of any type on Mr. Wallerstein's computer. Similarly, the affidavit states that I 'threw a large cup of iced coffee across the room,' but that the cup ended up in a chair on the opposite side of the table from me – suggesting somewhat improbably that the cup hit the far wall, bounced back several feet and somehow landed on the chair. Those portions of the affidavit appear to be hyperbole, presumably inserted at Mr. Wallerstein's insistence.

Healy Decl. ¶ 30; *see also id.* at ¶¶ 29, 31-32.

---

[5] As a national figure recently exhorted, "when they go low, we go high." Both counsel could benefit from taking such advice to heart.

[6] She finally apologized at the hearing. Oct. 31, 2016 Hr'g Tr. 39. It was too little, and far too late.

5

On the one hand, Wallerstein could have sought sanctions in a less inflammatory way. "Assault" is a strong word that suggests criminal behavior. On the other hand, three eyewitnesses agree (i.e., everyone except Healy) that Healy used expletives, then threw a cup of coffee in Wallerstein's direction, splattering its contents on his clothes and belongings. Healy's attempt to minimize her conduct only serves to magnify the underlying problem.

<u>*"Don't take it out on my client."*</u> At the hearing, Healy and her counsel walked back from the vitriol of the opposition brief and took on a more conciliatory tone. But not entirely. In an effort to avoid the requested relief of revocation of Healy's pro hac vice status, Healy's counsel called the sanctions motion a "clear power play," designed by Defendants to "knock out the lawyer on the eve of trial," which would be "crushing" to her client. Oct. 31, 2016 Hr'g Tr. 34-35. This "don't prejudice my client" argument is notably tone-deaf, as Healy's unprofessional conduct is well-documented in this case. Currently pending before Judge Gilliam is an order to show cause why terminating sanctions are not warranted as a result of Healy's "documented history of obstructionist discovery conduct and persistent refusal to follow court orders notwithstanding repeated warnings." [Docket No. 894.] If Healy's seemingly undeterrable pattern of behavior ends up hurting her client's interests, she has no one but herself to blame.

Almawave asks the court to impose "meaningful sanctions," including "compensation for dry cleaning and cleaning (if possible) or replacing the luggage." Def.'s Mot. at 4. It also asks the court to order Healy to pay for the entire cost of the deposition, including counsel's travel and accommodations, and to revoke Healy's pro hac vice status, but not at the expense of granting Loop a continuance of the trial date. *Id*.

Courts may exercise their inherent power to impose sanctions for "a full range of litigation abuses." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). "[A] district court may levy sanctions pursuant to its inherent power for 'willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012) (quoting *Fink v. Gomez*, 239 F.3d 989, 991-93 (9th Cir. 2001)). Sanctions may be imposed under a court's inherent powers "if the court specifically finds bad faith or conduct tantamount to bad faith," *Fink*, 239 F.3d at 994,

//

//

3 and "[a]s long as a party receives an appropriate hearing . . . the party may be sanctioned for abuses of process occurring beyond the courtroom . . . ." *Chambers*, 501 U.S. at 57. The Ninth Circuit has explained that the term "bad faith . . . includes a broad range of willful improper conduct" and that "[s]anctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id*. at 992, 994. "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44.

The court finds that Healy's willful and improper conduct was in bad faith. This is supported by her pattern of discovery misconduct in this case, coupled with her defiant opposition to this motion in which she refused to accept responsibility for her shocking behavior. Even Healy's attorney admitted that "some sanction is in order." Oct. 31, 2016 Hr'g Tr. 36.

Healy shall pay $250 to Wallerstein for damages caused by her act. Three eyewitnesses agree that the coffee splattered on Wallerstein, his clothing, and his belongings. While Healy vigorously attacks Wallerstein's and the court reporter's descriptions of the damage she caused, she is notably silent as to her own description. The court construes this as an admission that she caused some damage, albeit not as much as others claim. The court declines to require Healy to reimburse Almawave for the costs of the deposition, as Almawave successfully obtained Pieraccini's testimony, despite the unseemly interruption.

At this time, the court declines to impose further sanctions, such as a referral to the Court's Standing Committee on Professional Conduct, or revocation of her pro hac vice status. Such sanctions may well be warranted in light of Healy's pattern of behavior in this case. However, in the interest of consistency, it is appropriate to defer the matter to Judge Gilliam, who will be undertaking a broad assessment of Healy's conduct in the context of his order to show cause regarding terminating sanctions.

### III. CONCLUSION

Healy shall pay Wallerstein $250 within seven days of this order. The court defers the

question of further sanctions to Judge Gilliam.

**IT IS SO ORDERED.**

Dated: April 24, 2017



_____
Donna M. Ryu
United States Magistrate Judge